**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING KURTZMAN**
**CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS OF THE PETITION DATE**

The debtors and debtors in possession (collectively, the "**Debtors**" or "**Company**") in the above-captioned cases hereby file this application (the "**Section 156(c) Application**") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Order**"), granting the relief requested below.   In support of this Section 156(c) Application, the Debtors rely upon and incorporate by reference the *Declaration of Evan Gershbein in Support of Debtors' Application for Entry of an Order Appointing Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date* (the "**Gershbein Declaration**"), attached hereto as **Exhibit B**, and the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith.   In further support of the Section 156(c) Application, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## RELIEF REQUESTED

1.      By this Section 156(c) Application, pursuant to sections 105(a) and 503(b)(1)(A) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Order  appointing Kurtzman Carson Consultants LLC ("**KCC**") as claims and noticing agent ("**Claims and Noticing Agent**") in the Debtors' Chapter 11 Cases (as defined below) to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these Chapter 11 Cases, effective as of the Petition Date.  The terms of KCC's proposed retention are set forth in the KCC Agreement for Services, between the Debtors and KCC (the "**Services Agreement**"), a copy of which is attached as **Exhibit C** hereto; *provided, however*, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application and the Order attached hereto.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

2.      This Court has jurisdiction to consider this Section 156(c) Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Section 156(c) Application is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested by this Section 156(c) Application are section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b)(1)(A) of the Bankruptcy Code, Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

4.      Pursuant to Rules 2002-1(f) and 9013-1(f) of the Local Rules, and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "**Claims Agent Protocol**"), instituted by the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") on February 1, 2012, the Debtors consent to the entry of a final judgment or order with respect to this Section 156(c) Application if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

<u>**BACKGROUND**</u>

I.      <u>**Overview**</u>

5.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

6.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers.  The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

AMERICAS 123539210

7.      On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.  Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[3] pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a wholly-owned subsidiary of DiamondPeak.  DiamondPeak is now known as Lordstown Motors Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[4]

8.      In September 2021, the Company began a partnership with an affiliate of Hon Hai Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics manufacturer.  The purpose of the Foxconn partnership was to allow the Company to shift its business strategy from a vertically integrated OEM to a less capital-intensive model, focused on developing, engineering, testing, and industrializing EVs.  Since the inception of the partnership, however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors. Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint product development plans and repudiated its promise to invest additional equity capital in the business.  Most recently, Foxconn has refused to complete its second purchase of common stock in accordance with the terms of the investment agreement between the Company and Foxconn. Foxconn's actions have damaged the Company's business relationships, employee morale and

---

[3]      DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

[4]      Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

relations, and the Company's future prospects, stripping it of its ability to continue as a going concern absent a strategic chapter 11 transaction.

9.    The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value for the benefit of their stakeholders given the ongoing, repeated breaches of contract and commitments by Foxconn.  Among other things, as part of these Chapter 11 Cases, the Debtors intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

10.    Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## THE DEBTORS' SELECTION OF KCC

11.    Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 5,000 entities to be noticed.  Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] application [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

12.    The Debtors' selection of KCC to act as the Claims and Noticing Agent satisfies the Court's Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement

proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

## KCC'S QUALIFICATIONS

13.    KCC is one of the country's leading chapter 11 administrators, with experience in both the legal and administrative aspects of large, complex chapter 11 cases. KCC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Indeed, KCC has acted as the official claims and notice agent in many large bankruptcy cases pending in this District and other districts nationwide. KCC's cases in this district include: *In re PGX Holdings, Inc., et al.*, Case No. 23-10718 (CTG) (Bankr. D. Del. Jun. 6, 2023); *In re Plastiq Inc., et al.*, Case No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc., et al.* Case No. 23-10497 (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re CBC Restaurant Corp., et al.,* Case No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re Starry Group Holdings, Inc., et al.,* Case No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023); *In re Standayne LLC, et al.,* Case No. 23-10207 (JTD) (Bankr. D. Del. Feb. 22, 2023); *In re Tricida, Inc.,* Case No. 23-10024 (JTD) (Bankr. D. Del. Jan. 13, 2023); *In re Carestream Health, Inc., et al.,* Case No. 22-10778 (JKS) (Bankr. D. Del. Aug. 26, 2022); *In re First Guaranty Mortgage Corp., et al.,* Case No. 22-10584 (CTG) (Bankr. D. Del. Jul. 1, 2022); *In re Zosano Pharma Corp.,* Case No. 22-10506 (JKS) (Bankr. D. Del. Jun. 6, 2022); *In re Sequential Brands Group, Inc., et al.,* Case No. 21-11194 (JTD) (Bankr. D. Del. Sep. 1, 2021); *In re Alex and Ani, LLC, et al.,* Case

AMERICAS 123539210

No. 21-10746 (CTG) (Bankr. D. Del. Jun. 11, 2021); *In re TECT Aerospace Group Holdings, Inc., et al.*, Case No. 21-10670 (KBO) (Bankr. D. Del. Apr. 7, 2021); *In re JetFleet Holding Corp. (f/k/a AeroCentury Corp.),* Case No. 21-10637 (JTD) (Bankr. D. Del. Mar. 31, 2021); *In re Medley LLC,* Case No. 21-10525 (KBO) (Bankr. D. Del. Mar. 10, 2021); *In re Chaparral Energy, Inc.,* Case No. 20-11947 (MFW) (Bank. D. Del. Aug. 18, 2020); *In re HRI Holding Corp., et al.,* Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019).

14. The appointment of KCC as the Claims and Noticing Agent in these Chapter 11 Cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these Chapter 11 Cases, and relieve the Clerk, the Debtors, and their retained professionals of these administrative burdens. Given the nature of these Chapter 11 Cases, the Debtors believe that the appointment of KCC as the Claims and Noticing Agent will serve to maximize the value of the Debtors' estates for all stakeholders.

## SERVICES TO BE PROVIDED BY KCC

15. This Section 156(c) Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by KCC that are set forth in the Services Agreement but are outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application.

16. Specifically, KCC will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "**Claims and Noticing Services**"), to the extent requested by the Debtors:

> (a) prepare and serve and/or prepare required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to

transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)  maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)  maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party-in-interest or the Clerk;

(d)  furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by the inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)  maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)  for all motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)  process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)  maintain the official claims register for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and any order entered by the Court in connection therewith, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtors, and (vii) any disposition of the claim;

AMERICAS 123539210

(i)  provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(j)  implement necessary security to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)  record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)  relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of KCC, not less often than weekly;

(m) upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)  monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)  assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(p)  if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of the notice to KCC of entry of the order converting the cases;

(q)  thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(r)  within seven (7) days of notice to KCC entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these Chapter 11 Cases; and

(s)  at the close of these Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at 14700 Townsend Road, Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk.

17.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

9

**KCC'S COMPENSATION**

18.     The Debtors are proposing to compensate KCC for the Claims and Noticing Services set forth above in accordance with the Services Agreement and the rate structure attached thereto.  The Debtors request that the undisputed fees and expenses incurred by KCC in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to section 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

19.     KCC agrees to maintain records of all Claims and Noticing Services, including dates, categories of services, fees charged, and expenses incurred. KCC further agrees to serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee(s) monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

20.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $35,000.00, which remains undrawn.  KCC seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

21.     Additionally, under the terms of the Services Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify, defend, and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain

10

circumstances specified in the Services Agreement, except in circumstances resulting solely from KCC's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or the Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

## KCC'S DISINTERESTEDNESS

22.    Although the Debtors do not propose to employ KCC under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention may be sought by separate application), KCC has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and initial parties in interest identified by the Debtors. KCC has represented to the Debtors that to the best of its knowledge, and except as set forth in the Gershbein Declaration, neither KCC nor any of its professionals have any relationship with the Debtors that would impair KCC's ability to serve as Claims and Noticing Agent. To the extent that KCC or its personnel have, or may have had, relationships with certain of the Debtors' creditors as described in the Gershbein Declaration, KCC has represented to the Debtors that those matters are unrelated to these Chapter 11 Cases.

23.    Moreover, in connection with its retention as Claims and Noticing Agent, KCC represents in the Gershbein Declaration, among other things, the following:

(a)    KCC is not a creditor, equity security holder, or insider of the Debtors;

(b)    KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(c)    by accepting employment in these Chapter 11 Cases, KCC waives any right to receive compensation from the United States government in connection with these Chapter 11 Cases;

11

(d)     in its capacity as Claims and Noticing Agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e)     KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent;

(f)     KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     KCC will comply with all requests of the Clerk's office and guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. §156(c); and

(j)     none of the services provided by KCC as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

24.     KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

25.     This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court.  To the extent that there is any inconsistency between this Section 156(c) Application, the Order, and the Services Agreement, the Order shall govern.

## BASIS FOR RELIEF

26.     The Debtors submit that the requested relief is appropriate pursuant to section 28 U.S.C. § 156(c), section 105 of the Bankruptcy Code, Bankruptcy Rule 2002 and Local Rule 2002-1(f).  The Court is permitted to appoint KCC as Claims and Noticing Agent in these Chapter 11 Cases.  Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize agents and facilities other

AMERICAS 123539210

than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c). Further, section 105(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. *See* Fed. R. Bankr. P. 2002. In addition, Local Rule 2002-1(f) provides that "[u]pon motion of the debtor or trustee," in conformity with Local Rule 134, "at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)." Del. Bankr. L.R. 2002-1(f).

27. In view of the substantial number of parties receiving notice in these Chapter 11 Cases and the significant number of anticipated claimants, the Debtors submit that the appointment of KCC as the Claims and Noticing Agent is necessary and in the best interests of the Debtors and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

AMERICAS 123539210

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

28.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

## NOTICE

29.     Notice of this Section 156(c) Application has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

30.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

AMERICAS 123539210

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court grant the relief requested in this Section 156(c) Application, the Order, and such other and

further relief as is just and proper.

Dated: June 27, 2023

Respectfully submitted,

*/s/ Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and*
*Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and*
*Debtors-in-Possession*

# EXHIBIT A

## Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No. 23-[_____] ( ) |
| Lordstown Motors Corp., *et al.*,[1] | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

### ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "**Section 156(c) Application**")[2] of the Debtors for entry of an order (this "**Order**") appointing Kurtzman Carson Consultants LLC ("**KCC**") as claims and noticing agent in the Debtors' Chapter 11 Cases (the "**Claims and Noticing Agent**") effective as of the Petition Date, to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' Chapter 11 Cases, and (c) provide such other administrative services as required by the Debtors that would fall within the purview of services to be provided by the Clerk's office, as more fully set forth in the Section 156(c) Application, and the Court having found that it has jurisdiction to consider the Section 156(c) Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Section 156(c) Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Section 156(c) Application.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Section 156(c) Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Section 156(c) Application (the "**Hearing**"); and upon consideration of the Gershbein Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Section 156(c) Application is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Section 156(c) Application is GRANTED as set forth herein.

2.      Notwithstanding the terms of the Services Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order.

3.      The Debtors are authorized to retain KCC as the Claims and Noticing Agent in these Chapter 11 Cases, effective as of the Petition Date, under the terms of the Services Agreement, and KCC is authorized to perform the Claims and Noticing Services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and perform all related tasks as set forth in the Section 156(c) Application.

4.      KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases, and is authorized to maintain the official Claims Register for the Debtors, to provide public access to every proof of

2

claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.      KCC is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

6.      KCC is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.      KCC shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      Without further order of this Court, the Debtors are authorized to compensate KCC in accordance with the terms and conditions of the Services Agreement, as may be modified by mutual agreement between the Debtors and KCC, upon receipt of reasonably detailed monthly invoices setting forth the services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      KCC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any statutory committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

10.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices, *provided* that parties may seek resolution of the matter from the Court if resolution is not achieved.

3

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, KCC's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

12.     KCC may first apply its retainer to all prepetition invoices and, thereafter, have the retainer replenished to the original retainer amount and, thereafter, to hold the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

13.     The Debtors are authorized to indemnify the Indemnified Parties (as defined in the Services Agreement) under the terms of the Services Agreement, subject to the following modifications.

(a)     The Indemnified Parties shall not be entitled to indemnification, contribution or reimbursement pursuant to the Services Agreement for services other than the Claims and Noticing Services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

(b)     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Indemnified Parties' gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of the Indemnified Parties' contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, the Indemnified Parties believe that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the

4

advancement of defense costs, the Indemnified Parties must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Parties before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

14.     In the event the Indemnified Parties are unable to provide the Claims and Noticing Services, the Indemnified Parties shall immediately notify the Clerk and Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by the Indemnified Parties but are not specifically authorized by this Order.

16.     KCC shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of the Court authorizing KCC to do so.

17.     Notice of the Section 156(c) Application shall be deemed good and sufficient notice of such application.

18.     In the event of any inconsistency between the Services Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

19.     The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

20.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

AMERICAS 123539210

21.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

22.     The Debtors are authorized to enforce the terms of this Order.

23.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

# EXHIBIT B

**Gershbein Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| Debtors. | (Joint Administration Requested) |

### DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.     I am an Executive Vice President of Kurtzman Carson Consultants LLC ("**KCC**"), whose offices are located at 222 N.  Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245. Except as otherwise noted, the matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     This Declaration is made in support of the *Debtors' Application for Entry of an Order Appointing KCC Agent Solutions as Claims and Noticing Agent, Effective as of the Petition Date* (the "**Section 156(c) Application**") filed contemporaneously herewith by the Debtors, for entry of an order pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code,[2] Bankruptcy Rule 2002, and Local Bankruptcy Rule 2002-1(f), appointing KCC as Claims and

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

1

Noticing Agent, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Services Agreement.

3.      KCC comprises leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases.  KCC has acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  KCC's cases include: *In re PGX Holdings, Inc., et al.*, Case No. 23-10718 (CTG) (Bankr. D. Del. Jun. 6, 2023); *In re Plastiq Inc., et al.*, Case No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc., et al.* (Case No. 23-10497) (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re CBC Restaurant Corp., et al.*, Case No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re Starry Group Holdings, Inc., et al.*, Case No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023); *In re Standayne LLC, et al.*, Case No. 23-10207 (JTD) (Bankr. D. Del. Feb. 22, 2023); *In re Tricida, Inc.,* Case No. 23-10024 (JTD) (Bankr. D. Del. Jan. 13, 2023); *In re Carestream Health, Inc., et al.*, Case No. 22-10778 (JKS) (Bankr. D. Del. Aug. 26, 2022); *In re First Guaranty Mortgage Corp., et al.*, Case No. 22-10584 (CTG) (Bankr. D. Del. Jul. 1, 2022); *In re Zosano Pharma Corp.,* Case No. 22-10506 (JKS) (Bankr. D. Del. Jun. 6, 2022); *In re Sequential Brands Group, Inc., et al.*, Case No. 21-11194 (JTD) (Bankr. D. Del. Sep. 1, 2021); *In re Alex and Ani, LLC, et al.*, Case No. 21-10746 (CTG) (Bankr. D. Del. Jun. 11, 2021); *In re TECT Aerospace Group Holdings, Inc., et al.*, Case No. 21-10670 (KBO) (Bankr. D. Del. Apr. 7, 2021); *In re JetFleet Holding Corp. (f/k/a AeroCentury Corp.)*, Case No. 21-10637 (JTD) (Bankr. D. Del. Mar. 31, 2021); *In re Medley LLC*, Case No. 21-10525 (KBO) (Bankr. D. Del. Mar. 10, 2021); *In re Chaparral Energy, Inc.*, Case

2

No. 20-11947 (MFW) (Bank. D. Del. Aug. 18, 2020); *In re HRI Holding Corp., et al.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019).

4.     As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Clerk, the noticing and claims related services specified in the Section 156(c) Application and the Services Agreement.  In addition, at the Debtors' request, KCC will perform such other noticing, claims, administrative, technical, and support services specified in the Section 156(c) Application and the Services Agreement.

5.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $35,000.  KCC seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

6.     In connection with its retention as Claims and Noticing Agent, KCC represents, among other things, the following:

(a)     KCC is not a creditor, equity security holder, or insider of the Debtors;

(b)     KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(c)     by accepting employment in these Chapter 11 Cases, KCC waives any right to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)     in its capacity as Claims and Noticing Agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e)     KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent;

(f)     KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

3

(g)     in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     KCC will comply with all requests of the Clerk's office and guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by KCC as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

7.     Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all the potential parties in interest (the "**Potential Parties in Interest**") in these Chapter 11 Cases.  The list of Potential Parties in Interest was provided by the Debtors and is attached hereto as **Schedule 1**.  KCC is not aware of any relationship that would present a disqualifying conflict of interest.

8.     To the best of my knowledge, none of KCC's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by KCC to be employed in the Office of the United States Trustee serving the District of Delaware, or are equity security holders of the Debtors.

9.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither KCC, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

AMERICAS 123574069

10.     KCC, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases.  KCC may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

11.     KCC, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors.  Such firms engaged by KCC or its personnel may appear in Chapter 11 Cases representing the Debtors or parties in interest.  All engagements where such firms represent KCC or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

12.     On May 1, 2023, funds affiliated with GCP Capital Partners LLC ("**GCP**") indirectly acquired a controlling equity interest in KCC (the "**Acquisition**").  Pursuant to the Acquisition, an indirect, non-controlling, beneficial minority interest in KCC was acquired by funds affiliated with J.P. Morgan Investment Management Inc. ("**JPMIM**").  GCP is a middle-market private equity investment firm based in New York.  GCP has made investments in a number of industries, including tech-enabled business services, payments, and select financials.  JPMIM is a U.S. registered investment adviser.  Designees of GCP are members of the Board of Managers (the "**Board**") of KCC's ultimate parent company, KCC Parent LLC ("**Parent**").  Parent wholly owns KCC Intermediate LLC, which in turn wholly owns KCC Buyer LLC, which in turn wholly owns KCC Topco LLC, which in turn wholly owns KCC.  One representative of JPMIM is entitled to attend and observe (but not vote) at all meetings of the Board, but no designee of JPMIM is a member of the Board.

AMERICAS 123574069

13.     KCC searched all entities listed in the list of Potential Parties in Interest against an internal database that includes (i) KCC's parent entities, affiliates, and subsidiaries and (ii) GCP, GCP's funds, and each such fund's respective portfolio companies and investments as set forth in the list most recently provided to KCC by GCP.  Based solely on the foregoing search, KCC has determined, to the best of its knowledge, that there are no material connections.  Certain JP Morgan Chase entities are listed on the Potential Parties in Interest List; however, there are information barriers between JPMIM and the lines of business where JPMorgan Chase may be associated with the Debtors.

14.     To the extent KCC learns of any other material connections between the funds or investments included in the above-described conflicts search and the Debtors, KCC will promptly file a supplemental disclosure.  In addition, KCC may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more GCP or JPMIM entities including, among others, portfolio companies of GCP.

15.     KCC has no contract or relationship with XClaim Inc. or with any other party under which KCC provides or will provide exclusive access to claims data and/or under which KCC will be compensated for claims data that is made available by KCC.

16.     Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.  Moreover, to the best of my knowledge and belief, neither KCC nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which KCC is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

6

Dated: June 27, 2023                                 Respectfully submitted,

      Los Angeles, CA

 

_____

Evan Gershbein

AMERICAS 123574069

## Schedule 1

**Potential Parties in Interest**

# List of Potentially Interested Parties

## Debtor Entities

1. Lordstown Motors Corp. (DE)
2. Lordstown EV Corp. (DE)
3. Lordstown EV Sales LLC (DE)

## Related/Former Names of Entities

1. DiamondPeak Holdings Corp. (n/k/a Lordstown Motors Corp.)
2. DPL Merger Sub Corp. (n/k/a Lordstown EV Corporation)
3. MIH EV Design, LLC

## Directors and Officers

1. Adam Kroll
2. Angela Strand
3. Dale Spencer
4. Daniel Ninivaggi
5. David T. Hamamoto
6. Donna Bell
7. Edward T. Hightower
8. Jane Reiss
9. Joseph B. Anderson Jr.
10. Keith Feldman
11. Laura Soave
12. Melissa Leonard

## Former Directors and Officers

1. Jane Ritson-Parsons
2. John LeFleur
3. John R. Whitcomb
4. Michael Gates
5. Mickey Kowitz
6. Martin Rucidlo
7. Rebecca Roof
8. Stephen S. Burns
9. Thomas V. Canepa

## Senior Employees

1. Cheryl Johnson
2. Darren Post
3. Jill Coniglio-Kirk
4. Carter Driscoll
5. Michael Port
6. Raghu Aerabati
7. Waqar Hashim
8. Andrew Reyntjes

## Top Unsecured Creditors

1. Amphenol Interconnect Products Corporation
2. AP Expert Group LLC
3. AT&T MOBILITY-CC
4. Barry L. Leonard and Company Inc. dba Trans Machine Technologies
5. Bossard Inc.
6. CEVA Contract Logistics US Inc
7. Cognizant Mobility, Inc
8. Elaphe Propulsion Technologies LTD
9. Fiberdyne Research Pty Ltd
10. Filec Production SAS - Amphenol
11. Foxconn EV System LLC
12. Greatech Intergration (M) SDN.BHD.
13. Harco Manufacturing Group, LLC
14. HRB Industries Corp.
15. JVIS USA LLC
16. Laval Tool & Mould LTD.
17. Marelli North America Inc dba CalsonicKansel North America Inc
18. Meta Systems SpA
19. Nexteer Automotive Corporation
20. Pektron EV Limited
21. Proper Group Holdings LLC dba Proper Tooling LLC
22. Quality MetalCraft Inc.
23. SA Automotive LTD
24. Sharp Dimension Inc
25. St. Clair Technologies Inc.
26. Superior Cam Inc
27. Technology Solutions Anywhere LLC dba Readysoft
28. Teijin Automotive Technologies, Inc

## <u>List of Potentially Interested Parties</u>

29. The Timken Corporation
30. Three-Dimensional Services dba 3 Dimensional Services Group
31. thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services
32. Ventra Group Co. dba Flex-N-Gate Bradford
33. VIA Optronics LLC
34. Zetwerk Manufacturing USA, Inc.
35. ZF Passive Safety Systems US Inc.

### Cash Management Banks

1. JP Morgan Asset Management
2. JP Morgan Chase Bank, N.A.
3. JP Morgan Institutional Investments Global Liquidity
4. JP Morgan Prime
5. JP Morgan Securities

### Significant Lease and Contract Counterparties

1. 275 Hills Tech Ventures LLC
2. Aon (Bermuda) Ltd.
3. Aon Risk Services Central Inc.
4. Aon UK Limited
5. Arthur J. Gallagher Risk Management Services, Inc.
6. Applied Medical Resources Corporation
7. Cigna Health and Life Insurance Company
8. Elaphe Propulsion Technologies Ltd.
9. Foxconn EV Property Development LLC
10. Foxconn EV System LLC
11. GAC R&D Center Detroit, LLC
12. General Motors
13. GM EV Holdings LLC
14. Liberty Property and Asset Management
15. Michigan Strategic Fund
16. Paylocity Corporation
17. Principal Life Insurance Company
18. TenantBase, Inc.
19. TransAmerica Corporation

20. Willowgreen Building Group, LLC
21. Workhorse Group Inc.

### Significant Vendors

1. A Say Inc dba Say Communications LLC
2. A.K.Stamping Company, Inc
3. ABSOLUTE ELECTRONICS INC
4. Akebono Brake Company
5. Amphenol Interconnect Products Corporation
6. Anchor Tool and Die Company dba Anchor Manufacturing Group, Inc.
7. Anderton Castings SAS
8. AP Expert Group LLC
9. Armada Toolworks LTD.
10. AT&T MOBILITY-CC
11. ATCO Industries, Inc.
12. Auto Motive Power Inc
13. Baker Hostetler
14. Barry L. Leonard and Company Inc. dba Trans Machine Technologies
15. Bennie W Fowler, LLC
16. Bossard Inc.
17. Brikho & Kallabat, P.C. DBA Joseph Kallabat and Associates, PC
18. CEVA Contract Logistics US Inc
19. CEVA International, Inc
20. CITIC Dicastal Co., Ltd.
21. Cognizant Mobility, Inc
22. Cognizant Worldwide Limited
23. Complete Discovery Source, Inc (CDS)
24. Contour Hardening Inc.
25. Cox Automotive Mobility Solutions, Inc
26. Cox Automotive, Inc - Manheim
27. Custodial Building Services, Inc
28. DAG LTD, LLC
29. Detroit Engineered Products dba DEP
30. Duggan Manufacturing LLC
31. Elaphe Propulsion Technologies LTD
32. Fiberdyne Research Pty Ltd
33. Filec Production SAS - Amphenol
34. Foshan Aoya Electrical and Mechanical Co., Ltd.

2

## List of Potentially Interested Parties

35. Foxconn EV Property Development LLC
36. Foxconn EV System LLC
37. Greatech Intergration (M) SDN.BHD.
38. Harco Manufacturing Group, LLC
39. Haynes and Boone, LLP
40. HRB Industries Corp
41. HubSpot Inc
42. IEE S.A.
43. Infosys Limited
44. Jiangyin Haida Rubber and Plastic Co., Ltd. dba Haida
45. JVIS USA LLC
46. KPMG LLP
47. Lasky, LLC
48. Laval Tool & Mould LTD.
49. Logicalis, Inc.
50. Lumma Clean LLC
51. Mahle Behr USA Inc
52. Mainfreight, Inc - Canada
53. Mainfreight, Inc.
54. Marelli North America Inc dba CalsonicKansel North America Inc
55. Megatronix（Beijing）Technology Co., Ltd.
56. Meta Systems SpA
57. Miotti Srl
58. Mosaic Corporation
59. MSSC US INC.
60. New Eagle, LLC
61. Nexteer Automotive Corporation
62. OpenText Inc.
63. Payscale Inc
64. Pektron EV Limited
65. Pi Innovo LLC
66. Pierburg US LLC
67. Potter Anderson & Corron LLP
68. Principal Life Insurance Company
69. Proper Group Holdings LLC dba Proper Tooling LLC
70. Quality MetalCraft Inc.
71. Racar Engineering, LLC
72. Ready Logistics, LLC
73. Roush Industries, Inc.
74. RTL Systems, LLC
75. SA Automotive LTD

76. Schwab Industries, Inc.
77. SG Automotive d.o.o.
78. Sharp Dimension Inc
79. Sherpa Commercial Vehicles, LLC
80. Silverman Consulting, Inc
81. Simpson Thacher & Bartlett LLP
82. Socotec Advisory, LLC
83. St. Clair Technologies Inc.
84. Sullivan & Cromwell LLP
85. Superior Cam Inc
86. Sybridge Technologies Canada, Inc
87. Technology Solutions Anywhere LLC dba Readysoft
88. Teijin Automotive Technologies, Inc
89. TERIS - Phoenix LLC DBA TERIS
90. The Timken Corporation
91. Three-Dimensional Services dba 3 Dimensional Services Group
92. thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services
93. Transportation Research Center, Inc. dba TRC, Inc.
94. Triple Crown Consulting, LLC
95. TTI, INC dba Symmetry Electronics (a division of TTl, lnc,) and RFMW(a division of TTl, lnc.)
96. Ventra Group Co. dba Flex-N-Gate Bradford
97. VIA Optronics LLC
98. Victora Auto Private Limited
99. Zetwerk Manufacturing USA, Inc
100.    ZF PASSIVE SAFETY SYSTEMS US INC.

**Customers**

1. Army Contracting Command - Detroit Arsenal (ACC-DTA)
2. City of Washington, D.C.
3. Greenstreet EV Inc.
4. JoeyB QB LLC
5. Pratt & Miller Engineering & Fabrication LLC
6. San Diego Unified Port District
7. Sherpa Commercial Vehicles LLC

3

# <u>List of Potentially Interested Parties</u>

**Investors with over 5% Holdings**

1. Foxconn (Far East) Limited
2. Foxconn EV Technology, Inc.
3. Foxconn Ventures Pte. Ltd.
4. Foxteq Holdings Inc.
5. Foxteq Integration Inc.
6. Hon Hai Precision Industry Co., Ltd.
7. Hon Hai Technology Group
8. PCE Paragon Solutions Kft.

**Debtor Restructuring Professionals**

1. Jefferies Group LLC
2. Kurtzman Carson Consultants, LLC
3. Richards Layton & Finger, P.A.
4. Silverman Consulting, Inc.
5. White & Case LLP

**Ordinary Course Professionals & Professionals of Parties in Interest**

1. Akin Gump Strauss Hauer & Feld LLP
2. Ankura Intermediate Holdings, LP dba Ankura Consulting Group LLC
3. Baker & Hostetler LLP
4. Bernstein Litowitz Berger & Grossman, LLP
5. Bodman PLC
6. Climaco, Wilcox, Peca, Tarantino & Garofoli
7. Cohen Rosenthal & Kramer
8. Cooch and Taylor
9. Cummins Law
10. deLeeuw Law LLC
11. Dechert LLP
12. Deloitte & Touche LLP
13. Dentons US
14. Dittmer, Wagoner & Steele
15. Elfvin, Klingshirn, Royer & Torch, LLC
16. Employment Law Partners
17. Entwistle & Cappucci LLP
18. Ernst & Young U.S. LLP
19. Fisher and Phillips LLP
20. Foley & Lardner LLP
21. FTI Consulting, Inc.
22. Gladstein, Neandross & Associates
23. Hagens Berman Sobol Shapiro LLP
24. Haynes and Boone, LLP
25. Kaskela Law LLC
26. Kooperman Mentel Ferguson Yaross
27. KPMG LLP
28. Labaton Sucharow LLP
29. Latham & Watkins LLP
30. Law Office of Daniel R. Karon
31. Lasky, LLC
32. Lifshitz Law PLLC
33. Long Law, LLC
34. Mercer Capital Management, Inc.
35. Merriman Legando Williams & Klang
36. Murray, Murphy, Moul & Basil
37. Nelson Mullins Riley & Scarborough LLP
38. Paul Hastings LLP
39. Perantinides & Nolan
40. Perez & Morris
41. Phillips ADR Enterprises PC
42. Pomerantz LLP
43. Potter Anderson & Corroon LLP
44. Prospect Law LLP
45. Purcell & Lefkowitz LLP
46. Robbins Geller Rudman & Dowd
47. RSM US LLP
48. Saxena White
49. Schall Law
50. Schubert Jonckheer & Kolbe LLP
51. Seyfarth Shaw LLP
52. Shapiro Haber & Urmy LLP
53. Simpson Thacher & Bartlett LLP
54. Socotec Advisory, LLC
55. Strauss Troy
56. Sullivan & Cromwell LLP
57. The Brown Law Firm, P.C.
58. The Rosen Law Firm, P.A.
59. Winston & Strawn LLP
60. WIT Legal, LLC
61. Zoll & Kranz

4

# <u>List of Potentially Interested Parties</u>

**Insurance Parties**

1. Accredited Specialty Insurance Company
2. Allied World Specialty Insurance Company
3. Associated Industries Insurance Co., Inc
4. AXIS Insurance Company
5. Berkley Insurance Company
6. CFC Underwriting / Lloyds
7. Continental Casualty Company
8. Endurance Assurance Corporation
9. Fair American Insurance & Reinsurance Co
10. Gemini Insurance Company
11. General Star Indemnity Company
12. Hudson Insurance Company
13. Ironshore Specialty Insurance Company
14. Magna Carta Insurance Ltd. / Lloyds
15. National Union Fire Ins Co of Pittsburgh, PA
16. RSUI Indemnity Company
17. RT Specialty Insurance Services, LLC
18. Samsung Fire & Marine Ins Co Ltd (US Br)
19. SiriusPoint Bermuda Insurance Company
20. The Cincinnati Indemnity Company
21. The Cincinnati Insurance Company
22. Underwriters At Lloyds London
23. Westfield Specialty Insurance Comp
24. XL Specialty Insurance Company

**Utilities**

1. AT&T Business Direct
2. AT&T MOBILITY-CC
3. Comcast Holdings Corporation dba Comcast Cable Communication Management LLC
4. Cox Communications California LLC dba Cox Business
5. CR&R Environmental Services
6. Detroit Disposal & Recycling
7. Irvine Ranch Water District
8. Sonitrol Orange County

9. Southern California Edison
10. Southern California Gas Company dba The Gas Company; So Cal Gas

**Taxing and Regulatory Authorities**

1. California Franchise Tax Board
2. California Department of Tax and Fee Administration
3. California State Board of Equalization
4. Committee on Foreign Investment in the United States
5. Delaware Secretary of State
6. Delaware State Treasury
7. Delaware Tax Authority
8. Internal Revenue Service
9. Michigan Department of Treasury
10. National Highway Traffic Safety Administration
11. Ohio Bureau of Workers' Compensation
12. Ohio Department of Taxation
13. Orange County Property Taxes
14. Pipeline and Hazardous Materials Safety Administration
15. Securities and Exchange Commission
16. U.S. Department of Justice
17. U.S. Patent and Trademark Office
18. Village of Lordstown, OH Income Tax Department

**Litigation Parties**

1. Alicia Kelley
2. An Thai
3. Andrew C. Richardson
4. Angela Strand Boydston
5. Ashith Pabbathi
6. Atri Amin
7. Bei Qin
8. Benjamin Herbert
9. Caimin Flannery
10. Carole Cooper
11. Christopher Kim
12. Chuan D. Vo
13. Claude L. Patterson
14. Dale G. Spencer

5

## **List of Potentially Interested Parties**

15. Dan Zhihong Huang
16. Daniel J. Cohen
17. Daniel Tavares
18. Dari Tehrani
19. Darren Post
20. David M. Cohen
21. David T. Hamamoto
22. Ed Lomont
23. Eskander Tehrani
24. Ethan Fingerer
25. Evaristo Sarabia
26. FNY Managed Accounts LLC
27. George Troicky
28. Globestar Systems Inc.
29. Gurpreet Singh
30. Herbert Stotler
31. Hong Xin Huan (a/k/a George Huan)
32. Jane Reiss
33. Janelle Jackson
34. Jesse Brury
35. John H. Jenkins
36. John LeFleur
37. John Vo
38. Joshua Betof
39. Judith A. Hannaway
40. Julio C. Rodriguez
41. Karma Automotive LLC
42. Keith A. Feldman
43. Kenneth Davenport
44. Kevin Levent
45. Kin San Chan
46. M.R.S. Leasing Corporation LTD
47. Mario Guerrero
48. Mark A. Walsh
49. Martin J. Rucidlo
50. Matthew Rico
51. Michael Fabian
52. Michael D. Gates
53. Mickey W. Kowitz
54. Mohammed Chowdhury
55. Phil Richard Schmidt
56. Pnina Cohen
57. Punak Engineering, Inc.
58. Randy Slipher
59. Raymond Romano
60. Robert Miller

61. Robert Palumbo
62. Roger J. Durre
63. Shane Brown
64. Simha Cohen
65. Stephen Punak
66. Stephen S. Burns
67. Steven R. Hash
68. Steven Terry
69. Sulayman Zuod
70. DiamondPeak Sponsor LLC
71. Silverpeak and related entities (which includes SP SPAC Sponsor LLC, Silverpeak Real Estate Partners L.P., Silverpeak Strategic Partners LLC, Silverpeak Credit Partners LP, Silverpeak Renewables Investment Partners LP, and certain other affiliated entities)

**Lien Holders**

1. Competition Engineering, Inc.
2. Foxconn EV Technology, Inc.
3. Hewlett-Packard Financial Services Company
4. Peterson Jig and Fixture, Inc.
5. Precision Jig and Fixture
6. Proper Tooling, LLC & Proper Group International, LLC

**Office of the United States Trustee (Wilmington, DE)**

1. Andrew Vara
2. Benjamin Hackman
3. Christine Green
4. Denis Cooke
5. Diane Giordano
6. Dion Wynn
7. Edith A. Serrano
8. Hannah M. McCollum
9. Holly Dice
10. James R. O'Malley
11. Jane Leamy
12. Joseph Cudia
13. Joseph McMahon
14. Juliet Sarkessian

AMERICAS 122543737

# List of Potentially Interested Parties

15. Karen Starr
16. Lauren Attix
17. Linda Casey
18. Linda Richenderfer
19. Michael Panacio
20. Nyanquoi Jones
21. Richard Schepacarter
22. Rosa Sierra-Fox
23. Shakima L. Dortch
24. Timothy J. Fox, Jr.

**United States Bankruptcy Judges in the District of Delaware**

1. Ashley M. Chan
2. Brendan L. Shannon
3. Craig T. Goldblatt
4. John T. Dorsey
5. Karen B. Owens
6. Kate Stickles
7. Laurie S. Silverstein
8. Mary F. Walrath
9. Thomas M. Horan

**Other Parties in Interest**

1. Softbank

**EXHIBIT C**

**Services Agreement**

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 24 day of May 2023, between Lordstown Motor Corp. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## **Terms and Conditions**

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

1

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates; provided, however, KCC will give thirty (30) days written notice to the Company of any such increase.

B.    In addition to fees and charges for services, the Company agrees to pay KCC's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any third party fees and charges incurred by KCC related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to third party fees and charges incurred by KCC or that are measured by payments made to third parties under this Agreement by KCC and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days ("Late Charges").  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.  Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  Following a Chapter 11 Filing, Late Charges on fees requiring Bankruptcy Court approval shall accrue 30 days after the

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

Company is authorized to pay by the Bankruptcy Court's order and only to the extent permitted by the Bankruptcy Court. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $35,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. In the event of a Chapter 11 Filing, KCC will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.     NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the

3

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.       This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.       In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.       Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and reasonable expenses relating to thereto (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses shall include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC or the Company be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company.  The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

5



# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.    FORCE MAJEURE

KCC will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA  90245
Attn:  Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Lordstown Motors Corp.
38555 Hills Tech Drive
Farmington Hills, MI 48331
Attn: Melissa Leonard
Tel: (216) 548-3549
E-Mail: melissa.leonard@lordstownmotors.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



# KCC AGREEMENT FOR SERVICES

between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: 5B49DC9A-00D8-4D48-AE38-6C4EEED4E3DB



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

*Evan Gershbein*

—66CA900AD1EF471...

BY:  Evan Gershbein          DATE:  5/24/2023

TITLE:  EVP, Corporate Restructuring Services

Lordstown Motors Corp.

*Melissa Leonard*

BY:    Melissa Leonard        DATE: May 24, 2023

TITLE: General Counsel

8