## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[____] ( ) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) PAY PREPETITION WAGES AND COMPENSATION; (II) CONTINUE CERTAIN EMPLOYEE BENEFITS AND INCENTIVE PROGRAMS; (III) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFITS; AND (B) GRANTING OTHER RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**" or "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the "**Final Order**," and, together with the Interim Order, the "**Orders**") granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

### RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105(a), 363, 507(a), 541, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Interim Order and the Final Order authorizing, but not directing, the Debtors to (a) pending entry of a Final Order, pay and/or otherwise honor, as applicable, prepetition obligations that the Debtors have historically directly or indirectly incurred with respect to the Debtors' employees (the "**Employees**"), including, but not limited to, (i) accrued prepetition Wages (as defined below) and prepetition fees associated with the foregoing, including fees payable to Paylocity and TransAmerica (as defined below), (ii) all withholding and payroll-related taxes associated with the foregoing for each jurisdiction where the Debtors have Employees, including, but not limited to, the Deductions (as defined below) and Payroll Taxes (as defined below), (iii) the Debtors' Employee Benefits and Incentive Programs (as defined below), including Company contributions thereto, and (iv) the Debtors' Health and Insurance Benefits (as defined below) ((i)—(iv) collectively, the "**Prepetition Employee Obligations**"), and to pay all fees and costs associated therewith in an aggregate amount of approximately $1.5 million (the "**Interim Amount**") and in the ordinary course of business as such obligations become due and payable subject to the limitations described herein; and (b) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations, in the aggregate amount of approximately $1.8 million (inclusive of the Interim Amount).

2.      The chart below summarizes the estimated Prepetition Employee Obligation amounts sought to be paid pursuant to the Orders (with all amounts in U.S. dollars):

AMERICAS 122560934

| Prepetition Employee Obligations | | |
|---|---|---|
| Category | Interim Order Amounts | Final Order Amounts (Inclusive of Interim) |
| **Compensation, Payroll, and Payroll Processing** | | |
| Wages (net of withholding) | $600,000 | $720,000 |
| Payroll Services | $20,400 | $20,400 |
| Withholding Obligations | $84,000 | $90,000 |
| Payroll Taxes | $54,000 | $60,000 |
| **Employee Benefits & Incentive Programs** | | |
| 401(k) Plan Match | $78,000 | $78,000 |
| 401(k) Plan Safe Harbor Payment | $120,000 | $120,000 |
| 401(k) Plan Administrative Fees | $6,000 | $6,000 |
| Reimbursable Expenses | $30,000 | $60,000 |
| Relocation Expenses | $30,000 | $30,000 |
| Paid Leave | $0 | $90,000 |
| **Health and Insurance Benefits** | | |
| Health Benefits | $360,000 | $384,000 |
| Insurance Benefits | $36,000 | $36,000 |
| Other Health Benefits Programs | $33,000 | $129,000 |
| **TOTALS** | **$1,451,400** | **$1,823,400** |

3.      By this Motion, the Debtors request authority, but not direction, pursuant to both the Interim Order and the Final Order, to honor all of their Prepetition Employee Obligations in the ordinary course of business (including non-monetary benefits in excess of the priority cap set forth in 11 U.S.C. § 507(a)(5), if any).  The Debtors do not seek authority to make payments during the Interim Period on account of Prepetition Employee Obligations to any individual current or former Employee to the extent such payments (i) would be to an Employee whose employment with the Debtors terminated more than 180 days prior to the Petition Date, or (ii) exceed the priority cap of $15,150 contained in 11 U.S.C. § 507(a)(4) (the "**Priority Cap**").

3

4.      The Debtors also request that the Orders (a) authorize and direct all applicable banks and other financial institutions (collectively, the "**Banks**"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Prepetition Employee Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but not direct, the Debtors to continue in their ordinary course to make Payments on account of the Prepetition Employee Obligations.

5.      In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

6.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

7.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This

---

[3]      Such period between the date this Motion was filed and the Final Hearing shall be the "**Interim Period**."

is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

8.      The predicates for the relief requested by this Motion are sections 105(a), 363, 507(a), 541, 1107(a) and 1108 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9.      Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.      Overview

10.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

11.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers.  The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup

5

truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

12.    On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.  Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[4] pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a wholly-owned subsidiary of DiamondPeak.  DiamondPeak is now known as Lordstown Motors Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[5]

13.    In September 2021, the Company began a partnership with an affiliate of Hon Hai Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics manufacturer.  The purpose of the Foxconn partnership was to allow the Company to shift its business strategy from a vertically integrated OEM to a less capital-intensive model, focused on developing, engineering, testing, and industrializing EVs.  Since the inception of the partnership, however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors.  Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint product development plans and repudiated its promise to invest additional equity capital in the business.  Most recently, Foxconn has refused to complete its second purchase of common stock in accordance with the terms of the investment agreement between the Company and

---

[4]    DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

[5]    Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

Foxconn.  Foxconn's actions have damaged the Company's business relationships, employee morale and relations, and the Company's future prospects, stripping it of its ability to continue as a going concern absent a strategic chapter 11 transaction.

14.     The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value for the benefit of their stakeholders given the ongoing, repeated breaches of contract and commitments by Foxconn.  Among other things, as part of these Chapter 11 Cases, the Debtors intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

15.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

I.      **The Debtors' Workforce**

A.  **Employees**

16.     As of the Petition Date, the Debtors have approximately 245 employees across three main locations in Lordstown, Ohio, Farmington Hills, Michigan and Irvine, California. The Debtors employ approximately 190 Employees in the research, development and engineering center in Farmington Hills, Michigan, with certain Employees focused on operational and administrative functions.  The Debtors' engineering, vehicle development and service center is in Irvine, California, which employs approximately 25 Employees.  Lastly the Company employs approximately 15 Employees in its corporate offices in Lordstown, OH, and approximately 15 Employees remotely, serving in managerial, administrative, and research and

development roles.  Of these Employees, approximately 225 are active full-time employees and approximately 20 are active hourly Employees.  The Employees are employed by LEVC, with the exception of one full-time Employee employed with Lordstown EV Sales LLC.  In connection with its partnership with Foxconn, the Company transferred its manufacturing (and certain other) employees to Foxconn to reduce fixed overhead costs and permit the Company to leverage Foxconn's technology, supply chain network and expertise to accelerate the launch of the Endurance.

17.     Retaining the Company's Employees is critical to the Debtors' ability to operate and maximize value in these Chapter 11 Cases as their skills and understanding of the Debtors' operations, infrastructure, assets, relationships, and customers are essential to the effective operation of the Debtors' businesses.  However, the Debtors must balance their continued need to retain their Employees with their economic realities.  On May 9, 2023, the Debtors issued notices to 17 Employees in the Farmington Hills, Michigan office location pursuant to the Worker Adjustment and Retraining Notification ("**WARN**") Act.  29 U.S.C. §§ 2101–09.  On May 18, 2023, the Debtors issued a second round of WARN Notices (together with the notices issued on May 9, 2023, the "**WARN Notices**") to 98 Employees, all located in the Farmington Hills, Michigan office location.[6]  The Debtors notified these Employees that permanent layoffs would begin as early as July 8, 2023 and no later than July 21, 2023.  The Debtors also notified the relevant government authorities.  These layoffs are due to insufficient funding resulting primarily from a dispute with Foxconn regarding its contractual obligations to LMC.

---

[6]     Some of these Employees have been placed on administrative leave.  Therefore, they are not reporting to work but are continuing to be paid.

8

### B. Wages and Salaries

18.     In the ordinary course of business, the Debtors incur obligations related to base wages, salaries, severance payments and other compensation for time or hours worked (collectively, the "**Wages**") owed to Employees.  The Debtors' Wages are approximately $2.9 million per month, including Employee payroll taxes, benefit deductions, garnishments, and other miscellaneous deductions, up to the Priority Cap as to each Employee in the ordinary course of business.  In the ordinary course of their business, the Debtors made their last regular payroll for time worked through June 17, 2023 on June 23, 2023, *i.e.*, three days before the Petition Date.

19.     Employees are paid bi-weekly, with payments remitted one week in arrears.  For each bi-weekly period, the Company submits three separate payments: (i) payment for all Employees of LEVC; (ii) payment for the Employee of Lordstown EV Sales LLC; and (iii) severance payments for former LEVC Employees receiving severance payments.  Per the Company's contractual agreement with Paylocity, the method of funding varies based on the bi-weekly payroll amount for each separate payroll payment: (i) if a Debtor's specific bi-weekly net payroll payment exceeds $1 million, the Debtor must wire transfer the funds to Paylocity no later than one day prior to the payroll check date; and (ii) if a Debtor's specific bi-weekly net payroll payment is less than $1 million, Paylocity draws funds via electronic funds transfer ("**EFT**") from LEVC Payroll Account (ending in 7592) with JP Morgan Chase Bank, N.A. (the "**Payroll Bank Account**").

20.     On June 23, 2023, the Debtors processed a company-wide Employee payroll for the pay period ending June 17, 2023, the Debtors standard bi-weekly pay period end date.  The next regularly-scheduled bi-weekly pay date will be July 7, 2023.  As of the Petition Date, the

AMERICAS 122560934

Debtors owe approximately $720,000 (not including Payroll Taxes (as defined below)) in unpaid and accrued prepetition Wages for their Employees.  By this Motion, the Debtors seek authority, but not direction, to continue paying all prepetition Wages up to the Priority Cap and all postpetition Wages in the ordinary course of business.

### C. Severance

21.     During the prepetition period, the Debtors in the ordinary course may pay discretionary severance payments to certain former Employees in an amount no greater than two to four weeks of wages for such Employees.  The Company also entered into severance agreements with former Employees from time to time.  As of the Petition Date, the Debtors do not believe they have any discretionary severance payments outstanding, but have outstanding contractual severance obligations owed to one former Employee whose employment was terminated within 180 days of the Petition Date.[7]

22.     The Debtors believe it is important that they honor their severance commitments. In doing so, the Debtors will show their current Employees that they fulfill the promises they make to their Employees, on which the Employees have relied in contributing their time and hard work to the Company.  The Debtors feel such assurances are invaluable to maintain and boost the morale of the current Employees.  Therefore, the Debtors believe that it is important that they have the flexibility to maintain their current practice of honoring their severance obligations for Employee retention and morale. Accordingly, the Debtors request that the Court authorize the Debtors to continue (i) the practice of making one-time, discretionary severance payments to non-insider Employees in amounts no greater than such Employee's four-week wage, and (ii) pay any severance obligations to any Employee terminated within 180 days of the Petition Date,

---

[7]     The Debtors owe this Employee contractual severance payments in excess of the Priority Cap.  However, the Debtors are only seeking authority to pay such obligations up to the Priority Cap.

AMERICAS 122560934

up to the Priority Cap, in the ordinary course of business, including payment of prepetition obligations related thereto, if any.

### D. Non-Employee Director Compensation

23.     Additionally, in the ordinary course of business, the Debtors pay fees ("**Board Fees**") to the board of directors of Lordstown Motor Corp.,[8] (the "**Board**", and each such director, a "**Director**") which board oversees all of the Debtors' operations.  Board Fees vary based on responsibilities and membership in various Board committees.  The Board Fees are paid quarterly in arrears, with quarterly payments totaling approximately $113,750 per quarter.  Two directors also serve in managerial roles as Employees, however they are not compensated for their Director responsibilities.  As of the Petition Date, the Debtors do not believe that they owe any amounts on account of Board Fees and do not by this Motion request authority to pay any prepetition Board Fees.  The Debtors believe that they are authorized to pay postpetition Board Fees in the ordinary course; however, out of an abundance of caution, by this Motion, the Debtors seek authority to continue to pay the Board Fees on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

## II.     Payroll: Fees, Deductions, and Taxes

### A.     Payroll

24.     The Debtors' employ the services of Paylocity Corporation ("**Paylocity**") to efficiently manage the Debtors' human resource information and payroll-related administrative functions, including the processing and payment of Wages, Withholding Obligations, and Payroll Taxes, and the administration of Employee Benefits and Health and Insurance Benefits (as defined below) (collectively, the "**Payroll Services**").  The Debtors pay fees of approximately

---

[8]     Each Director that sits on the Board of Lordstown Motors Corp. also sits on the board of directors of Debtor Lordstown EV Corporation.

$170,000 to Paylocity for performing these Payroll Services over the course of a year. With Paylocity's assistance, the Debtors can ensure that (i) Employees are paid on time, (ii) appropriate Deductions are made, (iii) payroll reporting is accurate, (iv) appropriate amounts are remitted to the applicable taxing and court authorities, and (v) Employee benefit reporting and transactions are accurate. Paylocity also provides the portal for former Employees to access their employment and other information. As of the Petition Date, the Debtors estimate that they owe approximately $20,400 to Paylocity on account of Payroll Services relating to the prepetition payment of Employees. The Debtors seek authority to pay any accrued amounts due to Paylocity for the Payroll Services and associated fees, and continue to pay Paylocity in the ordinary course of business.

### B.    Withholding Obligations

25.    The Debtors are required by certain laws to withhold from the Employees' Wages amounts related to federal, state, and local income taxes, Medicare taxes, Social Security, garnishments, and other withholdings (collectively, the "**Withheld Amounts**") for remittance to the appropriate taxing and court authorities.

26.    The Debtors also routinely deduct certain amounts from Wages, including, without limitation, (a) pre-tax and after-tax deductions pursuant to the Employee Benefits and Incentive Programs and Health and Insurance Benefits discussed herein (e.g., contributions relating to health care benefits, insurance premiums, and 401(k) contributions) and (b) other miscellaneous deductions as may be required in the various jurisdictions in which the Debtors operate (collectively, the "**Deductions**," and together with the Withheld Amounts, the "**Withholding Obligations**"). At current staffing levels, the Debtors estimate that they will

AMERICAS 122560934

withhold and remit approximately $925,000 per month on account of Employee Withholding Obligations.

27.    As of the Petition Date, the Debtors estimate that they hold approximately $90,000 in funds withheld on account of Withholding Obligations that have not been remitted to the applicable third-party payees.  The Debtors believe that the unpaid Withholding Obligations are generally held in trust by the Debtors and are not property of their estates.  The Debtors request specific authority, but not direction, to direct Paylocity, as applicable, to remit the unpaid Withholding Obligations to the appropriate third-party recipients and to continue to honor and process the Withholding Obligations on a postpetition basis, in the ordinary course of business and in their sole discretion.

### C.    Payroll Taxes

28.    In addition to the Withholding Obligations, the Debtors are required to pay or match from their own funds certain statutory tax obligations (together, the "**Payroll Taxes**"). For example, in the U.S., the federal government requires that the Debtors pay the employer portions of Social Security and Medicare.  Failure to do so could result in penalties to the Debtors or other severe consequences, such as personal liability for the Debtors' officers.  At current staffing levels, the Debtors estimate that they will have Payroll Tax obligations of approximately $100,000 per month.  As of the Petition Date, the Debtors estimate that they owe approximately $60,000 on account of Payroll Taxes relating to the prepetition payment of Employees.  The Debtors request specific authority, but not direction, to direct Paylocity, as applicable, to remit the unpaid Payroll Taxes to the appropriate recipients and to continue to honor and process the Payroll Taxes on a postpetition basis, in the ordinary course of business and in their sole discretion.

AMERICAS 122560934

III.   **Employee Benefits and Incentive Programs**[9]

29.     In the ordinary course of business, and as discussed in more detail below, the Debtors offer various types of standard employee benefits and incentive policies to retain and incentivize their Employees, including Paid Leave, a 401(k) Plan, Relocation Benefits, Reimbursable Expenses, and Referral Bonuses (each as defined below, and collectively, the "**Employee Benefits and Incentive Programs**").  The Debtors believe that these programs are essential and necessary to preserve the morale and good will of their Employees, who, in turn, are the backbone to the Debtors' ongoing business and critical to maximizing the value of the Debtors' estates.  Non-payment of the Employee Benefits and Incentive Programs would be highly detrimental to the Debtors' estates.

A.  **Employee Benefits**

30.     Paid Leave.  The Debtors' full-time Employees are eligible to receive paid time off ("**PTO**").  The Employees are entitled to PTO for vacation, holidays, medical leave, bereavement, and jury duty (together, the "**Paid Leave**").  Under the Debtors' policy, the Employees earn PTO on a bi-weekly basis based on hire date.[10]  Employees are permitted to roll over forty (40) earned but unused vacation hours per calendar year.  Employees are not entitled to payments for unused vacation time, with the exception of the Debtors' Employees located in California.  As of the Petition Date, the Debtors estimate that they owe approximately $90,000

---

[9]   The Debtors have historically provided a discretionary annual bonus program and an equity incentive plan as incentive programs for their Employees.  By this Motion, the Debtors are not seeking authority to make payments under these programs.  The Debtors reserve the right to seek relief to make payments pursuant to these programs during these Chapter 11 Cases.

[10]  Employees earn Paid Leave per bi-weekly pay period pursuant to the following structure: (i) 4.62 hours for Employees with less than 5 years of service; (ii) 5.23 hours for Employees hired prior to January 1, 2023 with 2 completed years of service; (iii) 6.16 hours for Employees with 5 or more completed years of service and Vice Presidents (regardless of length of service).

AMERICAS 122560934

on account of accrued and unpaid Paid Leave due and owing to Employees as required by California state law.

31.  <u>Retirement</u>.  The Debtors provide all eligible full-time Employees with a 401(k) retirement plan (the "**401(k) Plan**") through TransAmerica Corporation ("**TransAmerica**").  As of the Petition Date, approximately 120 Employees participated in the 401(k) Plan.  Both Company and Employee contributions are withdrawn by TransAmerica directly from the Company payroll account within a few days after payroll.  The Debtors provide a matching contribution for eligible Employees (the "**401(k) Plan Match**") subject to certain calculations. The Debtors estimate that, as of the Petition Date, approximately $78,000 in prepetition 401(k) Plan Match obligations are due and owing.  The Debtors request authority to continue paying 401(k) Plan Match in the ordinary course of business and consistent with past practice.  The 401(k) Plan is a safe harbor plan, meaning that the Company may withhold 401(k) Plan Match contributions during the year if certain criteria are met.  As a result, in the calendar year following the 401(k) Plan, the Company conducts an analysis to determine if participants should have received more in Company contributions than actually received.  For the 2022 calendar year the Company had completed its analysis and determined that it had accrued a liability for a payment (the "**Safe Harbor Payment**") totaling approximately $120,000 for 63 Employee participants, which payments to TransAmerica were initiated prior to the Petition Date.  Out of an abundance of caution, in the event that the transfers of such payments to TransAmerica were not completed as of the Petition Date, the Debtors seek authority to (a) pay any outstanding Safe Harbor Payments up to but not exceeding the Priority Cap during the Interim Period and (b)

subject to entry of the Final Order, pay any outstanding Safe Harbor Payments, including in excess of the Priority Cap in amounts no greater than $8,000 per person.[11]

32.    <u>Relocation Benefits</u>. In the ordinary course of business, the Debtors pay certain expenses of Employees that must change living locations in connection with their jobs (the "**Relocation Benefits**").   The Relocation Benefits include costs associated with the transportation of household goods, eligible home sale and purchase closing costs expenses, temporary living accommodation costs, and other covered expenses.  The Debtors estimate that, as of the Petition Date, approximately $30,000 in prepetition Relocation Benefits are due and owing.  The Debtors request authority to continue paying Relocation Benefits in the ordinary course of business and consistent with past practice.

33.    <u>Reimbursable Expenses</u>.   In the ordinary course of business, the Debtors reimburse Employees and Directors for approved expenses incurred within the scope of their employment, including expenses for parking fees, tolls, travel, meals, lodging, cell phone, and other reasonable expenses (collectively, the "**Reimbursable Expenses**").  Employee and Director Reimbursable Expenses are directly submitted by the Employee or Director through Paylocity for approval by each Employee's manager prior to payment.  Reimbursable Expenses are processed through the Debtors' accounts payable process on approved expense reports.  The Debtors only have visibility to Employee and Director Reimbursable Expenses that have been submitted for approval.  As of the Petition Date, there are approximately $60,000 in unpaid Employee and Director Reimbursable Expenses submitted for payment.  Based on current circumstances, the Debtor has required advance approval of all Employee-travel related Reimbursable Expenses.  Failing to continue to reimburse Employees or Directors for Reimbursable Expenses could have a

---

[11]    The Debtors anticipate that this relief could apply to four members of the Debtors' senior leadership team, total payments to whom would exceed the Priority Cap by less than $16,000 in the aggregate.

negative effect on morale and could cause Employees or Directors with outstanding Reimbursable Expenses to suffer undue hardship or resign from their position with the Debtors.  Accordingly, the Debtors seek authority, in their sole discretion, to pay any outstanding prepetition Reimbursable Expenses in the ordinary course of business.

### B.  Employee Incentive Programs

34.   <u>Bonuses</u>.   Historically, the Debtors have provided eligible Employees with discretionary bonuses, including referral bonuses.  The Debtors offer a discretionary referral bonus ranging from $1,500 to $3,000 for Employees that refer a full-time Employee to the company (the "**Referral Bonus**").  The Company paid $1,500 in Referral Bonuses in 2022.  As of the Petition Date, the Debtors estimate that there are no outstanding payments with regard to the Referral Bonuses.  The Debtors seek authority, in their sole discretion, to pay the Referral Bonuses in the ordinary course of business.  By this Motion, the Debtors do not seek to pay any Referral Bonuses to insiders.

### IV.   <u>Health and Insurance Benefit Programs</u>

35.   In the ordinary course of business, and as set forth in more detail herein, the Debtors have established various standard and customary plans and policies to provide their Employees with (i) health benefits including medical, dental, and vision benefits (collectively, the "**Health Benefits**"), (ii) Insurance Benefits (as defined below), and (iii) Other Health Benefits Programs (as defined below, and, together with the Health Benefits and Insurance Benefits, the "**Health and Insurance Benefits**").

### A.   Health Benefits

36.   The Debtors offer basic medical and dental benefit coverage at no cost to their Employees.  Employees may elect to make a contribution for additional Health Benefits

AMERICAS 122560934

coverage.  The total premium for Health Benefits coverage is paid directly by the Debtors to its medical, dental and visions benefits providers, Cigna Health and Life Insurance Company ("**Cigna**") and Principal Life Insurance Company ("**Principal Life**"), on or before the first of every month.  The Employee-funded portion of medical benefits is recouped by the Debtors on an annual basis ratably through bi-weekly payroll deductions.

37.     With respect to the medical plans, the Debtors pay an average of approximately $320,000 per month, inclusive of approximately $294,000 in employer contributions, and $26,000 in Employee contributions.  For dental benefits, the Debtors pay an average of approximately $11,000 per month, inclusive of approximately $7,000 in employer contributions, and $4,000 in Employee contributions.  The Debtors do not pay any premiums on the vision plan as it is a voluntary program.  The Debtors request the authority to continue their practices related to the Health Benefits during and after the Interim Period in the ordinary course of business.

**B.     Insurance Benefits**

38.     In the ordinary course of business, the Debtors provide their Employees with employer-funded insurance benefits, which include short-term and long-term disability insurance, life insurance, and accidental death and dismemberment insurance (the "**Employer-Funded Insurance Benefits**").  The Company also offers voluntary life insurance, accidental death and dismemberment insurance to covered Employees' family members, and long-term disability insurance (the "**Voluntary Insurance Benefits**," together with the Employer-Funded Insurance Benefits, the "**Insurance Benefits**").  The Insurance Benefits are administered by Principal Life Insurance Group.  The Debtors pay approximately $30,000 per month for the Insurance Benefits, inclusive of approximately $22,000 in employer contributions and $8,000 in Employee contributions.  The Debtors also request the authority to continue their practices

18

related to the Insurance Benefits during and after the Interim Period in the ordinary course of business.

### C.    Other Health Benefits Programs

39.    The Debtors provide other benefit programs (the "**Other Health Benefits Programs**") to eligible Employees, including the following:

40.    <u>Health Savings Account</u>.  Employees that elect the base, high-deductible medical plan receive a Company contribution to their health savings account (each, an "**HSA**") of $115.38 each bi-weekly pay period.  In addition, the Employee may voluntarily contribute a portion of their pre-tax compensation through bi-weekly payroll deductions to their HSA, up to the maximum amount allowed by the IRS.  The HSA program, which is administered by Paylocity for the benefit of the Employees, is to be used for current or future medical expenses. In the ordinary course of business, the Debtors contribute funds to HSA accounts each bi-weekly payroll period.  As of the Petition Date, the Debtors believe there are approximately $9,000 in HSA contributions for remittance to Paylocity.  The Debtors seek authority to remit the prepetition contributions to Paylocity and to continue contributing to the HSA accounts in the ordinary course of business.

41.    <u>Flexible Spending Accounts</u>. The Debtors provide Employees the opportunity to elect a Flexible Spending Accounts (each, an "**FSA**") administered by Paylocity. The FSAs allow Employees to contribute pre-tax dollars for eligible out-of-pocket expenses related to qualified health and dependent care expenses.  The Employee contribution is based on an annual amount, elected annually during the open enrollment period and are funded through the bi-weekly payroll deductions, up to the maximum allowed by the IRS.  Employee withholdings are not immediately funded to the Employee's FSA account.  To access the funds, the employee

either charges eligible health and dependent care charges on a debit card which had been issued

to the Employee by Paylocity or the Employee submits a claim to Paylocity for reimbursement.

Funds for payment of incurred Employee FSA charges are withdrawn via pre-authorized ACH

by Paylocity from the Debtors' payroll bank account on a weekly basis.  Under FSA rules, the

full annual contribution election is immediately and fully available to the Employee to apply to

eligible expenses on January 1st of the benefits year, or the first day of benefits for new hires.

As of the Petition Date, the Debtors believe there is liability of approximately $120,000 in future

FSA contributions required by the Debtor to cover eligible Employee FSA reimbursements.  The

Debtors seek authority to remit the prepetition contributions to Paylocity and to continue

contributing to the FSA accounts in the ordinary course of business.

**BASIS FOR RELIEF**

**I.** **Payment of the Prepetition Employee Obligations Is Authorized and Appropriate Under Sections 105(a), 363, 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 by the Bankruptcy Code**

42.     As a result of the commencement of the Chapter 11 Cases and in the absence of

an order of the Court providing otherwise, the Debtors will be prohibited from paying or

otherwise satisfying most, if not all, of their Prepetition Employee Obligations, and the checks,

wire transfers, and direct deposit transfers issued in respect of the Prepetition Employee

Obligations will be dishonored. The failure to honor these obligations would have devastating

consequences on the Debtors' Employees, and on the Debtors' efforts to maximize the value of

their estates.

43.     The Debtors believe that all of the amounts they seek to pay for Prepetition

Employee Obligations during the Interim Period are entitled to priority under sections 507(a)(4)

and (a)(5) of the Bankruptcy Code.  Section 507(a)(4) of the Bankruptcy Code grants priority to

employee claims for "wages, salaries, or commissions, including vacation, severance and sick

20

leave pay" earned within 180 days before the filing of the applicable petition up to $15,150 per employee. 11 U.S.C. § 507(a)(4). Similarly, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefits plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $15,150, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code. 11 U.S.C. § 507(a)(5). Thus, other than as discussed herein, granting the relief sought herein would likely affect only the timing, and not the amount, of payment of the Prepetition Employee Obligations to the extent they constitute priority claims.

44.    The Debtors submit that payment of prepetition Wages and salary claims and the other Prepetition Employee Obligations are made in the ordinary course of business. Even if they are not, this Court is empowered under section 363 of the Bankruptcy Code to authorize the Debtors' to expend funds outside the ordinary course of business. 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, a debtor must articulate a valid business justification for the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Payment of prepetition wage and salary claims to preserve and protect a debtor's business, maximize the value of its estate, and maintain positive employee morale is a sufficient business justification for such an authorization. *See id*. at 175. Accordingly, this Court should grant the requested relief under section 363 of the Bankruptcy Code.

45.    Even if a particular claim is not entitled to priority, and the payments are found to be outside the ordinary course (which they are not), payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have

consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition employee claims. *See, e.g.*, *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *see also Gregg v. Metro. Tr. Co.*, 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts"); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175-76 (finding that payment of prepetition wages, salaries, reimbursable business expenses, and health benefits to active employees authorized).

46.     "The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). There, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l)*, No. 09-078-SLR, 2009 U.S. Dist. LEXIS 10024, at *9 (D. Del. Feb. 10, 2009) (denying a stay pending appeal on the grounds that there is not a serious basis to challenge the doctrine of necessity in the Third Circuit); *In re Just for Feet, Inc.*, 242 B.R. at

22

824-25 (noting that the Third Circuit permits debtors to pay prepetition claims that are essential to continued operation of business).

47.     The Debtors' ability to maximize value depends, in large part, upon the motivation of the Employees.  Most of the Debtors' Employees (and their families), are dependent upon the Wages, salaries, reimbursements, and other benefits they receive from the Debtors.  Any disruption from Employee resignations or lack of morale could have devastating effects on the Debtors' restructuring efforts.  Accordingly, it is critical that the Debtors be authorized to honor their Prepetition Employee Obligations during and after the Interim Period, subject to the limitations described herein.

48.     Moreover, the Debtors, operating their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries with a "duty to protect and conserve property in its possession for the benefit of creditors."  *In re Marvel Entm't Grp.*, 140 F.3d 463, 474 (3d Cir. 1998).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

49.     Pursuant to this Motion, the Debtors are also seeking the entry of a Final Order authorizing the Debtors to pay amounts due under any Prepetition Employee Obligations.  As discussed in further detail herein, the Debtors believe that the programs and benefits described herein are an integral part of the aggregate compensation package for Employees.  The eligible Employees play a critical role in maximizing the value of the Debtors' business operations.  As such, failure to pay the Prepetition Employee Obligations in the ordinary course of business would negatively affect the morale and productivity of the Debtors' Employees and would

AMERICAS 122560934

undoubtedly impair the Debtors' ability to maximize the value of their estates in these Chapter 11 Cases.

50.     For all the reasons previously set forth herein, the Debtors submit that payment of the Prepetition Employee Obligations and the continuation of the specified related employment policies and programs are necessary to the success of the Debtors' orderly restructuring and should be authorized by this Court.

51.     As a precaution, the proposed Interim and Final Orders provide that the relief granted therein shall not constitute or be deemed an assumption under section 365 of the Bankruptcy Code of any of the employment and service agreements to which the Debtors are a party or any of the Debtors' Employee benefits policies, plans, programs, practices, and procedures.

## II.     Payment of the Employee Withholdings Is Appropriate Under Section 541 of Bankruptcy Code Because Such Funds Are Not Property of the Debtors' Estates

52.     A portion of the Prepetition Employee Obligations, constitute funds held in trust for payment to third parties.  The payment of the Employee Withholdings, including Deductions and Payroll Taxes, will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 58–59 (1990) ("Because the debtor does not own an equitable interest in the property he holds in trust for another, that interest is not 'property of the estate.'").  Further, failure to pay these amounts could subject the Debtors and their officers and directors to liability.  *See, e.g.*, *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 926 (3d Cir. 1990) (finding that an officer of the debtor corporation was personally liable for the debtors' tax liabilities, and noting that the officer's liability was entirely separate and distinct from debtor's liability, even though the

24

liability stemmed from the same withholding taxes); *see also* 26 U.S.C. § 6672(a) ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to . . . pay over such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."). Accordingly, the Debtors should be permitted to pay all obligations related to Employee Withholdings, including Deductions and Payroll Taxes.

III.   **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers**

53.    The Debtors also request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to Prepetition Employee Obligations, so long as sufficient funds are available in the applicable accounts to make the Payments.

54.    The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of existing cash reserves. Also, under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of Prepetition Employee Obligations. Accordingly, the Debtors believe that wire and electronic bank transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized when requested by the Debtors, to receive, process, honor, and pay any and all fund transfer requests made by the Debtors related to Prepetition Employee Obligations so long as sufficient funds are available in the applicable accounts to make the payments. Any such financial institution may rely on the representations of the Debtors as to which wire or electronic

AMERICAS 122560934

bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## <u>RESERVATION OF RIGHTS</u>

55.     The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Prepetition Employee Obligations and claims related thereto, and (z) if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not and should not be construed as an admission as to the validity of any Prepetition Employee Obligations or claims related thereto or as a waiver of the Debtors' rights to dispute such Prepetition Employee Obligations or claims related thereto subsequently.

AMERICAS 122560934

## IMMEDIATE RELIEF IS NECESSARY TO AVOID
## IMMEDIATE AND IRREPARABLE HARM

56.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of a successful case outcome is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to reorganize).  The Third Circuit has interpreted the language "immediate irreparable injury" in the context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

57.     Here, immediate and irreparable harm would result without the relief requested herein.  To the extent that the Debtors owe any accrued but unpaid Prepetition Employee Obligations as of the Petition Date, failure to pay such Prepetition Employee Obligations in the ordinary course may cause the Employees to cease working, which would be detrimental to the value of the Debtors' estates.

58.     Moreover, payment of any Prepetition Employee Obligations is essential to ensure the continued operation of the Debtors' business.  Failure to do so during the first 21 days

27

of these Chapter 11 Cases would result in needless disruption to the Debtors' business and may jeopardize the Company's operations at this critical time. For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

59.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because payment of any accrued and unpaid is essential to prevent potentially irreparable harm to the Debtors' business and value.

### NOTICE

60.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (vii) Paylocity; (viii) TransAmerica; (ix) Cigna; (x) Principal Life; and (xi) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

### NO PRIOR REQUEST

61.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other and further relief as is just and proper.

Dated: June 27, 2023

Respectfully submitted,

/s/ *Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**EXHIBIT A**

**Proposed Interim Order**

AMERICAS 122560934

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| | |
| | (Joint Administration Requested) |
| Debtors. | |
| | **Re:  Docket No. [●]** |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING,**
**THE DEBTORS TO (I) PAY PREPETITION WAGES AND COMPENSATION;**
**(II) CONTINUE CERTAIN EMPLOYEE BENEFITS AND INCENTIVE PROGRAMS;**
**(III) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFITS;**
**AND (B) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363, 507(a), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the Debtors, in their sole discretion, to (i) pending entry of a Final Order, pay and/or otherwise honor, as applicable, Prepetition Employee Obligations, and (ii) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations in the ordinary course of business during the Chapter 11 Cases, as more fully set forth in the Motion; and (b) granting other related relief, and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay and/or honor, in their sole discretion, the Prepetition Employee Obligations in an aggregate amount of no more than approximately $1.5 million (the "**Interim Amount**"); *provided, however*, that, during the Interim Period, no current or former Employee may receive payment on account of the Prepetition Employee Obligations of amounts in excess of the limits provided for by sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code pursuant to this Order, *except that* the Debtors are authorized, but not directed, during the Interim Period to honor all PTO obligations in the ordinary course of the Debtors' business *other than* termination or other cash pay for Paid Leave without regard to the Priority Cap.

AMERICAS 122560934

| Prepetition Employee Obligations | |
|---|---|
| **Category** | **Interim Order Amounts** |
| **Compensation, Payroll, and Payroll Processing** | |
| Wages (net of withholding) | $600,000 |
| Payroll Services | $20,400 |
| Withholding Obligations | $84,000 |
| Payroll Taxes | $54,000 |
| **Employee Benefits & Incentive Programs** | |
| 401(k) Plan Match | $78,000 |
| 401(k) Plan Safe Harbor Payment | $120,000 |
| 401(k) Plan Administrative Fees | $6,000 |
| Reimbursable Expenses | $30,000 |
| Relocation Expenses | $30,000 |
| Paid Leave | $0 |
| **Health and Insurance Benefits** | |
| Health Benefits | $360,000 |
| Insurance Benefits | $36,000 |
| Other Health Benefits Programs | $33,000 |
| **TOTALS** | **$1,451,400** |

3.  The Debtors are authorized, but not directed, in their sole discretion, to maintain, honor, and administer the Employee Benefits and Incentive Programs, Health and Insurance Benefits, and the Other Health Benefits Programs in the ordinary course of business and to pay any and all amounts due thereunder in the ordinary course of business without regard to the date that any such rights, benefits or obligations accrued (subject to the limitations set forth in ¶ 2 hereof); *provided*, *however*, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Prepetition Employee Obligation (including, policies, plans, programs, practices, and procedures) under section 365(a) of the Bankruptcy Code.

4.  Nothing in this Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code.  No payment to any Employee may be made pursuant to

AMERICAS 122560934

this Order to the extent that such payment is a transfer in derogation of section 503(c) of the Bankruptcy Code.  For the avoidance of doubt, this Order does not implicitly or explicitly approve any bonus plan, incentive plan, or other plan to the extent subject to section 503(c) of the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, to pay all Withholding Obligations and unremitted Payroll Taxes as and when such obligations are due, in their sole discretion.  The Debtors may remit any and all amounts withheld from Employees, including Social Security, FICA, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' Chapter 11 Cases or subsequent thereto.

6.      The Debtors are authorized, but not directed, in their sole discretion, to pay postpetition Board Fees in the ordinary course of business in accordance with prepetition practice.

7.      The Debtors are authorized and empowered to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

8.      All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Prepetition Employee Obligations, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.  Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which

4

Payments should be honored and paid in respect of the Prepetition Employee Obligations pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order. The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

9.      Subject to section 503(c) of the Bankruptcy Code, the Debtors are otherwise authorized to manage their workforce and Employee compensation in the ordinary course of business, in the exercise of their business judgment, and in compliance with all non-bankruptcy laws applicable to their Employee relationships in each applicable jurisdiction.

10.      Nothing in this Order shall authorize the Debtors to pay any Prepetition Employee Obligation to any insider, as such term is defined in 11 U.S.C. § 101(31), in excess of the Priority Cap.

11.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order;

AMERICAS 122560934

(f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Prepetition Employee Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Prepetition Employee Obligations allegedly due or owing to any Employees, and all of the Debtors' rights with respect thereto are hereby reserved.

12.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

13.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that relief is necessary to avoid immediate and irreparable harm.

14.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

15.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

16.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

17.     The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2023 at _____ __.m. (Eastern Time) (the "**Objection Deadline**").  The Final Hearing, if required, will be held on _____, 2023 at _____ __.m. (Eastern Time).

# EXHIBIT B

## Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re: Docket No. [●]** |

### FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) PAY PREPETITION WAGES AND COMPENSATION; (II) CONTINUE CERTAIN EMPLOYEE BENEFITS AND INCENTIVE PROGRAMS; (III) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFITS; AND (B) GRANTING OTHER RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363, 507(a), 541, 1107(a), and 1108 of the Bankruptcy Code, and Bankruptcy Rule 6004, (a) authorizing, but not directing, the Debtors to (i) pending entry of a Final Order, pay and/or otherwise honor, as applicable, the Prepetition Employee Obligations, and (ii) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations in the ordinary course of business during the Chapter 11 Cases, as more fully set forth in the Motion; and (b) granting other related relief, and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

§§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.  Any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2.      The Debtors are authorized, but not directed, to pay and/or honor, in their sole discretion, the Prepetition Employee Obligations in the ordinary course of the Debtors' business, and all fees related to and associated with the foregoing, as such obligations become due and payable, *provided, however*, that no current or former Employee may receive payment from the Debtors on account of Prepetition Employee Obligations in an amount greater than $15,150, (inclusive of any amounts paid to such individual pursuant to the Interim Order) pursuant to this Order, *except that* the Debtors are authorized, but not directed, to (i) make Safe Harbor Payments in excess of the Priority Cap, and (ii) to honor all PTO obligations in the ordinary course of the Debtors' business *other than* termination or other cash pay for Paid Leave without regard to the Priority Cap.

2

| Prepetition Employee Obligations | |
| --- | --- |
| **Category** | **Final Order Amounts (inclusive of Interim)** |
| **Compensation, Payroll, and Payroll Processing** | |
| Wages (net of withholding) | $720,000 |
| Payroll Services | $20,400 |
| Withholding Obligations | $90,000 |
| Payroll Taxes | $60,000 |
| **Employee Benefits & Incentive Programs** | |
| 401(k) Plan Match | $78,000 |
| 401(k) Plan Safe Harbor Payment | $120,000 |
| 401(k) Plan Administrative Fees | $6,000 |
| Reimbursable Expenses | $60,000 |
| Relocation Expenses | $30,000 |
| Paid Leave | $90,000 |
| **Health and Insurance Benefits** | |
| Health Benefits | $384,000 |
| Insurance Benefits | $36,000 |
| Other Health Benefits Programs | $129,000 |
| **TOTALS** | **$1,823,400** |

3.      The Debtors are authorized, but not directed, in their sole discretion, to maintain, honor, and administer the Employee Benefits and Incentive Programs, Health and Insurance Benefits, and the Other Health Benefits Programs in the ordinary course of business and to pay any and all amounts due thereunder in the ordinary course of business without regard to the date that any such rights, benefits or obligations accrued (subject to the limitations set forth in ¶ 2 hereof); *provided*, *however*, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Prepetition Employee Obligation (including, policies, plans, programs, practices, and procedures) under section 365(a) of the Bankruptcy Code.

4. Nothing in this Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code. No payment to any Employee may be made pursuant to this Order to the extent that such payment is a transfer in derogation of section 503(c) of the Bankruptcy Code. For the avoidance of doubt, this Order does not implicitly or explicitly approve any bonus plan, incentive plan, or other plan to the extent subject to section 503(c) of the Bankruptcy Code.

5. The Debtors are authorized, but not directed, to pay all Withholding Obligations and unremitted Payroll Taxes as and when such obligations are due, in their sole discretion. The Debtors may remit any and all amounts withheld from Employees, including Social Security, FICA, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' Chapter 11 Cases or subsequent thereto.

6. The Debtors are authorized, but not directed, in their sole discretion, to pay postpetition Board Fees in the ordinary course of business in accordance with prepetition practice.

7. The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

8. All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Prepetition Employee Obligations,

whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

9. Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Prepetition Employee Obligations pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

10. The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

11. Subject to section 503(c) of the Bankruptcy Code, the Debtors are otherwise authorized to manage their workforce and Employee compensation in the ordinary course of business, in the exercise of their business judgment, and in compliance with all non-bankruptcy laws applicable to their Employee relationships in each applicable jurisdiction.

12. Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and

5

nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Prepetition Employee Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Prepetition Employee Obligations allegedly due or owing to any Prepetition Employee, and all of the Debtors' rights with respect thereto are hereby reserved.

13.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

14.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

AMERICAS 122560934