## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[____] ( ) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING, BUT NOT DIRECTING THE DEBTORS TO (I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER AND (II) RENEW, REVISE, EXTEND, SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES, (B) MODIFYING AUTOMATIC STAY WITH RESPECT TO WORKERS' COMPENSATION PROGRAMS, AND (C) GRANTING OTHER RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the "**Final Order**," and, together with the Interim Order, the "**Orders**") granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105, 363, 364, 1107(a) and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Interim Order and the Final Order (a) authorizing, but not directing, the Debtors to (i) maintain existing Insurance Policies (as defined below) and pay on an uninterrupted basis, whether arising prepetition or postpetition, all insurance obligations arising thereunder or in connection therewith, including, but not limited to, premiums, administration costs, and brokers' fees (collectively the "**Insurance Obligations**"), and (ii) renew, revise, extend, supplement, change, or enter into new insurance coverage as needed in their business judgment without further order of this Court, and (b) modifying the automatic stay, if necessary, to permit the Debtors' employees to proceed with any claims they may have under the WC Policies (as defined below).

2.      The Debtors also request that the Orders (a) authorize and direct all applicable banks and other financial institutions (collectively, the "**Banks**"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Insurance Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and

2

other forms of payment, including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but not direct, the Debtors to continue in their ordinary course to make Payments on account of the Insurance Obligations.

3.      In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

4.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

5.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.      The predicates for the relief requested by this Motion are sections 105(a), 363, 364, 1107(a), and 1108 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.      Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

---

[3]      Such period between the date this Motion was filed and the Final Hearing shall be the "**Interim Period**."

AMERICAS 122647652

## BACKGROUND

### I.    Overview

8.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

9.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers.  The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

10.     On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.  Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[4]

---

[4]      DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

AMERICAS 122647652

pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a wholly-owned subsidiary of DiamondPeak.  DiamondPeak is now known as Lordstown Motors Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[5]

11.    In September 2021, the Company began a partnership with an affiliate of Hon Hai Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics manufacturer.  The purpose of the Foxconn partnership was to allow the Company to shift its business strategy from a vertically integrated OEM to a less capital-intensive model, focused on developing, engineering, testing, and industrializing EVs.  Since the inception of the partnership, however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors.  Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint product development plans and repudiated its promise to invest additional equity capital in the business.  Most recently, Foxconn has refused to complete its second purchase of common stock in accordance with the terms of the investment agreement between the Company and Foxconn.  Foxconn's actions have damaged the Company's business relationships, employee morale and relations, and the Company's future prospects, stripping it of its ability to continue as a going concern absent a strategic chapter 11 transaction.

12.    The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value for the benefit of their stakeholders given the ongoing, repeated breaches of contract and commitments by Foxconn.  Among other things, as part of these Chapter 11 Cases, the Debtors intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and  rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

---

[5]    Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

13.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II.    Overview of the Insurance Policies

14.     In connection with the operation of their business, the Debtors maintain approximately 30 insurance policies (the "**Insurance Policies**") that are administered by several third-party insurance carriers (collectively, the "**Insurance Carriers**").  The Insurance Policies provide coverage for, among other things: (a) general liability, including excess coverage (the "**General Liability Policies**"); (b) workers' compensation and employer liability ("**WC Policies**"); (c) property (the "**Property Policy**"); (d) director, officer, and fiduciary liability ("**D&O Policies**"); (e) product liability (the "**Product Liability Policies**"); (f) commercial crime and fidelity; (g) cyber security liability; (h) active shooter & workplace violence; (i) scheduled automobile insurance; and (j) employment practices liability.  A chart summarizing the Insurance Policies, Premiums (defined below), and Insurance Carriers is attached hereto as **Exhibit C**.  The Insurance Policies are essential to the continuation and preservation of the Debtors' businesses, property, and assets, and, in some cases, the coverage may be required by law or regulation, or obligated by contract.  The Insurance Policies provide coverage that is typical in scope and amount for businesses in the Debtors' industry.

15.     The Debtors' Insurance Policies expire on a rolling basis throughout the year.  It is critical that the Debtors continue to carry the necessary insurance coverage to operate their business.  As a result, the Debtors must negotiate renewal, extension and/or entry into new insurance policies with respect to expiring Insurance Policies in the ordinary course of business.

6

The next renewal dates under the Insurance Policies are June 30, 2023 and July 23, 2023 under the employment practices liability policy and active shooter and workplace violence policy, respectively, followed by renewal dates in October 2023 with respect to D&O Policies and crime and cyber liability policies.  By this Motion, the Debtors seek the authority, but not direction, to renew, modify, or extend on a postpetition basis the Insurance Policies in the ordinary course of business and to pay all Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations become due, including obligations related to any renewal or extension under the Insurance Policies, in an aggregate amount not to exceed $115,000.

16.     The Debtors typically obtain the Insurance Policies through Aon Risk Services Central Inc., Aon UK Limited (collectively, "**Aon**") and Arthur J. Gallagher Risk Management Services, Inc. ("**Gallagher**" and, together with Aon, the "**Brokers**").[6]  The Brokers assist in obtaining comprehensive insurance coverage and provide related services, including procuring and negotiating the Insurance Policies on advantageous terms and at competitive rates.

17.     In exchange for the receipt of these services, the Debtors are obligated to pay certain fees.  The Debtors pay Aon a commission fee for each successful Insurance Policy placement, and no other compensation.  The Debtors pay Gallagher a $35,000 annual fee for their services.  As of the Petition Date, the Debtors do not owe Aon or Gallagher any accrued and outstanding amounts.

18.     Premiums for the Debtors' insurance policies (the "**Premiums**") are paid in full, at or around the commencement of the coverage period.  The Debtors' Premiums for the current policy periods total approximately $9.9 million, not including approximately $60,000 in taxes, fees, and surcharges, and were paid in full prior to the Petition Date.

---

[6]     Certain of the Debtors' D&O Policies were brokered through RT Specialty Insurance Services, LLC.

19.     As of the Petition Date, the Debtors believe that there are no accrued and unpaid Premiums outstanding under any of the Insurance Policies.  By this Motion the Debtors seek to continue to pay postpetition Premiums and related fees and taxes under each Insurance Policy as they become due in the ordinary course of business.

### A.     General Liability Policies

20.     The General Liability Policies are underwritten by General Star Indemnity Company and Gemini Insurance Company.  Debtors LMC and Lordstown EV Corporation are both primary policy holders under the General Liability Policies.  The General Liability Policies provide base and excess coverage for general corporate losses that the Company may incur. The General Liability Policies were most recently renewed in February and March 2023 and each provide coverage through February 11, 2024.  The premiums related to the General Liability Policies are estimated at $210,000 for the 12-month policy period.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the General Liability Policies.

### B.     Property Policy

21.     The Property Policy provides property damage and related liability coverage for the Debtors' buildings and personal property, including the Debtors' electric van prototype.  The Property Policy is underwritten by The Cincinnati Insurance Company.  The Property Policy provides coverage through December 5, 2023 and the related premium is approximately $192,000.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the Property Policy.

**C.      Workers' Compensation Policies**

22.      In accordance with applicable laws, the Debtors maintain the WC Policies, which pay employees the total of all benefits, damages, and expenses resulting from any bodily injury by accident or disease (including resulting death and subject to certain exclusions), for which the Debtors are legally liable and provide coverage across all jurisdictions in which the Debtors operate.  Failure to maintain workers' compensation insurance could result in administrative or legal proceedings against the Debtors and their officers and directors.  It is critical that the Debtors maintain the WC Policies, as required by applicable laws.  Employers are held liable should workers' compensation coverage lapse, and most states impose additional penalties for lapses in coverage.  Absence of workers' compensation coverage would open employers up to additional, costly lawsuits from employees.  Moreover, failure to maintain workers' compensation coverage negatively impacts an employer's credit report and jeopardizes its ability to obtain coverage in the future.

23.      The Debtors maintain one WC Policy with a $1 million limit with The Cincinnati Indemnity Company.  LMC is the primary policy holder under the WC Policy.  The WC Policy provides coverage through July 1, 2023.  The premium related to the WC Policy is approximately $97,500 for the 12-month policy period.  The Debtors have entered into a new WC Policy with the Ohio Bureau of Workers' Compensation.  This WC Policy will become effective on July 1, 2023 and provide coverage through July 1, 2024, and the related premium is approximately $174,000, which has been paid.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the WC Policies.

24.      The Debtors also seek authorization, pursuant to section 362(d) of the Bankruptcy Code, to permit their employees to proceed with their workers' compensation claims ("**WC**

AMERICAS 122647652

Claims") in the appropriate judicial or administrative forum, provided that employees may only pursue their WC Claims in accordance with the applicable workers' compensation programs and recoveries, if any, shall be limited to the proceeds therefrom.  Cause exists to modify the automatic stay, if necessary, because staying WC Claims could have a detrimental effect on the financial wellbeing and morale of the Debtors' employees and lead to their departure.  Such circumstances could cause a severe disruption in the Debtors' business to the detriment of all parties in interest.  The Debtors do not hereby seek a waiver, termination, or modification of the automatic stay with respect to any claims other than the WC Claims.

### D. D&O Policies

25.    The Debtors maintain D&O Policies, which provide base and excess insurance coverage for the Debtors and their directors, officers, and fiduciaries.  The D&O Policies are underwritten by various Insurance Carriers, as detailed in **Exhibit C**.  The premiums related to the D&O Policies total approximately $8.1 million, which have been paid in full.  Prior to the Petition Date, the Debtors extended the terms of the D&O Policies from October 23, 2023 to April 23, 2024, and also purchased a six year run-off coverage of additional coverage upon emergence from bankruptcy.  The premium for the extension and purchase of run-off coverage was $4.5 million.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the D&O Policies.

### E. Product Liability Policies

26.    The Debtors also maintain Product Liability Policies, which provide coverage for the Debtors for bodily injury & property damage arising out of its products.  The Product Liability Policies also cover certain Foxconn affiliates,[7] which pay for half of the Premium

---

[7]    These entities include: MIH EV Design LLC; Hon Hai Precision Industry Co., Ltd.; Foxconn (Far East) Limited – Cayman; Foxteq Holdings Inc. – Cayman; Foxteq Integration Inc. – Cayman; PCE Paragon Solutions

payments owed on account of the policies.  The Product Liability Policies are underwritten by the Underwriters at Lloyd's London and Magna Carta Insurance, Ltd.  The premiums related to the Product Liability Policies total approximately $1.2 million, which have been paid in full.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the Product Liability Policies.

> **F.    Other Policies**

27.    The Company has additional insurance coverage (the "**Other Policies**") for (a) crime, which includes coverage for theft, robbery and employee dishonesty; (b) cyber liability, including coverage for cyber extortion and loss of personal data; (c) automobile insurance for scheduled vehicles; (d) active shooter and workplace violence; and (e) employment practices liability.  The Other Policies are underwritten by AXIS Insurance Company, Accredited Specialty Insurance Company, The Cincinnati Insurance Company, and CFC Underwriting Limited, Lloyd's America Inc., and Ironshore Specialty Insurance Company. The premiums related to the Other Policies total approximately $120,000, which have been paid in full.  The Other Policies are renewed and billed once annually.  As of the Petition Date, the Debtors believe that no accrued and unpaid Premiums or other amounts are outstanding under the Other Policies.

## BASIS FOR RELIEF

**I.    Continuation of the Insurance Policies and Payment of the Insurance Obligations Is Authorized by the Bankruptcy Code**

28.    The Debtors submit that the continuation, maintenance, and renewal of the Insurance Policies, as well as the entry into new policies in the ordinary course of business, is

---

Ktf.-Hungary; Foxconn EV Technology Inc., Foxconn EV System, LLC, Foxconn EV Energy LLC, and any of its subsidiaries, companies, affiliates, corporations, trusts and associations, but only with respect to product liability claims involving the Endurance.

warranted and that the payment of the Insurance Obligations is appropriate. Section 1112(b) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).   In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the U.S. Trustee (the "**U.S. Trustee Operating Guidelines**").[8]   Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

29.      The Debtors submit that payment of the Insurance Obligations is appropriate pursuant to sections 105(a), 363, 364, 1107(a), and 1108 of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).   Under this section, a court may authorize a debtor to pay certain prepetition claims.   *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). In order to do so, "the debtor must articulate some business justification, other than mere appeasement of major creditors[.]" *Id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holdings Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (the debtor must "show ... a sound business purpose" justifying the proposed use

---

[8]      U.S. Trustee's Guidelines § 4.4.7, U.S. Dep't of Justice, https://www.justice.gov/ust-regions-r17/us-trustees-guidelines#4.4.7 (last updated Dec. 16, 2016).

AMERICAS 122647652

of property); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use of property under section 363(b) of the Bankruptcy Code).  As set forth below, there is a sound business justification for payment of any outstanding premiums related to the Insurance Policies.

30.    Additionally, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under the doctrine of necessity, a bankruptcy court may exercise its equity powers under section 105(a) to authorize a debtor to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (bankruptcy courts may exercise equity powers to authorize payment of prepetition debt where such payment is necessary to preserve the going concern value of a debtor's business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

31.    To the extent there has been reluctance to rely solely on section 105(a) or the doctrine of necessity, several courts have authorized payment of critical prepetition claims, or implied that such authority would be granted, by relying on section 105(a) in conjunction with other sections of the Bankruptcy Code.  *See, e.g.*, *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 19-20 (Bankr. M.D. Fla. 2005) (acknowledging that in certain circumstances section 363(b)(1) might authorize payment of prepetition claims if it was shown that such payment would "enable a successful reorganization" and make "even the disfavored creditors better off"); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that the preplan satisfaction of prepetition claims may be necessary to satisfy a debtor's fiduciary duties under sections 1106 and 1107 of the Bankruptcy Code).  Notably, the operating guidelines for chapter 11 cases

13

established by the Office of the United States Trustee require debtors to maintain insurance coverage throughout their chapter 11 proceedings.

32.     Finally, sections 1107(a) and 1108 of the Bankruptcy Code, which impose on the Debtors, as fiduciaries, a "duty to maximize the value of the bankruptcy estate[s]" effectively requires the Debtors to seek payment of the Insurance Obligations.  *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003).  "The debtor-in-possession's fiduciary duty to maximize includes the 'duty to protect and conserve property in its possession for the benefit of creditors.'"  *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (citing *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.  The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ."  *Id.*

33.     Here, there is a strong rationale for authorizing the Debtors to maintain their Insurance Policies, pay the Insurance Obligations, and renew or enter into the new insurance policies, as applicable.   The Insurance Policies are required by various state and federal regulations and by contracts that govern the Debtors' business.   Disruption of the Debtors' insurance coverage would expose the Debtors to serious risks, including: (a) the incurrence of direct liability for the payment of claims that otherwise would have been payable by Insurance Carriers; (b) the occurrence of material costs and other losses that would have otherwise been reimbursed by the Insurance Carriers; (c) the loss of good-standing certification to conduct business in states that require the Debtors to maintain certain levels of insurance coverage;

AMERICAS 122647652

(d) the inability to obtain similar types of insurance coverage; and (e) the incurrence of higher costs for obtaining new insurance coverage.  Moreover, while the Debtors question the right of any insurer to terminate the Insurance Policies for non-payment of premiums, any litigation associated with such alleged termination would be contested and, thus, very costly to the Debtors' estates.  Granting the relief requested herein would avoid these consequences and would allow the Debtors' business operations to continue without interruption during the Chapter 11 Cases.

II.     **Cause Exists to Modify the Stay for WC Claims**

34.     Pursuant to section 362(d) of the Bankruptcy Code, the Debtors seek authority to modify the automatic stay to permit employees who hold WC Claims to proceed with such claims in the appropriate judicial or administrative forum and waive corresponding notice requirements under Bankruptcy Rule 4001(d).  There is cause to modify the automatic stay because staying the WC Claims could result in employee departures or otherwise harm employee morale at a time when the Debtors need to stabilize their businesses.  Unnecessary distractions—or worse, heavy attrition—could jeopardize the Debtors' chapter 11 process and result in irreversible harm to the Debtors' businesses.  Accordingly, the Debtors request that the Court modify the automatic stay as it relates to valid WC Claims to allow employees holding any such claims to pursue resolution and collection in accordance with the applicable workers' compensation programs, provided that recoveries, if any, shall be limited to the proceeds from the applicable workers' compensation programs.

III.    **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers**

35.     The Debtors also request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in their sole discretion, to receive,

process, honor, and pay any and all Payments made by the Debtors related to Insurance Obligations, including prepetition Insurance Obligations, so long as sufficient funds are available in the applicable accounts to make the Payments.

36.    The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations.  Also, under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of prepetition Insurance Obligations.  Accordingly, the Debtors believe that wire and electronic bank transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized when requested by the Debtors, to receive, process, honor, and pay any and all fund transfer requests made by the Debtors related to prepetition Insurance Obligations so long as sufficient funds are available in the applicable accounts to make the payments.  Any such financial institution may rely on the representations of the Debtors as to which wire or electronic bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

### RESERVATION OF RIGHTS

37.    The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or

AMERICAS 122647652

applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Insurance Obligations and claims related thereto, and (z) if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not and should not be construed as an admission as to the validity of any Insurance Obligations or claims related thereto or as a waiver of the Debtors' rights to dispute such Insurance Obligations or claims related thereto subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

38.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of a successful case outcome is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to reorganize).  The Third Circuit has interpreted the language "immediate

17

irreparable injury" in the context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

39.    Here, immediate and irreparable harm would result without the relief requested herein.  To the extent that the Debtors owe any accrued but unpaid Insurance Obligations and as of the Petition Date or any such obligations become due postpetition, failure to pay such prepetition Insurance Obligations in the ordinary course may cause the Insurance Carriers to assert liens over the Debtors' property or cancel the Insurance Policies.  Cancellation of the Insurance Policies would result in the Debtors being in violation the U.S. Trustee Guidelines, the laws of various jurisdictions in which the Debtors operate, and various contractual agreements, and would also put the Debtors at risk of being unable to find alternative insurance coverage.

40.    Moreover, payment of any prepetition or postpetition Insurance Obligations is essential to ensure the continued operation of the Debtors' business.  Failure to do so during the first 21 days of these Chapter 11 Cases would result in needless disruption to the Debtors' business and may jeopardize the Company's operations at this critical time.  For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

AMERICAS 122647652

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

41.    To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived.  Such waiver is warranted here because the immediate payment of any accrued and unpaid prepetition or postpetition Insurance Obligations is essential to prevent potentially irreparable harm to the Debtors' business and ability to maximize value for stakeholders.

## NOTICE

42.    Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (ix) the Insurance Carriers and Brokers; and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

43.    No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other

and further relief as is just and proper.

Dated: June 27, 2023

Respectfully submitted,

/s/ *Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and*
*Debtors-in-Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING THE DEBTORS TO
(I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE
OBLIGATIONS ARISING THEREUNDER AND (II) RENEW, REVISE, EXTEND,
SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES,
(B) MODIFYING THE AUTOMATIC STAY WITH RESPECT TO WORKERS'
COMPENSATION PROGRAMS, AND (C) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**")
pursuant to sections 105(a), 363, 364, 1107(a), and 1108 of the Bankruptcy Code and
Bankruptcy Rules 6003 and 6004, (a) authorizing, but not directing, the Debtors to (i) continue
and maintain existing insurance policies and pay on an uninterrupted basis, whether arising
prepetition or postpetition, all insurance or other obligations arising thereunder or in
connection therewith, including, but not limited to, premiums, deductibles, and administration
costs, and (ii) renew, revise, extend, supplement, change or enter into new insurance coverage
as needed in their business judgment without further order of this Court; (b) modifying the
automatic stay with respect to workers' compensation programs; and (c) granting other related
relief, and the Court having found that it has jurisdiction to consider the Motion and the relief

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown
Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors'
service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain the Insurance Policies and to pay all Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations become due, including obligations related to any renewal or extension under the Insurance Policies, in an aggregate amount not to exceed $115,000.

3.      The Debtors are authorized, but not directed, to continue using the Brokers as their insurance brokers and to pay any related fees that may come due in the ordinary course during the Chapter 11 Cases.

AMERICAS 122647652

4.      Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, or change any of the Insurance Policies, or enter into new insurance coverage as needed in their reasonable business judgment.

5.      The Debtors are authorized and empowered to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

6.      Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified to the extent any of the Debtors' employees hold claims under or in connection with the WC Policies, in the Debtors' sole discretion, solely to the extent necessary to permit such employees to proceed with their WC Claims through and including the collection or payment of any judgment or claim in the appropriate judicial or administrative forum under the WC Policies; provided that the prosecution of such claims is in accordance with the WC Policies and the recoveries are limited to the proceeds available under the WC Policies.

7.      All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Insurance Obligations, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.  Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Insurance Obligations pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.  The Debtors are authorized to issue

3

new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

8.       Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Insurance Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Insurance Obligations allegedly due or owing to any Insurance Carriers or Brokers and all of the Debtors' rights with respect thereto are hereby reserved.

9.       To the extent that an Insurance Policy is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, payment pursuant to this Interim Order shall not be deemed to constitute postpetition assumption or adoption of the policy or agreement as an executory contract pursuant to section 365 of the Bankruptcy Code.

4

10.    The requirements set forth in Local Rule 9013-1(b) are satisfied.

11.    The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that relief is necessary to avoid immediate and irreparable harm.

12.    The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

13.    This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

14.    This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

15.    The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2023 at _____ __.m. (Eastern Time) (the "**Objection Deadline**").  The Final Hearing, if required, will be held on _____, 2023 at _____ __.m. (Eastern Time).

AMERICAS 122647652

# **EXHIBIT B**

## **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

**FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING THE DEBTORS TO
(I) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE
OBLIGATIONS ARISING THEREUNDER AND (II) RENEW, REVISE, EXTEND,
SUPPLEMENT, CHANGE OR ENTER INTO NEW INSURANCE POLICIES,
(B) MODIFYING THE AUTOMATIC STAY WITH RESPECT TO WORKERS'
COMPENSATION PROGRAMS, AND (C) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**")
pursuant to sections 105(a), 363, 364, 1107(a), and 1108 of the Bankruptcy Code, and
Bankruptcy Rule 6004, (a) authorizing, but not directing, the Debtors to (i) continue and
maintain existing insurance policies and pay on an uninterrupted basis, whether arising
prepetition or postpetition, all insurance or other obligations arising thereunder or in
connection therewith, including, but not limited to, premiums, deductibles, and administration
costs, and (ii) renew, revise, extend, supplement, change or enter into new insurance coverage
as needed in their business judgment without further order of this Court; (b) modifying the
automatic stay with respect to workers' compensation programs; and (c) granting other related
relief, and the Court having found that it has jurisdiction to consider the Motion and the relief

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown
Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors'
service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.  Any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2.      The Debtors are authorized, but not directed, to maintain the Insurance Policies and to pay all Insurance Obligations arising under or in connection with the Insurance Policies as such Insurance Obligations become due, whether prepetition or postpetition, including obligations related to any renewal or extension under the Insurance Policies.

3.      The Debtors are authorized, but not directed, to continue using the Brokers as their insurance brokers and to pay any related fees that may come due in the ordinary course during the Chapter 11 Cases.

AMERICAS 122647652

4.      Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, or change any of the Insurance Policies, or enter into new insurance coverage as needed in their reasonable business judgment.

5.      The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

6.      Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is hereby modified to the extent any of the Debtors' employees hold claims under or in connection with the WC Policies, in the Debtors' sole discretion, solely to the extent necessary to permit such employees to proceed with their WC Claims through and including the collection or payment of any judgment or claim in the appropriate judicial or administrative forum under the WC Policies; provided that the prosecution of such claims is in accordance with the WC Policies and the recoveries are limited to the proceeds available under the WC Policies.

7.      All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Insurance Obligations, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

8.      Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Insurance Obligations pursuant to the Motion and this Order, and any such Bank shall not have any liability

3

to any party for relying on such directions or representations by the Debtors as provided in this Order.

9.    The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

10.    Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Insurance Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Insurance Obligations allegedly due or owing to any Insurance Carriers or Brokers, and all of the Debtors' rights with respect thereto are hereby reserved.

11.    To the extent that an Insurance Policy is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, payment pursuant to this Order shall not be deemed to constitute postpetition assumption or adoption of the policy or agreement as an executory contract pursuant to section 365 of the Bankruptcy Code.

12.    The requirements set forth in Local Rule 9013-1(b) are satisfied.

13.    The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

14.    This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

15.    This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

AMERICAS 122647652

**EXHIBIT C**

**Summary of Insurance Policies**

| Number | Policy Type | Insurer | Policy/Bond Number | Policy Begins | Policy Ends | Total Annualized Premium (USD) |
|---|---|---|---|---|---|---|
| **General Liability** | | | | | | |
| 1. | Ohio General Liability Only | Gemini Insurance Company | VNGP001774 | 2/11/2023 | 2/11/2024 | $140,767.00 |
| 2. | Lordstown EV Corporation Commercial General Liability Policy | General Star Indemnity Company | IYG930132B | 3/4/2023 | 2/11/2024 | $29,687.00 |
| 3. | Lordstown EV Corporation Excess Commercial General Liability Policy | General Star Indemnity Company | IXG670561B | 3/24/2023 | 2/11/2024 | $34,248.00 |
| **Property** | | | | | | |
| 4. | Machinery & Equipment / Inland Marine | The Cincinnati Insurance Company | ENP 063 71 21 | 12/5/2022 | 12/5/2023 | $192,157.00 |
| **Workers' Compensation** | | | | | | |
| 5. | Workers Compensation / Employers Liability (Ohio Stop Gap Only) | The Cincinnati Indemnity Company | EWC 065 94 53-00 | 7/1/2022 | 7/1/2023 | $97,434.00 |
| 6. | Workers Compensation | Ohio Bureau of Workers' Compensation | 80067633-0 | 7/1/2023 | 7/1/2024 | $174,140.00 |

| Number | Policy Type | Insurer | Policy/Bond Number | Policy Begins | Policy Ends | Total Annualized Premium (USD) |
|---|---|---|---|---|---|---|
| **D&O Policies[1]** | | | | | | |
| 7. | Directors & Officers - Primary Side ABC | Berkley Insurance Company | BPRO8085893 | 10/23/2022 | 4/23/2024 | $1,923,750.00 |
| 8. | Directors & Officers - Excess Side ABC | XL Specialty Insurance Company | ELU186243-22 | 10/23/2022 | 4/23/2024 | $1,316,250.00 |
| 9. | Directors & Officers - Excess Side ABC | National Union Fire Ins Co of Pittsburgh | 01-615-95-98 | 10/23/2022 | 4/23/2024 | $789,750.00 |
| 10. | Directors & Officers - Excess Side ABC | Allied World Specialty Insurance Company | 0312-5573 | 10/23/2022 | 4/23/2024 | $613,750.00 |
| 11. | Directors & Officers - Excess Side ABC | Continental Casualty Company | 652471831 | 10/23/2022 | 4/23/2024 | $540,000.00 |
| 12. | Directors & Officers - Excess Side ABC | Banyan Risk Ltd. | 101-XDO-1057-102 | 10/23/2022 | 4/23/2024 | $506,250.00 |
| 13. | Directors & Officers - Excess Side ABC | Associated Industries Insurance Co., Inc | ANV146198A | 10/23/2022 | 4/23/2024 | $450,000.00 |
| 14. | Directors & Officers - Excess Side ABC | Fair American Insurance & Reinsurance Co | MLX-1001760-00 | 10/23/2022 | 4/23/2024 | $382,500.00 |
| 15. | Directors & Officers- | Endurance Assurance | ADL30026702600 | 10/23/2022 | 4/23/2024 | $337,500.00 |

---

[1] The total premium for the D&O Policies includes the premium for the (i) initial D&O Policy and (ii) the six-month extension and purchased run-off coverage.

AMERICAS 122647652

| Number | Policy Type | Insurer | Policy/Bond Number | Policy Begins | Policy Ends | Total Annualized Premium (USD) |
|---|---|---|---|---|---|---|
| | Excess Side A DIC | Corporation | | | | |
| 16. | Directors & Officers-Excess Side A DIC | XL Specialty Insurance Company | ELU186245-22 | 10/23/2022 | 4/23/2024 | $281,250.00 |
| 17. | Directors & Officers-Excess Side A DIC | RSUI Indemnity Company | NHS702385 | 10/23/2022 | 4/23/2024 | $270,000.00 |
| 18. | Directors & Officers-Excess Side A DIC | National Union Fire Ins Co of Pittsburgh | 01-615-96-00 | 10/23/2022 | 4/23/2024 | $202,500.00 |
| 19. | Directors & Officers-Excess Side A DIC | Lloyd's America, Inc. | FSGDO2201691 | 10/23/2022 | 4/23/2024 | $180,000.00 |
| 20. | Directors & Officers-Excess Side A DIC | Samsung Fire & Marine Ins Co Ltd (US Br) | SGC0857-01 | 10/23/2022 | 4/23/2024 | $168,750.00 |
| 21. | Directors & Officers-Excess Side A DIC | Westfield Specialty Insurance Comp | XSA-00017G6-00 | 10/23/2022 | 4/23/2024 | $140,000.00 |
| 22. | Fiduciary Liability | Hudson Insurance Company | SFD31211640-02 | 10/23/2022 | 4/23/20234 | $11,349.00.00 |
| **Product Liability** | | | | | | |
| 23. | Primary Products Liability | Underwriters At Lloyds London | CSUSA2206317 | 11/22/2022 | 11/22/2023 | $550,000.00 |
| 24. | Excess Products Liability | Underwriters At Lloyds London | CSUSA2206318 | 11/22/2022 | 11/22/2023 | $600,000.00 |
| 25. | Excess Products Liability Punitive Wrap | Magna Carta Insurance Ltd. / Lloyds | MCPD209578 | 11/22/2022 | 11/22/2023 | $45,000.00 |

3

| Number | Policy Type | Insurer | Policy/Bond Number | Policy Begins | Policy Ends | Total Annualized Premium (USD) |
|---|---|---|---|---|---|---|
| **Other** | | | | | | |
| 26. | Crime | AXIS Insurance Company | P-001-000450352-03 | 10/23/2022 | 10/23/2023 | $13,472.00 |
| 27. | Cyber Liability | Accredited Specialty Insurance Company | 2-CIA-OH-17S0113708-00 | 11/7/2022 | 10/24/2023 | $50,556.00 |
| 28. | Scheduled Autos / Hired & Non-Owned | The Cincinnati Insurance Company | EBA 056 86 29 | 2/14/2023 | 2/14/2024 | $38,797.00 |
| 29. | Active Shooter / Workplace Violence | CFC / Lloyds | POL 0139494616 | 7/23/2022 | 7/23/2023 | $6,694.00 |
| 30. | Employment Practices Liability (EPL) | Ironshore Specialty Insurance Company | EPL6NAB4B51002 | 5/1/2023 | 6/30/2023 | $8,874.60 |

AMERICAS 122647652