## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) MAINTAIN THEIR EXISTING WARRANTY PROGRAMS AND (II) HONOR CERTAIN CUSTOMER OBLIGATIONS AND (B) GRANTING OTHER RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the "**Final Order**," and, together with the Interim Order, the "**Orders**") granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

1.      By this Motion, pursuant to sections 105, 363, 1107, and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") the Debtors seek entry of the Interim Order and the Final Order (a) authorizing, but not directing, the Debtors to (i) maintain their existing Warranty Programs (as defined below) and to pay obligations and accommodations arising from the Warranty Programs in the ordinary course of business and (ii) honor certain prepetition obligations to refund the Deposits of potential customers (as defined below) ((i) and (ii) collectively, the "**Customer Obligations**") *nunc pro tunc* to the Petition Date and (b) granting other related relief.

2.      The Debtors also request that the Orders (a) authorize and direct all applicable banks and other financial institutions (collectively, the "**Banks**") and third-party intermediaries ("**Intermediaries**"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Customer Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank or Intermediary shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks and Intermediaries to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank or Intermediary shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but

2

not direct, the Debtors to continue in their ordinary course to make Payments on account of the Customer Obligations.

3.       In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

4.       For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

5.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.       The predicates for the relief requested by this Motion are sections 105(a), 363, 1107, and 1108 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.       Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

---

[3]      Such period between the date this Motion was filed and the Final Hearing shall be the "**Interim Period**."

AMERICAS 102609309

## BACKGROUND

### I. Overview

8.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.   The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

9.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers. The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

10.      On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.   Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a

AMERICAS 102609309

merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[4]

pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a

wholly-owned subsidiary of DiamondPeak.  DiamondPeak is now known as Lordstown Motors

Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[5]

11.    In September 2021, the Company began a partnership with an affiliate of Hon Hai

Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics

manufacturer.  The purpose of the Foxconn partnership was to allow the Company to shift its

business strategy from a vertically integrated OEM to a less capital-intensive model, focused on

developing, engineering, testing, and industrializing EVs.  Since the inception of the partnership,

however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors.

Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint

product development plans and repudiated its promise to invest additional equity capital in the

business.  Most recently, Foxconn has refused to complete its second purchase of common stock

in accordance with the terms of the investment agreement between the Company and Foxconn.

Foxconn's actions have damaged the Company's business relationships, employee morale and

relations, and the Company's future prospects, stripping it of its ability to continue as a going

concern absent a strategic chapter 11 transaction.

12.    The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value

for the benefit of their stakeholders given the ongoing, repeated breaches of contract and

commitments by Foxconn.  Among other things, as part of these Chapter 11 Cases, the Debtors

---

[4]    DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

[5]    Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

AMERICAS 102609309

intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

13. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II. **The Debtors' Warranty Programs**

14. As part of the sale of vehicles and consistent with industry practice, the Debtors maintain certain programs that provide warranties to customers for the vehicles that the Debtors have sold (the "**Warranty Programs**"). These Warranty Programs typically cover the aftermarket service, support, repair, and replacements of specific defective parts of the vehicles. The Debtors offer limited Warranty Programs that cover both the labor and material costs related to certain repairs and replacements for the vehicles and batteries arising from defects in material or the manufacturing process. Specifically, the Debtors' Warranty Programs cover (a) the repairs, adjustments, or replacement of parts necessary to correct defects in the materials or workmanship of the vehicle and any parts manufactured or supplied by the Debtors, arising during the earlier of three years or the first 36,000 miles after purchase; (b) repair or replacement necessary to correct defects in the lithium-ion battery or hub motor manufactured or supplied by the Debtors for the earlier of eight years or 100,000 miles after purchase, subject to certain conditions, exclusions, and disclaimers; (c) repair or replacement of any original body panel that develops perforation ("rust-through") from corrosion for a period of sixty months; (d) paint correction (one time) for chemical

6

spotting during the earlier of the first twelve months or 12,000 miles after purchase.  All such Warranty Programs are subject to subject to certain conditions, exclusions, and disclaimers.

15.    Additionally, in connection with the Warranty Programs, the Debtors have contracted with third-party providers, such as Amerit Fleet Solutions, Inc. ("**Amerit**"), to provide warranty work and services for the Debtors' vehicles where permitted by law.  In particular, Amerit provides technicians and repair services on an hourly basis and seeks reimbursement from the Debtors for applicable labor fees, parts, travel expenses and applicable taxes.  In this regard, the Debtors also incur certain liabilities to Amerit in connection with the repairs performed under the Warranty Programs in the ordinary course.  Notwithstanding the foregoing, from time-to-time, the Debtors will perform the work directly, where permitted by law, or provide support to the third-parties conducting the service.  Further, in certain unique circumstances, the Debtors have trained their customers to perform certain service and maintenance, including warranty related services, and the Debtors are obligated to reimburse these customers for the costs of such services.

16.    In early 2023, the Debtors voluntarily recalled certain vehicles to correct suspected defects, perform necessary repair and update work related to these recalled vehicles.  The Debtors worked with the supplier network to implement corrective actions to address the recall.  The recall services are treated and administered by the Debtors in a similar manner to the obligations that arise under the Warranty Programs.

17.    Warranties issued by the Debtors prior to the Petition Date may give rise to prepetition contingent claims that may remain contingent for a number of years.  The Debtors are not aware of outstanding obligations under the Warranty Programs as of the Petition Date.

AMERICAS 102609309

### III.    The Debtors Need to Maintain Their Warranty Programs

18.    If the Debtors are to maximize value in these Chapter 11 Cases, they must maintain the goodwill of their customers.  The Debtors, therefore, cannot afford to ignore their obligations under the Warranty Programs. The Warranty Programs are fundamental to the Debtors' business in ensuring that the customers are willing to purchase their products and essential for building confidence in purchasers. Without them, customers would likely be deterred from purchasing the vehicles for fear that the Debtors may not honor their warranty obligations.  In the vehicle manufacturing business, it is crucial that manufacturing companies continue to perform services for customers to maintain consumer confidence and the goodwill of the companies.  Any indication that the Debtors will not honor their warranty obligations or continue their recall service to correct defects in the manufacturing process would irreparably impact the Debtors' ability to maximize value and be detrimental to their estates, creditors, and stakeholders.  In addition, applicable consumer protection laws may require that the Debtors maintain the Warranty Programs and provide necessary repairs to the customers within certain period of time when the vehicles are sold or within certain mileage after the customers drive the vehicles.  Failure to honor the Warranty Programs may result in customers asserting setoff rights and/or withholding amounts owed to the Debtors.

19.    The Debtors' ability to continue the Warranty Programs and to honor the related Customer Obligations in the ordinary course of business is crucial for (i) maintaining the Debtors' brand and that of Endurance, (ii) retaining their reputation for reliability, (iii) meeting competitive market demands, (iv) fostering positive customer relationships, (v) attracting new customers and interest in Endurance (and the Debtors' assets), (vi) retaining and enhancing loyalty among the

AMERICAS 102609309

Debtors' existing customer base, and (vii) enhancing value for the benefit of all of the Debtors' stakeholders.

20.    By this Motion, the Debtors seek authorization to honor the Warranty Programs and to honor the related Customer Obligations in the ordinary course, in their discretion and consistent with their past practices, and regardless of whether the obligations under the Warranty Programs accrued before or after the Petition Date.

## IV.    The Debtors' Customers and Customer Deposits

21.    The Debtors engage in direct-to-consumer sales where they deliver Endurance vehicles directly to purchasers and provide such customers with warranties and related services for the purchased vehicles.  In the early days, the Debtors accepted unqualified reservations from potential customers to purchase an Endurance vehicle at an undetermined date in the future, after the vehicle reached certification and homologation.  Such potential customers who pre-ordered Endurance prior to delivery and whose vehicles have not been delivered as of the Petition Date made certain deposit payments in connection with their reservations ranging from $100 to $1,000 per vehicle (the "**Deposits**").  The Deposits were submitted through the Debtors' e-commerce portal administered by Shopify.[6]  Shopify accepted the electronic credit card payments and remitted the funds to the Debtors.  These Deposits were intended to be subtracted from the final purchase price of Endurance at the time the customer receives the vehicle.  Moreover, these Deposits are generally refundable to the potential customers who do not ultimately receive the delivery of the vehicles.

---

[6]    Shopify is a third-party e-commerce company that provides online marketplace for businesses to advertise and market their products to retail customers and process payments.

22.     As of the Petition Date, the Debtors estimate that they hold an aggregate of approximately $215,600 in deposits for approximately 2,004 customers whose vehicles have not been delivered.

**V.**     **The Debtors Need to Continue Their Obligations to Return Deposits to Customers**

23.     It is critical for the Debtors to honor their obligations to return the Deposits to customers who the Debtors ultimately do not fulfill the reservations by selling Endurance because it will directly affect the Debtors' good will and reputation among the consumers, as well as the value of the Debtors' business and assets.  Without a good relationship and reputation with customers, the value of the Debtors' assets and business is likely to be impaired.  To ensure that there is no disruption in the cancellation experience with customers, the Debtors seek authority, but not direction, to honor their return policies and provide refunds of the Deposits to customers who have pre-ordered Endurance.

24.     By this Motion, the Debtors seek authority, but not direction, to refund to customers the Deposits (i) of up to $165,000 in the Interim Period and (ii) the remaining unrefunded Deposits on a final basis.

**BASIS FOR RELIEF**

**I.**     **Continuation of the Warranty Programs and the refund of the Deposits are Appropriate Under the Doctrine of Necessity**

25.     Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing.  *See* 11 U.S.C. § 363(c).  The Debtors submit that continuing, renewing, replacing, initiating, and/or terminating their Warranty Programs and honoring related obligations in the ordinary course of business is permitted by

10

sections 363(c), 1107(a), and 1108 of the Bankruptcy Code without further application to the Court. Accordingly, this Court is authorized to grant the relief requested.

26. Further, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to honor their prepetition Customer Obligations. Section 363(b)(l) of the Bankruptcy Code provides, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code provides in pertinent part, "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* § 105(a).

27. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a plan); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 492 n.7 (Bankr. N.D. Tex. 2002) (necessity of payment rule "is a rule of payment not of priority" which allows "trustees to pay prepetition debts . . . in order to obtain continued supplies or services essential to the continued operation of the debtor's business"); *In re Ionosphere Clubs,*

11

*Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); *see also In re Richards*, 994 F.2d 763, 765 (10th Cir. 1993) (stating that use of equitable authority provided by section 105(a) of the Bankruptcy Code is permissible when such use is not inconsistent with any specific provision of the Bankruptcy Code and particularly when such use is consistent with the underlying philosophy of the Bankruptcy Code).

28.    A bankruptcy court's exercise of its authority under the doctrine of necessity is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108, and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  *See In re CoServ*, 273 B.R. at 497 ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

29.    The Debtors seek to continue and pay their Customer Obligations.  The Warranty Programs are critical for generating valuable goodwill, repeat business, and net revenue increases, and to otherwise maximize the value of the Debtors' business and assets.  The Debtors believe that continuing the Warranty Programs throughout their Chapter 11 Cases is essential to (a) preserve customer relationships and goodwill for the benefit of their estates, (b) maximize the revenue, and (c) maximize the value of the Debtors' business, assets, and estates, each for the benefit of all stakeholders. If the Debtors are prohibited from maintaining the Warranty Programs and honoring

12

the related Customer Obligations in a manner consistent with their past business practices, customers will likely lose confidence in the Debtors and the Debtors' brand, reputation, and goodwill will likely suffer greatly, which would result in significant value destruction. Accordingly, a cessation of the Warranty Programs could irreparably damage the Debtors' and their estates. In the Debtors' business judgment, the benefit from maintaining these programs and honoring Customer Obligations far exceeds the cost associated with honoring and continuing such practices.

## II. Certain of the Customer Obligations May be Entitled to Priority Pursuant to Section 507(a)(7) of the Bankruptcy Code

30.     Additionally, claims related to the refund of the Deposits may be entitled to priority pursuant to section 507(a)(7) of the Bankruptcy Code. *See In re WW Warehouse, Inc.*, 313 B.R. 588, 594 (Bankr. D. Del. 2004) (finding that gift certificate holders are entitled top priority status). Section 507(a)(7) establishes a priority for "unsecured claims of individuals, to the extent of $3,350 for each such individual arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the person, family or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). Certain of the Deposits the Debtors received were made by individual customers and do not exceed the priority claim amount. Accordingly, the majority of claims related thereto would be paid in full before any general unsecured obligations of the Debtors would be satisfied and the relief requested herein may affect only the timing of the Debtors' performance.

31.     On this basis, several bankruptcy courts have granted similar relief in other travel-related complex chapter 11 cases. *In re AMR Corporation*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Nov. 11, 2011); *In re Simply Wheelz LLC*, No. 13-03332 (EE) (Bankr. S.D. Mi. 2013); *In re Delta*

AMERICAS 102609309

*Air Lines*, No. 05-17923 (CGM) (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Budget Grp., Inc.*, No. 02-13152 (MFW) (Bankr. D. Del. July 30, 2002).

**III.    Cause Exists to Authorize the Debtors' Financial Institutions and Third-Party Intermediaries to Honor Electronic Fund Transfers**

32.    The Debtors also request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to the Customer Obligations, so long as sufficient funds are available in the applicable accounts to make the Payments.  Further, the Debtors request that all of the Intermediaries, such as Shopify, the Debtors work with be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to the Customer Obligations, so long as sufficient funds are available in the applicable accounts to make the Payments.

33.    To stabilize the Company's operations and to smoothly transition into chapter 11, it is imperative that the Debtors normalize their business.  Failure to do so would result in extremely adverse business effects.  The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor in possession financing.  Also, under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of prepetition Customer Obligations.  Accordingly, the Debtors believe that wire and electronic bank transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions and Intermediaries should be authorized when requested by the Debtors, to receive, process, honor,

AMERICAS 102609309

and pay any and all fund transfer requests made by the Debtors related to prepetition Customer Obligations so long as sufficient funds are available in the applicable accounts to make the payments.  Any such financial institution and Intermediary may rely on the representations of the Debtors as to which wire or electronic bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

**RESERVATION OF RIGHTS**

34.    The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Customer Obligations and claims related thereto, and (z) if the Court grants the relief sought herein, any payment made pursuant to

15

the Court's order is not and should not be construed as an admission as to the validity of any Customer Obligations or claims related thereto or as a waiver of the Debtors' rights to dispute such Customer Obligations or claims related thereto subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

35.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of a successful outcome is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to maximize value for stakeholders).  The Third Circuit has interpreted the language "immediate irreparable injury" in the context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (*citing Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

36.     Here, immediate and irreparable harm would result without the relief requested herein.  Failure to maintain the Warranty Programs in the ordinary course may cause customers to seek a competitor's products, which would be detrimental to the value of the Debtors' estates.

AMERICAS 102609309

37.     Moreover, payment of any prepetition Customer Obligations is essential to ensure the smooth operation of the Debtors' business.  Failure to satisfy such Customer Obligations when due in the ordinary course of business during the first 21 days of these Chapter 11 Cases would result in needless disruption to the Debtors' business and may jeopardize the Company's customer relationships at this critical time.  For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

38.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived.  Such waiver is warranted here because paying the Customer Obligations to ensure the Debtors' continued business and operations is essential to prevent potentially irreparable harm to the Debtors' business and ability to maximize value for stakeholders.

### NOTICE

39.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (ix) customers who have purchased a vehicle, (x) parties who made Deposits, and (x) any such other party entitled to receive

AMERICAS 102609309

notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

<u>**NO PRIOR REQUEST**</u>

40.    No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

<u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other and further relief as is just and proper.

AMERICAS 102609309

Dated: June 27, 2023

Respectfully submitted,

/s/ *Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

AMERICAS 102609309

## **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-[_____] ( ) |
| Lordstown Motors Corp., *et al.*,[1] | (Joint Administration Requested) |
| Debtors. | **Re: Docket No. [●]** |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING, AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) MAINTAIN THEIR EXISTING WARRANTY PROGRAMS AND (II) HONOR CERTAIN CUSTOMER OBLIGATIONS AND (B) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363, 1107, and 1108 of the Bankruptcy Code, and Rules 6003 and 6004 of the Bankruptcy Rules, (a) authorizing, but not directing, the Debtors to maintain their existing Warranty Programs and honor certain customer obligations, and (b) granting other related relief; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

"**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Effective as of the Petition Date, the Debtors are authorized, but not directed, to honor Customer Obligations, including (a) to maintain and administer their Warranty Programs and to continue to honor obligations under the Warranty Programs, regardless of when accrued, and continue the Warranty Programs in the ordinary course of business; and (b) honor any undisputed prepetition obligations to refund the Deposits, in their discretion, and in the ordinary course of business, not to exceed $165,000, without further application to the Court.

3.      The Debtors are authorized and empowered to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

4.      All applicable banks and financial institutions (collectively, the "**Banks**") and third-party intermediaries ("**Intermediaries**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Payment of the Customer Obligations, whether such Payments were submitted before, on, or after

2

the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

5.      Each of the Banks and Intermediaries are authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Customer Obligations pursuant to the Motion and this Order, and any such Bank and Intermediary shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

6.      The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including authorized to work with third-party intermediaries to fund transfers, which may have been inadvertently dishonored or rejected.

7.      Nothing contained in the Motion or this Order is intended or should be construed to create an administrative priority claim on account of any of the Warranty Programs.

8.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting

3

third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Customer Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Customer Obligations allegedly due or owing to any customer, and all of the Debtors' rights with respect thereto are hereby reserved.

9.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

10.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that relief is necessary to avoid immediate and irreparable harm.

11.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

12.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

14.     The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2023 at _____ ___.m. (Eastern Time) (the "**Objection Deadline**"). The Final Hearing, if required, will be held on _____, 2023 at _____ ___.m. (Eastern Time)

AMERICAS 102609309

# **EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

### FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) MAINTAIN THEIR EXISTING WARRANTY PROGRAMS AND (II) HONOR CERTAIN CUSTOMER OBLIGATIONS AND (B) GRANTING OTHER RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rules 6003 and 6004 of the Bankruptcy Rules, (a) authorizing, but not directing, the Debtors to maintain their existing Warranty Programs and honor certain customer obligations, and (b) granting other related relief; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

"**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.  Any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2.      The Debtors are authorized, but not directed, (a) to maintain and administer their Warranty Programs and to continue to honor its obligations under the Warranty Programs, regardless of when accrued, and continue the Warranty Programs in the ordinary course of business; and (b) honor any undisputed prepetition obligations to refund the Deposits, in their discretion, and in the ordinary course of business, without further application to the Court.

3.      The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

4.      All applicable banks and financial institutions (collectively, the "**Banks**") and third-party intermediaries ("**Intermediaries**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Payment of the Customer Obligations, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

AMERICAS 102609309

5.      Each of the Banks and Intermediaries are authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Customer Obligations pursuant to the Motion and this Order, and any such Bank and Intermediary shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

6.      The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including authorized to work with third-party intermediaries to fund transfers, which may have been inadvertently dishonored or rejected

7.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Customer Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any

3

Customer Obligations allegedly due or owing to any customer, and all of the Debtors' rights with respect thereto are hereby reserved.

8.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

9.      The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

10.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

4