# EXHIBIT A

**Cash Management Motion**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[____] ( ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
(I) CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM,
BANK ACCOUNTS, AND BUSINESS FORMS, (II) PAY RELATED
PREPETITION OBLIGATIONS, AND (III) CONTINUE INTERCOMPANY
TRANSACTIONS; (B) WAIVING THE SECTION 345(B) DEPOSIT AND
INVESTMENT REQUIREMENTS; AND (C) GRANTING OTHER RELATED RELIEF**

The debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the ("**Final Order**" and together with the Interim Order, the "**Orders**") granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105, 363, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Interim Order and the Final Order:  (i) authorizing, but not directing, (a) the Debtors to maintain and continue to operate their existing cash management system, bank accounts, and business forms; (b) the Debtors' payment of related prepetition obligations, and (c) the continuation of Intercompany Transactions between Debtors, and granting administrative-expense priority status to postpetition claims against the Debtors by other Debtors arising from Intercompany Transactions (the "**Intercompany Claims**"); (ii) waiving the deposit and investment requirements of section 345(b) of the Bankruptcy Code and certain requirements set forth in the U.S. Department of Justice, Office of the United States Trustee: Guidelines for Debtors-in-Possession (the "**U.S. Trustee Guidelines**"); and (iii) granting other related relief.

2.      In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

3.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

4.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[3]      Such period between the date this Motion was filed and the Final Hearing shall be the "**Interim Period**."

5.      The predicates for the relief requested by this Motion are sections 105(a), 363, and 503(b) of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2015-2 and 4001-3 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

6.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.      Overview

7.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

8.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers.  The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

9.     On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.  Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[4] pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a wholly-owned subsidiary of DiamondPeak.  DiamondPeak is now known as Lordstown Motors Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[5]

10.    In September 2021, the Company began a partnership with an affiliate of Hon Hai Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics manufacturer.  The purpose of the Foxconn partnership was to allow the Company to shift its business strategy from a vertically integrated OEM to a less capital-intensive model, focused on developing, engineering, testing, and industrializing EVs.  Since the inception of the partnership, however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors.  Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint product development plans and repudiated its promise to invest additional equity capital in the business.  Most recently, Foxconn has refused to complete its second purchase of common stock in accordance with the terms of the investment agreement between the Company and Foxconn.  Foxconn's actions have damaged the Company's business relationships, employee

---

[4]    DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

[5]    Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

morale and relations, and the Company's future prospects, stripping it of its ability to continue as a going concern absent a strategic chapter 11 transaction.

11.     The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value for the benefit of their stakeholders given the ongoing, repeated breaches of contract and commitments by Foxconn.  Among other things, as part of these Chapter 11 Cases, the Debtors intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and  rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

12.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II.     Cash Management System and Bank Accounts

13.     Prior to the Petition Date, and in the ordinary course of their business, the Debtors maintained a consolidated cash management system designed to, among other things, efficiently collect, concentrate, disburse, transfer, and manage the funds generated by the Debtors' business operations (such system, the "**Cash Management System**").  The Cash Management System allows the Debtors to control their receipts and disbursements, effectively and efficiently manage their cash, and is critical to the Debtors' business.  Only Debtors LEVC and Lordstown EV Sales LLC ("**LEVS**") hold Bank Accounts (as defined herein), and only LEVC holds Investment Accounts (as defined herein), which are used to efficiently manage excess cash.

14.     The Debtors' personnel, specifically the Debtors' Chief Financial Officer and the Debtors' General Counsel, are authorized signors for, and oversee the administration of all Bank

Accounts in the Cash Management System.  This centralization facilitates the Debtors' cash forecasting, monitoring of collections, approval of disbursement of funds, preservation of capital, ability to track cash balances, and management of liquidity.  It also reduces administrative expenses by facilitating the movement of funds and development of more timely and accurate balance and presentment information.  If the Debtors are unable to maintain their Cash Management System, the Debtors' operations will be severely impeded.

15.     The Cash Management System is comprised of ten (10) bank accounts (the "**Bank Accounts**"), all of which are maintained by JPMorgan Chase Bank, N.A. ("**JPMC**") and certain of its affiliates, JPMorgan Securities and JPMorgan Asset Management (collectively, the "**Banks**").  A list of the Bank Accounts is attached hereto as **Exhibit C**.  A flowchart depicting the Debtors' Cash Management System is attached hereto as **Exhibit D**.  The following chart summarizes the roles of each of the Bank Accounts in the Debtors' Cash Management System.

| Bank Account | Description |
|---|---|
| Concentration Account[6] (7360)<br><br>*LEVC* | The Debtors' primary Bank Account.  This account is used to support the activities of the Debtors' zero-balance accounts ("**ZBAs**").[7]  The Concentration Account funds disbursements and sweeps cash balances of the ZBAs.  As of the Petition Date, this account held a balance of approximately $3,308,459.30. |

---

[6]     Capitalized terms used for the Accounts in the chart shall have the meaning described herein.

[7]     The LEVC Receivable Account, LEVS Receivable Account, Disbursement Account, Payroll Account (each as defined herein) (collectively, the "**ZBAs**" and each, a "**ZBA**").

| Bank Account | Description |
|---|---|
| LEVC Receivable Account (7519) <br><br> *LEVC* | Account used for the collection of miscellaneous receipts, including asset and scrap sales, as well as refunds for customer deposits collected through the Debtors' website. |
| LEVS Receivable Account (7865) <br><br> *LEVS* | Account used for the collection of proceeds from the sale of vehicles to customers. |
| Disbursement Account (7675) <br><br> *LEVC* | Account used for general disbursements and miscellaneous vendor refunds and payments. |
| Payroll Account (7592) <br><br> *LEVC* | Account used for payroll-related obligations and expenses and miscellaneous payroll receipts, such as tax refunds. |
| Purchasing Card Account (7736) <br><br> *LEVC* | Collateral account for Purchasing Card Program (as defined below).  As of the Petition Date, this account held a balance of approximately $100,000.00. |
| JPMS Primary Investment Account (4520) <br><br> *LEVC* | The Debtors' main Investment Account for cash balances in excess of current requirements.  Withdrawals from this account are transferred on an as-needed basis to the Investment Collection Account (as defined below).  As of the Petition Date, this account held a balance of approximately $94,353,011.48. |
| JPMS Secondary Investment Account 4586) <br><br> *LEVC* | Investment Account established to segregate funds to facilitate tracking of the use of proceeds from the preferred stock investment made in November 2022 by Foxconn, which are used to fund new program development.  Withdrawals from this account are transferred on an as-needed basis to the Investment Collection Account.  As of the Petition Date, this account held a balance of approximately $30,786,772.64. |
| JPMAM Investment Account (4688) <br><br> *LEVC* | The Debtors' secondary Investment Account for cash balances in excess of short-term requirements.  Withdrawals from this account are transferred on an as-needed basis to the Investment Collection Account. <br> As of the Petition Date, the balance in this account is $0. |

| Bank Account | Description |
|---|---|
| Investment Collection Account (7725)  *LEVC* | Account established to facilitate and track withdrawals from the Investment Accounts. Funds held in this account are transferred to the Concentration Account to support disbursements.  As of the Petition Date, this account held a balance of approximately $9,292,527.35. |

**A.  Receipts.**

16.     The Debtors generate revenue primarily from the sale through LEVS of their Endurance vehicles, which have an average sales price of $65,000, to the Debtors' customers. LEVS serves as the Debtors' vehicle dealer because a distinct legal entity is required under state automotive industry regulations to contract with customers and carry the warranty obligations. Payments are received via wire transfers, automated clearing house ("**ACH**") transfers, and checks.  Payments received via wire transfer and ACH are generally directly credited to the LEVS Receivable Account.  To facilitate the tracking and recording of the LEVS vehicle sales transactions, the Debtors' accounting or sales staff deposit all checks received from sales of the Endurance into the Disbursement Account.

17.     The Debtors also collect receipts related to vendor refunds, tax refunds, occasional asset and scrap sales, and payroll activities.  Payments are received via wire transfer, ACH and manual checks.  Payments received via wire transfer and ACH are directly credited to the LEVC Receivable Account.  To facilitate the tracking and recording of such transactions, the Debtors' accounting staff deposit all checks on account of such receipts into the Disbursement Account.

18.     The LEVC Receivable Account and the LEVS Receivable Account (collectively, the "**Receivables Accounts**")[8] are ZBAs maintained at JPMC.  On a daily basis, the funds in the Receivables Accounts are swept into the Concentration Account.  Receipts collected and transferred to the Concentration Account vary depending on the number of Endurance trucks sold, as well as variations from other one-off activities.  As of the Petition Date, the Concentration Account holds approximately $3,308,459.30.

### B.  Disbursements.

19.     Disbursements are processed through the Disbursement and Payroll Accounts. These Bank Accounts are ZBAs funded by the Concentration Account on a daily basis. The Disbursement Account is used to process payments to the Debtors' vendors, suppliers, legal, and consulting firms.  The Payroll Account is used to process payroll activities, including net wages to employees, employee and employer tax payments, employee expense report reimbursements, and certain employee benefits, including the funding of employee 401(k), Health Savings and Flexible Spending Account plans.  Employee medical and insurance benefits are processed through the Disbursement Account.  Disbursement Account payments are processed via wire, ACH, bank generated checks, and, on a limited basis, online vendor portal payments.  While the Debtors have printed checks for the Disbursement Account for control purposes, they are rarely utilized.  Payroll Account payments are processed via direct ACH debits, and, in limited cases, wire transfers.  The Debtors do not use checks associated with the Payroll Account.

---

[8]     The Receivables Accounts include the (i) LEVC Receivable Account (ending in 7519) and the (ii) LEVS Receivable Account (ending in 7865).

### C. Purchasing Card Program

20.    LMC has a program ("**Purchasing Card Program**") under which certain of its employees are assigned credit cards (the "**Purchasing Cards**") for purchasing approved expenses related to the Debtors' business.  Employees who are assigned a Purchasing Card are required to acknowledge their understanding of the Debtors' policy for the use of, and the documentation required to support, Purchasing Card expenditures.  In the ordinary course of the Debtors' business, the Purchasing Cards are generally used for limited, pre-approved, travel expenses, emergency repairs and purchases, and vendors requiring payment through an online portal or vendor website.  Employees assigned Purchase Cards are required to submit expense reports with receipts to the accounting department for reconciliation to the monthly Purchasing Card statement.  Purchasing Cards may also be used (with approval by the Debtors' Chief Financial Officer or Vice President of Finance) for relatively small one-off vendor purchases, to eliminate the costs of to establishing a vendor within the Debtors accounting system. Approximately five employees hold Purchasing Cards as of the Petition Date.  The Debtors' employees holding the Purchasing Cards include employees of the Debtors' Finance, Sales and Service, Marketing, and Purchasing departments and the executive assistant of the Debtors' Chief Executive Officer.

21.    The Purchasing Card Program has a $95,000 credit limit, and the individual Purchase Cards have credit limits ranging between $20,000 and $50,000.  The credit limits were determined based on the department the card is supporting, with the Finance department, Purchasing department, and the Chief Executive Officer's executive assistant holding Purchasing Cards with higher credit limits.  On a monthly basis, JPMC will automatically debit the Debtor's Disbursement Account for the total amount on the monthly statement's due date, however, the

Debtors generally process manual payments prior to the due date after the monthly statement has been reconciled against the receipts submitted. The Debtors are required to pledge a minimum of $100,000 cash collateral for the Purchase Card Program to the Purchasing Card Account to support the credit line for the Purchasing Card Program. Funds in the Purchasing Card Account are transferred to and from the Concentration Account on an as-needed basis.

### D. Investment Accounts.

22.    LEVC maintains three investment accounts (collectively, the "**Investment Accounts**"), which are funded from the Investment Collection Account, with affiliates of JPMC to invest the Debtors' excess cash. The Debtors do not have a formal investment policy. The Debtors' Chief Financial Officer manages the Investment Accounts based upon the Debtors' anticipated liquidity needs and seeks to maximize the yield on the excess cash in a conservative manner, investing primarily in commercial notes issued by A-rated companies and other liquid money market funds with JPMC. As of the Petition Date, the three Investment Accounts have a combined value of approximately $137,104,638.21. The funds in the Investment Accounts are invested as follows: (i) approximately 36% is invested in commercial notes rated A1/P1 or better; (ii) approximately 16% is invested in commercial notes split rated A2/P1, (iii) approximately 45% is invested in commercial notes rated A2/P2, and (iv) approximately 2% in invested in daily liquid prime money market funds with JPMC. The issuers of the notes in the Investment Accounts are comprised of banks and highly recognized (*i.e.*, blue chip) industrials, consumer goods and energy companies.

23.    The Debtors' primary Investment Account is the JPMS Primary Investment Account. As of the Petition Date, the JPMS Primary Investment Account held approximately $94.3 million in market value of investments. The funds are invested in high quality commercial

paper and money market funds.[9]  As needed, funds are transferred to the operating bank accounts to fund disbursements.  Approximately $125.3 million is expected to mature through July 31, 2023.

24.  The Debtors maintain the segregated JPMS Secondary Investment Account to track investments subject to the new program development funding terms of Foxconn's preferred stock investment in November 2022.  Prepetition, the Debtors limited the use of proceeds in this account to funding new program development consistent with the terms of the Investment Agreement (as defined in the First Day Declaration) with Foxconn.  Nonetheless, the Debtors believe that these funds are unencumbered property of the estate that, postpetition, may used to pay obligations in the ordinary course or as otherwise approved by the Court.  As with the JPMS Primary Investment Account, the funds in the JPMS Secondary Investment Account are invested high quality commercial paper and money market funds.[10]  As of the Petition Date, the JPMS Secondary Investment Account held approximately $30.8 million in market value of investments.

25.  The Debtors maintain the JPMAM Investment Account with JPMorgan Asset Management.  Over the last nine months, the Debtors' use of the JPMAM Investment Account has declined and been replaced by the JPMS Primary Investment Account and the JPMS

---

[9]      Approximately $43.3 million is invested in the JPMorgan Prime Money Market Fund (ticker: JINXX) with S&P, Moody's, and Fitch ratings of AAAm, Aaa-mf, and AAAmmf, and constant NAV of $1.00.  Approximately $25.0 million is invested in the JPMorgan 100% U.S. Treasury Securities Money Market Fund (ticker CJTXX) with daily liquidity and constant NAV of $1.00 with S&P and Moody's ratings of AAAm and Aaa-mf, respectively.  In addition, there are six investments in commercial paper with S&P ratings of A-1 to A-2 and Moody's ratings of P-1 to P-2, totaling approximately $26.0 million, with maturities ranging from June 29, 2023 to October 12, 2023.

[10]      Approximately $27.8 million is invested in the JPMorgan Prime Money Market Fund (ticker: JINXX) with S&P, Moody's, and Fitch ratings of AAAm, Aaa-mf, and AAAmmf and constant NAV of $1.00.  In addition, the Debtors hold approximately $3.0 million in market value in one commercial paper investment rated A-2, P-2 from S&P and Moody's, respectively, which has a maturity date of July 21, 2023.

Secondary Investment Account.  As of the Petition Date, the balance in the JPMAM Investment Account was $0.

### E.  Cash Management Fees.

26.      In connection with the Cash Management System, the Debtors are subject to monthly interest and bank fees (the "**Cash Management Fees**").  The Management Fees are reduced by an earnings allowance on an average monthly compensating balances maintained in the bank accounts.  Based on the average monthly compensating balances maintained, the earnings allowance typically exceeds the monthly interest and bank fee charges.  As of the Petition Date, the Debtors estimate that there are no accrued, unpaid, and undisputed prepetition amounts outstanding on account of the Cash Management Fees (the "**Cash Management Obligations**").  However, out of an abundance of caution, the Debtors seek express authority, but not direction, to pay any Cash Management Obligations.

### F.  Business Forms.

27.      In the ordinary course of their business, the Debtors use various business forms, including invoices, letterhead, and other business and marketing materials, and obtain pre-printed checks in the ordinary course of their business (the "**Business Forms**").  Because the Business Forms were used prepetition, they do not reference the Debtors' current status as debtors in possession.  Requiring the Debtors to change existing Business Forms as contemplated by the U.S. Trustee Guidelines would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estates.  Thus, the Debtors request that they be authorized to use their existing Business Forms without placing a "Debtor-In-Possession" legend on each.  However, once the Debtors' current check stock is depleted, the Debtors will include the

Debtors' status as debtor-in-possession and the jointly administered bankruptcy case number on new checks reordered by the Debtors (if any).

### G. Intercompany Transactions

28.    In the ordinary course of business, the Debtors engage in various transactions with each other (the "**Intercompany Transactions**"), but not with any non-debtor affiliates. LEVS is the dealer entity and collects receipts from customers purchasing the Endurance.  It has continued warranty obligations for the sold vehicles, but currently has no other activity, creditors, or payment obligations.  Due to the limited expenditures and obligations of LEVS, LEVC pays all obligations on behalf of LEVS and transfers the completed vehicles to LEVS for sale to the Debtors' customers.  Prepetition Transactions among the Debtors include the transfer of vehicles from LEVC to LEVS and the daily sweep of customer receipts from the LEVS Receivable Account to the Concentration Account held by LEVC.  For efficiency purposes and due to the limited activity of LEVS, the Debtors do not maintain separate books and records for LEVS and net out its financials on a consolidated basis with LEVC.  There are no intercompany loans or any other pooling or netting arrangements.  The Debtors have the ability to track and record all Intercompany Transactions, and will track and record all Intercompany Transactions as of the Petition Date.

29.    The Intercompany Transactions are critical to the efficient operation of the Debtors' business.  Because the Debtors are engaged in the Intercompany Transactions on a regular basis prepetition and such transactions are common for enterprises like the Debtors, the Debtors intend to continue the Intercompany Transactions in the ordinary course postpetition under section 363(c)(1) of the Bankruptcy Code, without court approval.  However, out of an abundance of caution, the Debtors seek express authority, but not direction, to continue engaging

in the Intercompany Transactions.  As noted, and consistent with their prepetition practice, the Debtors will maintain records of all transfers and ascertain, trace, and account for all of the Intercompany Transactions during the Chapter 11 Cases.

## BASIS FOR RELIEF

## I.    The Court Should Authorize The Debtors' Continued Use Of The Cash Management System And Waive Certain U.S. Trustee Guidelines Requirements.

30.    Pursuant to Local Bankruptcy Rule 2015-2(a), "upon a motion of the debtor, the Court may, without notice and a hearing, permit the debtor to . . . use its existing bank accounts." Del. Bankr. L.R. 2015-2(a).  Additionally, authorizing the Debtors to utilize the prepetition Cash Management System is consistent with the applicable provisions of the Bankruptcy Code, specifically, sections 363(c)(1), 363(b)(1), and 105.

31.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court.  *See*, *e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).  Included within the purview of section 363(c) is the ability to continue "routine, day-to-day" transactions stemming from a debtor's cash management system.  *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Accordingly, to minimize the disruption caused by these Chapter 11 Cases and maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize the Cash Management System and to transfer funds between and among their Bank Accounts.

32.    To the extent the use of the Cash Management System is deemed to be beyond the ordinary course of the Debtors' businesses, such use is permitted by sections 363(b)(1) and

15

105(a) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

33.    The Third Circuit has recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  Indeed, requiring a debtor to maintain separate bank accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas Sys.*, 997 F.2d at 1061.

34.    Here, requiring the Debtors to adopt a new, segmented cash management system during these Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors.  Any disruption of the Cash Management System could have severe adverse effect on the Debtors' restructuring efforts, the cost of which would ultimately be borne by the Debtors' creditors and other stakeholders.  Thus, maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

35.    Although the Debtors maintain the Bank Accounts as part of an established Cash Management System, the U.S. Trustee Guidelines include certain requirements that, if not waived, would require the Debtors (as debtors in possession) to take certain actions with respect to prepetition Bank Accounts that are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition

payment of prepetition claims.  For the reasons set forth below, the Debtors submit that a waiver of these requirements is warranted.

36.     Under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at an authorized depository.  In addition, the U.S. Trustee Guidelines prohibit disbursements other than by numbered checks, which checks must bear the applicable debtor's case name and case number, a "debtor in possession" designation and an indication of the account type.  Under the circumstances, the Debtors submit that waiving compliance with the U.S. Trustee Guidelines and authorizing continued use of the Bank Accounts and the Business Forms is appropriate and in the best interests of the estates.

37.     Notwithstanding the U.S. Trustee Guidelines, the Debtors' continued use of the Bank Accounts will allow the Debtors to smoothly transition into chapter 11, and will best serve all parties in interest, by minimizing disruption to the Debtors' businesses.  Moreover, because the Debtors' existing Cash Management System allows the Debtors to differentiate between prepetition and postpetition transactions, account balances, and obligations, any changes to the Cash Management System are unnecessary.  The Debtors will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these Chapter 11 Cases.  As a result, the Debtors will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest.  To protect against the unauthorized payment of prepetition obligations, the Debtors represent that if they are authorized to continue using the Bank Accounts, they will not pay, and all applicable banks and other financial institutions

17

(collectively, the Banks) will not be directed to pay, any debts incurred before the Petition Date except as authorized by this Court.

38.     For these reasons (as well as to avoid delays in Payments (as defined below) to administrative creditors (and other parties the Debtors are authorized by this Court to pay), to ensure as smooth a transition into chapter 11 as possible, and to aid in the Debtors' efforts to maximize the value of their estates):  (a) the Debtors should be permitted to continue to (i) use their Cash Management System, including transferring funds for purposes of the Intercompany Transactions, (ii) maintain their existing Bank Accounts and open new and close existing accounts, as needed, and (iii) deduct, without further order of this Court, from the appropriate Bank Accounts the Cash Management Fees; and (b) the requested relief should extend to any new accounts by providing that any new account is deemed to be a Bank Account and subject to the rights, obligations, and relief granted by this Court.

## II.     The Debtors Should Be Granted Authority To Honor Certain Prepetition Obligations Related To The Cash Management System.

39.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request that the Banks be permitted to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for:  (a) all checks drawn on the Bank Accounts that were cashed at each Bank by the payees thereof prior to the Petition Date; and (b) Cash Management Obligations.  The Debtors also request that the Banks be authorized and directed, when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the **Payments")** made by the Debtors related to the Cash Management System, so long as sufficient funds are available in the applicable accounts to make the payments.  The Debtors further request that the Banks be restrained from honoring any Payments on the Bank Accounts on account of a

18

prepetition claim unless (a) authorized by an order of this Court, (b) not otherwise prohibited by a "stop payment" request received by the Bank from the Debtors, and (c) supported by sufficient funds in the Bank Account in question.

40.     As with the continuation of the Cash Management System, payment of any Cash Management Obligations will minimize disruption to the Debtors and is therefore in the best interests of the estates.  Absent payment of Cash Management Obligations, the Banks might assert setoff rights against the funds in the Bank Accounts on account of any Cash Management Obligations, freeze the Bank Accounts, or refuse to provide services to the Debtors.  The payment of the Cash Management Obligations will not prejudice unsecured creditors given that, as noted above, the Banks may have setoff rights with respect to the Cash Management Obligations.  Under the Debtors' existing Cash Management System, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of prepetition Cash Management Obligations. Accordingly, the Debtors believe that unauthorized wire and electronic bank transfer requests will not be honored inadvertently and that all applicable financial institutions may rely on the representations of the Debtors as to which wire or electronic bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

41.     For these reasons, the Debtors should be permitted to pay the Cash Management Obligations.

III.    **The Debtors Should Be Granted Authority To Continue To Use Existing Business Forms And Checks.**

42.     Local Bankruptcy Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

43.    To minimize expenses to their estates, the Debtors seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.  Modifying existing Business Forms would be unduly burdensome and impose unnecessary costs on the Debtors' estates, particularly given the relatively short timelines of these prepackaged bankruptcy cases, as the Debtors already have checks in stock and would be required to reprint modified checks.  Further, a modification of the Business Forms would confer no corresponding benefit upon those dealing with the Debtors, most of whom, as noted above, will be aware of the commencement of these Chapter 11 Cases. Therefore, the Debtors request authorization to use their existing Business Forms without adding a "Debtor-in-Possession" or similar legend; *however*, once the Debtors' existing checks have been used, the Debtors will, when reordering checks, include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on all checks.

## IV.    **The Court Should Authorize The Debtors To Continue Intercompany Transactions And Grant Administrative Expense Priority Status To The Related Intercompany Claims.**

44.    The Bankruptcy Code affords debtors in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing.  *See* 11 U.S.C. § 364(a).  The Debtors therefore seek authority, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of their Cash Management System, including in connection with the Intercompany Transactions described in

20

this Motion.  The Debtors are not seeking relief to incur Intercompany Transactions with any non-debtor affiliates.

45.     If the Debtors cannot continue the Intercompany Transactions, their ordinary-course operations would be unnecessarily hindered.  Due to automotive regulations, the Debtors need an independent dealer for the sale of vehicles.  The Debtors rely on Intercompany Transactions with LEVS—the Debtors' independent dealer— to sell their vehicles, which is the crux of their business.  The cessation of the Intercompany Transactions would require an unnecessary change to their corporate structure and accounting just to operate their business. Continuing the Intercompany Transactions is, therefore, in the best interests of the estates.

46.     Additionally, pursuant to sections 105(a) and 503(b) of the Bankruptcy Code, the Debtors request that all Intercompany Claims be granted administrative expense priority status. If Intercompany Claims are accorded administrative expense priority status, each entity using funds that flow through the Cash Management System will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby protecting the interests of the Debtors' creditors.

**V.      The Bank Accounts Comply With Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines Regarding Authorized Depositories, and the Debtors Should be Granted Interim Relief to the Extent the Investment Accounts Do Not Comply.**

47.     The Debtors request that this Court waive strict application of the requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines to the extent the Bank Accounts do not comply with such requirements.

48.     Section 345(a) authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits

21

or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b).[11]

49.    Additionally, Local Rule 2015-2(b) provides that if a motion for a waiver under section 345 of the Bankruptcy Code is filed on the first day of the case, and there are more than 200 creditors, the "Court may grant an interim waiver until a hearing on the debtor's motion can be held." Del. Bankr. L.R. 2015-2(b). The Debtors seek an interim waiver herein to the extent the Bank Accounts, including the Investment Accounts, do not comply with section 345 of the Bankruptcy Code.

50.    First, the Bank Accounts are all maintained at JPMC and its affiliates, and JPMC is an Authorized Depository in the District of Delaware. Therefore, all Bank Accounts (excluding the Investment Accounts) clearly satisfy section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines.

51.    Moreover, the Investment Accounts comport with the investment objectives of section 345(a) of the Bankruptcy Code insofar as their primary goal is to protect the principal of the investment and are all invested with a secondary purpose of maximizing yield and liquidity (while not sacrificing security). Specifically, the Investment Accounts are maintained at well-

---

[11]     Strict compliance with the requirement of section 345(b) of the Bankruptcy Code would, in a case such as this, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H. 10,767 (Oct. 4, 1994), 1994 WL 54773.

capitalized and financially stable affiliates of JPMC, which are insured by the Securities Investor
Protection Corporation. Indeed, JPMC is the largest bank in the United States and the world's
largest bank by market capitalization. The Debtors' deposit and investment practices permit the
Debtors to balance their need to ensure access to liquidity on a daily basis with the protections
that are comparable to those contemplated by section 345(b) of the Bankruptcy Code. Requiring
the Debtors to bond the Investment Accounts, as contemplated—unless the Court orders
otherwise—by section 345(b) of the Bankruptcy Code, would impose considerable costs on the
Debtors' estates. Moreover, prematurely liquidating investments that are close to maturity would
likely expose the Debtors to unnecessary costs, in particular because all of the Debtors' holdings
except for approximately $5 million in aggregate book value will mature before July 18, 2023.
Prior to the Petition Date, the Debtors began reinvesting the maturing assets in their Investment
Accounts into the JPMorgan 100% U.S. Treasury Securities Money Market Fund (ticker
CJTXX), in compliance with section 345. The Debtors propose to do the same postpetition and
submit that given the near-term maturities of the Debtors' holdings in the Investment Accounts,
and their transition into investments that are compliant with section 345 as non-compliant
investments mature, a temporary waiver of the requirements under section 345 is warranted as it
will reduce unnecessary costs and maximize value for the benefit of the Debtors' estates.

52.    To the extent the Investment Accounts do not comply with section 345, the
Debtors submit that cause exists for an interim waiver because, among other things, (a) the
Banks in which the Investment Accounts are held are highly rated and are federally chartered
Banks subject to supervision by federal banking regulators in the United States, (b) the Debtors
retain the right to remove funds held at the Banks and liquidate the investments at any time,
(c) any outstanding notes in the Investment Accounts mostly mature in the near-term; (d) the cost

associated with satisfying the requirements of section 345 is burdensome, and (e) the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business.

53.     Therefore, to the extent the Investment Accounts do not comply with section 345 and the U.S. Trustee Guidelines, the Debtors request an interim waiver to reach an agreement with the United States Trustee on how to manage the investments and funds currently held in the Investment Accounts, and such decision will be subject to notice and an opportunity for a hearing.  The Interim Order explicitly reserves all rights of the United States Trustee under Section 345 and the U.S. Trustee Guidelines to ensure the Debtors' cash will be maintained in a responsible manner.

## **RESERVATION OF RIGHTS**

54.     The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting

third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Cash Management Obligations and claims related thereto, and (z) if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not and should not be construed as an admission as to the validity of any Cash Management Obligations or claims related thereto or as a waiver of the Debtors' rights to dispute such Cash Management Obligations or claims related thereto subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

55.    For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of a successful case outcome is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to reorganize).  The Third Circuit has interpreted the language "immediate irreparable injury" in the context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not

speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

56.     Here, immediate and irreparable harm would result without the relief requested herein.  The Debtors' Cash Management System is critical for the collection of receipts and disbursements for necessary expenses.  Requiring the Debtors to change their Cash Management System or manually operate new bank accounts would hinder their business at a critical time. Moreover, the Debtors have necessary oversight and control over the Cash Management System, to ensure, among other things, proper management of pre- and post-petition claims and tracking of cash.

57.     To the extent that the Debtors owe any accrued but unpaid Cash Management Fees as of the Petition Date, failure to pay such prepetition Cash Management Fees in the ordinary course may cause the Bank to take action against the Debtors, such as setoff against funds in the Bank Accounts, which would be detrimental to the value of the Debtors' estates. Moreover, payment of any prepetition Cash Management Obligations is essential to ensure the continued operation of the Debtors' business.  Failure to do so during the first 21 days of these Chapter 11 Cases would result in needless disruption to the Debtors' business and may jeopardize the Company's operations at this critical time.  For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

58.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under

Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because the immediate payment of any accrued and unpaid prepetition Cash Management Obligations is essential to prevent potentially irreparable harm to the Debtors' business and ability to maximize value for stakeholders.

## NOTICE

59. Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (ix) the Banks and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

60. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other and further relief as is just and proper.

Dated: June 27, 2023

Respectfully submitted,

*/s/ Paul N. Heath*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

## EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| Debtors. | (Joint Administration Requested) |
|  | **Re:  Docket No. [●]** |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (II) PAY RELATED PREPETITION OBLIGATIONS, AND (III) CONTINUE INTERCOMPANY TRANSACTIONS; (B) WAIVING THE SECTION 345(B) DEPOSIT AND INVESTMENT REQUIREMENTS; AND (C) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105, 363, and 503 of the Bankruptcy Code, (i) authorizing, but not directing, (a) the Debtors to maintain their existing cash management system, bank accounts, and business forms, (b) the Debtors' payment of related prepetition obligations, and (c) the continuation of Intercompany Transactions and granting administrative-expense priority status to postpetition claims against the Debtors by other Debtors arising from Intercompany Transactions and (ii) waiving the deposit and investment requirements of section 354(b) of the Bankruptcy Code and certain requirements set forth in the U.S. Trustee Guidelines, as more fully set forth in the Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and

proper notice of the Motion having been provided under the circumstances and in accordance

with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion

(the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Motion is necessary to avoid immediate and irreparable

harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the

best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-

in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue to use their existing

Cash Management System.  The Bank Accounts are deemed debtor-in-possession accounts.  The

Debtors, in their discretion, are authorized, but not directed, to designate, maintain, and continue

to use any and all of their Bank Accounts in existence as of the Petition Date, with the same

account numbers, including the accounts identified in **Exhibit C** annexed to the Motion, to,

without limitation: (a)  deposit funds in, and withdraw funds from, the Bank Accounts by all

means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and

other debits or items presented, issued, or drawn on the Bank Accounts; (b) pay any Cash

Management Obligations; (c) perform their obligations under the documents and agreements

governing the Bank Accounts, including without limitation, any prepetition cash management agreements or treasury agreements; and (d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

3.      The Debtors are not required to (a) close existing bank accounts and open new debtor-in-possession accounts or (b) establish specific bank accounts for tax payments. The Debtors may transfer funds into, out of, and through the Cash Management System using ordinary transfer methods in accordance with the Debtors' prepetition practice, including transfers to other Debtors. The Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions, including prepetition, post-petition, and intercompany transactions, may be readily ascertained, traced, and recorded properly. The Debtors and all applicable banks and financial institution (collectively, the "**Banks**") may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business that they deem appropriate in their sole discretion.

4.      For any banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall (a) use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee or (b) close such accounts, in each case, within thirty (30) days of the date of this Interim Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

5.      The Debtors are authorized to maintain and continue the Purchasing Card Program and to fund the Purchasing Cards in accordance with prepetition practices, and the

Debtors' employees are authorized to continue making purchases with the Purchasing Cards in the ordinary course of business.

6.      The Debtors are hereby granted an extension of time to comply with the requirements of 11 U.S.C. § 345(b) for a period of thirty (30) days, without prejudice to the Debtors' rights to seek a further extension or secure a waiver of the requirements of section 345(b) of the Bankruptcy Code in these Chapter 11 Cases.

7.      For any banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors are authorized, but not directed, to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; however, the Debtors must give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in these chapter 11 cases; *provided*, *further*, that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

8.      For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall immediately (a) contact each Bank, (b) provide the Bank with each of the Debtors' employer identification numbers and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession.

9.      The Debtors are authorized, but not directed, to pay and/or reimburse their Banks and service providers in the ordinary course of business for any Cash Management Fees.  The Banks are authorized without the need for further order of this Court to in the ordinary course of business:  (a) continue to administer, service, and maintain, the Bank Accounts as such accounts

4

were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; and (c) debit the Bank Accounts for (i) all undisputed Cash Management Claims, if any, owed to the Banks for the maintenance of the Cash Management System, (ii) all checks drawn on the Debtors' Bank Accounts that were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, and (iii) all checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date that have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date; *provided*, *however*, that no Payments (excluding any electronic fund transfers that the Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (a) expressly authorized by this Court and the Debtors, (b) not otherwise prohibited by a "stop payment" request timely received by the Debtors' Banks from the Debtors, and (c) supported by sufficient funds in the Bank Account in question.

10.     Subject to the provisions of this Order, the Banks are authorized to and shall rely on the representations of the Debtors as to which Payments are authorized to be honored or dishonored, whether or not such Payments are dated, drawn, or issued prior to, on, or subsequent to the Petition Date.  The Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtors or honoring any Payment that is subject to this Order either (a) at the direction of the Debtors to honor such prepetition Payment,

(b) in the good faith belief that this Court has authorized such prepetition Payment to be honored, or (c) as a result of an innocent mistake.  To the extent that the Debtors direct that any Payment be dishonored or the Banks inadvertently dishonor any Payments, the Debtors may issue replacement Payments consistent with the orders of this Court.

11.     The Banks are further authorized and directed to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

12.     The relief granted in this Order extends to any new bank account opened by the Debtors, in accordance with the provisions of this Order, after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

13.     The Debtors shall serve a copy of this Order on the Banks within five business days of the entry of this Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

14.     The Debtors are authorized, but not directed, to continue to use their existing Business Forms and checks without alteration or change and without the designation "Debtor-in-Possession" imprinted upon them provided that once the Debtors' existing Business Forms and checks have been used, the Debtors shall, when reordering Business Forms and checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all Business Forms and checks; provided further that, with respect to Business Forms and checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.

15.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions with other Debtors in the ordinary course of business. The Debtors shall continue to maintain records related to the Intercompany Transactions, so that transactions can be ascertained, traced, and accounted for on applicable intercompany accounts. The Intercompany Claims arising postpetition shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code. The Debtors shall not make any intercompany loans to non-debtor entities absent further order of the Court.

16.     Except with respect to the Intercompany Transactions, nothing herein nor any actions taken hereunder shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

17.     For the avoidance of doubt, the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions are adequately and promptly documented in and readily ascertainable from the Debtors' books and records to the same extent maintained by the Debtors prior to the Petition Date.

18.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor.

19.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of

action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party. Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Cash Management Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Cash Management Obligations allegedly due or owing to any Bank, and all of the Debtors' rights with respect thereto are hereby reserved.

20. The requirements set forth in Local Rule 9013-1(b) are satisfied.

21. The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that relief is necessary to avoid immediate and irreparable harm.

22. The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

23. This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

24. This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

25. The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2023 at ____ __.m. (Eastern Time) (the "**Objection Deadline**"). The Final Hearing, if required, will be held on _____, 2023 at ____ __.m. (Eastern Time).

## EXHIBIT B

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

**FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
(I) CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK
ACCOUNTS, AND BUSINESS FORMS, (II) PAY RELATED
PREPETITION OBLIGATIONS, AND (III) CONTINUE INTERCOMPANY
TRANSACTIONS; (B) WAIVING THE SECTION 345(B) DEPOSIT AND
INVESTMENT REQUIREMENTS; AND (C) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**")
pursuant to sections 105, 363, and 503 of the Bankruptcy Code, (i) authorizing, but not directing,
(a) the Debtors to maintain their existing cash management system, bank accounts, and business
forms, (b) the Debtors' payment of related prepetition obligations, and (c) the continuation of
Intercompany Transactions and granting administrative-expense priority status to postpetition
claims against the Debtors by other Debtors arising from Intercompany Transactions and
(ii) waiving the deposit and investment requirements of section 354(b) of the Bankruptcy Code
and certain requirements set forth in the U.S. Trustee Guidelines, as more fully set forth in the
Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief
requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing
Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown
Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and

proper notice of the Motion having been provided under the circumstances and in accordance

with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion

(the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED THAT:**

     1.    The Motion is GRANTED as set forth herein.  Any objections or reservations of

rights filed in respect of the Motion are overruled, with prejudice.

     2.    The Debtors are authorized, but not directed, to continue to use their existing

Cash Management System.  The Bank Accounts are deemed debtor-in-possession accounts.  The

Debtors, in their discretion, are authorized, but not directed, to designate, maintain, and continue

to use any and all of their Bank Accounts in existence as of the Petition Date, with the same

account numbers, including the accounts identified in **Exhibit C** annexed to the Motion, to,

without limitation:  (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all

means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and

other debits or items presented, issued, or drawn on the Bank Accounts; (b) pay any Cash

Management Obligations; (c) perform their obligations under the documents and agreements

2

governing the Bank Accounts, including without limitation, any prepetition cash management agreements or treasury services agreements; and (d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

3.      The Debtors are not requirement to (a) close existing bank accounts and open new debtor-in-possession accounts or (b) establish specific bank accounts for tax payments.  The Debtors may transfer funds into, out of, and through the Cash Management System using ordinary transfer methods in accordance with the Debtors' prepetition practice, including transfers to other Debtors.  The Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions, including prepetition, post-petition, and intercompany transactions, may be readily ascertained, traced, and recorded properly.  The Debtors and all applicable banks and financial institutions (collectively, the "**Banks**") may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business that they deem appropriate in their sole discretion.

4.      The Debtors are authorized to maintain and continue the Purchasing Card Program and to fund the Purchasing Cards in accordance with prepetition practices, and the Debtors' employees are authorized to continue making purchases with the Purchasing Cards in the ordinary course of business.

5.      To the extent the Debtors are not in compliance with section 345(b) of the Bankruptcy Code, the requirements of section 345(b) of the Bankruptcy Code are hereby waived on a final basis.

6.      For any banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors are authorized, but not directed, to open any new bank accounts or close any existing

3

Bank Accounts as they may deem necessary and appropriate in their sole discretion; however, the Debtors must give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in these chapter 11 cases; *provided, further*, that the Debtors shall open any such new Bank Account(s) at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

7.      For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall immediately (a) contact each Bank, (b) provide the Bank with each of the Debtors' employer identification numbers and (c) identify each of their Bank Accounts held at such Bank as being held by a debtor in possession.

8.      The Debtors are authorized, but not directed, to pay and/or reimburse their Banks and service providers in the ordinary course of business for any Cash Management Fees.

9.      The Banks are authorized without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; and (c) debit the Bank Accounts for (i) all undisputed Cash Management Obligations, if any, owed to the Banks for the maintenance of the Cash Management System, (ii) all checks drawn on the Bank Accounts that were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, and (iii) all checks or other items deposited in one of the Debtors' Bank Accounts

4

with such Bank prior to the Petition Date that have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date; provided, however, that no Payments (excluding any electronic fund transfers that the Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (a) expressly authorized by this Court and the Debtors, (b) not otherwise prohibited by a "stop payment" request timely received by the Debtors' Banks from the Debtors, and (c) supported by sufficient funds in the Bank Account in question.

10.     Subject to the provisions of this Order, the Banks are authorized to and shall rely on the representations of the Debtors as to which Payments are authorized to be honored or dishonored, whether or not such Payments are dated, drawn, or issued prior to, on, or subsequent to the Petition Date. The Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtors or honoring any Payment that is subject to this Order either (a) at the direction of the Debtors to honor such prepetition Payment, (b) in the good faith belief that this Court has authorized such prepetition Payment to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtors direct that any Payment be dishonored or the Banks inadvertently dishonor any Payments, the Debtors may issue replacement Payments consistent with the orders of this Court.

11.     The Banks are further authorized and directed to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

12.     The relief granted in this Order extends to any new bank account opened by the Debtors, in accordance with the provisions of this Order, after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

13.     The Debtors shall serve a copy of this Order on the Banks within five business days of the entry of this Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

14.     The Debtors are authorized, but not directed, to continue to use their existing Business Forms and checks without alteration or change and without the designation "Debtor-in-Possession" imprinted upon them, *provided* that once the Debtors' existing Business Forms and checks have been used, the Debtors shall, when reordering Business Forms and checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all Business Forms and checks; *provided* further that, with respect to Business Forms and checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.

15.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions with other Debtors in the ordinary course of business.  The Debtors shall continue to maintain records related to the Intercompany Transactions, so that transactions can be ascertained, traced, and accounted for on applicable intercompany accounts. The Intercompany Claims arising postpetition shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.  The Debtors shall not make any intercompany loans to non-debtor entities absent further order of the Court.

6

16.     Except with respect to the Intercompany Transactions, nothing herein nor any actions taken hereunder shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

17.     The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

18.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Cash Management Obligations pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Cash Management Obligations allegedly due or owing to any Bank, and all of the Debtors' rights with respect thereto are hereby reserved.

19.     For the avoidance of doubt, the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfer and transactions are adequately and promptly documented in and readily ascertainable from the Debtors' books and records to the same extent maintained by the Debtors prior to the Petition Date.

20.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor to the extent required by such statute.

21.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

22.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

23.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

24.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

**EXHIBIT C**

**List of Bank Accounts**

| Debtor Name | Bank Name | Description of Account | Account Number (Last 4 Digits) |
|---|---|---|---|
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | Concentration Account | 7360 |
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | LEVC Receivable Account | 7519 |
| Lordstown EV Sales LLC | JP Morgan Chase Bank, N.A. | LEVS Receivable Account | 7865 |
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | Disbursement Account | 7675 |
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | Payroll Account | 7592 |
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | Purchasing Card Account | 7736 |
| Lordstown EV Corporation | JP Morgan Securities | JPMS Primary Investment Account | 4520 |
| Lordstown EV Corporation | JP Morgan Securities | JPMS Secondary Investment Account | 4586 |
| Lordstown EV Corporation | JP Morgan Asset Management | JPMAM Investment Account | 4688 |
| Lordstown EV Corporation | JP Morgan Chase Bank, N.A. | Investment Collection Account | 7725 |

# EXHIBIT D

**Flow of Funds**



Legend
Bank Account at JP Morgan Chase Bank, NA
Zero Balance Bank Account ("ZBA")
Brokerage Account at JP Morgan Securities LLC
*All Accounts are held by Debtors.
Payroll Related Payments
Vendor Payments
Miscellaneous Receipts
Customer Receipts
(7592) Payroll Account (LEVC)
(7675) Disbursement Account (LEVC)
(7519) LEVC Receivable Account (LEVC)
(7865) LEVS Receivable Account (LEVS)
(7360) Concentration Account (LEVC)
(7736) Purchasing Card Collateral Account (LEVC)
(7725) Investment Collection Account (LEVC)
(4688) JPMAM Investment Account (LEVC)
(4520) JPMS Investment Account – Primary (LEVC)
(4586) JPMS Investment Account – Secondary (LEVC)

## File a First Day Motion:

[23-10831 Lordstown Motors Corp.](#)

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 1 (Delaware) |
| Assets: y | Case Flag: VerifDue, PlnDue, DsclsDue | |

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Paul Noble Heath entered on 6/27/2023 at 2:34 AM EDT and filed on 6/27/2023

**Case Name:**          Lordstown Motors Corp.
**Case Number:**        [23-10831](#)
**Document Number:** [8](#)

**Docket Text:**
Motion to Maintain Bank Accounts *(Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, the Debtors to (I) Continue Use of Existing Cash Management System, Bank Accounts, and Business Forms, (II) Pay Related Prepetition Obligations, and (III) Continue Intercompany Transactions; (B) Waiving the Section 345(b) Deposit and Investment Requirements; and (C) Granting Other Related Relief)* Filed By Lordstown Motors Corp. (Heath, Paul)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**LMC - Cash Management Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/27/2023] [FileNumber=18060884-0
] [3d7694ff7c11855be8c205245fa47aab3bcd524b3355da57d2ca6b98cef97f2b1ca
b2ccae5ccbf6e1e48f41c3a48c7db6e047e292599671149438a8548b6696e]]

**23-10831 Notice will be electronically mailed to:**

Daniel J. DeFranceschi on behalf of Debtor Lordstown Motors Corp.
defranceschi@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Kevin Gross on behalf of Debtor Lordstown Motors Corp.
gross@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Paul Noble Heath on behalf of Debtor Lordstown Motors Corp.
heath@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Cory D. Kandestin on behalf of Plaintiff Lordstown EV Corporation
kandestin@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Cory D. Kandestin on behalf of Plaintiff Lordstown Motors Corp.
kandestin@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Jason M. Madron on behalf of Debtor Lordstown Motors Corp.
madron@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com