## EXHIBIT A

**Critical Vendors Motion**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS
TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS,
(B) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR
OUTSTANDING PREPETITION PURCHASE ORDERS,
AND (C) GRANTING OTHER RELATED RELIEF**

The debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the "**Final Order**," and, together with the Interim Order, the "**Orders**") granting the relief described below. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

1.      By this Motion, pursuant to sections 105(a), 363(b), and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Interim Order and the Final Order (a) authorizing, but not directing, the Debtors to honor prepetition obligations owed to certain vendors, suppliers, service providers, authorities, and other parties, all as described in more detail below (the "**Critical Vendors**," and the claims of such vendors, "**Critical Vendor Claims**"), including certain vendors and service providers located outside the United States (the "**Foreign Vendors**," and the claims of such vendors, "**Foreign Vendor Claims**"),[3] (b) confirming administrative expense priority status of all undisputed obligations of the Debtors arising from the Outstanding Orders (as defined below), and (c) granting other related relief.

2.      The Debtors also request that the Orders (a) authorize and direct all applicable banks and other financial institutions (collectively, the "**Banks**"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Critical Vendor Claims and the Outstanding Orders (collectively, the "**Obligations**"), whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new

---

[3]    For the avoidance of doubt, the term "Critical Vendors" as used in this motion includes Foreign Vendors and the term "Critical Vendor Claims" includes "Foreign Vendor Claims."

postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but not direct, the Debtors to continue in their ordinary course to make Payments on account of the Critical Vendor Claims and the Outstanding Orders.

3.        In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[4] to consider the relief requested herein on a final basis and entry of the Final Order.

4.        For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

5.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.        The predicates for the relief requested by this Motion are sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

7.        Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

---

[4]      Such period between the date this Motion was filed and the Final Hearing shall be the "**Interim Period**."

# BACKGROUND

## I.    Overview

8.      On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

9.      The Company develops, manufactures and sells electric vehicles ("**EVs**") primarily to commercial fleet customers.  It is one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers. The Company's flagship vehicle is the "Endurance," a full-size, all-electric pickup truck.  As of the Petition Date, with the Company still in its nascent stages, only approximately 65 Endurances have been manufactured, with a limited number of Endurances still in production.

10.     On November 7, 2019, the Company purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio.  Manufacturing operations at the Plant had ceased prior to the purchase.  The Company's business and vision for the Plant reinvigorated local industry.  On October 23, 2020, the Debtor entity now known as Lordstown EV Corporation ("**LEVC**," and then known as Lordstown Motors Corp.) completed a

merger with a subsidiary ("**MergerSub**") of DiamondPeak Holdings Corp. ("**DiamondPeak**"),[5] pursuant to which MergerSub merged with and into LEVC, with LEVC surviving the merger as a wholly-owned subsidiary of DiamondPeak. DiamondPeak is now known as Lordstown Motors Corp. ("**LMC**"), a Debtor in these Chapter 11 Cases.[6]

11.    In September 2021, the Company began a partnership with an affiliate of Hon Hai Precision Industry Co., Ltd., also known as Foxconn ("**Foxconn**"), the world's largest electronics manufacturer. The purpose of the Foxconn partnership was to allow the Company to shift its business strategy from a vertically integrated OEM to a less capital-intensive model, focused on developing, engineering, testing, and industrializing EVs. Since the inception of the partnership, however, Foxconn has repeatedly refused to honor its contractual promises to the Debtors. Foxconn has misled the Debtors about Foxconn's ability or willingness to proceed with joint product development plans and repudiated its promise to invest additional equity capital in the business. Most recently, Foxconn has refused to complete its second purchase of common stock in accordance with the terms of the investment agreement between the Company and Foxconn. Foxconn's actions have damaged the Company's business relationships, employee morale and relations, and the Company's future prospects, stripping it of its ability to continue as a going concern absent a strategic chapter 11 transaction.

12.    The Debtors have filed these Chapter 11 Cases for the purpose of maximizing value for the benefit of their stakeholders given the ongoing, repeated breaches of contract and commitments by Foxconn. Among other things, as part of these Chapter 11 Cases, the Debtors

---

[5]    DiamondPeak Holdings Co., now known as Lordstown Motors Corp., incorporated in Delaware on November 13, 2018 as a blank check company for the purpose of effecting a business combination.

[6]    Lordstown EV Sales LLC was formed to sell vehicles directly to customers and is a subsidiary of LEVC, which is in turn a subsidiary of LMC.

intend to pursue claims against Foxconn, commence a sales process for their assets, reduce their expenses, centralize and rapidly resolve claims, and, ultimately, distribute maximum value to creditors and—if sufficient—equity security holders under a chapter 11 plan.

13.    Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II.    The Debtors' Critical Vendor Claims

14.    The Debtors estimate that, as of the Petition Date, they owe a total of approximately $8 million to the Debtors' trade creditors for goods and services.  By this Motion, the Debtors seek authority, but not direction, in their sole discretion, to pay Critical Vendors in an aggregate amount of $1,372,000 on an interim basis, and in an aggregate amount of $1,960,000 on a final basis.  The following table details the amount of the Critical Vendors Claims the Debtors seek authority pay both on an interim and final basis:

| Category | Description of Claims | Estimated Total Amount Outstanding as of Petition Date | Estimated Amount Due Within Interim Period |
|---|---|---|---|
| 503(b)(9) Claims | Claims entitled to statutory priority under section 503(b)(9) of the Bankruptcy Code | $20,000 | $14,000 |
| Foreign Vendor Claims | Claims of Foreign Vendors that are not section 503(b)(9) Claims | $340,000 | $238,000 |
| Other Critical Vendor Claims | Claims of certain other Critical Vendor Creditors that comprise general unsecured claims and are neither section 503(b)(9) claims nor Foreign Vendor Claims | $1,600,000 | $1,120,000 |
| **Total Estimated Amounts for Critical Vendor Claims:** | | $1,960,000 | $1,372,000 |

15.    The Debtors are not seeking to pay these amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary

course of the Debtors' business.  As of the Petition Date, the Debtors have approximately $135 million free cash on hand and estimate that the Debtors will be able to satisfy all of the Critical Vendor Claims as they become due in the ordinary course of their business.

16.    The Debtors believe that the authority to pay the Critical Vendor Claims in the ordinary course of business is necessary to minimize disruption to the Debtors' operations and to allow for a seamless transition through these Chapter 11 Cases and maximize the prospects for their success, for the benefit of all parties in interest.

III.    **The Critical Vendors and Debtors' Supply Chain**

17.    In connection with the operation of their business, the Debtors' manufacturing and other operations depend on their supply chain.  The Debtors rely on approximately 700 different vendors, suppliers, and other transaction parties to provide goods and services.  The supply chain consists of vehicle and non-vehicle parts (such as tooling assets), software, technology, chemicals, licensing, and other specialized products.  The Endurance requires manufacturing to strict engineering, design and quality specifications.  The Debtors purchase a significant portion of the vehicle components necessary for production from various suppliers, with several vendors responsible for providing raw materials while other vendors supply the most critical components and supporting technology, such as the vehicle frame, the motor, the pickup box, and the battery cells.  The Debtors' operations depend on the timely receipt of products from suppliers and the quality of the auto parts, which in turn directly impacts the Debtors' vehicle production and sales timeline.

18.    In order to maximize the Debtors' prospects for success in these Chapter 11 Cases, including the marketing and sale process that the Debtors are undertaking, it is essential that the Debtors maintain their ongoing relationships with their Critical Vendors, especially given the

supply chain constraints the Debtors have faced in key components for production in recent years. These constraints, along with other factors, have caused a temporary pause on the Debtors' vehicle production, so any further interruption may be devastating. Disruptions to the supply chain have resulted in and continue to present challenges for the Debtors to obtain certain tooling assets, components, and raw materials in a timely manner or at favorable pricing. Moreover, inflation, currency fluctuations, and unstable political conditions affected the international transportation system and have caused increases in freight charges and shipment delays. Due to the limited availability and highly competitive nature of vendors and engineering services in the EV space to provide specialized goods and products, preserving the Debtors' relationships with their existing suppliers is critical. Any disruption to the Debtors' access to specialized parts, tooling assets and technology would undermine the integrity of the program and adversely harm the Debtors' ability to successfully complete a value maximizing sale process. The Critical Vendors cannot be replaced in a short period of time, and even for those vendors that could be replaced, the Debtors would likely lose out on favorable trade terms. Any harm to their relationships with the Critical Vendors could dissuade some potential bidders from participating in the sale process.

## IV.   The Debtors' Vendor Payment Process

19.   The Debtors have internal systems and software for their purchasing and payment processes. Most of the Debtors' vendors submit invoices through accounts payable, which is then subject to the Company's payment approval process.

20.   Most of the Debtors' larger vendors, especially for vehicle parts, require some amount of prepayment, ranging from 20%-80%, which is required at the time of purchasing or sometime prior to shipment. The approved purchase order must contain the payment terms and clearly identify any prepayment. Any amounts that are not pre-paid are made after partial or full

receipt of the goods or services, which is verified by the Debtors' internal systems and applicable representative before making payment.

21.     In the ordinary course of business, Payments to vendors are made according to standardized processes by the Company on a weekly basis.  Payments are predominantly made via Automated Clearing House (ACH) or through wire payments to Foreign Vendors or on an urgent basis.  In rare occasions, checks will be used.  While most payments are made in U.S. currency, a small number of Foreign Vendors (as described below) are paid in their local currency via international wire transfer on a spot basis.

22.     Through the course of their business, the Debtors have developed relationships with certain suppliers, service providers, partners, and other parties (namely, the Critical Vendors) whose goods and services are essential to ensuring the Debtors can continue to maintain operations and bring in customers.  Due to the unique industry of the Debtors' business, it is almost impossible for the Debtors to replace these suppliers.

## V.     The Debtors' Criteria for Identifying Critical Vendors

23.     To determine whether a vendor is a "Critical Vendor," the Debtors evaluated whether the vendor:

a. is essential to the Debtors' ongoing business operations and manufacturing vehicles;

b. cannot be feasibly replaced because it is the sole or limited source for the goods or services it provides;

c. is not otherwise obligated to perform under existing contracts and is likely to cease providing goods or services if its prepetition claims are not paid;

d. provides advantageous pricing or other terms such that replacing the vendor postpetition would result in significantly higher costs to the Debtors;

e. already has an administrative priority claim under section 503(b)(9) of the Bankruptcy Code;

9

f.  will be able to obtain or has already obtained a lien on the Debtors' property or has possession of the Debtors' property and will retain such property until payment is made;

g.  has an outstanding order pending with the Debtors that the Debtors are relying on;

h.  is a Foreign Vendor that may not recognize the Debtors' Chapter 11 Cases or the protections provided by the Bankruptcy Code; and/or

i.  would be likely to cause other disruptions to the Debtors' business if not paid that will outweigh the costs of paying its prepetition claims.

24.     Based on this analysis, the Debtors used a narrowly-tailored protocol identifying the goods and services absolutely essential to the Debtors' business.  Following the above-described analysis, the Debtors and their advisors identified the Critical Vendors that are crucial to the continued operations in the ordinary course without disruption.

25.     The Debtors seek authority to pay Critical Vendor Claims in the amounts outlined in the chart above.  The Debtors are not seeking to pay such amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary course of business or, in most cases, at an even later date to the extent the Debtors can reasonably put off payment without disrupting their business.  Accordingly, the Debtors believe they will have sufficient liquidity to pay the Critical Vendor Claims during the administration of these Chapter 11 Cases.

## VI.     **Outstanding Orders**

26.     In operating their businesses, the Debtors use shippers and delivery servicers to ship, transport, track, manage, and otherwise facilitate the movement of various auto and non-auto parts and related equipment for production.  Prior to the Petition Date, and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until or after the Petition Date (the "**Outstanding Orders**").  In the mistaken belief that they would be prepetition general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse

to ship or transport such goods (or may seek to recall shipments then in transit) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially disrupting the Debtors' ongoing business operations and requiring the Debtors to expend substantial time and effort in issuing such substitute orders.  As set forth in greater detail below, because the Outstanding Orders are administrative expenses of the Debtors' estates, the Debtors are requesting that the Court confirm the administrative expense priority of the Outstanding Orders and authorize the Debtors to pay amounts due on account of Outstanding Orders in the ordinary course of business.

## VII.    <u>The Foreign Vendors</u>

27.    Although the Debtors' operations are based in the U.S., the Debtors receive certain products from, and regularly conduct business with, Foreign Vendors in several countries, including Brazil, Canada, China, Czech Republic, Germany, France, India, Italy, Malta, Mexico, Malaysia, Slovenia, Slovakia, Thailand, United Kingdom, and Vietnam.  The Debtors' business, which depends on building one product—the Endurance—requires certain high-quality, specifically designed components, and typically uses tooling assets at competitive prices that can only be supplied by the Foreign Vendors at this time.  In many cases, re-sourcing these components would require extensive re-certifications to meet regulatory requirements.  Given that some of the Debtors' suppliers are located across the globe, their supply chain is particularly vulnerable if these Foreign Vendors' payment schedules are disturbed.

## VIII.   <u>Proposed Conditions of the Payment of Critical Vendor Claims</u>

28.    The Debtors request that the Orders authorize, but not direct, the Debtors to condition the payment of the Critical Vendor Claims upon such party's agreement to either: (i) maintain or reinstate trade terms during the pendency of the Chapter 11 Cases that existed 180

days prior to the Petition Date; or (ii) maintain such other terms satisfactory to the Debtors in their business judgment, including such party's written agreement to continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs in place in the 180 days prior to the Petition Date (the "**Customary Trade Terms**").

29.     In particular, the Debtors may elect, but are not required to, condition the payment of Critical Vendor Claims upon such party's agreement to continue supplying goods or services on Customary Trade Terms for the duration of these Chapter 11 Cases by executing trade agreements substantially in the form attached hereto as **Exhibit C** (each a "**Trade Agreement**"). Such Trade Agreements, once agreed to and accepted by the applicable vendor, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship as provided therein.

30.     If any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement has been executed), then: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and any such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**BASIS FOR RELIEF**

**I.**      **Payment of the Critical Vendor Claims Is Authorized by the Bankruptcy Code**

31.     The Debtors submit that the payment of the Critical Vendor Claims is appropriate pursuant to sections 363 and 105 of the Bankruptcy Code.  Section 363(b)(1) provides that, after notice and hearing, a court may permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  *See* 11 U.S.C. § 363(b)(1); *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages and stating, "[s]ection 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances").  For a court to apply section 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ."  *In re Ionosphere Clubs*, 98 B.R. at 175 (ruling that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful bankruptcy process); *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").  Once a debtor has articulated a valid business justification, the business judgment rule is applied to the Debtors' decision.  *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

32.     Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR*

*L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  In addition to using the Court's equitable powers under section 105(a), the Court may also rely on the "doctrine of necessity" to make payment of pre-petition claims.  The doctrine of necessity is a well-established doctrine that permits a court to authorize the payment of certain pre-plan prepetition claims when payment is necessary to the continued operations of a debtor's business and restructuring efforts.  *See e.g.*, *In re LCI Holding Co., Inc.*, No. 12-13319, 2013 WL 1101111 (Bankr. D. Del. Mar. 15, 2013) (holding necessity of payment doctrine is applicable in liquidation case to pay critical vendors and noting that "the Court permits payments to critical vendors when it benefits the bankruptcy estate."); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

33.    In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" *Id*.  The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id*. at 932.

14

34.     The Debtors have a sound business justification for paying the Critical Vendor Claims in the ordinary course.  The services provided by the Critical Vendors are vital to the Debtors' continuing business operations and maximizing the estate assets, including the prospects for a successful sale process or other transaction as part of these Chapter 11 Cases.  Failure to pay the Critical Vendor Claims would disrupt the Debtors' access to items that are vital and specialized to their production and the sales process by inhibiting the Debtors' access to the goods and services they need most at a critical time.  Further, potential bidders may also want to continue receiving goods and services from the Critical Vendors.  The Debtors have been facing supply quality challenges, which have caused relatively high production costs and low production rates.  The Debtors' business is ill-equipped to switch certain vendors or suppliers on short notice and, therefore, faces significant risks if certain prepetition amounts cannot be paid.  If, at the moment, certain Critical Vendors are unwilling to provide goods or services postpetition due to outstanding prepetition claims, the Debtors' operations will be materially impacted, causing severe negative effects to the value of the estates to the detriment of all creditors.

35.     Moreover, Foreign Vendors located outside of the U.S. may not be familiar with the U.S. bankruptcy process, and there is a significant risk that the non-payment of even a single invoice could cause a Foreign Vendor to sever its business relationship with the Debtors.  If a Foreign Vendor refused to ship its product to the Debtors, the Debtors' manufacturing processes would be disrupted, and they would be unable to satisfy their customers' orders in a timely manner.  Although the automatic stay applies to protect the Debtors' global assets, attempting to enforce the automatic stay in foreign countries is difficult, disruptive, and costly, especially considering that the Debtors' Foreign Vendors are located in countries with different legal and economic dynamics.  The Debtors believe their estates could be materially, if not irreparably, harmed if they

were to lose access to the goods provided by Foreign Vendors. Accordingly, the Debtors seek authority to honor certain prepetition obligations to Foreign Vendors.

36.     These Chapter 11 Cases are intended to maximize the value of the estates and all stakeholders without interrupting the Debtors' business operations or damaging the Debtors' operational disruptions. The maintenance of the Debtors' businesses during these Chapter 11 Cases, including during the sale process that is being conducted, is crucial to the Debtors' ability to preserve the going concern, which provides enhanced value for which a buyer may pay or otherwise, for the benefit of all of the Debtors' stakeholders. The Debtors are not seeking authority to pay the Critical Vendor Claims immediately, but only undisputed amounts in the ordinary course of business subject to the limits in the chart listed above. Thus, the Debtors believe the relief requested is narrowly tailored to and consistent with the paramount goal of chapter 11 to preserve value by "facilitating the continued operation and rehabilitation of the debtor . . . ." *In re Ionosphere Clubs*, 98 B.R. at 176.

37.     Particularly as to the Critical Vendors that agree to continue to provide goods or services on the trade terms existing 180 days prior to the Petition Date (or other accommodation deemed acceptable to the Debtors in their business judgment), the Debtors will avoid unnecessary expense, thereby preserving liquidity and ensuring that they are better-positioned to sustain operations during the Chapter 11 Cases. This also allows Debtors to negotiate terms and avoid the inherent operational inefficiencies of paying cash on demand and managing billing processes for numerous vendors that might require cash in advance or shorten their trade terms to less than a week. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the doctrine of necessity, the Court should grant the relief requested herein.

38.    For the reasons described above and in light of the Debtors' need to preserve the going concern value of their businesses, the relief requested in this Motion is proper and should be granted.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims because it is necessary for the debtors to have a successful case outcome).

39.    Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, and in the best interests of its estates and creditors.  Thus, this Motion should be granted in all respects.

## II.    Additional Bases for Payment of Certain Critical Vendor Claims

### A.  Certain Critical Vendor Claims Are Administrative Expense Claims under Section 503(b)(9)

40.    Section 503(b)(9) of the Bankruptcy Code provides that claims for goods delivered to the Debtors in the ordinary course of business within 20 days before the Petition Date are administrative expense claims against the applicable Debtors' estate.  *See* 11 U.S.C. § 503(b)(9). The Debtors believe that, an aggregate amount of approximately $1,960,000 of the Critical Vendor Claims, with approximately $1,372,000 coming due and payable during the Interim Period, are claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code for goods delivered to the Debtors in the ordinary course of business within 20 days before the Petition Date. The Debtors are therefore required to pay such claims in full to confirm a chapter 11 plan.  *See id.*; 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).

41.    The Bankruptcy Code requires, and any plan must provide for, payment in full of administrative expense claims on the effective date of the Plan, or as soon as practicable thereafter. Thus, payment of the Critical Vendor Claims entitled to priority under section 503(b)(9) of the

Bankruptcy Code under the Orders will effect only a change in the timing of such payments, not the amounts or priority of such Critical Vendor Claims. Finally, authorizing the Debtors to pay Critical Vendor Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the Debtors, which would arise from numerous motions requesting payment on account of claims under section 503(b)(9) of the Bankruptcy Code.

### B. Outstanding Orders Should Be Treated as Administrative Expense Claims

42.     Suppliers of Outstanding Orders may be concerned that such obligations will be treated as general unsecured claims in these Chapter 11 Cases. Therefore, they may refuse to provide goods under the Outstanding Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court authorizing payment of the Outstanding Orders. It is necessary to the uninterrupted operation of the Debtors' business that obligations owed under the Outstanding Orders for goods or services delivered or provided postpetition be explicitly granted administrative expense status. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority status. *See, e.g.*, *Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956 (2d Cir. 1993) ("[A] claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'") (citations omitted); *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC), 2015 Bankr. LEXIS 3499, at *17 (Bankr. D. Del. Oct. 14, 2015) (internal quotation omitted) ("[Pursuant to] Bankruptcy Code § 503(b)(1)(A), the Court may allow as administrative expenses, the actual, necessary costs and expenses of preserving the estate, including wages, salaries, commissions for services rendered after the commencement of the case."); *In re Blockbuster Inc.*, No. 10-14997 (BRL), 2010 Bankr.

LEXIS 4977, at *8-9 (Bankr. S.D.N.Y. Oct. 27, 2010) (final order ruling that "Debtors' undisputed obligations . . . that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.").  Thus, the granting of the relief requested herein will not provide the Critical Vendors with any greater priority than they otherwise would have if the relief were not granted, and will not prejudice any other parties in interest.

### III.   Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers

43.    The Debtors also request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to prepetition Critical Vendor Claims and Outstanding Orders, so long as sufficient funds are available in the applicable accounts to make the Payments.

44.    The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, cash in the estate, and anticipated access to debtor in possession financing.  Also, under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of prepetition Critical Vendor Claims and Outstanding Orders.  Accordingly, the Debtors believe that wire and electronic bank transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized when requested by the Debtors, to receive, process, honor, and pay any and all fund transfer requests made by the Debtors related to prepetition Critical Vendor Claims and Outstanding Orders so long as sufficient funds are available in the applicable

accounts to make the payments.  Any such financial institution may rely on the representations of the Debtors as to which wire or electronic bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## **RESERVATION OF RIGHTS**

45.    The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Critical Vendor Claims or Outstanding Orders and claims related thereto, and (z) if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not and should not be construed as an admission as to the validity of any Critical Vendor Claims Obligations or Outstanding Orders claims related

20

thereto or as a waiver of the Debtors' rights to dispute such Critical Vendor Claims Obligations or Outstanding Orders claims related thereto subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

46.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of a successful case outcome is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to maximize value for stakeholders).  The Third Circuit has interpreted the language "immediate irreparable injury" in the context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

47.     Here, as more fully detailed above, immediate and irreparable harm would result without the relief requested herein because failure to pay the Critical Vendors could result in such vendors refusing to provide essential goods and services to the Debtors.  Such refusal can jeopardize the Company's business at this critical time and cause lasting damage to the Debtors' production, and thereby its customer and partner relationships.  This needless disruption to the

Debtors' business and added risk to the success of their operations can be avoided if the debtors are permitted to pay the Critical Vendors in the ordinary course as their claims come due during the Interim Period. For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

48.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because paying the Critical Vendor Claims and Outstanding Orders to ensure the Debtors' continued business and operations is essential to prevent potentially irreparable harm to the Debtors' business and ability to maximize value for stakeholders.

## NOTICE

49.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **NO PRIOR REQUEST**

50.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other and further relief as is just and proper.

Dated: June 27, 2023

Respectfully submitted,

/s/ *Jason M. Madron*
_____

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (*pro hac vice* application pending)
Matthew C. Brown (*pro hac vice* application pending)
Fan B. He (*pro hac vice* application pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (*pro hac vice* application pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* application pending)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (*pro hac vice* application pending)
Doah Kim (*pro hac vice* application pending)
RJ Szuba (*pro hac vice* application pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

## **EXHIBIT A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-[_____] ( ) |
| Lordstown Motors Corp., *et al.*,[1] | (Joint Administration Requested) |
| Debtors. | **Re:  Docket No. [●]** |

### INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, (B) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR OUTSTANDING PREPETITION PURCHASE ORDERS, AND (C) GRANTING OTHER RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rules 6003 and 6004 of the Bankruptcy Rules, (a) authorizing, but not directing, the Debtors to pay the prepetition Critical Vendor Claims in the ordinary course, (b) confirming the administrative expense priority status for Outstanding Orders, as more fully set forth in the Motion, and (c) granting other related relief; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED on an interim basis as set forth herein.

2.     The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code, in their sole discretion and in the ordinary course of business, to pay the Critical Vendor Claims in full; *provided* that the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Petition Date and amounts that are or become due and payable between the Petition Date and the date that a final order on the Motion is entered, in an amount not to exceed $1,372,000, unless otherwise ordered by this Court; *provided, further*, that the Debtors are authorized, but not directed, to  require as a condition to payment hereunder, that such Critical Vendors (i) agree to maintain or reinstate Customary Trade Terms or such other terms satisfactory to the Debtors' in their business judgment or (ii) execute a Trade Agreement substantially in the form attached to the Motion as **Exhibit C**.

3.     If any party accepts payment pursuant to this Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement

has been executed), then: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and any such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

4.      The undisputed obligations of the Debtors arising under the Outstanding Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, in their sole discretion, pursuant to section 363(c)(1) of the Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Outstanding Orders consistent with their customary past practice.

6.      Nothing in the Motion or this Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

7.      The Debtors are authorized and empowered to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

8.      All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Payment of the Critical Vendor Claims and the Outstanding Orders, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

9.      Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Critical Vendor Claims and the Outstanding Orders pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

10.     The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

11.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing

herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order, (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Critical Vendor Claims or Outstanding Orders pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Critical Vendor Claims or Outstanding Orders allegedly due or owing to any Trade Creditor, and all of the Debtors' rights with respect thereto are hereby reserved.

12.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

13.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that relief is necessary to avoid immediate and irreparable harm.

14.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

15.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

16.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

17.     The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2023 at _____ __.m. (Eastern Time) (the "**Objection Deadline**"). The Final Hearing, if required, will be held on _____, 2023 at _____ __.m. (Eastern Time)

**EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-[_____] ( ) |
| | (Joint Administration Requested) |
| Debtors. | **Re: Docket No. [●]** |

**FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS
TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS,
(B) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR
OUTSTANDING PREPETITION PURCHASE ORDERS,
AND (C) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rules 6003 and 6004 of the Bankruptcy Rules, (a) authorizing, but not directing, the Debtors to pay the prepetition Critical Vendor Claims in the ordinary course of business, (b) confirming the administrative expense priority status for Outstanding Orders, as more fully set forth in the Motion, and (c) granting other related relief; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.  Any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code, in their sole discretion and in the ordinary course of business, to pay Critical Vendor Claims in full in an aggregate amount not to exceed $1,960,000, unless otherwise ordered by this Court, *provided*, *further*, that the Debtors are authorized, but not directed, to require as a condition to payment hereunder, that such Critical Vendors (i) agree to maintain or reinstate Customary Trade Terms or such other terms satisfactory to the Debtors' in their business judgment or (ii) execute a Trade Agreement substantially in the form attached to the Motion as **Exhibit C**.

3.      If any party accepts payment pursuant to this Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Trade Agreement has been executed), then (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash

upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and any such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

4.       The undisputed obligations of the Debtors arising under the Outstanding Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

5.       The Debtors are authorized, but not directed, in their sole discretion, pursuant to section 363(c)(1) of the Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Outstanding Orders consistent with their customary past practice.

6.       The Debtors are authorized and empowered to execute and deliver any such documents and to take and perform all actions necessary to implement and effectuate relief granted in this Order.

7.       All applicable banks and financial institutions (collectively, the "**Banks**") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Payment of the Critical Vendor Claims and the Outstanding Orders, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments.

8.       Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the obligations to make Payments to Critical Vendor Claims and Outstanding Orders pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

9.       The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

10.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Order; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Critical Vendor Claims or Outstanding Orders pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity,

priority, or amount of any Critical Vendor Claims or Outstanding Orders allegedly due or owing to any Critical Vendor Claims or Outstanding Orders, and all of the Debtors' rights with respect thereto are hereby reserved.

11.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

12.     The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

13.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

## EXHIBIT C

**Trade Agreement**

## TRADE AGREEMENT

Lordstown Motors Corporation (the "**Company**"), on the one hand, and [VENDOR] ("**Vendor**"), on the other hand, hereby enter into the following trade agreement (this "**Trade Agreement**") dated as of this [DATE].

### Recitals

WHEREAS on [●] (the "**Petition Date**"), Lordstown Motors Corp. and certain affiliated entities (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

WHEREAS on [DATE] and [DATE], the Court entered, respectively, the *[Interim Order (a) Authorizing, But Not Directing, the Debtors to Pay Prepetition Claims of Critical Vendors, (b) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (c) Granting Other Related Relief] and the [Final Order (a) Authorizing, But Not Directing, the Debtors to Pay Prepetition Claims of Critical Vendors, (b) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (c) Granting Other Related Relief]* (the "**Critical Vendor Orders**") **[Docket Nos. [●]]** authorizing the Debtors, under certain conditions, to pay the prepetition claims of certain vendors, including Vendor, subject to the terms and conditions set forth therein. Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Orders.

WHEREAS prior to the Petition Date, Vendor [delivered goods or provided services] to the Company, and the Company paid Vendor for such [goods or services], according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Vendor (each a "**Party**," and collectively, the "**Parties**") agree to the following terms as a condition of payment on account of certain pre-petition claims Vendor may hold against the Company.

### Agreement

1. Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Critical Vendor Claim.  Based on the Company's books and records, the estimated balance of the prepetition Critical Vendor Claim (net of any setoffs, credits, or discounts) (the "**Critical Vendor Claim**") of Vendor is $[●].  The Critical Vendor Claim does not constitute a claim allowed by the Bankruptcy Court in the Chapter 11 Cases, and signing this Trade Agreement does not excuse the Vendor from any requirement of filing a proof of claim in the Chapter 11 Cases.

3. Vendor Payment. Following execution of this Trade Agreement, the Company will pay Vendor $[●] on account of the Critical Vendor Claim (the "**Payment**").

4.  <u>Vendor Waivers</u>.

(a)  Except as otherwise agreed by the Debtors and the Vendor, the Payment shall be in complete satisfaction and release of all prepetition claims of the Vendor, and the Vendor and shall not separately file a proof of claim or seek payment on account of its Critical Vendor Claim or related in any way to any remaining prepetition amounts allegedly owing to the Vendor by the Company arising from agreements or other arrangements entered into prior to the Petition Date.

(b)  In consideration for the Payment, the Vendor agrees not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (a "**Lien**"), claim for reclamation ("**Reclamation Claim**"), claim under Bankruptcy Code section 503(b)(9) (a "**503(b)(9) Claim**"), or any similar priority claim under the Bankruptcy Code or other statute (a "**Priority Claim**") regardless of the statute or other legal authority upon which such Lien, Reclamation Claim, 503(b)(9) Claim, or Priority Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date and, to the extent the Vendor has already obtained or otherwise asserted such a Lien, Reclamation Claim, 503(b)(9) Claim, or Priority Claim, the Vendor shall take (at its own expense) whatever actions are necessary to remove such Lien or withdraw such Reclamation Claim, 503(b)(9) Claim, or Priority Claim.

5.  <u>Agreement to Supply</u>.

(c)  Vendor shall supply goods to the Company based on the following "**Customary Trade Terms**": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) in place in the 180 days prior to the Petition Date, which shall include [specific trade terms].

(d)  Vendor shall continue all [shipments of goods or supply of services] in the ordinary course and shall [fill orders for goods or services requested by the Company] in the ordinary course of business pursuant to the Customary Trade Terms.

(e)  The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

6.  <u>Confirmation and Plan Matters</u>.

Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.  The Payment will be made concurrently with

payment of other outstanding administrative clams as provided in a confirmed plan. Vendor will not separately seek payment from the Company on account of any prepetition claim outside the terms of this Trade Agreement or a plan confirmed in the Company's Chapter 11 Cases.

7. <u>Vendor Breach</u>.

(a) In the event that Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a *"**Vendor Breach**"*), upon written notice to Vendor, Vendor shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Payment or any portion of the Payment which cannot be recovered or setoff/netted by the Company from the post-petition receivables then owing to Vendor from the Company.

(b) In the event that the Company recovers the Payment pursuant to this section or otherwise, the Critical Vendor Claim shall be reinstated up to the amount of the Payment that is recovered as if the Payment had not been made.

(c) Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Vendor agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

8. <u>Notice</u>.

If to Vendor:

[●]

and

[●]

If to Company:

Lordstown Motors Corp.
38555 Hills Tech Dr.,
Farmington Hills, MI 48331

Attn: Melissa Leonard

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Attn: Daniel J. DeFranceschi; Amanda R. Steele
Email: defranceschi@rlf.com
steele@rlf.com

-and-

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: David M. Turetsky
E-mail: david.turetsky@whitecase.com

and

White & Case LLP
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Attn: Matthew C. Brown; Fan B. He
E-mail: mbrown@whitecase.com
fhe@whitecase.com

and

White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Attn: Roberto Kampfner; Doah Kim; RJ Szuba
Email: rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

9.  <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge and represent that:

(a) the Parties have reviewed the terms and provisions of the Critical Vendor Orders and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Orders;

(b) any payments made on account of the Critical Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Orders;

(c) if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Vendor Orders, the Bankruptcy Code, or applicable law; and

(d) in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of [shipment of goods or services] from Vendor to the Company, until a ruling of the Court is obtained.

10. Confidentiality. Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); *provided*, *that*, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further*, *that*, if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

11. Miscellaneous.

(a) The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

(b) This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

(c) Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

(d) This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

(e) The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

(f)  This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[COMPANY]**                          **[VENDOR]**


_____          _____

By:                                    By:

Title:                                 Title:

## File a First Day Motion:

[23-10831 Lordstown Motors Corp.](#)

Type: bk                      Chapter: 11 v                  Office: 1 (Delaware)

Assets: y                   Case Flag: VerifDue, PlnDue, DsclsDue

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Jason M. Madron entered on 6/27/2023 at 2:58 AM EDT and filed on 6/27/2023

**Case Name:**        Lordstown Motors Corp.
**Case Number:**     [23-10831](#)
**Document Number:** [9](#)

**Docket Text:**
Motion to Pay Critical Trade Vendor Claims *(Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, the Debtors to Pay Prepetition Claims of Critical Vendors, (B) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (C) Granting Other Related Relief)* Filed By Lordstown Motors Corp. (Madron, Jason)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** LMC - Critical Vendors Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/27/2023] [FileNumber=18060887-0
] [7b3dd539a7672e8fdae53cc579f4f2c278a1b757141568c2d2e05117fe89182b394
1fb7e8416d40ec64851f97e214183e353eb242591ce76ddcc4abda70af8b0]]

### 23-10831 Notice will be electronically mailed to:

Daniel J. DeFranceschi on behalf of Debtor Lordstown Motors Corp.
defranceschi@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Kevin Gross on behalf of Debtor Lordstown Motors Corp.
gross@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Paul Noble Heath on behalf of Debtor Lordstown Motors Corp.
heath@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Cory D. Kandestin on behalf of Plaintiff Lordstown EV Corporation
kandestin@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Cory D. Kandestin on behalf of Plaintiff Lordstown Motors Corp.
kandestin@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Jason M. Madron on behalf of Debtor Lordstown Motors Corp.
madron@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com