1
2

                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

3    IN RE:                        . Chapter 11
                                   . Case No. 23-10831 (MFW)
4    LORDSTOWN MOTORS CORP.,       .
     *et al.*,                     . Joint Administration Requested
5                                  .
                                   . Courtroom No. 4
6                                  . 824 Market Street
                                   . Wilmington, Delaware 19801
7                 Debtors.         .
                                   . Wednesday, June 28, 2023
8    . . . . . . . . . . . . . . . 3:00 p.m.

9                    TRANSCRIPT OF FIRST DAY HEARING
                 BEFORE THE HONORABLE MARY F. WALRATH
10                   UNITED STATES BANKRUPTCY JUDGE

11   <u>APPEARANCES</u>:

12   For the Debtors:          Kevin Gross, Esquire
                               Amanda R. Steele, Esquire
13                             RICHARDS, LAYTON & FINGER, P.A.
                               One Rodney Square
14                             920 North King Street
                               Wilmington, Delaware 19801
15
                               Thomas E. Lauria, Esquire
16                             Fan B. He, Esquire
                               WHITE & CASE LLP
17                             200 South Biscayne Boulevard
                               Suite 4900
18                             Miami, Florida 33131

19   (APPEARANCES CONTINUED)

20   Audio Operator:          Lesa Neal, ECRO

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.

1   APPEARANCES (CONTINUED):

2   For the Debtors:          David M. Turetsky, Esquire
                              Livy Mezei, Esquire
3                             Peter Strom, Esquire
                              WHITE & CASE LLP
4                             1221 Avenue of the Americas
                              New York, New York 10020
5
                              Roberto Kampfner, Esquire
6                             WHITE & CASE LLP
                              555 South Flower Street
7                             Suite 2700
                              Los Angeles, California 90071
8
    For the U.S. Trustee:     Benjamin Hackman, Esquire
9                             OFFICE OF THE UNITED STATES TRUSTEE
                              U.S. DEPARTMENT OF JUSTICE
10                            844 King Street, Suite 2207
                              Lockbox 35
11                            Wilmington, Delaware 19801

12  For Karma
    Automotive LLC:           James Sowka, Esquire
13                            SEYFARTH SHAW LLP
                              233 South Wacker Drive
14                            Suite 8000
                              Chicago, Illinois 60606
15
    For Certain Foxconn
16  Entities:                 Matthew Murphy, Esquire
                              PAUL HASTINGS LLP
17                            71 South Wacker Drive
                              Suite 4500
18                            Chicago, Illinois 60606

19

20

21

22

23

24

25

1                                   INDEX

2    MOTIONS:                                                    PAGE

3    Agenda
     Item 5:   Debtors' Motion for Entry of an Order              21
4              Directing Joint Administration of the
               Chapter 11 Cases
5              [Docket No. 2; filed June 27, 2023]

6              Court's Ruling:                                    22

7    Agenda
8    Item 6:   Debtors' Application for Entry of an               22
               Order Appointing Kurtzman Carson
9              Consultants LLC as Claims and Noticing
               Agent Effective as of the Petition Date
10             [Docket No. 4; filed June 27, 2023]

11             Court's Ruling:                                    23

12   Agenda
     Item 7:  Debtors' Motion for Entry of an Order (A)           23
13            Authorizing, But Not Directing, the
              Debtors to (I) Confirm, Restate, and
14            Enforce the Worldwide Automatic Stay, Anti-
              Discrimination Provisions, and ipso facto
15            Protections of the Bankruptcy Code, and (11)
              Use the Form and Manner of Notice, and (B)
16            Granting Other Related Relief
              [Docket No. 5; filed June 27, 2023]
17
18             Court's Ruling:                                    33

19   Agenda
     Item 8:  Debtors' Motion for Entry of Interim and           34
20            Final Orders (A) Authorizing, But Not
              Directing, the Debtors to (I) Pay
21            Prepetition Wages and Compensation; (11)
              Continue Certain Employee Benefits and
22            Incentive Programs; (111) Continue Certain
              Health and Insurance Benefits; and (B)
23            Granting Other Related Relief
              [Docket No. 6; filed June 27, 2023]
24
25             Court's Ruling:                                    38

1                               <u>INDEX</u>

2   <u>MOTIONS:</u>                                                    <u>PAGE</u>

3   Agenda
4   Item 9:   Debtors' Motion for Entry of Interim            39
              and Final Orders (A) Authorizing, But
5             Not Directing, the Debtors to (I)
              Waive Requirements to File a List of,
6             and Provide Notice to, All Equity
              Holders, (11) Redact Certain Personal
7             Identification Information for
              Individual Creditors, and (B) Granting
8             Other Related Relief
              [Docket No. 7; filed June 27, 2023]
9
              Court's Ruling:                                 41
10

11  Agenda
    Item 10:  Debtors' Motion for Entry of Interim            42
12            and Final Orders (A) Authorizing, But
              Not Directing, the Debtors to (I)
13            Continue Use of Existing Cash
              Management System, Bank Accounts, and
14            Business Forms, (II) Pay Related
              Prepetition Obligations, and (111)
15            Continue Intercompany Transactions;
              (B) Waiving the Section 345(b) Deposit
16            and Investment Requirements; and (C)
              Granting Other Related Relief
17            [Docket No. 8; filed June 27, 2023]

18            Court's Ruling:                                 43

19  Agenda
    Item 11:  Debtors' Motion for Entry of Interim            43
20            and Final Orders (A) Authorizing, But
              Not Directing, the Debtors to Pay
21            Prepetition Claims of Critical Vendors,
              (B) Confirming Administrative Expense
22            Priority Status for Outstanding
              Prepetition Purchase Orders, and (C)
23            Granting Other Related Relief
              [Docket No. 9; filed June 27, 2023]
24

25            Court's Ruling:                                 44

1                                    INDEX

2    MOTIONS:                                                    PAGE

3    Agenda
4    Item 12: Debtors' Motion for Entry of Interim            44
             and Final Orders (I) Authorizing, But
5            Not Directing, the Payment of Certain
             Prepetition Taxes and Fees and (II)
6            Granting Other Related Relief
             [Docket No. 10; filed June 27, 2023]
7
             Court's Ruling:                                 45
8
     Agenda
9    Item 14: Debtors' Motion for Entry of Interim            45
             and Final Orders (A) Authorizing, But
10           Not Directing the Debtors to (I)
             Maintain Existing Insurance Policies
11           and Pay All Insurance Obligations
             Arising Thereunder and (11) Renew,
12           Revise, Extend, Supplement, Change or
             Enter into New Insurance Policies, (B)
13           Modifying Automatic Stay with Respect
             to Workers' Compensation Programs, and
14           (C) Granting Other Related Relief
             [Docket No. 12; filed June 27, 2023]
15
16           Court's Ruling:                                 45

17   Agenda
     Item 13: Debtors' Motion for Entry of Interim            46
18           and Final Orders (A) Approving the
             Debtors' Proposed Form of Adequate
19           Assurance of Payment to Utility
             Providers, (B) Establishing Procedures
20           for Resolving Objections by Utility
             Providers, (C) Prohibiting Utility
21           Providers from Altering, Refusing, or
             Discontinuing Utility Services, and (D)
22           Granting Other Related Relief
             [Docket No. 11; filed June 27, 2023]
23
24           Court's Ruling:                                 46

25

1                                 INDEX

2   <u>MOTIONS:</u>                                              <u>PAGE</u>

3   Agenda
4   Item 15:  Debtors' Motion for Entry of Interim        46
              and Final Orders (A) Authorizing, But
5             Not Directing, the Debtors to (I)
              Maintain their Existing Warranty
6             Programs and (II) Honor Certain
              Customer Obligations and (B) Granting
7             Other Related Relief
              [Docket No. 13; filed June 27, 2023]
8
              Court's Ruling:                             46
9
    Agenda
10  Item 16:  Debtors' Motion for Entry of Interim        46
              and Final Orders (A) Establishing
11            Notice and Hearing Procedures for
              Trading in Equity Securities in the
12            Debtors and (B) Granting Other Related
              Relief
13            [Docket No. 14; filed June 27, 2023]

14            Court's Ruling:                             48

15

16  <u>DECLARATIONS:</u>                                         <u>PAGE</u>

17  1) Adam Kroll                                         21

18

19

20

21

22

23

24

25

1    (Proceedings commenced at 3:02 p.m.)

2        THE COURT:  Good afternoon.  This is Judge Walrath.

3        We are here in the Lordstown Motors Corp., case.  I

4    will turn it over to counsel for the debtor to get us started.

5        MR. GROSS:  May it please the Court; good afternoon,

6    Judge Walrath.  This is Kevin Gross of Richards, Layton &

7    Finger, proposed counsel for the Chapter 11 debtors in these

8    cases.

9        First and foremost, my colleagues and I wish to

10   thank Your Honor, Your Honor's staff, and even the Clerk's

11   Office for scheduling this time for us to present these

12   motions.  We are asking much of the Court in a very short time

13   and we are sincerely grateful to Your Honor.

14       My colleagues and I believe, from Richards, Layton &

15   Finger, Mr. DeFranceschi, Ms. Steele, and Mr. Madron.  We are

16   also here today, through Zoom, with our friends and proposed

17   counsel to debtors' lawyers from White & Case.  The Court will

18   be hearing today and in the future from people who the Court

19   knows well from other matters that have been before Your

20   Honor, and these lawyers include Mr. Thomas Lauria, Jason

21   Zakia, Mr. David Turetsky, Mr. Fan He, and others.  These

22   folks have worked tirelessly to prepare for today's hearing.

23       Just to take a minute to humanize the case, there is

24   one other person from White & Case working on this matter and

25   that is Livy Mezei who was an intern with the Court several

1  years ago. She is involved in this matter as well.  Each White

2  & Case lawyer who will be presenting motions today has been

3  admitted *pro hac vice* in these cases.

4         And I do have, largely, good news on the motions for

5  which we seek relief this afternoon.  Subject, of course, to

6  the Court's decision, we have resolved all of the items with

7  the Office of the United States Trustee. All of the motions

8  with the exception of one are consensual and uncontested at

9  this time.  In part, that is the result of efforts of Mr.

10 Benjamin Hackman of the Office of the United States Trustee

11 with whom we have worked over the past few days and we want to

12 thank Mr. Hackman for his help and his work.

13        Your Honor, I have no desire to slow down the

14 proceedings here.  So, if it please the Court I would like to

15 turn over the virtual podium to Mr. Thomas Lauria who will

16 provide the Court with some opening remarks about the case.

17 After that we would propose to proceed through the agenda

18 which should be in Your Honor's hearing binder.

19        With that I think Your Honor, Judge Walrath.

20        THE COURT:  Thank you, Mr. Gross.  Good to see you

21 again.

22        MR. GROSS:  Nice to see you.

23        THE COURT:  Go ahead, Mr. Lauria.

24    (No verbal response)

25        THE COURT:  You're on mute.

1          MR. GROSS:  You're on mute, Mr. Lauria.

2          MR. LAURIA:  Sorry about that.  One of the rare

3   times that people won't be able to hear me.

4          Good afternoon, Your Honor.  I'm going to try this

5   again, Thomas Lauria with White & Case.  We represent the

6   debtors in these Chapter 11 cases.

7          There are three debtors, Lordstown Motors

8   Corporation, Lordstown EV Corporation, and Lordstown EV Sales

9   LLC.  Lordstown Motors Corporation is the parent, it is a

10  holding company.  Lordstown EV Corporation is the operating

11  company.  Lordstown EV Sales was set up to conduct sales on

12  the company's behalf as vehicles would be manufactured.

13         Let me note right off the top that we are joined

14  today, virtually, by Daniel Ninivaggi who is the executive

15  chairman of Lordstown Motors Corporation; Edward T. Hightower

16  who is its CEO and president; Adam Kroll, the executive vice

17  president and CFO, and also your first day witness on the

18  declaration that was filed at Docket 15; and Melissa Leonard

19  who is executive vice president, general counsel, and

20  secretary also of Lordstown Motors Corporation.

21         Also with me, from White & Case, are my partners

22  Jason Zakia, David Turetsky, and Roberto Kampfner. We have

23  three of our colleagues, including Livy Mezei, who will be

24  presenting today.  Also presenting will be Peter Strom and Fan

25  He.

1        So, with that let me give a brief background of the

2   case here and the high-level issues and matters that I believe

3   will be before the Court as we work our way through toward a

4   resolution.

5        The entity that is today, Lordstown Motors

6   Corporation, was formed in 2018.  Its name at that time was

7   DiamondPeak.  It was a SPAC sponsor.  In March of 2019 it

8   conducted an IPO and raised $250 million. It subsequently

9   raised an additional $37 million.

10       In November of 2019, DiamondPeak acquired -- sorry,

11  sorry, the company now known as Lordstown EV Corporation, but

12  at the time was known as Lordstown Motors Corporation,

13  acquired the General Motors manufacturing facility in

14  Lordstown, Ohio.  This is one of the largest auto

15  manufacturing facilities in the United States and had been

16  largely idled by GM a number of years earlier.

17       LMC was engaged in the business of designing and

18  manufacturing electronic vehicles, in particular it had

19  designed the endurance which is a full-sized pickup truck and

20  it is perhaps unique because of its Hub Motor technology

21  pursuant to which there is an engine driving each of the four

22  wheels; something that would be important for a pickup truck

23  in offroad business.

24       In March of 2020 DiamondPeak acquired Lordstown

25  Motors Corporation and combined it with a subsidiary and

1   renamed the entity Lordstown EV.  DiamondPeak then changed its

2   name to Lordstown Motors Corporation.

3           In September of 2021 Lordstown Motor Corporation

4   entered into an agreement in principal with Foxconn, one of

5   the world's largest manufacturers; in particular, specializing

6   in the electronics area.  And this was because of Lordstown's

7   need for capital and other support to achieve its vision of

8   being able to manufacture in an efficient fashion its

9   vehicles.

10          The AIP envisioned a partnership between Lordstown

11  and Foxconn that would be effectuated through three

12  agreements: an asset purchase agreement, a joint venture

13  agreement, and a contract manufacturing agreement.

14          The asset purchase agreement covered Lordstown's

15  manufacturing facility; arguably, by far, its most valuable

16  asset.  The agreement to sell the plant was contingent on

17  entering into a joint venture agreement with Foxconn and a

18  contract management agreement pursuant -- a manufacturing

19  agreement pursuant to which Lordstown would have Foxconn

20  manufacturing vehicles at the facility after it sold it.

21          The plant was, in fact, sold to Foxconn in the

22  spring of 2022.  Unfortunately, little has happened since

23  then.  Of note, Foxconn convinced Lordstown that it should

24  terminate the joint venture agreement and instead pursue the

25  future through an investment agreement that committed Foxconn

1  to invest up to another $170 million in the business; however,

2  after the initial $22 million investment that was made shortly

3  after the investment agreement was entered into no further

4  investment has been made by Foxconn.  And, in fact, very

5  little has been done by Foxconn since then, which really

6  brings us to the present.

7  Lordstown has been operating at a substantial cash

8  loss since its inception and was doing so with the expectation

9  that its partnership with Foxconn would continue to provide

10  the financing and technology needed to get to the end of the

11  road, that is to get to a position where the company could

12  manufacture and sell electric vehicles.  That didn't happen.

13  The board, acting as a fiduciary here, and really in

14  a quite unique fashion compared to many of the debtors we see,

15  realized that in order to maximize value for its shareholders

16  and other stakeholders' immediate action was required.  We

17  needed to develop an efficient path to sell the assets and to

18  liquidate the claims against the estate so that the proceeds

19  could be distributed pursuant to the waterfall contemplated by

20  the bankruptcy code.

21  The concern was that if the company continued to

22  operate at its current level for any period of time going

23  forward the only consequence was going to be that the pot

24  available for distribution was going to shrink in value.  So,

25  we have a situation where the board here, I think, was

1  uniquely responsible and although it was a bitter pill to

2  accept that the business didn't have a future in its current

3  ownership structure, the board has made the decision to pursue

4  a liquidation of the company through a Chapter 11 proceeding.

5         Importantly, the company is involved in a number of

6  litigation, which I will review in just a moment, that were

7  costing an enormous amount of money for the company to defend

8  and, obviously, as a consequence of the commencement of these

9  cases the automatic stay has brought that to an end, at least,

10  for now so that the company's resources can be concentrated,

11  and preserved, and used for ultimate distribution to those

12  holding claims when they become allowed claims.

13         Your Honor, I think that its probably easiest to

14  walk the Court through this by thinking of the different

15  categories of major issues that we're going to face.  I

16  believe that there really are six.

17         Number one, the debtor is the primary defendant in a

18  lawsuit currently pending in the U.S. District Court in the

19  Central District of California.  That suit was brought by

20  Karma Automotive LLC.  I believe we will be hearing a bit more

21  about that lawsuit later.  Karma is the entity that was

22  formally known as Fisker Automotive which, itself, went

23  through Chapter 11 a number of years ago and is also engaged

24  in the business of developing and manufacturing electric

25  vehicles.

1        The gist of the action is that Karma believes that a

2  number of employees who left Karma and came over to Lordstown

3  took with them trade secrets and confidential information, and

4  that that information is now being utilized wrongly by the

5  debtors.  Damages in excess of $1 billion are sought in that

6  action.

7        The second family of issues that we are going to

8  deal with here are the stockholder litigation claims that have

9  been asserted in Delaware Chancery Court.  This is a

10  consolidated action against the D's and O's accusing them of

11  having made false statements that caused the SPAC investors to

12  not take action at a time when they could have.  This action

13  is against board members.

14        The debtor is not a party to the lawsuit and it

15  involves one current board member and former board members;

16  all of them are covered by the company's indemnification

17  obligations.  So, the company has been funding the cost of the

18  defense of this litigation and would ultimately be on the hook

19  if judgement were to be obtained.

20        The third family of issues here is another group of

21  securities litigations which we believe completely overlaps

22  with the Delaware Chancery Court actions.  It's the LMC

23  securities litigation that is pending in the Northern District

24  of Ohio and involves six consolidated class actions.  There,

25  the debtor, Lordstown Motor Corporation, is a defendant along

1   with Lordstown EV.  Seven board members are also defendants;

2   two are former directors and five are current directors.

3          As with the first family of securities lawsuits all

4   of the defendants are indemnified by the company.  Their

5   defense is being provided by the company and the liquidation

6   of those claims will ultimately be a liability against the

7   company.

8          Importantly, Your Honor, one of the things we're

9   going to have to sort through here is neither of the classes

10  have been certified; however, given the potential size of

11  these classes it is clear that they could involve millions and

12  millions of dollars of damage liability for the debtors.

13         Category four, there are a number of derivative

14  actions that have been brought by shareholders against the

15  company.  As the Court is aware, those actions upon the

16  commencement of the case become assets of the estate.  And we

17  will do what we can and need to do to drive those actions to a

18  resolution that is beneficial to the estate.

19         Fifth category, there is an ongoing SEC

20  investigation and potential civil claims may come out of this.

21  At this point there have been confidential settlement

22  negotiations, but no settlement with the SEC.  It is unclear

23  if that will result or lead to a negotiated resolution or,

24  otherwise, be litigated.

25         The final category, category six, is the family of

1  disputes that now exist between the debtors and Foxconn.  I am

2  sure the Court has seen the adversary proceeding that was

3  commenced shortly after the filing of the petition.  This is

4  not the *sine qua non* of the case, but it is the reason that

5  Foxconn had to file Chapter 11.  Without the support

6  negotiated for from Foxconn, both financial and otherwise, the

7  debtor is unable to proceed with its business.  We believe

8  that there are significant claims against Foxconn and we think

9  that those claims are going to be best resolved here in the

10  Bankruptcy Court.

11       So, Your Honor, I am happy to address any questions

12  the Court may have.  After doing so I am going to turn the

13  podium over to my partner, David Turetsky.

14       THE COURT:  Well, I will save my questions for

15  later.  So, let me hear the first days that we think we can

16  get through.

17       MR. LAURIA:  Great. Thank you, Your Honor.

18       THE COURT:  Thank you.

19       MR. LAURIA:  Now I will go back on mute.

20       THE COURT:  All right.  And your colleague is still

21  on mute.

22       MS. STEELE:  Your Honor, Amanda Steele, Richards,

23  Layton & Finger, on behalf of the debtors. I think that the

24  host needs to unmute the project pickup room.

25       THE COURT:  All right.  Ms. Neal. Do we need to

1  share the screen, is that what --

2        MS. STEELE:  No.  They said they were locked by the

3  host, I believe.

4      (Pause)

5        THE COURT:  Well, we didn't mute them because we

6  can't unmute them.

7        MR. TURETSKY:  Can you hear me now?

8        THE COURT:  Yes.

9        MS. STEELE:  Thank you, Your Honor.

10        MR. TURETSKY:  Excellent.  Good afternoon, Your

11  Honor.  It's wonderful to see you again.  It's David Turetsky

12  of White & Case on behalf of the debtors.

13        I would like to echo the sentiments of Mr. Gross,

14  Mr. Lauria; thank you for making time for us this afternoon.

15  And thank you to Mr. Hackman from the Office of the United

16  States Trustee.

17        I believe we are all resolved on any issues that the

18  U.S. Trustee raised.  I think we were able to incorporate most

19  if not all of the Trustees comments in the pleadings that were

20  filed with the Court.  To the extent that there are any

21  changes that do need to be made we will note them for Your

22  Honor as we go forward.

23        As you can appreciate, first day relief is always

24  important, always critical.  We believe that the first day

25  relief that we are seeking here today is both customary and

1   falls within that category.

2           Before getting into the first day motions, I would

3   just like to take care of a couple of housekeeping matters.

4   First, Your Honor will understand that many of our first day

5   pleadings seek both interim relief and to schedule a final

6   hearing on the motions.  I believe that we have been in

7   contact through Richards, Layton with Your Honor's Chambers

8   and the date that we have heard is July 27th, 2023 at 9 a.m.

9   To the extent that that is accurate that does work for the

10  debtors.  I wanted to clarify and get certainty on that.

11          THE COURT:  I believe it was scheduled for 9:30 a.m.

12          MR. TURETSKY:  Correct.

13          THE COURT:  Okay.

14          MR. TURETSKY:  If I misspoke, I apologize.

15          THE COURT:  Yes.

16          MR. TURETSKY:  Second, Your Honor, I would like to

17  start by offering the first day declaration as our evidentiary

18  support for the first day relief that we are seeking today.

19  As noted previously, with us here today is Adam Kroll who is

20  the debtors' chief financial officer.  Mr. Kroll's declaration

21  has been filed with the Court at Docket No. 15.  It is being

22  offered in support of the debtors' first day motions.  As

23  noted, Mr. Kroll is available on Zoom and available to be

24  cross-examined if necessary.  And at this time I would like to

25  move Mr. Kroll's declaration into evidence.

1        THE COURT:  All right.  Mr. Kroll, could you briefly

2   turn on your video so that I can assure that you're here.

3   There is quite a number of people on the Zoom.

4        (Pause)

5            THE COURT:  Maybe he's not on our Zoom then.

6            MR. TURETSKY:  I was assured that he was, Your

7   Honor.

8            THE COURT:  All right.  Before he gets on, I see Mr.

9   Murphy has a hand up and maybe we can hear from him first.

10           MR. MURPHY:  Thank you, Your Honor.  Matt Murphy of

11  Paul Hastings on behalf of certain Foxconn entities. I am

12  joined today by Mr. Michael Whalen from the Paul Hastings

13  Firm, as well as Rob Dehney and Matt Harvey from Morris

14  Nichols.

15           Your Honor, I certainly don't want to interrupt Mr.

16  Turetsky's flow here. I just wanted to say that as long as the

17  declaration is being admitted into evidence solely for

18  purposes of supporting the relief requested in the first day

19  pleadings on an interim basis no issue.

20           I do want to point out that I take issue with the

21  declaration to the extent its being introduced as evidence

22  justifying this filing and supporting the allegations against

23  Foxconn, which I would appreciate a chance to comment at the

24  end.

25           Thank you.

1          THE COURT:  All right.  Mr. Turetsky, you are

2    agreeable that it's only being offered in support of the

3    relief requested today.

4          MR. TURETSKY:  That is agreeable to the debtors,

5    Your Honor.

6          THE COURT:  All right.  Did we find Mr. Kroll?

7        (No verbal response)

8          THE COURT:  Ms. Neal, is he in the -- perhaps is Mr.

9    Kroll misidentified as Ms. Leonard?

10         MR. KROLL:  Yes, I'm sorry.  She forwarded me the

11   invite to make sure that I got on the main line.  I'm sorry,

12   Your Honor.  Yes, it's Adam Kroll.

13         THE COURT:  All right.  And everything you stated in

14   the declaration, to the extent it is being offered to support

15   the relief requested today, is true and accurate and would be

16   your testimony, if you testified today?

17         MR. KROLL:  Yes, Your Honor.

18         THE COURT:  All right, thank you.

19         Does anybody else object to the admission of Mr.

20   Kroll's declaration?

21       (No verbal response)

22         THE COURT:  All right, it will be admitted, again,

23   for the record, to support the relief requested today.

24       (Declaration of Adam Kroll received in evidence)

25         MR. TURETSKY:  Thank you, Your Honor.  May I

1   proceed?

2            THE COURT:  You may.

3            MR. TURETSKY:  Thank you.  The first of our first

4   day motions is a motion seeking joint administration of the

5   debtors' Chapter 11 case.  The motion is filed at Docket

6   Number 2, it's Agenda Number 5, and the relief we are seeking

7   is procedural and for administrative convenience.  It's a very

8   standard motion and we incorporated comments from the U.S.

9   Trustee prior to filing, so I do not believe that there are

10  any issues there.

11           Unless Your Honor has any questions, I think the

12  motion speaks for itself and we'd ask for entry of the order

13  approving it.

14           THE COURT:  Mr. Hackman, do you want to make your

15  statement now or wait until later?

16           MR. HACKMAN:  Yes, good afternoon, Your Honor.  May

17  it please the Court, this is Ben Hackman for the U.S. Trustee.

18  Can Your Honor hear me okay?

19           THE COURT:  I can.

20           MR. HACKMAN:  Thank you, Your Honor.  I rise to

21  confirm that our informal comments about the first day matters

22  have been resolved and we have no objection to the orders that

23  are going to be presented to Your Honor today.

24           Thank you, Your Honor.

25           THE COURT:  Thank you.  All right, I will admit --

1   excuse me, I will grant the joint administration order and --

2              MR. TURETSKY:  Thank you, Your Honor.

3              THE COURT:  -- you may proceed.

4              MR. TURETSKY:  The next -- thank you.  The next item

5   on the agenda at Docket Number 4 is the application to retain

6   KCC as claims agent.  The debtors seek authority to employ KCC

7   as claims and noticing agent pursuant to Section 156(c) of the

8   U.S. Code, and to assume full responsibility for the

9   distribution of notices, the maintenance and processing and

10  adopting proofs of claim filed in the Chapter 11 cases.

11             Your Honor, we're always mindful of the Delaware

12  protocol with respect to claims agents and we got quotes not

13  only from three different firms, but actually four.  We chose

14  to retain KCC, subject to Your Honor's approval, due to their

15  proposal and their status in the industry and their

16  experience.

17             And, again, unless Your Honor has any questions,

18  we'd ask that the Court enter the order approving KCC's

19  retention.

20             THE COURT:  All right.  Anybody else wish to be

21  heard on this motion?

22         (No verbal response)

23             THE COURT:  I hear none.  I will enter the order.

24             MR. TURETSKY:  Thank you, Your Honor.

25             So, Your Honor, the next motion, which we refer to

1  as the global stay motion, which is filed at Docket Number 5,

2  I believe is the only contested motion that we have at this

3  hearing today, but we'll find that out as we go forward,

4  obviously, but it's a motion for an order confirming the

5  worldwide application and enforceability of the automatic

6  stay, and the *ipso facto* and certain other key protections

7  given to debtors under the Bankruptcy Code.

8          We're also seeking approval of a notice attached as

9  Exhibit 1 to the order to provide non-U.S. creditors, as well

10 as authority to translate the order and the notice.

11         Your Honor, although the debtors' operations are

12 based in the United States, they receive product from and have

13 other dealings with certain vendors located outside of the

14 U.S.  For example, the debtors utilize certain tooling assets

15 applied by non-U.S. entities located in Canada, China, France,

16 Mexico, Slovakia, the United Kingdom, and the Czech Republic.

17 And, in addition, the debtors' licensed intellectual property

18 related to the motor, the hub motor that Mr. Lauria spoke

19 about earlier, from a Slovenia-based company that has limited

20 or relevant ties to the United States.

21         These entities may be unaware of the import of the

22 debtors' Chapter 11 cases and the protections that are

23 afforded by the Bankruptcy Code, and those protections are

24 applicable to the debtors' property wherever it is located,

25 even outside the United States.  The relief we've requested

1  here is intended to better inform those creditors and to

2  assist the debtors in maximizing the value of the estates.

3         Importantly, the debtors do not seek to expand or

4  enlarge the rights afforded to them under the Bankruptcy Code.

5  We seek really to affirm those rights, and to assist non-U.S.

6  creditors and parties in interest to better understand them.

7         Your Honor, we did receive a late-breaking objection

8  to this motion shortly before the hearing by Karma Automotive,

9  which is an entity that has brought suit against the debtors

10 in the Central District of California, and it's brought suit

11 against the debtors and certain former and current employees

12 and executives.

13        I was a little surprised to see the objection.  I

14 had spoken with counsel to Karma earlier and it had not

15 arisen, but that's where we are.  In any event, we think that

16 the objection is without merit and should be overruled.

17        First, while purporting to object to the motion and

18 the order, the objection does not actually target anything

19 that is in the motion or the order (indiscernible) because the

20 order merely restates the provisions of the automatic stay and

21 other provisions of the Bankruptcy Code.  Those provisions are

22 the law; it's hard to take exception to the law.  Instead, the

23 objection appears to take issue with the suggestion of

24 bankruptcy that was filed in the Central District of

25 California.  That suggestion is not before Your Honor today.

1          Moreover, the context in which Karma has objected is

2    that the Central District of California determined yesterday

3    to stay depositions and discovery, including of the debtors'

4    chief financial officer, relating to claims against debtors

5    and individual defendants alike.  The court further indicated,

6    as I understand it, that it would accept briefing on the

7    matter and invited Karma to file papers.  Karma is perfectly

8    free to do so; they're perfectly free to bring papers before

9    Your Honor to seek authority to proceed, this motion, this

10   order does not impact their ability to do so, it doesn't

11   prejudice them at all.  And in fact the order specifically

12   says at paragraph 3, "This order shall not affect the

13   substantive rights of any party."

14          Again, at paragraph 10, the order says, "This order

15   is declarative and is intended to be coterminous with Sections

16   362, 365, 525, 541, 1107, and 1108 of the Bankruptcy Code.

17   Nothing in this order shall abridge, enlarge, or otherwise

18   affect the rights of any party or the availability of any

19   exception as contained in the Bankruptcy Code."

20          Again, that's the law.  It's hard to object to the

21   law.

22          So the order that we're asking Your Honor to enter

23   merely provides for what the Bankruptcy Code provides and it

24   doesn't abridge the rights of any party.  And we don't think

25   it's necessary to add language, which is what Karma is asking

1   us to do, because that language isn't in the Bankruptcy Code.

2           In addition, Karma's objection asks the Court to

3   direct the debtors to amend their suggestion of bankruptcy.

4   That request really underscores that the subject of Karma's

5   objection is the suggestion of bankruptcy itself and not the

6   order and not the notice that the debtors propose.  It's

7   procedurally improper, the objection is not a motion and the

8   suggestion of bankruptcy is not before this Court.

9           And, lastly, I have every expectation that Karma

10  will be before Your Honor and file papers with respect to the

11  scope of the automatic stay; they're perfectly within their

12  rights to do so.  There's nothing in the relief that the

13  debtors are seeking that impairs Karma's ability to do so.

14          I'm also mindful that while Your Honor has

15  admonished me at times in the past not to recite other first

16  day orders, I would note this is a first day order that Your

17  Honor (indiscernible) --

18          THE COURT:  You know not to do that.

19      (Laughter)

20          MR. TURETSKY:  I know, I know.

21          THE COURT:  For example, how often did somebody

22  appear at a first day and object to my entering --

23          MR. TURETSKY:  That is perfectly --

24          THE COURT:  -- a form of order --

25          MR. TURETSKY:  -- they're here and they're

1  objecting.

2          THE COURT:  All right.

3          MR. TURETSKY:  They're here and they're objecting.

4  I understand, Your Honor.

5          So we would, therefore, ask that the Court overrule

6  the objection and enter the order.

7          THE COURT:  Let me ask a question of you before I

8  hear from Karma.  Who directed counsel in California to file

9  the suggestion of bankruptcy?

10          MR. TURETSKY:  I believe that was the debtors, it

11  was White & Case, Your Honor.

12          THE COURT:  Okay.  Thank you.

13          Does Counsel for Karma wish to be heard?

14          MR. SOWKA:  Yes, Your Honor.  This is James Sowka on

15  behalf of Karma Automotive.  I apologize, my Zoom is

16  mislabeled Jesse Coleman, who is my partner also appearing

17  with me today, as well as our co-counsel Mark Olivere of the

18  Chipman Brown law firm in Wilmington, Delaware.

19          Your Honor, some background is necessary to provide

20  some context with respect to Karma's limited objection.  As

21  Mr. Lauria indicated, Karma is in fact the largest creditor of

22  the debtors' estate, holding a damages claim in excess of $900

23  million based on the pending litigation in the Central

24  District of California.

25          Despite that, for some reason Lordstown saw fit to

1 omit Karma from the 30 largest list of creditors in the case

2 and we're not included on there, nor was the liability

3 disclosed otherwise in the petition filed by Lordstown in this

4 case.

5        With respect to the pending claims, Your Honor,

6 Lordstown is seeking damages, including injunctive relief,

7 against the debtor, as well as certain individual defendants,

8 including current and former officers, directors, and

9 employees of Lordstown with respect to the willful and

10 malicious misappropriation of trade secrets, including but not

11 limited to source code from Karma's vehicles that has been

12 integrated into Lordstown's vehicles, the Endurance electric

13 pickup truck.

14        Your Honor, the litigation in the Central District

15 was filed in 2020 and has been going on for almost three

16 years.  There has been extensive discovery undertaken in the

17 case and the matter was initially set for trial in April, and

18 that was postponed due to the need for Lordstown to substitute

19 one of its expert witnesses due to a health issue.  As such,

20 the District Court reset the trial for September 5th.  Other

21 than the substitution of the expert report and some related

22 issues, the matter is ready to proceed to trial.

23        As Your Honor is aware, we attached -- the debtors

24 in this case filed a suggestion of bankruptcy, asserting that

25 the automatic stay protects the third parties, as well as

1   Karma, from the claims proceeding in the case.  Based in part

2   on their representations, the District Court judge has stayed

3   the matter for the time being, Your Honor.

4        And it appears now that the debtor has filed a sales

5   procedures motion and intends to attempt to sell its assets,

6   including, apparently, the misappropriated intellectual

7   property, prior to the adjudication from his rights and claims

8   with respect to same.

9        Karma will be filing an objection to the sales

10  procedures motion, Your Honor, and, unsurprisingly, Karma also

11  intends to promptly file a motion for relief from the

12  automatic stay to proceed with the September trial.

13       Your Honor, the concerns with respect to the pending

14  motion are obvious.  The debtor seems to be saying one thing

15  in court and is asking for broad, vague language entered in an

16  order; meanwhile, it's filing suggestions of bankruptcy in

17  other jurisdictions saying other things on this.  And we

18  attempt -- we suspect the debtor is going to attempt to use

19  the order to cause further delays with respect to the

20  litigation in the Central District of California.  As such, we

21  have requested a very minor amendment to the proposed order

22  simply specifying what Your Honor has already held with

23  respect to the application of the automatic stay, is that the

24  stay doesn't apply to third parties.

25       And, specifically, Your Honor, in the Uni-Marts

1  case, Your Honor addressed the issue and the authorities cited

2  by Lordstown, the A.H. Robins case at 788 F.2d 994 (4th Cir.

3  1986).  And Your Honor, in addressing that opinion, found that

4  it didn't automatically protect third parties in extent of the

5  automatic stay; instead, it was incumbent upon debtors and

6  third parties to move before the Court to have the stay

7  extended.

8        So, based on Your Honor's findings and the

9  misrepresentations that the debtor has made to the Central

10  District of California, we have requested that Your Honor

11  order that the suggestion of stay be modified to be consistent

12  with the relief requested by the debtors in this motion before

13  this Court and, further, that the order be revised to specify

14  that the stay does not on its face apply to third parties.

15        If Your Honor has any other questions, I'm happy to

16  answer them.

17        THE COURT:  I have no questions.

18        Does the debtor wish to respond?

19        MR. TURETSKY:  Yes, Your Honor.  Again, I'm going to

20  go back to the context in which this objection was made and

21  the context, frankly, of the relief that we're seeking.

22        The relief that we're seeking is relief to clarify

23  for non-U.S. creditors the provisions of the automatic stay

24  and that they have global reach.  The provisions of the stay

25  are reproduced in the order, we haven't changed the wording.

1        Your Honor, I fail to see how Karma's concerns about

2  a suggestion of bankruptcy and proceedings that relate to a

3  litigation that is not in front of Your Honor at this time

4  relate to the relief that we are seeking in connection with

5  this motion.  We have not cited A.H. Robins in our motion, but

6  we've cited the provisions of the Bankruptcy Code.

7        And so from our perspective, Your Honor, we fully

8  expect, again, that Karma is going to come to this Court, it's

9  going to seek relief from the stay, it's not at all prejudiced

10 or precluded from doing so, we can put that in the order -- we

11 think it's already in the order, frankly.  The order says it

12 does not abridge the rights of any party.  It says the order

13 is intended to be coterminous with Section 362.  It doesn't

14 add language, it doesn't say non-debtors.

15       What Karma is asking Your Honor to do is to put in a

16 provision that is not in the Bankruptcy Code that says the

17 stay -- a blanket statement, the stay does not apply to non-

18 debtors.  That is more apt to cause confusion because we can

19 envision a scenario in which -- and I see Your Honor

20 grimacing, but we can envision a scenario in which Karma or

21 another party subpoenas the CFO of the company in order to

22 pursue a claim against the debtor.  There's one reading from a

23 very broad statement that says it does not apply to non-

24 debtors where that would be permissible.  We don't think it

25 is, Your Honor.  We think that these disputes should be

1  resolved in front of Your Honor or in front of the Court based

2  upon the language of the Code, not language that's not in the

3  Code.

4          THE COURT:  So what are you saying, you think that

5  somebody cannot subpoena your CEO to appear in another forum,

6  is that what you just said?

7          MR. TURETSKY:  I don't think they can pursue

8  discovery against our CFO for the purpose of pursuing a claim

9  against the debtor, I think that's squarely within the

10  automatic stay.

11          THE COURT:  Well, excuse me, but 2004 suggests

12  otherwise.  Any creditor has the right to discovery, if you

13  will, under Rule 2004 with respect to their claim --

14          MR. TURETSKY:  Outside of the --

15          THE COURT:  -- but let me break off.  I think the

16  problem here is of the debtors' own making.  The debtor is the

17  one who filed a suggestion of bankruptcy that has caused

18  confusion.  The suggestion of bankruptcy, as articulated by

19  Karma and you have not disputed this, seems to go far beyond

20  what the automatic stay Section 362 provides, and I think it

21  is incumbent upon the debtor to clarify that.

22          So I agree.  I will direct the debtor to file an

23  amended suggestion of bankruptcy or withdraw the original

24  suggestion of bankruptcy and file a proper one.  But I'm not

25  sure I agree with the debtor that putting in a statement that

1  the automatic stay does not protect any non-debtor or the

2  property of any non-debtor -- or, if you want to put it in the

3  affirmative, that the automatic stay only applies to the

4  debtor and to property of the debtor, and I think that should

5  be added to the end of the order to make it clear, the limits

6  of the order.

7         MR. TURETSKY:  Okay, Your Honor, we'll work with

8  language -- on language and work with Karma to add that

9  language.

10         MR. SOWKA:  Thank you, Your Honor.

11         THE COURT:  All right.  And I'll look for that under

12  certification of counsel after you've reviewed it with

13  Counsel.

14         All right, the next motion?

15         MR. TURETSKY:  Thank you, Your Honor.  The next

16  motion, which is at Docket Number 6, is the debtors' employee

17  wages and benefits motion.

18         As the debtors enter the Chapter 11 cases, it

19  remains crucial to maintain the goodwill of their 425

20  employees and the purpose of this motion is to minimize the

21  impact of the debtors' Chapter 11 cases on those employees.

22         To do that, the debtors are seeking customary

23  employee wages and benefits relief for the interim period,

24  which is (indiscernible) that relief includes cash payments of

25  $600,000 in (indiscernible) --

1          THE COURT:  Excuse me, you're breaking up now and I

2    don't know why.  I don't know where your microphone is.

3          MR. TURETSKY:  Can you hear me now?

4          THE COURT:  That's better, yes.

5          MR. TURETSKY:  Is that better?  All right.  I will

6    lean into the microphone, Your Honor.

7          THE COURT:  Thank you.

8          MR. TURETSKY:  And please tell me if you can't hear

9    me.

10         Where was I?  The relief includes making cash

11   payments of $600,000 during the interim period for prepetition

12   employee wages.  The $600,000 is for those unpaid prepetition

13   employee wages during the 180 days preceding the bankruptcy

14   filing and no employee will be paid more than the priority BAP

15   set forth by the Bankruptcy Code.

16         It also includes severance in the number up to the

17   priority cap for one individual employee.  It's not subject to

18   503(c), it's not an insider.  And, again, that would be up to

19   the cap.

20         As is customary, the debtors are also seeking to pay

21   employee-related obligations to third party service providers

22   such as Paylocity, their payroll processor, and to honor

23   prepetition withholding and payroll tax obligations in the

24   ordinary course.

25         The debtors are also seeking to honor their

1  prepetition 401(k) match obligations and any 401(k)

2  reconciliation safe harbor obligations that may be

3  outstanding, again, up to the priority cap during the interim

4  period, as well as reimbursable expenses and relocation

5  expenses.  We're requesting authorization to continue

6  providing paid leave, health and insurance benefits to

7  employees.  And we're seeking authorization to continue our

8  prepetition wage and -- wage practices on a post-petition

9  basis, including providing up to four weeks of severance to

10 non-insiders.

11        So the total prepetition amounts sought to be paid

12 during the interim period are approximately $1.4 million.

13 It's all set forth on a chart on page 3 of the motion.  And,

14 again, we're not seeking during the interim period to pay

15 anyone in excess of the priority cap.

16        And, lastly, we would ask that the Court schedule a

17 hearing to consider the relief on a final basis; that, we

18 understand, will be at the second day hearing.

19        We don't believe there's any opposition to the

20 motion, other than perhaps questions that Your Honor may have,

21 and we would ask that Your Honor enter the order approving the

22 relief.

23        THE COURT:  My question is with respect to the

24 severance, is that included in the one point approximately

25 five million dollars cap because I didn't see it separately

1  listed.

2         MR. TURETSKY:  Let me double check, Your Honor.

3     (Pause)

4         MR. TURETSKY:  It is, Your Honor, it is.

5         THE COURT:  And where --

6         MR. TURETSKY:  Let me -- sorry, it is part -- it's

7  part of the $600,000.  I'm sorry.

8         THE COURT:  Okay.  And that is for all of the

9  employees that got the WARN Act notice?

10         MR. TURETSKY:  No, Your Honor, those employees are

11 continuing to collect pay.  It is for a single -- the

12 severance is for a single employee who was terminated

13 prepetition and has a severance agreement.  That severance

14 agreement proposes to pay -- you know, has an obligation to

15 pay in excess of the cap, but we are not proposing to pay in

16 excess of the cap, we're proposing to pay up to the cap.

17         THE COURT:  All right, it is only for one employee.

18 Okay.

19         MR. TURETSKY:  Correct.

20         THE COURT:  Well, the second day is scheduled for

21 July 27th.  Will there be any layoffs and any severance

22 contemplated being paid between now and then, other than that

23 one employee?

24         MR. TURETSKY:  Your Honor, I can't say for sure.  I

25 think we would -- you know, to the extent that there are, we

1  would like discretion to continue the severance practice up to

2  four weeks of severance for non-WARN employees.  In other

3  words, to the extent that we -- that there are severances that

4  occur that are outside of WARN, that are not subject to WARN

5  notice, we would request authorization to provide up to four

6  weeks of severance in our discretion.

7         THE COURT:  So are you saying all of the WARN

8  notices are within the $600,000 wage number?

9         MR. TURETSKY:  Well, the WARN notices -- people are

10  continuing to work, continuing to come to the office.  So

11  those who had outstanding prepetition amounts, yes, those are

12  within the $600,000 number.

13         THE COURT:  Okay.  And they are not otherwise

14  subject to any severance agreement?

15         MR. TURETSKY:  No, Your Honor.

16         THE COURT:  Okay.  Well, if you want discretion to

17  pay any severance other than the one contract employment --

18  contract provision, I think that has to be included as part of

19  the cap and identified.  So I don't know --

20         MR. TURETSKY:  Okay.

21         THE COURT:  -- how you're going to do that.

22         MR. TURETSKY:  So how about if we include language

23  in a revised proposed order that says that we would pay and

24  that no employee during the interim period would get in excess

25  of the cap on account of the severance?

1          THE COURT:  Okay, but -- well --

2          MR. TURETSKY:  All right, we'll work on --

3          THE COURT:  -- well, I don't want to tie the

4  debtors' hands, but I think you need to give me a total cap

5  that would encompass those, and I think you need to perhaps

6  talk to Mr. Kroll or somebody about how that can be fashioned.

7          MR. TURETSKY:  We'll do that, Your Honor.

8          THE COURT:  Okay.  All right.  I'll look for that

9  under certification of counsel, then.

10          MR. TURETSKY:  Thank you, Your Honor.

11          Your Honor, I'm going to pass the virtual podium to

12  my colleague Fan He.

13          THE COURT:  Mr. He?

14          MR. HE:  Good afternoon, Your Honor.

15          THE COURT:  Good afternoon.

16          MR. HE:  Fan He, White & Case, on behalf of the

17  debtors.

18          I'm going to be presenting the next three items on

19  the agenda, starting with the creditor matrix motion, which is

20  Agenda Item 9 and Docket 9, as well.  With this motion, Your

21  Honor, the debtor seeks interim orders and final orders

22  authorizing the debtor to waive the requirements to file

23  equity share -- equity holder lists, and provide notice to the

24  equity holders.

25          Your Honor, the lead debtor LMC, is a public health

1  company with approximately 16 million shareholders and to be

2  able to identify each individual shareholder's servicing

3  address and information would be very taxing on the estate and

4  would almost be an impossible task.  So we ask Your Honor to

5  waive the requirement.

6         And we have consulted with the U.S. Trustee on this

7  procedure and what we received was a suggestion for

8  alternative methods for serving the equity shareholders, which

9  we have incorporated into the proposed order in paragraph 3.

10  And under this particular alternative method of service, the

11  debtor proposed to publish notice of the commencement of the

12  case on the case website, along with filing a Form 8-K with

13  the SEC within four business days of the petition date, and

14  including the notice of commencement in the debtors' proposed

15  noticing program.

16         Your Honor, I'll pause there to see if you have any

17  questions on this matter.

18         THE COURT:  I do.  I see that the suggestion of

19  what notice would be provided is adequate for the interim

20  period; namely, the commencement of the case and the filing of

21  first day motions.  But I'm concerned that you're, as I

22  understand it, are suggesting that you will not be providing

23  notice of any other motion in this case until the time when a

24  plan is filed and shareholders may be entitled to vote.

25         Why would that be appropriate?

1          MR. HE:  Your Honor, we will also be providing

2   notice of the bar date motion if equity holders are going to

3   be entitled to vote on the plan.

4          THE COURT:  I understand --

5          MR. HE:  And we also --

6          THE COURT:  I understand, but there's $8 million,

7   as I understand it, in trade creditors.  There are no secured

8   creditors.

9          So, aren't the 16 million shareholders those who

10  have the most interest in what you may do between now and the

11  filing of a plan or a bar date motion?

12         MR. HE:  Well, Your Honor, all the motions will be

13  on the case website and will be publicly available for all the

14  shareholders.

15         THE COURT:  I'm not sure -- I don't -- I'm not sure

16  that's appropriate.

17         I will enter the order on an interim basis only,

18  but I think that we need to deal with how shareholders can be

19  represented in this case.

20         MR. HE:  Understood, Your Honor.  We will discuss

21  this matter with the debtors.

22         THE COURT:  Okay.

23         MR. HE:  And secondly what we seek in the creditor

24  matrix motion is the redaction of personal identification

25  information for approximately 3500 individual creditors (audio

1  interference) possibly be creditors in the matter and also

2  would have approximately 2,000 potential customers who have

3  paid deposits for (indiscernible) trucks.

4         What we are seeking to do is redact only the home

5  address of these individuals, not the names on the creditor

6  matrix.  And we have also talked with the U.S. Trustee on the

7  matter and we received suggestions for service on these

8  individuals so that no other party in interest (audio

9  interference) impacted or adversely affected by the redaction.

10        So the suggestion the U.S. Trustee made, and we

11  adopted, is in the proposed order, paragraph 4.  So, to the

12  extent that any parties in interest need to serve the

13  individual customers, we will work in good faith with the

14  party in interest and effectuate service on these parties

15  through our claims and noticing agent.

16        Your Honor, I'll pause there to see if you have any

17  questions.

18        THE COURT:  Yeah.  Hold on a second.

19        Is that in the form of order?

20        MR. HE:  Yes, Your Honor.

21        THE COURT:  And what paragraph was it again?

22        MR. HE:  Paragraph 4.

23     (Pause)

24        THE COURT:  Okay.

25        MR. HE:  All right.  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          MR. HE:  So, Your Honor --

3          THE COURT:  I had no problem with that provision.

4          MR. HE:  All right.  Thank you, Your Honor.

5          I will move on to the next item on the agenda then.

6          THE COURT:  Okay.

7          MR. HE:  The next item on the agenda is the cash

8    management motion.  That is Agenda Item 10 and Docket 8.

9          Your Honor, by this motion, the debtor seeks relief

10   to authorize the continued use of debtors' cash management

11   system, bank accounts, and business forms, authority to

12   continue intercompany transactions in the ordinary course, and

13   the waiver of the investment and deposit requirement under

14   Section 345 of the Bankruptcy Code.

15         Your Honor, the debtors' cash management, as you

16   will see in the motion, is very simple.  If you would like,

17   Your Honor, I'm happy to walk you through it.

18         THE COURT:  Just confirm that there are no

19   nondebtors involved in the cash management.

20         MR. HE:  Yes, Your Honor.  There are no nondebtors

21   in the cash management system.

22         THE COURT:  Okay.  That was my only question.

23         MR. HE:  Thank you, Your Honor.

24         THE COURT:  I will enter that order.

25         MR. HE:  Great.  Thank you, Your Honor.

1          Moving to the next item on the agenda, we have the

2   critical vendor motion.  That is Agenda Item 11 and Docket 9.

3          With this motion, the debtor seeks interim and

4   final orders authorizing the payment of certain categories of

5   vendors, which includes critical vendors, foreign vendors, and

6   also vendors who are entitled to administrative priority under

7   Section 503(b)(9) of the Bankruptcy Code.  We're seeking an

8   interim amount of $1.372 million and the final amount of $1.96

9   million.

10          Your Honor, with these three categories, I think

11   it's pretty self-explanatory.  The critical vendors we

12   absolutely need because the electric vehicles that we produce

13   requires proprietary and specialized tooling, software, and

14   parts that are only available through select, and sometimes

15   foreign, vendors.  And also for the foreign vendors, as

16   Mr. Turetsky referenced, there's a whole host of countries

17   that we interact with across the world to provide these parts.

18          For the 503(b)(9) creditors, Your Honor is well

19   aware of the Bankruptcy Code provisions on the priority.

20          So unless Your Honor has any questions, I'd request

21   the Court approve the motion on an interim basis.

22          THE COURT:  All right.  I think the debtors made a

23   case for entering that order and I will enter the order on an

24   interim basis.

25          MR. HE:  Thank you, Your Honor.

 1          With that, I will turn the podium over to my

 2 colleague Peter Strom.

 3          THE COURT:  Thank you.

 4          MR. STROM:  Good afternoon, Your Honor.  Peter

 5 Strom of White & Case, proposed counsel for the debtors.

 6          Before I begin, and with the Court's permission,

 7 I'd like to go slightly out of order on today's agenda and go

 8 through Items 12 and 14, and then turn it back over to my

 9 colleague for 13.

10          THE COURT:  Okay.

11          MR. STROM:  So the next item on the agenda is Item

12 12, the tax motion, entered at Docket 10.

13          We have not received any formal objections to this

14 motion.  Unless the Court has any questions or would like

15 further presentation, which I'm happy to walk through, we

16 respectfully request that the Court enter the proposed interim

17 order granting the requested relief.

18          THE COURT:  All right.  Anybody wish to be heard on

19 that?

20      (No verbal response)

21          THE COURT:  All right.  I had no questions on this

22 and I will enter the order.

23          MR. STROM:  Thank you very much, Your Honor.

24          The next motion is the insurance motion.  That's

25 Agenda Item 14 and that's filed at Docket 12.

1          Again, we have not received any formal objections

2    to this motion and unless the Court has any questions, or

3    would like me to walk through it, which I'm happy to, we'd

4    respectfully request that the Court enter this proposed

5    interim order granting the requested relief.

6          THE COURT:  All right.  I will enter it on an

7    interim basis.

8          MR. STROM:  Thank you very much, Your Honor.

9          MS. MEZEI:  Good afternoon, Your Honor.  For the

10   record, this is Livy Mezei from White & Case on behalf of the

11   debtors.

12         The next item on the agenda is Item 13, the

13   debtors' utilities motion, filed at Docket 11.

14         The debtors did not receive any formal objections

15   and have incorporated all of the informal comments from the

16   U.S. Trustee prior to filing this motion.  Unless the Court

17   has any questions or would like for a presentation, the

18   debtors request entry of the interim order.

19         THE COURT:  I had no question about this motion, so

20   I will enter that motion, as well.

21         MS. MEZEI:  Thank you, Your Honor.

22         The next item on the agenda is Item 15, the

23   debtors' customer obligations motion, filed at Docket 13.

24         The debtors did not receive any formal objections

25   and have incorporated all of the informal comments from the

 1  U.S. Trustee prior to filing this motion.  Unless the Court

 2  has any further questions or would like further presentation,

 3  we respectfully request entry of the interim order.

 4         THE COURT:  I had no question on this, as well.  I

 5  will enter the order.

 6         MS. MEZEI:  Thank you, Your Honor.

 7         I will turn the podium to my colleague,

 8  Mr. Kampfner.

 9         MR. KAMPFNER:  Good afternoon, Your Honor.  Roberto

10  Kampfner with White & Case, proposed counsel for the debtors.

11         Your Honor, I rise in support of the debtors'

12  motion for entry of an interim and final order establishing

13  notice and hearing procedures for trading in equity securities

14  in the debtors and requested related relief.  It's Docket 14

15  and Agenda Item 16.  And we're seeking, of course, only

16  interim relief at this point.

17         There've been no objections to the motion.  I'm

18  happy to walk the Court through it or answer any questions.

19         THE COURT:  To whom does this apply, other than

20  Foxconn?

21         MR. KAMPFNER:  So, Your Honor, there are two -- it

22  could potentially apply to BlackRock, which holds, I think,

23  4.9 percent of the common the last time that we checked.  We

24  don't know exactly how much they hold today, but it could

25  apply to BlackRock.  I don't think it would apply to anybody

1 else.

2          THE COURT:  How do you propose, if you're not

3 giving any notice to any shareholders, how do you think

4 they're going to get notice of an order prohibiting them from

5 trading their shares?

6          MR. KAMPFNER:  Your Honor, I believe that -- one

7 second.  I apologize.

8        (Pause)

9          MR. KAMPFNER:  So I believe that under the notice

10 procedure section of the motion, which is on paragraph 13, we

11 would be giving notice to all registered and record holders of

12 Lordstown common and Lordstown preferred through their

13 registered agents.  So I believe that this particular motion

14 would be noticed -- the notice of procedures would be noticed

15 to the shareholders.  I would assume it'd be through

16 (indiscernible) and typical.

17          THE COURT:  But you can't give notice of anything

18 else in the case, in the same manner?  Do you see my problem?

19          MR. KAMPFNER:  I see the issue, Your Honor, and I

20 think when we go talk to the debtor about notice in general,

21 that's clearly something that we'll take into consideration

22 to, you know, address Your Honor's concerns.

23          But this particular (audio interference) broader

24 notice, so people would -- shareholders would understand the

25 limitations.

1              THE COURT:  All right.  Well, for the interim, I

2    will approve it, but I will look for evidence to be presented

3    at any final hearing on this motion that, in fact, it is

4    necessary to preserve any NOLs, giving what I understand the

5    debtors' game plan in this case is.

6              MR. KAMPFNER:  I understand, Your Honor.

7              THE COURT:  Okay.

8              MR. KAMPFNER:  Thank you.  I'll turn the podium

9    back over to Mr. Turetsky.  Thank you for your time.

10             THE COURT:  Thank you.

11             MR. TURETSKY:  Good afternoon, Your Honor.  Dave

12   Turetsky, again, for the debtors.

13             That does take us to the end of the agenda.  So,

14   unless Mr. Lauria has any comments, I think we're -- or unless

15   Your Honor wants to speak again, I think from the debtors'

16   perspective, that's all we have today.

17             THE COURT:  All right.  I think Mr. Murphy wishes

18   to be heard.

19             MR. MURPHY:  I do.  Thank you, Your Honor.

20             Again for the record, Matt Murphy of Paul Hastings.

21   I just want to make a few quick points, three, with respect to

22   the debtors' current situation, the   proposed 363 sale, and

23   the relationship with Foxconn.

24             Having represented debtors, I certainly understand

25   the desire to come into a case and adopt a story.  And in this

1 case, this story is, as I read the papers, that somehow it's

2 Foxconn's fault that the debtors are where they are.

3        But I also turn to other aspects of the first day

4 declaration that sort of belie that narrative.  If you look at

5 paragraph 21 of Mr. Kroll's declaration, he describes

6 launching Endurance production later than expected at a,

7 what's called a "BOM" -- bill of materials -- I just think of

8 it as build cost -- at significantly -- at a significantly

9 greater than anticipated sale price.

10        And the paragraph goes on.  It says:

11        "It became clear that operating and capital

12 expenditures, including total selling, general administrative

13 expenses, engineering, development, and testing costs, and

14 additional production costs would meaningfully exceed

15 projections."

16        He went on to discuss that, in that paragraph, that

17 a material increase of the forecasted cash outflow from

18 operations in 2021, it was higher than projected, and that

19 there was going to be a delay in commercial production, and

20 that the increased costs stressed the debtors' financial

21 condition.  In the very next paragraph, Your Honor, the

22 declaration describes that the debtor had to revise their

23 forecast, due to the circumstances described in paragraph 21,

24 and that they had to add a going-concern risk factor and three

25 material weakness factors in June of 2021.

1          In other words, their independent auditors, at that

2     time, called into question their ability to continue as a

3     going-concern for another year.  The paragraph went on to

4     describe installation of new management.

5          Mr. Lauria already described the five separate

6     state and federal securities class actions that are ongoing.

7     We've also had a discussion about the ongoing litigation with

8     Karma.  So, in other words, on point one, the company had

9     operational issues.  It had management issues.  It had

10    production issues.  It had financial issues and litigation

11    issues before the relationship with Foxconn.

12         Point two, Your Honor, in terms of the rationale

13    for a proposed 363 sale I find interesting.  Paragraph 61

14    describes the prepetition process conducted by Jefferies in

15    September of 2021 to, quote, "explore all market

16    alternatives."  And, quote, "While the company, its advisors,

17    and potential partners held numerous meetings and in-person

18    evaluations of the Endurance, as of the petition date, the

19    company has not received any actionable indications of

20    interest."

21         There's a footnote to that paragraph that reveals

22    that the company couldn't obtain a loan from the U.S.

23    Department of Energy because it couldn't demonstrate the

24    company's viability.

25         Paragraph 62 goes into great detail about the

1  outlook for the company, making the challenge of this proposed

2  sales process abundantly clear:  negative sentiment towards

3  start-up companies, especially in the EV space, no traditional

4  equity sales of size amongst small-cap EV companies in over a

5  year, and that every start-up EV company sustained massive

6  declines in market capitalization.

7          Paragraph 66 of the declaration talks about halting

8  production of the Endurance, which makes sense, given that a

9  total of 65 Endurance vehicles have been produced, as compared

10  to the 31,600 projected in 2022 and 65,000 projected in 2023,

11  as set forth in this (indiscernible) prohibition statement

12  filed October 8th, 2020.

13          As an aside, when I read the bidding procedures

14  motion and the preliminary statement, it seems more like a

15  complaint against my client than a real effort to sell these

16  assets.

17          Number three, the partnership with Foxconn, as

18  alluded to by Mr. Lauria earlier.  There was an agreement, in

19  principle -- I call it an "AIP" -- I hope I'm getting that

20  right, but, you know, it --

21          THE COURT:  You don't have to answer the adversary.

22  I understand that a lot of the statements are the debtors'

23  position.

24          MR. MURPHY:  Yeah.  Thank you, Your Honor for that,

25  Your Honor.

1          The agreement was only limited that Foxconn would

2   buy the plan from LMC and enter into a contract-manufacturing

3   agreement to produce the Endurance and, also, I guess, the

4   lease for office space.  So, all of that will come out, as you

5   alluded to -- I'm not trying to pre-litigate the    issues --

6   but I do want an opportunity to respond to what has been a

7   very public attack against Foxconn, which I think, ultimately,

8   will prove baseless.

9          So my point, Your Honor, is that the bankruptcy

10  filing, the sale process, the attacks against Foxconn, I view,

11  as I sit here today, as an inappropriate effort by the debtors

12  to exert leverage against Foxconn, a litigation tactic in a

13  bankruptcy proceeding in which they are not insolvent.

14          I look forward to setting the record straight.  I

15  thank you for your time.

16          THE COURT:  Thank you.

17          Mr. Lauria, you need not file a response to the

18  response.

19          MR. LAURIA:  Right.  Your Honor, I just want to say

20  that in my opening presentation, I really tried very hard not

21  to get into all of the details of the disputes between the

22  debtor and Foxconn, just to note that they existed and that,

23  you know, we believe that Foxconn's conduct has a lot to do

24  with the problems that the debtor currently faces.

25          Obviously, Foxconn disagrees.  There'll be a time

1  and a place for that to be, if any, up -- it's not today --

2  and it'll sort itself out as it's supposed to.

3          THE COURT:  Have we talked about, or have you

4  gotten any time for -- I understand you filed a motion for bid

5  procedures.  Will that be heard on the 27th, as well?

6          MR. TURETSKY:  That's what we intend to do, Your

7  Honor.

8          THE COURT:  Okay.  All right.  Thank you.

9          Then, I look forward to many more discussions of

10 what is going to happen in this case.

11         MR. TURETSKY:  Always a pleasure, Your Honor.

12 Thank you for making the time for us today.

13         THE COURT:  All right.  We'll stand adjourned then.

14         MR. TURETSKY:  Thank you.

15     (Proceedings concluded at 4:13 p.m.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.


/s/ William J. Garling                        June 28, 2023

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Tracey J. Williams                        June 28, 2023

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable


/s/ Mary Zajaczkowski                        June 28, 2023

Mary Zajaczkowski, CET-531

Certified Court Transcriptionist

For Reliable