## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Case No. 23-10831 (MFW) |
| LORDSTOWN MOTORS CORP. *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

## DECLARATION OF MICHAEL D. WEXLER IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to 28 U.S.C. § 1746, I, Michael D. Wexler, declare ("Declaration") under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1.      I am a partner at the law firm of Seyfarth Shaw LLP.  I am a member in good standing of the bar of the State of Illinois and am duly licensed to practice before all courts in the State of Illinois.  I am counsel to Karma Automotive LLC ("Karma") and have been granted permission to appear in this case *pro hac vice*.  I am also counsel for Karma in the United States District Court for the Central District of California ("District Court"), Case No. 20-cv-02104 ("District Court Case") where I have also been admitted *pro hac vice*.  I am familiar with and have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would competently testify thereto.

2.      I submit this Declaration in Support of Karma's Motion for Relief from the Automatic Stay ("Motion").

3.      Karma manufactures luxury electric vehicles, components, hardware, and software and maintains its principal place of business in Irvine, California.  Karma is licensed to conduct business in California, and conducts business throughout the United States.

4.      Lordstown Motors Corp. ("Debtor") manufactures electric vehicles and maintains

its principal place of business in Lordstown, Ohio and also conducts business in Michigan and

California.

5.      Karma filed the District Court Case against Debtor and other defendants on October

30, 2020.  (Dist. Ct. Dkt. No. 1).  On April 20, 2021, Karma filed an amended complaint

("Complaint") which included 28 counts and a request for injunctive relief.  (Dist. Ct. Dkt. No.

72).  The Complaint also names eleven (11) of Debtor's current and former officers, executives,

engineers, contractors and related entities as defendants (collectively, the "Individual

Defendant(s)").

6.      The Individual Defendants are residents of the States of California, Ohio, and North

Carolina and include Debtor's former Chief Executive Officer, Debtor's former Chief Operations

Officer, Debtor's former Chief Technology Officer, Debtor's former Chief Production Officer,

and several current and former Debtor employees.[1]

7.      Karma seeks $913,235,982 in damages (plus fees, costs, and punitive damages) and

injunctive relief against Debtor and the Individual Defendants based on claims including willful

and malicious misappropriation of trade secrets, violation of the computer fraud and abuse act, and

breach of contract.  After nearly three years of contentious litigation, discovery involving millions

of documents, more than 50 depositions, and dozens of pretrial motions including summary

judgment, the District Court set a multi-week jury trial commencing on September 5, 2023.

8.      The evidence in the case demonstrates that:

a.      Debtor approached Karma in 2019 about a partnership.  In the high-tech and highly-

competitive electric vehicle industry, the "infotainment" systems offered by

---

[1] There is also one other corporate defendant – Punak Engineering, Inc., a California, which is owned by Stephen
Punak, one of the Individual Defendants.

manufacturers are a key distinguishing feature and selling point. The infotainment system collects, displays, and allows a driver to interact with all of the vehicle's informational and entertainment systems, often through a prominently-placed interactive touch-screen contained in the vehicle's front dash. Karma has years of experience developing cutting-edge infotainment systems, and Debtor desperately needed one. When it approached Karma, Debtor claimed to be interested about entering into a development partnership with Karma for an infotainment system.

b. Through that feigned interest, Debtor entered into a five-month "due diligence" with Karma's engineering and project management staff, culminating in a fraudulent "letter of intent," and a promise by Debtor to issue payments to Karma in short order.

c. The courtship was a ruse and the promised check never arrived. Instead, Debtor used those five months to begin poaching and onboarding key Karma employees, and to steal Karma's confidential information and trade secrets—not just about the infotainment system being developed, but about every aspect of Karma's business. This included software source code, bills of materials with confidential price and part numbers, highly technical system and software requirement documents outlining in detail Karma's electrical architecture and power moding system, and Karma's entire highly confidential product development system.

d. Debtor pulled out of the fake deal at the last minute and, almost overnight, set up its own infotainment team (which never existed before) in California (where Debtor had no presence prior) in order to save itself millions in immediate development costs. Indeed, just a few days before cancelling its project with Karma, and without

telling Karma, Debtor hired and on-boarded Individual Defendant Roger J. "Joe" Durre ("Durre") - Karma's Director of Engineering.  Yet despite becoming an employee of Debtor, and of course without disclosing that fact to Karma, Durre continued to work as an employee of Karma for nearly a month.  As an agent for Debtor during the weeks in which he was employed by both entities, Durre downloaded and copied electronic files containing Karma's trade secrets and confidential information, then permanently deleted thousands of files from Karma's computer system in an effort to hinder Karma's own development plans.

e.  Debtor and the Individual Defendants were at all times aware of the illegal nature of their actions.  Debtor's executives acknowledged in their internal communications that what they were doing was wrong and would lead to lawsuits once their conduct was uncovered. On August 6, 2020, Individual Defendant Darren Post – Debtor's Chief Technology Officer – emailed another Debtor executive (Jonathan Wood), explaining: "I hired Joe Durre but it must never be mentioned to Karma.  He is on vacation and technically still with Karma, so if he is on a call with Karma people involved, treat him like Karma.  To avoid lawsuits, we must not let Karma know – they will find out on their own several months from now."

9.  Debtor was wildly successful in its efforts to steal Karma's trade secrets and confidential information.  Discovery in the District Court Case demonstrates that Debtor and the Individual Defendants stole, among other things, thousands of documents reflecting the technology outlined above and subsequently incorporated that technology into Debtor's own documents for the development of its Endurance electric pickup truck, which Debtor began to sell in the fourth

quarter of 2022.  Among the documents that Debtor stole were highly confidential technical system requirement documents and stand-along diagrams that Debtor's employees and executives copied word-for-word and later passed off internally and to third parties as their own.

10.      In short, the evidence demonstrates that Debtor lied about its interest in a joint development deal to further gain access to Karma's trade secrets, and to understand which of Karma's employees could most directly aid Debtor by stealing Karma's trade secrets and ideas. Debtor then backed out of the joint development deal, stole Karma's intellectual property, and poached Karma's employees in order to save money and time.  The cancelled project was projected to bring in more than $3 billion in revenue to Karma by 2024.

11.      Worse yet, the evidence demonstrates that Karma's valuable trade secrets continue to be used and remain in the possession of not just Debtor, but also in the possession of the Individual Defendants, some of whom downloaded thousands of files containing Karma's trade secrets and confidential information to external storage devices while working for Karma.

12.      To date, Karma, Debtor, the Individual Defendants have exchanged a combined 12.5 million individual documents in discovery - a figure that does not include the tens of millions of lines of source code that were also produced in discovery – and have taken a total of 54 depositions, including those of expert witnesses, totaling several hundred hours of sworn testimony.  Discovery in the District Court Case has been contentious and Debtor has been twice sanctioned by the District Court for misconduct.  (Dist. Ct. Dkt. Nos. 159, 189).

13.      The parties filed dozens of pretrial motions, including a lengthy motion for summary judgment filed by Debtor and the Individual Defendants that involved hundreds of pages of the factual record, as well as, motions in limine.  The District Court has ruled on all of the pretrial motions including summary judgment.  The District Court has also approved the final

pretrial order, which includes thousands of trial exhibits identified by the parties.  Karma, Debtor, and the individual defendants have identified ten (10) expert witnesses who are expected to testify at trial, along with an undetermined number of fact witnesses.

14.     The trial was previously scheduled to be commenced in April 2023.  However, due to a health issue requiring the substitution of one of Defendants' expert witnesses, the District Court reset the commencement date for the trial to September 5, 2023.  (Distr. Ct. Dkt. Nos. 510, 513).  Each side will have 26.5 hours for all direct and cross examinations, excluding voir dire, opening statements, and closing statements.  (Distr. Ct. Dkt. No. 437, ¶ 3).  Except for limited discovery and motion practice related to Debtor's replacement expert witness, the case is essentially ready to proceed to trial.

15.     On June 27, 2023, Debtor filed a Suggestion of Bankrutpcy in the District Court Case (Distr. Ct. Dkt. No. 537) which incorrectly asserted that the automatic stay also applied to the Individual Defendants.  Based in part on Debtor's misrepresentation, the District Court orally stayed the entirety of the District Court Case on June 27, 2023, but did not vacate the September 5, 2023 trial date in order to permit Karma to seek relief from the automatic stay.  After Karma brought Debtor's misstatement to this Court's attention, this Court ordered Debtor to withdraw or amend the Suggestion of Bankruptcy.  On June 28, 2023, Debtor filed an Amended Suggestion of Bankruptcy correcting the prior misstatement regarding the scope of the automatic stay.  (Distr. Ct. Dkt. No. 540).

16.     To the best of my knowledge, none of the Individual Defendants has filed for bankruptcy protection.

I declare under penalty of perjury under the laws of the State of Delaware and the United States of America that the foregoing is true and correct.

Executed on **July 5, 2023** in Chicago, Illinois.

/s/ *Michael D. Wexler*
Michael D. Wexler