## EXHIBIT B

**David M. Turetsky Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF DAVID M. TURETSKY IN SUPPORT OF**
**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF WHITE & CASE LLP AS ATTORNEYS TO**
<u>**THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**</u>

I, David M. Turetsky, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am a partner of the firm of White & Case LLP ("**White & Case**" or the "**Firm**"), an international law firm, which maintains offices for the practice of law at, among other locations, 1221 Avenue of the Americas, New York, NY 10020. I am a member in good standing of the Bar of the State of New York and I have been admitted to practice in New York. There are no disciplinary proceedings pending against me.

2.     I submit this declaration (the "**Declaration**") pursuant to sections 327(a), 329, and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") in support of the *Debtors' Application for Entry of an*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

*Order Authorizing the Employment and Retention of White & Case LLP as Attorneys to the Debtors Effective as of the Petition Date* (the "**Application**"), filed contemporaneously herewith by the Debtors.[2] This Declaration is contemplated by Section D.1 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "**U.S. Trustee Guidelines**").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

## QUALIFICATIONS OF WHITE & CASE

3.      The Debtors have advised White & Case that they seek to retain the Firm to serve as bankruptcy counsel because of White & Case's knowledge of, and experience with, (a) the Debtors and their businesses, and (b) the field of debtors and creditors rights and business reorganizations under chapter 11 of the Bankruptcy Code. White & Case believes that the Firm has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtors during these Chapter 11 Cases.  Further, White & Case believes it has the knowledge and experience necessary to deal effectively with the issues that will arise in these Chapter 11 Cases.

4.      In preparing to represent the Debtors in connection with the Chapter 11 Cases, White & Case has acquired in-depth knowledge of the Debtors' operations and capital structure and gained additional insight into the current condition of the Debtors' businesses.  In addition, during the course of its representation of the Debtors, White & Case has acquired extensive knowledge with respect to the Debtors' claims against (and disputes with) Foxconn, additional matters relating to the Debtors' operations, and additional issues which may arise in connection

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[3]    Certain of the disclosures herein relate to matters within the knowledge of attorneys or employees of White & Case and are based on information provided by them.

2

with the Debtors' efforts to market and sell their assets or which may otherwise arise during the Chapter 11 Cases.  The Debtors have advised that they believe that White & Case is both well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

5.      White & Case has advised the Debtors through a highly qualified team of professionals.  The White & Case team has extensive experience in corporate restructuring, M&A, finance, litigation, capital markets, tax, and other areas of expertise that the Debtors will require in these Chapter 11 Cases.  The core White & Case team is led by Thomas E Lauria, the Global Head of White & Case's financial restructuring and insolvency group, and also includes (i) myself, a partner in the Firm's financial restructuring and insolvency group, (ii) Jason N. Zakia, partner in White & Case's litigation group, and (iii) Gregory Pryor, partner in White & Case's M&A group. Other partners, counsel, associates and paraprofessionals in the Firm's financial restructuring and insolvency, corporate, M&A, bank finance, tax, litigation, and capital markets groups have participated (and will continue to participate) in the representation of the Debtors in these Chapter 11 Cases.  Due to the Firm's experience and knowledge in these areas and of the Debtors, White & Case believes that it is well-qualified and uniquely able to act on the Debtors' behalf and to guide them through the Chapter 11 Cases.

6.      The Debtors have advised White & Case that they are seeking to retain the Firm because of the extensive legal services that will be required in connection with the Chapter 11 Cases and White & Case's familiarity with the business of the Debtors and its non-Debtor affiliates.

7.      Subject to this Court's approval of the Application by final order, White & Case is willing to perform the services requested by the Debtors, as set forth in the Application and the

AMERICAS 123697433 v15
RLF1 29265761v.1

Engagement Agreement.

## SERVICES TO BE PROVIDED

8.      The Debtors have requested that White & Case render various legal services to the

Debtors, including those set forth in the Engagement Agreement and the following:

(a)      Advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b)      Advising and consulting on the conduct of these Chapter 11 Cases, including all of the legal requirements of operating in chapter 11;

(c)      Advising the Debtors in connection with corporate transactions and corporate governance, asset sales, negotiations, and other agreements with creditors, equity holders, prospective acquirers and investors, reviewing and preparing of documents and agreements, and such other actions;

(d)      Advising the Debtors in connection with any disputes or litigation that may arise in connection with the Chapter 11 Cases, including with respect to the automatic stay, claims matters, the pursuit of claims by the Debtors against third parties, including Foxconn, and otherwise;

(e)      Reviewing and preparing pleadings in connection with these Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates, and appearing in court, and taking other actions with respect to the foregoing;

(f)      Attending meetings and negotiating with representatives of creditors, equity holders, and other parties in interest;

(g)      Advising the Debtors with legal issues related to the Debtors financial circumstances, including with respect to restructuring, financing, corporate, tax, litigation, mergers and acquisition, and employment issues, in each case as may be necessary or appropriate;

(h)      Performing all other ancillary necessary legal services for the Debtors in connection with the prosecution of these Chapter 11 Cases, including assisting the Debtors in: (i) analyzing the legal aspects of the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors (if any); and (iii) advising the Debtors on corporate and litigation matters;

(i)      Taking all necessary legal actions to protect and preserve the Debtors' estates as the Debtors request, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors

in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates; and

(j)     Taking any necessary action on behalf of the Debtors as the Debtors request to obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto.

9.      It is necessary and essential for the Debtors to employ attorneys to render the foregoing professional services and any other legal services that the Debtors may require during the Chapter 11 Cases.  White & Case has indicated its desire and willingness to act on behalf of, and render such services to, the Debtors subject to the Court's entry of an order approving the Firm's retention.

10.     The Debtors have informed White & Case, and White & Case understands, that the Debtors are planning on filing retention applications for other professionals in these Chapter 11 Cases.  In particular, the Debtors have informed White & Case that the Debtors have filed, or expect to file shortly, applications to employ: (i) Richards, Layton & Finger, P.A, as co-counsel; (ii) Silverman Consulting, Inc., as restructuring advisor; (iii) Jefferies LLC, as investment banker; and (iv) Kurtzman Carson Consultants LLC as claims and noticing agent and administrative advisor.  The Debtors may also file applications to employ additional professionals.  The Debtors have advised that they anticipate that the coordination of efforts by and among the Debtors' attorneys and other professionals will substantially contribute to the efficient and effective administration of these Chapter 11 Cases.

## WHITE & CASE'S DISINTERESTEDNESS

11.     In connection with its proposed retention by the Debtors in these Chapter 11 Cases, White & Case undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, White & Case obtained from the Debtors and its agents the names of individuals and

entities that may be parties in interest in these Chapter 11 Cases (the "**Potential Parties in Interest**"), and such parties are listed on **Schedule 2** hereto.

I.    **Connections Search and Disclosure Process**

12.    In accordance with Bankruptcy Rule 2014(a), prior to filing the Application, White & Case conducted a disclosure review with respect to the Firm's connections to the Debtors and the most significant parties in interest in the Chapter 11 Cases.

13.    To conduct this review, we caused the names of the parties identified by the Debtors and provided to White & Case as potential parties in interest and as set out in **Schedule 2** annexed hereto (the "**Potential Parties in Interest**") to be run through White & Case's conflicts department to determine whether, within the last two (2) years, White & Case has connections to such parties and, if so, whether such connections relate in any way to the proposed representation of the Debtors in the Chapter 11 Cases.

14.    Based on reports generated by White & Case's conflicts department, **Schedule 3** annexed hereto identifies that White & Case currently represents, or has represented within the last two (2) years, certain individuals, entities or their affiliates who are Potential Parties in Interest in matters unrelated to the Debtors, the Chapter 11 Cases, or such entities' claims against and interests in the Debtors.[4]  Of the entities listed on Schedule 2, none represented more than 1% of White & Case's revenue for the twelve-month period through June 30, 2023.

15.    Based on the conflicts search conducted to date and described herein, to the best of

---

[4]    The term "client" means an entity listed as a client or affiliate of a client in an active or closed matter in White & Case's conflicts search system.  To the extent that a Potential Party in Interest falls under more than one category, such Potential Party in Interest is disclosed below in only one category.  Furthermore, the inclusion of a Potential Party in Interest within one or more categories in the Application, this Declaration, or otherwise is for convenience only and is not, and shall not be construed as, an acknowledgment or admission regarding any Potential Party in Interest, including with respect to any claims or relationships that such Potential Party in Interest may have with the Debtors or whether such Potential Party in Interest is a party in interest for purposes of the Chapter 11 Cases. Finally, White & Case notes that the process has a limited capability to identify affiliates.

6

my knowledge:

(a)     Neither White & Case nor any attorney at the Firm holds or represents an interest adverse to the Debtors estates;

(b)     Neither White & Case nor any attorney at the Firm is or was a creditor, an equity security holder, or an insider of the Debtors, except that White & Case previously rendered legal services to the Debtors for which it was compensated as disclosed below;

(c)     Neither White & Case nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

(d)     Neither White & Case nor any attorney at the Firm has an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

16.     In light of the possibility that certain creditors or other parties in interest may not have been identified on Schedule 2, White & Case may have represented, may currently represent, or may in the future represent such entities in matters wholly unrelated to these Chapter 11 Cases. White & Case has searched its electronic database for its connections to the entities listed on Schedule 2 attached hereto.  The information listed on the attached schedules may have changed without our knowledge and may change during the pendency of these Chapter 11 Cases.  To the extent that White & Case becomes aware of any such additional Potential Parties in Interest, White & Case will promptly run such new Potential Parties in Interest through White & Case's conflicts department and file a supplemental declaration, if necessary.

17.     White & Case is a large global law firm.  The Firm and its lawyers provide an extremely broad range of services to numerous clients throughout the world.  Because of the Firm's extensive worldwide legal practice, including numerous representations and involvements in bankruptcy cases as counsel to debtor and others, White & Case in the past has represented, currently represents, and in the future likely will represent, in matters unrelated to the Debtors or these Chapter 11 Cases, clients that are adverse, or could be considered potentially adverse, to

7

creditors of the Debtors and other parties in interest in these Chapter 11 Cases, in matters unrelated to these Chapter 11 Cases.  Further, White & Case in the past has represented, currently represents, and in the future likely will represent certain parties that are parties-in-interest in these Chapter 11 Cases in matters unrelated to the Debtors, the Debtors Chapter 11 Cases, or such parties-in-interests' claims against or interests in the Debtors.

II.    **Disclosures as to Specific Parties in Interest**

18.    Although not within the last two years, and thus not within the scope of the search described above, White & Case has, in the past, represented, but does not currently represent, Hon Hai Precision Industry Co., Ltd. ("**Hon Hai**" and together with its affiliates "**Foxconn**") and an affiliate in matters unrelated to the Debtors or the Chapter 11 Cases.  Hon Hai and certain other Foxconn entities are defendants in the pending adversary proceeding styled *Lordstown Motor Corp. v. Hon Hai Precision Industry Co., Ltd.*, Case No. 23-10831 (Bankr D. Del. filed June 27, 2023).  According to White & Case's records, the most recent matter on which White & Case provided legal services to Foxconn was closed in 2017.  Furthermore, White & Case has established an ethical wall between the attorneys representing the Debtors in the Chapter 11 Cases and the attorneys who previously advised Foxconn in connection with White & Case's past representation thereof.  White & Case does not believe that its prior representation of Hon Hai or any other Foxconn entity on matters unrelated to the Debtors and the Chapter 11 Cases create a conflict or other impediment to the Firm's representation of the Debtors in connection with the adversary proceeding or the Chapter 11 Cases.

19.    In addition, White & Case currently represents, and has in the past represented, Softbank Group Corp. and certain of its affiliates (collectively, "**Softbank**") on matters unrelated to the Debtors or the Chapter 11 Cases.  Although White & Case is not aware of Softbank being an interested party with respect to the Chapter 11 Cases, White & Case has been informed that

AMERICAS 123697433 v15
RLF1 29265761v.1

Softbank Group Corp. holds an approximately 45% interest in Foxconn Ventures Pte. Ltd., which is a defendant in the pending adversary proceeding styled *Lordstown Motor Corp. v. Hon Hai Precision Industry Co., Ltd.*, Case No. 23-10831 (Bankr D. Del. filed June 27, 2023). Softbank has comprised less than 0.1% of White & Case's revenue for the twelve month period through June 30, 2023. White & Case has also established an ethical wall between the attorneys representing the Debtors in the Chapter 11 Cases and the attorneys representing Softbank. White & Case does not believe that its prior and ongoing representations of Softbank entities on matters unrelated to the Debtors and the Chapter 11 Cases create a conflict or other impediment to the Firm's representation of the Debtors in connection with the adversary proceeding or the Chapter 11 Cases.

### III.    Conclusions with Respect to White & Case's Disinterestedness

20.    Based upon the information available to me, after following the procedures described herein, and as otherwise described on Schedule 3 hereto or otherwise herein, I believe that (i) White & Case is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors estates; and (ii) White & Case has no connection with any of the Debtors, their affiliates, their creditors, or any other party-in-interest, or their respective attorneys and accountants, the U.S. Trustee for the District of Delaware or any person employed in the office of the same, or any judge in the Bankruptcy Court or District Court for the District of Delaware or any person in the offices of the same, except as may be disclosed in this Declaration.

21.    White & Case will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances arise. If any new relevant facts or relationships are discovered or arise, White & Case will use reasonable efforts to identify such developments and will promptly file a supplemental declaration, to the extent

required by Bankruptcy Rule 2014(a) and Local Rule 2014-1(a).

## **PROFESSIONAL COMPENSATION**

22.     White & Case has agreed to serve as bankruptcy counsel to the Debtors and receive compensation for services performed and reimbursement of expenses incurred in accordance with its standard billing practices for services rendered and expenses incurred on behalf of the Debtors, in accordance with sections 328, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, or as otherwise ordered by the Bankruptcy Court.

23.     White & Case has provided and will be providing professional services to the Debtors at the then-current standard rate charged by the Firm for such services.  Currently, the hourly rates charged by White & Case in its U.S. offices range from $1,370 to $2,100 for partners, $1,310 for counsel, $740 to $1,270 for associates, and $215 to $640 for paraprofessionals.  The hourly rates set forth above are subject to periodic review and adjustment in the normal course of the Firm's business, typically on January 1st of each year, and often due to the increased experience of a particular professional.  Such adjustments were last made in January 2023.  In the event that its billing rates increase, White & Case will provide notice of any rate increases in the fee statements in which such increased rates are in effect.

24.     These hourly rates set forth above are White & Case's current standard rates and (as noted above) are subject to periodic adjustment in the ordinary course of business.  These rates are set at a level designed to fairly compensate White & Case for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.

25.     White & Case also charges its clients in all areas of practice for expenses incurred in connection with each client's case.  The expenses charged to clients include, among other things, printing and photocopying, postage and package delivery charges, e-discovery expenses, court

AMERICAS 123697433 v15
RLF1 29265761v.1

fees, transcript costs, travel expenses, expenses for overtime meals, and computer-aided research. White & Case will seek reimbursement, subject to the Court's approval, for all such expenses incurred by White & Case on the Debtors' behalf.  All requests for reimbursement of expenses will be consistent with any guidelines established by the Bankruptcy Court.

26.     White & Case intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these Chapter 11 Cases governing professional compensation and reimbursement for fees and expenses charged.

27.     White & Case also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and the interim (if any) and final fee applications to be filed by White & Case in these Chapter 11 Cases.  To that end, included below is information provided by White & Case pursuant to paragraph D.1 of the U.S. Trustee Guidelines.

28.     Prepetition, the Company retained White & Case and White & Case began providing legal services to the Company on or about April 5, 2023.   In April 2023, the Company deposited with W&C an initial retainer of $1,000,000.00 (the "**Retainer**").   The Retainer was thereafter increased by $750,000 to $1,750,000 in June 2023.  In connection with its retention, White & Case also provided the Debtors with a one-time credit for legal services of $500,000 (the "**Credit**").  From time to time, following its retention through to the Petition Date, White & Case would invoice the Debtors for professional fees and expenses.  Either the Debtors would pay the invoices or White & Case would deduct the amounts of the invoices from the Credit or the Retainer for fees and expenses.  White & Case continues to reconcile its prepetition fees and expenses.

Based upon the prepetition fees and expenses that have been identified, accounted for, and applied against the Credit and Retainer prior to the Petition Date, the Credit has been fully utilized and the remaining amount of Retainer with White & Case was $200,000.00.

29.     Pursuant to Bankruptcy Rule 2016(b), White & Case has no agreement with any other entity to share any compensation received by White & Case, except as permitted under section 504(b)(1) of the Bankruptcy Code.  White & Case has not received any promises as to payment or compensation in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code and as disclosed herein.

### STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

30.     The following information is provided pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Answer:** White & Case did not agree to any variations or alternatives to its standard or customary billing arrangements for this engagement.  Nonetheless, as described above, White & Case did agree to provide the Debtors with a one-time credit of $500,000.00, which credit was exhausted prepetition.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Answer**: No.

**Question:** If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer:** White & Case began its representation of the Debtors on or about April 5, 2023.  White & Case's billing rates and material financial terms for the prepetition engagement are not materially different than such rates and terms postpetition.  There have been no adjustment during the time of White & Case's representation of the Debtors.  White & Case's billing rates and material financial terms have not changed postpetition and are not expected to change postpetition except that, as noted, White & Case, in the ordinary course of its business, periodically reexamines and adjusts its rates charged.

**Question:** Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Answer:** Yes, the client has approved White & Case's prospective budget and plan for the initial stages of the Chapter 11 Cases. Recognizing that unforeseeable events may arise in large chapter 11 cases, the Debtors and White & Case may need to amend (including substantially) the budget and staffing plan as necessary. The budget and staffing plan are intended as estimates and not as caps or limitations on fees or expenses that may be incurred or on the professionals or paraprofessionals who may advise the Debtors in these Chapter 11 Cases.

31.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge, information, and belief.

Dated: July 6, 2023
New York, New York

*/s/David M. Turetsky*
David M. Turetsky
Partner, White & Case LLP

## **SCHEDULE 1**

**Engagement Agreement**

**WHITE & CASE**

April 26, 2023

VIA E-MAIL

White & Case LLP
Southeast Financial Center
Suite 4900
200 South Biscayne Boulevard
Miami, FL 33131-2352
**T** +1 305 371 2700

whitecase.com

Lordstown Motors Corp.
2300 Hallock Young Road
Lordstown, Ohio 44481
Attn:  Melissa A. Leonard, Executive Vice President, General
   Counsel & Secretary

Re:  Engagement Letter

Dear Ms. Leonard:

This letter (the "Agreement") sets forth the terms and conditions upon which White & Case LLP (the "Firm", "W&C", "we" or "us") has been engaged by Lordstown Motors Corp., on behalf of itself and its subsidiaries (collectively, the "Company", or "you").

1. Scope of Engagement.

The Firm will advise and assist the Company in connection with the potential reorganization or restructuring of the Company and its indebtedness and liabilities, including preparation for potential filings by the Company for relief under Chapter 11 of the United States Bankruptcy Code and the prosecution of such Chapter 11 cases if such filings are made, and perform any and all related and ancillary legal services in connection with the foregoing (including, without limitation, with respect to one or more sales, financings or refinancings, settlements, and otherwise). The services to be provided by the Firm in connection with the engagement will encompass those legal services normally and reasonably associated with this type of engagement and which the Firm has been requested, is able, and has agreed to provide and which are consistent with the Firm's ethical obligations.

The Company agrees to make appropriate employees available to us to assist in factual inquiries, court hearings and appearances, due diligence, and dealings in connection with the engagement and the subject matter with regard to which we have been retained.

W&C's client for the purposes of this representation is the Company. Unless specified herein, W&C does not, by reason of this engagement, represent any parent companies, affiliates, commonly controlled entities, shareholders, members, directors, officers, employees, trustees, partners, joint ventures or owners of the Company.

We do not provide certain kinds of opinion letters in connection with restructuring or bankruptcy reorganization cases to clients or to others who may wish to rely upon such letters.

2.   Fees.

The Firm will charge for the services rendered hereunder on an hourly basis at the rate we customarily charge for such services at the time they are performed.  The Firm's hourly rates for each attorney depend on the experience, expertise and status of that lawyer.  Where appropriate, legal assistants or paralegals may be utilized.  Fees for such legal assistants' and paralegals' services hereunder will also be based upon the hourly rates customarily charged by us to clients at the time those services are performed.

Rates for our lawyers and legal assistants are reexamined and adjusted for increases in seniority and such changes in experience, expertise and status in January of each year.  Rates are also adjusted to reflect market conditions in October of each year.  Those adjustments may therefore change the rates initially charged by us for lawyers and legal assistants.

In connection with this engagement, you agree to pay the Firm an advance retainer in the amount of $1,000,000 (the "Retainer") to be applied against fees and expenses as incurred by the Firm. The Firm is authorized to apply such Retainer to outstanding amounts owed at any time, whereupon you agree to replenish such Retainer immediately.  The Company understands and acknowledges that the Retainer and any additional advance payment retainers that may be requested by the Firm and paid by the Company are earned and become property of the Firm upon receipt, and that any such retainers will be placed in the Firm's general account and will not be held in a client trust account; provided, however, that to the extent required under applicable law, at the conclusion of the engagement, if the amount of any such retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, costs, out of pocket expenses and disbursements with respect to this engagement, the Firm will pay to the Company the amount by which any such advance payment retainers exceed such fees, costs, out of pocket expenses and disbursements.

The Firm shall apply a one-time credit of $500,000 (the "Credit") against the fees charged for the services rendered hereunder and any related costs, expenses and disbursements incurred by the Firm.  The Credit shall be reflected on the initial invoice or invoices issued to you by the Firm until the Credit has been fully applied.

3.   Costs, Out of Pocket Expenses and Disbursements.

In addition to the above described fees, the Company will reimburse the Firm for our reasonable and documented costs, out of pocket and office expenses and disbursements as customarily billed by us and paid in connection with the legal services performed by us under this Agreement. These include but are not limited to: photocopying, local messenger and intercity delivery service, travel (including mileage, parking, airfare, lodging, meals and ground transportation), court filing fees, computer research charges, support staff overtime, court reporter fees, and word processing.  In all cases and in the absence of special arrangements, fees and expenses of local or other counsel, experts, investigators, accountants, consultants and other providers of services

2

outside the Firm will be paid by you and will not be the Firm's responsibility.  We may make arrangements, where we believe it appropriate, to have all or any of the foregoing billed directly to you for payment to the person to whom those obligations for expenses are incurred.  In any case, in the absence of our express written acknowledgment to the contrary, you shall be solely responsible for the fees and expenses of such persons.

4.  Billing and Payment.

The Firm will send the Company a statement of fees and expenses as incurred by the Firm every month and the Company agrees to pay such statement within five business days of receipt. The Company also agrees that the Firm is authorized to apply the Retainer to outstanding amounts owed at any time, whereupon the Company agrees to replenish such Retainer immediately if it falls below $1,000,000. The Company understands and acknowledges that the Retainer and any additional advance payment retainers that may be requested by the Firm and paid by the Company are earned and become property of the Firm upon receipt, and that any such retainer(s) will be placed in the Firm's general account and will not be held in a client trust account; provided however, that to the extent required under applicable law, at the conclusion of the engagement, if the amount of any such retainer(s) held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, costs, and out of pocket disbursements with respect to the Company, the Firm will pay to the Company the amount by which any such advance payment retainer(s) exceed such fees, costs, and out of pocket disbursements. We reserve the right to require an increase in the amount of the Retainer at any time. If Chapter 11 cases are commenced by the Company, any unused portion of the Retainer shall be held as a Retainer against our post-petition fees and expenses, the disposition of which shall be subject to an order of the presiding court.

5.  Termination and Withdrawal.

Either W&C or Company may terminate W&C's engagement under this Agreement at any time, effective upon reasonable written notice of such termination.  Upon termination of this engagement, the Company shall remain liable to W&C for all amounts due for the professional and ancillary services rendered by W&C prior to the termination date, as provided herein.  If we are discharged, all unpaid fees, costs, out of pocket expenses and disbursements will be paid within 30 days of such discharge.

We also have the right to withdraw from representing you for any reason at any time, consistent with our professional responsibilities and applicable rules of professional conduct, upon giving you reasonable notice to secure other counsel, obtaining the approval of a court or tribunal, if that is necessary, and, in any event, otherwise attempting to take reasonable steps to minimize any prejudice that you may suffer by our withdrawal. Notwithstanding the foregoing, we reserve the right to terminate this engagement immediately following written notice from us to you if we consider that there is a material risk that you, we, or any of our agents or persons acting on our behalf or otherwise associated with us in relation to this engagement are facilitating, or being asked or required to facilitate, tax evasion anywhere in the world.

If we elect to withdraw, you agree to (a) take all steps necessary to complete our withdrawal and (b) pay the outstanding and other fees, costs, disbursements and out of pocket expenses due or to become due us.

6.  Certain Matters.

Notwithstanding any other term or provision herein, until the termination of this engagement, we shall not represent any interest adverse to the Company.

W&C is a large global law firm numbering over 2,400 lawyers in more than 30 countries.  The Firm and its lawyers provide an extremely broad range of services to its numerous clients throughout the world.   A description of those services is available on W&C's website: www.whitecase.com.  Given the size and global reach of the Firm and the breadth of the services it provides, it is possible that after the termination of this engagement, other clients or new clients may ask W&C to represent those clients in asserting or protecting interests which are adverse to or different from your interests. These services may include representations against the interests of affiliates, related entities or persons which or whom you may consider to be a client of the Firm if we undertake this engagement (collectively hereafter referred to herein as your "affiliates"). These prospective engagements may constitute conflicts of interest which could prevent or otherwise inhibit the Firm's ability to represent those clients, new clients or you.  Given that possibility and in order to be fair to those others and you, as a condition to our undertaking this representation, you and we agree that, after termination of this engagement, we may undertake to represent existing or new clients on any matters whether or not related to the Company even if such other clients have interests that are directly adverse to or different from yours, including in litigation or arbitration and any other related matter regardless of its magnitude, significance, or other importance.  These matters may include any of the following without limiting the generality of the foregoing: any kind of corporate or commercial transaction, banking and bankruptcy matters, commercial litigation or arbitration, matters involving regulatory or other agencies of a national, state or local government. The foregoing includes, without limitation, matters before the United States Department of Justice and United States Securities and Exchange Commission, the European Commission and the World Trade Organization.

On certain occasions we may have more than one client actually or potentially interested in the subject matter of a transaction or competing for the same asset (for example, in an auction sale of a company). In such cases, after termination of this engagement, you agree that we are free to act for more than one client. It is further agreed that if the Company commences an action against another client of the Firm (or if another client of the Firm commences legal action against the Company), the Company consents to our use of conflicts counsel with respect to any such proceedings.

Additionally, we may have existing relationships on unrelated matters with numerous of the Company's creditors (or affiliates of such creditors) and we anticipate continuing such relationships.

This waiver includes a waiver of conflicts potentially involving future matters and clients that are unknown and unknowable at this time.  In choosing to execute this waiver, you recognize the inherent risks and uncertainty about the array of potential matters and clients W&C might take on with interests adverse to yours and nonetheless waive any and all conflicts of interest including any right to contest the enforceability of your waiver on the grounds of insufficient information.

W&C requests that before agreeing to the above advance waiver and consent, you consider its consequences as well as your rights concerning the confidential information which will be disclosed to the Firm in the course of this representation.  You should consider any concerns you might have as to its effect on the zealousness of the Firm's representation of and loyalty to you as a client.  We suggest you consult with independent counsel regarding the consequences of this requested waiver and the advisability of it being signed.

To ensure that the zealousness of the Firm's representation and loyalty would not be affected nor confidential information of you or your affiliates disclosed, in the event the Firm undertakes the representation of clients with such adverse interests, W&C, if requested to do so or in its judgment it deems appropriate, will install appropriate ethical screens.

7.      <u>Confidentiality</u>.

Under applicable rules of professional responsibility, the Firm is obliged to avoid revealing information acquired as a consequence of the representation of any client.  Therefore, if we have such information from another client, we cannot disclose it to you even if that information is relevant to our representation of you.

8.      <u>Compliance with Subpoenas, Mandates, etc.</u>

During the pendency of this engagement and thereafter, the Firm, its attorneys, or its staff, may be required to respond to requests or orders to disclose information, documents, electronic or otherwise, or testify concerning services performed for or about you as a client.  Such requests may come through subpoenas or other legal process or from persons such as auditors, consultants or other counsel to whom you direct us to make such disclosures.  In all such instances, we shall limit our disclosures to either material that is not privileged under applicable law or, if it is, that you or your authorized representative direct us to disclose.

You agree that we will be compensated at our then customary charges and reimbursed by you for all time devoted by us and expenses incurred as a consequence of so responding.

9.      <u>Document Retention and Ownership</u>.

All drafts, research notes and memoranda or the like produced by the Firm in the course of this representation shall remain the sole property of the Firm.

To the extent that any documents, correspondence, factual memoranda or the like are produced by or transmitted to us, you shall have the right to request and receive from us, at your cost and

expense for reproducing and delivering the same, those items at any time for a period of six months after conclusion of the representation unless the law mandates a less limited period.  At the conclusion of that six month period, or whatever period is otherwise mandated by law, W&C shall, at its discretion, have the right, but not the obligation, to either deliver those items to the Company or destroy the same.

10.    Certain Other Matters.

You agree that the Firm may, at its option and sole expense after the earlier of (a) the completion of the matter for which we have been engaged or (b) any public disclosure you have made about such matter, place announcements and advertisements regarding and/or otherwise publicize (e.g., by providing information for "league table" reporting purposes) the Firm's role in the matters that are the subject of this engagement (including information about such matters which are generally available to the public, such as deal value) on the Firm's internet website, in marketing materials and in such financial and other newspapers and journals as it may choose.

Please be advised that if we do not receive additional assignments within 45 days of the conclusion of the last assignment for which you have engaged us, we will consider our attorney-client relationship to have been terminated upon the completion of the specific services you have engaged us to perform. If you later retain us to perform further or additional services, the attorney-client relationship will recommence, subject to these and any supplemental terms of engagement that we may agree upon at that time. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a recommencement of an attorney-client relationship. We undertake no obligation to inform you of such developments in the law unless you have engaged us in writing to do so. Our consenting to be a party notified under agreements or other instruments on your behalf shall not alone constitute our being considered as your attorneys notwithstanding such consent.

11.    Confirmation of this Agreement.

To confirm your agreement to the foregoing terms, please sign below in the space provided on the enclosed copy of this Agreement and wire the agreed Retainer of $1,000,000 to the following account:

> JPMorgan Chase
> 270 Park Avenue, New York, NY 10017
> Account Name:  White & Case LLP
> Account No.:  ███████████
> Routing  No.:  ████████
> Swift Number:  ███████

Please include "Lordstown" as the reference on the wire.  Your instructing or continuing to instruct the Firm on this matter will constitute full acceptance of the above terms including the advance waiver of conflicts set forth above. In the event the engagement is terminated by either

the Company or W&C, pursuant to the terms contain herein, after W&C is fully paid its fees and expenses as provided for herein, any remaining amounts shall be promptly returned to the Company.

The provisions of this Agreement may not be modified except in a subsequent writing executed by the parties hereto.  This Agreement may be executed in counterparts, which counterparts, when fully executed and considered together, shall constitute one agreement.

We look forward to working with you and appreciate the opportunity to be of service.

Sincerely,

Thomas E Lauria

**T** +1-305-995-5282
**E** tlauria@whitecase.com

AGREED:

Lordstown Motors Corp.

By: _____
Name:  Melissa Leonard
Title: General Counsel

## **SCHEDULE 2**

**Potential Parties in Interest List**

**Debtor Entities**

1. Lordstown Motors Corp. (DE)
2. Lordstown EV Corp. (DE)
3. Lordstown EV Sales LLC (DE)

**Related/Former Names of Entities**

1. DiamondPeak Holdings Corp. (n/k/a Lordstown Motors Corp.)
2. DPL Merger Sub Corp. (n/k/a Lordstown EV Corporation)
3. MIH EV Design, LLC

**Directors and Officers**

1. Adam Kroll
2. Angela Strand
3. Dale Spencer
4. Daniel Ninivaggi
5. David T. Hamamoto
6. Donna Bell
7. Edward T. Hightower
8. Jane Reiss
9. Joseph B. Anderson Jr.
10. Keith Feldman
11. Laura Soave
12. Melissa Leonard

**Former Directors and Officers**

1. Jane Ritson-Parsons
2. John LeFleur
3. John R. Whitcomb
4. Michael Gates
5. Mickey Kowitz
6. Martin Rucidlo
7. Rebecca Roof
8. Stephen S. Burns
9. Thomas V. Canepa

**Senior Employees**

1. Cheryl Johnson
2. Darren Post
3. Jill Coniglio-Kirk
4. Carter Driscoll
5. Michael Port
6. Raghu Aerabati
7. Waqar Hashim
8. Andrew Reyntjes

**Top Unsecured Creditors**

1. Amphenol Interconnect Products Corporation
2. AP Expert Group LLC
3. AT&T MOBILITY-CC
4. Barry L. Leonard and Company Inc. dba Trans Machine Technologies
5. Bossard Inc.
6. CEVA Contract Logistics US Inc
7. Cognizant Mobility, Inc
8. Elaphe Propulsion Technologies LTD
9. Fiberdyne Research Pty Ltd
10. Filec Production SAS - Amphenol
11. Foxconn EV System LLC
12. Greatech Intergration (M) SDN.BHD.
13. Harco Manufacturing Group, LLC
14. HRB Industries Corp.
15. JVIS USA LLC
16. Laval Tool & Mould LTD.
17. Marelli North America Inc dba CalsonicKansel North America Inc
18. Meta Systems SpA
19. Nexteer Automotive Corporation
20. Pektron EV Limited
21. Proper Group Holdings LLC dba Proper Tooling LLC
22. Quality MetalCraft Inc.
23. SA Automotive LTD
24. Sharp Dimension Inc
25. St. Clair Technologies Inc.
26. Superior Cam Inc
27. Technology Solutions Anywhere LLC dba Readysoft
28. Teijin Automotive Technologies, Inc

29. The Timken Corporation
30. Three-Dimensional Services dba 3 Dimensional Services Group
31. thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services
32. Ventra Group Co. dba Flex-N-Gate Bradford
33. VIA Optronics LLC
34. Zetwerk Manufacturing USA, Inc.
35. ZF Passive Safety Systems US Inc.

**Cash Management Banks**

1. JP Morgan Asset Management
2. JP Morgan Chase Bank, N.A.
3. JP Morgan Institutional Investments Global Liquidity
4. JP Morgan Prime
5. JP Morgan Securities

**Significant Lease and Contract Counterparties**

1. 275 Hills Tech Ventures LLC
2. Aon (Bermuda) Ltd.
3. Aon Risk Services Central Inc.
4. Aon UK Limited
5. Arthur J. Gallagher Risk Management Services, Inc.
6. Applied Medical Resources Corporation
7. Cigna Health and Life Insurance Company
8. Elaphe Propulsion Technologies Ltd.
9. Foxconn EV Property Development LLC
10. Foxconn EV System LLC
11. GAC R&D Center Detroit, LLC
12. General Motors
13. GM EV Holdings LLC
14. Liberty Property and Asset Management
15. Michigan Strategic Fund
16. Paylocity Corporation
17. Principal Life Insurance Company
18. TenantBase, Inc.
19. TransAmerica Corporation

20. Willowgreen Building Group, LLC
21. Workhorse Group Inc.

**Significant Vendors**

1. A Say Inc dba Say Communications LLC
2. A.K.Stamping Company, Inc
3. ABSOLUTE ELECTRONICS INC
4. Akebono Brake Company
5. Amphenol Interconnect Products Corporation
6. Anchor Tool and Die Company dba Anchor Manufacturing Group, Inc.
7. Anderton Castings SAS
8. AP Expert Group LLC
9. Armada Toolworks LTD.
10. AT&T MOBILITY-CC
11. ATCO Industries, Inc.
12. Auto Motive Power Inc
13. Baker Hostetler
14. Barry L. Leonard and Company Inc. dba Trans Machine Technologies
15. Bennie W Fowler, LLC
16. Bossard Inc.
17. Brikho & Kallabat, P.C. DBA Joseph Kallabat and Associates, PC
18. CEVA Contract Logistics US Inc
19. CEVA International, Inc
20. CITIC Dicastal Co., Ltd.
21. Cognizant Mobility, Inc
22. Cognizant Worldwide Limited
23. Complete Discovery Source, Inc (CDS)
24. Contour Hardening Inc.
25. Cox Automotive Mobility Solutions, Inc
26. Cox Automotive, Inc - Manheim
27. Custodial Building Services, Inc
28. DAG LTD, LLC
29. Detroit Engineered Products dba DEP
30. Duggan Manufacturing LLC
31. Elaphe Propulsion Technologies LTD
32. Fiberdyne Research Pty Ltd
33. Filec Production SAS - Amphenol
34. Foshan Aoya Electrical and Mechanical Co., Ltd.

2

35. Foxconn EV Property Development LLC
36. Foxconn EV System LLC
37. Greatech Intergration (M) SDN.BHD.
38. Harco Manufacturing Group, LLC
39. Haynes and Boone, LLP
40. HRB Industries Corp
41. HubSpot Inc
42. IEE S.A.
43. Infosys Limited
44. Jiangyin Haida Rubber and Plastic Co., Ltd. dba Haida
45. JVIS USA LLC
46. KPMG LLP
47. Lasky, LLC
48. Laval Tool & Mould LTD.
49. Logicalis, Inc.
50. Lumma Clean LLC
51. Mahle Behr USA Inc
52. Mainfreight, Inc - Canada
53. Mainfreight, Inc.
54. Marelli North America Inc dba CalsonicKansel North America Inc
55. Megatronix（Beijing）Technology Co., Ltd.
56. Meta Systems SpA
57. Miotti Srl
58. Mosaic Corporation
59. MSSC US INC.
60. New Eagle, LLC
61. Nexteer Automotive Corporation
62. OpenText Inc.
63. Payscale Inc
64. Pektron EV Limited
65. Pi Innovo LLC
66. Pierburg US LLC
67. Potter Anderson & Corron LLP
68. Principal Life Insurance Company
69. Proper Group Holdings LLC dba Proper Tooling LLC
70. Quality MetalCraft Inc.
71. Racar Engineering, LLC
72. Ready Logistics, LLC
73. Roush Industries, Inc.
74. RTL Systems, LLC
75. SA Automotive LTD

76. Schwab Industries, Inc.
77. SG Automotive d.o.o.
78. Sharp Dimension Inc
79. Sherpa Commercial Vehicles, LLC
80. Silverman Consulting, Inc
81. Simpson Thacher & Bartlett LLP
82. Socotec Advisory, LLC
83. St. Clair Technologies Inc.
84. Sullivan & Cromwell LLP
85. Superior Cam Inc
86. Sybridge Technologies Canada, Inc
87. Technology Solutions Anywhere LLC dba Readysoft
88. Teijin Automotive Technologies, Inc
89. TERIS - Phoenix LLC DBA TERIS
90. The Timken Corporation
91. Three-Dimensional Services dba 3 Dimensional Services Group
92. thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services
93. Transportation Research Center, Inc. dba TRC, Inc.
94. Triple Crown Consulting, LLC
95. TTI, INC dba Symmetry Electronics (a division of TTl, lnc,) and RFMW(a division of TTl, lnc.)
96. Ventra Group Co. dba Flex-N-Gate Bradford
97. VIA Optronics LLC
98. Victora Auto Private Limited
99. Zetwerk Manufacturing USA, Inc
100.   ZF PASSIVE SAFETY SYSTEMS US INC.

**Customers**

1. Army Contracting Command - Detroit Arsenal (ACC-DTA)
2. City of Washington, D.C.
3. Greenstreet EV Inc.
4. JoeyB QB LLC
5. Pratt & Miller Engineering & Fabrication LLC
6. San Diego Unified Port District
7. Sherpa Commercial Vehicles LLC

3

**Investors with over 5% Holdings**

1. Foxconn (Far East) Limited
2. Foxconn EV Technology, Inc.
3. Foxconn Ventures Pte. Ltd.
4. Foxteq Holdings Inc.
5. Foxteq Integration Inc.
6. Hon Hai Precision Industry Co., Ltd.
7. Hon Hai Technology Group
8. PCE Paragon Solutions Kft.

**Debtor Restructuring Professionals**

1. Jefferies Group LLC
2. Kurtzman Carson Consultants, LLC
3. Richards Layton & Finger, P.A.
4. Silverman Consulting, Inc.
5. White & Case LLP

**Ordinary Course Professionals & Professionals of Parties in Interest**

1. Akin Gump Strauss Hauer & Feld LLP
2. Ankura Intermediate Holdings, LP dba Ankura Consulting Group LLC
3. Baker & Hostetler LLP
4. Bernstein Litowitz Berger & Grossman, LLP
5. Bodman PLC
6. Climaco, Wilcox, Peca, Tarantino & Garofoli
7. Cohen Rosenthal & Kramer
8. Cooch and Taylor
9. Cummins Law
10. deLeeuw Law LLC
11. Dechert LLP
12. Deloitte & Touche LLP
13. Dentons US
14. Dittmer, Wagoner & Steele
15. Elfvin, Klingshirn, Royer & Torch, LLC
16. Employment Law Partners
17. Entwistle & Cappucci LLP
18. Ernst & Young U.S. LLP
19. Fisher and Phillips LLP
20. Foley & Lardner LLP
21. FTI Consulting, Inc.
22. Gladstein, Neandross & Associates
23. Hagens Berman Sobol Shapiro LLP
24. Haynes and Boone, LLP
25. Kaskela Law LLC
26. Kooperman Mentel Ferguson Yaross
27. KPMG LLP
28. Labaton Sucharow LLP
29. Latham & Watkins LLP
30. Law Office of Daniel R. Karon
31. Lasky, LLC
32. Lifshitz Law PLLC
33. Long Law, LLC
34. Mercer Capital Management, Inc.
35. Merriman Legando Williams & Klang
36. Murray, Murphy, Moul & Basil
37. Nelson Mullins Riley & Scarborough LLP
38. Paul Hastings LLP
39. Perantinides & Nolan
40. Perez & Morris
41. Phillips ADR Enterprises PC
42. Pomerantz LLP
43. Potter Anderson & Corroon LLP
44. Prospect Law LLP
45. Purcell & Lefkowitz LLP
46. Robbins Geller Rudman & Dowd
47. RSM US LLP
48. Saxena White
49. Schall Law
50. Schubert Jonckheer & Kolbe LLP
51. Seyfarth Shaw LLP
52. Shapiro Haber & Urmy LLP
53. Simpson Thacher & Bartlett LLP
54. Socotec Advisory, LLC
55. Strauss Troy
56. Sullivan & Cromwell LLP
57. The Brown Law Firm, P.C.
58. The Rosen Law Firm, P.A.
59. Winston & Strawn LLP
60. WIT Legal, LLC
61. Zoll & Kranz

AMERICAS 124215620

**Insurance Parties**

1. Accredited Specialty Insurance Company
2. Allied World Specialty Insurance Company
3. Associated Industries Insurance Co., Inc
4. AXIS Insurance Company
5. Berkley Insurance Company
6. CFC Underwriting / Lloyds
7. Continental Casualty Company
8. Endurance Assurance Corporation
9. Fair American Insurance & Reinsurance Co
10. Gemini Insurance Company
11. General Star Indemnity Company
12. Hudson Insurance Company
13. Ironshore Specialty Insurance Company
14. Magna Carta Insurance Ltd. / Lloyds
15. National Union Fire Ins Co of Pittsburgh, PA
16. RSUI Indemnity Company
17. RT Specialty Insurance Services, LLC
18. Samsung Fire & Marine Ins Co Ltd (US Br)
19. SiriusPoint Bermuda Insurance Company
20. The Cincinnati Indemnity Company
21. The Cincinnati Insurance Company
22. Underwriters At Lloyds London
23. Westfield Specialty Insurance Comp
24. XL Specialty Insurance Company

**Utilities**

1. AT&T Business Direct
2. AT&T MOBILITY-CC
3. Comcast Holdings Corporation dba Comcast Cable Communication Management LLC
4. Cox Communications California LLC dba Cox Business
5. CR&R Environmental Services
6. Detroit Disposal & Recycling
7. Irvine Ranch Water District
8. Sonitrol Orange County

9. Southern California Edison
10. Southern California Gas Company dba The Gas Company; So Cal Gas

**Taxing and Regulatory Authorities**

1. California Franchise Tax Board
2. California Department of Tax and Fee Administration
3. California State Board of Equalization
4. Committee on Foreign Investment in the United States
5. Delaware Secretary of State
6. Delaware State Treasury
7. Delaware Tax Authority
8. Internal Revenue Service
9. Michigan Department of Treasury
10. National Highway Traffic Safety Administration
11. Ohio Bureau of Workers' Compensation
12. Ohio Department of Taxation
13. Orange County Property Taxes
14. Pipeline and Hazardous Materials Safety Administration
15. Securities and Exchange Commission
16. U.S. Department of Justice
17. U.S. Patent and Trademark Office
18. Village of Lordstown, OH Income Tax Department

**Litigation Parties**

1. Alicia Kelley
2. An Thai
3. Andrew C. Richardson
4. Angela Strand Boydston
5. Ashith Pabbathi
6. Atri Amin
7. Bei Qin
8. Benjamin Herbert
9. Caimin Flannery
10. Carole Cooper
11. Christopher Kim
12. Chuan D. Vo
13. Claude L. Patterson
14. Dale G. Spencer

AMERICAS 124215620

15. Dan Zhihong Huang
16. Daniel J. Cohen
17. Daniel Tavares
18. Dari Tehrani
19. Darren Post
20. David M. Cohen
21. David T. Hamamoto
22. Ed Lomont
23. Eskander Tehrani
24. Ethan Fingerer
25. Evaristo Sarabia
26. FNY Managed Accounts LLC
27. George Troicky
28. Globestar Systems Inc.
29. Gurpreet Singh
30. Herbert Stotler
31. Hong Xin Huan (a/k/a George Huan)
32. Jane Reiss
33. Janelle Jackson
34. Jesse Brury
35. John H. Jenkins
36. John LeFleur
37. John Vo
38. Joshua Betof
39. Judith A. Hannaway
40. Julio C. Rodriguez
41. Karma Automotive LLC
42. Keith A. Feldman
43. Kenneth Davenport
44. Kevin Levent
45. Kin San Chan
46. M.R.S. Leasing Corporation LTD
47. Mario Guerrero
48. Mark A. Walsh
49. Martin J. Rucidlo
50. Matthew Rico
51. Michael Fabian
52. Michael D. Gates
53. Mickey W. Kowitz
54. Mohammed Chowdhury
55. Phil Richard Schmidt
56. Pnina Cohen
57. Punak Engineering, Inc.
58. Randy Slipher
59. Raymond Romano
60. Robert Miller

61. Robert Palumbo
62. Roger J. Durre
63. Shane Brown
64. Simha Cohen
65. Stephen Punak
66. Stephen S. Burns
67. Steven R. Hash
68. Steven Terry
69. Sulayman Zuod
70. DiamondPeak Sponsor LLC
71. Silverpeak and related entities (which includes SP SPAC Sponsor LLC, Silverpeak Real Estate Partners L.P., Silverpeak Strategic Partners LLC, Silverpeak Credit Partners LP, Silverpeak Renewables Investment Partners LP, and certain other affiliated entities)

**Lien Holders**

1. Competition Engineering, Inc.
2. Foxconn EV Technology, Inc.
3. Hewlett-Packard Financial Services Company
4. Peterson Jig and Fixture, Inc.
5. Precision Jig and Fixture
6. Proper Tooling, LLC & Proper Group International, LLC

**Office of the United States Trustee (Wilmington, DE)**

1. Andrew Vara
2. Benjamin Hackman
3. Christine Green
4. Denis Cooke
5. Diane Giordano
6. Dion Wynn
7. Edith A. Serrano
8. Hannah M. McCollum
9. Holly Dice
10. James R. O'Malley
11. Jane Leamy
12. Joseph Cudia
13. Joseph McMahon
14. Juliet Sarkessian

6

15. Karen Starr
16. Lauren Attix
17. Linda Casey
18. Linda Richenderfer
19. Michael Panacio
20. Nyanquoi Jones
21. Richard Schepacarter
22. Rosa Sierra-Fox
23. Shakima L. Dortch
24. Timothy J. Fox, Jr.

**United States Bankruptcy Judges in the District of Delaware**

1. Ashley M. Chan
2. Brendan L. Shannon
3. Craig T. Goldblatt
4. John T. Dorsey
5. Karen B. Owens
6. Kate Stickles
7. Laurie S. Silverstein
8. Mary F. Walrath
9. Thomas M. Horan

**Other Parties in Interest**

1. Softbank
2. Blackrock Institutional Trust Company, N.A.
3. Blackrock

AMERICAS 124215620

**SCHEDULE 3**

**Connections Disclosure**

| Category | Name | Open/ Closed |
|---|---|---|
| Insurance Parties | AXIS Insurance Company | Closed |
| Insurance Parties | Berkley Insurance Company | Closed |
| Other Parties in Interest | Blackrock | Open |
| Ordinary Course Professionals & Professionals of Parties in Interest | Dechert LLP | Closed |
| Ordinary Course Professionals & Professionals of Parties in Interest | Deloitte & Touche LLP | Closed |
| Ordinary Course Professionals & Professionals of Parties in Interest | Foley & Lardner LLP | Closed |
| Ordinary Course Professionals & Professionals of Parties in Interest | FTI Consulting, Inc. | Open |
| Insurance Parties | Gemini Insurance Company | Closed |
| Significant Lease and Contract Counterparties | General Motors | Open |
| Litigation Parties | Gurpreet Singh | Open |
| Investors with over 5% Holdings | Hon Hai Precision Industry Co., Ltd. | Closed* |
| Insurance Parties | Hudson Insurance Company | Open |
| Significant Vendors | Infosys Limited | Closed |
| Debtor Restructuring Professionals | Jefferies Group LLC | Open |
| Cash Management Banks | JP Morgan Asset Management | Open |
| Cash Management Banks | JP Morgan Chase Bank, N.A. | Open |
| Cash Management Banks | JP Morgan Institutional Investments Global Liquidity | Open |
| Cash Management Banks | JP Morgan Prime | Open |
| Cash Management Banks | JP Morgan Securities | Open |
| Litigation Parties | Karma Automotive LLC | Closed |
| Ordinary Course Professionals & Professionals of Parties in Interest | KPMG LLP | Open |
| Significant Vendors | KPMG LLP | Open |
| Ordinary Course Professionals & Professionals of Parties in Interest | Latham & Watkins LLP | Closed |
| Significant Vendors | Logicalis, Inc. | Closed |
| Top Unsecured Creditors | Marelli North America Inc dba CalsonicKansel North America Inc | Open |
| Significant Vendors | Marelli North America Inc. dba CalsonicKansel North America Inc. | Open |
| Ordinary Course Professionals & Professionals of Parties in Interest | Paul Hastings LLP | Open |

| Significant Vendors | Pierburg US LLC | Closed |
|---|---|---|
| Significant Lease and Contract Counterparties | Principal Life Insurance Company | Open |
| Ordinary Course Professionals & Professionals of Parties in Interest | Socotec Advisory, LLC | Open |
| Significant Vendors | Socotec Advisory, LLC | Open |
| Other Parties in Interest | Softbank | Open |
| Utilities | Southern California Gas Company dba The Gas Company; So Cal Gas | Open |
| Significant Vendors | thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services | Closed |
| Top Unsecured Creditors | thyssenkrupp Materials NA, Inc. dba Ken-Mac Metals or thyssenkrupp Steel Services | Closed |
| Significant Lease and Contract Counterparties | TransAmerica Corporation | Closed |
| Insurance Parties | Underwriters At Lloyds London | Open |
| Ordinary Course Professionals & Professionals of Parties in Interest | Winston & Strawn LLP | Closed |
| Insurance Parties | XL Specialty Insurance Company | Open |

*Closed more than 2 years ago

AMERICAS 123697433 v15
RLF1 29265761v.1