IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: July 27, 2023, at 9:30 a.m. (ET)<br>Objection Deadline: July 20, 2023, at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER (A) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT
BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A), EFFECTIVE AS OF THE
PETITION DATE AND (B) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS**

The debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**") in the above-captioned cases hereby file this application (the "**Application**") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Order**") granting the relief described below. In support of this Application, the Debtors respectfully submit the declaration of Jeffrey Finger, Managing Director and Co-Head of US Debt Advisory & Restructuring at Jefferies (the "**Finger Declaration**"), attached hereto as **Exhibit B**. In further support of the Application, the Debtors, by and through their undersigned counsel, state as follows:[2]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases, are set forth in greater detail in the First Day Declaration (as defined below).

**RELIEF REQUESTED**

1.  By this Application, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors seek entry of the Order (a) authorizing the Debtors to retain and employ Jefferies LLC ("**Jefferies**") as their investment banker, effective as of the Petition Date (as defined below), pursuant to the terms and subject to the conditions of that certain amended and restated engagement letter between Jefferies and the Debtors dated as of June 26, 2023, a copy of which is annexed as **Exhibit 1** attached to the Order (the "**Engagement Letter**");[3] and (b) waiving and modifying certain of the time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "**Trustee Guidelines**") of the United States Trustee and any other guidelines regarding submission and approval of fee applications. The Engagement Letter describes: (a) the various services that the Debtors seek Jefferies to perform on their behalf during these Chapter 11 Cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Debtors.

**JURISDICTION AND VENUE**

2.  This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, dated February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases (as defined below) and this Application is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[3] Capitalized terms not defined here shall have the meanings set forth in the Engagement Letter or First Day Declaration, as applicable.

2

3. The predicates for the relief requested by this Application are sections 327(a) and 328(a) of title 11 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2002-1, 2014-1, 2016-2(h), and 9013-1.

4. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

5. On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

6. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [Docket No. 15].

## JEFFERIES' QUALIFICATIONS AND THE NEED FOR JEFFERIES' SERVICES

7. The Debtors submit this Application because of their need to retain a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through

3

the sale process and otherwise in these Chapter 11 Cases. The Debtors believe that their retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by the Debtors' chapter 11 proceedings, successfully consummate a sale and restructuring, and to effectively carry out their duties as debtors in possession.

8. The Debtors selected Jefferies as their investment banker in these Chapter 11 Cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and its excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Jefferies, moreover, has been engaged by the Debtors since September 2021,[4] and, as a result, is familiar with the Debtors' corporate and capital structure, management, and business operations. In addition, Jefferies advised the Debtors prior to the Petition Date regarding, among other things, preparation for these Chapter 11 Cases. The Debtors thus believe that Jefferies is both well qualified and uniquely able to advise the Debtors in these Chapter 11 Cases.

9. As set forth in the Finger Declaration, Jefferies is a full-service investment banking firm, with approximately 4,800 employees in more than thirty (30) offices around the world. Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Jefferies and its professionals are providing or have provided investment banking, financial advisory, and other services in connection with the following recent cases, among others: *In re Pipeline Health System, LLC*, Case No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022); *In re Mining Project Wind Down Holdings, Inc.* (*f/k/a*

---

[4] The Engagement Letter amended and restated a prior letter dated September 21, 2021.

*Compute North Holdings, Inc.*), Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sep. 22, 2022); *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Sept. 19, 2022*)*; *In re Vewd Software USA, LLC*, Case No. 21-12065 (MEW) (Bankr. S.D.N.Y. Dec. 15, 2021); *In re Limetree Bay Services, LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex. Sep. 10, 2021); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021); *In re Bouchard Transportation Co., Inc.*, Case No. 20-34682 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex. Nov. 04, 2020); *In re Foresight Energy LP*, Case No. 20-41308-659 (Bankr. E.D. Mo. Apr. 7. 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan. 8, 2020); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Mar. 7, 2019); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018); *In re iHeartMedia*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. May 30, 2018); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (Bankr. E.D. Mo. Jan. 16, 2018); *In re Real Industry, Inc.*, Case No. 17-12464 (KJC) (Bankr. D. Del. Dec. 19, 2017); *In re Goodman Networks, Inc.*, Case No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017); *In re BCBG Max Azria Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Peabody Energy Corp.*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo. June 17, 2016); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del. Apr. 21, 2016); *In re Sundevil Power Holdings, LLC*, No. 16-10369 (KJC) (Bankr. D. Del. Apr. 7, 2016); *In re Arch Coal, Inc.*, Case No. 16-40120 (TFE) (Bankr. E.D. Mo.

Mar. 21, 2016); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015).

## SCOPE OF SERVICES

10. Subject to the Court's approval, the Debtors anticipate that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Debtors and as appropriate:[5]

(a) providing advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as exclusive investment banker to the Debtors in connection with any restructuring, reorganization, recapitalization, repayment or material modification of the Debtors' outstanding indebtedness, however achieved, including, without limitation, through any offer by the Debtors with respect to any outstanding Debtors indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to the Bankruptcy Code), an offer by any party to convert, exchange or acquire any outstanding Company indebtedness, or any similar balance sheet restructuring involving the Debtors (any such transaction considered in this paragraph is hereinafter referred to as a "**Restructuring**");

(b) providing the Debtors with financial and investment banking advice and assistance in connection with a possible sale, disposition or other similar business transaction or series of related transactions involving all or a material portion of the equity or assets of one or more entities comprising the Debtors, whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, spin-off, split-off, joint venture, strategic partnership, license, a sale under section 363 of the Bankruptcy Code (including any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "**M&A Transaction**" and an M&A Transaction and a Restructuring, each and together, a "**Transaction**");

(c) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing the business, operations, properties, financial condition and prospects of the Debtors;

---

[5] To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

(d) advising the Debtors on the current state of the "restructuring market," the "M&A market," and the financing market;

(e) assisting and advising the Debtors in developing a general strategy for accomplishing a Restructuring and any M&A Transaction;

(f) assisting and advising the Debtors in implementing any Restructuring and any M&A Transaction;

(g) assisting and advising the Debtors in evaluating and analyzing any Transaction, and, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction;

(h) assisting in reviewing and analyzing the Company's results of operations, financial condition, business plan, and financial outlook;

(i) analyzing the Company's financial condition, liquidity, and prospects, and evaluate alternatives to improve such condition, liquidity, and prospects;

(j) evaluating the Company's debt capacity and alternative capital structures;

(k) assisting in reviewing, developing, and analyzing any potential Transaction and related scenarios;

(l) assisting in determining a range of values for the Company;

(m) attending meetings and participating and assisting the Company in negotiations among the Company and its creditors, securityholders, and other third parties, including potential acquirers, with respect to any Transaction;

(n) advising on the terms of securities the Company offers or receives in any Transaction;

(o) advising on the preparation of an information memorandum, other materials to be used in connection with soliciting interest in a Transaction from potential acquirers, including virtual data room and business and financial due diligence for any potential Transaction;

(p) assisting in contacting potential acquirers, purchasers, or sponsors of any Transaction that Jefferies and the Company believe are appropriate, and meet with and provide them with the Information Memorandum and such additional information about the Company's assets, properties, or businesses that is acceptable to the Company, subject to customary business confidentiality agreements;

(q) soliciting proposals and indications of interest with respect to the matters and transactions contemplated by this Agreement, and assisting the Company in evaluating any such proposals or indications of interest received;

    (r)    providing expert advice and testimony regarding the transactions and matters contemplated by and/or described in this Agreement;

    (s)    advising and assisting on (A) strategic and other matters relating to any Transaction, (B) negotiating waivers and forbearances or amendments of various debt facilities and agreements with its creditors, securityholders, and other third parties, and (C) preparing for, and in connection with, a potential bankruptcy case, in each case as is customary for an investment banker;

    (t)    assisting in preparing documentation within Jefferies' area of expertise that is required or appropriate in connection with transactions and matters of the kind contemplated by this Agreement;

    (u)    present to the Company's Board of Directors and/or any committee thereof; and

    (v)    providing such other investment banking services in connection with a Transaction as Jefferies and the Company may mutually agree upon.

11.    The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and Jefferies will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.

## PROFESSIONAL COMPENSATION

12.    As set forth more fully in the Engagement Letter, Jefferies and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "**Fee and Expense Structure**"):[6]

    (a)    **Monthly Fee**. A monthly fee (the "**Monthly Fee**") equal to $200,000 per month until the termination of the Engagement Letter. The first Monthly Fee shall be payable as of the date of the Engagement Letter, and each subsequent Monthly Fee shall be payable on each monthly anniversary thereafter. 100% of the first five full Monthly Fees actually paid to and retained by Jefferies shall be credited once, without duplication, against any transaction fee that becomes payable pursuant to Sections 4(b) or 4(c) of the Engagement Letter (it being understood that, once credited against any one of the foregoing fees, any such amount of Monthly Fees so credited cannot be credited again against any other fee payable under the Engagement Letter).

---

[6] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

(b) **Restructuring Fee**.  Promptly upon the consummation of a Restructuring, a fee equal to $3.0 million (the "**Restructuring Fee**").

(c) **M&A Transaction Fee**.  Promptly upon the consummation of an M&A Transaction involving all or substantially all of the equity or assets of the Company in one or more related or unrelated transactions, a fee (the "**M&A Transaction Fee**") in an amount equal to $3.0 million.  For the avoidance of any doubt, Jefferies will not earn any M&A Transaction Fee for de minimis asset sales by the Debtors or any other sale or series of related or unrelated sales that are not for all or substantially all assets of the Debtors.

(d) **Expenses**.  In addition to any fees that may be paid to Jefferies under the Engagement Letter, whether or not any Transaction occurs, the Debtors will reimburse Jefferies, promptly upon receipt of an invoice therefor, for its reasonable and documented out-of-pocket expenses (including (i) the reasonable and documented fees and expenses of its counsel, and (ii) the reasonable and documented fees and expenses of any other independent experts retained by Jefferies, solely with respect to clause 5(ii) of the Engagement Letter, with the Debtors' prior consent (such consent not to be unreasonably withheld or delayed)) incurred by Jefferies and its designated affiliates in connection with the Engagement Letter.

13.   For the avoidance of doubt, Jefferies shall only be entitled to the payment of one Restructuring Fee or one M&A Transaction Fee, and not both such fees under the Engagement Letter.

14.   During the pendency of these Chapter 11 Cases, Jefferies shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

15.   The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court. The Fee and Expense structure is consistent with Jefferies' normal and customary billing practices

for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these Chapter 11 Cases. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.

16.     Similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (authorizing Jefferies' retention as investment banker); *In re Bouchard Transportation Co., Inc.*, Case No. 20-34682 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021) (same); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex. Nov. 04, 2020) (same); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018) (same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018.[7] Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing and that Jefferies' compensation is based on fixed fees, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the

---

[7]     Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

Bankruptcy Rules, the Local Rules, any order of this Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter. Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large chapter 11 cases have excused flat-fee professionals from time-keeping requirements under similar circumstances. *See, e.g., See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (requiring Jefferies only to keep reasonably detailed summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re Bouchard Transportation Co., Inc.*, Case No. 20-34682 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021) (same); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex. Nov. 04, 2020) (same); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018) (same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[8]

---

[8] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available on request.

**INDEMNIFICATION OF JEFFERIES**

17. As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees, and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs, and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[9] Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (approving similar indemnification provisions); *In re Bouchard Transportation Co., Inc.*, Case No. 20-34682 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021) (same); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex. Nov. 04, 2020) (same); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 6, 2018) (same); *In re Mission Coal Company, LLC*, Case No. 18-04177-TOM11 (Bankr. N.D. Ala. Nov. 30, 2018) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[10]

**JEFFERIES' DISINTERESTEDNESS**

18. Jefferies has informed the Debtors that as of the date hereof, except as set forth in the Finger Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity

---

[9] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in **Schedule A** to the Engagement Letter, the terms of the Engagement Letter shall control.

12

security holders, or other parties in interest in these Chapter 11 Cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security holder, or an insider of the Debtors and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Jefferies' professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee for the District of Delaware, or any person employed by the U.S. Trustee.

19.    During the 90-day period prior to the commencement of these Chapter 11 Cases, Jefferies was paid in the ordinary course certain fees and expense reimbursements.  Specifically, on June 26, 2023, Jefferies was paid $200,000 on account of its June Monthly Fee and a $25,000 expense advance.   Jefferies will apply any expense advance received first to expenses incurred but not reimbursed prepetition, and second to any allowed expenses incurred after the Petition Date.

20.    The Debtors have been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

21.    Based on the foregoing, the Debtors believe that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

**BASIS FOR RELIEF**

22.    The Debtors seek entry of an order authorizing them to retain and employ Jefferies pursuant to sections 327 and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy

Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ one or more attorneys, accountants … or other professional person."  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

23.     Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services, (b) Jefferies' substantial experience with respect to investment banking services and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

24.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.

Notwithstanding the foregoing, Jefferies agrees that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

25. In light of the foregoing, the Debtors submit that the retention of Jefferies is in the best interest of the estates, their creditors, and all parties in interest in these Chapter 11 Cases. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Debtors therefore submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Jefferies in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

26. Notice of this Application has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

27. No prior request for the relief sought in this Application has been made to this or any other court.

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Application, enter the proposed Order, and grant such other and further relief as is just and proper.

Dated: July 6, 2023

Respectfully submitted,

LORDSTOWN MOTORS CORP.
(for itself and on behalf of its affiliated debtors and debtors in possession)

By: */s/Melissa Leonard*
Name: Melissa Leonard
Title: Executive Vice President, General Counsel & Secretary