## Exhibit A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. ___** |

### ORDER (A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A), EFFECTIVE AS OF THE PETITION DATE AND (B) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS

Upon the application (the "**Application**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2(h), (a) authorizing the Debtors to retain and employ Jefferies LLC ("**Jefferies**") as their investment banker effective as of the Petition Date, pursuant to the terms and subject to the conditions of the Engagement Letter and (b) waiving and modifying certain of the time-keeping requirements of Bankruptcy Rule 2016(a), the Trustee Guidelines, and any other guidelines regarding submission and approval of fee applications, all as more fully set forth in the Application; and the Court having found that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.); and

---

[1] The Debtors in these chapter 11 cases (these "**Chapter 11 Cases**"), along with the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Application.

consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"), if necessary; and upon consideration of the Finger Declaration, the First Day Declaration and the record of the Hearing and all of the proceedings had before the Court; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

       **IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain and employ Jefferies as their investment banker in these Chapter 11 Cases, pursuant to the terms and subject to the conditions set forth in the Engagement Letter attached hereto as **Exhibit 1**, effective as of the Petition Date, as modified by this Order.

3.      Except to the extent set forth herein, the Engagement Letter (together with all annexes thereto), including without limitation the Fee and Expense Structure, are approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtors are authorized and directed to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and

at the times specified, in the Engagement Letter.  Subject to Paragraph 4 of this Order, all compensation and reimbursement of expenses payable under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

4.      Jefferies shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules or Local Rules as may then be applicable, and any other applicable orders and procedures of this Court; *provided*, *however*, that Jefferies shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code and that Jefferies' fees and expenses shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that, notwithstanding any provisions to the contrary in this Order, the Application or any of its attachments, the U.S. Trustee shall retain all rights and be entitled to object to Jefferies' request(s) for fees and reimbursement of expenses, including but not limited to those set forth in interim and final fee applications, under the standards provided in sections 330 and 331 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Jefferies' fees and reimbursement requests.

5.      Notwithstanding anything to the contrary in the Application or any of its attachments, including but not limited to the Engagement Letter, Jefferies shall comply with all requirements of Bankruptcy Rule 2016(a), and Local Rule 2016-2, including all information and time keeping requirements of subsection (d) of Local Rule 2016-2, except that Jefferies and its

professionals shall be permitted to maintain time records of services rendered for the Debtors in half-hour increments.

6.      Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Jefferies absent an order of this Court approving a fee application filed on notice to parties in interest in these Chapter 11 Cases under the procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals (the "**Compensation Order**"), except that the Debtors are authorized to pay the Monthly Fee to Jefferies each month when required under the Engagement Letter without a prior fee application, *provided*, *however* that Jefferies shall file monthly fee statements with time entries and requests for reimbursement that comply with Rule 2016-2 of the Local Bankruptcy Rules, except as otherwise expressly set forth in this Order, pursuant to the deadlines and other procedures specified for monthly fee applications set forth in the Compensation Order.

7.      In the event that, during the pendency of these Chapter 11 Cases, Jefferies requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in Jefferies' fee applications, and such invoices and time records shall be in compliance with Local Rule 2016-2(f) and the U.S. Trustee Guidelines and subject to approval of the Court under the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Notwithstanding the foregoing, Jefferies shall only be reimbursed for any legal fees incurred in connection with these Chapter 11 Cases to the extent permitted under applicable law and the decisions of this Court.

8.      The indemnification, contribution, and reimbursement provisions included in

**Schedule A** to the Engagement Letter are approved, subject during the pendency of these Chapter

11 Cases to the following modifications:

a.      Indemnified Persons (as that term is defined in Schedule A to the Engagement Letter) shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for claims arising from services other than the services provided under the Engagement Letter, unless such services are approved by this Court;

b.      Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person or entity or provide contribution or reimbursement to any person or entity for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from that person's or entity's gross negligence, willful misconduct, or bad faith, or (ii) for a contractual dispute in which the Debtors allege breach of the obligations of Jefferies or another Indemnified Person under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to sub-clauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

c.      If, during the pendency of these Chapter 11 Cases, the indemnification provided in **Schedule A** to the Engagement Letter is held unenforceable by reason of the exclusions set forth in paragraph (b) above, and Jefferies or another Indemnified Person makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the limitations on Jefferies' contribution obligations set forth in the second and third sentences of the fifth paragraph of **Schedule A** shall not apply;[3] and

d.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, Jefferies or another Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Jefferies must file an

---

[3]    For the avoidance of doubt, the fifth paragraph of Schedule A to the Engagement Letter is the paragraph that begins, "If, for any reason…."

application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment; provided, however, that for the avoidance of doubt, this subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Jefferies or any other Indemnified Person.

9.      To the extent that there may be any inconsistency between the terms of the Application, the Finger Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

10.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

11.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     The Debtors and Jefferies are authorized and empowered to take executed and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order in accordance with the Application.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the  enforcement of this Order.

## Exhibit 1

**Engagement Letter**

**<u>Strictly Confidential</u>**

**Engagement Letter**

As of June 26, 2023

**Lordstown Motors Corp.**
2300 Hallock Young Road
Lordstown, OH 44481

Attention:     Mr. Daniel Ninivaggi
                       Chairman

Re: <u>Advisory Services</u>

This agreement (this "<u>Agreement</u>") will confirm the arrangements under which Jefferies LLC ("<u>Jefferies</u>") has been engaged by Lordstown Motors Corp., a Delaware corporation, and its present and future affiliates and subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby (collectively, the "<u>Company</u>" or "<u>Lordstown</u>"), to act as set forth below in connection with one or more possible Transactions (as defined below).  The parties hereto acknowledge and agree that this Agreement amends and restates in its entirety that certain engagement letter between the parties dated September 21, 2021 (the "<u>Prior Agreement</u>").

1.      <u>Retention</u>.

(a)      <u>Restructuring</u>.  During the term of this engagement, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will:

(i)      provide advice and assistance to the Company in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate), and acting as exclusive investment banker to the Company in connection with, any restructuring, reorganization, recapitalization, repayment or material modification of the Company's outstanding indebtedness, however achieved, including, without limitation, through any offer by the Company with respect to any outstanding Company indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")), the execution of any agreement giving effect thereto, an offer by any party to convert, exchange or acquire any outstanding Company indebtedness, or any similar balance sheet restructuring involving the Company (any such transaction considered in this paragraph is hereinafter referred to as a "<u>Restructuring</u>").

(b)      <u>M&A Transaction</u>.  Furthermore, during the term of this engagement, and as mutually agreed upon by Jefferies and the Company, Jefferies will provide the Company with financial and investment banking advice and assistance in connection with a possible sale, disposition or other similar business transaction or series of related transactions involving all or a material portion of the equity or assets of one or more entities comprising the Company, whether directly or indirectly and through any form of transaction, including,

**Lordstown Motors Corp.**
As of June 26, 2023
Page 2

without limitation, merger, reverse merger, liquidation, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, spin-off, split-off, joint venture, strategic partnership, license, a sale under section 363 of the Bankruptcy Code (including any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "M&A Transaction" and an M&A Transaction and a Restructuring, each and together, a "Transaction").

      (c)     In addition, in connection with the above described services, Jefferies will if appropriate and requested by the Company, provide the following financial advisory services in connection with any Transaction: (i) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing the business, operations, properties, financial condition and prospects of the Company; (ii) advising the Company on the current state of the "restructuring market," the "M&A market," and the financing market; (iii) assisting and advising the Company in developing a general strategy for accomplishing any Restructuring and any M&A Transaction; (iv) assisting and advising the Company in implementing any Restructuring and any M&A Transaction; (v) assisting and advising the Company in evaluating and analyzing any Transaction and, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction; (vi) assisting in reviewing and analyzing the Company's results of operations, financial condition, business plan, and financial outlook, (vii) analyzing the Company's financial condition, liquidity, and prospects, and evaluate alternatives to improve such condition, liquidity, and prospects, (viii) evaluating the Company's debt capacity and alternative capital structures, (ix) assist in reviewing, developing, and analyzing any potential Transaction and related scenarios, (x) assisting in determining a range of values for the Company, (xi) attending meetings and participating and assisting the Company in negotiations among the Company and its creditors, securityholders, and other third parties, including potential acquirers, with respect to any Transaction, (xii) advise on the terms of securities the Company offers or receives in any Transaction, (xiii) advising on the preparation of an information memorandum ("Information Memorandum"), other materials to be used in connection with soliciting interest in a Transaction from potential acquirers, including virtual data room and business and financial due diligence for any potential Transaction, (xiv) assisting in contacting potential acquirers, purchasers, or sponsors of any Transaction that Jefferies and the Company believe are appropriate, and meet with and provide them with the Information Memorandum and such additional information about the Company's assets, properties, or businesses that is acceptable to the Company, subject to customary business confidentiality agreements, (xv) soliciting proposals and indications of interest with respect to the matters and transactions contemplated by this Agreement, and assisting the Company in evaluating any such proposals or indications of interest received, (xvi) providing expert advice and testimony regarding the transactions and matters contemplated by and/or described in this Agreement, (xvii) advising and assisting on (A) strategic and other matters relating to any Transaction, (B) negotiating waivers and forbearances or amendments of various debt facilities and agreements with its creditors, securityholders, and other third parties, and (C) preparing

DocuSign Envelope ID: 2B935EC1-5706-4B98-8969-E0R9B60B0DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 3

for, and in connection with, a potential bankruptcy case, in each case as is customary for an investment banker, (xviii) assisting in preparing documentation within Jefferies' area of expertise that is required or appropriate in connection with transactions and matters of the kind contemplated by this Agreement, (xix) present to the Company's Board of Directors and/or any committee thereof, and (xx) providing such other investment banking services in connection with a Transaction as Jefferies and the Company may mutually agree upon.

2.    Cooperation.

(a)    The Company shall, to the extent practicable, furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company relevant to the Transaction, and all other information and data, and access to the Company's officers, directors, employees and professional advisors, which Jefferies reasonably requests in connection with Jefferies' activities hereunder. All such materials, information and data (other than projections and forward-looking information, which shall be prepared in good faith) shall, to the Company's knowledge, be complete and accurate in all material respects and not misleading. The Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the completeness or accuracy of the information previously furnished to Jefferies, and agrees to promptly notify Jefferies prior to taking any material initiatives relating to the proposed Transaction. If the Company or, to the Company's knowledge, any of its securityholders, affiliates or other advisors or representatives are contacted by any party concerning a potential Transaction, the Company will promptly inform Jefferies of such inquiry, and all material relevant details thereof to the extent known to the Company.

(b)    The Company further acknowledges that, except to the extent Jefferies, in its sole discretion, deems necessary to establish applicable "due diligence" defenses, Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Company or other parties to a Transaction) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Company or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Company or other party to a Transaction, as the case may be (and if such forecasts no longer reflect such estimates and judgments, then the Company will promptly inform, and provide updated forecasts to, Jefferies).

(c)    The Company agrees that any confidential information memorandum or other disclosure materials used in connection with an M&A Transaction, taken as a whole, shall not, to the Company's knowledge, contain any untrue statement of material fact, or

DocuSign Envelope ID: 2B935EC1-5706-4B98-8969-F0R9P6050DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 4

omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

3.  <u>Use of Name, Advice, Agreement, etc.</u>

(a)    No information or advice provided (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) or materials prepared by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent.  The Company shall not disseminate any materials bearing the Jefferies name or logo outside of the Company without Jefferies' knowledge and consent, except for the materials expressly prepared for the purpose of soliciting interest in a Transaction or to its officers, directors, legal and accounting advisors and consultants on a confidential, non-reliance and need to know basis (and the Company will be responsible for any actions taken by such parties that would be deemed a breach of this Agreement if the Company had taken such actions).  In addition, the Company agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.  The Company agrees not to disclose this Agreement, the contents hereof or the activities of Jefferies pursuant hereto to any other party without the prior approval of Jefferies. Notwithstanding the foregoing, the Company may disclose the information, advice, materials or activities of Jefferies referenced in this Section 3(a) as required by law, regulation or legal process (in which case, the Company agrees that such disclosure shall be reasonable and customary and limited to only that information that the Company determines (with the advice of counsel) should be disclosed to comply with law, regulation or legal process, and the Company agrees to notify Jefferies in advance of, and provide Jefferies an opportunity to comment on, any such disclosure).

(b)    Jefferies' advice is solely for the confidential use and information of the Company's management and board (solely in their capacities as such), and is only to be used in considering the matters to which this Agreement relates.  Such advice may not be relied upon by any other party (including, without limitation, securityholders, affiliates, creditors or employees of the Company).

4.  <u>Compensation</u>.  The Company agrees to pay Jefferies each of the following:

(a)    A monthly fee (the "<u>Monthly Fee</u>") equal to $200,000 per month until the termination of this Agreement.  The first Monthly Fee shall be payable as of the date of this Agreement and each subsequent Monthly Fee shall be payable on each monthly anniversary thereafter.  100% of the first five full Monthly Fees actually paid to and retained by Jefferies shall be credited once, without duplication, against any transaction fee that becomes payable pursuant to Sections 4(b) or 4(c) below (it being understood that, once credited against any one of the foregoing fees, any such amount of Monthly Fees so credited cannot be credited again against any other fee payable hereunder).

(b)    Promptly upon the consummation of a Restructuring, a fee (the "<u>Restructuring Fee</u>") in an amount equal to $3.0 million.

DocuSign Envelope ID: 2B935EC1-5706-4D98-8969-E0R0P5050DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 5

(c)     Promptly upon the consummation of an M&A Transaction involving all or substantially all of the equity or assets of the Company in one or more related or unrelated transactions, a fee (the "M&A Transaction Fee") in an amount equal to $3.0 million.  For the avoidance of any doubt, Jefferies and the Company expressly agree that Jefferies will not earn any M&A Transaction Fee for de minimis asset sales by the Company or any other sale or series of related or unrelated sales that are not for all or substantially all assets of the Company.

(d)     The Company and Jefferies expressly acknowledge and agree that Jefferies shall only be entitled to the payment of one Restructuring Fee or one M&A Transaction Fee, and not both such fees under this Agreement.

(e)     The Company acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.  The Company further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Company in connection with any Transaction and that the value to the Company of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.     Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor, for its reasonable and documented out-of-pocket expenses (including (i) the reasonable and documented fees and expenses of its counsel, and (ii) the reasonable and documented fees and expenses of any other independent experts retained by Jefferies, solely with respect to this clause (ii), with the Company's prior consent (such consent not to be unreasonably withheld or delayed)) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6.     Indemnification.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination of this Agreement.  Additionally, the indemnification, exculpation and other obligations described in Schedule A hereto shall be effective as of the date of the Prior Agreement.

7.     Termination.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by both the Company and Jefferies, and the Agreement will remain in full force and effect (and will not be deemed completed) until the earlier of (i) it is terminated by either party on five days' written notice to the other, and (ii) the effective date of a confirmed chapter 11 plan.  Upon any termination of this Agreement, the

**Lordstown Motors Corp.**
As of June 26, 2023
Page 6

Company shall promptly pay Jefferies any accrued but unpaid fees hereunder and reimburse Jefferies for any unreimbursed expenses owed pursuant to Section 5. In the event of any termination of this Agreement, Jefferies shall be entitled to the applicable fee or fees set forth in Section 4 if, on or prior to 12 months from the effective date of termination of this Agreement, the Company consummates, or enters into a definitive, binding agreement which subsequently results in, one or more Transactions. Any such fee or fees shall be payable at the closing of any such Transaction. The obligations set forth in Sections 3-7, 9-17, and Schedule A shall survive any termination of this Agreement.

8.      Bankruptcy Retention. If the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company agrees to use its reasonable best efforts to promptly apply for approval of Jefferies as its exclusive investment banker in the Company's bankruptcy cases to the bankruptcy court having jurisdiction over such cases (the "Bankruptcy Court") pursuant to section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Jefferies with a draft of any application and proposed order authorizing Jefferies' retention reasonably in advance of its filing to enable Jefferies to review and approve any such application or order prior to its filing. Jefferies shall have no obligation to provide any services under this Agreement if the Company becomes a debtor under the Bankruptcy Code unless Jefferies' retention is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is acceptable to Jefferies in its sole discretion. Prior to commencing a bankruptcy case, the Company shall pay to Jefferies in cash all amounts due and payable to Jefferies under this or any other Agreement.

9.      Disclaimer.

(a)      The Company acknowledges that Jefferies' parent, Jefferies Financial Group Inc. (collectively with its subsidiaries and affiliates, "Jefferies Financial Group"), is a leading global, full-service investment banking and capital markets firm that offers a full range of investment banking, equities, fixed income, asset and wealth management products and services (including, without limitation, investment management, corporate finance, securities underwriting, trading and research and brokerage activities), and which owns a legacy portfolio of, and may make certain investments in or acquisitions of, other businesses and companies,, in each case from which conflicting interests, or duties, may arise, and that Jefferies Financial Group maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies. Information that is held elsewhere within Jefferies Financial Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement. Neither Jefferies nor any other part of Jefferies Financial Group has or will have any duty to disclose to the Company or use for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise)

DocuSign Envelope ID: 2B935EC1-5706-4B98-8969-E0R9P5050DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 7

or otherwise carrying on its business.  In addition, in the ordinary course of business, Jefferies Financial Group may trade the securities of the Company and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities.  Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise.  Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.  Jefferies Financial Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the Transactions contemplated hereby.

     (b)    The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies may provide tools or online document repository spaces to facilitate the Transaction, that such products or services are provided by third party vendors and that the Company uses those products or services at its own risk, (iv) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (v) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (vi) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

10.    <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to conflicts of laws principles.

11.    <u>Exclusive Jurisdiction</u>.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this agreement to this Section 11 (any of the foregoing, a "<u>Claim</u>") shall be commenced in the Commercial Division of the Supreme Court of the State of New York

DocuSign Envelope ID: 2B935EC1-5706-4D98-8969-E0B96080DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 8

located in the City and County of New York, which court shall have exclusive jurisdiction over the adjudication of such matters. The Company and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any Claim and agree not to assert the defense of forum non-conveniens. The Company and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered to the addresses set forth or referred to in Section 14 hereof. In any Claim, all of the costs and the reasonable attorneys' fees of the prevailing party (it being understood that the determination as to which party prevailed shall be made by the court in such Claim) shall be borne by the party who did not prevail. The Company and Jefferies further agree that a final, non-appealable judgment in respect of any Claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced. Neither Jefferies or any of the Indemnified Persons (as defined in Schedule A), nor the Company or its affiliates, shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof; provided that the foregoing shall not place any limitation on the Company's indemnification obligations under this Section 11 and Schedule A in connection with third-party claims. The Company also hereby consents to personal jurisdiction, service and venue in any court in which any Action (as defined in Schedule A) is brought by any third party against Jefferies or any Indemnified Person.

12.   Payments.

(a)   All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. If the fees to be paid to Jefferies are denominated in a currency other than U.S. dollars, such fees shall be converted into U.S. dollars at the closing mid-market exchange rate in New York on the business day prior to that on which payment of the fees is to be made. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim. The Company agrees that the funds-flow memorandum for a Transaction shall be provided to Jefferies at a reasonable time prior to closing and shall provide for the transfer to Jefferies at the closing of the Transaction of a cash amount sufficient to pay in full, in accordance with Sections 4 and 5 above, Jefferies' fees and expenses to the extent not previously paid or reimbursed.

(b)   All amounts payable to Jefferies or any other Indemnified Person under the terms of the Agreement shall be paid to Jefferies or any other Indemnified Person in U.S. dollars, free and clear of all deductions or withholdings.

(c)   All fees and expenses payable under the provisions of the Agreement are subject to any applicable value added, sales, turnover, consumption or similar tax, which will be payable by or charged to the Company.

DocuSign Envelope ID: 2B935EC1-5706-4B98-8969-E0R9B60B0DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 9

13.    <u>Announcements, etc</u>.  The Company agrees that Jefferies may, following the public announcement or public disclosure of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Company's name and logo in connection therewith; provided that Jefferies shall not use in any such description any material terms of a Transaction, which have not been publicly disclosed by or on behalf of the Company or its affiliates or the Transaction counterparty or its affiliates, without the Company's prior approval for the first such use, which approval shall not be unreasonably withheld or delayed.  The Company agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in connection with the Transaction, which references shall be in form and substance reasonably satisfactory to the Company and Jefferies.

14.    <u>Notices</u>.  Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be mailed by next-day delivery using a nationally-recognized overnight courier or hand-delivered (a) if to the Company, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

15.    <u>Miscellaneous</u>.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. For clarity, however, this Agreement does not supersede, change, alter, amend or otherwise affect that certain Confidentiality Agreement, dated as of June 15, 2021, by and between the Company and Jefferies.  This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party.  This Agreement is binding upon and inures to the benefit of each party's permitted successors and permitted assigns.  This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; <u>provided</u> that Jefferies may, in the performance of its services hereunder, procure the services of other members of Jefferies Financial Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  All references to "$" or "dollars" herein shall be references to U.S. dollars. "Third party" as used herein shall mean any party other than the parties hereto. "Securityholders" of the Company as used herein shall mean the securityholders of the Company in their capacities as such and not as third parties.  No failure or delay by any party hereto in exercising any right, power or remedy hereunder or pursuant hereto, or any failure to give notice of any breach of or to require compliance with any term of this

DocuSign Envelope ID: 2B935EC1-5706-4D98-8969-E0R9B6050DF8

**Lordstown Motors Corp.**
As of June 26, 2023
Page 10

Agreement, shall operate as a waiver thereof. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by each of the signatories hereto and its counsel. There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

16.     <u>Patriot Act</u>. Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "<u>Patriot Act</u>"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

**Lordstown Motors Corp.**
As of June 26, 2023
Page 11

Please sign below and return to Jefferies to indicate the Company's acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES LLC**

Name: Sean Costello
Title: Managing Director

Accepted and Agreed:

**LORDSTOWN MOTORS CORP.**
On behalf of its present and future affiliates and subsidiaries and any entity used thereby to facilitate the Transactions contemplated hereby

Name: Daniel Ninivaggi
Title: Executive Chairman

## SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Company. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates and their successors and permitted assigns (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs and expenses (an "Action") (including, without limitation, full reimbursement of all fees and expenses of counsel) incurred in investigating, preparing or defending against any such Action and in enforcing the terms of this Schedule A, as incurred, (a) related to or arising out of or in connection with any untrue or alleged untrue statement of material fact contained in the Materials or other information provided by or on behalf of the Company to Jefferies, investors or parties to a Transaction, or omission or alleged omission to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading or (b) otherwise, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that , in the case of the foregoing clause (b), the Company shall not be responsible for any Excluded Losses. "Excluded Losses" shall mean Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted primarily from Jefferies' actual fraud, bad faith, gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the written consent of the Company).

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except for Excluded Losses.

The Company agrees that it will not settle, facilitate any settlement of, or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the actual fraud, bad faith, gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total Transaction Value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the termination of the Agreement or completion of Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Schedule A, the Company will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Company set forth in this Schedule A, including the assumption of such obligations by another party,

## SCHEDULE A

insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Jefferies; <u>provided</u>, <u>however</u>, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this <u>Schedule A</u> has been made, the Company's obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.