IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | ) Case No. 23-10831 (MFW) |
| Debtors. | ) (Jointly Administered) |
|  | ) Hearing Date:<br>) July 27, 2023 at 9:30 a.m. |
|  | ) Objection Deadline:<br>) July 20, 2023 at 4:00 p.m. |

**DEBTORS' MOTION UNDER 11 U.S.C. §§ 502(c) AND 105(a)
FOR ENTRY OF ORDERS (I) ESTABLISHING PROCEDURES AND
SCHEDULE FOR ESTIMATION PROCEEDINGS AND (II) ESTIMATION
OF THE AMOUNT OF THE CLAIM HELD BY KARMA AUTOMOTIVE LLC**

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases move this Court under sections 502(c) and 105(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") for (i) entry of an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), establishing the procedures and schedule for the estimation of the amount of a certain contingent, unliquidated, and disputed claim (the "**Karma Claim**") held by Karma Automotive LLC ("**Karma**") against Debtor Lordstown Motors Corp. (the "**Company**") and (ii) an order estimating the amount of the Karma Claim for purposes of allowance. In support of this Motion, the Debtors state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

**PRELIMINARY STATEMENT**

1. The Debtors filed these chapter 11 cases to maximize value to their stakeholders quickly and efficiently. To that end, the Debtors have proposed an efficient chapter 11 marketing and sale process to pursue and consummate a value-maximizing sale of their assets. Given the current financial state of the Company, time is of the essence. There is currently no meaningful revenue from the Debtors' operations and a prolonged stay in chapter 11 will rapidly deplete the Debtors' cash on hand and potential recoveries to stakeholders. The Debtors have, therefore, proposed a sale process that would conclude with a sale hearing on or about September 12, 2023, and intend to vigorously pursue the confirmation of a plan that will provide for distributions from the Debtors' assets (including cash, sale proceeds, and litigation claims against Foxconn) to creditors and, if there is sufficient value, stockholders.

2. A chief obstacle to the Debtors' ability to rapidly consummate and make distributions under a chapter 11 plan is the contingent, unliquidated claim that Karma has asserted against the Company. As the Court is aware, Karma has filed an action against the Company and certain of its current and former officers and employees in the U.S. District Court for the Central District of California asserting massive damages based on claims of misappropriation of trade secrets, conspiracy, breach of a non-disclosure agreement, interference with employment contracts, and violation of computer fraud statutes. In its motion to lift the automatic stay, Karma states that it seeks $913,235,982 in damages, plus fees, costs, and punitive damages.[2]

3. The Company disputes Karma's allegations, which relate to events from almost three years ago. The sheer size of the damages asserted by Karma relative to the value of the

---

[2] *Karma Automotive LLC's Motion for Relief from the Automatic Stay* [D.I. 82] (the "**Karma Lift Stay Motion**") at ¶ 1.

Debtors' estate threatens to derail the chapter 11 process and renders estimation of the Karma Claim necessary. Setting the amount of the Karma Claim is critical to determining the amount and timing of creditor and stockholder recoveries in this case and administration of the Debtors' estates. Absent estimation, resolution of the Karma Claim will involve a lengthy and protracted process, including likely appeals anticipated by Karma in its motion to lift the automatic stay, unnecessarily depleting the Debtors' limited resources and delaying distributions.[3] Estimation would avoid delays and allow the Karma Claim to be litigated at a significantly reduced cost for the benefit of all stakeholders.

4. Karma's assertion that it is entitled to nearly a billion dollars in damages bears no relation to either the value of what was allegedly misappropriated or the value of either the Company or Karma. Karma's damages are premised on: (i) hypothetical sales figures that have no basis in anything ever accomplished by either the Company or Karma; (ii) alleged savings of research and development costs that are speculative and unreliable; and (iii) the amount of capital raised by the Company, which has nothing to do with the alleged misconduct. Karma is a moribund company that has never successfully produced vehicles with the property allegedly stolen. Yet it seeks nearly a billion dollars in damages for alleged theft of trade secrets that neither Karma nor the Company were ever able to monetize. There is no reason to delay the administration of Debtors' estate on the basis of the Karma Claim, and estimation for purposes of allowance is appropriate under sections 105(a) and 502(c).

---

[3] *Id*. at ¶ 31 ("Karma is only seeking to modification of the stay [*sic*] to complete the trial and obtain a final, non-appealable judgment"); p. 14 ("Karma respectfully requests that the Court modify the automatic stay to permit Karma to complete the District Court Case litigation, including all appeals, against Debtor and all Individual Defendants.").

**JURISDICTION, VENUE AND PREDICATES FOR RELIEF**

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

6. The predicates for the relief requested by this Motion are sections 502(c) and 105 of the Bankruptcy Code.

7. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**BACKGROUND**

**I.    Overview of the Karma Action**

8. The Company develops and sells electric vehicles primarily to commercial fleet customers.[4] The Company's flagship vehicle is the Endurance, a full-size, all-electric pickup truck.[5] As of the Petition Date, only approximately 65 Endurances have been manufactured.[6]

9. Karma is a Chinese-owned automotive manufacturer. Karma's main product is the Revero, a hybrid sports car.

---

[4] *Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 15] at ¶ 1.

[5] *Id*.

[6] *Id*.

10. On October 30, 2020, Karma filed an action (the "**Karma Action**") against the Company and certain of its current and former executive officers and employees in the U.S. District Court for the Central District of California (the "**District Court**") asserting claims for misappropriation of trade secrets, conspiracy, breach of a non-disclosure agreement, interference with employment contracts, and violation of the computer fraud statutes. In its First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages (the "**Complaint**"), attached as **Exhibit B**, Karma alleges that it has developed trade secret information that it uses to service the needs of its customers and to achieve a competitive edge over other manufacturers of automobiles. Compl. ¶ 35. Karma further alleges that it also maintains other information that is proprietary and commercial in nature, including information about Karma's methodologies, strategies, programs, and systems. *Id*.

11. Karma alleges that in 2020, Karma and the Company entered into a non-disclosure agreement that allowed the parties to exchange confidential information as part of due diligence for a proposed arrangement whereby Karma would develop the "infotainment" system for the Company's new fleet of electric vehicles. *Id*. ¶ 63. The parties entered into a non-binding letter of intent on June 11, 2020. *Id*. On August 6, 2020, the Company terminated the letter of intent. *Id*. ¶ 71.

12. Karma asserts that before and after the Company's termination of the letter of intent, certain of Karma's former employees acted as agents for the Company, accessed Karma computer systems without authorization, and took or deleted Karma information. *Id*. ¶¶ 125-26. Karma further asserts that the Company misappropriated trade secrets, unjustly enriching the Company and causing Karma to suffer damages. *Id*. ¶¶ 14, 141-46.

13. The Company disputes these allegations and has vigorously defended the Karma Action. Over the course of the litigation, the Company has identified factual evidence and expert testimony demonstrating that even if Karma's claims were valid (they are not), the maximum value of the claims is close to zero—not the nearly one billion dollars in damages now asserted by Karma.[7] Karma has failed to demonstrate commercial success by *any party*—including Karma or the Company—that has used the alleged trade secrets at issue. Karma's alleged damages are based on commercialization timelines and projections of vehicle sales that have never been achieved, speculative and unreliable savings for research and development, and capital raises that have nothing to do with the alleged misconduct. As the Company's experts will prove at the estimation hearing, when Karma's theoretical sales figures are replaced with actual sales, Karma's real damages are near zero. The Company will also prove that Karma's assertion that the alleged theft of its trade secrets has saved the Company substantial research and development costs is wrong. The evidence will show that the Company used off-the-shelf technology for its infotainment system that varies little from industry standards. For these and other reasons, the Company will prove that Karma's damage claims are baseless.

14. Absent the automatic stay, a multi-week jury trial, including ten days of evidence, as well as jury selection, opening statements and closing statements, was set to begin in the Karma Action on September 5, 2023.[8] That trial would demand time and attention from the Company's current management to the detriment of the bankruptcy process (including personnel who would

---

[7] Karma Lift Stay Motion ¶ 1.

[8] *Karma Automotive LLC v. Lordstown Motors Corp.*, Case No. 8:20-cv-02104-JVS-DFM (C.D. Cal. Dec. 13, 2022) [Dkt. 437].

need to prepare for and attend trial), as well as significant resources for attorneys' fees, costs, and other expenses associated with the trial, post-trial motions, and a lengthy appeal process.

**II.     The Debtors' Chapter 11 Cases**

15.     On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On July 11, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

16.     The Debtors commenced the Chapter 11 Cases for the purpose of maximizing value for the Company by conducting a robust sale process, reducing its cash burn to preserve resources, and centralizing the claims asserted against the Company to efficiently resolve those claims and provide meaningful recoveries to stakeholders. Given the current financial condition of the Company and the need to maximize value on a timely basis, the Debtors have proposed a bid procedures timeline [D.I. 16] that would result in a consummation of the sale of its assets prior to confirmation of a plan of reorganization. Among other things, the Debtors propose that a sale hearing occur on or about September 12, 2023.

17.     In addition, the Debtors are working toward filing a proposed plan of reorganization, which they currently intend to file in the near future, which will provide for the distribution of the Debtors' assets (including sales proceeds and other cash on hand) to creditors

and stockholders in order of priority. The purpose of the plan will be both to distribute the Debtors' assets in an efficient manner and, if feasible, to preserve NOLs that can be used in an appropriate future transaction.

**BASIS FOR RELIEF**

I.   **The Fixing or Liquidation of the Karma Claim Would Unduly Delay the Administration of the Chapter 11 Cases.**

18.  Section 502(c) of the Bankruptcy Code mandates the estimation of all contingent or unliquidated claims which, unless fixed or liquidated, would unduly delay the administration of a debtor's estate, and provides, in pertinent part, as follows:

> "There shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . ."

11 U.S.C. § 502(c).

19.  Estimation is mandatory when the prerequisites have been met. *See In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005) ("[The estimation provision] of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the [fixing or liquidation] of the particular claim would 'unduly delay the administration of the case.'"(citing 11 U.S.C. § 502(c)); *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011-12 (4th Cir. 1986) (noting that the "duty of estimation . . . is not a permissive one" where liquidation would unduly delay reorganization); *In re A & B Assocs.*, L.P., No. 17-40185-EJC, 2019 WL 1470892, at *35 (Bankr. S.D. Ga. Mar. 29, 2019) ("[N]umerous bankruptcy courts have held that [e]stimation pursuant to Bankruptcy Code section 502(c) is mandatory where adjudication of the claim would unduly delay the administration of the bankruptcy case." (quotation marks omitted)).

20. Those prerequisites to estimation are (i) the claim must be contingent or unliquidated; and (ii) fixing or liquidating the claim would unduly delay the administration of the case. 11 U.S.C. § 502(c). Those criteria are plainly satisfied here. <u>First</u>, the Karma Claim is both contingent and unliquidated. An "unliquidated claim" is "[a] claim for which a specific value has not been determined" and a "contingent claim" is "[a] claim that has not yet accrued and is dependent on some future event that may never happen." *Denunzio v. Ivy Holdings, Inc. (In re E. Orange Gen. Hosp., Inc.)*, 587 B.R. 54, 59 n.10 (D.N.J. 2018) (quoting Black's Law Dictionary 282 (10th ed. 2014)); *see also First City Beamont v. Durkay (In re Ford)*, 967 F.2d 1047, 1051 (5th Cir. 1992) (contingent claim "is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to alleged creditor" (citation omitted)); *In re Audre, Inc.*, 202 B.R. 490, 492-93 (Bankr. S.D. Cal. 1996) ("[W]hether a debt is liquidated or not … does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation." (citation omitted)). Here, the Karma Claim is clearly unliquidated, as no specific value of the claim has been determined. While Karma asserts that it is entitled to nearly one billion dollars in damages, this amount is hotly contested and the Debtors do not believe that anything is owed to Karma. The Karma Claim is also contingent, as no court has found that the Company is liable for the claims asserted by Karma. *See In re W.R. Grace & Co.*, 446 B.R. 96, 130 n.58 (Bankr. D. Del. 2011) (finding claim contingent where it was dependent on a finding of liability).

21. <u>Second</u>, the fixing or liquidation of the Karma Claim would unduly delay the administration of the Debtors' estates. The alleged size of the Karma Claim by itself threatens to derail the Chapter 11 Cases. Indeed, the Karma Claim will have a material impact, not only on the amount, but on the timing, of distributions to creditors and stockholders. Absent estimation,

9

"the enormity of litigation facing" the Debtors "would undoubtedly cause undue delay in the administration of the bankruptcy case and could possibly be the death knell for the successful reorganization of [the] debtor." *See In re G-I Holdings*, 323 B.R. at 599-600; *In re Chemtura Corp.*, 448 B.R. 635, 649-50 (Bankr. S.D.N.Y. 2011) (estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine."); *In re Rhead*, 179 B.R. 169, 172-73 (Bankr. D. Ariz. 1995) (where a plan is pending and depends on resolution of an unliquidated claim, proceedings other than estimation would cause undue delay).

22. Estimation of the Karma Claim is also critical for stakeholders to understand the economics of any plan of reorganization. Given the enormous sum sought by Karma, estimation also is needed to allow stakeholders to better understand the potential distributions under the plan and make an informed vote on a timely basis. *See, e.g., Official Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Fed.-Mogul Global, Inc.)* 2005 U.S. Dist. LEXIS 17569, at *58 (D. Del. 2005) ("The object of [an estimation] proceeding is to establish the estimated value of a creditor's claim for purposes of formulating a reorganization plan"); *In re Rhead*, 179 B.R. at 172-73 ("undue delay" standard met where court had to determine whether plan was acceptable to claimants and otherwise satisfied Section 1129); *In re Interco Inc.*, 137 B.R. 993, 998 (Bankr. E.D. Mo. 1992) (granting estimation because it "would be difficult for this Court to determine the feasibility of a plan until the allowed amount of the [creditor's] claim is determined").

23. Awaiting the outcome of a multiweek jury trial, the necessary post-trial motions and the almost certain appeal that will follow regardless of result would unduly delay the administration of the Debtors' estates. The Third Circuit has held that jury trials "usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient

10

RLF1 29296564v.1

evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982).  Karma has also acknowledged that any jury verdict would likely be subject to a (lengthy) appeal.  Karma Lift Stay Motion ¶ 31 ("Karma is only seeking to modification of the stay [*sic*] to complete the trial and obtain a final, non-appealable judgment"); *id.* at 14 ("Karma respectfully requests that the Court modify the automatic stay to permit Karma to complete the District Court Case litigation, including all appeals, against Debtor and all Individual Defendants.").

24.     When considering the delay associated with allowing Karma to liquidate its claim in District Court, it is necessary for this Court to consider not only the jury trial itself, which will last over two weeks at least, involve substantial pretrial preparation, and cost over $2 million, but also the months of post-trial motions and the year or more for an almost certain appeal.  Diversion of the Company's limited resources for expensive and protracted litigation will deplete the amount of funds available to the Debtors' stakeholders.  The Company anticipated that legal spend would increase substantially because of significant activity expected to occur, including preparing for and attending depositions, continuing pre-trial motion practice, trial preparation, and trial.  Litigation would also detract from the Company's ability to focus on the restructuring and the Chapter 11 Cases, including key objectives such as the Debtors' prospective sale process and negotiations leading to a chapter 11 plan.  Put simply, the longer the Chapter 11 Cases drag on, and the greater the costs the Debtors must shoulder to litigate the Karma Claim, the less recovery to stakeholders.  This is why courts in this district and others regularly estimate claims.  *See, e.g., In re PBS Brand Co.*, LLC, No. 20-13157 (JKS) (Bankr. D. Del. Jun. 27, 2022) [D.I. 817] (granting motion to estimate unliquidated unsecured claim of JP Morgan); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Aug. 26, 2021) [D.I. 1668] (granting motion to estimate claims); *In re AMR*

11

*Corp.*, 2021 Bankr. LEXIS 1867, at *14 (Bankr. S.D.N.Y. July 14, 2021) (estimating claims where "years of delay" due to appeals would prevent distributions under a plan) (citing *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("Estimation, authorized under section 502(c) of the Code, provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.")).

25. Estimation is also particularly appropriate here because Karma has indicated that it intends to object to,[9] but may also participate in, the Debtors' sale process. As an initial matter, the Debtors have proposed an efficient sale process to maximize recoveries to stakeholders. The Debtors cannot delay the sale process for a jury trial that would start in early September at the earliest. An estimation would allow the sale process to proceed as proposed. Further, Karma has made clear that it intends to object to the sale based on the same facts on which it bases its claims. As a result, as part of the sale process, the Court may be required to rule on the exact same issues that will be addressed by the District Court, giving rise to the potential for inconsistent rulings and forcing the Debtors to litigate the same issues in two separate forums or delay the sale process. Estimation is intended to avoid these exact issues.

26. Finally, estimating the Karma Claim could be a critical factor in determining how Karma participates in the sale process. But the sale process will be over before the Karma Claim would be liquidated in the District Court. Waiting for a jury trial, post-trial briefing and appeal to liquidate the Karma Claim is not feasible.

---

[9] *See* Karma Lift Stay Motion at ¶ 24.

## II. The Court Should Establish Procedures for Estimation

27. Section 502(c) does not prescribe the method for estimating a claim, and courts therefore have discretion to utilize any valuation method that best suits the circumstances of the case at hand. *See, e.g.*, *Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (stating that "a bankruptcy court may use whatever method is best suited to the circumstances"). "[W]hen estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (S.D.N.Y. 2007) (citation and internal quotations omitted). The clearly stated purpose for allowing the estimation of claims is to "avoid undue delay in the administration of bankruptcy proceedings." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993); *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) ("Under 11 U.S.C. § 502(c), a claim may be estimated for purposes of allowance if it is unliquidated and liquidation would unduly delay the administration of the case.").

28. In addition, section 105(a) of the Bankruptcy Code affords courts wide latitude in effectuating the provisions of section 502(c), and provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) allows courts to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).

29. The Debtors have filed bid procedures and hope to file a plan of reorganization that meets the requirements for confirmation under the Bankruptcy Code in the near-term. Absent appropriate estimation procedures, the Karma Claim is unlikely to be resolved soon, which could create delay to the sale process and plan confirmation process. Among other things, Karma has expressed interest in participating in the sale process, but a determination of the size of Karma's claim would likely have an impact upon that participation. And the ability of holders of unsecured claims to make informed decisions about any plan could be impaired if the amount of the Karma Claim could range from zero to nearly one billion. Courts in this District and others have adopted claims estimation procedures, including expedited schedules, in the course of granting estimation orders. *See, e.g., In re CMTSU Liquidation, Inc. (f/k/a CIBER, Inc.)*, Case No. 17-10772 (BLS) (Bankr. D. Del. Sep. 29, 2017) [D.I. 668] (approving claims estimation procedures); *In re VeraSun Energy Corp.*, Case No. 08-12606 (BLS) (Bankr. D. Del. Nov. 19, 2009) [D.I. 2028] (approving expedited claims estimation procedures); *In re Motors Liquidation Co.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Dec. 15, 2010) [D.I. 8121] (authorizing a schedule for estimation proceedings).

30. The Karma Claim can be estimated with great efficiency. As Karma notes in its lift stay motion, discovery has been almost entirely complete with the exception of two depositions. There is no reason that work must be repeated. Any necessary documents can be quickly reproduced in this proceeding and used for estimation. The two remaining depositions can be quickly completed in this case.[10] The Karma Claim can then be estimated at a one-to-two day hearing. The Debtors respectfully propose the following schedule:

---

[10] The only reason that discovery is needed at all is the fact that the District Court's protective order limits use of discovery in that action to that proceeding alone. All that would be necessary is for the parties to reproduce a subset of that discovery in the Chapter 11 Cases, subject to an appropriate protective order that would provide for the use of that discovery in these cases.

14

| Date | Event |
|---|---|
| July 31, 2023 | Deadline for Service of Written Discovery Requests |
| August 10, 2023 | Deadline for Document Productions |
| August 17, 2023 | Concurrent Expert Report Deadline |
| August 24, 2023 | Expert Depositions |
| August 28, 2023 | Parties Submit Briefs on Estimation |
| Earliest date the Court is available | Evidentiary Hearing and Legal Argument |

31. The relief requested will prevent undue delay to the administration of the Debtors' estates, ensure that the sale process of the Company's assets remains on track, allow the Court to timely consider confirmation of a plan of reorganization, and ensure that the Debtors can effectuate distributions under a plan without undue delay. The Debtors request that the Court estimate the amount of the Karma Claim on the proposed expedited schedule.

**RESERVATION OF RIGHTS**

32. The Debtors reserve all rights. Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; (f) granting third-party beneficiary status or

15

bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.

## NOTICE

33. Notice of this motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Karma; (iii) the Committee and its counsel, once retained; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission (vi) the United States Attorney for the District of Delaware; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) any parties who have asserted liens against the Debtors' assets; and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

34. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form annexed as **Exhibit A**, granting the relief requested in this motion and such other and further relief as is just and proper.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: July 13, 2023<br><br>Respectfully submitted,<br><br>    */s/ Jason M. Madron*<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>Kevin Gross (No. 209)<br>Daniel J. DeFranceschi (No. 2732)<br>Paul N. Heath (No. 3704)<br>Amanda R. Steele (No. 5530)<br>Jason M. Madron (No. 4431)<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br>gross@rlf.com<br>defranceschi@rlf.com<br>heath@rlf.com<br>steele@rlf.com<br>madron@rlf.com | **WHITE & CASE LLP**<br>Thomas E Lauria (admitted *pro hac vice*)<br>Matthew C. Brown (admitted *pro hac vice*)<br>Fan B. He (admitted *pro hac vice*)<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>tlauria@whitecase.com<br>mbrown@whitecase.com<br>fhe@whitecase.com<br><br>David M. Turetsky (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>david.turetsky@whitecase.com<br><br>Jason N. Zakia (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, IL 60606<br>Telephone: (312) 881-5400<br>jzakia@whitecase.com<br><br>Roberto Kampfner (admitted *pro hac vice*)<br>Doah Kim (admitted *pro hac vice*)<br>RJ Szuba (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rkampfner@whitecase.com<br>doah.kim@whitecase.com<br>rj.szuba@whitecase.com<br><br>*Proposed Co-Counsel to Debtors and Debtors in Possession* |