## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Lordstown Motors Corp., *et al.*,[1] | ) | Case No. 23-10831 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline:** |
| | ) | **July 20, 2023 at 4:00 p.m.** |
| | ) | |
| | ) | **Re: D.I. 6, 75, 77, 106** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## SUPPLEMENT TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) PAY PREPETITION WAGES AND COMPENSATION; (II) CONTINUE CERTAIN EMPLOYEE BENEFITS AND INCENTIVE PROGRAMS; (III) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFITS; AND (B) GRANTING OTHER RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**" or "**Company**") in the above-captioned cases respectfully represent as follows in support of this supplement (the "**Supplement**") to *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, the Debtors to (I) Pay Prepetition Wages and Compensation; (II) Continue Certain Employee Benefits and Incentive Programs; (III) Continue Certain Health And Insurance Benefits;*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

*and (B) Granting Other Related Relief the Debtors and Debtors in Possession* [D.I. 6] (the "**Motion**")[2]:

## Background

1.　　　On the Petition Date, the Debtors filed the Motion, which sought authority, in the exercise of the Debtors' discretion, to pay and honor certain prepetition employee claims and obligations, continue benefit programs, and effectuate additional relief relating to the Prepetition Employee Obligations, including, but not limited to, (i) pay accrued prepetition Wages, severance and prepetition fees associated with the foregoing, (ii) pay all withholding and payroll-related taxes associated with the foregoing for each jurisdiction where the Debtors have Employees, (iii) continue the Debtors' Employee Benefits and Incentive Programs, including 401(k) Plan Match and Safe Harbor Payment, in an amount not to exceed approximately $1.5 million on an interim basis and approximately $1.8 million on a final basis (inclusive of the interim amount).

2.　　　On June 29, 2023, the Court entered an order approving the Motion on an interim basis [D.I. 75] (the "**Interim Order**"), (i) approving the relief requested in the Motion and (ii) scheduling a final hearing on the relief requested in the Motion for July 27, 2023 at 9:30 a.m. (Eastern Daylight Time) (the "**Final Hearing**").  On July 13, 2023, the Court entered an amended interim order [D.I. 106] (the "**Amended Interim Order**") at the Debtors' request.[3]

3.　　　A proposed form of order granting final relief under the Motion as modified by this Supplement is annexed hereto as **Exhibit A** (the "**Proposed Final Order**").  A redline of

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the respective meanings ascribed to such terms in the Motion.

[3] As set forth below, on July 12, 2023, after consulting with the U.S. Trustee, the Debtors submitted an amended proposed Interim Order [D.I. 105] to permit the Debtors to make payments for paid time off of up to $100,000 to the extent required under applicable law.  The Court entered the Amended Interim Order the following day.

the Proposed Final Order against the Amended Interim Order and the original proposed final order filed with the Motion are annexed hereto as **Exhibit B** and **Exhibit C** respectively.

4.      The Debtors are filing this Supplement to ensure that the Court and all parties have the best information available in connection with the relief being sought by the Debtors in connection with the Final Hearing.

### Severance

5.      At the first day hearing on the Motion, the Court inquired about the Debtors' prepetition practice of paying certain former non-insider Employees discretionary severance payments in an amount no greater than four weeks of wages for such former Employees ("**Severance Payments**").  The Court asked that the Debtors submit the amount of Severance Payments that the Debtors were seeking authority to make during the Interim Period and on a final basis.

6.      Following the hearing, the Debtors reviewed their records and consulted with their advisors regarding the applicable interim and final amounts for the Severance Payments. Although the Debtors have made no final determinations regarding their workforce, the Debtors estimate that, subject to Court approval as part of the Motion and this Supplement, they may make Severance Payments no greater than $141,500 on an interim basis and no greater than $325,000 on a final basis to approximately 50 Employees who are not subject to WARN requirements,[4] do not have a severance agreement, and are not Insiders of the Debtors.  Consistent with the Debtors' prepetition practice, these amounts would be discretionary, would represent between one to four

---

[4] In the event that the Debtors take further action to reduce their workforce in a manner that implicates WARN requirements, the Debtors intend to issue WARN notices to applicable employees and to otherwise comply with such requirements.  For the avoidance of any doubt, however, the employees to which the Debtors propose to make Severance Payments pursuant to the requested relief would not be subject to WARN requirements.

weeks of wages for the affected employees (as determined by the Debtors), and would be conditioned upon execution of a release of claims against the Debtors by the recipients. The Debtors do not seek authority to pay any former Employees Severance Payments in excess of the Priority Cap.

7.      The Interim Order authorized the Debtors to make potential Severance Payments to non-Insider Employees not to exceed $141,500 during the Interim Period. To date, the Debtors have not made any Severance Payments pursuant to the Interim Order other than a Severance Payment up to the Priority Cap to one Employee who was terminated prior to the Petition Date and was subject to a severance agreement with the Debtors.[5] The Debtors, by this Supplement and in accordance with the Court's request at the first day hearing, have modified the final relief requested in the Motion to include $372,635 for the Severance Payments (inclusive of any unpaid severance amounts carried over from the Interim Period) as reflected in the Proposed Final Order.

**401(k) Plan Safe Harbor Payment**

8.      Additionally, as the Debtors described in the Motion, the Debtors' 401(k) Plan is a standard safe harbor plan designed to comply with ERISA requirements. As is typical for such plans, the Company provided participants with 401(k) Plan Match in accordance with the Debtors' 401(k) Plan, which were subject to true-ups in the form of a Safe Harbor Payment once the Company determined its final matching obligations. Consistent with past practice, the terms of the 401(k) Plan, and its ordinary course of business, the Company completed its analysis of its final matching obligations and initiated the Safe Harbor Payment to its third party 401(k)

---

[5] The Debtors intend to make an additional approximately $15,000 in Severance Payments on July 14, 2023 pursuant to their interim authority.

administrator TransAmerica Corporation ("**TransAmerica**") prior to the Petition Date which would process payment to participants according to their entitlements. The Safe Harbor Payment totaled approximately $120,000 for 63 employee participants. After the Debtors' prepetition initiation of the Safe Harbor Payment, the Debtors were unable to halt or reverse TransAmerica's internal process, which was entirely outside of the Debtors' control. Moreover, the transaction record with TransAmerica reflects a transaction date that is prior to the Petition Date (*i.e.*, June 26, 2023) and participant records reflect that they received their funds on the Petition Date. Nonetheless, while the payment was reflected in the Employee participants accounts as of the Petition Date, the payment was not actually debited from the Debtors' account until two days after the Petition Date. Given that all of the actions of the Debtors' necessary and sufficient to make the payment occurred prepetition, the Debtors submit that the Safe Harbor Payment was submitted prepetition and should not count against the Priority Cap.

9.    As set forth in the Motion, because the Safe Harbor Payment amount was not debited from their accounts until after the Petition Date, out of an abundance of caution, the Debtors treated – without conceding – the Safe Harbor Payment as applying to the Priority Cap and voluntarily held back a portion of wages to three members of their senior leadership team to ensure that they did not receive payments in excess of the Priority Cap during the Interim Period.[6] As further set forth in the Motion, the Debtors have sought authorization to make payments exceeding the Priority Cap to the extent that the Safe Harbor Payment were to be construed as applying to the Priority Cap. Accordingly, the Debtors, by this Supplement, have amended the Proposed Final Order to reflect payment of Wages in excess of the Priority Cap in the amount of approximately $15,800 in the aggregate to account for the prepetition wages that were not paid as

---

[6] The withheld amounts range between approximately $2,800 and $7,500.

a result of the Safe Harbor Payment to the extent that the Safe Harbor Payment applies to the Priority Cap.

10.     The Debtors submit that such relief is appropriate.  As detailed above, the Safe Harbor Payment is a typical feature of a standard safe harbor 401(k) plan, was initiated prepetition, had a transaction date that was prepetition, could not be reversed by the Debtors once initiated, and – the Debtors submit – should therefore be construed as a prepetition payment not subject to the limitations of the Priority Cap.  Regardless, the Debtors respectfully submit that the Court need not decide the issue and should grant the relief requested (irrespective of whether the Priority Cap applies) because the Safe Harbor Payment is part of the Debtors' 401(k) Plan benefits (and debtors are typically permitted to provide 401(k) benefits to employees), and the amounts by which the Debtors would seek to exceed the Priority Cap (if the Priority Cap were to apply) are small, particularly as compared to the work that is to be completed by the applicable Employee participants during the course of these Chapter 11 Cases.

**Paid Time Off**

11.     Lastly, on July 12, 2023, the Debtors filed the proposed Amended Interim Order to permit the Debtors to pay accrued but unused Paid Leave upon termination as required under applicable law up to an interim cap of $100,000.  [D.I. 105].  On July 13, 2023, the Court granted the relief and entered the Amended Interim Order.  Although no final determinations have been made regarding the Debtors' workforce, the Debtors may implement reductions of Employees located in California or Employees in California may voluntarily determine to terminate their employment with the Debtors during the pendency of the Chapter 11 Cases.  Under California state law, the full amount of the Employee's Paid Leave is due upon the involuntary termination of employment and is due within three days upon voluntary termination.  Failure to

6

timely pay the Paid Leave may cause the Debtors to incur fines and risk potential personal liability for the Debtors' directors and officers. Accordingly, the Debtors, by this Supplement, have amended the Proposed Final Order to provide authorization to pay all accrued but unpaid Paid Leave, without regard to the Priority Cap, to the extent required by applicable law, including but not limited to, such amounts that relate to accrued but unused Paid Leave upon voluntary or involuntary termination of Employees, not to exceed $410,000.

12.     As further discussed in the Motion and the First Day Declaration, authorizing the Debtors to honor their Prepetition Employee Obligations is both in the best interests of the Debtors and necessary to avoid immediate and irreparable harm to the Debtors' estates. In particular, authorizing the Debtors to pay the Severance Payments and Paid Leave to the non-Insider Employees will help Employees' morale and loyalty at a time when Employee support is critical to the Debtors' businesses. In addition, authorizing the Debtors to pay Paid Leave will permit the Debtors to comply with California law avoid incurring fines under California law, which will result in a lower claims pool.

13.     Accordingly, the Debtors, by this Supplement, have amended the Proposed Final Order to reflect an increase of the cap to pay Prepetition Employee Obligations on a final basis from $1,823,400 to $2,484,200. The Debtors intend to submit the Proposed Final Order to the Court in advance of the Final Hearing.

## NOTICE

14.     Notice of this Supplement  has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Foxconn; (iii) the official committee of unsecured creditors in the Debtors' chapter 11 cases (the "**Committee**") and its counsel, once

retained;[7] (iv) the Internal Revenue Service; (v) the United States Attorney for the District of Delaware; (vi) Paylocity; (vii) TransAmerica; (vii) Cigna; (ix) Principal Life; and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

*[Remainder of page intentionally left blank.]*

---

[7] On July 11, 2023, the U.S. Trustee appointed the Committee. *See* D.I. 99. To the best of the Debtors' knowledge, information, and belief, as of the filing of this certification of counsel, the Committee has not retained counsel to represent it in these Chapter 11 Cases as of the filing of this Supplement.

Dated: July 13, 2023

Respectfully submitted,

_/s/ Jason M. Madron_
**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

**WHITE & CASE LLP**

Thomas E Lauria (admitted _pro hac vice_)
Matthew C. Brown (admitted _pro hac vice_)
Fan B. He (admitted _pro hac vice_)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted _pro hac vice_)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted _pro hac vice_)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted _pro hac vice_)
Doah Kim (admitted _pro hac vice_)
RJ Szuba (admitted _pro hac vice_)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

_Proposed Co-Counsel to Debtors and
Debtors in Possession_