IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>                     Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Docket No. 122** |

**DECLARATION OF ADAM KROLL IN SUPPORT OF THE DEBTORS'
OBJECTION TO KARMA AUTOMOTIVE LLC'S MOTION
FOR RELIEF FROM THE AUTOMATIC STAY**

I, ADAM KROLL, declare:

1. I am Executive Vice President and Chief Financial Officer of Lordstown Motors Corp. ("**LMC**" or the "**Company**") and have served in this capacity since October 25, 2021. I submit this declaration in support of the Debtors' objection to *Karma Automotive LLC's Motion for Relief from the Automatic Stay* [D.I. 82].

2. As part of my responsibilities as Executive Vice President and Chief Financial Officer, I am familiar with the Debtors' day-to-day operations, books and records, and business and financial affairs, including pending litigations against the Company and applicable indemnification and insurance policies. Unless indicated otherwise, the facts set forth herein are based upon my personal knowledge, my review of relevant documents, my discussions with other members of senior management, information provided to me by employees working under my supervision, or my familiarity with the Company's operations. If requested, I am able to

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

3. From its inception, the Karma Action has required the Company to expend significant time and resources in defense of Karma's claims. The Company has engaged joint litigation counsel, Baker Hostetler LLP, to represent both LMC and the Individual Defendants in the Karma Action. The Company has also engaged other professionals on behalf of both LMC and the Individual Defendants, including their damages expert, James E. Pampinella. The attorneys' fees, litigation costs, and other expenses resulting from the Karma Action have been substantial.

4. To date, the Company has paid all such expenses on behalf of the Company and the Individual Defendants and, absent a stay, will remain responsible for any attorneys' fees, costs, and other litigation expenses incurred going forward. The Debtors have contractual indemnification obligations as to the Executive Defendants to the fullest extent permitted by Delaware law and are currently assessing the extent to which such obligations extend to the Employee Defendants named in the Karma Action.

5. The Company denies Karma's allegations and has vigorously defended the Karma Action. Karma's claims are critical to the Debtors' ability to restructure, as Karma's asserted damages—which Karma claims are $913,235,982, plus fees, costs, and punitive damages—if a claim is allowed in that amount, would be the largest claim against the Debtors' estates and would massively dilute the interests of all other creditors. Over the course of the litigation, the Company has identified factual evidence and expert testimony demonstrating that, even if Karma's claims had merit, the maximum value of those claims would be a small fraction of the nearly one billion dollars in damages Karma asserts. Karma's damages are premised on

commercialization timelines and projections of vehicle sales that are speculative and have never been achieved, including (i) hypothetical sales figures, (ii) alleged savings of research and development costs, and (iii) the amount of capital the Company raised, unrelated to the misconduct alleged by Karma. The Company has submitted expert evidence in the District Court demonstrating that replacing theoretical sales figures with actual sales figures proves that Karma's real damages are far closer to zero than to the amounts Karma seeks.

6. The Company's senior management, including myself and other key personnel, have been deeply involved in the litigation, including through fact and expert discovery, motion practice, and pre-trial and initial trial preparation. Prior to the Petition Date, a multi-week jury trial, including ten days of evidence, as well as jury selection, opening statements, and closing arguments, was set to begin in the Karma Action on September 5, 2023. Significant trial preparation and pre-trial tasks remained outstanding when the Debtors filed their petitions, including Karma's depositions of both Mr. Pampinella and myself. If the stay is lifted, the parties will need to not only complete these depositions but also work hard to prepare for trial. Given the preparation still required for the action to be trial-ready, the time elapsed since the imposition of the automatic stay, and the Company's focus on its reorganization going forward with the jury trial starting September 5 would place a great burden on the Company.

7. The cost of litigating the Karma Action has taxed and, absent the stay, will continue to tax the Debtors' limited financial resources. The Debtors anticipate that, should the action proceed, legal spend will increase because of significant activity expected to occur in the near term, including preparing for and attending those depositions, continuing pre-trial motion practice, trial preparation, and trial. The attorneys' fees, costs, and other expenses associated with these efforts would be approximately $2.5 million. This figure does not account for post-

trial briefing or the lengthy appeals process likely to follow, which will require the Debtors to incur additional fees, costs, and expenses before a final, non-appealable judgment would be entered.

8. Since the Petition Date, the Debtors have been working diligently toward filing a proposed plan of reorganization in the near future. To that end, the Debtors have proposed a sale process that would conclude with a sale hearing on or about September 12, 2023, and intend to vigorously pursue the confirmation of a plan that will provide for distributions from the Debtors' assets (including cash, sale proceeds, and litigation claims against Foxconn) to creditors and, if there is sufficient value, stockholders. These tasks are resource-intensive, and they cannot be accomplished solely by the Debtors' counsel and other advisors. Much of the Debtors' senior leadership team, including myself, has dedicated and continues to dedicate a significant amount of time to these chapter 11 cases. With the Debtors' headcount down nearly 50 percent, the automatic stay, along with the District Court's order staying Karma's claims against the Individual Defendants, has made this possible.

9. It is vital that members of the Company's leadership remain focused on our ultimate goal of working with counsel and other advisors to complete a successful restructuring. The Company's ability to focus on the restructuring is especially crucial at this juncture, when key objectives such as the Debtors' prospective sale process and negotiations leading to a chapter 11 plan still lie ahead. If the Karma Action is reinstated, the Debtors' ability to dedicate the time and resources necessary to complete a successful restructuring will be significantly compromised. In addition to the costs the Company will incur in connection with ongoing litigation and appeals, the Karma Action will divert the Debtors' time, attention, and resources, including the efforts of their leadership team and other personnel, away from critical

restructuring tasks such as the Debtors' sale process.

10. Karma's claims will have a material impact, not only on the amount, but on the timing, of distributions to stakeholders, including other prepetition litigation creditors. Waiting for the Karma Action to be resolved through litigation will impede the Debtors' ability to formulate, confirm, and implement a restructuring plan and will ultimately reduce the value of recoveries to creditors and other stakeholders. If the Company is forced to litigation the Karma Action as opposed to resolving Karma's claims through estimation in this Court, the time it will likely take to receive a final, non-appealable judgment will undermine the Debtors' ability to right-size the claims pool, negotiate and finalize a plan, and make distributions to creditors. The resulting delay will extend beyond the efficient timeline the Debtors have proposed. Fixing Karma's claim through litigation would also unduly delay the administration of the Debtors' estates, potentially jeopardizing the expedited sales process proposed by the Company.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed:    July 19, 2023
             Farmington Hills, Michigan

                                        /s/ Adam Kroll
                                        Adam Kroll