# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LORDSTOWN MOTORS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 16**<br><br>**Hearing Date: July 27, 2023, at 9:30 a.m. (Eastern)**<br>**Obj. Deadline: July 20, 2023, at 4:00 p.m. Eastern)** |

**OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES, (B) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) GRANTING OTHER RELATED RELIEF; AND (II) (A) AUTHORIZING THE DEBTORS TO ENTER INTO A DEFINITIVE PURCHASE AGREEMENT AND (B) GRANTING OTHER RELATED RELIEF**

Karma Automotive LLC, a California limited liability company ("Karma"), by and through its undersigned counsel, submits this objection ("Objection") to Debtors' Motion for Entry of an Order (I) (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief; and (II) (A) Authorizing Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief ("Sale Procedures Motion"). (Dkt. No. 16). In support of its Objection, Karma respectfully states as follows:

---

[1] Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

**INTRODUCTION**

1. The Court should deny Debtors' Sale Procedures Motion because Debtors' alleged property interests in the intellectual property are at issue in the now-stayed litigation ("District Court Case") pending before the United States District Court for the Central District of California ("District Court") and therefore must be decided through an adversary proceeding or lifting of the automatic stay. More specifically, pursuant to Bankruptcy Rule 7001(2) and case law from the Third Circuit and Delaware bankruptcy courts, the Debtors must commence an adversary proceeding against Karma in order to determine the Debtors' property rights in the intellectual property before any sale can occur pursuant to Section 363. Put another way, the fact that Karma's interests in the intellectual property are disputed by the Debtors is irrelevant – because Debtors' interests in the intellectual property are disputed, Section 363(f) is insufficient to permit Debtors to sell the intellectual property as Bankruptcy Rule 7001(2) first requires an adversary proceeding.

2. Further, Debtors' Sale Procedures Motion should be denied because it is a bad faith attempt by Debtors to free themselves of the numerous rulings by the District Court with respect adverse inferences, the limitation of submission of evidence at trial, and limitations on substitution of its damages expert report, which orders arise from conduct including the destruction and withholding of relevant evidence. The Court should not permit such an abuse of the judicial process.

3. Finally, there is no urgency for the Court to consider the Sale Procedures Motion at this time. The undisputed facts establish that Debtors have ceased operations, have no secured creditor pressing for a sale, have no prospective for a potential buyer after nearly two years of marketing efforts, and have not yet filed schedules, let alone a plan and disclosure statement. In fact, because Debtors must also commence an adversary proceeding pursuant to Bankruptcy Rule

7001(2), the only way to expedite a sale is for the Court to modify the automatic stay to permit the scheduled September 5, 2023 trial to occur.

4. For these reasons, and as more fully set forth below, the Court should deny the Sale Procedure Motion, deny Debtors' Estimation Motion (Dkt. No. 108), and grant Karma's pending Motion for Relief from the Automatic Stay (Dkt. No. 82).[2]

## BACKGROUND

5. Karma commenced the litigation against Debtors in the District Court, Case No. 20-cv-02104 ("District Court Case") on October 30, 2020 based on well-documented claims that Debtors and eleven (11) of its current and former officers, executives, engineers, contractors and related entities (collectively, the "Individual Defendant(s)") engaged in a scheme to poach Karma's employees and willfully and maliciously misappropriate the confidential designs and computer source code for Karma's electric vehicle in order to expedite development of Debtors' long-delayed sole product – an electric vehicle called the Endurance. Karma seeks injunctive relief and damages against Debtors and the Individual Defendants based on claims including willful and malicious misappropriation of trade secrets, violation of the computer fraud and abuse act, and breach of contract. After nearly three years of contentious litigation, discovery involving the production of over 12 million documents, the production of over 500,000,000 lines of source code, more than 50 depositions, and dozens of pretrial motions including summary judgment, the District Court set a multi-week jury trial commencing on September 5, 2023.

---

[2] Karma incorporates by reference the facts and arguments set forth in its pending Motion for Relief from the Automatic Stay (Dkt. No. 82) and it contemporaneously filed Objection to Debtors' Claim Estimation Motion.

A. **The Parties in the District Court Case.**

6. Karma manufactures luxury electric vehicles, components, hardware, and software and maintains its principal place of business in Irvine, California. Karma is licensed to conduct business in California and conducts business throughout the United States.

7. Debtors manufactured electric vehicles and maintain their principal place of business in Lordstown, Ohio, and also conducts business in Michigan and California.

8. The Individual Defendants are residents of the States of California, Ohio, and North Carolina and include Debtors' former Chief Executive Officer, Debtors' former Chief Operations Officer, Debtors' former Chief Technology Officer, Debtors' former Chief Production Officer, and several current and former Debtors employees.[3]

B. **Debtors and the Individual Defendants' Misappropriation of Karma's Trade Secrets.**

9. As of 2019, Debtors had yet to finalize a working vehicle for sale to the public, were under increasing scrutiny for their failure to do so, and became subject to an investigation by the Securities and Exchange Commission for misrepresentations about alleged "pre-orders" for their products.[4]

10. Faced with pressure from investors, regulatory authorities, and the general public about its significant development and production delays, Debtors decided to take a shortcut and steal Karma's trade secrets. By doing so, Debtors hoped to avoid—in the words of their own executives—millions of dollars in costs, and months, if not years, of development time.

---

[3] There is also one other corporate defendant – Punak Engineering, Inc., a California corporation, which is owned by Stephen Punak, one of the Individual Defendants.

[4] Debtors are now subject to a litany of securities class actions and stockholder derivative lawsuits. *See* Debtors' First Day Declaration (Dkt. No. 15, ¶¶ 54-57).

11. Debtors accomplished their theft by approaching Karma in 2019 about a partnership. In the high-tech and highly-competitive electric vehicle industry, the "infotainment" systems offered by manufacturers are a key distinguishing feature and selling point. The infotainment system collects, displays, and allows a driver to interact with all of the vehicle's informational and entertainment systems, often through a prominently-placed interactive touch-screen contained in the vehicle's front dash. Karma has years of experience developing cutting-edge infotainment systems, and Debtors desperately needed one. When they approached Karma, Debtors claimed to be interested about entering into a development partnership with Karma for an infotainment system. Through that feigned interest, Debtors executed a letter of intent ("LOI") and entered into a five-month "due diligence" period with Karma's engineering and project management staff, culminating in a fraudulent "letter of intent," and a promise by Debtors to issue payments to Karma in short order.

12. The courtship was a ruse and the promised check never arrived. Instead, Debtors used those five months to begin poaching and onboarding key Karma employees, and to steal Karma's confidential information and trade secrets—not just about the infotainment system being developed, but ***about every aspect of Karma's business***. This included software source code, bills of materials with confidential price and part numbers, highly technical system and software requirement documents outlining in detail Karma's electrical architecture and power moding system, and Karma's entire highly confidential product development system.

13. More specifically, on July 21, 2020, mere weeks before Debtors terminated the LOI, Debtors' Chief Engineer Darren Post ("Post") emailed Richard Schmidt ("Schmidt"), Debtors' Chief Production Officer, to "propose hiring [Karma's Director of Engineering] Joe Durre ("Durre")" and Karma employees working under his supervision to create Debtors' "west

coast infotainment / connectivity team," stating that he and Individual Defendant "Steve [Burns]" had "discussed this strategy," which would purportedly enable Debtors to "get [its] infotainment team for ½ the cost (labor without Karma costs or licensing fee)." (Dist. Ct. Dkt. No. 72, ¶ 78). On July 24, 2020, Post again emailed Schmidt, forwarding Durre's resume, stating that hiring Durre would allow Debtors to "own the IP and avoid spending $5-6 million with Karma," and sending the organization chart Post "developed with" Durre that outlined "key individuals from [Durre's Karma] team." (*Id.* at ¶ 79). Days later, on July 26, 2020, Durre emailed Post from his personal email account providing a "synopsis" for each of the Karma employees he intended to solicit for the Debtors' "west coast infotainment" team. (*Id.* at ¶ 80). On July 28, 2020, Post followed-up with Durre by text message, asking Durre to send him "the leanest organization needed to execute the program." (*Id.* at ¶ 81). Excited by the strides they had made in exploiting Karma's personnel and know-how, Post and Durre conspired that, if "[Debtors] owns all of the IP . . . ***it tallies into the billions***." (*Id*. at ¶ 81) (emphasis added).

14.    On August 1, 2020, Durre received an offer letter from Debtors to become their Director of Software and, by August 3, 2020, Durre was enrolled in Debtors' payroll. (*Id.* at ¶ 83 & Ex. 15). Just days later, after harvesting Karma's trade secrets for months, Debtors abruptly terminated the LOI on August 6, 2020. (*Id.* at ¶ 71). That same day, Post emailed Debtors executive Jonathan Wood explaining, "I hired Joe Durre but it must never be mentioned to Karma." (*Id.* at ¶ 85). Post further stated that, because Durre was "still with Karma . . . if he is on a call with Karma peopled involved, treat him like Karma. ***To avoid lawsuits, we must not let Karma know***." (*Id.*) (emphasis added). The next day, Durre texted Post, instructing him to ensure that Wood did not "mention [Durre] being with [Debtors] to anyone connected with Karma." (*Id.* at ¶ 86).

15. Despite becoming an employee of the Debtors in early-August 2020, Durre withheld this fact from Karma and continued to work as an employee of Karma *and* Debtors concurrently *for nearly one month*. (Dist. Ct. Dkt. Nos. 129-1 at p. 4; 129-3 at ¶ 32). What is more, between July 28, 2020 (just a few days before he received the offer of employment from Debtors), and September 1, 2020 (the date he resigned from Karma), Durre utilized removable storage devices, cloud storage services, and his personal email account to take various Karma files containing Karma trade secrets, including valuable, non-public information regarding Karma's bills of materials ("BOMs"), financial and planning strategies, project specifications, software information, and vendor and pricing information. (Dist. Ct. Dkt. Nos. 129-3 at ¶ 33; 72 at ¶¶ 91-93). Individual Defendant Hong Xin "George" Huan ("Huan") similarly worked for both companies for a period of time and copied to external storage devices various files containing Karma trade secrets—including specifications and blueprints for Karma hardware and software—from June 2, 2020 until August 27, 2020, one day before the termination of his employment from Karma. (Dist. Ct. Dkt. No. 72 at ¶¶ 25, 100).

16. Discovery obtained by Karma in the District Court Case further exposed the alarming extent of Debtors and the Individual Defendants' theft of Karma trade secrets and use of the same in its electric vehicle. (Dist. Ct. Dkt. No. 129-1 at 4-5). In many instances, it appears that all Debtors initially did was delete the "Karma" logo and name and otherwise copied entire documents nearly verbatim. As just a few examples, documents produced by Debtors in the District Court Case revealed that Debtors misappropriated Karma's power moding specifications, one of the most critical components to Karma's vehicle design, which guide how power is routed through an electric vehicle. (Dist. Ct. Dkt. No. 129-4 at ¶¶ 26-30). Significantly, a comparison of Debtors' own power moding specification produced in the District Court Case revealed that *entire*

*sections* of Debtors' specification were copied ***word-for-word*** from Karma's specification. (Dist. Ct. Dkt. No. 129-1 at 7-8). Documents produced by Debtors in discovery further evinced that ***every*** iteration of Debtors' electrical/electronic ("EE") system architecture—the design of how various vehicle components are connected to facilitate power distribution—includes Karma's improvements to that architecture proposed during the Endurance Project, despite Debtors' obligation to cease using that information after it terminated the Project. (*Id*. at 16).

17. Similarly, Debtors produced during discovery various documents that incorporate Karma-specific details from Karma's product development system, a unique roadmap for Karma's entire enterprise process. (Dist. Ct. Dkt. Nos. 129-1 at 14-15; 129-4 at ¶¶ 80-83). Forensic investigation and discovery in the District Court additionally revealed Debtors' and Individual Defendants' unlawful copying of Karma's source code developed for Karma's next-generation infotainment and engineering tools. (Dist. Ct. Dkt. No. 129-4 at ¶¶ 66-67). Forensic analysis showed that, almost immediately after they joined Debtors, Individual Defendants Huan, Stephen Punak, Christopher Kim, Bei Qin, and Dan Zhihong Huang—who were responsible for creating Karma's source code for the Endurance Project—began depositing hundreds and sometimes ***thousands***, of lines of source code in Debtors' source code repository on a daily basis. (Dist. Ct. Dkt. No. 72 at ¶¶ 102-105). By comparison, the amount of source code typically created on a daily basis, even under the best circumstances, is a few dozen lines. (Dist. Ct. Dkt. No. 129-4, ¶ 68).

18. In short, Debtors lied about their interest in a joint development deal to further gain access to Karma's trade secrets, and to understand which of Karma's employees could most directly aid Debtors by stealing Karma's trade secrets and ideas. Debtors then backed out of the joint development deal, stole Karma's intellectual property, and poached Karma's employees in order to save money and time. Worse yet, Karma's valuable trade secrets continue to be used by

Debtors across all areas of their organization and remain in the possession of not just Debtors, but potentially also the Individual Defendants, some of whom downloaded thousands of files containing Karma's trade secrets and confidential information to external storage devices while working for Karma.

        C.      **The District Court Case.**

19.     Karma filed the District Court Case on October 30, 2020. (Dist. Ct. Dkt. No. 1). On April 20, 2021, Karma filed an amended complaint ("Complaint") which included 28 counts including requests for injunctive relief. (Dist. Ct. Dkt. No. 72). A copy of the Complaint is attached to the Estimation Motion as **Exhibit B**.

20.     Karma, Debtors, the Individual Defendants have exchanged a combined 12.5 million documents in discovery – a figure that does not include the hundreds of millions of lines of source code that were also produced in discovery – and have taken a total of 54 depositions, including those of expert witnesses, totaling several hundred hours of sworn testimony.

21.     Discovery obtained by Karma also establishes that the defendants willfully began destruction of evidence as soon as the District Court Case began. Accordingly, Debtors and the Individual Defendants have twice been sanctioned by the District Court for misconduct. (Dist. Ct. Dkt. Nos. 159, 189). With respect to the first sanctions order (a copy of which is attached hereto as **Exhibit 1**), the District Court found it "undisputed" that the defendants destroyed relevant information with a culpable state of mind and issued sanctions in the form of an adverse-inference jury instruction, making clear that it "did not take . . . lightly" defendants' conduct in destroying electronic files. (Dist. Ct. Dkt. No. 159 at pp. 10-11). In the second sanctions order, the District Court again found that defendants were subject to sanctions for willful destruction of discoverable electronic files and concluded that it could consider giving an adverse inference instruction to the

jury should it become apparent at trial that any relevant evidence was lost. (Dist. Ct. Dkt. No. 189 at p. 10).

22. The parties filed dozens of pretrial motions, including a lengthy motion for summary judgment filed by Debtors and the Individual Defendants that involved hundreds of pages of the factual record, as well as, motions *in limine*. The District Court has ruled on all of the pretrial motions including summary judgment. Based on Debtors' failure to timely produce evidence, the District Court granted Karma's motion *in limine* and ruled that Debtors could not introduce evidence at trial not already disclosed to Karma during the course of discovery. (Dist. Ct. Dkt. No. 439). *See* **Exhibit 2**.

23. Due to a health issue requiring the substitution of Debtors' damages expert, the District Court reset the commencement date for the trial from April 2023 to September 5, 2023. (Dist. Ct. Dkt. Nos. 510, 513). With respect to Debtors' request for a replacement damages expert, the District Court allowed Debtors to retain a replacement expert witness but ordered that the replacement expert's report "shall not exceed the factual limits of the [prior expert damages report] nor shall it be used to cure any substantive or methodological errors, if any, in the [prior expert damages report]." (Dist. Ct. Dkt. No. 510). *See* **Exhibit 3**.

24. The District Court has also approved the final pretrial order, which includes thousands of trial exhibits identified by the parties. To date, Karma, Debtors, and the Individual Defendants have identified ten (10) expert witnesses who are expected to testify at trial, along with an undetermined number of fact witnesses. Each side will have 26.5 hours for all direct and cross examinations, excluding *voir dire*, opening statements, and closing statements. (Dist. Ct. Dkt. No. 437, ¶ 3). Except for limited discovery and motion practice related to Debtors' replacement expert witness, the case is essentially ready to proceed to trial.

D.    **Debtors' Bankruptcy Filing.**

25.    Debtors commenced these bankruptcy cases on June 27, 2023 ("Petition Date"). On June 27, 2023, Debtors filed a Suggestion of Bankruptcy in the District Court Case (Distr. Ct. Dkt. No. 537) which incorrectly asserted that the automatic stay also applied to the Individual Defendants. Based in part on Debtors' misrepresentation, the District Court orally stayed the entirety of the District Court Case on June 27, 2023, but did not vacate the September 5, 2023 trial date in order to permit Karma to seek relief from the automatic stay. To date, none of the Individual Defendants have filed for bankruptcy protection.

## ARGUMENT

I.    **The Sale Procedures Motion Must Be Denied Because Determination of the Debtor's Property Rights in the Disputed Intellectual Property Requires an Adversary Proceeding.**

26.    Through the Sale Procedures Motion, Debtors seek to sell substantially all of Debtors' assets, apparently including the disputed intellectual property that Karma alleges Debtors willfully misappropriated and therefore is not property of Debtors' estate. The Third Circuit and Delaware bankruptcy courts make clear that the commencement of an adversary proceeding under Bankruptcy Rule 7001(2) is required to determine whether disputed intellectual property assets are "property of the estate" before any sale may proceed pursuant to Section 363. Therefore, Debtors cannot proceed with the proposed sale of the disputed intellectual property. For this reason, the Court should deny the Sale Procedure Motion.

27.    "Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an 'adversary proceeding,' including the determination of the "'validity, priority, or extent of a lien or other interest in property.'" *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. 2008). Accordingly, Delaware bankruptcy courts hold that an adversary proceeding is required to sell assets where a debtor's interest in them is subject

to dispute. *Whitehall Jewelers Holdings, Inc.*, No. 08-11261, LEXIS 2120, at *9 (Bankr. D. Del. July 28, 2008) (requiring compliance with Bankruptcy Rule 7001(2) to determine property interests in the assets before a debtor may sell them pursuant to Section 363); *Mansaray-Ruffin)*, 530 F.3d at 236 ("when an adversary proceeding is required under Rule 7001(2), courts are not free to disregard the Rule").

28. In contrast, Section 363 of the Bankruptcy Code only permits a debtor to sell property of the estate. 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease … **property of the estate** …") (emphasis added). Section 541 Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." As such, "[a] bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate." *Whitehall Jewelers*, Case No. 08-11261 (KG), 2008 Bankr. LEXIS 2120, at *9; *see also Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) ("… the property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'"); *In re Shelton*, 593 B.R. 755, 764 (Bankr. N.D. Ohio 2018) (finding denial of request to sell property pursuant to Section 363(f) appropriate where title obtained by a debtor is void under applicable State law based on theft and therefore not part of debtor's estate). Debtors' Sale Procedures Motion acknowledges that it can only sell property of the estate. (Sale Procedures Motion, ¶¶ 5(a), 27, 28, 37, 42, 44). Nevertheless, Debtors seek to sell the intellectual property. Because of this, the Court should deny the motion.

29. The Sixth Circuit's decision in *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922 (6th Cir. 2000) is also instructive. *Newpower* addressed whether a debtor's estate included stolen property obtained by the debtor through larceny and/or embezzlement. The *NewPower* court

correctly determined that state law determines whether a debtor has a property interest for purposes of Section 541(a)(1). *Id*. at 928. The court the applied State law and determined that a debtor does not obtain title to property obtained through larceny or embezzlement. *Id*. at 928-31. As such, the court concluded the stolen property was not party of the debtor's estate. *Id*. Of course, to the extent property is not included in a debtor's estate, a debtor cannot use Section 363 to sell such property. Here, Karma alleges that Debtors stole its intellectual property through larceny and/or embezzlement. Under applicable California State law, a party that obtains property through larceny or embezzlement does not obtain title. *Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.*, 218 Cal. App. 3d 1354, 1361 (Cal. Ct. App. 1990) (finding that "good title cannot pass from a thief" and thus title was void); *see also Express Media Grp., LLC v. Express Corp.*, No. 06-3504, 2007 WL 1394163, at *5 (N.D. Cal. May 10, 2007) (citing *Suburban* and holding that domain name obtained through larceny carries with it void, not voidable, title).

30. Thus, no sale can take place prior to conclusion of the District Court Case or an adversary proceeding pursuant to Bankruptcy Rule 7001(2). As such, the Court should deny the Sale Procedures Motion.

II. **Debtors Improper Attempt To Use Section 363 To Determine Its Interests in the Intellectual Property is an Improper Attempt To Forum Shop To Evade Prior Adverse Inferences and Orders Limiting Introduction of Evidence Entered by the District Court.**

31. Here, Debtors seek to use the Sale Procedures Motion to get a do-over in the District Court Case by freeing itself of the District Court orders limiting Debtors' replacement damages expert report, imposing adverse inference sanctions, excluding the introduction of evidence at trial based on, among other things, Debtors' and the Individual Defendant's willful failure to produce, and destruction of, evidence. This improper purpose merits denial of the Estimation Motion.

32.     As more fully set forth in paragraphs 21-23 above, Karma has proven that Debtors and the Individual Defendants willfully concealed and destroyed relevant evidence. Accordingly, the District Court twice sanctioned Debtors and the Individual Defendants. (Dist. Ct. Dkt. Nos. 159, 189). With respect to the first sanctions order, the District Court found it "undisputed" that the defendants willfully destroyed relevant electronic files and issued sanctions in the form of an adverse-inference jury instruction. (Dist. Ct. Dkt. No. 159 at pp. 10-11). In the second sanctions order, the District Court again found that defendants willfully destroyed electronic files and concluded that it could consider giving an adverse inference instruction to the jury should it become apparent at trial that any relevant evidence was lost. (Dist. Ct. Dkt. No. 189 at p. 10). In addition, based on Debtors' failure to timely produce evidence, the District Court granted a motion *in limine* filed by Karma and ruled that Debtors could not introduce evidence at trial not already disclosed to Karma during the course of discovery. (Dist. Ct. Dkt. No. 439). Finally, the Court entered an order limiting the scope of Debtors' replace damage expert report to the factual issues and methodologies set forth in the prior report. (Dist. Ct. Dkt. No. 510). It would be inappropriate to permit Debtors to utilize a Section 363 sale to purge themselves of the prior rulings by the District Court while benefiting from the willful destruction and failure to timely produce relevant evidence. For this reason alone, the Court should deny the Sale Procedures Motion.

**III.    There Is No Urgency For The Court To Enter Any Sale Procedures Order.**

33.     To date, Debtors haven't filed schedules and have moved to extend the deadline to file them until August 1, 2023. (Dkt. No. 109). The Court has not entered a claims bar date and Karma has not filed a proof of claim. Nor is there any secured creditor pressing for an expedited sale timeline. Debtors also have not filed a plan or disclosure statement. Moreover, according to Debtors, their most valuable asset is its litigation claims against FoxConn, which will likely take years to fully litigate.

34. Similarly, Debtors' self-imposed sale milestones do not warrant entry of any sales procedures order until the Debtors' property interests are determined through an adversary proceeding. Debtors admit that they have already essentially halted the production of vehicles and let go the majority of its employees. (Debtors' First Day Decl., Dkt. No. 15, ¶¶ 65-66). Put another way, Debtors have essentially ceased operations after manufacturing a mere handful of vehicles, so there is no urgency to complete a sale to preserve ongoing operations. Debtors also admit that they have been marketing themselves for sale since September 2021 and "has not received any actionable indications of interest." (*Id*. at ¶ 61). Similarly, Debtors' Sale Procedures Motion concedes there is no stalking horse bidder. In fact, Debtors' First Day Declaration paints a grim picture for the prospects of a sale stating: "If the Sale Process does not yield a buyer interested in the Company's ongoing programs, then the Company will take further actions, as necessary, to reduce administrative expenses other than those necessary to achieve the best result possible for stakeholders in a liquidation of the Company's assets." (*Id*. at ¶ 67). Therefore, there is no urgency for the Court to grant of the relief requested in Debtors' Sale Procedures Motion.

## **RESERVATION OF RIGHTS**

35. Karma specifically reserves its right to amend or supplement this Objection in all respects, including following the July 27, 2023 hearing. Nothing herein is intended or shall be construed to: (a) constitute a waiver of Karma's rights to contest any objection by any party to any claim filed by Karma; (b) prejudice, waive or alter Karma's rights under contract, applicable law or otherwise (including its right to litigate the District Court Case) or (c) bind Karma to any claim amount.

## CONCLUSION

36. For the reasons set forth above, Karma respectfully requests that the Court (a) deny the Sale Procedures Motion in its entirely; and (b) grant any further relief which the Court deems just and proper.

Dated: July 20, 2023
Wilmington, Delaware

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
         olivere@chipmanbrown.com

**-and-**

**SEYFARTH SHAW LLP**
Michael D. Wexler (admitted *pro hac vice*)
James B. Sowka (admitted *pro hac vice*)
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5000
Email: mwexler@seyfarth.com
         jsowka@seyfarth.com

Jesse M. Coleman (admitted *pro hac vice*)
700 Milam Street, Suite 1400
Houston, TX 77002-2797
Telephone: (713) 225-2300
Email: jcoleman@seyfarth.com

*Counsel to Karma Automotive LLC*