# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LORDSTOWN MOTORS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 82, 122 and 128**<br><br>Hearing Date: July 27, 2023, at 9:30 a.m. (Eastern)<br>Reply Deadline: July 24, 2023, at 4:00 p.m. (Eastern) |

## KARMA AUTOMOTIVE LLC'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Karma Automotive LLC ("Karma"), respectfully files this Reply in Support of its Motion for Relief from the Automatic Stay ("Lift Stay Motion") (Dkt. No. 82) to complete the now-stayed trial against the Debtors and the Individual Defendants in the United States District Court for the Central District of California ("District Court"), Case No. 20-cv-02104 ("District Court Case"). In support of the Reply, Karma states as follows:[2]

1.  Debtors' Objection (Dkt. No. 122) to Karma's Lift Stay Motion confirms that cause exists to modify the automatic stay based on undisputed facts of the case. Moreover the Committee's Objection (Dkt. No. 128) to the Lift Stay Motion is little more than a joinder to the Debtor's Objection.

### A. Debtors Will Not Be Prejudiced by Lifting the Stay.

2.  Debtors argue that they would be prejudiced from the distraction and costs of completing the trial. However, Debtors admit that they are seeking to restart the misappropriation

---

[1] Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Lift Stay Motion.

00054390.1

litigation with Karma from the beginning through the Estimation Motion (Dkt. No. 108) and the Sale Procedures Motion (Dkt. No. 16) (and, presumably, the required Bankruptcy Rule 7001(2) adversary proceeding) at the same exact time as the scheduled trial in the District Court Case. (Debtors' Obj., ¶¶ 1, 4, 25).[3] Of course, restarting the nearly three-years of litigation with Karma from the beginning with new counsel[4] would burden the estate with substantial administrative costs[5] and require the immediate attention of Debtors' management.

3. Debtors' Objection (as well as the Estimation Motion and the Sale Procedures Order) ignore the fact that the proposed sale cannot proceed until the Debtors' interests in the disputed intellectual property are fully litigated in an adversary proceeding. *See Whitehall Jewelers Holdings, Inc.*, No. 08-11261, LEXIS 2120, at *9 (Bankr. D. Del. July 28, 2008) (requiring compliance with Bankruptcy Rule 7001(2) to determine property interests in the assets before a debtor may sell them pursuant to Section 363). As such, the scenario put forth by the Debtors – the sale of the disputed intellectual property without formal litigation of Debtors' interests with respect to same – is not possible. *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001).

4. Further, as more fully set forth in FoxConn's Motion to Dismiss Debtors' Cases (Dkt. No. 131), the alleged urgency with respect to Debtors' proposed sale is a mirage. Debtors disclosed that: (i) they are holding $136 million in cash on the Petition Date; (ii) they have no secured creditors; and (iii) the list of top thirty creditors hold only $20 million in claims. (*Id.* at ¶

---

[3] Karma incorporates by reference the arguments set forth in its Objection to the Estimation Motion (Dkt. No. 126) and its Objection to the Sale Procedures Motion (Dkt. No. 127).

[4] Debtors' counsel in the District Court Case, Baker & Hostetler LLP is not included in the Debtors' Application to Retain Ordinary Course Professionals. (Dkt. No. 110).

[5] Notably, Debtors' Declaration in Support of its Objection fails to estimate any costs associated with litigating the Estimation Motion, the Sale Procedure Motion, and the any required adversary proceeding pursuant to Bankruptcy Rule 7001(2).

38).  FoxConn also correctly points out that "there is no evidence that the Chapter 11 Cases generally, or the Debtors' sale process, will do anything more than erode value by the incurrence of substantial administrative expenses."  (*Id*. at ¶ 44); *see also In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) (denying debtor's sale motion and dismissing case where debtor was attempting to repeat previously unsuccessful prepetition sale efforts).  On the contrary, Debtors admit that they have been marketing themselves for sale since September 2021 and have "not received any actionable indications of interest."  (Debtors' First Day Decl., Dkt. No. 15, ¶ 61).  Moreover, Debtors admit that they have functionally ceased operations.  (*Id*. at ¶¶ 65-67; Debtors' Objection at ¶ 22).  As such, there is no possibility of a reorganization and there are no likely buyers and no urgency to proceed to a sale.

        **B.**        **The Hardship to Karma of Maintaining the Stay Would Significantly Outweigh any Hardship to Debtors if the Stay is Lifted.**

        5.        Debtors correctly point out that the only issues to be resolved in the District Court Case before the September trial are a rebuttal expert report, two expert depositions, and resolution of a motion to strike.  (Debtors' Objection, at ¶ 31).  Thus, maintaining the stay would be prejudicial to Karma because the District Court Case is "on the doorstep" of trial.  *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (finding it appropriate to lift the stay where another court has extensive knowledge of the facts and issues, ruled on summary judgment motions, and the case was ready for trial).  Maintaining the stay would also force Karma to "duplicate all of its efforts in the bankruptcy court," which is of great prejudice to the creditor.  *Fernstrom*, 938 F.2d at 737.  This includes three years of contentious litigation involving the production of millions of documents, more than 50 depositions, and dozens of pretrial motions including summary judgment.

6.    Karma would also be prejudiced because Debtors and the Individual Defendants have twice been sanctioned by the District Court for misconduct including the destruction and withholding of evidence.  (Dist. Ct. Dkt. Nos. 159, 189).  Giving the Debtors a "do-over" would be greatly prejudicial to Karma because it would allow the Debtors to evade the sanctions orders thereby benefitting from the destruction and withholding of relevant evidence.

7.    Finally, the fact that the litigation involves non-debtor third parties also establishes harm to Karma to establish cause to lift the stay.  *SCO*, 395 B.R. at 857 ("the stay may be granted 'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties….'") (citing Lawrence P. King, *Collier on Bankruptcy* 362.07[3][a] (15th ed.2006)).

**C.    Karma Has Proven a Sufficient Likelihood of Success on the Merits.**

8.    "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."  *Tribune*, 418 B.R. at 129 (citation omitted).  Debtors' admit that Karma's claims have already survived summary judgment.  Moreover, Debtors do not, and cannot, contest the contents of the Declaration of Michael D. Wexler (Dkt. No. 83) filed in Support of the Lift Stay Motion which contains a summary of the evidence produced at trial which indisputably establishes that Debtors willfully and maliciously misappropriated Karma's trade secrets.

**D.    The Committee Joinder Lacks Merit.**

9.    Finally, the Committee has indicated that if stay relief is granted that it would almost certainly seek to intervene in the litigation.  Such intervention, according to the Committee, would include a request for a continuance, the review of millions of pages of documents and deposition transcripts, and the possibility of retaining its own experts and filing its own briefs.  Any

intervention by the Committee, while ostensibly permitted under section 1109(b) of the Bankruptcy Code and *Phar-More, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994), may allow the Committee to "appear and be heard", but such participation would be subject to limitations imposed by the District Court. *See In re Adelphia Communications Corp.*, 285 B.R. 848, 857-58 (Bankr. S.D.N.Y. 2002) (noting that the court has the power to impose conditions or restrictions on intervenors "in the interests of judicial economy, avoiding harassment or excessive burdens, or otherwise in the interests of justice.") (citing *Shore v. Parklane Hosiery Co.*, 606 F.2d 354, 356-57 (2d Cir. 1979). Moreover, the Committee have not established that the benefits of its intended involvement would outweigh the costs associated with any participation.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, Karma respectfully requests that the Court modify the automatic stay to permit Karma to complete the District Court Case litigation, including all appeals, against Debtors and all Individual Defendants.

Dated: July 20, 2023  
Wilmington, Delaware

Respectfully submitted,

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ William E. Chipman, Jr.
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com

**-and-**

**SEYFARTH SHAW LLP**
Michael D. Wexler (admitted *pro hac vice*)
James B. Sowka (admitted *pro hac vice*)
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5000
Email: mwexler@seyfarth.com
jsowka@seyfarth.com

Jesse M. Coleman (admitted *pro hac vice*)
700 Milam Street, Suite 1400
Houston, TX 77002-2797
Telephone: (713) 225-2300
Email: jcoleman@seyfarth.com

*Counsel to Karma Automotive LLC*