IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 16 & 127<br><br>Hearing Date:<br>**July 27, 2023 at 9:30 a.m. (ET)** |

**REPLY IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES, (B) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) GRANTING OTHER RELATED RELIEF; AND (II) (A) AUTHORIZING THE DEBTORS TO ENTER INTO A DEFINITIVE PURCHASE AGREEMENT AND (B) GRANTING OTHER RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this reply (this "**Reply**") in support of the *Debtors' Motion for Entry of an Order (I) (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Related Relief; and (II) (A) Authorizing the Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief* [Docket No. 16] (the "**Motion**") seeking approval of the proposed bidding procedures contemplated by the Motion (as revised, the "**Bidding Procedures**") and related relief and in response to the objection [Docket No. 127] (the "**Objection**") filed by Karma Automotive LLC ("**Karma**"). In further support of the Motion and this Reply, the Debtors rely

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

1

upon and incorporate by reference the First Day Declaration, the *Declaration of Adam Kroll* (the "**Kroll Declaration**") and the *Declaration of Jeffrey Finger* (the "**Finger Declaration**," together with the First Day Declaration and the Kroll Declaration, the "**Declarations**"), filed concurrently herewith, and the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. The Objection is, at best, a premature sale objection and, at worst, an attempt by Karma to paralyze the Debtors' efforts to maximize value for creditors and stakeholders. At this time, the Debtors seek only entry of an order that approves the Bidding Procedures and certain related procedural relief. The Bidding Procedures Order (as defined below) that the Debtors have submitted to the Court does not approve any sale, makes no determination about what does and does not constitute property of the Debtors' estates, and includes no findings regarding Karma's asserted interests in the Debtors' (or any other party's) property. All that is before the Court at this time are procedures—nothing more, nothing less. Importantly, no party (not even Karma), has objected to the substance of the proposed Bidding Procedures. That is because they cannot. The Bidding Procedures are fair, reasonable, and are intended to run an efficient and value maximizing sale process.[3]

2. Instead of focusing on the fairness of the Bidding Procedures, Karma spends the majority of the Objection rehashing the allegations it has raised in its ongoing litigation against the Debtors and arguing about its alleged ownership of the Debtors' intellectual property. None of these arguments are relevant at this time. Further, Karma's request that the Court delay the Debtors' marketing process until Karma's meritless claims of ownership are litigated and

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the remainder of the Reply or the Motion, as applicable.

[3] The Bidding Procedures Order and the Bid Procedures also address feedback that the Debtors received from various parties, including the Committee and the U.S. Trustee.

resolved makes no sense and would result in extreme prejudice to the Debtors. In short, the Debtors simply cannot wait months and months to commence the process of selling their assets. As the Declarations filed in support of this Reply make clear, the Debtors are a "melting ice cube" and any delay in the sale process will mean lost value for the Debtors' creditors and other stakeholders. The Debtors are incurring significant expenses and must maintain their employee base in order to sell their assets as a going concern. However, the Debtors have no significant revenue and are losing cash every month that these Chapter 11 Cases go on. Under these circumstances, the Debtors must act quickly to sell their assets. Further, the Debtors will not be able to retain their employees if the sale process is indefinitely delayed. It is absolutely critical for the Debtors to commence the sale process now.

3. As noted above, the Debtors do not seek approval of any sale at this time. However, it bears noting that the Bankruptcy Code does not require that this Court resolve all disputes concerning ownership prior to a sale, much less as a condition for approving Bidding Procedures. To the contrary, the Bankruptcy Code expressly permits sales notwithstanding *bona fide* disputes over ownership and it specifies that the burden of proof is on the non-debtor when issues of ownership arise. The drafters of the Bankruptcy Code understood that a debtor's bankruptcy estate must be efficiently administered to maximize value, and that is exactly what is required here. The Debtors do not have the luxury of being able to wait out a full adjudication of the parties' respective rights as a precondition to an order approving the Bidding Procedures and nothing in the Bankruptcy Code requires them to do so.[4]

---

[4] Although not for today, the Debtors in no way concede that Karma has any interest in the Debtors' intellectual property or any other property of the Debtors. At the appropriate time, the Debtors will vigorously dispute Karma's spurious contentions to the contrary and reserve all rights to do so.

4.    For the foregoing reasons, and as set forth in the Motion and this Reply, the Debtors' respectfully request that the Court overrule the Objection and enter the Debtors' revised proposed order filed concurrently herewith (the "**Bidding Procedures Order**").

## FACTUAL BACKGROUND

### I.    The Debtors' Chapter 11 Cases

5.    On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On July 11, 2023, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

6.    The Debtors commenced the Chapter 11 Cases for the purpose of maximizing value for all stakeholders. Among other things, the Debtors intend to conduct an efficient and robust sale process, reduce their cash burn, and efficiently resolve the claims against them. Given the Company's current financial condition and the need to maximize value on a timely basis, the Debtors have proposed the Bidding Procedures to facilitate the marketing and sale of the Debtors' assets on an expedited basis.[5]

7.    On July 5, 2023, Karma filed *Karma Automotive LLC's Motion for Relief From the Automatic Stay* [Docket No. 82] (the "**Karma Stay Relief Motion**").

---

[5]    Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 15].

8. On July 13, 2023, the Debtors filed the *Debtors' Motion Under 11 U.S.C. §§ 502(c) and 105(a) for Entry of Orders (i) Establishing Procedures and Schedule for Estimation Proceedings and (ii) Estimation of the Amount of the Claim Held by Karma Automotive LLC* [Docket No. 108] (the "**Estimation Motion**").

9. On July 19, 2023, the Debtors filed an objection [Docket No. 122] to the Karma Stay Relief Motion. On July 20, 2023, the Committee also filed an objection [Docket No. 128] to the Karma Stay Relief Motion.

## II. The Karma Action

10. On October 30, 2020, Karma filed its initial complaint against Debtor Lordstown Motors Corp. ("**LMC**") and the certain "Individual Defendants,"[6] commencing the litigation, styled *Karma Automotive LLC v. Lordstown Motors Corp.*, *et al.*, No. 20-cv-02104-DFM, in the United States District Court for the Central District of California (the "**District Court**"). The operative amended complaint was filed on April 19, 2021 (the "**Complaint**"). The Complaint alleges the same general wrongdoing against all defendants under various legal theories. The crux of Karma's claims is that LMC and the Executive Defendants poached the Employee Defendants, a specialized team of Karma employees responsible for creating Karma's infotainment system and conspired with those employees to steal Karma's alleged intellectual property. The Debtors dispute the allegations contained in the Complaint. Further details regarding Karma's allegations are set forth in the Estimation Motion.

---

[6] The individual defendants include four current and former executive officers of LMC: Steven Burns (former CEO), John Lefleur (former COO), Darren Post (current VP of Engineering), Rich Schmidt (current CPO) (together, the "**Executive Defendants**"), as well as Roger Durre, George Huan, and other former Karma employees (the "**Employee Defendants**").

**REPLY**

I. **Karma's Sale Objections Are Premature and Without Merit**

11. On July 27, 2023, this Court will hold a hearing to consider whether or not to approve the Bidding Procedures Order. The Court is not being asked to approve any sale or make any determinations concerning the relative rights of any party to any property of the estate. Indeed, the Debtors have only recently established a data room and, as of the date hereof, do not know whether one or more buyers will materialize or what assets those buyers will seek to purchase. The Debtors own many assets, such as rights with respect to the hub motor, specialized tooling and equipment, inventory and the assembly line, which Karma simply cannot claim to own even if the claims in its litigation had merit (they do not). It is premature for Karma to claim that any of the Debtors' assets are the subject of any sale at this time. They are not.

12. Importantly, the purpose of the Bidding Procedures Order is merely to approve Bidding Procedures that will allow prospective buyers to conduct diligence and submit bids pursuant to pre-established procedures and rules. For example, under the proposed timeline, indications of interest are due by July 31, 2023,[7] definitive bids will need to be submitted by August 24, 2023, and the sale hearing, if any, is not contemplated until on or around September 12, 2023 (subject to the Court's availability). The Bidding Procedures also include rules for providing access to diligence, provide that bids must specify the assets being sought, and include a process for designating a stalking horse (if any) and conducting an auction. Approving these

---

[7] The Debtors, in consultation with the Committee, have proposed to extend the deadline for potential bidders to submit letters of intent to July 31, 2023.

procedures will not affect any of Karma's potential interests (if any) in the Debtors' property,[8] but, without them, it is unlikely that any buyers will engage in the sales process with the Debtors.

13. In its Objection, Karma ignores the procedural nature of the relief sought by the Debtors and the various dates and times proposed by the Debtors, which do not contemplate a sale hearing until September 2023. Instead, Karma demands that this Court stop the sale process in its tracks until Karma's claims against the Debtors have been resolved based on completely unsubstantiated allegations of ownership. The Court should reject Karma's demands.

14. Each of Karma's arguments in support of its Objection is without merit. As an initial matter, section 363(p)(2) of the Bankruptcy Code is clear that Karma, not the Debtors, has the burden of proof to establish that it has a property interest in assets that are in the custody, possession, or control of the Debtors. While Karma has made unsubstantiated allegations in its Objection, it has presented no evidence whatsoever. The Court should not delay the Debtors' sale process in the absence of any evidence. Indeed, although the Debtors are not seeking approval of a sale at this time, courts have rejected numerous attempts to hold up sales based on attempts to assert interests in a debtor's property, when the objecting party fails to carry its burden with respect to ownership. *See, e.g.*, *Phoenix Payment Systems, Inc.*, Case No. 14-11848 (MFW), Sept. 29, 2014, Hr'g Tr. at 122:11-14 (overruling sale objection based on objector's asserted intellectual property interest in certain code, noting "[i]t is significant that 363(p) does

---

[8] Although the Debtors believe that the Bid Procedures and the Bid Procedures Order have always been clear on this point, they have added the following language to the Bidding Procedures Order for the avoidance of any doubt:

> For the avoidance of any doubt, nothing in this Order shall constitute (a) approval of any Sale, (b) a finding that any property is or is not property of the Debtors' estates, (c) a finding regarding the rights or interests that any party may have with respect to property of the Debtors' estates or property that is in the possession, custody, or control of any Debtor, or (d) a determination regarding whether a Sale of any property may occur absent an adversary proceeding pursuant to Bankruptcy Rule 7001. The rights of the Debtors, the Committee, and all other parties in interest are fully reserved with respect to these issues.

Bid Procedures Order at ¶ 35.

put the burden of proof on any party who objects to a sale, on the basis that the property being sold is that third party's property, not the debtor's."); *Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*, No. CIV.A. 10-6310 MLC, 2013 WL 4804816, at *9 (D.N.J. Sept. 9, 2013) (approving the sale holding that the objector did not meet their burden to prove that they are entitled to the ownership of the trade name under section 363(p)(2)). There can be no justification for delaying approval of Bidding Procedures based on such asserted interests.

15. Next, Karma argues that the Bidding Procedures Order should not be entered because the Debtors have failed to file an adversary proceeding to adjudicate Karma's asserted interests in certain of the Debtors' property. *See* Objection, ¶¶ 26-30. As noted above, this argument is premature. The Debtors seek only the approval of Bidding Procedures and related procedural relief. Even assuming that an adversary proceeding is necessary (which the Debtors do not concede), the sale process is in its infancy and the Debtors do not know whether a buyer will emerge or what assets they will want to purchase. Under the circumstances, it makes no sense to waste limited estate resources filing an adversary proceeding without even knowing what assets are involved in a sale. Importantly, Karma cites no authority that such an adversary proceeding must be commenced and adjudicated now, ***prior to entry of the Bidding Procedures***. Indeed, as discussed in more detail below, all of the cases cited by Karma involve sale hearings, not sale procedures hearings.

16. Next, Karma glibly argues that a delay is proper because "there is no urgency to complete a sale to preserve ongoing business." Objection ¶ 34. Karma is wrong. Although the Debtors remain open to bids for all or some of their assets, the Debtors are also seeking to sell themselves as a going concern. In order to do so, the Debtors must retain their skilled and key employees, including, without limitation, those with technical engineering expertise and

knowledge of the Endurance and its components, and continue to pay their vendors in the ordinary course.  *See* Finger Decl. ¶ 8; Kroll Decl. ¶¶ 5-6.  Accordingly, the Debtors continue to employ approximately 145 employees that are critical to preserving the Debtors' enterprise value.  *See* Kroll Decl. ¶ 5.  A monthslong delay in the sale process will result in significant attrition, greatly limiting the Debtors' ability to sell itself as a going concern.  *See* Finger Decl. ¶ 8; Kroll Decl. ¶ 6.  Indeed, during the first month of these Chapter 11 Cases, the Debtors have already experienced loss of valuable employees that adversely impacted the Debtors' ability to operate, and attrition will undoubtedly worsen the longer the Debtors remain in these Chapter 11 Cases without a prospect of a buyer.  Kroll Decl. ¶ 6.  Any substantial delay in approval of the Bidding Procedures and the conduct of the sale process will greatly limit, if not eliminate, the Debtors' ability to sell themselves as a going concern.

17. Further, the Debtors' estates are the proverbial "melting ice cube."  The Debtors have no income and their projected monthly operating expenses are approximately $4.0 million per month.  Kroll Decl. ¶ 4.  And, the Debtors are incurring significant monthly administrative expenses in these Chapter 11 Cases.  In total, the Debtors are projected to lose approximately $6.2 million per month, not including fees associated with the Committee's professionals.  Kroll Decl. ¶ 4.  This results in significant "cash burn."  The longer these Chapter 11 Cases remain pending, the less cash that will be available for creditors and other parties in interest.  The Debtors' estates cannot wait months, maybe years, to conclude the litigation against Karma before commencing the sale process.

18. It is exactly in situations such as this that this Court and other courts have recognized the need for expedited sales to prevent further unnecessary losses.  *See e.g.*, *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (MFW), 2021 WL 2212007, at *7 (Bankr. D.

9

Del. June 1, 2021), *aff'd*, 633 B.R. 124 (D. Del. 2021) (recognizing that the Bankruptcy Code permits "a debtor to sell its assets without the necessity to wait until all disputes are fully resolved because . . . a debtor is often in a precarious financial condition and any delay could erode the value of its assets and potential recovery for creditors." (citing *In re Southland Royalty Co. LLC*, 623 B.R. 64, 99 (Bankr. D. Del. 2020)); *see also In re GSC, Inc.*, 453 B.R. 132, 166 (Bankr. S.D.N.Y. 2011) ("a sale should be approved when the court is faced with the situation of a so-called 'melting ice cube,' a sale that would prevent further, unnecessary losses." (internal citations and quotation marks omitted)).

19. Moreover, courts routinely overrule objections like Karma's at the bidding procedures phase. *See, e.g.*, *In re Durango Ga. Paper Co.*, 336 B.R. 594, 597-99 (Bankr. S.D. Ga. 2005) (overruling objection to bidding procedures that asserted a claim in certain assets the debtors proposed to sell); *see also In re Innkeepers USA Trust*, 448 B.R. 131, 148 (Bankr. S.D.N.Y. 2011) (approving bidding procedures while overruling objections raising confirmation issues). Indeed, Karma does not cite a single case where a court denied a debtor's motion to establish bidding procedures due to an objecting parties' disputed property interest in the assets to be sold.

20. The *Durango* case is instructive. There, Georgia objected to the debtor's sales procedures, claiming an interest in some of the debtor's property. The court overruled the objection, stating that:

> neither the motion to establish bidding procedures nor the objection raised by the State is the proper vehicle for this Court to make a final determination of the full extent or value of any interest the Debtor has in this groundwater. The Bidding Procedures Order is procedural in nature. It merely establishes a process whereby interested parties may examine what the Debtor offers for sale, conduct the necessary due diligence, and participate in a public auction process.

*Durango*, 336 B.R. at 597-98. That is all that the Debtors seek here.

21. Finally, the cases Karma does cite support the Debtors' position that now is not the proper time to consider sale objections. Karma cites the unpublished decision in *Whitehall Jewelers*. But that decision was issued after a *sale hearing* of a proposed sale that included goods consigned to the debtors. *See* Objection ¶ 28. Indeed, the court in *Whitehall* had previously ***approved*** the debtors' proposed bidding procedures over the objection of the various parties asserting interests in property of the estate. *See In re Whitehall Jewelers, Inc.*, Case No. 08-11261 (Bankr. D. Del 2008) [Docket No. 324], June 24, 2008 Hr'g Tr., 111:18-24, 112:3-6 [Docket 155], July 10, 2008 Hr'g Tr., 195:22-196:5 [Docket No. 349]. In doing so, the court recognized that such disputes should be addressed at the sale approval stage, rather than the bidding procedure approval stage. *Id.* Karma's Objection is no different and should be overruled.[9]

22. In short, the Debtors seek only approval of procedures by the Bidding Procedures Order. They must do so now to prevent loss of employees and diminution of the Debtors' estates. Karma's Objection should be denied.

## II. The Debtors Will Overcome Karma's Sale Objection at the Appropriate Time

23. Finally, although the Debtors need not address the substance of Karma's premature objections, and reserve all rights to fully address such arguments at the appropriate time, those arguments are also fatally flawed.

24. ***First***, the Bankruptcy Code does not require that all disputes involving the debtor's property be resolved prior to a sale. In fact, the opposite is true. Section 363(f)(4) of

---

[9] Karma also argues that the Debtors are, somehow, forum shopping. This argument makes no sense. This Court is the only Court with jurisdiction over the Debtors and their assets. The Debtors have no choice but to file the Motion here. *See* Objection ¶¶ 31-32. Further, Karma's arguments highlight why Karma's Lift Stay Motion should be denied. This Court is the proper court to determine the nature of the Debtors' interests in their assets and has exclusive jurisdiction over the sale process.

AMERICAS 124383796

the Bankruptcy Code is specifically designed to permit a sale of the Debtors' assets to proceed notwithstanding a *bona fide* dispute concerning interests in property to avoid the harmful delays that Karma is seeking to impose on the Debtors. Pursuant to section 363(f)(4) of the Bankruptcy Code, a debtor in possession may sell its property free and clear of any interest if "such interest is in bona fide dispute," without the need to wait until all such disputes are fully resolved. *See* 11 U.S.C. § 363(f)(4); *Nine Point Energy*, 2021 WL 2212007, at *7 (citing *Southland Royalty*, 623 B.R. at 99); *see also TSAWD Holdings, Inc. et. al. v. Performance Apparel Corp. (In re TSAWD Holdings, Inc.)*, 565 B.R. at 295 (noting that in the main bankruptcy case, the court entered an order approving the debtors' sale of certain consigned goods "[p]ending the filing of (and ruling on) an adversary proceeding to determine respective rights to the consigned goods"); *Threshold Entertainment, Inc. v. Midway Games Inc. et al. (In re Midway Games Inc.)*, 446 B.R. 148, 150 (Bankr. D. Del. 2011) (approving the sale of the debtors' assets pending the determination of certain entities' asserted intellectual property rights in the debtors' goods). Here, the Karma's alleged interest in certain intellectual property that is in the Debtors' possession, custody, and control may be in bona fide dispute as evidenced by the pending District Court litigation. But section 363(f)(4) permits the Debtors to sell their assets free and clear of Karma's disputed interest.

25.     **Second**, Karma—as the party asserting an interest in property being sold—has the burden of showing the validity and extent of its interest. 11 U.S.C. § 363(p)(2). Courts have rejected attempts to hold up a sale based on unsubstantiated attempts to assert an interest in certain of the assets to be sold when the objecting party fails to carry the burden. *See, e.g.*, *Phoenix Payment Systems, Inc.*, Case No. 14-11848 (MFW), Sept. 29, 2014, Hr'g Tr. at 122:11-14 (overruling sale objection based on objector's asserted intellectual property interest in certain

12

code, noting "[i]t is significant that 363(p) does put the burden of proof on any party who objects to a sale, on the basis that the property being sold is that third party's property, not the debtor's."); *Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*, No. CIV.A. 10-6310 MLC, 2013 WL 4804816, at *9 (D.N.J. Sept. 9, 2013) (approving the sale holding that the objector did not meet their burden to prove that they are entitled to the ownership of the trade name under section 363(p)(2)). Here, Karma has failed to provide any evidence to support its interest in the intellectual property beyond merely factual allegations. Karma has not met its burden under section 363(p)(2).

26. **Third**, Karma's allegations at most amount to an unsecured claim for damages. Contrary to Karma's sweeping allegations, the Debtors' flagship vehicle, the Endurance, does not contain any of Karma's intellectual property. Instead, to the extent the Debtors used any Karma information or documents, it was only as a template at preliminary stages of development. Years later, any overlap between the design of Karma's vehicles and the design of the Endurance reflects industry standard, generic material, common to many electric vehicles. At best, Karma may be able to assert a claim for damages based on Debtors' alleged use of Karma documents as templates while ultimately incorporating nothing into the Endurance in which Karma has a protectable property interest. The Debtors believe, when the time comes to litigate the issue, Karma will fail to carry its burden in demonstrating Debtors used any of Karma's intellectual property, or that Karma has anything more than a claim for such minimal damages.

27. For the foregoing reasons and on the additional basis that the Debtors will articulate when the substance of Karma's sale objections are ripe for consideration, Karma's attempts to hold the Company hostage over an illusory interest in the Debtors' property will fail.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court overrule the Objection and enter the Bidding Procedures Order.

| | |
|---|---|
| Dated: July 24, 2023<br><br>Respectfully submitted,<br><br>/s/  Amanda R. Steele<br><br>**RICHARDS, LAYTON & FINGER, P.A.**<br>Kevin Gross (No. 209)<br>Daniel J. DeFranceschi (No. 2732)<br>Paul N. Heath (No. 3704)<br>Amanda R. Steele (No. 5530)<br>Jason M. Madron (No. 4431)<br>Cory D. Kandestin (No. 5025)<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br>gross@rlf.com<br>defranceschi@rlf.com<br>heath@rlf.com<br>steele@rlf.com<br>madron@rlf.com<br><br>*Proposed Co-Counsel to Debtors and Debtors-in-Possession* | **WHITE & CASE LLP**<br>Thomas E Lauria (admitted *pro hac vice*)<br>Matthew C. Brown (admitted *pro hac vice*)<br>Fan B. He (admitted *pro hac vice*)<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>tlauria@whitecase.com<br>mbrown@whitecase.com<br>fhe@whitecase.com<br><br>David M. Turetsky (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>david.turetsky@whitecase.com<br><br>Jason N. Zakia (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, IL 60606<br>Telephone: (312) 881-5400<br>jzakia@whitecase.com<br><br>Roberto Kampfner (admitted *pro hac vice*)<br>Doah Kim (admitted *pro hac vice*)<br>RJ Szuba (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, CA 90071<br>Telephone: (213) 620-7700<br>rkampfner@whitecase.com<br>doah.kim@whitecase.com<br>rj.szuba@whitecase.com<br><br>*Proposed Co-Counsel to Debtors and Debtors-in-Possession* |

AMERICAS 124383796