**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Re: D.I. 108 & 126**<br><br>**Hearing Date:**<br>**July 27, 2023 at 9:30 a.m. (ET)** |

**DEBTORS' REPLY IN SUPPORT OF THE DEBTORS' MOTION UNDER 11 U.S.C. §§ 502(c) AND 105(a) FOR ENTRY OF ORDERS (I) ESTABLISHING PROCEDURES AND SCHEDULE FOR ESTIMATION PROCEEDINGS AND (II) ESTIMATION OF THE AMOUNT OF THE CLAIM HELD BY KARMA AUTOMOTIVE LLC**

      The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases hereby respectfully submit this reply (the "**Reply**") to *Karma Automotive LLC's Preliminary Objection to Debtor's Motion Under 11 U.S.C. § 502(c) and 105(a) for Entry of Orders (I) Establishing Procedures and Schedule for Estimation Proceedings and (II) Estimation of the Amount of the Claim Held by Karma Automotive LLC* [D.I. 126] (the "**Estimation Objection**"), and in further support of the *Debtor's Motion Under 11 U.S.C. § 502(c) and 105(a) for Entry of Orders (I) Establishing Procedures and Schedule for Estimation Proceedings and (II) Estimation of the Amount of the Claim Held by Karma Automotive LLC* [D.I. 108] (the "**Estimation Motion**"). In further support of the Estimation Motion and this Reply, the Debtors rely upon and incorporate by reference the Declaration of Adam Kroll (the "**Kroll Declaration**") and Declaration of Jeffrey Finger (the "**Finger Declaration**,") filed concurrently herewith, and respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

## PRELIMINARY STATEMENT[2]

1. At its core, Karma's Estimation Objection reflects a fundamental misunderstanding of the established procedures under the Bankruptcy Code and Bankruptcy Rules for claim estimation. Karma's numerous grievances with respect to estimation of the Karma Claim do not address the *only* relevant inquiry under the Bankruptcy Code: whether fixing or liquidating the Karma Claim would unduly delay the administration of the Chapter 11 Cases. None of Karma's arguments provide a legitimate reason why estimation should not proceed.

2. *First*, estimation of the Karma Claim does not implicate the determination of any property rights requiring an adversary proceeding. Karma's purported property rights will not be determined in an estimation proceeding.

3. *Second*, given the need to prevent loss of employees and diminution of the Debtors' estates, waiting for a judgment of the Karma Claim by jury trial in the District Court, the necessary post-trial proceedings and the resolution of an inevitable appeal to the Ninth Circuit, would unduly delay the administration of these Chapter 11 Cases.

4. *Third,* the Debtors' motivation for filing the Estimation Motion is not to "forum shop," but rather to estimate the unliquidated tort claim, presently of an unknown magnitude, to allow for the proposing and confirmation of a plan within any reasonable amount of time.

5. *Fourth,* the Estimation Motion is timely. Estimation can occur without Karma having filed a formal proof of claim, and before confirmation of a proposed plan.

## FACTUAL BACKGROUND

6. The Debtors described the limited relevant facts to the estimation of the Karma Claim in the Estimation Motion. *See* Estimation Mot. ¶¶ 8-17. The Debtors reject Karma's

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Estimation Motion.

2

gratuitous characterizations and allegations in the Estimation Objection about the merits of the trade secret misappropriation action that Karma brought against the Company in the U.S. District Court for the Central District of California. *See* Estimation Obj. ¶¶ 11-20. The Company will contest the underlying merits of Karma's claim at the appropriate time.

## ARGUMENT

**I.  Estimation of the Karma Claim Does Not Implicate the Determination of Any Property Rights Requiring an Adversary Proceeding.**

7.  Estimation of the Karma Claim does not implicate any of Karma's alleged property rights, and an adversary proceeding under Bankruptcy Rule 7001(2) is not required. In the Estimation Objection, Karma maintains that the Debtors' "primary motivation" for filing the Estimation Motion is to facilitate the sale of intellectual property that Karma purports to own. Estimation Obj. ¶¶ 32-36. Karma conflates its objections to a sale – which it has already stated in its *Objection to the Debtors' Motion for Entry of an Order (I) (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates with Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief and (II) (A) Authorizing the Debtors to Enter into a Definitive Purchase Agreement and (B) Granting Other Related Relief* [D.I. 127] – with the discrete and distinct process of claim estimation.

8.  The Estimation Objection misconstrues the purpose of estimation as a procedure in bankruptcy: to estimate the size of a contingent or unliquidated claim, such as a pending litigation against a chapter 11 debtor, that would delay the administration of the debtor's bankruptcy. *See* 11 U.S.C. § 502(c)(1) ("there shall be estimated for the purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case"); *see also In re Kivler*, No. 04-27686, 2009

Bankr. LEXIS 1461, at *3 (Bankr. D.N.J. June 3, 2009) ("The practical purpose of [Section 502(c)] is to enable bankruptcy courts to reduce claims to dollar amounts without holding up distribution to all creditors until lawsuits can be completed."); *In re Thomson McKinnon Securities, Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992) ("The estimation process is an expedient method for setting the amount of a claim that may receive a distributive share from the estate."). There is not (and the Debtors do not intend to seek through the Estimation Motion) an adjudication of title to the intellectual property that Karma contends was misappropriated. Here, the Debtors simply seek an order from the Court estimating the amount of Karma's claim for purposes of allowance under a restructuring.

9.   Karma's case law on this point, the majority of which is out of circuit, stands for the premise that purportedly stolen property cannot be sold as part of a debtor's estate. This is not relevant to estimation and better suited for Karma's sale objection. *See* Estimation Obj. ¶¶ 32-35. For example, in *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 926 (6th Cir. 2000), the movants asked that the bankruptcy court lift the automatic stay with respect to money that the debtor embezzled on the grounds that the funds were not property of the bankruptcy estate. There is no reference to any attempt to estimate the movant's claims regarding funds that the debtor embezzled, and certainly no determination by any court that estimation would have been inappropriate had it been requested. *See id.* Karma's other cited cases, *Suburban Motors, Inc. v. State Farm Mutual Automobile Insurance Company,* 218 Cal. App. 3d 1354 (Cal. Ct. App. 1990) *and Express Media Grp., LLC v. Express Corporation,* No. 06-3504, 2007 WL 1394163 (N.D. Cal. May 10, 2007), have nothing to do with claims estimation or even bankruptcy more generally. In short, Karma cites no legal precedent in support of its contention that estimation is inappropriate in this context.

10. Nor could it. As detailed in the Estimation Motion, under section 502(c) of the Bankruptcy Code, "estimation is mandatory when the prerequisites have been met." Estimation Mot. ¶ 19 (citing *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011-12 (4th Cir. 1986); *In re A & B Assocs., L.P.*, No. 17-40185-EJC, 2019 WL 1470892, at *35 (Bankr. S.D. Ga. Mar. 29, 2019)). Those prerequisites, which have been satisfied here (*see* Estimation Mot. ¶¶ 20-26), are: (i) the claim must be contingent or unliquidated; and (ii) fixing or liquidating the claim would unduly delay the administration of the case. 11 U.S.C. § 502(c). There is no "intellectual property" exception to estimation under the Bankruptcy Code or the Bankruptcy Rules.

**II.     The Fixing or Liquidation of the Karma Claim Would Unduly Delay the Administration of the Chapter 11 Cases.**

11. The Debtors have established that the fixing or liquidation of the Karma Claim would unduly delay the administration of these Chapter 11 Cases, and thus, that estimation is required. *See* Estimation Mot. ¶¶ 18-26.

12. The Debtors filed these Chapter 11 Cases to maximize value to their stakeholders quickly and efficiently. To that end, the Debtors have proposed an efficient chapter 11 marketing and sale process to pursue and consummate a value-maximizing sale of their assets. Given the current financial state of the Company, time is of the essence. The Debtors have already experienced loss of valuable employees that adversely impacted the Debtors' operations, and it will undoubtedly worsen if there is any delay in the administration of the Debtors' estates. Contrary to Karma's claim, the sale process deadlines are not "self-imposed." Estimation Obj. ¶ 39. Rather, they reflect the significant cash burn and employee retention issues that stand in the way of a successful restructuring and meaningful recovery for creditors. The delay in waiting for the District Court to resolve the Karma Claim, and the appeal to the Ninth Circuit likely to follow

5

AMERICAS 124488152

entry of any judgment, will rapidly deplete the Debtors' cash on hand and potential recoveries to stakeholders.

13. It is true that the Debtors have reduced operations and work force to conserve their limited resources while searching for a potential buyer in these Chapter 11 Cases. But the timeline set forth in the Debtors' proposed bidding procedures reflects a balance between the need to conduct a fulsome marketing process for the Debtors' assets against the continuing significant costs of an extended chapter 11 process. Finger Decl. ¶ 8. To maximize the Debtors' value, the Debtors must maintain operations at a reduced level, retain the Debtors' skilled and key employees and pay vendors in the ordinary course to facilitate a sale as a going concern. Finger Decl. ¶ 8; Kroll Decl. ¶ 6. The Debtors' projected monthly operating expenses is approximately $4.0 million per month. In addition, the Debtors are incurring significant monthly administrative expenses in these Chapter 11 Cases. Including the operating expenses, the Debtors are projected to spending $6.2 million per month. Kroll Decl. ¶ 4.

14. Moreover, if a determination on Karma's claim is postponed and Debtors' ability to administer these Chapter 11 Cases is delayed, it will be increasingly challenging for the Debtors to retain the employees in key roles and those with specialized skills. Such employees are vital to the Debtor's ability to sell themselves as a going concern. Finger Decl. ¶ 8; Kroll Decl. ¶ 6. Indeed, during the first month of these Chapter 11 Cases, the Debtors have already experienced loss of valuable employees that adversely impacted the Debtors' ability to operate, and attrition will undoubtedly worsen the longer the Debtors remain in these Chapter 11 Cases without a prospect of a buyer. Kroll Decl. ¶ 5. There is great urgency to conduct the comprehensive and orderly marketing and sale process the Debtors proposed to preserve the Debtors' value and present diminution of recovery for all stakeholders.

AMERICAS 124488152

15. Avoiding this type of delay is exactly why estimation exists. *See, e.g., In re PBS Brand Co.,* LLC, No. 20-13157 (JKS) (Bankr. D. Del. Jun. 27, 2022) [D.I. 817] (granting motion to estimate unliquidated unsecured claim of JP Morgan); *In re RTI Holding Co., LLC,* No. 20-12456 (JTD) (Bankr. D. Del. Aug. 26, 2021) [D.I. 1668] (granting motion to estimate claims); *In re AMR Corp.,* 2021 Bankr. LEXIS 1867, at *14 (Bankr. S.D.N.Y. July 14, 2021) (estimating claims where "years of delay" due to appeals would prevent distributions under a plan) (citing *In re Adelphia Bus. Solutions, Inc.,* 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("Estimation, authorized under section 502(c) of the Code, provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.")).

### III. Karma's Forum-Shopping Allegations are Baseless.

16. Contrary to Karma's assertions, the Debtors' reason for filing the Estimation Motion was straightforward and legitimate: to estimate an unliquidated tort claim of an unknown magnitude to allow for the proposing and confirmation of a plan within a reasonable amount of time. Karma has presented no evidence to support its baseless allegation that the Debtors seek to "forum-shop" or obtain a "do-over" by means of the Estimation Motion.

17. Karma offers nothing more than the bare assertion that an estimation proceeding will somehow undermine Karma's evidentiary "wins" in California. *See* Estimation Obj. ¶¶ 43-45. At best, Karma's arguments on the likelihood of success with respect to the causes of action in the Karma Claim are to be raised in the course of an estimation hearing, *not* in connection with determining whether estimation is appropriate in the first place. Karma will have the opportunity to proffer evidence on the "ultimate merits" of the claims in question for the Court to analyze during an estimation hearing. *See, e.g., Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135 (3d Cir.

1982) (affirming an estimation approach that evaluated the "ultimate merits" of the claims in question).

18. Karma's suggestion that the Estimation Motion was brought because the Debtors hope that this Court will make improper or unfavorable evidentiary rulings during the estimation proceeding is misguided. The Debtors know that this Court will adjudicate the estimation of the Karma Claim like it does all other matters, fairly and in keeping with the law. The Debtors seek estimation because it is the proper and most efficient method for determining the amount of the Karma Claim under the Bankruptcy Code.

19. Karma's reliance on *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) in support of this "forum-shopping" argument is misguided. In *RNI*, the Court found that there was no risk of undue delay to the administration of the bankruptcy cases because the plan administrator who moved for estimation did not introduce *any* evidence at the estimation hearing of such a risk, not because of a purported allegation of forum-shopping. *Id*. In doing so, Judge Sontchi expressly noted that "estimation by the Court is *mandatory*, provided that the movant establishes that fixing or liquidation of the claim would unduly delay the administration of the case." *Id*. (emphasis added). As set forth in the Estimation Motion, and above, there is no doubt that liquidating the Karma Claim outside of bankruptcy would unduly delay the administration of the chapter 11 cases. *See supra* ¶¶ 11-15; Estimation Mot. ¶¶ 18-26. Nor does *In re Wallace's Bookstores, Inc.,* 317 B.R. 720, 725 (Bankr. E.D. Ky. 2004), support Karma's position. That case speaks only to the nature and scope of the evidentiary record necessary to support the estimation of a claim. *Id*. It did not hold that estimation was inappropriate. *Id*. Indeed, none of the cases cited by Karma support its false contention that "estimation procedures" are "disfavored and rare." Estimation Obj. ¶ 43.

**IV.     The Estimation Motion is Timely.**

20.     Karma's assertion that the Estimation Motion is premature is unfounded. The fact that Karma has not yet filed a formal proof of claim is no reason to delay estimation. Karma's *Motion for Relief from the Automatic Stay* [D.I. 82] (the "**Lift Stay Motion**") is sufficient to function as an informal proof of claim that the Court can use to estimate.

21.     The Third Circuit "has long recognized the validity of informal proofs of claim." *In re SemCrude, L.P.*, 443 B.R. 472, 479 (Bankr. D. Del. 2011). Courts have found that motions seeking relief from or to lift the automatic stay may be regarded as an "informal" proof of claim. *See Brown v. Turner (In re Brown)*, 76 F. App'x 471, 472 (3d Cir. 2003) (affirming determination that a motion for relief from the stay constitutes "an informal proof of claim"); *Agassi v. Planet Hollywood Int'l., Inc.*, 269 B.R. 543, 550 (D. Del. 2001) (finding that request for relief from the automatic stay "satisfies the criteria for an informal proof of claim."); *In re Kern*, 2020 Bankr. LEXIS 3372, at *12 (Bankr. N.J. Dec. 2, 2020) (finding that motion for relief from the automatic stay could be deemed an informal proof of claim); s*ee also In re The Charter Co.*, 876 F.2d 861, 864 (11th Cir. 1989) ("In determining whether the motion constituted an informal proof of claim, we consider first whether the motion apprised the court of the existence, nature and amount of the appellees' claims and second whether it made clear the claimants' intent to hold Charter liable. We conclude that the motion for relief from the automatic stay constituted an informal proof of claim."); *Garza v. JD Foods Inc. (In re Garza)*, 222 F. App'x 350, 351 (5th Cir. 2007) (affirming order finding that motion for relief from the stay constituted an informal proof of claim); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (finding that a motion to lift the stay may be considered an informal proof of claim where the motion sufficiently states "an explicit

demand showing the nature and amount of the claim against the estate and evidences an intent to hold the debtor liable.").

22. The Lift Stay Motion put the Debtors on notice as to "the existence, nature and amount of the claim" and Karma's express intent to hold the Debtors liable for the Karma Claim. *In re SemCrude, L.P.*, 443 B.R. 472, 479 (Bankr. D. Del. 2011). In particular, the Lift Stay Motion asserts that Karma commenced the "District Court Case" and seeks $913,235,982 in damages (plus fees, costs, and punitive damages)" that are "based on claims including willful and malicious misappropriation of trade secrets, violation of the computer fraud and abuse act, and breach of contract." Lift Stay Mot. ¶ 1. The Karma Claim, as set forth in the Lift Stay Motion, may be estimated. *See* S*chaefer v. Ballantyne (In re Ballantyne)*, 166 B.R. 681, 683 (Bankr. E.D. Wis. 1994) (treating adversary complaint "as an informal proof of claim" and estimating the unliquidated and contingent claim).

23. Nor should the Court credit Karma's argument that the Estimation Motion should be denied because it was filed "exceptionally early" and prior to the filing of a proposed plan. There is no requirement, and Karma cites no authority, that a proposed plan must be filed before a claim can be estimated. *See, e.g., Green v. Howard Family Tr. (In re Green),* Nos. NV-15-1349-KiLDo, NV-15-1360-KiLDo, 2016 Bankr. LEXIS 3963, at *19-20 (B.A.P. 9th Cir. Nov. 9, 2016) (granting estimation motion despite debtors' argument that the estimation motion "was premature as there was no plan pending."); *see also In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. Dec. 11, 2020) [D.I. 540] (granting motion establishing estimation procedures before submission of a plan of reorganization and the filing of proofs of claim).

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the Estimation Motion.

Dated: July 24, 2023

Respectfully submitted,

/s/   Amanda R. Steele

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
Cory D. Kandestin (No. 5025)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

AMERICAS 124488152