**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 16 & 127** |

**DECLARATION OF JEFFREY FINGER IN SUPPORT OF THE DEBTORS'**
**(I) REPLY IN SUPPORT OF THE BIDDING PROCEDURES MOTION AND**
**(II) REPLY IN SUPPORT OF THE ESTIMATION MOTION**

I, Jeffrey Finger, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I submit this declaration (this "**Declaration**") in further support of the (i) *Debtors' Motion for Entry of an Order (I) (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Related Relief; and (II) (A) Authorizing the Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief* [Docket No. 16] (the "**Bidding Procedures Motion**") approving the proposed bidding procedures contemplated by the Bidding Procedures Motion (the "**Bidding Procedures**") and (ii) *Debtors' Motion Under 11 U.S.C. §§ 502(c) and 105(a) For Entry of Orders (i) Establishing Procedures and Schedule For Estimation*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

1

*Proceedings and (ii) Estimation of the Amount of the Claim Held By Karma Automotive LLC* (the "**Estimation Motion**").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtors' management team, the Debtors' advisors, and discussions with certain other professionals at Jefferies LLC ("**Jefferies**"). If I were called to testify, I could and would testify competently to the facts set forth herein.

## Professional Qualifications

3. I am a Managing Director and Co-Head of US Debt Advisory & Restructuring at Jefferies, an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

4. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (a) financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out of court and in chapter 11 proceedings. Jefferies has advised debtors, creditor and equity constituencies, and purchasers in numerous reorganizations in the United States and worldwide. Since 2007, Jefferies has been involved in over 250 restructurings representing over $550 billion in restructured liabilities.

5. I have advised both companies and creditors in financial restructurings and distressed mergers and acquisitions, raised capital for troubled companies, and represented

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion and Estimation Motion, as applicable.

2

debtors and creditor constituencies in bankruptcy proceedings. Before joining Jefferies in 2016, I was a partner in the financial restructuring group of Centerview Partners LLC, which I joined in 2012. Prior to joining Centerview Partners LLC, I was a managing director at Miller Buckfire & Co., a boutique investment bank where I focused on financial restructuring from 2001 to 2011. I have an MBA from the University of Chicago Booth School of Business and a BA from the University of Michigan.

6. The Debtors, in consultation with their advisors, have determined that a transaction or series of transactions whereby the Debtors sell substantially all of their assets, or a portion thereof, is likely to maximize the value of the Debtors' estates for their stakeholders. To that end, the Debtors and their advisors developed Bidding Procedures for the marketing and sale of the Debtors' assets. Based on my experience, I believe that the proposed Bidding Procedures provide an appropriate framework to effectuate a competitive auction and sale process. Accordingly, I believe that pursuit of a sale of all or substantially all of the Debtors' assets, or a portion of those assets, through a competitive marketing process in accordance with the Bidding Procedures is an appropriate means to seek to maximize the value of the Debtors' assets for the Debtors' creditors and stakeholders.

## The Bidding Procedures

7. The Debtors and their advisors worked diligently to develop the Bidding Procedures. The Bidding Procedures are designed to invite a competitive bidding process that maximizes recoveries for creditors and other stakeholders. With these goals in mind, I believe that the Bidding Procedures set forth an appropriate process to test the value of the Debtors' assets within a reasonable timeframe. The Bidding Procedures contain customary and appropriate provisions that will give interested parties the opportunity to conduct reasonable

diligence and develop bids. The fairness and reasonableness of the consideration to be paid by the winning bidder(s) ultimately will be demonstrated by "market exposure" and an open and fair auction process—the best means for establishing whether a fair and reasonable price is being paid. As such, I believe the Bidding Procedures will (a) help ensure that the Debtors are maximizing creditor and other stakeholder recoveries through the Chapter 11 Cases, while also ensuring the completion of the Chapter 11 Cases in a timely manner, and (b) provide the Debtors' marketing process with certainty concerning the requirements and procedural rules with respect to the marketing and sale process. The Bidding Procedures also do not impact the Debtors' ability to pursue an alternative restructuring strategy, if necessary or appropriate.

### The Proposed Bidding Procedures Timeline

8. The near-term approval of the Bidding Procedures and the timeline set forth in the Bidding Procedures are tailored to balance the need to conduct a fulsome marketing process for the Debtors' assets against the costs of an extended chapter 11 process. Given the foregoing, it is important that the Bidding Procedures be approved in the near term so that interested parties can expeditiously do the work needed to submit bids in a timely fashion. The proposed timeline for approval and for the process allows the Debtors and their advisors to canvass the market to obtain the highest or otherwise best value for their assets and maintain interest in the Debtors' assets, while minimizing the negative impacts of the commencement of these Chapter 11 Cases on the Debtors. Specifically, the timeline for approval and reflected in the Bidding Procedures has the important benefit of allowing the Debtors, to the extent possible, to minimize bankruptcy expenses and other costs associated with the Debtors' business and their stay in chapter 11, thereby maximizing value for the Debtors' estates, creditors, and other stakeholders. In addition to the financial cost of operating in the Chapter 11 Cases, the loss of human capital that is crucial

to the Debtors' business may reduce the value that can be achieved in the sale process. I understand that the Debtors' workforce has already been reduced, including by voluntary departures, and that a delayed marketing process and extended Chapter 11 Cases could increase the likelihood of further attrition of employees who are holding key roles or have specialized skills necessary to preserve the value of the going concern. Based on my experience, I believe that the loss of such employees, and the loss of human capital and institutional knowledge as a result, would likely have an adverse impact on the Debtors' ability to market and sell their assets at the best price as a going concern, and diminish recoveries for their stakeholders.

9. In the light of the foregoing, I believe that the Bidding Procedures increase the likelihood that the contemplated marketing and sale process will ultimately produce a Successful Bidder that maximizes recoveries for creditors and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed:     July 24, 2023
              New York, New York


                                                    */s/ Jeffrey Finger*
                                                    Jeffrey Finger
                                                    Managing Director
                                                    Jefferies LLC