## EXHIBIT 1

**Revised Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
|  | (Jointly Administered) |
| Debtors. | **Re: Docket No. 16** |

**ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES,
(B) SCHEDULING CERTAIN DATES WITH RESPECT
THERETO, (C) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (D) APPROVING CONTRACT ASSUMPTION AND
ASSIGNMENT PROCEDURES, AND (E) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**"), (a) approving the bidding procedures in connection with the sale or transactions involving all, substantially all, or a portion of, the Debtors' assets (the "**Assets**") attached hereto as **Schedule 1** (the "**Bidding Procedures**") free and clear of liens, claims, encumbrances, and other interests (the "**Sale**"), (b) subject to final Court approval of the Stalking Horse Approval Order (as defined below), authorizing, but not directing, the Debtors, in their discretion, to select one or more Stalking Horse Bidder(s), (c) authorizing the Debtors to conduct an auction (the "**Auction**") and a hearing (the "**Sale Hearing**") to approve the sale of Assets, if needed, (d) approving the form and manner of notice of the Bidding Procedures, the Auction (if any), and Sale Hearing substantially in the form attached hereto as **Schedule 2** (the "**Sale Notice**"), (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Debtors' reply in support of the Motion, as applicable.

1

(collectively, the "**Contracts**") in connection with the Sale (the **Assumption and Assignment Procedures**"), and approving the form and manner of the notice thereof, substantially in the form attached hereto as __**Schedule 3**__ (the "**Cure Notice**"), and (f) granting other related relief; and the Court having considered the Motion, and the arguments of counsel made, the First Day Declaration, the Kroll Declaration, the Finger Declaration, and the evidence adduced, at the hearing, if any, on the Motion; and due and sufficient notice of the Motion and this Order having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.     This Court has jurisdiction over this matter, over the property of the Debtors, and to consider the Motion under 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The predicates for relief requested by the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006(a), 9006, 9007, 9008, and 9014, and Local Bankruptcy Rules 3017-1, 6004-1, and 9006-1.

---

[3]   The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

AMERICAS 124371612

C.      The relief granted herein is in the best interests of the Debtors, their estates, and other parties in interest.

D.      The Debtors have articulated good and sufficient business reasons for the Court to grant the Motion to the extent provided in this Order, including: (a) approving the Bidding Procedures, attached hereto as **Schedule 1**, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as **Schedule 2**, (b) authorizing, but not directing, the Debtors, in consultation with the Consultation Parties, to designate one or more Stalking Horse Bidder(s) and approving procedures to seek approval of Bid Protections in accordance with the Bidding Procedures, (c) scheduling an Auction and a Sale Hearing in connection with the Sale, and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form of the Cure Notice, attached hereto as **Schedule 3**.

E.      The Debtors provided good, sufficient, and adequate notice of the Motion.  Such notice is reasonably calculated to provide all interested parties with timely and proper notice under the Bankruptcy Rules, and no other or further notice of, or hearing on, each is necessary or required. A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

F.      In accordance with Local Bankruptcy Rule 6004-1, the Debtors have provided sufficient and adequate notice of the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

G. The proposed Sale Notice and the Cure Notice are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other or further notice shall be required for the Sale Hearing or the assumption and assignment of the Assumed Contracts.

H. The process for filing the Stalking Horse Notice and the granting of any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice.

I. The Bidding Procedures, substantially in the form attached hereto, are fair, reasonable and appropriate, and are reasonably designed to maximize the value to be achieved for the Assets.

J. The Assumption and Assignment Procedures provided for herein and the Cure Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, and have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of Assumed Contracts and related Cure Costs.

K. Entry of this Order is in the best interests of the Debtors' estates, their creditors, their stakeholders, and all other interested parties.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion and the relief requested therein is GRANTED as set forth herein.

**Important Dates and Deadlines**

2. The following dates and deadlines regarding the Sale are hereby established, subject to the Bidding Procedures and the rights of the Debtors to modify such dates:

4

| Event or Deadline | Date and Time[4] |
|---|---|
| Indication of Interest Deadline | July 31, 2023 at 5:00 p.m. (ET) |
| Deadline for Debtors to file the Cure Notice | As soon as reasonably practicable after Indication of Interest Deadline |
| Deadline to object to the Cure Notice | Fourteen (14) calendar days after service of the Cure Notice at 4:00 p.m. (ET) |
| Stalking Horse Notice Deadline | August 17, 2023 at 5:00 p.m. (ET) |
| Deadline to object to the Stalking Horse Notice | Five (5) business days after the service of the Stalking Horse Notice at 4:00 p.m. (ET) |
| Deadline to for Debtors to submit form of Sale Order and purchase agreement | August 18, 2023 (or if deadline to object to the Sale is extended, seven (7) days prior to the extended Sale objection deadline) |
| Bid Deadline | August 24, 2023 at 5:00 p.m. (ET) |
| Deadline to object to the Sale | August 25, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to notify all Qualified Bidders of the highest or otherwise best Qualified Bid | August 29, 2023 |
| Auction (if required) | August 31, 2023 at 10:30 a.m. (ET) |
| Deadline for objection to Successful Bidder and adequate assurance of future performance | September 5, 2023 at 4:00 p.m. (ET) |
| Deadline to file replies in support of Sale | 4:00 p.m. (ET) on the date that is two (2) business days prior to the Sale Hearing |
| Sale Hearing | On or about September 12, 2023 at [●] (ET), or as soon thereafter as the Court's calendar permits |

**Successful Bidder**

3.      The Debtors shall present the results of the Auction (if any) or otherwise present

the Successful Bidder (as defined in the Bidding Procedures) to the Court at the Sale Hearing.

**Bidding Procedures, Auction and Sale Hearing**

---

[4]      All dates and deadlines are subject to Bankruptcy Rule 9006.

4.      The Bidding Procedures, as attached hereto as **<u>Schedule 1</u>**, are approved in their entirety, incorporated herein by reference as if fully set forth herein, and the Debtors are authorized to solicit Bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern all Bids and Bid proceedings relating to the Assets. Without limiting the generality of the foregoing, the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids, and any party desiring to submit a Bid must do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

5.      If no Qualified Bid other than any Stalking Horse Bid is submitted by the Bid Deadline, the Debtors may not hold an Auction and may request at the Sale Hearing that the Court approve the Stalking Horse APA.

6.      The Auction may be conducted via remote video or in-person, at the Debtors' election.  In the event the Debtors elect to conduct the Auction in-person, the Auction shall take place at the offices of White & Case LLP**,** 1221 Avenue of the Americas, New York, NY 10020 or such other location as may be determined by the Debtors.  The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures (including with respect to consultation with the Consultation Parties), to take actions necessary, in the reasonable discretion of the Debtors, to conduct and implement the Auction.

7.      Except as otherwise determined by the Debtors, only the following parties and their respective representatives and counsel shall be entitled to attend the Auction:  (i) the Debtors; (ii) the Consultation Parties; (iii) any Qualified Bidder; (iv) the U.S. Trustee; and (v) any other creditor of the Debtors that delivers to Debtors' counsel a written request to attend the

Auction (by email to andrea.kropp@whitecase.com and doah.kim@whitecase.com) no later than 24 hours prior to the commencement of the Auction; *provided* that the Debtors reserve the right, subject to consultation with the Consultation Parties, to retract their permission at any point during the Auction if the creditor does not act in good faith and in an orderly fashion during the Auction; *provided further* that the Debtors may, in their sole discretion, subject to consultation with the Consultation Parties, establish a reasonable limit on the number of advisors that may appear on behalf of each party.  Only the Debtors and Qualified Bidders shall be permitted to participate in the Auction and only Qualified Bidders shall be entitled to make any Bids at the Auction.

8.     The Debtors and their professionals shall direct and preside over the Auction, and the Auction shall be transcribed and conducted openly.  Each Qualified Bidder participating in the Auction must confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) it has reviewed, understands, and accepts the Bidding Procedures, and (iii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

9.     The Debtors are authorized, subject to consultation with the Consultation Parties as set forth in the Bidding Procedures and in a manner consistent with their fiduciary duties and applicable law: (i) determine whether a Bid is a Qualified Bid; (ii) determine which Bid at the Auction is the highest or otherwise best Bid; (iii) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (iv) waive terms and conditions set forth herein with respect to all Bidders; (v) impose additional terms and conditions at the Auction with respect to all Bidders; (vi) extend

7

the key dates and deadlines set forth herein; (vii) continue or cancel the Auction by filing a notice or in open court without further notice; (viii) modify the Bidding Procedures, as required to maximize the value of the Debtors' Assets, including as a result of market conditions, *provided* that the Bid Protections shall not be modified absent further order of this Court; and (ix) implement additional procedural rules that the Debtors determine, in their business judgment, will better promote the goals of the bidding process and discharge their fiduciary duties and are not inconsistent with any Court order.  Without limiting the generality of the foregoing, the Debtors, in consultation with the Consultation Parties, may announce on the record at the Auction additional procedural rules.

10.     The failure to specifically include or reference any particular provision, section, or procedure of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, section, or procedure, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

11.     As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file a notice setting forth the identity of the Successful Bidder and containing a copy and/or summarizing the terms of the successful proposal.

12.     The Court shall convene the Sale Hearing on **September ___, 2023 at _____ (prevailing Eastern Time)**, to consider approval of the Sale to the Successful Bidder(s) or Next-Highest Bidder(s) and the entry of the Sale Order.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Next-Highest Bidder(s).  Subject to consultation with the Consultation Parties, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in

interest other than by announcement of said adjournment at the Sale Hearing and/or in notice or agenda filed with the Court.

13.    Objections to approval of the Sale must be in writing, state the basis of such objection with specificity, and be filed with the Court and served on or before **August 25, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"), on (a) proposed counsel to the Debtors, (i) White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E Laura (tlauria@whitecase.com), Matthew C. Brown (mbrown@whitecase.com), and Fan B. He (fhe@whitecase.com), White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: David M. Turetsky (david.turetsky@whitecase.com) and Adam Cieply (adam.cieply@whitecase.com), and (ii) Richards, Layton, & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn.: Kevin Gross (gross@rlf.com), Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), Amanda R. Steele (steele@rlf.com), (b) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), and (c) proposed counsel to the official committee of unsecured creditors that has been appointed in the Chapter 11 Cases (the "**Committee**"), (i) Troutman Pepper LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE 19801, Attn: David M. Fournier (david.fournier@troutman.com), Marcy McLaughlin Smith (marcy.smith@troutman.com) and Tori L. Remington (tori.remington@troutman.com), (ii) Troutman Pepper LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103-2799, Attn: Francis J. Lawall (francis.lawall@troutman.com), and (iii) Troutman Pepper LLP, 875 Third Avenue, New York, NY 10022, Attn: Deborah Kovsky-Apap (deborah.kovsky@troutman.com); *provided*, that any objection to the Sale to the Successful Bidder and adequate assurance of future performance shall

9

be filed on or before **September 5, 2023 at 4:00 p.m. (prevailing Eastern Time)** and served on the same parties.

### Designation of Stalking Horse Bidder

14.     The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, subject to consultation with the Consultation Parties, to (a) designate a Stalking Horse Bidder, (b) enter into the Stalking Horse APA, and (c) agree to (i) a break-up fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (ii) reimburse or incur the obligation to reimburse reasonable expenses actually incurred by the Stalking Horse Bidder in connection with its bid, which shall not exceed the maximum amount set forth in the Stalking Horse Notice (defined below) (collectively the "**Bid Protections**"), *provided*, *however*, that no Bid Protections in any amount are being approved herein and any such approval shall be subject to further order of this Court as set forth herein.

15.     Notwithstanding anything in the Bid Procedures or this Order to the contrary, in the event that the Debtors designate one or more Stalking Horse Bidders, seek to enter into one or more Stalking Horse APAs, or determine to offer Bid Protections to any Stalking Horse Bidder(s), the Debtors shall disclose such information in a corresponding notice (the "**Stalking Horse Notice**"), to be filed pursuant to the Bid Procedures on or before **August 17, 2023, at 5:00 p.m. (prevailing Eastern Time)** (the "**Stalking Horse Notice Deadline**") and served by email, where available, or otherwise by first class mail, to: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (b) the Consultation Parties; (c)(i) Foxconn; (ii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Internal Revenue Service; (iv) the Securities and Exchange

AMERICAS 124371612

Commission; (v) the United States Attorney for the District of Delaware; (vi) the state attorneys general for all states in which the Debtors conduct business; and (vii) any parties who have asserted liens against the Debtors' assets; and (viii) any such other party entitled to receive notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (the "**Service Parties**"); (d) all Contract Counterparties (as defined below); and (e) any other parties as directed by the Court (collectively, the "**Stalking Horse Notice Parties**").  The Stalking Horse Bidder Notice, if filed, shall also include: (i) a copy of the Stalking Horse APAs; (ii) a declaration in support of the proposed Bid Protections (the "**Bid Protections Declaration**"); and (iii) a proposed form of order approving the designation of the Stalking Horse Bidder, the Stalking Horse APA, and any Bid Protections (the "**Stalking Horse Approval Order**").

16.     Any objections to the designation of one or more Stalking Horse Bidders or any of the terms of the Stalking Horse Bid, including the Bid Protections set forth in the Stalking Horse Notice (a "**Stalking Horse Objection**") shall: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Stalking Horse Notice Parties and the proposed Stalking Horse Bidder within five (5) business days after the service of the Stalking Horse Notice.

17.     The Stalking Horse Notice and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code.  For the avoidance of doubt, nothing in this Order is shifting the Debtors' burden of proof that the Bid Protections are actually necessary to preserve the value of the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code.

AMERICAS 124371612

18.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before August 28, 2023 (but in no event fewer than five (5) business days after the service of the Stalking Horse Notice).  Absent any timely Stalking Horse Objection, the Court may enter the Stalking Horse Approval Order without further hearing.

**Assumption and Assignment Procedures**

19.     As soon as reasonably practicable after the Indication of Interest Deadline, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice, substantially in the form attached as **Schedule 3** to this Order (the "**Cure Notice**") on non-Debtor Contract counterparties to Contracts that may be assumed (collectively, the "**Contract Counterparties**," and each, a "**Contract Counterparty**"), and post the Cure Notice to the case website (http://kccllc.net/lordstown).  The Cure Notice shall list the Contracts that the Debtors determine, in their business judgment, are likely to potentially be assumed in connection with a Sale and any such other Contracts as the Debtors may determine to include in their business judgment.  For the avoidance of any doubt, the Debtors shall not be required to file any Cure Notice to the extent that the Debtors have not received any Indication of Interest indicating an intention to assume any Contracts.  The Debtors may supplement the Cure Notice from time to time as necessary or desirable.

20.     The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (the "**Assumed Contracts**," each individually, an "**Assumed Contract**"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of

12

the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assumed Contract (the "**Cure Costs**"); and (iv) the deadline by which any Contract Counterparty to an Assumed Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a Cure Notice does not constitute an admission that such Assumed Contract is an executory contract or unexpired lease or that such Assumed Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

21.     Objections, if any, to a Cure Notice (each, a "**Cure Objection**") must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days from date of the service of the Cure Notice, and be served on the Notice Parties.

22.     A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assumed Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

23.     Any Cure Objection to the proposed assumption and assignment of an Assumed Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned

AMERICAS 124371612

only upon satisfactory resolution of the Cure Objection, to be determined in the reasonable discretion of the Debtors and the Successful Bidder. To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Debtors and the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing. If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should not be assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

24.    If the Debtors discover Contracts inadvertently omitted from the Cure Notice or determine to supplement or modify an existing Cure Notice, or if the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Successful Bidder (if any), at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modifying a previously filed Cure Notice, including modifying the previously stated Cure Costs associated with any Contracts (the "**Supplemental Cure Notice**").

25.    Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "**Supplemental Cure Objection**") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any. All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

26.     If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.  If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.

27.     If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file a Cure Objection or a Supplemental Cure Notice in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other pre-closing claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

28.     Cigna Health and Life Insurance Company provides medical, dental, and pharmaceutical coverage for the Debtors' employee benefits plan under three separate insurance policies (collectively, the "**Cigna Policies**").  Notwithstanding anything in this Order to the contrary, unless Cigna and the Debtors agree otherwise, the Debtors shall provide to Cigna, through its counsel of record, with email, no later than three (3) business days prior to the Sale Hearing, written notice of Debtors' irrevocable (subject to closing of the proposed Sale and as

15

otherwise provided herein) decision as to whether or not the Debtors propose to assume and assign the Cigna Policies to the Stalking Horse Purchaser or the Successful Bidder, as applicable as part of the proposed Sale; provided that, the Debtors or the Stalking Horse Purchaser or the Successful Bidder, as applicable, may seek relief from the Court on an expedited basis regarding the reconsideration of any such decision prior to the closing of a Sale..

**Notice Procedures**

29.     The form of the Sale Notice and the Cure Notice annexed hereto are hereby approved, and are appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

30.     As soon as reasonably practicable upon entry of this Order, the Debtors will cause the Sale Notice, substantially in the form attached hereto as **<u>Schedule 2</u>**, to be served on (a) the Service Parties, and (b) any parties that have expressed written interest in pursuing a potential transaction in connection with the marketing process.

31.     As soon as practicable following the entry of this Order, the Debtors shall cause the Sale Notice to be published once in the national edition of *The Wall Street Journal* and the *Automotive News*.  The Debtors shall also post the Sale Notice on the Debtors' restructuring website, http://kccllc.net/lordstown.

32.     Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

AMERICAS 124371612

33.     All parties (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction, and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputed relating to any of the foregoing matters.

34.     Notwithstanding anything to the contrary herein, nothing in this Order shall prevent the Committee from filing a motion to terminate the bidding process at any point if the Committee determines, in its judgment, that continuation of the bidding process would not benefit the estates and their creditors, and nothing herein shall prejudice the Debtors' rights in objecting (or otherwise with respect) to such motion or the relief sought therein.

35.     For the avoidance of any doubt, nothing in this Order shall constitute (a) approval of any Sale, (b) a finding that any property is or is not property of the Debtors' estates, (c) a finding regarding the rights or interests that any party may have with respect to property of the Debtors' estates or property that is in the possession, custody, or control of any Debtor, or (d) a determination regarding whether a Sale of any property may occur absent an adversary proceeding pursuant to Bankruptcy Rule 7001.  The rights of the Debtors, the Committee, and all other parties in interest are fully reserved with respect to these issues.

36.     The Debtors are hereby authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established by this Order.

37.     In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall govern and control in all respects.

AMERICAS 124371612

38.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

39.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

## <u>Schedule 1</u>

## Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On June 27, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be used with respect to the sale(s) or disposition(s) (collectively, the "**Sale**") of substantially all, or a portion of, the assets of the Debtors (the "**Assets**").[2]

The Bidding Procedures set forth a process that will allow all potentially interested parties a full and fair opportunity to develop their proposals into an actionable transaction and the Debtors to consider any and all proposals in an organized manner.  This process is intended to obtain a transaction proposal that is in the best interests of the Debtors and their creditors and stakeholders.

## Key Dates and Deadlines

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in an auction to be conducted by the Debtors (the "**Auction**") and to submit competing bids for transactions involving the acquisition of substantially all, or a portion of, the Debtors' Assets.  The key dates and deadlines for the auction process are as follows:

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion For Entry of Orders (I)(A) Establishing Bidding and Notice Procedures, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief, and (II) (A) Authorizing the Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief* [Docket No. 16].

| Event or Deadline | Date and Time[3] |
|---|---|
| Hearing to consider entry of the Bidding Procedures Order | July 27, 2023 at 9:30 a.m. (ET) |
| Indication of Interest Deadline | July 31, 2023 at 5:00 p.m. (ET) |
| Deadline for Debtors to file the Cure Notice | As soon as reasonably practicable after Indication of Interest Deadline |
| Deadline to object to the Cure Notice | Fourteen (14) calendar days after service of the Cure Notice at 4:00 p.m. (ET) |
| Stalking Horse Notice Deadline | August 17, 2023 at 5:00 p.m. (ET) |
| Deadline to object to the Stalking Horse Notice | Five (5) business days after the service of the Stalking Horse Notice at 4:00 p.m. (ET) |
| Deadline for Debtors to submit form of Sale Order and purchase agreement | August 18, 2023 (or if deadline to object to the Sale is extended, seven (7) days prior to the extended Sale objection deadline) |
| Bid Deadline | August 24, 2023 at 5:00 p.m. (ET) |
| Deadline to object to the Sale | August 25, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to notify all Qualified Bidders of the highest or otherwise best Qualified Bid | August 29, 2023 |
| Auction (if required) | August 31, 2023 at 10:30 a.m. (ET) |
| Deadline for objection to Successful Bidder and adequate assurance of future performance | September 5, 2023 at 4:00 p.m. (ET) |
| Deadline to file replies in support of Sale | 4:00 p.m. (ET) on the date that is two (2) business days prior to the Sale Hearing |
| Sale Hearing | On or about September 12, 2023 at [●] (ET), or as soon thereafter as the Court's calendar permits |

**Qualifications to Access Diligence Materials and Participate in Bidding**

To participate in the bidding process and to receive access to due diligence materials (the "**Diligence Materials**"), a party must, to the extent not submitted prior to the approval of the Bidding Procedures, submit to the Debtors (i) an executed confidentiality agreement in form and

---

[3]     All dates and deadlines are subject to Bankruptcy Rule 9006.

substance satisfactory to the Debtors and (ii) reasonable evidence demonstrating the party's financial capability to consummate a transaction on terms sufficient to confirm and consummate the Sale (a "**Potential Transaction**") as determined by the Debtors in their reasonable business judgment.  No party will be permitted to conduct any due diligence without entering into a confidentiality agreement.

A party who qualifies for access to Diligence Materials shall be a "**Potential Bidder**."  The Debtors will afford any Potential Bidder the time and opportunity to conduct due diligence, as determined by the Debtors in their reasonable discretion and within the deadlines referenced above.  All due diligence requests must be directed to Jefferies LLC ("**Jefferies**") or such other party as the Debtors may designate in writing. Potential Bidders shall not, directly or indirectly, contract or initiate or engage in discussions in respect of matters relating to the Debtors or a Potential Transaction with any employee, officer, directors, independent contractors, customer, supplier, equity holder, or contractual counterparty of the Debtors without the prior written consent of the Debtors or Jefferies.

For the avoidance of any doubt, (a) the Debtors shall have no obligation to provide information to any Potential Bidder who, in the Debtors' reasonable business judgment, has not established or who has raised doubt that such Potential Bidder intends in good faith, or has the capacity to, consummate any Sale and (b) with respect to any Potential Bidder (i) that is a competitor or customer of the Debtors (or who is affiliated with any competitor or customer of the Debtors) or (ii) for which the Debtors determine, in their business judgment, that providing any diligence material would be detrimental to the Debtors, the Debtors may withhold or modify any diligence materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder.

 Neither the Debtors nor their representatives shall be obligated to furnish Diligence Materials of any kind whatsoever to any person that is not determined to be a Potential Bidder. The Debtors shall inform the Consultation Parties[4] of any person or entity that becomes a Potential Bidder and shall consult with the Consultation Parties (a) with respect to any due diligence disputes that arise concerning any such entity and (b) prior to revoking due diligence access to any such entity.

## Communications with Potential Bidders

Except to the extent otherwise indicated by the Debtors in writing, all substantive direct communications, including any diligence requests, from Potential Bidders and Qualified Bidders shall be through Jefferies (via email shall be acceptable), 520 Madison Avenue, New York, NY 10022, Attn.: Sean Costello (scostello@jefferies.com), Jeff Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), Kelly Pasekoff (kpasekoff@jefferies.com) and Kevin Lisanti (klisanti@jefferies.com).

---

[4]     The "**Consultation Parties**" shall be the official committee of unsecured creditors appointed in these chapter 11 cases (a "**Committee**").  Notwithstanding anything to the contrary contained herein, the Debtors shall not be required to consult with a Consultation Party (or its advisors) that is actively participating as a Potential Bidder for the Assets.

## Stalking Horse Designation

A.    *Designation of the Stalking Horse Bidder*

The Debtors may, at any time prior to the Auction, in consultation with the Consultation Parties and subject to entry of a Stalking Horse Approval Order (as defined below) by the Court, designate one or more stalking horse bidder(s) (each, a "**Stalking Horse Bidder**"), whose Qualified Bid shall serve as the stalking horse bid for substantially all, or a portion of, the Assets of the Debtors (each, a "**Stalking Horse Bid**"). Any asset purchase agreement memorializing the proposed transaction set forth in a Stalking Horse Bid (each, a "**Stalking Horse APA**") shall be binding on the Stalking Horse Bidder and shall be subject to higher or otherwise better Qualified Bids. If the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bidder may still serve as the Back-Up Bidder, if its bid represents the second-highest or otherwise best bid after the Auction. Notwithstanding any of the foregoing, the Debtors are not obligated to select any Stalking Horse Bidder and may proceed to the Auction without one.

In the event that the Debtors designate one or more Stalking Horse Bidders, seek to enter into one or more Stalking Horse APAs, or determine to offer Bid Protections to any Stalking Horse Bidder(s), the Debtors shall disclose such information in a corresponding notice (the "**Stalking Horse Notice**"), to be filed pursuant to the Bid Procedures on or before **August 17, 2023, at 5:00 p.m. (prevailing Eastern Time)** (the "**Stalking Horse Notice Deadline**") and served by email, where available, or otherwise by first class mail, to: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (b) the Consultation Parties; (c)(i) Foxconn; (ii) holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the United States Attorney for the District of Delaware; (vi) the state attorneys general for all states in which the Debtors conduct business; and (vii) any parties who have asserted liens against the Debtors' assets; and (viii) any such other party entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (d) all non-Debtor Contract counterparties to Contracts that may be assumed (collectively, the "**Contract Counterparties**," and each, a "**Contract Counterparty**"); and (e) any other parties as directed by the Court (collectively, the "**Stalking Horse Notice Parties**"). The Stalking Horse Bidder Notice, if filed, shall also include: (i) a copy of the Stalking Horse APA; (ii) a declaration in support of the proposed Bid Protections (the "**Bid Protections Declaration**"); and (iii) a proposed form of order approving the designation of the Stalking Horse Bidder and Stalking Horse APA and the Bid Protections (the "**Stalking Horse Approval Order**").

The Stalking Horse Notice shall: (a) set forth the identity of the Stalking Horse Bidder(s) (and if any Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid(s); (c) state whether any Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) specify any proposed bid protections, including (i) a break-up fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (ii) reimbursement of reasonable expenses actually incurred by the Stalking Horse Bidder in connection with its bid, which shall not exceed the maximum amount set forth in the Stalking Horse Notice (the "**Bid Protections**"); (e) attach (i) the Stalking Horse APA(s), and (ii) if a form purchase agreement has been previously provided by the Debtors, a redline of the Stalking Horse APA against the form purchase agreement to reflect any proposed amendments and modifications to the form purchase agreement; (f) attach (i) a form of proposed sale order agreed to by the

Stalking Horse and (ii) if a form sale order has been provided by the Debtors, a redline comparison against such form sale order; (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections (which shall be five (5) business days after the service of the Stalking Horse Notice) (the "**Stalking Horse Objection Deadline**"); and (h) attach (1) a declaration in support of the proposed Bid Protections (the "**Bid Protections Declaration**") and (2) a form of proposed order approving the designation of the Stalking Horse Bidder, the Stalking Horse APA, and any Bid Protections (the "**Stalking Horse Approval Order**").  The Stalking Horse Notice and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code.

B.     *Stalking Horse Objections*

Any objections to the designation of one or more Stalking Horse Bidders or any of the terms of a Stalking Horse Bid, including the Bid Protections set forth in the Stalking Horse Notice (a "**Stalking Horse Objection**"), shall: (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Stalking Horse Notice Parties and the proposed Stalking Horse Bidder within five (5) business days after the service of the Stalking Horse Notice.

If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before August 28, 2023 (but in no event fewer than five (5) business days after the service of the Stalking Horse Notice).  Absent any timely Stalking Horse Objection, the Court may enter the Stalking Horse Approval Order without further hearing.

### Qualifications to Submit Bids and Participate in Auction

A.     *Indication of Interest Deadline*

Any party interested in purchasing the Debtors' Assets shall submit a non-binding indication of interest (each, an "**Indication of Interest**") in writing, so as to be actually received on or before **July 31, 2023 at 5:00 p.m. (prevailing Eastern Time)** (as may be extended without notice or hearing by the Debtors, the "**Indication of Interest Deadline**") by (a) proposed counsel to the Debtors, (i) White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E Lauria (tlauria@whitecase.com), Matthew C. Brown (mbrown@whitecase.com), and Fan B. He (fhe@whitecase.com), White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: David M. Turetsky (david.turetsky@whitecase.com) and Adam Cieply (adam.cieply@whitecase.com), and (ii) Richards, Layton, & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn.: Kevin Gross (gross@rlf.com), Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), Amanda R. Steele (steele@rlf.com), (b) the Debtors' proposed investment banker, Jefferies LLC, 520 Madison Avenue, New York, NY 10022, Attn.: Sean Costello (scostello@jefferies.com), Jeff Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), Kelly Pasekoff (kpasekoff@jefferies.com) and Kevin Lisanti (klisanti@jefferies.com), and (c) the Debtors' proposed restructuring advisors, Silverman Consulting, One North Wacker Drive, Suite 3925, Chicago, IL 60606, Attn.: Scott Kohler (skohler@silvermanconsulting.net) and Constadinos Tsitsis (ctsitsis@silvermanconsulting.net)

(collectively, the "**Notice Parties**").  The Debtors shall provide to the Consultation Parties copies of each Indication of Interest received by the Debtors as soon as reasonably practicable following receipt of such Indication of Interest, but in no event later than the next business day following receipt.

The Indication of Interest should (i) identify whether the party is interested in acquiring all or substantially all of the Assets or any number or combination of Assets, and shall identify which Assets it intends to purchase, (ii) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, including any liabilities to be assumed and other forms of non-cash consideration acceptable to the Debtors in their sole discretion, (iii) identify any proposed conditions to closing the transaction, (iv) identify whether the party intends to serve as a Stalking Horse Bidder, (v) describe how the party proposes to finance the proposed transaction and any potential sources of financing, (vi) provide a summary of due diligence necessary to make a Bid, (vii) set forth the level and timing of review and approvals that the Indication of Interest has received within the party's organization, including any material preconditions to the consummation of the Transaction, and (viii) set forth contemplated timeline and interim requirements to complete the Transaction.

Indications of Interest should be submitted to the Debtors by the Indication of Interest Deadline.  Note that submitting an Indication of Interest by the Indication of Interest Deadline does not obligate the submitting party to submit a formal bid or to participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadline to participate in the Auction, each as defined below.

B.     *Bid Deadline and Auction Qualification Process*

To be eligible to participate in the Auction, a party must be a Potential Bidder and must submit an offer for a Potential Transaction (each, a "**Bid**" and the Potential Bidder that submits such Bid, a "**Bidder**"), in writing, so as to be **actually received on or before August 24, 2023 at 5:00 p.m. (prevailing Eastern Time)** (as may be extended without notice or hearing by the Debtors, in consultation with the Consultation Parties, the "**Bid Deadline**") by the Notice Parties.[5] The Debtors shall provide to the Consultation Parties copies of each Bid received by the Debtors as soon as reasonably practicable following receipt of such Bid, but in no event later than the next business day following receipt.

All Bids must comply with the following requirements:

1.  fully disclose the identity of each entity that will be directly or indirectly participating in connection with such Bid, the complete terms of any such participation (including any agreements, arrangements, or understandings concerning a collaborative or joint bid or any

---

[5]     The Debtors will also consider proposals to acquire any or all of the Assets in connection with the sale process.  Should any such proposal be received prior to the Bid Deadline that the Debtors, following consultation with the Consultation Parties, concludes is in the best interest of the estate and its stakeholders, then the Debtors reserve the right to postpone the Auction and proceed toward the confirmation of a plan.  Without limiting the foregoing, the Debtors also reserve the right, following consultation with the Consultation Parties, to consider such proposal as a Bid and to consider such a Bid in connection with any Auction.

other combination concerning the Bid), and the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Bidder;

2. set forth (a) the purchase price to be paid by such Bidder and forms of consideration, including all cash and non-cash consideration, the Potential Bidder intends to use to pay such purchase price, which purchase price should be a single point value in U.S. Dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt free basis and (b) the value(s) in U.S. Dollars that the Potential Bidder ascribes to each component (including cash and non-cash consideration);

3. provide evidence, in form and substance satisfactory to the Debtors, of its financial ability to consummate the Bid;

4. state with specificity the Assets (including any specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including any applicable cure costs) to be assumed by the Bidder in the Sale;

5. provide, other than as may be exclusively applicable to any Stalking Horse Bidder, if designated, that the Bid is not subject to any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Assets; *provided* that, in the event any Stalking Horse Bidder for all, substantially all, or any portion of the Assets is designated, all bids must provide consideration to the Debtors of at least the sum of (a) the applicable Stalking Horse Bid, b) the amount of any Bid Protections, and (c) a reasonable minimum overbid amount equal to or greater than $100,000 or such other amount determined by the Debtors in consultation with the Consultation Parties over the Stalking Horse Bid;

6. agree that the Bidder's offer is binding, unconditional, and irrevocable until five (5) business days after the closing of the Sale, except as may otherwise be specified in any binding agreement entered into between a Potential Bidder and the Debtors;

7. contain a commitment to close as soon as possible, but in no event later than September 29, 2023.  The Debtors may consider a Bid that proposes to close after September 29, 2023, including if the Bidder commits to provide sufficient funding to cover the costs of administering these cases after such date;

8. provide that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, regulatory approvals, shareholder, board or other internal approvals, or due diligence;

9. include a written acknowledgment and representation that the Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Sale before making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Sale in making its Bid; (c) did not rely upon any written or oral

statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets, Sale, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed form of definitive agreement; and (d) the Bidder did not engage in any collusive conduct with respect to any Bids, the Auction, or the Sale and acted in good faith in submitting its Bid;

10. include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Potential Transaction; provided that if the Bidder is an entity specially formed for the purpose of effectuating such Bid, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Bid by the equity holder(s) of such Bidder;

11. agree that the sale of the Assets shall be on an "as is, where is" and "with all defects" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent agreed to by the Debtors;

12. include a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and

13. provide that the Bidder agrees to serve as the Back-Up Bidder if the Bidder's Qualified Bid is the Back-Up Bid with respect to the relevant Assets through the Closing Date.

**Proposed Transaction Agreement**: Each Bid must be accompanied by (i) an executed purchase agreement in form and substance satisfactory to the Debtors (a "**Qualified Bid Purchase Agreement**"), and (ii) if a Stalking Horse APA has been entered into, or if the Debtors provide a form purchase agreement, a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the Stalking Horse APA or the form purchase agreement, as applicable, and the applicable schedules and exhibits.

**Adequate Assurance Information**: Each Bid must be accompanied by adequate assurance of future performance information (the "**Adequate Assurance Information"),** which may include (i) information demonstrating (in the Debtors' reasonable business judgment) that the Bidder has the financial capacity to consummate the proposed Sale, (ii) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iii) such additional information regarding the Bidder as the Bidder may elect to include. By submitting a Bid, the Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties in the event that the Debtors determines such bid to be a Qualified Bid.

**Good Faith Deposit**: Each Bid must be accompanied by (i) a deposit in the form of wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the total cash and non-cash consideration of the Bid (excluding the value of the liabilities and obligations (including any applicable cure costs) to be assumed by the Potential Bidder in the Sale), which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtors (a "**Good Faith Deposit**"), and (ii) written evidence, documented to

the Debtors' satisfaction, that demonstrates the Bidder has available cash, a commitment for financing if selected as the Successful Bidder with respect to the relevant Assets (*provided, however,* that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties.

A Bid shall constitute a "**Qualified Bid**," and each Bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**," if the Debtors determine, subject to consultation with the Consultation Parties, that such Bid meets the qualifications set forth above.

Within three business days after the Bid Deadline, the Debtors will notify each Bidder whether such party is a Qualified Bidder.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to improve the terms of the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, subject to consultation with the Consultation Parties, the Debtors reserve the right to work with (a) Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder and their Bid a single Qualified Bid for purposes of the Auction).

### Auction

If at least two Qualified Bids with respect to any particular Assets is received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid with respect to such Assets subject to consultation with the Consultation Parties as set forth herein. If no Qualified Bid other than any Stalking Horse Bid is submitted by the Bid Deadline, the Debtors will not hold an Auction and may request at the Sale Hearing that the Court approve the Stalking Horse APA. If the Debtors elect not to conduct an Auction because the Debtors did not receive a Qualified Bid, then the Debtors shall file a notice with the Court of such election within one business day of the determination of such election by the Debtors.

For the avoidance of doubt, any Stalking Horse Bid will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements

pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder. The Debtors shall inform the Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid(s) (as defined below) no later than **August 28, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

No later than August 28, 2023, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "**Baseline Bid**"), in consultation with the Consultation Parties, and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders.

A.      **Location and Date of Auction**

The Auction, if any, shall commence on August 31, 2023 at 10:30 a.m. (prevailing Eastern Time) (and may continue to such other date selected by the Debtors) via remote video or in-person.

The Auction shall be conducted via remote video or in-person, at the Debtors' election. In the event the Debtors elect to conduct the Auction in-person, the Auction shall take place at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020 or such other location as may be determined by the Debtors.

By no later than the date that is two (2) business days before the Auction is scheduled to commence, the Debtors shall notify each party permitted to attend the Auction of whether the Auction will be conducted via remote video or in-person.

B.      **Attendees and Participants**

Except as otherwise determined by the Debtors, only the following parties and their respective representatives and counsel shall be entitled to attend the Auction:  (i) the Debtors; (ii) the Consultation Parties; (iii) any Qualified Bidder; (iv) the U.S. Trustee; and (v) any other creditor of the Debtors that delivers to Debtors' counsel a written request to attend the Auction (by email to andrea.kropp@whitecase.com and doah.kim@whitecase.com) no later than 24 hours prior to the commencement of the Auction; *provided* that the Debtors may, in their sole discretion, establish a reasonable limit on the number of advisors that may appear on behalf of each party. Only Qualified Bidders shall be entitled to make any Bids at the Auction.

Each Qualified Bidder participating in the Auction must confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) it has reviewed, understands, and accepts the Bidding Procedures, and (iii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

C.      **Conducting the Auction**

The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed.  Other than as expressly set forth herein, including consultation with the Consultation Parties as set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the best offer.  The Debtors, in consultation with the Consultation Parties, may modify the format of the Auction.

Twenty-four hours before the start of the Auction, each Qualified Bidder and other party participating in the Auction shall identify one individual that will be its spokesperson at the Auction.

Subject to the deadlines set forth herein, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to make one or more continuances of the Auction.

D.    **Consultation With Consultation Parties**

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; *provided, however*, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of their fiduciary duties or inappropriately disclose competitively sensitive information to such Consultation Party.

For the avoidance of any doubt, the Debtors shall not be required to consult with a Consultation Party (or its advisors) that is actively participating as a Potential Bidder for the Assets.

E.    **Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid.  To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

Any Bid submitted at the Auction must include the amount and the form of consideration of the Bid.  Any Bid must remain open and binding on the Bidder.  During the course of the Auction, the Debtors shall, after submission of each Bid, promptly (as permitted by the circumstances) inform the Qualified Bidders of the terms of the previous Bids and inform the Qualified Bidders and state on the record which Bid reflects, in the Debtors' business judgment, and in consultation with the Consultation Parties, the highest or otherwise best Bid and, in reasonable detail, the reasons for such determination.  If the Debtors determine that any submitted Bid is not higher or better, the Debtors shall in consultation with the Consultation Parties promptly (as permitted by the circumstances) inform the Qualified Bidders and state on the record, in reasonable detail, the reasons for such determination.

The Debtors shall announce at the Auction the material terms of each leading Bid, and the basis for determining that such Bid constitutes the leading Bid.

F.    **Closing the Auction**

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid.  Such Qualified Bid shall be declared the "**Successful Bid**" and such Qualified Bidder, the "**Successful Bidder**," at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then prevailing highest or otherwise best Bid.  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Court notice of the Successful Bid and Successful Bidder.

G.    **Back-Up Bidder**

The Qualified Bidder with the next highest and otherwise best bid to the Successful Bid at the Auction, as determined by the Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, will be designated as the backup bidder (the "**Back-Up Bidder**").  The identity of the Back-Up Bidder and the amount and material terms of the Back-Up Bid (as defined below) shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder.

The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, the Back-Up Bidder's final Overbid (the "**Back-Up Bid**")) open and irrevocable until the closing of the transaction with the Successful Bidder.

If the Successful Bid is terminated for any reason prior to consummation of the transaction contemplated thereby, the Debtors will be authorized, without further order of the Court, to consummate the transaction contemplated by the Back-Up Bid with the Back-Up Bidder.

H.    **Additional Procedures**

The Debtors, in consultation with the Consultation Parties, may announce on the record at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures and do not impose additional requirements on any Qualified Bidder; *provided* that the Qualified Bidders shall have the right to request a telephonic hearing before the Court in the event such party disputes that the proposed additional rule is reasonable or not inconsistent in any material respect with the Bidding Procedures or does not impose additional requirements on the Qualified Bidders.  For the avoidance of any doubt, notwithstanding anything to the contrary herein, no party that submits a Qualified Bid and participates in the Auction shall have any consultation rights with respect to the Auction outside the rights specifically enumerated in this paragraph.

I.    **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow to the Debtors pursuant to terms of the escrow agreement, the applicable definitive agreement between the Qualified Bidder and the Debtors or otherwise pursuant to further order of the Court. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date.  The Good Faith Deposits of any other Qualified

Bidders will be returned as soon as practicable but no later than seven (7) business days following the Auction.

<u>**Consent to Jurisdiction and Authority as Condition to Bidding**</u>

The Qualified Bidders (solely in their capacities as Bidders) shall be deemed to have (1) consented to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these chapter 11 cases, the Bidding Procedures, the Auction, any Proposed Transaction Agreement, any Potential Transaction, or the construction and enforcement of documents relating to any Potential Transaction, (2) **WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE DEBTORS, THESE CHAPTER 11 CASES, THE BIDDING PROCEDURES, THE AUCTION, ANY PROPOSED TRANSACTION AGREEMENT, ANY POTENTIAL TRANSACTION, OR THE CONSTRUCTION AND ENFORCEMENT OF DOCUMENTS RELATING TO ANY POTENTIAL TRANSACTION**, and (3) consented to entry of a final order or judgment in any way related to the Debtors, these chapter 11 cases, the Bidding Procedures, the Auction, any Proposed Transaction Agreement, any Potential Transaction, or the construction and enforcement of documents relating to any Potential Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

<u>**Reservation of Rights of the Debtors and Modifications**</u>

The Debtors reserve their rights, in consultation with the Consultation Parties to the extent set forth herein, to: (i) determine whether a Bid is a Qualified Bid; (ii) determine which Bid at the Auction is the highest or otherwise best Bid; (iii) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (iv) waive terms and conditions set forth herein with respect to all Bidders; (v) impose additional terms and conditions at the Auction with respect to all Bidders; (vi) extend the key dates and deadlines set forth above; (vii) continue or cancel the sale process or the Auction by filing a notice or in open court without further notice; (viii) modify the Bidding Procedures, as required to maximize the value of the Debtors' Assets, including as a result of market conditions; *provided* that the Bid Protections shall not be modified absent further order of the Court; and (ix) implement additional procedural rules that the Debtors determine, in their business judgment, will better promote the goals of the bidding process and discharge their fiduciary duties and are not inconsistent with any Court order.

<u>**Fiduciary Out**</u>

Nothing in these Bid Procedures shall require the board of directors or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Bid Procedures or otherwise, to the extent such board of directors or such similar governing body determines that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations.

## **Schedule 2**

**Sale Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on June 27, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that, on [__], 2023, the Court entered an order [Docket No. [__]] (the "**Bidding Procedures Order**"),[2] (a) approving the bidding and auction procedures in connection with the sale or sales of all or substantially all of the Debtors' assets or any portion thereof, free and clear of liens, claims, encumbrances, and other interests (the "**Sale**"), attached to the Bidding Procedures Order as Schedule 1 (the "**Bidding Procedures**"); (b) subject to final Court approval, authorizing, but not directing, the Debtors to select one or more Stalking Horse Bidder(s) in accordance with the Bidding Procedures; (c) authorizing the Debtors to conduct an auction (the "**Auction**") and a sale hearing (the "**Sale Hearing**") with respect to the Sale; (d) approving the form and manner of the notice of the Bidding Procedures, Auction, and the Sale Hearing, and (f) establishing procedures for the assumption and assignment of the Assumed Contracts (as defined in the Bidding Procedures) to any purchaser(s) of the Assets and approving the manner of notice thereof.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Auction, if any, shall commence on August 31, 2023 at 10:30 a.m. (prevailing Eastern Time) via remote video or in-person, at the Debtors' election.  In the event the Debtors elect to conduct the Auction in-person, the Auction shall take place at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 or such other location as may be determined by the Debtors.  For the avoidance of doubt, any party, other than a Qualified Bidder, that wishes to attend the Auction may do so via remote video.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise determined by the Debtors, only the following parties and their respective representatives and counsel shall be

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     Capitalized terms used but not otherwise defined in this notice shall have the meanings ascribed to such terms in the Bidding Procedures Order or Bidding Procedures, as applicable.

entitled to attend the auction: (i) the Debtors; (ii) the Consultation Parties; (iii) any Qualified Bidder, including the Stalking Horse Bidder (if any); (iv) the U.S. Trustee; and (v) any other creditor of the Debtors that delivers to Debtors' counsel a written request to attend the Auction (by email to andrea.kropp@whitecase.com and doah.kim@whitecase.com) no later than 24 hours prior to commencement of the Auction. Only Qualified Bidders will be entitled to make any Bids at the Auction.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, shall be held before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 North Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801, if any, shall commence on September __, 2023 at _____ (prevailing Eastern Time). The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that objections to approval of the Sale must be in writing, state the basis of such objection with specificity, and be filed with the Court and served before **August 25, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") on the following parties: (a) proposed counsel to the Debtors, (i) White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E Laura (tlauria@whitecase.com), Matthew C. Brown (mbrown@whitecase.com), and Fan B. He (fhe@whitecase.com), White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: David M. Turetsky (david.turetsky@whitecase.com) and Adam Cieply (adam.cieply@whitecase.com), and (ii) Richards, Layton, & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn.: Kevin Gross (gross@rlf.com), Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), Amanda R. Steele (steele@rlf.com), (b) the Office of the United States Trustee for the District of Delaware, and (c) proposed counsel to the official committee of unsecured creditors that has been appointed in the Chapter 11 Cases, (i) Troutman Pepper LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE 19801, Attn: David M. Fournier (david.fournier@troutman.com), Marcy McLaughlin Smith (marcy.smith@troutman.com) and Tori L. Remington (tori.remington@troutman.com), (ii) Troutman Pepper LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103-2799, Attn: Francis J. Lawall (francis.lawall@troutman.com), and (iii) Troutman Pepper LLP, 875 Third Avenue, New York, NY 10022, Attn: Deborah Kovsky-Apap (deborah.kovsky@troutman.com); *provided*, that any objection to the Sale to the Successful Bidder and adequate assurance of future performance shall be filed on or before **September 5, 2023 at 4:00 p.m. (prevailing Eastern Time)** and served on the same parties. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the Bidding Procedures and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict. Copies of the Bidding Procedures Order, the Bidding Procedures, and

all other documents filed with the Court may be obtained by visiting the Debtors' restructuring website at kccllc.net/lordstown.

## CONSEQUENCES OF FAILING TO OBJECT

**ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION TO THE PROPOSED SALE TRANSACTION IN ACCORDANCE WITH THE BID PROCEDURES ORDER AND THIS NOTICE BY THE SALE OBJECTION DEADLINE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE AND TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL INTERESTS.**

## NO SUCCESSOR LIABILITY

**THE SALE WILL BE FREE AND CLEAR OF, AMONG OTHER THINGS, ANY CLAIM ARISING FROM ANY CONDUCT OF THE DEBTORS PRIOR TO THE CLOSING OF THE SALE, WHETHER KNOWN OR UNKNOWN, WHETHER DUE OR TO BECOME DUE, WHETHER ACCRUED, ABSOLUTE, CONTINGENT OR OTHERWISE, SO LONG AS SUCH CLAIM ARISES OUT OF OR RELATES TO EVENTS OCCURRING PRIOR TO THE CLOSING OF THE SALE. ACCORDINGLY, AS A RESULT OF THE SALE, ANY SUCCESSFUL BIDDER WILL NOT BE A SUCCESSOR TO ANY OF THE DEBTORS BY REASON OF ANY THEORY OF LAW OR EQUITY, AND THE SUCCESSFUL BIDDER WILL HAVE NO LIABILITY, EXCEPT AS EXPRESSLY PROVIDED IN THE SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT, FOR ANY LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AGAINST OR IN ANY OF THE DEBTORS UNDER ANY THEORY OF LAW, INCLUDING SUCCESSOR LIABILITY THEORIES.**

Dated: [●], 2023

Respectfully submitted,

/s/ _____

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**Schedule 3**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |

## NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

**You are receiving this notice because you may be a counterparty to a contract or lease with one or more of the above-captioned debtors or debtors in possession (collectively, the "Debtors"). Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that, on June 27, 2023, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that, on [__], 2023, the Court entered an order [Docket No. [●]] (the "**Bidding Procedures Order**"), approving the bidding and auction procedures attached to the Bidding Procedures Order as **Schedule 1** (the "**Bidding Procedures**")[2] for the sale of the Debtors' assets (the "**Assets**") and approval of the sale such Assets to the highest or best qualified bidder (the "**Successful Bidder**"). Pursuant to the Bidding Procedures Order, the Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before the Honorable Mary F. Walrath, United States Bankruptcy Judge, 824 North Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801, if any, shall commence on September __, 2023 at _____ (prevailing Eastern Time). The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Debtors may potentially assume and assign to the Successful Bidder one or more of the executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331

[2] Capitalized terms used but not otherwise defined in this notice shall have the meanings ascribed to such terms in the Bidding Procedures Order or Bidding Procedures, as applicable.

the "**Potentially Assumed Agreements**" and each, a "**Potentially Assumed Agreement**"), pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have indicated on <u>**Schedule A**</u> annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assumed Agreements (in each instance, the "**Cure Amount**").

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assumed Agreements in order for such contract or lease to be assumed and assigned, must file an objection (the "**Cure Objection**") that (i) is in writing; (ii) complies with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) states with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Amount, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) is filed with the Court **no later than 4:00 p.m. (prevailing Eastern Time) on the [____], 2023** (the "**Cure Objection Deadline**"), and is served on (a) proposed counsel to the Debtors, (i) White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131, Attn: Thomas E. Lauria (tlauria@whitecase.com), Matthew C. Brown (mbrown@whitecase.com), and Fan B. He (fhe@whitecase.com), White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: David M. Turetsky (david.turetsky@whitecase.com) and Adam Cieply (adam.cieply@whitecase.com), and (ii) Richards, Layton, & Finger, P.A., 920 North King Street, Wilmington, DE 19801, Attn.: Kevin Gross (gross@rlf.com), Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), Amanda R. Steele (steele@rlf.com), (b) the Debtors' proposed investment banker, Jefferies LLC, 520 Madison Avenue, New York, NY 10022, Attn.: Sean Costello (scostello@jefferies.com), Jeff Finger (jfinger@jefferies.com), Ryan Hamilton (rhamilton@jefferies.com), Kelly Pasekoff (kpasekoff@jefferies.com) and Kevin Lisanti (klisanti@jefferies.com), and (c) the Debtors' proposed restructuring advisors, Silverman Consulting, One North Wacker Drive, Suite 3925, Chicago, IL 60606, Attn.: Scott Kohler (skohler@silvermanconsulting.net) and Constadinos Tsitsis (ctsitsis@silvermanconsulting.net).

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall file a notice identifying the Successful Bidder with the Court **promptly following the conclusion of the Auction,** and serve such notice upon parties in interest. The Auction, if required, will be conducted on August [31], 2023, starting at 10:30 a.m. (prevailing Eastern Time).  The deadline for objecting to the assignment of the Potentially Assumed Agreements to such Successful Bidder on the basis of adequate assurance of future performance ("**Adequate Assurance Objections**") shall be **September 5, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Adequate Assurance Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that unless an Cure Objection is timely and properly filed and served before the Cure Objection Deadline or an Adequate Assurance Objection is timely raised before the Adequate Assurance Objection Deadline, the non-Debtor party to a Potentially Assumed Agreement shall (a) be forever barred from objecting to the Cure Amount

and from asserting any additional cure or other amounts with respect to such Potentially Assumed Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to any assumption and assignment of such Potentially Assumed Agreement; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assumed Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assumed Agreement.  In addition, the proposed Cure Amount set forth in **Schedule A** hereto shall be binding upon the non-Debtor parties to the Potentially Assumed Agreements for all purposes in the Chapter 11 Cases and will constitute a final determination of the Cure Amounts required to be paid by the Debtors in connection with any assumption and assignment of the Potentially Assumed Agreements.

**PLEASE TAKE FURTHER NOTICE** that where a non-Debtor counterparty to a Potentially Assumed Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "**Disputed Cure Amount**"), then (a) the cure amount shall be as agreed between the parties or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court.  All other objections to the proposed assumption and assignment of a Potentially Assumed Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on **Schedule A**, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that the Debtors' decision to assume and assign the Potentially Assumed Agreements is subject to Court approval and consummation of the sale of the Assets.

**PLEASE TAKE FURTHER NOTICE that inclusion of any document on the list of Potentially Assumed Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

Dated: [●], 2023

Respectfully submitted,

/s/_____

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

## Schedule A

**LEASES**

| Landlord Name | Address of Subject Property | Cure Amount |
|---|---|---|
| | | |

**EXECUTORY CONTRACTS**

| Counterparty Name/Address | Description of Contract | Cure Amount |
|---|---|---|
| | | |