# **EXHIBIT C**

**Agreements**



KPMG LLP
345 Park Avenue
New York, NY 10154-0102

Telephone    +1 212 758 9700
Fax              +1 212 758 9819
kpmg.com

May 3, 2023

Lordstown Motors Corp.
2300 Hallock Young Road
Warren, Ohio 44481

Attention: Mr. Keith Feldman, Chairman of the Audit Committee

This letter (Engagement Letter) confirms our understanding of our engagement to provide professional services to Lordstown Motors Corp.

**Objectives and Limitations of Services**

*Audit Services*

We will perform an audit of Lordstown Motors Corp.'s consolidated financial statements. Based on our audit, we will issue a written report on Lordstown Motors Corp.'s consolidated financial statements as set forth in Appendix I, and schedules supporting such financial statements, all of which are to be included in the annual report (Form 10-K) proposed to be filed by Lordstown Motors Corp. under the Securities Exchange Act of 1934.

We have the responsibility to conduct and will conduct the audit of the consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (United States) ("PCAOB"), with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements and schedules conforms with U. S. generally accepted accounting principles. Our report and the consolidated financial statements and schedules are subject to review by the Securities and Exchange Commission (SEC) staff and to the application by them of their interpretation of the relevant rules and regulations.

In conducting the audit, we will perform tests of the accounting records and such other procedures, as we consider necessary in the circumstances, to provide a reasonable basis for our opinion on the consolidated financial statements. We also will assess the accounting policies used and significant estimates made by management, and evaluate the overall consolidated financial statement presentation.

Our audit of the consolidated financial statements is planned and performed to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Accordingly, there is some risk that a material misstatement would remain undetected. Although not absolute assurance, reasonable assurance is a high level of assurance. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is also a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an audit of financial statements performed in accordance with the standards of the PCAOB. Also, an audit is not designed to detect error or fraud that is immaterial to the consolidated financial statements.

Subject to the remainder of this paragraph, we will issue a written report upon completion of our audit addressed to the stockholders and the board of directors of Lordstown Motors Corp. The report will be in a form that is in accordance with the published rules and regulations of the SEC and the standards of the PCAOB. If, for any reason, we are unable to complete the audit or unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. In addition, we cannot provide assurance that an unqualified opinion will be rendered. Circumstances may arise in which it is

KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee.



Lordstown Motors Corp.
May 3, 2023
Page 2 of 12

necessary for us to modify our report, add explanatory or emphasis-of-matter paragraphs or withdraw from the engagement. If, during the performance of our audit procedures, such circumstances arise, we will communicate to the audit committee our reasons for modification or withdrawal. Prior to the issuance of our written report, we will provide a draft and discuss the report with the audit committee.

As part of our audit, we will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements. However, our audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).

*Internal Control over Financial Reporting*

An audit includes obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing, and extent of audit procedures to be performed for the purpose of expressing an opinion on the consolidated financial statements. An audit of the financial statements is not designed to provide assurance on internal control or to identify internal control deficiencies.

The objective of our audit of the consolidated financial statements is not to report on Lordstown Motors Corp.'s internal control and we are not obligated to search for material weaknesses[a] or significant deficiencies[b] as part of our audit of the consolidated financial statements.

*Quarterly Review Services*

We will review the condensed consolidated balance sheets of Lordstown Motors Corp., as set forth in Appendix I, and the related condensed consolidated statements of earnings (operations), stockholders' equity and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by Lordstown Motors Corp. under the Securities Exchange Act of 1934. We will also conduct a review of Lordstown Motors Corp.'s fourth quarter interim financial information if the selected quarterly financial data specified by Item 302 of Regulation S-K is required to be included in the annual report (Form 10-K) proposed to be filed by Lordstown Motors Corp. under the Securities Exchange Act of 1934.

We have the responsibility to conduct our reviews in accordance with the standards of the PCAOB. The objective of a review of interim financial information is to provide us with a basis for communicating whether we

---

[a] A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.

[b] A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting.[c] The term "financial reporting oversight role" means a role in which a person is in a position to or does exercise influence over the contents of the financial statements or anyone who prepares them, such as when the person is a member of the board of directors or similar management or governing body, chief executive officer, president, chief financial officer, chief operating officer, general counsel, chief accounting officer, controller, director of internal audit, director of financial reporting, treasurer, or any equivalent position. It also includes individuals in those roles at subsidiaries or investees when the financial statements they oversee are material to the consolidated financial statements.



Lordstown Motors Corp.
May 3, 2023
Page 3 of 12

are aware of any material modifications that should be made to such interim financial information for it to conform with U.S. generally accepted accounting principles. Our procedures will be substantially less in scope than an audit of financial statements performed in accordance with the standards of the PCAOB, the objective of which is the expression of an opinion regarding the financial statements. Accordingly, we will not express an opinion on Lordstown Motors Corp.'s interim financial information.

Our reviews will consist principally of performing analytical procedures applied to financial data and making inquiries of Lordstown Motors Corp.'s personnel responsible for financial and accounting matters. Our reviews will include obtaining sufficient knowledge of Lordstown Motors Corp.'s business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an audit. Further, a review is not designed to provide assurance on internal control or to identify material weaknesses or significant deficiencies and cannot be relied on to detect errors, fraud, or illegal acts. However, we are responsible for communicating with the audit committee regarding any material weaknesses and significant deficiencies that come to our attention.

As agreed, we will not issue a written report upon completion of each review. Lordstown Motors Corp. understands that any reference to interim financial information as reviewed by us when such information is included in documents issued to stockholders[3] or third parties (including the SEC) will necessitate the issuance of a written review report, which must accompany the interim financial information in the document.

If during the performance of our quarterly review services we become aware of matters that cause us to believe the interim financial information filed, or to be filed, with the SEC, is probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, we will discuss such matters with management and, if appropriate, communicate such matters to the audit committee.

*Comfort Letters*

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933, or an exempt offering, the specific terms of our services will be determined at that time. Prior to our issuance of a comfort letter, management of Lordstown Motors Corp. agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements referred to above and confirm Lordstown Motors Corp.'s responses to certain inquiries made in connection with our issuance of the comfort letter.

**Our Responsibility to Communicate with the Audit Committee and the Board of Directors**

While the objective of our audit of the consolidated financial statements is not to report on Lordstown Motors Corp.'s internal control and we are not obligated to search for material weaknesses or significant deficiencies as part of our audit of the consolidated financial statements, we will communicate material weaknesses or significant deficiencies to the audit committee to the extent they come to our attention. Similarly, we will communicate material weaknesses and significant deficiencies to the audit committee to the extent they come to our attention in performance of quarterly review services.



Lordstown Motors Corp.
May 3, 2023
Page 4 of 12

We will report to the audit committee the following matters prior to the issuance of our audit report:

● An overview of our overall audit strategy, timing of the audit and the significant risks identified during our risk assessment procedures.

● Management's initial selection of, or changes in, significant accounting policies or the application of such policies in the current period; and the effect on the consolidated financial statements or disclosures of significant accounting policies in controversial areas or areas for which there is a lack of authoritative guidance or consensus, or diversity in practice.

● All critical accounting policies and practices to be used, including the reasons certain policies and practices are considered critical; and how current and anticipated future events might affect the determination of whether certain policies and practices are considered critical.

● A description of the process management used to develop critical accounting estimates, management's significant assumptions used in critical accounting estimates that have a high degree of subjectivity, and any significant changes management made to the process used to develop critical accounting estimates or management's significant assumptions, including a description of management's reasons for the changes and the effects of the changes on the financial statements.

● Significant transactions that are outside of the normal course of business for Lordstown Motors Corp. or that otherwise appear to be unusual due to their timing, size, or nature; and the policies and practices used to account for significant unusual transactions, and our understanding of the business purpose (or lack thereof) of significant unusual transactions.

● Our evaluation of the quality of Lordstown Motors Corp.'s financial reporting.

● All material weaknesses and significant deficiencies identified during the audit, in writing.

● Corrected misstatements arising from the audit and the implications that such corrected misstatements might have on Lordstown Motors Corp.'s financial reporting process. In this context, corrected misstatements are proposed corrections of the consolidated financial statements that were recorded by management and, in our judgment, may not have been detected except through the auditing procedures performed.

● Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in the aggregate.

● All relationships between KPMG LLP (KPMG) and its related entities and Lordstown Motors Corp. and its related entities or persons in financial reporting oversight roles at Lordstown Motors Corp. that may reasonably be thought to bear on independence.

● Other matters required to be communicated by the standards of the PCAOB or that are deemed by us to be significant to the oversight of Lordstown Motors Corp.'s financial reporting process.

We will report to the board of directors if we become aware that the oversight of Lordstown Motors Corp.'s external financial reporting and internal control over financial reporting by the audit committee is ineffective, in writing.



We will also read minutes, if any, of audit committee meetings for consistency with our understanding of the communications made to the audit committee and determine that the audit committee has received copies of all material written communications between ourselves and management.

To the extent that they come to our attention, we will inform the appropriate level of management about any illegal acts, unless they are clearly inconsequential, material errors in the consolidated financial statements and any instances of fraud. Further, to the extent they come to our attention, we also will communicate directly to the audit committee illegal acts unless they are clearly inconsequential, material errors in the consolidated financial statements and any instances of fraud that involve senior management or that, in our judgment, cause a material misstatement of the consolidated financial statements. In the case of illegal acts which, in our judgment, would have a material effect on the consolidated financial statements of Lordstown Motors Corp., we are also required to follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which under certain circumstances requires us to communicate our conclusions to the SEC.

In addition, if we become aware of information that relates to the consolidated financial statements after we have issued our report or completed our interim review procedures, but which was not known to us at the date of our report or completion of our interim review procedures, and which is of such a nature and from such a source that we would have investigated that information had it come to our attention during the course of our audit and/or interim review procedures, we will, as soon as practicable; (1) communicate such an occurrence to the audit committee; and (2) undertake an investigation to determine whether the information is reliable and whether the facts existed at the date of our report or completion of our interim review procedures. Further, management agrees that in conducting that investigation, we will have the full cooperation of Lordstown Motors Corp.'s personnel. If the subsequently discovered information is found to be of such a nature that (a) our report or completion of our interim review procedures would have been affected if the information had been known as of the date of our report or completion of our interim review procedures and (b) we believe that the report or interim review procedures are currently being relied upon or are likely to be relied upon by someone who would attach importance to the information, appropriate steps will be taken by KPMG and expected from Lordstown Motors Corp. to prevent further reliance on our report or interim review procedures. Such steps include appropriate disclosures by Lordstown Motors Corp. of the newly discovered facts and the impact to the consolidated financial statements.

### Our Responsibility to Communicate with Management

We will report to management, in writing, all material weaknesses and significant deficiencies identified during the audit, prior to the issuance of our audit report.

### Audit Committee Responsibilities

The audit committee is directly responsible for the appointment of KPMG as independent auditor, determining our compensation, and oversight of our audit work, including resolution of disagreements between management and us regarding financial reporting. We understand that we report directly to the audit committee. The audit committee is responsible for preapproval of all audit and non-audit services provided by us.

### Management Responsibilities

The management of Lordstown Motors Corp. is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements, including disclosures, schedules, and interim financial information and all representations contained therein. Management also is responsible for identifying and ensuring that Lordstown Motors Corp. complies with the laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations.

DocuSign Envelope ID: F839DBF4-6470-48DF-A4FD-4602C52C7A4B



Lordstown Motors Corp.
May 3, 2023
Page 6 of 12

Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting to maintain the reliability of the consolidated financial statements and interim financial information and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements or interim financial information. Management is also responsible for informing us, of which it has knowledge, of all deficiencies in the design or operation of such controls. The audit of the financial statements does not relieve management or those charged with governance of their responsibilities.

Management is responsible for making all financial records and relevant information available to the auditor and agrees that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of Lordstown Motors Corp.'s personnel. At the conclusion of the engagement, management will provide us with a letter that confirms certain representations made during the audit, including specific inquiries of management required by the standards of the PCAOB about the representations embodied in the consolidated financial statements or interim financial information and the effectiveness of internal control over financial reporting. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the consolidated financial statements.

Management is responsible for adjusting the annual consolidated financial statements and interim financial information to correct material misstatements relating to accounts or disclosures and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon, or the interim financial information being reviewed, taken as a whole.

**Dispute Resolution**

Any dispute or claim between the parties shall be submitted first to non-binding mediation and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forgo litigation over such disputes in any court of competent jurisdiction.

Mediation shall take place at a location to be designated by the parties using Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator). Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party-selected arbitrators shall be selected from the lists of neutrals maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. For the sake of clarity, the preceding sentence is not intended to prohibit any claim for punitive damages with respect to the services provided under this Engagement Letter. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.



Lordstown Motors Corp.
May 3, 2023
Page 7 of 12

Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that any party moving to enforce, confirm or vacate any such agreement or award, as the case may be, will file such motion under seal unless prohibited under applicable court rules. Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**Other Matters**

All disputes between the parties (whether based in contract, tort, statute, regulation, or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation, its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction. In the event that any term or provision of this Engagement Letter shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

In an effort to facilitate efficient communication between KPMG and Lordstown Motors Corp. related to the audit and to track engagement progress during the course of the engagement, KPMG may provide Lordstown Motors Corp. with access to certain service coordination tools (e.g., KPMG Clara for clients). If such access is provided to Lordstown Motors Corp., the provisions set forth in Appendix II shall apply to such access.

Lordstown Motors Corp. agrees that KPMG may reference Lordstown Motors Corp. as a client in its marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Lordstown Motors Corp. is an audit client of KPMG LLP"). In addition, Lordstown Motors Corp. gives KPMG the right to use its logos solely for presentations or reports to Lordstown Motors Corp. or for internal KPMG presentations and intranet sites.

Lordstown Motors Corp. and KPMG acknowledge and agree that each shall comply with all applicable United States export control laws and regulations in the performance of each party's respective responsibilities under the Engagement Letter. Unless requested by KPMG to allow it to complete its audit, Lordstown Motors Corp. will not provide KPMG, or grant KPMG access to, (a) information (including technical data or technology), verbally, electronically, or in hardcopy, (b) software or (c) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Control Reform Act of 2018, the International Traffic in Arms Regulations ("ITAR"), Export Administration Regulations ("EAR"), Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the EAR ("Export Controlled Information"). If KPMG requests Export Controlled Information from Lordstown Motors Corp., Lordstown Motors Corp. shall provide KPMG with notice of provision of Export Controlled Information at least 48 hours prior to providing such Export Controlled Information to KPMG.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this Engagement Letter.

Lordstown Motors Corp. will not solicit for employment, nor will Lordstown Motors Corp. hire, any current or former partner or professional employee of KPMG or any of its affiliated member firms, in a financial reporting oversight role (as defined in the SEC independence rules) if such partner or professional employee previously participated in the audit of Lordstown Motors Corp.'s consolidated financial statements or quarterly review procedures until the applicable "cooling off" period under the SEC independence rules has expired. If Lordstown Motors Corp. or its subsidiaries intend to hire any partner or professional employee who previously



Lordstown Motors Corp.
May 3, 2023
Page 8 of 12

participated in the Audit of Lordstown Motors Corp. or quarterly review procedures during the applicable "cooling off" period, our prior written approval is required to confirm that the position will not be in a financial reporting oversight role, under the firm's determination. The "cooling off" period would commence with the latest date on which the individual participated in the annual audit or quarterly review procedures and would expire upon the filing by Lordstown Motors Corp. of its Form 10-K for the succeeding fiscal year.

KPMG, as an accounting firm, has an obligation to comply with applicable professional standards. Certain professional standards, including AICPA Code of Professional Conduct Section 1.700, "Confidential Client Information Rule," adopted by the American Institute of Certified Public Accountants and similar rules adopted by the boards of accountancy of many states, prohibit the disclosure of client confidential information without client consent, except in limited circumstances. KPMG represents to Lordstown Motors Corp. that KPMG will treat Lordstown Motors Corp.'s confidential information in accordance with applicable professional standards.

KPMG may work with and use the services of other members of the international KPMG network of independent firms and entities controlled by, or under common control with, one or more KPMG member firms (together with KPMG, the "KPMG Firms") to provide services to Lordstown Motors Corp. The KPMG Firms, together with the entities comprising KPMG International, shall be referred to herein as the "KPMG Parties." In connection with the performance of services under this Engagement Letter, the KPMG Firms may, in their discretion, utilize the services of third party service providers within or outside of the United States to complete the services under this Engagement Letter. KPMG Parties and such third parties may have access to your confidential information from offshore locations. In the event that affiliates of Lordstown Motors Corp. located outside of the United States separately engage KPMG Firms to perform audit related services, for example for purposes of statutory audits, we may share Lordstown Motors Corp.'s and/or its affiliates' confidential information with such KPMG Firms for purposes of their services for such affiliates. In addition, KPMG uses third party service providers within and outside of the United States to provide, at its direction, back-office administrative and clerical, or analytical services to KPMG and these third party service providers may in the performance of such services have access to your confidential information. In particular, KPMG's audit technologies, software productivity tools and certain technology infrastructure and, necessarily, your confidential information, may be hosted in cloud environments operated by KPMG Parties or such third party service providers. In addition, KPMG Parties may have access to certain of your information in respect to engagement acceptance and other professional responsibilities such as maintaining independence and performing conflict checks. KPMG represents that it has technical, legal and/or other safeguards, measures and controls in place to protect your confidential information from unauthorized disclosure or use; and KPMG shall remain responsible to you for maintaining the confidentiality of your confidential information. KPMG shall remain responsible to Lordstown Motors Corp. for the performance of such services by any KPMG Parties or other third parties, including obligations of confidentiality, to the same extent KPMG is obligated under the terms of this Engagement Letter.

You also understand and agree that the KPMG Parties, with the assistance of third parties as outlined above, may use all Lordstown Motors Corp.'s information to (i) analyze trends, perform comparative analysis, and develop and improve benchmarks; (ii) develop and improve technology and services; and (iii) improve other services to Lordstown Motors Corp. and to provide insights to Lordstown Motors Corp. about its business. Such information will not be disclosed to third parties other than third parties as outlined above assisting KPMG Parties with these uses unless such information is in an aggregated or anonymized format that does not identify Lordstown Motors Corp.

It may be necessary or convenient for Lordstown Motors Corp. to use KPMG-owned or -licensed software, software agents, scripts, technologies, tools or applications (collectively "KPMG Technology") designed to extract data from Lordstown Motors Corp.'s electronic books and records systems or other systems



Lordstown Motors Corp.
May 3, 2023
Page 9 of 12

(collectively, "Systems"), in connection with the audit, or to otherwise facilitate KPMG's services hereunder. Lordstown Motors Corp. understands and agrees that it is solely responsible for following appropriate change management policies, processes and controls relating to use of such technology (including without limitation appropriate backup of Lordstown Motors Corp.'s information and Systems) (collectively, "Change Management Processes") before any such KPMG Technology is utilized to extract data from the Systems. In the event Lordstown Motors Corp. fails to use such Change Management Processes or if such Change Management Processes prove to be inadequate, Lordstown Motors Corp. acknowledges that the Systems and/or KPMG Technology may not function as intended. In consideration of the foregoing, KPMG hereby grants Lordstown Motors Corp. the right to use KPMG Technology solely to facilitate Lordstown Motors Corp.'s necessary or convenient provision of information to KPMG in connection with the audit, or to otherwise facilitate KPMG's services hereunder, and this grant does not extend to any other purposes or use by third parties outside of your organization without our prior written approval, provided that third party contractors of Lordstown Motors Corp. having a need to know in order to perform their services to Lordstown Motors Corp. are permitted to use KPMG Technology to the extent necessary for such parties to perform such services, so long as Lordstown Motors Corp. exercises the same level of care to protect such KPMG Technology and KPMG confidential information as it uses to protect its own confidential information, but in no event less than reasonable care. Other than as expressly permitted hereby, Lordstown Motors Corp. agrees to keep KPMG Technology confidential, using no less than a reasonable standard of care to protect it from unauthorized disclosure or use, and to notify KPMG of any legal compulsions to disclose it, in accordance with the provisions governing legal demand of confidential information which appear in this engagement letter with respect to which KPMG Technology is being used, mutatis mutandis. KPMG Technology is not intended to be used as a system of record, repository, or hosting service, and Lordstown Motors Corp. acknowledges that its access to KPMG Technology and/or information contained therein may be removed within a reasonable period of time (no less frequently than annually) following the conclusion of the services to which such provision of access to KPMG Technology relates. Lordstown Motors Corp. may not redistribute, reproduce (except as necessary to run), modify, commercialize, allow third parties to access (except as permitted above or as otherwise authorized by KPMG in writing), or reverse engineer or decompile (except where such rights cannot be limited by applicable law) KPMG Technology. KPMG Technology is provided on an "as is", "as available" basis. If KPMG Technology is subject to any third party license terms and conditions, then before being provided to Lordstown Motors Corp., Lordstown Motors Corp. may be required to accept such terms and conditions before using KPMG Technology, in which case KPMG will provide such license terms and conditions to Lordstown Motors Corp. in writing before Lordstown Motors Corp. elects to use KPMG Technology.

Except as otherwise provided for in this Engagement Letter, neither party may assign, transfer or delegate any of its rights, obligations, claims or proceeds from claims arising under or relating to this Engagement Letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment in violation hereof shall be null and void.

Lordstown Motors Corp. agrees to provide prompt notification if Lordstown Motors Corp. or any of its subsidiaries whose financial statements are being audited by KPMG, currently are, become subject to, or were previously but are no longer subject to, the laws of a foreign jurisdiction that require regulation of any securities issued by Lordstown Motors Corp. or such subsidiary. Such situations could include but are not limited to the listing or selling of securities on a foreign securities market or exchange or the submission of filings to a foreign securities regulator.

For the purpose of complying with SEC and PCAOB independence rules, Lordstown Motors Corp. agrees to provide to KPMG, in connection with each audit and interim review engagement, a complete and accurate legal entity listing and a listing of other affiliated entities not included on the legal entity listing (e.g., parent company,



Lordstown Motors Corp.
May 3, 2023
Page 10 of 12

entities under common control, joint ventures, equity method investments, and others). Lordstown Motors Corp. further agrees to provide a listing of beneficial owners (known through reasonable inquiry) of equity securities of Lordstown Motors Corp. and its affiliates where such beneficial owners have significant influence over Lordstown Motors Corp. Lordstown Motors Corp. will also provide a complete and accurate listing of affiliated persons, which includes officers, members of the board of directors, and persons in financial reporting oversight roles[c]. Lordstown Motors Corp. also agrees to provide information to KPMG about acquisitions, investments or other transactions that may result in changes to the legal entity listing, the listing of other affiliated entities, not included on the legal entity listing, or the listing of beneficial owners with significant influence, prior to the effective date of the acquisition, investment or other transaction.

*Access to Audit Documentation by Regulators and Others*

The audit documentation for this engagement is the property of KPMG. If KPMG receives a subpoena; other validly issued administrative, judicial, government or investigative regulatory demand or request; or other legal process requiring it to disclose Lordstown Motors Corp.'s confidential information ("Legal Demand"), KPMG shall, unless prohibited by law or such Legal Demand, provide prompt written notice to Lordstown Motors Corp. of such Legal Demand in order to permit it to seek a protective order. So long as KPMG gives notice as provided herein, KPMG shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event KPMG is requested or authorized by Lordstown Motors Corp., or is required by law, rule, regulation or Legal Demand in a proceeding or investigation to which KPMG is not a named party or respondent, to produce KPMG's documents or personnel as witnesses or for interviews, or otherwise to make information relating to the service under the Engagement Letter available to a third party, or Lordstown Motors Corp., Lordstown Motors Corp. shall reimburse KPMG for its professional time, at its then-current standard hourly rates, and expenses, including reasonable attorneys' fees and expenses, incurred in producing documents or personnel or providing information pursuant to such requests, authorizations or requirements.

We may be requested to make certain audit documentation available to the PCAOB and state, federal, and foreign regulators pursuant to authority provided by law or regulation. If so requested, access to such audit documentation will be provided and KPMG will also respond to written and oral questions related to our audit, if received. Furthermore, the PCAOB and state, federal, and foreign regulators may obtain copies of selected audit documentation. The PCAOB and such regulators may intend, or decide, to distribute the copies or information so received to others, including the SEC and other government agencies. We agree to communicate to you on a timely basis (a) receipt of a notification of inspection by the PCAOB of the audit covered by this Engagement Letter and the related requests for access to the audit documentation and (b) when the PCAOB desires direct contact with members of the audit committee.

---

[c] The term "financial reporting oversight role" means a role in which a person is in a position to or does exercise influence over the contents of the financial statements or anyone who prepares them, such as when the person is a member of the board of directors or similar management or governing body, chief executive officer, president, chief financial officer, chief operating officer, general counsel, chief accounting officer, controller, director of internal audit, director of financial reporting, treasurer, or any equivalent position. It also includes individuals in those roles at subsidiaries or investees when the financial statements they oversee are material to the consolidated financial statements.



Lordstown Motors Corp.
May 3, 2023
Page 11 of 12

*Reports, Services and Associated Fees*

Appendix I to this Engagement Letter lists the reports we will issue and services we will provide as part of this engagement and our fees for professional services to be performed under this Engagement Letter.

In addition, fees for any special audit-related projects, such as research and/or consultation on special business or financial issues, will be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this Engagement Letter.

* * * * * * *

Our engagement herein is for the provision of annual audit services for the *consolidated* financial statements for the periods described in Appendix I, and it is understood that such services are provided as a single annual engagement. Pursuant to our arrangement as reflected in this Engagement Letter, we will provide the services set forth in Appendix I as a single engagement for each of Lordstown Motors Corp.'s subsequent fiscal years until either the audit committee or we terminate this agreement or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the audit committee.

This Engagement Letter and any exhibits, attachments and appendices hereto, and amendments thereto agreed in writing by the parties, shall constitute the entire agreement between KPMG and Lordstown Motors Corp. with respect to the subject matter hereof and thereof, and supersede all other previous oral and written representations, understandings or agreements relating to the subject matter of this agreement.

In accordance with your instructions, we have forwarded a copy of this Engagement Letter to Adam Kroll, Executive Vice President and Chief Financial Officer.



Lordstown Motors Corp.
May 3, 2023
Page 12 of 12

We shall be pleased to discuss this Engagement Letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this Engagement Letter. Please sign and return it to us to indicate your acknowledgement of, and agreement with, the arrangements for our audit of the *consolidated* financial statements including our respective responsibilities.

Very truly yours,

KPMG LLP

Scott Stelk
*Partner*

Enclosures

cc:  Adam Kroll, Executive Vice President and Chief Financial Officer

<u>ACCEPTED</u>

Lordstown Motors Corp.

Keith Feldman

<u>Chair of the Audit Committee</u>
Title

5/3/2023

Date

**Appendix I**

**Reports, Services and Associated Fees**

Based upon our discussions with and representations of Lordstown Motors Corp., our fees for services we will perform are estimated as follows:

> Audit of consolidated balance sheets of Lordstown Motors Corp. as of December 31, 2023 and 2022, the related consolidated statements of operations, stockholders' equity and cash flows for each of the years in the three-year period ended December 31, 2023 and the related notes to the financial statements and quarterly reviews for the quarters ended March 31, June 30, and September 30, 2023.                    TBD***
>
> *** We invoiced $100,000 in April for our quarter ended March 31, 2023 review procedures and audit planning. The remaining audit and interim review fees will be presented to the Audit Committee concurrent with our 2023 audit plan.

**Additional Services**

*Non-Audit Services:*

> KPMG will provide a subscription to KPMG's Accounting Research Online, an online library of accounting, auditing and financial reporting literature and related guidance and the automated Accounting Disclosure Checklist, which is a filterable, web-based tool to identify required financial statement disclosures.                    No charge
>
> KPMG will provide access to KPMG public training events (e.g., KPMG conferences, seminars, share forums, self-study web-based training) on accounting, industry, or technical topics. Fees for training services, if any, will be agreed in advance.                    No charge

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Professional standards prohibit us from performing services for audit clients where the fee for such services is contingent, or has the appearance of being contingent, upon the results of such services.

Professional standards also indicate that independence may be impaired if fees for professional services are outstanding for an extended period of time; therefore, it is important that our fees be paid promptly when billed. If a situation arises in which it may appear that our independence would be questioned because of past due unpaid fees, we may be prohibited from issuing our audit report and associated consent.

Where KPMG is reimbursed for expenses, KPMG will bill Lordstown Motors Corp. for the amount it paid and will not add any markup to the expense. After such expenses are incurred, KPMG may receive rebates or incentive payments based on its aggregate purchases, which may include expenses reimbursed by Lordstown Motors Corp. in addition to other clients. Such rebates are not credited back to Lordstown Motors Corp. but are used to reduce KPMG's overhead.

All fees, charges, and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Lordstown Motors Corp.'s sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

DocuSign Envelope ID: F839DBF4-6A70-48DF-A15D-4602C62C7A1B

**Appendix II**

### KPMG CLARA
### TERMS OF USE

As used herein, "KPMG Clara" shall refer to those service coordination tools made available to Lordstown Motors Corp. (the "Company") by KPMG (e.g., KPMG Clara for clients) that allow a group of users to access a virtual repository for the purposes of sharing information, engaging in online discussions, and accessing certain content. These terms of use (the "Terms") are between the Company and KPMG and shall govern the Company's use of KPMG Clara, including content posted to KPMG Clara by KPMG and/or its licensors. If Company is comprised of multiple legal entities, Company agrees that (a) it has the authority to bind all such entities, and (b) these Terms shall govern such entities' use of KPMG Clara. In the event of any conflict or inconsistency between these Terms and the contract(s) between KPMG and Company to which these Terms or KPMG Clara relates, these Terms shall govern with respect to Company's use of KPMG Clara only.

1.  Company and its Authorized Users (as defined below) may access and use KPMG Clara solely in furtherance of KPMG's engagement(s) with the Company. KPMG Clara is not intended for use as a document retention system and should not be regarded as a system of record. Company should retain or download any information from KPMG Clara it wishes to retain for its files. Access to information within KPMG Clara may be removed or become unavailable within a reasonable time once the corresponding engagement is completed. "Authorized User" means Company's employees and other personnel authorized by Company and approved by KPMG to access and use KPMG Clara. Company shall ensure that all Authorized Users who access and use KPMG Clara comply with these Terms. Company shall promptly notify KPMG about any Authorized User who should no longer have access to KPMG Clara or improper access to the password of an Authorized User.

2.  Company may not: (a) copy, translate, modify, adapt or create derivative works from KPMG Clara; (b) rent, lease, lend, pledge, or directly or indirectly transfer or distribute KPMG Clara to any third party; or (c) use KPMG Clara to upload, store, post, email, transmit or otherwise make available any content that is unlawful and/or infringes any intellectual property rights or data protection, privacy or other rights of any other party. Company is responsible for the information its users may upload to such tools and compliance with all laws and regulations applicable to use or access by Company's users outside the U.S. (e.g. export control and data privacy laws and regulations). Except for the license granted herein to Company, Company acquires no right or interest of any kind in or to KPMG Clara.

3.  Technical factors such as bandwidth, network configurations, and browser settings can affect KPMG Clara's speed and accessibility. KPMG does not guarantee the continuous, uninterrupted or error-free operability of KPMG Clara, or compatibility with Company's computer browser or any other part of its computing systems. Access to KPMG Clara may be suspended or limited at any time, and content may be unavailable. KPMG is not responsible for the content of any third-party websites, or hyperlinks which may be featured on KPMG Clara.

4.  If KPMG's relationship with Company terminates for any reason, all further access to and use of KPMG Clara by Company and its Authorized Users must immediately cease and KPMG may deactivate or delete related user accounts, unless otherwise required by applicable law or professional standards to maintain such accounts. KPMG reserves the right to terminate Company's access to KPMG Clara for any reason.

5.  EXCEPT AS EXPRESSLY STATED IN THESE TERMS, KPMG CLARA IS MADE AVAILABLE ON AN "AS-IS", "AS AVAILABLE" BASIS WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED.

6.  Refer to KPMG's Privacy Statement (https://home.kpmg/us/en/home/misc/privacy.html) for information about how KPMG collects, uses, and protects personal data.

**Amendment to Engagement Letter**

July 17, 2023

Lordstown Motors Corp.
2300 Hallock Young Road
Warren, OH 44481

Attention:  Keith Feldman, Chairman of the Audit Committee

This letter (Amendment to Engagement Letter) amends Appendix 1 of our Engagement Letter dated May 3, 2023.

Based upon our discussions with and representations of Lordstown Motors Corp., our fees for the following services we will perform will be billed based on time and materials:

>Audit of consolidated balance sheets of Lordstown Motors Corp. as of December 31, 2023 and 2022, the related consolidated statements of operations, stockholders' equity and cash flows for each of the years in the three-year period ended December 31, 2023 and the related notes to the financial statements and quarterly reviews for the quarters ended June 30 and September 30, 2023**

>**We have completed procedures and billed for the fees related to the quarterly review for the quarter ended March 31, 2023 prior to the date of this amendment.

The services listed above will be billed based on the following rates

| Level of Audit Professional | Rate |
|---|---|
| Partner | $    500 |
| Managing Director | $    450 |
| Director/Senior Manager | $    400 |
| Manager | $    350 |
| Senior Associate | $    300 |
| Associate | $    250 |

| Level of Specialist | Rate |
|---|---|
| National Office | $    765 |
| Accounting Advisory Partner/Managing Director | $    500 |
| Accounting Advisory Director | $    470 |
| Tax Partner/Managing Director | $    600 |
| Valuation Partner/Managing Director | $    650 |
| Valuation Director/Senior Manager | $    500 |

KPMG understands that the Bankruptcy Court must approve its engagement and its fees in order to be compensated.  In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. Lordstown Motors Corp. acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differ from KPMG's normal engagement and billing procedures and, as a result, will require significant effort by KPMG to comply therewith. Lordstown Motors Corp. agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

We shall be pleased to discuss this Amendment to the Engagement Letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this Amendment. Please sign and return it to us to indicate your acknowledgement of, and agreement with, the arrangements for our audit of the consolidated financial statements including our respective responsibilities.

Very truly yours,

KPMG LLP

Scott Stelk
*Partner*

Enclosures

cc:  Adam Kroll, Executive Vice President and Chief Financial Officer

ACCEPTED

Lordstown Motors Corp.

Keith Feldman

Chair of the Audit Committee
Title

7/20/2023

Date