3

# **EXHIBIT B**

**Engagement Letter**



July 21, 2023

Ms. Kim Parsons, Chairperson (as the primary representative of
Barry L. Leonard & Co. Inc) and members of
Official Committee of Unsecured Creditors of Lordstown Motors,
920 Brenner Street
Winston-Salem, NC 27101

RE: Financial Advisory Services to the Official Committee of Unsecured Creditors of Lordstown Motors

Dear Members of the Official Committee of Unsecured Creditors:

On behalf of Huron Consulting Services LLC ("Huron"), we are pleased to confirm our engagement by the Official Committee of Unsecured Creditors (the "Committee") of Lordstown Motors, *et al.* (the "Debtors") to provide certain services as described below.

This letter (the "Engagement Letter") and the attached General Business Terms (collectively, the "Agreement") confirm the terms of the Committee's engagement with Huron, including the mutual understanding and agreement regarding the services to be provided and how Huron will be paid for these services.

**Scope**

Huron recognizes that a substantial portion of Huron's interaction will be with the Committee, and Huron intends to regularly report to the Committee concerning our findings, observations, and recommendations.

We understand the engagement scope to include the following (the "Services"):

    a. Review of the Debtors' financial information, including, but not limited to, analyses of cash receipts and disbursements, financial statement items, and proposed transactions for which Bankruptcy Court approval is sought.

    b. Review and analysis of the Debtors' reporting, including review of associated budgets and forecasts.

    c. Assist in the review of reports or filings as required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs, and monthly operating reports.

    d. Evaluate proposed employee incentive, retention, severance, and separation plans.

    e. Assist with identifying and implementing potential cost containment opportunities.

    f. Analysis of assumption and rejection matters with respect to executory contracts and leases.

    g. Review and analysis of the Debtors'

        1. Proposed business plans, assumptions related thereto, and



    2. Financial condition, results from operations, and cash flow from operations.

h. Assist in the evaluation of the Debtors' proposed sales of operations and assets in connection with its proposed §363 sale(s).

i. Prepare enterprise, asset, and liquidation valuations.

j. Assist in preparing documents necessary for plan confirmation.

k. Provide advice and assistance to the Committee in negotiations and meetings with the Debtors and stakeholders.

l. Attend meetings and teleconferences with and on behalf of the Committee.

m. Assist with the claims resolution procedures, including, but not limited to, analyses of creditors' claims by type and entity and associated recoveries.

n. Provide litigation consulting services and expert witness testimony regarding confirmation issues, avoidance actions, or other matters.

o. Such other functions as requested by the Committee or its counsel to assist the Committee in these chapter 11 cases.

**Our Services**

Huron's Services are intended solely for the Committee for use in connection with this engagement and should not be used or relied upon for any other purpose. Any written work product Huron prepares is to be used solely for this engagement and may not be published or used, in whole or in part, for any other purpose without Huron's written permission, except as required by law.

Any financial model (e.g., forecast, projection, etc.) or other models Huron creates as part of the Services will be unique to this engagement, based on specific circumstances and assumptions, and may not be appropriate for use when those circumstances and assumptions change.

Huron is a management consulting firm. Huron does not provide attest services, audits, or other engagements which are subject to standards established by the American Institute of Certified Public Accountants ("AICPA") or the Public Company Accounting Oversight Board ("PCAOB"). The procedures Huron will perform are for the purposes of providing the Services outlined in this Engagement Letter and will not include independent verification of information provided by the Debtor(s), its financial statement balances, or internal controls, the performance of which might reveal additional information that could affect the findings of our work. Accordingly, we will express no opinion or other form of assurance on any Debtor(s) financial statements, representations, or other Debtor derived data accompanying or included in Huron's work.

The successful delivery of Huron's Services will depend on the Debtor's timely and effective cooperation with Huron, including access to necessary information, properties, and personnel. Huron will not be responsible for any delays, additional costs, or other liabilities caused by the Debtors' failure to comply with the matters noted in the previous sentence.



**Fees and Expenses**

The Services will be performed on a time and material basis based on the actual hours worked at the following range of standard hourly billing rates Huron (which may be subject to adjustment from time to time):

| Professional | Standard Hourly Rate |
|---|---|
| Managing Director | $975 - $1315 |
| Senior Director | $950 - $950 |
| Director | $700 - $800 |
| Manager | $600 - $600 |
| Associate | $500 - $500 |
| Analyst | $325 - $500 |

A technology and security fee for data protection, cybersecurity, hosting, telecommunications, and related support will be billed at 6% of the support fees and invoiced as a separate item on all invoices. In addition, out-of-pocket expenses include transportation, lodging, meals, communications, supplies, copying and will be billed at the actual amounts incurred. Out-of-pocket expenses also include reasonable fees and expenses of attorneys consulted or engaged by Huron to assist it with matters under this agreement, such as retention applications, fee applications, and collection of fees.

Travel time during which no work is performed shall be itemized separately and billed fifty percent (50%) of standard billing rates.

Huron intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Huron has agreed to accept as compensation such sums as may be allowed by the Court. Huron understands that interim and final fee awards are subject to approval by the Court.

**Business Terms**

The attached General Business Terms apply to this engagement.

Please indicate the Committee's agreement with these terms by signing and returning the enclosed copy of this letter to me. This engagement and the enclosed terms will become effective upon the Court's authorization of our employment on behalf of the Committee.



Huron appreciates the opportunity to be of service to the Committee and looks forward to working with you.

Sincerely,

**HURON CONSULTING SERVICES LLC**

**Laura Marcero**
Huron | Managing Director
**T** 248-320-6496
**E** lmarcero@hcg.com

Attachments:    General Business Terms

Acknowledged and Accepted:

Official Committee of Unsecured Creditors (the "Committee") of Lordstown Motors, *et al.*

By: _Kim Parsons_

Title:    Chairperson of Unsecured Creditor Committee

Date:    07/25/2023



**Attachment to Engagement Letter dated July 21, 2023, between Huron Consulting Services LLC and** the Official Committee of Unsecured Creditors (the "Committee") of Lordstown Motors, *et al.*

**GENERAL BUSINESS TERMS**

**These General Business Terms, together with the Engagement Letter (including any attachments, exhibits, and schedules) constitute the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms and the terms of the Engagement Letter, these General Business Terms will govern, except to the extent the Engagement Letter explicitly refers to the conflicting term herein.**

**1. Services and Deliverables.** Huron will provide the services and furnish the deliverables (the "Services") as described in Huron's Engagement Letter and any attachments to it, as may be modified from time to time by mutual consent.

**2. Independent Contractor.** Huron is an independent contractor not your employee, agent, joint venturer, or partner, and will determine the method, details, and means of performing its Services. Huron assumes full and sole responsibility for the payment of all compensation and expenses of its employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll, and other applicable employee withholdings.

**3. Fees and Expenses.** (a) Huron's fees and payment terms are set out in the Engagement Letter. Those fees do not include taxes and other governmental charges (which will be separately identified in Huron's invoices.) In the event the Company requests that Huron perform some or all of the Services outside of the United States, Huron may issue the resulting invoice from a Huron affiliate located in the country where such Services are performed.

(b) The Company acknowledges that where out-of-town personnel is assigned to any project on a long-term basis (as defined from time to time in the applicable provisions of the Internal Revenue Code and related IRS regulations, and currently defined, under IRC Section 162, as a period of time reasonably expected to be greater than one year), the associated compensatory tax costs applied to out-of-town travel and living expenses also shall be calculated on an individual basis, summarized, and assessed to such personnel. In such cases, the expenses for which you shall reimburse Huron hereunder shall be deemed to include the estimated incremental compensatory tax costs associated with the out-of-town travel and living expenses of Huron's personnel, including tax gross-ups. Huron shall use reasonable efforts to limit such expenses.

(c) Huron reserves the right to suspend Services if invoices are not timely paid, in which event Huron will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes.** (a) The Company will be responsible for and pay all applicable sales, use, excise, value-added, services, consumption, and other taxes and duties associated with the performance or receipt of the Services, excluding taxes on Huron's income generally. The Company will provide Huron with a copy of its certificate of tax exemption, if applicable.

(b) If the Company is required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from Huron's payment, then the amount payable by the Company upon which the withholding is based shall be paid to Huron net of such withholding. The Company shall pay any such withholding to the applicable tax authority. However, if after 120 days of the withholding, the Company does not provide Huron with official tax certificates documenting remittance of the taxes, the Company shall pay to Huron an amount equal to such withholding. The tax certificates shall be in a form sufficient to document the qualification of the taxes for the foreign tax credit allowable against Huron's corporation income tax.

**5. Confidentiality and Privacy.** (a) With respect to any information supplied in connection with this engagement and designated by either party as confidential, or which the other should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure ("Confidential Information"), the other agrees to protect the confidential information in a reasonable and appropriate manner and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information that is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed, (v) disclosed pursuant to legal requirements or order, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits, and litigation.

(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other archival copies for recordkeeping or quality assurance purposes, and receiving party shall make no unauthorized use of such copies.

(c) Huron agrees to use any personally identifiable information and data the Company provides Huron only this engagement, and as the Company directs, and Huron will not be liable for any third-party claims related to such use. The Company agrees to take necessary actions to ensure that it complies with applicable laws relating to privacy and  data protection and acknowledge that Huron is not providing legal advice on compliance with the privacy and data protection laws of any country or jurisdiction.



(d) At the conclusion of the engagement, Huron has e the right to use the Company's name, logo, and a general description of the engagement in Huron's marketing materials and traditional tombstone advertising.

**6. Deliverables and License.** Upon full and final payment of all amounts due Huron in connection with this engagement, all rights, title, and interest in the deliverables set out in Huron's Engagement Letter will become the Company's sole and exclusive property, except as set forth below.  Huron will retain sole and exclusive ownership of all rights, title, and interest in its  work papers, proprietary information, processes, methodologies, know-how, and software ("Huron Property"), including such information as existed before the delivery of Huron's Services and, to the extent such information is of general application, anything which Huron may discover, create or develop during its performance of Services for the Company. To the extent deliverables contain Huron Property, upon full and final payment of all amounts due Huron in connection with this engagement, Huron grants the Company a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent.  If Huron's deliverables are subject to any third-party rights in software or intellectual property, Huron will notify the Company of such rights. Huron's deliverables are to be used solely for the purposes intended by this engagement and may not be disclosed, published, or used in whole or in part for any other purpose.

**7. Your Responsibilities.** To the extent applicable, the Company will cooperate in providing Huron with office space, equipment, data, and access to your personnel as necessary to perform the Services. The Company shall provide reliable, accurate, and complete information necessary for Huron to adequately perform the Services and will promptly notify Huron of any material changes in any previously provided information.  The Company acknowledges that Huron is not responsible for independently verifying the truth or accuracy of any information supplied to Huron by or on behalf of the Company.

**8. Warranty.** Huron warrants that its Services will be performed with reasonable diligently and competently. Huron's sole obligation will be to correct any non-conformance with this warranty, provided that the Company gives us written notice within ten (10) days after the Services are performed or delivered. The notice will specify and detail the non-conformance and Huron will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

Huron does not warrant and is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies concerning any third-party products or services are against the third-party vendor and not against Huron.

THIS WARRANTY IS HURON'S ONLY WARRANTY CONCERNING THE SERVICES. IT IS MADE EXPRESSLY INSTEAD OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9. Liability and Indemnification.** (a) This engagement is not intended to shift risk normally borne by the Company to us. To the fullest extent permitted under applicable law, the Company agrees to indemnify and hold Huron and its personnel, agents, and contractors harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or other claim brought against us by a third party, including a subpoena or court order, arising from or relating to any Services that the Company uses or discloses, or this engagement generally. This indemnity shall not apply to the extent a claim arises out of Huron's gross negligence or willful misconduct, as finally adjudicated by a finder of fact.

(b) Huron will not be liable for any special, consequential, incidental, indirect, or exemplary damages or loss (nor any lost profits, savings, or business opportunity). Further, Huron's liability relating to this engagement will in no event exceed an amount equal to the fees (excluding taxes and expenses) it  receives from the Company for the portion of the Services giving rise to such liability.

(c) Neither party will be liable to the other for any delays or failures in performance due to circumstances beyond its reasonable control.

**10.  Non-Solicitation.** The Company recognizes that Huron's personnel have access to Huron's trade secrets and proprietary information and are crucial and necessary to the completion of the project for the Company.  During the term of this engagement, and for a period of one year following its expiration or termination, the Company will not directly or indirectly solicit, employ, or otherwise engage a person who participated in the Services on behalf of Huron; provided, that this restriction shall not apply to any general solicitation for employees (such as general newspaper advertisements, employment agency referrals, and internet postings) not targeting any such persons. The Company shall not be restricted in hiring any such person who responds to such general solicitation.

**11. Termination.** (a) Termination for Convenience. Either party may terminate this Agreement for convenience at any time on 30 days' prior written notice to the other.

(b) Termination for Breach. Either party may terminate this Agreement for breach if, within 15 days' notice, the breaching party fails to cure a material breach of this Agreement.

(c) To the extent the Company terminates this Agreement for convenience, the Company will pay us for all Services rendered, effort expended, expenses incurred, contingent fees (if any), or commitments made by us to the effective date of termination. To the extent the Company terminates this Agreement for breach, the Company will pay us for all conforming Services rendered and



reasonable expenses incurred by Huron to the effective termination date.

(d) Further, Huron reserves the right to terminate this Agreement at any time, upon providing written notice to the Company. if conflicts of interest arise or become known to Huron that, in Huron's sole judgment, would impair Huron's ability to perform the Services objectively.

(e) The terms of this Agreement which relate to confidentiality, ownership, and use, limitations of liability and indemnification, non-solicitation, and payment obligations shall survive its expiration or termination.

**12. General.** (a) This Agreement supersedes all prior oral and written communications the parties and may be amended, modified, or changed only in writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this agreement excused unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) The parties acknowledge that they may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm, or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond its reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to conflict of law rules. The parties hereto agree that any and all disputes or claims arising hereunder, or in any way related to this Agreement or any performance thereunder, including any disputes with or claims against Huron employees, and any claims by any of the Company's officers, directors, employees, shareholders and/or creditors, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The parties agree that questions of arbitrability shall be delegated to and decided by an arbitrator and not a court. Any arbitration will be conducted in Chicago, Illinois. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof. The parties consent and commit themselves to the jurisdiction of the courts of the State of Illinois for purposes of any enforcement of any arbitration award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

(e) If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect the parties' mutual intention.

(f) This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action, or other rights in law or in equity for any matter governed by or subject to the provisions of this Agreement

\*   \*   \*   \*   \*   \*