## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Lordstown Motors Corp., *et al.*,[1] | ) | Case No. 23-10831 (MFW) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Objection Deadline (Requested):** |
|  | ) | **To be determined** |
|  | ) |  |
|  | ) | **Hearing Date (Requested):** |
|  | ) | **To be determined** |
|  | ) |  |
|  | ) |  |

### DEBTORS' MOTION UNDER BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS AND KARMA AUTOMOTIVE LLC

Lordstown Motors Corp. ("**LMC**"), Lordstown EV Corporation, and Lordstown EV Sales LLC (collectively, the "**Debtors**"), the debtors and debtors in possession in the above-captioned cases, file this motion (the "**Motion**")[2] pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") for entry of an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), (i) approving the settlement by and among the Debtors and Karma Automotive LLC ("**Karma**" and, together with the Debtors, the "**Parties**"), substantially in the form attached to the Proposed Order as **Exhibit 1** (the "**Settlement**

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Substantially contemporaneously herewith, the Debtors have filed a motion to shorten notice of this Motion for reasons further stated therein.

Agreement")[3] and (ii) granting related relief.  In support of this Motion, the Debtors state as follows:

### PRELIMINARY STATEMENT

1.      The Debtors filed these Chapter 11 Cases (as defined below) for the purpose of maximizing value to stakeholders quickly and efficiently.  The Debtors entered chapter 11 with limited operations and amidst significant disputes with Foxconn and various litigation parties. With no meaningful revenue from the Debtors' operations, a prolonged, contentious stay in chapter 11 threatens to deplete the Debtors' cash on hand and stakeholder recoveries.  The Debtors have therefore taken significant measures to quickly cut operational costs, preserve the cash on hand, pursue an expeditious sale process to maximize the value of their assets, and bring all claims before this Court for the purpose of effectively resolving them.

2.      The proposed Settlement Agreement with Karma represents an important step in the Debtors' ongoing efforts to maximize value.  As the Court is well aware, Karma has been litigating for three years against LMC and certain of its current and former officers, employees, and independent contractors in the U.S. District Court for the Central District of California (the "**California District Court**").  Karma is asserting over $900 million in damages based on, among other things, claims of misappropriation of trade secrets and intellectual property and unjust enrichment.  Although the Debtors believe that Karma's asserted claims are without merit (and would be prepared to defend against them absent settlement), the size of Karma's asserted claims when coupled with the risks associated with all litigation creates significant uncertainty regarding the total size of the Debtors' claims pool and the recoveries that the Debtors may be able to provide

---

[3] Capitalized terms used, but not otherwise defined herein, shall have the respective meanings ascribed to them in the Settlement Agreement.

2

for stakeholders.  Moreover, the costs associated with litigating a multi-week jury trial and post-trial motions practice and appeal would undoubtedly erode recoveries.

3.      Karma's pending action in the California District Court also poses a significant impediment to the Debtors' ongoing sale process.  Karma contends that LMC misappropriated trade secrets and intellectual property from Karma that was thereafter incorporated into the Debtors' property and products and, thus, that the Debtors cannot consummate a sale of their assets before a judicial determination of the Parties' property rights.  Although the Debtors believe that Karma's arguments are without merit, the Debtors believe that they risk significant delay and impairment of the sale process.  A final judicial determination of the parties' property rights could take months (if not longer) which in turn could delay and impair the Debtors' efforts to retain key personnel and sell their assets as a going concern.  Moreover, the dispute itself risks alienating potential bidders.  With Karma's alleged ownership claims looming over the sale process, potential bidders' interest in the Debtors' assets (especially as a going concern) may be severely dampened, the price that bidders bid may reflect a steep discount to account for the litigation risk, or bidders may simply seek to purchase discrete assets that do not implicate the disputed property.

4.      The proposed settlement with Karma would remove the uncertainties surrounding the Karma litigation and bring greater clarity to the Debtors' sale process and the trajectory of these Chapter 11 Cases.  The Settlement Agreement will not only bring to an end a three-year long litigation, relieve the Debtors' estates from expending more scarce time, money and resources on a lengthy, complex jury trial, but would also resolve what Debtors believe to be the largest claim against them.  By liquidating the value of Karma's claim, among other contingent claims, the Debtors would be able to better determine the potential recovery for all stakeholders.  Without the threat of Karma's alleged property interest in the Debtors' assets looming over the sale process,

3

the Debtors will also have a clearer path to effectively market their assets, timely consummate the sale, and promptly exit chapter 11, without eroding the recoveries for the stakeholders.

5.       The proposed settlement to resolve Karma's more than $900 million asserted claim for approximately 4.4% is not only an exercise of sound business judgment and within the range of reasonableness, but is a critical and necessary compromise that paves the way for the Debtors to maximize the value of their assets for the benefit of all stakeholders, and to quickly and efficiently exit chapter 11.

## RELIEF REQUESTED

6.       By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019, (a) approving the Settlement Agreement in all respects and (b) granting related relief.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

7.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

8.       The predicates for the relief requested by this Motion are sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 6004 and 9019.

9.       Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Parties consent to the entry of a final judgment or order with respect to this Motion if it is determined that

this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**BACKGROUND**

**1. The Chapter 11 Cases**

10.    On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, these "**Chapter 11 Cases**"). These Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 11, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Committee**") for these Chapter 11 Cases. No trustee or examiner has been appointed in these Chapter 11 Cases.

11.    Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 15].

**2. The California District Court Action**

12.    On October 30, 2020, Karma commenced a suit against LMC and certain of its current and former executive officers and employees in the California District Court, Case No. 20-cv-02104 (the "**California District Court Action**"), asserting claims for, among other things, misappropriation of trade secrets and intellectual property, conspiracy, breach of contract, tortious

5

interference with contract, RICO, violation of the computer fraud statutes, and for injunctive relief. On April 20, 2021, Karma filed an amended, operative complaint (the "**Complaint**").

13.     On June 7, 2021, LMC filed an answer to the Complaint in the California District Court, asserting various defenses and affirmative defenses and denying any liability or damages to Karma on or arising from any of the causes of action asserted by Karma.

14.     Generally, among other allegations, Karma alleges that certain of Karma's former employees acted as agents for LMC, accessed Karma's computer systems without authorization, and took or deleted information owned by Karma.  Karma further asserts that LMC misappropriated trade secrets, unjustly enriching LMC and, as a result of LMC's alleged conduct, Karma has asserted damage claims against LMC in excess of $900 million.  Karma further alleges that the Debtors cannot sell a substantial portion of their assets because they include the disputed intellectual property that Karma believes LMC willfully misappropriated and therefore, is not property of the Debtors' estates.  The Debtors dispute all of these allegations.

15.     After nearly three years of litigation and extensive discovery in the California District Court Action and prior to the Petition Date, the California District Court scheduled a jury trial which is currently scheduled to begin on September 12, 2023.  There is no question that the trial will demand significant time, expense, resources, and attention from the Parties, their professionals, and the numerous experts intended to testify.  These demands would impact the Parties during the preparation stage and throughout the trial, post-trial briefing, and a potential lengthy appeal process.

### 3.  Disputes with Karma in these Chapter 11 Cases

16.     The Debtors commenced these Chapter 11 Cases for the purpose of maximizing value for the Company by conducting a robust sale process, reducing their cash burn to preserve

6

resources, and centralizing the claims asserted against the Debtors to efficiently resolve those claims and provide meaningful recoveries to stakeholders. To that end, on the Petition Date, the Debtors filed a *Motion for Entry of an Order (i)(a) Establishing Bidding and Auction Procedures, (b) Scheduling Certain Dates With Respect Thereto; (c) Approving the Form and Manner of Notice Thereof, (d) Approving Contract Assumption and Assignment Procedures, and (e) Granting Other Related Relief; and (ii)(a) Authorizing the Debtors to Enter into a Definitive Purchase Agreement and (b) Granting Other Related Relief* [D.I. 154] (the "**Bidding Procedures Motion**"), seeking approval of (a) procedures to govern the marketing and sale of their assets, noticing with respect thereto, the assumption of executory contracts and unexpired leases, and certain related relief (collectively, the "**Bidding Procedures**") and (b) a sale of all, substantially all, or some of the Debtors' assets on terms to be determined (each a "**Sale**").

17.     On June 27, 2023, LMC filed a *Suggestion of Bankruptcy and Notice of Automatic Stay* in the California District Court Action. In light of the Chapter 11 Cases, the California District Court orally stayed the California District Court Action, but did not vacate the trial date.

18.     On July 5, 2023, Karma filed with this Court a *Motion for Relief from the Automatic Stay* [D.I. 82] (the "**Stay Relief Motion**") in this Court, seeking relief from the automatic stay to continue the California District Court Action in the California District Court, to which the Debtors filed an objection on July 19, 2023 [D.I. 122] and the Committee filed an objection on July 20, 2023 [D.I. 128].

19.     On July 13, 2023, the Debtors filed with this Court a *Motion Under 11 U.S.C. §§ 502(c) and 105(a) for Entry of Orders (i) Establishing Procedures and Schedule for Estimation Proceedings and (ii) Estimation of the Amount of the Claim Held by Karma Automotive LLC* [D.I. 108] (the "**Estimation Motion**").

7

20.    On July 20, 2023, Karma filed with this Court an objection to the Estimation Motion [D.I. 126] and the Bidding Procedures Motion [D.I. 127]. In connection with its objections to the Estimation Motion and the Bidding Procedures Motion, Karma alleged that the Debtors had misappropriated Karma's trade secrets and intellectual property, had incorporated such intellectual property into the Debtors' alleged property and products, and that neither the Bidding Procedures nor any Sale should be approved by this Court absent a judicial determination of the parties' respective property rights pursuant to an adversary proceeding under Bankruptcy Rule 7001.

21.    On July 24, 2023, Karma filed with this Court its reply in support of the Stay Relief Motion [D.I. 144], and the Debtors filed replies in support of Bidding Procedures Motion [D.I. 154] and the Estimation Motion [D.I. 155].

22.    On July 27, 2023, the Court held an evidentiary hearing on the Bidding Procedures Motion, the Stay Relief Motion, and the Estimation Motion, among other matters. At such hearing, the Court (a) continued the hearing with respect to the Bidding Procedures Motion, (b) granted Karma's Stay Relief Motion, and (c) determined that the Estimation Motion was moot.

23.    On July 31, 2023, the Court entered the order granting the Stay Relief Motion [D.I. 206] (the "**Stay Relief Order**"), thereby permitting Karma to proceed with the California District Court Action through a jury verdict, judgment, and post-trial motions against LMC.

24.    On August 1, 2023, the Debtors filed with the Court their schedules of assets and liabilities [D.I. 210, 211, 212].

25.    On August 4, 2023, the Court conducted a continued hearing with respect to the Bidding Procedures Motion and announced that it would approve the Bidding Procedures subject to modifications and without prejudice to any party's rights to seek to modify, extend, or vacate the deadlines set forth therein. On August 8, 2023, the Court entered an order approving the

Bidding Procedures subject to modification as set forth therein [D.I. 237] (the "**Bidding Procedures Order**"). The Debtors are currently marketing and pursuing one or more Sales of assets in accordance with the Bidding Procedures.

### 4. Background Specific to the Settlement Agreement

26.     After the Court granted Karma's Stay Relief Motion, the Debtors and Karma engaged in robust, arm's length negotiations in a good faith attempt to resolve their disputes. In connection with these negotiations, the Parties have reached agreement on a global resolution of their disputes (the "**Settlement**"), the terms of which are memorialized in the Settlement Agreement attached to the Proposed Order as **<u>Exhibit 1</u>**. The Settlement would resolve all claims and disputes among the Parties—including with respect to the California District Court Action— and permit the Debtors to market and potentially sell their assets without the overhang of their dispute with Karma.

27.     As further described in the Settlement Agreement, the primary terms of the Settlement are as follows:[4]

a. The Settlement Agreement shall be binding upon the Parties from the date of its execution, but is expressly subject to and contingent upon entry of the Proposed Order by the Court and payment of the Settlement Payment (the "**Settlement Effective Date**").

b. Promptly upon the mutual execution and delivery of the Settlement Agreement and by no later than August 15, 2023, the Debtors shall file this Motion with the Court seeking entry of the Proposed Order. The Debtors shall file a motion, or such other pleadings as necessary, to expedite and shorten notice for hearing on the Settlement Motion.

c. Promptly following the Court's entry of the Proposed Order the Debtors shall make a cash payment to Karma in the total amount of $40 million (the "**Settlement Payment**"), of which $5 million (the "**License Payment**" or "**Royalty**") shall be

---

[4] The following description of the terms of the Settlement Agreement in this Motion is only a summary and is qualified in their entirety by the provisions of the Settlement Agreement. To the extent the summary conflicts or is inconsistent with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

on account of the one-time Royalty required by the License (as defined in the License Agreement). The wire for the Settlement Payment shall be initiated the same business day as the Proposed Order, unless entry of the Proposed Order occurs after 12:00 p.m. Eastern Time or occurs on a non-business day, in which case the wire payment shall be made on the next Business Day. The Settlement Payment shall be made to Karma's counsel of record in these Chapter 11 Cases by wire transfer in accordance with the wire instructions set forth in the Settlement Agreement. The Settlement Payment shall be in full satisfaction of the Debtors' obligations under the Settlement Agreement and of all of Karma's Claims against the Debtors. For the avoidance of any doubt, the Settlement Payment shall be inclusive of the License Payment and in no event shall the Debtors be required to make any payment in excess of $40 million under the Settlement Agreement.

d. Effective upon the Settlement Effective Date, Karma, on behalf of itself and its predecessors, successors, and assigns ("**Licensor Parties**"), (i) does hereby grant (in consideration for the Settlement Payment and the License Payment, which is included within the Settlement Payment and without the need for any further action, consideration or compensation) the License (as defined in the License Agreement) to the Debtors and their Affiliates (together with their predecessors, successors and assigns, "**Licensee Parties**") and their Related Parties and (ii) is hereby bound by the other obligations, covenants, representations and warranties, as set forth in the License Agreement attached as **Exhibit A** to the Settlement Agreement ("**License Agreement**").

e. The Debtor Release Parties and Karma Release Parties shall mutually release one another with respect to all claims based on or relating to the California District Court Action against each other, which shall become effective upon the Settlement Effective Date and subject to payment of the Settlement Payment; *provided*, *however*, that such mutual releases shall cease to be effective if and only if the order entered by this Court approving the Settlement Agreement is reversed on appeal by a Final Order and the Settlement Payment is returned to the Debtors.

f. Within forty-five (45) days upon the Proposed Order becoming a Final Order, Debtors and Karma agree to make a good faith effort to return, or confirm the destruction of, hard-copy and electronic documents that were produced in discovery in the California District Court Action that contain information originating from the other Party and that are located in files, computers or devices owned by Debtors or Karma. Further, Debtors shall request, and in the case of any person currently employed by the Debtors instruct, that the other defendants in the California District Court Action certify no later than the date of entry of the Proposed Order that they have or will within forty-five (45) days of the Settlement Effective Date make a good faith effort to return, or confirm the destruction of, all hard-copy and electronic documents that they provided to LMC that were produced in discovery in the California District Court Action that contain information originating from Karma. Notwithstanding the foregoing, and for the avoidance of doubt, Debtors shall be permitted to retain all documents and Software into which Karma IP has been incorporated comprising the Debtors' Technology or otherwise

10

with respect to Debtors' exercise of the License.

g. Upon the Settlement Effective Date (and, in any event, not later than the next Business Day thereafter), the Parties shall (1) provide a status update to the California District Court regarding the Settlement Agreement, (2) stipulate to stay any and all dates, statutes of limitation and deadlines in the California District Court Action as to all parties in the California District Court Action, including the trial set for September 12, 2023, (3) obtain entry of the California District Court Order staying all dates, statutes of limitation and deadlines in the California District Court Action as to all defendants, and (4) agree to dismissal of the California District Court Action with prejudice as to all defendants upon certification of the parties that the Approval Order has been entered and become a Final Order.

h. After occurrence of the Settlement Effective Date and promptly upon the Approval Order becoming a Final Order (and, in any event, within three (3) Business Days thereafter), the Parties shall each certify to the California District Court that the Approval Order has become a Final Order and Karma shall take any such other actions as may be necessary to dismiss the California District Court Action with prejudice with respect to the Debtors and all other defendants named in the California District Court Action.  The Parties agree to cooperate with one another, and to execute and deliver such documents, notices, stipulations, or motions as any other Party reasonably may request to effectuate the dismissal of the California District Court Action with prejudice.

i. The form and substance of the order approving the Settlement Agreement shall be reasonably acceptable to the Parties and include, among other things, a good faith finding under section 363(m) of the Bankruptcy Code and a waiver of any stay of the effectiveness of the order approving the Settlement Agreement.  For the avoidance of any doubt, the form and substance of the Proposed Order is reasonably acceptable to the Parties.

**BASIS FOR RELIEF**

28.   As more fully set forth below, approval of the Settlement Agreement is in the best interests of the Debtors, their creditors, and their other stakeholders.  In this regard, the Settlement Agreement would successfully resolve the single largest claim that has been asserted against the Debtors, remove the overhang of Karma's California District Court Action on the Debtors' sale process, and place the Debtors in a strong position to rapidly maximize value for the benefit of creditors and other stakeholders.   The Settlement Agreement (including the License Agreement)

therefore satisfies the requirements for approval of Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

29.     Bankruptcy Rule 9019 provides, in relevant part, that "after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). As courts routinely recognize, "[c]ompromises are favored in bankruptcy" in order to "minimize litigation and expedite the administration of a bankruptcy estate[.]" *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *In re Novapro Holdings, LLC*, No. 14-10895-LSS, 2019 WL 1324950, at *4 (D. Del. Mar. 25, 2019) (quoting *Martin*, 91 F.3d at 393). The decision of whether to approve the settlement is "within the sound discretion of the [c]ourt." *In re Managed Storage*, No. 09-10368 (MWF), 2020 WL 1532390, at *4 (Bankr. D. Del. Mar. 31, 2020) (citing *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014)). In evaluating a settlement, the role of the court is to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393. The settlement need not be the "best possible compromise" available to the debtor. *Managed Storage*, 2020 WL 1532390, at *4 (citing *Nortel*, 522 B.R. at 510). Rather, "the court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *Id*

30.     At the core of the court's evaluation of the settlement is a determination of whether or not the settlement is "fair and equitable." *In re Energy Future Holdings Corp.*, 648 F. App'x 277, 281 (3d Cir. 2016) (citing *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006)); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In order to make that determination, the Bankruptcy Court "need not conduct a mini-trial or a full evidentiary hearing," *Managed Storage*, 2020 WL 1532390, at *4 (citing *In re Capmark Fin. Grp.*

*Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010)), and the Bankruptcy Court does not require "all of the information necessary to resolve the factual dispute, for by doing so, there would be no need of settlement." *NovaPro*, 2019 WL 1324950, at *4 (citing *In re Key3Media Grp. Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)). The Third Circuit has set forth four criteria to consider when determining whether to approve a proposed settlement under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also Nutraquest,* 434 F.3d at 644-45 (applying the *Martin* factors); *NovaPro*, 2019 WL 1324950, at *5-6 (same).

31.    Although the Bankruptcy Code generally restricts the ability of a debtor in possession to use an estate's assets outside the ordinary course of business, section 363(b) of the Bankruptcy Code provides that the "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The purpose of section 363 is "to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy oversight, while protecting creditors . . . when transactions are not ordinary." *In re Roth Am. Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (citations omitted). Where there is a legitimate business justification for the use of assets outside the ordinary course of business, courts will defer to the debtor's judgment. *Martin*, 91 F.3d at 395 ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification."); *see also In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. April 29, 2014) ("Transactions under [section] 363 must be based upon the sound business judgment of the debtor or trustee . . . . [W]here the debtor articulates a reasonable basis for its business decisions (as distinct from a

13

decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." (citations and quotations omitted)).[5]

32.     The Debtors submit that the Settlement Agreement satisfies the standards for approval under both Bankruptcy Rule 9019 and section 363(b) of the Bankruptcy Code and that it should be approved pursuant to each of these provisions. *First*, approval and consummation of the Settlement Agreement will bring an expedited conclusion to years of contentious litigation, resolve what the Debtors believe to be the largest asserted claims against them, and maximize the likelihood of full creditor recoveries and recoveries for stockholders in these Chapter 11 Cases. As noted above, the California District Court Action, which is set for trial in September, has been pending for nearly three years and Karma is asserting claims against the Debtors in excess of $900 million.  Although the Debtors vigorously contest the merits of these claims and are prepared to defend against them, the litigation involves complex issues relating to alleged misappropriation of trade secrets and intellectual property, as well as other complex causes of action, and there can be no assurance that the jury that would be hearing the California District Court Action would agree with the Debtors' position.  Moreover, a verdict giving Karma even a fraction of the damages that it seeks would significantly impair creditor recoveries in these Chapter 11 Cases (to say nothing of stockholder recoveries).  By contrast, a consensual resolution of Karma's claims pursuant to the Settlement Agreement will fix the Debtors' liability to Karma at approximately 4.4% of the amount that Karma seeks, resolve the Debtors' most significant contingent liability, and significantly enhance the probability of full creditor recoveries and of recoveries for stockholders.

---

[5] The Parties additionally seek relief from the 14-day stay applicable under 11 U.S.C. § 6004(h) so that the Settlement Agreement may be effectuated expeditiously.

33.     *Second*, approval and consummation of the Settlement Agreement will remove a significant uncertainty surrounding the Debtors' ongoing efforts to market and sell their assets.  As the Court is well aware, Karma has contended that there are significant assets that the Debtors may not be able to sell through a Sale until disputes about the Debtors' and Karma's respective property rights have been litigated to conclusion in an adversary proceeding under Bankruptcy Rule 7001.

34.     The Court has further indicated that it is not inclined to determine issues regarding the Debtors' ownership of property that may be subject to the alleged ownership of Karma prior to the conclusion of the California District Court Action, which could take months if not longer. In the absence of a consensual resolution, Karma's ongoing asserted interests in property that the Debtors contend are the Debtors' assets could significantly impair the interest that potential bidders may have in such assets, affect the value that Debtors may receive for such assets as well as delay any Sale and the conclusion of these Chapter 11 Cases.  By way of example, bidders may decide that they wish to only bid on portions of the assets not subject to the Karma dispute or may condition any bids on a successful future resolution of the California District Court Action.  The Settlement Agreement resolves this issue.  By providing the Debtors with a perpetual, transferable, non-exclusive license with respect to any property that the Debtors allegedly misappropriated, the Settlement Agreement will allow the Debtors to market and sell their assets free and clear of the overhang of their disputes with Karma.

35.     *Third*, approval and consummation of the Settlement Agreement will remove the ongoing distraction, costs, and delay associated with the California District Court Action so that the Debtors, their management, and their professionals are able to devote greater attention to the successful resolution of the Sale process and these Chapter 11 Cases.  The California District Court Action is currently scheduled for a multi-week jury trial, including ten days of evidence, as well

15

as jury selection, opening statements and closing statements, in September 2023. That trial would demand time and attention from the Company's current management to the detriment of the bankruptcy process (including personnel who would need to prepare for and attend trial), as well as significant resources for attorneys' fees, costs, and other expenses associated with the trial, post-trial motions, and a lengthy appeal process. While the Debtors have prepared defenses and experts to fully litigate the California District Court Action, there is risk that Karma could prevail and, in any event, the time and resources devoted to the California District Court Action would distract the Debtors from the other demands of these Chapter 11 Cases and Sale process, and thereby further threaten a successful resolution of such cases.

36.    In light of the foregoing, the Debtors submit that the Settlement Agreement (including the License Agreement) falls well within the range of reasonableness, is supported by ample business justification, and is within the best interests of the Debtors, their estates, their creditors, and all of their stakeholders.

37.    Additionally, the Debtors have sound business justification and ample support for an immediate payment of the Settlement Payment upon entry of the Proposed Order. The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over a century ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 — a successful reorganization." *Id.* at 825–26.

38.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  In addition to using the Court's equitable powers under section 105(a), the Court may also rely on the "doctrine of necessity" to make payment of pre-petition claims.  The doctrine of necessity is a well-established doctrine that permits a court to authorize the payment of certain pre-plan prepetition claims when payment is necessary to the continued operations of a debtor's business and restructuring efforts.  *See e.g.*, *In re LCI Holding Co., Inc.*, No. 12-13319, 2013 WL 1101111 (Bankr. D. Del. Mar. 15, 2013) (holding necessity of payment doctrine is applicable in liquidation case to pay critical vendors and noting that "the Court permits payments to critical vendors when it benefits the bankruptcy estate."); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

39.     While payment of an unsecured creditors' prepetition claims outside a plan of reorganization (like those contemplated by the Settlement Agreement) is not common, it is by no means unprecedented.  *See, e.g.*, *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 510–11 (Bankr. D. Del. 2010) (acknowledging that prepetition secured claims can be paid outside a plan of

reorganization and noting that "[i]ndeed, such payments are routinely made in a number of different contexts"); *cf. In re World Health Alts., Inc.*, 344 B.R. 291, 298 (Bankr. D. Del. 2006) (approving a preplan settlement that could indirectly impact priority creditors, acknowledging that "the absolute priority rule … [is] not implicated [where] the settlement does not arise in the context of a plan of reorganization").  Most courts will allow the payment of prepetition, unsecured claims if such payment is "critical to the reorganization process."  *See In re Friedman's Inc.*, No. 09-10161, 2011 Bankr. Lexis 4500, at *7–8 (Bankr. D. Del. Nov. 30, 2011) ("Put simply, '[t]he doctrine of necessity stands for the proposition that a bankruptcy court may allow payment outside of a plan of reorganization on account of a pre-petition obligation where such payment is critical to the reorganization process" and the disfavored creditors will be at least as well off as they would have been had the preferred unsecured creditor not received early payment); *see also* Stipulation and Agreed Order Approving the Debtors' Mot. for Entry of an Order Pursuant to Bankruptcy Code Section 363(b) and Federal Rule of Bankruptcy Procedure 9019 Approving the Stipulation Among the Debtors, the Creditors' Committee, Echostar, the Ad Hoc Group, Harbinger, Lightsquared, Sprint, Solus, and the 15% Notes Trustee, *In re Terrestar Networks Inc., et al.*, No. 10-15446 (Bankr. S.D.N.Y. Dec. 15, 2011) [ECF. No. 865] (approving debtor's cash-settlement of approximately $20 million to be paid out several months prior to confirmation of the plan because, among other reasons, (1) such a settlement would avoid protracted litigation, (2) no party objected to the settlement, and (3) the creditors' committee affirmatively supported the settlement); Stipulation and Agreed Order Approving the TSC Debtors' Mot. for Entry of an Order, Pursuant to Bankruptcy Code Section 363(b) and Federal Rule of Bankruptcy Procedure 9019 Approving the Stipulation Among the TSC Debtors, Elektrobit Inc. and Certain of the Preferred Shareholders and Bridge Lenders, *In re Terrestar Corp.*, No. 11-10612 (Bankr. S.D.N.Y. Aug. 24, 2012) [ECF

No. 593] (approving the debtor's one-time cash payment of $13.5 million outside of the plan of reorganization to resolve an asserted pre-petition claim of $27.8 million because the proposed settlement did not violate the absolute priority rule and met all other requirements under Rule 9019).

40.     First, as noted above, the Settlement Agreement will resolve what was an asserted $900 million claim for approximately 4.4% of the asserted amount.   Further, the Settlement Agreement not only consensually resolves Karma's claims against the Debtors but also the Debtors' ability to sell assets that Karma contends either belong to it or were used to develop the Debtors' technology.   Furthermore, this provision was an integral part of Karma's agreement to permit the Debtors to market and sell the disputed property.  As a result, the settlement benefits all the Debtors' stakeholders by allowing the Debtors to maximize the value of their estates through the sale without the overhang of the Karma litigation.

41.     Lastly, the Debtors submit that granting Karma the protections of section 363(m) of the Bankruptcy Code are warranted under the circumstances.  The Settlement Agreement was proposed, negotiated, and is being undertaken by the Debtors and Karma from arm's-length bargaining positions without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Although the Debtors disagree with the positions Karma has asserted, the Debtors believe that Karma has proceeded in good faith.  The Debtors and Karma have not engaged in any conduct that would cause or permit the Settlement Agreement or the consummation of the Settlement Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  As a result of the foregoing, Karma should be considered an entity that entered into the Settlement Agreement in "good faith" within the meaning

of section 363(m) of the Bankruptcy Code, and as such, is entitled to the full rights, benefits, privileges, and protections afforded thereby.

42.     As explained herein and based on the foregoing, the Debtors believe that the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the estates and is a reasonable exercise of the Debtors' business judgment. Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

**WAIVER OF BANKRUPTCY RULE 6004(h)**

43.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because the Settlement Agreement requires actions by the Debtors upon the Court's approval of the Motion.

**NOTICE**

44.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) Karma; (iii) Foxconn; (iv) the Committee; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the District of Delaware; (viii) the state attorneys general for all states in which the Debtors conduct business; (ix) any parties who have asserted liens against the Debtors' assets; and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

45.     No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion, and granting such other and further relief as the Court deems just and proper.

Dated: August 15, 2023

Respectfully submitted,

_____/s/ Jason M. Madron_____
**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Co-Counsel to Debtors and Debtors-in-Possession*