```
                                                                    1

                        UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE


   IN RE:                            .  Chapter 11
                                     .  Case No. 23-10831 (MFW)
   LORDSTOWN MOTORS CORP.,           .
   et al.,                           .  (Jointly Administered)
                                     .
                                     .  Courtroom No. 4
                                     .  824 Market Street
                                     .  Wilmington, Delaware 19801
              Debtors.               .
                                     .  Tuesday, August 15, 2023
   . . . . . . . . . . . . . . . .      2:00 p.m.

                TRANSCRIPT OF STATUS CONFERENCE HEARING
                 BEFORE THE HONORABLE MARY F. WALRATH
                    UNITED STATES BANKRUPTCY JUDGE

   APPEARANCES:

   For the Debtors:          Daniel DeFranceschi, Esquire
                             RICHARDS, LAYTON & FINGER, P.A.
                             One Rodney Square
                             920 North King Street
                             Wilmington, Delaware 19801

                             Jason Zakia, Esquire
                             WHITE & CASE LLP
                             111 South Wacker Drive
                             Suite 5100
                             Chicago, Illinois 60606



   (APPEARANCES CONTINUED)

   Audio Operator:           Mandy Bartkowski, ECRO

   Transcription Company:    Reliable
                             The Nemours Building
                             1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
                             Telephone: (302)654-8080
                             Email: gmatthews@reliable-co.com

   Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For Foxconn:              Matthew Murphy, Esquire
                              PAUL HASTINGS LLP
 3                            71 South Wacker Drive
                              Suite 4500
 4                            Chicago, Illinois 60606

 5  For the Committee:        Deborah Kovsky-Apap, Esquire
                              TROUTMAN PEPPER HAMILTON SANDERS LLP
 6                            4000 Town Center
                              Suite 1800
 7                            Detroit, Michigan 48075

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       (Proceedings commenced at 2:30 p.m.)

2              THE COURT:  Good afternoon.  This is Judge
3 Walrath.

4              We're here in the Lordstown case.  We are here on
5 a scheduling issue on the Foxconn motion to dismiss or
6 convert.  I'd like to hear a status report from the debtor. I
7 think things have been happening.

8              MR. ZAKIA:  Yes, Your Honor.  This is Jason Zakia
9 of White & Case on behalf of the debtors.

10              I think I know what Your Honor may have been
11 eluding to, but just to make sure that I have that correct.
12 As Your Honor is aware, the dispute that these debtors have
13 had with Karma has been a big part of these cases and
14 something that we spent a lot of the Court's time,
15 unfortunately, maybe dealing with.

16              Last night, at about 11:57 p.m., I am happy to
17 report we were able to finally reach an agreement with Karma,
18 obviously, subject to Your Honor's approval which would
19 resolve the lawsuit in California, would resolve Karma's
20 damage claim against the debtors, and, importantly, would free
21 the debtors to sell the technology, which is the subject of
22 the dispute with Karma.  Part of the deal Karma grants the
23 debtors a, I may not get all the IP terms right, worldwide,
24 global, perpetual, irrevocable license which is being provided
25 in exchange for the settlement consideration.

1             So, we believe that this is an important milestone
2  in the cases.  Obviously, we are going to have a hearing. I
3  saw Your Honor entered the order shortly before we started
4  here today setting that for the 28th.  We are very
5  appreciative of that, in which Your Honor will have to
6  consider the merits of the settlement, but if we are able to
7  get that approved we believe that removes a very significant
8  challenge that the debtors have been facing and sets us up
9  for, hopefully, moving towards a speedy resolution of these
10 cases and is a very important development.
11            We are happy to talk about anything else that Your
12 Honor was curious about, but that is a very big development
13 and very late breaking news.
14            THE COURT:  I think that's the big news.  So,
15 let's then turn to -- I did see it in the schedule for the
16 28th, so let's turn to the scheduling of the Foxconn motion.
17 This was, I think, a request by Foxconn to be heard on this.
18 So, I will let -- Mr. Murphy, are you here for Foxconn?
19            MR. MURPHY:  I am, Your Honor.  Good afternoon.
20 Matt Murphy on behalf of Foxconn.
21            We are asking that the -- well, let me back up.
22 We are -- we have been in discussions with the debtors about a
23 briefing schedule on the motion to dismiss.  And we have been
24 working to figure that out consensually.  We recently hit an
25 impasse as it relates to scheduling that hearing.  The debtors

1 or, Mr. Zakia, correct me if I'm wrong, I think you guys want
2 an (indiscernible) on August 30th.  Its our view that its
3 heard after the bid deadline or maybe even after the selection
4 of the winning bid by the debtors on August -- I'm sorry, on
5 September the 12th.
6       The reason for that is, you know, the case has
7 been is this sale process for real or not. It seemed to me
8 that Your Honor had doubts prior to entering the order to
9 approve the bid procedures and wanting to see the IOI's. I
10 think for us, you know, the debtor, a large part of their
11 story has been there's this sale process and they're trying to
12 sell the assets as a going concern.  That is, you know, the
13 basis for their, I guess, valid bankruptcy purpose in this
14 bankruptcy as opposed to just a tactical litigation advantage.
15       So, for us I think in the interest of the Court to
16 have the benefit of that prudent pertinent information its,
17 obviously, to our benefit.  We are seeking discovery as it
18 relates to the bid.  I think to try to have a hearing without
19 the benefit of that information just leaves open, you know,
20 more speculation and the ability for the debtors to say, hey,
21 you know, we're running a process, you know, anything can
22 happen, give us more time.
23       You know, when you look at the development of the
24 Karma settlement in particular, I think now we find ourselves
25 in the position of we're going to have to supplement our

1 motion to dismiss to address the fact that the debtors aren't
2 in financial distress. The settlement calls for a $40 million
3 payment.  After settling with Karma the debtors are going to
4 have, ballpark figures, Your Honor, $97.6 million to settle
5 approximately $17.5 million in unsecured claims.
6       There is clear Third Circuit precedent with
7 respect to a debtor that is not suffering from financial
8 distress.  In other words, absent the financial distress there
9 is no reason for Chapter 11 and no bankruptcy purpose to
10 support a finding of good faith.  So, now we have a known
11 universe of unsecured claims.  Oddly enough, once the
12 unsecured claims are paid in full the next $30 million goes to
13 my client, Foxconn, as a preferred shareholder.  Eight percent
14 of everything after that we own eight percent of the common.
15       So, we have, you know, a great deal of interest
16 in, as I mentioned before, making sure this Chapter 11 process
17 serves a purpose.  I think Your Honor has probably picked up
18 at this point that we have our doubts.  You know, we paid
19 close attention at the prior hearings and we tried to be
20 judicious with our words which is something rare for me, I
21 think, if you ask my colleagues. And, you know, the -- I
22 heard the debtors champion buzzwords that we hear from case to
23 case in real Chapter 11's which I just don't know that  this
24 is.
25       They talk about facing major distress, threatening

1  the financial situation of the company.  Your Honor pointed
2  out when they filed they had $137 million in cash.  Now we
3  have the Karma settlement. Is there major financial distress.
4  Mr. Lauria talked about, you know, needed to file to avoid a
5  race to the courthouse by creditors.  I just don't see that
6  here.  There are no secured lenders exercising remedy.  The
7  various class action lawsuits were all stayed pending
8  resolution of the Ohio securities class action. The Karma
9  litigation, which had been pending for three years when they
10 filed, so there was no race there, but it has now been
11 settled.
12         Curious, the timing the settlement after failing
13 to enjoin the Karma proceedings and estimate their claims.
14 You know, maybe there was an effort to seek a tactical
15 litigation advantage there as well.  We talked about timing,
16 timing is of the essence and the fee burn.  The only reason
17 there is a fee burn is because of the Chapter 11 and the
18 filing.  This talk of selling the assets as a going concern, I
19 don't know how there is a going concern here.  They sold 37
20 vehicles.  They are done manufacturing.  When you look at the
21 schedules and statements there is $151 million in total
22 assets.  $137 million, $138 million was cashed.
23         THE COURT:  All right.  I think that you can save
24 that for another hearing.  We're here on a scheduling
25 conference.  But I get that you want it before any sale

1 hearing.

2       MR. MURPHY:  I do want it before a sale hearing, I
3 just think it can't be before a bid deadline; otherwise, we
4 are just going to suffer under the same argument which is, you
5 know, we have a sale process, anything can happen.  I don't
6 think that is good for us and I am not going to speak for Your
7 Honor clearly.  I feel like you would want the benefit of that
8 information as well.

9       THE COURT:  But you do want it before the sale?

10       MR. MURPHY:  I'm happy to have it before the sale
11 hearing, I'm happy to have it -- I mean, I think having it
12 before the sale hearing makes the most sense, Your Honor, yes.
13 I would like to have it before the sale hearing.  I would like
14 to have it between when we get visibility into the bids and
15 maybe even a selection by the debtor of the winning bid, and
16 the sale hearing itself.

17       THE COURT:  Thank you.  Ms. Kovsky-Apap.

18       MS. KOVSKY-APAP:  Ms. Kovsky is fine, Your Honor.
19 Thank you.  Deb Kovsky, Troutman Pepper, on behalf of the
20 committee.

21       I just wanted to say a few words since the
22 committee had not weighed in on the scheduling dispute.  In
23 fact, we didn't even really know that it was happening until
24 it hit the docket since we have not been brought into the loop
25 on this.  And I know Your Honor said that this has about

1  Karma, this is not about the merits of the motion to dismiss,
2  but I think the committee's views may be informative in terms
3  of timing.
4          So, the Karma settlement not being before the
5  Court it does play a very big role in how the committee is
6  thinking about these cases and Foxconn's motion to dismiss.
7  From our perspective Karma was clearly the driving reason that
8  the debtors needed to file for bankruptcy.  We think that was
9  probably the right move for them, but now it looks like Karma
10 is resolved.  And assuming that Your Honor approves the
11 settlement agreement the Karma claim gets liquidated at $40
12 million.  The rest of the unsecured creditors are probably
13 going to be south of $20 million.  The debtors should have
14 sufficient cash on hand to pay both.
15         Now the committee does have very serious concerns
16 about one aspect of the settlement agreement with Karma which
17 is that Karma gets paid immediately ahead of all unsecured
18 creditors.  That gives us some heartburn, the rest of the
19 unsecured creditors have to wait for a plan process.  The
20 debtors continue to burn cash.
21         One option the committee would consider supporting
22 would be a structured dismissal of these cases once the Karma
23 settlement agreement is approved.  That would enable payments
24 to unsecured creditors a lot faster, it would cut off a lot of
25 the administrative cash burn.  Since there are no secured

1  creditors it's not clear why the debtors couldn't simply
2  pursue their sale process outside of bankruptcy.  They can
3  certainly litigate with Foxconn outside of bankruptcy.
4              That said, the committee understands the debtors
5  have a draft plan of reorganization that they prepared.  We
6  haven't seen it yet. We haven't bene brought into those
7  discussions.  We (indiscernible) anticipated timing.  So,
8  there could be something here that I'm just missing
9  altogether, but at this point the committee just doesn't have
10 any basis to understand why these cases belong in bankruptcy
11 once the Karma settlement agreement is approved or why that is
12 in the best interest of unsecured creditors.
13             Again, at the end of the day our goal is to get
14 the up to cure creditors paid in full as soon as possible with
15 a minimum of administrative expense.  So, in terms of timing
16 our perspective is we think, really, the sooner the better and
17 hopefully on a negotiated basis where the parties can come
18 together and figure out a way to quickly exit these cases with
19 everybody getting paid.
20             So, from the committee's perspective we don't see
21 the need to wait until the bid deadline or the sale hearing.
22 We think this should go forward expeditiously.
23             THE COURT:  Mr. Zakia, your turn.
24             MR. ZAKIA:  Thank you, Your Honor.  We will,
25 resist the urge to pre-argue the merits of the various

1  motions.  I will note, in response to one thing that Mr.
2  Murphy said, that no good deed goes unpunished. I am willing
3  to plead guilty to the fact that the reason we struck the
4  Karma deal is we do think it is in the best interest and
5  maximizes the chances of us maximizing the recoveries for
6  stakeholders.  That is why we struck that deal and that is why
7  we're going to ask Your Honor to approve that deal.  That is
8  one of our goals in Chapter 11.
9         As a good advocate will, Mr. Murphy is going to
10 say, okay, now we have solved the problem, my case should be
11 dismissed.  We will save that for another day.
12        Your Honor, with regard to the scheduling issue
13 that brings us before the Court, and I'm going to focus on
14 that, we will have plenty of time to talk about the merits,
15 Mr. Murphy phrased the dispute between us quite correctly.  We
16 had been working towards a consensual schedule that would have
17 had the motion resolved in August.  When the bid deadline got
18 pushed out at the bid procedures hearing Foxconn, for the
19 reasons Mr. Murphy just told Your Honor, changed its position
20 and stated their belief that we should not resolve the motion
21 to dismiss until after the bids are received.
22        We just fundamentally disagree with that premise,
23 Your Honor.  There is no magic to the 30th.  We suggested
24 August 30th just because it was an omnibus date that was
25 available, but really this dispute is we believe, Foxconn

1 filed this motion July 20th.  We believe that participants in
2 the sale process, including those considering making bids on
3 September 8th, should have clarity as to whether these Chapter
4 11 cases are going forward or not.  We believe that, and Mr.
5 Murphy can disagree, that there is no basis to dismiss or
6 convert these cases and that is how Your Honor will rule.
7 Obviously, the decision will be up to you.
8 　　　　　We think it's in the best interest of everybody to
9 have that answer before the bid deadline, not after.  We do
10 not think it is appropriate for Karma to file their motion
11 which, again, has been pending for about a month and leave it
12 hanging in limbo without a hearing date and without an
13 opportunity to be resolved, hanging as a specter, over the
14 sale process.
15 　　　　　So, quite the opposite of Karma's view that we
16 can't have this resolved until after the bids are received.
17 We believe it's important to avoid a self-fulfilling prophecy.
18 We believe that it is important that the Court resolve this
19 issue prior to that bid deadline which, again, is September
20 8th and that is the reason why we're here, Your Honor. We
21 would like Your Honor to set it for a date that works for your
22 schedule prior to the bid deadline on September 8th.  We
23 believe that is the best way to have it resolved on its merits
24 sufficiently, quickly, and to bring certainty to all the
25 participants as to whether these cases will or will not

1  continue as they are asked to submit bids in early September.

2  THE COURT: Thank you. Any response? Mr. Murphy,
3  I think you're still muted.

4  MR. MURPHY: I double mute myself just to be sure,
5  so sometimes I forget to undouble mute.

6  So, Ms. Kovsky said it best, Your Honor, which is
7  these assets could have been sold and should have been sold
8  outside of bankruptcy. They don't need to be sold in
9  bankruptcy nor should they have been sold in bankruptcy. The
10 debtors filed the bankruptcy and now they're saying, hey,
11 don't hear the -- hair the motion to dismiss as quickly as
12 possible so that I can say you can't possibly dismiss these
13 cases at this point because I'm running this robust sale
14 process and it will upset the apple cart as a way to defeat
15 the motion to dismiss and keep them in an improper forum to
16 begin with.

17 If you are a buyer interested in these assets, and
18 let's think about what they are, right, it's a discreet set of
19 assets, you don't have secured creditors to take care of,
20 you're not talking about real property, you're not talking
21 about environmental issues, right, a discreet set of assets.
22 By the way, if we're going to have it heard beforehand, I want
23 to know exactly who those bidders are because my guess is most
24 of the bidders are pretty familiar with bidding on assets and
25 363 sale processes, and they don't need to be in bankruptcy to

1 buy that.  If these cases are dismissed, they will still be
2 interested.  If they stay in bankruptcy they will still be
3 interested.
4 　　　　　The determination on the motion to dismiss, if we
5 have it heard before the bid deadline hugely prejudicial to
6 us.  If we have it heard after the bid deadline, I would argue
7 not prejudicial to anybody.
8 　　　　　MR. ZAKIA:  Your Honor, can I make one point?  I'm
9 sorry.  I really did resist, I didn't argue the merits nearly
10 as much as Mr. Murphy did, but when he says there's no reason
11 to have a sale in bankruptcy we will wait for the hearing, but
12 the evidence of that hearing is going to show that when
13 Foxconn wanted to buy the company they wanted to buy it in 363
14 in bankruptcy.  There can be reasons and advantages to doing a
15 sale process in bankruptcy.  We will save the rest for the
16 hearing whenever Your Honor deems to send it.
17 　　　　　Thank you.
18 　　　　　MR. MURPHY:  That was pursuant to your request,
19 Mr. Zakia.
20 　　　　　MR. ZAKIA:  It will be a fun hearing whenever Your
21 Honor decides it should be.
22 　　　　　THE COURT:  Remind me again how many witnesses you
23 all intend to have at this hearing?
24 　　　　　MR. ZAKIA:  I don't know that that has been set,
25 Your Honor.  My estimate would be one or two, but that is not

1  something that's been agreed.  Mr. Murphy may have a different
2  view.
3              MR. MURPHY:  Well my view has certainly changed
4  now that we need supplemental briefing as it relates to the
5  financial distress issues.  So, we were at two to three, and
6  now it may be more as we consider -- I mean, we read the
7  pleading this morning just as you did, Your Honor.  Now we are
8  factoring that in.
9              THE COURT:  Well this is a tough one, but I am
10 going to go with the debtor on this.  To the extent I decide
11 the debtor doesn't belong in bankruptcy we ought to know
12 sooner rather then later.  To the extent that the debtor
13 belongs in bankruptcy I think a decision sooner and
14 particularly before the bids are heard would be helpful to any
15 prospective bidder who may be trying to evaluate whether to
16 bid or not.
17             Just as the debtor resolved the Karma issue, a
18 resolution of these kinds of disputes before the bids are due
19 or a sale hearing would be helpful.  Quite frankly, other then
20 the Karma settlement that I just scheduled for the 28th, I do
21 have August 28th clear.  I note that Lordstown has an omnibus
22 on the 30th, but I have other hearings on that day.  I could
23 not fit this in that day.
24             So, why don't I schedule this for August 28th at
25 10:30 with the understanding that I will hear the proposed

1  settlement first on that day and then we can get into the
2  motion to convert or dismiss.
3              I don't think, Mr. Murphy, that you would object
4  to a resolution of that issue if you are successful and the
5  case is dismissed.
6              MR. MURPHY:  I have no issue with resolving the
7  Karma issue, Your Honor.  I actually think its better for
8  Foxconn.
9              THE COURT:  Okay.  All right.
10             MR. MURPHY:  I have not had a chance to talk to
11 Mr. Zakia about this, and so we will -- our current answer
12 deadline on the complaint we agreed, for the time being, for
13 it to be September the 1st.  I don't want to put Mr. Zakia on
14 the spot.  Given that the motion to dismiss is being heard on
15 the 28th I don't know how long it will take Your Honor to
16 rule.  We would like additional time to answer the complaint
17 if that works.
18             MR. ZAKIA:  Your Honor, I would suggest let me
19 talk to my client and then Mr. Murphy offline. I am not in a
20 position to respond to that request live on the air.  I will
21 get back to him promptly and if necessary we can take it back
22 to Your Honor if there is no agreement.
23             THE court:  I strongly encourage an agreement on
24 that point.
25             MR. ZAKIA:  Understood, Your Honor.  Your strong

1  encouragement is something we listen to very carefully.
2              THE COURT:  I understand.
3              MR. ZAKIA:  Is the 21st -- would we have an
4  objection deadline the 21st if the hearing is going to go
5  forward on the 28th?
6              THE COURT:  Yes.
7              MR. ZAKIA:  Okay.  Thank you, Your Honor.
8              THE COURT:  Anything else?  All right.  We stand
9  adjourned.
10             (Proceedings concluded at 2:52 p.m.)
11
12
13
14                         CERTIFICATION
15         I certify that the foregoing is a correct
16  transcript from the electronic sound recording of the
17  proceedings in the above-entitled matter to the best of my
18  knowledge and ability.
19
20  /s/ Mary Zajaczkowski                    August 15, 2023
21  Mary Zajaczkowski, CET-531
22  Certified Court Transcriptionist
23  For Reliable
24
25