IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LORDSTOWN MOTORS CORP., *et al.*, | : | Case No. 23-10831 (MFW) |
| | : | (Jointly administered) |
| Debtors.[1] | : | Re: D.I. 89 |
| | : | **Hearing Date: TBD** |
| | : | **Obj. Deadline: July 20, 2023, at 4:00 p.m.** |
| | : | **(extended for UST to Aug. 18, 2023)** |

## OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION TO EMPLOY RICHARDS, LAYTON & FINGER, P.A.

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Debtors' Application to Retain and Employ Richards, Layton & Finger, P.A.* ("RLF") *as Co-Counsel Effective as of the Petition Date* [D.I. 89] (the "Application"), and in support of his objection respectfully states:

### PRELIMINARY STATEMENT

1. Due to its continuing representation of the Derivative Action Defendants and the Direct Action Defendants, RLF represents interests adverse to the estate and, as such, is not eligible to be retained under Section 327(a) of the Bankruptcy Code. The Application should be denied.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

## JURISDICTION & STANDING

2. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The U.S. Trustee is specifically authorized to monitor retention applications filed under 11 U.S.C. § 327 and, whenever the U.S. Trustee deems it appropriate, to file comments about such applications with the Court. *See* 28 U.S.C. § 586(a)(3)(I).

4. The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307.

## BACKGROUND

5. On June 26, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

6. RLF represents four former DiamondPeak Holdings Corp. ("DiamondPeak") director-defendants (the "Derivative Action Defendants") in a shareholder derivative suit in Delaware District Court (the "Derivative Action"). Appl. Ex. B (Gross Decl.) ¶ 23; *see In re Lordstown Motors Corp. Shareholder Derivative Litig.*, 21-cv-604 (SB) (D. Del.) (four consolidated shareholder derivative suits against certain D&O defendants alleging violations of the Exchange Act, breach of fiduciary duty, insider selling, and unjust

2

enrichment).  A copy of the consolidated amended complaint in the Derivative Action is attached as **Exhibit A**.

7. In addition, RLF represents David Hamamoto (a current director of Lordstown Motors Corp. and Lordstown EV Corp., and a former director/Chief Executive Officer of DiamondPeak) and the same four director-defendants which RLF represents in the Derivative Action (the "Direct Action Defendants") in a shareholder class action suit in Delaware Chancery Court (the "Direct Action").  Appl. Ex. B (Gross Decl.) ¶ 22; *see In re Lordstown Motors Corp. Stockholders Litig.*, No. 2021-1066-LWW (Del. Chancery) (two consolidated putative class action lawsuits asserting claims of breach of fiduciary against certain director and officer defendants).  The defendants in the Direct Action "have asserted indemnification rights against the Company[.]"  *Decl. of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 15] ("Kroll Decl.") ¶ 55.  A copy of the publicly-filed version of the complaint in the Direct Action is attached as **Exhibit B**.

8. To summarize, the complaints allege that Lordstown was acquired by a special purpose acquisition company ("SPAC") which initially targeted a "'business with a real estate related component'" and "'with an enterprise value of between $350 million and $2.0 billion.'"  Ex. A (Derivative Action Compl.) ¶ 3.  The plaintiffs allege that the SPAC, up against the two-year limit to complete a business combination under the terms of its initial public offering, rushed to complete a reverse merger with Lordstown.  *Id.* ¶¶ 4, 73.  The plaintiffs allege that a series of material false and misleading statements regarding Lordstown's demand and production capabilities were made, both before and after the merger had closed.  *Id.* ¶¶ 76-141.

9. The plaintiffs in both actions allege that RLF's clients breached their fiduciary duties of candor and loyalty. Ex. A (Derivative Action Compl.) ¶¶ 220-222, 224, 226; Ex. B (Direct Action Compl.) ¶¶ 158-163. The plaintiffs in the Derivative Action also allege that Mr. Hamamoto – a defendant which RLF does not represent in the Derivative Action, but does represent in the Direct Action – possessed material negative information about the Company which they knew was being concealed from investors. The Derivative Action plaintiffs allege that Mr. Hamamoto actively exploited his knowledge through the sale of Lordstown stock on October 22, 2020 (the day before the merger closed), when he sold one million shares for $16.38 million. Ex. A (Derivative Action Compl.) ¶¶ 146, 147.

10. In short, the plaintiffs in the Derivative Action and the Direct Action allege not simple mismanagement, but serious misconduct – what is, in essence, a "get rich" scheme executed at the expense of Lordstown and misinformed and/or uninformed investors.

11. The Debtors cite a Securities & Exchange Commission investigation and pre-petition securities litigation as imposing substantial costs. The Debtors estimate they have incurred "more than $60 million in out-of-pocket fees associated with legal time and consulting and administrative costs, including costs to fulfill the Company's indemnification obligations to its current and former directors and officers." Kroll Decl. ¶ 56.

12. With respect to litigation costs, the Debtors also state:

> The Company timely tendered claims with respect to the SEC Investigation and Securities Actions to insurers under the applicable directors and officers ("**D&O**") policies. However, the Debtors' primary and excess insurers under the post-SPAC Merger D&O policy have taken the position that no coverage is available for the vast majority of the Securities Actions and the SEC Investigation. The Company and its legal advisors have been and continue to contest the insurers' denial.

*Id.* ¶ 57.

13. On August 1, 2023, the Debtors scheduled the indemnification claims of RLF's clients in the Derivative Action and in the Direct Action as undisputed. *See* D.I. 211 at 35 & 37 of 41.

14. On July 5, 2023, the Debtors filed an adversary proceeding against the plaintiffs in the Direct Action. *See Lordstown Motors Corp. v. Amin*, Adv. No. 23-50428 (MFW) (Bankr. D. Del.). The complaint was signed by RLF. *See id.* D.I. 1.

15. On August 3, 2023, the Court denied the Debtors' motion (also signed by RLF) for a preliminary injunction extending the automatic stay to the D&O defendants (including RLF's clients) in the Direct Action. *See id.* D.I. 2 & 6. Trial in the Direct Action is scheduled for March 11, 2024. *See* Kroll Decl. ¶ 55.

16. On August 3, 2023, RLF filed a supplemental declaration in support of the Application. *See* D.I. 223.[2] On August 12, 2023, RLF filed a second supplemental declaration in support of the Application. *See* D.I. 244.

## ARGUMENT

17. The Application should be denied because RLF represents interests adverse to the Debtors' bankruptcy estates and, by extension, has a disqualifying conflict of interest.

18. Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are

---

[2] Trailing disclosure and/or nondisclosure of RLF's connections with the Debtors risked creating a misimpression that RLF's only representation of Lordstown was the engagement proposed in the Application.

> disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

19. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005). The twin requirements of disinterestedness and no adverse interest "apply at the time of retention and throughout the case." *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).

20. The Bankruptcy Code does not define "adverse interest." *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In the context of Section 327(a), the Court may consider an interest adverse to the estate "when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). An adverse interest "includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. at 33 (citation, quotation marks omitted). Interests are not adverse "merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532. "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *Id.* at 533.

21. Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Under Sections 327(a) and (c), the Court: must disqualify an attorney with an actual conflict of interest, may disqualify an attorney with a potential conflict of interest, and may not disqualify an attorney based on the appearance of a conflict alone. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

22. The Bankruptcy Code does not define actual conflict of interest. *See In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002). The term has been given meaning through case-by-case evaluations of particular fact patterns. *See id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *In re Boy Scouts of America*, 35 F.4th 149, 158 (3d Cir. 2022) (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991)); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting cases). Whether a conflict is actual or potential is within the Court's discretion. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004).

23. The Court should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d at 1316; *see also In re Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]") (citing *Marvel*, 140 F.3d at 476). The Court should permit retention despite a potential conflict of interest only if every competent professional in the field is

7

already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

24. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (quoting *In re Roger J. Au & Son, Inc.*, 101 B.R. 502, 505 (Bankr. N.D. Ohio 1989)).

25. RLF represents interests adverse to the bankruptcy estates. First, the bankruptcy estates own the claims asserted in the Derivative Action. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006) ("Upon the filing of a bankruptcy petition, . . . any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee. . . . This is true regardless of whether the derivative action is brought prior to or after the filing of the petition."). RLF represents defendants in the Derivative Action. The allegations there (Counts III-V) include breaches of the duties of loyalty and candor and insider selling. Mr. Hamamoto – a current director of two of the Debtors and a current client of RLF in the Direct Action – is specifically alleged to have profited from the acts and omissions detailed in the Derivative

8

Action complaint at the estates' expense, to the tune of more than $16 million. *See* Ex. A (Derivative Action Compl.) ¶¶ 146, 147. The Debtors have a fiduciary duty to protect and maximize the value of the bankruptcy estate's assets—including the claims against RLF's clients in the Derivative Action. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004). But RLF's clients in the Derivative Action have the opposite interest: they want to minimize their liability on the same claims that the Debtors have a fiduciary duty to maximize. If the Application is approved, RLF would be representing clients who are simultaneously trying to maximize and minimize the value of the same claims.

26. Second, in the Direct Action, RLF's clients have asserted indemnification claims against the Debtors. *See* Kroll Decl. ¶ 55. In other words, RLF currently represents creditors, including an insider creditor, of the bankruptcy estates. The Debtors have scheduled those indemnification claims as undisputed. *See* D.I. 211 at 35 & 37 of 41 (scheduling indemnification claims of Hamamoto, Hannaway, Hash, Richardson, and Walsh as undisputed general unsecured claims). RLF's clients' indemnification claims against the Debtors tend to create a dispute in which the estate is a rival claimant because the Debtors have a duty, if a purpose would be served, to "object to the allowance of any claim that is improper[.]" 11 U.S.C. §§ 1106(a)(1), 1107(a), and 704(a)(5). If RLF's clients' indemnification claims are allowed, they will tend to diminish the value of the estate by lowering the amount funds available for distribution to other similarly-situated creditors. That erosion of asset value is not speculative or hypothetical: it occurred pre-petition. The Debtors admit that the heavy cost of pre-petition litigation, including fulfilling their indemnification obligations to current and former directors and officers, helped precipitate these bankruptcy cases. *See* Kroll Decl. ¶¶ 56, 59-60. That the Debtors' primary and excess D&O insurers "have taken the position that no

9

coverage is available for the vast majority of the Securities Actions" (*id.* ¶ 57) tends to make the adversity more acute, because if insurance coverage is denied, then any indemnity recovery by RLF's clients would presumably come solely from the bankruptcy estate. "[Two guarantors] want the debtor, and the debtor's creditors, to pay their legal bills and pay any liability that may be visited upon them. That position is adverse to [the debtor]." *In re B.E.S. Concrete Prods, Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988). The same can be said of RLF's clients here.

27. Further, a decision against RLF's clients in the Direct Action could be such that it does not give rise to any indemnity claim. And a decision is on the horizon: trial in the Direct Action is scheduled for March 2024, and this Court denied Debtors' motion—signed by RLF—for a preliminary injunction extending the automatic stay to protect the defendants in the Direct Action. *See Lordstown Motors Corp. v. Amin*, Adv. No. 23-50428 (MFW) (Bankr. D. Del.).

28. For these reasons, RLF represents competing economic interests tending to diminish the value of the Debtors' bankruptcy estates, or tending to create a potential or actual dispute in which the bankruptcy estate is a rival claimant. *See In re First Jersey Sec., Inc.*, 180 F.3d at 509. RLF represents interests adverse to the Debtors' estates and has a disqualifying, actual conflict of interest.

29. Even if RLF's conflict of interest were only potential, it should still result in disqualification. Potential conflicts are generally disqualifying. *See In re BH & P, Inc.*, 949 F.3d at 1316. The Court should permit retention despite a potential conflict only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons

to approve the retention. *See id.* Here, there is no showing that every competent local law firm is already employed in this case. Nor is there a showing that the conflict (to the extent it is still only potential) becoming actual is remote, for the reasons stated herein. Finally, changing Delaware counsel would not materially prejudice the Debtors, because RLF only began representing the Debtors in connection with these bankruptcy cases five days before the petition date. *See* Appl. Ex. B ¶ 15(c).

30. RLF asserts that it has received a written conflict waiver from the Debtors and its clients in the Delaware litigation. *See* Appl. Ex. B ¶ 24. However, "waivers under § 327(a) are ordinarily not effective." *In re Congoleum Corp.*, 426 F.3d at 692. *See also In re Granite Partners LP*, 219 B.R. at 34 ("Although the client can, under certain circumstances, waive the conflict, DR 5-105(c), the mandatory provisions of section 327(a) do not allow for waiver."); *In re B.E.S. Concrete Prods, Inc.*, 93 B.R. at 235 ("Although the parties can waive the conflict upon appropriate disclosures, the waiver is more difficult to obtain in a chapter 11 case because the debtor in possession stands in a fiduciary capacity that constrains its ability to make such a waiver."); *In re JMK Construction Group, Ltd.*, 441 B.R. 222, 237 (Bankr. S.D.N.Y. 2010) ("Courts have recognized that conflicts waivers are not effective for purposes of satisfying the 'adverse interest' requirement of section 327(a) of the Bankruptcy Code.") (collecting cases); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 374 (Bankr. S.D.N.Y. 2010) (conflict waiver by creditor "cannot trump the requirements of section 327(a)."); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) ("section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct."); *In re Decade S.A.C., LLC*, 2022 WL 486952 at ¶ 33 (Bankr. D. Del. Feb. 17, 2022) (chapter 7 trustee's special counsel was on both sides of negotiation and thus in

11

position to favor one interest over another, which created "an actual, non-waivable conflict" requiring special counsel's disqualification).

31. Nothing in Section 327(a) suggests that the requirement of no adverse interest can somehow be satisfied through conflict waivers. Rather, the Court "has the authority and the responsibility to only approve employment of professionals who meet the minimum requirements set forth in § 327(a), independent of objections." *In re Interwest Business Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994); *see also In re Boomerang Tube, Inc.*, 548 B.R. 69, 75 (Bankr. D. Del. 2016) ("It is the obligation of the Bankruptcy Court to approve the terms of employment of professionals, in accordance with the provisions of the Bankruptcy Code, regardless of the terms articulated in the employment contract. Therefore, if the Court finds that a contract that the Debtor or the Committee negotiated is impermissible, the Court may not approve it or may modify it.").

## **CONCLUSION**

32. The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Application and grant such other relief as the Court deems appropriate and just.

Dated: August 18, 2023　　　　　　　Respectfully submitted,
　　　　Wilmington, DE

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
　　Benjamin A. Hackman
　　Trial Attorney
　　Office of the United States Trustee
　　J. Caleb Boggs Federal Building
　　844 King Street, Suite 2207, Lockbox 35
　　Wilmington, DE 19801
　　(302) 573-6491 (Phone)
　　(302) 573-6497 (Fax)
　　benjamin.a.hackman@usdoj.gov