IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LORDSTOWN MOTORS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831-MFW<br><br>(Jointly Administered)<br><br>**Re: D.I. 131**<br><br><u>Hearing Date</u>: August 28, 2023, at 10:30 a.m.<br><u>Objection Deadline</u>: August 22, 2023 at 12:00 p.m.<br>**(extended by agreement)** |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT OF POSITION WITH RESPECT TO FOXCONN'S MOTION TO DISMISS OR CONVERT THE BANKRUPTCY CASES

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through its undersigned counsel, hereby submits this statement of position (this "<u>Statement</u>") to the *Motion of Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., and Foxconn EV System LLC to Dismiss, or, in the Alternative, Convert the Bankruptcy Cases* [D.I. 131] (the "<u>Motion to Dismiss</u>")[2] and respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion to Dismiss.

161803157v4

**STATEMENT OF POSITION**

1. Since its formation, the Committee has been and remains concerned with respect to the cost and delay that chapter 11 has on the rights of unsecured creditors. To that end, the Committee has actively negotiated with the Debtors regarding their proposed budget and sale process and investigated the various lawsuits against the Debtors. While the Committee seeks to have its constituency quickly paid in full, it does not believe conversion or dismissal at this time will satisfy that goal. Rather, the Committee asserts that an expedited plan process will best serve the interests of creditors.

2. Foxconn argues that that the Debtors' chapter 11 cases must be dismissed because (1) the petitions were filed in bad faith and without a valid bankruptcy purpose, and (2) the Debtors are suffering substantial and continuing loss with no prospect of rehabilitation. *See* Motion to Dismiss ¶ 25.

3. The Committee disagrees. As to the first asserted grounds for dismissal, while Foxconn evidently believes that the Debtors' cases are all about Foxconn, reality is much more complex. The Debtors filed these cases facing (among other things) an imminent trial in the Karma Litigation in which Karma is seeking to recover in excess of $900 million in damages; numerous shareholder lawsuits that were draining the Debtors' resources and exposed them to tens or hundreds of millions of dollars in additional liabilities, including through indemnification claims; an SEC investigation whose outcome was and is still uncertain; and a business that was not sustainable absent significant further investment.

4. Certainly, filing chapter 11 to stay numerous, potentially ruinous lawsuits and to try to corral them into a single forum for efficient resolution is not improper or bad faith. *See, e.g., In re Roman Cath. Church of Archdiocese of New Orleans*, 632 B.R. 593, 612 (Bankr. E.D. La. 2021) (debtor's "desire to obtain a 'breathing spell' from litigation" in order to "maximize

property available to satisfy creditors" was a valid bankruptcy purpose). Filing to sell assets that cannot be operated profitably is likewise a valid purpose of chapter 11, even where the debtor's business has already been mothballed. *See In re Melendez Concrete Inc.*, 2009 WL 2997920, at *4 (Bankr. D.N.M. Sept. 15, 2009) (where debtor had no business operations and only one employee, but an orderly sale of equipment in chapter 11 was best prospect for maximizing value, chapter 11 petition "serve[d] a valid bankruptcy purpose").

5.  As to Foxconn's second point, the Committee concedes that the Debtors are unable to rehabilitate their business and instead will sell substantially all of their assets through a § 363 sale.[3] But that does not constitute bad faith or an improper purpose. As the Supreme Court has noted, "[a]lthough the central purpose of Chapter 11 is to facilitate reorganizations rather than liquidations (covered generally by Chapter 7), Chapter 11 expressly contemplates liquidations." *Florida Dep't of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33, 37 (2008) (acknowledging without criticism frequent use of Chapter 11 to achieve a sale of "all or substantially all" of a debtor's assets, followed by plan of liquidation); *see also In re Enmon*, 2013 WL 494049, at *4-5 (Bankr. E.D. Tex. Feb. 7, 2013) (stating that a proper bankruptcy purpose includes facilitating "the financial rehabilitation *or liquidation* of a debtor") (emphasis added).

6.  Foxconn's concerns about the Debtors' ongoing "losses" are largely mitigated where, as here, "the remaining assets are relatively stable in value and are no longer being diminished through operational losses." *In re TMT Procurement Corp.*, 534 B.R. 912, 919–20 (Bankr. S.D. Tex. 2015). Courts distinguish the accrual of professional fees from "actual out-

---

[3] Foxconn's assertion that "the Debtors lack a credible, valuable asset that is actually saleable," Motion to Dismiss at 7, is factually inaccurate. Even if the Debtors are unable to attract a bidder for the entire Endurance program, notwithstanding the license they will receive from Karma if the Karma settlement is approved, they have nonetheless received numerous indications of interest from potential bidders for discrete assets.

3

of-pocket losses, such as the dissipation of assets that diminishes the estate." *In re Gabriel Technologies Corp.*, 2013 WL 4672785, at *3 (Bankr. N.D. Cal. Aug. 30, 2013). As long as the "only risk of loss looking forward would be the continued accumulation of professionals' fees," continuing to spend money prosecuting chapter 11 cases is not an instance of "the debtor in possession [] gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *TMT*, 534 B.R. at 922 (citing *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004)).

7. Furthermore, the Committee recognizes that there may be advantages to keeping the Debtors in chapter 11, including respite from multiple shareholder lawsuits, the Bankruptcy Code's subordination of equity interests (including, potentially, indemnification claims related to the purchase or sale of securities) to the claims of general unsecured creditors, the possibility that some bidders may be more inclined to purchase the Debtors' assets under § 363, and the ability to reconcile claims in a single forum and effectuate creditor distributions under the jurisdiction of the Court.

8. All of this is not to say that the Committee does not have concerns about the Debtors remaining in chapter 11. If their settlement with Karma is approved, Karma will be paid $40 million immediately, ahead of all other unsecured creditors, before the claims bar date and outside of a plan. Other general unsecured creditors will be forced to wait months or even longer to be paid, while the Debtors continue to incur a significant administrative cash burn that could potentially eat into unsecured creditors' recoveries. In *Gabriel*, the court noted that even if accruing professional fees constituted "losses" within the meaning of § 1112(b), "the court must consider how long a situation must persist to be said to be continuing." *Gabriel*, 2013 WL

2318581, at *3. The court was persuaded that the "accrual of liabilities (losses)" was not "continuing" due to the debtors' prompt filing of a plan. *Id.*

9.       If these cases remain in chapter 11, the Committee expects the Debtors to negotiate in good faith with the Committee to formulate an acceptable plan that: (a) pays unsecured creditors in full and ensures their participation throughout the process; (b) will be filed and prosecuted promptly in order to reduce the administrative burn rate; and (c) gets distributions to creditors as quickly as possible. The Debtors have assured the Committee that they intend to do so and the Committee intends to hold them to their word.

## CONCLUSION

WHEREFORE, based on the Debtors' commitment to work cooperatively with the Committee to negotiate and expeditiously pursue a chapter 11 plan acceptable to the Committee, the Committee believes that dismissal or conversion of these cases is not warranted at this time.

*[Signature page follows]*

| | |
|---|---|
| Dated: August 22, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>*/s/ Marcy J. McLaughlin Smith*<br>David M. Fournier (DE 2812)<br>Marcy J. McLaughlin Smith (DE No. 6184)<br>Tori L. Remington (DE No. 6901)<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street, Suite 5100<br>Wilmington, DE 19801<br>Telephone: (302) 777-6500<br>Email:  david.fournier@troutman.com<br>          marcy.smith@troutman.com<br>          tori.remington@troutman.com<br><br>-and-<br><br>Francis J. Lawall (admitted *pro hac vice*)<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA 19103-2799<br>Telephone: (215) 981-4451<br>Fax: (215) 981-4750<br>Email:  francis.lawall@troutman.com<br><br>-and-<br><br>Deborah Kovsky-Apap (admitted *pro hac vice*)<br>875 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 808-2726<br>Fax: (212) 704-6288<br>Email: deborah.kovsky@troutman.com<br><br>-and-<br><br>Sean P. McNally (admitted *pro hac vice*)<br>4000 Town Center, Suite 1800<br>Southfield, MI 48075<br>Telephone: (248) 359-7317<br>Fax: (248) 359-7700<br>Email: sean.mcnally@troutman.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |

161803157v4