EXHIBIT C



FTI Consulting
Three Times Square
New York, NY 100036
www.fticonsulting.com

Privileged & Confidential

March 22, 2021

Thomas V. Canepa
General Counsel
Lordstown Motors Corp.
2300 Hallock Young Road,
Lordstown, OH 44481

Jacob M. Croke
Sullivan & Cromwell
125 Broad Street
New York, NY 10004

      Matter Name:  Special Committee Review

Dear Mr. Canepa:

This letter will confirm the retention of FTI Consulting Technology LLC ("FTI") by Sullivan & Cromwell LLP ("Counsel") on behalf of Lordstown Motors Corp. ("Client") in the above referenced matter (the "Engagement"). FTI will work under the direction of Client and/or Counsel in this Engagement.

FTI's work is to provide electronic discovery services and analysis and to perform such other tasks as may be identified during the course of this Engagement (the "Services"). Should FTI be asked to provide expert testimony in the future, Counsel, Client, and FTI will discuss and mutually agree on which FTI professional(s) would serve as the expert(s) and such activity will be subject to a separate retention letter.

To the extent permitted by law, certain communications between Client, Counsel and FTI in connection with this Engagement shall be regarded as privileged and made solely for the purpose of assisting Counsel in providing legal advice to Client ("Privileged Communications"). Certain information provided by Client and/or Counsel to FTI and/or information, documents or deliverables generated or created by FTI that are based on or derived from information provided by Client and Counsel to FTI, constitutes attorney-work product ("Attorney-Work Product").

FTI shall maintain as strictly confidential Privileged Communications and Attorney-Work Product and shall not disclose such information to third-parties, except with Counsel's prior written permission or as required by law. If FTI receives a court order, subpoena, document



request or other process relating to this Engagement, to the extent permitted by law, FTI shall provide Counsel with advance written notice sufficient to permit the Counsel to take appropriate action to prevent or limit the disclosure of Privileged Communications and/or Attorney-Work Product. FTI shall cooperate with Counsel in seeking to prevent or limit such disclosure.

FTI will provide a project manager who will maintain overall administrative responsibility for the Engagement. Charges for this assignment will be rendered monthly and will be billed at established hourly and unit rates as presented in the Proposal for Services, attached hereto as Appendix A plus any out-of-pocket expenses.

This Letter of Engagement shall not supersede or alter the parties' responsibilities under the Confidentiality Agreement entered into by FTI and Counsel on March 21, 2016 (Appendix B).

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its EMEA and US Sub-Processors as provided in Appendix I. FTI may not provide Services through its or its subsidiaries' agents, independent contractors or subcontractors not listed in Appendix I without the prior written consent of the Client. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents, independent contractors, subcontractors and their respective employees.

FTI represents that it maintains the following insurance:

a) Professional Liability Insurance (Errors & Omissions), which shall include Cyber Liability Insurance, with minimum limits of ten million dollars.

b) Commercial General Liability Insurance Policy, including but not limited to contractual liability, personal injury liability, advertising injury liability and products/completed operations liability coverage with minimum limits of one million dollars.

c) FTI will maintain, at a minimum, the levels of insurance coverage provided in Appendix H for as long as the Agreement and any extensions hereof are in effect.

FTI agrees to implement and maintain an effective information security program to protect the Confidential Information, including the Data, which program shall include appropriate administrative, technical, and physical safeguards to (a) ensure the security and confidentiality of Confidential Information, (b) protect against any anticipated threats or hazards to the security or integrity of such Confidential Information and (c) protect against unauthorized access to or use of Confidential Information that could result in harm or inconvenience to Client, Counsel, and/or to individuals or entities that are subject of the Confidential Information. Notwithstanding anything to the contrary herein or within any Appendix, addendum, or ancillary agreement hereto, FTI further agrees, represents, and warrants that it, its directors, officers, employees, subcontractors, and agents shall not access, distribute, review, or disclose the Confidential Information, including the Data or its contents except as expressly authorized and directed by

2



Client or its Counsel or as required by a validly issued subpoena after Client and Counsel have had a reasonable opportunity to object and oppose such subpoena. FTI agrees to the terms of Appendix E and Appendix F: Data Access & Security Management.

FTI understands that Client, not Counsel, will be solely responsible for payment of FTI's fees and expenses. As such, FTI will submit invoices for its fees and expenses incurred in connection with this Engagement directly to the Client, with a copy to Counsel according to the S&C Electronic Discovery & Litigation Support Vendor Billing Instructions, Appendix G. FTI's Standard Terms and Conditions (collectively with this letter, the "Engagement Contract"), which Counsel and Client accept and hereby agree to, are attached. In the event of any conflict in terms among this Engagement Contract, the Proposal for Services, and any additional agreements entered into between Client/Counsel and FTI regarding the subject matter hereof, including any non-disclosure or business associate agreements (together, the "Ancillary Agreements"), the order of precedence of documents shall be as follows: (1) the Engagement Contract; (2) the Proposal for Services; and (3) the Ancillary Agreements.

This Engagement involves, or is expected to involve, the processing of (i) personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, and/or (ii) personal information as governed by the California Consumer Privacy Act and so the terms of the FTI Consulting Data Protection Addendum ("DPA") shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of the DPA, the terms of the DPA shall prevail in relation to the processing of such personal data or personal information. In addition, if this Engagement will involve processing, analysis, management or transformation of data, in order to enable FTI to provide continuous support, such personal data may be processed by those FTI teams or Affiliates (as defined below) in the United States, United Kingdom, India, and/or Australia (the "Third Countries"). By your signature below, you consent to (a) the FTI Affiliates and teams processing your personal data in the Third Countries on your behalf, and (b) FTI's transfer of such data to those FTI Affiliates being deemed a Restricted Transfer as defined in Section 6 of the DPA between you or your relevant Affiliate and FTI or its relevant Affiliate. Notwithstanding the foregoing, your personal data will remain primarily hosted in the United States, unless otherwise agreed between FTI in writing and our Affiliates or teams in the Third Countries. For purposes of this Engagement Contract, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

We very much appreciate this opportunity to work with you. If the foregoing is in accordance with your understanding, please sign this letter in the space provided and return this document to us.



Client or its Counsel or as required by a validly issued subpoena after Client and Counsel have had a reasonable opportunity to object and oppose such subpoena. FTI agrees to the terms of Appendix E and Appendix F: Data Access & Security Management.

FTI understands that Client, not Counsel, will be solely responsible for payment of FTI's fees and expenses. As such, FTI will submit invoices for its fees and expenses incurred in connection with this Engagement directly to the Client, with a copy to Counsel according to the S&C Electronic Discovery & Litigation Support Vendor Billing Instructions, Appendix G. FTI's Standard Terms and Conditions (collectively with this letter, the "Engagement Contract"), which Counsel and Client accept and hereby agree to, are attached. In the event of any conflict in terms among this Engagement Contract, the Proposal for Services, and any additional agreements entered into between Client/Counsel and FTI regarding the subject matter hereof, including any non-disclosure or business associate agreements (together, the "Ancillary Agreements"), the order of precedence of documents shall be as follows: (1) the Engagement Contract; (2) the Proposal for Services; and (3) the Ancillary Agreements.

This Engagement involves, or is expected to involve, the processing of (i) personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, and/or (ii) personal information as governed by the California Consumer Privacy Act and so the terms of the FTI Consulting Data Protection Addendum ("DPA") shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of the DPA, the terms of the DPA shall prevail in relation to the processing of such personal data or personal information. In addition, if this Engagement will involve processing, analysis, management or transformation of data, in order to enable FTI to provide continuous support, such personal data may be processed by those FTI teams or Affiliates (as defined below) in the United States, United Kingdom, India, and/or Australia (the "Third Countries"). By your signature below, you consent to (a) the FTI Affiliates and teams processing your personal data in the Third Countries on your behalf, and (b) FTI's transfer of such data to those FTI Affiliates being deemed a Restricted Transfer as defined in Section 6 of the DPA between you or your relevant Affiliate and FTI or its relevant Affiliate. Notwithstanding the foregoing, your personal data will remain primarily hosted in the United States, unless otherwise agreed between FTI in writing and our Affiliates or teams in the Third Countries. For purposes of this Engagement Contract, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

We very much appreciate this opportunity to work with you. If the foregoing is in accordance with your understanding, please sign this letter in the space provided and return this document to us.

**FTI CONSULTING**

Very truly yours,

FTI Consulting Technology LLC

By: _E-SIGNED by Chris Mitchell on 2021-03-25 19:59:59 GMT_

Name: Chris Mitchell
Title: Senior Managing Director

Accepted and Approved by Counsel, Sullivan & Cromwell LLP, on behalf of Lordstown Motors Corp.

By: _[signature]_
Title: Partner
Date: March 24, 2021

Accepted and Approved by: Client, Lordstown Motors Corp

By: _[signature]_
Title: General Counsel
Date: March 23, 2021

4



Name and Address of person designated to receive and approve invoices related to this Engagement:

|  |  |
|---|---|
| Name: | Thomas V. Canepa |
|  | General Counsel |
|  | Lordstown Motors Corp. |
| Address: | 2300 Hallock Young Road |
|  | Lordstown, OH, 44481 |
|  | USA |
| Phone: | 312-925-2466 |
| E-Mail: | tom.canepa@lordstownmotors.com |

Does Client require invoices to be submitted via an electronic billing system? Yes: X   No: ____

5



## FTI Standard Terms and Conditions

The following is a list of FTI's[1] Standard Terms and Conditions relating to all engagements.

1. **Rates.** FTI reserves the right to amend its rates annually, and FTI will advise Client promptly if a rate adjustment is being made. Further, if any work needs to be performed by FTI personnel in international offices, such work will be billed at the standard rates set forth for the specific international office. If an engagement is completed in less than four weeks it will be billed in its entirety upon completion. If an engagement is longer than four weeks, charges for the engagement will be rendered monthly and will be based upon relevant unit fees and the level of staff and time required to complete the assignment.

2. **Payment Terms.** All payments will be due within sixty (60) days from the date of invoice. Depending on certain state and/or municipality regulations, FTI may be required to collect sales and use tax on certain of FTI's products and services. Alternatively, client shall provide documentation of direct pay certification or exemption from such taxes. For your information and use, FTI Consulting Technology LLC's Taxpayer Identification Number is 02-0736098. In the event Client disputes any of the fees or expenses on a specific invoice, the Client shall notify FTI within thirty (30) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the thirty (30) day period, the Client shall have waived its right to dispute such invoice. Invoices with disputed line items shall be paid in full, excepting such disputed line items.

   Without limiting FTI's other rights and remedies, in the event any payment is not paid by Client within sixty (60) days of the date of invoice, then interest shall accrue, from the sixty-first (61st) day until payment in full is received, at the rate of one and one half (1½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to halt further services or revoke any agreed upon discounts if our invoices are more than 90 days past due, provided, however, upon receipt of written notice from Client or Counsel of Client's intention to remedy the situation, Client shall be afforded 30 days to pay all past due amounts. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony, or prior to the return of Client data. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices.

3. **Confidentiality.** FTI understands that it is the intention and position of Counsel and Client that FTI is working at the direction of, and to facilitate work performed by, Counsel and

---

[1] Throughout this Engagement Contract, "FTI" refers to FTI Consulting, Inc., as well as its subsidiaries, affiliates, and related companies, including, without limitation, Acuity.

6



that FTI's work is covered by the attorney work product doctrine and/or other applicable privileges and immunities (including under US federal law, US state law, or non-US law) and protected from discovery. FTI understands that the Client Data (as defined herein) and FTI's work product and files may become subject to discovery; however, until such materials are sought by subpoena or other process, they will be maintained by FTI as confidential. It is agreed that the Client Data and all other working papers and other documents prepared by FTI pursuant to this Engagement Contract will be maintained as confidential materials and will not be disclosed to third parties without Client consent, except as may be required by law, regulation, or judicial or administrative process. Unless prohibited by law, FTI agrees to notify our Client promptly of any of the following events: (a) a request by anyone to examine, inspect, or copy such documents or records; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon FTI that requires the production of such documents or records. In the event FTI is requested pursuant to a subpoena or other legal process to produce any documents or to provide testimony relating to an Engagement for Client in judicial or administrative proceedings to which FTI is not a party, Client shall reimburse FTI at standard billing rates for its professional time and expenses, including reasonable attorneys' fees, incurred in preparing for and responding to requests for documents and providing testimony.

4. **Intellectual Property.**

    a. No party acquires any interest in the copyright or any other intellectual property rights, including but not limited to any source code, enabling technology, information or other processes, know-how, scripts or sub-routines in or related to any software and/or intellectual property of any other party, or if owned or licensed by FTI (the "FTI IP"). Except as expressly set forth herein, all rights and licenses granted to a party are non-transferable and non- assignable. Client may make a reasonable number of back-up copies of the FTI IP in accordance with its normal backup procedures so long as all copyright and other proprietary rights notices are included on all copies. FTI reserves all rights not expressly granted herein. Client acknowledges and agrees FTI shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the FTI IP in whatever stage of completion. Except as otherwise agreed to by FTI, no express or implied license or right of any kind is granted to Client regarding the FTI IP including, but not limited to, any right to know, use, produce, receive, reproduce, copy, market, sell, distribute, transfer, modify, or adapt the FTI IP or create derivative works based on the FTI IP or any portions thereof, or obtain possession of any source code or other technical material relating to the FTI IP. The FTI IP specifically excludes the content of any documents collected by or furnished to FTI by or on behalf of the Client or its Counsel which shall remain the sole and exclusive property of Client (the "Client Data").

    The Client represents and warrants that the Client is the owner of the Client Data or otherwise has the express right to provide the Client Data to FTI in connection with

7


FTI's provision of services hereunder.

    b. In the event FTI's provision of Review Services (as defined herein) shall be performed using Client's or Counsel's software (the "3rd Party Software") licensed by Client or Counsel (the "Licensee"), the Licensee represents and warrants to FTI that the Licensee has the right to grant to FTI and the Reviewers (as defined herein) a sublicense to use the 3rd Party Software in connection with FTI's provision of Review Services.

5. **Termination and Survival.** Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party not less than thirty (30) calendar days before the effective date of termination. The agreed upon data return policy for this Engagement Contract is provided in Appendix D. Upon receipt of such notice, FTI will stop all work immediately. Client will be responsible for all fees and expenses incurred by FTI through the effective date of termination. The terms of the Engagement Contract, including but not limited to, Clauses 3, 4, 5, 6, 7 and 8 shall survive expiration and shall continue to bind all parties.

6. **Liability and Indemnity.** FTI warrants it shall perform the Services in a professional manner in accordance with industry standards. Client agrees that FTI shall not be liable under this Engagement Contract or otherwise to the Client, Counsel or their respective successors, assigns or Affiliates except where damages result directly from the negligence or willful misconduct of FTI or its employees or a breach of the Engagement Contract, provided that in no event shall FTI's liability exceed three times the total amount of the fees paid to FTI under this Engagement Contract. In no event shall FTI be liable for punitive or consequential damages of any kind. The Client shall indemnify FTI, and hold FTI harmless against any and all claims by third parties for losses, damages or liabilities, including reasonable attorneys' fees and expenses ("Losses"), arising in any manner out of or in connection with this Engagement Contract, unless such Losses resulted from the negligence or willful misconduct of FTI. The terms of this paragraph shall survive the termination of this Engagement Contract and shall apply to any controlling person, director, officer, employee, agent, affiliate or subcontractor of FTI. Under no circumstances whatsoever shall Counsel be responsible for any claims, liabilities, damages or expenses arising out of, or relating to, this Engagement Contract. Excluding Client's indemnification obligations for third party claims, neither Client nor Counsel be liable to FTI for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this Engagement Contract.

7. **Non-solicitation.** The Client agrees to promptly notify FTI if either party extends (or solicits the possible interest in receiving) an offer of employment to a principal, employee, consultant, subcontractor or independent contractor of FTI involved in this Engagement Contract. The Client agrees that it will not offer employment or seek to employ any current employee of FTI for a period of twelve (12) months, commencing with the completion of the services provided hereunder, except as provided below.



Client may make an offer of employment to an employee, consultant, independent contractor, or subcontractor who is employed or engaged by FTI as a document reviewer, as long as the offer is for work on a matter other than the matter that is the subject of this Engagement Contract. If the offer is made at any time up to six (6) months subsequent to the date of the final invoice rendered by FTI for this Engagement Contract, Client agrees that it will pay FTI a cash fee upon hiring, equal to 25% of the aggregate first year annualized compensation (both cash and non-cash consideration), including any guaranteed or target bonus. If an offer of employment to a document reviewer is made to work on a matter other than this Engagement Contract, and is made longer than six (6) months subsequent to the date of the final invoice rendered by FTI under this Engagement Contract, Client will not be required to pay a fee to FTI.

Client further agrees that, for a period of twelve (12) months, commencing with the completion of the services provided hereunder, Client will not make an offer of employment for work on the matter which is the subject of this contract to a document reviewer who is employed or engaged by FTI in regards to this Engagement Contract.

8. **Governing Law, Jurisdiction and Waiver of Jury Trial.** The Engagement shall be governed by and in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. Any disagreement or controversy arising out of or relating to this Engagement, including but not limited to any dispute concerning FTI's fees or expenses, shall be submitted for binding resolution through arbitration in the City of New York, New York, under the then prevailing Commercial Rules of the American Arbitration Association. The parties consent to the jurisdiction of any federal or state court in the State of New York for the enforcement of the arbitration award.

In the event that differences concerning the services or other matters arising hereunder should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense, the Client and FTI irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to this Engagement Contract.

9. **Conflicts.** FTI Consulting Technology LLC is a wholly owned subsidiary of FTI Consulting, Inc., a global firm with numerous worldwide practices. Absent your prior approval, during the pendency of this Engagement, the FTI employees providing services hereunder will not provide services to a party that is adverse to you in this matter except for non-conflictive technical services that do not include strategic advisory or expert consulting services. If employees of other FTI Consulting, Inc. entities provide services to you as part of this engagement team in this matter, those employees will be subject to these same restrictions. To the extent that other professionals of FTI Consulting, Inc. are engaged by parties who might be adverse to Client in this matter, the FTI professionals assigned to support the Client in the above referenced matter will be segregated from professionals of other FTI Consulting, Inc. entities assigned to support parties with interests adverse to Client through the use of an ethical wall agreement.



10. **FTI Personnel; Third Parties.** In connection with the provision of services hereunder, and to provide the Client with 24 hour support, FTI may utilize the services of FTI personnel outside of the United States. FTI may utilize the services of third parties in connection with (a) data retrieval, storage and transmission; (b) data center operations; and (c) products licensed by FTI for its delivery of services.

11. **Review Services.** Document review services (the "Review Services") requested by Client will be performed by FTI or a subcontractor of FTI (together, the "Reviewers"). The Reviewers are subject to the same conflict of interest and confidentiality undertakings as those set forth in this letter of engagement. Notwithstanding the foregoing, FTI shall be entitled to disclose the existence of this engagement to other law firms engaging FTI for Review Services solely for such law firm's conflict review purposes. Client, Counsel and FTI acknowledge and agree that the Review Services shall include document review for both responsiveness and privilege purposes. Client, Counsel and FTI further acknowledge and agree that FTI is not a law firm, Counsel shall oversee the responsiveness and privilege review, the Review Services will be at the direction of Counsel, and all final determinations regarding relevance, privilege and production shall be in the sole determinations of Counsel.

    The safety of our employees, community, and clients is our primary concern. Accordingly, FTI is deploying a number of measures in an effort to help our valued employees stay safe and healthy as we navigate through the coronavirus disease 2019 ("COVID-19") situation, while at the same time continuing to serve our clients effectively.1 One of the measures FTI is deploying is to make plans in the event that circumstances require or warrant that FTI employees, contractors and subcontractors providing document review services (the "Reviewers") are required to work from an offsite location or from home for a period of time. Client understands and acknowledges that (i) a governmental agency, landlord, or other entity may close, shut down or limit access to one or more FTI offices; (ii) a governmental agency, landlord, or other entity may recommend that FTI close or limit access to one or more of its offices; and/or (iii) FTI may determine, in its sole and absolute discretion, that to protect the health and safety of its employees, it will require or request that the Reviewers work offsite. In any such instance, and in an effort to avoid any delay or impact on the services being provided under the Engagement, FTI may request or require that its Reviewers work from a location other than an FTI office, including, without limitation, a non-FTI commercial space that FTI uses to temporarily house the Reviewers, a client site and/or the employees' residences (hereafter, a "Remote Work Location").

    Client has been informed that while FTI will take reasonable steps to protect the security and integrity of Client's documents and data while Reviewers are working from a Remote Work Location, the security procedures and protections associated with Reviewers working from a Remote Work Location are necessarily different from, and less stringent than, those that exist while Reviewers work onsite. At Client's request, FTI can provide Client with information regarding the security procedures it will employ in the event that Reviewers working on the Engagement are required or permitted to work from a Remote Work



Location. After being fully apprised of the facts and risks, Client hereby authorizes FTI to permit its Reviewers to work on matters relating to or arising out of the Engagement from a Remote Work Location. Client further acknowledges that, while FTI Reviewers working on this engagement are working from a Remote Work Location, FTI will maintain security protocols and procedures that are commercially reasonable for remote/internet access to documents and data, and that such procedures differ from those that are in place for onsite review. Client also acknowledges that, in the event Reviewers working on the Engagement are required or requested to work from a Remote Work Location, FTI has offered Client the right to: (1) delay any services being performed under the Engagement until the employees are able to work onsite; (2) suspend the review services associated with the Engagement (subject to an agreement between the parties regarding how the non- review services under the Engagement will be billed while the review services are suspended); or (3) where economically and logistically feasible, and subject to an agreement regarding potential additional costs, redirect the work to another geography as legally permissible.

In the event that FTI requests or requires certain Reviewers to work from a Remote Work Location, FTI will take reasonable steps to meet all deadlines discussed and/or agreed to between the parties. Client understands and acknowledges that, despite FTI's reasonable efforts, the provision of services to Client under the Engagement may be delayed as a result of the impacts from Covid-19, including, without limitation, impacts caused by (i) a slowdown or shutdown in the supply chain; (ii) limited access to technology or other resources; (iii) slowdown in review productivity due to change in work environment; (iv) travel restrictions; (v) restrictions to office and other facilities; and (vi) the inability of FTI Reviewers to work from a Remote Work Location. To the extent such impacts are not already waived, for the consideration provided herein, Client hereby acknowledges, stipulates, and agrees that in the event that FTI's provision of services is delayed as a result of impacts from the Covid-19 virus, including, but not limited, to those enumerated above, FTI shall have no liability to Client arising from or relating to that delay so long as the delay was not caused by FTI's recklessness or by FTI's intent to harm client.