# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
: 
In re: : Chapter 11
:
Lordstown Motors Corp., *et al.*, : Case No. 23-10831 (MFW)
:
Debtors. : (Jointly Administered)
:
:
---------------------------------------------------------x

## NOTICE OF DEPOSITION OF DEBTORS' CORPORATE REPRESENTATIVE IN CONNECTION WITH MOTION OF HON HAI PRECISION INDUSTRY CO., LTD. (A/K/A HON HAI TECHNOLOGY GROUP), FOXCONN EV TECHNOLOGY, INC. AND FOXCONN EV SYSTEM LLC TO DISMISS, OR, IN THE ALTERNATIVE, <u>CONVERT THE BANKRUPTCY CASES</u>

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., and Foxconn EV System LLC (collectively, "Foxconn") will take the deposition upon oral examination of Lordstown Motors Corporation, Lordstown EV Corporation, and Lordstown EV Sales LLC (collectively, the "Debtors") regarding the topics set forth on Schedule A attached hereto. The Debtors shall designate one or more officers, directors, agents, or other persons to testify on its behalf as corporate representative(s) regarding such matters. The deposition will commence on August 24, 2023 at 12:00 p.m. (prevailing Eastern Time), or at such other time as may be agreed upon by the parties, at a location and by a method to be determined. The deposition shall continue from day to day thereafter, excluding weekends and holidays, until completed or adjourned. The deposition will be taken pursuant to all applicable rules of the Court before a notary public or other such person authorized by law to administer oaths. The deposition will be recorded by stenographic means and video.

Dated: August 24, 2023
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@morrisnichols.com
mharvey@morrisnichols.com
mtalmo@morrisnichols.com

-and-

**PAUL HASTINGS LLP**
Matthew M. Murphy (*pro hac vice*)
Matthew Micheli (*pro hac vice*)
Michael C. Whalen (*pro hac vice*)
71 South Wacker Drive Suite 4500
Chicago, IL 60606
Tel: (212) 969-3000
Fax: (212) 969-2900
mattmurphy@paulhastings.com
mattmicheli@paulhastings.com
michaelcwhalen@paulhastings.com

*Counsel to the Movants*

**SCHEDULE A**

**DEFINITIONS**

In addition to the terms defined within the specific Topics, the following terms shall mean the following for purposes of these Topics:

1. The terms "All," "Any" and "Each" shall be construed as encompassing all, any and each.

2. The terms "each" and "any" shall be deemed to include and encompass the words "every" and "all."

3. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary to bring within the scope of each Topic all Documents, Communications, materials and information that might otherwise be considered outside its scope.

4. The connectives "And," "Or" and "And/Or" shall be construed either disjunctively or conjunctively as necessary, in each case, to bring within the scope of these topics all responses that might otherwise be construed to be outside their scope.

5. "Adversary Proceeding" means and refers to *Lordstown Motors Corp. et al v. Hon Hai Precision Industry Co., Ltd et al*, Adv. Case No. 23-50414 (MFW).

6. "Asset(s)" means any item that can be used to produce positive economic value, including, but not limited to any resource with economic value that is owned, controlled or is for the benefit of an entity, that is expected to provide a future benefit, including, but not limited to, all real and personal property, intangible property, investments, rights to invest or to future revenue, cash, bank accounts, commodities, securities, claims, total or partial control of an entity, and prospective economic opportunities.

7. The term "Bankruptcy Code" means title 11 of the United States Code.

8. The term "Bankruptcy Court" means the United States Bankruptcy Court for the

District of Delaware.

9. The "Bidding Procedures Motion" means and refers to the Debtors' Motion for Entry of an Order (I) (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates with Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving the Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief; and (II) (A) Authorizing the Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief [ECF No. 16].

10. The terms "BOM" or "Bill of Materials" mean all the components of a product, including part numbers, quantities, unit price, vendor, and the currency in which the component is being purchased, all as defined and discussed in the First Day Declaration, ¶ 18 n.5.

11. The term "Chapter 11 Cases" means and refers to the jointly-administered chapter 11 cases styled *In re Lordstown Motors Corp., et al.*, Case Number 23-10831 (Bankr. D. Del.), commenced in the Bankruptcy Court.

12. The term "Communication" or "Communications" as used herein means any transmittal, transference, and/or receipt of information of any nature, whether oral or written and whether chance, prearranged, formal or informal, at any time or place, and under any circumstances whatsoever. For purposes of illustration only and not limitation, examples include conversations in person, telephone conversations, e-mail (including attachments), voicemail, letters, memoranda, statements, media releases, press conferences, magazines and newspaper articles, testimony before a governmental body, and video and audio transmissions. For the avoidance of doubt, the term "Communication" shall include any and all electronic messages and/or conversations using text messaging, instant messaging, and mobile device chat services, including but not limited to Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Signal, Slack, WeChat and Snapchat.

13. The term "Concerning" as used herein means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, discussing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

14. "Contact Parties" or a "Contact Party" has the meaning ascribed to such term in the Bidding Procedures Motion.

15. The terms "Debtors" or "Lordstown" means Lordstown Motors Corp., Lordstown EV Corporation, and Lordstown EV Sales LLC, together with each of their employees, agents, counsel, advisors, or anyone acting on the behalf of any of the Debtors.

16. The term "Document" or "Documents" as used herein is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, *i.e.*, "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." A draft or non-identical copy is a separate document within the meaning of this term. For the avoidance of doubt, the term "Document" shall include any and all forms of recorded communications.

17. The term "Endurance" means and refers to the Debtors' full-size, all-electric pickup truck, as described more fully in the First Day Declaration.

18. The term "First Day Declaration" or "FDD" means and refers to the *Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 15] (filed

June 27, 2023).

19. The term "Foxconn" means, collectively, Defendants Hon Hai Precision Industry Co., Ltd., Foxconn EV Technology, Inc., and Foxconn EV Systems LLC.

20. The terms "Include," "Includes," and "Including" shall be deemed to be followed by the words "without limitation" and "but not limited to." A list following any of these terms shall be interpreted to contain illustrative examples of the types of documents responsive to the topic, but does not constitute an exclusive, all-encompassing or exhaustive listing of every type of document responsive to the topic and shall not be deemed in any way to qualify, limit or restrict the scope of the request.

21. The term "Jefferies" means and refers to Jefferies LLC, together with all of its divisions, affiliates, subsidiaries, parent corporation, employees, agents, counsel, advisors, or anyone acting on its behalf.

22. The "Karma Action" means and refers to that certain litigation styled *Karma Automotive LLC v. Lordstown Motors Corp., et al.,* Case No. 20-cv-02104, pending in the United States District Court for the Central District of California.

23. The "Motion to Dismiss" means and refers to the Motion of Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc. and Foxconn EV System LLC to Dismiss, or, in the Alternative, Convert the Bankruptcy Cases [ECF No. 131].

24. The "Petition Date" means and refers to June 27, 2023.

25. The term "Person" means any natural person or any legal entity, including any business or governmental entity or association.

26. The term "Party" means any natural person or any legal entity, including any business or governmental entity or association.

27. "Non-Disclosure Agreement" means and refers to a non-disclosure agreement

between the Debtors and any individual or entity, executed in connection with the Sale Process, as more fully described in the Bidding Procedures Motion, ¶ 17.

28. "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

29. "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, concerns, regards, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

30. The "Sale Process" means and refers to the marketing and selling of the Debtors and/or substantially all of the Debtors' assets pursuant to the sale process contemplated by the proposed bidding procedures the Debtors filed in the Bankruptcy Court, all as described more fully in the First Day Declaration, ¶¶ 66-67, and the Bidding Procedures Motion.

31. The terms "Topic" or "Topics" refers generally to the topics set forth herein.

32. The terms "You" and "Your" refer to the Debtors, individually and collectively, as well as their respective agents, current or former employees, directors, officers, representatives, attorneys, advisors, auditors, financial advisors, investment bankers, retained professionals, or any other person or person acting, speaking, or purporting to act or speak on their behalf from time to time.

33. Wherever appropriate in these Topics, the singular form of any word includes the plural and vice versa, and the masculine form of a word shall be interpreted as feminine and vice versa.

34. Any ambiguity in a Topic shall be construed to bring within the scope of the Topic all responses that otherwise could be construed to be outside of its scope.

## TOPICS OF EXAMINATION

1. The Debtors' objection to the Motion to Dismiss.

2. All topics addressed, facts asserted, or statements made in any and all declarations or affidavits submitted in support of the Debtors' objection to the Motion to Dismiss.

3. All executed Non-Disclosure Agreements by and between any entity or individual and the Debtors related to the Sale Process

4. The "Contact Parties" or any other entity that the Debtors believe could be interested in or would have the resources to consummate an acquisition of (i) all or less than all of the Debtors' assets or (ii) the Debtors' on a going-concern basis, as such list is described in the Debtors' Bidding Procedures Motion, including any communications with such entities.

5. The "list of more than 50 potential investors and strategic OEM partners across the globe" that the Debtors and Jefferies prepared, including any communications with such entities.

6. The marketing of the Debtors or their assets before the Petition Date to potential investors, acquirers, and/or strategic partners, including, but not limited to, the Contact Parties.

7. Any offers, bids, or indications of interest, the Debtors have received since retaining Jefferies in or around September 2021, including, but not limited to, offers, bids, or indications of interest received post-petition.

8. The approximately thirteen indications of interest the Debtors had received from Contact Parties as of the time of the continued hearing before the Bankruptcy Court held on August 3, 2023, including any information related to the Asset(s), divisions, business lines, equity interests, and/or entities included or referenced in any such indication of interest, such Contact Party's level of interest in entering into a transaction with the Debtors, and whether such Contact Party sought to acquire any Assets at issue in the Karma Action

9. Foxconn's prepetition offer to purchase substantially all of the Debtor's Assets.

10. Any concerns and/or preferences raised by potential investors, acquirers, and/or strategic partners in relation to a potential partnership with Foxconn or other manufacturer, including those raised both prepetition and post-petition.

11. Any concerns and/or preferences raised by potential investors, acquirers, and/or strategic partners in relation to a potential sale of Debtors' Assets in Bankruptcy Court as opposed to outside of Bankruptcy Court, including those raised both prepetition and post-petition.

12. Debtors' and/or Jefferies' evaluation of any offers, bids, or indications of interest received by the Debtors, both prepetition and post-petition.

13. The loan request made by Debtors to the US Government during the marketing process.

14. All assets currently being marketed for sale by the Debtors and their advisors.

15. Debtors' assertion that its business may be sold as a going concern.

16. Any analysis conducted by the Debtors (including their retained professionals or any other advisor or consultant) concerning the Debtors' "go-forward operational costs," as such term is used in the First Day Declaration, ¶ 17, to operate the Debtors' business, including Documents generated, created, produced, drafted, made, and/or revised from June 1, 2021 to the present.

17. Any analysis conducted by the Debtors (including their retained professionals or any other advisor or consultant) concerning the Debtors' "gross margin[s,] . . . EBITDA[,] . . . [and] cash flow," as such terms are used in the First Day Declaration, ¶ 20, including Documents generated, created, produced, drafted, made, and/or revised from June 1, 2021 to the present.

18. Any analysis conducted by the Debtors (including their retained professionals or any other advisor or consultant) concerning any valuations, formal or implied, of the Debtors' Asset(s), divisions, business lines, equity interests, and/or the Debtors themselves.

19. Any analysis conducted by the Debtors (including their retained professionals or any

other advisor or consultant) concerning any operating budget or go-forward budget generated, created, produced, drafted, made, and/or revised from January 1, 2023 to the present, including but not limited to, thirteen-week cash flow projections.

20. Any analysis conducted by the Debtors or the Committee (including either entities' retained professionals or any other advisor or consultant) regarding the actual and projected monthly fees of the Committee and its retained professionals during the Chapter 11 Cases.

21. The current value of the Debtors' Assets, including but not limited to, their hard assets, accounts receivable, net operating losses, estimated cash burn, estimated amounts net of settlement, and estimated net reserve of cash.

22. The current value of the Debtors' liabilities, including but not limited to, their litigation costs, expenses, and possible exposures; trade debt; and obligations under any executory contracts.

23. The Debtors' communications with insurers or insurance companies or any other liability management entity regarding the Debtors' litigation exposure and litigation defense costs.

24. The Debtors' decision to file the Chapter 11 Cases.

25. The Debtors' assertion that they have a "reasonable likelihood of rehabilitation" under section 1112(b)(4)(A) of the Bankruptcy Code.

26. The Debtors' settlement of the Karma Action and any preceding negotiations.

27. The Debtors' SEC Investigation and Securities Actions, as defined in paragraph 55 of the First Day Declaration, and any settlement negotiations thereof.

28. All claims the Debtors allege they have against Foxconn, including, but not limited to, those brought against Foxconn in the Adversary Proceeding.

29. The Debtors' current state of operations, including but not limited to the development and production of the Endurance.

30. The Debtors' manufacturing of the Endurance, including but not limited to, its Bill of Materials, the feasibility of hard tooling, necessity of proper facilities for production, and the costs thereof, for the time period during which the Debtors were producing the Endurance.

31. All projections, estimates, or calculations of the cost to the Debtors, or a third-party purchaser, to acquire the hard tooling necessary to reduce the Endurance's Bill of Materials.

32. All sales of the Endurance made by the Debtors, including the date of such sale, the net proceeds the Debtors received for such vehicle, and the purchaser of such vehicle.

33. The Debtors' prepetition and postpetition employment and personnel matters, including but not limited to the issuance of WARN Act notices in May 2023 and employee attrition.

34. The market conditions that have existed since Debtors' retained Jefferies in or around September 2021, and the future market outlook.