## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF LORDSTOWN
## MOTORS CORP. AND ITS AFFILIATED DEBTORS

Thomas E Lauria (*pro hac vice*)
Matthew C. Brown (*pro hac vice*)
Fan B. He (*pro hac vice*)
**WHITE & CASE LLP**
200 S. Biscayne Blvd
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
Email:    tlauria@whitecase.com
            mbrown@whitecase.com
            fhe@whitecase.com

David M. Turetsky (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:    david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice*)
**WHITE & CASE LLP**
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 881-5400
Email:    *jzakia@whitecase.com*

*Co-Counsel to the Debtors and Debtors in Possession*

Roberto Kampfner (*pro hac vice*)
Doah Kim (*pro hac vice*)
RJ Szuba (*pro hac vice*)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email:    rkampfner@whitecase.com
            doah.kim@whitecase.com
            rj.szuba@whitecase.com

*Co-Counsel to the Debtors and Debtors in Possession*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Dated: September 1, 2023, Wilmington, Delaware

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Dr., Farmington Hills, MI 48331.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARTICLE I: DEFINED TERMS, RULES OF INTERPRETATION,
      COMPUTATION OF TIME, AND GOVERNING LAW ................................... 1
    A.    Defined Terms ....................................................................................... 1
    B.    Interpretation; Application of Definitions; and Rules of Construction ............... 14
    C.    Computation of Time ............................................................................ 14
    D.    Governing Law .................................................................................... 15
    E.    Reference to Monetary Figures ............................................................... 15
    F.    Reference to the Debtors or the Post-Effective Date Debtors ............................. 15
    G.    Controlling Document ........................................................................... 15
    H.    Exhibits, Schedules, Appendices and Plan Documents ................................... 15

ARTICLE II: ADMINISTRATIVE AND PRIORITY CLAIMS ............................................. 16
    A.    Administrative Claims ........................................................................... 16
    B.    Professional Fee Claims ......................................................................... 17
    C.    Priority Tax Claims .............................................................................. 18

ARTICLE III: CLASSIFICATION AND TREATMENT OF CLAIMS AND
      INTERESTS ...................................................................................... 18
    A.    Summary of Classification of Claims and Interests ...................................... 18
    B.    Treatment of Claims and Interests ........................................................... 20
    C.    Elimination of Vacant Classes ................................................................ 24
    D.    Separate Classification of Secured Claims ................................................. 24
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes ......................... 24
    F.    Controversy Concerning Impairment ....................................................... 24

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
      REJECTION BY ONE OR MORE CLASSES OF CLAIMS ............................. 24
    A.    Classes Entitled to Vote ........................................................................ 24
    B.    Class Acceptance Requirement ............................................................... 24
    C.    Cramdown and No Unfair Discrimination .................................................. 25

ARTICLE V: MEANS FOR IMPLEMENTATION ............................................................. 25
    A.    Consolidation for Distribution Purposes Only ............................................ 25
    B.    Post-Effective Date Status ..................................................................... 25
    C.    Sources of Consideration for Distributions ................................................ 26
    D.    Claims Administrator ............................................................................ 26
    E.    Post-Effective Date Matters ................................................................... 28
    F.    Board of Directors and Officers .............................................................. 28
    G.    Vesting of Assets ................................................................................. 29
    H.    Existing Securities ............................................................................... 29
    I.    Preservation of Net Operating Losses ....................................................... 29

i

| J. | Preservation of Causes of Action | 29 |
| K. | Preservation of Insurance | 30 |
| L. | Indemnification Obligations | 31 |
| M. | Setoffs and Recoupments | 31 |
| N. | Exemption from Certain Taxes and Fees | 31 |
| O. | Approval of Plan Documents | 31 |
| P. | Effectuating Documents; Further Transactions | 32 |
| Q. | Tax Matters | 32 |
| R. | Settlements | 32 |
| S. | Equitable Subordination of Foxconn Interests | 32 |
| T. | GUTC Cash Pool Adjustment | 33 |
| U. | General Unsecured Trade Claim Recoveries | 33 |

**ARTICLE VI: PROVISIONS REGARDING DISTRIBUTIONS** .... 33
| A. | Distribution Record Date | 33 |
| B. | Cash Payments | 34 |
| C. | Allocation of Distributions; Postpetition Interest on Claims | 34 |
| D. | Delivery of Distributions | 34 |
| E. | Compliance with Tax Requirements | 35 |
| F. | No Distribution in Excess of Allowed Amounts | 35 |
| G. | Special Rules for Distributions to Holders of Disputed Claims and Interests | 35 |
| H. | Manner of Payment Under Plan | 36 |

**ARTICLE VII: PROCEDURES FOR DISPUTED CLAIMS** .... 37
| A. | Allowance of Claims | 37 |
| B. | Claims and Interests Administration Responsibilities | 38 |
| C. | Estimation of Claims | 38 |
| D. | Adjustment to Claims Register Without Objection | 39 |
| E. | Disallowance of Claims | 39 |
| F. | Reimbursement or Contribution | 40 |
| G. | Amendments to Proofs of Claim | 40 |
| H. | No Distributions Pending Allowance | 40 |
| I. | Disputed Claims Reserve | 40 |
| J. | Distributions After Allowance | 40 |
| K. | Single Satisfaction of Claims | 41 |

**ARTICLE VIII: SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .... 41
| A. | Compromise and Settlement of Claims, Interests, and Controversies | 41 |
| B. | Discharge of Claims and Termination of Interests | 41 |
| C. | Releases by the Debtors. | 42 |
| D. | Releases by Holders of Claims and Interests | 43 |
| E. | Exculpation | 43 |
| F. | Injunction | 44 |
| G. | Release of Liens | 45 |

Page

ARTICLE IX: EXECUTORY CONTRACTS .......................................................... 45
   A.    Rejection of Executory Contracts ...................................................... 45
   B.    Time for Filing Rejection Claims ...................................................... 45
   C.    Reservation of Rights......................................................................... 45

ARTICLE X: CONDITIONS PRECEDENT TO CONFIRMATION AND THE
            EFFECTIVE DATE ................................................................. 46
   A.    Conditions to Occurrence of the Effective Date ................................... 46
   B.    Waiver of Conditions to Confirmation and Effective Date ................... 46
   C.    Effect of Failure of Conditions to the Effective Date .......................... 46

ARTICLE XI: EFFECT OF CONFIRMATION ....................................................... 47
   A.    Deemed Consent ................................................................................ 47
   B.    No Waiver .......................................................................................... 47
   C.    Disallowed Claims and Disallowed Interests ..................................... 47

ARTICLE XII: RETENTION OF JURISDICTION ................................................. 48

ARTICLE XIII: MISCELLANEOUS PROVISIONS ............................................... 50
   A.    Payment of Statutory Fees ................................................................ 50
   B.    Notices ............................................................................................... 50
   C.    Headings ............................................................................................ 52
   D.    Governing Law .................................................................................. 52
   E.    Notice of Entry of Confirmation Order and Relevant Dates ............... 52
   F.    Modification of the Plan and Amendments ......................................... 52
   G.    Revocation, Withdrawal or Non-Consummation of Plan ..................... 53
   H.    Binding Effect .................................................................................... 53
   I.    Severability of Plan Provisions .......................................................... 53
   J.    No Admissions ................................................................................... 54
   K.    Dissolution of the Committee ............................................................ 54
   L.    Time ................................................................................................... 54
   M.    Successors and Assigns ...................................................................... 54
   N.    Conflict between Plan, Disclosure Statement and Plan Documents ..... 54
   O.    Substantial Consummation ................................................................ 54
   P.    Plan Exhibits ..................................................................................... 55

iii

AMERICAS 124914935

# INTRODUCTION[2]

Lordstown Motors Corp. and its subsidiaries Lordstown EV Corporation and Lordstown EV Sales LLC, as debtors and debtors in possession, hereby collectively propose the following plan pursuant to the provisions of chapter 11 of the Bankruptcy Code.

Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in Article I hereof or in the Bankruptcy Code (as applicable).  Holders of Claims and Interests should refer to the Disclosure Statement and the First Day Declaration for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Although proposed jointly for administrative purposes, the Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors; *provided that*, the estates of the various Debtors shall be consolidated for the purpose of effectuating distributions under the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN OR TAKING ANY OTHER ACTION WITH RESPECT TO THE PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, RULE 3019 OF THE BANKRUPTCY RULES, AND ARTICLE XIII OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, SUPPLEMENT, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS CONSUMMATION.

WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL HOLDERS OF CLAIMS AND INTERESTS (WHETHER ENTITLED TO VOTE ON THE PLAN OR OTHERWISE) ARE ENCOURAGED TO READ THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH UNDER ARTICLE VIII OF THE PLAN.

## ARTICLE I:
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "***Administrative Claim***" means a Claim against any of the Debtors for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services

---

[2] The Plan remains subject to ongoing revisions of the Debtors in all respects.

rendered after the Petition Date; (ii) Professional Fee Claims; and (iii) fees and charges payable to the U.S. Trustee pursuant to Section 1930 of the Judicial Code.

2. "*Administrative Claims Bar Date*" shall be such date that is thirty (30) days following the Effective Date.

3. "*Administrative Claims Objection Deadline*" means the first Business Day that is one-hundred and eighty (180) days after the Effective Date; *provided that* such date may be extended by the Bankruptcy Court at the request of the Debtors or Post-Effective Date Debtors.

4. "*Affiliate*" means, with respect to any Entity, all Entities that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Entity was a debtor in a case under the Bankruptcy Code.

5. "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, such Claim or Interest (or any portion thereof) that is not Disallowed and (i) with respect to which no objection to the allowance thereof or request for estimation has been Filed; (ii) has been expressly Allowed under the Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; (iii) is both not Disputed and either (a) evidenced by a Proof of Claim timely Filed in accordance with the Bar Date Order (or for which under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed) or (b) listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (iv) is allowed by a Final Order; or (v) is compromised, settled, or otherwise resolved by the Debtors and the Holder of such Claim or Interest; *provided that*, except as otherwise expressly provided herein, the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code. "Allow," "Allowance," and "Allowing" shall have correlative meanings.

6. "*Assets*" means all of the right, title and interest of any of the Debtors in and to property of whatever type or nature (whether real, personal, mixed, tangible, intangible, or otherwise), including property of any of the Debtors' Estates.

7. "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors and any recovery, subordination, or other remedies that may be brought by or on behalf of the Debtors and their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including under sections 502, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, chapter 5 of the Bankruptcy Code, or applicable non-bankruptcy law.

8. "*Ballot*" means the form(s) distributed to Holders of Claims and Interests entitled to vote on the Plan to indicate their acceptance or rejection of the Plan and to make an election with respect to the releases by Holders of Claims and Interests provided by Article VIII.D.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or as may be amended hereafter and applicable to the Chapter 11 Cases.

2

10.     "***Bankruptcy Court***" means (i) the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases; (ii) to the extent any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code; or (iii) such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof to the extent of such jurisdiction.

11.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

12.     "***Bar Date***" means the last date for Filing a Proof of Claim against the Debtors, as set forth in the Bar Date Order, or such other date(s) as may be designated by the Bankruptcy Court, including pursuant to Article VII.A.

13.     "***Bar Date Order***" means the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(B)(9) of the Bankruptcy Code, (B) Approving the Form, Manner, and Procedures of Notice Thereof, and (C) Granting Related Relief* [Docket No. 319], entered by the Bankruptcy Court on August 24, 2023 (as amended, modified, or supplemented by order of the Bankruptcy Court from time to time).

14.     "***Bidding Procedures***" means the bidding procedures approved by the Bankruptcy Court pursuant to the *Order (I)(a) Establishing Bidding and Auction Procedures; (b) Scheduling Certain Dates with Respect Thereto; (c) Approving the Form and Manner of Notice Thereof; (d) Approving Contract Assumption and Assignment Procedures; and (e) Granting Other Related Relief, and (II) Authorizing The Debtors To Enter Into A Definitive Purchase Agreement* [Docket No. 237], filed in the Chapter 11 Cases on August 8, 2023 (as amended, modified, or supplemented by order of the Bankruptcy Court from time to time).

15.     "***Business Day***" means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

16.     "***Cash***" means the legal tender of the United States of America or equivalents thereof.

17.     "***Cause of Action***" means any action, claim, proceeding, cause of action, controversy, demand, right, action, Lien, indemnity, interest, guarantee, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of any doubt, "Cause of Action" includes (i) any right of setoff or counterclaim and any

3

claim for breach of contract or for breach of duties imposed by law or in equity; (ii) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity; (iii) the right to object to or to otherwise contest, recharacterize, reclassify, subordinate, or disallow any Claims or Interests; (iv) any Claim pursuant to section 362 of the Bankruptcy Code; (v) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (vi) any Avoidance Action.

18.    "*Chapter 11 Cases*" means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (ii) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court which are styled as *In re Lordstown Motors Corp. et al.*, Case No. 23-10831 (MFW).

19.    "*Chapter 11 Directors and Officers*" means any person that served in the capacity as a director or officer of the Debtors at any time from the Petition Date through the Effective Date.

20.    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

21.    "*Claims Administrator*" means, the person or entity selected by the Committee, with consent of the Debtors (such consent not to be unreasonably withheld), charged with overseeing the tasks outlined in Article V.D, or any successor thereto. The identity of the Claims Administrator shall be filed with the Bankruptcy Court prior to the Effective Date.

22.    "*Claims Administrator Expenses*" means the reasonable fees, expenses, and taxes of the Claims Administrator in performing its duties under the Plan, including any reasonable fees and expenses owed to legal counsel and other professionals as well as any taxes in connection with administration of the GUTC Trade Pool Account.

23.    "*Claims and Noticing Agent*" means Kurtzman Carson Consultants LLC, the notice, claims, and Claims and Noticing Agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court.

24.    "*Claims Objection Deadline*" means, for each Claim, the latest of (a) the date that is one hundred and eighty (180) days after the Effective Date, (b) as to a particular Claim, 180 days after the filing of a Proof of Claim, or request for payment of such Claim, and (c) such later date as may be fixed by the Bankruptcy Court upon a motion by the Post-Effective Date Debtors or Claims Administrator Filed on regular notice on or before the day that is one hundred and eighty (180) days after the Effective Date or such later date as may be fixed by the Bankruptcy Court.

25.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent in the Chapter 11 Cases.

26.    "*Class*" means a category of Holders of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

4

27.    "**Common Stock**" means the Class A common stock, par value $0.0001 per share, of LMC that is designated as Class A common stock under Lordstown Motor Corporation's certificate of incorporation.

28.    "**Common Stock Interests**" means Interests in Common Stock in LMC.

29.    "**Committee**" means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, pursuant to section 1102(a) of the Bankruptcy Code, pursuant to *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 96], as amended by the Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 99], each filed by the U.S. Trustee in the Chapter 11 Cases on July 11, 2023, as such committee may be reconstituted from time to time.

30.    "**Committee Members**" means (a) Barry L. Leonard & Co. Inc., (b) Superior Cam Inc., (c) SA Automotive Ltd, and any other members of the Committee that may serve from time to time.

31.    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32.    "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

33.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

34.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code.

35.    "**Consummation**" means the occurrence of the Effective Date.

36.    "**Contract Rate**" means the rate of interest provided for under any agreement giving rise to a Claim against the Debtors, which, to the extent applicable, shall be calculated as of the Petition Date.

37.    "**D&O Liability Insurance Policies**" means, collectively, all Insurance Policies (including any "tail policy" or runoff period in respect of an Insurance Policy) issued at any time, whether expired or unexpired, to any of the Debtors for certain liabilities of the Debtors, their current or former directors and officers, including primary insurance, excess insurance, or tail insurance policies and all agreements, documents or instruments related thereto.

38.    "**D&O Insurers**" means the insurers under the D&O Liability Insurance Policies.

39.    "**Debtors**" means, collectively, (i) LMC; (ii) Lordstown EV Corporation *f/k/a* Lordstown Motors Corp.; and (iii) Lordstown EV Sales LLC.

5

40. "***Directors and Officers***" means (i) the Chapter 11 Directors and Officers and (ii) the Former Directors and Officers.

41. "***Disallowed***" means any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is listed on the Schedules at an amount of $0.00 as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed, deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely Filed under applicable law; or (iii) is not listed on the Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely Filed under applicable law, and for which no motion for leave to File a late Claim has been Filed prior to the Effective Date of the Plan. "Disallow" and "Disallowance" shall have correlative meanings.

42. "***Disclosure Statement***" means (i) the *Disclosure Statement for the Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time in accordance with its terms), including all exhibits and schedules thereto and references therein that relate to the Plan that are prepared and distributed in accordance with applicable law and (ii) any supplement, amendment, or modification thereto.

43. "***Disputed***" means, with respect to a Claim or Interest, a Claim (or portion thereof) that is not yet Allowed or Disallowed.

44. "***Distribution***" means the distributions of Cash (or other property) to be made by the Claims Administrator, the Post-Effective Date Debtors, or their agents (as applicable) to Holders of Allowed Claims or Interests in accordance with the terms of the Plan.

45. "***Distribution Record Date***" means the date for determining which Holders of Allowed Claims and Allowed Interests are eligible to receive distributions under the Plan, as established by the Bankruptcy Court.

46. "***Effective Date***" means, with respect to the Plan, the date that is the first Business Day on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article X have been satisfied or waived (in accordance with Article X); and (iii) the Plan is declared effective by the Debtors. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

47. "***Entity***" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

48. "***Estate***" means, as to a Debtor, the estate of such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code.

49. "***Excluded Parties***" means Foxconn, the Former Directors and Officers and the other Persons or Entities identified in the Plan Supplement.

6

50.     "***Exculpated Parties***" means each of the following in their capacity as such: (i) the Debtors; (ii) the Chapter 11 Directors and Officers, agents, members of management and other employees of the Debtors; (iii) the Committee and the Committee Members and (iv) all predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of any of the Persons identified in (i), (ii) and (iii) above on or after the Petition Date.

51.     "***Executory Contract***" means a prepetition contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

52.     "***Federal Judgment Rate***" means the federal judgment rate in effect as of the Petition Date, compounded annually.

53.     "***File***," "***Filed,***" or "***Filing***" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest with the Claims and Noticing Agent.

54.     "***Final Decree***" means the decree contemplated under Bankruptcy Rule 3022 closing the Chapter 11 Cases.

55.     "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided that* the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, the local rules of the Bankruptcy Court or applicable non-bankruptcy law, may be Filed relating to such order shall not prevent such order from being a Final Order.

56.     "***Former Directors and Officers***" means any officers and directors of the Debtors other than Chapter 11 Directors and Officers.

57.     "***Foxconn***" means Hon Hai Technology Group and each of its affiliates, including, but not limited to, (i) Foxconn Ventures Pte. Ltd., (ii) Foxconn Asset Management LLC, (iii) Foxconn EV System LLC, and (iv) Foxconn EV Technology, Inc.

58.     "***Foxconn Causes of Action***" means the Causes of Action of the Debtors against Foxconn, including the Causes of Action alleged in the adversary proceeding captioned *Lordstown Motors Corp. et al. v. Foxconn Ventures Pte. Ltd. et al.*, Adv. Proc. No. 23-50414 (MFW) (Bankr. D. Del.).

AMERICAS 124914935

59.     "***Foxconn Preferred Stock***" means the Series A convertible preferred stock, $0.0001 par value per share, issued by LMC pursuant to that certain Investment Agreement dated November 7, 2022 between Lordstown Motors Corp. and Foxconn Ventures Pte. Ltd., and authorized by that certain Certificate of Amendment of Second Amended and Restated Certificate of Incorporation of the Company of Lordstown Motors Corp. dated August 18, 2022 and governed by that certain Certificate of Designation, Preferences and Rights of Series A Convertible Preferred Stock Par Value $0.0001 of Lordstown Motors Corp.

60.     "***Foxconn Preferred Stock Interests***" means Interests in Foxconn Preferred Stock.

61.     "***GUTC Cash Pool Account***" means a segregated, interest-bearing account to be funded with the General Unsecured Trade Claim Recoveries Cash Pool Amount held by the Debtors on or prior to the Effective Date in accordance with Article V.U.

62.      "***GUTC Cash Pool Adjustment***" shall have the meaning set forth in Article V.T.

63.     "***GUTC Cash Pool Amount***" means $[●] in Cash to fund distributions to Holders of Allowed General Unsecured Trade Claims as set forth in Article V.U, subject to the GUTC Cash Pool Adjustment.

64.     "***GUTC Cash Pool Adjustment Notice***" shall have the meaning set forth in Article V.T.

65.     "***General Bar Date***" means the general bar date established pursuant to the Bar Date Order.

66.     "***General Unsecured Trade Claim***" means any Claim against any of the Debtors that is not an Administrative Claim, an Other Priority Claim, a Priority Tax Claim, a Secured Claim, an Other Unsecured Claim or a Section 510(b) Claim.

67.     "***Government Bar Date***" means the government bar date established pursuant to the Bar Date Order.

68.     "***Governmental Unit***" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

69.     "***Holder***" means an Entity holding a Claim or an Interest, as applicable, each solely in its capacity as such.

70.     "***Insider***" has the meaning set forth in section 101(31) of the Bankruptcy Code.

71.     "***Insurance Policies***" means any and all known and unknown insurance policies or contracts that have been issued at any time to, or that provide coverage in any capacity to, the Debtors or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the first named insured, a named insured or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, and all agreements, documents or instruments related

8

thereto, including but not limited to, the D&O Liability Insurance Policies and/or any agreements with third-party administrators.

72.     "*Insured Claim*" means any Claim against a Debtor for which any Debtor is entitled to coverage, indemnification, reimbursement, contribution or other payment under an Insurance Policy.

73.     "*Insurer*" means any company or other entity that issued any Insurance Policies, any third-party administrators of claims against the Debtors or asserted under the Insurance Policies, and any respective predecessors and/or affiliates thereof.

74.     "*Intercompany Claim*" means a Claim held by any Debtor against any other Debtor.

75.     "*Intercompany Interest*" means an Interest held by a Debtor in another Debtor.

76.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all issued, unissued, authorized, or outstanding shares of Common Stock or capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor), whether or not arising under or in connection with any employment agreement, plan or program implemented by the Debtors, and whether or not certificated, transferable, preferred, common, voting, or denominated "*stock*" or a similar security, and any Section 510(b) Claim related thereto.  In the interest of clarity, Interests include any and all ownership interests in any Debtor arising under or in connection with any employment agreement, plan or program implemented by the Debtors that has vested or that would have vested but for the freezing of any such award as a result of or connection with the Chapter 11 Cases.

77.     "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

78.     "*Impaired*" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

79.     "*IRS*" means the United States Internal Revenue Service.

80.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

81.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

AMERICAS 124914935

82.    "*Liquidation Preference*" means, with respect to any share of Foxconn Preferred Stock, as of any date, $100 per share, as provided under the Certificate of Designation, Preferences and Rights of Series A Convertible Preferred Stock Par Value $0.0001 of Lordstown Motors Corp.

83.    "*LMC*" means Lordstown Motors Corp. *f/k/a* DiamondPeak Holding Corp.

84.    "*Material Claims Settlement*" means any settlement, comprise, or other resolution between the Claims Administrator and one or more Holders of a General Unsecured Trade Claim with respect to a Claim (i) that is listed on the Debtors' Schedules (and is not listed as disputed, contingent or unliquidated) and on account of which the Holder Filed a Proof of Claim, where the difference between the amount listed on the Schedules and the Filed Proof of Claim is greater than or equal to $75,000, (ii) that is not listed on the Debtors' Schedules (or is listed on the Schedules as disputed, contingent, or unliquidated), and on account of which the Holder Filed a Proof of Claim, where the face amount of the Proof of Claim is greater than or equal to $75,000, or (iii) where the settlement, compromise, or resolution involves any setoff or recoupment rights of the Debtors or the applicable Holder of a General Unsecured Trade Claim in excess of $25,000.

85.    "*New Board*" shall mean the board of the Post-Effective Date Debtors after the Effective Date, the composition of which shall be as set forth by the Debtors in the Plan Supplement.

86.    "*Non-Trade Pool Assets*" means all of the Assets of the Debtors or Post-Effective Date Debtors' Estates, other than the Cash used to fund the General Unsecured Cash Pool Account.

87.    "*Other Unsecured Claim*" means any Claim against a Debtor that has the priority of a general unsecured claim, is not a Section 510(b) Claim and (i) is held by either (a) a current or former Insider of the Debtors or (b) a Governmental Unit, or (ii) is a claim for indemnification against the Debtors that relates to any litigation existing as of the Petition Date.

88.    "*Other Priority Claim*" means any Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim or (ii) a Priority Tax Claim.

89.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

90.    "*Petition Date*" means the date on which the Chapter 11 Cases were commenced.

91.    "*Plan*" means this *Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (including the Plan Supplement and all exhibits hereto and thereto), as the same may be amended, modified, supplemented or amended and restated from time to time.

92.    "*Plan Documents*" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article I.H of the Plan, as the same may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.  The

Plan Documents include Plan, the Disclosure Statement, Plan Supplement, Confirmation Order and any such other documents identified as Plan Documents herein.

93.      "*Plan Objection Deadline*" means the date established by the Bankruptcy Court by which objections to Confirmation of the Plan must be Filed.

94.      "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each of which shall be in form and substance materially consistent with this Plan, and otherwise acceptable to the Debtors, as may be amended, modified, or supplemented from time to time, including, as applicable.  The Debtors shall be entitled to amend such documents in accordance with their respective terms and Article XIII of this Plan through and including the Effective Date.

95.      "*Post-Effective Date Debtors*" means the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

96.      "*Post-Effective Date Debtor Amount*" means an amount of Cash to be reasonably determined by the Debtors, which shall be used to fund (i) the fees and expenses incurred by the Post-Effective Date Debtors in performing their duties under the Plan and (ii) future operational expenses, as permitted by the Plan.

97.      "*Post-Effective Date LMC*" means LMC, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

98.      "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

99.      "*Pro Rata*" means, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

100.      "*Professional*" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

101.      "*Professional Fee Claims*" means all Claims for fees and expenses incurred by a Professional on or after the Petition Date through the Confirmation Date.

102.      "*Professional Fees Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

103.      "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B.

AMERICAS 124914935

104.    "*Professional Fee Claims Estimate*" means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Article II.B.2.

105.    "*Proof of Claim*" means a proof of Claim or Interest that is Filed against any of the Debtors in the Chapter 11 Cases.

106.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default.

107.    "*Released Party*" means each of the following in their capacity as such: (i) the Debtors; (ii) the Post-Effective Date Debtors; (iii) each of the Debtors' Estates; (iv) the Committee; (v) each of the Committee Members, solely in its capacity as a Committee Member; and (vi) with respect to each of the foregoing Entities in clauses (i) through (v), such Entity and its current and former Affiliates and their respective current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals other than Excluded Parties, each in its capacity as such; *provided that*, notwithstanding anything in the foregoing, any Person or Entity that is an Excluded Party shall not be a Released Party; *provided further that*, notwithstanding anything in the foregoing, any Person or Entity that opts out of the releases shall not be a Released Party.

108.    "*Releasing Party*" means each of the following in their capacity as such: (i) all Holders of Unimpaired Claims or Interests who do not File a timely objection to the third party releases provided for in Article VIII.D; (ii) all Holders of Administrative Claims and Priority Tax Claims that do not hold Claims or Interests in any Class that do not File a timely objection to the third party releases provided for in Article VIII.D; (iii) all Holders of Claims or Interests that vote to accept the Plan; (iv) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and do not affirmatively opt out of the third party releases provided for in Article VIII.D by checking the box on the applicable Ballot or form indicating that they opt not to grant such releases in the Plan submitted on or before the Voting Deadline; and (v) with respect to each of the foregoing Entities in clauses (i) through (v), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such.

109.    "*Retained Causes of Action*" means the Causes of Action listed or described in the Schedule of Retained Causes of Action filed in connection with the Plan Supplement, including, (i) the Foxconn Causes of Action, (ii) any Cause of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence and claims made policies, occurrence and

12

claims made contracts, and similar agreements to which any Debtor or Post-Effective Date Debtor is or was a party or pursuant to which any Debtor or Post-Effective Date Debtor has any rights whatsoever, including the Insurance Policies, (iii) any Causes of Action against Directors and Officers who are Excluded Parties, and (iv) all other Causes of Action listed or described in the Schedule of Retained Causes of Action filed in connection with the Plan Supplement.

110.     "*Schedule of Retained Causes of Action*" means a schedule of retained Causes of Action filed in connection with the Plan Supplement, in form and substance acceptable to the Debtors.

111.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors on August 1, 2023 pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been, or in the future may be, amended, modified, or supplemented from time to time.

112.     "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code.

113.     "*Secured*" means, when referring to a Claim, a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, in each case, as determined pursuant to section 506(a) of the Bankruptcy Code.

114.     "*Secured Claim*" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

115.     "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

116.     "*Undeliverable Plan Distributions*" means undeliverable or unclaimed Plan Distributions under Article VI.D of the Plan.

117.     "*Unimpaired*" means, with respect to a Claim or a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

118.     "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

119.     "*Voting Deadline*" means [●] (prevailing Eastern time).

13

120.    "***Wind Down***" means, following the Effective Date, the process to sell, abandon, wind down, dissolve, liquidate or distribute any remaining assets of the Debtors' Estates in accordance with the Plan.

121.    "***Wind Down Budget***" means the amount for the purposes of effectuating the Wind Down.

## B.    *Interpretation; Application of Definitions; and Rules of Construction*

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "Articles" or "Sections" are references to Articles or "Sections" of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control, *provided that* no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party; and (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

## C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a

14

transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

**D.**     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* corporate or limited liability company governance matters relating to the Debtors, as applicable, not incorporated or formed (as applicable) in the State of Delaware shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

**E.**     *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.  Any conversion required to convert foreign currency to United States dollars shall be done using the applicable exchange rates on the Petition Date.

**F.**     *Reference to the Debtors or the Post-Effective Date Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtors shall mean (i) prior to the Effective Date, the Debtors and, (ii) on or after the Effective Date, the Post-Effective Date Debtors.

**G.**     *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

**H.**     *Exhibits, Schedules, Appendices and Plan Documents*

All exhibits, schedules and appendices to the Plan as well as the Plan Documents and the Plan Supplement are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  All Plan Documents shall be filed with the Clerk of the Bankruptcy Court no later than seven (7) Business Days prior to the Plan Objection Deadline.  Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

15

Kurtzman Carson Consultants LLC
Attention: [●]
[2335 Alaska Avenue
El Segundo, CA 90245]
Telephone: [(866) 381-9100]
E-mail: [●]

# ARTICLE II:
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III.

**A.** *Administrative Claims*

Except with respect to Professional Fee Claims and Priority Tax Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor, or after the Effective Date, such Holder and the applicable Post-Effective Date Debtor agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash (i) if such Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date; or (ii) if such Administrative Claim is not Allowed as of the Effective Date, upon entry of an order of the Bankruptcy Court Allowing such Claim, or as soon as reasonably practicable thereafter; *provided that*, if an Allowed Administrative Claim arises from liabilities incurred by the Debtors' Estates in the ordinary course of business after the Petition Date, such Claim shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such Claim in the ordinary course.

Except as otherwise provided in this Article II.A or the Bar Date Order, and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Post-Effective Date Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date; provided, that the Administrative Claims Bar Date does not apply to Professional Fee Claims.

The Post-Effective Date Debtors or the Claims Administrator may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. With respect to timely-Filed and properly served Administrative Claims, the Debtors, the Post-Effective Date Debtors, or the Claims Administrator, as applicable, may also choose to object to any Administrative Claim no later than the Administrative Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors, the Post-Effective Date Debtors, or the Claims Administrator (or other party with standing) object to a timely-Filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors, the Post-Effective Date Debtors, or the Claims Administrator object to an Administrative Claim, the parties may confer to try to reach a settlement

16

and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be Allowed and, if so, in what amount.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

**B.**     *Professional Fee Claims*

    1.     Final Fee Applications

All final requests for allowance and payment of Professional Fee Claims must be Filed with the Bankruptcy Court no later than the first Business Day that is forty-five (45) days after the Effective Date unless otherwise ordered by the Bankruptcy Court. Any objections to Professional Fee Claims shall be Filed and served no later than twenty-one (21) days after the filing of final requests for allowance and payment of Professional Fee Claims.

    2.     Professional Fee Claims Estimate

Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services compensable by the Debtors' Estates before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; *provided that* such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

    3.     Professional Fee Escrow

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash based on their evaluation of the Professional Fee Claims Estimates, and no Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors or the Post-Effective Date Debtors and (ii) shall be held in trust for the Professionals and for no other Person or Entity until all Professional Fee Claims have been irrevocably paid in full; *provided that* funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Post-Effective Date Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

AMERICAS 124914935

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow by the Post-Effective Date Debtors without any further notice to, action, order, or approval of the Bankruptcy Court or by any other Entity.

4.    <u>Post-Effective Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors, the Post-Effective Date Debtors, or the Claims Administrator, as applicable, may, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors, the Post-Effective Date Debtors, and the Claims Administrator, as applicable.

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention, compensation for services rendered, or reimbursement for expenses incurred on or after such date shall terminate, and the Debtors, the Post-Effective Date Debtors, or the Claims Administrator, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C.    *Priority Tax Claims***

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor agree (whether before or after the Effective Date) to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III:**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.    *Summary of Classification of Claims and Interests***

All Claims and Interests, except for Administrative Claims, including Professional Fee Claims and Priority Tax Claims, are classified in the Classes set forth in this <u>Article III</u> for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent

18

that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests pursuant to the Plan is as set forth below. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.B. The Plan shall constitute a separate Plan for each of the Debtors, *provided that*, the estates of the various Debtors shall be consolidated for the purpose of effectuating distributions under the Plan. For all purposes under the Plan, where applicable, each Class contains a sub-Class for each Debtor. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.C. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim / Interest | Status | Voting Rights |
|-------|------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Trade Claims | Impaired | Entitled to Vote |
| 4 | Other Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Foxconn Preferred Stock Interests | Impaired | Deemed to Reject |
| 6 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 7 | Common Stock Interests | Impaired | Entitled to Vote |

19

**B.**   *Treatment of Claims and Interests*

1.   Class 1 – Other Priority Claims

   a.   *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

   b.   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of such Allowed Other Priority Claim, or such Allowed Other Priority Claim has been paid or otherwise satisfied, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash, from the Non-Trade Pool Assets, in an amount equal to such Allowed Other Priority Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Other Priority Claim; and (iii) the date or dates agreed to by the Post-Effective Date Debtors and the Holder of the Allowed Priority Claim.

   c.   *Voting*: Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Secured Claims

   a.   *Classification*: Class 2 consists of all Secured Claims against the Debtors.

   b.   *Treatment*: Except to the extent that a Holder of an Allowed Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification and treatment, at the option of the Post-Effective Date Debtors or the Claims Administrator, as applicable, in the exercise of the applicable parties sole and absolute discretion, one of the following treatments shall be provided to each Holder of an Allowed Secured Claim secured by a valid lien:

   (i)   the Holder of such Allowed Secured Claim shall retain its lien on its collateral until either such Holder receives the Cash set forth in Section 2(b)(ii) or such Holder's collateral is abandoned to it as set forth in Section 2(b)(iii) below;

   (ii)   on or as soon as practicable after the later of (x) the Effective Date, or (y) the date upon which the Bankruptcy Court enters a final order determining or allowing such Secured Claim, or as otherwise agreed between the Holder of such Allowed Secured Claim and the Post-Effective Date Debtors, the Holder of such Allowed Secured Claim will receive Cash, from the Cash Non-Trade Pool Assets, in

20

AMERICAS 124914935

an amount equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such secured claim; or

(iii)    the collateral securing such Allowed Secured Claim shall be abandoned to such Holder, in full satisfaction, release, and discharge of such secured claim.

Any portion of any Secured Claim that is not secured by collateral or the proceeds thereof shall constitute a General Unsecured Trade Claim to the extent it is allowed.

c.    *Voting*: Class 2 is Unimpaired, and Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan

3.    Class 3 – General Unsecured Trade Claims

a.    *Classification*: Class 3 consists of all General Unsecured Trade Claims against the Debtors.

b.    *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claims, each Holder of an Allowed General Unsecured Trade Claim against a Debtor shall receive its *Pro Rata* share of the GUTC Cash Pool Amount without regard to the particular Debtor against which such Claim is Allowed. In the interest of clarity, it is expressly acknowledged that the sole source of recovery for Holders of General Unsecured Trade Claims shall be the GUTC Cash Pool Amount.

Any GUTC Cash Pool Amount remaining after the payment of all Allowed General Unsecured Trade Claims and all Claims Administrator Expenses shall be, first, used to pay each Holder of an Allowed General Unsecured Trade Claim its *Pro Rata* share of postpetition interest at a rate equal to the *lower* of (i) the Federal Judgment Rate, and (ii) the Contract Rate and, second, in the event there is excess remaining following the payment of interest in full to Holders of Allowed General Unsecured Trade Claims as set forth herein, shall be returned to the Debtors or the Post-Effective Date Debtors and become Non-Trade Pool Assets.

c.    *Voting*: Class 3 is Impaired, and Holders of the General Unsecured Trade Claims are entitled to vote to accept or reject the Plan.

21

4.      Class 4 – Other Unsecured Claims

   a.      *Classification*: Class 4 consists of all Other Unsecured Claims against the Debtors.

   b.      *Treatment*: Except to the extent that a Holder of an Allowed Other Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Other Unsecured Claim, each Holder of such Allowed Other Unsecured Claim shall be paid the Allowed amount of such Claim in Cash, from the Non-Trade Pool Assets (including from the liquidation of any non-Cash Non-Trade Pool Assets) on a *Pro Rata* basis, after (i) the satisfaction of the Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Secured Claims, (ii) the Professional Fees Escrow Account is funded or all Professional Fee Claims are satisfied, and (iii) the GUTC Cash Pool Account is funded in the amount of the GUTC Cash Pool Amount.

   To the extent that aggregate Distributions are sufficient to pay all Allowed Administrative Claims, Allowed Other Priority Claims, Allowed Secured Claims, and fund the GUTC Cash Pool in full, Holders of Allowed Other Unsecured Claims shall be entitled to postpetition interest at the *lower* of (i) the Federal Judgment Rate, and (ii) the Contract Rate.

   c.      *Voting*: Class 4 is Impaired, and Holders of the Other Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 – Foxconn Preferred Stock Interests

   a.      *Classification*: Class 5 consists of all Foxconn Preferred Stock Interests in the Debtors.

   b.      *Treatment*:  As set forth in <u>Article V.S</u>, on the Effective Date, any and all rights of the Holders of Allowed Foxconn Preferred Stock Interests to receive Distributions under the Plan shall be subordinated in their entirety to the rights of the Holders of Common Stock Interests to receive such Distributions and the Holders of Allowed Foxconn Preferred Stock Interests shall not receive any distributions on account of such Foxconn Preferred Stock Interests.

   c.      *Voting*: Class 5 is Impaired by the Plan and Holders of Foxconn Preferred Stock Interests shall be deemed to have rejected the Plan.

6.      Class 6 – Intercompany Interests

   a.      *Classification*: Class 6 consists of all Intercompany Interests.

22

b.     *Treatment*: On the Effective Date, all Intercompany Interests shall be reinstated and be Unimpaired in all respects.

c.     *Voting*: Class 6 is Unimpaired by the Plan, and Holders of Intercompany Interests shall be deemed to have accepted the Plan.

7.     <u>Class 7 – Common Stock Interests</u>

a.     *Classification*: Class 7 consists of all Common Stock Interests in the Debtors.

b.     *Treatment*: On the Effective Date, all Allowed Common Stock Interests in the Debtors shall remain in effect and, except to the extent that a Holder of an Allowed Common Stock Interest agrees to less favorable treatment, each Holder of such Allowed Common Stock Interest shall receive distributions in Cash from the Non-Trade Pool Assets (including from the liquidation of any non-Cash Non-Trade Pool Assets), on a *Pro Rata* basis after (i) the satisfaction of the Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Other Unsecured Claims (and any interest owed thereon), (ii) the Professional Fees Escrow Account is funded or all Professional Fee Claims are satisfied, (iii) the GUTC Cash Pool Account is funded in the amount of the GUTC Cash Pool Amount and (iv) the funding of the Post-Effective Date Debtor Amount; *provided that*, any Distributions in respect of Common Stock Interests held by Foxconn shall be subordinated to the Distributions made to other Holders of Common Stock Interests, as set forth in <u>Article V.S</u> of the Plan.

c.     *Voting*: Class 7 is Impaired by the Plan, and Holders of Common Stock Interests are entitled to vote to accept or reject the Plan.

AMERICAS 124914935

C.    ***Elimination of Vacant Classes***Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

D.    ***Separate Classification of Secured Claims***Each Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing another Secured Claim, shall be treated as being in a separate sub-Class for purposes of receiving distributions under this Plan.

E.    ***Voting Classes; Presumed Acceptance by Non-Voting Classes***If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

F.    ***Controversy Concerning Impairment***If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV:
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

A.    ***Classes Entitled to Vote***

Holders of General Unsecured Trade Claims (Class 3), Other Unsecured Claims (Class 4), and Common Stock Interests (Class 7) are entitled to vote on the Plan. Any Holder of a Claim that has been objected to may file a motion pursuant to Bankruptcy Rule 3018 for an order temporarily allowing such Claim solely for purposes of voting to accept or reject the Plan in accordance with the procedures to be set forth in the order approving the Disclosure Statement, including any deadlines set forth therein. Class 5 is deemed to have rejected the Plan. Class 1, Class 2, and Class 6 are deemed to have accepted the Plan.

The Debtors have requested that the Bankruptcy Court adopt a presumption that if no Holder of a Claim or Interest in a Class of Claims or Interests eligible to vote in a particular Class timely submits a timely Ballot to accept or reject the Plan, then the applicable Class will be deemed to have accepted the Plan. Accordingly, if any Holder of a Claim or Interest in Class 3, Class 4, or Class 7 does not wish such a presumption to apply with respect to any Class for which such Holder holds a Claim, then the Holder should timely submit a Ballot accepting or rejecting the Plan for any such Class.

B.    ***Class Acceptance Requirement***

Class 3 and Class 4 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests

24

in such Class that have voted on the Plan. Class 7 shall have accepted the Plan if the Class is accepted by at least two-thirds (2/3) in amount in such Class that have voted on the Plan.

**C.      *Cramdown and No Unfair Discrimination***

In the event that any impaired Class of Claims or Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.

**ARTICLE V:**
**MEANS FOR IMPLEMENTATION**

**A.      *Consolidation for Distribution Purposes Only***

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors' Chapter 11 Cases for the limited purpose of making Distributions. For all other purposes, this Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor in all respects other than for Distributions. Upon the entry of the Confirmation Order, the claims register maintained in the various Chapter 11 Cases shall be deemed consolidated into a single claims register in respect of the consolidated Estate. Further, Claims asserted against multiple Debtors, including Claims based on joint and several liability and guarantee and/or surety Claims shall be deemed to constitute a single Claim against the consolidated Estate. Notwithstanding the substantive consolidation for the limited purpose of making Distributions contemplated herein, on and after the Effective Date the Debtors will each continue as separate post-effective date entities after emergence from the Chapter 11 Cases.

**B.      *Post-Effective Date Status***

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each of the Debtors shall continue to exist as a Post-Effective Date Debtor and as separate corporations, limited liability companies, or other form of entity, as the case may be, pursuant to applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed. Each Post-Effective Date Debtor shall retain all of its corporate, limited liability company or other entity powers under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

On and after the Effective Date, subject to the terms and conditions of the Plan, the Post-Effective Date Debtors shall be permitted to conduct new business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. In addition, the Post-Effective Date Debtors and the Claims Administrator, as applicable, shall be authorized to implement the terms of the Plan as set forth herein, including, without limitation, to liquidate the Debtors' remaining Assets into Cash and otherwise administer the affairs of the Estates.

25

**C.**     *Sources of Consideration for Distributions*

Following the Effective Date and the funding of the GUTC Cash Pool Account, the Post-Effective Date Debtors shall be authorized, in their sole discretion, to liquidate or otherwise convert the non-Cash Non-Trade Pool Assets to Cash. The Post-Effective Date Debtors shall fund Distributions to Holders of Claims and Interests (other than Holders of Claims in Class 3 (General Unsecured Trade Claims)), from the Non-Trade Pool Assets, which include (i) Cash on hand as of the Effective Date (after the GUTC Cash Pool Account has been funded), (ii) proceeds from the sale of the Debtors' assets, (iii) proceeds from the Foxconn Causes of Action and other Causes of Action and (iv) insurance proceeds received by the Post-Effective Date Debtors. In addition, the Post-Effective Date Debtors shall be authorized to reserve the Post-Effective Date Amount to fund the Post-Effective Debtors. The Post-Effective Date Amount shall be used to pay all expenses incurred by the Post-Effective Date in performing its duties hereunder and may be used to fund operational expenses, including expense incurred in connection with one or more transactions to monetize the value of the net operating losses or similar tax attributes of the Debtors and Post-Effective Date Debtors' Estates.

**D.**     *Claims Administrator*

1.     <u>Appointment of Claims Administrator</u>

The Claims Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court enters an order closing the Chapter 11 Cases; (ii) the Bankruptcy Court enters an order removing the Claims Administrator for cause (as defined below); (iii) the Claims Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Claims Administrator is appointed in accordance with the Plan; or (iv) the GUTC Cash Pool Account has been exhausted.

2.     <u>Authority of Claims Administrator</u>

Subject to this <u>Article V.D</u>, the Claims Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement the following duties related to the administration of General Unsecured Trade Claims and the GUTC Cash Pool Account:

a.     subject to <u>Article VII</u>, including, but not limited to, <u>Article VII.A</u>, except to the extent General Unsecured Trade Claims have been previously Allowed, control and effectuate the reconciliation process with respect to General Unsecured Trade Claims in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all General Unsecured Trade Claims against the Debtors, *provided that* the Claims Administrator shall consult with the Post-Effective Date Debtors prior to entering into any Material Claims Settlement as set forth in <u>Article V.D.3</u>;

b.     make Distributions to holders of Allowed General Unsecured Trade Claims in accordance with this Plan;

26

c.          prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Claims Administrator as described herein, including by filing and prosecuting objections to General Unsecured Trade Claims;

d.          retain professionals to assist in performing its duties under the Plan;

e.          maintain the books and records and accounts with respect to the GUTC Cash Pool Account;

f.          incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Claims Administrator;

g.          prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the GUTC Cash Pool Account that are required hereunder, by any Governmental Unit or applicable law;

h.          perform other duties and functions that are consistent with the performance of the Claims Administrators duties and implementation of the Plan; and

i.          effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan.

All rights not expressly delegated to the Claims Administrator under this Article V.D are expressly reserved to the Post-Effective Date Debtors, including, without limitation, all rights set forth in Article V.E and Article V.G below.  For the avoidance of any doubt and without limiting the foregoing, the Claims Administrator shall have no authority to prosecute the Foxconn Causes of Action or any other Retained Causes of Action, receive or compromise any deposits (except pursuant to setoff or recoupment in connection with a General Unsecured Trade Claim), administer any tax assets of the Post-Effective Date Debtors or have any corporate governance function in connection with any post-effective date business carried on by the Post-Effective Date Debtors.

    3.          Reporting and Consultation Obligations of the Claims Administrator

The Claims Administrator shall report all material matters concerning the reconciliation of or Distributions on account of General Unsecured Trade Claims to the Post-Effective Date Debtors, which reporting shall include, without limitation: (i) a list of the Claims that have been Allowed, Disallowed, or Expunged during the applicable reporting period, (ii) a list of Disputed Claims that have yet to be resolved, (iii) the aggregate amount of Distributions during the applicable reporting period, and (iv) the aggregate amount of expected Distributions during the next reporting period.  Without limitation to any consultation or consent obligations of the Claims Administrator specified herein, the Claims Administrator shall consult with the Post-Effective Date Debtors on all material decisions concerning the reconciliation of or Distributions on account of General Unsecured Trade Claims.

27

The Debtors or the Post-Effective Date Debtors, as applicable, and the Claims Administrator shall cooperate with respect to administration of the Disputed General Unsecured Trade Claims.  Prior to reaching a Material Claims Settlement with respect to any Disputed General Unsecured Trade Claim, the Claims Administrator must provide ten (10) business days' written notice to the Post-Effective Date Debtors containing the material terms of such proposed settlement or compromise.  To the extent the Post-Effective Date Debtors object to the proposed compromise or settlement, the Post Effective Date Debtors may file a pleading with the Bankruptcy Court objecting to such settlement or compromise.  Pending resolution of any such objection, the Claims Administrator shall not make any distribution on account of the subject Disputed General Unsecured Trade Claim.

4.    Indemnification of Claims Administrator

Each of the Post-Effective Date Debtors shall indemnify and hold harmless the Claims Administrator solely in its capacities as such for any losses incurred in such capacity, except to the extent such losses were the result of the Claims Administrator's bad faith, gross negligence, willful misconduct or criminal conduct.

## E.    *Post-Effective Date Matters*

After the Effective Date, the Post-Effective Date Debtors may, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, engage in post-Effective Date operations in their discretion, including, without limitation, entering into one or more transactions to monetize the value of the net operating losses or similar tax attributes of the Debtors and Post-Effective Date Debtors' Estates.  Any costs incurred in connection with such operations may be funded from the Post-Effective Date Debtor Amount.

Further, on and after the Effective Date, the Post-Effective Date Debtors shall be authorized to implement the Plan in all respects, subject to the delegation of duties to the Claims Administrator set forth in Article V.D.2.  Without limiting the generality of the foregoing, the Post-Effective Date Debtors shall be authorized to prosecute and resolve all Causes of Action, including the Foxconn Causes of Action and any Causes of Action against insurers.

## F.    *Board of Directors and Officers*

Except as otherwise provided in the Plan or the Confirmation Order, the directors and officers of the Post-Effective Date Debtors constituting the New Board and management shall be those individuals identified in the Plan Supplement.  The New Board shall, among other things, oversee and direct the administration of the Post-Effective Date Debtors' Estates in accordance with the Plan.  On the Effective Date, or as soon as is reasonably practicable thereafter, the New Board shall establish such procedures and protocols as it deems necessary to carry out its duties. The officers of the Post-Effective Date Debtors shall have the rights and responsibilities set forth in the organizational documents of the Post-Effective Date Debtors.

### G.    *Vesting of Assets*

Except as otherwise provided in the Plan, on and after the Effective Date, all Assets of the Debtors and the Estates, wherever located, including, without limitation, all claims, rights, Causes of Action (including, but not limited to, the Foxconn Causes of Action), "net operating losses" or similar tax attributes, and rights in respect thereof, and any other property, wherever located, and whether acquired by the Debtors under or in connection with this Plan or otherwise, shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests.  For the avoidance of any doubt, the GUTC Cash Pool Account shall be funded in the amount of the GUTC Cash Pool Amount from the Assets of the Debtors as set forth in the Plan.

### H.    *Existing Securities*

Neither the Common Stock Interests, Foxconn Preferred Stock Interests nor any other Interests (including any outstanding warrants) in and to the Debtors shall be cancelled pursuant to the Plan or Confirmation Order.  All such Interests shall be preserved in Post-Effective Date LMC and governed in accordance with the Plan, the Confirmation Order and the applicable organizational documents thereof.

### I.    *Preservation of Net Operating Losses*

The Bankruptcy Court will enter one or more orders, which may be the Confirmation Order, to facilitate preservation of "net operating losses" of the Debtors, including by restricting further trading of Foxconn Preferred Stock Interests and Common Stock Interests, which may also be provided for in the applicable organizational documents of the Post-Effective Date Debtors.

### J.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII, the Post-Effective Date Debtors shall retain and the Post-Effective Date Debtors may enforce all rights to commence and pursue, as appropriate, any and all of the Debtors' Causes of Action, whether arising before or after the Petition Date, including, (i) the Foxconn Causes of Action, (ii) any Cause of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence and claims made policies, occurrence and claims made contracts, and similar agreements to which any Debtor or Post-Effective Date Debtor is or was a party or pursuant to which any Debtor or Post-Effective Date Debtor has any rights whatsoever, including the Insurance Policies, (iii) any Causes of Action against any of the Debtors' Directors and Officers that are identified as Excluded Parties, and (iv) all other Causes of Action listed or described in the Schedule of Retained Causes of Action filed in connection with the Plan Supplement.  The Post-Effective Date Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  **The Post-Effective Date Debtors expressly reserve all rights to prosecute any and all Causes of Action**.

AMERICAS 124914935

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Post-Effective Date Debtors shall not pursue any and all available Causes of Action against it. Unless such Causes of Action against any Entity are expressly waived, relinquished, exculpated, released, compromised, assigned, or settled in the Plan or a Final Order, all such Causes of Action shall be expressly reserved by the Debtors and the Post-Effective Date Debtors for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

The Post-Effective Date Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Post-Effective Date Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.

For the avoidance of any doubt, to the extent not expressly waived, relinquished, exculpated, released, compromised, assigned, or settled prior to the Effective Date by Final Order entered through the Bankruptcy Court or pursuant to the Confirmation Order or Article VIII of the Plan; all Avoidance Actions shall be retained by the Debtors and the Post-Effective Date Debtors, may be pursued by the Post-Effective Date Debtors and shall not be waived, relinquished, exculpated, or released until all Allowed General Unsecured Trade Claims are paid in full or such Avoidance Actions are settled, compromised, assigned or otherwise liquidated or resolved by the Post-Effective Date Debtors.

**WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE POST-EFFECTIVE DEBTORS EXPRESSLY RESERVE THE RIGHT AND FULLY INTEND TO VIGOROUSLY PROSECUTE THE FOXCONN ADVERSARY PROCEEDING AND THE CAUSES OF ACTION SET FORTH THEREIN AFTER THE EFFECTIVE DATE OF THE PLAN.**

### K.    *Preservation of Insurance*

Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estate) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. The Debtors shall be deemed to have assumed all Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policies to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Post-Effective Date Debtors for the benefit of the Post-Effective Date Debtors and all of the beneficiaries of such policies.

L.      *Indemnification Obligations*

Except as otherwise provided in the Plan and the Confirmation Order, or as otherwise assumed by the Debtors pursuant to a Final Order entered by the Bankruptcy Court, any and all indemnification obligations of the Debtors (including any indemnification obligations to Former Directors and Officers), whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan; *provided that*, any indemnification obligations that are expressly assumed by the Debtors pursuant to a Final Order entered by the Bankruptcy Court, shall continue in effect on the terms set forth in the Plan, Confirmation Order, the applicable organizational documents of the Post-Effective Date Debtors, or applicable Final Order with respect to any such indemnification obligations.

M.      *Setoffs and Recoupments*

The Debtors, Post-Effective Date Debtors, or the Claims Administrator (with respect to General Unsecured Trade Claims), may, but shall not be required to, setoff or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), rights, or Causes of Action of any nature whatsoever that the Debtors or Post-Effective Date Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Debtors, Post-Effective Date Debtors, or the Claims Administrator (with respect to General Unsecured Trade Claims) of any such Claim, right or Cause of Action the Debtors or Post-Effective Date Debtors may have against the Holder of such Claim.

N.      *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any Securities, instruments, or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property or transfer of beneficial ownership of property pursuant to the Plan or the Plan Supplement, (iv) any assumption, assignment, or sale by the Debtors of their interests in Executory Contracts pursuant to section 365(a) of the Bankruptcy Code, and (v) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

O.      *Approval of Plan Documents*

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order

31

shall constitute Bankruptcy Court approval of the Plan Documents and such transactions. On the Effective Date, the Debtors and the Post-Effective Date Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

**P.**    ***Effectuating Documents; Further Transactions***

Any applicable Debtor or Post-Effective Date Debtor, or the Claims Administrator (with respect to the administration of General Unsecured Trade Claims) shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions contained herein.

**Q.**    ***Tax Matters***

The Post-Effective Date Debtors and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims) shall (A) be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, (B) complete and file the Debtors' federal, state, and local tax returns, (C) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (D) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

**R.**    ***Settlements***

To the extent a settlement is reached with respect to any Claim prior to the Effective Date and such settlement is approved by the Bankruptcy Court and provides for payment outside of the Plan, such Claim shall be paid as set forth in the applicable settlement documents and the order of the Bankruptcy Court approving such settlement.

**S.**    ***Equitable Subordination of Foxconn Interests***

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order equitably subordinating the rights of the Holders of Foxconn Preferred Stock Interests and the rights of Foxconn as a Holder of Common Stock Interests to receive Distributions under the Plan to the rights of non-Foxconn Holders of Common Stock Interests to receive such Distributions. As a result, Foxconn will receive no distributions on account of its Interests under the Plan.

If no objection to equitable subordination is timely Filed and served on or before the deadline to object to Confirmation of the Plan, or such other date as may be fixed by the Court, the entry of the Confirmation Order shall constitute an order to subordinate the rights of the Holders of Foxconn Preferred Stock Interests and the rights of Foxconn has a Holder of Common Stock Interests, as set forth herein. If any such objection is timely Filed and served, the Bankruptcy Court shall adjudicate such objection at the Confirmation Hearing.

AMERICAS 124914935

**T.**    *GUTC Cash Pool Adjustment*

No later than five (5) days after the expiration of the Bar Date, either the Debtors or the Committee may send written notice to the other party (an "**GUTC Cash Pool Adjustment Notice**") of its intent to seek an adjustment to the GUTC Cash Pool Amount (the "**GUTC Cash Pool Adjustment**").  Any such notice shall set forth the amount of the proposed GUTC Cash Pool Adjustment and a short description of the reasons for such adjustment.  The party receiving the GUTC Cash Pool Adjustment Notice shall have five (5) days from the receipt of such notice to agree to the requested adjustment.  If an agreement is reached, the GUTC Cash Pool Amount shall be adjusted as set forth in such GUTC Cash Pool Adjustment Notice or in such other amount as may be agreed upon by the parties.  If the parties do not reach agreement on a proposed adjustment within such five (5) day period, either party may seek an order from the Bankruptcy Court adjusting the GUTC Cash Pool Amount as set forth in the applicable GUTC Cash Pool Adjustment Notice or in such other amount as any such party may request.  The final amount of the GUTC Cash Pool Amount, if adjusted as set forth herein, shall be set forth in the Confirmation Order.

**U.**    *General Unsecured Trade Claim Recoveries*

On or prior to the Effective Date, the Debtors shall establish and fund the GUTC Cash Pool Account with the GUTC Cash Pool Amount.  The Cash in the GUTC Cash Pool Account shall be used by the Claims Administrator to pay the Claims Administrator Expenses and to make the Distributions to Holders of General Unsecured Trade Claims required by Article III.B.3.b on the terms and conditions set forth in the Plan.  Any Cash remaining in the GUTC Cash Pool Account after the payment of Claims Administrator Expenses and the making of the Distributions required by Article III.B.3.b shall be repaid on the Post-Effective Debtors and shall, upon such payment, constitute a Non-Trade Pool Asset.  The Cash held in the GUTC Cash Pool Account (i) shall be held in trust to fund Distributions on account of Allowed General Unsecured Trade Claims, as provided herein and (ii) shall not be encumbered by any Liens, Claims, or Interests in any way.

All parties to the Plan shall (i) treat the GUTC Cash Pool Account as a "disputed ownership fund" within the meaning of Treasury Regulations Section 1.468B-9(b)(1) for U.S. federal income tax purposes, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All taxes imposed on assets or income of the GUTC Cash Pool Account will be payable from the assets of the GUTC Cash Pool Account.

**ARTICLE VI:**
**PROVISIONS REGARDING DISTRIBUTIONS**

**A.**    *Distribution Record Date*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  The Post-Effective Date Debtors and the Claims Administrator (with respect to General Unsecured Trade Claims) shall have no obligation to recognize any transfer of any Claims or Interests occurring on or after the Distribution Record Date.  The Post-Effective Date Debtors and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims)

shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

**B.**     *Cash Payments*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtors, the Post-Effective Date Debtors, and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims), as applicable, shall determine.

**C.**     *Allocation of Distributions; Postpetition Interest on Claims*

Post-petition interest shall not be paid to Holders of Claims and Interests unless otherwise provided by the Plan.  To the extent a Holder of a Claim is entitled to post-petition interest pursuant to the Plan and such interest is not already included in the Allowed amount of such Claim pursuant to Section 506 of the Bankruptcy Code and the provisions of the Plan, Distributions on account of such Claims shall be allocated, first, to the principal amount of such Claim (as determined for federal income tax purposes), and, second, to the extent of any excess, to the remainder of the Claim, if applicable.

For the avoidance of any doubt, Administrative Claims of tax authorities (including any Administrative Claims of the Internal Revenue Service for any federal taxes, which shall accrue interest at the rate and in the manner established under 26 U.S.C. §§ 6621 and 6622), shall accrue interest at the rate and in the manner specified by the applicable tax regulation.  Nothing herein shall be deemed an admission of the Debtors or the Post-Effective Date Debtors that any such Claim is an Allowed Claim and the parties reserve all rights with respect to such determination.

**D.**     *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, any Distribution or delivery to a Holder of an Allowed Claim shall be made at the last known address of such Holder as set forth (a) in the Schedules filed with the Bankruptcy Court unless the Debtors have been notified in writing of a change of address, including by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected in such Schedules for such Holder, (b) on the Proof of Claim filed by such Holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such Holder giving details of a change of address.  If any Distribution or other communication from the Debtors is returned as undeliverable, no Distribution shall be made to such Holder unless the Debtor, Post-Effective Date Debtor, or the Claims Administrator (with respect to General Unsecured Trade Claims), as applicable, is notified of such Holder's then current address within ninety (90) days after the later of (i) the Effective Date, (ii) date the communication from the Post-Effective Date Debtor, or the Claims Administrator (with respect to the administration of General Unsecured Trade Claims) was returned or (iii) the date such Distribution was returned.  After such date, if such notice was not provided, a Holder shall have forfeited its right to such Distribution, and such undeliverable distributions shall be returned to the Post-Effective Date Debtors or (with respect to

34

General Unsecured Trade Claims) the Claims Administrator, and be distributed in accordance with the Plan.

## E.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Post-Effective Date Debtors, and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims), as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Post-Effective Date Debtors, and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims), as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Post-Effective Date Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Post-Effective Date Debtors and the Claims Administrator (with respect to the administration of General Unsecured Trade Claims) may require, as a condition to receipt of a distribution, that the Holder of an Allowed Claim provide any information necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, including but not limited to Form W-8 or Form W-9 (as applicable). If the Post-Effective Date Debtors or the Claims Administrator make such a request and the Holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the amount of such distribution shall irrevocably revert to the Post-Effective Date Debtors or the Claims Administrator (with respect to the administration of General Unsecured Trade Claims), as applicable, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Post-Effective Date Debtor or its respective property.

## F.    *No Distribution in Excess of Allowed Amounts*

No Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim, except to the extent such Holder is entitled to postpetition interest pursuant to the Plan.

## G.    *Special Rules for Distributions to Holders of Disputed Claims and Interests*

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have

been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims or Interests in such Class.

For the avoidance of any doubt, the Debtors dispute that the Holders of Foxconn Preferred Stock Interests are entitled to Distributions under the Plan.  The Debtors also dispute that Foxconn, in its capacity as a Holder of any Interests, including Common Stock Interests, is entitled to Distributions under the Plan. Among other things, the Debtors (i) are seeking to equitably subordinate the Foxconn Preferred Interests and any Common Stock Interests held by Foxconn in their entirety to non-Foxconn Common Stock Interests under the Plan, (ii) reserve the right to seek disallowance of any and all Interests and Claims held by Foxconn, and (iii) believe that any Distributions to Foxconn are also subject to the Debtors' setoff and recoupment rights as a result of the Foxconn Causes of Action.  As a result, any Distributions in respect of Foxconn Preferred Stock Interests or any other Interests in and to the Debtors held by Foxconn shall be subject to Article V.S of the Plan and the resolution of the Foxconn Causes of Action.

## H.    *Manner of Payment Under Plan*

Unless otherwise provided herein, any Cash payment to be made hereunder may be made by a check or wire transfer.

1.    *Minimum Distributions*.  The Post-Effective Date Debtors, and the Claims Administrator, as applicable, shall not be obligated to make any payment of Cash of less than fifty dollars ($50) to any Holder of an Allowed Claim or Interest.  Notwithstanding anything contained herein to the contrary, if, on the final date of Distribution there remains $10,000 or less available for distribution to Holders of Allowed Claims, in lieu of making any further distributions to the Holders of such Claims, the Post-Effective Date Debtors or the Claims Administrator, as applicable, shall distribute such Cash to The Henry Ford Museum of American Innovation, Dearborn, Michigan.

2.    *Time Bar to Cash Payments*.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Claims Administrator by the Holder of the Allowed Claim or Interest to whom such check was originally issued.  Any Claim or Interest in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

## ARTICLE VII:
## PROCEDURES FOR DISPUTED CLAIMS

A.    *Allowance of Claims*

After the Effective Date, each of the Post-Effective Date Debtors shall have and retain, and the Claims Administrator shall be entitled to assert (with respect to General Unsecured Trade Claims), any and all rights and defenses that the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date, including by virtue of any Causes of Action retained by the Debtors (i) relating to such Claim or Interest (or the facts, circumstances, agreement(s), arrangements, or transactions giving rise to such Claim or Interest) or (ii) against the Holder of such Claim or Interest.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing such Claim; *provided, however*, that the Plan Administrator may affirmatively determine to deem Allowed any General Unsecured Trade Claim (other than a General Unsecured Trade Claim asserted by Foxconn) notwithstanding the fact that the period within which an objection may be interposed has not yet expired; *provided further that*, any determination by the Claims Administrator to deem to Allow a General Unsecured Trade Claim must comply with the Plan Administrator's notice and consultation obligations, including as set forth in Article V.D.3 of the Plan, which obligations are not superseded by this provision in any respect.  Except as otherwise expressly specified in the Plan (including as provided in Article III.B.3.b and Article III.B.4.b with respect to Allowed General Unsecured Trade Claims under certain circumstances detailed in such provision) or any Final Order, and except to the extent such interest, fees, costs or charges are Allowed pursuant to section 506(b) of the Bankruptcy Code, the amount of an Allowed Claim shall not include any interest, fees, costs or charges arising from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim or Interest, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim or Interest may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of any doubt, a Proof of Claim Filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.

AMERICAS 124914935

**B.**     ***Claims and Interests Administration Responsibilities***Except as otherwise expressly
provided in the Plan and notwithstanding any requirements that may be imposed pursuant
to Bankruptcy Rule 9019 or section 1123 of the Bankruptcy Code, after the Effective
Date, the Post-Effective Date Debtors or, with respect to General Unsecured Trade
Claims, the Claims Administrator shall have the authority: (i) to File, withdraw, or
litigate to judgment objections to Claims; (ii) to settle or compromise any Disputed Claim
without any further notice to or action, order, or approval by the Bankruptcy Court
(provided that any Material Claims Settlement is subject to the terms of Article V.D.2.a
of the Plan); and (iii) to administer and adjust the Claims Register to reflect any such
settlements or compromises without any further notice to or action, order, or approval by
the Bankruptcy Court.

For the avoidance of any doubt, except as otherwise provided herein, from and after the
Effective Date, each Post-Effective Date Debtor shall have and retain any and all rights and
defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed
Claim or Interest, including the Retained Causes of Action.

All objections to Claims (other than (i) Administrative Claims and (ii) Professional Fee
Claims) shall be Filed on or before the Claim Objection Deadline as the same may be extended by
the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors or the Claims
Administrator on or before the Claim Objection Deadline, with notice only to those parties entitled
to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 as of the filing of such motion.
The Filing of a motion to extend the Claim Objection Deadline shall automatically extend the
Claim Objection Deadline until a final order is entered by the Bankruptcy Court. In the event that
such a motion to extend the Claim Objection Deadline is denied, the Claim Objection Deadline
shall be the later of the then-current Claim Objection Deadline (as previously extended, if
applicable) or thirty (30) days after entry of a Final Order denying the motion to extend the Claim
Objection Deadline.

**C.**     ***Estimation of Claims***

Before or after the Effective Date, the Debtors or the Post-Effective Date Debtors or (with
respect to General Unsecured Trade Claims) the Claims Administrator, as applicable, may at any
time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or
unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of
whether any party previously has objected to such Claim, and the Bankruptcy Court shall retain
jurisdiction to estimate any such Claim, including during the litigation of any objection to any
Claim or during the appeal relating to such objection; *provided that*, for the avoidance of any
doubt, no Claim or Interest Allowed under this Plan shall be considered a Disputed Claim or
Disputed Interest.  In the event that the Bankruptcy Court estimates any Disputed, contingent, or
unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim
for all purposes under the Plan (including for purposes of Distributions), and the Debtors, or the
Post-Effective Date Debtors, as applicable, may elect to pursue any supplemental proceedings to
object to any ultimate Distribution on such Claim.  Notwithstanding section 502(j) of the
Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to
section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such
estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration

38

on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

If the Debtors determine that (i) one or more Disputed General Unsecured Trade Claims are capable of estimation by the Bankruptcy Court, (ii) estimation will materially improve Effective Date distributions to Holders of Allowed General Unsecured Trade Claims, and (iii) estimation is otherwise in the best interests of the Estates, the Debtors shall File one or more motions to estimate such Disputed General Unsecured Trade Claims, which motion(s) shall be Filed and noticed to be heard by the Bankruptcy Court before the Effective Date (or such other date as determined by the Bankruptcy Court).

D.      ***Adjustment to Claims Register Without Objection*** Any duplicate Claim or Interest, any Claim (Filed or scheduled) or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Post-Effective Date Debtors, or (with respect to General Unsecured Trade Claims) the Claims Administrator, as applicable, upon stipulation or any agreement in writing, including email correspondence, between the parties in interest without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      ***Disallowance of Claims*** Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, the Post-Effective Date Debtors or (with respect to General Unsecured Trade Claims) the Claims Administrator.

All Proofs of Claim must be Filed on or before the applicable Bar Date. If Proofs of Claim are not Filed on or before the applicable Bar Date, except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall, absent further Order of the Bankruptcy Court Allowing such Claims, be barred from asserting such Claims against the Debtors and precluded from voting on the Plan and/or receiving Distributions from the Debtors on account of such Claims in the Chapter 11 Cases.

AMERICAS 124914935

F.    ***Reimbursement or Contribution***If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim is no longer contingent.

G.    ***Amendments to Proofs of Claim***On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Post-Effective Date Debtors, or (with respect to General Unsecured Trade Claims) the Claims Administrator, and any such new or amended Claim or Proof of Claim Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action or notice to the Bankruptcy Court; *provided that* the filing of an unauthorized amendment shall not affect the underlying Claim or Proof of Claim.  Nothing in this paragraph shall remove any claimant's ability to seek leave from the Bankruptcy Court to amend a Claim or Proof of Claim.

H.    ***No Distributions Pending Allowance***

For the avoidance of any doubt, notwithstanding any other provision in the Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim or Interest unless and until all objections to such Disputed Claim or Interest is settled or withdrawn or is determined by Final Order, and the Disputed Claim or Interest, or some portion thereof, has become an Allowed Claim or Interest.

I.    ***Disputed Claims Reserve***

The Claims Administrator and the Post-Effective Date Debtor, as applicable, may establish reserves for the payment of Disputed Claims by withholding up to 100% of the Distributions to which Holders of such Disputed Claims would be entitled if such Disputed Claims were Allowed Claims.

J.    ***Distributions After Allowance***

Subject to <u>Article VII.H</u> hereof, after such time as a Disputed General Unsecured Trade Claim, Common Stock Interest, or Foxconn Preferred Stock Interest becomes, in whole or in part, an Allowed Claim or Interest, the Post-Effective Date Debtors or (with respect to General Unsecured Trade Claims) the Claims Administrator shall distribute to the Holder thereof the reserved Distributions, as applicable, if any, to which such Holder is then entitled under the Plan. Any such distributions shall be made in accordance with the Plan.  To the extent such Disputed General Unsecured Trade Claim, Common Stock Interest, or Foxconn Preferred Stock Interest is Disallowed, the corresponding reserved amount shall be distributed to other Allowed Claims or Interests as provided for in the Plan.

40

**K.**     ***Single Satisfaction of Claims*** Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed one hundred (100) percent of the underlying Allowed Claim plus applicable interest, if any.

**ARTICLE VIII:**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.**     ***Compromise and Settlement of Claims, Interests, and Controversies***

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of and except as set forth in the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, Post-Effective Date Debtors or the Claims Administrator (with respect to General Unsecured Trade Claims, and subject to the terms provided in Article V.D.3 of the Plan) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

**B.**     ***Discharge of Claims and Termination of Interests***

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, any Claims for withdrawal liability that relate to services performed by employees of the Debtors before the Effective Date or that arise from a termination of employment, and all debts of the kind specified in sections

41

502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default or "*event of default*" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan so long as such cure does not cause such Claim to be Impaired.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring; *provided that*, notwithstanding anything in the foregoing, Interests treated pursuant to the Plan shall receive such treatment as specified in the Plan.

## C.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors and their Estates, the Post-Effective Date Debtors and each of their respective current and former Affiliates (with respect to non-Debtors, to the extent permitted by applicable law), on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, in each case, whether prepetition or postpetition (including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this <u>Article VIII.C</u> shall not release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (ii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.**

AMERICAS 124914935

**D.**    *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged each Debtor, Post-Effective Date Debtor, and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing,  the releases set forth in this <u>Article VIII.D</u> shall not be construed as (i) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) releasing any post-Effective Date obligations of or under (A) any party or Entity under the Plan, (B) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to Final Order, or (C) any document, instrument, or agreement executed to implement the Plan, or (iv) releasing any rights to distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order.

**E.**    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, in whole or in part, the Debtors, the formulation, preparation, dissemination, negotiation, of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of Cash under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be

43

entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon Consummation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE (1) BEEN RELEASED PURSUANT TO <u>ARTICLE VIII.C</u> OR <u>ARTICLE VIII.D</u>, (2) SHALL BE DISCHARGED PURSUANT TO <u>ARTICLE VIII.D</u> OF THE PLAN, OR (3) ARE SUBJECT TO EXCULPATION PURSUANT TO <u>ARTICLE VIII.E</u>, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO <u>ARTICLE VIII.E</u> WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT (WHICH MAY BE A PROOF OF CLAIM) FILED WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE TERMS OF THIS PLAN EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

AMERICAS 124914935

G.    ***Release of Liens*** Except (i) with respect to the Liens securing, to the extent elected by the Debtors with respect to an Allowed Secured Claim in accordance with Article III.B.2; or (ii) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors, the Post-Effective Date Debtors, or the Claims Administrator, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors' Estates and their successors and assigns.

## ARTICLE IX:
## EXECUTORY CONTRACTS

A.    ***Rejection of Executory Contracts***

Any Executory Contract which has not been assumed with the approval of the Bankruptcy Court on or prior to the Confirmation Date shall be deemed a rejected Executory Contract by the applicable Debtor effective on the Confirmation Date.  The Plan shall constitute a motion to reject such Executory Contracts and the Debtors shall have no liability thereunder, except that any Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Trade Claim subject to filing of a Proof of Claim pursuant to Article II.B.3.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Chapter 11 Cases.  For the avoidance of any doubt, notwithstanding anything in the foregoing, the Debtors shall remain bound by any outstanding indemnification obligations owed to Chapter 11 Directors and Officers that it has assumed pursuant to any Final Order entered by the Bankruptcy Court.

B.    ***Time for Filing Rejection Claims***

Claims arising from the rejection of Executory Contracts pursuant to Article IX.A of the Plan must be filed with the Claims and Noticing Agent within thirty (30) days after the service of the Effective Date notice.  Any Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors or their Estates, Assets, properties or interests in property.  All proofs of Claims arising from the rejection of Executory Contracts that are timely filed as provided herein shall be treated under the Plan as General Unsecured Trade Claims upon their Allowance.

C.    ***Reservation of Rights***

Nothing contained in the Plan, including this Article IX.C shall constitute a waiver of any Claim, right or Cause of Action that the Debtors or the Post-Effective Date Debtor, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

45

## ARTICLE X:
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.**     *Conditions to Occurrence of the Effective Date*

The Effective Date of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Article X.B of the Plan:

1.     the Bankruptcy Court shall have entered the Confirmation Order, in form and substance materially consistent with the Plan and otherwise reasonably acceptable to the Debtors and such order shall not have been stayed pending appeal; without limiting the generality of the foregoing, the Confirmation Order shall subordinate the rights to receive Distributions of Holders of Foxconn Preferred Stock Interests and of Foxconn as a Holder of Common Stock Interests as required by Article V.S of the Plan;

2.     the Professional Fee Escrow Account shall have been established and fully funded as set forth herein;

3.     the GUTC Cash Pool Account shall have been established and funded in Cash in accordance with Article V.T and Article V.U of the Plan;

4.     the Claims Administrator shall have been appointed;

5.     all Plan Documents, agreements and other instruments which are exhibits to the Plan or included in the Plan Supplement shall be acceptable to the Debtors and shall have been executed and delivered by the parties thereto;

6.     all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed; and

7.     all appropriate notices shall have been given and all other appropriate actions shall have been taken to preserve all applicable Insurance Policies, including any "tail policy," notices required to be provided.

**B.**     *Waiver of Conditions to Confirmation and Effective Date*

The conditions to the Effective Date set forth in Article X.A of the Plan may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; *provided*, that the Debtors may not waive the condition set forth in Article X.A.3 or Article X.A.4 without consent of the Committee.

**C.**     *Effect of Failure of Conditions to the Effective Date*

In the event the conditions specified in Article X.A of the Plan have not been satisfied or waived in accordance with Article X.B of the Plan, and upon notification submitted by the Debtors

46

to the Bankruptcy Court (a) the Confirmation Order shall be vacated; (b) no Distributions shall be made; (c) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) or to prejudice in any manner the rights of the Debtors or any other Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) in any proceedings further involving the Debtors.  Neither the Disclosure Statement, any statement contained in the Disclosure Statement nor the Plan may be used in these Chapter 11 Cases, or in any action, other than in connection with confirmation of the Plan.  In the event that the Plan is not confirmed, or is confirmed but does not become effective, the Disclosure Statement, any statements contained in the Disclosure Statement and the Plan shall have no force or effect, and neither the Disclosure Statement, any statements contained in the Disclosure Statement nor the Plan shall be admissible in any court or legal forum for any purpose whatsoever.

## ARTICLE XI:
## EFFECT OF CONFIRMATION

### A.   *Deemed Consent*

By voting to accept the Plan or accepting any Distributions under the Plan, and not opting out from granting the releases in <u>Article VIII.D</u> of the Plan, each Holder of a Claim will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in the Plan.

### B.   *No Waiver*

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, CONFIRMATION OF THE PLAN SHALL NOT RELEASE, NOR BE DEEMED TO RELEASE, ANY CLAIM OR CAUSE OF ACTION THAT ANY DEBTOR MAY HOLD AGAINST ANY PERSON OR ENTITY (INCLUDING ANY RELEASED PARTY) RELATED TO, ARISING UNDER, OR IN ANY WAY WITH RESPECT TO ANY OF THE RETAINED CAUSES OF ACTION.

### C.   *Disallowed Claims and Disallowed Interests*

On and after the Effective Date, Post-Effective Date Debtors and the Claims Administrator shall be fully and finally discharged of any and all liability or obligation on a Disallowed Claim or a Disallowed Interest, and any Order disallowing a Claim or an Interest which is not a Final Order as of the Effective Date solely because of any Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Interests to the extent such Claims and Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for

47

unmatured interest and (b) disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

## ARTICLE XII:
## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

1.     To Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or Allowance of Claims or Interests; *provided that*, for the avoidance of any doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or the Post-Effective Date Debtors, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters.

2.     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

3.     To hear and determine all applications for the payment of Professional Fee Claims.

4.     To resolve any matters related to (i) the assumption, assumption and assignment or rejection of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or any other matter related to such Executory Contract; (ii) the Post-Effective Date Debtors amending, modifying, or supplementing, after the Confirmation Date, the schedule of Executory Contracts to be assumed or rejected pursuant to Article IX; and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired.

5.     To adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims.

6.     To hear and determine any dispute or reconcile any inconsistency arising in connection with the Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of the Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

7.     To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

48

8.      To adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

9.      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

10.     To hear and determine any rights, Claims or Causes of Action, including without limitation Claims or Causes of Action identified on the Schedule of Retained Causes of Action, held by, transferred to or accruing to the Post-Effective Date Debtors pursuant to the Bankruptcy Code, including any settlement or compromise thereof.

11.     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

12.     To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

13.     To resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

14.     To ensure that all Distributions are accomplished as provided herein.

15.     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim.

16.     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

17.     To enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code.

18.     To recover all Assets of the Estates, wherever located.

19.     To hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code.

20.     To determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code.

21.     To enter a final decree closing the Chapter 11 Cases.

AMERICAS 124914935

22.     To resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

23.     To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

24.     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Plan and these Chapter 11 Cases.

25.     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

26.     To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan or the Disclosure Statement.

27.     To adjudicate the Foxconn Causes of Action.

28.     To adjudicate any other adversary proceedings pending before the Bankruptcy Court as of the Petition Date or any other disputes relating to any Retained Cause of Action that the Post-Effective Date Debtors may bring thereafter.

29.     To hear and determine any dispute or suit regarding setoff or recoupment.

## ARTICLE XIII:
## MISCELLANEOUS PROVISIONS

### A.     *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the Estates or the Post-Effective Date Debtors in the ordinary course. The Post-Effective Date Debtors shall have the obligation to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the United States Code until the Chapter 11 Case is closed, dismissed or converted. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to section 1930 of title 28 of the United States Code.

### B.     *Notices*

Any notices, requests, and demands to or upon the Debtors, the Post-Effective Date Debtors, the Claims Administrator, or the Committee, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following:

AMERICAS 124914935

If to the Debtors, to:

Lordstown Motors Corp.
38555 Hills Tech Dr.,
Farmington Hills, MI 48331
Attn: Melissa Leonard

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: Kevin Gross
Attn: Paul N. Heath
Attn: Daniel J. DeFranceschi
Attn: Amanda R. Steele
Attn: Jason M. Mardon
    gross@rlf.com
    defranceschi@rlf.com
    heath@rlf.com
    steele@rlf.com
    madron@rlf.com

White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Attn: Thomas E Lauria
Attn: Matthew C. Brown
Attn: Fan B. He
    tlauria@whitecase.com
    mbrown@whitecase.com
    fhe@whitecase.com

-and-

White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Attn: David M. Turetsky
    david.turetsky@whitecase.com

White & Case LLP
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
(312) 881-5400
Attn: Jason N. Zakia
    jzakia@whitecase.com

-and-

White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Roberto Kampfner
Attn: Roberto Kampfner
Attn: Doah Kim
Attn: RJ Szuba
    rkampfner@whitecase.com
    doah.kim@whitecase.com
    rj.szuba@whitecase.com

AMERICAS 124914935

If to the Committee, to:

Troutman Pepper Hamilton Sanders LLP
Hercules Plaza
1313 N. Market Street, Ste 5100
Wilmington, DE 19801
Attn: David M. Fournier
Attn: Marcy J. McLaughlin Smith
Attn: Tori L. Remington
      david.fournier@troutman.com
      marcy.smith@troutman.com
      tori.remington@troutman.com

-and-

Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square 18th & Arch Streets
Philadelphia, PA 19103-2799
Attn: Francis J. Lawall
      francis.lawall@troutman.com

Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, NY 10022
Attn: Deborah Kovsky-Apap
      deborah.kovsky@troutman.com

-and-

Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Attn: Sean McNally
      sean.mcnally@troutman.com

## C.    *Headings*

The headings and other captions used in the Plan are for reference purposes only, and shall not affect the meaning or interpretation of the Plan in any way.

## D.    *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## E.    *Notice of Entry of Confirmation Order and Relevant Dates*

Promptly upon entry of the Confirmation Order, the Debtors shall file on the docket and serve upon parties who have entered their appearance a notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

## F.    *Modification of the Plan and Amendments*

The Plan may only be amended, modified or supplemented in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

AMERICAS 124914935

### G.   *Revocation, Withdrawal or Non-Consummation of Plan*

If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if confirmation or consummation of the Plan does not occur as to any Debtor, then, as to such Debtor, (a) the Plan shall be null and void in all respects and (b) any settlements and compromises embodied in the Plan, and any document or agreement executed pursuant the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person.  None of the filing of the Plan, the taking by the Debtors or other party in interest of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by the Debtors or other party in interest against interest, or be or be deemed to be a waiver of any rights, Claims or remedies that the Debtors or other party in interest may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved.  In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and the Plan Documents and any document contained in the Plan Supplement, and any statement contained herein or therein, may not be used by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) against the Debtors and other parties in interest.  The Debtors shall consult with the Committee with respect to the revocation or withdrawal of the Plan with respect to any one or more of the Debtors.

### H.   *Binding Effect*

The Plan shall be binding upon and inure to the benefit of the Debtors and the Post-Effective Date Debtors and the Holders of all Claims and Interests and their respective successors and assigns.

### I.   *Severability of Plan Provisions*

If, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors in consultation with the Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**J.**     *No Admissions*

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

**K.**     *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve and all members, ex officio members, employees, attorneys, financial advisors, other Professionals or other agents thereof shall be released from all rights and duties arising from or related to the Chapter 11 Case or the Plan and its implementation, and the retention or employment of the Committee's attorneys and financial advisors and other agents shall terminate, *provided that* the Committee shall continue in existence and its Professionals shall continue to be retained with respect to (i) applications Filed or to be Filed pursuant to sections 330 and 331 of the Bankruptcy Code and (ii) any appeals of the Confirmation Order.

**L.**     *Time*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply.  With regard to all dates and the periods of time set forth or referred to in the Plan, time is of the essence.

**M.**     *Successors and Assigns*

The rights, benefits and obligations of any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof).

**N.**     *Conflict between Plan, Disclosure Statement and Plan Documents*

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, any Plan Document or any document in the Plan Supplement, the terms and provisions of the Plan shall control and govern.

**O.**     *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

AMERICAS 124914935

**P.**    *Plan Exhibits*

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least seven (7) Business Days prior to the Plan Objection Deadline, unless the Plan provides otherwise.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors in accordance with Article I.H of the Plan or online at https://www.kccllc.net/lordstown.  The Debtors explicitly reserve the right to, in the exercise of its sole and absolute discretion, modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Plan Objection Deadline.

*[Signature on following page.]*

Respectfully Submitted, as of September 1, 2023

Lordstown Motors Corp.,
on behalf of itself and each Debtor

By:   */s/ Adam Kroll*_____
Name: Adam Kroll
Title: Chief Financial Officer