IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**LORDSTOWN MOTORS CORP. et. al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 23-10831 (MFW)**<br><br>**(Jointly Administered)**<br><br>Hearing Date: October 5, 2023 at 10:30 AM<br>Sale Objection Date: September 14, 2023<br>Cure Objection Date: September 5, 2023<br><br>Docket Nos. 16 and 280 |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION AND RELATED NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS.**

Oracle America, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 cases, submits this limited objection to and reservation of rights ("Rights Reservation") regarding: (1) *Debtors' Motion For Entry of an Order (I)(A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates With Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief; and (II)(A) Authorizing the Debtors to Enter Into a Definitive Purchase Agreement and (B) Granting Other Related Relief* [D.E. No. 16] ("Sale Motion"); and (2) *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.E. No. 280] ("Assumption Notice"), filed by Lordstown Motors Corp., et al. ("Debtors").

**I.      INTRODUCTION**

1.      In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtors and Oracle.

Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

a) First, the targeted Oracle agreement is, or pertains to, one or more licenses of intellectual property which is not assignable absent Oracle's consent pursuant to both the underlying license agreement and applicable law.

b) Second, the Assumption Notice does not include the underlying master agreement between Oracle and the Debtors. In addition, Oracle is in the process of reviewing it records in order to determine whether there is anything owed under the contract identified in the Assumption Notice and therefore, at this time, is unable to determine the correct cure amount.

c) Third, at present, there is no stalking horse bidder and therefore, Oracle is unable to determine whether the ultimate purchaser/assignee is capable of performing under the terms of the contract which the Debtors seek to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

d) Finally, the Proposed APA (defined below) may include the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses which may be contemplated by the Debtors.

2. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II. FACTUAL BACKGROUND

3. The Debtors filed the above captioned case on June 27, 2023 ("Petition Date"). The Debtors continue to operate as debtors in possession.

4. On the Petition Date, the Debtors filed the Sale Motion which seeks Court authority to sell substantially all assets of the Debtors. No stalking horse bidder has been identified.

5. On August 24, 2023, the Debtors filed a *Notice of Filing of Form Asset Purchase Agreement in Connection with Proposed Sale of Substantially All of the Debtors' Assets* [D.E. No. 321] ("Notice").

6. Attached as Exhibit "1" to the Notice is the proposed asset purchase agreement ("Proposed APA").

7. The Proposed APA contemplates certain information sharing, including books and records, between the Debtors and the eventual purchaser, which will take place after the Closing Date and for a period of seven (7) years following the Closing Date. (*See*, APA §7.3(b)).

8. It is unclear which services will be provided during the post-closing period.

9. Therefore, Oracle reserves all rights in the event this provision purports to authorize the shared use of Oracle's licensed software, whether post-closing, or at any other time.

10. Oracle also reserves all rights regarding any subsequent asset purchase agreement which proposes to include transitional use, and which involves an as yet unknown buyer.

11. On August 8, 2023, an Order [D.E. No. 237] was entered approving certain bid and assumption and assignment procedures ("Bid Procedures Order'). The Bid Procedures Order sets forth the following deadlines: (1) September 8, 2023 at 5:00 p.m. for bids; (2) September 14, 2023 at 4:00 p.m. for sale objections; (3) September 19, 2023 at 10:30 a.m. for the auction; and (4) September 26, 2023 4:00 p.m. to file objections to adequate assurance.

12. This timeline requires that interested parties file sale objections prior to knowing the successful bidder's identity, and provides no opportunity for those parties to review any additional or amended sale or purchase related documents, including any final asset purchase agreement.

13. On August 21, 2023, the Debtors filed the Assumption Notice. Schedule "A" to the Assumption Notice identifies one Oracle agreement between Oracle and Lordstown Motor Corp. ("Oracle Agreement"), described as an "Oracle Ordering Document dated February 8, 2023". It includes a stated cure of $0.00

### III.  ARGUMENT

    A.    **The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.**

14. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

15. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

16. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

4

17. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

18. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreement at this time.

### B. The Debtors Have Not Adequately Identified The Oracle Agreement To Be Assumed and Assigned.

19. The Assumption Notice only references an ordering document and does not identify a governing agreement.

20. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support and master agreements for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

21. An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

22. Under California law,[1] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

23. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

5

### C. The Debtors May Not Have Provided The Correct Cure Amount.

24. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

25. The Debtors have identified a $0.00 cure amount for the Oracle Agreement. Oracle is in the process of reviewing its records in order to determine whether there may be sums owed under the Oracle Agreement.

26. Therefore, Oracle reserves its right to be heard regarding all cure amounts until it has completed its review.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

27. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

28. There is currently no stalking horse bidder and the auction, if any, will be held after objections to the Sale Motion are due[2].

29. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser and/or the proposed assignee: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

---

[2] Oracle is aware that pursuant to the Assumption Notice, counterparties have until September 26, 2023 in which to file an objection to adequate assurance. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

30. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreement.

31. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. The Oracle Agreement Does Not Authorize Simultaneous Use By The Debtors and the Eventual Purchaser.

32. The Proposed APA contemplates that certain services may be provided between the Debtors and the eventual purchaser for an extended period of time.

33. Precise information about the nature of these proposed services is not provided. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement.

34. It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the ultimate purchaser.

35. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

36. Oracle reserves all rights regarding any transitional use, including under any final APA or transition services agreement, pending Oracle's further review of the same.

## IV. CONCLUSION

37. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreement, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

| | |
|---|---|
| Dated: September 5, 2023<br>Wilmington, Delaware | **MARGOLIS EDELSTEIN**<br><br>By:  /s/ James E. Huggett  <br>James E. Huggett, Esq. (#3956)<br>300 Delaware Avenue, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-1112<br>E-mail: jhuggett@margolisedelstein.com<br><br>Amish R. Doshi, Esq.<br>**DOSHI LEGAL GROUP, P.C.**<br>1979 Marcus Avenue, Suite 210E<br>Lake Success, NY 11042<br>Tel: (516) 622-2335<br>E-Mail: amish@doshilegal.com<br><br>Shawn M. Christianson, Esq.<br>**BUCHALTER, A PROFESSIONAL CORPORATION**<br>425 Market Street, Suite 2900<br>San Francisco, California 94105-2491<br>Tel: (415) 227-0900<br><br>Peggy Bruggman, Esq.<br>Benjamin Wheeler, Esq.<br>**ORACLE AMERICA, INC.**<br>500 Oracle Parkway<br>Redwood City, California 94065<br><br>**Attorneys for Oracle America, Inc.** |