## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Lordstown Motors Corp., *et al.*, | Case No. 23-10831 (MFW) |
| Debtors.¹ | (Jointly Administered) |
| | **Re: D.I. 280** |

**OBJECTION AND RESERVATION OF RIGHTS OF FOXCONN EV PROPERTY DEVELOPMENT LLC AND FOXCONN EV SYSTEM LLC WITH RESPECT TO DEBTORS' NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

Foxconn EV Property Development LLC ("Foxconn Development") and Foxconn EV System LLC ("Foxconn System," together with Foxconn Development, the "Foxconn Parties") by and through their undersigned counsel, hereby file this objection and reservation of rights (this "Objection") with respect to the Debtors' *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 280] (the "Assumption Notice"),² and respectfully represent as follows:

### RELEVANT BACKGROUND

**A. The Assumption Notice**

1. On August 8, 2023, the Court entered an order setting procedures for the sale of certain of its assets, including the potential assumption and assignment of executory contracts and unexpired leases [D.I. 237] (the "Bidding Procedures Order").

---

¹ The debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101) (collectively, the "Debtors"). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

² The Debtors agreed to extend the Foxconn Parties' deadline to object to the Assumption Notice to September 8, 2023.

2. On August 21, 2023, pursuant to the Bidding Procedures Order, the Debtors filed the Assumption Notice, designating certain contracts that may be assumed and assigned in connection with a proposed sale and proposing cure amounts for such contracts.

3. The Assumption Notice lists the following putative executory contracts and/or unexpired leases (the "Foxconn Agreements") between the Debtors and the designated Foxconn Party and proposes the following cure amounts with respect to such contracts:

| NO. | Counterparty | Contract/Lease Description | Debtor | Cure Amount |
|---|---|---|---|---|
| 34 | Foxconn EV Property Development LLC | Lease Agreement dated May 11, 2022 for property located at 2300 Hallock Young Road, Lordstown, OH 44481 (the "Lease Agreement") | Lordstown EV Corporation | $0.00 |
| 35 | Foxconn EV System LLC | Manufacturing Supply Agreement dated May 11, 2022 (the "MSA") | Lordstown EV Corporation | $161,001.95 |
| 36 | Foxconn EV System LLC | Purchase Order 117863 dated June 16, 2023 (the "Purchase Order") | Lordstown EV Corporation | $0.00 |

*See* Assumption Notice, Schedule A, at 2.

4. Additionally, by the Assumption Notice, the Debtors purport to assert potential defenses to the payment of cure amounts due under the MSA and state:

> [t]he cure amount for the Manufacturing Supply Agreement dated May 11, 2022 by and between Foxconn EV System LLC and Lordstown EV Corporation does not account for any claims or subordination arguments the Debtors and their estates may have in connection with the ongoing disputes with Foxconn EV System LLC and certain of its affiliates . . . including any setoff, recoupment, or subordination rights.

*See id.*, at 2 n. 1.

B. **The Foxconn Agreements**

5. On or around September 30, 2021, Debtor Lordstown EV Corporation, Foxconn Asset Management LLC and Lordstown Motor Corp. entered into that certain Agreement in Principle (the "AIP"), which contemplated a partnership between certain affiliates of the Foxconn Parties and the Debtors to work jointly on commercialization of the "Endurance", an electric powered truck under development by the Debtors and potentially other electric vehicles. *See* AIP, Recitals, ¶ 1.

6. The AIP is one of several related agreements that together comprise the Foxconn Parties' larger relationship with the Debtors. Under the AIP, the parties also contemplated that the Debtors and certain Foxconn affiliates would, among other things, (i) enter into a purchase agreement for the purchase of the Debtors' manufacturing plant located in Lordstown, Ohio (the "Plant"); (ii) enter into the Lease Agreement to lease certain office space to the Debtors at such Plant, and (iii) enter into the MSA for services in connection with the manufacturing of the Endurance for the Debtors. *Id.* §§ 1, 4 and 5, respectively.

7. By the Assumption Notice, the Debtors suggest that each of the listed Foxconn Agreements can be cherry-picked from among the other related, integrated agreements that comprise the overall commercial relationship among the Foxconn Parties and their affiliates and the Debtors. For instance, while the Debtors list the Purchase Order as a separate agreement, the Purchase Order was issued under and subject to the MSA and forms a part thereof pursuant to the terms of the MSA.[3] The Lease Agreement affords the Debtors access to certain office space at the Plant to monitor production activities at the Plant while the Debtors were producing the Endurance

---

[3] The Foxconn Parties reserve all rights and arguments with respect to any proposed assumption and assignment of other outstanding purchase orders under the MSA that are not listed in the Assumption Notice but similarly form part of the MSA taken as a whole agreement.

and associated activities. Notably, the Debtors and Foxconn Ventures PTE, Ltd. are party to that certain Investment Agreement, dated November 7, 2022 (the "Investment Agreement"), which agreement is an essential element of the parties' overall commercial relationship, notwithstanding the pending dispute concerning the parties' rights and obligations under such agreement. In effect, the terms and conditions under the MSA and the Lease Agreement are dependent on the maintenance of the overall commercial relationship among the Foxconn Parties and their affiliates and the Debtors as a whole and cannot be severed from therefrom through the proposed assumption and assignment of the MSA and/or the Lease Agreement on a standalone basis.

C. **Cure Amounts**

8. Even if the Foxconn Agreements are capable of assumption and assignment on a standalone basis, and they are not, the Assumption Notice misstates the required cure amounts associated with each of the Foxconn Agreements. Set forth in the table below is the required cure amount according to the Foxconn Parties' books and records as of September 6, 2023.

| Foxconn Agreement | Proposed Cure Amount | Correct Cure Amount |
|---|---|---|
| MSA | $161,001.95 | See below. |
| MSA/Purchase Order | $0.00 | $286,121.35[4] |
| Lease Agreement | $0.00 | TBD[5] |

---

[4] The Foxconn Parties will provide accounts receivable records for such cure amounts to the Debtors upon request.

[5] The Debtors are currently storing substantial amounts of equipment and property at the Plant under the MSA and outside the leased premises covered by the Lease Agreement. The Foxconn Parties reserve their rights to assert additional cure amounts associated with the storage or removal of such equipment and property of Lordstown located at the Plant.

**OBJECTION**

**I.   The Debtors Must Cure Their Defaults Under the Potential Assumed Agreements.**

9. Section 365(a) of the Bankruptcy Code authorizes the Debtors to assume executory contracts or unexpired leases, subject to court approval. Before an executory contract or unexpired lease can be assumed, all monetary defaults must be cured, or adequate assurance must be provided that they will be cured. 11 U.S.C. § 365(b)(1)(A) (to assume any executory contract or unexpired lease, the Debtors must "cure[], or provide [] adequate assurance that the [Debtors] will promptly cure" any default.); *Stanley Jacobs Prods., Ltd. v. 9472541 Canada Inc.(In re Thane Inter'l, Inc.)*, 586 B.R. 540, 549 (Bankr. D. Del. 2018) ("Cure is a critical component of assumption.").

10. Further, the Debtors' obligations to pay such cure amounts at the time of assumption and assignment are not excused by claims that the Debtors have asserted against Foxconn System. *See* Assumption Notice, Schedule A, at 2. To the contrary, to assume any of the Foxconn Agreements, the Debtors must promptly cure extant defaults as required by section 365(b)(1) and such requirements are not in any way mitigated or reduced by claims asserted in the pending Adversary Proceeding. *See In re Trinity River Resources, LP*, 646 B.R. 438, 440-41 (Bankr. W.D. Tex. 2018) (holding that the debtor could not escrow funds that were owed to cure its defaults under joint operating agreements, while the debtor resolved its lawsuit against the non-debtor counterparty).

11. Accordingly, the MSA and Purchase Order may not be assumed unless such cure amounts in Paragraph 8 are paid in their entirety and without reduction or set off.[6]

## II. The Foxconn Agreements are Part of an Integrated Agreement and Assumption Should Not Be Permitted on a Standalone Basis.

12. Generally, a contract in bankruptcy must be assumed or rejected in its entirety; a debtor cannot pick and choose one part of an agreement while rejecting others. *In re Fleming Cos.Inc.*, 499 F.3d 300, 308 (3d Cir. 2007); *In re Integrated Health Services, Inc.*, No. 00–389 (MFW), 2000 WL 33712484, at *3 (Bankr. D. Del. Jul. 7, 2000) (citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996)).

13. Where multiple agreements are intended to comprise one contract or transaction, a party may not sever them for purposes of assumption or rejection. *In re LG Philips Displays USA, Inc.*, No. 06–10245(BLS), 2006 WL 1748671, at *4 (Bankr. D. Del. June 21, 2006) ("[A]ll of the contracts that comprise an integrated agreement must be either assumed or rejected, since they all make up one contract.") (citing *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

14. Numerous courts have held that multiple agreements are integrated when they relate to the same commercial transaction. *See In re Green Goblin Inc.*, 470 B.R. 739, 753 (Bankr. E.D. Pa. 2012) (instructing that "all writings which are part of the same transaction are [generally] interpreted together"); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 128 (Bankr. D. Del. 2008) (determining that "it was the intent of the parties to have an integrated agreement" and examining intention of parties as evidenced by "subject matter of the contract"); *cf. In re Trinity Coal Corp.*,

---

[6] The MSA provides for the arbitration of disputes between the parties. *See* MSA § 23(b). The Foxconn Parties reserve their right to compel arbitration of any disputes arising under the MSA (or any other agreements), including with respect to the determination of cure and assumption of the MSA, and do not waive such rights in this Objection. *See In re Mintze*, 434 F.3d 222, 233 (3d Cir. 2006) (holding that bankruptcy courts lack authority and discretion to deny enforcement of arbitration provisions in contracts absent Congressional intent to the contrary); *see also In re Kaiser Group Intern., Inc.*, 307 B.R. 449, 455-6 (D. Del. 2004) (holding that a creditor did not waive right to compel arbitration of claims asserted by debtors in adversary proceeding, by, among other things, filing a proof of claim).

514 B.R. 526, 531 (Bankr. E.D. Ky. 2014) (agreements integrated where "all relate[d] to the same subject matter, *i.e.*, the operations of the parties' respective mining operations"); *In re Oregon Arena Corp.*, No. 304-31605-ELP11, 2006 WL 488713, at *1, *3 (D. Or. Feb. 28, 2006) (multiple agreements "encompass[ed] the same subject matter" where all "address[ed] the development and operation of [an arena] and related properties"); *In re Indep. Am. Real Estate, Inc.*, 146 B.R. 546, 551 (Bankr. N.D. Tex. 1992) (multiple agreements indivisible where all "refer[red] to the same subject matter, the development of shopping centers").

15. Here, as contemplated in the AIP, each of the Foxconn Agreements are part of an integrated transaction and relationship among the parties relating to the development of the Endurance. Indeed, while not executed in tandem with the Foxconn Agreements, the Debtors have gone through great pains in the Complaint to set forth the integrated nature of these agreements. *See* Complaint ¶¶ 22-46. The Foxconn Agreements are not capable of assumption on a standalone basis together or separately. Accordingly, the Court should not permit the assumption of the Foxconn Agreements.[7]

### III. The Assumption and Assignment of the MSA Is Not Permitted Because It Would Result in the Assignment of Non-Exclusive Intellectual Property Licenses.

16. The MSA provides for the potential future grant of non-exclusive intellectual property rights and licenses of the Foxconn Parties. *See* MSA § 15 (e)-(f). Such non-exclusive intellectual property rights and licenses are not assignable without the consent of the Foxconn Parties. *See In re Rupari Holding Corp.*, 573 B.R. 111, 113 (Bankr. D. Del. 2017) (holding that trademark licenses may not be assumed and assigned absent the trademark holders rights because

---

[7] To the extent that the Debtors argue that the Foxconn Agreements are capable of assumption on a standalone basis and outside the overall commercial relationship between the Foxconn Parties and their affiliates and the Debtors, the Debtors should be required to seek such declaratory through an adversary proceeding rather than a contested sale hearing.

7

federal law bars the assignment of trademark licenses); *In re Valley Media, Inc.*, 279 B.R. 105, 136 (Bankr. D. Del. 2002) ("Since non-exclusive licenses may not be assigned by the licensee under applicable copyright law, they may not be assumed by the debtor in possession.") (citations omitted); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 46 (Bankr. D. Del. 1999) ("Under well-established law the holder of a nonexclusive patent license may not assign its license unless the right to assign is expressly provided for in the license agreement.") (internal citations and quotations omitted). The Foxconn Parties object and do not consent to the potential assumption and assignment of such intellectual property rights and licenses. Accordingly, the Debtors may not assume and assign the MSA.[8]

## RESERVATION OF RIGHTS

17. The Foxconn Parties reserve their right to further amend, modify or supplement the Objection, including, without limitation, adding any amounts with respect to obligations that accrue, arise, or are related to the pre-assumption period that subsequently become known to the Foxconn Parties or that become defaulted with the passage of time. The Foxconn Parties further reserve their rights to raise any additional objections to the assumption and assignment of the Foxconn Agreements, including the ability of any proposed assignee to cure (both monetary and non-monetary defaults) or perform under the applicable agreement, and to require a prospective assignee to provide the necessary adequate assurance information. The Foxconn Parties expressly reserve all rights and remedies at law or in equity against the Debtors and nothing herein is intended to or should be construed to limit the Foxconn Parties' rights, remedies or interest with the respect to the Foxconn Agreements.

---

[8] Further, the Debtors may not attempt to assume and assign the MSA by carving out section 15 of the MSA. *See In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d. Cir. 2003) (stating that a debtor's election to assume its obligations under an executory contract is "an all-or-nothing proposition–either the whole contract is assumed or the entire contract is rejected.").

**CONCLUSION**

**WHEREFORE**, the Foxconn Parties request that this Court (i) deny the Debtors' request to assume the Proposed Assumed Agreements; and (ii) grant the Foxconn Parties such other and further relief as appropriate.

Dated: September 8, 2023
       Wilmington, Delaware

| **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** | **ALLEN & OVERY LLP** |
|---|---|
| /s/ *Matthew O. Talmo* | Daniel J. Guyder (*pro hac vice* forthcoming) |
| Robert J. Dehney (No. 3578) | Bradley Pensyl (*pro hac vice* forthcoming) |
| Matthew B. Harvey (No. 5186) | Christopher Newcomb (*pro hac vice* forthcoming) |
| Matthew O. Talmo (No. 6333) | Justin Ormand (*pro hac vice* forthcoming) |
| | Joseph Badtke-Berkow (*pro hac vice* forthcoming) |
| | Jacob R. Herz (*pro hac vice* forthcoming) |
| 1201 North Market Street, 16th Floor | |
| P.O. Box 1347 | 1221 Avenue of the Americas |
| Wilmington, DE 19899-1347 | New York, New York 10020 |
| Telephone: (302) 658-9200 | Telephone: (212) 610-6300 |
| Facsimile: (302) 658-3989 | Facsimile: (212) 610 6399 |
| rdehney@morrisnichols.com | daniel.guyder@allenovery.com |
| mharvey@morrisnichols.com | bradley.pensyl@allenovery.com |
| mtalmo@morrisnichols.com | chris.newcomb@allenovery.com |
| | justin.ormand@allenovery.com |
| | joseph.badtke-berkow@allenovery.com |
| | jacob.herz@allenovery.com |
| | |
| | **-and-** |
| | |
| | Noah Brumfield (*pro hac vice* forthcoming) |
| | Patrick Pearsall (*pro hac vice* forthcoming) |
| | Michael Modesto Gale (*pro hac vice* forthcoming) |
| | |
| | 1101 New York Avenue, NW |
| | Washington, D.C. 20005 |
| | Telephone: (202) 683-3800 |
| | Facsimile: (212) 610-6399 |
| | noah.brumfield@allenovery.com |
| | patrick.pearsall@allenovery.com |
| | michael.modestogale@allenovery.com |

*Co-Counsel to Foxconn Parties*