**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LORDSTOWN MOTORS CORP., *et al.,*[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 5, 2023 at 10:30 a.m. (ET)**<br>**Responses Due: September 28, 2023 at 4:00 p.m. (ET)** |

**MOTION OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS FOR
ENTRY OF AN ORDER PERMITTING SECURITIES TRADING UPON
ESTABLISHMENT OF A SCREENING WALL**

The Official Committee of Equity Security Holders (the "Equity Committee" or the "Committee")[2], appointed in the Chapter 11 cases of Lordstown Motors Corp. and its affiliates (the "Debtors" or the "Company"), by and through its undersigned proposed counsel, hereby files this motion ("Motion") seeking entry of an Order, substantially in the form attached hereto as Exhibit A, permitting Committee members, including those named herein and any future members, if any (the "Committee Members") and their Affiliates,[3] to trade any shares of Stock (defined below) subject to the conditions set forth herein. In support hereof, the Equity Committee submits as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] The Committee consists of Crestline Management, L.P. ("Crestline"), Pertento Partners LLP ("Pertento") and Esopus Creek Value Series Fund LP – Series "A" ("Esopus"). Only Crestline and Pertento are seeking the flexibility of the relief requested in the Motion. Committee Member Esopus does not intend to trade in the securities issued by the Debtors while serving as a Committee Member.

[3] As used herein, the term "Affiliate" means with respect to any entity, any other entity directly or indirectly controlling, controlled by, or under common control with such other entity. For the purpose of this definition, the term "control" (including, the term "controlling," "controlled by," and "under common control with"), as used with respect to any entity, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether though the ownership of voting securities, by contract or otherwise.

## RELEVANT FACTUAL BACKGROUND

1.      On June 27, 2023 (the "Petition Date"), the Debtors filed a voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing these Chapter 11 cases.

2.      On the Petition Date, the Debtors filed the *Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Dkt. No. 15] (the "Kroll Declaration"). As described in the Kroll Declaration, prior to the Petition Date, the Debtor Lordstown Motors Corp. or LMC (formerly known as DiamondPeak Holdings Corp.) issued shares of Class A Common Stock that trades on the NASDAQ Global Stock Market under the symbol "RIDE" ("Stock"). Kroll Decl. ¶ 47.

3.      On July 11, 2023, the United States Trustee appointed the Official Creditors Committee pursuant to Bankruptcy Code Section 1102.

4.      On September 7, 2023, the United States Trustee appointed the Equity Committee. [Docket No. 375].

## JURISDICTION

5.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is Bankruptcy Code Section 105(a).

## RELIEF REQUESTED

6.      By this Motion, the Equity Committee seeks entry of an Order, substantially in the form attached hereto as **Exhibit A**, determining that Committee Members, acting in any capacity, will neither violate their duties as Committee Members nor subject their claims or

2

interests to possible disallowance, subordination, or other adverse treatment by trading in, buying, selling or otherwise engaging in transactions involving the Stock during the pendency of these Chapter 11 cases, so long as any Committee Member that engages in any such transaction establishes and effectively implements and adheres to the information blocking policies and procedures set forth in the immediately following paragraph (collectively, the "Screening Wall").

7. The Committee proposes that the Screening Wall to be employed by any Committee Member and/or its Affiliates (each an "Screening Wall Entity"), if it chooses to trade in the Stock, shall include the following procedures:

(i) The Screening Wall Entity shall cause all the Screening Wall Entity's designated personnel ("Committee Personnel") to execute a letter, substantially in the form attached hereto as **Exhibit B**, acknowledging that the Committee Personnel (a) may receive nonpublic information, (b) are aware of, and agree to comply with, the Screening Wall procedures that are in effect with respect to the Stock, and agree to comply with any Court order regarding the Screening Wall procedures, and (c) will inform Equity Committee counsel and the United States Trustee in writing if such procedures are materially breached, and each Screening Wall Entity shall provide a copy of any such letter executed by its Committee Personnel to the United States Trustee.

(ii) Prior to engaging in any trades, a Committee Member seeking requested protection must be able to verify, by means of a sworn or verified declaration filed with the Court and served on the United States Trustee, a document containing the following: (a) the declarant's position with the Committee Member; (b) a statement that the declarant has personal knowledge of the Committee Member's business; (c) a description of the nature of the Committee Member's business; (d) a description of its organizational structure and the number of employees in each division; and (e) a verification that the Committee Member has established and will comply with the Screening Wall procedures and any Court order regarding the Screening Wall procedures.

(iii) Committee Personnel will not share non-public Committee information with any other employees of such Screening Wall Entity other than in compliance with the Screening Wall procedures, except

a. senior management of such Screening Wall Entity who, due to their duties and responsibilities, have a legitimate need to know such information, provided that such individuals (1) otherwise comply with the Screening Wall, and (2) use such information only in connection with

their senior managerial responsibilities, and

b. regulators, auditors, and designated legal personnel for the purpose of rendering professional advice to Committee Personnel; provided, however, that such personnel will not share such non-public information generated from Committee activities with other employees, and will maintain such non-public information in files inaccessible to other employees.

(iv) Committee Personnel will keep non-public information generated from Committee activities in files (including electronic files) inaccessible to other employees; provided, however, that a Screening Wall Entity's information-technology employees are permitted to have access to such information in the ordinary course.

(v) The Screening Wall Entity will (a) provide to the United States Trustee an initial certification of the amount of Stock held by the applicable Committee Member, and (b) so long as the applicable Committee Member is a member of the Official Creditors Committee, disclose to the United States Trustee in writing any (x) decrease in dollar amount of the Stock held by the applicable Committee Member that results in such holdings being less than 1/3rds of the aggregate holdings of the Committee Member as of the date of such Committee Member's appointment to the Official Creditors Committee, or (y) increase in dollar amount of the Stock held by the applicable Committee Member that results in such holdings being more than 2/3rds greater than the aggregate holdings of the Committee Member as of the date of such Committee Member's appointment to the Official Creditors Committee.

(vi) Committee Personnel will receive no information regarding the Screening Wall Entity's trades in the Stock in advance of such trades, except that Committee Personnel may receive the usual and customary internal reports and/or public reports showing information included in the ordinary course of the Committee Member's business, which may include the Screening Wall Entity's purchases and sales and the amount and class of securities owned by such Screening Wall Entity, including the Stock.

(vii) The Screening Wall Entity's compliance department personnel or internal counsel shall review from time to time the Screening Wall Entity's trades to determine if there is a reasonable basis to believe that such trades were not made in compliance with the information procedures set forth herein.

8. The proposed form of order accompanying this Motion makes clear that an order approving this Motion does not preclude the Court from taking any action it may deem appropriate. In addition, the proposed form of order accompanying this Motion includes an appropriate

4

16315872/1

reservation of the rights of the United States Trustee and other parties in interest.

9.      Each of the Committee Members has approved the Screening Wall procedures set forth herein and agrees to comply with the terms and procedures consistent with those set forth in this Motion.

**BASIS FOR RELIEF**

10.     Although members of the Committee owe certain fiduciary duties, each Committee Member also has fiduciary duties to customers and/or its own equity holders to maximize returns through trading securities and other financial interests.  Thus, if a Committee Member is barred from trading the Stock during the pendency of these bankruptcy cases because of its duties to other creditors, it may risk the loss of a beneficial investment opportunity for itself and/or its clients and/or equity holders and, moreover, may breach its fiduciary duty to these parties.

11.     Alternatively, if a Committee Member is compelled to resign from the Equity Committee because of its inability to trade for the benefit of itself and its clients, its interests may be compromised by virtue of taking a less active role in the reorganization process. A Committee Member should not be forced to choose between (a) serving on the Committee and (b) risking the loss of beneficial investment opportunities or foregoing service on the Committee and possibly compromising its responsibilities by taking a less active role in the reorganization process.

12.     The relief requested in this Motion is consistent with orders previously granted by this Court.  See, e.g., In re A123 Systems, Inc., No. 12-12859 (KJC) (Bankr. D. Del. Nov. 8, 2012); In re Advanta Corp., No. 09-13931 (KJC) (Bankr. D. Del. Mar. 3, 2010); In re Premier International Holdings Inc., No. 09-12019 (CSS) (Bankr. D. Del. July 29, 2009); In re Smurfit-Stone Container Corp., No 09-10235 (BLS) (Bankr. D. Del. Mar. 23, 2009); In re SemCrude, L.P.,

No. 08-11525 (BLS) (Bankr. D. Del. Aug. 29, 2008); In re Radnor Holdings Corp., No. 06-10894

(PJW) (Bankr. D. Del. Oct. 20, 2006), In re Foamex International, Inc., No. 05-12685 (PJW)

(Bankr. D. Del. Nov. 22, 2005).   The proposed relief is also supported by substantially similar

orders entered in other jurisdictions.  See, e.g., In re Residential Capital, LLC, No. 12-12020 (MG)

(Bankr. S.D.N.Y. July  30, 2012); In re MF Global Holdings Ltd., No. 11-15059 (MG) (Bankr.

S.D.N.Y. Nov. 17, 2011).

13.    Each of the trading orders entered in the foregoing cases provided that a committee

member does not violate its fiduciary duties as a committee member by trading in a debtor's

securities, so long as it acts in accordance with certain information blocking procedures approved

by the bankruptcy court.  The orders further provide that the bankruptcy court may take appropriate

action if there is any actual breach by a committee member of its fiduciary duty as a committee

member.

14.    In the seminal decision on this issue, In re Federated Dep't Stores, Inc., Case No.

1-90-00130, 1991 Bankr. LEXIS 288 (Bankr. S.D. Ohio Mar. 7, 1991), the bankruptcy court

agreeing with the position of the Securities and Exchange Commission on this issue – stated that

Fidelity Management & Research Company:

> Will not be violating its fiduciary duties as a committee member and accordingly,
> will not be subjecting its claims to possible disallowance, subordination, or other
> adverse treatment, by trading in securities of the Debtors . . . during the pendency
> of these [c]ases, provided that Fidelity employs an appropriate information
> blocking device or "[Screening] Wall" which is reasonably designed to prevent
> Fidelity trading personnel from receiving any nonpublic committee information
> through Fidelity committee personnel and to prevent Fidelity committee
> personnel from receiving information regarding Fidelity's trading in securities of
> the Debtors
> . . . in advance of such trades.

In re Federated Dep't Stores, Inc., 1991 Bankr. LEXIS 288 at *2.

15.    The Federated court approved Fidelity's screening wall procedures, which, as here,

included the following: (i) a written acknowledgement by personnel performing committee work that they could receive nonpublic information and were aware of the screening wall procedures in effect; (ii) a prohibition on the sharing of non-public committee information with certain other employees; (iii) separate file space for committee work that is inaccessible to certain other employees; (iv) restrictions on committee personnel's access to trading information; and (v) a compliance review process. The Screening Wall procedures outlined here parallel those protections established in the Federated case and followed in subsequent cases.

## NO PRIOR REQUEST

16.     The Equity Committee has not made any prior request for the relief requested herein to this or any other court.

## NOTICE

17.     Notice of this Motion will be provided to (i) the United States Trustee; (ii) counsel to the Debtors; (iii) Counsel to the Official Committee of Unsecured Creditors; and (iv) all parties that have filed a notice of appearance in these Chapter 11 cases pursuant to Federal Rule of Bankruptcy Procedure 2002. In light of the nature of the relief requested herein, the Equity Committee respectfully submits that no further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Equity Committee respectfully requests that the Court enter an Order, substantially in the for attached hereto as **Exhibit A**, and grant to the Committee such other relief as is just and proper.


*[Remainder of Page Intentionally Left Blank]*

7

Dated: September 19, 2023

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
E-mail: rstark@brownrudnick.com
E-mail: bsilverberg@brownrudnick.com

and

Matthew A. Sawyer (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
E-mail: msawyer@brownrudnick.com

*Proposed Counsel to the Official Committee of*
*Equity Security Holders*

16315872/1