# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831-MFW |
| | (Jointly Administered) |
| Debtors. | Hearing Date:  October 5, 2023 at 10:30 a.m. (ET)<br>Objection Deadline:  September 28, 2023 at 4:00 p.m. (ET) |

### EDWARD HIGHTOWER AND ADAM KROLL'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO PERMIT PAYMENT, REIMBURSEMENT AND/OR ADVANCEMENT OF DEFENSE COSTS AND FEES, AND RELATED EXPENSES, UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

Edward Hightower and Adam Kroll, respectively the Chief Executive Officer and Chief Financial Officer at Lordstown Motors Corporation ("**LMC**," and together with the other debtors and debtors-in-possession in the above-captioned cases, the "**Debtors**"), by and through their undersigned counsel, hereby move pursuant to Section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware for the entry of an order substantially in the form attached to the Motion as **Exhibit A** (the "**Proposed Order**") modifying the automatic stay, to the extent such stay applies, to permit the Insurers (as defined below) to advance and pay proceeds, including covered defense costs, of Debtors' directors and officers liability insurance policies to or on behalf of Messrs. Hightower and Kroll, and to enter into settlements (subject to the district

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

court's approval) (together, the "**Covered Costs**") on behalf Messrs. Hightower and Kroll in the Securities Litigation (as defined below).

In support of this Motion, Messrs. Hightower and Kroll, by and through their undersigned counsel, respectfully state as follows:

### PRELIMINARY STATEMENT[2]

1. Edward Hightower and Adam Kroll are insureds under the D&O Policies held by LMC. The Debtors and Messrs. Hightower and Kroll have notified the Insurers (as defined below) of claims relating to a putative securities class action filed after the Petition Date, on July 26, 2023, in the United States District Court for the Northern District of Ohio, styled *Bandol Lim v. Edward Hightower et al.*, No.: 4:23-cv-01454-BYP (N.D. Ohio), that is premised on certain alleged violations of the federal securities laws (the "**Securities Litigation**"). Messrs. Hightower and Kroll are presently the only named defendants in the Securities Litigation. Mr. Hightower is the Chief Executive Officer and President of LMC, and also is a member of the board of LMC. Mr. Kroll is Executive Vice President and Chief Financial Officer of LMC. The Securities Litigation may result in significant legal fees and other expenses for Messrs. Hightower and Kroll.

2. In light of the pendency of the Chapter 11 Cases, Messrs. Hightower and Kroll move for the entry of an Order from this Court modifying the automatic stay, to the extent that it is applicable, to permit the payment, reimbursement, and/or advancement of Covered Costs in accordance with the Policies, on behalf of Messrs. Hightower and Kroll with respect to the Securities Litigation.

---

[2] Capitalized terms used, but not otherwise defined, in this Preliminary Statement shall have the meaning ascribed to them in the Motion.

3. Messrs. Hightower and Kroll are entitled to reimbursement by the Insurers of their Covered Costs in connection with the Securities Litigation under "Side A" coverage of the applicable D&O Policies.

4. Any reimbursement made by the Insurers to Messrs. Hightower and Kroll in connection with the Securities Litigation pursuant to the D&O Policies would not violate the automatic stay, to the extent such stay applies. Courts consistently hold that even where policies that provide "Side A" coverage – as all 15 Policies in LMC's D&O tower do – are determined to be property of a debtor's bankruptcy estate, the proceeds paid in coverage of individual officers and directors under those "Side A" provisions are <u>not</u> property of the debtor's bankruptcy estate. Accordingly, payment, advancement, or reimbursement of Side A insurance proceeds for the benefit of Messrs. Hightower and Kroll in connection with the Securities Litigation, does not and cannot violate the automatic stay, to the extent such stay applies. Indeed, the Debtors would not be prejudiced by the relief requested by the Motion because, among other reasons, the D&O Policies provide coverage for Messrs. Hightower and Kroll (not the Debtors), there is ample coverage under the D&O Policies ($75 million), and a vigorous defense of Messrs. Hightower and Kroll in the Securities Litigation only benefits the Debtors with respect to any substantially similar claims a party may seek to assert against the Debtors themselves.

5. Applicable case law also recognizes that it would be inequitable to construe the automatic stay to frustrate the ability of Messrs. Hightower and Kroll to pay legal expenses intended to be covered by a directors and officers liability insurance policy. Here, absent an order confirming that the stay does not apply, or relief from the automatic stay to the extent it applies, Messrs. Hightower and Kroll are at risk of significant and potentially irreparable harm. That is because they rely on the proceeds of the Policies to pay Covered Costs in connection with the

Securities Litigation in order to, among other things, mount a vigorous defense to the claims asserted.

6. Accordingly, for the reasons summarized above, and set forth in greater detail below, the relief requested in the Motion is appropriate and should be granted.

## JURISDICTION AND VENUE

7. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from The United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

8. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

9. The statutory and legal predicates for the relief sought by this Motion are Sections 105(a), 362(d)(1), and 541 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1.

10. Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Debtors and the Commencement of the Chapter 11 Case

11. LMC is a Delaware corporation whose mission is to accelerate electric vehicle adoption and catalyze the transition of commercial fleets to all-electric vehicles.

12. On June 27, 2023 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the

Bankruptcy Code. On July 11, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Committee**") for these Chapter 11 Cases. (D.I. 96.) On September 7, 2023, the U.S. Trustee appointed the official committee of equity security holders for these Chapter 11 Cases. (D.I. 375.) No trustee or examiner has been appointed in these Chapter 11 Cases.

13. Additional factual background relating to the Debtors' business and the commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions*. (D.I. 15.)

  **B.**  **The Applicable D&O Policies**

14. Prior to the Petition Date, Berkley Insurance Company, as primary insurer ("**Insurer**"), and Sompo International, as Side A Difference-in-Conditions insurer ("**Side A DIC Insurer**") as well as the insurers listed below (together with the Insurer and Side A DIC Insurer, "**Insurers**") issued certain directors and officers liability insurance and related corporate liability policies (collectively, and together with any and all declarations, amendments, supplements and endorsements, the "**D&O Policies**" or the "**Policies**") to the Debtors, providing insurance coverage to the Debtors and/or certain of their directors, officers, and employees. The D&O Policies and their respective coverage limits are as follows:

| Insurer | Policy Number | Policy Type | Policy Limit |
|---|---|---|---|
| Berkley Insurance Company (the "**Primary Policy**") | BPRO8085893 | Primary D&O | $5,000,000 |
| XL Specialty Insurance Company | ELU186243-22 | Excess D&O | $5,000,000 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 01-615-95-98 | Excess D&O | $5,000,000 |
| Allied World Specialty Insurance Company | 0312-5573 | Excess D&O | $5,000,000 |

| Insurer | Policy Number | Policy Type | Policy Limit |
|---|---|---|---|
| Continental Casualty Company | 652471831 | Excess D&O | $5,000,000 |
| SiriusPoint Bermuda Insurance Company | 101-XDO-1057-102 | Excess D&O | $5,000,000 |
| Associated Industries Insurance Company Inc. | ANV146198A | Excess D&O | $5,000,000 |
| Fair American Insurance and Reinsurance Company | MLX-1001760-00 | Excess D&O | $5,000,000 |
| Endurance Assurance Corporation ("**Primary Side A DIC Policy**") | ADL30026702600 | Side A DIC | $5,000,000 |
| XL Specialty Insurance Company | ELU186245-22 | Excess Side A DIC | $5,000,000 |
| RSUI Indemnity Company | NHS702385 | Excess Side A DIC | $5,000,000 |
| National Union Fire Insurance Company of Pittsburgh Pa. | 01-615-96-00 | Excess Side A DIC | $5,000,000 |
| Lloyd's Underwriter Syndicate No 0033 | FSGDO2201691 | Excess Side A DIC | $5,000,000 |
| Samsung Fire & Marine Insurance Co., Ltd. | SGC 0857-01 | Excess Side A DIC | $5,000,000 |
| Westfield Specialty Insurance Company | XSA-00017G6-00 | Excess Side A DIC | $5,000,000 |

15. Each of these Policies has an effective policy period of October 23, 2022 to April 23, 2024.[3] Further, each of the Policies is a "claims made" policy, meaning that they provide coverage for claims first asserted during the applicable policy period.

16. A copy of the Primary Policy is attached hereto as **Exhibit B** and a copy of the Primary Side A DIC Policy is attached hereto as **Exhibit C**. The Primary Policy provides coverage

---

[3] Prior to the Petition Date, the Debtors extended the terms of the D&O Policies – which previously ended October 23, 2023 – to April 23, 2024, and also purchased a six year run-off coverage of additional coverage upon emergence from bankruptcy.

6

for Securities Claims (as defined below).[4]  The Primary Policy defines "Insured Person" to mean "any past, present, or future employee of the Company," with "Company" defined to mean LMC and its subsidiaries.  (Ex. B, Primary Policy, §§ II(C) & II(Q)(2).)  Both the Primary Policy and the Primary Side A DIC Policy provide first dollar Side A D&O coverage for directors and officers, whose costs are not indemnified or advanced by LMC.  The Primary Side A DIC Policy is excess of the Primary Policy and only provides coverage if there is no indemnification by the company and the Primary Policy does not provide coverage.

17.    The Primary Policy, as amended by endorsement, provides for combination coverage through six separate Insuring Agreements.  The first of those, Insuring Agreement A ("**Side A**" coverage), provides "Directors and Officers Liability Coverage" to Insured Persons. Specifically, Side A requires the Insurer to "pay the Loss of any Insured Person arising from a[] Claim made against such Insured Person, individually or otherwise, for any Wrongful Act of Insured Person," except when and to the extent such Insured Person is indemnified by LMC. (Ex. B, Primary Policy, § 1 (as amended by Endorsement #6).)[5]

---

[4] Although the Primary Policy provides for a retention, it expressly states that "[n]o Retention amount shall apply to Loss in the event the Company is permitted or required to indemnify the Insured Persons but the Company is financially or legally unable to pay such Loss by reason of," among other things, "the Company becoming a debtor in possession."  (Ex. B, Primary Policy, §§ II(N) & IV(B)(4).)  Accordingly, no retention applies to the Securities Litigation claims and the Insured Persons should have their Defense Costs covered immediately.

[5] The remaining Insuring Agreements, as amended by endorsement, are as follows: (B) Insuring Agreement B provides "Corporate Indemnification Coverage" to LMC for claims made against any Insured Person for any Wrongful Act, to the extent that LMC has indemnified the Insured Person for such Loss; (C) Insuring Agreement C provides "Corporate Entity Coverage" to LMC for Losses arising from securities claims made against LMC as well as those incurred by LMC in responding to shareholder derivative demands; (D) Insuring Agreement D provides "Outside Entity Directors and Officers Liability Coverage" to Insured Persons in their Outside Entity Position for any Wrongful Act to the extent they are indemnified by LMC for such Loss, and only in an amount in excess of any indemnification for such Loss by the Outside Entity; (E) Insuring Agreement E provides "Company Crisis Coverage" to pay the Crisis Loss of LMC up to $50,000; and (F) Insuring Agreement F provides "Costs of Investigation for Shareholder Derivative Demands and Books & Records Costs Coverage" to LMC for costs arising from shareholder derivative demand investigations or responding to books and records demands.  (Ex. B, Primary Policy, § 1 (as amended by Endorsement #6).)

18. The Primary Policy defines "Claim" to include "any Securities Claim," which is in turn defined to mean a claim brought by any security holder of LMC "alleging a violation of any federal, state, local or foreign regulation, rule, statute or common law regulating securities." (Ex. B, Primary Policy, §§ II(B)(7) & II(GG).) The policy further defines "Loss" to include damages, judgments, and settlements, as well as "Defense Costs." (*Id*. at § II(U)(I).) Finally, the policy, as amended by endorsement, defines a "Wrongful Act" to include "any actual or alleged breach of duty, neglect, error, act, omission, misstatement, misleading statement, or Wrongful Employment Act by any Insured Person in their capacity as such," and "[a]ny act, error, omission, misstatement, misleading statement, neglect, or breach of duty of an Insured Person while acting in their capacity as a 'Control Person' as defined under Securities Act of 1933 Section 15 and Securities [Exchange] Act of 1934 Section 20." (*Id.* at § II(LL) (as amended by Endorsement #6).)

19. The Insurers are obligated to advance any amounts on behalf of an Insured Person "[i]f the Company fails or refuses in writing to advance, pay or indemnify Loss of an Insured Person within the applicable Retention for any reason (including but not limited to [among other things, "becoming a debtor in possession"])." (Ex. B, Primary Policy, §§ II(N) & IV(B)(5).) LMC is deemed to have "failed" if it does not provide advancement or indemnification within 60 days of a written request from the Insured Person. (*Id*. at § IV(B)(6).) For the reasons discussed herein, the automatic stay, to the extent applicable, does not apply to the proceeds of the D&O Policies because such proceeds are not the property of the Debtors' estates. *See In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007).

20. While certain Insuring Agreements under the Primary Policy provide coverage for claims against LMC, that coverage is expressly subordinate to the Side A coverage, which is

afforded directly to the Insured Persons and is unavailable to LMC.[6] Specifically, Section V(E) of the Primary Policy includes a customary order-of-payments provision requiring the Insurer to pay covered Losses under Side A before it pays any Loss of LMC under any other insuring clause in the policy:

> In the event of Loss arising from any Claim and/or any Preliminary Inquiry for which payment is due under the provisions of this policy, then the Insurer shall:
>
> (1) ***first, pay such Loss for which coverage is provided under Coverages A. and D.***; and
>
> (2) with respect to whatever remaining amount of the Limit of Liability stated in Item 3. of the Declarations is available after payment of such Loss, at the written request of the Chief Executive Officer of the Parent Organization, either pay or withhold payment of such other Loss for which coverage is provided under this policy.

(Ex. B, Primary Policy, § V(E) (emphasis added).) The Debtors' bankruptcy does not impact this provision. In fact, the Primary Policy explicitly provides that "[b]ankruptcy or insolvency of any Insured shall not relieve the Insurer of its obligations under this policy." (*Id.* at § VII(F).)

21. Finally, the Primary Policy requires that in the context of an LMC bankruptcy, the Debtors must cooperate with the Insured Persons, to the extent the stay is deemed applicable, to permit the Insurer's payment of Defense Costs. In particular, the Primary Policy's "Bankruptcy" clause provides:

> In the event a liquidation or reorganization proceeding is commenced by or against the Company pursuant to the U.S. Bankruptcy Code or any similar state, local or foreign law, and there is a Loss for a covered Claim for which payment is due under this policy, the Insured shall make a request to waive and release any automatic stay or injunction that may apply to this policy or its proceeds in such proceeding, to the extent permitted under the applicable law; and shall agree not to oppose or object to any application or effort by the Insurer or any Insured to obtain relief from any such stay or injunction.

---

[6] Coverage for claims against LMC is also subordinate to "Outside Entity Directors and Officers Liability Coverage" provided under Coverage D, which, like the Side A coverage, inures to the benefit of Insured Persons and not LMC. (*See supra* at n.5.)

9

(Ex. B, Primary Policy, § VII(F).)

### C. The Securities Litigation

22. On July 26, 2023, after the Petition Date and during the D&O Policies' effective policy period, purported stockholders of LMC filed a putative securities class action against Messrs. Hightower and Kroll. The case is titled *Bandol Lim v. Edward Hightower and Adam Kroll*, bears case number 4:23-cv-01454, and is currently pending in the United States District Court for the Northern District of Ohio. The plaintiff alleges that Messrs. Hightower and Kroll violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder, by issuing or causing the issuance of false or misleading statements concerning LMC's relationship with a business partner, Hon Hai Precision Industry Co., Ltd. (a.k.a. Foxconn). In accordance with the Private Securities Litigation Reform Act, once a lead plaintiff is appointed by the district court, the lead plaintiff will have the opportunity – and is expected – to file a consolidated amended complaint that may assert additional claims and name additional LMC officers and directors as defendants.

23. Messrs. Hightower and Kroll believe that the allegations of wrongdoing in the Securities Litigation complaint are entirely without merit. They accordingly intend to vigorously contest the claims and allegations asserted therein, and neither admit to any liability nor waive any defenses in connection with that lawsuit. At this time, Messrs. Hightower and Kroll have not answered or otherwise responded to the Securities Litigation complaint.

24. Messrs. Hightower and Kroll have retained Katten Muchin Rosenman LLP to represent them as defendants in the Securities Litigation and intend that such firm continues to do so moving forward.

25. Messrs. Hightower and Kroll, as well as the Debtors, through their insurance broker, timely notified the Insurers of the commencement of the Securities Litigation and the commencement coverage clauses under the D&O Policies on behalf of LMC.

### D. LMC's Advancement Obligations

26. In accordance with LMC's indemnification obligations to Messrs. Hightower and Kroll, those individuals would have been entitled to the timely advancement or reimbursement of their defense costs in connection with their defense in the Securities Litigation had LMC not been prevented from such advancement or reimbursement by virtue of the pendency of its Chapter 11 Case.

27. LMC's Certificate of Incorporation and By Laws, attached hereto as **Exhibit D**, set forth LMC's broad, standard rights to mandatory advancement that require LMC to advance expenses incurred by any officers and directors named as defendants in the Securities Litigation, including Messrs. Hightower and Kroll, prior to the final disposition of the Securities Litigation. (*See* Ex. D, Second Amended and Restated Certificate of Incorporation, § 8.2; Amended and Restated By Laws, § 8.2.)

28. In addition, as it relates to Messrs. Hightower and Kroll, the operative employment agreements between LMC and those individuals, dated July 12, 2022 and October 13, 2021, respectively,[7] further the advancement and indemnification rights contained in LMC's organizational documents. The employment agreements, specifically, provide that Messrs. Hightower and Kroll "shall be eligible for indemnification (including the advancement of attorneys' fees) pursuant to Company's bylaws to the fullest extent of the law."

---

[7] Mr. Hightower's July 12, 2022 Employment Agreement supersedes a prior employment agreement executed by Lordstown Motors Corp. and Mr. Hightower on November 9, 2021.

11

29. Messrs. Hightower and Kroll submitted undertakings to LMC for reimbursement and indemnification of their legal fees and expenses incurred in connection with the Securities Litigation.

30. Given LMC's inability to honor such obligations in light of the application of the automatic stay, Messrs. Hightower and Kroll, and other directors and officers of the Debtors, are entitled to coverage under the D&O Policies. Thus, subject to policy limits and other terms and conditions, Covered Costs incurred by directors and officers currently named as defendants, or who may in the future be named as defendants, in the Securities Litigation, including Messrs. Hightower and Kroll, are payable by the Insurers under the Policies.

## APPLICABLE AUTHORITY

**A.  The Automatic Stay Does Not Apply to the Payment of Defense Costs Under Side A Insurance Coverage.**

31. The automatic stay set forth in Section 362(a) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a). Courts in this district have held that in determining whether the automatic stay applies to proceeds of a directors and officers liability insurance policy, the "threshold issue" is whether such proceeds are property of the estate. *In re Downey Fin. Corp.*, 428 B.R. at 602. This question turns on "the language and scope of the policy at issue." *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). Specifically, where a "liability insurance policy provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Downey*, 428 B.R. at 603 (internal quotations omitted).

32. The prevailing view is that the proceeds from the D&O Policies should *not* be considered property of the estate. *See, e.g.*, *In re World Health Alternative, Inc.*, 369 B.R. 805, 810-11 (Bankr. D. Del. 2007) (order-of-payment provision rendered subordinated coverage for debtor so remote that it was not reasonably probable that the trustee would succeed in asserting that proceeds were property of the estate); *see also In re SVB Fin. Grp.*, 650 B.R. 790, 798-99, n.3 (Bankr. S.D.N.Y. 2023) (noting that "when an insurance policy provides exclusive coverage to directors and officers, courts have generally held that the proceeds are not property of the estate," and concluding that the applicable Side A DIC policies were not property of the estate); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2013) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds that are first in line," and, therefore, proceeds of the policy were not property of the estate). Indeed, because of priority of payments provisions present in directors and officers policies (like the D&O Policies), courts find that the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has an interest in the policy proceeds and even if the directors and officers will deplete the policy, because the directors and officers are entitled to use the proceeds first. *SVB Fin. Grp.*, 650 B.R. at 800 ("The Directors' and Officers' use of the funds will not interfere with the bankruptcy estate, as even if the Debtor eventually seeks coverage under the ABC Policies, the Debtor is last in line for the insurance proceeds"); *see In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y. 2014) ("Even if [debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision.").

33. Here, the use of the D&O Policies' proceeds to pay Covered Costs will not have an adverse effect on the Debtors' bankruptcy estates because until the Covered Costs are satisfied,

those proceeds cannot be used for any other purpose. In fact, the Primary Policy's order-of-payments provision (as followed by the first seven excess policies) makes clear that all Side A claims – including Messrs. Hightower and Kroll's claims for Covered Costs – must be paid in full ***before*** the policy proceeds can be used to satisfy claims under any other coverage that inures to LMC's benefit.[8] (*See* Ex. B, Primary Policy, § VI; *see also supra* at n.5.)[9]

34. Accordingly, because applicable amounts used to pay defense costs are exclusively available for directors and officers defense costs, they would not be considered property of the Debtors' estates and the automatic stay does not apply.

35. The potential for coverage of the Debtors under the other Policies does not alter this conclusion. Indemnification coverage does not constitute property of the estate where indemnification is "hypothetical or speculative" and, thus, "is no longer protecting the estate's other assets from diminution." *Downey*, 428 B.R. at 607; *see World Health*, 369 B.R. 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'") (quoting *Allied Digital*, 306 B.R. at 512); *Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n)*, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) (finding that insurance proceeds were not property of estate because "[D&O] policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.") (quoting *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)).

---

[8] With the exception of "Company Crisis Loss," which has a sublimit of $50,000. (*See* Ex. B, Primary Policy, § V.)

[9] Moreover, insofar as the final seven policies in the D&O tower are Side A DIC policies that provide Side A coverage exclusively to the individual Insureds, and not LMC, they should not be considered property of the Debtors' estates. *See, e.g.*, *Allied Digital*, 306 B.R. at 510 ("when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate").

36. Further, construing the proceeds of the Side A coverage of the D&O Policies as property of the Debtors' estates would contravene established bankruptcy principles by effectively expanding LMC's rights against others beyond rights that existed at the commencement of the case. *See, e.g.*, *In re Cont'l Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotations and citations omitted); *Downey*, 428 B.R. at 607 ("Section 541(a) 'is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.'"). Outside of bankruptcy, the D&O Policies provide the Insured Persons with direct coverage, and the Debtors' interests in the proceeds under the D&O Policies are contractually subordinate to the Insured Persons under the order-of-payments provision. (Ex. B, Primary Policy, § V(E).) Thus, if the proceeds under the D&O Policies were deemed property of the Debtors' estates, the Debtors would be granted greater rights in the proceeds under the D&O Policies than they would have had outside of bankruptcy, contrary to established principles of bankruptcy law. *See In re Laminate Kingdom LLC*, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the [priority of payments provision] does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers' covered costs] are paid."); *see also Downey*, 428 B.R. at 608 ("[W]ere the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have greater rights in the [proceeds] than the debtor had before filing for bankruptcy.") (internal quotations and citations omitted).

37. Under these circumstances, the proceeds of the D&O Policies do not constitute property of the estates. Accordingly, proceeds from claims made under the Side A coverage are

not property of the Debtors' estates, and as such, the Insurers should be permitted to distribute such proceeds with respect to the Covered Costs of Messrs. Hightower and Kroll in connection with the Securities Litigation.

### B. Even if the Automatic Stay Applies, Ample Cause Exists to Modify the Stay.

38. Even if the proceeds of the D&O Policies were deemed property of the estate, the Court should nonetheless modify the automatic stay to permit the Insurers to advance Covered Costs to Messrs. Hightower and Kroll in connection with the Securities Litigation. In fact, courts in this district and others routinely grant such relief under similar circumstances. *See, e.g.*, *In re The Hertz Corp.*, Case No. 20-11218 (MFW), ECF #1090 (Bankr. D. Del. 2020); *In re Bayou Steel BD Holdings, L.L.C.*, Case No. 19-12153 (KBO), ECF #811 (Bankr. D. Del. 2019); *In re Penson Worldwide, Inc.*, Case No. 13-10061, ECF #496 (PJW); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the [debtor]"); *Laminate Kingdom*, 2008 WL 1766637, at *4 ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to [the] debtor.").

39. Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section … for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in Section 362(d)(1). Rather, cause is "a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del.

2007). In considering whether to grant relief from the stay under this provision, courts consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609. In weighing the harms under Section 362(d), courts acknowledge that the central purpose of D&O policies is to protect individual directors and officers. *See, e.g.*, *In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1990). As described below, these factors strongly weigh in favor of lifting the automatic stay.

40. As an initial matter, the Debtors' estates will suffer no harm or prejudice if the Court grants relief from the automatic stay with respect to the D&O Policies. In fact, granting the requested relief should reduce potential interference with the bankruptcy case because the Debtors' estates will benefit from a vigorous defense of Messrs. Hightower and Kroll. *See In re MF Glob. Holdings Ltd.*, 469 B.R. at 194 (finding that estate will benefit from vigorous defense by the insureds). Moreover, both Messrs. Hightower and Kroll still hold their positions as officers and, in the case of Mr. Hightower, as a director of the Debtors. Absent the assurance that the D&O Policies are protecting them, their attention may be diverted from the Debtors' operations, to the detriment of the Debtors' estates.

41. As such, the Debtors have no present contractual interest in the proceeds of the D&O Policies. Moreover, as discussed above, any claims against the Debtors covered under the D&O Policies would be clearly subordinate to the defense of the Insured Persons in the Securities Litigation by operation of the order-of-payments provision (*see* Ex. B, Primary Policy, § V(E)), thus making any alleged prejudice entirely hypothetical.

42. By contrast, Messrs. Hightower and Kroll would suffer substantial and potentially irreparable harm if they are denied the ability to obtain payment of Covered Costs in connection with the Securities Litigation.

43. The Debtors purchased the D&O Policies specifically to provide insurance coverage to, and for the benefit of, its directors and officers, including Messrs. Hightower and Kroll. *See MF Glob. Holdings*, 469 B.R. at 192 ("D&O policies are obtained for the protection of individual directors and officers … [i]n essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.") (internal quotations omitted).

44. In connection with these Policies, the Debtors ensured that the claims of directors and officers would be paid first out of the D&O Policies' proceeds, by express language to that effect in the Primary Policy, as followed by the excess policies. Without the D&O Policies' proceeds, Messrs. Hightower and Kroll would be deprived of customary and specifically bargained-for resources to pay their Covered Costs, thereby undermining their ability to present effective defenses in the Securities Litigation. As a result, they "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (quotations omitted); *see also Allied Digital*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

45. Thus, the hardship to Messrs. Hightower and Kroll considerably outweighs any hardship to the estate, as "clear, immediate, and ongoing losses to the directors and officers in incurring defense costs trumps only hypothetical or speculative claims by the trustee." *In re Hoku Corp.*, No. 13-40838-JDP, 2014 Bankr. LEXIS 1167, at *12 (Bankr. D. Idaho Mar. 25, 2014)

(*quoting Groshong v. Sapp (In re MILA, Inc.),* 423 B.R. 537, 544 (B.A.P. 9th Cir. 2010)) (internal quotations omitted).

46. Accordingly, ample cause exists to modify the automatic stay, if and to the extent it is applicable, to allow the Insurers (1) to reimburse Messrs. Hightower and Kroll for the Covered Costs that have already been incurred under the D&O Policies, and (2) to advance future defense costs that constitute Covered Costs.

### C. Permitting the Payment, Reimbursement, and/or Advancement of Covered Costs is an Appropriate Exercise of the Court's Powers.

47. Finally, Section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

48. For the reasons stated above, permitting the Insurers to pay, reimburse, and/or advance Covered Costs to Messrs. Hightower and Kroll, in accordance with, and subject to, the terms and conditions of the Policies is an appropriate exercise of the Court's powers under these factual circumstances. Moreover, no party will be prejudiced by the relief requested herein.

[*Remainder of page intentionally blank.*]

## CONCLUSION

**WHEREFORE**, Messrs. Hightower and Kroll respectfully request that the Court enter the Proposed Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 19, 2023

Respectfully submitted,

 */s/ Jennifer R. Hoover*
Jennifer R. Hoover (DE No. 5111)
Steven L. Walsh (DE No. 6499)
**BENESCH FRIEDLANDER COPLAN
   & ARONOFF LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801-6101
Telephone: (302) 442-7010
Email:  jhoover@Beneschlaw.com
            swalsh@Beneschlaw.com

*Counsel to Edward Hightower and Adam Kroll*

-and-

Bruce G. Vanyo (*pro hac* application forthcoming)
Sarah Eichenberger (*pro hac* application forthcoming)
Jonathan Rotenberg (*pro hac* application forthcoming)
Cindi M. Giglio (*pro hac* application forthcoming)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8788
 Email: bruce@katten.com
            sarah.eichenberger@katten.com
            jonathan.rotenberg@katten.com
            cgiglio@katten.com

*Co-Counsel to Edward Hightower and Adam Kroll*