**<u>Exhibit B</u>**

**The Primary D&O Policy**

**Berkley**
PROFESSIONAL
LIABILITY
a Berkley Company

757 Third Avenue, 10th Floor
New York, NY 10017
(212) 618-2900
Fax (212) 618-2940

## Primary Directors, Officers and Corporate Liability Insurance

December 27, 2022

Sir / Madam
Lordstown Motors Corp.
2300 Hallock Young Road
Lordstown, OH 44481

Binder/Policy Number: BPRO8085893

Dear Sir / Madam,

Thank you for choosing Berkley Professional Liability and the W.R. Berkley Corporation for your professional liability insurance needs. We know that you have many choices for your insurance and we appreciate your choosing BerkleyPro.

BerkleyPro and all its employees are proud of our tradition of providing an exceptional insurance facility and making every effort to assure your satisfaction with our product and service. The people behind the promise to pay are critical to the value of any insurance policy. Like most services, you get what you pay for - the premium is only one part of the value of an insurance policy.

The most important service we provide and the greatest value you receive does not come from delivering the policy - it comes from handling your claims. While we help our policyholders with loss control and crisis avoidance, if the day comes when you face a claim, we will be there to help you navigate through the complexities of a professional liability claim.

Attached is a narrative outlining claims reporting guidelines in the event that a claim does occur, with many years of experience handling complex professional liability claims - I am confident you will be pleased to have BerkleyPro on your side.

Once again, thank you for choosing BerkleyPro and the W.R. Berkley Corporation. We hope that you will see the value in the people behind the promise and we hope to be your choice for your professional liability needs for years to come. Please call your professional liability insurance agent if you have any questions about BerkleyPro, or any comments about our service to you. Your satisfaction is important to us.

Regards,

*John R. Benedetto*

John R. Benedetto
President



# Claims Reporting Guidelines for the Insured

These guidelines should be followed to help Berkley Professional Liability provide efficient claims service.

## Claim Notices

All claim notices shall be sent to Berkley Professional Liability, Claims Department.  The notices must be reported as required by the policy to avoid problems regarding timely notice.  The address of the Berkley Professional Liability Claims, c/o Claims Department is as follows:

Berkley Professional Liability

Berkley Professional Liability Claims, c/o Claims Department

757 Third Avenue ■ 10th Floor ■ New York, NY 10017

Phone: (212) 618-2920

Claim Dept. Fax: (212) 618-2948

E-mail: claims@berkleypro.com

Notice of claim requiring immediate action:

If immediate action on the notice is needed the Insured should express mail the notice to BerkleyPros Claims Department.  Situations requiring immediate action may include:

1.    The Insured being served with a summons and complaint.

2.    The Insured needs to provide a response to the claimant immediately.

## Correspondence from the Insured

The claim notice should include a written narrative of the circumstances surrounding the claim or potential claim. The narrative should include, but not be limited to:

1.    Names of the insureds, policy number and effective dates.

2.    Names and addresses of the claimant.

3.    Details of the underlying claim, including its current status and the amount in controversy or relief demanded.

4.    All pertinent letters or documents necessary to properly evaluate the claim.

Please provide carbon copies to your professional liability insurance agent

of all claim notices and correspondence sent to Berkley Professional Liability

MI0PI2  (06-06)

# Berkley Insurance Company

475 Steamboat Road Greenwich, CT 06830

**Declarations Page**

## Directors' and Officers' and Corporate Liability Insurance

### CLAIMS MADE WARNING FOR DECLARATION

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE, PRELIMINARY INQUIRIES FIRST RECEIVED AND COMPANY CRISES FIRST OCCURRING DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE) AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY.**

**ALL LOSS, INCLUSIVE OF DEFENSE COSTS AND ALL COVERAGES SUBJECT TO A SUB LIMIT ARE INCLUDED WITHIN THE LIMIT OF LIABILITY, SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the Policy.

Policy Form: DO 31400 (09-14)

Policy Number: BPRO8085893
Replacement or Renewal of Policy Number: BPRO8058461

Item 1.   Name and Address of **Parent Organization**:
Lordstown Motors Corp.
2300 Hallock Young Road
Lordstown, OH 44481

Person designated to receive all correspondence from the **Insurer**:
Sir / Madam

Item 2.   **Policy Period**:   From October 23, 2022 (inception date) to October 23, 2023 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the **Parent Organization**)*

Item 3.   **Limit of Liability** for the **Policy Period** under all Coverages combined for all **Loss** (inclusive   $5,000,000
of all **Defense Costs** and all coverages which are subject to a sub limit):

Item 4.   Retentions:
Not applicable to:   (i) Non-Indemnifiable Loss pursuant to Coverage A; (ii) **Crisis Loss** or (iii) **Derivative Demand Investigation Costs**

| | |
|---|---|
| **Securities Claim**: | $10,000,000 |
| **Wrongful Employment Acts**: | $10,000,000 |
| **Merger or Acquisition Claim**: | $10,000,000 |
| All other **Loss** to which a retention applies: | $10,000,000 |

Item 5.   Premium:   $855,000

Item 6.   **Prior and Pending Litigation Dates**:
a.Coverage A. Directors and Officers Liability and Coverage B. Corporate Indemnification:   October 23, 2020
b.Coverage C. Corporate Entity:   October 23, 2020
c.Coverage D. Outside Entity Directors and Officers Liability:   October 23, 2020
d.Coverage E. Company Crisis Coverage   October 23, 2020

Item 7.   Endorsements attached:

| | | |
|---|---|---|
| 1. | 265 (01-15) | NOTICE OF TERRORISM INSURANCE COVERAGE. |
| 2. | DO 300943 (12-18) | Excludes coverage and claims when such coverage/claims would result in violation of trade or economic sanctions, laws or regulations. |
| 3. | DO OH SAE (09-14) | Modifies the Policy to include state amendatory provisions. |
| 4. | DO 000900 (09-14) | Sublimit of Liability Endorsement |
| 5. | DO 000900 (09-14) | Prior and Pending Litigation Exclusion |
| 6. | DO 000900 (09-14) | Lordstown Amendatory Endorsement |
| 7. | DO 000900 (09-14) | Addition of Outside Entity - MIH EV Design LLC |

**Berkley Insurance Company**

Item 8.    Notice to the **Insurer** as provided in sections VI. A. and VI. B. and any information furnished to the **Insurer** as provided in section VI. B. shall be sent to:

    Claim Department, Berkley Professional Liability, 757 Third Avenue, 10th Floor, New York, NY  10017
    Email:   claims@berkleypro.com
    Fax:    (212) 618-2948
    Please reference the Policy Number in all correspondence.

    All other notices required to be given to the **Insurer** under this Policy shall be sent to:
    Underwriting, Berkley Professional Liability, 757 Third Avenue, 10th Floor, New York, NY  10017
    Fax:    (212) 618-2940
    Please reference the Policy Number in all correspondence.

These Declarations along with the completed and signed **Proposal** and the Directors, Officers and Corporate Liability Insurance Policy, shall constitute the contract between the **Insured Persons**, the **Company** and the **Insurer**.

Authorized Representative: _____   Date Issued:    December 27, 2022

BERKLEY INSURANCE COMPANY

Directors, Officers and Corporate Liability Insurance Policy

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

---

### CLAIMS MADE WARNING FOR POLICY

NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY APPLIES ONLY TO CLAIMS FIRST RECEIVED, AND COMPANY CRISES FIRST OCCURRING DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE) AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY.

ALL LOSS, INCLUSIVE OF DEFENSE COSTS AND ALL COVERAGES SUBJECT TO A SUB-LIMIT ARE INCLUDED WITHIN THE LIMIT OF LIABILITY, SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT. THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

---

In consideration of the payment of the premium, in reliance on all statements in the **Application** and all other information provided to the **Insurer**, and subject to all provisions of this policy, the **Insurer** and **Insureds** agree as follows:

## I. Insuring Agreements

### Coverage A. Directors and Officers Liability Coverage

The **Insurer** shall pay on behalf of the **Insured Persons**, **Loss**:

**(1)**   which the **Insured Persons** are legally obligated to pay resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act**; or

**(2)**   incurred by the **Insured Persons** as **Preliminary Inquiry Costs** resulting from any **Preliminary Inquiry** first received by the **Insured Persons** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy;

except and to the extent that the **Company** has indemnified the **Insured Persons** for such **Loss**.

### Coverage B. Corporate Indemnification Coverage

The **Insurer** shall pay on behalf of the **Company**, **Loss**:

**(1)**   which the **Company** is legally obligated to pay resulting from any **Claim** first made against the **Insured Persons** (including **Insured Persons** in their **Outside Entity Position** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act**; or

**(2)**   incurred by the **Insured Persons** as **Preliminary Inquiry Costs** resulting from any **Preliminary Inquiry** first received by the **Insured Persons** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy;

but only to the extent that the **Company** has indemnified the **Insured Persons** for such **Loss**.

### Coverage C. Corporate Entity Coverage

The **Insurer** shall pay on behalf of the **Company**, **Loss**:

**(1)**   which the **Company** is legally obligated to pay resulting from any **Securities Claim** first made against the **Company** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act**; or

**(2)**   incurred as **Derivative Demand Investigation Costs** resulting from any **Shareholder Derivative Demand** first made against the **Company** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy; or

**(3)**   incurred by the **Company** as **Defense Costs** in seeking the dismissal of any **Shareholder Derivative Suit** first brought during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

### Coverage D. Outside Entity Directors and Officers Liability

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are legally obligated to pay resulting from any **Claim** first made against the **Insured Persons** in their **Outside Entity Position** during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, for any actual or alleged **Wrongful Act**; except and to the extent that the **Company** has indemnified the **Insured Persons** for such **Loss**, or paid such **Loss** on behalf of the **Insured Persons**. Further, **Loss** paid under this Coverage D. shall be specifically excess to any indemnification from the **Outside Entity** and any insurance coverage afforded to the **Outside Entity**.

## Coverage E. Company Crisis Coverage

The **Insurer** shall pay on behalf of the **Company**, subject to the sub-limit set forth in the endorsement attached to this policy, all **Company Crisis Loss** for a **Crisis** first occurring during the **Policy Period** or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

## II. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this policy, the following terms shall have the meanings indicated below.

A.    "**Application**" means each and every signed application for this policy, or for any policy for which this policy is a renewal, replacement or for which it succeeds in time, together with any and all attachments to such applications, any warranties executed by an **Insured** and submitted with such applications and any documents submitted with or incorporated into such applications. "**Application**" shall also mean all public documents filed by any **Insured** with the Securities and Exchange Commission, Federal Deposit Insurance Corporation, or any similar federal, state, local or foreign regulatory body during the 12 months preceding the **Policy Period**.

B.    "**Claim**" means:

    (1)    a written demand for monetary, non-monetary or injunctive relief, including any demand for mediation, arbitration, or any other alternative resolution process;

    (2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary, or injunctive relief which is commenced by:

        a.    service of a complaint or similar pleading or equivalent document in a **Foreign Jurisdiction**;

        b.    return of an indictment, information or similar document or equivalent document in a **Foreign Jurisdiction** (in the case of a criminal proceeding); or

        c.    receipt or filing of a notice of charges;

    (3)    an **Insured Person Investigation**;

    (4)    an official request for **Extradition** of an **Insured Person**, including the execution of a warrant for the arrest of an **Insured Person** where the warrant execution is an element of **Extradition**;

    (5)    a **Shareholder Derivative Demand**;

    (6)    any **Merger or Acquisition Claim**;

    (7)    any **Securities Claim**; or

    (8)    a written request to toll or waive the statute of limitations relating to any of the above.

Further, a "**Claim**" shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**.

C.    "**Company**" means the **Parent Organization**, any **Subsidiary**, and in the event a bankruptcy proceeding is instituted by or against the **Company**, the Debtor in Possession (or equivalent status outside the United States) or the bankruptcy estate of the **Company**, if any.

D.    "**Company Crisis Loss**" means the reasonable and necessary fees and expenses incurred by the **Company** in connection with the retention of a **Crisis Consultant** to perform **Crisis Management Services** on behalf of the **Company**, fees and expenses incurred in the printing, advertising or mailing of materials and travel costs incurred by the **Company**, its employees or agents, arising from or in connection with a **Crisis**.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

E.   "**Corporate Manslaughter Act (UK) Costs**" means the **Defense Costs** incurred by an **Insured Person** solely in connection with the investigation, defense or appeal of a **Claim** against the **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any other jurisdiction.

F.   "**Crisis**" means an event which, in the good faith opinion of the Chief Financial Officer of the **Company**, caused or is reasonably likely to cause, a material effect on the **Company's** common stock price. As used herein, "material effect on the **Company's** common stock price" shall mean a decrease by 15% in the price of the **Company's** common stock within a 24 hour period. **Crisis** shall include, but not be limited to: (i) notice to the **Company** that its stock will be or has been delisted from NASDAQ, the New York Stock Exchange, or the Toronto Stock Exchange; (ii) a negative earnings or sales announcement by the **Company** or by an outside securities analyst; (iii) a product recall; (iv) an announcement of the elimination or suspension of a scheduled dividend; (v) public announcement of a governmental or regulatory investigation of the **Company**; or (vi) announcement of an unsolicited takeover bid.

G.   "**Crisis Consultant**" means any public relations firm, management firm or law firm retained by the **Company** with the consent of the **Insurer**, to provide **Crisis Management Services**.

H.   "**Crisis Management Services**" means services provided by a **Crisis Consultant** in advising an **Insured** with respect to minimizing harm to the **Insured** from the **Crisis**.

I.   **(1)**   "**Defense Costs**" means":

     A.   the reasonable and necessary fees, costs and expenses (including costs of electronic discovery, the cost of an **Electronic Discovery Consultant**, and premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) consented to by the **Insurer** and resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding wages, salaries, fees or any other compensation of officers or employees of the **Company**; or

     B.   the reasonable and necessary fees, costs and expenses consented to by the **Insurer** and resulting from an **Insured Person** lawfully opposing, challenging, resisting or defending against any request for, or any effort to obtain, the **Extradition** of that **Insured Person** or appealing any order or other grant of **Extradition** of that **Insured Person**, but excluding wages, salaries, fees or any other compensation of officers or employees of the **Company**.

  **(2)**   "**Defense Costs**" shall not include: (i) **Derivative Demand Investigation Costs**; (ii) **Preliminary Inquiry Costs**; or (iii) the compensation of any **Insured Person**.

J.   "**Derivative Demand Investigation Costs**" means the reasonable costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Company** or by its board of directors (or an equivalent managing body or equivalent foreign body) or any committee thereof in connection with the investigation or evaluation of a **Shareholder Derivative Demand**. "**Derivative Demand Investigation Costs**" shall not include any wages, salary, fees or other compensation of any employee of the **Company** or of any **Insured Person**.

K.   "**Electronic Discovery Consultant**" means any entity retained by an **Insured** with the consent of the **Insurer** to assist with respect to the organization, cataloging, preservation, collection, storage and production of electronically stored information in connection with the defense of a **Claim**.

L.   "**Enforcement Body**" means:

  (1)   any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including without limitation the U.S. Department of Justice, the U.S. Securities and Exchange Commission and the attorney general of any state); or

  (2)   the enforcement arm of any securities or commodities exchange or other self-regulatory agency.

M.   "**Extradition**" means any formal process initiated by any local, state or national government against an **Insured Person** to compel the **Insured Person** to appear for trial or otherwise to answer any criminal accusation.

N.   "**Financial Insolvency**" means the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official or any foreign equivalent, to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

O.   "**Foreign Jurisdiction**" means any jurisdiction outside the United States of America, its territories or possessions.

P.   "**Insured**" means the **Insured Persons** and the **Company**.

Q.   "**Insured Person**" means:

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

> **(1)** any past, present or future duly elected or appointed director, officer, trustee or governor of the **Company**; or any past, present or future duly elected or appointed manager, member of the board of managers, or equivalent executive of a limited liability **Company**. In the event the **Company** operates in a **Foreign Jurisdiction**, then the term **Insured Person** also means those titles, positions or capacities in such foreign **Company** that are equivalent to the position of an **Insured Person** in an entity incorporated within the United States of America;

> **(2)** solely with respect to any **Securities Claim**, any past, present or future employee of the **Company**;

> **(3)** past, present and future General Counsel and Risk Manager (or equivalent position) of the **Company**;

> **(4)** in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

> **(5)** an Employed Lawyer, but only with respect to a **Claim** made solely in connection with services rendered to the **Company** by the Employed Lawyer and continuously maintained against both such Employed Lawyer and an **Insured Person** who is not an Employed Lawyer. As used herein, "Employed Lawyer" means an employee of the **Company** who is admitted to practice law and is employed as a lawyer full time for and salaried by the **Company** at the time of the **Wrongful Act**; or

> **(6)** the lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise of any applicable domestic or **Foreign Jurisdiction**) of an **Insured Person** for a **Claim** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any act, error or omission of the spouse or domestic partner, but shall apply only to **Claims** arising out of any **Wrongful Act** of an **Insured Person**.

Coverage will automatically apply to all new **Insured Persons** after the policy inception date.

**R.** "**Insured Person Investigation**" means any civil, criminal, administrative or regulatory investigation of an **Insured Person**:

> **(1)** once the **Insured Person** is identified in writing by a **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding;

> **(2)** in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or

> **(3)** commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction**.

Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such.

**S.** "**Insurer**" means the entity issuing this policy as listed on the Declarations Page.

**T.** "**Limit of Liability**" means the maximum aggregate liability of the **Insurer** for all **Loss** stated in Item 3. of the Declarations, including **Damages, Defense Costs**, **Preliminary Inquiry Costs** and all coverages that are subject to a sub-limit as set forth in any endorsement to this policy.

**U.** **(1)** "**Loss**" means:

> **a.** damages, judgments (including any award of pre-judgment and post-judgment interest), settlements;

> **b.** **Defense Costs**;

> **c.** **Company Crisis Loss**;

> **d.** **Derivative Demand Investigation Costs**;

> **e.** **Preliminary Inquiry Costs**;

> **f.** **Corporate Manslaughter Act (UK) Costs**, **SOX 304/Dodd-Frank 954 Costs** and **Personal Assets Costs**, provided such costs arise out of a **Claim**;

**BERKLEY INSURANCE COMPANY**

    **g**.    civil penalties assessed against any **Insured Person** pursuant to: Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C., Section 78dd-2(g)(2)(B), or Section 308 of the Sarbanes-Oxley Act of 2002; or

    **h**.    punitive, exemplary or multiple damages; provided, however, such punitive, exemplary or multiple damages shall not be covered for **Claims** arising from **Wrongful Employment Acts**.

          The law of the jurisdiction most favorable to the insurability of punitive, exemplary or multiple damages shall control, provided that such jurisdiction is where: (i) the damages were awarded or imposed; (ii) any **Wrongful Act** occurred for which such damages were awarded or imposed; (iii) the **Insured** resides, is incorporated or has its principal place of business; or (iv) the **Insurer** is incorporated or has its principal place of business.

  **(2)**    "**Loss**" (other than **Defense Costs**) shall not include:

    **a**.    taxes;

    **b**.    civil or criminal fines or penalties;

    **c**.    cleanup costs relating to hazardous materials, pollution, or product defects;

    **d**.    any amount for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or

    **e**.    matters which are uninsurable under the law pursuant to which this policy is construed.

  **(3)**    The **Insurer** shall not assert that any portion of any settlement in a **Securities Claim** constitutes disgorgement or uninsurable **Loss** due to alleged violations of Sections 11, 12 or 15 of the Securities Act of 1933, including amendments thereto.

  **(4)**    In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest or assets of any entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however this paragraph shall not apply to **Defense Costs** or to **Loss** under Coverage A.

**V.**    "**Merger or Acquisition Claim**" means a **Claim** made against any **Insured**, including but not limited to a **Securities Claim**, based upon, arising from, or in consequence of any proposed or actual merger, acquisition, purchase, or sale of all or substantially all of the ownership interest of any entity or organization to which the **Company** is the target.

**W.**    "**Outside Entity**" means any not-for-profit organization, or any other entity, partnership, joint venture or other organization listed by endorsement to this policy.

**X.**    "**Outside Entity Position**" means the position of an **Insured Person** with an **Outside Entity**, but only if service in such position is at the direction or request of the **Company**. In the event of any dispute as to whether the **Insured Person** was acting at the "request or direction" of the **Company**, this policy shall abide by the determination of the **Company**.

**Y.**    "**Parent Organization**" means the entity designated in Item 1 of the Declarations.

**Z.**    "**Personal Assets Costs**" means the reasonable and necessary fees, costs and expenses arising from a **Claim**, consented to by the **Insurer** and incurred by an **Insured Person** to oppose any efforts by a **Enforcement Body** to seize, attach, or otherwise enjoin the use of the personal assets or real property of an **Insured Person** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**AA.**    "**Policy Period**" means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this policy.

DO 31400-0914                                Page 6 of 16

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**BB.** "**Preliminary Inquiry**" means a pre-**Claim** request received by an **Insured Person** for a meeting, interview or for documents relating to the **Insured Person's** capacity with the **Company** by:

    **(1)**    an **Enforcement Body**;

    **(2)**    the **Company**, including the board of directors (or foreign equivalent) or any committee thereof, arising out of: (i) an inquiry or investigation by an **Enforcement Body** concerning the business of the **Company** or of the **Insured Person's** capacity with the **Company**; or (ii) the investigation or evaluation of a **Shareholder Derivative Demand**;

    **(3)**    a court-appointed examiner, trustee, receiver, liquidator, or rehabilitator of the **Company** in any bankruptcy proceeding by or against the **Company**; or

    **(4)**    arrest or confinement of an **Insured Person** to a: (i) specific residence or (ii) custodial premises operated by an **Enforcement Body** in connection with the business of the **Company** or the **Insured Person**'s capacity with the **Company**.

"**Preliminary Inquiry**" shall not include any routine or regularly scheduled regulatory inspection, compliance, review, examination, production or audit conducted in a enforcement body's or the **Company's** routine or ordinary review or compliance process.

**CC.** "**Preliminary Inquiry Costs**" means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with the **Insured Person's** preparation and response to a **Preliminary Inquiry**. **Preliminary Inquiry Costs** shall not include the costs of any routine or regularly scheduled regulatory inspection, compliance, review, examination, production or audit conducted in an **Enforcement Body's** routine or ordinary review or compliance process.

**DD.** "**Prior or Pending Litigation Date**" means the applicable date set forth in Item 6. of the Declarations or in any endorsement made part of this policy.

**EE.** "**Related Claim**" means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as, or related or continuous or that are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision or that arise from a common nucleus of facts that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of another **Preliminary Inquiry** received by an **Insured Person**.

**FF.** "**Related Preliminary Inquiry**" means a **Preliminary Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same, related or continuous or that are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision or that arise from a common nucleus of facts that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Preliminary Inquiry** received by an **Insured Person**.

**GG.** **(1)**    "**Securities Claim**" means a **Claim**, other than an administrative or regulatory action against or investigation of the **Company**, made against any **Insured**:

        **a.**    alleging a violation of any federal, state, local or foreign regulation, rule, statute or common law regulating securities that is brought by:

            **(i)**    any person or entity alleging, arising out of, based upon or attributable to, in whole or in part, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities or membership interests in the **Company**, or

            **(ii)**    a security holder of the **Company** with respect to such security holder's interest in the **Company**;

        **b.**    that is a **Shareholder Derivative Suit**.

    **(2)**    Notwithstanding the foregoing, the term "**Securities Claim**" shall: (i) include an administrative or regulatory proceeding against the **Company** that meets the requirements of section II. GG. (1) a. above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and (ii) not include any **Claim** brought by any **Insured Person** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options, or any other securities of the **Company**.

**HH.** "**Shareholder Derivative Demand**" means a written request by one or more shareholders of the **Company**, in their capacity as such, upon the board of directors of the **Company** (or an equivalent managing body) to investigate or evaluate any fact, circumstance or situation that may reasonably be expected to give rise to a **Claim** being made against an **Insured Person**. A **Shareholder Derivative Demand** shall be deemed to have been first made at the time an **Insured** receives such written request by a shareholder(s).

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**II.**     "**Shareholder Derivative Suit**" means a civil proceeding brought and maintained by one or more shareholders of the **Company** in their capacity as such, on behalf of, or in the name of or in the right of, the **Company**, for any actual or alleged **Wrongful Act**.

**JJ.**     "**SOX 304/Dodd-Frank 954 Costs**" means the reasonable and necessary fees, costs and expenses (including the premium or origination fee for a bond or a loan) incurred by an **Insured Person** and consented to by the **Insurer** solely to facilitate the return of amounts required to be repaid by such persons pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act; provided; however, **SOX 304/Dodd-Frank 954 Costs** shall not include the payment, return, reimbursement, disgorgement or restitution of any amounts requested or required to be repaid by such persons pursuant to Section 304(a) or Section 954.

**KK.**     "**Subsidiary**" means:

      **(1)**     a not-for-profit company that is sponsored exclusively by a **Company**;

      **(2)**     a corporation or limited liability company or limited partnership of which the **Parent Organization** owns, on or before the inception date of the policy, more than 50 percent of the issued and outstanding voting securities or membership interests either directly or indirectly through one or more of its **Subsidiaries**;

      **(3)**     a joint venture if: (i) the **Parent Organization** owns on or before the inception date of the policy, 50 percent or more of the issued and outstanding voting securities or membership interests either directly or indirectly through one or more of its **Subsidiaries**; and (ii) the **Parent Organization** solely controls the management and operation of such joint venture pursuant to a written agreement with the owner of the remaining issued and outstanding securities or interest in such joint venture;

      **(4)**     automatically an entity that becomes a **Subsidiary** or a **Subsidiary** which is acquired or created during the **Policy Period**, whose assets total less than 15 percent of the total consolidated assets of the **Parent Organization** as of the policy inception date of the policy; or

      **(5)**     an entity that becomes a **Subsidiary** or a **Subsidiary** that is acquired or created during the **Policy Period** (other than a **Subsidiary** described in paragraph (4) above) but only upon the condition that within 90 days of the creation or acquisition of such entity, the **Parent Organization** provides the **Insurer** with full particulars of the new **Subsidiary** and agrees to any additional premium and/or amendment of the provisions of this policy required by the **Insurer** relating to such new **Subsidiary**. Further, coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Parent Organization** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

An entity becomes a **Subsidiary** when the **Parent Organization** owns more than 50 percent of the issued and outstanding voting securities or membership interests (and, in the case of a joint venture, the **Parent Organization** solely controls the management and operation of such joint venture pursuant to a written agreement with the owner of the remaining issued and outstanding securities or interest in such joint venture as described in sub-paragraph (2) above) either directly or indirectly through one or more of its **Subsidiaries**.

An entity ceases to be a **Subsidiary** when the **Parent Organization** ceases to own more than 50 percent of the issued and outstanding voting securities or membership interests either directly or indirectly through one or more of its **Subsidiaries** (or, in the case of a joint venture, the **Parent Organization** ceases to solely control the management and operation of such joint venture pursuant to a written agreement with the owner of the remaining issued and outstanding securities or interest in such joint venture).

In all events, coverage as is afforded with respect to a **Claim** made against a **Subsidiary** or **Insured Person** acting in their capacity in connection with a **Subsidiary**, shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

**LL.**     "**Wrongful Act**" means:

      **(1)**     with respect to any **Insured Person**, any actual or alleged breach of duty, neglect, error, act, omission, misstatement, misleading statement, or **Wrongful Employment Act** by any **Insured Person** in their capacity as such or in an **Outside Entity Position**, or any matter claimed against them by reason of their status as **Insured Person**; or

      **(2)**     with respect to the **Company**, any actual or alleged breach of duty, neglect, error, act, omission, misstatement, or misleading statement by the **Company**, but solely as respects a **Securities Claim**.

**MM.**     "**Wrongful Employment Act**" means any actual or alleged act by an **Insured Person** arising from an actual or potential employment relationship with a claimant for:

DO 31400-0914                                                                                                          Page 8 of 16

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**(1)** discrimination or harassment because of race, color, religion, age, sex, disability, pregnancy, or national origin, sexual orientation, marital status, or any other basis prohibited by law that results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an employee or potential employee, or denial of an employment privilege, or the taking of any adverse or differential employment action;

**(2)** sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that is made a condition of employment, is used as a basis for employment decisions, or creates an intimidating, hostile or offensive work environment that interferes with work performance; or

**(3)** termination, constructive discharge, wrongful failure to hire, wrongful demotion, wrongful discipline, negligent retention, negligent supervision, negligent hiring, retaliation, employment related misrepresentation to an employee of the **Company**, infliction of emotional distress, defamation, slander, invasion of privacy, humiliation, wrongful evaluation, failure to promote or breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation.

## III. Exclusions

The **Insurer** shall not be liable to make payment for that portion of **Loss**, other than **Company Crisis Loss**, in connection with any **Claim** made against any **Insured**:

**A.** based upon, arising out of, or attributable to any remuneration, profit or other advantage to which an **Insured** was not legally entitled if established by any final and non-appealable adjudication in the underlying action adverse to such **Insured**; provided, however, that in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, including amendments thereto, this exclusion shall not apply to the portion of any **Loss** attributable to such violations;

**B.** based upon, arising out of, or attributable to any deliberate criminal or deliberate fraudulent act if established by any final and non-appealable adjudication in the underlying action adverse to an **Insured**. Imposition of criminal fines, penalties, or sanctions pursuant to the law of a **Foreign Jurisdiction** shall not constitute, by itself, proof that an **Insured** has committed a deliberate criminal act or deliberate fraudulent act;

**C.** for:

**(1)** physical injury to or destruction of any tangible property, including the loss of use thereof; or

**(2)** bodily injury, sickness, disease, and death; provided, however, this exclusion shall not apply to a **Securities Claim**, **Corporate Manslaughter Act (UK) Costs**, or to damages or causes of action for emotional distress, mental anguish, defamation, invasion of privacy or humiliation in connection with a **Claim** for a **Wrongful Employment Act**;

**D.** based upon, arising out of, or attributable to any **Wrongful Act** of an **Insured Person** serving in their capacity as director, officer, trustee or governor of any other entity other than the **Company** or an **Outside Entity**, or by reason of their status as director, officer, trustee or governor of such other entity;

**E.** for any actual or alleged violations of the Employee Retirement Income Security Act of 1974, as amended, or any similar provisions of any state, local or foreign statutory or common law;

**F.** based upon, arising out of, or attributable to, as of the applicable **Prior or Pending Litigation Date**:

**(1)** any prior or pending **Claim**, **Preliminary Inquiry**, litigation, administrative or arbitration proceeding, or investigation; or

**(2)** any **Wrongful Act**, fact, circumstance, situation, transaction or event underlying or alleged in such prior or pending **Claim**, **Preliminary Inquiry**, litigation, administrative or arbitration proceeding, or investigation;

**G.** alleging, based upon, arising out of, attributable to, or in any way involving:

**(1)** any **Wrongful Act** alleged in any matter which has been reported, or in any circumstance of which notice has been given, prior to the **Policy Period**, under any other management liability insurance, directors and officers liability insurance, employment practices liability insurance or similar insurance policy; or

**(2)** any other **Wrongful Act** whenever occurring, which together with a **Wrongful Act** which has been the subject of such claim or notice in exclusion G. (1) above, would constitute a **Related Claim**;

**H.** for:

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**(1)** any actual or alleged violations of responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except for Equal Pay Act), Worker's Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, the National Labor Relations Act, including amendments thereto, or any similar provisions of any federal, state, local or foreign statutory or common law; or

**(2)** any actual or alleged unpaid wages (including overtime pay), obligations under any workers' compensation, social security, disability benefits, or unemployment compensation law, including amendments thereto, or any similar provisions of any federal, state, local or foreign statutory or common law, improper payroll deductions, improper employee classification, failure to maintain accurate time records, or failure to grant meal and rest periods;

provided, however, that this exclusion shall only apply to the extent that a **Claim** is for a **Wrongful Employment Act**;

**I.** brought by, on behalf of, or in the right of, the **Company**, or by any **Outside Entity**; provided, however this exclusion shall not apply to:

**(1)** any **Shareholder Derivative Suit** that is not brought by, controlled by, or materially assisted by the **Company** or **Outside Entity** or **Insured Person**;

**(2)** any **Claim** in connection with a bankruptcy proceeding of the **Company**, any **Claim** brought on behalf of or in the right of the **Company** by the debtor in possession (or **Foreign Equivalent**) or by any trustee, receiver, liquidator, rehabilitator, examiner or creditors committee of the **Company**; or

**(3)** any **Defense Costs** incurred by an **Insured Person** under Coverage A.

For the purpose of determining the applicability of any Exclusion, the **Wrongful Acts** of, facts pertaining to, and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; only the **Wrongful Acts** of, facts pertaining to, and knowledge possessed by any past, present, or future Chief Executive Officer or Chief Financial Officer (or equivalent position) of the **Company** shall be imputed to the **Company**.

## IV. Limit of Liability and Retentions

### A.    Limit of Liability

**(1)** The **Limit of Liability** stated in Item 3. of the Declarations is the maximum aggregate limit of the **Insurer's** liability for all **Loss**, under all Coverages combined (including **Defense Costs** and all coverages which are subject to a sub-limit) arising out of all **Claims** or **Shareholder Derivative Demands** first made, all **Preliminary Inquiries** first received, and all **Crises** first occurring, during the **Policy Period** and the Extended Reporting Period (if applicable) regardless of: (i) the time of payment; (ii) the number of **Claims**; (iii) the number of **Derivative Demands**; (iv) the number of **Preliminary Inquiries**; or (v) the number of claimants.

**(2)** Each and every sub-limit of liability set forth in any endorsement to this policy is the maximum limit of the **Insurer's** liability during the **Policy Period** and the Extended Reporting Period (if applicable).

**(3)** In the event the **Limit of Liability** stated in Item 3. of the Declarations is exhausted by payment of **Loss**, or tendered to or on behalf of an **Insured**, then any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished.

**(4)** The limit of liability for the Extended Reporting Period shall be part of, and not in addition to, the **Limit of Liability** stated in Item 3. of the Declarations. Any sub-limit of liability applicable to the Extended Reporting Period shall be part of, and not in addition to, the aggregate sub-limit of liability. Further, all **Related Claims** and all **Related Preliminary Inquiries** that are considered made or received during the **Policy Period** or "Extended Reporting Period" pursuant to section VI. Notice of Claim or Preliminary Inquiry sub-paragraph B. shall also be subject to the applicable **Limits of Liability** stated in Item 3. of the Declarations.

**(5)** **Defense Costs** are not payable by the **Insurer** in addition to the **Limit of Liability** or any sub-limit of liability. **Defense Costs** are part of **Loss** and as such are subject to the applicable limit of liability for **Loss**.

### B.    Retention

DO 31400-0914                                                                                                    Page 10 of 16

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**(1)** The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** or **Preliminary Inquiry** which is in excess of the applicable Retention amount stated in Item 4. of the Declarations. Such Retention amount shall be borne by the **Insured** with regard to all **Loss**. For purposes of determining whether a Retention applies, the **Company** agrees to advance **Defense Costs** and/or indemnify the **Insured Persons** to the fullest extent permitted by law.

**(2)** A single Retention amount shall apply to **Loss** arising from all **Related Claims** and all **Related Preliminary Inquiries**. In the event a **Claim** or **Preliminary Inquiry** triggers more than one Retention, then, as to such **Claim** or **Preliminary Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Preliminary Inquiry** unless this policy expressly provides otherwise.

**(3)** For purposes of determining the applicable retention under Item 4. of the Declarations, a **Securities Claim** based upon, arising from, or in consequence of any proposed or actual merger, acquisition, purchase, or sale of all or substantially all of the ownership interest to which the **Company** is the target will be deemed to be a **Merger or Acquisition Claim**.

**(4)** No Retention amount shall apply to **Loss** in the event the **Company** is permitted or required to indemnify the **Insured Persons** but the **Company** is financially or legally unable to pay such **Loss** by reason of **Financial Insolvency**.

**(5)** If the **Company** fails or refuses in writing to advance, pay or indemnify **Loss** of an **Insured Person** within the applicable Retention for any reason (including but not limited to **Financial Insolvency**); or if an **Insured Person** submits a written request to the **Company** for advancement, payment or indemnification of **Loss** incurred; and the **Company** fails to provide, agree or acknowledge an obligation to provide such advancement, payment or indemnification within 60 days, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until such Retention is either satisfied or the **Company** provides such advancement, payment or indemnification.

**(6)** Advancement, payment or indemnification of an **Insured Person** by the **Company** is deemed "failed" if it has been requested by any **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by such **Company** within 60 days of such request; and advancement, payment or indemnification by a **Company** is deemed "refused" if the **Company** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by a **Company** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from a **Company**. Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the **Limit of Liability**.

**(7)** If the **Insurer** pays any indemnification or advancement owed to an **Insured Person** by the **Company** within the applicable Retention, such amounts shall become due and owing as an obligation of the **Company** to the **Insurer** and the **Company** shall reimburse the **Insurer** for such amounts.

**(8)** Any advancement or payment by the **Insurer** within the applicable Retention shall apply toward exhaustion of the applicable sub-limit and/or the **Limit of Liability**.

**(9)** In the event the applicable Retention is paid in whole or in part by a "DIC Insurer", the **Insurer** shall recognize such payment as eroding the Retention to the extent of such payment. For purposes of this section, "DIC Insurer" shall mean an insurer providing coverage excess of this policy on a difference in conditions basis that requires such insurer to drop down and pay the Retention amount.

**(10)** No Retention shall apply to the following: (i) Non-Indemnifiable **Loss** pursuant to Coverage A.; (ii) Derivative Demand Investigation Costs; or (iii) **Company Crisis Loss**.

## V. Defense, Cooperation, and Settlement

**A.** Under all Coverages of this policy, at the written request of the **Insured**, the **Insurer** shall advance, excess of any applicable Retention, covered **Defense Costs** or **Preliminary Inquiry Costs**, respectively, on a current basis prior to the final disposition of a **Claim**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insured**, severally according to their respective interests, in the event and to the extent that the **Insured** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

DO 31400-0914                                                                                                                    Page 11 of 16

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

B.    The **Insurer** does not assume any duty to defend or investigate. The **Insureds** shall defend and contest any **Claim** made against them. The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** or **Preliminary Inquiry Costs,** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. If all **Insured** defendants are able to dispose of all **Claims** and/or **Preliminary Inquiries** which are subject to one Retention, inclusive of **Defense Costs** and/or **Preliminary Inquiry Costs**, for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

C.    Each **Company** and **Insured Person** shall provide the **Insure**r with full cooperation and such information as the **Insurer** may reasonably require. The **Insurer** shall have the right, but not the obligation, to effectively associate in the defense of any **Claim** or **Preliminary Inquiry** that involves or appears reasonably likely to involve the policy, including but not limited to the negotiating of any settlement. The failure of any **Insured Person** to give the **Insurer** cooperation and information as required herein shall not impair the rights of any other **Insured Person** under this policy.

D.    With respect to **Defense Costs** jointly incurred by, any joint settlement made by, and/or any adjudicated judgment of joint and several liability against the **Company** and any **Insured Person**, in connection with any **Claim** other than a **Securities Claim**, the **Company**, the **Insured Persons** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between the **Company** and the **Insured Persons** and the **Insurer** taking into account the relative legal and financial exposures of the **Insured Persons** and the **Company**. In determining a fair and proper allocation, the **Insured Persons** and the **Company** expressly acknowledge that the **Insured Persons** and the **Company** each face independent exposure. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the **Insurer** shall advance such Defense Costs which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

E.    In the event of **Loss** arising from any **Claim** and/or any **Preliminary Inquiry** for which payment is due under the provisions of this policy, then the **Insurer** shall:

    (1)    first, pay such **Loss** for which coverage is provided under Coverages A. and D.; and

    (2)    with respect to whatever remaining amount of the **Limit of Liability** stated in Item 3. of the Declarations is available after payment of such **Loss**, at the written request of the Chief Executive Officer of the **Parent Organization**, either pay or withhold payment of such other **Loss** for which coverage is provided under this policy.

    In the event the **Insurer** withholds payment of such **Loss** pursuant to section V. E. (2) above, the **Insurer** shall remit such payment to the **Company** or directly to the **Insured Persons** at such time and in such manner as shall be set forth in written instructions of the Chief Executive Officer of the **Parent Organization**.

F.    This section V. does not apply to **Company Crisis Loss**; nevertheless, the **Insurer** does not under this policy assume any duty to defend.

## VI. Notice of Claim or Preliminary Inquiry

A.    As a condition precedent to rights under this policy, an **Insured** shall provide the **Insurer**, as set forth in Item 8. of the Declarations, written notice of any **Claim** first made against or **Preliminary Inquiry** first received by an **Insured**, or any **Crisis** first occurring, during the **Policy Period**, as soon as practicable after the **Company's** Risk Manager or General Counsel (or equivalent position) becomes aware of the **Claim** or **Preliminary Inquiry**, or the **Crisis** begins, but in no event later than 60 days after the expiration of the **Policy Period** or Extended Reporting Period (if applicable). Failure to provide notice as soon as practicable shall not bar coverage under this policy unless the **Insurer** has been prejudiced by such failure.

B.    If a **Claim** is first made and reported in accordance with section VI. A. above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with section VI. A. above shall be deemed to have been first made at the time that such previously reported **Claim** was first made.

C.    If a **Preliminary Inquiry** is actually first received by an **Insured Person** and reported in accordance with section VI. A. above, then any **Related Preliminary Inquiry** or subsequent **Claim** or **Related Claim** that is reported in accordance with section VI. A. above shall be deemed to have been first received at the time that such previously reported **Preliminary Inquiry** was first received by an **Insured Person**.

DO 31400-0914          Page 12 of 16

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**D.**    With respect to any subsequent **Related Preliminary Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Preliminary Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured**. **Claims** actually first made or deemed first made prior to the inception date of this policy, **Preliminary Inquiries** first received or deemed first received by an **Insured Person** prior to the inception date of this policy, and **Claims** or **Preliminary Inquiries** arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

**E.**    If during the **Policy Period** or the "Extended Reporting Period" any **Insured** becomes aware of any act, error or omission, fact, circumstance or situation which may reasonably be expected to give rise to a **Claim** being made against any **Insured** and shall give written notice to the **Insurer** of the circumstance and the reasons for anticipating such a **Claim**, with full details as to dates, persons and entities involved, then any **Claim** subsequently made arising out of such act, error or omission, fact, circumstance or situation shall be deemed to have been made when notice was first given to the **Insurer**.

## VII. General Conditions

### A.    Termination, Cancellation, and Non-Renewal

**(1)**    This policy may be cancelled by the **Parent Organization** at any time by mailing written notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent.

**(2)**    This policy may be cancelled by or on behalf of the **Insurer** only in the event of non-payment of premium by the **Parent Organization**.

**(3)**    The **Insurer** may cancel this policy by delivering to the **Parent Organization** or by mailing to the **Parent Organization**, by registered, certified, or other first class mail, at the last known principal address of the **Parent Organization**, and to the **Parent Organization's** insurance agent or broker, written notice stating when the cancellation shall be effective. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender of this policy by the **Parent Organization** to the **Insurer** or its authorized agent.

**(4)**    The **Insurer** shall provide at least 20 days written notice to the **Parent Organization** prior to cancellation for non-payment of any premium.

**(5)**    The mailing of such notice as described herein shall be sufficient proof of notice.

**(6)**    The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Parent Organization** shall cancel the policy, the **Insurer** shall retain the pro rata proportion of the premium.

**(7)**    If the **Insurer** decides not to renew this policy, the **Insurer** shall provide written notice to the **Parent Organization** at least 60 days prior to the end of the **Policy Period**. The notice shall include the reason for such non-renewal.

### B.    Change in Control

If during the **Policy Period**:

**(1)**    the **Parent Organization** shall consolidate or merge with or into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert such that the **Parent Organization** is not the surviving entity; or

**(2)**    any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities or membership interests representing more than 50 percent of the voting power for the election of directors of the **Parent Organization**, or acquires the voting rights of such an amount of such securities or membership interests;

(either of the above events hereinafter referred to as the "Transaction")

then, this policy shall continue in full force and effect as to any **Wrongful Acts** occurring prior to the Transaction, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Acts** occurring after the Transaction. This policy may not be cancelled following a Transaction and the entire premium for this policy shall be deemed fully earned as of the Transaction. The **Parent Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable but not later than 30 days after the Transaction.

### C.    Extended Reporting Period

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

**(1)** If the **Parent Organization** shall cancel or if the **Insurer** or the **Parent Organization** refuses to renew this policy, then the **Parent Organization** shall have the right, upon payment of an additional premium as described below, to an extension of the coverage granted by this policy for a period of one to six years following the effective date of such cancellation or non-renewal. As used herein, this extension of coverage shall be referred to as the "Extended Reporting Period". Such "Extended Reporting Period" shall only apply to **Claims** first made against any **Insured** and/or **Preliminary Inquiries** first received by an **Insured Person** arising solely out of any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

**(2)** The additional premium for a one year "Extended Reporting Period" shall be one hundred and twenty five percent (125%) of the "full annual premium" (or if the **Policy Period** is other than annual, one hundred and twenty five percent (125%) of the annualized premium). The additional premium for a two (2) to six (6) year "Extended Reporting Period" shall be the amount as determined by the **Insurer**. As a condition precedent to the right to purchase the "Extended Reporting Period", the total premium of this policy must have been paid. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within 30 days of the effective date of cancellation or non-renewal.

**(3)** In the event of a Transaction pursuant to section VII. B. of this policy, the **Parent Organization** shall have the right to request an offer from the **Insurer** for an "Extended Reporting Period" with respect to **Wrongful Acts** occurring prior to the effective time of the Transaction, and the **Insurer** shall offer such "Extended Reporting Period" pursuant to such terms, conditions, exclusions, and additional premium as the **Insurer** may reasonably decide. In the event of such Transaction, section VII. C. (2) above shall not apply.

**(4)** The additional premium for the "Extended Reporting Period" shall be fully earned at the inception of the Extended Reporting Period. The "Extended Reporting Period" is not cancelable.

**D.    Application, Severability, and Non Rescindability**

**(1)** The **Insurer** has relied upon the accuracy and completeness of the statements, warranties, and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are incorporated in this policy, and all information forming part of the **Application** shall be deemed to be attached hereto as if physically attached.

**(2)** The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge or information possessed by the **Company** or by any **Insured Person** shall be imputed to any other **Insured Person**.

**(3)** The **Insureds** agree that in the event the statements, warranties, and representations contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under this policy, then this policy shall not afford coverage with respect to:

**a.** **Loss** under Coverage B. for the indemnification of any **Insured Person** who knew, as of the policy inception date, the facts that were not accurately and completely disclosed; and

**b.** **Loss** under Coverage C. if any **Insured Person** who is or was a Chief Executive Officer or Chief Financial Officer of the **Company** knew, as of the policy inception date, the facts that were not accurately and completely disclosed.

**(4)** The foregoing shall not apply as to any **Insured Person** who did not know as of the policy inception date that such inaccurate or incomplete disclosure had been provided to the **Insurer** or included in the **Application**.

**(5)** A written renewal application form shall not be required in order to receive a renewal quotation from the **Insurer**, although the **Insurer** shall have the right to require specific information upon renewal.

**(6)** Notwithstanding anything to the contrary in this policy, the **Insurer** shall not be entitled under any circumstances to rescind or void, in whole or in part, coverage provided under Coverage A. once the premium has been paid.

**E.    Action Against the Insurer**

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of any **Insured's** obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of an **Insured**, the claimant and the **Insurer**.

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**BERKLEY INSURANCE COMPANY**

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as party to any action against an **Insured** or the **Company** to determine an **Insured's** liability, nor shall the **Insurer** be impleaded by the **Company** or any **Insured Person** or their legal representatives.

**F.     Bankruptcy**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of its obligations under this policy.

In the event a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the U.S. Bankruptcy Code or any similar state, local or foreign law, and there is a **Loss** for a covered **Claim** for which payment is due under this policy, the **Insured** shall make a request to waive and release any automatic stay or injunction that may apply to this policy or its proceeds in such proceeding, to the extent permitted under the applicable law; and shall agree not to oppose or object to any application or effort by the **Insurer** or any **Insured** to obtain relief from any such stay or injunction.

**G.     Subrogation**

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery thereof, and the **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured Person** under this policy unless a final and non-appealable adjudication in the underlying action adverse to such **Insured Person** establishes such **Insured Person** committed a deliberate criminal or deliberate fraudulent act or gained remuneration, profit or advantage to which such **Insured Person** was not legally entitled.

The **Insurer** assumes no duty to recover any amounts paid under this policy; however, any amounts as may be recovered pursuant to the exercise of the **Insurer's** rights of subrogation shall be applied as follows: (i) to the repayment of expenses incurred in exercising any rights of subrogation; (ii) to **Loss** in excess of the Limits of Liability hereunder; and (iii) to **Loss** paid by the **Insurer**.

**H.     Other Insurance**

Insurance provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly stated to be excess over the **Limit of Liability** provided under this policy. This policy shall be specifically excess to any other insurance which provides for a duty to defend a **Claim** for which this policy also provides coverage. Such insurance as is provided by this policy shall apply as primary to any personal umbrella excess liability insurance purchased by an **Insured Person**.

**I.     Conformance to Law**

In the event there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or Extended Reporting Period election; and (ii) the minimum or maximum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the terms more favorable to the **Insured**; otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law. Coverage under this policy shall not be provided to the extent prohibited by any law.

**J.     Assignment**

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

**K.     Entire Agreement**

By acceptance of this policy, the **Insureds** and the **Insurer** agree that this policy (including the **Application**) and any written endorsements attached hereto constitute the entire agreement between the parties.

**L.     Notices and Authority**

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

It is agreed that the **Parent Organization** shall act on behalf of the **Insureds** with respect to the giving and receiving of notices, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to an Extended Reporting Period; provided, however, that the foregoing shall not limit the ability of the **Company** or an **Insured** to provide notice of a **Claim**, **Preliminary Inquiry**, **Crisis**, or circumstance as detailed in Section VI.B., or to elect the Extended Reporting Period pursuant to Section VII.C.

## M.    Currency

All **Loss**, premium, limits of liability, retention and any other amounts under this policy are expressed and payable in currency of the United States of America. If any settlement, judgment, **Defense Costs** or other **Loss** under the policy is incurred, stated, determined or adjudicated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in the <u>Wall Street Journal</u> on the date the obligation of the **Insurer** to pay such **Loss** is established.

## N.    Coverage Territory

Coverage provided by this policy shall apply to **Wrongful Acts** occurring or **Claims** made worldwide.

In witness whereof, the **Insurer** has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

*President*                                    *Secretary*

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act is $0.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

**Berkley Insurance Company**
475 Steamboat Road  Greenwich, CT 06830

## Office of Foreign Asset Control (OFAC) Exclusion Endorsement

In consideration of the premium paid for this Policy, it is understood and agreed that:

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions laws or regulations of the European Union, United Kingdom or the United States.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |

| Effective Date of This Endorsement | Authorized Representative |
|---|---|
| 10/23/2022 | |

DO 31400 (09-14)                    51000-BPRO8085893-769139                    DO 300943 (12-18)

# Berkley Insurance Company
475 Steamboat Road  Greenwich, CT 06830

## Ohio Amendatory Endorsement

In consideration of the premium paid for this policy, it is understood and agreed that:

1.      Section II. Definitions U. (1) "**Loss**" sub-paragraph h. is amended by the addition of the following:

It is further agreed that this policy shall not provide coverage for punitive, exemplary or multiple damages awarded by a court of competent jurisdiction when applying the substantive law of the State of Ohio.

2.      Section VII. General Conditions A. Termination, Cancellation, and Non-Renewal is amended by the addition of the following:

**(8)**      If the **Insurer** offers to renew this policy with a decrease in limits or coverage, increase in retention, or an increase in premium greater than 25%, other than at the request of the **Parent Organization**, the **Insurer** shall provide written notice to the **Parent Organization** at least 45 days prior to the end of the **Policy Period**.

3.      Section VII. C. Extended Reporting Period sub-paragraph (2) is amended as follows:

As used herein, the phrase "30 days" is hereby deleted and replaced with "60 days".

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

DO 31400 (09-14)                 50838-BPRO8085893-769139                 DO OH SAE (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## SUB-LIMIT OF LIABILITY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this Policy is amended to include the following provision:

The following coverages shall each be subject to a sub-limit of liability as stated below. Each applicable sub-limit of liability shall be part of and not in addition to the **Limit of Liability** stated in the Declarations and in no way shall serve to increase the **Limit of Liability** stated therein:

| | | |
|---|---|---|
| (1) | Company Crisis Loss | $50,000 |
| (2) | Derivative Demand Investigation Costs | $250,000 |
| (3) | Books and Records Costs (included within #2 above) | $250,000 |
| (4) | SOX 304/Dodd-Frank 954 Costs | $250,000 |
| (5) | Personal Assets Costs | $250,000 |
| (6) | Personal Reputation Costs | $250,000 |

ALL OTHER TERMS, CONDITION AND EXCLUSIONS REMAIN UNCHANGED

_____
Authorized Representative

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |
| DO 31400 (09-14) | 50713-BPRO8085893-769139 | DO 000900 (09-14) |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## PENDING AND PRIOR LITIGATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Claim**, **Preliminary Inquiry** or any civil, criminal, administrative or regulatory investigation, proceeding, litigation or arbitration pending or prior to 10/23/2020, or any **Wrongful Act** or **Related Wrongful Acts** or any fact circumstance or situation, underlying or alleged in such pending or prior proceeding.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

_____
Authorized Representative

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

DO 31400 (09-14)          50713-BPRO8085893-769139          DO 000900 (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Lordstown Motors Corp. Amendatory Endorsement

In consideration of the premium charged, the following amendments are hereby made to the policy:

Section I, Insuring Agreements, is deleted in its entirety and replaced by:

**I.    INSURING AGREEMENTS**

### COVERAGE A: DIRECTORS AND OFFICERS COVERAGE

This policy shall pay the **Loss** of any **Insured Person** arising from a:

i.    **Claim** made against such **Insured Person**, individually or otherwise**,** for any **Wrongful Act** of such **Insured Person**; and

ii.    **Pre-Claim Inquiry**, to the extent that such **Loss** is **Pre-Claim Inquiry Costs**;

except when and to the extent that the **Company** has indemnified such **Insured Person**.

### COVERAGE B: CORPORATE INDEMNIFICATION COVERAGE

This policy shall pay the **Loss** of the **Company** arising from a:

i.    **Claim** made against an **Insured Person** (including an **Outside Entity Executive**), individually or otherwise, for any **Wrongful Act** of such **Insured Person**; and

ii.    **Pre-Claim Inquiry**, to the extent that such **Loss** is **Pre-Claim Inquiry Costs**;

but only to the extent that such **Company** has indemnified such **Insured Person**.

### COVERAGE C: CORPORATE ENTITY COVERAGE

This policy shall pay the **Loss**:

i.    of the **Company** arising from any **Securities Claim** made against such **Company** for any **Wrongful Act** of such **Company**; or

ii.    incurred by the **Company** or on its behalf by any **Insured Person** of the **Company** (including through any special committee) as **Nominal Defendant Response Costs**.

### COVERAGE D: OUTSIDE ENTITY DIRECTORS AND OFFICERS LIABILITY COVERAGE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** in their **Outside Entity Position** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Insured Persons** applicable to such **Claim**, except when and to the extent that the **Company** has indemnified such **Insured Person**.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

## COVERAGE E: COMPANY CRISIS COVERAGE

The **Insurer** shall pay on behalf of the **Company**, subject to the sub-limit set forth in the endorsement attached to this policy, all **Company Crisis Loss** for a **Crisis** first occurring during the Policy Period or the Extended Reporting Period (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

## COVERAGE F: COSTS OF INVESTIGATION FOR SHAREHOLDER DERIVATIVE DEMANDS AND BOOKS & RECORDS COSTS COVERAGE

This policy shall pay the costs of the **Company** arising from: (i) a **Derivative Demand Investigation** in response to a **Shareholder Derivative Demand**, or (ii) a **Books & Records Demand,** subject to and included within the single sub-limit set forth in the endorsement attached to this policy.

B.  Section II, Definitions, is amended as follows:

1.      The definition of "**Application**" is deleted in its entirety and replaced by:

"**Application** shall mean any public documents filed by the **Company** with the Securities and Exchange Commission during the twelve-month period prior to the inception of this Policy."

2.      Clauses (1) and (2) of the definition of "**Claim**" are deleted in their entirety and replaced by:

"**(1)**    a written demand for monetary, non-monetary, injunctive, or equitable relief, including any demand for mediation, arbitration, or any other alternative dispute resolution process;

**(2)**    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary, injunctive, or equitable relief that is commenced by:

    a.    service of a complaint or similar pleading or equivalent document in a **Foreign Jurisdiction**.

    b.    return of an indictment, information or similar document or equivalent document in a **Foreign Jurisdiction** (in the case of a criminal proceeding); or

    c.    receipt or filing of a notice of charges;"

3.      The following paragraph is added to the end of the definition of **Claim:**

"Solely with respect to Coverage A, and not applicable to any other Coverage Section, any formal demand or proceeding arising out of any statutory liability of the **Insured Persons** due to the failure of the **Company** to deduct, withhold or remit taxes (including non-resident withholding taxes, goods and services taxes, salary or withholding taxes and employee source deductions), unemployment insurance contributions, or pension plan contributions."

4.      The following is added at the end of the definition of **Crisis:**

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement<br>10/23/2022 | Authorized Representative |

DO 31400 (09-14)                    50713-BPRO8085893-769139                    DO 000900 (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

"**Crisis**" shall also include any negative statement about an **Insured Person** made by an **Enforcement Body** during the **Policy Period**, if such statement is made by an individual authorized to speak on behalf of such **Enforcement Body** and is included in any press release or published by any print or electronic media outlet."

5.   The definition of **Crisis Consultant** is deleted in its entirety and replaced by:

"**G.**   "**Crisis Consultant**" means any public relations firm, management firm or law firm retained by the **Company** with the consent of the **Insurer**, such consent not to be unreasonably withheld or delayed, to provide **Crisis Management Services**."

6.   Clause 1of the definition of **Defense Costs** is deleted in its entirety and replaced by:

"**I.**    **(1)**      "**Defense Costs**" means:
A)  the reasonable fees, costs and expenses (including costs of electronic discovery, the cost of an **Electronic Discovery Consultant**, and premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and resulting ~~solely~~ from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding wages, salaries, fees or any other compensation of officers or employees of the **Company**; or

B)  the reasonable fees, costs and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and resulting from an **Insured Person** lawfully opposing, challenging, resisting or defending against any request for, or any effort to obtain, the **Extradition** of that **Insured Person** or appealing any order or other grant of **Extradition** of that **Insured Person**, but excluding wages, salaries, fees or any other compensation of officers or employees of the **Company**.

"**Corporate Manslaughter Act (UK) Costs**" shall be included in "**Defense Costs**".

7.   The definition of **Derivative Demand Investigation Costs** is deleted in its entirety and replaced by:

"**J.**   "**Derivative Demand Investigation Costs**" means the reasonable costs, charges, fees and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by the **Company** or by its board of directors (or an equivalent managing body or equivalent foreign body) or any committee thereof in connection with the investigation or evaluation of a **Shareholder Derivative Demand**. "**Derivative Demand Investigation Costs**" shall not include any wages, salary, fees or other compensation of any employee of the **Company** or of any **Insured Person**.

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement | Authorized Representative |
| 10/23/2022 | |

3

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

**Derivative Demand Investigation Costs** shall also include "**Books and Records Costs**", which means reasonable costs, charges, fees and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by the **Company** in response to a written demand by or on behalf of any shareholder of such **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction anywhere in the world."

8.   The definition of **Electronic Discovery Consultant** is deleted in its entirety and replaced by:

"**K.**   "**Electronic Discovery Consultant**" means any entity retained by an **Insured** with the consent of the **Insurer** (such consent not to be unreasonably withheld or delayed) to assist with respect to the organization, cataloging, preservation, collection, storage and production of electronically stored information in connection with the defense of a **Claim**."

9.   The definition of **Insured Person** is amended as follows:

The following is added to Clause Q. (3):
"And any Management Committee Member of the **Company**."

Q. (5) Is deleted and replaced by:

"an Employed Lawyer, but only with respect to a **Claim** made solely in connection with services rendered to or for the benefit of the **Company** by the Employed Lawyer and continuously maintained against both such Employed Lawyer and an **Insured Person** who is not an Employed Lawyer. As used herein, "Employed Lawyer" means an employee of the **Company** who is admitted to practice law and is employed as a lawyer full time for and salaried by the **Company** at the time of the **Wrongful Act**; or"

The following is added at the end of definition of **Insured Person**:
"**Insured Person**" shall also include any de facto or shadow director.

10.   R.(2) of the definition of **Insured Person Investigation** is deleted in its entirety and replaced with:

"**R. (2)**   in the case of an investigation by an **Enforcement Body** after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or"

11.   The definition of "**Loss**" is amended by:

Under Clause (1) thereof:

i)        U.(1) h. is deleted in its entirety and replaced by:

"U.(1) h.        punitive, exemplary or multiple damages; provided, however, such punitive, exemplary or multiple damages (including the multiplied part of such damages) shall not be covered for **Claims** arising from **Wrongful**

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

**Berkley Insurance Company**

475 Steamboat Road  Greenwich, CT 06830

**Employment Acts**."

ii)    adding "plaintiff's fees for derivative suits";

iii)    adding "**Event Study Expenses**, which means the reasonable fees, costs, and expenses of an expert witness consented to by the **Insurer**, such consent not to be unreasonably withheld or delayed, incurred to conduct an event study regarding price impact solely for the purpose of contesting a motion for class certification actually filed in a **Securities Claim**.";

iv)    adding "unpaid wages or taxes alleged to be or actually owed by the **Company** that are also the personal responsibility of an **Insured Person** under any local, state, federal, or foreign law governing such wages or taxes, but only under Coverage A of this policy and not under any other Coverage Section."

Under Clause 2 thereof:

(i)    U.2.    "a. taxes" is deleted and replaced by:

"a.    taxes, or the loss of benefits, except, solely with respect to Coverage A and not applicable to any other Coverage Section:

    i.    that portion of any tax assessment imposed on any **Insured Person** by a foreign jurisdiction based on the **Insurer's** payment of such damages, judgments, settlements, **Preliminary Inquiry Costs and Defense Costs** as a foreign or non-admitted carrier; or

    ii.    any statutory liability for such taxes owed by any **Insured Person** as described in the definition of **Claim**, as amended regarding tax matters;"

(ii)    U.2.    "b. civil or criminal fines or penalties;" is deleted and replaced by:

"b.    civil or criminal fines or penalties; however, where permissible by law, this shall not apply to **Loss** under Coverage A."

(iii)    U.2.    "c. cleanup costs relating to hazardous materials, pollution, or product defects", solely for Coverage A and not applicable to any other Coverage Section, is deleted.

12.    The definition of "**Personal Asset Costs**" is deleted in its entirety and replaced by:

Z.    "**Personal Assets Costs**" means the reasonable fees, costs and expenses arising from a **Claim**, consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** to oppose any efforts by a **Enforcement Body** to seize, attach, or otherwise enjoin the use of the personal assets or real property of an **Insured Person** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

13.    The definition of "**Preliminary Inquiry**" is amended as follows:

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

5

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

Definition BB. (1) is deleted in its entirety and replaced by:

"**(1)** an **Enforcement Body**, **,** including, but not limited to, when an **Enforcement Body** assumes the role of a trust, receiver, conservator, rehabilitator, liquidator, or similar official to take control of, supervise, or oversee the Insured, or to liquidate or sell all or substantially all of the asses of an **Insured**;"

14.     The definition of "**Preliminary Inquiry Costs**" is deleted in its entirety and replaced by:

"**CC.**     "**Preliminary Inquiry Costs**" means the reasonable fees, costs and expenses consented to by the **Insurer** (such consent not to be unreasonable withheld or delayed) and incurred by an **Insured Person** in connection with the **Insured Person's** preparation and response to a **Preliminary Inquiry**. **Preliminary Inquiry Costs** shall not include the costs of any routine or regularly scheduled regulatory inspection, compliance, review, examination, production or audit conducted in an **Enforcement Body's** routine or ordinary review or compliance process."

15,     The definition of "**Securities Claim**" is amended by adding the following:

GG. (1)c. that is an **Aiding and Abetting Claim**, which means a **Claim** brought by any security holder of an **Acquisition Target**, in their capacity as such, alleging that the **Insured** aided and abetted any breach of fiduciary duty owed the **Acquisition Target's** shareholders, or violation of securities law by the **Acquisition Target** regarding the **Company's** acquisition or proposed acquisition of the **Acquisition Target**.

Coverage for **Aiding and Abetting Claims** shall be limited to **Defense Costs** only and shall not include coverage for any other type of **Loss**.

**Acquisition Target** means any entity that the **Company** has acquired, or proposed to acquire, in a transaction that results in, or would result in, such entity becoming a **Subsidiary**.

16.     The definition of "**SOX 304 / Dodd-Frank 954 Costs**" is deleted in its entirety and replaced by:

"**JJ.**     "**SOX 304/Dodd-Frank 954 Costs**" means the reasonable fees, costs and expenses (including the premium or origination fee for a bond or a loan) incurred by an **Insured Person** and consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) solely to facilitate the return of amounts required to be repaid by such persons pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act; provided; however, **SOX 304/Dodd-Frank 954 Costs** shall not include the payment, return, reimbursement, disgorgement or restitution of any amounts requested or required to be repaid by such persons pursuant to Section 304(a) or Section 954."

17.     The definition of "**Subsidiary**" is amended by increasing the asset threshold described in Clause KK. (4) from 15% to 25%.

18.     The following is added to the definition of **Wrongful Act**:

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

"Any act, error, omission, misstatement, misleading statement, neglect, or breach of duty of an **Insured Person** while acting in their capacity as a "Control Person" as defined under Securities Act of 1933 Section 15 and Securities Act of 1934 Section 20."

19.     The following is added to Section II, **Definitions**:

""**Personal Reputation Costs**" means the reasonable fees, costs and expenses incurred by an **Insured Person** and consented to by the Insurer (such consent not to be unreasonably withheld or delayed) in connection with the retention of a **Crisis Consultant** to minimize effect of a **Personal Reputation Crisis** on such **Insured Person's** reputation.

"**Personal Reputation Crisis**" means negative statements made by an individual authorized to speak on behalf of any federal, state , local or foreign enforcement authority or government investigative authority or the enforcement arm of any securities or commodities exchange or other self-regulatory body, regarding an **Insured Person** and  included in any press release or published by any print or electronic media.

**Loss** shall include **Personal Reputation Costs**."

C.  Section III. Exclusions

1.  Exclusion A is deleted in its entirety and replaced by:

"A. based upon, arising out of, or attributable to any remuneration, personal profit or other financial advantage to which an **Insured** was not legally entitled if established by any final and non-appealable adjudication in the underlying action adverse to such **Insured**; provided, however, that in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, including amendments thereto, this exclusion shall not apply to the portion of any **Loss** attributable to such violations;"

2.  Exclusion C. is deleted in its entirety and replaced by:

"**C.**     for:

   **1)**  physical injury to or destruction of any tangible property, including the loss of use thereof; or

   **2)**  bodily injury, sickness, disease, and death;

provided, however, this exclusion shall not apply to a **Securities Claim**, **Corporate Manslaughter Act (UK) Costs**, to damages or causes of action for emotional distress, mental anguish, defamation, invasion of privacy or humiliation in connection with a **Claim** for a **Wrongful Employment Act**, or to **Loss** under Coverage A."

3.  Exclusion E is deleted in its entirety and replaced by:

"**E.** solely with respect to any employee benefit plan sponsored by the **Company,** for any actual or alleged violations of the Employee Retirement Income Security Act of 1974, as amended, or any similar provisions of any state, local or foreign statutory or common law; further, this exclusion shall not apply to Loss under Coverage A;"

4.  Exclusion G.(1) is deleted in its entirety and replaced by:

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Lordstown Motors Corp. | Policy Number<br>BPRO8085893 | 7 |
| Effective Date of This Endorsement<br>10/23/2022 | Authorized Representative | |

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

"**G.(1)** any **Wrongful Act** alleged in any matter which has been reported, or in any circumstance of which notice has been given and accepted, prior to the **Policy Period**, under any other directors and officers liability insurance policy; or"

5.   The following is added to Exclusion I.:

"4) any **Claim** brought by the **Company** because applicable law requires the **Company** to do so."

6.   The last paragraph of Section III is deleted in its entirety and replaced by the following:

"For the purposes of determining the applicability of any Exclusion, the **Wrongful Acts** of, facts pertaining to, and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**."

7.   The following provisions are added to Section II, Exclusions:

(i)    Solely with respect to Coverage A and not applicable to any other Coverage Section, no exclusion in this policy shall apply to **Defense Costs**.

(ii)   A final, non-appealable adjudication in any underlying action shall not, as used in this Section II. Exclusions, apply to any declaratory action or equivalent proceeding brought by or against the **Company**.

(iii)  No conduct pertaining to any **Insured** shall be imputed to any **Insured Person** for the purposes of applying any exclusions.

D.    Section VI. Notice of Claim or Preliminary Inquiry

Clause A is deleted in its entirety and replaced by:

"**A.** As a condition precedent to rights under this policy, an **Insured** shall provide the **Insurer**, as set forth in Item 8. of the Declarations, written notice of any **Claim** first made against an **Insured**, or any **Crisis** first occurring, during the **Policy Period**, as soon as practicable after the **Company's** Risk Manager or General Counsel (or equivalent position) becomes aware of the **Claim**, or the **Crisis** begins, but in no event later than 90 days after the expiration of the **Policy Period** or Extended Reporting Period (if applicable). Failure to provide notice as provided herein shall not bar coverage under this policy unless the **Insurer** has been materially prejudiced by such failure.

With respect to a **Preliminary Inquiry** first received by an **Insured**, the **Insured** shall have sole discretion whether to provide notice to the **Insurer** of such **Preliminary Inquiry**; however, no coverage shall be afforded for any **Loss** incurred in connection with any **Preliminary Inquiry** prior to the time written notice is given to the **Insurer** pursuant to this Section VI."

E.    Section VII. General Conditions

1.    Clause A, Termination, Cancellation, and Non-Renewal is amended as follows:

(i)    Subpart (4) is amended by increasing 20 days to 30 days.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

DO 31400 (09-14)                    50713-BPRO8085893-769139                    DO 000900 (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

---

    (ii)    Subpart (7) is amended by increasing 60 days to 90 days.

2.    Clause D. Application, Severability, and Nonrescindability is deleted in its entirety and replaced by:

    "D.    The **Application** shall be construed as a separate application for coverage by each **Insured Person.** The knowledge or representations of an **Insured Person** shall not be imputed to any other **Insured Person.**

        Under no circumstances shall the coverage provided by this Policy be deemed void, whether by rescission or otherwise.

        A written renewal **Application** shall not be required in order to receive a renewal quotation from the **Insurer**, although the **Insurer** shall have the right to require specific information upon renewal."

3.    Clause G., Subrogation

    The second paragraph therein is deleted in its entirety and replaced by:

    "The **Insurer** assumes no duty to recover any amounts paid under this policy; however, any amounts as may be recovered pursuant to the exercise of the **Insurer's** rights of subrogation shall be applied as follows: (i) to the repayment of expenses incurred in exercising any rights of subrogation; (ii) to **Loss** in excess of the Limits of Liability hereunder; and (iii) to **Loss** paid by the **Insurer.** Further, solely with respect to items (ii) and (iii) any recoveries by the **Insurer** pursuant to subrogation for payments made under this policy shall reinstate, in an amount equal to such recoveries, the Limits of Liability of this policy that were eroded or exhausted by such payments.

4.    The last sentence of Clause H, Other Insurance, is deleted and replaced by:

    "This policy shall be excess of and shall not contribute with any policy for bodily injury, property damage, or fiduciary liability. Such insurance as is provided by this policy shall apply as primary to any personal umbrella excess liability or personal director liability insurance purchased by an **Insured Person.**"

5.    Clause O to this Section VII. General Conditions, is added:

    **O.**    **Payment of Loss to Insured Person of a Foreign Subsidiary**

    "If payment of **Loss** to an **Insured Person** of a foreign **Subsidiary** is not legally permitted by a foreign country, then such **Loss** shall be paid to such **Insured Persons** in a jurisdiction mutually acceptable to the **Insured Person** and the **Company**."

ALL OTHER TERMS AND CONDITIONS UNCHANGED.

---

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |

9

DO 31400 (09-14)        50713-BPRO8085893-769139        DO 000900 (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |

| Effective Date of This Endorsement | Authorized Representative | |
|---|---|---|
| 10/23/2022 | | |

50713-BPRO8085893-769139    DO 000900 (09-14)

# Berkley Insurance Company

475 Steamboat Road  Greenwich, CT 06830

## Addition of Outside Entity

In consideration of the premium paid for this policy, it is understood and agreed that section II. Definitions W. **"Outside Entity"** is amended by the addition of the following:

**"Outside Entity"** shall include MIH EV Design LLC for any **Wrongful Acts** committed or allegedly committed by an **Insured Person** on or after 05/11/2022.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | Policy Number |
|---|---|
| Lordstown Motors Corp. | BPRO8085893 |
| Effective Date of This Endorsement 10/23/2022 | Authorized Representative |