**Exhibit C**

**The Primary Side A Difference-in-Conditions Policy**



# US Insurance

## Directors and Officers Difference in Conditions Liability

**Policy Number:** ADL30026702600
**Effective Dates:** October 23, 2022 To: October 23, 2023
**Endurance Assurance Corporation**



**Issuing Office:**
303 West Madison
Suite 1800
Chicago, IL 60606
www.sompo-intl.com

PN 0027 0221


SOMPO INTERNATIONAL

## SIDE A DIFFERENCE-IN-CONDITIONS INSURANCE POLICY DECLARATIONS

THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY **CLAIMS** FIRST MADE AGAINST THE **INSUREDS** DURING THE **POLICY PERIOD** OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY **DEFENSE COSTS**. PLEASE READ THIS POLICY CAREFULLY.

Terms that appear in bold face type have special meaning.  Please refer to Section IV. DEFINITIONS.

POLICY NUMBER:           ADL30026702600

INSURER:                 Endurance Assurance Corporation

Item 1.   **Named Insured**:   Lordstown Motors Corp
          Address:             2300 Hallock Young Road
                               LORDSTOWN, OH 44481

Item 2.   **Policy Period**:   From:  October 23, 2022          To:  October 23, 2023
                               (12:01 AM Standard Time at the address of the **Named Insured**.)

Item 3.   Limits of Liability:

          A. Aggregate Limit of Liability: $5,000,000

          B. Sublimits of Liability:

          i.     Each Person Asset Protection Costs Sublimit:                $50,000
          ii.    Asset Protection Costs Aggregate Sublimit:                  $100,000
          iii.   Each Person Liberty Protection Costs Sublimit:              $50,000
          iv.    Liberty Protection Costs Aggregate Sublimit:                $100,000
          v.     Each Person Personal Reputation Costs Sublimit:             $50,000
          vi.    Personal Reputation Costs Aggregate Sublimit:              $100,000
          vii.   Each Person Policy Access Costs Sublimit:                   $50,000
          viii.  Policy Access Costs Aggregate Sublimit:                     $100,000

Item 4.   **Primary Policy**:    Berkley Insurance Company  BPRO8085893

Item 5.    Extended Reporting Period:
            Additional Period:            Additional Premium:
            6 Year                        300% Annual Premium


Item 6.    Notice:

            A. **Claims**, **Inquiries**, and Circumstances:    Commercial Management Liability
                                                                Attn: Claims Department
                                                                1221 Avenue of The Americas
                                                                New York, NY 10020
                                                                Insuranceclaims@sompo-intl.com
                                                                1-877-676-7575

            B.  All Other Notices:                              Commercial Management Liability
                                                                Attn: Professional Lines Underwriting Department
                                                                1221 Avenue of The Americas
                                                                New York, NY 10020


Item 7.    Producer:    Aon Risk Services Central, Inc.
            Address:     200 East Randolph Street
                         12th Floor
                         Chicago, IL 60601


Item 8.    Premium:                        $150,000


Item 9.    Forms and Endorsements Effective at Inception:
            See attached Forms and Endorsements Schedule.


This Policy shall constitute the contract between the **Named Insured**, on behalf of all **Companies** and **Insured Persons**, and the Insurer.


The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_____              _____
                                             February 08, 2023

Authorized Representative                     Date

## SIDE A DIFFERENCE-IN-CONDITIONS INSURANCE POLICY

In consideration of the payment of the premium and subject to all provisions of this Policy, including the Declarations, Schedules, Notices, and Endorsements attached hereto, all of which are made a part of this Policy, the **Named Insured**, on behalf of all **Companies** and **Insured Persons**, and the Insurer agree as follows:

I.  INSURING AGREEMENTS

The following Insuring Agreements shall apply if and to the extent such **Loss** set forth below is not indemnified by the **Company** and not paid by any **Underlying Policy** for any reason, including, but not limited to, the exhaustion of the limit of liability of any such **Underlying Policy** or a **DIC Event**.

A.  Insured Person Liability

The Insurer shall pay **Loss** on behalf of an **Insured Person** on account of a **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** that takes place before the end of the **Policy Period**.

B.  Asset Protection Cost Coverage

The Insurer shall pay **Asset Protection Costs** on behalf of an **Insured Person** that are incurred on account of a **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** that takes place before the end of the **Policy Period**.

C.  Inquiry Cost Coverage

The Insurer shall pay **Inquiry Costs** on behalf of an **Insured Person** on account of an **Inquiry** first received by the **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, in connection with any fact, circumstance, situation, event, transaction, or **Wrongful Act** that takes place before the end of the **Policy Period**, if the **Company** or the **Insured Person** provides notice of such **Inquiry** to the Insurer as set forth in this Policy.

D.  Liberty Protection Cost Coverage

The Insurer shall pay **Liberty Protection Costs** on behalf of an **Insured Person** that are incurred on account of a **Liberty Event** that first takes place during the **Policy Period** or the Extended Reporting Period, if applicable, in connection with any fact, circumstance, situation, event, transaction, or **Wrongful Act** that takes place before the end of the **Policy Period**.

E.  Personal Reputation Cost Coverage

The Insurer shall pay **Personal Reputation Costs** on behalf of an **Insured Person** that are incurred on account of a **Reputation Crisis** that first takes place during the **Policy Period** or the Extended Reporting Period, if applicable, in connection with any fact, circumstance, situation, event, transaction, or **Wrongful Act** that takes place before the end of the **Policy Period**.

F.  Policy Access Cost Coverage

The Insurer shall pay **Policy Access Costs** on behalf of an **Insured Person** that are incurred on account of a **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** that takes place before the end of the **Policy Period**.

## II.  EXTENSIONS

### A.  Outside Position Liability

Subject to the terms and conditions of this Policy, Insuring Agreement A. Insured Person Liability includes coverage for an **Insured Person** in an **Outside Position**. Any such coverage shall be specifically excess of any indemnification and insurance available from, through, or provided by the **Outside Entity**.

### B.  Spouses, Domestic Partners, Estates, Legal Representatives, and Estate Planning Vehicles

Subject to all other terms and conditions of this Policy, coverage under this Policy extends to a **Claim** made against:

1.  the lawful spouse or **Domestic Partner** of an **Insured Person**, but only for a **Claim** against that spouse or **Domestic Partner** due to their status as such, or due to such spouse's or **Domestic Partner's** ownership interest in property from which the claimant seeks recovery;

2.  any trust or other estate planning vehicle of an **Insured Person**, but only for a **Claim** against that estate planning vehicle due to such estate planning vehicle's possession of property from which the claimant seeks recovery; and

3.  the estates, heirs, legal representatives, or assigns of an **Insured Person** who is deceased, legally incompetent, bankrupt, or insolvent;

but only for a **Wrongful Act** of an **Insured Person**, or, if applicable, facts, circumstances, situations, events, or transactions pertaining to an **Insured Person** in their capacity as such. The coverage provided by this Subsection II.B. shall not apply to **Loss** attributable to any act, error, or omission of a spouse, **Domestic Partner**, estate planning vehicle (or any trustee of such estate planning vehicle), estate, heir, legal representative, or assign of any **Insured Person**. All **Claims** or **Loss** to which this Subsection II.B. extends coverage shall be treated as a **Claim** against, or **Loss** of, an **Insured Person** for purposes of applying the provisions of this Policy.

### C.  Extended Reporting Period

1.  Upon Nonrenewal

    If the **Named Insured** or Insurer nonrenews this Policy, then the **Company** and the **Insured Persons** shall have the right to purchase an Extended Reporting Period to immediately follow the end of the **Policy Period** for a length of time set forth in the Declarations. The right to purchase such an Extended Reporting Period will lapse unless, within sixty (60) days following the end of the **Policy Period**, the Insurer receives written notice of the Extended Reporting Period option elected along with payment of the additional premium for such Extended Reporting Period as set forth in the Declarations.

2.  Upon Change in Control

    In the event of a change in control of the **Named Insured** as described in Subsection IX.A. Change

in Control of the Named Insured, the **Company** and the **Insured Persons** may request an Extended Reporting Period of up to six (6) years in duration to follow the effective date of the change in control. If the **Company** or an **Insured Person** requests such an Extended Reporting Period, then the Insurer shall, in its sole discretion, determine whether to offer an Extended Reporting Period, and the length of time and premium for any such Extended Reporting Period. The right to request such an Extended Reporting Period will lapse unless the Insurer receives the **Company's** or an **Insured Person's** written request for such an Extended Reporting Period before the end of the **Policy Period**.

3.  Coverage under any Extended Reporting Period shall apply only to:

    a.  **Claims** first made during the Extended Reporting Period, and only with respect to **Wrongful Acts** actually or allegedly taking place before the effective date of the relevant nonrenewal or change in control; and

    b.  **Inquiries** first received by an **Insured Person**, or **Liberty Events** or **Reputation Crises** that first take place, during the Extended Reporting Period and only for such **Inquiries**, **Liberty Events**, or **Reputation Crises** pertaining to facts, circumstances, situations, events, transactions, or **Wrongful Acts** actually or allegedly taking place before the effective date of the relevant nonrenewal or change in control.

    Subject to Subsection VI.B. Single Claims, any such **Claim**, **Inquiry**, **Liberty Event**, or **Reputation Crisis** will be deemed to have been first made, received, or taken place, as applicable, during the **Policy Period**.

4.  An Extended Reporting Period cannot be canceled by the **Company** or an **Insured Person** and cannot be canceled by the Insurer except for non-payment of premium if a premium is required for such Extended Reporting Period.

5.  In no event will more than one Extended Reporting Period be available to any **Insured Person** under this Policy.

## III. ELEVATED FOLLOW FORM

In the event that the **Primary Policy** contains terms and conditions that are more favorable with respect to coverage for the **Insured Persons** than the terms and conditions of this Policy, then, to the extent permitted by applicable law, rules, and regulations, the Insurer shall apply those more favorable terms and conditions to this Policy; except that this Section III. shall not apply to the Declarations, Limits of Liability (including any reinstated limits of liability), any endorsements to this Policy, any claims-made and reported provision, or any provision regarding notice, cancellation and nonrenewal, other insurance, subrogation, defense obligations, defense costs within limits, or premiums of this Policy. In no event shall this Policy cover any claim against the **Company** or any amount the **Company** indemnifies, advances, or pays on behalf of an **Insured Person**.

Notwithstanding the foregoing, if any **Loss** not otherwise subject to a sublimit of liability under this Policy is subject to a sublimit of liability under the **Primary Policy**, then this Policy shall, subject to all other provisions of this Policy, provide coverage for such **Loss** subject to a sublimit of liability equal to the sublimit of liability for such **Loss** under the **Primary Policy**. Such sublimit of liability under this Policy shall be part of, and not in addition to, the Aggregate Limit of Liability set forth in the Declarations. With respect to any **Loss** subject to a specific sublimit of liability under this Policy, the sublimit of liability applicable to such **Loss** as set forth in this Policy shall apply without regard to any sublimit of liability applicable to such

**Loss** under the **Primary Policy**.

IV.  DEFINITIONS

Whether in the singular or plural:

**Asset Protection Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) to which the Insurer has provided its consent, which shall not be unreasonably withheld or delayed, and incurred by an **Insured Person** to:

1.  oppose any effort by an **Enforcement Body** to seize or otherwise enjoin such **Insured Person's** personal assets or real property; or

2.  obtain the discharge or revocation of a court order which in any way impairs the use of such **Insured Person's** personal assets or real property.

**Claim** means:

1.  a written demand or similar document received by an **Insured Person**:

    a.  for monetary or non-monetary relief, including a demand for injunctive relief; or

    b.  to engage in an arbitration, mediation, or other alternative dispute resolution proceeding;

2.  a civil proceeding commenced by the service of a complaint or similar pleading;

3.  a criminal proceeding commenced by:

    a.  the return of an indictment, information, or similar document;

    b.  the arrest of, or the issuance of an arrest warrant for, an **Insured Person**; or

    c.  a request for the extradition of any **Insured Person**;

4.  a formal administrative or regulatory proceeding, other than an investigatory proceeding, commenced by the filing of a notice of charges, complaint, or similar document; or

5.  a formal or informal criminal, administrative, or regulatory investigation of an **Insured Person**, other than an **Inquiry**, commenced by the service upon or other receipt by the **Insured Person** of a formal investigative order, a written notice, including a Wells Notice, target letter, search warrant, or a subpoena from an investigating authority that identifies such **Insured Person** as an individual against whom a formal proceeding may be commenced;

including an appeal from any of the foregoing; or

6.  a written request received by an **Insured Person** to toll or waive a statute of limitations with respect to a **Wrongful Act**.

Solely for purposes of providing coverage to an **Insured Person** for **Corporate Manslaughter Costs**, a claim against the **Company** pursuant to the United Kingdom Corporate Manslaughter and Corporate Homicide

Act of 2007 or any similar statute in any jurisdiction shall be deemed a **Claim** against an **Insured Person**.

Solely with respect to Insuring Agreement C. Inquiry Cost Coverage, **Claim** means only an **Inquiry**, but only if the **Company** or **Insured Person** provides written notice of such **Inquiry** to the Insurer pursuant to the terms of this Policy.

Solely with respect to Insuring Agreement D. Liberty Protection Cost Coverage, **Claim** means only a **Liberty Event**.

Solely with respect to Insuring Agreement E. Personal Reputation Cost Coverage, **Claim** means only a **Reputation Crisis**.

**Company** means the **Named Insured** and any **Subsidiaries**, including any such organization as a debtor-in-possession under United States bankruptcy law or an equivalent status under foreign law.

**Compensation Clawback Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) to which the Insurer has provided its consent, which shall not be unreasonably withheld or delayed, and incurred by an **Insured Person** to facilitate the return of amounts required to be repaid by such **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, Sections 210 and 954 of the Dodd-Frank Act of 2010, or any similar statute in any jurisdiction.

**Corporate Manslaughter Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) incurred by an **Insured Person** that result solely from a claim against the **Company** pursuant to the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar statute in any jurisdiction.

**Defense Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**):

1. incurred by or on behalf of an **Insured Person**: (a) in investigating, defending, settling, or appealing **Claims**, and the premiums for appeal, attachment, or similar bonds, provided the Insurer has no obligation to furnish any such bonds; or (b) at the Insurer's request to assist the Insurer in investigating a **Claim**;

2. incurred by or on behalf of an **Insured Person** in investigating or defending a demand or proceeding for the return of certain compensation of such **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Act of 2010 or other similar statute in any jurisdiction; or

3. incurred by or on behalf of an **Insured Person** through legal counsel in challenging, opposing, resisting, or defending against any request for the extradition of an **Insured Person**, or appealing any order granting extradition of an **Insured Person**.

Solely with respect to Insuring Agreement C. Inquiry Cost Coverage, **Defense Costs** means only **Inquiry Costs**.

Solely with respect to Insuring Agreement D. Liberty Protection Cost Coverage, **Defense Costs** means only

**Liberty Protection Costs**.

Solely with respect to a matter deemed a **Claim** against an **Insured Person** pursuant to the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction, **Defense Costs** means only **Corporate Manslaughter Costs**.

**DIC Event** means, for any reason:

1. an insurer of an **Underlying Policy** has failed to pay the **Loss** of an **Insured Person** by the greater of either the time required by such **Underlying Policy** for payment of such **Loss** or sixty (60) days; or

2. an insurer of an **Underlying Policy** has refused to pay the **Loss** of an **Insured Person**;

after such **Insured Person's** written request for such payment.

**Domestic Partner** means any natural person recognized by federal, state, local, or foreign law, or by the **Company**, as a domestic partner or a party to a civil union.

**Employee** means a natural person other than an **Executive**:

1. whose labor or service an organization has the right to direct and control, including any full-time, part-time, leased, temporary, or seasonal employee, volunteer, or intern; or

2. who is an independent contractor of an organization, but only to the extent that the organization has agreed to or is required to provide indemnification to such independent contractor pursuant to a written contract, and only to the extent that such independent contractor is performing work for or on behalf of such organization pursuant to a written contract.

**Enforcement Body** means:

1. any federal, state, local, or foreign law enforcement authority or other governmental authority (including, but not limited to, the United States Department of Justice, the United States Securities and Exchange Commission, or any attorney general); or

2. the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

**Executive** means a natural person:

1. duly elected or appointed director, officer, trustee, advisory director, **Manager**, governor, controller, general partner, managing partner, risk manager, in-house general counsel, director of investor relations, director of human resources, or member of a duly constituted committee or board of an organization (including a duly constituted advisory board or advisory committee of an organization); or

2. *de facto* director, prospective director (as identified in a Form S-1 or S-4 filed with the U.S. Securities and Exchange Commission), or shadow director (as defined in the United Kingdom Companies Act 2006) of an organization; or

the functional or foreign equivalent of any of the foregoing positions.

**Financial Impairment** means the status of an organization resulting from:

1. the appointment by any state or federal official, agency, or court of any receiver, conservator,

liquidator, trustee, rehabilitator, or similar official to take control of, supervise, manage, or liquidate such organization; or

2.  such organization becoming a debtor-in-possession under United States bankruptcy law, or equivalent status under foreign law.

**Independent Director** means a natural person who was, now is, or shall become a director or **Manager** of a **Company** and who has never been an officer or employee of any **Company**.

**Inquiry** means a verifiable request or demand that an **Insured Person**: (i) appear at an interview or deposition; (ii) appear at a meeting or provide testimony; or (iii) produce documents, including electronic records, or information; pertaining to the business of the **Company** or the **Insured Person's** capacity as such, if such request or demand is:

1.  by an **Enforcement Body**; provided that such request or demand is not part of a routine or regularly scheduled audit, inspection, or general oversight or compliance activity; or

2.  by or on behalf of a **Company** (including its board of directors or equivalent governing body, or any committee of its board of directors or equivalent governing body); provided that such request or demand arises from: (a) a request, demand, or subpoena by an **Enforcement Body** upon the **Company** that is not part of a routine or regularly scheduled audit, inspection, or general oversight or compliance activity; or (b) a securityholder derivative demand upon the **Company**.

**Inquiry Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) incurred by an **Insured Person** in responding to an **Inquiry**. With respect to the production of documents, including electronic records, or other information in connection with an **Inquiry**, **Inquiry Costs** includes only the costs to produce such documents, including electronic records, or information that are solely in the possession and control of the **Insured Person**.

**Insured Penalties** means civil money penalties imposed on an **Insured Person** for an unintentional and non-willful violation of the law, including, but not limited to, civil penalties imposed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B), any such penalty identified in Section 308 of the Sarbanes-Oxley Act of 2002, and penalties imposed on an **Insured Person** pursuant to Section 11(1)(a) of Chapter 23 of the U.K. Bribery Act 2010.

**Insured Person** means a natural person who was, now is, or becomes:

1.  an **Executive** of a **Company** in their capacity as such or in an **Outside Position**; or

2.  an **Employee** of a **Company** in their capacity as such, but solely with respect to a **Claim** brought and continuously maintained against both such **Employee** and an **Executive** of a **Company** in their capacity as such.

**Interrelated** means having as a common nexus any fact, circumstance, situation, event, transaction, or cause or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Liberty Event** means the arrest or confinement of an **Insured Person**, in their capacity as such, by or on behalf of any governmental law enforcement authority to a specific residence or secure custodial premises operated by or on behalf of any such law enforcement authority, provided such arrest or confinement pertains to the business of the **Company** or the **Insured Person's** capacity as such.

**Liberty Protection Costs** means:

1.  means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) consented to in writing by the Insurer, such consent not to be unreasonably withheld or delayed, and incurred by an **Insured Person** in order to lawfully seek the release of such **Insured Person** from arrest or confinement; or

2.  reasonable premiums (but not collateral) consented to in writing by the Insurer, such consent not to be unreasonably withheld or delayed, and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of such **Insured Person** for a specified amount required by a court, that are incurred or required outside the United States; provided that the Insurer shall have no obligation to furnish any such bond or financial instrument;

on account of a **Liberty Event**.

**Loss** means amounts that an **Insured Person** becomes legally obligated to pay on account of a **Claim**, including, but not limited to, damages (including punitive or exemplary damages or the multiple portion of a multiplied damage award), judgments, any award of pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments (including any plaintiffs' attorneys' fees), settlement amounts, **Defense Costs**, **Insured Penalties**, **Compensation Clawback Costs**, **Asset Protection Costs**, **Personal Reputation Costs**, and **Policy Access Costs**.

**Loss** does not include:

1.  any amount for which an **Insured Person** is absolved from payment;

2.  fines or penalties, other than **Insured Penalties**;

3.  taxes, other than taxes imposed upon a **Company** for which the **Insured Persons** are legally liable by reason of **Financial Impairment** of the **Company**;

4.  amounts uninsurable under the law pursuant to which this Policy is construed; or

5.  any pre-judgment or post-judgement interest with respect to any amount that is not **Loss** otherwise covered under this Policy;

provided that:

a.  Paragraphs 1. through 5. above shall not apply to **Defense Costs** on account of an otherwise covered **Claim**; and

b.  the Insurer shall not assert that any amounts incurred by an **Insured Person** due to an actual or alleged violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended, are uninsurable.

In determining the insurability of punitive or exemplary damages, the multiple portion of a multiplied damage award, taxes, or **Insured Penalties**, the law of an applicable jurisdiction most favorable to the insurability of such amounts shall apply (including, without limitation, the internal laws of the jurisdictions of the United Kingdom, if applicable); provided that such jurisdiction has a substantial relationship to the **Insured Person**, the Insurer, the **Claim**, or this Policy.

**Management Control** means:

1. ownership of more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, trustees, **Managers**, or equivalent executives of an organization; or

2. possession of the right, pursuant to a written contract with, or the bylaws, charter, operating agreement, or similar document of, an organization, to elect or appoint a majority of the directors, trustees, **Managers**, or equivalent executives of such organization.

**Manager** means a natural person manager, managing member, member of the board of managers, or equivalent executive of an organization that is a limited liability company.

**Named Insured** means the organization designated as such in the Declarations.

**Outside Entity** means any organization, other than a **Company**, that is chartered and operated as a not-for-profit organization, or any other entity specifically included as an **Outside Entity** by endorsement to this Policy.

**Outside Position** means the position of director, officer, **Manager**, trustee, board observer, or equivalent executive position held by an **Executive** of a **Company** in an **Outside Entity**, if service in such position is with the knowledge and express consent of, or at the direction or request of, the **Company**.

**Personal Reputation Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) incurred by an **Insured Person** and charged by an outside law firm, public relations firm, or crisis management firm in connection with a **Reputation Crisis**. Notwithstanding anything in this Policy to the contrary, if all other terms and conditions of this Policy have been satisfied, the Insurer's consent shall not be required prior to an **Insured Person** incurring **Personal Reputation Costs**.

**Policy Access Costs** means reasonable costs, charges, fees (including, but not limited to, attorney fees and expert fees), and expenses (other than regular or overtime wages, salaries, fees, or benefits of the **Executives** or **Employees** of, or overhead expenses of, any **Company**) incurred by an **Insured Person** in defending against efforts by any other **Insured Person** or any third party to seize or attach this Policy, or otherwise block or restrict such **Insured Person** from gaining access to the proceeds of this Policy.

**Policy Period** means the period designated as such in the Declarations, subject to prior termination in accordance with the terms of this Policy.

**Primary Policy** means the insurance policy designated as such in the Declarations.

**Reputation Crisis** means any negative statement about an **Executive** of a **Company** made by an **Enforcement Body** that is included in any press release or published or broadcast by any print or electronic media outlet.

**Subsidiary** means:

1. any organization during the time a **Company** directly or indirectly has **Management Control** of such organization;

2. any foundation, charitable trust, or political action committee during the time that such foundation, charitable trust, or political action committee is controlled or exclusively sponsored by one or more **Companies**; or

3. any organization deemed to be a subsidiary under the **Primary Policy**, but only to the extent such organization's **Insured Persons** are included as insureds under the **Primary Policy**;

subject to Subsections IX.B. New Organizations and IX.C. Former Organizations.

**Underlying Policy** means:

1. the **Primary Policy** and any policy of insurance that is written as specific excess insurance over the **Primary Policy** that provides coverage to an **Insured Person** in their capacity as such; and

2. any other valid and collectible policy of insurance that provides coverage to an **Insured Person** in their capacity as such.

**Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **Insured Person** in their capacity as such or in an **Outside Position**;

2. any matter claimed against an **Insured Person** by reason of serving in their capacity as such or serving in an **Outside Position**; provided that this Paragraph 2. shall not apply to an **Insured Person** in their capacity as a general partner in a **Company** or an **Outside Entity** that is a partnership; or

3. any matter claimed against an **Insured Person** solely in their capacity as a fiduciary pursuant to the Employee Retirement Income Security Act of 1974, as amended, or any similar local, state, federal, or foreign law with respect to an employee welfare or employee benefit plan solely for the benefit of the employees of the **Company**.

V. EXCLUSION

The Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or attributable to:

A. an **Insured Person** having committed any deliberate criminal or deliberate fraudulent act or omission; or

B. an **Insured Person** having gained any profit, remuneration, or advantage to which such **Insured Person** was not legally entitled;

if established by a final and non-appealable judgment or adjudication adverse to such **Insured Person** in the underlying action; except that:

1. this Exclusion shall not apply to:

   a. **Defense Costs**; or

   b. **Independent Directors**; and

2. Paragraph B. of this Exclusion shall not apply to:

    a. **Compensation Clawback Costs**; or

    b. **Loss** on account of a **Claim** for an actual or alleged violation of Sections 11, 12, or 15 of the Securities Act of 1933, as amended, unless a final and non-appealable judgment or adjudication adverse to such **Insured Person** in the underlying action establishes that such **Loss** is profit or remuneration to which such **Insured Person** was not legally entitled.

Notwithstanding any provision of this Exclusion to the contrary, with respect to an act or omission that is treated as a criminal violation in a foreign jurisdiction but not treated as a criminal violation in the United States of America, the imposition of a criminal fine or criminal sanction in such foreign jurisdiction will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act or omission occurred.

For purposes of determining the applicability of this Exclusion, the conduct of one **Insured Person** shall not be imputed to any other **Insured Person**.

## VI. LIMITS OF LIABILITY AND SINGLE CLAIMS

A. Limits of Liability

1. Aggregate Limit of Liability

The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** under all Insuring Agreements combined is the Aggregate Limit of Liability set forth in the Declarations. If the Aggregate Limit of Liability is exhausted by the payment of **Loss**, then the Insurer's obligations with respect to the payment of **Loss** under this Policy shall be completely fulfilled and extinguished.

2. Asset Protection Costs Sublimits

The Insurer's maximum aggregate liability for all **Asset Protection Costs** for each **Insured Person** is the Each Person Asset Protection Costs Sublimit set forth in the Declarations, which is part of, and not in addition to, the Asset Protection Costs Aggregate Sublimit set forth in the Declarations. The Insurer's maximum aggregate liability for all **Asset Protection Costs** for all **Insured Persons** on account of all **Claims** is the Asset Protection Costs Aggregate Sublimit set forth in the Declarations, which is part of, and not in addition to, the Aggregate Limit of Liability set forth in the Declarations.

3. Liberty Protection Costs Sublimits

The Insurer's maximum aggregate liability for all **Liberty Protection Costs** for each **Insured Person** is the Each Person Liberty Protection Costs Sublimit set forth in the Declarations, is part of, and not in addition to, the Liberty Protection Costs Aggregate Sublimit set forth in the Declarations. The Insurer's maximum aggregate liability for all **Liberty Protection Costs** for all **Insured Persons** on account of all **Liberty Events** is the Liberty Protection Costs Aggregate Sublimit set forth in the Declarations, which is part of, and not in addition to, the Aggregate Limit of Liability set forth in the Declarations.

4. Personal Reputation Costs Sublimits

The Insurer's maximum aggregate liability for all **Personal Reputation Costs** for each **Insured Person** is the Each Person Personal Reputation Costs Sublimit set forth in the Declarations, which is part of, and not in addition to, the Personal Reputation Costs Aggregate Sublimit set forth in the Declarations. The Insurer's maximum aggregate liability for all **Personal Reputation Costs** for all **Insured Persons** on account of all **Reputation Crises** is the Personal Reputation Costs Aggregate Sublimit set forth in the Declarations, which is part of, and not in addition to, the Aggregate Limit of Liability set forth in the Declarations.

5. Policy Access Costs Sublimit

The Insurer's maximum aggregate liability for all **Policy Access Costs** for each **Insured Person** is the Each Person Policy Access Costs Sublimit set forth in the Declarations, which is part of, and not in addition to, the Policy Access Costs Aggregate Sublimit set forth in the Declarations. The Insurer's maximum aggregate liability for all **Policy Access Costs** for all **Insured Persons** on account of all **Claims** is the Policy Access Costs Aggregate Sublimit set forth in the Declarations, which is part of, and not in addition to, the Aggregate Limit of Liability set forth in the Declarations.

6. Defense Costs Within Limits of Liability

**Defense Costs** are part of, and not in addition to, the applicable Limits of Liability, and payment by the Insurer of **Defense Costs** shall reduce and may totally exhaust such Limits of Liability.

7. Extended Reporting Period Limits of Liability

The Limits of Liability for any Extended Reporting Period shall be the remaining portion, if any, of the applicable Limit of Liability for the **Policy Period**. Such limits shall be part of, and not in addition to, the Aggregate Limit of Liability for the **Policy Period**. In no event shall an Extended Reporting Period increase or reinstate any applicable Limit of Liability.

B. Single Claims

All **Claims**, **Inquiries**, **Liberty Events**, and **Reputation Crises** that arise out of or in connection with the same fact, circumstance, situation, event, transaction, or **Wrongful Act** or facts, circumstances, situations, events, transactions, or **Wrongful Acts** that are **Interrelated** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against an **Insured Person**, the first of any such **Inquiries** for which an **Insured Person** seeks coverage is received by an **Insured Person**, or when the first of any such **Liberty Events** or **Reputation Crises** first takes place, whether such date is before or during the **Policy Period**.

VII. DEFENSE AND SETTLEMENT AND COOPERATION

A. Defense and Settlement

1. The **Insured Persons** and not the Insurer shall have the duty to select defense counsel and defend all **Claims** covered under this Policy.

2. The **Insured Persons** shall not select defense counsel, incur any **Defense Costs**, admit any liability, offer to settle or settle any **Claim**, stipulate to any judgment, or otherwise assume any obligation with respect to any **Claim** that is covered or is reasonably likely to be covered, in whole or in part, by this Policy, without the Insurer's prior consent, which shall not be unreasonably withheld or delayed. The Insurer shall not be liable for any **Loss** as a result of any **Defense Costs**, admission of

liability, offer to settle, settlement, stipulated judgment, or assumed obligation, to which it has not consented. Notwithstanding the foregoing, an **Insured Person** shall have no obligation to obtain the Insurer's consent prior to:

    a.   entering into a plea agreement or deferred prosecution agreement with an **Enforcement Body** that resolves a pending criminal charge or potential criminal charge;

    b.   entering into a non-monetary settlement or any other settlement where no payment is or will be sought or required from the Insurer; or

    c.   reporting to an **Enforcement Body** or the **Company** that a breach of law or regulation may have occurred.

3.   The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insured Persons** in the investigation, defense, and settlement of any **Claim** that is or reasonably could be covered in whole or in part by this Policy.

4.   The Insurer shall advance **Defense Costs** on a current basis, but in no event later than forty-five (45) days following receipt of itemized bills for such **Defense Costs**. Notwithstanding the foregoing, if it is ultimately established that any such **Defense Costs** are not covered, then the **Insured Persons**, severally according to their interests, shall repay such **Defense Costs** to the Insurer.

5.   The Insurer is entitled to pay **Loss** under this Policy as it becomes due and payable by the **Insured Persons** without regard to other future payment obligations.

6.   In the event the **Insured Persons** and all insurers of the relevant **Underlying Policies** elect not to appeal a judgment in a particular **Claim**, then the Insurer shall not take such appeal.

B.   Cooperation

The **Insured Persons** and **Company** agree to provide the Insurer with all information, assistance, and cooperation that the Insurer reasonably requests with respect to any **Claim**; provided that the failure of an **Insured Person** or **Company** to provide such information, assistance, and cooperation shall not impair the rights of any other **Insured Person** under this Policy. The **Insured Persons** and **Company** agree that they will: (i) do nothing knowingly that will prejudice the Insurer's position; and (ii) do nothing to prejudice the Insurer's potential or actual rights of recovery with respect to **Loss** paid under this Policy.

VIII. NOTICES

A.   Notice of Claims

As a condition precedent to the coverage provided by this Policy, the **Company** or an **Insured Person** shall report a **Claim**, other than an **Inquiry**, as soon as practicable after the risk manager, in-house general counsel, or the functional equivalent of the foregoing in a **Company**, or the **Insured Person**, first becomes aware of such **Claim**, but no later than:

1.   with respect to **Claims** first made during the **Policy Period**:

    a.   ninety (90) days following the end of the **Policy Period** if the Policy is not renewed; or

b.  one hundred eighty (180) days following the end of the **Policy Period** if the Policy is renewed; or

2.  with respect to **Claims** first made during the Extended Reporting Period, if applicable, no later than the end of the Extended Reporting Period.

The failure of the **Company** or the **Insured Person** to provide notice of a **Claim** as soon as practicable shall not preclude coverage under this Policy for any such **Claim** unless the Insurer is materially prejudiced by such failure, provided that such notice occurs within the time period specified in Paragraphs 1. and 2. of this Subsection A.

B.  Notice of Inquiries

If an **Insured Person** elects to seek coverage for an **Inquiry**, then the **Company** or the **Insured Person** shall report such **Inquiry** to the Insurer as soon as practicable after the **Insured Person** first receives such **Inquiry**, but no later than ninety (90) days following the end of the **Policy Period**, or with respect to an **Inquiry** first received by an **Insured Person** during the Extended Reporting Period, if applicable, no later than the end of the Extended Reporting Period. The failure of the **Company** or **Insured Person** to provide notice of an **Inquiry** as soon as practicable shall not preclude coverage under this Policy for any such **Inquiry** unless the Insurer is materially prejudiced by such failure, provided that such notice occurs no later than ninety (90) days following the end of the **Policy Period**, or with respect to an **Inquiry** first received by an **Insured Person** during the Extended Reporting Period, if applicable, no later than the end of the Extended Reporting Period.

C.  Notice of Circumstances

If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Company** or an **Insured Person** becomes aware of a fact, circumstance, or **Wrongful Act** that could give rise to a **Claim** against an **Insured Person** under this Policy and the **Company** or the **Insured Person** gives written notice with particularity, of such fact, circumstance, or **Wrongful Act** to the Insurer during the **Policy Period** or the Extended Reporting Period, if applicable, then any **Claim** subsequently arising from such facts, circumstances, or **Wrongful Act** shall be deemed to have been first made during the **Policy Period**. No coverage is afforded for fees, expenses, or other loss incurred in connection with such potential **Claim** prior to the time such circumstances result in a **Claim**.

If the **Company** or an **Insured Person** elects not to report a fact, circumstance, or **Wrongful Act** that it became aware of under any policy of insurance issued by the Insurer of which this Policy is a direct or indirect renewal, then if a **Claim** that arises out of any such fact, circumstance, or **Wrongful Act** is first made during the **Policy Period**, then subject to the applicable reporting requirements set forth in this Section VIII., coverage for any such **Claim** shall not be denied under this Policy due to such **Company's** or **Insured Person's** failure to report such fact, circumstance, or **Wrongful Act** under such previous policy.

As a condition precedent to exercising their rights hereunder, the **Company** or the **Insured Person** shall include within any such notice, to the extent known, a description of the fact, circumstance, or **Wrongful Act** that is the subject of the notice, the nature and extent of the potential damages, the names of the potential claimants, the manner in which the **Company** or **Insured Person** first became aware of such fact, circumstance, or **Wrongful Act**, and give the Insurer such additional information and cooperation as it may reasonably request.

D.  Any notice to the insurer of an **Underlying Policy** shall not constitute notice to the Insurer unless also

given to the Insurer pursuant to this Section VIII.

E.   Notice of Changes to Underlying Insurance

The **Named Insured** shall give written notice to the Insurer as soon as practicable after the risk manager, in-house general counsel, or the functional equivalent of the foregoing in a **Company** first becomes aware of:

1.   any material change in the terms or conditions of the **Primary Policy** or any policy of insurance that is written as specific excess insurance over the **Primary Policy**; or

2.   the nonrenewal or cancellation of the **Primary Policy** or any policy of insurance that is written as specific excess insurance over the **Primary Policy**;

occurring during the **Policy Period** or the Extended Reporting Period, if applicable. Any additional premium reasonably required by the Insurer as a result of such change, nonrenewal, or cancellation shall be paid within thirty (30) days of the request therefor by the Insurer.

IX.   CHANGES IN EXPOSURE

A.   Change in Control of the Named Insured

If during the **Policy Period**:

1.   the **Named Insured** merges into or consolidates with another organization such that the **Named Insured** is not the surviving entity; or

2.   another organization or person or group of organizations or persons acting in concert acquires:

    a.   **Management Control** of the **Named Insured**; or

    b.   all or substantially all of the assets of the **Named Insured**;

then coverage under this Policy shall continue until the termination of the **Policy Period** or any Extended Reporting Period, if applicable, provided that such coverage shall apply only with respect to **Claims** for **Wrongful Acts** that take place before such merger, consolidation, or acquisition or **Inquiries**, **Liberty Events**, or **Reputation Crises** pertaining to facts, circumstances, situations, events, transactions, or **Wrongful Acts** that take place before such merger, consolidation, or acquisition.

B.   New Organizations

If before or during the **Policy Period**:

1.   the **Company** acquires or creates an organization such that the **Company** obtains **Management Control** of such organization or acquires an organization by merger or consolidation; and

2.   if, as a result of any such acquisition or creation described in Paragraph 1. above, such

organization's **Insured Persons** are included as insureds under the **Primary Policy**;

then such organization shall become a **Subsidiary** and this Policy shall automatically apply to the **Insured Persons** of any such new **Subsidiary** in their capacity as such, provided that such coverage shall apply only with respect to **Claims** for **Wrongful Acts** that take place after such acquisition or creation or **Inquiries**, **Liberty Events**, or **Reputation Crises** pertaining to facts, circumstances, situations, events, transactions, or **Wrongful Acts** that take place after such acquisition or creation.

C.  Former Organizations

If before or during the **Policy Period** an organization ceases to qualify as a **Subsidiary**, then coverage under this Policy for the **Insured Persons** of such organization in their capacity as such shall continue until the end of the **Policy Period** and any Extended Reporting Period, if applicable, but such coverage shall apply only with respect to **Claims** for **Wrongful Acts** that take place before the time such organization ceased to qualify as a **Subsidiary** or **Inquiries**, **Liberty Events**, or **Reputation Crises** pertaining to facts, circumstances, situations, events, transactions, or **Wrongful Acts** that take place before the time that such organization ceased to qualify as a **Subsidiary**.

D.  In all events there shall be no coverage under this Policy for any **Claims** for any **Wrongful Acts** of **Insured Persons** of a **Subsidiary** in their capacity as such, or any **Inquiries**, **Liberty Events**, or **Reputation Crises** of **Insured Persons** of a **Subsidiary** in their capacity as such, pertaining to facts, circumstances, situations, events, transactions, or **Wrongful Acts**, that, in any case, take place before the time such **Subsidiary** qualifies as a **Subsidiary** or after the time such **Subsidiary** ceases to qualify as a **Subsidiary**.

X.  NON-RESCINDABLE POLICY

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under this Policy.

XI.  POLICY TERMINATION

A.  Cancellation

1.  This Policy may not be cancelled by or on behalf of the **Named Insured** or any **Insured Person** for any reason.

2.  The Insurer may cancel this Policy only for nonpayment of premium. In such event, the Insurer shall provide notice of cancellation to the **Named Insured** at least twenty (20) days before the effective time of cancellation. Notice of cancellation shall state the reason for cancellation and the effective date of cancellation. In the event of cancellation by the Insurer, the Insurer shall refund any unearned premium computed on a pro rata basis. The return or tender of a return premium is not a condition precedent to the cancellation becoming effective at the time specified in the cancellation notice.

B.  Nonrenewal

If the Insurer elects not to renew this Policy, then the Insurer shall provide notice of nonrenewal to the **Named Insured** at least sixty (60) days before the expiration of the **Policy Period**. Such notice shall state the reason for nonrenewal.

An offer by the Insurer of renewal terms, conditions, limits, or premiums different from those in effect prior to renewal shall not constitute a nonrenewal.

C.  Notice of Termination

The Insurer shall mail or deliver notice of cancellation or nonrenewal in writing to the **Named Insured**, and to the **Named Insured's** authorized agent or broker of record, if any. Proof of mailing will be sufficient proof of notice. Proof of delivery of the notice shall be treated the same as mailing.

XII.  GENERAL CONDITIONS

A.  Alteration and Assignment

No change or modification of the terms or any rights under this Policy, or assignment of interest under this Policy, shall be effective except when made by a written endorsement to this Policy issued by the Insurer.

B.  Authorization

By acceptance of this Policy, the **Insured Persons** agree that the **Named Insured** shall act on behalf of all **Insured Persons** with respect to giving and receiving notices under this Policy, paying premiums, receiving any return premiums that may become due under this Policy, agreeing to any changes to this Policy, and purchasing an Extended Reporting Period; provided that this shall not limit the ability of an **Insured Person** or **Company** to purchase an Extended Reporting Period or to give notice to the Insurer of a **Claim** or a fact, circumstance, or a **Wrongful Act** that could give rise to a **Claim** pursuant to the terms and conditions of this Policy.

C.  Bankruptcy

Bankruptcy or insolvency of the **Company** or any **Insured Person** or of the estate of the **Company** or any **Insured Person** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law or any similar state, local, or foreign law, then:

1.  the **Insured Persons** and the **Company** hereby waive and release any automatic stay or injunction which may apply in such proceeding to this Policy or its proceeds under such bankruptcy law; and

2.  the **Insured Persons**, the **Company**, and the Insurer agree not to oppose or object to any efforts by the **Insured Persons**, the **Company**, or the Insurer to obtain relief from any such stay or injunction.

D.  Form of Notices

Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and delivered as follows:

1.  Notice to the **Insured Persons** shall be given to the **Named Insured** and sent by prepaid express courier or certified mail to the address set forth in the Declarations.

2.  Notice to the Insurer shall be sent by prepaid express courier, certified mail, or electronic mail, to

the applicable address set forth in the Declarations.

Notice given as described above shall be deemed to be received and effective upon actual receipt by the addressee or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

E.  Headings

The headings and subheadings in this Policy are solely for convenience and do not form part of the terms and conditions of coverage under this Policy.

F.  Indemnification and Other Insurance

1.  If in any **Claim** under this Policy the **Company** or **Outside Entity** fails or refuses to indemnify an **Insured Person** for **Loss**, including **Defense Costs**, and there is no other valid and collectible insurance available to pay such **Loss**, then the Insurer shall pay otherwise covered **Loss**, including **Defense Costs**, on behalf of such **Insured Person**. However, if the failure or refusal of the **Company** or **Outside Entity** to indemnify the **Insured Person** is due to reasons other than: (a) **Financial Impairment**; or (b) because such indemnification is not permitted by common or statutory law; then the **Company** shall have an obligation to reimburse the Insurer for such **Loss**. No such payment by the Insurer shall relieve the **Company** or **Outside Entity** of any obligation it may have to indemnify an **Insured Person**.

2.  If any **Loss** under this Policy is insured under any other valid and collectible policy of insurance, including, but not limited to, any policy available from or provided to the **Company** or an **Outside Entity**, then unless a **DIC Event** occurs with respect to any such policy, this Policy shall apply as excess over any such policy, whether such other insurance is stated to be primary, contributory, excess, contingent, or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy by reference to its policy number, or such other insurance policy is a personal umbrella excess liability insurance policy or personal directors and officers liability insurance policy purchased by or on behalf of an **Insured Person**.

G.  Subrogation

In the event of any payment under this Policy the Insurer shall be subrogated to the extent of such payment to all **Insured Persons'** rights of recovery, including, without limitation, the **Insured Persons'** rights to indemnification or advancement from the **Company**, **Outside Entity**, or the insurer of any **Underlying Policy**. The **Insured Persons** shall execute all papers required and shall do everything reasonably necessary to secure and preserve such rights and to enable the Insurer effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured Persons**.

The Insurer shall not exercise its right of subrogation against an **Insured Person**.

If the Insurer recovers **Loss** paid under this Policy, then the Insurer shall reinstate the applicable Limits of Liability to the extent of any recovery, less any costs incurred by the Insurer in recovering such **Loss**. The Insurer shall have no duty to seek a recovery of **Loss** paid under this Policy.

H.  Territory and Valuation

Coverage under this Policy shall apply anywhere in the world, to the extent legally permitted.

All premiums, limits, **Loss**, and other monetary amounts under this Policy are expressed and payable in the currency of the United States of America. If a judgment is rendered, settlement is denominated, or another element of **Loss** under this Policy is stated in a currency other than United States dollars, then payment under this Policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon, or the other element of **Loss** is due, respectively.



**Endurance Assurance Corporation**
Wilmington, Delaware

## SIDE A DIFFERENCE-IN-CONDITIONS INSURANCE POLICY
## Schedule of Forms

| | FORMS EFFECTIVE AT INCEPTION | |
|---|---|---|
| Endorsement No. | Form Name | Form No. and Edition Date |
| | Side A Difference-In-Conditions Insurance Policy Declarations | ADC 1001 0621 |
| | Side A Difference-In-Conditions Insurance Policy | ADC 2001 0621 |
| | Schedule of Forms | ADC 1099 0621 |
| 1 | Follow Specific Provision of the Primary Policy Endorsement | ADC 3038 0621 |
| 2 | State Amendatory Inconsistency Endorsement | ADC 3085 0621 |
| 3 | Ohio Changes Endorsement | ADC 4041 0621 OH |
| 4 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 5 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 1220 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0721 |
| | Signature Page | IL 1007 0114 |

# ENDORSEMENT

**Named Insured:** Lordstown Motors Corp

Policy Number: ADL30026702600

Endorsement
Effective Date: October 23, 2022

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

Endorsement
Number:    1

## FOLLOW SPECIFIC PROVISION OF THE PRIMARY POLICY ENDORSEMENT

It is agreed that:

Notwithstanding anything in this Policy to the contrary, to the extent that Exclusion G., Prior Notice of the **Primary Policy** contains terms and conditions that are more favorable with respect to coverage for the **Insured Persons** than the terms and conditions of this Policy, then, to the extent permitted by applicable law, rules, and regulations, the Insurer shall apply those more favorable terms and conditions to this Policy; provided that in no event shall this Policy cover any claim against the **Company** or any amount the **Company** indemnifies, advances, or pays on behalf of an **Insured Person**.

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured:** Lordstown Motors Corp

Policy Number:  ADL30026702600

Endorsement
Effective Date:   October 23, 2022

Endorsement
Number:        2

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## STATE AMENDATORY INCONSISTENCY
## ENDORSEMENT

It is agreed that:

If there is an inconsistency between any terms contained in this Policy and any similar terms contained in any state amendatory endorsement attached to this Policy, then the Insurer shall apply those terms that are more favorable to the **Insured Persons** with respect to coverage under this Policy, to the extent permitted by law.

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

**Named Insured:** Lordstown Motors Corp       Policy Number:  ADL30026702600

Endorsement                                    Endorsement
Effective Date:   October 23, 2022             Number:        3
                  12:01 AM Standard Time at the address of the **Named
                  Insured** as shown in the Declarations.

## OHIO CHANGES
## ENDORSEMENT

It is agreed that:

I.   Notwithstanding anything in this Policy to the contrary, coverage for punitive damages is prohibited in the state of Ohio.

II.  Section XI. POLICY TERMINATION is amended as follows:

A.  Subsection C. Notice of Termination is amended by the addition of the following:

Notice of conditional renewal by the Insurer shall be in writing and shall be mailed or delivered to the **Named Insured**. If such notice is mailed, proof of mailing will be sufficient proof of notice. Proof of delivery of such notice shall be treated the same as proof of mailing. The Insurer also shall send such notice to the **Named Insured's** agent or broker of record, if any.

B.  The following is added:

Conditional Renewal

If the Insurer conditions renewal on a substantial premium increase, the Insurer will provide written notice thereof to the **Named Insured** at least sixty (60) days before the expiration of the **Policy Period**. Such notice shall state the premium amount

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

**Named Insured:** Lordstown Motors Corp

Policy Number: ADL30026702600

Endorsement
Effective Date:

October 23, 2022

12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations.

Endorsement
Number:            4

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# E N D O R S E M E N T

**Named Insured:** Lordstown Motors Corp                 Policy Number:  ADL30026702600

Endorsement                                                                   Endorsement
Effective Date:                                                                Number:          5
                    October 23, 2022
                    12:01 AM Standard Time at the address of the
                    **Named Insured** as shown in the Declarations.

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

It is agreed that:

**SCHEDULE:   Terrorism Premium (Certified Acts): Included in Premium**

**A.    Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

**B.    Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.    Cap On Insurer Participation In Payment Of Terrorism Losses**
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# ENDORSEMENT

_____
                Authorized Representative


This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.


Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# P O L I C Y H O L D E R   N O T I C E

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.



## Endurance Assurance Corporation
### 1221 Avenue Of the Americas
### New York, NY  10020

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

**Senior Vice President**                         **President**