## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date:  October 5, 2023 at 10:30 a.m. (ET)** |
|  | **Re. D.I. 89, 223, 244 & 267** |

### DEBTORS' REPLY IN SUPPORT OF APPLICATION TO
### RETAIN AND EMPLOY RICHARDS, LAYTON & FINGER, P.A.
### <u>AS CO-COUNSEL EFFECTIVE AS OF THE PETITION DATE</u>

The above-captioned debtors ("**Debtors**") respectfully submit this reply ("**Reply**") to the *Objection of the United States Trustee to the Debtors' Application to Retain and Employ Richards, Layton & Finger, P.A. as Co-Counsel Effective as of the Petition Date* [D.I. 267] ("**Objection**") and in support of the *Debtors' Application to Retain and Employ Richards, Layton & Finger, P.A. as Co-Counsel Effective as of the Petition Date* [D.I. 89] ("**RLF Application**").  In support of this Reply, the Debtors rely on the Gross Declarations (as defined below) and the *Declaration of Melissa A. Leonard in Support of Debtors' Application to Retain and Employ Richards, Layton & Finger, P.A. as Co-Counsel Effective as of the Petition Date* [D.I. 89-4] (the "**Leonard Declaration**"), and respectfully state as follows:

### <u>INTRODUCTION</u>[2]

1.     The question before the Court is whether Richards, Layton and Finger, P.A.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms not defined in the Introduction have the meanings set forth below in this Reply.

("**RLF**") can effectively represent the Debtors without bias. The one objecting party—the U.S. Trustee—acknowledges that RLF is disinterested and holds no interest adverse to the estate. The U.S. Trustee instead contends that RLF represents adverse interests and cannot effectively advocate for the Debtors because it is co-counsel to certain of the Debtors' current and former directors or officers (the "**Directors**") in consolidated actions (the Direct Action and Derivative Actions, defined below). But under the Third Circuit's pragmatic approach, a conflict does not exist unless "it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." Here, neither the Direct nor Derivative Actions presently give rise to divided loyalties that would affect RLF's ability to advocate on behalf of the Debtors, and the likelihood of a conflict ever developing is minimal. In addition, RLF has taken steps to alleviate any potential conflict should one arise, because its engagement ***does not include*** any representation of the Debtors or the Directors in any dispute between them in these cases—those issues would be handled by other counsel for the Debtors and Directors.

2.      As an initial matter, the Direct and Derivative Actions do not presently involve any adversity between the Debtors and Directors. In the Direct Action—in which the Debtors are not a party—the U.S. Trustee's only alleged basis for conflict is that the Debtors owe indemnification obligations to the Directors, and thus the Directors are creditors. But insurance is covering the Directors' indemnification costs (*i.e.*, professional fees). Moreover, as discussed below, RLF's engagement by the Debtors does not include any indemnification issues between the Directors and Debtors (or any issues between those parties at all).

3.      Likewise, the Derivative Actions do not presently involve a conflict. The U.S. Trustee asserts that because the claims are derivative, the Debtors own them. Although true, under corporate law principles, the interests of a company and its directors are aligned in

derivative actions at least through the motion-to-dismiss stage—there is no conflict at that early stage before it has been demonstrated that the claims have any substance and can properly be asserted by the plaintiffs.  The Derivative Actions are in their infancy, and are stayed both as a result of these cases and the resolution of a motion to dismiss in the Ohio Class Action (defined below)—a motion that is itself stayed pending these bankruptcy cases.  The Derivative Actions thus are highly unlikely to move forward at least until some time after plan confirmation, to the extent that a successor takes control of the actions.

4.      But most fundamentally, RLF has taken steps to ameliorate any potential conflict should one ever develop.  RLF will not represent the Directors in these bankruptcy cases, period.  And it will not represent the Debtors in any matter they have against the Directors.  RLF has expressly carved those out of its engagements, and has included language in the proposed order approving its retention to the same effect.  RLF also set up an ethical screen to cordon off attorneys who worked on the Direct and Derivative Actions from the bankruptcy case, and vice versa.  And RLF is Delaware co-counsel in these representations; if an issue ever does arise requiring the Directors to act adversely to the Debtors, other counsel will represent the Debtors and the Directors.  RLF will represent neither party.  Much like conflicts counsel, the availability of other counsel to handle these issues allays the potential of RLF representing an interest adverse to the Debtors or having divided loyalties causing it to favor one party over the other.

5.      Whether a conflict exists ultimately is a question of fact that falls within the sound discretion of the Court and is determined case-by-case.  Along with the facts above, other facts should bear on the Court's discretion as well.  First, RLF disclosed its role in the Direct and Derivative Actions from the start.  Second, RLF obtained the consent and prospective waivers from both the Debtors and the Directors consistent with its ethical obligations under the Rules of

Professional Conduct. Although a waiver is not by itself enough to satisfy Bankruptcy Code § 327, it supports the Court's discretion in approving retention because it shows that the parties most affected do not object. Finally, the creditors' committee acting in the interest of unsecured creditors does not oppose RLF's retention.

6.      In sum, the record does not show that RLF is representing an adverse interest or is in a position to favor one conflicting interest over another. Rather, it shows that RLF will not represent the Directors' interests ***at all*** in these chapter 11 cases. Under these facts, RLF can fulfil its role of advocating on behalf of the Debtors effectively and without bias. The Court therefore should overrule the Objection and approve RLF's retention as co-counsel to the Debtors.

**BACKGROUND**

**A. Pre-Bankruptcy, RLF Is Retained As Delaware Counsel To Directors In The Direct And Derivative Actions**

7.      Before their bankruptcy, the Debtors and certain of their current and former directors and officers were subject to five consolidated litigations arising from alleged misrepresentations made in connection with a prepetition SPAC merger transaction. The crux of each claim is that the Debtors and the director and officer defendants misrepresented the production capabilities, timeline, and customer pre-orders for LMC's flagship electric vehicle, the Endurance, to drive up LMC's stock price leading up to and after its SPAC transaction. Of the five litigations, a consolidated securities fraud class action pending in the United States District Court for the Northern District of Ohio (the "**Ohio Class Action**") has progressed the furthest, and discovery in that action is stayed pending a ruling on a motion to dismiss (and as set forth below,

all of the Derivative Actions are stayed pending resolution of the merits of this motion to dismiss).[3] RLF does not represent any party in the Ohio Class Action.

8.     The district court in the Ohio Class Action has continued the motion to dismiss proceedings pending before it until after the Debtors' bankruptcy.  Specifically, after the Debtors' bankruptcy filing, the district court denied the motion without prejudice to refile it following the lifting of the automatic stay.  *See* Ohio Class Action Docket (docket sheet attached as **Exhibit E** hereto) at D.I. 80 (August 28, 2023 Order: "the pending motion to dismiss is denied without prejudice, subject to its potential re-filing following the lifting of the stay").  Thus, the district court effectively reset the clock to re-commence dismissal proceedings if and when the automatic stay expires, and thus any adjudication of the merits of a renewed motion to dismiss will not occur until sometime after plan confirmation.

9.     The Objection implicates consolidated actions in which RLF represents certain directors or officers as Delaware counsel (the "**Direct Action**" and "**Derivative Actions**"), as set forth below.

> a.     *The Direct Action*

10.     The Direct Action is a consolidated action of two complaints pending in the Court of Chancery styled *In re Lordstown Motors Corp. Stockholders Litigation*, C.A. No. 2021-1066-LWW.  A copy of the public consolidated Direct Action complaint is attached to the Objection as Exhibit B.  The defendants in the Direct Action are five current or former directors or officers of the Debtors: David Hamamoto, Mark Walsh, Andrew Richardson, Steven Hash and Judith Hannaway (the "**Direct Action Defendants**").  RLF is Delaware co-counsel to the five Direct

---

[3] The Ohio Class Action is styled *In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-616-DAR (N.D. Ohio).

Action Defendants.[4]  The Debtors are not parties to the Direct Action.

11.    The plaintiffs in the Direct Action assert claims that they allege are personal and direct as to them.  Put differently, they do not assert derivative claims.  *See* Objection Ex. B (Direct Action complaint) at pp. 51–52 (asserting two counts for breaches of fiduciary duty allegedly owed by the Direct Action Defendants directly to the stockholders).

> b.    *The Derivative Actions*

12.    The Directors are defendants in a consolidated action pending in the U.S. District Court for the District of Delaware styled *In re Lordstown Motors Corp. Shareholder Derivative Litig.*, No. 21-00604-SB (the "**District Court Derivative Action**").  A copy of the consolidated complaint is attached to the Objection as Exhibit A.  The defendants in the action are Debtor Lordstown Motors Corporation and 17 current or former directors or officers of the Debtors.  RLF represents four of those individuals: Mark Walsh, Andrew Richardson, Steven Hash and Judith Hannaway.  David Hamamoto is represented in the action by Potter, Anderson & Corroon LLP, as are the Debtors.

13.    On March 7, 2022, the District Court stayed the action pending resolution of the motion to dismiss in the Ohio Class Action.  District Court Derivative Action Docket (Ex. G hereto) at D.I. 38 ("All motions practice, obligation to respond to the Complaint, and all discovery in this case are stayed until the resolution of the motion to dismiss filed [in the Ohio Class Action].").  As set forth above, the motion to dismiss proceedings in the Ohio Class Action have themselves been rescheduled until after the bankruptcy cases conclude and the stay expires.  *Supra*

---

[4] The Court may take judicial notice of docket entries in other proceedings. *See, e.g.*, *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991) (taking judicial notice of docket entries in case before United States Bankruptcy Court for Southern District of Florida); *Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, 648 F. Supp. 2d 626, 639 (D. Del. 2009) (taking judicial notice of other courts' dockets). For convenience, the docket sheets from the Direct Action and Derivative Actions are attached as **Exhibit F, G & H**, respectively.

¶ 8.  Discovery has not yet begun and no trial date has been set.  The District Court also has entered an order recognizing the automatic stay that arose upon the commencement of these chapter 11 cases.  District Court Derivative Action Docket (Ex. G hereto) at D.I. 51 (Oral Order:  "I recognize the effect of the automatic stay.  D.I. [50].  I WITHDRAW my order to file a status report on August 1.  D.I. [49].  The parties shall keep the Court apprised of material developments that affect this case.").

14.     Two derivative actions arising from the same facts and asserting the same allegations were filed in the Delaware Court of Chancery rather than the District Court and thus were not consolidated with the District Court actions.   Those two derivative actions were consolidated under the caption *Cormier v. Burns*, C.A. No. 2021-1049-LWW (Del. Ch.) (the "**Chancery Derivative Action**," and together with the District Court Derivative Action, the "**Derivative Actions**"); *see also* Gross Declaration (defined below) ¶ 22 n.4 ("RL&F is also Delaware local counsel to the same [Direct Action] Defendants in the related litigation, C.A. No. 2021-1049-MTZ, which is currently stayed, in the Court of Chancery of the State of Delaware."). The Chancery Derivative Action plaintiffs stipulated to the same stay as the plaintiffs in the District Court.  *See* Chancery Derivative Action Docket (Ex. H hereto) at D.I. 32, ¶ 10 (Order staying action:  "Consistent with the stay order entered in [the District Court Derivative Action], [this action], including any obligation to respond to any individual complaints or the operative complaint, and all discovery and disclosure obligations under the applicable Court rules, is hereby stayed pending the resolution of the motion to dismiss filed on November 9, 2021 in the consolidated securities class action pending in the Northern District of Ohio…."). Again, the motion to dismiss proceedings in the Ohio Class Action have been stayed pending these bankruptcy cases.

**B.  The Debtors' Indemnification Obligations and D&O Insurance**

15.     The Debtors have indemnification obligations to the Directors under, and subject

to the full terms of, their bylaws and through indemnity and employment agreements to the fullest

extent permitted by Delaware law.  *See* Adv. Pro. No. 23-50428 at D.I. 4, Exs. F–I (transmittal

declaration of David Turetsky attaching bylaws and agreements establishing indemnification

obligation).

16.     The Debtors and their predecessors have director and officer liability insurance

policies to cover any indemnification obligations that may arise in the Direct Action.  *See id.* at

Ex. J (transmittal declaration of David Turetsky attaching summary of insurance policies).  Prior

to the SPAC merger, DiamondPeak Holding Corp. had a D&O Policy in place from February 27,

2019 to February 27, 2021, which insured DiamondPeak and its current and former directors and

officers, and included a primary policy of $10 million and an excess policy for an additional $5

million.  *See* Adv. Pro. No. 23-50428 at D.I. 16, Ex. J (transmittal declaration attaching policy).

17.     On July 5, 2023, the Debtors commenced an adversary proceeding to extend the

automatic stay in the Direct Action to cover the Direct Action Defendants.  Although the U.S.

Trustee implies that there was something untoward about RLF signing the complaint to extend the

stay, the Debtors filed that action because they believed it was in the best interests *of their estates*.

*See, e.g.,* Adv. Pro. No 23-50428 at D.I. 1 (complaint), ¶ 4 ("Because the Debtors share an identity

of interest with the D&O Defendants, including the Delaware D&O Defendants, a uniform stay of

all Actions is necessary to avoid irreparable harm to the Debtors' restructuring efforts that would

occur should litigation be allowed to continue."); *id.* at D.I. 6 (opening brief), p. 25 ("The Debtors

will be irreparably harmed if the Delaware Class Action is allowed to proceed by depriving them

of the key benefits of the automatic stay: relief from financial pressures and a breathing spell to

execute a restructuring plan.").

18.    In connection with the Debtors' motion to extend the automatic stay to the Direct Action Defendants, this Court reviewed the insurance available to the Directors in the Direct Action, and stated as follows:

> I only have to decide that any indemnity claim is covered by insurance. The insurance carriers are defending. The insurance carriers have not stated that they will not cover these claims and there's $13 million of insurance left at this point…. Again, the claim is covered by insurance. The debtor has little involvement at this date and it's not clear that the [Direct] action will give rise to indemnity claims and the trial is not on the immediate horizon.

Aug. 3, 2023 H'rg Tr. [D.I. 230] at 105:1–15 (copy of transcript attached as **Exhibit I**). The Court reached this conclusion, among other things, based on the following cross-examination testimony of Adam Kroll at that hearing:

> Q: . . . So it's your understanding that there are $15 million of D&O insurance coverage available for the Delaware class action; correct?
>
> A: Yes.
>
> Q: And the insurance relating to the Delaware class action did not deny coverage; correct?
>
> A: I am not aware that they have.
>
> Q: And the defense costs of the individual defendants in the Delaware class action are covered by D&O insurance; correct?
>
> A: Thus far they have been, yes.
>
> Q: And the defense costs of [the Debtors] are not covered by the D&O insurance policy that covers the [Directors]; correct?
>
> A: That is my understanding, yes.

Aug. 3, 2023 Hr'g. Tr. at 42:21-43:10; *see also* Adv. Pro. No. 23-10831 at D.I. 15, Ex. J (attaching primary policy). The Court also noted at that hearing that it was "not clear that any ruling in the [Direct] case could impact the derivative actions or the other pending litigation." Aug. 23, 2023 H'rg Tr. at 105:20–22.

- 9 -

19.     The Debtors have scheduled the Directors' contractual indemnification claims as contingent, unliquidated and undisputed.  D.I. 211 at 35 & 37; D.I. 378 at 26-30.  As reflected in the amended schedules, the Debtors listed the indemnification claims as undisputed because the Debtors have contractual obligations to indemnify their current and former directors and officers, but the Debtors reserved their rights to object to and defend against any and all such claims.[5] Although the U.S. Trustee also seems to suggest something improper about the scheduling of the indemnification claims (*see* Objection ¶ 13), consistent with its Engagement Letter and the waiver agreements discussed below, RLF does not represent either the Directors or Debtors in connection with indemnification issues and played no role in the scheduling of the claims.

### C.  The Debtors Select RLF as Their Delaware Restructuring Counsel, And RLF Limits its Engagement To Exclude Representing Directors In The Bankruptcy Cases, And the Debtors If Any Adversity Ever Arises With The Directors

20.     By letter dated June 22, 2023, the Debtors executed an engagement agreement to retain RLF as Delaware co-counsel in connection with their restructuring (the "**Engagement Letter**") (copy attached as **Exhibit A**).  The Debtors also earlier had retained White & Case to serve as lead restructuring counsel.  As set forth in the Leonard Declaration, the Debtors selected RLF, among other reasons, due to the firm's extensive experience and knowledge in bankruptcy issues and in practicing before this Court, as well as the Debtors' prior experience with RLF.

---

[5] *See* D.I. 378 at 8, ¶ 15 ("Indemnification.  Pursuant to (and subject to the terms of) their organizational documents or other agreements, the Debtors may have indemnification obligations to certain current and former directors and officers who have been made a parties, or threatened to be made parties, to any action, suit, or proceeding by reason of the fact that they are a director or officer of the Debtors.  The Debtors have scheduled contingent unliquidated indemnification claims of such parties on Schedule E/F.  The Debtors have also listed on Schedule G separate contracts with certain current and former directors and officers, by which the Debtors agreed to indemnify such directors and officers in certain circumstances subject to the terms and conditions set forth in those contracts.  The Debtors reserve all rights with respect to any indemnification claims and any purported obligations (whether or not scheduled and whether or not they have been identified as disputed), including all defenses (on any ground) with respect to such claims, or obligations, and including with respect to any agreement or organizational document relating thereto."); *see also id*. at 16, 17 (same).

Leonard Declaration ¶ 2; *see also id.* ("the Debtors believe that RL&F is uniquely qualified to represent them in these chapter 11 cases.").

21.    In its Engagement Letter, RLF disclosed its representation of the Directors in the Direct and Derivative Actions:

> RL&F is Delaware co-counsel to David Hamamoto, Mark Walsh, Andrew Richardson, Steven Hash, Judith Hannaway, and DiamondPeak Sponsor LLC (collectively, the "Chancery Defendants"), in that certain civil action styled *In re Lordstown Motors Corp.* Stockholders *Litigation*, C.A. No. 2021-1066-LWW, a putative class action lawsuit alleging, among other things, breach of fiduciary duties by the Chancery Defendants, pending in the Court of Chancery of the State of Delaware (the "Chancery Action").
>
> …
>
> RL&F is Delaware co-counsel to Mark A. Walsh, Andrew C. Richardson, Steven R. Hash, and Judith A. Hannaway (collectively, the "District Court Defendants"), in that certain civil action styled *In re Lordstown Motors Corp.* Shareholder *Derivative Litigation*, C.A. No. 21-00604-SB, a derivative shareholder lawsuit pending against, among others, the District Court Defendants in the United States District Court for the District of Delaware (the "District Court Action").

Engagement Letter at 4–5.[6]

22.    The Debtors agreed to waive any potential conflicts arising from those representations:

> [T]he Company does not object to, and . . . waives, any actual or potential conflict of interest in connection with RL&F having represented, currently representing, or in the future representing the Chancery Defendants in the Chancery Action and any other matters that are unrelated to RL&F's representation of the Company in this engagement.
>
> …
>
> [T]he Company does not object to, and . . . waives, any actual or potential conflict of interest in connection with RL&F having represented, currently representing, or in the future representing the District Court Defendants in the District Court Action and any other matters that are unrelated to RL&F's representation of the Company

---

[6] RLF separately disclosed its representation of the Directors in the Chancery Derivative Action. *See* **Exhibit D** hereto (confirmation of extension of waiver letters to that action).

in this engagement.

Engagement Letter 4–5; *see also* Ex. D (waiver by Debtors and Directors in Chancery Derivative Action).

23.    The Debtors also agreed that RLF would not represent them in any adversarial matter between the Debtors and the Directors, and that other counsel (such as lead counsel White & Case) would handle any such matters:

> The Company understands and agrees that ***RL&F will not be able to represent the Company in any adversary proceeding or contested direct dispute between the Company and any of the Chancery Defendants or the District Court Defendants, and the Company will rely on other counsel for any such matters***.

Engagement Letter at 5 (emphasis added).

24.    RLF further disclosed to the Directors its proposed representation of the Debtors, and obtained similar waivers and consents.  The consent and waiver letters signed by the Directors reflect that RLF would act as Debtors' counsel, but "will not act on behalf of the Company in any adversary proceeding or contested dispute between the Company and any of the [Directors]." *See* **Exhibits B & C** at 1 (consent and waiver letters from Direct and Derivative Actions, respectively). The letters also reflect that RLF would not represent the Directors in any matter in the bankruptcy cases, and that the Directors would need separate counsel to represent their interest in bankruptcy:

> At the same time, RLF will not be able to represent any of the [Directors] ***in any proceedings in any potential bankruptcy case that may be filed by the Company. As such, in the event of any such filing by the Company, you will need to engage separate counsel to advise and represent you in connection with any such case or proceedings***.

*Id.* (emphasis added).

25.    In short, RLF limited its representation so that it would not represent either the Debtors or the Directors in any adversity between them in the bankruptcy cases.

26.    In addition, RLF set up an ethical screen between the bankruptcy cases and the

Direct and Derivative Actions, respectively:

> RL&F will staff its representation of the Company with attorneys that are not providing services to the Chancery Defendants or the District Court Defendants, and RL&F will otherwise make sure that an ethical screen is in place and remains in place with respect to such attorneys.  [RL&F] takes very seriously [its] obligations to maintain the confidentiality of information [it] receives from all of [its] clients and [it] will take appropriate steps to make sure that [RL&F] maintains the confidences of the Company as well as the Chancery Defendants and the District Court Defendants.  In connection with or related to the matters discussed herein, [RL&F] will not be under a duty to disclose any confidential information belonging to the Company or the Chancery Defendants or the District Court Defendants.  Moreover, the Company agrees that it will not consider it a breach of any duty that [RL&F] may owe to the Company for RL&F to honor confidentialities and to limit the disclosure of information in this manner.

Engagement Letter (Ex. A) at 5; *see also* Exs. B & C at 2 (similar ethical screen obligation in Direct and Derivative Actions).

27.     In support of their retention application, the Debtors submitted the *Declaration of Kevin Gross in Support of Debtors' Application to Retain and Employ Richards, Layton & Finger, P.A. as Co-Counsel Effective as of the Petition Date* (the "**Gross Declaration**").[7]  The Gross Declaration disclosed RLF's representation of the Directors in the Direct Action and Derivative Actions.  Gross Decl. ¶¶ 22–23 & n.4.  RLF acknowledged that it "will not represent any of the Defendants in any manner in the chapter 11 cases including, without limitation, asserting any claims of any nature against any of the Debtors."  *Id.* ¶ 24.  RLF also detailed the actions it took to comply with its ethical duties beyond obtaining waivers from all parties, including carving out from the scope of representation any issue where an adversity may arise between the Debtors and Directors (which would be handled by other counsel in each matter), and setting up an ethical screen between the bankruptcy case and the actions:

---

[7] On August 3, 2023 and August 12, 2023, RLF filed supplemental declarations in further support of the RLF Application making certain additional disclosures.  *See* Docket Nos. 223 & 244 (the "**Supplemental Declarations**," and together with the Gross Declaration, the "**Gross Declarations**").

The Defendants further acknowledged and agreed that RLF will act in all potential capacities on behalf of, and as legal co-counsel to, the Debtors in connection with the Chapter 11 Cases, provided, however, that RLF has agreed that it will not act on behalf of the Debtors in any adversary proceeding or contested direct dispute between the Debtors and any of the Defendants. The Defendants further acknowledged and agreed that RLF will not represent any of the Defendants in any manner in the Chapter 11 Cases, and the Defendants will engage separate counsel to advise and represent them in connection with the Chapter 11 Cases, if applicable.

Further, none of the RLF professionals involved in the representation of the Defendants in the above referenced representations is or will be involved in the representation of the Debtors in these Chapter 11 Cases. RLF also has instituted and maintained an ethical screening wall between the RLF professionals representing the Defendants in the Actions and the RLF professionals representing the Debtors. Moreover, RLF shall not disclose any confidential information belonging to the Defendants, or the Debtors, to such other party. In addition, no RLF attorneys representing the Debtors, on the one hand, and the RLF attorneys representing the Defendants, on the other hand, shall act against each other, and any negotiations (if any) between the Debtors, on the one hand, and the Defendants, on the other hand, will be handled by their respective other outside counsel. Further, as set forth above, RLF has not represented and will not represent any of the Defendants in connection [with] the Debtors' current restructuring and these Chapter 11 Cases. In fact, the Debtors are also represented by White & Case, and the Chancery Court Defendants each are also represented by counsel other than RLF.

Gross Declaration ¶¶ 24–25.

28.     After the Debtors filed the RLF Application, RLF engaged with the U.S. Trustee and Creditors' Committee regarding its proposed retention. The Creditors' Committee does not object to RLF's retention, subject to the retention order including language confirming that RLF will not be involved in adversary proceedings, contested matters, or plan release or exculpation issues involving the Directors—because that language is consistent with the limitations set forth in the Engagement Letter and the Gross Declarations, the Debtors and RLF had no problem agreeing to it.[8] A copy of the revised proposed order is attached as **Exhibit J**.

---

[8] The language provides: "RL&F shall refrain from involvement in any matters bearing directly on the Defendants . . . in the Chapter 11 Cases such as any adversary proceeding or direct contested dispute

29.     However, and notwithstanding multiple good faith communications (both before and after the UST filed its Objection), RLF and the U.S. Trustee were unable to resolve their disagreement.  The U.S. Trustee has objected to RLF's retention on two primary grounds:  (1) RLF represents creditors of the Debtors that have a competing economic interest to the Debtors because the Direct Action Defendants have asserted indemnification claims against the Debtors; and (2) RLF represents an interest adverse to the Debtors because the Debtors own the claims asserted in the Derivative Actions.  For the reasons below, on the facts here, neither of these grounds rises to the level of adversity that would justify denying RLF's retention.

## **ARGUMENT**

### I.      **Bankruptcy Code § 327 Evaluates Whether Proposed Counsel Can Effectively Represent The Best Interests Of The Estate**

30.     Bankruptcy Code § 327's purpose "is to ensure effective representation of the estates; in other words, it is to ensure that the professional is able to act in the best interest of the estates and can competently and vigorously represent the trustee or debtor-in-possession." *Century Indem. Co. v. Boy Scouts of Am. (In re Boy Scouts of Am.)*, 630 B.R. 122, 130 (D. Del. 2021) (quoting *In re Boy Scouts of America,* May 29, 2020 Hr'g Tr. at 51:6-10 (Case No. 20-10343 (Bankr. D. Del.)).  "Though not unfettered, bankruptcy courts have 'considerable discretion in evaluating whether professionals suffer from conflicts.'"  *In re Boy Scouts of Am.*, 35 F.4th 149, 158 (3d Cir. 2022) (citing *In re Pillowtex, Inc.*, 304 F.3d 246, 254 (3d Cir. 2002)); *see also, e.g., Boy Scouts*, 630 B.R. at 130 ("The Bankruptcy Court had considerable discretion in approving Sidley's retention under the standards of section 327 in light of the specific facts and circumstances of the case.") (citations omitted).

---

involving a Defendant, or the drafting, negotiation or litigation of any release or exculpation provisions affecting a Defendant that may be included in any proposed plan of reorganization."

31. Bankruptcy Code § 327(a) authorizes the retention of professionals if they (1) are "disinterested persons" and (2) "do not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). The Bankruptcy Code defines "disinterested person" as a person that:

> (a) is not a creditor, an equity security holder, or an insider, (b) is not, and was not, within the 2 years before the date of filing the petition, a director, officer, or employee of the debtor, and (c) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason.

11 U.S.C. § 101(14). The U.S. Trustee does not contend that RLF is not disinterested or that RLF holds an interest adverse to the estate; rather, it argues only that RLF purportedly "represents interests adverse to the estate." Objection ¶ 1; *see also id.* ¶ 17 ("The Application should be denied because RLF represents interests adverse to the Debtors' bankruptcy estates and, by extension, has a disqualifying conflict of interest.").

32. "The Third Circuit … has instructed that a professional holds a prohibited 'adverse interest' where that professional holds or represents interests in competition with the debtor that would actually (as opposed to speculatively) impair its service as an estate fiduciary." *Boy Scouts*, 630 B.R. at 130. Effectively, this boils down to a conflicts analysis: "[a]ttorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts[,] [a]nd a court 'may not disqualify an attorney on the appearance of conflict alone.'" *Boy Scouts*, 35 F.4th at 158 (citing *In re Marvel Ent't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998)). Here, the burden of demonstrating a disqualifying conflict falls on the U.S. Trustee as the objecting party. *See Boy Scouts*, 630 B.R. at 130 ("The burden of showing that Sidley's retention violated section 327 rested with Century [the objecting party]. Century's burden was substantial.") (citing *In re Art Van Furniture*, 617 B.R. 509, 515 & n.34 (Bankr. D. Del. 2020) (U.S. Trustee did not meet its burden of demonstrating conflict). The U.S. Trustee has not carried

(and cannot carry) its burden here.

33.     The Bankruptcy Code does not define "actual conflict" of interest.  *Boy Scouts*, 35 F.4th at 158.  "Courts thus proceed 'case-by-case,'" and have "considerable discretion in evaluating whether professionals suffer from conflicts.'"  *Id.* (quoting *In re Pillowtex, Inc.*, 304 F.3d 246, 254 (3d Cir. 2002) & *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991)).  The Third Circuit takes a pragmatic approach to assessing conflicts in large bankruptcy cases, under which "a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'"  *Boy Scouts*, 35 F.4th at 158 (citing *Pillowtex*, 304 F.3d at 254)).  Phrased differently, a professionals' relationship with another party in interest is not an actual conflict if the relationship does "not affect its ability to advocate on behalf of [the debtors]." *Id.* at 159 ("Because Sidley's relationship to Century did not affect its ability to advocate on behalf of BSA, it was not an 'actual conflict' under § 327….").

34.     In exercising discretion to evaluate retentions under section 327, courts in this Circuit also may consider actions undertaken by professionals to ensure their ability to effectively represent the Debtors and their estates.  These actions include ensuring the availability of alternate counsel or conflicts counsel to represent the Debtors should adversity arise.  *Boy Scouts*, 35 F.4d at 154-159 (affirming retention of counsel though the firm had represented certain of the debtors' insurers because, among other reasons, the debtors had retained another firm to represent them with respect to insurance issues in the bankruptcy cases); *In re Washington Mutual, Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("in most cases the use of conflicts counsel solves the problem") (citing *In re Project Orange*, 431 B.R. 363, 375 (Bankr. S.D.N.Y. 2010)); *In re FTX Trading, Ltd.*, Case No. 22-1068 (JTD) (Bankr. D. Del.) Jan. 20, 2023 Hr'g. Tr. at 49:9-10 ("Here, any potential

conflicts are ameliorated by the fact there's conflicts counsel in place.").

## II.    RLF Does Not Represent An Adverse Interest In These Bankruptcy Cases

35.    The U.S. Trustee asserts that, due to RLF's representation of director defendants in the Direct and Derivative Actions, RLF's retention "should be denied because RLF represents interests adverse to the Debtors' bankruptcy estates and, by extension, has a disqualifying conflict of interest." Objection ¶ 17. This argument overlooks critical facts. Indeed, for the reasons below, neither action has given rise to an adverse interest that RLF currently represents in these cases. In addition, RLF has taken steps to ameliorate any conflict if one ever develops.

### A.  There Presently is No Adversity Between the Debtors and Directors

36.    First, neither the Direct nor Derivative Actions give rise to existing adversity between the Debtors and Directors. With respect to the Direct Action, the U.S. Trustee argues that a conflict of interest exists because "RLF's clients have asserted indemnification claims" for fees incurred defending the Direct Action and thus "RLF currently represents creditors…." Objection ¶ 26. Bankruptcy Code § 327(c) addresses situations involving representation of a creditor, and provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Thus, "something more than the mere fact of dual representation must be demonstrated" under section 327(c). *In re BH & P Inc.*, 103 B.R. 556, 562 (Bankr. D.N.J. 1989), *remanded*, 119 B.R. 35 (D.N.J. 1990), *aff'd*, 949 F.2d 1300 (3d Cir. 1991). The Court must find the existence of an "actual conflict of interest" arising from dual representation, that is, whether "the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'"

*Boy Scouts*, 35 F.4th at 158.

37.     That is not the case here because insurance is covering the Directors' litigation costs, and thus the Debtors' estates are not bearing those costs.  *See supra* ¶ 18 (citing ruling in Aug. 3 hearing).  And there is additional D&O insurance coverage available ($13 million as of August 2023).  *Id.*  But that aside, there is no actual conflict of interest because RLF is not representing any of the Directors (or the Debtors) with respect to any claims against the Debtors (including any indemnification claims).

38.     With respect to the Derivative Actions, the U.S. Trustee argues that the Derivative Actions give rise to a conflict because the estates own the causes of action and have an incentive to maximize their value.  Objection ¶ 25.  But the U.S. Trustee fails to consider the facts and circumstances here.

39.     First, "[i]n derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage, therefore, a law firm may represent all defendants without impropriety." *Respler v. Evans,* 17 F. Supp. 3d 418, 421 (D. Del. 2014) (citing *Scattered Corp. v. Chicago Stock Exch., Inc.*, 1997 WL 187316, at *6 (Del. Ch. Apr. 7, 1997)).  In a typical derivative action, "a stockholder plaintiff does not have power to sue in the corporation's name unless and until the corporation chooses not to oppose the stockholder's suit (explicitly or implicitly)".  *In re Info Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d 278, 297 (Del. Ch. 2013).  "Before that point, Delaware law regards the interest of the corporation as aligned with those of the individual defendants." *Id.*; *see also Scattered Corp.*, 1997 WL 187316, at *8 (interests of company and individual defendants were not adverse, and there was "no appearance of impropriety," "because no conflict of interest existed between the interests of the individual defendants and the [company]," as "the [company's] interest was identical to that of the individual

defendants – to seek the dismissal of the complaint.").

40.     The Derivative Actions are in their infancy.  There has been no substantiation that the claims have merit or value.  Under general principles of corporate law, until those claims can survive a motion to dismiss, there is no conflict between the corporation and its directors, whose interests are aligned.

41.     Second, even if this were not the case, the Derivative Actions are stayed until resolution of the motion to dismiss the Ohio Class Action, and separately because of the automatic stay in these bankruptcy cases.  *See supra* ¶¶ 13-14.  With respect to the Ohio Class Action, the district court there has indicated that it will not resolve a motion to dismiss while these bankruptcy cases are pending, and has provided for the filing of a renewed motion to dismiss after the automatic stay expires.  *Supra* ¶ 8.  It is thus implausible that the Ohio district court would resolve any such motion to dismiss before plan confirmation.  Moreover, for any given Derivative Action to proceed, this Court also would need to (a) lift the automatic stay and (b) grant the shareholder plaintiffs in the action derivative standing to prosecute the claims.[9]  The prospect of all three of these events happening in advance of confirmation is remote.  And once plan confirmation occurs, the successor to the Debtors will assume control of any claims.  In the interim, there are only limited aspects of the bankruptcy case that could implicate the Derivative Actions (for example, a plan release provision), and RLF has not and will not participate in any such aspect of the case (on behalf of either the Directors or the Debtors).[10]  RLF thus would not represent Director interests

---

[9] *See, e.g., Sebastian v. Schmitz (In re Worldspace, Inc.)*, 2016 WL 5339056, at *8-9 (D. Del. Sept. 22, 2016) (derivative claims become property of estate upon bankruptcy filing, which debtor has sole right to pursue absent permission from bankruptcy court for stakeholder to pursue claims).

[10] On September 1, 2023, the Debtors filed their *Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [D.I. 360] (the "**Plan**") and *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [D.I. 361] (the "**Disclosure Statement**").  Among other things, the Plan carves out Former Directors and Officers as well as other Excluded Parties from the definition of Released Parties.  *See* Plan, Article I.A.49 & 107 and

adverse to the Debtors.

**B. RLF Has Taken Steps to Ameliorate Any Potential Conflict if One Ever Arises**

42.     Even if the Direct or Derivative Actions ever gave rise to adversity in these chapter 11 cases between the Directors and the Debtors, RLF would not be conflicted in these bankruptcy cases because RLF will not participate in any dispute or adversity between the Debtors and the Directors.   Its Engagement Letter with the Debtors expressly limits its representation.   *See* Engagement Letter (Ex. A) at 5 (RLF "will not be able to represent the Company in any adversary proceeding or contested direct dispute between the Company and any of the Chancery Defendants or the District Court Defendants, and the Company will rely on other counsel for any such matters").  So do the consent and waiver letters signed by the Directors.  *See* Consent & Waiver Letters (Exs. B & C) at 1 ("RLF will not be able to represent any of the [Directors] in any proceedings in any potential bankruptcy case that may be filed by the Company."); Ex. D (incorporating waivers with respect to Chancery Derivative Action).   These limitations are confirmed in the revised proposed retention order.  *See* Ex. J, ¶ 6 ("RL&F shall refrain from involvement in any matters bearing directly on the Defendants . . .  in the Chapter 11 Cases such as any adversary proceeding or direct contested dispute involving a Defendant, or the drafting, negotiation or litigation of any release or exculpation provisions affecting a Defendant that may be included in any proposed plan of reorganization.").

43.     In addition, both the Debtors and Directors agreed that separate counsel would advise them in any such proceeding.  Engagement Letter at 5 ("the Company will rely on other counsel for any such matters."); Consent & Waiver Letters at 1 ("As such, in the event of any such

---

Article VIII.C; Disclosure Statement Article IV.H.3.  Consistent with the above-mentioned limitations on its representation, RLF is not representing (or otherwise advising) the Debtors as to whether any current or former directors or officers should be a Released Party or an Excluded Party.

[bankruptcy] filing by the Company, you will need to engage separate counsel to advise and represent you in connection with such case or proceedings"); Ex. D (incorporating waivers with respect to Chancery Derivative Action).

44.    As discussed above, the availability of alternate counsel to handle a conflict can solve the problem of a potential conflict.  *Supra* ¶ 34.  Here, RLF is Delaware co-counsel in these bankruptcy cases, and in the Direct and Derivative Actions.  The Debtors and Directors have lead counsel who already are actively involved and up to speed (as well as the ability to retain other counsel should they deem it necessary) to represent their interests in the unlikely event of a dispute between the Debtors and Directors during these cases.

45.    Because RLF would not take part in any dispute between the Debtors and Directors, and other counsel can and will handle any such dispute, RLF will not represent any interest adverse to the estate.  With these measures in place, there is no situation where RLF cannot zealously represent the Debtors' interests in these cases.  *See In re Boy Scouts of America,* 630 B.R. 122, 133 (D. Del. 2021) ("That Century fails to describe any situation in which Sidley may have been unable to take actions necessary to zealously represent BSA's interests in the bankruptcy is unsurprising in light of BSA's retention of Haynes and Boone as special insurance counsel.").

**C.  If the Court Finds a Potential Conflict, Then it Should Exercise its Discretion to Approve Retention Because the Facts Show That RLF Will Not Have Divided Loyalties**

46.    For the reasons above, RLF does not represent an interest adverse to the estate, given that it will not represent the Debtors or the Directors in any dispute between them.  Although that should end the inquiry, if the Court considers RLF's retention to give rise to a "potential conflict," then the Court should exercise its discretion to approve that retention for the same reasons as above and the additional reasons below.

47.     As the Third Circuit noted in its most recent discussion of the issue, "disqualification is at the court's discretion for attorneys with potential conflicts." *Boy Scouts*, 35 F.4th at 158 (citing *Marvel*, 140 F.3d at 476).  The U.S. Trustee argues that the Court can approve a retention in the face of a "potential conflict" in two situations *only*:  where every competent professional in the field is already involved in the case, or where the potential of the conflict becoming actual is remote, and there are compelling reasons for employing the professional.  Objection, ¶¶ 23, 29.  But the passage that the U.S. Trustee cites for this proposition comes from the New Jersey bankruptcy court's non-binding decision on appeal in *BH & P*.  By contrast, the Third Circuit's discussion of the issue in *BH & P* focused on "the wide discretion" afforded the bankruptcy court and the "flexible approach" that the court should employ.  *BH & P, Inc.* 949 F.2d at 1316–17; *see also id.* at 1315 ("The caselaw generated in connection with multiple representation of related bankruptcy estates establishes that courts have generally declined to formulate bright-line rules concerning the criteria for disqualification but have favored instead an approach which gives the bankruptcy court discretion to evaluate each case on its facts, taking all circumstances into account.").  The U.S. Trustee's interpretation, which recites one particular bankruptcy court's view of how it might exercise its discretion in the case before it, does not trump the general rule in this Circuit that Bankruptcy Code § 327 "gives the [bankruptcy] court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict." *Marvel*, 140 F.3d at 477; *see also, e.g., Boy Scouts*, 35 F.4th at 158 ("at the court's discretion"); *BH & P, Inc.* 949 F.2d at 1316–17 ("As we have said,  denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion.").  Moreover, because the Third Circuit

affirmed the lower court's decision in *BH & P* on the basis of an actual conflict, its reference to the lower Court's analysis of potential conflicts was *dictum*. *See Marvel*, 140 F.3d at 477 ("in *BH & P* we affirmed the district court's determination that the attorneys in that case had an 'actual conflict of interest.'"); *In re Friedman's Liquidating Trust v. Roth Staffing Cos. (In re Friedman's Inc.)*, 738 F.3d 547, 552 (3d Cir. 2013) ("If a determination by our Court is not necessary to our ultimate holding, 'it properly is classified as *dictum*. It is well established that 'we are not bound by our Court's prior dicta.' [Where prior statements of the law are *dicta*,] neither we, nor the Bankruptcy Court nor the District Court, would be bound by these opinions.") (citations omitted)).

48.     Similarly, the U.S. Trustee asserts that an adverse interest includes any interest that "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." Objection ¶ 20. But the Third Circuit *rejected* this standard as "faulty reasoning." *Marvel*, 140 F.3d at 477 ("[T]he district court erred when it held that it could disqualify as disinterested any person who 'in the slightest degree might have some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and the Bankruptcy Rules.'").

49.     The Court should exercise its discretion here to approve RLF's engagement. The facts discussed above show the absence of an existing conflict, the low potential for RLF to be faced with representing a conflicting interest in these bankruptcy cases, and the steps RLF has taken to ameliorate any such conflict if one ever develops, including that the Debtors have limited RLF's engagement to exclude disputes between the Debtors and Directors, and other counsel for each party will handle any such dispute. In addition, other facts should bear on the Court's discretion as well. First, RLF disclosed its representation of the Directors from the start. It was not hiding the ball. It also engaged with the U.S. Trustee for weeks to try to address his concerns.

Second, RLF obtained the consent and prospective waiver of both the Debtors and Directors. While a waiver alone does not satisfy Bankruptcy Code § 327, it is evidence that the parties most impacted by the representation have consented to it, a fact that the Court should take into account. Third, the Creditors' Committee did not object, subject to the inclusion of language in the proposed order consistent with that in RLF's engagement letter limiting its scope of engagement to exclude matters between the Debtors and Directors. Fourth, RLF has erected an ethical screen to segregate attorneys that have represented Directors from those representing the Debtors, again consistent with best practices. Ultimately, these factors buttress the conclusion that RLF does not represent an adverse interest in these bankruptcy cases.

## **CONCLUSION**

50.     In the end, RLF does not represent the Directors in these chapter 11 cases, and will not represent the Debtors in any dispute with the Directors (or *vice versa*). RLF has established that it can represent the Debtors unencumbered by any bias or conflict, and the U.S. Trustee has failed to carry its burden of demonstrating otherwise. For all these reasons, the Debtors request that the Court overrule the Objection and approve the RLF Application.

Dated: September 21, 2023

Respectfully submitted,

_____/s/ Robert J. Stearn, Jr._____
**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Robert J. Stearn, Jr. (No. 2915)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Jason M. Madron (No. 4431)
Cory D. Kandestin (No. 5025)
James F. McCauley (No. 6991)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
stearn@rlf.com
heath@rlf.com
steele@rlf.com
madron@rlf.com
kandestin@rlf.com
mccauley@rlf.com

*Proposed Co-Counsel to Debtors and
Debtors in Possession*

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Co-Counsel to Debtors and
Debtors in Possession*

RLF1 29674764v.1