## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 18, 2023 at 10:30 a.m. (ET)** <br> **Obj. Deadline: October 6, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE, (II) APPROVING PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "**Debtors**," and together with their non-Debtor affiliates, "**Lordstown**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this motion (the "**Motion**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (as may be amended, the "**Disclosure Statement Order**"), granting the relief described below.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

### PRELIMINARY STATEMENT

1.      The Debtors filed these Chapter 11 Cases to maximize value for the benefit of all stakeholders by marketing and selling their assets in an efficient manner, consolidating the resolution of claims in a single forum, and prosecuting their substantial claims against Foxconn.

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

To this end, the Debtors have engaged in a comprehensive marketing process, settled a major litigation with Karma, and filed an adversary proceeding against Foxconn. Most importantly (and most germane to this Motion), the Debtors have filed and will seek to rapidly confirm a plan of reorganization that provides meaningful recoveries to their stakeholders.  Indeed, the Debtors have a finite amount of cash and assets and it is critical that the Debtors promptly emerge from chapter 11 so as to cut off the administrative burn associated with these cases and maximize value.

2.      The Debtors filed their proposed plan and disclosure statement on September 1, 2023 and, now, file this motion to obtain approval of both the disclosure statement and the solicitation procedures set forth herein.  The proposed plan, which is more fully described below and in the proposed disclosure statement, provides for the full payment of administrative, priority, and secured claims, cash payments to unsecured claims (which are separately classified as general unsecured trade claims and other unsecured claims), and leaves in place the Debtors' preferred and common equity (subject to the subordination of the preferred equity as set forth in the plan).

3.      The Debtors are continuing to negotiate their proposed plan and the disclosure statement with both the official committee of unsecured creditors and the official committee of equity security holders appointed in the Chapter 11 Cases.  The Debtors further anticipate that each of these documents will be amended to reflect the results of such discussions, and that conforming revisions may be made to the relief being requested by this Motion.  Nonetheless, the Debtors are filing the Motion now to avoid delay and move their plan process forward in a fashion that will benefit all stakeholders.  The Debtors therefore request that the Court grant the Disclosure Statement Order.

**RELIEF REQUESTED**

4.　　By this Motion, pursuant to sections 105(a), 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1, 3017-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors respectfully request entry of the Disclosure Statement Order:

(a)　　approving the proposed *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 361] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 360] (together with its exhibits and supplements, each as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(b)　　approving the *Notice of Hearing to Consider Approval of Disclosure Statement for the Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 362] (the "**Disclosure Statement Hearing Notice**") as providing adequate notice of the hearing to consider approval of the Disclosure Statement (the "**Disclosure Statement Hearing**");

---

[2]　Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable, or as the context otherwise requires.

(c)    approving procedures for, among other things, the solicitation and tabulation of votes to accept or reject the Plan, voting to accept or reject the Plan; and filing objections to the Plan (the "**Solicitation Procedures**"); substantially in the form attached to the Disclosure Statement Order as **Exhibit 1**, including finding that the Solicitation Packages (as defined below) that will be sent to Holders of Claims and Interests entitled to vote on the Plan comply with Bankruptcy Rules 3017(d) and 2002(b);

(d)    approving the forms of Ballots, substantially in the forms attached to the Disclosure Statement Order as **Exhibits 2-1** to **2-5**;

(e)    approving the form, manner, and scope of the following notices: (i) notice of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing Notice**"), substantially in the form attached to the Disclosure Statement Order as **Exhibit 3**; (ii) the Notice of Non-Voting Status to Holders of Unclassified and Unimpaired Claims Conclusively Presumed to Accept Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors (the "**Unclassified/Unimpaired Non-Voting Status Notice**"), substantially in the form attached to the Disclosure Statement Order **Exhibit 4**; (iii) the Notice of Non-Voting Status to Holders of Impaired Interests Conclusively Deemed to Reject the Plan (the "**Impaired Non-Voting Status Notice**," together with the Unclassified/Unimpaired Non-Voting Status Notice, the "**Non-Voting Status Notice**") as **Exhibit 5**; (iv) the disputed claim or interest notice (the "**Disputed Claim or Interest Notice**") to Holders of Claims and Interests that are subject to a pending objection by the Debtors and who are not

4

entitled to vote the disputed portion of such Claim or Interest, substantially in the form attached to the Disclosure Statement Order as **Exhibit 6**; (v) the "**Plan Supplement Notice**," substantially in the form attached to the Disclosure Statement Order as **Exhibit 7**; and (vi) the notice ("**Cure and Assumption Notice**") to affected counterparties listed in the Assumed Executory Contracts and Unexpired Leases Schedule substantially in the form attached to the Disclosure Statement Order as **Exhibit 8**;

(f)    approving the form of a cover letter (the "**Cover Letter**") describing the contents of the Solicitation Package and instructions for accessing certain of the documents relating to the Disclosure Statement and the Plan, substantially in the form attached to the Disclosure Statement Order as **Exhibit 9**; and

(g)    establishing the following key dates and deadlines in connection with the foregoing, subject to modification as necessary:

| Event | Date |
|---|---|
| Voting Record Date | **October 18, 2023** |
| Solicitation Date | **Five (5) business days after the entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter** |
| Publication Deadline | **Five (5) business days after the entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter** |
| Rule 3018(a) Motion Deadline | **November 13, 2023 at 4:00 p.m. (ET)** |
| Voting Resolution Event Deadline | **November 22, 2023** |
| Plan Supplement Deadline | **The date that is no later than seven (7) days prior to the Voting Deadline** |
| Plan Objection Deadline | **December 1, 2023 at 4:00 p.m. (ET)** |

| Voting Deadline | **December 1, 2023 at 5:00 p.m. (ET)** |
|---|---|
| Deadline to file (i) Reply to Plan Objections, (ii) Brief in Support of Plan Confirmation; (iii) Declarations in Support of Plan Confirmation, and (ii) Voting Report | **December 12, 2023** |
| Confirmation Hearing | **December 15, 2023, subject to court availability** |

5.     In connection with the relief requested in this Motion and for further reference, the Debtors provide below a list of the exhibits attached to this Motion:

| **Exhibit A** | Disclosure Statement Order |
|---|---|
| **Exhibit 1** | Solicitation Procedures |
| **Exhibit 2-1** | Class 3 General Unsecured Trade Claim Ballot |
| **Exhibit 2-2** | Class 4 Other Unsecured Claim Ballot |
| **Exhibit 2-3** | Class 7 Common Stock Interests Master Ballot |
| **Exhibit 2-4** | Class 7 Common Stock Interests Beneficiary Ballot |
| **Exhibit 2-5** | Class 7 Common Stock Interests Registered Holder Ballot |
| **Exhibit 3** | Confirmation Hearing Notice |
| **Exhibit 4** | Unclassified/Unimpaired Non-Voting Status Notice |
| **Exhibit 5** | Impaired Non-Voting Status Notice |
| **Exhibit 6** | Disputed Claim or Interest Notice |
| **Exhibit 7** | Plan Supplement Notice |
| **Exhibit 8** | Cure and Assumption Notice |
| **Exhibit 9** | Cover Letter |

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).   This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).   Venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The predicates for the relief requested by this Motion are sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002-1, 3017-1, and 9006-1.

8.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order by the Court with respect to this Motion if it is determined that the Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

9.      On June 27, 2023 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases, which are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).   The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On July 11, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Creditors' Committee**") for these Chapter 11 Cases.   On September 7, 2023, the U.S. Trustee appointed the official committee of equity security holders (the "**Equity Committee**") pursuant to section 1102 of the Bankruptcy Code.   No trustee or examiner has been appointed in these Chapter 11 Cases.

10.      Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading to the Petition Date, can be found in the

*Declaration of Adam Kroll in Support of Debtors' Petitions and Requests for First Day Relief* [D.I. 15].

11.     On June 28, 2023, the Court entered an order authorizing the Debtors to retain and employ Kurtzman Carson Consultants LLC (the "**Solicitation Agent**" or "**KCC**") as its claims and noticing agent on [D.I. 54], and on July 25, 2023, the Court entered an order authorizing KCC to be the Debtors' administrative advisor under 11 U.S.C. § 327(a) [D.I. 174].   The Solicitation Agent has the authority, pursuant to the prior orders of this Court, to carry out the functions that will be required of the Solicitation Agent pursuant to the Solicitation Procedures if the Disclosure Statement Order is entered.

12.     On August 1, 2023, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 210-17], which were subsequently amended [D.I. 377-385] on September 7, 2023 and may be further amended from time to time (collectively, as amended, supplemented, or further amended, the "**Schedules**").

13.     On August 24, 2023, the Court entered the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form, Manner, and Procedures of Notice Thereof, and (C) Granting Related Relief* [D.I. 319] (the "**Bar Date Order**").   On August 28, 2023, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code Against Debtors* [D.I. 335] (the "**Bar Date Notice**").

14.     The Bar Date Order provides, among other things: (i) 5:00 p.m. (prevailing Eastern Time) on October 10, 2023 as the deadline to file proofs of claim in the Chapter 11 Cases for persons or entities (except governmental units (as that term is defined in section

101(27) of the Bankruptcy Code)) (the "**General Bar Date**"),[3] (ii) December 26, 2023 at 5:00

p.m. (prevailing Eastern Time) as the deadline for governmental units to file proofs of claim in

the Chapter 11 Cases (the "**Governmental Bar Date**"); (iii) the Rejection Bar Date (as defined

in the Bar Date Order) as the later of: (a) the General Bar Date or the Governmental Bar Date (if

a Governmental Unit is the counterparty to the applicable executory contract or unexpired lease)

and (b) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the service of

an order of the Court authorizing the Debtors' rejection of the applicable executory contract or

unexpired lease; and (iv) the Amended Schedule Bar Date (as defined in the Bar Date Order, and

together with the General Bar Date, the Governmental Bar Date, and the Rejection Bar Date, the

"**Bar Dates**") as the later of (a) the General Bar Date or the Governmental Bar Date (if the

applicable amendment relates to a claim of a Governmental Unit) and (b) 5:00 p.m. (prevailing

Eastern Time) on the date that is 30 days after the claimant is served with notice of the applicable

amendment or supplement to the Debtors' schedules. Service of the Bar Date Notice established

October 10, 2023 as the General Bar Date.

15.    On September 1, 2023, the Debtors filed their proposed Plan [D.I. 360] and

proposed Disclosure Statement [D.I. 361]. Contemporaneously therewith, the Debtors filed the

Disclosure Statement Hearing Notice. The Disclosure Statement Hearing is scheduled for

October 18, 2023.

### PROPOSED PLAN AND DISCLOSURE STATEMENT

#### A.    Overview of the Plan

16.    The Debtors' have filed these Chapter 11 Cases to, among other things, market

and sell their assets in an efficient and value maximizing manner, consolidate the resolution of

---

[3]    The Debtors filed the amended schedules on September 7, 2023, providing parties 30-day notice before October 10, 2023, the General Bar Date, to file proofs of claim.

claims in a single forum, prosecute their substantial claims against Hon Hai Precision Industry Co., Ltd., and certain of its affiliates, known as Foxconn ("**Foxconn**"), and maximize distributions to holders of Claims and Interests.  In connection with the Chapter 11 Cases, the Debtors are, among other things, conducting a process to sell some, all, or substantially all of their assets through the court-approved sale process, working to resolve the material claims against them, and pursuing their claims against Foxconn through an adversary proceeding before the Court.

17.     The Plan would, among other provisions: (i) provide an orderly structure for distributions to Holders of Allowed Claims and Interests, (ii) seek to subordinate the Preferred and Common Stock Interests in the Company held by Foxconn to the Interests of other Holders of the Company's Common Stock Interests, (iii) preserve Retained Causes of Action, including against Foxconn, to be pursued by the Post-Effective Date Debtors, (iv) seek to preserve the value of the Company's net operating losses/tax attributes by leaving the Preferred and Common Stock Interests in the Post-Effective Date Debtors in place and allowing for post-effective date operations, and (v) substantively consolidate the Debtors for the limited purposes of making distributions under the Plan.

18.     In general, the Plan divides Claims and Interests into Classes which will receive distributions in accordance with relative priority established by the Bankruptcy Code, specifies the sources of consideration that each Class is to receive under the Plan, and contains other provisions necessary to implement the Plan.  The Plan separately classifies General Unsecured Trade Claims from Other Unsecured Claims.[4]  The Plan provides that distributions to Holders of General Unsecured Trade Claims will be funded from a pool of cash in an amount to be

---

[4]     "**Other Unsecured Claims**" are general unsecured claims held by insiders or governmental units or that are non-insider indemnification claims against the Debtors related to any litigation existing as of the Petition Date. "**General Unsecured Trade Claims**" are general unsecured claims that are not Other Unsecured Claims.

determined (and subject to adjustment as may be agreed by the Debtors and the Creditors' Committee or determined by the Court). All other distributions under the Plan would come from the Debtors' other assets, which would generally be distributed, subject to the terms of the Plan (including the subordination of Interests held by Foxconn), to Classes of Claims and Interests in order of their respective priorities under the Bankruptcy Code, with distributions not being made to lower priority Classes until Classes having higher priorities are fully paid, all as set forth in more detail in and subject to the provisions of the proposed Plan.

19.    The Plan also contemplates the appointment of a claims administrator (the "**Claims Administrator**"). The Claims Administrator will be authorized to administer the General Unsecured Trade Claims, control and effectuate the reconciliation process and make distributions to the General Unsecured Trade Claims from the cash pool established for their benefit. The identity of the Plan Administrator has not yet been determined and will be disclosed prior to Plan confirmation.

**B.    Overview of Status and Voting Rights of Holders of Claims and Interests**

20.    In accordance with sections 1122 and 1123 of the Bankruptcy Code, the Plan classifies all Holders of Claims or Interests into the following Classes for all purposes, including with respect to voting to accept or reject the Plan as follows:

| Summary of Status and Voting Rights | | | |
|---|---|---|---|
| **Class** | **Claim / Interest** | **Status** | **Voting Rights** |
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Trade Claims | Impaired | Entitled to Vote |

| Summary of Status and Voting Rights | | | |
|---|---|---|---|
| Class | Claim / Interest | Status | Voting Rights |
| 4 | Other Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Foxconn Preferred Stock Interests | Impaired | Deemed to Reject |
| 6 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 7 | Common Stock Interests | Impaired | Entitled to Vote |

21.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims or Interests in Classes 3, 4 and 7 (collectively, the "**Voting Classes**").  The Debtors are **_not_** proposing to solicit votes from Holders of Claims or Interests in Classes 1, 2, 5 and 6 (collectively, the "**Non-Voting Classes**").  More specifically, the Holders of Claims and Interests in Classes 1 and 2 are Unimpaired (the "**Unimpaired Classes**") and are therefore conclusively presumed to accept the Plan.  Holders of Interests in Class 5 are Impaired and deemed to reject the Plan and not entitled to vote.  The Intercompany Interests in Class 6 are deemed Unimpaired and conclusively presumed to accept the Plan and are not entitled to vote.

## BASIS FOR RELIEF

I.     **APPROVAL OF THE DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF HEARING THEREON**

A.     **Approval of the Disclosure Statement**

22.     By this Motion, the Debtors request approval of the Disclosure Statement at the Disclosure Statement hearing.  Pursuant to section 1125(b) of the Bankruptcy Code, a plan

proponent must provide Holders of impaired claims or equity interests with "adequate information" regarding the plan.  Section 1125(a)(1) of the Bankruptcy Code provides:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

23.    Therefore, a debtor's disclosure statement must provide sufficient information to impaired creditors entitled to vote on the plan to make informed decisions about whether to vote to accept or reject the plan.  *See, e.g.*, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003) ("[A] party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing 'adequate information' to 'enable a creditor to make an informed judgment' about the Plan.'"); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3rd Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *Cohen v. Tic Fin. Sys.* (*In re Ampace Corp.*), 279 B.R. 145, 157 n. 26 (Bankr. D. Del. 2002) ("Section 1125 governs the contents of a disclosure statement and provides that acceptance or rejection of a plan may not be solicited until each holder of a claim or interest receives the plan or a summary thereof, 'and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.'"); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 98 (Bankr. D. Del. 1999); *In re Civitella*, 14 B.R. 151, 152 (Bankr. E.D. Pa. 1981) ("The disclosure statement must contain adequate information in order for it to be approved by the Court.").

24.      Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement based on the specific facts and circumstances of each case. *See, e.g.*, *In re Ferguson*, 474 B.R. 466, 471 (Bankr. D.S.C. 2012) ("It is within the Court's discretion to determine whether a disclosure statement contains adequate information."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement."); *In re Worldcom, Inc.*, Case No. M-47 HB, 2003 U.S. Dist. LEXIS 11160, at *30 (S.D.N.Y. June 30, 2003) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that 'the determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.'" (citing *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)).

25.      The Disclosure Statement contains sufficient information necessary for Holders of Claims entitled to vote on the Plan to make an informed decision about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement provides information including:

> (a)      an introduction, including background and overview of the Plan (Art. I);
>
> (b)      information regarding the Debtors' business operations, corporate structure, prepetition capital structure, and events leading to the commencement of the Chapter 11 Cases (Art. II);

14

(c)     a description of the significant events that have occurred during the Chapter 11 Cases (Art. III);

(d)     a summary of the plan, including a description of the classification of claims and interests and distributions under the Plan, and the means of implementation of the Plan (Art. IV);

(e)     a description of the release, injunction, and exculpation provisions contained in the Plan (Art. IV.H);[5]

(f)     information regarding certain federal income tax consequences of the Plan (Art. V);

(g)     a summary of solicitation and voting procedures and certain factors to be considered prior to voting on the Plan (Art. VI);

(h)     factors to consider before voting on the Plan, including risk factors Holders of Claims and Interests should consider (Art. VII); and

(i)     other information about the Debtors and the Plan.

26.     In addition, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan, and concludes with the Debtors' recommendation that Holders of Claims or Interests eligible to vote should vote to accept the Plan because it provides the highest and best recovery to Holders of Claims or Interests against the Debtors (Art. VIII).

27.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains adequate information for voting Holders of Claims and Interests to make an informed judgment regarding whether to vote to accept or reject the Plan.   Accordingly, the Debtors respectfully

---

[5]   Pursuant to Bankruptcy Rule 3016(c), this description is set forth in specific and conspicuous language.

request that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

**B.      Notice of Release, Exculpation, and Injunction Provisions in the Plan**

28.      Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

29.      Article VIII of the Plan includes injunctions, releases, and exculpations highlighted in bold.  The Disclosure Statement in Article IV.H describes in detail the releases provided under the Plan, the entities providing such releases, the entities being released, and the Claims and Causes of Action so released.  Additionally, Article IV.H.5 of the Disclosure Statement sets forth the terms of the exculpation provision under the Plan, and Article IV.H.6 sets forth the injunction related to the release and exculpation provisions in the Plan.  Each of the foregoing sections is set forth in conspicuous, bold print.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**C.      Approval of Disclosure Statement Hearing Notice**

30.      Bankruptcy Rule 3017(a) provides that:

> after a disclosure statement is filed in accordance with [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in [Bankruptcy] Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the Securities and Exchange Commission, and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a). Bankruptcy Rule 2002(b) requires 28 days' notice of the time set for filing objections to and any hearing to consider approval of a disclosure statement. Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court. Additionally, Local Rule 3017-1(a) requires the plan proponent to obtain hearing and objection dates from the Court and to provide notice of those dates in accordance with Bankruptcy Rule 3017. Del. Bankr. L.R. 3017-1(a).

31.     In accordance with Bankruptcy Rules 3017(a) and 2002 and Local Rule 3017-1, contemporaneously with the filing of the Disclosure Statement on September 1, 2023, the Debtors served the Disclosure Statement Hearing Notice, by electronic and/or first class mail, on the following parties, or, in lieu thereof, their counsel, among others: (a) the U.S. Trustee, (b) Foxconn, (c) the Internal Revenue Service, (d) the Securities and Exchange Commission, (e) the United States Attorney for the District of Delaware, (f) the state attorneys general for all states in which the Debtors conduct business; (g) any parties who have asserted liens against the Debtors' assets; (h) counsel to the Creditors' Committee, (i) counsel to the Equity Committee, (j) all Holders of Litigation Claims, (k) all known Holders of Claims and Interests; and (l) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. Copies of the Disclosure Statement Notice, Disclosure Statement and the Plan are available free of charge at the website maintained by the Debtors' Solicitation Agent (as defined below) at https://kccllc.net/lordstown (the "**Debtors' Website**").

32.     To further ensure that creditors receive adequate and fair notice of the Disclosure Statement and as authorized under Bankruptcy Rule 2002(l), the Debtors published the Disclosure Statement Hearing Notice, in a format modified for publication, once in (i) *The Wall Street Journal* or similar nationally circulated news publication and (ii) local newspaper, trade journal or similar publication, if any, as the Debtors deem appropriate in their discretion.

33.     The Debtors submit that the foregoing procedures provided adequate notice of the Disclosure Statement Hearing for all purposes and, accordingly, request that the Court approve such notice as adequate, appropriate, and in compliance with the relevant requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## II.     APPROVAL OF SOLICITATION PROCEDURES

34.     In connection with the Disclosure Statement and Plan, the Debtors propose to implement the solicitation and balloting procedures described in the Solicitation Procedures, in the form attached to the Disclosure Statement Order as **Exhibit 1**.

35.     The Debtors respectfully request that the Court approve the Solicitation Procedures and authorize the solicitation and tabulation of votes on the Plan from Holders of Claims entitled to vote on the Plan in accordance with such Solicitation Procedures.  While the Debtors are seeking approval of the Solicitation Procedures in their entirety pursuant to this Motion, an overview of certain salient features of the Solicitation Procedures is provided below, including: (a) the proposed contents of the Solicitation Packages (as defined below), (b) the Voting Deadline and the use of the Solicitation Agent's electronic ballot submission platform, (c) the voting and tabulation procedures relating to applicable beneficial holders of interests, (d) the temporary claim voting procedures, including the Debtors' proposal to allow all contingent and/or unliquidated claims, including Litigation Claims solely for voting purposes in the amount of $1.00 in the aggregate per claimant, (e) the procedures with respect to disputed claims or interests, and (f) other pertinent aspects of the Solicitation Procedures, including certain circumstances in which Ballots will not be counted and the Debtors' right to make amendments to the Plan, Disclosure Statement and solicitation materials.

A.      **Approval of the Solicitation Packages**

     *i)*      *The Contents and Recipients of the Solicitation Packages*

36.      The Debtors, acting through the Solicitation Agent, propose to solicit acceptances of the Plan by disseminating the materials set forth below (collectively, the "**Solicitation Package**") **within five (5) business days after the entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter** (the "**Solicitation Date**"), to the Holders of Claims and Interests in the Voting Classes.   The following materials will constitute the Solicitation Package:

     (i)      the Cover Letter, describing the contents of the Solicitation Package, together with instructions to obtain access electronically, free of charge, to the Plan, Disclosure Statement and Disclosure Statement Order at the Debtors' restructuring website, and instructions for obtaining, free of charge, paper or flash drive copies of the materials provided in electronic format by contacting the Solicitation Agent, and urging the Holders of Claims in each of the Voting Classes to vote to accept the Plan;

     (ii)      the Confirmation Hearing Notice;

     (iii)      the Disclosure Statement, with all exhibits that have been filed with the Court before the Solicitation Date, including the Plan;

     (iv)      the Disclosure Statement Order, including the Solicitation Procedures; and

     (v)      an applicable Ballot, substantially in the form attached to the Disclosure Statement Order as **Exhibits 2-1**, **2-2**, **2-3**, **2-4** and **2-5**, with return instructions and a return envelope, as applicable;[6] and

     (vi)      any other materials ordered by the Court to be included as part of the Solicitation Package.

37.      The Debtors will distribute the Solicitation Packages to all Holders of Claims and Interests in the Voting Classes entitled to vote on the Plan.   Moreover, the Debtors will cause a USB flash drive that contains the Solicitation Package (without a Ballot) to be served on the

---

[6]      Service of Solicitation Packages to Beneficial Holders by the Nominees may be performed electronically, or otherwise in their customary practice, in which case they may not contain pre-addressed, postage pre-paid return envelopes.

following parties, or, in lieu thereof, their counsel (to the extent the parties have not received a Solicitation Package with a Ballot): (a) the U.S. Trustee, (b) Foxconn, (c) the Internal Revenue Service, (d) the Securities and Exchange Commission, (e) the United States Attorney for the District of Delaware, (f) the state attorneys general for all states in which the Debtors conduct business; (g) any parties who have asserted liens against the Debtors' assets; (h) counsel to the Creditors' Committee, (i) counsel to the Equity Committee, and (j) any other party that has requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

*ii)*     *The Methods of Distribution of the Solicitation Packages*

38.     The Bankruptcy Rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001.  As set forth below, the interests of justice, efficiency and the preservation of the estates' assets warrant the dissemination of the Solicitation Packages in the manner described below and set forth in the Solicitation Procedures.

39.     The Debtors anticipate that the Solicitation Packages, including the Disclosure Statement and its exhibits, will be hundreds of pages in length.  Due to the significant number of Claims in the Voting Classes, the administrative costs associated with mailing the Solicitation Packages to creditors and interest holders in the Voting Classes will be cost-prohibitive.

40.     Instead, the Debtors propose to cause the Solicitation Agent to mail in paper format the Cover Letter, an applicable Ballot (together with a return envelope, to the extent applicable) and the Confirmation Hearing Notice to all Holders of Claims and Interests in the Voting Classes.  The Cover Letter and the Ballots will clearly direct the recipients to access the Plan, Disclosure Statement and Disclosure Statement Order in electronic format via the Debtors' Website.

41.    The Debtors are committed to ensuring that all materials contained in the Solicitation Packages are readily accessible to all Holders of Claims and Interests.  Additionally, the Cover Letter, Ballots and Notices of Non-Voting Status will contain instructions for requesting, free of charge, paper or flash drive format copies of the Plan, Disclosure Statement and Disclosure Statement Order.  The Solicitation Agent will promptly provide the requested documents in the creditor's preferred format upon receipt of any such request.

42.    Recognizing the need to reduce the costs associated with mailing voluminous documents, numerous courts have permitted debtors to direct creditors, including voting creditors, to a website to access the plan and disclosure statement where there are significant costs associated with distribution of those documents by mail.  *See e.g. In re Blackjewel L.L.C.*, Case No. 19-30289 [D.I. 2470] (Bankr. S.D. W. Va. Oct, 16, 2020) (authorizing debtors to direct voting classes to restructuring website to access plan and disclosure statement, and provide only ballots and confirmation hearing notice to voting classes in paper form); *In re BJ Services, LLC*, et, al., Case No. 20-33627 (MI) [D.I. 638] (Bankr. S.D. Tex. Sept. 11, 2020) (same); *In re Stage Stores, Inc*., et. al., Case No. 20-32564 (DRJ) [D.I. 540] (Bankr. S.D. Tex. Jul. 1, 2020) (same); *In re Pier 1 Imports, Inc., et. al*., [D.I. 804] Case No. 20-30805 (KRH) (Bankr. E.D. Va. June 24, 2020) (same); In re *In re Draw Another Circle, LLC*, Case No. 16-11452 (KJC) (Bankr. D. Del. Dec. 19, 2016) [D.I. 1067] (same); *In re Dune Energy, Inc*., Case No. 15-10336 (Bankr. W.D. Tex. Aug. 18, 2015) [D.I. 453] (same); *In re Borders Grp., Inc*., Case No. 11-10614 (Bankr. S.D.N.Y. Nov. 14, 2011) (MG) [D.I. 2122] (same).  The Debtors request that the Court authorize the dissemination of the Solicitation Packages in the manner set forth herein and in the Solicitation Procedures, which they submit will serve the interests of creditors by both (i) ensuring the Solicitation Packages are readily accessible and (ii) conserving valuable estate resources.

### B.    Approval of the Voting Deadline and Use of E-Ballot Platform

43.    Bankruptcy Rule 3017(c) provides that, "[o]n or before the approval of the disclosure statement, the court shall fix a time within which holders of claims and interests may accept or reject the plan."  Fed. R. Bankr. P. 3017(c).  The Debtors will use their reasonable efforts to cause the Solicitation Packages to be distributed by no later than **five (5) business days after the entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter**, or as soon as reasonably practicable thereafter.  Based on this schedule, the Debtors propose that the Court set **December 1, 2023** (the "**Voting Deadline**") as the deadline by which the Solicitation Agent must actually receive completed Ballots from Holders of Claims in the Voting Classes or their counsel.  The Debtors submit that a **37**-day solicitation period complies with the applicable Bankruptcy Rules and provides sufficient time for creditors to receive and review the Solicitation Packages, make an informed decision to accept or reject the Plan, and submit timely Ballots.

44.    Additionally, the Solicitation Procedures provide that, to be counted, completed Ballots must be returned to and actually received by the Solicitation Agent on or before the Voting Deadline by (1) the electronic Ballot submission platform on the Solicitation Agent's website (the "**E-Ballot Platform**"), (2) mail, (3) overnight delivery, or (4) personal delivery, except in the case of Master Ballots (each as defined below), which cannot be submitted via the E-Ballot Platform but can be returned to the Solicitation Agent by email instead.

45.    Instructions for casting an electronic Ballot using the E-Ballot Platform may be found on the Debtor's Website.  Such instructions are also set forth on the applicable Ballots. The encrypted ballot data and audit trail created by each electronic submission on the E-Ballot Platform will become part of the record of any electronic Ballot submitted in this manner and the electronic signature will be deemed to be an original signature that is legally valid and effective.

Any Ballot submitted by facsimile transmission or other electronic means except through the E-Ballot Platform on the Solicitation Agent's website will not be counted, except in the case of Master Ballots, which, as set forth above cannot be submitted via the E-Ballot Platform but can be submitted via email to the Solicitation Agent.

### C.   Voting and Tabulation Procedures Applicable to Beneficial Holders of Common Stock Interests

46.     The Debtors have proposed special voting and tabulation procedures applicable to beneficial holders (each a "**Beneficial Holder**") of Class 7 (Common Stock Interests), to facilitate the efficient tabulation of the votes of such Holders by the applicable banks, brokers or other intermediaries (each a "**Nominee**") that are identified to the Solicitation Agent as Holders of record of such Interests.  Specifically, the Debtors propose to cause the Solicitation Agent to distribute a Solicitation Package, including a Registered Holder Ballot in the form attached to the Disclosure Statement Order as **Exhibit 2-5** to each Entity that is directly registered as a Beneficial Holder (i.e. does not hold their Claim through a Nominee) as of the Voting Record Date.  The Solicitation Agent will also distribute an appropriate number of Solicitation Packages, including the requisite number of Beneficial Holder Ballots in the form attached to the Disclosure Statement Order as **Exhibit 2-4** and applicable Master Ballot in the form attached to the Disclosure Statement Order as **Exhibit 2-3** to each Nominee identified to the Solicitation Agent as a Holder of record through which one or more such Beneficial Holders holds such Claim in "street name" as of the Voting Record Date, as set forth in Section IV.D of the Solicitation Procedures.[7]

---

[7]   Nominees may use their ordinary and standard procedures to disseminate the voting materials (including use of their own voting form) as well as in the collection of votes and elections from their Beneficial Holders.

47.    Each Nominee must distribute a Solicitation Package to each Beneficial Holder, including a Beneficial Holder Ballot, within five business days of receipt of such materials from the Solicitation Agent in one of the following two ways (as selected by the Nominee):

(a)    obtaining the votes of Beneficial Holders by (i) immediately distributing the Solicitation Package, including the Beneficial Holder Ballots it receives from the Solicitation Agent to all such Beneficial Holders, (ii) promptly collecting the Beneficial Holder Ballots from such Beneficial Holders that cast votes on the Plan, (iii) compiling and validating the votes and other relevant information of all such Beneficial Holders on the Master Ballot, and (iv) transmitting the Master Ballot to the Solicitation Agent by the Voting Deadline; or

(b)    distributing pre-validated Ballots pursuant to the following procedures: (i) the Nominee shall forward to each Beneficial Holder as of the Voting Record Date the Solicitation Package, an individual Ballot that has been pre-validated, postage prepaid return envelope as indicated in Section IV.D of the Solicitation Procedures; (ii) to pre-validate a Ballot, the Nominee should complete the first item and execute the Ballot and indicate on the Ballot the name of the Nominee and the DTC participant number, as applicable, the amount of securities held by the Nominee for the Beneficial Holder, and the account number for the account in which such securities are held by the Nominee; and (iii) the Beneficial Holder shall complete and return the pre-validated Ballot to the Solicitation Agent by the Voting Deadline.

### D.        Temporary Claim Voting Procedures

48.        Generally, only holders of claims allowed under section 502 of the Bankruptcy Code are entitled to vote to accept or reject a chapter 11 plan.  *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."). Claims that are (a) listed on the Schedules as contingent, unliquidated, or disputed, (b) specified in Proofs of Claim in an unliquidated or zero dollar amount or as contingent or disputed, or (c) the subject of pending objections are not allowed claims under section 502(a) of the Bankruptcy Code.  However, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [any] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

49.        The Debtors propose that, solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim or Interest, the following hierarchy be used to determine the amount of the Claim or Interest associated with each claimant's or interest holder's vote:

> (a)        the Claim or Interest amount (i) settled or agreed upon by the Debtors, as memorialized in a document filed with this Court,[8] (ii) set forth in an order of this Court or (iii) set forth in a document executed by the Debtors pursuant to authority granted by this Court;

> (b)        if subsection (a) does not apply, the Claim or Interest amount allowed (temporarily or otherwise) pursuant to a Resolution Event under the Solicitation Procedures;

---

[8]    For the avoidance of doubt, a holder of a Claim or Interest that is the subject of a pending objection on a "reclassify" or "reduce and allow" basis shall be entitled to vote such Claim in the reclassified priority or reduced amount contained in such objection absent a further order of this Court.

(c)    if none of subsections (a)–(b) apply, the Claim amount asserted in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts that have been paid or asserted on account of any interest accrued after the Petition Date; *provided*, *that*, any Ballot submitted by a Holder of a Claim who timely filed a Proof of Claim in respect of (i) a contingent Claim or a Claim in a wholly-unliquidated, unknown or undetermined amount (based on a reasonable review by the Debtors) that is not the subject of an objection shall count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and shall count as a Ballot for a general unsecured Claim in the amount of $1.00 solely for the purposes of voting and satisfying the dollar amount requirement of section 1126(c) of the Bankruptcy Code, and (ii) with respect to a non-contingent, partially liquidated and partially unliquidated Claim, such Claim shall be allowed for voting purposes only in the liquidated amount;

(d)    if none of subsections (a)–(c) apply, the Claim amount listed in the Schedules (to the extent such Claim has not been superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled for $0.00 or as contingent, disputed, or unliquidated and has not been paid; *provided*, *further*, that a Claim that is listed in the Schedules for $0.00 or as contingent, unliquidated, or disputed and for which a Proof of Claim was *not* (i) filed by the applicable Bar Date (as may have been extended by agreement of the Debtors) or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline is not entitled to vote; and

(e)    if none of subsections (a)–(d) apply, such Claim or Interest shall be disallowed for voting purposes.

50.    In addition, the amount of Interests allowed to vote of Holders of Class 7 (Common Stock Interests) is based on the number of shares owned as reflected in the DTC's records as of the Voting Record Date, which Interests are not the subject of a pending objection, other than a "reduce and allow" objection, filed with this Court by the Debtors at least seven days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a Holder of an Interest that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Interest in the reduced amount contained in such objection absent a further order of this Court.  Holders of Interests in Class 7 who filed Class 4 proofs of claim will not receive a Class 4 Ballot, but rather a Class 7 Ballot through their Nominee, even if objections to reclassify their Interests are not filed. Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims.  If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.

51.    Additionally, the majority of the Claims scheduled on account of Litigation Claims, causes of action, or any other litigations against the Debtors are contingent and/or unliquidated.  It is not practicable to estimate all such Claims for purposes of voting.

Accordingly, with respect to all Litigation Claims, the Debtors propose that all such Claims be allowed for voting purposes only as follows:

> **Calculation of Votes With Respect to Litigation Claims.** For the avoidance of doubt, each Claim for which a Proof of Claim has been timely filed or scheduled on account of a claim, cause of action, or litigation, including without limitation, any purported class action, class suit, or similar representative action, against the Debtors and which has not been fixed pursuant to a judgment or settlement entered into and approved by a court of competent jurisdiction, including the Court prior to the Voting Record Date and reflects, in whole or in part, an unliquidated and/or contingent claim that is not subject to a pending objection (regardless of whether such Claim is wholly or partially contingent or non-contingent or liquidated or unliquidated) (each a "**Litigation Claim**" and collectively, "**Litigation Claims**"), shall be allowed temporarily for voting purposes only and not for purposes of allowance or distribution in the amount of $1.00 per such Holder.

> Solicitation Procedures IV.B.6.

52.    The temporary allowance of Litigation Claims in the amount of $1.00 is solely for voting purposes, and will not be binding upon the Holder, the Debtors, their counsel, or any other party for any purpose other than voting on the Plan. Any Holder of a Litigation Claim that seeks different treatment for such Claim for voting purposes is required to file a Rule 3018(a) Motion by the applicable Rule 3018(a) Motion Deadline and otherwise satisfy the requirements for Rule 3018(a) Motions set forth in the Solicitation Procedures.

53.    The Litigation Claims are contingent and/or unliquidated. The proposed temporary allowance of such Claims for voting purposes addresses this issue in a way that adequately considers the particular circumstances of the Chapter 11 Cases and is consistent with similar chapter 11 cases. Courts in numerous other cases involving litigation against chapter 11 debtors have allowed claims temporarily for limited purposes, including allowing such claims at $1.00 for voting purposes, in order to facilitate voting on chapter 11 plans and ensure that the votes of class members and other litigants are adequately represented. *See, e.g.*, *In re A.H.*

*Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989) (the placement of a nominal value on each claim for voting purposes was appropriate as "[a]ny attempt to evaluate each individual claim for purposes of voting on the Debtor's Plan of Reorganization would, as a practical matter, be an act of futility, and would be so time consuming as to impose on many, many deserving claimants further intolerable delay all not only to their detriment, but to the detriment of the financial well being of the estate as well"); *In re Johns-Manville Corp.*, 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986) (fixing asbestos claims at $1.00 for voting purposes and holding that "[i]t has been the stated goal of this court and of the parties in interest . . . to ensure the protection and participation of the interests of the asbestos health victims.   The construct of the voting procedure is proper as it clearly meets the desideratum of expanded suffrage and participation in the reorganization by all parties in interest.").[9]   The Debtors submit that these voting procedures are appropriate and reasonable under the circumstances of the Chapter 11 Cases and should be approved.

### E.      Approval of Disputed Claim or Interest Procedures

54.      The proposed Solicitation Procedures include procedures for the treatment of Claims or Interest in a Voting Class subject to pending objections or other dispute, as follows:

(a)      Absent further order of the Court, the Holder of a Claim or Interest in a Voting Class that is the subject of a pending objection only to reclassify or

---

[9]   *See also, e.g., In re Imerys Talc Am. Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [D.I. 2863] (approving procedures temporarily allowing talc personal injury claims at $1.00 for purposes of voting); *In re The Weinstein Co. Holdings, LLC*, No. 18-10601 (MFW) (Bankr. D. Del. Nov. 17, 2020) [D.I. 3101] (approving procedures allowing sexual misconduct claims at $1.00 solely for voting purposes); *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [D.I. 6340] (approving procedures temporarily allowing fire victim claims at $1.00 for voting purposes); *In re Roman Catholic Bishop of Great Falls*, No. 17-60271 (Bankr. D. Mont. June 18, 2018) [D.I. 382] (approving solicitation procedures temporarily allowing abuse claims at $1.00 for voting purposes); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018 [D.I. 1639] (approving procedures temporarily allowing tort claims relating to Debtors' defective airbag inflators, whether based on personal injury, wrongful death, or economic loss, at $1.00 for voting purposes); *In re Catholic Diocese of Wilmington, Inc.*, No. 09-13560 (CSS) (Bankr. D. Del. May 20, 2011) [D.I. 1317] (approving procedures temporarily allowing abuse personal injury claims at $1.00 for voting purposes).

reduce the amount of such Claim or Interests, i.e. a "reclassify" claims objection or a "reduce and allow" claim or interest objection, shall be entitled to vote such Claim or Interests in accordance with the proposed reclassification or in the reduced amount (as applicable) contained in such claim objection.

(b)     If a Claim or Interest in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Court on or prior to the Solicitation Date (a "**Disputed Claim or Interest**"), (a) the Debtors shall cause the applicable Holder to be served with the Disputed Claim or Interest Notice, and (b) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined below) occurs.

(c)     If a Claim or Interest in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Court after the Solicitation Date, the applicable Claim or Interest shall be deemed temporarily allowed solely for voting purposes, without further action by the Debtors or the Holder of such Claim or Interest and without further order of the Court, unless the Court orders otherwise.

(d)     If the Holder of any Disputed Claim or Interest seeks to challenge the disallowance or estimation of its Claim or Interest for voting purposes, such Holder must file with the Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court and served on the Debtors *so*

*as to be actually received by* **November 13, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Rule 3018(a) Motion Deadline**"). If a Holder of a Disputed Claim or Interest files a timely Rule 3018(a) Motion, such Holder's Ballot shall not be counted unless a Resolution Event occurs prior to **November 22, 2023** (the "**Voting Resolution Event Deadline**").[10]

55.     A "**Resolution Event**" means, with respect to a Disputed Claim or Interest that is the subject of an objection other than a "reclassify" or "reduce and allow" objection, the occurrence of one or more of the following events on or before the Voting Resolution Event Deadline:

(a)     entry of an order of the Court, after notice and a hearing, allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

(b)     entry of an order of the Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim or Interest for voting purposes;

(c)     execution of a stipulation or other agreement between the Holder of a Disputed Claim or Interest and the Debtors resolving the objection and allowing such Claim or Interest for voting purposes in an agreed-upon amount or otherwise fixing an amount of the Claim for voting purposes; or

(d)     the pending objection is voluntarily withdrawn by the objecting party.

---

[10]     If a holder of a Disputed Claim or Interest files a Rule 3018(a) Motion by the Rule 3018(a) Motion Deadline, the Solicitation Agent, at the direction of the Debtors or their counsel, shall send such holder a Solicitation Package, including an applicable Ballot as soon as practicable after such Rule 3018(a) Motion is filed.  A Ballot returned by a holder of a Disputed Claim or Interest to the Solicitation Agent in compliance with these Solicitation Procedures shall only be counted to the extent that a Voting Resolution Event has occurred with respect to the holder's Disputed Claim or Interest by the Voting Resolution Event Deadline.

56.    The Debtors respectfully request this Court authorize the procedures for the resolution of Disputed Claims or Interests, as such procedures are customary and will streamline the solicitation process in the Chapter 11 Cases.

**F.    Approval of Other Aspects of the Solicitation Procedures**

**i)    *Circumstances in Which Ballots Will Not Be Counted***

57.    The Solicitation Agent will tabulate the votes to accept or reject the Plan based on the Ballots actually received by the Voting Deadline.  The Solicitation Procedures specify certain circumstances in which a vote reflected on a Ballot will not be counted.  Those circumstances include, without limitation: (a) any Ballot submitted by a person who does not hold, or represent a person that holds, a Claim in the applicable Voting Class as of the Voting Record Date; (b) any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including electronic mail) with respect to such Ballot; (c) any Ballot delivered by facsimile transmission, electronic mail (other than a Master Ballot), or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot Platform shall be counted; (d) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (e) any Ballot that is submitted in an inappropriate form that is not the appropriate Ballot for such Claim; (f) any Ballot sent to a person other than the Solicitation Agent; (g) any Ballot that is unsigned; *provided*, *however*, for the avoidance of doubt, a Ballot submitted via the Solicitation Agent's E-Ballot Platform shall be deemed to contain an original signature; (h) a Ballot without a vote on the Plan or in which the claimant has voted to both accept and reject the Plan; or (i) any Ballot that is not completed.

58.    The Solicitation Procedures further provide general voting procedures and standard assumptions the Solicitation Agent will use in tabulating the Ballots.  *See* Solicitation Procedures § IV.C.  Subject to Sections IV.D of the Solicitation Procedures, if multiple Ballots

are timely received from or on behalf of a Holder of a single Claim, the effective vote shall be the last properly executed Ballot timely received by the Solicitation Agent that satisfies the voting and tabulation procedures specified in the Solicitation Procedures and shall supersede and revoke any prior Ballot received.  In the event that multiple Ballots on account of the same Claim or Interests are received on the same day, they shall not be counted if the votes are inconsistent.

59.     Among other things, the Debtors reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot, provided that any such rejections will be documented in the Voting Report.  Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

### ii)     The Debtors' Rights to Make Amendments to the Plan, Disclosure Statement and the Solicitation Materials

60.     The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, the Plan, the Ballots, the Solicitation Procedures, the Solicitation Packages and all documents provided therein, the Confirmation Hearing Notice, the Non-Voting Status Notice, the Dispute Claims or Interests Notice, and related documents without further order of this Court, including, without limitation, changes to correct typographical, grammatical, and formatting errors or omissions, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution, or modify the Publication Notice as necessary.

61.     The Debtors submit that the procedures described above and set forth more fully in the Solicitation Procedures are reasonable under the circumstances of these Chapter 11 Cases and should be approved.

### III.    APPROVAL OF FORMS OF BALLOTS

62.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form 314, to "creditors and interest Holders entitled to vote on the plan."  The Debtors propose to distribute to Holders of Claims and Interests in the Voting Classes that are eligible to vote, Ballots substantially in the forms attached to the Disclosure Statement Order as **Exhibits 2-1** to **2-5**.  The forms of Ballots are based on Official Form B 314 but have been modified to address the particular aspects of these Chapter 11 Cases and to include certain information and instructions relevant to each Voting Class.

63.    The Ballots will be distributed to Holders of Claims and Interests in the Voting Classes or such Holders' counsel in accordance with the Solicitation Procedures and as set forth herein.  The forms of Ballots are similar in all material respects to those used in other chapter 11 cases involving funded debt claims.

64.    Accordingly, the Debtors submit that the proposed forms of Ballots substantially comply with Bankruptcy Rule 3017(d), while taking into account the particular circumstances of the Chapter 11 Cases, and should be approved.

### IV.    APPROVAL OF FORM, MANNER, AND SCOPE OF CONFIRMATION HEARING NOTICE

65.    Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  In accordance with Bankruptcy Rule 3017(c), and in light of the Debtors' proposed solicitation schedule outlined below, the Debtors propose that December 15, 2023 at [10:30 a.m.] (prevailing Eastern Time), or the nearest date thereafter that is convenient for the Court, be fixed by the Court as the date for the Confirmation Hearing.  Such date will provide the Debtors sufficient time to solicit votes on

the Plan in accordance with the Solicitation Procedures and to notify the required parties of the Confirmation Hearing and the opportunity to submit objections to the Plan, if any, before the Confirmation Hearing.  The Debtors also request that the Court order that the Confirmation Hearing may be continued from time to time by the Debtors without further notice to creditors or any other parties in interest other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with this Court.

### A.   Confirmation Hearing Notice and Publication Notice

66.   Bankruptcy Rule 3017(d) requires a plan proponent to send to all creditors and interest holders a notice regarding the deadlines for voting on the plan.  Bankruptcy Rule 2002(b) requires 28 days' notice of any hearing to consider confirmation of a chapter 11 plan. Bankruptcy Rule 3020(b)(1) further provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  In accordance with these Bankruptcy Rules, the Confirmation Hearing Notice will be served on (a) the U.S. Trustee, (b) Foxconn, (c) the Internal Revenue Service, (d) the Securities and Exchange Commission, (e) the United States Attorney for the District of Delaware, (f) the state attorneys general for all states in which the Debtors conduct business; (g) any parties who have asserted liens against the Debtors' assets; (h) counsel to the Creditors' Committee, (i) counsel to the Equity Committee, (j) all Holders of Litigation Claims, (k) all known Holders of Claims and Interests; and (l) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002, among others, and will include: (a) instructions as to how to electronically view or obtain copies of the Disclosure Statement (including the Plan and other exhibits thereto), the Disclosure Statement Order, and all other materials in the Solicitation Package (excluding the Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) the date and time fixed for submitting votes on the Plan; (c) notice of the Voting Deadline; (d) notice of the Plan Objection

35

Deadline; (e) notice of the Plan Supplement Deadline; and (f) the Confirmation Hearing. As noted above, the Solicitation Packages will include the Confirmation Hearing Notice and will be distributed on or before **five (5) business days after the entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter**. Thus, parties will have **33** days' notice of the proposed Confirmation Hearing date and Plan Objection Deadline (as defined below) required by Bankruptcy Rule 2002(b). Accordingly, the Confirmation Hearing Notice should be considered adequate notice under Bankruptcy Rules 2002 and 3017(d).

67. The Debtors further seek permission pursuant to Bankruptcy Rule 2002(l) to supplement the foregoing notice procedures by publishing notice of the Debtors' solicitation of votes on the Plan and the Confirmation Hearing. Bankruptcy Rule 2002(l) permits the Court to order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Bankruptcy Rule 9008 further provides that the Court may "determine the form and manner" of publication notice. The Debtors will publish the Confirmation Hearing Notice (with such changes as may be appropriate for purposes of publication, the "**Publication Notice**") in (i) *The Wall Street Journal* or similar nationally circulated news publication and (ii) local newspaper, trade journal or similar publication, if any, as the Debtors deem appropriate in their discretion. The Debtors submit that the content of the Publication Notice and breadth of its distribution provides adequate notice of the Confirmation Hearing, the Plan Objection Deadline, and the Voting Deadline to all potential creditors.

### B. Notices of Non-Voting Status

68. Bankruptcy Rule 3017(d) permits a bankruptcy court to waive the requirement that a debtor's plan and disclosure statement be mailed to unimpaired classes. In lieu thereof, a bankruptcy court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and

disclosure statement may be obtained upon request," as well as "notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to such classes.  Fed. R. Bankr. P. 3017(d).  As discussed above, Holders of Claims in Classes 1 and 2 are not entitled to vote on the Plan.  As a result, they will not receive Solicitation Packages.  In addition, Holders of Interests in Class 5 are Impaired and deemed to reject the Plan and not entitle to vote.  Therefore, they will not receive Solicitation Packages.  In lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in the Non-Voting Classes:

(a)    ***Unimpaired Classes – Conclusively Deemed to Accept.***  Holders of Claims in Classes 1 and 2 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.  Accordingly, the Debtors propose to send the Unclassified/Unimpaired Non-Voting Status Notice and the Confirmation Hearing Notice to each Holder of a Claim in the Unimpaired Classes.

(b)    ***Unclassified Claims***. The Debtors also intend to send the Unclassified/Unimpaired Non-Voting Status Notice to each Holder of an Administrative Claim, Priority Tax Claim, and Professional Fee Claim, which are unclassified under the Plan (collectively, the "**Unclassified Claims**").

(c)    ***Impaired Class – Conclusively Deemed to Reject***.  Holders of Interests in Class 5 are Impaired under the Plan and, therefore, are presumed to have accepted the Plan.  Accordingly, the Debtors propose to send the Impaired Non-Voting Status Notice and the Confirmation Hearing Notice to Holders of Interest in Class 5.

(d)     ***Disputed Claims or Interests.***   Holders of Claims or Interests that are subject to a pending objection by the Debtors as of the Solicitation Date are not entitled to vote the disputed portion of their Claim or Interest.  As such, the Debtors propose to send the Disputed Claim or Interest Notice to each such Holder.

69.     The Non-Voting Status Notice and Disputed Claim or Interest Notice will include, among other things: (a) instructions regarding how to obtain access, free of charge, to the Plan and the Disclosure Statement via the Debtors' Website or the Court's website via PACER, (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan, (c) notice of the Plan Objection Deadline, (d) the notice of the Confirmation Hearing date, and (e) information related thereto.  The Debtors believe that the mailing of the Non-Voting Status Notice and Disputed Claim or Interest Notice in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims and Interests in the Non-Voting Classes.

### C.     Waiver of Requirement to Serve Non-Voting Holders of Intercompany Interests

70.     With respect to Class 6 (Intercompany Interests), the Debtors are requesting authority to waive any requirement to serve such Holders with a Solicitation Package or any other type of notice in connection with solicitation of the Plan.  In particular, the Plan provides that the Intercompany Interests in Class 6 shall be reinstated and be Unimpaired in all respects.

71.     In light of the intercompany nature of these Interests and their non-voting status, the Debtors are requesting a waiver from any requirement to serve the Holders of Interests in Class 6.

D.      **Plan Supplement Notice**

72.      In accordance with the local rules, the Debtors will file the Plan Supplement no later than seven (7) days before the earlier of the Voting Deadline and deadline for objections to the Plan, unless otherwise ordered by the Court.  Local Rule 3016-2.  The Debtors may file additional documents with the Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement.

73.      The Debtors will serve the Plan Supplement Notice with the Plan Supplement on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter on the parties listed in the Plan Supplement Notice, as amended, supplemented, or modified.  Notwithstanding the foregoing, the Debtors are requesting that they be permitted to amend the documents contained in, and exhibits to, the Plan Supplement through the Plan Effective Date solely in accordance with the Plan.

V.      **PROCEDURES FOR ASSIGNMENT, ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN**

74.      The Plan provides that, any Executory Contract which has not been assumed with the approval of the Court on or prior to the Confirmation Date shall be deemed a rejected Executory Contract by the applicable Debtor effective on the Confirmation Date. The Plan shall constitute a motion to reject such Executory Contracts and the Debtors shall have no liability thereunder, except that any Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Trade Claim subject to filing of a Proof of Claim pursuant to Article III.B.3 of the Plan.   Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Court shall constitute approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Court that each such rejection is in

the best interest of the applicable Debtor, its Estate, and all parties in interest in the Chapter 11 Cases.

75.    The Debtors propose to file a Assumed Executory Contracts and Unexpired Leases Schedule at least fourteen (14) days before the Confirmation Hearing, serve the Cure and Assumption Notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).

76.    Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Court.  The Debtors request that any objections to the Debtors' proposed Cure Amounts or assumption of executory contracts and unexpired leases under the Plan (i) be in writing, (ii) conform to the applicable Bankruptcy Rules and Local Rules, (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, and (iv) be filed with the Court and served upon (a) counsel to the Debtors; (b) the U.S. Trustee; (c) counsel to the Creditors' Committee; and (d) counsel to the Equity Committee by e-mail.

77.    The Debtors request that any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any

direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Wind Down Estate, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor.

## NOTICE

78.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to Foxconn; (iii) counsel to the Creditors' Committee; (iv) counsel to the Equity Committee; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission (vii) the United States Attorney for the District of Delaware; (viii) the state attorneys general for all states in which the Debtors conduct business; (ix) any parties who have asserted liens against the Debtors' assets; and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Disclosure Statement Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other and any further relief as the Court may deem just and proper.

Dated: September 22, 2023

Respectfully submitted,

/s/ *Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
defranceschi@rlf.com
heath@rlf.com
steele@rlf.com

*Proposed Co-Counsel to Debtors and Debtors-in-Possession*

–and–

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Co-Counsel to Debtors and Debtors-in-Possession*