IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE | ) Chapter 11 |
| | ) |
| LORDSTOWN MOTORS CORP., *et. al.*,[1] | ) Case No. 23-10831-MFW |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: Oct. 18, 2023 at 10:30 am (ET) |
| | ) Ref Doc. No. 467 |

**OBJECTION BY THE U.S. SECURITIES AND EXCHANGE COMMISSION
TO DEBTORS' MOTION TO APPROVE DISCLOSURE STATEMENT,
PLAN AND SOLICITATION PROCEDURES, FORMS OF BALLOTS AND
OTHER RELIEF, AND RESERVATION OF RIGHTS**

The U.S. Securities and Exchange Commission (the "**Commission**") objects to the Debtors' motion (Dkt No. 467, the "**Motion**") to approve their disclosure statement, plan and solicitation procedures, forms of ballots and other relief.  Specifically, the Motion cannot be granted because: (1) the disclosure statement fails to (a) provide unsecured creditors with an estimated recovery on their claims (while also classifying unsecured claims in two separate classes with different treatment), and (b) adequately describe the nature of the Debtors' post-confirmation business operations that purportedly justify a Chapter 11 discharge; and (2) the form ballots purportedly implement a process to obtain consent to a third-party release that is inconsistent with the standard for consent set forth by this Court in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del.).  The Commission also reserves all rights and objections with respect to the confirmability of the Debtors' plan.

---

[1] The Debtors and the last four digits of their respective federal tax identification numbers are: Lordstown Motors Corp. (3229); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

1

**BACKGROUND**

1. The Commission is the federal agency responsible for regulating the securities markets in the United States and enforcing the federal securities laws. The Commission is conducting an investigation into whether any of the Debtors, and others, may have engaged in prepetition activities that violated the federal securities laws. Any such violations by the Debtors could give rise to monetary claims by the Commission for disgorgement of ill-gotten gains (plus prejudgment interest) and/or civil monetary penalties.

2. Debtor Lordstown Motors Corp. ("**LMC**") is a public company whose shares of common stock traded on the Nasdaq Global Stock Market until their delisting, effective as of August 6, 2023. Since then, shares have traded on the OTC Pink Marketplace under the symbol "RIDEQ." According to LMC's petition, 15,944,558 shares of LMC common stock were issued and outstanding as of the June 27, 2023 petition date.

3. Since the petition date, the Debtors have had no meaningful business operations and have generated little revenue. According to the latest operating reports (ending August 31, 2023), the Debtors' gross cash receipts since the petition date total approximately $4.1 million. Cash disbursements total approximately $47.2 million, $40 million of which was a settlement payment to Karma Automotive LLC, which was approved by the Court on August 28, 2023. [Dkt. Nos. 462-464]

4. The Debtors have been marketing their assets for sale, and recently filed the asset purchase agreement setting forth the terms of a proposed sale. [Dkt. No. 488]. Under that agreement, LAS Capital LLC ("**Buyer**"), an entity affiliated with a former insider, will purchase "specified assets of the [Debtors] related to the design, production and sale of the

electric light duty vehicles focused on the commercial fleet market." [See Form 8-K dated September 29, 2023]. The Buyer will pay $10 million in cash for the assets and assume certain liabilities. Approval of the sale is scheduled for hearing on October 18, 2023.

## ISSUES WITH THE DISCLOSURE STATEMENT AND FORMS

5. On September 1, 2023, the Debtors filed their disclosure statement and Chapter 11 plan of reorganization. [Dkt. Nos. 360, 361]. On September 22, 2023, the Debtors filed the Motion seeking approval of the disclosure statement and approval of various plan and voting procedures, forms and related deadlines. The Commission believes that the disclosure statement is lacking key information, and that the proposed opt-out mechanism on the form ballots, to establish consent to the plan's third-party releases, violates the governing standard in this Court.

**A.     More Disclosure Is Required Regarding the Treatment of Unsecured Claims.**

6. The plan classifies general unsecured creditors into two classes: general unsecured trade claims (Class 3), and other unsecured claims (Class 4). Claims by governmental units are classified in Class 4 as other unsecured claims, along with claims by insiders and indemnification claims relating to prepetition litigation. The Plan provides different treatment to Class 3 trade claims and Class 4 other unsecured claims.

7. Trade claims in Class 3 will be paid from the "GUTC Cash Pool Amount." The GUTC Cash Pool Amount is an unspecified amount of cash, which will be established by the Debtors, and subject to adjustment by the Debtors and Committee after expiration of the

general claims bar date, which the Debtors state is October 10, 2023.[2]  Distributions to holders of Class 3 trade claims will be made by a Claims Administrator.

8. Other unsecured claims in Class 4 will be paid from the "Non-Trade Pool Assets."  The Non-Trade Pool Assets are comprised of all of the Debtors' assets other than the cash used to fund the GUTC Cash Pool Account.  Class 4 creditors will receive payment from the Non-Trade Pool Assets but only after all allowed administrative expenses, priority and secured claims are paid in full, after funding an escrow for professional fees, and *after* funding the GUTC Cash Pool Account that will pay Class 3 trade creditors.  Distributions to Class 4 creditors will be made by the Post-Effective Date Debtors rather than the Claims Administrator.

9. The disclosure statement does not disclose how much cash will be in the GUTC Cash Pool Amount to pay Class 3 trade creditors, or how much cash from the Non-Trade Pool Assets will be available to pay Class 4 other unsecured creditors.  It also lacks information about the projected allowed claims in each class, and the estimated recovery to claim holders in each class.  Without this information, creditors in Class 4 cannot make an informed decision as to whether to vote to accept or reject the Plan, or whether the dissimilar treatment from Class 3 trade creditors results in discriminatory treatment, fails the best interests of creditors test, or raises other confirmation issues.  Further, the disclosure statement lacks information for the Commission to understand how a Commission claim would be treated or how much it or similarly-situated claims would recover.

---

[2] The deadline for governmental units to file a proof of claim is December 26, 2023.

**B.    More Disclosure is Required Regarding Post-Effective Date Operations.**

10.    Even though the Debtors appear to be selling substantially all of their business-related assets, the Plan provides that each of the Debtors will continue to exist as a "Post-Effective Date Debtor," and will be "permitted to conduct new business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules." [Plan at Art. V(B)]. Further, the common stock and other equity interests in the Debtors (including the publicly-trading securities in LMC) will remain in effect. [Plan at Art. III(A)(7) and V(H)]. The stated purpose of these provisions is to allow the Post-Effective Date Debtors to "engage in post-Effective Date operations in their discretion, including without limitation, entering into one or more transactions to monetize the value of the net operating losses or similar tax attributes of the Debtors and Post-Effective Date Debtors' Estates." [Plan at Art. V(E)]. Based on these unspecified post-confirmation operations, the Plan provides that the Debtors are entitled to a Chapter 11 discharge, notwithstanding that the Bankruptcy Code prohibits a liquidating debtor that does not engage in business after consummation of a plan from receiving a discharge. 11 U.S.C. §1141(d)(3).

11.    The disclosure statement lacks sufficient information about the post-effective date business operations and whether the Debtors will comply with any ongoing reporting obligations under the federal securities laws. Without adequate disclosure, creditors cannot assess whether the Debtors are entitled to a Chapter 11 discharge. *See In re Mahoney Hawkes*, *LLP*, 289 B.R. 185 (Bankr. D. Mass. 2002) (debtor not entitled to discharge under representation that it might resume business operations within 18 months after confirmation). This issue is particularly important in a case such as this, when the debtor seeks to keep a class

of publicly-traded securities intact and obtain a discharge. *In re Fairchild Aircraft Corp.*, 128 B.R. 976, 982 fn.6 (Bankr. W.D. Tex. 1991) (explaining that the prohibition in Section 1141(d)(3) of discharging liquidating debtors is "especially significant with respect to publicly traded companies [because] [w]ithout it, entites would be tempted to pick up the shell, issue new stock, and start a new business without the dead weight of old debt, undermining not only the integrity and *bona fides* of the bankruptcy system but also the underlying salutary function of the securities laws."). The disclosure statement must provide detailed information about the Post-Effective Date Debtors' business operations upon plan consummation, and their intention to comply with applicable securities-related reporting obligations.

C. **The Form of Ballots Containing Opt-Out Third-Party Releases Do Not Comply With the Governing Standard for Establishing Consent.**

12. The Plan provides for a third-party release that runs in favor of various "Released Parties" and is binding upon creditors and shareholders who are "Releasing Parties." [Plan at Art. VIII(D)]. A voting creditor or interest holder is deemed to be a Releasing Party if the creditor or holder (i) votes to accept the plan, or (ii) votes to reject the plan and does not opt-out. [Plan at Art. I(A)(108(iii) and (iv)]. The form ballots attached to the Motion as Exhibits 2-1, 2-2, 2-4 and 2-5 contain the "opt-out" feature to implement the plan's third-party release provision as it applies to voting unsecured creditors and equity holders.

13. In this Circuit, a plan third-party release can only be approved if the debtor or plan proponent can satisfy an exacting standard. In *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3rd Cir. 2000), the Third Circuit addressed the permissibility of third-party releases in bankruptcy cases. The release in *Continental* barred shareholder lawsuits against the debtor's current and former officers and directors. *Id.* at 205.

The Third Circuit recognized the split among circuits as to whether third-party releases are *per se* prohibited, or are permissible but only in "extraordinary cases." *Id.* at 212-13. Under the latter standard, the Court explained that the bankruptcy court must conclude that the release is fair to the releasing party and necessary to the reorganization, and must make specific factual findings to support those conclusions. *Id.* at 214. The Court held that "under even the most flexible tests for the validity of non-debtor releases," the plan provision releasing the shareholder's lawsuit "does not pass muster." *Id.* Courts in the Third Circuit have since required third-party releases to be both necessary to the debtor's reorganization and fair to the releasing party. *In re Mallinckrodt PLC, et. al.,* 639 B.R. 837, 868 (Bankr. D. Del. 2022).

14. Because third-party releases must be both necessary and fair, debtors frequently attempt to avoid having to satisfy that burden by asserting that the release is "consensual," and therefore, it can be approved without satisfying the *Continental* standard. Purportedly, that is what the Debtors will be attempting here. At confirmation, they will argue that the plan's third-party release can be approved without proof of necessity or fairness, and be binding upon any creditor or shareholder who voted to accept the plan, or voted to reject the plan and failed to opt-out. This view of "consent" is inconsistent with the standard that was established by this Court in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011). *Accord In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 Bankr. LEXIS 3717, at *54 (Bankr. D. Del. Dec. 5, 2019) (holding that failure to return an Opt-Out Form is not a manifestation of intent to provide a release)

15. In *Washington Mutual*, the Court addressed the circumstances in which a voting creditor could be deemed to consent to a third-party release. As applicable here, the Court first

held that failing to opt-out or to return a ballot is not a sufficient manifestation of consent to a third-party release. *Washington Mutual*, 442 B.R. at 355. Accordingly, the provision in Debtors' plan that treats those who vote to reject the plan, but fail to opt-out, as consenting to the release is impermissible under *Washington Mutual*. Second, with respect to creditors who vote to accept a plan, the Court in *Washington Mutual* concluded that "any third party release is effective only with respect to those who affirmatively consent by voting in favor of the Plan ***and not opting out of the third party releases***." *Id.* (emphasis added). Applying these principles here, the Debtors' plan and proposed ballots must be modified to (i) allow creditors and interest holders who vote to accept the plan to opt-out of the third-party release; and (ii) require rejecting or abstaining creditors and interest holders to affirmatively opt-in, in order to be bound to the third-party release.

## RESERVATION OF RIGHTS

16. The Commission understands that the Debtors may be making modifications to the disclosure statement, plan and other related documents, and reserves all rights with respect to such modifications. The Commission also reserves all rights and objections with respect to the confirmability of the Plan.

## NOTICE

17. The Commission serving this Objection and Reservation of Rights to the following parties: (1) counsel for the Debtors; (2) the United States Trustee; (3) counsel for all official committes; and (4) all parties who filed a request for service of notices under Fed.R.Bankr.P. 2002(i).

**CONCLUSION**

The Commission requests that approval of the disclosure statement be denied and that approval of the form ballots as they relate to implementation of the third-party release be denied.

Dated: October 6, 2023

/s/ David W. Baddley
**U.S. SECURITIES & EXCHANGE COMMISSION**
David W. Baddley (admitted per L.R. 9010-1(e)(1))
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382
Telephone: (404) 842-7625
baddleyd@sec.gov

*Counsel for U.S. Securities and Exchange Commission*