**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 467** |

**DELAWARE CLASS PLAINTIFFS' OBJECTION
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE
DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE, (II)
APPROVING PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING
FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE
OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN
CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

Benjamin Hebert ("Hebert") and Atri Amin ("Amin," and collectively with Hebert, the "Delaware Class Plaintiffs"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 467] (the "Disclosure Statement Motion").[2]  In support of this Objection, the Delaware Class Plaintiffs respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in either the Disclosure Statement Motion or Plan, as applicable.  Unless otherwise noted, all emphasis is added.

**BACKGROUND**

**I.    The Delaware Class Action and Adversary Proceeding**

1.    The Delaware Class Plaintiffs are co-lead plaintiffs in the class action styled *In re Lordstown Motors Corp. Stockholders Litigation*, C.A. No. 2021-1066-LWW (Del. Ch.) (the "Delaware Class Action"), currently pending in the Delaware Court of Chancery.  The Delaware Class Action is brought on behalf of a class of investors (the "Class") who held shares of DiamondPeak Holdings Corp. ("DiamondPeak") on October 23, 2020—the date DiamondPeak consummated a merger (the "SPAC Merger") with Lordstown Motors Corp. ("LMC")—and did not exercise their right to redeem their shares.  The Delaware Class Action asserts breach of fiduciary duty claims against the five former DiamondPeak directors (the "DiamondPeak Directors"), each of whom is a non-debtor.  Of those five DiamondPeak Directors, David Hamamoto ("Hamamoto") also served as an LMC director after the SPAC Merger.[3]

2.    On July 5, 2023, the Debtors filed the *Complaint for Injunctive Relief* (the "Complaint") [D.I. 1, Adv. Proc. No. 23-50428-MFW] against the Delaware Class Plaintiffs, seeking to extend the Debtors' automatic stay to the DiamondPeak Directors and therefore stay the Delaware Class Action.

3.    On July 5, 2023, the Debtors also filed the *Debtors' Motion to Extend the Automatic Stay and for Injunctive Relief Pursuant to 11 U.S.C. § 105, and Request for Hearing Date* [D.I. 2, Adv. Proc. No. 23-50428-MFW] (the "Automatic Stay Motion"), seeking a preliminary injunction to stay the Delaware Class Action.

---

[3] The five DiamondPeak Directors named in the Delaware Class Action are former DiamondPeak directors: David Hamamoto, Mark Walsh, Andrew Richardson, Steven Hash and Judith Hannaway.  Of these five DiamondPeak Directors, David Hamamoto is currently an LMC board member.

4.     On July 19, 2023, the Delaware Class Plaintiffs filed their *Defendants'*
*Brief in Response and Opposition to Debtors' Motion to Extend the Automatic Stay and for*
*Injunctive Relief Pursuant to 11 U.S.C. § 105* [D.I. 14, Adv. Proc. No. 23-50428-MFW] (the
"Opposition to Automatic Stay Motion").[4]

5.     On August 17, 2023, this Court entered an order denying the Automatic
Stay Motion [D.I. 34, Adv. Proc. No. 23-50428-MFW].

## II.     The Plan and Release Provisions

6.     On September 1, 2023, the Debtors filed their *Joint Chapter 11 Plan of*
*Lordstown Motors Corp. and its Affiliated Debtors* [D.I. 360] (the "Plan") and *Disclosure*
*Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown*
*Motors Corp. and its Affiliated Debtors* [D.I. 361] (the "Disclosure Statement").

7.     On September 22, 2023, the Debtors filed the Disclosure Statement
Motion.

### A.  The Plan's Third-Party Releases are Extremely Broad and Appear to Cover Breach of Fiduciary Duty Claims Against Non-Debtors

8.     The Plan provides for numerous broad releases in Article VIII (the
"Release Provisions").  The Release Provisions include proposed third-party releases of non-
debtors by **all** Holders of Claims **or** Interests (the "Third-Party Releases"), which provide, in
relevant part:

> As of the Effective Date, for good and valuable consideration, the adequacy of
> which is hereby confirmed, ***each Releasing Party shall be deemed to have***
> ***conclusively, absolutely, unconditionally, irrevocably, and forever released,***
> ***waived and discharged*** each Debtor, Post-Effective Date Debtor, ***and other***
> ***Released Party*** from any and all Claims, obligations, rights, suits, damages, Causes
> of Action, remedies, and liabilities whatsoever (in each case, whether prepetition
> or postpetition), including any derivative Claims asserted or that may be asserted

---

[4] Additional detail surrounding the Delaware Class Action is set forth in the Opposition to Automatic Stay Motion and is incorporated herein.

on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, ***based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition)***, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. . . .

*See* Plan, Article VIII.D.

9.      The Third-Party Releases are very broad and release Causes of Action related to pre-petition "conduct of [the Debtors'] business." *See id.* This arguably includes the release of certain breach of fiduciary duty claims asserted in the Delaware Class Action on behalf of the Holders of Interests who could have, but did not, exercise their right to redeem their DiamondPeak shares.

**B. The Plan's Definition of "Releasing Party" Encompasses Interest Holders Who Vote to Reject the Plan but do not Affirmatively Opt-Out of the Releases on their Plan Ballots**

10.      The term "Releasing Party" is also very broad and includes certain parties **who do not affirmatively elect to grant the Third-Party Releases**. Specifically, the term "Releasing Party" includes: (1) "all Holders of Unimpaired Claims ***or Interests*** who do not File a timely objection to the third party releases . . ."; (2) "all Holders of Claims ***or Interests*** that vote to accept the Plan"; and  (3) "all Holders of Claims ***or Interests*** that are entitled to vote on the Plan ***who vote to reject the Plan and do not affirmatively opt out of the third party releases*** provided for in Article VIII.D ***by checking the box on the applicable Ballot or form indicating***

4

*that they opt not to grant such releases* in the Plan submitted on or before the Voting Deadline."
*See* Plan, Article I, § 108 (definition of "Releasing Party").

11.     Additionally, the Ballots to be provided to Interest Holders contain contradictory provisions as to whether a party who abstains from voting is nonetheless deemed to provide the Third-Party Releases. The Beneficial Holder Ballot provides that a Holder is bound to the Third-Party Releases if the Holder "[does] not submit a Ballot." *See* Disclosure Statement Mot'n, Ex. 2-4, p. 14. By contrast, the Registered Holder Ballot, which is sent to Holders of Interests that do not have a Nominee, provides: "[i]f you abstain from voting, you will not be a Releasing Party under the Plan and will not be bound by the releases provided in Article VIII.D. of the Plan." *See* Disclosure Statement Mot'n, Ex. 2-5, p. 5. There appears to be a contradiction between the Registered Holder Ballot and the other Ballots, which suggest that abstaining from voting and failing to opt-out of the Third-Party Releases is deemed to be consent to such releases.

**C.  The Third-Party Releases Appear to Release All Claims Against Current Directors**

12.     The Release Provisions release parties that are defined as a "Released Party," which includes certain directors and officers of the Debtors. The term "Released Party" is defined in the Plan as follows:

> "Released Party" means each of the following in their capacity as such: (i) the Debtors; (ii) the Post-Effective Date Debtors; (iii) each of the Debtors' Estates; (iv) the Committee; (v) each of the Committee Members, solely in its capacity as a Committee Member; and (vi) with respect to each of the foregoing Entities in clauses (i) through (v), such Entity and its current and former Affiliates and their respective current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals other than Excluded Parties, each in its capacity as such; provided that, notwithstanding

anything in the foregoing, any Person or Entity that is an Excluded Party shall not be a Released Party; provided further that, notwithstanding anything in the foregoing, any Person or Entity that opts out of the releases shall not be a Released Party.

*See* Plan, Article I, § 107 (definition of "Released Party").

13.    The Release Provisions carve out "Excluded Parties" including the "Former Directors and Officers," which is defined as "any officers and directors of the Debtors other than Chapter 11 Directors and Officers." *See* Plan, Article I, § 49 (definition of "Excluded Party"); Article I, § 56 (definition of "Former Directors and Officers). A "Chapter 11 Director and Officer" is defined as "any person that served in the capacity as a director or officer of the Debtors at any time from the Petition Date through the Effective Date." *See* Plan, Article I, § 19 (definition of "Chapter 11 Directors and Officers"). Read holistically, the Release Provisions, including the Third-Party Releases, are releasing current directors, such as Hamamoto, and any director or officer retained up until the Effective Date, which has yet to occur. This means that the Debtors could hire a new officer or appoint a new director after Plan confirmation and before the Effective Date and thereby inappropriately purport to extend the Plan's Third-Party Releases to such person(s).

14.    In addition, the Release Provisions that the Debtors propose to include with their solicitation materials never specifically identify the directors and officers being released. Likewise, the releases are not limited to claims arising against current officers on or after the Petition Date and, therefore, appear to release such parties for all their conduct, regardless of whether it arose during the Debtors Chapter 11 Cases or during the pre-petition period.

15.    The Delaware Class Plaintiffs and Class members are Holders of Interests entitled to vote on the Plan. Therefore, if such parties wish to ensure that they retain all their

claims against *all* the DiamondPeak Directors in the Delaware Class Action, it appears that they must submit a Plan Ballot *and* affirmatively opt-out of the Third-Party Releases on their respective Ballot.

### III.    Proposed Balloting Procedures for Class 7 Holders of Common Stock Interests

16.    Pursuant to the Disclosure Statement Motion, for the Beneficial Holders of Interests who do not have a Nominee, Ballots will be sent directly to those parties.  A special voting and tabulation procedure may, however, be afforded to Beneficial Holders in Class 7 of the Plan (Common Stock Interests), whereby a Beneficial Holder's Nominee may be served the Solicitation Package, assuming such Beneficial Holder has a Nominee.  *See* Disclosure Statement Mot'n, at ¶ 46.  Under this proposed procedure, the Nominee would then distribute the Solicitation Package, including the Beneficial Holder Ballot, to the Beneficial Holder and would obtain the Beneficial Holder's vote.  Subsequently, the Nominee would prepare a Master Ballot that compiles all votes of the applicable Beneficial Holders and transmits the Master Ballot to the Solicitation Agent.  Alternatively, the proposed balloting procedures permit Nominees to forward Solicitation Packages to Beneficial Holders and those Beneficial Holders would be required to submit their Ballots directly to the Solicitation Agent.

17.    Importantly, the Disclosure Statement Motion provides no procedure or document explaining, in plain and reasonably understandable language, to the Beneficial Holders that the Third-Party Releases that they may provide (or be deemed to provide) under the Plan could result in the release of certain of their claims against non-Debtor parties or that, to avoid providing such releases, they must (i) not vote to accept the Plan and (ii) affirmatively and timely submit a Ballot, rejecting the Plan *and* opt-outing of the Third-Party Releases.

18.    Additionally, although the Disclosure Statement identifies the Delaware

Class Action and other similar class action lawsuits, the Solicitation Package contains no specific disclosures warning Holders of Interests that (i) there is ongoing litigation being asserted on their behalf and that (ii) failing to appropriately opt-out of the Third-Party Releases could have the effect of releasing the claims asserted in that litigation.

## **OBJECTION**

19.     The Disclosure Statement Motion should be denied to the extent it provides for the opt-out procedure proposed by the Debtors, rather than an opt-in mechanism that affords Holders of Claims or Interests the ability to affirmatively consent to the Third-Party Releases, which is (and should be) their right.   The Third-Party Releases provide for no additional consideration for Holders of Claims or Interests in exchange for such releases, even those Holders that hold active litigation claims against the Released Parties.[5]  Even if the Third-Party Releases can ultimately be approved by this Court (which the Delaware Class Plaintiffs do ***not*** concede), such releases must be affirmative and consensual by the Holders, which can only be achieved through an opt-in mechanism.

20.     In addition, in order for Holders to be able to make an informed decisions on whether to opt-in to the Third-Party Releases, the Court should require the Debtors to modify the Plan and Solicitation Package to:  (1) include a letter explaining to Holders of Interests in the Class the implications of the Third-Party Releases with respect to the Delaware Class Action as well as clarification language in the Disclosure Statement, Ballots and solicitation materials; and (2) specifically identify which directors and officers are considered Released Parties.  A copy of the Delaware Class Plaintiffs' proposed letter is attached hereto as **Exhibit A** (the "Letter").

---

[5] The Delaware Class Plaintiffs reserve all rights with respect to the Third-Party Releases in the context of confirmation of the Plan.

## I.   The Third-Party Releases Must be Affirmative and Consensual

21.   In order for the Third-Party Releases to be approved, such releases must be affirmative and consensual, which requires an opt-in mechanism, rather than the opt-out procedure that the Debtors have proposed.  Therefore, the Court should require the Debtors to modify the Plan and Solicitation Package because:  (1) the Disclosure Statement Motion and Plan fail to set forth sufficient procedures to appropriately solicit Holders of Claims and Interests' consent with respect to the Third-Party Releases; and (2) the Plan and Solicitation Package must contain an opt-in mechanism for the Third-Party Releases.  In addition to these defects, the definition of "Releasing Party" is (as currently drafted) ambiguous and must be revised to ensure that the Holders of Impaired Interests, which include Class 7 Holders of Interests in Common Stock, do not need to file an objection to the Plan to avoid providing the Third-Party Releases.

### A.   The Plan, Which Currently Proposes an Insufficient "Opt-out" Mechanism for Third-Party Releases, Must be Amended to Ensure that Third-Party Releases May Only be Granted by Interest Holders Who Affirmatively "Opt-in" and Expressly Provide Their Consent for the Third-Party Releases

22.   As this Court has previously noted, third party releases are the "exception, not the rule" and "the court does not have the power to grant a third-party release of a non-debtor."  *In re Washington Mutual, Inc.,* 442 B.R. 314, 351-52 (Bankr. D.Del. 2011). "[A]ny such release ***must be based on consent of the releasing party*** (by contract or the mechanism of voting in favor of the plan)." *Id.*; *see also In re Coram Healthcare Corp*., 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Techs.,* 303 B.R. 48, 74 (Bankr. D.

Del. 2003) (approving releases that bound only on those creditors and equity holders who accepted the terms of the plan).

23.    To ensure third party releases are permitted in only narrow circumstances and only where the releasing party has provided affirmative consent, this Court has held that an "***opt out mechanism is not sufficient*** to support the third party releases[.]" *Washington Mutual*, 442 B.R. at 355.  Indeed, simply providing an opt-out mechanism in a ballot is not sufficient "to manifest[] . . . intent to provide a release." *In re Emerge Energy Servs. LP*, 2019 WL 7634308, at * 18 (Bankr. D.Del. Dec. 5, 2019) (noting that "[a] party's receipt of a notice imposing an artificial opt-out requirement, the recipient's ***possible*** understanding of the meaning and ramifications of such notice, and the recipient's failure to opt-out simply do not qualify" as consent to a third-party release); *see also In re SunEdison Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (citing *In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of 'consent' beyond the breaking point.")).

24.    Here, the Third-Party Releases contain inappropriate non-consensual releases of non-debtors, including directors and officers of the Debtors, such as Hamamoto. Under the terms of the Plan, a Holder is bound to the Third-Party Releases if the Holder rejects the Plan but inadvertently fails to check the opt-out box.  Additionally, ***despite the Plan not clearly identifying this implication***, the Ballots (other than the Registered Holder Ballot) provide that simply failing to return a Ballot with the opt-out option checked is deemed consent to the Third-Party Releases.  Such a mechanism is clearly insufficient to obtain the consent of an entity voting on the Plan and runs afoul of this Court's holding in *Washington Mutual*.

25. As *Emerge Energy Services* suggests, forcing a Holder to be bound by the Third-Party Releases when the Holder may not understand the meaning or ramifications of an opt-out requirement is inconsistent with an affirmatively consensual third-party release. This is especially true for Holders of Interests in the Class who are being represented in active litigation, particularly those who will end up submitting Beneficial Holder Ballots through their Nominees.

26. Several reasons compel this conclusion. First, Holders of Interests in a class may not even know that litigation is being asserted on their behalf and therefore may not understand the ramifications of not appropriately opting-out of the Release Provisions. Second, the Solicitation Package that the Solicitation Agent or Nominees will provide to Interest Holders eligible to vote on the Plan (as currently structured) insufficiently explains the ramifications of either: (1) voting for the Plan (and approving the Third-Party Releases); (2) rejecting the Plan but failing to check the opt-out box on the Ballot; or (3) simply failing to return a Beneficial Holder Ballot. Third, the concept of Nominees serving Ballots with "opt-out" clauses on the Beneficial Holders could dramatically increase the likelihood that Beneficial Holders will not be properly served. As noted above, failing to return a Beneficial Holder Ballot with the opt-out option checked is deemed consent by the holder to the Third-Party Releases. If service is ineffective, it could be months before the Beneficial Holder realizes that it was not properly served with a Beneficial Holder Ballot, which may require asserting rights in this Court for lack of service. Placing that burden on the Beneficial Holder who may not even understand the implications of the Third-Party Releases in the first place is entirely inappropriate. Ultimately, the procedures set forth in the Plan and Disclosure Statement Motion are insufficient to obtain consent to the Third-Party Releases. Therefore, the proposed "opt-out" provisions of Third-

Party Releases in the Plan, which permit for non-consensual releases, are inappropriate and should not be approved.

**B. There Should be an Opt-In Mechanism for the Third-Party Releases**

27.     As discussed above, the opt-out procedure is insufficient to indicate the consent of Holders of Claims or Interests.  Indeed, the only appropriate mechanism that affords Holders of Claims or Interests the opportunity to consent to the Third-Party Releases is through an opt-in mechanism.  *See Chassix*, 533 B.R. at 80–81 ("Similarly, creditors who rejected the Plan, but who nevertheless 'opted in' to the releases, have consented to those releases.  A clearer form of 'consent' can hardly be imagined.").  The opt-in procedure is particularly necessary for Holders of Interests being represented in a class of shareholders, for the reasons discussed above.

28.     Therefore, this Court should require the Debtors to modify the Release Provisions in the Plan to provide that Holders of Claims or Interests are bound and deemed to consent to the Third-Party Release ***only if***:  (1) they vote in favor of the Plan; or (2) affirmatively submit a ballot affirmatively consenting to the Third-Party Releases.  This will require modifying the Solicitation Package to provide for an opt-in mechanism.

29.     Additionally, the Solicitation Package, including the Plan, Ballots and other disclosure materials, should include a clear, unambiguous statement that a class action is being asserted on behalf of an Interest Holder and that by either voting in favor of the Plan or by affirmatively opting-in to the Third-Party Releases, such Holder may be releasing their claim with respect to that class action.  This unambiguous statement is necessary for Holders of Interests to understand the implications of the Third-Party Releases respecting shareholder class actions.

**C.  The Plan and Solicitation Package Do Not Sufficiently Identify Releasing Parties**

30.     Furthermore, the Plan's current definition of the term Releasing Parties is ambiguous and suggests that Interest Holders would need to affirmatively object to the Plan to avoid giving the Third-Party Releases.

31.     As discussed above, the definition of "Releasing Party" includes "all Holders of Unimpaired Claims or Interests who do not File a timely objection to the third-party releases . . . ."  This provision is ambiguous and suggests that a Holder of an Interest, even if such interest is Impaired, must object to the Third-Party Releases in order to not be included as a "Releasing Party."  The Plan should be modified to clarify that a Holder of an Impaired Interest need not file an objection to avoid being included in the definition of Releasing Party.

32.     In addition, the Plan's Third-Party Release provisions (along with its disclosures and Ballots), should clearly provide that a party who abstains from voting on the Plan, shall not be deemed to provide any Third-Party Releases.

**D.  Alternatively, the Court Should Carve Out the DiamondPeak Directors from the Third-Party Releases**

33.     If the Court is not inclined to provide for the opt-in mechanism, the Court should carve out the DiamondPeak Directors, including Hamamoto, from the Release Provisions.  The third-party release of the DiamondPeak Directors is non-consensual and there has been no need articulated for such release.[6]  Such releases are not essential and are simply being afforded to directors to release them from shareholder class actions, such as the Delaware Class Action, for no consideration.

---

[6] The "hallmarks of permissible non-consensual releases are fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (declining to interpret plan as releasing debtor's officers and directors because proposed releases lacked these "hallmarks"). "Added to these requirements is that the releases were given in exchange for fair consideration."  *In re United Artists Theatre Co.,* 315 F.3d 217, 227 (3d Cir. 2003).

34.     For all the reasons set forth herein, the Third-Party Releases cannot be approved in their current form, and this Court should, at a minimum, carve out the DiamondPeak Directors from the Third-Party Releases in light of this Objection.

**II.     In addition, to Allow Holders of Interests to Make an Informed Decision on the Plan on Whether or not to Provide Third-Party Releases, the Court Should Require the Debtors to: (A) Include a Letter Explaining the Ramifications of the Third-Party Releases with Respect to the Delaware Class Action; and (B) Clearly Identify and Limit the Directors and Officers Being Released**

35.     In addition, regardless of whether the Court requires the Debtors to provide for an opt-in mechanism (which it should), there should be sufficient disclosure and balloting procedures to afford Holders of Interests the ability the make an informed decision on whether or not they should provide the Third-Party Releases.[7]  In order to provide such sufficient disclosures, the Court should require the Debtors to: (1) include a letter explaining the ramifications of the Third-Party Releases to Holders of Interests that may be part of the Class and provide further clarifying language in the Plan, Disclosure Statement, and on the Class 7 Ballot; and (2) specifically identify the directors and officers being released and limit the Third-Party Releases to such named directors and officers.

**A.  The Debtors Should Include a Letter in the Solicitation Package Explaining the Implications of the Third-Party Releases on the Claims Being Asserted on Behalf of Interest Holders in Delaware Class Action and Provide Further Clarifying Information on the Class 7 Ballot and Plan as it Pertains to the Third-Party Releases**

36.     For Holders of Interests to have sufficient information to assess the opt-in and truly understand the implications of the Third-Party Releases, the Debtors must at least: (1) include the Letter, attached hereto as **Exhibit A**, which explains the implications to Holders

---

[7] Section 1125 of the Bankruptcy Code requires that a disclosure statement contains "adequate information."  11 U.S.C. § 1125(b).  The term "adequate information" "means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).

of Interests of such releases with respect to the Delaware Class Action; and (2) modify the Ballots (as well as the Plan and Disclosure Statement) to disclose that the claims in the Delaware Class Action that are being asserted on such Holder's behalf may be released if the Holder consents to the Third-Party Release.

37.     Courts have, in appropriate circumstances, ordered disclosure letters that are not necessarily supportive of a plan to be included in solicitation packages. *See In re Fred's, Inc.*, Case No. 19-11984 (CSS) [D.I. 892] (Bankr. D. Del. Feb. 3, 2020) (including letter from the official committee of unsecured creditors urging its constituency to reject the plan after sustaining objection to disclosure statement by the committee); *In re Genesis Health Ventures, Inc.,* 324 B.R. 510, 519-20 (Bankr. D. Del. 2005) (noting that a group acting on behalf of holders of junior debt were permitted by the court to include a letter in the solicitation package urging creditors to vote against the plan); *In re THCR/LP Corp.*, 04-46898-JHW [D.I. 548] (Bankr. D.N.J. Feb. 14, 2005) (containing a letter from an Official Committee of Equity Security Holders recommending rejection of the plan).  As reflected therein, the Letter explains that the Third-Party Releases may potentially release claims against non-debtors (*i.e.*, the DiamondPeak Directors) with respect to the Delaware Class Action.  The Letter is a key disclosure in affording Holders of Interests adequate, reasonably understandable, information so they can make an informed decision on whether they wish to grant the Third-Party Releases.

38.     Furthermore, the Debtors must work with DTC to ensure that the Solicitation Agent has a complete list of DiamondPeak shareholders who did not redeem their shares on the date of the SPAC Merger to ensure that all Class members will receive the Letter with their Solicitation Packages.  If that is not possible, the Letter must be included in all Solicitation Packages sent to (or for the benefit of) Class 7 Interest Holders.

39.     In addition to the Letter, the Ballot and other notices in the Solicitation Package should contain clear and understandable language that Holders of Interests may be releasing claims against non-debtors, including in class action cases where such Holders' interests may already be represented.

40.     Ultimately, these further disclosures are needed to provide Holders of Interests the ability to make an informed judgment on whether to opt-in to the Third-Party Releases.

**B.  The Directors and Officers Being Released Should be Specifically Identified**

41.     As noted above, the Plan releases "any person that served in the capacity as a director or officer of the Debtors at any time from the Petition Date through the Effective Date."  However, the specific directors and officers who are being released are not named.  For a Holder of a Claim or Interest to be able to adequately assess the Third-Party Releases, such Holder must know exactly who is being released.

42.     Therefore, the Debtors should be required to include in the Solicitation Package a full and complete list of the directors and officers being released pursuant to the Third-Party Releases.  Additionally, the Court should limit the Third-Party Releases only to those directors and officers specifically identified on the disclosure list.

**C.  The Plan Should be Modified to Ensure the Debtors Cannot Later Add a New Director or Officer as Released Parties Through the Plan Effective Date**

43.     Not only should the Debtors clearly disclose the names of the officers and directors who it proposes will be the beneficiaries of the Third-Party Releases, the definition of the term "Chapter 11 Directors and Officers" (which includes all of the Debtors' directors and officers *through the Plan Effective Date*) must be amended to ensure that all of the directors and officers who may be subject to Third-Party Releases are fixed and identified prior to the

solicitation of votes on the Plan.  Otherwise, the Debtors could simply extend the Third-Party Releases to additional (and previously undisclosed) persons by retaining a new director or hiring a new officer prior to the Plan Effective Date and this would, quite clearly, vitiate any notion of informed consent by voting parties for any Third-Party Releases.

## CONCLUSION

For the foregoing reasons, the Delaware Class Plaintiffs respectfully submit that the Court should:  (a) require the Debtors provide an opt-in mechanism with respect to the Third-Party Releases as outlined herein; (b) require the Debtors to include additional disclosures respecting the Third-Party Releases, as described herein, including providing the Letter with Solicitation Packages; and (c) grant the Delaware Class Plaintiffs such other and further relief as is just and proper.

Dated: October 6, 2023
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.**C

 */s/ Joseph C. Barsalona II*
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
1007 North Orange Street, 4th Floor, #183
Wilmington, DE 19801
Telephone: (302) 592-6497
Facsimile: (201) 488-5556
Email:  hjaffe@pashmanstein.com
        jbarsalona@pashmanstein.com

-and-

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gregory V. Varallo (No. 2242)
Glenn R. McGillivray (No. 6057)
Daniel Meyer (No. 6876)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600

Email: greg.varallo@blbglaw.com
      glenn.mcgillivray@blbglaw.com
      daniel.meyer@blbglaw.com

-and-
Jeroen van Kwawegen
Thomas G. James
Margaret Sanborn-Lowing
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Email:  jeroen@blbglaw.com
      Thomas.James@blbglaw.com
      Margaret.Lowing@blbglaw.com

-and-

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
Ankita Sangwan
600 3rd Avenue
New York, NY  10016
Telephone: (212) 661-1100
Email: gfbruckner@pomlaw.com
     sjadams@pomlaw.com
     asangwan@pomlaw.com

*Counsel to Benjamin Hebert and Atri Amin on behalf of themselves and similarly situated stockholders of Lordstown Motors Corp. f/k/a DiamondPeak Holdings Corp.*