UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 23-10831(MFW) |
| LORDSTOWN MOTORS CORP., | . |  |
| et al, | . |  |
|  | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . | . | Thursday, October 5, 2023 |

TRANSCRIPT OF HEARING RE:
DEBTORS' APPLICATION TO RETAIN AND EMPLOY RICHARDS, LAYTON &
FINGER, PA AS CO-COUNSEL EFFECTIVE AS OF THE PETITION DATE
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:

| For the Debtors: | Kevin Gross, Esq. |
|---|---|
|  | Daniel J. DeFranceschi, Esq. |
|  | James F. McCauley, Esq. |
|  | Corey Kandestin, Esq. |
|  | Robert Stearn, Esq. |
|  | Daniel White, Esq. |
|  | RICHARDS, LAYTON & FINGER, PA |
|  |  |
|  | David M. Turetsky, Esq. |
|  | Doah Kim, Esq. |
|  | David Kim, Esq. |
|  | WHITE & CASE, LLP |
|  |  |
| For the U.S. Trustee: | Benjamin Hackman |
|  | OFFICE OF THE U.S. TRUSTEE |

(Appearances Continued)

| Audio Operator: | Electronically Recorded |
|---|---|
|  | by Mandy Bartkowski, ECRO |
|  |  |
| Transcription Company: | Reliable |
|  | 1007 N. Orange Street |
|  | Wilmington, Delaware 19801 |
|  | (302)654-8080 |
|  | Email:  gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES VIA ZOOM:   (Continued)

For the Official Committee
of Unsecured Creditors:        Francis Lawall, Esq.
                               Tori Remington, Esq.
                               Deborah Kovsky-Apap, Esq.
                               TROUTMAN PEPPER HAMILTON
                                SANDERS, LLP


For the Official Committee
of Equity Security
Holders:                       Eric Monzo, Esq.
                               MORRIS JAMES, LLP


Also Appearing:                Melissa Leonard
                               LORDSTOWN MOTORS CORP.

                               Andrew Sole
                               ESOPUS CREEK VALUE SERIES FUND LP

                               Stephen Lam
                               CORRE PARTNERS

                               Jeff Kaplan
                               BCAS

                               Emily MacKay, Observer

                               Livy Mezei, Interested Party on
                                behalf of the Debtors

                               Jessica Steinhagen, Interested
                                Party

                               Becky Yerak
                               WALL STREET JOURNAL

                               Jeremy Hill
                               BLOOMBERG

                               Amelia Pollard
                               BLOOMBERG NEWS

INDEX

|                                   | PAGE |
|-----------------------------------|------|
| ARGUMENT BY MR. STEARN            | 13   |
| ARGUMENT BY MR. HACKMAN           | 32   |
| FURTHER ARGUMENT BY MR. STEARN    | 46   |
| COURT DECISION                    | 52   |

| EXHIBIT                | EVID. |
|------------------------|-------|
| Gross Declarations     | 12    |
| Leonard Declaration    | 12    |
| Exhibits 1 through 44  | 13    |

1          (Proceedings commence at 10:30 a.m.)

2          THE COURT:  All right.  Good morning.  This is

3    Judge Walrath.  We're here in the Lordstown Motors case.

4          I will turn it over to counsel for the debtor to

5    get us started.

6          MR. DEFRANCESCHI:  Good morning, Your Honor.  Dan

7    DeFranceschi from Richards, Layton & Finger.

8          THE COURT:  Good morning.

9          MR. DEFRANCESCHI:  For some reason, my -- there we

10   go.  I couldn't get my video to work, I apologize for that.

11         THE COURT:  Okay.

12         MR. DEFRANCESCHI:  If it pleases the Court, for the

13   record, Dan DeFranceschi from Richards, Layton & Finger,

14   proposed counsel to the debtors.

15         Your Honor, thank you for setting aside time this

16   mornign to hear the debtors.  As Your Honor is aware, there

17   is one remaining item on the agenda for today, and that is

18   the application of the debtors to retain Richards, Layton &

19   Finger, and I do want to get to that in a moment, Your Honor.

20         But if it pleases the Court, I have with me co-

21   counsel, David Turetsky from White & Case.  And we thought it

22   might be appropriate, if it pleases Your Honor, to hear a

23   brief status report on where things are and how they've

24   been developing in the case, generally.

25         And after that, we would propose to turn it over to

1    Mr. Stearn from my office to address the item on the agenda.

2              THE COURT:  Thank you.  Mister --

3              MR. DEFRANCESCHI:  Thank you, Your Honor.

4              THE COURT:  Mr. Turetsky.

5         (No verbal response)

6              THE COURT:  You're muted.

7         (Pause in proceedings)

8              MR. DEFRANCESCHI:  Your Honor, I apologize for the

9    technical difficulties this morning.

10             Mr. Turetsky, we still can't hear you.  I wonder if

11   --

12             THE COURT:  He's getting --

13             MR. DEFRANCESCHI:  -- if we could just have one

14   moment.

15             THE COURT:  He's getting IT to solve the problem.

16   we all need --

17             MR. DEFRANCESCHI:  Thank you, Your Honor.

18             THE COURT:  -- our IT teams.

19             MR. DEFRANCESCHI:  Thank you.

20             MR. TURETSKY:  Can you hear me now, Your Honor?

21             THE COURT:  Yes, I can, Mr. Turetsky.

22             MR. TURETSKY:  Well, I apologize for that, Your

23   Honor.  But it is very nice to see you and to be heard by

24   you.

25             THE COURT:  Okay.

1          MR. TURETSKY:  So thank you for making time.

2          For the record, David Turetsky of White & Case on

3     behalf of the debtors.

4          Your Honor, I'm going to be brief.  We did think it

5     would be helpful for Your Honor to hear a very brief update

6     on transpirings in the case and the progress that we've been

7     making.

8          First, Your Honor, we'll note that there is a new

9     official committee that has been appointed in these cases.

10    It's a little bit under a month old.  But on September 7th,

11    the United States Trustee appointed the Official Committee of

12    Equity Security Holders in the Chapter 11 cases.

13         The equity committee consists of three equity

14    holders:   Crestline Management, Pertento Partners, and

15    Esopus Creek Value Series Fund.  They have proposed to retain

16    the Brown Rudnick and Morris James firms as their counsel and

17    M3 Partners as their financial advisor.  And I am sure you

18    will be seeing and hearing from them shortly.  Just Robert

19    Stark and Bennett Silverberg are being charged from Brown

20    Rudnick; Eric Monzo, who I see on the screen, from Morris

21    James and Robert Winning of M3.

22         Since its appointment, the debtors have worked

23    closely with the equity committee's advisors to help them get

24    up to speed, and so that we can all make quick strides

25    towards hopefully achieving a consensus and resolving the

1    issues of this case with the objective of having a resolution

2    of these cases by year-end.

3            And we've also, of course, continued to work with

4    the creditors' committee and its advisors towards those same

5    objectives.

6            And we've been making progress, and I'd like to

7    highlight on two fronts:

8            The first, on the plan and disclosure statement

9    front, we did file a proposed plan and disclosure statement

10    on September 1st.

11            Prior to filing the proposed plan and disclosure

12    statement, the debtors did engage with -- in substantial

13    negotiations and discussions with the creditors' committee.

14    I'm not going to represent to the Court that the creditors'

15    committee was fully on board with what was filed, but there

16    was an understanding that the parties would continue to

17    negotiate and discuss, hopefully to achieve a consensus.  And

18    we've continued to do that with the creditors' committee and,

19    obviously, with the equity committee since its appointment.

20            We filed our solicitation procedures motion on

21    September 22nd, and each of the disclosure statement and the

22    solicitation procedures motion are set for a hearing before

23    Your Honor on October 18th.  We anticipate that we'll file an

24    amended plan to reflect the fruits of our discussions with

25    the equity committee, the creditors' committee, and other

1    comments that we've received from the U.S. Trustee and

2    others.  Hopefully, it will resolve the issues that folks

3    have, never any guarantees, but that's our hope.  Our hope is

4    to proceed by consensus if we can.  So that's the plan and

5    disclosure statement update.

6         On the sale process front, as Your Honor is aware,

7    one of the key aims of the Chapter 11 cases was to market and

8    sell some, all, or substantially all of the debtors' assets.

9    And here, too, we've progressed things.

10        To that end, after consulting with each of the

11   committees -- and I'll pause and note the equity committee

12   obviously had not been appointed when Your Honor entered the

13   bidding procedures order.  We've treated them as a

14   consultation party for all purposes.  I just want to be clear

15   about that.

16        The debtors did extend the bid line -- deadline

17   several times to give parties some additional time to

18   formulate their bids.  And although the debtors received

19   multiple proposals from interested parties, they received a

20   single qualified bid from LAS Capital.

21        And accordingly, on September 29th, again, after

22   consulting with each of the committees, the debtors announced

23   the cancellation of the auction and the selection of LAS

24   Capital as the successful bidder.  And we will be presenting

25   an APA to Your Honor and sale to Your Honor to LAS capital on

1    October 18th.

2              The sale, which is set forth more specifically in

3    the APA, will be of certain assets -- and those assets are

4    the assets that relate to the Endurance, including IP and

5    other tangible assets -- for an aggregate cash purchase price

6    of $10 million.  Again, we -- not up for today, but we do

7    look forward to presenting that sale to Your Honor on October

8    18th.

9              And unless has any questions, I'm content to turn

10    it over to our co-counsel Richards Layton -- or proposed co-

11    counsel.

12              THE COURT:  Thank you.  All right.

13              MR. TURETSKY:  Thank you, Your Honor.

14              THE COURT:  Thank you for the update.

15              And Mr. Stearn, you may proceed then on our

16    remaining matter.

17              MR. STEARN:  Thank you.  Good morning, Your Honor,

18    and may it please the Court.  Bob Stearn from Richards,

19    Layton & Finger, proposed Delaware counsel for the debtors.

20              Can you see and hear me okay?

21              THE COURT:  I can.

22              MR. STEARN:  Thank you.

23              Your Honor, as you've heard, we're here on debtors'

24    application to retain Richards, Layton & Finger as Delaware

25    co-counsel.

1          We have some evidence to introduce this morning,

2     then we'll proceed to argument.  The evidence is coming in on

3     an uncontested basis, so that portion of the hearing

4     shouldn't take very long.  And for the debtors, it will be

5     handled by Mr. Kandestin.  And with the Court's permission,

6     I'll turn the virtual podium over to him.

7          THE COURT:  All right.  Mr. Kandestin.

8          MR. KANDESTIN:  May it please the Court, for the

9     record, Corey Kandestin, Richards, Layton & Finger, proposed

10    counsel to the debtors.

11         As Mr. Stearn mentioned, I'll address the

12    evidentiary portion of the hearing today.  And I am happy to

13    report that the debtors and the U.S. Trustee have agreed on

14    the admission of testimony and exhibits into the record to

15    streamline today's hearing.

16         In terms of testimony, the parties have agreed to

17    admit the declarations that were filed in support of the

18    application.  There is no additional testimony being offered

19    beyond those declarations.  And my understanding is that the

20    U.S. Trustee is not intending to take cross on the

21    declarations.

22         In terms of exhibits, the parties have put together

23    a joint list of exhibits and they have agreed to admit the

24    exhibits on that list.  And my understanding is that the

25    Court has received a virtual binder of exhibits, so you

1      should have those.

2            What I propose to do then is to take the two

3      declarants one by one and move their declarations into

4      evidence and then turn to the exhibit list and collectively

5      move those in after that, if that's okay with the Court.

6            THE COURT:  That is fine.

7            MR. TURETSKY:  The first declarant is Mr. Kevin

8      Gross.  Mr. Gross' declaration is attached to the retention

9      application as Exhibit B.  That's at Docket Number 89-3.

10           Mr. Gross also filed two short supplemental

11     declarations, they're at Docket Numbers 223 and 244.

12           He is present today in the courtroom via Zoom, I

13     see him up on the screen.

14           And with that, I now move to admit Mr. Gross'

15     declarations at Docket Numbers 89-3 and 223 and 244 into

16     evidence.

17           THE COURT:  Thank you.

18           Any objection?

19           MR. HACKMAN:  Good morning, Your Honor.  And may it

20     please the Court, this is Ben Hackman for the U.S. Trustee.

21     I'm also joined by my colleague Linda Richenderfer today.

22           Can Your Honor hear me okay?

23           THE COURT:  I can.

24           MR. HACKMAN:  Thank you, Your Honor.

25           I rise to confirm that we have no objection to

1    entry of those declarations.

2           THE COURT:  All right.  Thank you, Mr. Gross.  I'll

3    admit the declarations and they are part of the record.

4           MR. GROSS:  Thank you, Your Honor.

5        (Gross Declarations received in evidence)

6           MR. TURETSKY:  Thank you, Your Honor.

7           The debtors' second declarant is Ms. Melissa

8    Leonard, general counsel to the debtors.  She submitted a

9    declaration that was attached as Exhibit C to the

10   application, that's at Docket Number 89-4.

11          Ms. Leonard is present in the courtroom via Zoom,

12   she is up on the screen.

13          And I now move to admit into evidence Ms. Leonard's

14   declaration.

15          THE COURT:  Thank you.  I see she is here, present.

16          Mr. Hackman, any objection?

17          MR. HACKMAN:  No objection, Your Honor.

18          THE COURT:  All right.  Her declaration is admitted

19   as part of the record then.

20       (Leonard Declaration received in evidence)

21          MR. KANDESTIN:  Thank you, Your Honor.

22          And that leaves us with the exhibit list.  The

23   amended exhibit list is located at Docket Number 509. And as

24   I mentioned before, this is a joint list put together by both

25   the debtors and the U.S. Trustee, so it has both of our

1    exhibits, and we've agreed to admit those into evidence for

2    today's hearing.

3              So, based on that agreement, I now move to admit

4    the exhibits listed on the amended joint exhibit list into

5    the record.

6              THE COURT:  All right.  And that's agreed to, Mr.

7    Hackman?

8              MR. HACKMAN:  Yes, Your Honor.  We have no

9    objection to entry of those exhibits.

10             THE COURT:  All right.  Then, for purposes of the

11   record, I will admit Exhibits 1 through 44 on the amended

12   exhibit list.

13        (Exhibits 1 through 44 received in evidence)

14             MR. KANDESTIN:  Thank you.

15             And that concludes the evidentiary presentation by

16   the debtors.  So I will turn the podium back over to Mr.

17   Stearn.

18             THE COURT:  Mr. Stearn.

19             MR. STEARN:  Thank you, Your Honor.

20             Again, we're here on the debtors' application to

21   retain Richards, Layton & Finger as Delaware co-counsel.

22   There is only one objection from the Office of the United

23   States Trustee, which contends that Richards, Layton & Finger

24   has a conflict and should be disqualified from representing

25   the debtors.

1           The debtors respectfully submit that the United

2   States Trustee's position is misguided based largely on a

3   misapplication of applicable law and a failure to consider

4   important facts.  And the factual record before the Court

5   today si substantial.  It is also undisputed and unrebutted

6   and it supports granting the debtors' application.

7           Let me start with a brief overview, Your Honor, of

8   applicable law.

9           Under Section 327(a), with the Court's approval,

10  the debtor may employ counsel that, quote:

11              "-- do not hold or represent an interest adverse to

12              the estate and that are disinterested persons."

13          There is no argument that Richards, Layton & Finger

14  holds an interest adverse to the estate or is not

15  disinterested under Section 101(14).  The U.S. Trustee's only

16  argument is that Richards, Layton & Finger, quote,

17  "represents an interest adverse to the estate."

18          Now the Code doesn't find -- define -- excuse me --

19  "interest adverse to the estate," but the Third Circuit has

20  provided guidance.  As the District Court noted in Boy Scouts

21  -- and this is 630 B.R. at 130 -- quote:

22              "The Third Circuit has, therefore, instructed that

23              a professional holds a prohibited adverse inference

24              where that professional holds or represents

25              interests in competition with the debtor that would

1          actually, as opposed to speculatively, impair its

2          service as an estate fiduciary."

3      I would ask the Court to keep in mind the Third

4  Circuit's important distinction between "actually" and

5  "speculatively."

6      Now, citing out-of-circuit case law, the United

7  States Trustee contends that "adverse interest" includes:

8          "-- any interest that even faintly would color the

9          professional's independence and impartial

10         attitude."

11     That's in the objection at Paragraph 20.

12     But as we note in our reply at Paragraph 48, in

13 Marvel, the Third Circuit expressly rejected that approach

14 as, in the words of the Third Circuit, "faulty reasoning."

15     There are some additional principles that guide our

16 discussion today, Your Honor:

17     First, the Court's evaluation of adverse inference

18 effectively is a conflicts analysis.  Where the conflict is

19 actual, counsel must be disqualified.  Where the conflict is

20 potential, disqualification is at the Court's discretion.

21 And where there is simply an appearance of conflict, counsel

22 may not be disqualified.

23     I would similarly note that, under Section 327(c),

24 counsel is not disqualified from employment by the estate

25 simply because it also represents a creditor.  There must be

1    an actual conflict of interest.

2         The second principle that guides our discussion

3    today, Your Honor, is that this Court has considerable

4    discretion to determine whether conflicts actually exist

5    based on the facts and circumstances of the case.

6         And importantly, as the District Court noted in Boy

7    Scouts, the Third Circuit requires that the Court assess the

8    facts and circumstances from the perspective of the estate,

9    not the objector.  So the U.S. Trustee's perspective on

10   conflicts is not controlling.

11        The Court also should consider whether other

12   counsel, such as conflicts counsel, are available to

13   represent the debtors where any adversity may exist.

14        And third, Your Honor, the burden of proof to

15   demonstrate a disqualifying conflict falls on the United

16   States Trustee as objector, and again, it must do so with

17   facts, not speculation.

18        So let's start with the issue of whether the United

19   States Trustee has met its burden of demonstrating an actual

20   conflict.  Once again, Your Honor, the Code does not define

21   "actual conflict of interest."  The Third Circuit informs us

22   that the determination is to be made on a case-by-case basis.

23        And the Third Circuit has provided further

24   guidance, for example, in Boy Scouts.  And here, I'm quoting

25   from 35 F.4th at 158, quote:

1              "Pragmatically, a conflict is actual when the

2              specific facts before the ... court suggest that

3              'it is likely that a professional will be placed in

4              a permission'" -- "'in a position'" -- excuse me --

5              "'permitting it to favor one interest over an

6              impermissibly conflicting interest.'"

7         And once again, I would keep in mind the Third

8    Circuit's admonition of "likely."

9         So let's turn to the robust factual record before

10   Your Honor.  I want to start with a quick overview of the

11   pending litigation, which is described in detail in our

12   briefing and exhibits, and in particular:

13        The Kroll declaration, which is Exhibit 4, at

14   Paragraphs 54 to 57;

15        The Gross declaration, which is Exhibit 5, at

16   Paragraphs 22 to 23;

17        The complaints, which are Exhibits 9, 10, and 43;

18        The docket sheets for litigations, which are

19   Exhibits 17 to 20;

20        The insurance coverage letter for the direct

21   action, which is Exhibit 33;

22        And the August 3rd, 2023 transcript of the hearing,

23   at which Your Honor made certain rulings regarding insurance

24   coverage in the direct action, and that's at Exhibit 21.

25        And Your Honor, I hope you're not scrambling to

1    call up all these exhibits.  I'm simply telling you what I'm

2    summarizing from.

3           THE COURT:  Okay.

4           MR. STEARN:  Your Honor, there are four relevant

5    litigations that are generally arising out of alleged

6    misrepresentations regarding the debtors' business prospects

7    at or about the time of the DiamondPeak merger.  These

8    litigations were commenced in 2021.  Richards, Layton &

9    Finger is Delaware co-counsel to current or former directors

10   in three Delaware litigations.

11          The first litigation I want to summarize for Your

12   Honor is the Northern District of Ohio securities class

13   action.  That litigation was brought against certain debtors

14   and D&O defendants.  Richards, Layton & Finger is not

15   involved in that case, it's in Ohio.  But the case is

16   important because it directly affects the cases in which

17   Richards, Layton & Finger is involved.

18          A motion to dismiss the complaint in the Ohio

19   securities class action was fully briefed and pending since

20   March of 2022.  Discovery and other activity in that case was

21   stayed pending resolution of the motion to dismiss.

22          And after the debtors' bankruptcy filing, the Ohio

23   District Court recognized the automatic stay and, based

24   thereon, denied the motion to dismiss subject to refiling it

25   after the automatic stay was lifted, effectively resetting

1      the clock on the motion to dismiss.

2             The second action I want to summarize quickly for

3      Your Honor is the Delaware Chancery Court direct action.

4      Richards, Layton & Finger is Delaware co-counsel to five

5      former or current directors and officers.  The debtors are

6      not parties in that case.

7             It's a putative class action involving direct

8      claims of shareholders, not derivative claims belonging to

9      the debtors.  This is the action in which the debtors

10     unsuccessfully sought to extend the automatic stay.  It's

11     currently proceeding and scheduled to go to trial in 2024.

12     The attorneys' fees there that come due and owing in that

13     case are the direct obligation of the individual defendants,

14     not the debtors.  And as Your Honor noted in the August '23

15     hearing, the attorneys' fees for that case are being paid

16     directly by the D&O insurer.

17            The third case I want to summarize for Your Honor

18     is the Delaware District Court derivative action.  Richards,

19     Layton & Finger is Delaware co-counsel to four former

20     directors of the debtors' predecessor DiamondPeak.  Nothing

21     of substance is happening in that case, which has been stayed

22     pending resolution of the Ohio motion to dismiss.  The

23     District Court also recognized the effect of the automatic

24     stay on that case.  Again, attorneys' fees in that case are a

25     direct obligation of the defendants, not the debtors.

1          And the final case that I would summarize quickly

2     for Your Honor is the Delaware Chancery Court derivative

3     action.  Richards, Layton & Finger is Delaware co-counsel to

4     the same defendants as the direct action.  There is nothing

5     of substance happening in the case, which has been stayed

6     pending resolution of the Ohio motion to dismiss.  And once

7     again, attorneys' fees are the direct obligation of the

8     defendants, not the debtors.

9          So, Your Honor, these litigations were pending when

10    Richards, Layton & Finger was contacted about representing

11    the debtors.  How did Richards, Layton & Finger deal with

12    that fact?  By being up front and proactive, as reflected in:

13          The Gross declaration, which, again, is before you

14    as Exhibit 5;

15          Richards, Layton & Finger's engagement letter,

16    which is Exhibit 11;

17          And the consent and waiver letters, which are

18    Exhibits 12 to 16.

19          To quickly summarize, Your Honor:

20          First, Richards, Layton & Finger expressly carved

21    out of its representations of both the debtors and the

22    defendants any disputed matters between them.  In fact,

23    Richards, Layton & Finger cannot represent the defendants in

24    any matter whatsoever in this bankruptcy case, whether that

25    matter is disputed or not.  And the debtors and the director

1    defendants signed off on these limitations and agreed that

2    other counsel would represent them in any disputed matters.

3         So, for example, Your Honor, if you consider the

4    analogy of a Venn diagram where you have two circles that

5    partially overlap, here, we have two circles that don't come

6    close to each other.  The representations that Richards,

7    Layton & Finger has of the debtors and of the directors

8    contain no overlap whatsoever.

9         And at the creditors' committee's request, that

10   limitation is also reflected in the proposed retention order,

11   which is at Exhibit 22.  Paragraph 6 of the proposed

12   retention order provides as follows, Your Honor, quote:

13        "RLF shall refrain from involvement in any matters

14        bearing directly on the defendants, as defined in

15        the Gross declaration, in the Chapter 11 cases,

16        such as any adversary proceeding or direct

17        contested dispute involving the defendant; or the

18        drafting, negotiation, or litigation of any release

19        or exculpation provisions affecting a defendant

20        that may be included in any proposed plan of

21        reorganization."

22        The second thing Richards, Layton & Finger did,

23   Your Honor, is, consistent with the Rules of Professional

24   Responsibility, Richards, Layton & Finger obtained waivers

25   and consents from both the debtors and the defendants.

1          Third, Your Honor, Richards, Layton & Finger

2    ensured that no professionals involved in the representation

3    of the defendants would be involved in the representation of

4    the debtors and vice-versa.  That was actually pretty easy

5    for us to do.  The defendants are represented by members of

6    Richards, Layton & Finger's corporate department and the

7    debtors are represent by members of Richards, Layton &

8    Finger's bankruptcy department, and there is no crossover of

9    personnel between those departments.  The attorneys actually

10   are also on different floors.

11         And the fourth thing Richards, Layton & Finger did,

12   Your Honor, was institute an ethical screening wall.  And

13   among other things, this means that Richards, Layton & Finger

14   corporate and bankruptcy attorneys cannot talk to each other

15   about their cases and have no access to each other's

16   electronic or hard copy files.  Richards, Layton & Finger

17   attorneys, also, not surprisingly, can't act against each

18   other or negotiate with each other.

19         Now, Your Honor, in the United States Trustee's

20   view, none of these facts matter, and Richards, Layton &

21   Finger's representation of defendants in the direct and

22   derivative actions disqualifies Richards, Layton & Finger

23   from representing the debtors effectively as a matter of law.

24   But the Third Circuit requires this Court to evaluate the

25   facts and the circumstances, and those facts and

1  circumstances demonstrate that there is no disabling conflict

2  here.

3          And to demonstrate why, let's look briefly at the

4  United States Trustee's arguments.  I'll start, Your Honor,

5  with the direct action.

6          The United States Trustee argues that Richards,

7  Layton & Finger suffers an actual conflict of interest

8  because the debtors' scheduled indemnification claims for the

9  defendants in the direct action, pursuant to bylaws and

10 employment agreements -- which, by the way, are included in

11 the exhibit list as Exhibits 25, 26, and 37 to 40.

12         But Your Honor, what are the facts with respect to

13 indemnification claims?

14         First, the direct action is not currently resulting

15 in indemnification claims against the debtors.  As the Court

16 determined at the August 3 hearing, attorneys' fees for the

17 direct action are being covered by D&O insurance.  That's in

18 the transcript, that's at Exhibit 21.

19         I would also note that, as the United States

20 Trustee states in its objection at Paragraph 27, a decision

21 could result in no indemnification claims.  Your Honor also

22 so noted that fact in the August 3 transcript.

23         And the debtors also reserve the right in their

24 schedules to eject -- to object -- excuse me -- to

25 indemnification claims.

1          Second, Your Honor, Richards, Layton & Finger

2    played no role in the scheduling of indemnification claims on

3    behalf of either the debtors or the defendants, as made clear

4    in the Gross declaration and in Richards, Layton & Finger's

5    engagement letter and waiver and consent letters.  And again,

6    these are Exhibits 5 and 11 through 16.

7          Indemnification claims are expressly carved out of

8    Richards, Layton & Finger's representation on both sides of

9    the equation because Richards, Layton & Finger cannot

10   represent the parties on any matter that's in dispute between

11   them.  So Richards, Layton & Finger is not representing

12   competing economic interests with respect to indemnification

13   because Richards, Layton & Finger has no involvement on

14   either side of that issue.  If indemnification ever became an

15   issue in this bankruptcy case, it would be handled by other

16   counsel for both the debtors and the defendants.

17         So, Your Honor, given those facts, where is

18   Richards, Layton & Finger's actual conflict in this

19   bankruptcy case on indemnification?  The facts and

20   circumstances demonstrate that there is none here.

21         And Your Honor, let's look at the derivative

22   actions.  The United States Trustee argues that Richards,

23   Layton & Finger suffers from an actual conflict of interest

24   because the debtors have an interest in maximizing the value

25   of derivative claims and the defendants have an interest in

minimizing the value of those claims.  That sounds good when you say it fast.  But again, what are the facts?

First, the derivative actions have not progressed beyond the motion to dismiss stage.  They have been stayed for more than a year pending resolution of the Ohio motion to dismiss.

The derivative claim -- complaints -- excuse me -- allege claims for, among other things, breaches of fiduciary duty under Delaware law.  And under Delaware law, in a derivative action, there generally is no conflict between a corporation and its directors at the motion to dismiss stage.

The cases we've cited in our reply brief at Paragraph -- excuse me -- 39 make clear that, at the motion to dismiss stage, quote:

"Delaware law regards the interests of the corporation as aligned with those of the individual defendants."

And, quote:

"A law firm may represent all defendants without impropriety."

The United States Trustee's assumption that a conflict must exist here is actually inconsistent with the law on which most of those derivative claims are based.  Rather, that law provides there is no conflict.

But Your Honor, let's ignore the fact of no

1    conflict and talk about several additional reasons why

2    Richards, Layton & Finger is not conflicted here.

3            First, it's implausible that the derivative actions

4    would proceed during this bankruptcy case.  They are stayed

5    pending resolution of the Ohio motion to dismiss, which

6    itself cannot be taken up again until after the automatic

7    stay expires.  The derivative actions also are separately

8    stayed due to the automatic stay.

9            Under the plan, the derivative claims -- and the

10   plan is also an exhibit, I should note it's Exhibit 27.

11   Under the current version of the plan, derivative claims will

12   vest in the post-effective-date debtors, who are authorized

13   to prosecute and resolve them.  That's Plan Articles 5(e),

14   5(g), and 5(j).  So, Your Honor, as a practical matter,

15   nothing will be litigated in the derivative cases until after

16   plan confirmation, if ever.

17           Finally, Your Honor, to the extent any aspect of

18   the bankruptcy case involves the derivative actions,

19   Richards, Layton & Finger's engagement expressly carves out

20   its participation on behalf of either the defendants or the

21   debtors.  So the debtors aren't asking the Court to approval

22   a dual representation because there isn't one here.

23   Richards, Layton & Finger can take no action in the

24   bankruptcy case regarding matters specific to the derivative

25   claims on behalf of either party.

1          In fact, the debtors have retained special

2   litigation counsel, Winston & Strawn, to investigate and

3   evaluate derivative claims.  The order approving Winston's

4   retention is one of the exhibits, it's Exhibit 44.

5          And I don't need to tell Your Honor what that order

6   says because you signed it yesterday.  But Paragraph 4 of the

7   order expressly provides that the creditors and equity

8   committees have a common interest with the debtors with

9   respect to win man's -- excuse me -- Winston's findings and

10  work product, and that debtors shall advise the committees of

11  Winston's conclusions and the basis therefor.

12         So, Your Honor, what are the facts and

13  circumstances with respect to the derivative actions?  At

14  this stage of the derivative cases, under Delaware law, there

15  is no conflict between the debtors and the directors.  The

16  derivative actions will not move forward during this

17  bankruptcy case.  And the debtors' analysis of the derivative

18  -- excuse me -- of the derivative claims will be handled by

19  litigation counsel, overseen by the watchful eyes of two

20  committees, whose interest is to maximize the value of

21  derivative claims.

22         Your Honor, not only is there no dual role in the

23  derivative cases for Richards, Layton & Finger in this

24  bankruptcy case, there is no role for Richards, Layton &

25  Finger in the derivative actions in this bankruptcy case.

1    Again, Your Honor, where is Richards, Layton & Finger's

2    actual conflict in this bankruptcy case on derivative claims?

3    The debtors respectfully submit there is none.

4         And Your Honor, it bears repeating that the facts

5    we've been discussing for the last ten minutes or so are

6    unrebutted.

7         Your Honor, your task today is to consider this

8    substantial evidentiary record, exercise your discretion, and

9    determine whether the United States Trustee has carried its

10   burden of demonstrating, based on facts, not speculation,

11   that it is likely that Richards, Layton & Finger would be

12   placed in a position permitting it to favor the directors

13   over the debtors in this bankruptcy case.  The debtors

14   respectfully submit that the United States Trustee has not

15   and cannot carry that burden and it's not a close call.  The

16   most you have is an appearance of a conflict, which itself

17   vanishes upon close inspections of the facts and

18   circumstances.

19        Your Honor, as reflected in Ms. Leonard's

20   declaration, which is Exhibit 6, Richards, Layton & Finger is

21   the debtors' choice for Delaware restructuring counsel.  And

22   on this record, there is no basis to nullify the debtors'

23   decision.  Your Honor, we would respectfully submit that that

24   should end today's inquiry, but let's briefly talk about

25   potential conflicts.

1          This Court has discretion to determine both whether

2      a potential conflict exists and, if so, whether that

3      potential conflict is disqualifying.  The debtors

4      respectfully submit there is no potential conflict here for

5      the reasons already expressed.  To quickly summarize, Your

6      Honor:

7          The chances of a dispute arising between the

8      debtors and the directors in these bankruptcy cases on

9      derivative claims or indemnification claims is remote.  And

10     if such a dispute did arise during these cases, Richards,

11     Layton & Finger would not represent the debtors or the

12     directors on any of those issues in dispute.  Richards,

13     Layton & Finger would not be involved at all.  There simply

14     is no potential conflict on matters in which Richards, Layton

15     & Finger is involved.

16         Again, Your Honor, that should end the inquiry.

17     But solely for the purposes of discussion, let's assume

18     there's a potential conflict here.  Based on a twenty-five-

19     year-old decision from the New Jersey Bankruptcy Court in

20     BH&P, the United States Trustee argued that this Court has

21     almost no discretion where a potential conflict exists and

22     can approve Richards, Layton & Finger's retention only where,

23     either no other competent counsel is available, or the

24     potential is remote, and there are compelling reasons for

25     employing the professionals.

1          But Your Honor, that clearly is not the law of the

2     Third Circuit, which consistently has held that Bankruptcy

3     Courts have substantial discretion, not only to decide

4     whether a potential conflict exists, but also whether the

5     potential conflict is disqualifying based on the facts and

6     circumstances before the Court.

7          We've cited several cases for that proposition in

8     our reply brief at Paragraph 47.  One of those cases is the

9     Third Circuit's Marvel decision.  And Marvel demonstrates,

10    Your Honor, beyond any doubt, that the United States

11    Trustee's citation of the Third Circuit's BP&H decision for

12    the proposition that the Bankruptcy Court has almost no

13    discretion in the face of a potential conflict is clearly

14    wrong.  And I'm citing Marvel at 140 F.3d 477, where the

15    Third Circuit said the following, quote:

16              "We reiterate the teachings of BP&H:  Section

17              327(a) presents a per se bar to the appointment of

18              a law firm with an actual conflict, and gives the

19              District Court wide discretion in deciding whether

20              to approve the appointment of a law firm with a

21              potential conflict."

22          Not the narrow discretion that the U.S. Trustee

23    proposes, but "wide discretion," in the words of the Third

24    Circuit.

25          Your Honor, assuming that there is a potential

1    conflict here, with which we disagree, but making that

2    assumption, the facts and circumstances suggest the Court

3    should exercise its wide discretion to approve Richards,

4    Layton & Finger's retention.  Those facts and circumstances

5    include the following:

6            In the unlikely event that a dispute arises between

7    the debtors and the directors in this bankruptcy case,

8    Richards, Layton & Finger will not be involved, period, full

9    stop.

10            Richards, Layton & Finger was up front in

11    disclosing its representation of the directors consistent

12    with the Rules of Professional Responsibility.

13            Richards, Layton & Finger obtained consents and

14    waivers from the debtors and the directors.

15            No party other than the United States has objected.

16    So the parties with an actual financial or economic interest

17    in this case and who would be affected by Richards, Layton &

18    Finger's purported potential conflict have not expressed a

19    concern that Richards, Layton & Finger will favor the

20    directors at the expense of the debtors.

21            And Your Honor, consistent with best practices,

22    Richards, Layton & Finger also erected an ethical screen

23    between its bankruptcy lawyers and its corporate lawyers.

24            I guess, I think the last thing I would say, Your

25    Honor, is Richards, Layton & Finger's representation of the

1    debtors in this case will occur, not only under the

2    supervision of this Court, but also under the watchful eyes

3    of the United States Trustee and two committees, none of whom

4    will be shy about raising an issue if they believe Richards,

5    Layton & Finger is coloring outside the line.

6           Your Honor, these facts, which, again, are

7    unrebutted, should give the Court comfort that, even if there

8    is a potential conflict here, Richards, Layton & Finger has

9    taken appropriate steps to ameliorate it.

10          I think I've said enough, Your Honor, so let me

11   quickly wrap up.  For these reasons, the debtors respectfully

12   request that the Court grant their application to retain

13   Richards, Layton & Finger as Delaware co-counsel.

14          Your Honor, thank you for hearing us today.  Does

15   the Court have any questions of me?

16          THE COURT:  No.  Let me hear from the U.S. Trustee.

17          MR. STEARN:  Thank you, Your Honor.

18          MR. HACKMAN:  Good morning, Your Honor.  Again, may

19   it please the Court, Ben Hackman for the U.S. Trustee.

20          Thank you, Your Honor, for your time today in

21   hearing us on our objection.

22          We filed an objection to Richards, Layton &

23   Finger's retention application on August 18th at Docket Item

24   267.  We respectfully submit that RLF cannot be retained

25   under Section 327(a) or 327(c) of the Bankruptcy Code because

1    it represents interests adverse to the estate and the firm

2    has actual conflicts of interest.

3           327(a) of the Bankruptcy Code permits the retention

4    of professional persons that do not hold or represent an

5    interest adverse to the estate and that are disinterested

6    persons.  The Bankruptcy Code does not define "adverse

7    interest."  In the context of Section 327(a), a court may

8    consider an interest adverse to the estate when counsel has a

9    competing economic interest tending to diminish estate values

10   or to create a potential or actual dispute in which the

11   estate is a rival claimant.

12          Section 327(c) of the Bankruptcy Code provides

13   that, in Chapter 11 cases, a person is not disqualified from

14   employment solely because of a person's representation of a

15   creditor unless there's objection by the United States

16   Trustee, in which case the Court shall disapprove such

17   employment if there is an actual conflict of interest.  The

18   Bankruptcy Code does not define "actual conflict of

19   interest."

20          As Mr. Stearn alluded to, in the Boy Scouts case

21   before the Third Circuit, the Third Circuit wrote that:

22          "A conflict of interest is actual when the specific

23          facts before the Bankruptcy Court suggest that is

24          likely that a professional will be placed in a

25          position permitting it to favor one interest over

1           an impermissibly conflicting interest."

2           And that's 35 F.4th at 158.

3           In the derivative suits, Your Honor, RLF represents

4    interests adverse to these bankruptcy estates.  Mr. Kroll's

5    first-day declaration at Exhibit 4, in Paragraph 55,

6    identifies five pieces of securities litigation.  RLF

7    represents certain D&O defendants in three of those five

8    pieces of litigation.

9           First, RLF is Delaware counsel to four former D&Os

10   in Delaware District Court, Case Number 21-CV-604.  That

11   lawsuit is derivative.  The amended complaint is Exhibit 9,

12   and it generally alleges that Lordstown was acquired by a

13   special purpose acquisition company, or a SPAC, which

14   initially targeted a business with a real estate related

15   component and with an enterprise value of between 350 million

16   and $2 billion.

17          The plaintiffs allege that this SPAC, up against a

18   two-year limit to complete a business combination under the

19   terms of its initial public offering, rushed to complete a

20   reverse merger with Lordstown.  The plaintiffs allege that a

21   material false and misleading statements regarding

22   Lordstown's demand and production capabilities were made both

23   before and after the merger had closed.

24          The plaintiffs assert claims for alleged violations

25   of the Securities Act, breach of the fiduciary duties of

candor and loyalty, and unjust enrichment.  There is an

allegation that current director David Hamamoto engaged in

insider selling when he sold 1 million shares of Lordstown

stock for over $16 million the day before the de-SPAC merger

closed in October 2022.

Second, RLF is counsel to the same four former D&O

defendant, plus current director Mr. Hamamoto in a suit in

Delaware Chancery Court, Case Number 2021-1049.  That lawsuit

is also derivative.  We did not specifically refer to this as

a derivative suit in our objection because it was difficult

to flesh that out.  It's referenced in the supporting

declaration of Mr. Gross in a footnote, but, as far as we can

tell, is not identified there as being derivative.  But if

you cross-reference Footnote 4 of Exhibit 5 with Paragraph 55

of Exhibit 4, Mr. Kroll's first-day declaration, I think the

record shows that this Chancery Court matter was derivative.

The complaint in that derivative suit is Exhibit

43, and it generally arises from the same facts and asserts

the same allegations as the derivative suit in District

Court.  Bottom line, RLF is Delaware counsel to a current

director accused of insider selling to the tune of over $16

million in a pending derivative suit in Chancery Court.

The claims in the derivative suits belong to the

bankruptcy estate, under Judge Sontchi's RNI Wind Down

decision, 348 B.R. 286.  The debtors have a fiduciary duty to

1  maximize the value of those claims.  At the same time, RLF's

2  D&O clients in the derivative suits have the opposite

3  interests; namely, to minimize their liability from those

4  same claims.  If RLF's retention is approved, the firm would

5  be representing clients who are simultaneously trying to

6  maximize and minimize the value of the same claims.

7       We think the debtors' estates have an interest in

8  the advice RLF is giving to Mr. Hamamoto about the insider

9  selling claim against him that is the subject of the two

10  derivative suits, and we think that crystalizes the conflict.

11       The third piece of litigation where RLF represents

12  D&O defendants is a direct suit in Delaware Chancery Court,

13  Case Number 2021-1066.  RLF represents the same four former

14  D&Os and Mr. Hamamoto.  The direct action is two consolidated

15  putative class action lawsuits, asserting claims for breach

16  of fiduciary duty against certain directors and officers.

17       The plaintiffs in the direct action allege --

18  essentially allege, not simple mismanagement, but serious

19  misconduct, what is, in essence, a get-rich scheme executed

20  at the expense of Lordstown and misinformed and/or uninformed

21  investors.  The direct action complaint alleges that the

22  defendants, in particular Mr. Hamamoto, breached their

23  fiduciary duties of candor and loyalty.

24       According to Mr. Kroll's first-day declaration, the

25  defendants in the direct action in Chancery Court have

1  asserted indemnification rights against the debtors.  Mr.

2  Kroll's declaration also says that the debtors tendered

3  claims with respect to the "securities actions," a term

4  defined to include the litigation where RLF is involved, and

5  that the debtors' primary and excess insurers under the post-

6  SPAC merger D&O policy have taken the position that no

7  coverage is available for the vast majority of the securities

8  actions.  That's Exhibit 4, Paragraph 57.

9        Mr. Kroll's first-day declaration says that, pre-

10  petition, the debtors spent more than $60 million in out-of-

11  pocket fees associated with legal time and consulting and

12  administrative expenses, including costs to fulfill the

13  debtors' indemnification obligations to current and former Ds

14  and Os.  That's at Paragraph 56.

15        Those out-of-pocket expenses were one of the

16  precipitating causes of these bankruptcy cases, as referenced

17  in Mr. Kroll's declaration at Paragraphs 56 and 59 through

18  60.

19        We respectfully submit that RLF represents

20  interests adverse to the bankruptcy estate and, therefore, is

21  not eligible to be retained under Section 327(a).  In the

22  derivative actions, RLF represents D&O defendants who are

23  trying to minimize their liability on the same claims that

24  the debtors have a fiduciary duty to maximize.

25        In the direct action, RLF represents D&O defendants

with indemnification claims against the estate.  In other

words, RLF represents creditors who are seeking to recover

from the estate.  And one of those creditors is a current

director.  The debtors have an obligation to object to any

claim that isn't proper, including, potentially, if a purpose

would be served -- including, potentially, the

indemnification claims asserted by RLF's D&O clients.

        In the direct and the derivative suits, RLF

represents interests that tend to diminish estate values or

create a potential or actual dispute in which the estate is a

rival claimant.  The derivative suits are not speculative or

hypothetical or academic, they are pending.  The complaints

are filed, they are detailed.  The derivative claims exist

now.  The estate has a fiduciary duty to maximize the value

of those claims now and the D&Os have an interest in

minimizing their liabilities on those same claims now.  RLF

is on both sides of that fight.

        If insurance pays for any liability, then there is

less in proceeds for the estates to recover from.  If the

estate pays for any liability, then there is less in the

estate assets to distribute to other creditors or

shareholders.  We submit that there is an actual conflict of

interest.

        We think the actual conflict of interest is

manifested in the debtors' Chapter 11 plan.  It's located at

1    Docket Item 360 and it's Exhibit 27 in today's exhibit

2    binder.

3              Page 1 of the plan shows RLF as debtors' proposed

4    counsel.  I believe Mr. Stearn referenced Article 5(j) of the

5    plan as authorizing the debtors -- post-effective-date debtor

6    to prosecute causes of action post-effective-date.  We read

7    Article 5(j) as being broader than that.  We read it as

8    giving the post-effective-date debtors unilateral authority

9    to release, abandon, or not pursue any of the debtors'

10   claims, including against D's and O's, without court

11   oversight or third-party involvement.

12             In other words, as we read Article 5(j) of the

13   plan, it gives the post-effective-date debtors the ability to

14   let RLF's D&O clients off the hook.  Article 5(j) of the plan

15   says, quote:

16             "Post-effective-date debtors shall retain and" --

17             In relevant part:

18             "... may enforce all rights to commence and pursue

19             as appropriate, any and all of the debtors' causes

20             of action."

21             Which includes (iii):

22             "-- any causes of action against the debtors'

23             directors and officers that are identified as

24             excluded parties."

25             As we read that, that covers former D's and O's.

1    It says:

2            "The post-effective-date debtors shall have the

3            exclusive right, authority, and discretion to

4            determine and to initiate, file, abandon, release

5            withdraw, or litigate to judgment any such causes

6            of action and to decline to do any of the foregoing

7            without the consent or approval of any third party

8            or further notice to or action, order, or approval

9            of the Bankruptcy Court."

10   As we read in the plan, as to current director Mr.

11   Hamamoto, we believe he'll receive a debtor release under

12   Article 8 or the post-effective-date debtors retain

13   discretion to give him a release under Article 5(j) without

14   further Bankruptcy Court approval.  RLF is on both sides of

15   the estate's adversity with the D's and O's.  And RLF appears

16   on Page 1 of a plan that will give the post-effective-date

17   debtors total discretion to release or abandon the D&O

18   claims.

19   For these reasons, we respectfully submit that RLF

20   represents an interest adverse to the estate under Section

21   327(a) and has an actual conflict of interest in the section

22   -- meaning of Section 327(c) and, as such, is not eligible to

23   represent the debtors.

24   The debtors argue in their reply that RLF's

25   representation of both the debtors and the D's and O's is

permissible because the derivative actions are pre motion to

dismiss.  We believe that argument is flawed for two reasons:

First, we would submit that the type of claim being

asserted against the D's and O's matters.  In Bell Atlantic

Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993), which had

admittedly survived a motion to dismiss, it was post motion

to dismiss.  The Third Circuit wrote that which duty that was

alleged to have been breached was material to whether a firm

could represent both the corporation and the D's and O's.

The Third Circuit wrote that the plaintiffs there

had alleged only a breach of the duty of care, not a breach

of the duty of loyalty.  That's in cite 1316, 2 F.3d 1316.

The Court wrote:

"We have no hesitation in holding that -- except in

patently frivolous cases -- allegations of

directors' fraud, intentional misconduct, or

self-dealing require separate counsel.  We

recognize that corporate law has traditionally

distinguished between breach of the duty of care

and breach of the duty of loyalty, the latter being

more grave" ...

"We do not believe the District Court abused its

discretion in allowing common counsel here.  We

note, however, that in cases where the line is

blurred between duties of care and loyalty, the

1          better practice is to obtain separate counsel for

2          individual and corporate defendants."

3          Here, as we read the complaints where RLF

4    represents D's and O's in pending litigation, we read them as

5    alleging breaches of fiduciary -- the fiduciary duty of

6    loyalty.

7          In the derivative complaint in District Court,

8    Exhibit 9, it alleges breach of the fiduciary duty of loyalty

9    at Paragraphs 220 through 222, 224, and 226.

10          The derivative complaint in Chancery Court at

11    Exhibit 43 alleges breach of the fiduciary duty of loyalty at

12    Paragraph 104.

13          The direct complaint at Exhibit 10 alleges breach

14    of the duty of loyalty at Paragraphs 158 through 163.

15          Second, we think the notion that RLF's

16    representation is okay because the derivative actions are pre

17    motion to dismiss is flawed because the debtors have filed a

18    Chapter 11 plan that gives the post-effective-date debtors

19    unilateral authority to decide that those derivative suits

20    would never even get to a motion to dismiss.  They could

21    simply release those claims.  That's how we read Article 5(j)

22    of the debtors' plan, no Bankruptcy Court approval required.

23    And again, Page 1 of the plan shows RLF as debtors' proposed

24    counsel.

25          Ultimately, we understand the debtors' argument for

1  retaining RLF as boiling down to this:  We've done everything

2  we can to mitigate any adversity and conflict.  There's a

3  conflict waiver, there's an ethical law, and the debtors have

4  retained special litigation counsel.  That's close enough

5  under Section 327(a).  We submit that there is no such thing

6  as close enough under 327(a).  The statute is satisfied or it

7  isn't.  As the debtors -- the conflicts waivers the debtors

8  acknowledge in their reply in Paragraphs 5 and 49, but a

9  conflict waiver is not enough to satisfy Section 327(a).

10          We would submit that the same thing goes for an

11  ethical wall.  The debtors are not tryign to retain one side

12  of RLF.  They're tryign to retain the whole firm.  Nothing in

13  Section 320(a) -- 327(a) suggests that a lack of

14  disinterestedness or representing an adverse interest can be

15  cured by an ethical wall.

16          As to special litigation counsel, the debtors have

17  retained Winston & Strawn to investigate the derivative

18  claims.  But Winston & Strawn's retention application was

19  filed 11 days after the debtors had already filed their

20  Chapter 11 plan, which, again, as we read it, reserves the

21  post-effective-date debtors' complete discretion to make the

22  derivative claims against D's and O's go away, including

23  against RLF's clients.  RLF is on Page 1 of that plan.

24  Special counsel cannot unring that bell.

25          There is an equity committee here and it can serve

as a check on management.  But the equity committee was

appointed on September 7th, which was a month and a half

after the objection deadline on RLF's retention had passed.

Thus, we think that the debtors' contention that the U.S.

Trustee is the only party-in-interest objecting and doesn't

have a financial stake in it is slightly off base.

We don't understand why the debtors are insisting

that their local counsel must be RLF, given its prior

representation of the D's and O's.  RLF only began

representing the debtors in connection with these cases five

or six days before the petition date.  That's Exhibit 5 at

Paragraph 15(c).

And the debtors did not look at any other firm as a

candidate for local counsel.  According to Ms. Leonard's

declaration, which is Exhibit 6, at Paragraph 2, she states

that:

"White & Case recommended to the debtors that the

debtors retain RLF -- RL&F as their bankruptcy co-

counsel" ...

"Under the circumstances, the debtors did not

believe it was necessary to interview or consider

other firms to serve as bankruptcy co-counsel."

We respectfully submit that Your Honor does not

need to indulge lead counsel's first choice of local counsel

in every case, the particular facts and circumstances

1    notwithstanding.

2         RLF says it won't represent the debtors or D's and

3    O's on any matters involving one another.  But it appears

4    from where we stand that RLF already has waded into the fray.

5         First, RLF signed and filed the adversary complaint

6    seeking to extent the automatic stay to shield the defendants

7    in the direct suit in Chancery Court, which includes RLF's

8    former D&O clients.

9         And again, secondly, RLF is shown as counsel on a

10   plan that, as we read it, would give the post-effective-date

11   debtors unilateral authority to abandon or release claims

12   against D's and O's, including RLF's clients, without

13   Bankruptcy Court oversight.

14        The D&O claims here, Your Honor, permeate the case.

15   The alleged acts or omissions at issue led to the pre-

16   petition lawsuits that led to the debtors incurring

17   significant out-of-pocket costs that helped precipitate these

18   Chapter 11 cases.  It led to stayed litigation post-petition

19   before Your Honor.  And now they're addressed in a Chapter 11

20   plan.

21        These aren't residual assets.  The debtors filed

22   the case with a large amount of cash on hand.  But at this

23   point, with the pending proposed sale to mister -- the

24   company with which Mr. Bird is affiliated for $10 million

25   later this month, the main assets left in the estate, from

1    our perspective, appear to be any claims against Foxconn and

2    the D&O claims.

3          To conclude, Your Honor, we'd respectfully submit

4    that RLF represents adverse interests in the debtors' estates

5    and has an actual conflict of interest.  And under the plain

6    language of Sections 327(a) and 327(c) of the Bankruptcy Code

7    is not eligible to serve as debtors' counsel in these cases.

8    The Court should deny RLF's retention application.

9          Unless Your Honor has any questions, that's all I

10   have.

11         THE COURT:  No, thank you.

12         MR. HACKMAN:  Thank you, Your Honor.

13         MR. STEARN:  A brief response, Your Honor?

14         THE COURT:  Yes.

15         MR. STEARN:  Your Honor, I return to where I

16   started, which is that the United States Trustee in its

17   arguments, with due respect to them, are failing to consider

18   important facts and misapplying the law as a result.

19         The question today is whether the U.S. Trustee has

20   demonstrated that it is likely that Richards, Layton & Finger

21   would be placed in a position permitting it to favor the

22   directors over the debtors in this bankruptcy case.  That is

23   the fundamental question as the Third Circuit has posed it.

24         In the derivative action, as a matter of law,

25   there's no conflict at this stage of the proceeding.

1          Let's talk about Bell Atlantic for a second.  And

2   Bell Atlantic actually is more of a sideshow than anything

3   else.  This case doesn't implicate the concerns of Bell

4   Atlantic for several reasons:

5          First, Your Honor, the debtors are not asking the

6   Court to approve Richards, Layton & Finger's dual

7   representation of the debtors and the directors in the

8   derivative litigation or in this bankruptcy case.  We're

9   simply responding to the U.S. Trustee's argument that there's

10  as conflict and demonstrating why, under Delaware law, that's

11  actually not true at the motion to dismiss stage.

12         As Mr. Hackman noted, also, Bell Atlantic was not a

13  motion to dismiss case.  It evaluated the propriety of

14  derivative and individual defendant representation where

15  there was a settlement and whether or not it was appropriate

16  to have the same counsel representing both the company and

17  the individual defendants, where, of course, any recovery

18  would go to the company, but still in that case found it not

19  to be inappropriate.  Bell Atlantic doesn't even discuss,

20  much less opine on whether dual representation is appropriate

21  at the motion to dismiss stage.  It's simply not controlling

22  or relevant here.

23         And as I said, we're not asking the Court to

24  approve a dual representation in this case with respect to

25  derivative claims.  In fact, in the derivative claims, not

1    only will those claims not proceed during this case, but

2    Richards, Layton & Finger will not be involved at all.

3           And let's talk about something Mr. Hackman said

4    which also reflects a misunderstanding by the United States

5    Trustee of the facts of the case.

6           Purportedly, Richards, Layton & Finger, as

7    reflected in the plan, somehow will weigh in on whether or

8    not the claim against the D's and O's will be released or how

9    that will be treated.  That's demonstrably untrue, Your

10   Honor, not only because the record before you, for example at

11   Mr. Gross' declaration, expressly states that Richards,

12   Layton & Finger would not be involved in any such claims,

13   also because the retention order -- and I read the provision

14   a few moments ago, expressly states Richards, Layton & Finger

15   cannot be involved in any such claims or the valuation

16   thereof.

17          I should go back and -- I won't reread the -- I

18   won't reread the provision.  Your Honor doesn't need to hear

19   it again.

20          The fact of the timing of Winston & Strawn's actual

21   retention by the Court is irrelevant because it was always

22   going to be the case that someone other than Richards, Layton

23   & Finger was going to look at the derivative claims, whether

24   that was lead counsel, White & Case, or special counsel,

25   which in this case is Winston & Strawn.  Mr. Gross'

declaration proved and the draft retention order, proposed

retention order requires that Richards, Layton & Finger not be

involved in precisely the issue that Mr. Hackman says

Richards, Layton & Finger would be involved.  That's simply

an incorrect statement, Your Honor.

And given these facts, how could Richards, Layton &

Finger exercise some sort of discretion, as Mr. Hackman says,

to favor the directors over the defendants in this bankruptcy

case when Richards, Layton & Finger can have no involvement

in those issues whatsoever, both as represented in Mr. Gross'

declaration and as required by the Court's retention order?

That's simply untrue, Your Honor.

In terms of the direct action, I'll note

parenthetically that those large indemnification claims that

accrued previously, that wasn't us.  That was largely out of

the SEC investigation and things like that.

But again, think about what is the conflict, if

any, in this case.  There's no indemnification claim accruing

currently.  Richards, Layton & Finger would not handle

indemnification on either side of the ledger.  But once

again, I come back to the relevant inquiry as posed by the

Third Circuit:  Is it likely that Richards, Layton & Finger

would be placed in a position permitting it to favor the

directors over the debtors in this bankruptcy case on

indemnification claims?  No, it is not.

1          Your Honor, the last couple of things I say -- and

2     I apologize, this may be a little haphazard because I'm

3     trying to respond to some of my colleague Mr. Hackman's

4     arguments.

5          He said close enough is not the issue, the question

6     is whether this satisfies Section 327 or not.  I have no

7     dispute with that argument because, clearly, the U.S. Trustee

8     has not demonstrated that we don't satisfy Section 327.

9     There's no actual conflict of interest, there's no potential

10    conflict of interest, and even if there is a potential

11    conflict of interest, we have ameliorated that potential

12    conflict of interest through the use of conflicts counsel.

13         Delaware cases consistently provide that conflicts

14    counsel solves the problem.  Several recent cases decided by

15    your colleagues reached that conclusion:  Judge Silverstein

16    in Boy Scouts and Judge Dorsey in FTX, where there were

17    issues with the debtors' choice of Delaware -- or excuse me -

18    - lead counsel in that case.  Conflicts counsel solved the

19    problem.  So it's not that conflicts counsel brings you close

20    enough.  It's that conflicts counsel helps you satisfy the

21    requirements of Section 327, which we've clearly done here.

22         The last thing I would say, Your Honor, is, look,

23    Richards, Layton & Finger has been involved in this case for

24    several months.  Now it's not just five to six days, but for

25    several months.  It's taken us awhile to get before Your

1  Honor because the parties -- well, Richards, Layton & Finger

2  and the U.S. Trustee were cordial with each other; when the

3  U.S. Trustee requested extensions, we provided it; when the

4  U.S. Trustee requested further information, we always

5  provided it, we gave the U.S. Trustee everything that they

6  wanted.  And there were times when the U.S. Trustee said they

7  didn't consent to going forward on a particular hearing date,

8  and we generally honored that request or that statement.  And

9  it wasn't even until last Friday that the U.S. Trustee

10  finally said we consent to going forward on October 5.  So we

11  have gotten in front of Your Honor as promptly as we could.

12          But it's also the fact that, under these

13  circumstances, the debtors wouldn't be losing five to six

14  days of Richards, Layton & Finger's knowledge, it would be

15  losing two or three months of Richards, Layton & Finger's

16  knowledge, which then someone else would have to come up to

17  speed on in a case that the debtors are trying to confirm

18  promptly, this year.  That's certainly not in the debtors'

19  best interests, Your Honor.

20          So, again, I'll wrap up.  We think -- we

21  respectfully submit that, looking at the conflicts question

22  from the debtors' perspective, not the U.S. Trustee's

23  perspective, as the Third Circuit requires, there is no

24  Section 327(a) disabling conflict; and, accordingly, the

25  debtors' determination of who they would like for their local

1 counsel, regardless of whether they made that decision

2 independently or with the advice of other counsel -- which is

3 you would think how clients typically make such decisions --

4 that decision should be respected.  And we respectfully

5 request that Richards, Layton & Finger's retention

6 application be granted.  Thank you, Your Honor.

7        THE COURT:  Let's take a five-minute break and I'll

8 come back with my decision.

9        (Recess taken at 11:34 a.m.)

10        (Proceedings resume at 11:52 a.m.)

11        **(The Court's microphone not recording)**

12        THE COURT:  All right.  It's still good morning.

13 This is Judge Walrath and I am prepared to rule on the

14 request of the debtors to authorize their retention of

15 Richards, Layton & Finger as Delaware counsel, local counsel.

16        For the reasons that I will go into, I believe that

17 I cannot authorize that retention because I find that RLF has

18 an actual conflict and the United States Trustee has objected

19 to that retention.  Under the express language of 327(c), I

20 shall not authorize that retention.

21        I appreciate the arguments of counsel and

22 especially counsel for RLF.  But I think that RLF and the

23 debtor look too narrowly at the conflict issue.  I don't

24 think that the Court is limited or can narrowly look only at

25 what counsel has proposed to do in the bankruptcy case.

1          This is a retention under 327(a), not under 327(e)

2    for a special purpose; and, therefore, the Court must

3    consider all of the actions of counsel, not just what counsel

4    has proposed to do in the bankruptcy case.  And I think that,

5    considering what counsel is doing in the direct and

6    derivation action cases outside of this Court, I must

7    consider whether those actions will have an adverse effect on

8    this estate, and I find that they will.

9          The actions are in direct conflict, both of them

10   are in direct conflict with the estate's interests in those

11   actions.

12         In the direct action case, RLF is representing a

13   party which admittedly has an indemnification claim against

14   the debtor and, therefore, is a creditor.  And the continued

15   defense of that action is increasing the indemnification

16   claim.

17         While R-L -- while Mr. Stearn asserts the fact that

18   there is insurance to cover that claim and the insurers are

19   paying the defense costs does not eliminate the fact that it

20   is a claim against the estate.  The insurer is covering the

21   claim against the estate and it is reducing insurance

22   coverage for those actions.  There is persuasive authority

23   that, while defense costs get paid first, the debtor may have

24   an interest in the insurance, to the extent there is any

25   funds left.  So simply representing the defendants in a

1    direct action is a direct -- has a direct adverse claim --

2    adverse effect on the debtors' estate.

3        The derivative action is even clearer.  The estate

4    holds that claim and has an interest in maximizing that

5    claim.  At the same time, RLF is representing defendants that

6    have an interest in minimizing the value of those claims.

7    The fact that the debtors' prosecution of the derivative

8    actions may not be litigated during the course of this case

9    because of the automatic stay does not eliminate that.  The

10    estate still has an interest in pursuing those cases.

11        And quite frankly, the retention of conflicts

12    counsel does not solve the issue.  The typical retention of

13    conflicts counsel is to eliminate a conflict arising from

14    counsel -- debtor's counsel's prior representation of a

15    creditor or because of its prior or current representation of

16    that creditor in other matters, it is not permitted to be

17    retained by the debtor.  Again, this is the circumstance of

18    getting a 327(e) counsel involved.  I'm not persuaded that

19    the retention of Winston in this case eliminates the actual

20    conflict of RLF representing parties directly against the

21    debtor -- the debtors' interests.  Excuse me.

22        And I am also concerned with the effect of the

23    language in the plan that could eliminate claims that the

24    estate may have against the defendants in the direct and in

25    the derivative action case.  I think the actual conflict is

1    that RLF is continuing to represent the defendants in those

2    two actions.

3            And while I find it interesting and significant

4    that both actions allege a breach of the duty of loyalty as

5    well as other breaches of fiduciary duties by RLF clients, I

6    don't think that is necessary.  I think any action alleging a

7    breach of fiduciary duty against clients that is continuing

8    rep -- to be represented by counsel for the debtor creates an

9    actual conflict.  I don't see any leeway here.

10           And although the parties didn't cite it, I will

11   refer them to the case -- the In Re Harris Agency case out of

12   the Eastern District of Pennsylvania, 462 B.R. 514, where the

13   Court found an actual conflict of interest where counsel for

14   the debtor, at the time it was representing the debtor, also

15   represented a co-obligee -- co-obligor of the debtor on a

16   loan -- sorry about that -- a co-obligor on the loan and

17   seeking to have that co-obligor be found not liable ...

18           What is going on?  Hold on a second.  Let's see.

19       (Court and court personnel confer)

20           THE COURT:  It is on.

21       (Court and court personnel confer)

22           THE COURT:  That's worse.  Do you want me to turn

23   it off?

24       (Court and court personnel confer)

25       **(Recording microphone on at 12:00:06)**

1          THE COURT:  All right.  Counsel for the debtor, at

2     the same time, was representing a co-obligor of the debtor in

3     a lawsuit outside of the bankruptcy, seeking to eliminate his

4     obligation.  The Court found it was an actual conflict

5     because it would reduce the estate by eliminating a possible

6     other source of recovery for that creditor.

7          And I think the direct action is similar in this

8     case.  By defending that action, it's reducing a recovery

9     that creditors or shareholders of this estate may recover.

10          I just don't see any leeway here.  I don't see --

11     it's not a potential conflict; it's an existing actual

12     conflict, and so I have no discretion to deny the -- but to

13     deny the retention application.

14          So I'll ask for a proposed form of order to be

15     filed under certification of counsel.

16          MR. STEARN:  Thank you for hearing us today, Your

17     Honor.

18          THE COURT:  Thank you.

19          MR. HACKMAN:  Thank you very much.

20          THE COURT:  All right.  We'll stand adjourned then.

21          MR. HACKMAN:  Thank you, Your Honor.

22          THE COURT:  I did originally have it still muted,

23     still off, so that's what originally caused it.  Sorry.

24          (Proceedings concluded at 12:01 p.m.)

25                              * * * * *

1   CERTIFICATION

2        I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7

8

9

10   _____        October 5, 2023

11   Coleen Rand, AAERT Cert. No. 341

12   Certified Court Transcriptionist

13   For Reliable

14

15

16

17

18

19

20

21

22

23

24

25