## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 1:23-BK-10831** |
| | § | **(CHAPTER 11)** |
| **LORDSTOWN MOTORS CORP.** *et al.*,[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | Re: D.I. 467, 361 |
| | § | |
| | § | **Hearing Date: October 18, 2023** |
| | § | **Hearing Time: 10:30 a.m. ET** |

### OBJECTION OF RIDE INVESTOR GROUP
### TO APPROVAL OF THE DEBTORS' DISCLOSURE STATEMENT

Bandol Lim, Nico Gatzaros, and Richard Dowell (collectively, the "RIDE Investor Group" or "Claimants"), lead plaintiff movants in the action styled: *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454, (the "Securities Action") in the United States District Court for the Northern District of Ohio (the "Ohio District Court"), brought on behalf of all others similarly situated (the "Putative Class" or the "Claimants"), hereby file this objection (this "Objection") to the *Debtors' Motion for Entry of Order (i) Approving the Disclosure Statement, (ii) Approving Plan Solicitation, (iii) Approving Forms of Ballots, (iv) Approving Form, Manner, and Scope of Confirmation Notices, (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (vi) Granting Related Relief* (the "Motion") [D.I. 467], and respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

### SUMMARY OF OBJECTION[2]

1.       The Disclosure Statement fails to provide adequate information and meet the requirements of Section 1125 of the Bankruptcy Code because it (i) omits (a) any disclosure concerning the securities fraud class action commenced by investors in Lordstown Motors Corp. ("LMC") common stock and led by the RIDE Investor Group against the non-Debtor Defendants for violations of the securities laws and (b) material information concerning the preservation of the rights of the RIDE Investor Group and the Putative Class to collect proceeds from the D&O Liability Insurance Policies procured by the Debtors for the benefit of themselves and their directors and officers should liability be established against any of the Defendants in the Securities Action; (ii) does not explain how the RIDE Investor Group and the Putative Class will be able to pursue the Class Claim against the Debtors to the extent of available insurance coverage; (iii) omits any discussion of the value the Debtors expect to be able to return to Holders of Claims and Interests; and (iv) does not disclose whether or how the Debtors intent to preserve evidence potentially relevant to the Securities Action after the Sale Process is complete or after the Effective Date of the Plan.

2.       In addition, the Disclosure Statement should not be approved because it describes a Plan that should not be confirmed with the third-party non-debtor releases barred by the Bankruptcy Code and applicable Third Circuit law. The Plan described in the Disclosure Statement is facially unconfirmable because it provides for broad Releases of numerous categories of persons and entities who are non-Debtors, which would bind the Holders of Impaired Claims and Interests

---

[2]    Unless otherwise stated herein, all undefined capitalized terms used in this Objection shall have the meanings ascribed to them in the Disclosure Statement and Plan, as applicable. Additionally, certain undefined capitalized terms appearing in the Summary of Objection are defined later in the Objection.

who do not affirmatively consent or waive their rights, and who may receive no distribution or consideration.

3.      As currently drafted, the Releases under the Plan may well provide the Insurers under the D&O Liability Insurance Policies with an unintended, and undeserved, defense to coverage for the very types of claims that have been asserted in the Securities Action. The Bankruptcy Code prohibits such a result.

4.      To try to evade applicable precedent in the Third Circuit and this Court, the Debtors attempt to apply a veneer of "consent" through a construct in the Plan providing that the Releases would be effective unless the "Releasing Parties" take affirmative steps to opt out of providing the Releases.  That attempt fails as a matter of law.  First, bankruptcy courts generally apply state contract law principles in determining whether a plan's procedures are sufficient to establish consent to third-party releases. Delaware law is clear that "silence and inaction will not be construed as an assent to an offer," absent factors clearly not at play here, precluding as a matter of law the Debtors' attempt to use a failure to opt out to establish consent to the Releases.  In re Emerge Energy Servs. LP, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (relying on Restatement (Second) of Contracts § 19 (Am. Law Inst. 1981); Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1045-48 (Del. 2014).

5.      Second, under this Court's own precedent, if the Releases are found to be non-consensual then they should not be approved, making the Plan unconfirmable as drafted: "Failing to return a ballot is not a sufficient manifestation of consent to a third party release…the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases….Therefore, the Court concludes that any third party release is effective only with respect

to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." In re Washington Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011) (Walrath, J.).

6.      Additionally, the Releases are not supported by any consideration to the Impaired Classes and Interests through the Plan (other than as of now vague and indeterminate hopes of recovery), or from the aspiring Released Parties.

7.      In sum, the Releases contained in the Plan are fatally flawed and the Court should deny approval of the Disclosure Statement absent further disclosure and structural changes to the Releases to preserve the rights of opt-out parties (individually or collectively) to proceed against non-Debtor defendants, including officers and directors of the Debtors, and collect non-bankruptcy estate proceeds under the D&O Liability Insurance Policies of the Debtors should liability be established.

8.      As set forth in further detail below, in order to correct the manifest defects of the Plan, the RIDE Investor Group has proposed language for the Debtors to incorporate into the Plan, Disclosure Statement, and confirmation order as a means to address these Objections.

## BACKGROUND

### I.    Procedural Background

9.      On June 27, 2023 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed their petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10.     Plaintiff Bandol Lim commenced the Securities Action in the Ohio District Court on July 26, 2023, naming as defendants Edward Hightower and Adam Kroll (the "Defendants"), directors and/or officers of debtor LMC.   The claims of the RIDE Investor Group and the Putative

Class arise from the purchase or acquisition of securities of LMC between August 4, 2022 through and including June 26, 2023 (the "Class Period") as set forth in the Class Action Complaint for Violations of the Federal Securities Laws (Jury Trial Demanded) (the "Complaint").   The RIDE Investor Group pursues claims against the Defendants, who were LMC's two most senior officers during the Class Period, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  The Securities Action is subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

11.     While the Debtors are not named in the Complaint, the Claimants have direct claims against LMC and the other Debtors for the counts contained therein, and the Claimants seek to adjudicate such claims against the Debtors in these chapter 11 cases.

12.     On September 1, 2023, the Debtors filed the *Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "Plan") [D.I. 360] and *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "Disclosure Statement") [D.I. 361].  The Debtors also filed an associated *Notice of Hearing* (the "Disclosure Statement Notice") [D.I. 362] setting a hearing date set as October 18, 2023 (the "Hearing Date") and a deadline to file objections or responses to approval of the Disclosure Statement as October 4, 2023 at 4:00 p.m. Eastern Time.

13.     On September 22, 2023, the Debtors filed the Motion, setting forth their arguments for approval of the Disclosure Statement as well as other relief, including approval of (i) procedures for solicitation and tabulation of votes to accept or reject the Plan (the "Solicitation Procedures"), (ii) forms of ballots attached as Exhibits 2-1 to 2-5 to the proposed form of Disclosure Statement Order ("Ballots"), (iii) various forms of notices as to hearing dates, voting

status, or claim status, cure and assumption, and a cover letter to describe solicitation materials, and (iv) various deadlines regarding publication notice and Solicitation Procedures generally. The notice of the Motion contained the identical Hearing Date as the Disclosure Statement Notice, but established October 6, 2023 at 4:00 p.m. Eastern Time as the deadline to object to the relief contained in the Motion.

14. On September 25, 2023, the RIDE Investor Group filed a motion in the Securities Action seeking their appointment as lead plaintiff and approval of their selection of lead counsel. See *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454 (N.D. Ohio Sept. 25, 2023) (ECF No. 19). This motion remains pending.

15. On September 29, 2023, each member of the RIDE Investor Group filed proofs of claim (the "Class Claims") [Claim Nos. 802, 809, 816] for themselves and the Putative Class pursuant to Fed. R. Bankr. P. 7023, in an unliquidated amount, subject to certification of a class as provided under the PSLRA, or, if warranted, following relief from the PSLRA automatic stay, through a class certification process in this Court.

## II. Disclosure Statement Provisions

16. The Disclosure Statement contains numerous provisions that warrant disapproval, both for a lack of adequate information enabling a holder of claims or interests to make a decision as to whether to accept or reject the Plan, and because it supports a Plan that is unconfirmable on its face due to non-consensual third-party releases.

### A. Treatment of Interests Under the Plan and Information Provided

17. The RIDE Investor Group and the Putative Class, are, as defined in the Plan, Holders of both Claims and Interests. Specifically, they are holders of Common Stock Interests and Section 510(b) Claims, each of which are classified for treatment under the Plan in Class 7.

Class 7 will be paid pro rata from the Non-Trade Pool Assets after (i) satisfaction of all administrative expense, priority unsecured, secured, (ii) funding for professional fee escrow or full payments of professional fees, (iii) the GUTC Cash Pool Account is fully funded, and (iv) the Post-Effective Date Debtor Amount is funded.  Disclosure Statement, pp. 34-35.  In essence, only Foxconn will have its Interests subordinate to Class 7.  See id., p. 45 ("The Plan shall serve as, and shall be deemed to be, a motion for entry of an order equitably subordinating the rights of the Holders of Foxconn [Interests] … to the rights of non-Foxconn Holders of Common Stock Interests to receive such Distributions[.]").

18.     The Class Claim also should be considered an "Insured Claim" under the Plan, which is "any Claim against a Debtor for which any Debtor is entitled to coverage, indemnification, reimbursement, contribution or other payment under an Insurance Policy."  This is because the Securities Action and the Class Claim direct claims against persons and entities that are "insured persons" under the Debtors' D&O Liability Insurance Policies and possibly other Insurance Policies.[3]

19.     The only classes entitled to vote on the Plan, Classes 3, 4, and 7, have not been provided with an estimated recovery amount.  See id., p. 5.

20.     According to the Disclosure Statement, the "Sources of Consideration for Distributions" are as follows:

> Following the Effective Date and the funding of the GUTC Cash Pool Account, the Post-Effective Date Debtors shall be authorized, in their sole discretion, to liquidate or otherwise convert the non-Cash Non-Trade Pool Assets to Cash. The Post-Effective Date Debtors shall fund Distributions to Holders of Claims and Interests (other than Holders of Claims in Class 3 (General Unsecured Trade Claims)), from the Non-Trade Pool Assets, which include **(i) Cash on hand as of the Effective Date (after the GUTC Cash Pool Account has been funded), (ii) proceeds from**

---

[3]     The Debtors did not object to the Defendants' Stay Motion (defined below), conceding that the Defendants are in fact Insured Persons under the D&O Liability Policies.  See D.I. 487.

**the sale of the Debtors' assets, (iii) proceeds from the Foxconn Causes of Action and other Causes of Action and (iv) insurance proceeds received by the Post-Effective Date Debtors**.

Disclosure Statement, p. 38 (emphasis added).

21.     As it relates to Insurance Policies (as defined in the Plan), the Disclosure Statement provides that "Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estate) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. The Debtors shall be deemed to have assumed all Insurance Policies." Id., p. 43.  Under the Plan, the Insurance Policies include "D&O Liability Insurance Policies."[4]  As stated above, Insurance Policies, including D&O Liability Insurance Policies, are sources of distributions according to the Disclosure Statement.

22.     The Disclosure Statement also includes the complaint filed by the Debtors against Foxconn[5] in the adversary proceeding captioned *Lordstown Motors Corp. et al. v. Foxconn Ventures Pte. Ltd. et al.*, Adv. Proc. No. 23-50414 (MFW) (Bankr. D. Del.) (the "Foxconn Adversary Proceeding" or the "Foxconn Causes of Action").  As stated above, recoveries from the Foxconn Causes of Action sources of distributions according to the Disclosure Statement.

---

[4]     Plan, Art. I.A.37: "***D&O Liability Insurance Policies***" means, collectively, all Insurance Policies (including any "tail policy" or runoff period in respect of an Insurance Policy) issued at any time, whether expired or unexpired, to any of the Debtors for certain liabilities of the Debtors, their current or former directors and officers, including primary insurance, excess insurance, or tail insurance policies and all agreements, documents or instruments related thereto.

[5]     Plan, Art. I.A.57: "***Foxconn***" means Hon Hai Technology Group and each of its affiliates, including, but not limited to, (i) Foxconn Ventures Pte. Ltd., (ii) Foxconn Asset Management LLC, (iii) Foxconn EV System LLC, and (iv) Foxconn EV Technology, Inc.

23.     The Debtors have not filed a schedule of Retained Causes of Action, but under the Plan they include at least (i) the Foxconn Causes of Action, (ii) any Cause of Action based in whole or in part upon any and all insurance contracts, (iii) any Causes of Action against Directors and Officers who are Excluded Parties, and any Causes of Action included in a Plan Supplement. See Plan, Art. I.A.109.   As stated above, recoveries from Causes of Action are sources of distributions according to the Disclosure Statement.

24.     The Disclosure Statement contains a short description of the Sale Process and the deadlines associated therewith have since been further delayed three times before the Auction was cancelled and only one Qualified Bid was received.   See D.I. 418, 434, 475 and 488 (notices of modified dates and deadlines in connection with Sale Process and notice of selection of Successful Bidder).  The Buyer, LAS Capital LLC, is an entity associated with a recent former insider of the Debtors and will purchase "specified assets of the [Debtors] related to the design, production and sale of the electric light duty vehicles focused on the commercial fleet market." See Form 8-K dated September 29, 2023. The Buyer will pay $10 million in cash for the assets and assume certain liabilities. Approval of the sale is scheduled for the same date and time as the Hearing Date for approval of the Disclosure Statement, and the Disclosure Statement does not provide the requisite facts and detail that a Holder would need to determine how this sale will affect their Claims or Interests.

25.     The Debtors reported having $136 million in cash on hand as of the Petition Date, with an estimated monthly cash burn as of August 25, 2023 of $6.7 million, that is almost entirely unencumbered (other than approximately $100,000 related to the Debtors' purchase card program, deposits with landlords, and customs bonds), and certain tax attributes (such as NOLs and net unrealized built-in-loss). See Disclosure Statement, pp. 8-9, 14.  However, there is no information

regarding the proposed GUTC Cash Pool Amount and the Post-Effective Date Debtor Amount,

value of Non-Trade Pool Assets, value of the Insurance Policies, status or of the Foxconn Causes

of Action and/or likelihood of recovery, and any information regarding other Causes of Action and

their potential value (which will not be known until the Plan Supplement is filed.  Similarly, there

is no information regarding the various other claims, professional fees, escrowed amounts, and

exposure regarding the Prepetition Litigation (which will affect amounts available under the D&O

Liability Insurance Policies).

26.     Additionally, the Liquidation Analysis which is meant to be attached as Exhibit C

to the Disclosure Statement has not been provided by the Debtors.

### B. Third Party Releases

27.     The Disclosure Statement also quotes Plan's provision regarding releases of the

Debtor and non-Debtor third parties (the "<u>Releases</u>"):

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, ***each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged each Debtor, Post-Effective Date Debtor, and other Released* Party *from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever*** (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, ***based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition)***, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, ***the administration and implementation of the Plan***, including the distribution of property under the Plan, or any other related agreement, ***or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing.***

Disclosure Statement, p. 56; Plan, Article VIII.D (emphasis added).

28.       Under the Plan, "Released Party" means (among other things), "(i) the Debtors…

***and its current and former Affiliates and their respective current and former directors,***

***managers, officers***, predecessors, successors, and assigns, subsidiaries, and each of their

respective current and former officers, directors, managers, principals, members, employees,

agents, advisory board members, financial advisors, partners, attorneys, accountants, managed

accounts or funds, management companies, fund advisors, investment bankers, consultants,

representatives, and other professionals…" Plan, Article I.A.107 (emphasis added). **Therefore,**

**the Defendants are Released Parties under the Plan**.

29.       The Plan defines a "Releasing Party" as (among other things):

> … (iii) all Holders of Claims or Interests that vote to accept the Plan; (iv) ***all***
> ***Holders of Claims or Interests that are entitled to vote on the Plan who vote to***
> ***reject the Plan and do not affirmatively opt out of the third party releases***
> ***provided for in*** <u>***Article VIII.D***</u> ***by checking the box on the applicable Ballot or***
> ***form indicating that they opt not to grant such releases in the Plan submitted on***
> ***or before the Voting Deadline***; and (v) with respect to each of the foregoing
> Entities in clauses (i) through (v), such Entity and its current and former
> Affiliates…

Plan, Article I.A.108 (emphasis added).

30.       Additionally, the form of Ballot attached to the Motion as Exhibit 2-4 (the

"<u>Beneficial Holder Ballot</u>") at Item 2 states:

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION
### <u>AND INJUNCTION PROVISIONS IN THE PLAN</u>

**Unless you vote to reject the Plan *<u>or do not vote on the Plan AND opt out of the releases</u>* by
Holders of Claims and Interests, you  shall  be deemed to have consented to the releases
contained in <u>Article VIII.D</u> of the Plan, which provides as follows…** [the Releases follow]

…

☐ Opt Out of the Third Party Release

**ONLY APPLICABLE IF YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN, YOU WILL ALSO BE CONSENTING TO THE RELEASE ABOVE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN REGARDLESS OF WHETHER YOU CHECK THE ABOVE BOX OR NOT.**

**IF YOU VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN, YOU ARE ENTITLED TO OPT OUT OF THE RELEASE ABOVE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN *BY CHECKING THE BOX IN ITEM 2 OF THIS BENEFICIAL HOLDER BALLOT*.**

(italics and underline added).

31.     **Therefore, a Holder who does not return a Beneficial Holder Ballot or vote through its nominee will be deemed to consent to the Releases, as will any Holder who does not affirmatively opt out of the Release through a Ballot**.  Taking together the instructions above, an abstaining Holder must check the box and return a Ballot to opt out of the Releases or such Holder will be deemed to consent.

**OBJECTION**

**I.     <u>The Disclosure Statement Does Not Contain "Adequate Information"</u>**

32.     The Disclosure Statement should not be approved because it fails to provide adequate information.   Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain adequate information. "Adequate Information" is defined as "information of a kind, and in sufficient detail . . . [so as to enable] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); <u>see</u> <u>In re Phoenix Petroleum Co.</u>, 278 B.R. 385, 393 FN 6 (Bankr. E.D. Pa. 2001) listing numerous factors courts may consider in determining whether a disclosure statement provides adequate information).

33.     The purpose of a disclosure statement for a chapter 11 plan "is to provide 'adequate information' to creditors to enable them to decide whether to accept or reject the proposed plan."

In re Feretti, 128 B.R. 16, 18 (Bankr. D.N.H. 1991) (citations omitted); see In re Maxus Energy Corp., 639 B.R. 51, 66 (Bankr. D. Del. 2022) ("As this Court explained, the purpose of a disclosure statement is "for the benefit for making sure people have the knowledge they need to vote."); Phoenix Petroleum, 278 B.R. at 392. ("[I]t is understood that the general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); In re Beltrami Enterprises, Inc., 191 B.R. 303, 304 (Bankr. M.D. Pa. 1995) ("The purpose of the disclosure statement is to provide sufficient information to enable a reasonable and typical investor to make an informed judgment about the plan." (Relying on S. REP. 95-989, 121, 1978 U.S.C.C.A.N. 5787, 5907)).

34.    Although courts assess adequacy on a case-by-case basis, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible . . . alternatives so that [creditors] can intelligently accept or reject the Plan." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). The purpose of a disclosure statement is "to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan." See In re Scioto Valley Mortg. Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988). The Third Circuit has emphasized the importance of adequate disclosure, given the reliance creditors and bankruptcy courts place on disclosure statements. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414, 417 (3d Cir. 1988) ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'")

35.     In its current form, the Disclosure Statement does not contain adequate information for the RIDE Investor Group to evaluate the Plan, and thus the Disclosure Statement should not be approved.

36.     There is virtually no information that would allow a reasonable stakeholder to evaluate the sources of recoveries under the Plan, feasibility of the Plan, or whether voting to accept or reject the Plan would be beneficial to them at all (or, indeed, whether chapter 7 would provide for a better outcome).  There is a similar dearth of information regarding liabilities, including under the Prepetition Litigation or the coverage available under the D&O Liability Insurance Policies.

37.     "It is within the Court's discretion to deny approval of a disclosure statement if the accompanying plan is unconfirmable on its face."  In re Surma, 504 B.R. 770, 773 (Bankr. D.N.J. 2014). Because, as discussed more fully below, the Plan cannot be confirmed in its current form, it would be counterproductive to conditionally approve the Disclosure Statement and authorize the Debtors to expend estate resources soliciting votes on an unconfirmable Plan.

**A.  The Disclosure Statement Omits any Information Concerning the Securities Action or the Preservation of Recoveries Under D&O Liability Insurance Policies**

38.     The Disclosure Statement reflects a Plan that will supposedly preserve Common Stock Interests in Class 7.  However, while the Disclosure Statement touts the unfinished Sale Process that could maximize value, as well as the Foxconn Causes of Action and other sources for distributions, there is simply not adequate information to evaluate (a) a potential recovery and (b) likely liabilities.  There is no discussion of the value of the D&O Liability Insurance and how this may be drained by the Prepetition Litigation.  There is inadequate information regarding the Prepetition Litigation and its effect on the estates and the Insurance Policies, and the ***Debtors do***

*not mention at all the Securities Action*, further clouding the picture for those Holders presented with Ballots.

39.    The Defendants in the Securities Action have filed their *Motion for Relief from the Automatic Stay, to the Extent Applicable, to Permit Payment, Reimbursement and/or Advancement of Defense Costs and Fees, and Related Expenses, Under Directors and Officers Insurance Policies* (the "Defendants' Stay Motion") [D.I. 437], asserting their position that they are "Insured Persons" under various directors and officers liability policies of the Debtors.  The Disclosure Statement does not contain a discussion of current directors' and officers' coverage by D&O Liability Insurance Policies or other Insurance Policies.  The Court granted the Defendants' Stay Motion on October 2, 2023 [D.I. 495].

40.    Adequate information under the circumstances of these cases necessarily requires a discussion of the claims and causes of action asserted against the Debtors and their current and former officers and directors[6] in the Securities Action, the Class Claim, and Prepetition Litigation. Adequate information further requires the Debtors to provide the justification for non-debtor officers and directors to be included in the Releases when there is no guarantee of consideration paid to Holders of Common Stock Interests.

41.    The Disclosure Statement also omits material information concerning the preservation of the rights of opt-outs or non- "Releasing Parties" (individually or collectively in the case of the Putative Class members) to collect proceeds from the D&O Liability Insurance Policies of the Debtors should liability be established. While the Disclosure Statement refers to

---

[6]    The Plan's definition of "Released Party" does not include "Former Directors and Officer" (which are "Excluded Parties").  Former Directors and Officers are defined to mean any director or officer other than those that served in the capacity as a director or officer of the Debtors at any time from the Petition Date through the Effective Date."  See Plan, I.A.19, 49, 56, 107.

the assumption of its D&O Liability Insurance Policies (p. 43), the disclosure is wholly insufficient concerning the ability of any opt-out party that may prevail from being able to recover proceeds from the D&O Liability Insurance Policies, which are not property of the Debtors' bankruptcy estates.[7]

42.     The Releases in Article VIII.D of the Plan state:

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, ***each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged each Debtor, Post-Effective Date Debtor, and other Released* Party** ***from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever*** (in each case, whether prepetition or postpetition) [including derivative claims] … ***based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition)***…

(emphasis added).

43.     To the extent that language could be construed as providing the Debtors with releases separate from and in addition to the discharge that will be received upon confirmation of the Plan, the Disclosure Statement should not be approved because it is legally deficient.  The additional "releases" of the Debtors may have the unintended effect of jeopardizing the ability of the RIDE Investor Group and the Putative Class members to establish liability against both the Debtors as purely nominal parties and against non-Debtor officer and director defendants for

---

[7]     See In re Allied Digital Techs., Corp., 306 B.R. 505, 510 (Bankr. D. Del. 2004): "Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate. See In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399 (5th Cir. 1987) (the debtor has no ownership interest in proceeds from a liability policy where the obligation of the insurance company is only to the directors and officers who are the named and the only insured); In re Daisy Sys. Sec. Litig., 132 B.R. 752, 755 (N.D. Cal.1991) (the court held that when the directors' and officers' liability insurance policy provides direct coverage to the directors and officers the proceeds are not property of the estate to be divided among the debtor's creditors)."

purposes of collecting under the D&O Liability Insurance Policies, including under "Side C" entity coverage provisions.

44.     "Both statutory law and case law provide that the Plan discharge does not affect the liability of non-debtor third parties, including a debtor's insurer… Section 524(e) of the Bankruptcy Code explicitly provides that the discharge does not apply to non-debtors who may be liable for the debtor's debts. Collectively, § 524(a) and § 524(e) allow a creditor to recover from a third-party who may be liable for the debt of the debtor. Third Circuit case law accords with this interpretation of the statute." In re Weiand Auto. Indus., 612 B.R. 824, 859 (Bankr. D. Del. 2020) (relying on In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000); Copelin v. Spirco, Inc., 182 F.3d 174 (3d Cir. 1999); First Fidelity Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993) (Section 524(e) "assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties.")).

45.     Further, the Disclosure Statement does not explain whether any Insurance Policies cover the claims asserted in the Securities Action or Class Claims, and if so, how the Plan would permit RIDE Investor Group or the Putative Class to access coverage under such policies in the Securities Action to the extent of available insurance coverage, which would have no impact on the Debtors' estates.

46.     To correct these defects, the Plan must expressly exclude the RIDE Investor Group and the Putative Class and, and their claims against the non-debtor Defendants in the Securities Action, from the Releases and Plan Injunction. Absent such revisions, the Disclosure Statement should not be approved. To that end, the RIDE Investor Group suggests that the following language should be included in the Plan, Disclosure Statement, and confirmation order to clarify that the

RIDE Investor Group and Putative Class members are not deemed to be "Releasing Parties" as

follows:

> Neither the RIDE Investor Group nor Putative Class (both individually or collectively) in the securities class action styled: *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio, shall be "Releasing Parties" under the Plan.

In addition, for the avoidance of any doubt, the definition of "Released Parties" should clarify that

the non-Debtor Defendants in the Securities Action, in their capacity as such, are not "Released

Parties," as follows:

> None of the non-Debtor defendants in the securities class action styled: *Lim v. Hightower*, *et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio, shall constitute "Released Parties" under the Plan.

In addition, Article VIII.D of the Plan should expressly include the following:

> Notwithstanding anything to the contrary in this Plan or the Confirmation Order, nothing herein or therein does, shall, or may be construed to release, enjoin or otherwise adversely impact the claims and causes of action asserted against any non-Debtor defendants in the securities class action styled: *Lim v. Hightower*, *et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio.

Finally, for the avoidance of any doubt concerning the releases of the Debtors, Article VIII.D of

the Plan should expressly indicate the following:

> Notwithstanding anything to the contrary in this Plan or the Confirmation Order, nothing herein or therein does, shall, or may be construed to release, the Debtors or bar the assertion of claims against them as nominal defendants in the securities class action styled: *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio, for purposes of preserving and enforcing rights to coverage under and recovery of the proceeds of the D&O Liability Insurance Policies.

47.    Without the foregoing modifications and additional information, the Disclosure

Statement does not provide adequate information and the Court should not grant approval.

**B.  The Disclosure Statement Does Not Explain how the RIDE Investor Group and the Putative Class Will Be Able To Pursue the Class Claim Against the Debtors to the Extent of Available Insurance Coverage**

48.     As discussed above, the Disclosure Statement does not disclose whether the claims of RIDE Investor Group and the Proposed Class against the Debtors will be preserved to the extent of available insurance coverage. This treatment implies that the RIDE Investor Group and the Putative Class will not be able to continue to litigate claims against the Debtors through the Securities Action, if applicable. As such, the Plan Injunction appears to bar the RIDE Investor Group and the Putative Class from doing so, and neither the Plan nor the Disclosure Statement describes any mechanism for the RIDE Investor Group and the Putative Class to pursue their Class Claims against the Debtors as defendants to access available insurance and liquidate their claims for purposes of pro rata distributions of insurance proceeds. The following language should be added to the end of Article V.K of the Plan:

> Nothing in this Plan or Confirmation Order shall (a) constitute a finding or stipulation that any proceeds of any of the D&O Liability Insurance Policies are property of the Estate; (b) modify or supersede any provision (including but not limited to any priority of payments provision) of any of the D&O Liability Insurance Policies, or (c) otherwise preclude the RIDE Investor Group and the Putative Class in the securities class action, styled: *Lim v. Hightower*, *et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio, or any party entitled to coverage under the D&O Liability Insurance Policies, from seeking and obtaining coverage thereunder.

**C.  The Disclosure Statement Omits Any Discussion of the Value the Debtors Expect To Be Able To Return To Holders of Claims and Interests**

49.     As stated herein, the Disclosure Statement provides no estimated amounts or ranges of recovery for the classes of Claims and Interests entitled to vote on the Plan.  The Common Stock Interests are not extinguished, but rather are presented as ***possibly*** receiving a distribution from the "Sources of Consideration for Distributions" described above.  Disclosure Statement, p. 38.  Yet, the Disclosure Statement virtually without numbers or ranges of recoveries.  It describes the cash

on hand as of the Petition Date and the estimated monthly burn rate as of the last week of August of 2023, but nothing has been proposed for the GUTC Claim Pool Amount, the list of secured claims, an estimate of professional fees, or a Schedule of Retained Causes of Action. Additionally, there is scant information about Insurance Policy recoveries, and, of course, the Foxconn Causes of Action remain speculative.

50.    Yet, the Debtors ask for Holders to accept a Plan and thereby bind themselves to the Releases when there is no actual consideration being offered or any information with which a reasonable Holder can decide if she would like to take the chance with the Debtors for some indeterminate recovery on her Claim or Interest. Additionally, as there is little information about what a Holder can actually receive, Holders may not vote at all, thereby "consenting" to the Releases in favor of the Debtors and third parties because they did not opt out on the Ballot.

51.    "In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. Ferretti, 128 at 19. Without significant modifications and additional information which will provide Holders with relevant information to assist them in deciding whether to accept or reject the Plan, his Disclosure Statement fails this test and therefore the Disclosure Statement should not be approved, and the Motion should be denied.

> **D. The Disclosure Statement Does Not Disclose Whether or how the Debtors Intend to Preserve Evidence Potentially Relevant to the Securities Action after the Sale or Effective Date of the Plan**

52.    Fact discovery in the Securities Action has not commenced and has been temporarily stayed under the PSLRA. As Debtor LMC is the issuer of securities that are the subject of the Securities Action and, given their involvement in the facts and circumstances alleged

therein, the Debtors undoubtedly have books, records, electronically stored information, and other evidence potentially relevant to the Securities Action in their possession, custody, and/or control.

53.     Section 78u-4 of the PSLRA mandates that

> Any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i). This mandatory requirement is subject to "sanction for willful violation." 15 U.S.C. § 78u-4(b)(3)(C)(ii). The Debtors are not presently parties to the Securities Action, but the Class Claims bases are founded thereunder, and thus the Debtors remain subject to the PSLRA's document preservation mandate. Continuing preservation of the Debtors' books, records, electronically stored information, and other items of evidence that are potentially relevant to the Securities Action post-confirmation is critical to avoid prejudice to the RIDE Investor Group and the Putative Class. However, the Plan does not contain, and the Disclosure Statement does not describe any requirement, that the Debtors take any action to preserve potentially relevant evidence, nor does the Disclosure Statement contain any explanation of what, if any measures, the Debtors intend to implement to ensure such evidence is retained and preserved through the completion of the Securities Action.

54.     Inclusion of the following provision in the Plan, along with a corresponding disclosure in the Disclosure Statement, would resolve the RIDE Investor Group's concerns with respect to the post-confirmation preservation of evidence that is potentially relevant to the Securities Action:

> Until the entry of a final and non-appealable order or judgment or settlement with respect to all defendants now or hereafter named in the securities class action styled: *Lim v. Hightower*, *et al.*, Case No. 23 Civ. 01454 (the "Lim Securities Action"), in

the United States District Court for the Northern District of Ohio, the Debtors, and any transferee or custodian of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object or other item of evidence relevant or potentially relevant to the Lim Securities Action, wherever stored (collectively, the "Potentially Relevant Books and Records"), shall preserve and maintain Potentially Relevant Books and Records as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records.

55.     Considering the foregoing deficiencies, the Disclosure Statement cannot be approved without appropriate amendments and supplementation. However, notwithstanding the foregoing, the Disclosure Statement indicates flaws in the Plan that are fatal to confirmation and warrant denial of the Disclosure Statement.

## II.    The Disclosure Statement Describes a Plan that is Unconfirmable on its Face

56.     Even in those cases where a disclosure statement fairly and accurately describes the plan, objection can properly be made at the disclosure statement stage if the plan is defective. "As serious violations of the Bankruptcy Code by a [plan proponent] can and should result in denial of confirmation of a plan . . . a disclosure statement pertaining to an unconfirmable plan is a futile undertaking and an improvident expenditure of judicial resources." In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 237 (Bankr. D.N.J. 2000); In re American Capital Equip., LLC, 688 F.3d 145, 153-54 (3d Cir. 2012); see also, U.S. Brass Corp., 194 B.R. at 422.

57.     Section 105 of the Bankruptcy Code permits the Court to control its own docket and decline to approve a disclosure statement when the plan it supports may not be confirmable. American Capital Equipment, 688 F.3d at 154. A plan is patently unconfirmable when "confirmation defects cannot be overcome by creditor voting" and the confirmation defects relate to "matters upon which all material facts are not in dispute or have been fully developed at the

disclosure statement hearing." Id. at 154-55. The RIDE Investor Group submits that the Plan is patently unconfirmable because the Releases are impermissible.

### A. The Releases Are Non-Consensual

58.    Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."   The Releases include non-debtors, including the officers and directors named as Defendants in the Securities Action.

59.    "While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties. Section 524(e) specifically limits the effect of a discharge." First Fid. Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993).

60.    When a release of liability of a non-debtor is a consensual provision [and] agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e). A voluntary, consensual release is not a discharge in bankruptcy…Where the creditor consents to the release, and presumably receives consideration in exchange for that agreement, it has not been forced by virtue of the discharge provisions of the code, to accept less than full value for its claim." In re Arrowmill Dev. Corp., 211 B.R. 497, 506 (Bankr. D.N.J. 1997).  To determine if a release is consensual, a "court must ascertain whether the creditor unambiguously manifested assent to the release of the nondebtor from liability on its debt." Id. at 507.

61.    A release where parties are required to take affirmative action in order not to give a release is not a consensual release. "Courts generally apply contract principles in deciding

whether a creditor consents to a third-party release." In re SunEdison, Inc., 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017).

62.    "As a general rule, an offeree does not need to reply to an offer, and his silence and inaction will not be construed as an assent to an offer." Corp. Serv. Co. v. Kroll Assocs., Inc., No. CIV.A.99C-12-210-JRS, 2001 WL 755934, at *4 (Del. Super. Ct. June 15, 2001) (relying on Chorba v. Davlisa Enter. Inc., Pa.Super., 450 A.2d 36, 39 (1982) ("silence will not constitute acceptance of an offer in the absence of a duty to speak"); 2 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 6:49 (4th ed.1991)).

63.    In SunEdison, the court applied New York contract law, noting that an offeror cannot transform an offeree's silence into acceptance when the offeree does not intend to accept the offer. SunEdison, 576 B.R. at 458. The only exceptions to this rule are (a) when the silence is misleading, (b) when silence as consent is supported by the parties' ongoing course of conduct, or (c) when the offeree accepts the benefits of the offer despite reasonable opportunity to reject and understand that the offeror expects compensation. Id. at 458-59.  The SunEdison court rejected this argument because the debtors failed to show that the nonvoting creditors' silence was misleading or that the nonvoting creditors silence signified their intention to consent to the release, finding that silence could easily be attributable to other causes.  Id.  The debtors did not contend that an ongoing course of conduct between themselves and the nonvoting creditors gave rise to a duty to speak. Id.  This Court can apply Delaware law, and arrive at a similar result, finding that the Releases are non-consensual because Ballots that are not returned or those that vote to reject the Plan but do not check the opt out box are "deemed" to consent to the Releases, drastically changing their rights vis-à-vis third parties and non-Debtors.

64.    Courts in this District have in fact held that to it looks to contract principles in determine consent:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties.

In re Emerge Energy Servs. LP, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (relying on Restatement (Second) of Contracts § 19 (Am. Law Inst. 1981); Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1045-48 (Del. 2014).

65.    Additionally, the Court can apply its own precedent that such an arrangement, binding voting holders of claims and interests to a third party release without affirmative consent is impermissible: "Failing to return a ballot is not a sufficient manifestation of consent to a third party release…the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases….Therefore, the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." In re Washington Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011) (Walrath, J.); see also In re Zenith Electronics Corp., 241 B.R. 92 (Bankr. D. Del. 1999) (Walrath, J) (finding that a release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the Plan).

66.    Judge Owens in this District has similarly "concluded that a waiver cannot be discerned through a party's silence or inaction unless specific circumstances are present. A party's receipt of a notice imposing an artificial opt-out requirement, the recipient's *possible* understanding

of the meaning and ramifications of such notice, and the recipient's failure to opt-out simply do

not qualify." Emerge Energy Servs. LP, 2019 WL 7634308, at *18 (emphasis in the original).

Therefore, the Court should find that the Releases are not consensual.

> **B. Non-Consensual Releases of Non-Debtors Are Impermissible in this Case and Make the Plan Patently Unconfirmable**

67.     This Court in Washington Mut. stated the law regarding non-consensual third-party

releases in the Third Circuit:

> Determining the fairness of a plan which includes the release of non-debtors
> requires the consideration of numerous factors and the conclusion is often
> dictated by the specific facts of the case. See, e.g., Gillman v. Continental
> Airlines (In re Continental Airlines), 203 F.3d 203, 212–14 (3d Cir. 2000)
> (finding that a non-consensual third party release of another third party was
> not valid under the specific facts of that case but concluding that it might be
> in other cases based on "fairness, necessity to the reorganization, and
> specific factual findings to support these conclusions"); In re Genesis
> Health Ventures, Inc., 266 B.R. 591, 608 (Bankr. D. Del. 2001) (finding
> that clauses in debtors' proposed plan purporting to relieve senior lenders'
> liability on third-party claims precluded plan confirmation absent a showing
> of extraordinary circumstances supporting non-consensual third-party
> releases);

Washington Mut., 442 B.R. at 345–46.  Therefore, if at all permissible, the Debtors would have to

demonstrate fairness, necessity to the reorganization, and extraordinary circumstances.

68.     Clearly the Debtors have not demonstrated these "hallmarks" of permissible non-

consensual releases.  The Plan is in essence a liquidating plan, where the Debtors will remain alive

solely for the purpose of selling their assets and pursuing litigation.  There is no reorganization

effort in these cases, and therefore third-party directors and officers and their Affiliates have no

role in reorganizing an ongoing concern.[8]  See Continental Airlines, 203 F.3d at 215 (noting there

---

[8]    As noted herein, the hearing on the sale of substantially all of the Debtors' assets is set for the same date and time as the Hearing Date for approval of the Disclosure Statement and the Motion.  This very practically demonstrates that the third-party directors and officers will not be involved in the Debtors' business or reorganization efforts going forward as the Debtors are attempting to liquidate rapidly.

should be findings regarding the necessity of releases, such as that the success of the reorganization was related to the releases, or non-debtors made a critical financial contribution necessary to make the plan feasible).

69.     Additionally, it would be entirely unfair to claimants in these cases to not be able to pursue claims against defendants who have not themselves received discharges, while the Debtors liquidate and pursue litigation.  As stated herein, at no point does the Plan propose to provide consideration to impaired Claims and Interests.  The Class 7 Interests, being the last to receive a recovery other than subordinated claims and interests (such subordination being subject to an order of the Court), have no guarantee of any recovery – indeed, as is well known, application of the absolute priority rule generally leaves equity with nothing after distributions to creditors under a plan.  The Debtors must demonstrate that the Releases are fair and given in exchange for reasonable compensation.  See id. (requiring findings of reasonable consideration when examining fairness to claimants).

70.     Even if the Court were to find that, in this case, the Debtors have demonstrated that the "hallmarks" of fairness, necessity, and specific factual findings supporting the Releases were present, it must be noted in this Objection that, despite many years of disagreement between the Circuit Courts of Appeals regarding the permissibility of non-consensual third party releases, the U.S. Supreme Court will determine the issue in the coming months and has stayed a decision in a high profile case that approved non-consensual third-party releases.  On May 30, 2023, in the Purdue Pharma L.P. case, the Second Circuit reversed the District Court for the Southern District of New York, which had vacated the Bankruptcy Court's order approving Purdue Pharma's Chapter 11 plan of reorganization containing nonconsensual third-party releases. In Re Purdue Pharma L.P., 69 F.4th 45 (2d Cir. 2023). The Second Circuit found that there is authority under

Sections 105(a) and 1123(b)(6) of the Bankruptcy Code to approve nonconsensual third-party releases, and that the debtor's plan met the criteria for approval. However, on application of the U.S. Trustee to the U.S. Supreme Court for a stay of the Second Circuit's mandate, the Supreme Court ordered that the decision would, in fact, be stayed, and (as requested in the application) granted a writ of *certiorari* to determine the following: "Whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent." Oral argument is scheduled for December 2023. Harrington v. Purdue Pharma L.P., No. (23A87), 2023 WL 5116031, at *1 (U.S. Aug. 10, 2023).

71.     In sum, these Releases are impermissible Plan provisions, and such "defects cannot be overcome by creditor voting" and the Plan defects relate to "matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." American Capital Equipment, 688 F.3d at 154-55. As such, the Debtors have submitted a patently unconfirmable Plan, and therefore the Disclosure Statement should not be approved, and the Motion should be denied.

**RESERVATION OF RIGHTS**

72.     Neither the filing of this Objection nor anything contained herein are intended to limit, prejudice, or otherwise impact any rights of RIDE Investor Group or the Putative Class in connection with the filing, solicitation, or confirmation of the Plan (or any other plan) or approval of the Disclosure Statement and Solicitation Procedures. The RIDE Investor Group, on behalf of itself and the Putative Class, hereby reserves all such rights, including but not limited to the rights to (a) object on any and all grounds to (i) approval of the Disclosure Statement and Solicitation Procedures for the Plan and (ii) confirmation of the Plan, on any basis, including but not limited

to the fact that this Court lacks constitutional adjudicatory authority pursuant to <u>Stern v. Marshall</u>, 564 U.S. 462 (2011) and its progeny to approve a release of the claims of the RIDE Investor Group and the Putative Class against non-debtor defendants, (b) take any other action permitted or required under the Bankruptcy Code and other applicable law, on behalf of itself and the Putative Class, and (c) seek, on behalf of itself and the Putative Class, any other relief in connection with the foregoing.

73.     **For the avoidance of doubt, the RIDE Investor Group, for itself and the Putative Class, DOES NOT CONSENT, AND EXPRESSLY OBJECTS, to (a) the Releases contained in the Plan in favor of non-Debtor officer and director Defendants in the Securities Action (or other such directors, officers, or other defendants as may be joined), and (b) the Court's entry of any final order or judgment that this Court lacks jurisdiction or statutory and/or constitutional adjudicatory authority to enter without the affirmative and knowing consent of all parties affected thereby.**

## CONCLUSION

74.     Wherefore the RIDE Investor Group respectfully requests that the Court deny the relief requested in the Motion and grant the RIDE Investor Group and the Putative Class such other relief as the Cort deems appropriate and just.

Dated: October 6, 2023

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (#4167)
**HOGAN McDANIEL**
1311 Delaware Avenue
Wilmington, DE 19806
Tel: (302) 656-7540
gfmcdaniel@dkhogan.com

*- and –*

**FISHMAN HAYGOOD LLP**
Tristan Manthey (*pro hac vice* pending)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Tel: (504) 586-5252
Fax: (504) 586-5250
tmanthey@fishmanhaygood.com

***Bankruptcy Counsel for the Lead Plaintiff Movant RIDE Investor Group and the Putative Class***

**KIRBY McINERNEY LLP**
Ira M. Press (*pro hac vice* pending)
250 Park Avenue, Suite 820
New York, NY 10177
Tel: (212) 371-6600
Email: ipress@kmllp.com
lmolinaro@kmllp.com

***Counsel for Lead Plaintiff Movant RIDE Investor Group and Proposed Lead Counsel for the Putative Class***