# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> LORDSTOWN MOTORS CORP., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-10831 (MFW) <br> (Jointly Administered) <br><br> Re:  D.I. 360, 361 & 467 <br><br> **Hearing date: Oct. 18, 2023, at 10:30 a.m.** <br> **Objection deadline: Oct. 6, 2023 (extended for UST to Oct. 10 at 4:00 p.m.)** |

## OBJECTION OF THE UNITED STATES TRUSTEE TO APPROVAL OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), objects to the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Hearing Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 467] (the "Motion"), and in support of his objection respectfully states:

### PRELIMINARY STATEMENT

1.     The Court should deny the Motion unless the Debtors change the plan's third-party releases from opt-out to opt-in and modify the solicitation procedures accordingly.

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

Releases by parties who fail to object or opt out are not consensual. This issue should be addressed now, so that the ballots can incorporate any opt-in mechanism the Court requires.[2]

2. It appears the Debtors' current directors would receive third-party releases under the plan, even though five of the nine current directors are defendants in pending shareholder derivative litigation. Any such third-party releases should be consensual and should receive close scrutiny in light of the extensive pre-petition litigation involving the Debtors and their current and former directors and officers. *See* Disclosure Statement § II.E.1.

## JURISDICTION AND STANDING

3. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). One of the U.S. Trustee's duties is to supervise the administration of chapter 11 cases by, whenever he considers it appropriate, "monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under

---

[2] In addition to the points raised in this objection, the U.S. Trustee's counsel sent other informal comments to Debtors' counsel about the Plan, Disclosure Statement, form of solicitation procedures order, and related notices, and anticipates those items will be resolved before the hearing. The U.S. Trustee reserves the right to supplement this objection, or to assert additional objections at the hearing on the Motion, if such modifications are not made. The U.S. Trustee also preserves, reserves, and retains any and all rights, duties, obligations and remedies found at law, equity or otherwise to, *inter alia*, revise, augment and/or modify this objection, take discovery, and object to plan confirmation.

sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements[.]" 28 U.S.C. § 586(a)(3)(B).

5. The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

6. On June 26, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court. The Debtors have designed and engineered an all-electric pickup truck called the Endurance. *See* D.I. 15 ¶ 2.

7. On July 11, 2023, the U.S. Trustee appointed an official committee of unsecured creditors in the Debtors' cases. *See* D.I. 96 & 99.

8. On September 1, 2023, the Debtors filed the *Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 360] (the "Plan"). The Debtors also filed the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 361] (the "Disclosure Statement").

9. On September 7, 2023, the U.S. Trustee appointed an official committee of equity security holders in the Debtors' cases. *See* D.I. 375.

10. The Plan and Motion seek to impose third-party releases on (i) unclassified and unimpaired creditors who fail to object; (ii) creditors and shareholders who vote to accept the Plan; and (iii) creditors and shareholders who vote to reject the Plan but fail to opt-out. The Plan defines "Releasing Party" to mean:

> each of the following in their capacity as such: (i) all Holders of Unimpaired Claims or Interests ***who do not File a timely objection*** to the third party releases provided for in Article VIII.D; (ii) all

>Holders of Administrative Claims and Priority Tax Claims that do not hold Claims or Interests in any Class ***that do not File a timely objection*** to the third party releases provided for in Article VIII.D; (iii) all Holders of Claims or Interests that vote to accept the Plan; (iv) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and ***do not affirmatively opt out*** of the third party releases provided for in Article VIII.D by checking the box on the applicable Ballot or form indicating that they opt not to grant such releases in the Plan submitted on or before the Voting Deadline; and (v) with respect to each of the foregoing Entities in clauses (i) through (v), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such.

Plan § I.A.108 (emphasis added).

11. Article VIII.D of the Plan seeks to impose third-party releases on the Releasing Parties. The releases would cover "any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition)," but would not release claims for acts or omissions constituting actual fraud, willful misconduct, or gross negligence. Plan § VIII.D.

12. The Debtors' directors and officers who served solely pre-petition would not receive third-party releases. However, directors and officers who have served post-petition would receive third-party releases.[3]

---

[3] Under Plan § VIII.D, each "Released Party" would receive a third-party release. Plan § I.A.107 defines "Released Party" to include the Debtors, their "current and former Affiliates and their respective current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees . . . *provided that*, notwithstanding anything in the foregoing, any Person or Entity that is an Excluded Party shall not be a Released Party[.]" Plan § I.A.49 defines "Excluded Parties" to mean "Foxconn, the Former

13. Five of the Debtors' nine current directors, who would apparently receive third-party releases, are defendants in pre-petition securities litigation involving the Debtors. Specifically, David Hamamoto, Keith Feldman, Jane Reiss, Dale Spencer, and Angela Strand are current board members who signed the chapter 11 petitions for Lordstown Motors Corp. and Lordstown EV Corp. *See* D.I. 1 at 13-14 of 22.

14. Those five current board members are also defendants in the following three lawsuits:

- *Thai v. Burns et al.*, 4:21-cv-1267 (N.D. Ohio) (shareholder derivative suit filed on behalf of Lordstown Motors Corp. against nineteen D&O defendants asserting violations of securities laws, breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets).

- *In re Lordstown Motors Corp. Shareholder Derivative Litigation*, 21-cv-604 (D. Del.) (four consolidated shareholder derivative lawsuits filed on behalf of Lordstown Motors Corp. against certain D&O defendants asserting violations of securities laws, breach of fiduciary duty, insider selling, and unjust enrichment).

- *In re Lordstown Motors Corp. Stockholder Derivative Litigation*, 2021-1049 (LWW) (Del. Chancery) (two consolidated shareholder derivative

---

Directors and Officers and the other Persons or Entities identified in the Plan Supplement." Plan § I.A.56 defines "Former Directors and Officers" to mean "any officers and directors of the Debtors other than Chapter 11 Directors and Officers." Plan § I.A.19 defines "Chapter 11 Directors and Officers" to mean "any person that served in the capacity as a director or officer of the Debtors at any time from the Petition Date through the Effective Date."

suits asserting claims for breach of fiduciary duty and unjust enrichment against certain D&O defendants).

*See Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 15] ¶ 55 nn.13, 15 & 17.

15. Thus, it appears that current directors David Hamamoto, Keith Feldman, Jane Reiss, Dale Spencer, and Angela Strand meet the definition of "Released Parties" and would receive third-party releases under the Plan.

16. The proposed ballots for classes 3 (general unsecured trade claims), 4 (other unsecured claims), and 7 (common stock) contain opt-out boxes. The ballots also contain the Plan's definition of "Releasing Party" (including its reference to the proposed opt-out procedure). The form of confirmation hearing notice likewise references the opt-out procedure. *See* Motion Ex. 3.

## ARGUMENT

17. The Court should deny the Motion because the Debtors are seeking approval of solicitation procedures that would impose third-party releases via an opt-out or failure to object, versus an opt-in. Such releases are not consensual and render the Plan unconfirmable. The Court should require the Debtors to incorporate an opt-in mechanism into the Plan and solicitation procedures before solicitation occurs.

18. If a plan is patently unconfirmable on its face, the application to approve the accompanying disclosure statement should be denied. *See In re Quigley Co.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) *(citing In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.) *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr.

S.D.N.Y. 1990)). "A plan is patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012) (citation omitted). As demonstrated below, the Plan is patently unconfirmable, and therefore the Disclosure Statement and solicitation procedures should not be approved.

### A. *The Proposed Third-Party Releases are Not Consensual*

19. The Plan includes third-party releases that are non-consensual, and the Motion seeks approval of solicitation procedures that would implement the releases. The releases would be imposed on (i) unclassified and unimpaired claimants who do not object to the third-party releases; (ii) all creditors and shareholders who vote to accept the plan, without any ability to opt in or out; and (ii) all creditors and shareholders who vote to reject the Plan and do not opt-out. *See* Plan §§ I.A.108 & VIII.D. These releases are not predicated on the affected parties' affirmative consent and, thus, are non-consensual.

20. To the extent releases are being imposed on parties without their affirmative consent, they are non-consensual. *See In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third-party release."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *Emerge Energy Servs. LP*, Case No. 19-11563, 2019 Bankr.

7

LEXIS 3717, *52 (Bankr. D. Del., Dec. 5, 2019) (consent to give third-party releases cannot be inferred "by the failure of a creditor or equity holder to return a ballot or Opt-Out Form"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *see also Joel Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 688 (E.D. Va. 2022) (holding that "the Bankruptcy Court erred both factually and legally in finding the Third-Party Releases to be consensual.  Failure to opt out, without more, cannot form the basis of consent to the release of a claim."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) (under principles of New York contract law, a creditor could not be deemed to consent to third-party releases merely by failing to object to the plan, even when the disclosure statement made it clear that such a consequence would result); *In re Chassix Holdings*, 533 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2015) (limiting third party releases to those who voted to accept the plan, or affirmatively elected to provide releases; consent would not be deemed from creditors who failed to return a ballot, or from unimpaired creditors).

21.     Not all decisions from this District have required affirmative consent for third-party releases.  In *In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013), this Court reached a different conclusion than that of *Emerge*, *Washington Mutual*, and the other cases cited above, concerning the need for affirmative consent to third party releases.  And in *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del. 2010), the Court held that affirmative consent was not required, but only as to releases being given by unimpaired classes

who were "being paid in full." *Id.* at 144.[4] The Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan "does not pass muster under *Continental*." *Id.* at 145.[5]

22. In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022), this Court allowed third-party releases to be imposed on mass tort claimnats without the opportunity to opt out, as well as on certain other classes of creditors and equity holders who were provided the ability to opt out, holding that the imposition of such releases was permissible under *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), because of the mass tort context of the case. *See id.* at 873, 881; *see also In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504, 674, 678 (Bankr. D. Del. 2022) (approving an opt-out process for third-party releases in a mass tort case, but noting that the definition of parties giving such releases did not include any "claimant who abstains from voting"). However, here, the Debtors' cases are not mass tort cases. The Debtors are an electric vehicle manufacturer that failed to produce their flagship vehicle.

23. Requiring affirmative consent from creditors to release their direct claims against non-debtors is the only way to ensure there is true consent, rather than consent assumed by silence, as silence could be caused by factors such as "carelessness, inattentiveness, or mistake," as recognized by this Court in *Emerge*, 2019 Bankr. LEXIS 3717 at *53. Similarly,

---

[4] Although not a reported decision, this Court's ruling in *In re Kettner Investments, LLC*, Case No. 20-12366 (KBO), on February 15, 2022 [transcript – D.I. 298] denied confirmation of a proposed plan of reorganization because it deemed third-party releases to be given by creditors and interest holders in unimpaired classes, as well as by related parties to such creditors, without obtaining their affirmative consent.

[5] The same will be true here as to the lead Debtor's shareholders in class 8, which are deemed to reject the Plan.

9

silence in response to a written solicitation regarding a release could be caused by a package being misdelivered, post-office failures, or other unforeseen issues.

24. Further, creditors and interest holders who vote to reject the Plan should not be required to take the redundant step of opting out of the third-party releases. The Plan provides: "The compromises, settlements, and **releases** described herein shall be deemed nonseverable from each other and from all other terms of the Plan." Plan § VIII.A. Thus, any vote to reject the Plan necessarily entails rejection of the third-party releases contained in it.

25. Finally, unimpaired or unclassified creditors who do not object should not be deemed to consent to the third-party releases, because the claims subject to the third-party release appear to be much broader than simply those creditors' claims against the Debtors. Article VIII.D would release the Released Parties

> from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether ***known or unknown***, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, ***based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition) . . . or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case whether prepetition or postpetition) related or relating to the foregoing.***

Plan § VIII.D (emphasis added). This release would not release claims for actual fraud, willful misconduct, or gross negligence. But as long as any other claim has some connection to the Debtors, it could be released, even if the releasing creditor is not being paid on that claim in the bankruptcy case. Given the pending litigation against certain current directors of the Debtors,

unimpaired and unclassified creditors should not be deemed to consent to the third-party releases simply because they do not object. *See In re Washington Mut., Inc.*, 442 B.R. at 355 (holding that opt-out was "not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)."); *In re Chassix Holdings, Inc.*, 533 B.R. at 80-81 (rejecting proposed inclusion of unimpaired creditors as releasing parties); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 270 (Bankr. S.D.N.Y. 2014) (classifying party as unimpaired does not, in itself, make releases that that party would give consensual); *but see In re Indianapolis Downs, LLC*, 486 B.R. at 305-06 (approving releases by unimpaired creditors) *and In re Spansion, Inc.*, 426 B.R. at 144 (approving releases by unimpaired classes where they were being paid in full and had received adequate consideration for release, and no creditors objected to releases).

26. Under the holdings of *Emerge Energy*, *Washington Mutual*, and other cases cited above, consent cannot be inferred from the affected parties' failure to opt out or object. Therefore, imposing third-party releases on the affected parties is non-consensual.

**B.  *The Plan Does Not Meet the Requirements for Non-Consensual Releases***

27. The Plan does not satisfy the exacting standards for approval of non-consensual third-party releases.

28. In *Continental*, the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third-party release is permissible. The Court acknowledged that some Circuits do not allow such non-consensual releases under any circumstances. *See In re Continental Airlines*, 203 F.3d at 212. Other circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases." *Id.* at 212-13 (citing Second

Circuit cases where releases were upheld for "widespread claims against co-liable parties" and a Fourth Circuit mass tort case). "A central focus of these three reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties. Substantial debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible." *Id.* at 213; *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (noting a third-party release may be granted "only in rare cases").

29. The Third Circuit in *Continental* ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against debtors' directors and officers, did "not pass muster under even the most flexible test for the validity of non-debtor releases." 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214 n.11. However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and specific factual findings to support these conclusions[.]" *Id.* at 214.

30. The Third Circuit referenced *Continental* in *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), as one of the precedents, along with *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011), regarding non-consensual third-party releases. The Third Circuit indicated that these decisions "set forth *exacting standards* that must be satisfied if such releases and injunctions are to be permitted." 945 F.3d at 139 (emphasis added).

31. In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court held that a clause in the plan which released claims of any creditors or equity holders against the senior lenders for any act or omission in connection with the bankruptcy cases and

reorganization process required factual showings under *Continental* – that the releases were necessary for the reorganization and were given in exchange for fair consideration. *See id.* at 607. The Court elaborated that "necessity" under *Continental* requires a showing: (a) that the success of the debtors' reorganization bears a relationship to the release of the non-consensual non-debtor parties and (b) that the non-debtor parties being released from liability have provided "a critical financial contribution to the debtors' plan" in exchange for the receipt of the release. *See id.* at 607. A financial contribution is considered "critical" if, without the contribution, the debtors' plan would be infeasible. *See id.* Fairness of a release is determined by examining whether non-consenting non-debtors are receiving reasonable consideration in exchange for the release. *See id.* at 608; *see also In re Spansion, Inc.*, 426 B.R. at 144.

32. The *Genesis* Court found that the senior lenders had made a financial contribution to the plan, which allowed the debtors to make the 7.34% distribution to the unsecured creditors, who otherwise would be "out of the money." *Id.* at 608. Ultimately, though, the Court found that such contribution was not enough, because "even if the threshold *Continental* criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied by these facts . . . [the] financial restructuring plan under consideration here would not present the *extraordinary circumstances* required to meet even the most flexible test for third party releases." *Id.* (emphasis added).

33. Here, nothing in the record or the Plan indicates "extraordinary circumstances" exist, or that that the high threshold necessary for approval of non-consensual third-party releases has been met with respect to each of the non-debtor parties that would receive the releases. As to the first *Continental* requirement, it is unclear what, if any, "necessity to the reorganization" such non-consensual releases have. The Debtors are in the process of selling

substantially all of their assets. Article V.B of the Plan would authorize the Debtors to "conduct new business without supervision by the Bankruptcy Court[.]" But it is not clear the post-effective date Debtors will have any capital with which to actually conduct a business. In other words, the Plan appears to be a plan of liquidation. *Cf.* Plan § V.B "the Post-Effective Date Debtors and the Claims Administrator, as applicable, shall be authorized to . . . liquidate the Debtors' remaining Assets into Cash[.]" In a liquidation, third-party releases would not be necessary to the reorganization because there would be no reorganization. *See*, *e.g.*, *In re Nickels Midway Pier, LLC*, No. 03-49462, 2010 WL 2034542 at *13 (Bankr. D.N.J. May 21, 2010) (rejecting non-consensual third-party releases in favor of creditor: "The Plan provides for liquidation, which can be successfully accomplished whether or not [the creditor] is released from third parties' claims.").

34. As to the second *Continental* requirement, that the releases be given "in exchange for fair consideration," there is no showing that affected creditors and shareholders are receiving reasonable consideration in exchange for giving the release (as distinct from consideration in exchange for their claims against or interests in the Debtors). *See In re Spansion, Inc.*, 426 B.R. at 144. Not is it apparent what consideration the released parties are providing in exchange for the release. The releases are not supported by fair consideration.

35. For these reasons, the fairness and necessity hallmarks specified in *Continental* appear to be absent here. Whether these hallmarks are satisfied can be fully developed at the Disclosure Statement hearing. Voting results cannot cure the problem as to unclassified or unimpaired creditors because those creditors are not voting and are not part of the voting results. Voting results cannot cure the problem as to creditors and shareholders who vote to accept because the Plan would give them no ability not to give the release. Voting results

could not cure the problem as to creditors and shareholders who vote to reject unless all such creditors and shareholders took the redundant step of opting out. Therefore, the Plan cannot be confirmed with the inclusion of the nonconsensual third-party releases. *See Continental*, 203 F.3d at 214 n.11; *In re Am. Cap. Equip., LLC*, 688 F.3d at 154-55.

36. Given the extensive pre-petition litigation involving the Debtors' current and former directors and officers, *see, e.g.*, Disclosure Statement § II.E.1 *and Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 15] ¶ 55, any third-party releases should receive close scrutiny. *See PWS Holding*, 228 F.3d at 245-46 ("§ 524(e) makes clear that a discharge in bankruptcy does not extinguish claims by third parties against guarantors or directors and officers of the debtor for the debt discharged in bankruptcy."); *Continental*, 203 F.3d at 215 ("[W]e have found no evidence that the non-debtor D & Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability"); *Washington Mut.*, 442 B.R. at 354 ("[T]here is no basis for granting third party releases of the Debtors' officers and directors, even if it is limited to their post-petition activity. The only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan. Those activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated); they are insufficient to warrant such broad releases of any claims third parties may have against them. . . .").

## **CONCLUSION**

37. The U.S. Trustee respectfully requests that the Court deny the Motion unless the Debtors (i) change the opt-out mechanism to an opt-in (and modify the ballots accordingly); and (ii) revise the Plan's definition of "Releasing Party" in § I.A.108 to provide:

"***Releasing Party***" means each of the following in their capacity as such: (i) all Holders of Unimpaired Claims or Interests who ~~do not File a timely objection~~ opt in to the third party releases provided for in Article VIII.D; (ii) all Holders of Administrative Claims and Priority Tax Claims that do not hold Claims or Interests in any Class and that ~~do not File a timely objection~~ opt in to the third party releases provided for in Article VIII.D; (iii) all Holders of Claims or Interests that vote to accept the Plan and that opt in to the third party releases provided for in Article VIII.D; (iv) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and ~~do not affirmatively opt out of~~ who opt in to the third party releases provided for in Article VIII.D ~~by checking the box on the applicable Ballot or form indicating that they opt not to grant such releases in the Plan submitted on or before the Voting Deadline~~; and (v) with respect to each of the foregoing Entities in clauses (i) through ~~(v)~~(iv), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such, provided, however, that the Entities identified in part (v) shall be Releasing Parties only to the extent the corresponding Entities in parts (i)-(iv) are legally entitled to bind such Entities in part (v) to the releases contained in the Plan under applicable non-bankruptcy law.

38. The U.S. Trustee reserves all of his rights to object to confirmation on any and all grounds, and to take discovery regarding the present matter.

WHEREFORE, the U.S. Trustee respectfully asks that this Court deny the Motion and grant such other relief as the Court deems fair and just.


Dated: October 10, 2023
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov