## **EXHIBIT C**

Blackline to Proposed Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-10831 (MFW) |
| Lordstown Motors Corp., *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Re: Docket Nos. 16, 237, ~~[ ]~~280, 338, 349, 368, 389, 418, 424, 425, 434, 475, 482, 484, 486,488, 492, 519, 540, 542, 545** |

### ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH; (IV) AUTHORIZING THE SALE TRANSACTION; AND (V) GRANTING RELATED RELIEF

Upon the motion [D.I. 16] (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for entry of an order (this "**Order**"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006(a), 9006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i) authorizing and approving the entry into and performance under the terms and conditions of that certain Asset Purchase Agreement, dated as

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).  The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as defined herein) or the Bidding Procedures Order (as defined herein).

of [●]September 29, 2023 (including the exhibits and schedules, and as amended, supplemented, amended and restated or otherwise modified from time to time, the "**Asset Purchase Agreement**") by and among LAS Capital LLC (thetogether with the Assignee (pursuant to the assignment of the Asset Purchase Agreement described in Paragraph H below) and any designee, the "**Buyer**") and the Debtors; (ii) authorizing the assumption and assignment of certain executory contracts (the "**Assumed Contracts**") pursuant to the Asset Purchase Agreement; (iii) approving the sale of certain assets of the Debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") as set forth in Section 2.1 of the Asset Purchase Agreement (the "**Purchased Assets**") free and clear of all liens, claims, encumbrances and other interests in accordance with and subject to the terms and conditions contained in the Asset Purchase Agreement and this Order; (iv) authorizing the consummation of the sale and each of the transactions contemplated by the Asset Purchase Agreement and this Order (the "**Sale Transaction**"); and (v) granting related relief; and upon the *Declaration of* [●]*Stephen S. Burns in Support of the Debtors' Proposed Sale Motionof Certain Assets* [D.I. [●]] (the "[●]**Burns Declaration**"); and upon the *Declaration of Ryan Hamilton in Support of the Debtors' Proposed Sale of Certain Assets* [D.I. [●]] (the "**Hamilton** Declaration"); and the United States Bankruptcy Court for the District of Delaware (the "**Court**") having entered an order on August 8, 2023 [D.I. 237] (the "**Bidding Procedures Order**") approving, among other things, the dates, deadlines, and bidding procedures (as the same have been amended, modified or extended from time to time in accordance with the terms of the Bidding Procedures Order and the Asset Purchase Agreement, as applicable, the "**Bidding Procedures**") with respect to, and notice of, the proposed sale of substantially all the assets of the Debtors; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other

2

or further notice need be provided; and the Court having held a hearing on October 18, 2023 (the "**Sale Hearing**") to approve the Sale Transaction; and the Court having reviewed and considered (a) the relief sought in the Motion with respect to the Sale Transaction, (b) the objections to the Motion or the Sale Transaction, (c) all other pleadings filed in support of the Motion, and (d) the arguments of counsel, and the evidence proffered or adduced at the Sale Hearing and any other hearing related to the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Sale Transaction and the other relief requested in the Motion; and it appearing that the relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, creditors and other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby,

**FOUND, DETERMINED, AND CONCLUDED THAT:**[3]

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and (N) that the Court can decide by a final order under the United States Constitution.  Venue of these Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. §158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made

---

[3]    The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in, and good and sufficient cause for, the immediate implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.    <u>Legal Predicates</u>.  The predicates for the relief requested by this Motion are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006(a), 9006, 9007, 9008 and 9014 and applicable Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.    <u>Petition Date</u>.  On June 27, 2023 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

E.    ~~Committee~~Committees.  The Office of the United States Trustee for the District of Delaware appointed (i) the official committee of unsecured creditors on July 11, 2023 (the "**Creditors' Committee**"), and (ii) the official committee of equity security holders on September 7, 2023, for these Chapter 11 Cases (together with the Creditors Committee, the "**Committees**").  No trustee or examiner has been appointed in these Chapter 11 Cases.

F.    <u>Bidding Procedures Order</u>.  On August 8, 2023, this Court entered the Bidding Procedures Order (i) approving the Bidding Procedures; (ii) authorizing, but not directing, the Debtors to designate one or more Stalking Horse Bidder(s) and approving procedures to seek approval of Bid Protections; (iii) scheduling the Auction and Sale Hearing; (iv) approving the form and manner of notice of the Bidding Procedures, the Bid Deadline, the Auction, the

4

deadline to object to the sale, and all other relevant procedures, protections, schedules and agreements; (v) establishing the Assumption and Assignment Procedures, including notice of proposed cure amounts (the "**Cure Amounts**") and relevant objection deadlines; and (vi) granting related relief.  No appeal, motion to reconsider or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court.  The Bidding Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

G.    Compliance with Bidding Procedures Order.  As demonstrated by (i) the [●]Burns Declaration and Hamilton Declaration, (ii) the other testimony and evidence proffered or adduced at the Sale Hearing, if any, and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the sale process, [including the Auction] was duly noticed and conducted in a non-collusive, fair, and good faith manner.  The Debtors have afforded all potential buyers a full and fair opportunity to make higher and better offers than the Asset Purchase Agreement.  The Buyer has acted in good faith, in a non-collusive manner and in compliance with the terms of the Bidding Procedures.  In accordance with the Bidding Procedures, the Debtors determined that the bid submitted by the Buyer and memorialized by the Asset Purchase Agreement is the Successful Bid.  The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

5

H.      *Assignment of Asset Purchase Agreement.*  The Buyer has or will have assigned prior to the Closing its rights under the Asset Purchase Agreement in accordance with Section 10.4 of the Asset Purchase Agreement, to LandX Motors Inc., a Delaware Corporation (the "**Assignee**").  All references to the Buyer in this Order shall include reference to the Assignee.

I.      *Sale of Certain Assets.*  Pursuant to the Asset Purchase Agreement, the Buyer shall purchase the Purchased Assets and assume the Assumed Liabilities as part of the Sale Transaction. The Debtors maintain all of their existing rights, title, and interest to, all assets, rights and properties that are not specifically identified for inclusion in the Purchased Assets, including the Excluded Assets.

J.      H. Buyer's Disclosure.  Buyer disclosed to the Debtors in its Bid all information required by the Bid Procedures concerning the identity of Buyer and its affiliates. *Burns Declaration* at ¶¶ 4-7; *Hamilton Declaration* at ¶¶ 11-13.  Following its assignment of the Asset Purchase Agreement to the Assignee, Buyer disclosed to the Debtors all information concerning the identity of the Assignee.  *Burns Declaration* at ¶ 7.  Buyer's disclosures comply with the disclosure requirements of the Bid Procedures and are sufficient to provide the Debtors and the Committee complete and accurate information concerning all material connections between the Buyer, its Assignee and the Debtors, its affiliates and their respective current or former directors and officers.  Buyer's disclosures establish that (i) the majority equityholder of the Buyer (the "**Buyer Majority Equityholder**") is the founder and was the Chief Executive Officer of Lordstown Motors Corp., and (ii) one of the indirect managers of Buyer (the "**Buyer Manager**") was the Chief Financial Officer of Lordstown Motors Corp.  Each of the Buyer Majority Equityholder and Buyer Manager resigned from his respective position and ceased being an employee of Lordstown Motors Corp. on June 14, 2021 (the "**Resignation Date**").

6

Buyer's disclosure established that it has assigned its rights under section 10.4 of the Asset Purchase Agreement, including its rights to be assigned Assumed Agreements (as defined in the Asset Purchase Agreement), to Assignee, which is an Affiliate of Buyer (as defined in the Asset Purchase Agreement) and Assignee.  Buyer's disclosures establish that (i) the Buyer Majority Equityholder is the majority equity holder of the Assignee, and (ii) the Buyer Manager is a shareholder of the Assignee.

K.    I.  *Notice.*  As evidenced by the affidavits of service and publication previously filed with the Court [D.I.s 100, 270, 350, 353, 369, 415, —530, 547, 548, 553], and based on the record at the Sale Hearing, including representations of counsel, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale Transaction, and the relevant objection deadlines, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount and the assumption and assignment of the Assumed Contracts), the designation rights set forth in Section 2.5 of the Asset Purchase Agreement, and the Cure Amounts has been provided in accordance with sections 102(l), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules, and in compliance with the Bidding Procedures Order to each party entitled to such notice, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale Transaction, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount), the assumption and assignment of the Assumed Contracts (including the designation rights set forth in Section 2.5 and the assignment rights set forth in Section 10.4 of the Asset Purchase Agreement), or the Cure Amounts is or shall be required.  With respect to

AMERICAS 124485826

entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice once in the national edition of *The Wall Street Journal* on August 11, 2023, and the *Automotive News* on August 14, 2023, and the posting of the Sale Notice on the Debtors' restructuring website was each sufficient and reasonably calculated under the circumstances to reach such entities.  [D.I. 344].

L.        J. Notice of the Debtors' assumption, assignment, transfer, and/or sale to the Buyer of the Assumed Contracts, together with the Debtors' *Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale and Cure Costs* [D.I. 280], *Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 482], and *Second Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 492], and *Certificate of Service regarding the Notice of Successful Bidder's Assignment of Asset Purchase Agreement* [D.I. 553] (together, the "**Cure Notices**"), pursuant to the Asset Purchase Agreement has been provided to the counterparties for such Assumed Contracts.  As to each Assumed Contract, the Cure Amount set forth in the Asset Purchase Agreement, is sufficient for the Debtors to comply fully with the requirements of sections 365(b)(1)(A) and (B) of the Bankruptcy Code.  Each of the non-Debtor parties to the Assumed Contracts has had a fair and reasonable opportunity to object to the Cure Amounts set forth in the Cure Notices, subject to the applicable objection deadline provided in the Bidding Procedures Order.

M.        K. Corporate Authority.  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and hereby (collectively, the "**Transaction Documents**"), and the Sale Transaction has been duly and

8

validly authorized by all necessary corporate action of each of the applicable Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by this Order and the Transaction Documents, (iii) has taken all corporate action and formalities necessary to authorize and approve the Transaction Documents and the Debtors' consummation of the transactions contemplated thereby and hereby, including as required by their respective organizational documents, (iv) has duly executed and delivered the Asset Purchase Agreement, and (v) no government, regulatory or other consents or approvals, other than those expressly provided for in the Transaction Documents, if any, are required for the Debtors to enter into the Transaction Documents, to consummate the Sale Transaction, or to perform their obligations under the Transaction Documents.  The consummation of the Sale Transaction and performance under the Transaction Documents do not violate or conflict with any applicable law.

N.    ~~L.~~ Opportunity to Object.  A fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, has been given to all interested persons and entities, including the following: (i) all counterparties to the Assumed Contracts, (ii) all known parties holding or asserting Interests on, in, or against the Purchased Assets, (iii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (iv) all applicable federal, state, and local taxing and regulatory authorities.

O.    ~~M.~~ Sale in Best Interest.  Approval of the Motion and the Transaction Documents, and the consummation of the sale of the Purchased Assets pursuant to the Asset Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

P.    ~~N.~~ Business Judgment.    Sound business reasons exist for the Sale Transaction.  Entry into the Transaction Documents, and the consummation of the transactions

9

contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts, constitutes an exercise of the Debtors' sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest.  The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale Transaction.  Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Buyer has agreed to assume the Assumed Liabilities; (iii) the Sale Transaction maximizes the value of the Debtors' estates; and (iv) unless the Sale Transaction and all of the other transactions contemplated by the Transaction Documents are concluded expeditiously, as provided for in the Motion, the Bidding Procedures, and pursuant to the Asset Purchase Agreement, recoveries to creditors and, if there is sufficient value, other stakeholders, may be diminished.

Q.    O. The Debtors and their professionals actively marketed the Purchased Assets to potential buyers, as set forth in the Motion and in accordance with the Bidding Procedures Order. The bidding and auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets than the offer memorialized by the Asset Purchase Agreement.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective bidders have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

R.    P. No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would give equal or greater economic value to the Debtors and their estates in the aggregate than the value being provided pursuant to the Asset

10

Purchase Agreement.  Among other things, the Sale Transaction is the best alternative available to the Debtors to maximize the return to their estates.  The terms and conditions of the Asset Purchase Agreement, including the consideration to be realized by the Debtors, are fair and reasonable.  Given all of the circumstances of the Chapter 11 Cases and the adequacy and fair value of the consideration provided under the Asset Purchase Agreement, approval of the Motion, the Asset Purchase Agreement, and the transactions contemplated thereby and hereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts, is in the best interest of the Debtors, their estates and creditors, and all other parties in interest.

S.    Q. Arms-Length Sale.  The Transaction Documents were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and at arm's-length.  None of the Debtors or any of the Buyer Parties, or any of their respective representatives has engaged in any conduct that would cause or permit the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any entity in connection therewith.  Specifically, the Buyer has not acted in a collusive manner with any person or entity and the Purchase Price was not controlled by any agreement among bidders.

T.    R. Good Faith Buyer.  The Buyer is a good faith Buyer for value within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to full protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Buyer and its management, members, managers, officers, directors, employees, agents and, representatives have proceeded in good faith in all respects in connection with these Chapter 11 Cases and the Sale Transaction.  Furthermore, the

11

Buyer is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor.  Without limiting the foregoing: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the Buyer complied in all respects with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (iv) all consideration to be provided by the Buyer in connection with the Sale Transaction ~~have~~has been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; and (vii) the Buyer has not acted in a collusive manner with any person or entity. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement and the Transaction Documents.

U.    ~~S.~~ Property of the Estate.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

V.    ~~T.~~ Free and Clear Sale.  The Debtors may sell the Purchased Assets free and clear of all Encumbrances, claims (including any "claims" as defined in section 101(5) of the Bankruptcy Code), rights, obligations, Liabilities, setoff (to the extent not taken prepetition) and other interests of any kind or nature whatsoever against the Debtors or the Purchased Assets (other than Permitted Encumbrances and the Assumed Liabilities), including, without limitation, other than Permitted Encumbrances and the Assumed Liabilities, any Liabilities, debts, or obligations arising under or out of, in connection with, or in any way relating to, any acts or

12

omissions, indentures, loan agreements, instruments, leases, agreements, collective bargaining

agreements, conditional sale or other title retention agreements, suits, judgments, demands,

guaranties, contractual commitments, licenses, restrictions, options, rights of first refusal, offsets

(to the extent not taken prepetition), Contracts,  rights of recovery, claims for reimbursement,

contribution, indemnity, exoneration, products liability, breach of warranty, alter-ego,

environmental liabilities, labor and employment claims (whether or not under a labor

agreement), employee pension or benefit plan claims (including multiemployer benefit plan

claims), including any withdrawal or termination liability thereunder, workers' compensation

claims, retiree medical benefits claims, liabilities related to the Employee Retirement Income

Security Act of 1974, liabilities related to the Worker Adjustment and Retraining Notification

Act of 1988, liabilities related to the Internal Revenue Code, or any other liability relating to the

Debtors' current and former employees, claims for taxes of or against the Debtors or their assets,

any derivative, vicarious, transfer or successor liability claims, and any other rights or causes of

action (whether in law or in equity, under any law, statute, rule or regulation of the United States,

any state, territory, or possession thereof or the District of Columbia), whether arising prior to or

subsequent to the Petition Date, whether known or unknown, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

unperfected, allowed or disallowed, asserted or unasserted, material or non-material, disputed or

undisputed, matured or unmatured, liquidated or unliquidated, or contingent or non-contingent,

and whether imposed by agreement, understanding, law, equity or otherwise, including, without

limitation, any and all claims otherwise arising under doctrines of successor liability, in each

case, arising under or out of, in connection with, or in any way related to the Debtors (or their

predecessors), the Debtors' interests in the Purchased Assets, the operation of the Debtors'

AMERICAS 124485826

businesses before the Closing, or the transfer of the Debtors' interests in the Purchased Assets to the Buyer, and all Excluded Liabilities (collectively, and excluding any Permitted Encumbrances and Assumed Liabilities, the "**Interests**"), because, with respect to each person or entity asserting an Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each person or entity with an Interest in or against the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.   All holders of Interests who did not object or withdrew objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Interests, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert such Interests, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale Transaction, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable.

W.    U. The Buyer would not have entered into the Asset Purchase Agreement and would not ~~consummate~~have consummated the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts by the Buyer, (i) if the transfer of the Purchased Assets was not free and clear of all Interests, including rights or claims based on any successor or transferee liability, of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement or this Order with respect to Permitted

Encumbrances and Assumed Liabilities) or (ii) if the Buyer, or any Affiliates of the Buyer (including the Assignee), or any past, present or future members, partners, principals, or equity security holders (or equivalent), whether direct or indirect, lenders, subsidiaries, parents, divisions, funds, agents, representatives, insurers, attorneys, successors or assigns of the Buyer, or any of the directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, or insurance companies of any of the foregoing (collectively, and each in their capacity as such, "**Buyer Parties**") would, or in the future could, be liable for any such Interests.  The Buyer will not consummate the transactions contemplated by the Asset Purchase Agreement, including the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Buyer, the other Buyer Parties, or the Purchased Assets will have any Liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interest.

X.    V.  Not transferring the Purchased Assets to the Buyer free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets to the Buyer other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.  The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Order to provide the Buyer, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests.

Y.    W.  Assumption of Executory Contracts.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Buyer in connection with the consummation of the Sale Transaction, and the assumption and

assignment of the Assumed Contracts is in the best interests of the Debtors and their estates. The Assumed Contracts being assigned to the Buyer are an integral part of the Asset Purchase Agreement and the Sale Transaction and, accordingly, such assumption and assignment of the Assumed Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

Z.    ~~X.~~ Cure/Adequate Assurance.  In accordance with the Asset Purchase Agreement, the Debtors or the Buyer, as applicable, have (i) cured, or have provided adequate assurance of cure, of any default existing under any of the Assumed Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The Buyer has provided adequate assurance of future performance of and under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

AA.    ~~Y.~~ Prompt Consummation.  The sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Asset Purchase Agreement, the Transaction Documents and this Order, including the Sale Transaction. The Buyer, being a good faith Buyer under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the Asset Purchase Agreement at any time after entry of

16

this Order, subject to the terms and conditions of the Asset Purchase Agreement.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the transactions contemplated by this Order.

BB.    ~~Z.~~ No Fraudulent Transfer.  The Transaction Documents were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia, and none of the parties to the Transaction Documents are consummating the Sale Transaction for any other fraudulent or otherwise improper purpose.

CC.    ~~AA.~~ Fair Consideration.    The consideration provided by the Buyer for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act), and any other applicable law.

DD.    ~~BB.~~ Buyer Not an Insider and No Successor Liability.  Since the Resignation Date, prior to the Closing Date, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling stockholders exists between the Buyer and the Debtors. *Burns Declaration* at ¶¶ 6, 7.  The transfer of the Purchased Assets to the Buyer, the assumption of the Assumed Liabilities by the Buyer and the consummation of the Sale Transaction (including any individual elements of the Sale Transaction), except as otherwise set forth in the Asset Purchase

17

Agreement, do not, and will not, subject the Buyer Parties to any Liability whatsoever, with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as a continuation of the Debtors. None of the Buyer Parties, as a result of any action taken in connection with the Sale Transaction (including by consummating the Sale Transaction), is a successor to or a mere continuation of any of the Debtors or their respective estates and there is no continuity or common identity between the Buyer and the Debtors.  The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates.  There is not substantial continuity between any of the Buyer Parties and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer Parties.  None of the Buyer Parties constitute a successor to the Debtors or the Debtors' estates.  The Buyer does not assume any obligations or Liability of any Debtor or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement.

EE.    CC. Binding Agreement.  The Transaction Documents are, or upon the execution of thereof by the parties thereto, will be, valid and binding contracts between the Debtors and the Buyer and shall be enforceable pursuant to their terms.  Notwithstanding anything contained herein, the Transaction Documents or any further order of the Court to the contrary, the Transaction Documents and consummation of the Sale Transaction shall be, to the extent

18

provided in the Transaction Documents, specifically enforceable against and binding upon the Debtors and any estate representative, including any chapter 7 trustee or chapter 11 trustee appointed in any of the Debtors' cases, any plan administrator, litigation trustee or liquidation trustee appointed in the Chapter 11 Cases or any successor cases, creditors and all other parties-in-interest, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity.

FF.    DD. Legal, Valid Transfer.  The Debtors have full corporate power and authority (i) to perform all of their obligations under the Transaction Documents and (ii) to consummate the Sale Transaction.  The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests, except as expressly as set forth in the Asset Purchase Agreement.  The Purchased Assets constitute property of the Debtors' estates and good title to the Purchased Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Purchased Assets, and no other person or entity has any ownership right, title, or interests therein.

GG.    EE. Not a Sub Rosa Plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan or an element of such plan for the Debtors, for which approval has been sought without the protections that a disclosure statement would afford.  The Sale Transaction does not (i) impermissibly restructure the rights of the Debtors' creditors or equity interest holders, (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors, (iii) impermissibly dictate a plan of reorganization for the Debtors, or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

19

HH.    ~~FF.~~ Consummation is Legal, Valid and Binding.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of the Bankruptcy Code have been complied with in respect of the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The transactions contemplated under the Transaction Documents and this Order (including the Sale Transaction) are inextricably linked and collectively constitute a single, integrated transaction.

II.    ~~GG.~~ Legal and Factual Bases.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.    The Motion is **GRANTED** as set forth herein, and the Sale Transaction contemplated thereby and by the Asset Purchase Agreement is approved, in each case, as set forth in this Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.    All objections to the Motion or the relief requested therein, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby **DENIED** and **OVERRULED** on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  Those parties, including those holders of Interests, who did not object to the Motion or the entry of this Order in accordance with the

20

Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests that have an Interest in the Purchased Assets and who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests that constitute Interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an Interest, in the same order of priority and with the same validity, force and effect that such holders had prior the Sale Transaction, subject to any claims, setoffs, deductions, offsets and defenses of the Debtors to such Interests.  Any counterparty to an Assumed Contract that has not actually filed with the Court an objection to the assumption or assignment of such Assumed Contract as of the date specified in the Bidding Procedures Order is deemed to have consented to such assumption and assignment.

### Approval of the Sale of the Purchased Assets

4.       The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, all other Transaction Documents, and all of the terms and conditions therein, are hereby **APPROVED** in all respects.

5.       Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the sale of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement free and clear of all Interests is approved in all respects.

21

**Sale and Transfer of the Purchased Assets**

6.      The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession, or the District of Columbia, including without limitation the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law. The Sale Transaction may not be avoided or rejected by any person or entity, nor may any costs or damages be imposed or awarded against the Buyer Parties, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Sale Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business. The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary, without further order of this Court, to implement the Sale Transaction and the provisions of this Order, including, without limitation, to allow the Buyer to: (a) deliver any notice provided for in the Asset Purchase Agreement and any of the other Transaction Documents; (b) take any and all actions permitted under the Asset Purchase Agreement and any of the other Transaction Documents in accordance with the terms and conditions thereof; and (c) take any and all actions necessary or appropriate to implement the Sale Transaction.

8.      Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors to sell and

22

transfer the Purchased Assets to the Buyer, and assume and assign the Assumed Contracts, in accordance with the terms of the Transaction Documents and this Order, (b) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets and the Assumed Contracts in accordance with the terms of the Transaction Documents and this Order and (c) with the ability of the Debtors and the Buyer to consummate the transactions contemplated by the Transaction Documents or to perform their respective obligations under any of the Transaction Documents; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

9. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to, and shall, take any and all actions necessary or appropriate to (a) sell the Purchased Assets to the Buyer, (b) assume and assign the Assumed Agreements to the Buyer; (c) consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, this Order, the Asset Purchase Agreement, and the other Transaction Documents, and (d) transfer and assign to the Buyer all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of this Court. The Debtors are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying and

23

conferring to the Buyer or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents, without further notice to or order of this Court.  Neither the Buyer nor the Debtors shall have any obligation to proceed with consummating the Sale Transaction until all conditions precedent to their obligations to do so under the applicable Transaction Documents have been met, satisfied or waived.

10.    Pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code, the Purchased Assets shall be transferred to the Buyer at Closing free and clear of all Interests.  On and after the Closing Date, any person or entity that has an Interest against or in the Purchased Assets is authorized and directed to execute such documents and take all other actions as may be necessary or reasonably requested by the Buyer to release its Interests in or against the Purchased Assets, if any, as such Interests may have been recorded or otherwise exist.  If any such person or entity shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions or releases of all Interests that such person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature; provided that, notwithstanding anything in this Order, the Asset Purchase Agreement or other Transaction Documents to the contrary, the provisions of this Order authorizing and approving the transfer of the Purchased Assets free and clear of all Interests shall

24

be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, the Asset Purchase Agreement or any of the other Transaction Documents, and (c) upon consummation of the Sale Transaction, the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Interests that are extinguished or otherwise released pursuant to this Order with respect to the Purchased Assets.

11.    Following the Closing Date, the Buyer may, but shall not be required to, file or record a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are formed or have real or personal property, or with any other appropriate clerk or recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing and/or to transfer and assign any of the Purchased Assets to the Buyer as of the Closing free and clear of any and all Interests.  Subject to the occurrence of the Closing, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer to the Buyer of the Purchased Assets or a bill of sale transferring good and marketable title in the Purchased Assets to the Buyer.  Subject to the occurrence of the Closing, this Order also shall be construed, and constitute for any and all purposes, a complete and general assignment, conveyance and transfer of all right, title and interest of the Debtors and each of their estates to the Buyer in the Assumed Contracts.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the

25

transactions contemplated by this Order, the Asset Purchase Agreement and the other Transaction Documents.

12.     At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code.  Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Purchased Assets.  All persons and entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of any and all portions of the Purchased Assets to the Buyer on the Closing Date.  The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Asset Purchase Agreement).

13.     Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, parties to executory contracts and unexpired leases, customers, licensors, current and former employees and other creditors, and all holders of Interests against or in a Debtor or any of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including the Sale Transaction or the transfer of the Purchased Assets and the assumption and assignment of the Assumed Contracts, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such persons' or entities' Interests, whether by payment, setoff (to the extent it was not taken prepetition), or

AMERICAS 124485826

otherwise, directly or indirectly (including, without limitation, taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Interest; (d) asserting an Interest as a setoff (to the extent it was not taken prepetition) or right of subrogation of any kind against any obligation due; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; or (f) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale Transaction), in the case of each of the foregoing, against the Buyer, the other Buyer Parties, or any of their respective successors or assigns, their respective assets or property and the Purchased Assets and the assumption and assignment of the Assumed Contracts.  Following the Closing Date, no party shall interfere with the Buyer's title to use, enjoyment and operation of the Purchased Assets based on or related to any such Interest or based on any action or failure to act of the Debtors in the Chapter 11 Cases or any successor cases.

14.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement or any of the other Transaction Documents, including the Sale Transaction and the transfer of the Purchased Assets and the assumption and assignment of the Assumed Contracts.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to

27

accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction set forth in the Asset Purchase Agreement.

15.     Subject to the terms and conditions of this Order, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and the consummation of the Sale Transaction and any related actions contemplated hereby and thereby constitute a legal, valid, and effective transfer of the Purchased Assets, do not require any consents of any Person or entity other than as specifically provided for in the Asset Purchase Agreement, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

## Releases and No Successor Liability

16.     None of the Buyer Parties is a "successor" to the Debtors or their estates by reason of any theory of law or equity, and, except as otherwise expressly provided in the Asset Purchase Agreement, none of the Buyer Parties shall assume, or be deemed to assume, or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates with respect to the Purchased Assets or otherwise (other than, in the case of the Buyer, the Assumed Liabilities), including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability or responsibility for any claim against any Debtor or against an insider of any Debtor, or similar liability.  Except to the extent the Buyer assumes Assumed Liabilities pursuant to the Asset Purchase Agreement, neither the purchase of the Purchased Assets by the Buyer nor the fact that the Buyer is using any assets previously operated by the Debtors will cause any of the Buyer Parties to be deemed a successor in any respect to the Debtors' businesses or operations or, except for the Assumed Liabilities, incur any Liability derived therefrom of any kind or character, in whole or in part, directly or

AMERICAS 124485826

indirectly, including, but not limited to, an Interest or Liability arising under: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any of the Debtors' predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of any of the Debtors; and (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to wages, benefits, employment or termination of employment with any or all of the Debtors or any of the Debtors' predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state, federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response,

AMERICAS 124485826

Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; or (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to any of the Debtors or any obligations of any of the Debtors arising prior to the Closing Date.

17.    The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests in or against the Debtors, or the Purchased Assets.  Upon consummation of the Sale Transaction, the Buyer shall not by reason of (i) the purchase of the Purchased Assets by the Buyer or any action taken in connection with the Asset Purchase Agreement or Sale Transaction, or (ii) the fact that the Buyer is using any assets previously operated by the Debtors, be deemed to (a) be the successor to any Debtor or any assets of any Debtor, (b) have, *de facto* or otherwise, merged with or into any Debtor or any Debtor's estate, (c) have a common identity with any Debtor, (d) have a continuity of enterprise with any Debtor, or (e) be a mere continuation, alter ego or substantial continuation of any Debtor.

18.    Except to the extent the Buyer has specifically agreed in the Asset Purchase Agreement, the Buyer shall not have any liability, responsibility or obligation for any Interests, claims, Liabilities or other obligations of the Debtors or their estates, including any Interests,

30

claims, Liabilities or other obligations related to the Purchased Assets prior to the Closing Date. Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Interests against, in or to the Debtors or the Purchased Assets.  For the purposes of this paragraph of this Order, all references to the Buyer shall also include the Buyer Parties.

19.    Upon entry of this Order, subject to the occurrence of the Closing, to the fullest extent permitted under applicable law, (a) (i) the Buyer, (ii) each of the affiliates of the Buyer, and (iii) each of the current or former officers, directors, employees, partners, members, managers, advisors, predecessors, successors and assigns of any of the persons or entities described in clause (a)(i) or clause (a)(ii), (collectively, and each in their capacity as such, the "**Buyer Releasing Parties**") shall be deemed to release and discharge the Debtor Releasing Parties (as defined below), and (b) (i) the Debtors, and (ii) each of the current officers, directors, employees, partners, members, managers, advisors, predecessors, successors and assigns of the Debtors (collectively, and each in their capacity as such, the "**Debtor Releasing Parties**," and together with the Buyer Releasing Parties, the "**Releasing Parties**") shall be deemed to release and discharge the Buyer Releasing Parties, in each case, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims that such Releasing Party (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a holder of any claim against a Releasing Party, based on or relating to, or in any manner arising from, in whole or in part, the Sale Transaction, arising on or before the Closing Date; provided that this paragraph shall not (1) release any Releasing Party from any claims or liabilities arising

31

out of or relating to any act or omission of a Releasing Party that constitutes actual fraud, bad faith, willful misconduct, or gross negligence, each solely to the extent as determined by a final order of a court of competent jurisdiction, or (2) release any Releasing Party from any claims, liabilities or obligations arising under (x) this Order, (y) the Asset Purchase Agreement, and (z) the other Transaction Documents; provided further, that this paragraph shall not release (A) any Buyer Releasing Parties from claims that are Excluded Assets under the Asset Purchase Agreement or (B) any Releasing Parties from any claims, interests, obligations, rights, suits, damages, causes of action, remedies, or liabilities whatsoever of any Releasing Party arising out of, related to or in connection with any such Releasing Party's role as a former director, officer, manager, officer, independent contractor, employee or equity holder of any Debtor, including, without limitation, any indemnification obligations, whether contractual or otherwise, or rights arising under insurance policies.

20.     For the avoidance of any doubt, nothing in this Order or the Asset Purchase Agreement shall release any of the Buyer Releasing Parties from any actions, causes of action, claims, liabilities, demands, judgments, debts, or suits of any kind, nature and description whatsoever relating to their role as a former director, officer, manager, independent contractor, employee or equity holder of any Debtor.

**<u>Good Faith</u>**

21.     The transactions contemplated by the Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale of the Purchased Assets to the Buyer, including the

32

transfer of the Purchased Assets and the assumption, assignment and/or transfer of the Assumed Contracts. The Buyer is a good faith Buyer of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and the Buyer have acted, and will be acting, in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

22.     As a good faith Buyer of the Purchased Assets, the Buyer has not entered into an agreement with any other potential bidders and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any representative of or successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring any claim or cause of action against the Buyer or the other Buyer Parties, and the Sale Transaction may not be avoided, in each case, pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement, any of the other Transaction Documents or the Sale Transaction.

**Assumption and Assignment of Assumed Contracts**

23.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Asset Purchase Agreement (including pursuant to the designation rights set forth in Section 2.5 of the Asset Purchase Agreement), of the Assumed Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

AMERICAS 124485826

24.     The Buyer has provided adequate assurance of future performance for the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

25.     The Debtors are hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date (or such later date as provided in the Asset Purchase Agreement), the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer.

26.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Buyer, except as provided in the Asset Purchase Agreement.

27.     Upon the Closing Date or such other date as set forth in the Asset Purchase Agreement, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of the Debtors in each Assumed Contract free and clear of Interests of any kind or nature whatsoever.  The Debtors shall cooperate with, and take all actions that are commercially reasonable and that have been reasonably requested by the Buyer to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

34

28.     Upon the Closing Date, Buyer shall be deemed to be substituted for all purposes as a party to all Assumed Contracts in the place of the Debtors, and shall have any and all rights and benefits of the Debtors under all such Assumed Contracts without interruption or termination of any kind, and all terms thereof applicable to the Debtors shall apply to such entity as if such Assumed Contracts were amended to replace the Debtors with such entity and all references in an Assumed Contract to one or more of the Debtors or an affiliate of a Debtor shall be deemed modified to be a reference to Buyer.

29.     All counterparties to the Assumed Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and any other applicable law, and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assumed Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

30.     Upon the Debtors' assumption and assignment of the Assumed Contracts and payment of the relevant Cure Amount, if any, by the Debtors or the Buyer (as applicable), no default shall exist under any Assumed Contract and no counterparty to any such Assumed Contract shall be permitted to declare or enforce a default by the Debtors or the Buyer thereunder or otherwise take action against the Buyer relating to any of the Debtors' financial condition, change in control, bankruptcy or failure to perform any of its pre-closing obligations under the relevant Assumed Contract.  Any provision in an Assumed Contract that prohibits or conditions the assignment or sublease of such Assumed Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition a renewal or extension, or modify any term or condition upon any assignment or

35

sublease of such Assumed Contract, or upon the consummation or occurrence of any change of control of any of the Debtors, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Assumed Contract to the Buyer.  The failure of the Debtors (prior to Closing) or the Buyer (subsequent to Closing) to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contract.  Nothing in this Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code, or, subject to the terms of the Asset Purchase Agreement, that any Contract must be assumed and assigned in order to consummate the Sale Transaction.

31.    Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors to the Buyer of the Assumed Contracts shall not be a default thereunder.  All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors or the Buyer (as applicable, as provided in the Asset Purchase Agreement) on or prior to the Closing Date (or as otherwise agreed with the counterparty to such Assumed Contract), and the Buyer shall have no liability or obligation arising or accruing under the Assumed Contracts prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement.

32.    As applicable, the Sale Transaction and assumption and assignment of the Assumed Contracts approved herein includes the conveyance of all beneficial rights, easements, permits, licenses, servitudes, rights-of-way, surface leases and other surface rights, and all

36

contracts, agreements, and instruments by which they are bound, appurtenant to, and used or held for use in connection with the Assumed Contracts.

33.     All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

34.     Each non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against (a) the Debtors, the Buyer, the Buyer Parties, or the property of such parties, any fee, acceleration, default, loss of rights, increase in obligations, breach or claim of loss, penalty, or condition to assignment, existing, arising under or related to the Assumed Contracts, existing as of the date that such Assumed Contracts are assumed, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement (including the Sale Transaction and the assumption and assignment of the Assumed Contracts or any state of facts, events, circumstances or occurrences resulting therefrom), including, without limitation, any breach related to or arising out of change-in-control provisions in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) the Buyer (or its property, including the Purchased Assets) any claim, counterclaim, breach, condition, or setoff (to the extent it was not taken prepetition) asserted, or assertable against the Debtors existing prior to the Closing or arising by reason of the Closing except for the Assumed Liabilities.  Each non-Debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from setting off (to the extent such setoff was not taken prepetition) any amounts owed by them, including Cure

37

Amounts, to the Buyer under an Assumed Contract against amounts owed or asserted to be owed to them by any of the Debtors under any Contract that is not assigned to the Buyer or any other Claim held by such counterparty against the Debtors.  Notwithstanding the foregoing sentence or any other provision of this Order or the Asset Purchase Agreement to the contrary, the Sale Transaction is not entitled to a tax exemption under section 1146(a) of the Bankruptcy Code.

35.    Any party that may have had the right to consent to the assignment of an Assumed Contract or a change of control with respect to the Debtors, or to assert or claim any default or violation under an Assumed Contract as a result of or related to the assignment of an Assumed Contract or a change of control with respect to the Debtors, is deemed to have consented to such assignment for purposes of section 365 of the Bankruptcy Code or change of control, or is deemed to have irrevocably waived any such default or violation, if such party failed to timely object to the assumption and assignment of such Assumed Contract.

36.    The Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assumed Contracts to the extent not previously provided by the Debtors.

37.    The deadline for a non-Debtor counterparty to file an objection to the stated Cure Amounts in the Cure Notices as applicable (a "**Cure Objection**") has expired and, to the extent any such party timely filed a Cure Objection, [all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.]  To the extent that any non-Debtor counterparty did not timely file a Cure Objection by the applicable objection deadline listed in the Cure Notices (the "**Cure Objection Deadline**"), such party shall be deemed to have consented to the (x) assumption and assignment of the Assumed Contract and (y) proposed Cure Amount set forth on the Cure Notices.

38

38.     Upon payment of any such Cure Amount with respect to an Assumed Contract as provided for herein, the contract counterparties to such Assumed Contract are hereby enjoined from taking any action against the Debtors, the Buyer, the other Buyer Parties or the Purchased Assets with respect to any claim for breach or default under such Assumed Contract arising or existing prior to the date such Assumed Contract is assumed by the applicable Debtor or any pecuniary loss resulting therefrom.

39.     To the extent a party is to receive a Cure Amount payment pursuant to the Order and such party has asserted a lien against the Debtors' or their customer's assets or work such party shall be required to execute a lien release, and provide evidence thereof to both the Debtors and the Buyer, as a condition to receiving such cure payment.

40.     The Cure Amounts represent the amounts owed that are accrued but unpaid and any other amounts to cure any defaults existing under the Assumed Contracts as of the Closing Date. The payment of the applicable Cure Amounts (if any) shall effect a cure of all defaults existing as of the date that the applicable Assumed Contracts are assumed and shall compensate for any actual pecuniary loss to such contract counterparty resulting from such default.

41.     Notwithstanding anything to the contrary in this Order, or any notice related thereto, the Employee Benefits Agreements (as defined in the *Objection of Cigna to Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 338] (the "**Cigna Objection**")) shall not be assumed and assigned to the Buyer as part of the Sale Transaction.  This moots the Cigna Objection.

42.     Notwithstanding anything to the contrary in this Order, the APA or any sale related documents, (a) no agreements (the "**Oracle Agreements**") between Oracle America, Inc. (or any of its predecessors-in-interest) (collectively, "**Oracle**") and the Debtors are being

assumed, assigned or otherwise transferred to the Buyer, as part of this sale transaction, and (b) there shall be no shared or transitional use of any of the Oracle products or services by any third party other than those authorized under the Oracle Agreements, all without a further order of the Court, with notice and opportunity to be heard by Oracle, or express written consent by Oracle.

43.    For the avoidance of any doubt, the Debtors are not assuming and assigning to the Purchaser the *Intellectual Property License Agreement* dated November 7, 2019 ("**License Agreement**") by and between Workhorse Group Inc. ("**Workhorse**") and Lordstown Motor Corp. as part of the Sale Transaction.  The Purchaser is not purchasing, and the Debtors are not assigning, any intellectual properties of Workhorse.  Nothing in this Order shall affect, modify, waive, prime, subordinate, or impair any rights of (a) Workhorse against the Debtors in connection with the License Agreement or (b) the Debtors against Workhorse in connection with the License Agreement.

44.    Notwithstanding anything herein or in the Asset Purchase Agreement, this Order is without prejudice to the rights reserved by Elaphe Propulsion Technologies, Ltd. ("**Elaphe**") in Elaphe's reservations of rights filed with respect to the Debtors' proposed cure amount in connection with the assumption and assignment of the *License Agreement* dated March 2020, as amended by the First Amendment to License Agreement dated July 21, 2020.

**Additional Provisions**

45.    ~~41.~~ On the Closing Date, the Debtors and the Buyer are authorized to take such actions as may be necessary or appropriate to obtain a release of any and all Interests in, on or against the Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement.  This Order (a) shall be effective as a determination that, as of the Closing Date, (i) no claims other than the Assumed Liabilities will be assertable against any Buyer Party,

40

or any of its respective assets, in each case by reason of the purchase of the Purchased Assets by the Buyer or any action taken by the Buyer in connection with the Asset Purchase Agreement or Sale Transaction, or the fact that the Buyer is using any assets previously operated by the Debtors, (~~iii~~ii) all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been, and are, unconditionally released, discharged and terminated, and (~~iv~~iii) that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law or by reason of the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  Each  of the foregoing persons and entities is hereby directed to accept for filing any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All Interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Purchased Assets.  All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded Interests against the Purchased Assets from their records, official and otherwise.

46.    42. If any person or entity that has filed statements or other documents or agreements evidencing Interests in, on or against any of the Purchased Assets does not deliver to the Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Purchased Assets in any required jurisdiction, the Debtors and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to any of the Purchased Assets in any required jurisdiction. This Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code and other applicable law for the Buyer to file UCC and other applicable termination statements with respect to all Interests in, on, or against the Purchased Assets.

47.    43. The Debtors will cooperate with the Buyer and the Buyer will cooperate with the Debtors, in each case to consummate the transactions contemplated in the Asset Purchase Agreement and the other Transaction Documents in accordance with their terms and conditions, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Transaction Documents.

48.    44. The terms and provisions of the Transaction Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors and equity security holders, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties

including, but not limited to, all persons or entities asserting Interests in, on or against the Purchased Assets (including all counterparties to the Assumed Contracts), notwithstanding any subsequent appointment of any trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases), examiner(s) or other fiduciary under any chapter of the Bankruptcy Code, as to which trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases), examiner(s) or other fiduciary such terms and provisions likewise shall be binding.

49.    45. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Transaction Document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

50.    46. The failure specifically to include any particular provisions of the Asset Purchase Agreement or any other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

51.    47. The Transaction Documents may be modified, amended or supplemented by the parties thereto, in writing signed by all parties in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the

43

Asset Purchase Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Order shall govern.

52.    48. Neither the Buyer nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Sale Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

53.    49. Nothing in this Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

54.    50. Nothing contained in any chapter 11 plan confirmed in these Chapter 11 Cases, any order of this Court confirming such plans, any order dismissing any of these Chapter 11 Cases or any other order in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order. To the extent of any such conflict or derogation, the terms of this Order and the Asset Purchase Agreement shall govern. The provisions of this Order, the Asset Purchase Agreement and the other Transaction Documents, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing these Chapter 11 Cases, and the terms and provisions of the Asset Purchase Agreement and the other Transaction Documents, as well as the rights and interests granted pursuant to this Order, the Asset Purchase Agreement and

44

the other Transaction Documents, shall continue in these Chapter 11 Cases or any superseding cases and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Purchased Assets, the Buyer and their respective successors and permitted assigns, and any trustee, responsible officer or other fiduciary hereafter appointed or elected as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases.

55.     51. Any and all valid and perfected Interests in the Purchased Assets arising prior to the Closing Date, other than any such Interests related to the Assumed Liabilities or Permitted Encumbrances, shall attach to any proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they may have against such Purchased Assets as of immediately prior to the Closing Date, subject to any rights, claims, and defenses of the Debtors, that the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto.

56.     52. To the extent applicable, notwithstanding any provision in the Sale Motion, the Asset Purchase Agreement, this Order, and any implementing sale documents (collectively, "**Sale Documents**"), nothing shall: (1) authorize the  assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, (vii) certifications, (viii) applications or other interests of the federal government (collectively,

"**Federal Interests**") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, inventions, records, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights or defenses of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any assets subject to the jurisdiction of federal non-bankruptcy recall laws without the assumption by the Buyer of all recall obligations required, but not yet performed by the Debtors at the time of such assumption, transfer, sale or assignment, including recall obligations that arise after the assumption, transfer, sale or assignment of such assets; (6) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (7) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the manufacturer, owner or operator of property; (8) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (9) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order; or (~~9~~10) expand the scope of 11 U.S.C. § 525.  For the avoidance of doubt and without limiting the foregoing, notwithstanding any provision in the Sale

46

Documents, nothing shall impair, affect, alter or modify any statutes (including, but not limited to, Title 49 of the United States Code), regulations, rules, guidelines, standards, policies and procedures of the Department of Transportation, including but not limited to, the National Highway Traffic Safety Administration; provided, however, that nothing contained herein shall be an admission or acknowledgment that any of the foregoing reservations of rights or remedies are applicable to the Sale Transaction or the Purchased Assets.

57.    Notwithstanding anything to the contrary herein, the Buyer and the Debtors will preserve and maintain all records responsive to any subpoena from the U.S. Securities and Exchange Commission ("**SEC**") for a period not to exceed seven years, or, if earlier, at such time as the SEC staff has advised such party in writing that the staff has no objection to abandonment or destruction of such records; *provided that if the Buyer or the Debtors notify the SEC in writing of their intent to destroy or abandon such records and the SEC fails to respond within 60 days of the delivery of such notice, the SEC shall be deemed to consent to such abandonment or destruction of such records.*

58.    53. The provisions of this Order are nonseverable and mutually dependent.

59.    54. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

60.    55. The Debtors and each other person or entity having duties or responsibilities under the Transaction Documents or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement and the other Transaction Documents, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, the other Transaction Documents and any related agreements, and to take any action contemplated by the Asset Purchase Agreement, the other

47

Transaction Documents or this Order, and to issue, execute, deliver, file and record, as appropriate, such other certificates, documents, contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary, desirable or appropriate to, implement, effectuate and consummate the Transaction Documents and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement, the other Transaction Documents and this Order and the transactions contemplated thereby and hereby.  The transfer of the Purchased Assets to the Buyer pursuant to the Transaction Documents do not require any consents other than specifically provided for in the Asset Purchase Agreement or as provided for herein.

61.    56. Nothing in this Order or the Asset Purchase Agreement

(i)    releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability of an entity to a governmental unit (as defined in section 101(27) of the Bankruptcy Code (a "**Governmental Unit**")) under any police or regulatory statutes or regulations that such  entity would be subject to as the owner or operator of the Purchased Assets after the Closing; provided, however, for the avoidance of doubt, nothing herein shall subject the Buyer to any liability to a Governmental Unit for penalties for days of violation prior to the Closing, response costs incurred by a governmental unitGovernmental Unit prior to the Closing, or other matters not related to conditions existing on or after the Closing that require remediation or compliance under applicable non-bankruptcy law by the owner or operator of the applicable Purchased Assets regardless of who is responsible for the condition or when it arose.  Nothing in this paragraph should be construed to create for any governmental unitGovernmental Unit any substantive right that does not already exist under law;

(ii)    authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the

48

discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; or

(iii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

62. 57. Notwithstanding any provision in this Order or the Asset Purchase Agreement to the contrary, the approval of the Asset Purchase Agreement and related transactions contemplated in this Order shall not limit, restrict, prejudice, or otherwise impair (i) rights of any tort or wrongful death claimant to proceed or satisfy any judgment against the Debtors and their affiliates (but not the Buyer) from the proceeds of the Debtors' liability insurance policies covering such third party claims that expired pursuant to their terms prior to the Petition Date, which policies are not being assigned or transferred to the Buyer pursuant to the Sale Order and shall remain available to satisfy third party claims to the same extent and in the same amounts as prior to the Petition Date; (ii) any motion seeking relief against the Debtors (but not the Buyer) from the automatic stay in connection with such claims; or (iii) the Debtors' defenses and objections to such claims and related motions to lift or modify the automatic stay against the Debtors.  For the avoidance of doubt, any claims or judgments of such tort or wrongful death claimants against the Debtors and their affiliates are Excluded Liabilities under the Asset Purchase Agreement.

63. 58. [Until the earlier of (i) seven (7) years from entry of this Order (the "**Outside Date**") or (ii) entry of a final order of judgment or settlement in the litigation captioned as *In re Lordstown Motors Corp. Securities Litigation*, Case No. 4:21-cv-00616 (DAR) (N.D. Ohio) (the "**Securities Litigation**"), the or *Lim v. Hightower*, et al, Case No. 23 Civ 01454 (together with the Securities Litigation, the "**Ohio Litigations**"), as applicable, (A) the Debtors (before the

49

Closing Date) and (B) the Buyer and(after the Closing Date), solely to the extent any such Potentially Relevant Books and Records (defined below) are transferred to Buyer, and (C) any other transferee of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object potentially relevant to the Securitiesapplicable Ohio Litigation, wherever stored (collectively, the "**Potentially Relevant Books and Records**") shall preserve and maintain thesuch Potentially Relevant Books and Records, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records without providing counsel to the plaintiffs in the Securitiesapplicable Ohio Litigation not less than sixty days' advance written notice of: the Outside Date or the date of such proposed destruction with an opportunity, as applicable; subject to the right to object and be heard by the Bankruptcy Court and to demonstrate that good cause exists for the continued preservation of all Potentially Relevant Books and Records, or if the Bankruptcy Court no longer has jurisdiction, another court of competent jurisdiction. In the event the plaintiffs in the Securitiesapplicable Ohio Litigation timely object to any such destruction, abandonment, or transfer, the Potentially Relevant Books and Records shall be preserved pending a final order of the Bankruptcy Court, or if the Bankruptcy Court no longer has jurisdiction, another court of competent jurisdiction.]

64.    59. Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived for cause shown and shall not apply.  Accordingly, the Debtors are authorized and empowered to close the Sale Transaction immediately upon, and following, entry of this Order.

AMERICAS 124485826

65.    60. This Court shall retain jurisdiction to enforce and implement the terms and provisions of this Order, the Asset Purchase Agreement, and the other Transaction Documents, and all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer free and clear of all Interests, or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, or any of the other Transaction Documents except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer and Buyer Parties against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Purchased Assets or Assumed Contracts, or (iii) any Interests (other than Assumed Liabilities or Permitted Encumbrances) asserted in, on, or against the Debtors or the Purchased Assets, of any kind or nature whatsoever.

66.    61. To the extent the Debtors or any trustee(s), receiver(s), responsible officer(s) or other fiduciary appointed or elected, in these Chapter 11 Cases or any successor cases, receive, hold, or otherwise come into possession after the Closing of any payment or asset that constitutes Purchased Assets, such payment or asset shall be held in trust for the benefit of the Buyer and the Debtors or any such trustee(s), receiver(s), responsible officer(s) or other fiduciary shall promptly deliver or otherwise turn over such payment or asset to the Buyer.

67.    62. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

51

| Summary report: Litera Compare for Word 11.4.0.111 Document comparison done on 10/16/2023 6:16:41 PM | |
|---|---|
| **Style name:** 2_WC_StandardSet | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://AMERICAS_DMS/AMERICAS/124485826/12 | |
| **Modified DMS:** iw://AMERICAS_DMS/AMERICAS/124485826/17 | |
| **Changes:** | |
| Add | 105 |
| Delete | 80 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 185 |