IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 16, 127, 237 & 488 |

### DECLARATION OF RYAN HAMILTON IN SUPPORT OF THE DEBTORS' PROPOSED SALE OF CERTAIN ASSETS

I, Ryan Hamilton, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.  I submit this declaration (this "**Declaration**") in support of the Debtors' proposed sale to LAS Capital LLC ("**LAS Capital**") and its assignee,[2] LandX Motors Inc. ("**LandX Motors**")[3] of the Debtors' right, title and interest, free and clear of all encumbrances on and other interests in certain assets of the Debtors (the "**Assets**") pursuant that certain Asset Purchase Agreement by and between the Debtors, LAS Capital, and Stephen S. Burns, an individual, as a guarantor (the "**Asset Purchase Agreement**").

2.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of the Debtors'

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Pursuant to Section 10.4 of the Asset Purchase Agreement, LAS Capital has notified LMC in writing that it has assigned its rights under the Asset Purchase Agreement, including with respect to the Assumed Agreements, to its affiliate, LandX Motors Inc.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (defined below) or the Asset Purchase Agreement (as defined above), as applicable.

management team, the Debtors' advisors, and discussions with certain other professionals at Jefferies LLC ("**Jefferies**").  If I were called to testify, I could and would testify competently to the facts set forth herein.

### Professional Qualifications

3.  I am a Senior Vice President at Jefferies, an investment banking and financial advisory firm with principal offices located at 520 Madison Avenue, New York, New York 10022. Jefferies also maintains other locations worldwide.

4.  Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (a) financial advice; (b) mergers, acquisitions, and divestitures; (c) special committee assignments; (d) capital raising; and (e) corporate restructurings.  Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, and the marketing and sale of assets of such companies, both out of court and in chapter 11 proceedings.  Jefferies has advised debtors, creditor and equity constituencies, and purchasers in numerous reorganizations and asset sales in the United States and worldwide.  Since 2007, Jefferies has been involved in over 250 restructurings representing over $550 billion in restructured liabilities.

5.  I have advised companies in financial restructurings and distressed mergers and acquisitions, raised capital for troubled companies, and represented debtors and creditor constituencies in bankruptcy proceedings.  Before joining Jefferies in 2017, I was a vice president in the restructuring and finance group of Barclays Capital, Inc., which I joined in 2009.  I have an MBA from the University of Chicago Booth School of Business, a JD from the University of Chicago Law School, and a BA from Emory University.

AMERICAS 125201623

6. Jefferies has been engaged by the Debtors in some manner since September 2021, and as a result, is familiar with the Debtors' corporate and capital structure, management, and business operations.

7. On June 27, 2023, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. In support of the filing, the Debtors submitted the *Declaration of Adam Kroll in Support of Debtors' Petitions and Requests for First Day Motions* [Docket No. 15], which sets forth information about the Debtors' businesses and affairs and the events leading to the Petition Date.

8. The Debtors, in consultation with Jefferies and certain of their other advisors, have determined, in exercise of their business judgment, that pursuing a process by which the Debtors would market and solicit proposals for some, all, or substantially all, and thereby sell some, all, or substantially all of their assets is likely to maximize the value of the Debtors' estates for their stakeholders. To that end, the Debtors, working with Jefferies and their other advisors developed the Bidding Procedures for the marketing and sale of the Debtors' assets, which the Court approved pursuant to the *Order (A) Establishing Bidding and Auction Procedures, (B) Scheduling Certain Dates with Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Approving Contract Assumption and Assignment Procedures, and (E) Granting Other Related Relief* [Docket No. 237] (the "**Bidding Procedures Order**"). Based on my experience, I believe that the Bidding Procedures provided an appropriate framework to effectuate a competitive sale process. Accordingly, I believe that the sale process undertaken by the Debtors in these Chapter 11 Cases is an appropriate means to maximize the value of the Debtors' assets.

**The Debtors' Marketing and Sale Efforts**

9. Since the Petition Date, the Debtors and Jefferies have worked diligently and have undertaken extensive efforts to formulate and execute a marketing process for the sale of the Debtors' Assets. As part of that marketing process, and in accordance with the Bidding Procedures Order, Jefferies, on behalf of the Debtors, contacted 175 potential purchasers (collectively, the "**Interested Parties**"). Of those Interested Parties, 42 of them elected to sign non-disclosure agreements (each, a "**NDA**") and proceed with due diligence to explore potential transactions with the Debtors.

10. Throughout the marketing and sale process, the Debtors and Jefferies have focused on cultivating interest in the Debtors' Assets. Jefferies prepared and distributed to Interested Parties who signed NDAs, a confidential information memorandum (the "**CIM**"), which included a summary of the Debtors' operations, a description of the Debtors' products, and a summary of the Debtors' assets. The Debtors, with the assistance of Jefferies, established a virtual data room to aid potential buyers in their due diligence efforts. The virtual data room included documents detailing Debtors' operations, assets, and other information the Interested Parties would need to submit a proposed bid. Jefferies also facilitated calls between Interested Parties and the Debtors' management and tours of the Debtors' facilities.

11. Jefferies communicated with the Interested Parties regularly and kept them informed of the developments regarding the Debtors' assets. Pursuant to the Bidding Procedures Order, the Debtors established September 8, 2023 as the initial Bid Deadline, which was subsequently extended. The Debtors received, through Jefferies, bids or proposals from five parties (collectively, the "**Bidders**"), ahead of the initial Bid Deadline, including a bid from LAS Capital. The Debtors, in consultation with their advisors and with professionals for each of the

Committees[4] appointed in the Chapter 11 Cases, diligently evaluated the submitted bids and proposals against the requirements for being a "Qualified Bid" set forth in the Bidding Procedures and discussed them with the respective Bidders. The Debtors, in consultation with their advisors and the Committees, determined in the exercise of their business judgment that none of these bids received constituted a "Qualified Bid" pursuant to the Bidding Procedures. Furthermore, certain other Interested Parties indicated that they needed additional time to submit bids to the Debtors. Accordingly, the Debtors, in consultation with their advisors and the Committees, determined in their business judgment that an extension of the Bid Deadline and certain other deadlines would provide other Interested Parties additional time to submit offers and allow the Debtors and their advisors to further negotiate with the Bidders to improve their bids. The Debtors filed a notice extending the Bid Deadline to September 18, 2023, continuing the Auction to September 27, 2023, and postponing the Sale Hearing to October 18, 2023 [Docket No. 418].

12. Thereafter, the Debtors, with the assistance of Jefferies, engaged with the Bidders to negotiate improvements to the terms of their respective bids. My team was actively involved in communications with the Debtors and their advisors regarding the feedback from Interested Parties. By the extended Bid Deadline, the Debtors received improved bids from certain Bidders, including LAS Capital. The Debtors also received two additional bids from Interested Parties. However, the Debtors, in consultation with their advisors and the Committees, determined and in the exercise of their business judgment, that none of the bids received met the requirements of Qualified Bids and further determined, on September 19, 2023, to file a notice further extending

---

[4] The "**Committees**" are the Official Committee of Unsecured Creditors appointed on July 11, 2023 and Official Committee of Equity Security Holders appointed on September 7, 2023.

the Bid Deadline to September 22, 2023, to continue their negotiations with the Bidders [Docket No. 434].

13. The ongoing negotiations with the Bidders, including LAS Capital, resulted in further improvements to the terms of certain bids, and two additional bids were received from Interested Parties by the further extended Bid Deadline, resulting in a total of nine bids or proposals received. However, more time was needed to finalize the terms of potential Qualified Bids. On September 26, 2023, following consultation with each of the Committees, the Debtors, in the exercise of their business judgment, filed a further notice further extending the Bid Deadline to September 28, 2023 and continuing the Auction to September 29, 2023 [Docket No. 475]. Following further negotiations, and after extensive analysis, the Debtors, in consultation with their advisors and with the Committees, determined in their business judgment that LAS Capital's bid was both the only Qualified Bid and the highest and best of the bids submitted. Since LAS Capital's bid was the only Qualified Bid, the Debtors, in consultation with their advisors and the Committees, and in the exercise of their business judgment, selected the LAS Capital as the Successful Bidder and cancelled the Auction. On September 29, 2023, the Debtors filed the *Notice of (i) Selection of Successful Bidder, (ii) Cancellation of Auction, and (iii) Sale Hearing*. [Docket No. 488].

**Good Faith Purchaser**

14. The Debtors understand that Mr. Stephen S. Burns, an individual, is the guarantor of certain obligations of LAS Capital under the Asset Purchase Agreement, and the majority equity holder of LAS Capital and majority equity holder of LandX Holdings Inc. ("**Holdings**"), parent of LandX Motors. I understand that Mr. Burns was the founder and former Chief Executive Officer and a member of the board of directors of the Debtors. Additionally, the Debtors understand that

AMERICAS 125201623

Mr. Julio Rodriguez is one of the indirect managers of LAS Capital, and an minority equity holder of Holdings.  Mr. Rodriguez was the former Chief Financial Officer of the Debtors.  I understand that, as of June 14, 2021, Mr. Burns and Mr. Rodriguez each resigned from his respective position and since such time, each ceased being employed by, and has had no management role with, the Debtors.

15. I understand that, throughout the sales process, LAS Capital and LandX Motors, including Mr. Burns and Mr. Rodriguez, have not had and do not currently have any role with the Debtors, other than as a third-party bidder in the Debtors' Court-approved sale process.  To my knowledge, based on my involvement in the sale process, LAS Capital and LandX Motors, have not exerted control or undue influence over the Debtors.  I further understand that LAS Capital and LandX Motors are not an equity holder of, nor a lender to, any of the Debtors.  I further understand that during the Chapter 11 Cases, including with respect to the Debtors' sale process, neither LAS Capital, LandX Motors, Mr. Burns, nor Mr. Rodriguez have (a) had any affiliation with the Debtors except as a third-party bidder, such third-party bidder's assignee, and as a principal or manager of such entities, respectively or (b) had any involvement in or control over any decisions made by the Debtors in connection with the sale process, including with respect to the selection of the Successful Bidder.

16. The purchase price for the Assets was determined after a comprehensive marketing process run by Jefferies, together with the Debtors' other advisors.  I am not aware of any collusive conduct between LAS Capital, LandX Motors, and any person or entity with respect to the proposed sale.  Based on my involvement in the sale process, I believe LAS Capital and LandX Motors have at all times acted in good faith.

AMERICAS 125201623

17. I also believe that all of the negotiations concerning the sale and the Asset Purchase Agreement were extensive and conducted in good faith and at arms' length. I believe LAS Capital's offer for the Assets is fair and reasonable under the circumstances and was higher and better than all other offers submitted by the other Interested Parties. The sale should generate $10 million in proceeds (and LAS Capital's or LandX Motors's assumption of certain liabilities) for the estates. The closing of the transactions contemplated by the Asset Sale Agreement is anticipated to occur on or before October 31, 2023.

### Sale Free and Clear

18. I understand that LAS Capital or LandX Motors are acquiring the Assets free and clear of any liens, claims, encumbrances, or interests (except for the Permitted Encumbrances), in each case as set forth in the Asset Purchase Agreement and the proposed Sale Order. Based on my involvement in the sale process and negotiations with LAS Capital, I believe that LAS Capital or LandX Motors would not be acquiring the Assets if such assets could not be acquired free and clear of all liens, claims, encumbrances, and interests (except for the Permitted Encumbrances).

19. Further, based on my involvement in the sale process and negotiations with LAS Capital, I believe that LAS Capital and LandX Motors would not have agreed to the transactions contemplated by the Asset Purchase Agreement if it could be held liable for claims against the Debtors under any theory of successor liability, de facto merger, substantial continuity, or similar theories related to or arising under any local, state, or federal laws.

### Conclusion

20. Given the sale process and efforts described above and based on my experience, I believe that (a) Interested Parties were afforded a fair and reasonable opportunity to conduct due diligence and submit offers to acquire the Assets and (b) the proposed sale to LAS Capital or

LandX Motors is the best sale transaction presently available to the Debtors. Additionally, I am not presently aware of any other entity having proposed to the Debtors a viable sale transaction for the Assets for greater value to the Debtors' estates than the proposed sale to LAS Capital or LandX Motors.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:      October 16, 2023
                New York, New York

                                                     */s/ Ryan Hamilton*
                                                     Ryan Hamilton
                                                      Senior Vice President
                                                     Jefferies LLC

AMERICAS 125201623