**Exhibit C**

**Liquidation Analysis**

**Liquidation Analysis**

I.    **Introduction**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code[1] requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each holder of a Claim or Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must: (1) estimate the cash proceeds (the "**Liquidation Proceeds**") that a chapter 7 trustee would generate if each Debtor's Chapter 11 Case were converted to a chapter 7 case on the Effective Date and the assets of such Debtor's estate were liquidated; (2) determine the distribution (the "**Liquidation Distribution**") that each non-accepting holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each holder's Liquidation Distribution to the value that such Holder would receive or retain if the Plan were confirmed and consummated ("**Plan Distribution**").

Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon certain assumptions discussed herein and in the Disclosure Statement.

II.    **Significant Assumptions**

Hypothetical recoveries to stakeholders of the Debtors in chapter 7 were determined through multiple steps, as set forth below.  The basis of the Liquidation Analysis is the Debtors' projected cash balance and assets as of December 31, 2023 (the "**Conversion Date**") and the net costs to execute the administration of the wind-down of the chapter 7 estate. The analysis assumes that each Debtor would commence a chapter 7 liquidation on or about the. Conversion Date under the supervision of a court appointed chapter 7 trustee. The Liquidation Analysis reflects the wind-down and liquidation of substantially all of the Debtors' remaining assets; the reconciliation, settlement or prosecution of remaining litigation; and the distribution of available proceeds to holders of Allowed Claims during the period after the Conversion Date until the completion of a wind-down in a hypothetical chapter 7 (the "**Wind-Down Period**").

The statements in the Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE.  THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE.  NEITHER

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (the "**Disclosure Statement**").

THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.  THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

Estimates were made of cash proceeds that might be received from the liquidation of the Debtors' assets after consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution, including the costs and expenses of a liquidation under chapter 7 arising from fees payable to the trustee and professional advisors to such trustee.

The Debtors' sources of liquidation proceeds are the estimated cash and cash equivalents as of the Conversion Date. The Debtors may obtain further proceeds from the pursuit of Retained Causes of Action. For the purpose of this liquidation analysis, the Debtors have not estimated the potential recovery under Retained Causes of Action. The Debtors believe that the recoveries on account of such Retained Causes of Action would be substantially less if pursued by a chapter 7 trustee, among other reasons, due to a lack of historical knowledge, chapter 7 trustee's statutory fees imposed on recoveries.

### III.    Estimate of Costs

Proceeds from a chapter 7 liquidation would be reduced by administrative costs incurred during the Wind-Down Period for the reconciliation of claims, pursuit of litigation and other obligations of the estate to administer the wind-down of the chapter 7 estate. These costs include professional fees (including attorney, and other tax and financial advisors) and trustee fees, subcontract labor, and other expenses.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, the Debtors have determined, as summarized in the following analysis and the "Best Interests Test" section of the Disclosure Statement, that the Plan will provide creditors with a recovery that is greater than creditors would receive pursuant to a liquidation of the Debtors' assets under chapter 7.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS.

**Consolidated Liquidation Analysis**
**December 31, 2023**

| | Ch 11 Plan | Ch 7 Liquidation | Variance | Comments |
|---|---:|---:|---:|---|
| **ESTIMATED RECOVERY** | | | | |
| **CASH** | | | | |
| Net Cash Flow excluding Sales Trans. as of 12/31 | $ 77,955,000 | $ 77,955,000 | $ - | Cash is the projected balance of cash as of the assumed effective date (December 2023); excludes any miscellaneous asset sale proceeds |
| Asset Sale Proceeds | $ 10,200,000 | $ 10,200,000 | $ - | |
| Jefferies Transaction Fee | $ (1,760,000) | $ (1,760,000) | $ - | $3M less fees incurred; less the $200k pre-petition payment less 20% holdback ($440K) which is included in professional fees holdback below |
| Litigation Proceeds | $ - | $ - | $ - | Although the Debtors believe that there may be litigation recoveries available, they have not estimated recoveries here given the difficulties of valuing litigation, but note that a Ch 7 Trustee would have little incentive to pursue recoveries when creditors are expected to be paid in full. |
| Miscellaneous Asset Sale Proceeds | $ 250,000 | $ 250,000 | $ - | Principally service vehicles and IT networking equipment |
| | $ 86,645,000 | $ 86,645,000 | $ - | |
| **PREPAID EXPENSES** | | | | |
| Prepaids with potential counterclaims from GUC | $ 5,000,000 | $ 0 | $ 5,000,000 | Gross book value is approximately $10M (assumes 50% recovery in Ch. 11 and no recovery in Ch. 7 in light of anticipated full payment to creditors). |
| Prepaids with *no* counterclaims from GUC | $ 1,500,000 | $ 0 | $ 1,500,000 | Estimated recovery of $1.5M in prepaid expenses with no counter claim, within total prepaid expenses of $14M with no recovery in Ch. 7. |
| | $ 6,500,000 | $ 0 | $ 6,500,000 | |
| **OTHER** | | | | |
| Tax Attributes | $ 0 | $ 0 | | See Note Regarding Tax Attributes Below |
| D&O Insurance Recoveries | $ - | $ - | $ - | Although the Debtors believe that there may be D&O insurance recoveries available, they have not estimated such recoveries here given the difficulties of valuing litigation, but note that a Ch 7 Trustee would have little incentive to pursue recoveries when creditors are expected to be paid in full. |
| Avoidance Actions | $ 0 | $ 0 | $ - | The Debtors have not valued avoidance actions insofar as there is an expectation that creditors will be paid in full. |
| | $ - | $ - | $ - | |
| **TOTAL CASH/VALUE AVAILABLE** | $ 93,145,000 | $ 86,645,000 | $ 6,500,000 | |
| **COMPANY/WIND DOWN COSTS** | | | | |
| Administrative Costs (estimated): | | | | |
| Outstanding Fee Applications through 12/31/23 | $ 7,569,000 | $ 7,569,000 | $ - | Pre confirmation invoices not paid through cash flow prior to 12/31/23 |
| Professional Fees (20% holdback only) | $ 4,346,000 | $ 4,346,000 | $ - | Represents full payment of the 20% holdback on fee applications |
| Post petition AP as of 12/31/23 | $ 100,000 | $ 100,000 | $ - | Estimated final post petition AP payments |
| Other Ch 11 Admin Expense/OCPs | $ 460,000 | $ 460,000 | $ - | Pre confirmation costs paid post 12/31/23; $208K final payroll, $286K legal |
| UST Quarterly Fees | $ 500,000 | $ 250,000 | $ 250,000 | Quarterly fee paid in January and April 2024 for Ch 11 (max estimated fee is $250K per quarter); For Ch 7, quarterly fee paid in January 2024 |
| Ch 11 Post Confirmation Expense | $ 1,500,000 | $ - | $ 1,500,000 | |
| Ch 7 Admin Expense | $ - | $ 1,500,000 | $ (1,500,000) | Estimated Professional fees for claims reconciliation and other wind down costs per legal counsel |
| Ch 7 Trustee Fees | $ - | $ 1,398,946 | $ (1,398,946) | 3% of total distributions to creditors and admin costs (excludes equity) |
| **TOTAL ADMINISTRATIVE COSTS** | $ 14,475,000 | $ 15,623,946 | $ (1,148,946) | |
| **TOTAL PROCEEDS/VALUE AVAILABLE FOR DISTRIBUTIONS** | $ 78,670,000 | $ 71,021,054 | $ 7,648,946 | |
| Pre-Petition Liabilities: | | | | |
| Estimated Unsecured Claims | $ 23,484,831 | $ 23,484,831 | $ - | Derived from Debtors' claims analysis of estimated allowable claim amount. Gross asserted claims; does not reflect any potential offset from $10M of gross vendor prepayments. Estimated recovery value is included in prepaid assets above. Does not include unliquidated claims. The deadline for governmental units to file Proofs of Claim has not yet passed and the total amount of such claims asserted against the debtors is not yet known. The Debtors' review and analysis of all claims is ongoing and actual claims ultimately allowed may vary from the estimates provided here. The Debtors, Claims Ombudsman and Post-Effective Date Debtors reserve the right to object to all claims on any grounds. |
| Identified Indemnification Claims | $ 1,711,402 | $ 1,711,402 | $ - | Represents identified liquidated portions of indemnification claims filed. Does not include unliquidated claims. |
| Interest Paid to Creditors on Pre Petition Claims | $ 828,000 | $ 828,000 | $ - | Assumes a full payment to creditors under the plan where interest is due as of the petition date; estimated as of date of publishing, subject to change |
| Rejection Damage Claims | $ 6,095,867 | $ 6,095,867 | $ - | Represents estimated rejection damages related to unexpired leases and executory contracts. |
| Cures Analysis | $ - | $ - | $ - | Estimated to be zero. |
| Employee Claims | $ 286,444 | $ 286,444 | $ - | Non contractual severance ($36K), California PTO ($230K), ER payroll tax ($20K) and misc other employee claims |
| **TOTAL PRE-PETITION LIABILITIES** | $ 32,406,544 | $ 32,406,544 | $ - | |
| **TOTAL PROCEEDS/VALUE AVAILABLE FOR PREFERRED EQUITY, COMMON EQUITY, AND 510(b) CLAIMS** | $ 46,263,456 | $ 38,614,510 | $ 7,648,946 | |
| **PREFFERED EQUITY LIQUIDATION PREFERENCE AND DIVIDENDS** | $ 31,484,000 | $ 31,484,000 | $ - | The Debtors do not believe that the liquidation preference and accrued dividends will be due upon their emergence under the proposed Chapter 11 Plan but have included to reflect that such value is available as of the effective date. |
| **TOTAL PROCEEDS/VALUE AVAILABLE FOR COMMON EQUITY AND 510(b) CLAIMS** | $ 14,779,456 | $ 7,130,510 | $ 7,648,946 | |
| **POTENTIAL VALUE OF TAX ATTRIBUTES** | $0 - $134,000,000 | $ - | | Federal NOLs are currently estimated to be approximately $629.6M through FY22 (these amounts will increase based on FY23 losses), with the assumption that the total potential benefit to the Post Effective Date Debtors would be a maximum of 21% of such Federal NOLs. Therefore, the Debtors estimate the potential benefit of such tax attributes to be in the range of $0 and $132M. The Post Effective Date Debtors' ability to utilize any such NOLs and realize value therefrom is subject to uncertainty and the Debtors can provide no assurance that they will be able to do so. NOLs are only available under certain Ch 11 post emergence debtor scenarios. |