```
1                       UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE
2

3   IN RE:                          .  Chapter 11
                                    .  Case No. 23-10831 (MFW)
4   LORDSTOWN MOTORS CORP. ,        .
    et al.,                         .  (Jointly Administered)
5                                   .
                                    .  Courtroom No. 4
6                                   .  824 Market Street
                         Debtors.   .  Wilmington, Delaware 19801
7                                   .
                                    .  Wednesday, October 18, 2023
8   . . . . . . . . . . . . . . .   .  10:30 a.m.

9                    TRANSCRIPT OF ZOOM HEARING
              BEFORE THE HONORABLE MARY F. WALRATH
10                 UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:          Morgan L. Patterson, Esquire
                              RICHARDS, LAYTON & FINGER, P.A.
13                            One Rodney Square
                              920 North King Street
14                            Suite 1200
                              Wilmington, Delaware 19801
15
                              -and-
16
                              David M. Turetsky, Esquire
17                            WHITE & CASE, LLP
                              1221 Avenue of the Americas
18                            New York, New York 10020

19  (APPEARANCES CONTINUED)

20  Audio Operator:           Lesa Neal, ECRO

21  Transcription Company:    Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.
```

1  APPEARANCES (CONTINUED):

2  For the Official
   Committee of
3  Unsecured Creditors:        Deborah T. Kovsky-Apap, Esquire
                               TROUTMAN PEPPER HAMILTON
4                                SANDERS, LLP
                               875 Third Avenue
5                              New York, New York 10022

6  For Foxconn EV
   Property Development:        Daniel J. Guyder, Esquire
7                              ALLEN & OVERY, LLP
                               1221 Avenue of the Americas
8                              New York, New York 10020

9  For the Official
   Committee of Equity
10 Security Holders:           Bennett Silverberg, Esquire
                               BROWN RUDNICK, LLP
11                             7 Times Square
                               New York, New York 10036

12

13 For LAS Capital:            Jennifer Madden, Esquire
                               SKADDEN ARPS SLATE MEAGHER
14                               & FLOM, LLP
                               155 North Wacker Drive
15                             Chicago, Illinois 60606

16 For the U.S Securities
   and Exchange Commission: David W. Baddley, Esquire
17                             UNITED STATES SECURITIES AND
                                 EXCHANGE COMMISSION
18                             950 East Paces Ferry Road, NE
                               Suite 900
19                             Atlanta, Georgia 30326

20

21 ALSO APPEARING:

22 In Propria Persona:         Rahul Singh, Pro Per

23

24

25

1                              INDEX

2  MOTIONS:                                                    PAGE

3  Agenda
   Item 8:    Motion of the U.S. Securities and Exchange        22
4             Commission for Order Extending Time to Take
             Action, to the Extent Necessary, to Determine
5             the Dischargeability of a Debt to a
             Governmental Unit Pursuant to 11 U.S.C. §§
6             1141(d)(6)
             [Docket No. 503 - filed October 3, 2023]
7
             Court's Ruling:                                    23
8
   Agenda
9  Item 9:    Debtors' Motion for Entry of an Order (I) (A)      7
             Establishing Bidding and Auction Procedures,
10            (B) Scheduling Certain Dates With Respect
             Thereto, (C) Approving the Form and Manner of
11            Notice Thereof, (D) Approving Contract
             Assumption and Assignment Procedures, and (E)
12            Granting Other Related Relief; and (II) (A)
             Authorizing the Debtors to Enter into a
13            Definitive Purchase Agreement and (B) Granting
             Other Related Relief
14            [Docket No. 16 - filed June 27, 2023]

15            Court's Ruling:                                    21

16 Agenda
   Item 10:   Motion of Rahul Singh for Relief to Defrauded      23
17            Shareholders
             [Docket No. 494 - filed September 29, 2023]
18
             Court's Ruling:                                    29
19

20                             EXHIBITS

21 DECLARATIONS:                                                PAGE

22 1) Declaration of Ryan Hamilton                              10

23 2) Declaration of Stephen S. Burns                           11

24 Transcriptionist's Certificate                               31

25

1          (Proceedings commenced at 10:30 a.m.)

2              THE COURT:  Good morning.  This is Judge Walrath.

3    We're here in the Lordstown Motors case.

4              Is everybody ready to proceed?

5              MS. PATTERSON:  Yes, thank you.

6              Good morning, Your Honor.  Morgan Patterson of

7    Womble Bond Dickinson, on behalf of the debtors.

8              Good to see you, Your Honor.  Can you hear me

9    okay?

10             THE COURT:  I can.

11             MS. PATTERSON:  Perfect.

12             Thank you so much for your time this morning, Your

13   Honor.  We had a number of matters going forward today, but a

14   majority have had orders entered or have been adjourned, so

15   we're down to just three matters.  That leaves us with one

16   uncontested matter from the SEC and two contested matters,

17   the sale motion and the motion by Mr. Singh.

18             So if it's okay with Your Honor, we were --

19             THE COURT:  Hold on one minute.  I'm getting a

20   note that apparently White & Case cannot access the --

21             MS. PATTERSON:  Okay.

22             MR. TURETSKY:  Good morning, Your Honor.  It's

23   David Turetsky of White & Case.  You'll note I'm appearing

24   from Livy Mezei's computer and I apologize for that.  My

25   computer did crash and so I'm having technical difficulties,

1  so I'm trying to forge on.

2          And so if Your Honor is content to let me proceed

3  as Livy Mezei, rather than my own name, I'm happy to do so.

4      (Laughter)

5          THE COURT:  All right.  We'll try to remember your

6  name, Mr. Turetsky.

7      (Laughter)

8          MR. TURETSKY:  Thank you, Your Honor.  I

9  appreciate it.

10          THE COURT:  All right.  Ms. Patterson, you may go

11  ahead.

12          MS. PATTERSON:  No problem at all.  Thank you for

13  alerting me to that, Your Honor.

14          So, Your Honor, that leaves us with three matters.

15  One is uncontested, a matter from the SEC at Agenda Item 8,

16  and then Agenda Items 9 and 10 are the debtors' sale motion

17  and Mr. Singh's motion for payment of his claims.

18          So if it's okay with Your Honor, I was going to

19  turn it over to Mr. Turetsky to handle the sale motion first?

20          THE COURT:  That's fine.

21          MS. PATTERSON:  Great.  Thank you very much, Your

22  Honor.

23          MR. TURETSKY:  Good morning, Your Honor.  David

24  Turetsky of White & Case on behalf of the debtors.  I'm

25  joined in the virtual courtroom, of course, by my Delaware

1 co-counsel, but by also my partners, Jason Zakia and Adam

2 Cieply.  And also with us on the virtual Zoom is Ryan

3 Hamilton of Jefferies, which is the debtors' investment

4 banker, and he has submitted declarations for the proposed

5 asset sell.

6       Here as well are Ron Meisler and Jennifer Madden

7 of the Skadden Arps firm.  They represent LAS Capital and

8 LandX Motors, Inc., which is the proposed buyer of certain of

9 the debtors' assets.

10       And I'm told also joining on the Zoom is Steve

11 Burns, who is the majority equity holder of LAS Capital and

12 LandX Holdings, Inc., which is the parent to LandX Motors,

13 Inc., who has guaranteed certain obligations, with respect to

14 the sale.

15       In the interests of full transparency, I will also

16 let the Court know up front, and as disclosed in the papers

17 of Mr. Burke, who was also formerly the CEO and a director of

18 the debtors, having resigned those positions in 2021, and

19 since then, he has not been employed by the debtors and was

20 not involved in the sale process, other than as a bidder and

21 as a guarantor.

22       Your Honor, just to clarify the record, because I

23 know it was presented that the sale motion is contested, we

24 have actually resolved all objections to the sale motion, to

25 the best of my knowledge, information, and belief.  We are

1  proceeding on an uncontested basis and I'm very pleased to

2  let the Court know that.

3              THE COURT:  Thank you.

4              MR. TURETSKY:  Your Honor, this is the debtors'

5  motion for an order under Section 363, approving a sale of

6  assets, free and clear of all liens, claims, encumbrances,

7  and interests to LandX Motors, Inc., which is the assignee of

8  LAS Capital, LLC, for the gross purchase price of

9  $10,200,000.

10             The terms of the proposed sale are as set forth in

11 the asset purchase agreement among the parties and that was

12 filed with the notice of successful bidder at Docket 488-1,

13 as amended, and subject to the proposed sale order that the

14 debtors filed with the Court earlier this morning at

15 Docket 581.

16             Mr. Burns, as I noted, is a guarantor under the

17 APA.

18             I'll just take the Court through a little bit, in

19 terms of the assets that are being sold, as well as an

20 explanation as to some of the changes in the proposed order

21 to provide some greater context.  The assets proposed to be

22 sold to LandX are those set forth as purchased assets in the

23 APA and that's just clarified by the proposed sale order that

24 was filed this morning.

25             Now, importantly, those purchased assets don't

1  include everything, but they do include many things.  The

2  purchased assets include vehicles owned by the debtors,

3  machinery owned by the debtors, IP inventory, IP contracts,

4  certain desktops, laptops, books and records.  They include

5  claims related to the purchased assets, but they do not

6  include, and, in fact, in the sale order are clear that

7  debtors' claims against current and former directors and

8  officers and equity holders are excluded assets, which go

9  with the debtors.  The sale would exclude cash, hand tools,

10 office supplies various leasehold improvements, and other

11 excluded assets.

12         Now Your Honor will note that the gross cash

13 purchase price of $10,200,000 is actually $200,000 higher

14 than what was in the original purchase agreement.  And the

15 reason for that is that the debtors and the purchasers, in

16 walking through, you know, a list of assets, determined that

17 they had certain differences in views and so the assets were

18 included --

19         AUTOMATED VOICE:  You are unmuted.

20         MR. TURETSKY:  Excuse me?

21         THE COURT:  Go ahead.  That was somebody joining.

22         MR. TURETSKY:  Your Honor, I'm hearing an echo I

23 didn't hear before.

24         THE COURT:  Hold on one second.

25         Is that resolved?

1        (No verbal response)

2            THE COURT:  All right.  Somebody joined in who was

3    not muted, so we got some echo.

4            Go ahead.

5            MR. TURETSKY:  Thank you, Your Honor.

6            So the reason for that is that the debtors and the

7    purchasers, in walking through a list of assets of their

8    Irvine facility and at site 1, in Farmington Hills, which is

9    the site for engineering, product development, and the

10   vehicle inspection 1and the like, determined that there were

11   some differences in views as to what was a purchased asset

12   and what was not a purchased asset.

13           To resolve those differences, the debtors and the

14   buyers agreed to clarifications, which are set forth in the

15   revised proposed order that was filed that all of the items

16   on that list would be, subject to certain exceptions, would

17   be purchased assets under the sale agreement, in exchange for

18   the (indiscernible) paying an additional $200,000.  And so

19   we've included language in the sale order that reflect these

20   changes and that language is at paragraphs J through N of the

21   revised sale order.  Again, I just want to explicit.  None of

22   the purchased assets include causes of action against former,

23   current or former directors or the like.

24           Your Honor, that will take me into the argument.

25   I'd like to, before doing that, set the evidentiary record if

1  I might.  So from an evidentiary perspective, the debtors'

2  request for approval of the sale is going to be supported by

3  two declarations.  The first is the declaration of Ryan

4  Hamilton of Jefferies, the debtors' investment banker.  That

5  was filed at Docket 563.

6          Mr. Hamilton, I'm told, is present on the Zoom and

7  available to testify and be cross-examined.  And I'd ask that

8  Mr. Hamilton's declaration be admitted into evidence.

9          THE COURT:  Any objection to that?

10      (No verbal response)

11          THE COURT:  All right.  It will be admitted and

12  made part of the record.

13      (Hamilton Declaration received in evidence)

14          MR. TURETSKY:  Thank you, Your Honor.

15          The second declaration is the declaration of

16  Stephen Burns, on behalf of the buyer.  That was filed at

17  Docket 564.

18          Mr. Burns, I'm advised is present on the Zoom and

19  available to testify and be cross-examined.  And I'd ask that

20  Mr. Burns' declaration be admitted into evidence.

21          THE COURT:  Could Mr. Burns join with the video so

22  I can make sure that he is present.

23          There he is.  Thank you, Mr. Burns.

24          All right.  Any objection to the admission of his

25  declaration?

1          (No verbal response)

2               THE COURT:  It will be admitted.

3          (Burns Declaration received in evidence)

4               THE COURT:  Thank you, Mr. Burns.

5               MR. TURETSKY:  Thank you, Your Honor.

6               The request for approval is also supported by the

7     various notices affidavits of service that have been filed,

8     with respect to the sale motion and the sale process.  Those

9     can be found at Docket Numbers 100, 270, 344, 350, 353, 369,

10    415, 530, 547, 548, and 553.

11              I'd ask the Court to take judicial notice of these

12    filings and consider them to be part of the evidentiary

13    record, as well.

14              THE COURT:  Okay.  Any objection?

15         (No verbal response)

16              THE COURT:  All right.  They are made part of this

17    record.

18              MR. TURETSKY:  And lastly, from an evidentiary

19    perspective, there have been notices of potential assumption

20    and assignment of the proposed cure amounts.  Those notices,

21    along with the relevant certificates of services were filed

22    at Docket Numbers 280, 415, 482, 492, 530, and 548, and I'd

23    likewise, ask the Court to take judicial notice of these

24    filings and consider them to be part of the evidentiary

25    record.

1          THE COURT:  Any objections?

2      (No verbal response)

3          THE COURT:  All right.  They are admitted as part

4  of the record.

5          MR. TURETSKY:  Thank you, Your Honor.

6          We would submit that the overall record here and

7  the facts support approval of the sale.  The standard for

8  approval of the 363 free-and-clear sale is reasonable

9  business judgment, adequate and reasonable notice, a fair

10 purchase price, and a good faith purchaser who purchases for

11 fair value.

12         So let's start with the business judgment, which

13 is supported by the Hamilton declaration and the facts of the

14 case.  As Your Honor is well aware, given the challenges

15 facing the debtors and their business, including declining

16 cash position and the lack of meaningful revenue, one of the

17 debtors' key objectives has been to maximize value for

18 creditors and stakeholders through one or more sales of

19 assets.

20         And in pursuit of that objective, the debtors

21 filed their sale motion on the first day of the case.  They

22 sought, and as Your Honor knows, this was hard-fought, to

23 obtain the approval of bid procedures to govern the process,

24 and they have been aided by the tireless work of those

25 employees working at the company and the advice of their

1  professionals, including Jefferies.  This has been an

2  extensive and vigorous sale process and it's been marketed,

3  in accordance with the bid procedures, and that is supported

4  by the Hamilton declaration.

5          We cast a very wide net.  There were outreaches

6  to 175 potentially interested parties, NDAs signed by 42.

7  There were two separate publications of the sale notice:  one

8  in *The Wall Street Journal*, one in the *Automotive News*.

9  (Indiscernible) with extensive information.

10          We've also given interested parties ample

11  opportunity to submit bids.  You'll recall that the original

12  bid deadline was September 8th.  The debtors submitted --

13  received, I'm sorry, five proposals by that date, but

14  determined that none was a qualified bid and determined, in

15  consultation with the committees, to extend the bid deadline.

16  That was done several times --

17          AUTOMATED VOICE:  You are unmuted.

18          THE COURT:  Go ahead.

19          MR. TURETSKY:  I'll (indiscernible).

20          That was done several times, ultimately, through

21  September 28th.  And as of the final bid deadline, there were

22  nine proposals, but the only proposal determined to be a

23  qualified bid, and, again, this was done in consultation with

24  the committees, was the proposal submitted by the buyer.

25          So after consulting with the committees, the

1  debtor selected the buyer as a successful bidder and on

2  September 29th, filed the notice, selecting LAS Capital, LLC

3  as the successful bidder and canceling the auction.  And all

4  of this, of course, is subject to Your Honor's approval.

5       And in addition to being the product of an open

6  and comprehensive sale process, the proposed asset sale was

7  hard-fought and it was at arm's-length; the arm's-length

8  nature of the transaction, supported by the declarations of

9  Mr. Hamilton and Mr. Burns.  We've been transparent.

10 Mr. Burns and Mr. Julio Rodriguez were parties affiliated

11 with the buyer; were previously the debtors' CEO and CFO,

12 respectively.  But they ceased being insiders on June 14th,

13 2021, and during the Chapter 11 cases, neither the buyer,

14 Mr. Burns, Mr. Rodriguez had any role with the debtors or the

15 sale process, except as a bidder, a guarantor, or a party

16 affiliated with the debtor.

17      And as stated in the Hamilton declaration, the

18 negotiations were conducted at arm's-length and neither

19 Mr. Burns, nor Mr. Rodriguez, had any involvement in, or

20 control, over the decisions made by the debtors in connection

21 with the sale process, including the selection of the buyer

22 and successful bidder.

23      So, Your Honor, from a business judgment

24 perspective, the facts, supported by the evidence,

25 demonstrate that this is a sound exercise of the debtors'

1  business judgment.  That the debtors conducted an open and

2  fair process, one at arm's-length, one that has been

3  extensive, and that it is amply supported by the record here.

4          From an adequate notice perspective, I've alluded

5  to the various certificates of service.  The record is

6  replete with sufficiency of the adequate notice that was

7  published and that was provided to all parties, including

8  shareholders.  So we submit that that prong is satisfied, as

9  well.

10          From a fair purchase price perspective, as set

11  forth in Mr. Hamilton's declaration, the buyer's offer for

12  the purchased assets is fair and reasonable under the

13  circumstances and is higher and better than all other offers,

14  again, as a result of an open and extensive process.  The

15  buyer is a good faith purchaser.  Each of the Hamilton

16  declaration and the Burns declaration established that the

17  proposed sale did not involve any collusion, that the parties

18  have acted in good faith, and that they have behaved in good

19  faith, and we believe (indiscernible) good faith purchaser

20  finding under Section 363 is therefore appropriate.  And

21  thus, based upon the record, I'll submit that the proposed

22  sale to the buyer satisfies the requirements for the sale

23  relief being sought.

24          Again, I'm pleased to report that there are no

25  remaining objections to the sale.  At the time of the

 1  debtors' reply, there were two open points.  One was with

 2  respect to an unresolved cure, with respect to a license

 3  agreement by Elaphe and one being an unresolved objection by

 4  the U.S. Department of Transportation.

 5          With respect to Elaphe's, the party agree that

 6  there are no cure costs associated with the Elaphe license,

 7  but the Elaphe and the debtors do reserve all rights as to

 8  non-license agreement claims among the parties and the

 9  debtors have added additional language to paragraph 44 of the

10  proposed order that was filed this morning to reflect that

11  resolution.

12          With respect to the Department of Transportation,

13  paragraph 56 of the revised proposed order has been modified

14  to include agreed-upon language with the United States.  I'm

15  told that resolves the objection by the Department of

16  Transportation.

17          I'd also like to indicate just for the record that

18  the debtors do understand that the buyer is not purchasing

19  any vehicles, including any Endurance trucks from the seller

20  for public consumption or use.  The debtors also understand

21  that the buyer is not purchasing any vehicles held or

22  operated by third party that are currently subject to federal

23  recalls or recall obligations.  And that the debtors

24  understand that the buyer is not purchasing the assets of

25  this as part of a going-concern.

1          And then the only other material changes to the
2    order are those to describe the clarified assets
3    (indiscernible), which are, as I said, in paragraphs J
4    through N of the proposal.
5          So, accordingly, unless Your Honor has any
6    questions, I'm content to request entry of the sale order and
7    pass the podium to other counsel.
8          THE COURT:  Does anybody else wish to be heard on
9    the proposed sale, then?
10         MS. KOVSKY-APAP:  Good morning, Your Honor.
11         Can you hear me okay?
12         THE COURT:  Yes.
13         MS. KOVSKY-APAP:  Good morning.  This is Deb
14   Kovsky from Troutman Pepper, on behalf of the Official
15   Committee of Unsecured Creditors.  I'm joined in the virtual
16   courtroom by my Delaware colleague Tori Remington.
17         First, the Committee wants to thank debtors'
18   counsel for consulting with us regularly throughout this
19   extended and sometimes challenging sale process, including
20   numerous late night complications, when Mr. Turetsky was
21   probably very tired of hearing from me.
22         While the Committee had hoped for a different
23   outcome, we agree that the proposed APA now before the Court,
24   including modifications with respect to the clarified assets,
25   represents the highest and best actionable bid received by

1  the debtors through this process.  Approval of the sale in

2  the Committee's view is an important step towards our goal of

3  inefficiency that unsecured creditors are paid in full, with

4  interest, as quickly as possible.  So for that reason and for

5  the reasons that have been laid out by the debtors, the

6  Creditors Committee supports approval of the sale to LAS

7  Capital.

8              THE COURT:  All right.  Thank you.

9              Anybody else?

10             MR. GUYDER:  Your Honor, if I might?

11             This is Dan Guyder of Allen & Overy, on behalf of

12  Hon Hai and the various Foxconn entities.

13             Mr. Turetsky is correct, we had filed a limited

14  objection with respect to the proposed cure and some other

15  issues concerning various Foxconn agreements and I understand

16  the buyer is not intending to take those contracts by

17  assignment.

18             It does raise, I think, some other questions that

19  remain to be discussed among the parties.  The purchased

20  assets here include substantial equipment and other assets

21  that are located on the Lordstown plant.  And just to put

22  that in perspective, the plant, itself, is over six million

23  square feet and I understand that the space occupied by the

24  Lordstown operations and assets is in excess of 600,000

25  square feet.  So there's a fair amount of space there, as

1   well as substantial amounts of equipment that will require
2   some logistics and effort in terms of transitioning that
3   equipment from the premises.
4           And as I think I've indicated to counsel for both,
5   the buyer and the debtors, Foxconn remains available to
6   assist in that process, you know, subject, obviously, to
7   reasonable limits.  But I think the APA contemplates access
8   for the buyer in normal times to undertake the process of
9   transitioning those assets.  But I just wanted to reserve our
10  claims and rights with respect to that process and we hope
11  that the debtors will proceed to closing, you know, with
12  speed here and turn next to the logistics of trying to deal
13  with transitioning assets and hopefully, there's no need to
14  come back to the Court to address matters related to that.
15          THE COURT:  All right.  Thank you.
16          Anybody else?
17          MR. SILVERBERG:  Good morning, Your Honor.
18          Are you able to hear me?
19          THE COURT:  I am.
20          MR. SILVERBERG:  Good morning.  It's Bennett
21  Silverberg from Brown Rudnick, on behalf of the Official
22  Equity Committee.  I'll be very brief.
23          I just wanted to reiterate the Equity Committee's
24  support of the sale and believe that the criteria required to
25  approve the sale have been satisfied through Mr. Turetsky's

1  fantastic presentation today.

2           THE COURT:  All right.  Thank you.

3           Anybody else?

4           MS. MADDEN:  Good morning, Your Honor.

5           Can you hear me?

6           THE COURT:  I can, Ms. Madden.

7           MS. MADDEN:  Jennifer Madden.  We're counsel to

8  the buyer LAS Capital and their assignee LandX.  I just

9  thought I'd make a brief statement to say that the statements

10 that Mr. Turetsky made on the record, we can confirm,

11 including that the buyer is not purchasing any vehicles,

12 including any (indiscernible) from the seller for public

13 consumption or use.  We are not purchasing any vehicles held

14 or operated by third parties that are subject to federal

15 recall or recalled obligations and they're not purchasing the

16 assets as a going-concern.

17           And with respect Mr. Guyder's comments, I believe

18 that the businesspeople have been in touch regarding the

19 transition and we'll continue to work with them on that

20 matter.

21           THE COURT:  All right.  Thank you.

22           Anybody else?

23      (No verbal response)

24           THE COURT:  Mr. Turetsky, I had one question, and

25 that is, you clarified that any actions against Ds and Os are

 1  preserved.

 2          Is there any release of the buyers that would

 3  impact on that?

 4          MR. TURETSKY:  So, Your Honor, there's a limited

 5  release of the buyer that is set forth in paragraph 19 of the

 6  proposed order and that limited release does apply to buyer

 7  parties, but it relates only to the sale transaction.  And

 8  there is additional clarifying language at the end of that

 9  paragraph that makes clear that it does not release any

10  claims on account of anyone's role as a former D&O or other,

11  you know, relationships with the debtors.  And then to beat

12  the point home further, in paragraph 20, there's a further

13  clarifying set of language.

14          THE COURT:  Paragraph 20, all right.  Thank you.

15          MR. TURETSKY:  Thank you, as well.

16          THE COURT:  Anybody else?

17      (No verbal response)

18          THE COURT:  All right.  Well based on the record

19  that has been made, it appears that the bid of LAS Capital is

20  the highest-and-best bid for the assets, that the debtor

21  conducted a fair and open process for the sale of those

22  assets, and that no other qualifying bid was received.

23          It appears that the conduct of the negotiations of

24  the asset purchase agreement were at arm's-length and in good

25  faith, so I am prepared to enter the sale order and to

1  include a finding under 363(n).

2         The form of order looked fine.  I did get a chance

3  to review the revisions contained in the order this morning,

4  which appeared to resolve the United States Government's

5  issues, so I will enter the order.

6         Just one note.  It has not yet been uploaded, so

7  I'll ask local counsel to make sure it's uploaded.

8         MR. TURETSKY:  Thank you very much, Your Honor.

9         MS. PATTERSON:  Thank you, Your Honor.

10         For the record, Morgan Patterson of Womble Bond

11  Dickinson.  We'll get that uploaded right after the hearing,

12  Your Honor.

13         And if it's okay with Your Honor, we can move on

14  to the two remaining matters.  I see Mr. Baddley from the SEC

15  on the line, and so if it's okay with you, Your Honor, I'll

16  let him address Item 8, which is his uncontested motion.

17         THE COURT:  Thank you.

18         MR. BADDLEY:  Good morning, Your Honor.  David

19  Baddley for Securities and Exchange Commission.

20         Can you hear me okay?

21         THE COURT:  I can.

22         MR. BADDLEY:  Okay.  I've had a little bit of

23  connectivity issues, but I have another computer off to my

24  right set up so if I have to make a switch, I'll do so

25  quickly, but hopefully, this will be fast.

1    The SEC filed a motion on October 3rd, Docket

2  Item 503, requesting an extension of the deadline to

3  November 10th, by which the SEC must file a complaint to

4  determine the dischargeability of the debt under

5  Section 1141(b)(6) of the Bankruptcy Code.

6    In addition to service through the Court's CM/ECF

7  system, we also served the motion on the parties who

8  requested notice in these cases and it's set forth in the

9  certificate of service at Docket Item 504.

10    Prior to filing the motion, I conferred with

11  counsel for the debtors, the Creditors Committee, and the

12  Equity Committee, and each agreed to the extension.  I have

13  not received any objections or other responses to the motion,

14  therefore, for the reasons stated in the motion, we would

15  request that the Court enter an order extending the deadline

16  to November 10th and we attached a proposed form of order to

17  the motion, again, at Docket Item 503.

18    I would be happy to answer any questions that the

19  Court may have.

20    THE COURT:  I had no questions.

21    Let me see if anybody else wishes to be heard on

22  that motion?

23    (No verbal response)

24    THE COURT:  I hear none.

25    I will grant the motion as uncontested.

1          MR. BADDLEY:  Thank you, Your Honor.

2          MS. PATTERSON:  Thank you, Your Honor.

3          Again, for the record, Morgan Patterson of Womble

4   Bond Dickinson on behalf of the debtors.

5          Your Honor, that brings us to the final matter on

6   the agenda, which is Agenda Item 10.  It's Mr. Singh's motion

7   for payment of his claims.  So given that this is Mr. Singh's

8   motion, I'm happy to cede the podium to him to present to

9   Your Honor and then I will speak briefly on the debtors'

10  objection.

11         THE COURT:  Okay.  Is Mr. Singh or anybody for

12  Mr. Singh?

13         MR. SINGH:  Yes.

14         Can you hear me?

15         THE COURT:  I can.

16         Do you have a -- can you put your video on.

17         MR. SINGH:  Probably not.

18         THE COURT:  You'll have to speak up.  What did you

19  say?

20         MR. SINGH:  Can you see me now, Your Honor.

21         THE COURT:  I can now; yes, Mr. Singh.

22         MR. SINGH:  Thank you, Your Honor.

23         I am very grateful for this opportunity to be

24  heard.  This will be no more than three minutes.  My motion

25  was titled relief to defrauded shareholders, but there was

1  some confusion about the claim forms regarding question nine

2  and in the signature section.

3          And question nine asks, is all or part of this

4  claim secured?  But there are only two options:  a no or a

5  yes.

6          And then in the signature section of the claim

7  form, there are only four options:  creditor, creditor's

8  attorney, trustee, et cetera, guarantor, et cetera.

9          Many shareholders on the claim are (indiscernible)

10 like myself, creditor, and no on question nine, but we

11 attached proofs on the number of shares that we own and the

12 costs that we paid.

13         So even though I was asking for my family's claims

14 to be processed, I was indirectly asking for all reasonable

15 claims to be processed from the current cash balance and

16 that's why in my motion I stated that claim register by

17 September 26th indicated 777 claims, totaling $11 million.

18         The claim bar date has passed and there are only

19 1,519 claims as of last night, seeking less than $38 million,

20 excluding shareholder claims seeking punitive damages,

21 excluding Foxconn claims, excluding debtors' top brass

22 claims.  So I would be great -- I mean, I'm kind of hoping

23 that all claims would be processed and, you know, before they

24 run out of money.

25         Thank you, Your Honor.

1          THE COURT:  Well, did you -- well, let me hear

2     from the debtor, then, on their response.

3          MS. PATTERSON:  Thank you, Your Honor.

4          It's Morgan Patterson of Womble Bond Dickinson on

5     behalf of the debtor.

6          Your Honor, I'll just -- I'll be brief.  I'll just

7     start out by saying, you know, the debtors are certainly

8     sympathetic to Mr. Singh and to all the claim holders and

9     have been working and continue to work very diligently to

10    process this case forward.  As Your Honor is aware, today is

11    the sale hearing and we have a plan and disclosure statement

12    on file, which we are processing through that in the next few

13    months.

14         As I said, we certainly sympathize with

15    Mr. Singh's position, however, we read his motion to be

16    seeking immediate payment for him, and as he indicated today,

17    for other creditors, and that, at this time, is not

18    appropriate.  That payment will come through the plan process

19    as the Bankruptcy Code provides.

20         You know, the debtors don't believe that it would

21    be appropriate at this time for Mr. Singh and other creditors

22    to jump in line.  As we set forth in our objection, paying

23    shareholders like Mr. Singh would violate the absolute

24    priority rule at this time, as we would be paying him ahead

25    of administrative and priority and unsecured claims.

1          So, certainly, we hear Mr. Singh and we appreciate

2 his position and we are working very diligently to get our

3 plan approved, and that is the appropriate mechanism for

4 payment on his claims and others.  And so we would ask Your

5 Honor to deny his motion today.

6          I'm happy to answer any questions that Your Honor

7 has.

8          THE COURT:  No, thank you.

9          Anybody else want to jump in?

10          MS. KOVSKY-APAP:  Thank you, Your Honor.

11          Deb Kovsky for the Creditors Committee.

12          We concur with the debtors that making

13 distributions, or other payments, to shareholders at this

14 time outside the context of a plan in violation of the

15 absolute priority rule would not be appropriate.  The

16 debtors, Equity Committee, and the Creditors Committee are

17 working expeditiously towards a consensual plan with

18 revisions that we hope will address most, if not all, of the

19 objections that have been received to date.

20          The treatment of securities claims and those

21 asserted by Mr. Singh will be dealt with through the plan and

22 that treatment, whether it involves payment or other

23 treatment, is going to be consistent with the Bankruptcy Code

24 and should only take place under a confirmed plan and not

25 preemptively at this time.

1          THE COURT:  Thank you.

2          Mr. Silverberg?

3          MR. SILVERBERG:  Good morning, Your Honor.

4          Again, Bennett Silverberg on behalf of Brown

5    Rudnick.  Again, we are certainly sympathetic with all the

6    shareholders and the position they find themselves in.

7          To the extent that Mr. Singh remains a shareholder

8    today, and it wasn't clear from this blackline whether he is

9    a shareholder, today we consider him part of our constituency

10   and we invite him to reach out to me or my firm to the extent

11   that he has any questions regarding the continuing

12   development of the plan and how equity plans are going to be

13   treated under the plan.

14          Thank you, Your Honor.

15          THE COURT:  All right.  Mr. Singh, any response?

16          Does that clarify --

17          MR. SINGH:  Yeah.  I wasn't really trying to jump

18   in line.  I was actually saying that all claims are

19   around 30 -- you know, if you calculate all the claims they

20   come out to around $32 million and that's, you know, secured,

21   unsecured, priority; that was my point.  If, somehow, you

22   know, if all claims could be processed, then I think, you

23   know, before they run out of money, and their plan is not

24   really obvious what the plan is going forward.  That was my

25   concern and I just wanted to, you know, let the Court know.

1          THE COURT:  All right.  Well, I think it's clear

2    under the Bankruptcy Code, you can't jump ahead and the

3    appropriate time for distribution will be after the plan is

4    confirmed.  And it appears that you are adequately

5    represented by counsel for the Equity Committee, whose

6    interests are to represent you and all the other

7    shareholders.

8          So at this time, I'm going to deny the motion and

9    let the plan process play out, as you understand, the assets

10   have to be sold first so that there is a pot of money that

11   can be distributed.  And if there are other assets that may

12   not be sold like claims against former directors and

13   officers, it may result in a recovery, but it's too early at

14   this stage to be distributing any monies.  Okay?

15         MR. SINGH:  Okay.  Thank you, Your Honor.  Thank

16   you.

17         THE COURT:  If I could have a form of order

18   submitted by Ms. Patterson, I'll enter that order denying the

19   motion.

20         MS. PATTERSON:  Absolutely, Your Honor.  We're

21   happy to do that.  Thank you very much.

22         THE COURT:  All right.

23         MS. PATTERSON:  And --

24         THE COURT:  Go ahead.

25         MS. PATTERSON:  No.  No, Your Honor, I apologize.

1  I was just going to say that is the end of our agenda.   So we

2  thank you and your staff very much for the time today.

3           THE COURT:   All right.   Thank you.

4           And we'll stand adjourned.

5           MS. PATTERSON:   Thank you, Your Honor.

6        (Proceedings concluded at 11:04 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                    October 20, 2023

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25