### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-10831 (MFW) |
| Lordstown Motors Corp., *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Re: Docket Nos. 361, 467, 522, 525, 526, 528, 529, 604, 605, 606, 624 & 625** |
| | **Hearing Date: October 31, 2023 at 10:30 a.m. (ET)** |

### DEBTORS' OMNIBUS REPLY IN SUPPORT OF REQUEST FOR
### <u>APPROVAL OF DISCLOSURE STATEMENT MOTION</u>

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

submit this reply (this "**Reply**") to the objections to the (a) *Disclosure Statement Pursuant to 11*

*U.S.C. § 1125 With Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and Its*

*Affiliated Debtors* [D.I. 361] (the "**Initial Disclosure Statement**") and (b) the *Debtors' Motion*

*for Entry of an Order (i) Approving the Disclosure Statement and the Form and Manner of*

*Notice, (ii) Approving Plan Solicitation and Voting Procedures, (iii) Approving Forms of*

*Ballots, (iv) Approving Form, Manner, and Scope of Confirmation Notices, (v) Establishing*

*Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of*

*the Plan, and (vi) Granting Related Relief* [D.I. 467][2] (the "**Solicitation Motion**").    In

connection with the Reply, the Debtors have filed the *Modified First Amended Joint Chapter 11*

*Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 624] (the "**Modified Amended**

**Plan**"), the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to Modified First*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corporation (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101).   The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, Solicitation Motion and Objections (ad defined below), as applicable.

*Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 625] (the "**Modified Amended Disclosure Statement**"), and the revised proposed order approving the Solicitation Motion (the "**Proposed DS Order**") contemporaneously herewith.  The Debtors respectfully state as follows.

<u>PRELIMINARY STATEMENT</u>

1.      The Debtors' filed their Chapter 11 Cases to, among other things, consolidate the resolution of claims in a single forum, sell assets in an efficient and value maximizing manner, prosecute their substantial claims against Foxconn, and maximize Distributions to Holders of Allowed Claims and Interests through a chapter 11 plan.  With both significant cash and significant unliquidated liabilities as of the Petition Date, the Debtors' paramount concern has been to proceed to confirmation as quickly as possible in order to minimize administrative cash burn and maximize the amount of distributions available for Holders of Allowed Claims and Interests.

2.      With that concern in mind, the Debtors have engaged in a dual track process to pursue one or more sales of assets, while simultaneously seeking to achieve a consensual plan. The sale process is now complete: the Debtors' sale of certain assets to LandX Motors Corp. (as assignee of LAS Capital, LLC) closed on October 27, 2023, following Court approval of the sale on October 18, 2023.  The Debtors are also now poised to move into the solicitation phase on a Modified Amended Plan that embodies a consensus between the Debtors and the appointed fiduciaries for the two main constituencies in these Chapter 11 Cases: the Creditors' Committee and the Equity Committee.

3.      On September 1, 2023, the Debtors filed their initial plan [D.I. 360] (the "**Initial Plan**") and Initial Disclosure Statement [D.I. 361].  On October 24, 2023, the Debtors filed a

first amended plan [Docket No. 605] (the "**Amended Plan**") and first amended disclosure statement [Docket No. 606] (the "**Amended Disclosure Statement**"). The Amended Plan and Amended Disclosure Statement were the result of nearly two months of lengthy negotiations among the Debtors, the Creditors' Committee, and the Equity Committee, and were supported by both of these official committees.

4.      The original hearing for this Motion was set for October 25, 2023. However, in order to provide the Court, the Objectors (defined below) and other parties in interest with additional time to review the amended documents, the Debtors proactively continued the hearing to October 31, 2023, while keeping the October 25, 2023 hearing on calendar to provide a status update to the Court and parties in interest. At the status conference on October 25, 2023, the Debtors communicated that they would continue to work with parties to try to resolve objections and narrow any issues before the Court.

5.      The Debtors have done just that (although the Debtors have not, to date, been able to resolve all objections). Following the hearing, the Debtors reached out to the Objectors daily and solicited comments or concerns with respect to the Initial Disclosure Statement. In many instances, the Debtors received comments that were more in the nature of "plan" comments rather than comments relating to disclosure. Nonetheless, the Debtors have sought to reasonably accommodate the issues.

6.      As a result of those continued discussions, the Debtors have modified the Amended Plan and the Amended Disclosure Statement as reflected in the Modified Amended Plan and the Modified Amended Disclosure Statement, filed concurrently with this Reply. Among these changes are modifications intended to resolve disputes regarding the consensual nature of the third party releases, by making clear that the **only** third party "Releasing Parties"

are (a) Holders of Claims and Interests who affirmatively vote to accept the Modified Amended Plan, (b) Holders of Claims and Interests who vote to reject the Modified Amended Plan, but affirmatively **opt in** to the releases by marking a box on their ballot, and (c) related parties to those described in (a) and (b) (*e.g.*, affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases. The Debtors have been advised that these changes resolve the objection of the U.S. Trustee.  The Debtors have also made certain clarifying changes to the Modified Amended Plan and Modified Amended Disclosure Statement to address certain concerns raised by Foxconn, and have been advised that Foxconn's objection to Modified Amended Disclosure Statement are resolved (with the parties reserving all rights in connection with the Modified Amended Plan).

7.      In addition, although the Debtors anticipate that the putative class plaintiffs may continue to oppose the Modified Amended Disclosure Statement, the Debtors have made significant changes to the Modified Amended Plan and Modified Amended Disclosure Statement to address their concerns.[3]  These  latest revisions (a) expressly carve the Putative Class Action Representatives out of the definition of "Releasing Parties" and add disclosures regarding the same and (b) incorporate language requested by certain of the putative securities class action Objectors related to the Debtors' directors and officers insurance.  Importantly, the Debtors do not concede that the Putative Class Action Representatives can bind other putative class members to the decision of the Putative Class Action Representatives to opt-out of the releases or affect the ability of such putative class members to consensually choose to be Releasing

---

[3] The Debtors are also in ongoing discussions with the SEC and will seek to resolve any remaining concerns ahead of the hearing on the Modified Amended Disclosure Statement.

Parties pursuant to the terms of the Modified Amended Plan, especially since no classes have been certified.  All parties reserve their rights on this point.

8.      The Debtors remain committed to proposing a consensual plan that is in the best interest of all stakeholders, and a disclosure statement that provides complete, clear, and transparent detail on the plan in a manner that provides stakeholders entitled to vote with all information they require to make an informed decision as to whether to accept or reject the Modified Amended Plan.  The Debtors submit that the Modified Amended Plan and Modified Amended Disclosure Statement accomplish these aims.  Moreover, the Debtors believe that the revisions to the Modified Amended Plan and Modified Amended Disclosure Statement sufficiently address and should resolve the disclosure statement issues raised in the Objections (or that have been otherwise raised to the Debtors), as set forth below and in the chart (the "**Reply Chart**") attached hereto as **Exhibit A**.

9.      To the extent the changes to the Modified Amended Plan and the Modified Amended Disclosure Statement do not fully resolve Objections to the same (the Debtors submit that they should), the Debtors respectfully request that the Court overrule such Objections and enter the Proposed DS Order.

10.      The Modified Amended Disclosure Statement unquestionably provides adequate information regarding the Modified Amended Plan and should be approved for that reason alone. Any remaining Objections to the third-party releases, after the revisions embodied in the Modified Amended Plan, are without merit and present confirmation, not disclosure issues, and, the Debtors respectfully submit, should not prevent approval of the Modified Amended Disclosure Statement.  To the extent Objectors argue that the scope of the third-party releases renders the Modified Amended Plan unconfirmable (it is not), such objections should be

5

overruled as premature. The Court need not consider such objections at this stage because any objections about the proper scope of the releases set forth in the Modified Amended Plan are quintessential plan objections that should be appropriately handled in connection with the confirmation of the Amended Plan. Those objections should not delay the Debtors' efforts to quickly and efficiently confirm a plan.

11.    To the extent that any Objector argues that the Modified Amended Plan is otherwise not confirmable due to issues such as classification and treatment, the Debtors submit that these are also quintessential confirmation issues that should not be considered at the disclosure statement stage.[4]

12.    Accordingly, the Debtors respectfully request that the Court overrule any unresolved Objections on the merits and enter the Proposed DS Order.

## OBJECTIONS

13.    The following objections to the Disclosure Statement and Solicitation Motion (collectively, the "**Objections**") were filed by various parties in interest:

- *Lead Plaintiff's Objection to the Debtors' Disclosure Statement and Disclosure Statement Motion* [D.I. 525] (the "**Ohio Class Action Objection**") filed by George Troicky ("**Ohio Lead Plaintiff**"), as court-appointed lead plaintiff in the securities class action captioned *In re Lordstown Motors Corp. Securities Litigation*, Case No. 4:21-cv-00616 (DAR) (the "**Ohio Securities Class Action**");

- *Objection by the U.S. Securities and Exchange Commission to Debtors' Motion to Approve Disclosure Statement, Plan and Solicitation Procedures, Forms of Ballots and Other Relief, and Reservation of Rights* [D.I. 522] (the "**SEC Objection**") filed by the U.S. Securities and Exchange Commission ("**SEC**");

- *Delaware Class Plaintiffs' Objection to Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of*

---

[4] At the hearing on October 25, certain of the Objectors indicated that they were continuing to consider the amendments to the Plan and to the Disclosure Statement and reserved the right to file supplemental objections. No such objections have yet been filed and the Debtors reserve the right to reply to such objections once filed.

*Ballots (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the plan, and (VI) Granting Related Relief* [D.I. 526] (the "**Delaware Class Action Objection**") filed by the lead counsel (the "**Delaware Class Plaintiffs**") in the securities class action captioned *In re Lordstown Motors Corp. Stockholders Litigation, C.A.* No. 2021-1066-LWW (Del. Ch.) (the "**Delaware Shareholder Class Action**");

- *Objection of Foxconn Parties to Debtors' Disclosure Statement with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 528] (the "**Foxconn Objection**") filed by Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., Foxconn Ventures Pte. Ltd., Foxconn Ltd. (Far East) and Foxconn EV System LLC (collectively, "**Foxconn**");

- *Objection of Ride Investor Group to Approval of the Debtors' Disclosure Statement* [D.I. 529] (the "**RIDE Objection**") filed by certain lead plaintiffs (the "**RIDE Investor Group**") in the action captioned *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454 (N.D. Ohio.) ("**RIDE Investor Group Action**"); [5] and

- *Objection of the United States Trustee to Approval of Disclosure Statement and Solicitation Procedures* [D.I. 537] ("**UST Objection**") filed by the U.S. Trustee.

## MODIFICATIONS TO THE PLAN, DISCLOSURE STATEMENT, AND SOLICITATION MATERIALS[6]

### I.    Summary of Modifications to the Plan

14.    As noted above, the Debtors filed a Modified Amended Plan on October [29], 2023.  Although the red and blue ink demarcating incremental changes incorporated into the Modified Amended Plan (from the Amended Plan filed on October 24, 2023), is relatively light, the revisions represent important changes by the Debtors with respect to the proposed releases

---

[5] The RIDE Investor Group Action is referred to as the Post-Petition Securities Action in the Amended Plan and Disclosure Statement.  For the purposes of this Reply, the Debtors' have adopted the naming convention of the self-proclaimed "RIDE Investor Group," one of the Objectors to the Solicitation Motion.

[6] This summary is provided solely for the convenience of the parties and the Court.  To the extent there are any conflicts or discrepancies between the summary and the Modified Amended Plan and Modified Amended Disclosure Statement, the provisions of the Modified Amended Plan and Modified Amended Disclosure Statement shall govern.

designed to remove any doubt that such releases comply with applicable law and this Court's standards for consensual third-party releases, as discussed above and in more detail below.

15.     Moreover, the Amended Plan (and now the Modified Amended Pan) each contained various modifications to the Initial Plan resulting from lengthy negotiations with the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") and the Official Committee of Equity Securities Holders (the "**Equity Committee**").    Among the most significant modifications is the revised classification and treatment of Claims and Interests. Unsecured creditors now occupy a single class.  Further, separate classes have been established for holders of Section 510(b) claims arising from the Ohio Securities Class Actions and the RIDE Class Action.  The Debtors submit that these changes and the related disclosure set forth in the Amended Disclosure Statement address (and should resolve) a substantial portion of the Objections (as discussed in more detail below and in the Reply Chart attached as **Exhibit A**).

16.     In addition, among other changes, the Amended Plan: (i) removes the cash pool construct for general unsecured trade claims included in the Initial Plan, (ii) unimpairs, (instead of subordinating), the Foxconn Preferred Interests, (iii) provides for additional oversight of the claims reconciliation process with respect to general unsecured claims by the Creditors' Committee, (iv) establishes a Claims Ombudsman with fiduciary duties to holders of general unsecured claims, and (iv) provides a new board of directors appointed by the Equity Committee to oversee the Post-Effective Date Debtors.  These modifications are discussed in more detail below.  In each case, the Debtors have included language in the Modified Amended Disclosure Statement (and before that the Amended Disclosure Statement) describing the changes.

17.     ***Releases***.  The consensual releases in the Modified Amended Plan have been revised such that the Releasing Parties now only include parties that (a) that affirmatively vote to

accept the plan, (b) are entitled to vote, vote to reject the plan, and check a box *opting in* to the releases, and (c) are related parties to those described in (a) and (b) (*e.g.*, affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases.

18.    *Revised Classification of GUCs & Removal of Cash Pool*.  The Initial Plan included two classes of general unsecured claims—one class of general unsecured trade claims and another for claims of governmental units and insiders, as well as indemnification claims. The Initial Plan further provided for a cash pool to serve as the exclusive source of recovery for the unsecured trade claims, whereas other general unsecured claims would recover from the Debtors' non-pool assets.  The Amended Plan (and now the Modified Amended Plan) removes the separate classification of general unsecured claims, placing all claims in the same class (Class 3 – General Unsecured Claims). The cash pool construct is also removed.[7]  Further, the Amended Plan (and now the Modified Amended Plan) contains language making clear that General Unsecured Claims must be paid or reserved for in full before lower priority claims are paid.

19.    *Addition of 510(b) Classes*.  The Initial Plan did not provide for separate classification of claims subordinated under section 510(b) of the Bankruptcy Code ("**Section 510(b) Claims**").  In the Modified Amended Plan (as in the Amended Plan), Section 510(b) Claims are separately classified.  The Modified Amended Plan (like the Amended Plan) now

---

[7] As detailed in the Reply Chart, attached hereto as **Exhibit A**, the SEC and Foxconn raised objections to the separate classification of general unsecured trade claims and the cash pool construct in the Initial Plan (or the level of disclosure surrounding such issues provided in the Initial Disclosure Statement).  These objections should now be moot in light the Amended Plan and Amended Disclosure Statement.

provides for two separate classes of Section 510(b) Claims and one elective settlement class for

claims related to the Ohio Securities Class Action, as follows:

   a.   <u>Class 8 – Section 510(b) Claims</u>.  This class includes all claims subject to
        subordination under section 501(b) of the Bankruptcy Code other than (1) RIDE
        Section 510(b) Claims and (2) if the lead plaintiff for the Ohio Securities Class
        Action elects to be treated under Class 10 of the Modified Amended Plan, Ohio
        Securities Class Action Claims that do not opt out of the settlement.   Under the
        Modified Amended Plan, Allowed Holders of Section 510(b) Claims would
        receive Common Stock Interests in an amount calculated pursuant to the formula
        set forth in <u>Article III.B.8.b</u> of the Modified Amended Plan, after accounting for
        any recoveries from applicable insurers or other third parties, and subject to the
        Post-Effective Date Debtors' election to cash out such Common Stock Interests.

   b.   <u>Class 9 – RIDE Section 510(b)</u>.  Holders in this class will receive recoveries on
        account of any Allowed Claims from the Debtors' insurance policies.   This
        treatment differs from Class 8 because the Debtors believe that Class 9 Claims are
        subject to available insurance.  On the other hand, the insurance companies whose
        policies would address Class 8 claims are disputing such coverage.

   c.   <u>Class 10 – Ohio Securities Class Action Claims</u>.  This class is an elective class
        that permits the Ohio Lead Plaintiff to elect to receive a $1,000,000 settlement on
        behalf of a putative class of claimants in lieu of the treatment set forth in Class 8.
        If the Ohio Lead Plaintiff elects to accept Class 10 treatment, a putative class will
        be sought to be certified solely for purposes of receiving distributions under the
        Plan and members of such class who do not opt-out will receive their pro rata
        share of the settlement amount. There is no guarantee that the proposed settlement
        will be accepted.[8]

   20.   ***Unimpairment of Foxconn Preferred Interests***.  The Initial Plan sought to impair

and equitably subordinate the Foxconn Preferred Interests.  The Amended Plan does not seek to

equitably subordinate such interests, but rather provides that the Foxconn Preferred Interests will

be unimpaired through reinstatement, which enables Foxconn to receive the same rights it had

under the *Certificate of Designation, Preferences and Rights of Series A Convertible Preferred

Stock Par Value $0.0001 of Lordstown Motors Corp.* after the Effective Date that it had prior to

---

[8] The Ohio Lead Plaintiff object to the Debtors' failure to separately classify Section 510(b) Claims.   Such
objections are addressed by the modifications detailed above.

the Petition Date.  The Debtors have been advised that this change, along with certain clarifying changes reflected in the Modified Amended Plan and the Modified Amended Disclosure Statement resolves Foxconn's disclosure statement objection.

21.     ***Additional Provisions with Respect to Creditors' Committee and Claims Reconciliation***.  The Modified Amended Plan provides for a Claims Ombudsman to reconcile the General Unsecured Claims filed against the Debtors.  The Creditors' Committee will (a) jointly, with the Equity Committee, select the Claims Ombudsman (with the consent of the Debtors, not to be unreasonably withheld), (b) consult with the Claims Ombudsman and the Debtors to determine reserves for allowed and disputed claims, (c) continue to exist following the Effective Date (subject to a $100,000 fee cap) to monitor the claims reconciliation and administration process, and (iv) have various other consultation rights, as set forth in the Modified Amended Plan.

22.     ***Additional Matters with Respect to Equity Committee***.  The Debtors filed the Initial Plan prior to the appointment of the Equity Committee.  The Modified Amended Plan provides for various provisions which reflect the Debtors' plan negotiations with the Equity Committee.  Among other things, the Modified Amended Plan provides that the Equity Committee will (a) select the Post-Effective Date Board of the Debtors (with the consent of the Debtors, not to be unreasonably withhold), (b) jointly, with the Creditors' Committee, select the Claims Ombudsman (with the consent of the Debtors, not to be unreasonably withheld), (c) in its discretion, elect to establish a litigation trust (with the consent of the Debtors, not to be unreasonably withheld), comprised of the Company's causes of action against third-parties, and (d) have various consultation rights, as set forth in the Modified Amended Plan.

11

II.     **Summary of Modifications to the Disclosure Statement**

23.     The Debtors have modified their Disclosure Statement to explain the terms of the Modified Amended Plan and add additional disclosures and information to consensually resolve as many of the Objections as possible.    The modifications incorporated into the Modified Amended Disclosure Statement (and, in most instances, the Amended Disclosure Statement) to address the Objections are set forth in the Reply Chart attached as **Exhibit A**.    Of particular note, the Debtors have included substantial additional detail regarding the proposed releases (including the scope of and basis for the proposed releases), the Debtors' ongoing investigation into potential derivative claims against current and former directors and officers, estimated recoveries to Holders of Claims and Interests, detail on the Debtors' insurance policies relevant to claimants in the putative class actions pending against the Debtors, and Chapter 11 Case updates.    In addition, the Modified Amended Disclosure Statement (like the Amended Disclosure Statement) now attaches a complete liquidation analysis as **Exhibit C**.

III.    **Summary of Modifications to the Solicitation Materials**

24.     The Debtors also revised the Disclosure Statement and all exhibits thereto, including the Solicitation Procedures, to account for the revisions reflected in the Modified Amended Plan.    Among other things, the DS Order and its exhibits now reflect the addition of Classes 8, 9, and 10, including the Class 10 Election contemplated by the Modified Amended Plan.    Importantly, the Ballots attached to the DS Order reflect the revised consensual releases and outline in plain language how parties can vote to accept such releases, otherwise opt in to the releases, or avoid granting the releases.

25.     The revised Solicitation Procedures also provide that all claims in Class 8 (Section 510(b) Claims) and Class 9 (RIDE Section 510(b) Claims)—which the Debtors

dispute—will be allowed temporarily, for voting purposes only, in the amount of $1.00 per such

Holder.  Such temporary allowance is solely for voting purposes and will not be binding upon

the Holder, the Debtors, or any other party for any purposes other than voting on the Plan.   To

the extent, Holders in Classes 8 and 9 seek different treatment of their claims for voting

purposes, they must file a Rule 3018(a) Motion with the Bankruptcy Court by November 27,

2023 at 4:00 pm (ET) and in accordance with the Solicitation Procedures.

## **REPLY**

### I.    **The Disclosure Statement Meets the Applicable Standard for Approval**

26.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a chapter 11

plan must provide holders of impaired claims and interests entitled to vote on a plan with

"adequate information" regarding the plan.  *See* 11 U.S.C. § 1125(a)(1).  Section 1125(a)(1) of

the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan

27.    The determination of whether a disclosure statement contains adequate

information focuses on the facts and circumstances of each case.  *See Oneida Motor Freight, Inc.*

*v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (citing H.R. Rep. No. 595, 97th Cong.,

1st Sess. 266 (1977)) ("From the legislative history of § 1125 we discern that adequate

information will be determined by the facts and circumstances of each case."); *see also The Bank*

*of N.Y., Mellon Tr. Co. v. Leonard Becker* (*In re Lower Bucks Hosp.*), 488 B.R. 303, 317 (Bankr.

E.D. Pa. 2013) ("What constitutes 'adequate information' is determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court.") (citing *Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.*), 844 F.2d 1142, 1156–57 (5th Cir. 1988)).

28.     Even where "a disclosure statement could have included more information . . . a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances." *In re Price Funeral Home, Inc.*, No. 08-04816-8-ATS, 2008 Bankr. LEXIS 3462, at *5 (Bankr. E.D.N.C. Dec. 12, 2008).

29.     In its section 1125 inquiry, the Court need not consider specialized issues that a particular creditor may wish to raise with respect to a plan, nor is a debtor required to explain why its chapter 11 plan is superior to other, hypothetical plans. *See* 11 U.S.C. § 1125(a)(1) ("[A]dequate information need not include such information about any other possible or proposed plan."). Further, the "adequate information" standard does not require that a disclosure statement include information about every aspect of a debtor's business, its proposed plan, or claims asserted against the debtor. Rather, as expressed in the statute, "adequate information" is limited to "information of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125.

30.     Courts have identified categories of information that generally should be included in a disclosure statement, while acknowledging that certain categories of information that are necessary in one case may be omitted in another. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr.

S.D. Ohio 1988).  The Modified Amended Disclosure Statement contains adequate information

in each of those categories:

- The Debtors' corporate history and structure, business operations, and prepetition capital structure and indebtedness (Section II.A);

- Events leading up to the Chapter 11 Cases, including the Debtors' pre-bankruptcy activities and significant events in the Chapter 11 Cases (Section II.F, G);

- The classification and treatment of Claims and Interests under the Modified Amended Plan, including which Classes are entitled to vote and how to vote (Art. IV.B., C.);

- Releases contemplated by the Modified Amended Plan that are integral to the Restructuring Transactions and overall settlement of Claims and Interests pursuant to the Modified Amended Plan (Section IV.H.);

- Certain important effects of Confirmation of the Modified Amended Plan (Section IV.K.);

- The means of implementation of the Modified Amended Plan (Section IV.E);

- The effect of the Modified Amended Plan on existing securities (Section IV.E.8);

- Certain U.S. federal income tax consequences of the Modified Amended Plan (Section V);

- Certain risk factors that Holders of Claims and Interests should consider before voting to accept or reject the Modified Amended Plan and information regarding alternatives to Confirmation of the Modified Amended Plan (Section VII & VIII); and

- The statutory requirements for Confirmation of the Modified Amended Plan (Section IX).

31.     Notably, there is *no* category of information required by case law or statute that

the Debtors have failed to disclose.  Moreover, while certain parties raise objections to the level

of information included in the Initial Disclosure Statement, the modifications embodied in the

Modified Amended Disclosure Statement—including significant modifications made specifically

15

to address such objections—remove any doubt that the Debtors' have failed to provide adequate information.

II.    **The Modified Amended Plan and Modified Amended Disclosure Statement Sufficiently Address the Objections**

32.    The Debtors received several Objections to the Initial Disclosure Statement.  The Debtors have diligently worked with the Committees to amend the Initial Plan and Initial Disclosure Statement to address most of the Objections.  The Debtors have also sought to work with the Objectors, to resolve their Objections and have been advised that the Objections of the U.S. Trustee and Foxconn have each been resolved.  Although not all Objections have to date been resolved, the Debtors intend to continue to try to do so.  Nevertheless, for the reasons set forth below and in the Reply Chart attached as **Exhibit A**, the Debtors submit that any remaining Objections should be overruled and that the Proposed DS Order should be entered.

A.    **The Modified Amended Disclosure Statement Sufficiently Addresses the Inadequate Disclosure Objections**

33.    The Ohio Class Action Objection, the RIDE Objection, and the Delaware Class Action Objection, among others, argued that the Initial Disclosure Statement failed to provide "adequate information" required under section 1125(a)(1) of the Bankruptcy Code.  The Ohio Class Action Objection argued that the Initial Plan improperly classified claims subordinated under section 510(b) with equity security interests and further argued that the Initial Disclosure Statement failed to provide adequate information on, among other things, the treatment of their claims, preservation of relevant evidence for the Ohio Class Action Objection post-Effective Date, the scope of the releases included in the Plan, and the preservation of insurance proceeds.  *See* Ohio Class Action Objection, ¶¶ 1, 3, 65-72, 77-83.  The RIDE Objection asserted that the Initial Disclosure Statement did not provide adequate information regarding possible recoveries

for interest holders, the RIDE Investor Group Acton, preservation of relevant evidence, or their rights with respect to and preservation of D&O insurance policies, and releases. *See* RIDE Obj., ¶¶ 38-41, 48, 54. The Delaware Class Action Objection, brought by putative class plaintiffs who have not asserted any Claims against the Debtors, argues that the Disclosure Statement should contain information regarding Securities Litigation and the scope and effects of the releases. *See* Delaware Class Action Obj., ¶¶ 20, 29, 35, 41-42.

34.    The Debtors have added additional information to the Modified Amended Disclosure Statement to address the Objections described above.  The Modified Amended Disclosure Statement (as did the Amended Disclosure Statement) includes robust details regarding the Ohio District Court Class Action, the RIDE Investor Group Action and the other Putative Class Actions, including the history, status and issues of the cases and the treatment of claims related to the cases. *See* Modified Amended Disclosure Statement Art. II.F; Art. IV.C.2.(viii); Art. IV.C.2.(ix). The Modified Amended Disclosure Statement (like the Amended Disclosure Statement) also explains that the Debtors will preserve relevant evidence for the Putative Class Actions in accordance with applicable law. *See id.* at Art. II.E.; Art. III.N. The Modified Amended Disclosure Statement makes clear that all insurance policies are preserved and provides that access to the Debtors' insurance policies is not altered by the Amended Plan. *See id.* at Art. IV.E.11, IV.E.21. Additionally, the Modified Amended Disclosure Statement includes explanations regarding the third-party releases and a special note explaining the impact of consenting to the releases for potential class members in the Putative Class Actions. *See id.* at Art. IV. H.4, Art. VI.E. Moreover, the Modified Amended Disclosure Statement specifies the directors and officers named in each Putative Class Action and derivative actions, and identifies the Debtors' current directors and executive officers. *See id.* at Art. II.E.2.   The Modified

17

Amended Disclosure Statement also explains that the Debtors have retained Winston & Strawn LLP ("**Winston**") and appointed an independent Derivative Claims Oversight Committee to evaluate potential derivative claims, including against current and former directors and officers, and that the inclusion of any person as a released party under the Modified Amended Plan is subject to the recommendations of the Derivative Claims Oversight Committee.  *See id.* at Art. III.F.

35.     Accordingly, Modified Amended Disclosure Statement contains adequate disclosure of material information.

**B.     The Modified Amended Plan Has Addressed Certain Objections to the Plan**

16.     The Ohio Class Action Objection argues that the Initial Plan was patently unconfirmable—and the Initial Disclosure Statement thus could not be approved—because it did not separately classify the Section 510(b) Claims.  *See* Ohio Class Action Objection, ¶¶ 38-45. As detailed in Paragraph 19 above, the Modified Amended Plan now separately classifies Section 510(b) Claims from Common Stock Interests by creating two new classes of Section 510(b) Claims and one elective class.  Modified Amended Plan Art. III.B.  The creation of the new classes for Section 510(b) Claims addresses the Ohio Lead Plaintiff's Objection.

**C.     A Letter to Interest Holders from Counsel to the Delaware Class Plaintiffs is Unnecessary and Inappropriate**

17.     The Delaware Class Action Objection argues that the Debtors should include in their solicitation package a letter from counsel to the Delaware Class Plaintiffs expressing the Delaware Class Plaintiffs' view that voting creditors/interest holders should vote to reject the Plan and the proposed releases contained therein.  Delaware Class Action Objection ¶¶ 35-40 & Ex. A.  Such a letter is both unnecessary and inappropriate.  To begin, the Modified Amended

Disclosure Statement includes extensive disclosures regarding the Putative Class Actions, including the Delaware Class Action. Furthermore, both the Modified Amended Plan and the Modified Amended Disclosure Statement make clear that the Delaware Class Plaintiffs are not Releasing Parties, but also disclose that there is a dispute about whether the class should be certified and whether Delaware Class Plaintiffs have authority to bind the putative class members. *See* Modified Amended Plan, Art. I.A.123 & VIII.D, Modified Amended Disclosure Statement, Art. IV.H.4 & VI.E. They also disclose that, in the event that the Delaware Class Plaintiffs are deemed to not have such authority, all Releasing Parties would be releasing the Released Parties with respect to all Claims relating to, or asserted in, the Putative Class Actions, including not only the Delaware Shareholder Class Action, but also the Ohio Securities Class Action and the RIDE Investor Group Action. *See* Modified Amended Plan, Art. VIII.D, Modified Amended Disclosure Statement, Art. IV.H.4 & VI.E. Accordingly, there is no need for the letter that Delaware Class Plaintiffs seek to provide. Furthermore, such a letter would be inappropriate. Pursuant to the Bankruptcy Code, the Debtors are vested with the exclusive right to solicit votes on the Modified Amended Plan and it would be inappropriate to compel the Debtors to include letters from third parties urging rejection of the Modified Amended Plan, at additional expense to the estates. This is particularly so where—as here—the third party in question is not a party in interest (the Delaware Shareholders Class Action does not name the Debtors as a defendant). Accordingly, the Delaware Class Plaintiffs request for inclusion of a letter from their counsel in the solicitation package, should be denied.

**D.    The Court Should Overrule the Ohio Lead Plaintiff's Objection That They Should Be Permitted to Opt-Out of the Releases on Behalf of the Uncertified Class in the Ohio Securities Class Action**

18.    The Ohio Lead Plaintiff's argument that they should be permitted to opt-out of the Third Party Releases on behalf of the uncertified class in the underlying Ohio Securities Class Action (Ohio Lead Plaintiff Obj., ¶¶ 84-89) should be overruled for two reasons: (1) the Ohio Lead Plaintiff's request is flawed on the merits—the Debtors dispute his authority to bind the underlying putative class with respect to the releases, and (2) notwithstanding that dispute, the Modified Amended Plan incorporates language to carve out the Ohio Lead Plaintiff himself (along with the other lead plaintiffs in the Putative Class Actions) from the releases and reserve the parties' rights with respect to class certification.

19.    *First*, the putative class in the Ohio Securities Class Action was not certified prior to the Petition Date.  Since the Chapter 11 Cases were filed, the Ohio Lead Plaintiff has not even sought (let along obtained) authority through Bankruptcy Rule 7023 to act on behalf of the putative class in these Chapter 11 Cases.  In short, he has no authority to act on behalf of the putative class and the Debtors have no obligation so incorporate plan provisions that pre-judge the Ohio Lead Plaintiff's authority on behalf of the class or its members.  Indeed, a self-described "class representative" (either a named plaintiff or his or her counsel) is only authorized to assert a claim in his or her individual capacity.  *See In re Motors Liquidation Co.*, 591 B.R. 501, 524, 537 (Bankr. S.D.N.Y. 2018) ("If a class is not certified, a representative may only assert a claim in an individual capacity and cannot bring a claim on behalf of any absent claimants. . . . Absent certification, the class claim filed only asserts claims on behalf of the named claimants individually.") (citations omitted); *see also Associated Cmty. Servs.*, 520 B.R. 650, 654–55 (Bankr. E.D. Mich. 2014) ("Bankruptcy Rule 3001(b) requires that a proof of claim

be filed either by the actual creditor or that creditor's authorized agent."); *In re FirstPlus Fin., Inc.*, 248 B.R. 60, 72 (Bankr. N.D. Tex. 2000) (denying a request for an uncertified class representative to file a class proof of claim because "Rule 3001(b) requires an authorized agency relationship, and [a] putative class representative is not authorized by anybody.") (citations and quotations omitted).

20.     Moreover, courts have found that, because the "class representative" must be expressly authorized to file a proof of claim for each individual member of a purported class before executing the form, claims asserted in a proof of claim by unauthorized agents on behalf of absentee creditors must be expunged. *See Mission Towers*, No. 07-287, 2007 U.S. Dist. LEXIS 89913, at *9, 12 (D. Del. Dec. 6, 2007) ("An agent may file a proof of claim only for those individuals who have expressly authorized the agent to do so. . . . [A] class representative cannot be considered the authorized agent of all of the creditors of [a] putative class . . . [unless] there has been a manifestation by the principal to the agent that the agent may act on his account.") (citations and quotations omitted), aff'g *In re W.R. Grace & Co.*, 366 B.R. 302, 307 (Bankr. D. Del. 2007) (expunging individual claims that lacked authorization at the time of filing, even though they were authorized after the bar date had passed because "[a]llowing ratification of unauthorized claims beyond the bar date would leave the door open indefinitely for claims to disrupt the reorganization process."), *aff'd*, *In re W.R. Grace & Co.*, 316 F. App'x 134 (3d Cir. 2009). Put another way, these courts have adhered to a bright-line rule that "Rule 3001(b) allows a creditor to decide to file a proof of claim and to instruct an agent to do so; it does not allow an 'agent' to decide to file a proof of claim and then inform a creditor after the fact." *In re Standard Metals Corp.*, 817 F.2d 625, 631 (10th Cir. 1987), *vacated on other grounds*, 839 F.2d 1383 (1988) (rejecting that class proofs of claim may be filed on behalf of

members of a certified class absent individual authorization to file a proof of claim in a bankruptcy proceeding); *see Mission Towers*, 2007 U.S. Dist. LEXIS 89913, at *8–9 (citing *In re Standard Metals Corp.*, 817 F.2d at 631)).

21.    Had the Ohio Lead Plaintiff wished to seek authority to act on behalf of the uncertified class in his prepetition putative class action, the appropriate time to do so would have been ***prior to*** the claims bar date (which passed on October 10, 2023).  *See In re Sacred Heart Hosp.*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) (rejecting a motion for certification of a class proof of claim "filed only at the eleventh hour, eleven days before the bar date was to run and just prior to the holiday season" and noting that "[t]he most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors."); *In re Northwest Airlines Corp.*, No. 05-17930, 2007 Bankr. LEXIS 5114, at *11 (Bankr. S.D.N.Y. Sept. 26, 2007) (stating that "the time for counsel to seek class certification" was prior to the bar date and denying putative class representative's motion for class certification that was filed after the bar date); *see also In re Associated Cmty. Servs.*, 520 B.R. at 658 ("The time to get class certification was before filing the proof of claim on behalf of the putative class.") (emphasis in original); *see In re Pac. Sunwear of Cal. Inc.*, No. 16-10882, 2016 Bankr. LEXIS 2579, at *16 (Bankr. D. Del. June 22, 2016) (finding that the timing of the Rule 7023 motion prior to the bar date removed the "surprise element" and would not adversely affect the administration of the debtors' estate).

22.    The Ohio Lead Plaintiff had every opportunity to seek authority to act on behalf of his purported class in these Chapter 11 Cases.  Not only was the Ohio Lead Plaintiff properly noticed regarding the filing of these Chapter 11 Cases as well as the claims bar date in the Chapter 11 Cases; but also, he participated in these Chapter 11 Cases by appearing through

counsel, filing six proofs of claim (three on behalf of himself and three purportedly on behalf of the putative class), and by filing his objection to the Solicitation Motion.  However, he has failed to follow the procedure recognized by courts within this circuit to seek and obtain authority to certify a class pursuant to Bankruptcy Rule 7023 prior to the claims bar date.  Indeed, he has still failed to do so as of the time of this Reply.

23.    The Ohio Lead Plaintiff has not cited any case law or other support for his position that the Debtors should be required to provide him with the opportunity—through their plan—to act on behalf of the uncertified putative class in the Ohio Securities Class Action.  That is because no such support exists and that he has no authority to act on behalf of his uncertified putative class.  The Ohio Lead Plaintiff's objection that the Court hold up solicitation unless he is granted relief that he has not even been sought—let alone demonstrated is warranted (it is not)—should be overruled.

24.    **Second**, although the Debtors dispute the Ohio Lead Plaintiffs' authority to act on behalf of the uncertified class in the Ohio Securities Action, they have added language in the Modified Amended Plan that reserves his rights (as well as the other putative class representatives in the Putative Securities Actions) and those of the Debtors and other parties in interest with respect to this issue.  In particular, the Debtors revised the definition of "Releasing Parties" to expressly carve out each class representative.  Modified Amended Plan, Art. I.A.123. In addition, the Initial Plan and Initial Disclosure Statement provisions have been revised to add language clarifying the dispute regarding the lead plaintiffs' authorities to bind the classes with respect to the releases.  Modified Amended Plan, Art. VIII.D; Modified Amended Disclosure Statement, Art. IV.H.4 & Art. VI.E.  This language ensures that the putative class representatives are not prejudiced by the releases to the extent of their authority with respect to the classes they

purport to represent, while at the same time preserving the rights of all parties with respect to that authority and providing that, absent such authority, Releasing Parties will be releasing claims with respect to the Putative Class Actions.   The compromise embodied in this language is particularly appropriate here, where no class in any of the Putative Class Actions has been certified and the Debtors dispute the class representatives authority to bind their respective putative class members.

### III.   The Amended Plan is not Patently Unconfirmable, and the Solicitation and Voting Procedures are Reasonable and Appropriate

25.    Certain parties objected—based on varying arguments—that the proposed releases in the Initial Plan were not consensual.   While the Debtors believe that the releases in the Initial Plan were consensual, to remove any doubt, the Debtors have revised the third-party releases in the Modified Amended Plan.   The Debtors submit that the revised releases are consensual, especially in virtue of the recent changes which make it such that parties who vote to reject the plan must affirmatively opt-in to (instead of opting out of) the releases in order to be bound, and that Holders of Unimpaired claims will not be bound by the releases at all.   Indeed, the Debtors understand from correspondence with the U.S. Trustee, that the revisions to the releases are sufficient to resolve the UST Objection.   The Debtors respectfully submit that, to the extent the other Objectors persist in asserting their Objections to the releases notwithstanding the revisions incorporated in the Modified Amended Plan, such Objections should be overruled.

### A.    The Third-Party Releases under the Amended Plan are Consensual

26.    Under the Modified Amended Plan, Releasing Parties include only those parties that (a) that affirmatively vote to accept the plan, (b) are entitled to vote, vote to reject the plan, and check a box opting in to the releases, and (c) are related parties to those described in (a) and

(b) (*e.g.*, affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases.  Modified Amended Plan, Art. I.A.123.

27.     Various courts, including the majority of courts in this jurisdiction, have upheld as consensual releases of the kind included in the Amended Plan and have found that a release is consensual where parties have received sufficient notice of a plan's release provisions and have had an opportunity to manifest consent to the release, whether by failing to object to or opt out of the release or by affirmatively opting into the release (the latter being the case here).  *See In re Boy Scouts of Am. & Del. BSA*, LLC, 642 B.R. 504, 674 (Bankr. D. Del. 2022) (upholding as consensual releases given by parties who received notice and did not opt out of the releases); *In re Mallinckrodt*, 639 B.R. 837, 880-81 (Bankr. D. Del. 2022) (finding "ample evidence in the record that the releasing parties were sent notices in a variety of ways that explained in no uncertain terms that action was required to preserve claims" and upholding as consensual releases given by parties who had not opted out); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 305-06 (Bankr. D. Del. 2013) (upholding as consensual releases given by parties who received notice and did not opt out of the releases); *U.S. Bank Nat'l Ass'n. v. Wilmington Tr. Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 144 (Bankr. D. Del. 2010).

28.     Here, all parties in interest will have ample opportunity to evaluate and exercise their right to manifest consent to the third-party releases.  All Holders of Claims and Interests will receive a comprehensive and detailed notice of the third-party releases, their impact on Releasing Parties, and detailed instructions on how such parties indicate consent to such releases. Parties who are entitled to vote on the Modified Amended Plan will be given a fulsome opportunity to evaluate the releases and exercise their right to manifest consent to them by voting

in favor of the Modified Amended Plan or opting in to the releases (in the event they vote to reject the plan). The Ballots and Confirmation Hearing Notice, among other documents, conspicuously include the third-party releases and indicate the steps to be taken should Holders of Claims and Interests not wish to provide releases, which include simply not voting or voting to reject and not opting in to the releases.

29.     Holders of Impaired Claims and Interests who vote in favor of the Modified Amended Plan are deemed to have agreed to the releases by virtue of their vote to accept Modified Amended Plan, particularly in light of the conspicuous notice of the releases that is being provided. *See*, *e.g., In re Mallinckrodt*, 639 B.R. at 877-879 (upholding as consensual releases by creditors who had voted in favor of the plan). Indeed, as this Court has noted, "a [p]lan is a contract that may bind those who vote in favor of it. Therefore, to the extent creditors or shareholders voted in favor of the [plan], which provides for the release of claims they may have against the Noteholders, they are bound by that." *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) (citations omitted); *see also* Hr'g Tr. 59:21-60:2, *In re RCS Cap. Corp.*, Case No. 16-10223 (MFW) (Bankr. D. Del. Mar. 21, 2016) ("affirmatively voting on the plan is enough action to be an acceptance of the third-party releases."). In *SunEdison*, the United States Bankruptcy Court for the Southern District of New York agreed, stating that "an affirmative vote to accept a plan that contains a third-party release constitutes an express consent to the release." *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017). Although some Objectors have argued that accepting parties should be given an opportunity to opt out of the release, citing this Court's opinion in *Washington Mutual*,[9] that opinion similarly recognized that consent can be inferred from an accepting plan vote. *See In re Wash. Mut.*, Inc., 442 B.R.

---

[9]     *See* SEC Obj., ¶ 15.

314, 352 (Bankr. D. Del. 2011) ("[A]ny such release must be based on consent of the releasing party (by contract or the mechanism of voting in favor of the plan).").

30.     Additionally, under the Modified Amended Plan, Holders of Claims and Interests that vote to reject the Plan will only be bound by the proposed releases if they affirmatively opt in to the releases.  The Ballots clearly instruct parties on the opt-in mechanism and the consequences of affirmatively opting into the releases.  As such, the releases are consensual as to the Holders of Impaired Claims who decide to vote to reject and opt-in to the releases in the Modified Amended Plan.

31.     Finally, under the Modified Amended Plan Holders of Unimpaired Claims and Interests who are not entitled to vote to accept or reject the Plan simply will not be bound by the third party releases (regardless of whether they object to the releases or the plan).

32.     Notwithstanding the foregoing, several parties that objected to the releases contained in the Initial Plan as non-consensual may maintain their objections to the revised releases included in the Modified Amended Plan.  Some Objectors argued that that consent cannot be inferred from impaired parties who do not vote, which is relief that the Debtors have never sought (not even in the Initial Plan).[10]  Others argued that additional opt out rights should be granted to creditors or interest holders who vote in favor of the Amended Plan,[11] but as noted courts—including this Court—have found that a vote to accept a plan constitutes consent to the releases in that plan.  *See In re Wash. Mut.*, Inc., 442 B.R. at 352; *Coram Healthcare Corp.*, 315 B.R. at 336; Hr'g Tr. 59:21-60:2, *RCS Cap. Corp.*, Case No. 16-10223; *SunEdison, Inc.*, 576 B.R. at 458.

---

[10]     *See* Delaware Class Action Obj., ¶¶ 30-32; SEC Obj., ¶ 15.

[11]     *See* SEC Obj., ¶ 15.

33.     The Debtors therefore submit that the third-party releases provided in the Amended Plan are fully consensual.

**B.      Whether the Third-Party Releases in the Modified Amended Plan are Fair and Necessary is a Confirmation Objection**

34.     The putative class plaintiffs with respect to the Putative Class Actions have objected to the Plan releases and argued that the releases should carve out particular claims or individuals from them or otherwise argue that the releases are improper.  To the extent that these Objection continue to be pressed, they should be overruled.  *See* Ohio Class Action Objection, ¶¶ 3, 77-80;  Delaware Class Action Objection, ¶¶ 19, 22-25, 27-28; RIDE Objection, ¶¶ 46, 56-71.  As a threshold matter, the Debtors have carved out the putative class plaintiffs while reserving the respective parties' rights regarding the impact of such carve-out.  *See* § II.D, *infra*; Modified Amended Plan, Art. VIII.D; Modified Amended Disclosure Statement, Art. IV.H.4 & Art. VI.E.  Thus, the putative class plaintiffs are not Releasing Parties and are not providing the releases.

35.     In any event, to the extent any Objections take issue with the scope and propriety of the releases included in the Modified Amended Plan, such Objections raise quintessential confirmation issues that the Court should not consider at the hearing for the approval of a disclosure statement.  *See In re GUE Liquidation Cos., Inc.*, No. 19-11240 (LSS) (Bankr. D. Del. Oct. 23, 2019) Hr'g Tr. at 60:20–62:23 (stating that issues related to releases would be determined at confirmation, not disclosure statement hearing); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 3, 2018) Hr'g Tr. at 199:9-13 (declining to rule on appropriateness of releases at the hearing, as such issues are "classically [for] a confirmation

hearing"); *In re Molycorp, Inc.*, Case No. 15-11357 (CSS) (Bankr. D. Del. Jan. 8, 2016) Hr'g Tr. at 67:12–15 (noting that potential issues with releases should be dealt with at confirmation).

36.     Bankruptcy courts generally do not hear confirmation disputes at disclosure statement hearings because those hearings lack the evidentiary record necessary to determine confirmation issues. *See, e.g.*, *In re Broad Assocs. Ltd. P'ship*, No. 5-89-01070, 1989 Bankr. LEXIS 2248, at *7 (Bankr. D. Conn. Dec. 29, 1989) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing") (internal citation omitted); *see also In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the debtor's disclosure statement despite finding that questions existed regarding good faith, improper voter manipulation, and voter designation because such questions were "confirmation issues that require an evidentiary hearing"). For this reason, "[o]nly where the disclosure statement *on its face* relates to a plan that cannot be confirmed" is it appropriate to dismiss a proposed plan prior to the solicitation of votes; "otherwise, confirmation issues are left for later consideration." *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (emphasis in original).

37.     "The question whether a plan meets requirements for confirmation is usually answered at confirmation hearings." *Phoenix Petroleum*, 278 B.R. at 394. As such, disclosure statement objections based on plan confirmability are disfavored and ordinarily not entertained at the disclosure statement hearing. *See In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) ("[T]he Court will not look behind the disclosure statement to decide [confirmation] issues at the hearing on the adequacy of the disclosure statement."). Courts recognize that adjudicating confirmation issues at this stage would effectively convert disclosure statement hearings into confirmation hearings without the benefit of the evidentiary record necessary to

determine confirmation issues. *See, e.g.*, *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted to those defects that could not be cured by voting[.]"); *see also In re Quigley Co.*, 377 B.R. at 119 (noting that questions existed regarding good faith, improper voter manipulation, and voter designation but finding that such questions were, nevertheless, "confirmation issues that require an evidentiary hearing," and approving the debtor's disclosure statement).

38.     While a very limited exception exists in cases "where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable," *In re Am. Capital Equip.*, LLC, 688 F.3d 145, 154 (3d Cir. 2012), a plan is "patently unconfirmable" only "where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* at 155; *see also In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) ("[T]he objections considered must be limited to defects which could not be overcome by creditor voting results and must also concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing."). The patently unconfirmable standard thus requires an objecting party to prove, as a matter of law, that the plan "is so fatally flawed that confirmation is impossible." *In re U.S. Brass Corp.*, 194 B.R. 420, 428 (Bankr. E.D. Tex. 1996).

39.     Here, it is the objecting party's burden to prove as a matter of law that the Amended Plan is patently unconfirmable and the Ohio Lead Plaintiff, Delaware Class Plaintiff,

RIDE Investor Group and the U.S. Trustee have not carried this heavy burden.  For the reasons set forth in argument section III.A of this Reply, the Modified Amended Plan's consensual release mechanism is appropriate and renders the third-party releases under the Modified Amended Plan consensual.  The third-party releases therefore do not render the Plan "patently unconfirmable" as a matter of law.

40.     Further, the Debtors are not seeking non-consensual third party releases and it would be premature, at this stage, to determine whether the scope of the Debtors' releases that are being proposed satisfy the standards for approval in the Third Circuit.  The Debtors intend to make their case with respect to these issues at confirmation and should not be compelled to do so prematurely.  With that said, the Debtors note that the releases are prominently disclosed and described in the Modified Amended Plan and the Modified Amended Disclosure Statement.  The releases are also appropriate in scope, extending to matters relating to (among others) the Debtors and the Chapter 11 Cases, the Debtors or the conduct of their business, negotiation of the Pan, and the pursuit of confirmation; but excluding Claims or Causes of Action arising from acts that are judicially determined to have constituted actual fraud, willful misconduct, or gross negligence; proofs of claim filed in the Chapter 11 Cases; and the Debtors' post-Effective Date obligations.  Modified Amended Plan, Art. VIII.D; Modified Amended Disclosure Statement, Art. IV.H.4 & Art. VI.E.

41.     As noted, such releases are consensual.  In the Third Circuit, courts, including this Court, have recognized that consensual releases of third-party claims against non-debtors are permissible.  *See Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 214 n.11 (3d Cir. 2000) ("Several of the Bankruptcy Courts in our Circuit have stated that non-debtor releases are permissible only if consensual.") (*citing In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr.

31

D. Del. 1999)); *Spansion,* 426 B.R. at 144.  Given the foregoing, the inclusion of the releases at issue in the Amended Plan on which the Debtors will solicit is appropriate and the Court should deny as premature confirmation objections those objections that argue otherwise.

> **C.      The Proposed Classification of Section 510(b) Claims Is a Confirmation Issues and, In Any Event, the Proposed Classification Is Proper**

42.      The Debtors understand that certain of the Objectors may raise objections based on the separate classification and treatment of Section 510(b) Claims from Common Stock Interests.  To the extent raised, such objections should be overruled because (1) classification and treatment issues are confirmation issues that are not properly raised at the disclosure statement stage and (2) the Debtors' proposed classification is proper, in any event, as the Debtors will demonstrate at the appropriate time—the Confirmation Hearing.

43.      This Court has recognized that objections to classification and treatment are confirmation issues that should be overruled at the disclosure statement phase.  *See e.g.*, Hr'g Tr. at 32:24–50:16, *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. July 20, 2018) [D.I. 660] (explaining that objections to, among other things, classification and treatment of claims are issues for the confirmation hearing); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (recognizing that questions about the debtor's proposed classification scheme "require[d] additional evidence that may be presented at a confirmation hearing" and, accordingly, the "proposed classification scheme does not render the [p]lan patently unconfirmable as a matter of law.").[12]

---

[12] *See also In re Ellipso, Inc.*, No. 09-00148 (Chapter 11), 2012 Bankr. LEXIS 565, at *5 (Bankr. D.D.C. Feb. 3, 2012) (holding that certain disclosure statement objections were confirmation issues "more appropriately dealt with at a confirmation hearing" including "the contention that the classification of claims is improper") 7 Collier on Bankruptcy ¶ 1125.03 (16th ed. 2023) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims . . . or whether a plan is fair and equitable.").

44.     Indeed, although the Objectors have not indicated the precise nature of their objections, the Debtors understand that they may assert arguments of "unfair discrimination" under Bankruptcy Code Section 1129(b), which this Court has recognized is a fact-intensive issue.   *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (recognizing the "fact-intensive" nature of the unfair discrimination issue raised).   This is why such questions are properly addressed at confirmation, when the record is complete.   *In re Hyatt*, 509 B.R. at 711. For the time being, the Modified Amended Disclosure Statement provides ample disclosure regarding the treatment of Section 510(b) Claims, including, for Class 8, a detailed explanation of the mechanism for calculating the amount of equity any Allowed Holder of such claims would receive under the Modified Amended Plan, including a hypothetical application of the formula. Modified Amended Plan, Art. III.B.8.b.

45.     Further, the limited circumstances in which courts entertain plan objections at the disclosure statement phase—when the plan is shown to be "patently unconfirmable"—are not present here.   The proposed classification and treatment of Section 510(b) Claims does not render the Modified Amended Plan "so fatally flawed that confirmation is impossible," such that the issue is appropriate to consider now.   *See In re U.S. Brass Corp.*, 194 B.R. at 428.   To the contrary, under the circumstances, the separate classification of Section 510(b) Claims and Common Stock Interests is entirely appropriate.   Indeed, the Debtors note that the Ohio Lead Plaintiff, themselves argued that the Initial Plan was improper because it did not separately classify section 510(b) claims from common stock interests. *See* Ohio Class Action Objection, ¶¶ 2, 45.

46.     In the Third Circuit, "classification of the claims or interests must be reasonable," and not "arbitrarily designed" to permit a cram down. *In re Jersey City Med. Ctr.*, 817 F.2d

1055, 1061 (3d Cir. 1987); *John Hancock Mut Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987

F.2d 154, 158 (3d Cir. 1993).  "[E]ach class must represent a voting interest that is sufficiently

distinct and weighty to merit a separate voice in the decision whether the proposed

reorganization should proceed."  *John Hancock Mut. Life Ins.*, 987 F.3d at 159.  A proper

determination of whether claims are "sufficiently distinct" focuses on the nature of the claims,

and specifically "upon the legal attributes of the claims," including whether claimants are

situated differently with respect to their legal rights or priority status.  *See In re Coram

Healthcare Corp.*, 315 B.R. at 349.

47.    That standard is met here.  As detailed above, the Modified Amended Plan

classifies 510(b) claims (claims based on the allegations asserted in the Putative Class Actions)

in Classes 8, 9, and 10, separately from Common Stock Interests, classified in Class 7.  The

Debtors do not believe there is any dispute that claims based on the allegations asserted in the

Putative Class Actions are subject to mandatory subordination under section 510(b) of the

Bankruptcy Code.  Moreover, there can be little doubt that separate classification is appropriate

here.  Indeed, the Holders of section 510(b) claims have demanded separate classification in their

objections.

48.    We understand, however, that certain Objectors holding Section 510(b) Claims

may argue that the treatment now provided for Section 510(b) Claims renders the plan

unconfirmable.  They are wrong.  The Debtors will demonstrate at confirmation that the

treatment afforded Section 510(b) Claims is reasonable and fair under the circumstances and

provides a rational methodology for allocating shares to Holders of Allowed Section 510(b)

Claims.  This compensates the 510(b) claimants fairly by providing them with equity at the

prices prevailing during the class period, while also making them subject to any reductions in stock price due to general business conditions.

49.     For the foregoing reasons, the Debtors submit that any objection based on improper classification or treatment of section 510(b) claims should be overruled.

## **RESERVATION OF RIGHTS**

50.     The Debtors have focused this Reply (and the Reply Chart attached as **Exhibit A**) on what the Debtors believe are the major issues with respect to approval of the Modified Amended Disclosure Statement, including those raised in filed Objections, which the Debtors believe are addressed in the Reply and the Reply Chart.  However, particularly in light of ongoing discussions with the Objectors and because the Debtors understand that certain parties may continue to raise supplemental objections after the filing of this Reply, the Debtors reserve all rights to supplement this Reply and/or raise additional responses to the Objections in advance of or at the hearing to consider approval of the Solicitation Motion.  The Debtors further reserve their rights to supplement and expand on the arguments set forth herein in any subsequent briefing or hearing.

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court (i) overrule the Objections and approve the Amended Disclosure Statement, (ii) enter the Proposed DS Order, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: October 29, 2023

Respectfully submitted,

/s/ *Morgan L. Patterson*
**WOMBLE BOND DICKSON (US) LLP**
Donald J. Detweiler (DE Bar No. 3087)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
don.detweiler@wbd-us.com
morgan.patterson@wbd-us.com

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Counsel to Debtors and
Debtors-in-Possession*