# **EXHIBIT A**

## Reply Chart[1]

*In re Lordstown Motors Corp.*, Case No. 23-10831 (Bankr. D. Del.)

| Objection | Response |
|---|---|
| **Ohio Lead Plaintiff[2]** *Docket No. 525* | |
| The Initial Plan is patently unconfirmable because it misclassifies dissimilar Common Stock Interests and Section 510(b) Claims in the same class, and the different treatment may be given to Common Stock Interests and Section 510(b) Claims. (¶¶ 2, 38-44) The Ohio Lead Plaintiff argues that Section 510(b) Claims should be separately classified from, but treated *pari passu* with, Class 7 - Common Stock Interests (¶¶ 2, 45). | As set forth and discussed in more detail in the Reply (at ¶ 19), the Modified Amended Plan classifies Section 510(b) Claims in three separate classes (i) Class 8 – Section 510(b) Claims, (ii) Class 9 – RIDE Section 510(b) Claims, and (iii) Class 10 – Ohio Securities Class Action Claims. Moreover, the revised treatment of Section 510(b) Claims is disclosed in the Modified Amended Disclosure Statement in a manner that comports with the disclosure (and other) requirements of the Bankruptcy Code. Accordingly, this objection moot, as raised. |
| The Initial Plan is patently unconfirmable because it potentially releases claims of Ohio Lead Plaintiff against Non-Debtor Defendants in the Securities Action. (¶¶2, 46). The option for claimants to opt-out of granting releases under the Initial Plan does not make the releases consensual and would place the burden on the claimants to locate and review the Initial Plan and take affirmative steps to opt-out of the release. (¶¶ 47-48). The third-party releases are non-consensual and not fair and necessary to the Debtors' reorganization. (¶¶ 50-52) Further, the Court lacks constitutional authority to release the claims against non-Debtors. (¶ 53) | The third-party releases, as revised in the Modified Amended Plan, are appropriate consensual releases under applicable Third Circuit law, as detailed in the Reply (Reply, § III.A, ¶¶ 27-34). Article I.A.123 of Modified Amended Plan provides that "Releasing Parties" are limited to: (a) Holders of Claims and Interests who affirmatively vote to accept the Modified Amended Plan, (b) Holders of Claims and Interests who vote to reject the Modified Amended Plan but affirmatively opt in to the releases, and (c) related parties to those described in (a) and (b) (e.g., affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases. The Modified Amended Disclosure Statement adds additional detail outlining the basis for the third-party releases in Article IV.H.4. |

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to them in the Debtors' Omnibus Reply In Support of Request for Approval of Disclosure Statement Motion (the "**Reply**"), the Modified Amended Disclosure Statement, and the Objections, as applicable.

[2] "**Ohio Lead Plaintiff**" means George Troicky, lead plaintiff in the Ohio Securities Class Action.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| To cure the defects, the Initial Plan must carve out the Ohio Lead Plaintiff and Section 510(b) Claim holders from the releases. (¶¶ 46, 53-58). | Moreover, Article VIII.D of the Modified Amended Plan also provides that the Ohio Lead Plaintiff (along with the class representatives in the other Putative Securities Actions) is not a "Releasing Party." Further, although the Debtors dispute the Ohio Lead Plaintiffs' authority to bind members of the putative class in the Ohio Securities Action with respect to the releases, the Modified Amended Plan provides a reservation of the parties rights on that issue. <br><br> The Modified Amended Disclosure Statement also includes additional disclosures with respect to the Ohio Securities Class Action and the other Putative Class Actions in Article II.F.1, which describes the Ohio Securities Class Action (as well as the other prepetition actions), discloses that the Ohio Lead Plaintiff filed claims on behalf of himself and the putative class, and that the Debtors dispute the Ohio Lead Plaintiffs' authority to file such claims on behalf of the putative class. Article II.F.1, as amended, also clarifies that only two Chapter 11 Directors and Officers are named defendants in the Ohio Securities Class Action (and provides detail on the Chapter 11 Directors and Officers named in the other putative class actions and derivative actions filed against the Debtors). As with the Initial Plan, Former Directors and Officers are "Excluded Parties" that will not be receiving releases, and the Debtors have retained Winston and appointed an independent Derivative Claims Oversight Committee to evaluate potential derivative claims, including against current and former directors and officers. At the conclusion of such investigation, additional parties may be added to the "Excluded Parties" that are carved out of the releases pursuant to the Plan Supplement. Additional detail on the Debtors' retention of Winston and formation of the Derivative Claims Oversight Committee is included in the Disclosure Statement at Article III.F. |
| | Moreover, the Modified Amended Disclosure Statement adds new Article VI.E ("Special Notice Concerning Releases Associated with Voting"), which section details the implications of the releases in full and discloses, in emphasis, that: |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | FOR THE AVOIDANCE OF ANY DOUBT, PURSUANT TO THE THIRD PARTY RELEASES IN THE PLAN, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM (AMONG OTHER CLAIMS AS MORE FULLY SET FORTH IN ARTICLE VIII.D OF THE PLAN) ANY CLAIMS RELATED TO OR ASSERTED IN THE PUTATIVE CLASS ACTIONS (WHICH ACTIONS INCLUDE, FOR THE AVOIDANCE OF ANY DOUBT, (I) THE OHIO SECURITIES CLASS ACTION, (II) THE DELAWARE SHAREHOLDER CLASS ACTION, AND (III) THE POST-PETITION SECURITIES ACTION). PURSUANT TO THE RELEASES, RELEASING PARTIES WOULD BE RELEASING THEIR RIGHTS TO ANY RECOVERIES ARISING FROM THE PUTATIVE CLASS ACTIONS IF SUCH HOLDERS VOTE TO ACCEPT THE PLAN OR VOTE TO REJECT AND OPT IN TO THE RELEASES PROVIDED FOR IN THE PLAN AND ARE BOUND BY THE THIRD-PARTY RELEASE PROVISIONS OF THE PLAN. |
| The Initial Disclosure Statement does not contain adequate information for the Ohio Lead Plaintiff and Section 510(b) Claims holders to ascertain their potential recoveries under the Plan (¶¶ 3, 63-65). Further, the Initial Disclosure Statement is fails to ascribe the value of Class 7 Interests for the purpose of pro rata allocation with Section 510(b) Claims. (¶65) | Although Section 510(b) Claims are disputed and unliquidated, the Modified Amended Disclosure Statement provides significant additional detail on the treatment of such claims, the basis for such treatment, and potential recoveries of holders of Section 510(b) Claims. In particular, Article IV.C.2.viii of the Modified Amended Disclosure Statement provides a demonstrative example of how recoveries to holders in Class 8 will be calculated and provides as much information as possible regarding expected recoveries in light of the uncertainties regarding Section 510(b) Claims. Furthermore, the Modified Amended Plan includes a liquidation analysis, comparing available recoveries under Chapter 11 and Chapter 7.<br><br>The Debtors believe that the Objections asserted based on classification of Section 510(b) Claims with Common Stock Interests are moot based on revisions in the Modified Amended Plan, which separately classifies |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
|  | Section 510(b) Claims. In addition, the Reply anticipates and addresses certain additional potential Objections that the Ohio Lead Plaintiff may raise based on the revised classification and treatment of Section 510(b) Claims. *See* Reply, III.C, ¶¶ 43-50. |
| The Initial Disclosure Statement does not describe how evidence relevant to the Securities Action will be preserved after confirmation and the Initial Plan should be changed to set forth this requirement (¶¶3, 66-73) | Article V.L of the Modified Amended Plan and Article IV.E.12 of the Modified Amended Disclosure Statement now address preservation of evidence as follows:<br><br>Nothing in the Plan or the Confirmation Order alters the Debtors and Post-Effective Date Debtors' duty to take all reasonable efforts to preserve evidence related to the Putative Class Actions (including with respect to the non-Debtor defendants in such actions) consistent with the Debtors existing retention policies and applicable law.<br><br>Article II.F and Article III.O of the Amended Disclosure Statement, also disclose that the Debtors will preserve evidence in accordance with applicable law. |
| The Initial Disclosure Statement should be changed to fully disclose the scope of the releases against non-Debtors and make clear that granting the release may prejudice rights in connection with the Securities Action. (¶¶3, 77-80) | As noted above, the Modified Amended Plan now expressly carves out the Ohio Lead Plaintiff (and the other class representatives in the Putative Securities Action) from the definition of "Releasing Parties" (Modified Amended Plan, Art. I.A.123) and includes language reserving the parties rights with respect to such class representatives authority to opt out on behalf of the applicable putative classes (Modified Amended Plan, Art. VIII.D).<br><br>In addition, the Modified Amended Disclosure Statement Disclosure Statement adds new Article VI.E ("Special Notice Concerning Releases Associated with Voting"), which (i) details the changes to the Modified Amended Plan described above, (ii) explains the implications of the releases, and (iii) discloses, among other things, in emphasis, that:<br><br>**FOR THE AVOIDANCE OF ANY DOUBT, PURSUANT TO THE THIRD PARTY RELEASES IN THE PLAN, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY,** |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM (AMONG OTHER CLAIMS AS MORE FULLY SET FORTH IN ARTICLE VIII.D OF THE PLAN) ANY CLAIMS RELATED TO OR ASSERTED IN THE PUTATIVE CLASS ACTIONS (WHICH ACTIONS INCLUDE, FOR THE AVOIDANCE OF ANY DOUBT, (I) THE OHIO SECURITIES CLASS ACTION, (II) THE DELAWARE SHAREHOLDER CLASS ACTION, AND (III) THE POST-PETITION SECURITIES ACTION). PURSUANT TO THE RELEASES, RELEASING PARTIES WOULD BE RELEASING THEIR RIGHTS TO ANY RECOVERIES ARISING FROM THE PUTATIVE CLASS ACTIONS IF SUCH HOLDERS VOTE TO ACCEPT THE PLAN OR VOTE TO REJECT AND OPT IN TO THE RELEASES PROVIDED FOR IN THE PLAN AND ARE BOUND BY THE THIRD-PARTY RELEASE PROVISIONS OF THE PLAN. |
| The Initial Disclosure Statement fails to provide the factual and legal justifications for releases against the Non-Debtor Defendants. (¶¶ 3, 80-82) | Article IV.H.4 of the Modified Amended Disclosure Statement adds detail on the factual and legal justifications for the non-Debtor releases by holders of claims or interests sufficient to address this objection. Article IV.H.3 of the Modified Amended Disclosure Statement also adds detail on the factual and legal justifications for the releases by the Debtors of the Released Parties. |
| The Initial Disclosure Statement does not disclose how the Initial Plan will preserve claims against Debtors to the extent of insurance coverage (¶¶ 3, 83) | Article V.K of the Modified Amended Plan and Article IV.E.14 of the Modified Amended Disclosure Statement explicitly provide for preservation of insurance coverage, including with respect to non-Debtor defendants, as follows:<br><br>Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estate), the beneficiaries of the Insurance Policies (including the Directors and Officers), or the Debtors' insurers (and third-party claims administrators), under the Insurance Policies or modifies the coverage or benefits |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. The Debtors shall be deemed to have assumed all Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policies to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Post-Effective Date Debtors for the benefit of the Post-Effective Date Debtors and all of the beneficiaries of such policies, including any Holder entitled to recover from such policies pursuant to the Plan.<br><br>Further, the Debtors have added language at Article IV.E.21 of the Modified Amended Disclosure Statement and Article V.U of the Modified Amended Plan clarifying that:<br><br>For the avoidance of any doubt, nothing in the Plan shall hinder, impair, prejudice, limit, or otherwise affect any rights of any Entity to pursue (or otherwise with respect to) any applicable insurance, including with respect to non-Debtor beneficiaries of the Insurance Policies (including the Directors and Officers). Except as otherwise set forth in the Plan, nothing set forth in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any insurance policies, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers. |
| The solicitation procedures need to provide holders of Section 510(b) Claims the right to vote and should recognize the Ohio Lead Plaintiff's authority to opt-out of the release on behalf of the Class. (¶ 84-89) | Section 510(b) Claims are separately classified under the Modified Amended Plan and are entitled to vote (including those related to the Ohio Securities Action, in Class 8).<br><br>As detailed and addressed in the Reply (Reply, § II.D, ¶¶ 19-25) and disclosed in the Modified Amended Disclosure Statement (Modified Amended Disclosure Statement, Art. II.F.1), the Debtors dispute that the Ohio Lead Plaintiff has authority to bind putative class members with respect to the releases. That dispute is a matter for future resolution and |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | not the proper subject of an objection to the Modified Amended Disclosure Statement. |
| | That being said, the Modified Amended Plan provides that the Ohio Lead Plaintiff is not a "Releasing Party" (Modified Amended Plan, Art. I.A.123) and further provides that the Debtors do not concede that the exclusion of the Ohio Lead Plaintiff as a Releasing Party is binding on the members of the class and that if the Ohio Lead Plaintiff is determined not to have such authority, then Releasing Parties would be releasing claims against the Released Parties with respect to the Securities Action (Modified Amended Plan, Art. VIII.D). |
| | Finally, although the Debtors dispute that the Ohio Lead Plaintiff has authority to vote on behalf of the putative class in the Ohio Securities Class Action, the Debtors have added an elective class (Class 10 – Ohio Securities Class Action Claims), which provides the Ohio Lead Plaintiff with the option to elect to a settlement on behalf of the class, pursuant to which the Ohio Lead Plaintiff would have the ability to seek certification of the putative class for the limited purposes of effectuating the settlement under the Modified Amended Plan. |
| **Benjamin Hebert and Atri Amin, Plaintiffs in the Delaware Shareholder Class Action ("Delaware Class Plaintiffs")** *Docket No. 526* | |
| The third-party releases in the Initial Plan are inappropriate, non-consensual releases because they provide that holders of claims and interest must opt-out of granting the third-party releases contained in the Initial Plan. (¶¶ 19, 22-25, 27)<br><br>Court should modify the third-party releases provisions in the Initial Plan to provide that holders of claims or interests are only deemed to consent if they (1) vote in favor of the plan or (2) affirmatively opt into the release. (¶ 28) | Article I.A.123 of the Modified Amended Plan provides that "Releasing Parties" are limited to: (a) Holders of Claims and Interests who affirmatively vote to accept the Modified Amended Plan, (b) Holders of Claims and Interests who vote to reject the Modified Amended Plan but affirmatively opt in to the releases, and (c) related parties to those described in (a) and (b) (e.g., affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases. The releases provided for in the Plan are consensual releases that are compliant with Third Circuit authority, as further detailed in the Reply (at § III.A and III.B, ¶¶ 26-42). |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | In addition, the definition of "Releasing Parties" now expressly carves out the class representatives in the Delaware Shareholder Class Action (and the other Putative Class Actions) (Modified Amended Plan, Art. I.A.123) and reserves the parties' rights with respect to whether the class representatives have the authority to bind their putative classes with respect to the releases (Modified Amended Plan, Art. VIII.D). |
| | Any other objections regarding the releases, including as to scope, are properly addressed in connection with confirmation of the Modified Amended Plan. |
| The solicitation package should disclose that a class action is being asserted on behalf of an interest holder and that by either voting in favor of the Initial Plan or by affirmatively opting-in to the third-party releases, such holder may be releasing their claim with respect to that class action. (¶ 29) | Article II.F.1 of the Modified Amended Disclosure Statement describes all Putative Class Actions as well as derivative actions that were being pursued on behalf of the Debtors prior to the Petition Date. Moreover, Article III.O, describes the Debtors post-petition efforts to investigate derivative claims of the Debtors. |
| | In addition, the Modified Amended Disclosure Statement Disclosure Statement provides ample detail on the implications of the releases in new Article VI.E ("Special Notice Concerning Releases Associated with Voting"). |
| The solicitation package should include a letter to equity holders that explains the implications of the releases with respect to the Delaware Class Action. (Draft letter attached to Delaware Class Action Plaintiff Objection as Exhibit A.) The ballots should also be revised to disclose that the claims in the Delaware Cass Action may be released if the interest holder consents to the third-party release. (¶¶ 36-37, 39) | The Debtors address the Delaware Class Plaintiffs' request for a letter providing further disclosure in detail in the Reply (at § II.C, ¶ 18). |
| | In addition, Article VIII.D of the Modified Amended Plan provides that the class representatives in the Delaware Shareholder Class Action are not "Releasing Parties" and further provides that the Debtors do not concede that the exclusion of the lead plaintiff in respect of the Delaware Shareholder Class Action as a Releasing Party is binding on the members of the class and that if the Ohio Lead Plaintiff is determined not to have such authority, then Releasing Parties would be releasing claims against the Released Parties with respect to the Securities Action. |
| | Finally, the Modified Amended Disclosure Statement provides additional detail on the implications of the releases in new Article VI.E ("Special Notice Concerning Releases Associated with Voting"), including that |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | they may prejudice members of the putative class in the Delaware Shareholder Class Action (which language is pasted in this chart above). |
| The solicitation package should identify which directors and officers are considered Released Parties. (¶¶ 20, 41-42) | Article II.F.1 of the Modified Amended Disclosure Statement includes a description of current directors and officers, clarifies which directors and officers are named in which Putative Class Actions and derivative actions, and which of such directors and officers are "Chapter 11 Directors and Officers" and officers and directors who will receive releases, as opposed to "Former Directors and Officers." Moreover, as with the Initial Plan, and as explained in new Article VI.E of the Amended Disclosure Statement, Former Directors and Officers are "Excluded Parties" that will not be receiving releases. Furthermore, the Modified Amended Disclosure Statement details, in Article III.F, that the Debtors have retained Winston and appointed an independent Derivative Claims Oversight Committee to evaluate potential derivative claims, including against current and former directors and officers and that the inclusion of any Released Party will be subject to the recommendations of the Derivative Oversight Committee.<br><br>The Debtors submit that the extensive detail in the Modified Amended Disclosure Statement sufficiently addresses this objection. |
| The releases under the Initial Plan should be modified and make clear that abstaining from voting on the Initial Plan does not result in a release and that parties who are impaired need not file an objection. (¶¶30-32) | No iteration of the Debtors' proposed plan ever provided that impaired parties that abstained from voting would be bound by the releases. The Modified Amended Plan, Modified Amended Disclosure Statement, and the solicitation materials attached to the DS Order further clarify this point. For example, new Article VI.E of the Amended Disclosure Statement provides (in relevant part):<br><br>**If a Holder of Claims or Interests does not wish to give the releases contemplated under the Plan, then the Holder should vote to reject the Plan and refrain from checking the box on the Ballot to opt in to the releases or abstain from voting on the Plan. Any party in interest may object to the proposed third-party release provisions.** |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | The debtors have also revised the proposed Ballots to make abundantly clear that parties that abstain from voting will not be bound by the releases. |
| If the Court is not inclined to provide for an opt-in mechanism, it should carve the DiamondPeak directors out of the releases, including David Hamamoto. (¶33) | The Modified Amended Plan does not provide releases to any Former Directors and Officers, which encompasses all but one DiamondPeak director, David Hamamoto. Whether Mr. Hamamoto will receive a release under the Plan or be included as an "Excluded Party" that is carved out of the releases will be subject to the recommendations of the Derivative Claims Oversight Committee at the conclusion of the investigation being conducted by Winston, as described and disclosed in Article III.O of the Amended Disclosure Statement. The Debtors have included adequate information with respect to these matters. Whether Mr. Hamamoto will ultimately be a released party, and whether he provided sufficient consideration to secure such release are confirmation issues that are not properly addressed at the disclosure statement approval phase.<br><br>Article VIII.D of the Modified Amended Plan also provides that the lead plaintiff in respect of the Delaware Shareholder Class Action is not a "Releasing Party" but further provides that the Debtors do not concede that the exclusion of the lead plaintiff in respect of the Delaware Shareholder Class Action as a Releasing Party is binding on the members of the class and that if the Ohio Lead Plaintiff is determined not to have such authority, then Releasing Parties would be releasing claims against the Released Parties with respect to the Securities Action. |
| The Debtors must work with DTC to ensure that the Solicitation Agent has a complete list of DiamondPeak shareholders who did not redeem their shares on the date of the SPAC merger to ensure that all class members receive letter with solicitation packages or it should be included in packages for all interest holders. (¶38) | There is no need to serve all DiamonPeak shareholders who did not redeem their shares on the date of the SPAC Merger. The DiamondPeak litigation has not been brought against the Debtors, and the releases under the Modified Amended Plan only apply to holders of claims and interest who vote in favor of the plan or vote against and do not opt in. If such holders of claims and interest do not vote, they will not be granting the releases. |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| <div align="center">**Foxconn**[3]<br>*Docket No. 528*<br><br>*NOTE: The Debtors understand from correspondence with Foxconn, that Foxconn's Objection is resolved by changes to the Modified Amended Plan and Modified Amended Disclosure Statement.*</div> ||
| The Debtors cannot obtain equitable subordination of Foxconn's claims under the Initial Plan while the Debtors' lawsuit against Foxconn remains pending. (¶¶16-21)<br><br>The Initial Plan is patently unconfirmable because it does not provide for alternative treatment of Foxconn's claims in the event equitable subordination action fails (e.g., Foxconn's preferred equity must be paid in full before common equity receives any distribution, and current treatment of Commons Stock Interest would violate the best interest test). (¶34, 36-38)<br><br>The Initial Plan should also provide for alternative treatment of Foxconn's interests in the event that equitable subordination does not occur. (¶45)<br><br>The Initial Disclosure Statement does not adequately describe the effects of equitable subordination or the failure of equitable subordination of Foxconn's interests on holders of other Common Stock Interest. (¶48) | Pursuant to Article III.B.5 of the Modified Amended Plan, Foxconn is no longer equitably subordinated pursuant to the terms of the Plan. Rather, Foxconn Preferred Stock Interests are reinstated under the plan and Unimpaired. Accordingly, these objections are moot. Reply (at ¶¶ 20) |
| The Initial Plan lacks any provisions that ensure appropriate cash reserves are maintained to make distributions to Foxconn. (¶42) | Pursuant to Article III.B.5 of the Modified Amended Plan, Foxconn Preferred Stock Interests are now Unimpaired. Pursuant to such treatment, after the Effective Date, Foxconn will be entitled to the same rights it had under the *Certificate of Designation, Preferences and Rights of Series A Convertible Preferred Stock Par Value $0.0001 of Lordstown Motors Corp.*, after the Effective Date that it had prior to the Petition Date. Accordingly, the Debtors are not required to establish cash reserves on account of such interests. |

---

[3] "Foxconn" means Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), Foxconn EV Technology, Inc., Foxconn Ventures Pte. Ltd., Foxconn Ltd. (Far East) and Foxconn EV System LLC

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | In any event, this objection is a confirmation objection that is not properly raised at the disclosure statement phase. |
| The Initial Disclosure Statement does not state whether shareholders will be able to participate in the governance of the Post Effective Date Debtors, whether the Post-Effective Date Debtors will be a public company or a private company, or the steps that will be taken. (¶49) | The Modified Amended Plan and the Modified Amended Disclosure Statement provide adequate information regarding the Post-Effective Date Debtors in Article V.E of the Modified Amended Plan and Article V.E.5 of the Modified Amended Disclosure Statement respectively. |
| The Initial Plan and Initial Disclosure Statement fail to provide what rights Foxconn will have as a shareholder or whether Foxconn will receive proceeds from Post-Effective Date operations. (¶50) | Pursuant to Article III.B.5 of the Modified Amended Plan, Foxconn Preferred Stock Interests are now Unimpaired.  Pursuant to such treatment, after the Effective Date, Foxconn will be entitled to the same rights it had under the *Certificate of Designation, Preferences and Rights of Series A Convertible Preferred Stock Par Value $0.0001 of Lordstown Motors Corp.*, as it had prior to the Effective Date. |
| The Initial Plan classifies unsecured claims into two different classes, but the Initial Disclosure Statement includes insufficient information to allow equity holders to determine what claims must be satisfied in order to receive a distribution. (¶¶ 51-52) | The Modified Amended Plan no longer separately classify general unsecured trade claims and no longer provide for a cash pool construct. Accordingly, this objection is mooted. |
| The Initial Plan does not classify and treat Section 510(b) Claims. (¶ 53) | The Modified Amended Plan now separately classifies 510(b) claims, as detailed in herein and includes detailed descriptions of their treatment. Accordingly, this objection is moot. |
| The Initial Disclosure Statement contains insufficient disclosure regarding who will be receiving releases under the Initial Plane, what contributions such persons have provided, or what investigation has been undertaken with respect to the releases. (¶¶ 57-59) | Article I.A.122 of the Modified Amended Plan and Article IV.H.4 of the Modified Amended Disclosure Statement include information regarding the contemplated Released Parties under the Modified Amended Plan. Article IV.H.4 of the Modified Amended Disclosure Statement provides detail on the contributions provided by recipients of the releases. Article III.O of the Modified Amended Disclosure Statement provides disclosures regarding the Debtors' investigation into potential claims against directors and officers, which may be added to those identified as "Excluded Parties" that are carved out of the releases.  Specifically, the Debtors have retained Winston and appointed an independent Derivative Claims Oversight Committee to evaluate potential derivative claims, |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | including against current and former directors and officers. The inclusion of any person as a Released Party will be dependent on the recommendations of the Derivative Claims Oversight Committee. |
| DS does not include a liquidation analysis. (¶ 60) | The Modified Amended Disclosure Statement attaches a liquidation analysis as <u>Exhibit C</u>. |
| Foxconn previewed certain potential confirmation objections. (¶¶ 60-68) | The potential confirmation objection will be addressed at the confirmation if they are still asserted at such time. |
| **RIDE Investor Group / Post-Petition Putative Class Action**<br>*Docket No. 529* ||
| The Initial Disclosure Statement contains inadequate information for equity holders to evaluate possible recoveries or likely liabilities of the Debtors. (¶ 38) There is no anticipated range of recoveries, including for interest holders, in the Initial Disclosure Statement. (¶ 49) | As set forth and discussed in more detail in the Reply (at ¶ 19), the Modified Amended Plan classifies putative class members claims related to the RIDE Investor Group Action in Class 9 (RIDE Section 510(b) Claims). Moreover, the Modified Amended Disclosure Statement provides significant additional detail on the treatment of such claims.<br><br>The Modified Amended Disclosure Statement also provides additional detail regarding projected recoveries to the various Classes of Claims and Interests in the revised chart included in <u>Article IV.C.1</u>, as well as a Liquidation Analysis comparing such recoveries to a Chapter 7 liquidation in <u>**Exhibit C**</u> to the Modified Amended Disclosure Statement. |
| The Initial Disclosure Statement does not mention the Post-Petition Putative Class Action and provides inadequate information regarding the prepetition litigation and its effect on the estates and the Insurance Policies. (¶ 38) There is also no discussion of the value of the D&O Liability Insurance and how this might be drained by the Prepetition Litigation. (¶ 38)<br>The Initial Disclosure Statement does not discuss the case developments in Post-Petition Putative Class Action. (¶ 39) | The Modified Amended Disclosure Statement adds a new section at <u>Article III.O</u>, which provides detail regarding the RIDE Investor Group Action. This new section also includes (1) a chart outlining the potentially applicable insurance policies, along with policy limits under the same, and (2) detail regarding the D&O Stay Relief Motion, which had not been filed at the time the initial Disclosure Statement was filed. |
| The Initial Disclosure Statement must include a discussion of claims brought against current and former directors and officers | Detailed descriptions of the claims against directors and officers are included in the Modified Amended Disclosure Statement at <u>Article II.F.1</u>. |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| and justifications for grant the third-party releases under the Initial Plan. (¶ 40) | The factual and legal bases for the releases are now included in <u>Article IV.H.3</u> of the Amended Disclosure Statement. |
| The Initial Disclosure Statement omits information concerning rights of interest holders who do not grant releases under the Initial Plan to collect from proceeds of the D&O Liability Insurance Policies should liability be established. (¶ 41) | The Modified Amended Plan and Modified Amended Disclosure Statement now include two classes of section 510(b) Claims (including Class 9—RIDE Section 510(b) Claims), which encompass claims related to the RIDE Investor Group Action. The treatment sections for such claims make clear that Holders of such claims may proceed against applicable insurance. Moreover, the Modified Amended Plan and Modified Amended Disclosure Statement now include a new section addressing claims payable by third parties (including specifically with respect to RIDE 510(b) Claims, as follows:<br><br>Unless the Post-Effective Date Debtors agree or the Bankruptcy Court orders otherwise, no distributions under the Plan shall be made on account of any Allowed Section 510(b) Claim, Allowed RIDE Section 510(b) Claim, or on account of any other Allowed Claim or Interest that is payable (to the extent it is payable) pursuant to one of the Debtors' Insurance Policies, until the Holder of such Allowed Claim or Interest has exhausted all remedies with respect to the applicable Insurance Policy, if any. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim or Interest (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such payment, such Claim or Interest may be expunged or reduced on the Claims Register by the Claims Agent to the extent of any such payment without an objection to such Claim or Interest having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.<br><br>For the avoidance of any doubt, nothing in this Plan shall hinder, impair, prejudice, limit, or otherwise affect any rights |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | of any Entity to pursue (or otherwise with respect to) any applicable insurance, including with respect to non-Debtor beneficiaries of the Insurance Policies (including the Directors and Officers). Except as otherwise set forth in the Plan, nothing set forth in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any insurance policies (including with respect to the Directors and Officers), nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.<br><br>Amended Disclosure Statement, Article IV.E.24; Modified Amended Plan, Article V.U. |
| The inclusion of Debtors as Released Parties may have the unintended effect of risking the ability of RIDE Investor Group and the putative class members to bring claims against the Debtors as purely nominal parties for insurance purposes. (¶ 43)<br><br>The Initial Disclosure Statement contains insufficient description of how the Initial Plan would provide RIDE Investor Group and members of the putative class to access insurance coverage. (¶¶ 44-45)<br><br>The Initial Plan should allow the RIDE Investor Group to pursue their claims against the Debtors against available insurance. Initial Plan should include language preserving the rights of the RIDE Investor Group to seek claim against insurance. (¶ 48) | Article IV.E.21 of the Modified Amended Disclosure Statement and Article V.U of the Modified Amended Plan (included directly above) provide detail regarding recoveries from insurance.<br><br>In addition, Article V.K of the Modified Amended Plan and Article IV.E.11 of the Modified Amended Disclosure Statement provide for preservation of insurance coverage, including with respect to non-Debtor defendants, as follows (the second paragraph of which was added at the RIDE Investor Group's request):<br><br>Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estate), the beneficiaries of the Insurance Policies (including the Directors and Officers), or the Debtors' insurers (and third-party claims administrators), under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. The Debtors shall be deemed to have assumed all Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policies to which the Debtors and/or the Debtors' |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | Estates may be beneficiaries shall vest with the Post-Effective Date Debtors for the benefit of the Post-Effective Date Debtors and all of the beneficiaries of such policies, including the Directors and Officers and any Holder entitled to recover from such policies pursuant to the Plan.<br><br>Nothing in this Plan or Confirmation Order shall (a) constitute a finding or stipulation that any proceeds of any of the D&O Liability Insurance Policies are property of the Estate; (b) modify or supersede any provision (including but not limited to any priority of payments provision) of any of the D&O Liability Insurance Policies, or (c) otherwise preclude any party entitled to coverage under the D&O Liability Insurance Policies, from seeking and obtaining coverage thereunder.<br><br>Further, per the RIDE Investor Group's request, the Debtors revised the Modified Amended Disclosure Statement (Article IV.H.4) and of the Modified Amended Plan (Article III.D) to add the following:<br><br>**Additionally, notwithstanding anything to the contrary in this Plan or the Confirmation Order, nothing herein or therein does, shall, or may be construed to release, the Debtors or bar the assertion of claims against them as nominal defendants in the Post-Petition Securities Action for purposes of preserving and enforcing rights to coverage under and recovery of the proceeds of the D&O Liability Insurance Policies.** |
| The Initial Plan must carve out the RIDE Investor Group and the putative class from the third-party releases. The releases should also exclude non-Debtor defendants in the Post-Petition Putative Class Action as Released Parties. Further, the Initial Plan should exclude the Debtors as nominal defendants in the Post-Petition Putative Class Action. (¶ 46) | Article I.A.123 of the Modified Amended Plan provides that "Releasing Parties" are limited to: (a) Holders of Claims and Interests who affirmatively vote to accept the Modified Amended Plan, (b) Holders of Claims and Interests who vote to reject the Modified Amended Plan but affirmatively opt in to the releases, and (c) related parties to those described in (a) and (b) (e.g., affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases. The releases provided for in the Plan |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| | are consensual releases that are compliant with Third Circuit authority, as further detailed in the Reply (at § III.A and III.B, ¶¶ 26-42). Any other objections regarding the releases, including as to scope, are properly addressed in connection with confirmation of the Modified Amended Plan.<br><br>Article VIII.D of the Modified Amended Plan also provides that the Ohio Lead Plaintiff is not a "Releasing Party" but further provides that the Debtors do not concede that the exclusion of the Ohio Lead Plaintiff as a Releasing Party is binding on the members of the class and that if the Ohio Lead Plaintiff is determined not to have such authority, then Releasing Parties would be releasing claims against the Released Parties with respect to the Securities Action. |
| The Initial Disclosure Statement and Initial Plan should include language describing how the Debtors intend to preserve evidence relevant to the Post-Petition Putative Class Action. (¶¶52, 54) | A provision requiring the debtors to preserve evidence has been added as Article V.L of the Modified Amended Plan. A substantially similar section is included in the Modified Amended Plan overview section of the Modified Amended Disclosure Statement (Art. IV.E.15).<br><br>> Nothing in the Plan or the Confirmation Order alters the Debtors and Post-Effective Date Debtors' duty to take all reasonable efforts to preserve evidence related to the Putative Class Actions (including with respect to non-Debtor defendants) consistent with the Debtors existing retention policies and applicable law.<br><br>In addition, the Modified Amended Plan adds a definition for Putative Class Actions, and the Modified Amended Disclosure Statement makes additional reference to preservation of evidence at Article II.F and III.O, respectively, for the pre- and post-petition putative class actions. |
| The Initial Plan is patently unconfirmable because it contains non-consensual third-party releases. The opt-out process in the Initial Plan makes the third-party releases non-consensual. The Debtors have not established that the releases meets the hallmarks of a permissible non-consensual plan. The Debtors are liquidating so there is no role for the directors and officers in the reorganizing | As detailed in the Reply (at § III.A and III.B, ¶¶ 26-42), the releases sought through the Modified Amended Plan are appropriate consensual releases under applicable Third Circuit authority. Any further objections to the releases are properly addressed in connection with confirmation rather than in connection with the Amended Disclosure Statement. |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
| efforts and there is no consideration provided for the releases. (¶¶ 56-71) | |
| **Securities and Exchange Commission** *Docket No. 522* | |
| The Initial Disclosure Statement lacks sufficient information about the two cash pools. (¶¶ 7-9) | The Modified Amended Plan no longer separately classifies general unsecured trade claims and no longer provide for a cash pool construct. Accordingly, this objection is mooted. |
| There is insufficient disclosure about Post-Effective Date Operations and whether the Debtors will comply with ongoing federal securities laws reporting requirements and without adequate disclosure, creditors cannot assess whether the Debtors are entitled to a discharge. (¶ 11) | The Modified Amended Plan and Modified Amended Disclosure Statement provide adequate information regarding the Post-Effective Date Debtors in Article V.E of the Plan and Article V.E.5 of the Modified Amended Disclosure Statement respectively. |
| The Initial Plan and ballots should be revised to allow creditors and interest holders who vote to accept the Initial Plan to opt-out of the releases and those who reject or abstain from voting to affirmatively opt into granting the releases. (¶ 15) | As detailed in the Reply (at § III.A and III.B, ¶¶ 26-42), the releases sought through the Modified Amended Plan are appropriate consensual releases under applicable Third Circuit authority. Any further objections to the releases are properly addressed in connection with confirmation rather than in connection with the Amended Disclosure Statement. |
| **United States Trustee** *Docket No. 537* | |
| **NOTE: The Debtors understand from correspondence with the U.S. Trustee, that the U.S. Trustee's Objection is resolved by changes incorporated** | |
| The third-party releases in the Initial Plan are non-consensual because the releases are not predicated on the parties affirmative consent. (¶¶ 19-26) The Initial Plan should offer the claimants and equity holders the opportunity to opt into granting the releases. (¶ 37). The Debtors have not shown that the Initial Plan meets the requirements of a non-consensual third-party release. (¶¶ 27-36) | Article VIII.D of the Modified Amended Plan provides that "Releasing Parties" are limited to: (a) Holders of Claims and Interests who affirmatively vote to accept the Modified Amended Plan , (b) Holders of Claims and Interests who vote to reject the Modified Amended Plan but affirmatively opt in to the releases, and (c) related parties to those described in (a) and (b) (e.g., affiliates, predecessors, successors, etc.), but only to the extent the parties in (a) and (b) have authority to bind such persons or entities to the releases. |

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

| Objection | Response |
|---|---|
|  | As detailed in the Reply (at § III.A and III.B, ¶¶ 26-42), the releases sought through the Modified Amended Plan are appropriate consensual releases under applicable Third Circuit authority. Any further objections to the releases are properly addressed in connection with confirmation rather than in connection with the Amended Disclosure Statement. |