## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 1:23-BK-10831** |
| | § | **(CHAPTER 11)** |
| **LORDSTOWN MOTORS CORP.** *et al.*,[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | **Re: D.I. 625, 467, 361** |
| | § | |
| | § | **Hearing Date: October 31, 2023** |
| | § | **Hearing Time: 10:30 a.m. ET** |

### SUPPLEMENTAL OBJECTION OF RIDE INVESTOR GROUP
### TO APPROVAL OF THE DEBTORS' DISCLOSURE STATEMENT

Bandol Lim, Nico Gatzaros, and Richard Dowell (collectively, the "RIDE Investor Group" or "Claimants"), lead plaintiff movants in the action styled: *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454, (the "RIDE Securities Action") in the United States District Court for the Northern District of Ohio (the "Ohio District Court"), brought on behalf of all others similarly situated (the "Putative Class" or the "Claimants"), hereby file this supplemental objection (this "Supplemental Objection") to the approval of the Debtors' proposed amended disclosure statement (the "Amended Disclosure Statement") [D.I. 624], and respectfully state as follows:

1.      On September 1, 2023, the Debtors filed the *Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "Plan") [D.I. 360] and *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "Disclosure Statement") [D.I. 361].

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

2.      On September 22, 2023, the Debtors filed their *Motion for Entry of Order (i) Approving the Disclosure Statement, (ii) Approving Plan Solicitation, (iii) Approving Forms of Ballots, (iv) Approving Form, Manner, and Scope of Confirmation Notices, (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (vi) Granting Related Relief* (the "Motion") [D.I. 467], setting forth their arguments for approval of the Disclosure Statement as well as other relief, including approval of (i) procedures for solicitation and tabulation of votes to accept or reject the Plan (the "Solicitation Procedures"), (ii) forms of ballots attached as Exhibits 2-1 to 2-5 to the proposed form of Disclosure Statement Order ("Ballots"), (iii) various forms of notices as to hearing dates, voting status, or claim status, cure and assumption, and a cover letter to describe solicitation materials, and (iv) various deadlines regarding publication notice and Solicitation Procedures generally.

3.      On October 6, 2023, the Ride Investor Group filed their *Objection to Approval of the Debtors' Disclosure Statement* (the "Ride Investor Group Objection") [D.I. 529].  The Ride Investor Group Objection remains unresolved, and its asserted facts, legal arguments, requests for relief, and reservations of rights are, to the extent necessary, fully incorporated herein by reference.

4.       Several other parties submitted objections to the Motion and Disclosure Statement. The objections include those of: the U.S. Securities and Exchange Commission [D.I. 522]; George Troicky, the court-appointed lead plaintiff in the securities class action captioned *In re Lordstown Motors Corp. Securities Litigation*, Case No. 4:21-cv-00616 (DAR)) [D.I. 525]; Benjamin Hebert and Atri Amin, co-lead plaintiffs in the class action styled *In re Lordstown Motors Corp. Stockholders Litigation*, C.A. No. 2021-1066-LWW (Del. Ch.) [D.I. 526]; certain Foxconn parties [D.I. 528]; and the Office of U.S. Trustee [D.I. 537].

5.      Among many other reasons, the RIDE Investor Group Objection made clear that the Disclosure Statement could not be approved because the Plan it supported was unconfirmable on its face.  The reason that the Plan was not confirmable as proposed was that it contained provisions in Article VIII.D which would implement non-consensual releases (the "Releases") of third parties and non-debtors.  Additionally, the forms of Ballot attached to the Motion and Solicitation Procedures made express that only by voting to reject the Plan and opting out of the Releases could a Holder[2] of Claims or Interests remain unbound.  This meant that Holders that did not return Ballots would be bound and deemed to consent to releasing third parties who are not Debtors in these cases.

6.      All of the parties that filed oppositions to the approval of the Disclosure Statement objected to the Releases.

7.      The original hearing on the Motion and Disclosure Statement was continued from October 18 to October 25, 2023 [D.I. 539].  On October 23, 2023, the Debtors requested that the hearing be further continued to October 31, 2023, with a status conference to be held on October 25, 2023 [D.I. 603].

8.      On October 24, 2023, the Debtors filed their Amended Disclosure Statement and their *First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "Amended Plan") [D.I. 605].  Additionally, the Debtors provided a *Notice of Filing of Blackline* of both the Amended Disclosure Statement and the Amended Plan [D.I. 607].

---

[2]      Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement, as applicable.

9.      Rather than provide a plan where the Debtors clarified that the non-consensual Releases would be removed, the Debtors expressly named some of the objecting parties who would be "for the avoidance of doubt" bound by these Releases:

> **D. *Releases by Holders of Claims and Interests***
>
> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Post-Effective Date Debtor, and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. Without limiting the generality of the foregoing, pursuant to the Releases set forth in this Article VIII.D, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any Claims related to or asserted in the Putative Class Actions (which actions include, for the avoidance of any doubt, the Ohio Securities Class Action, the Delaware Shareholder Class Action, and the Post-Petition Securities Action). Notwithstanding anything to the contrary in the foregoing,  the releases set forth in this Article VIII.D shall not be construed as (i) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) releasing any timely filed Proof of Claim (as may be validly amended under the Plan or as maybe permitted by the Bankruptcy Code and Bankruptcy Rules) or any post-Effective Date obligations of or under (A) any party or Entity under the Plan, (B) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to Final Order, or (C) any document, instrument, or agreement executed to implement the Plan, or (iv iii) releasing any rights to distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order.

Amended Plan, Art. VIII.D.  Additionally, the definition of "Releasing Party" did not change in a material way so as to ensure that there is no confusion as to whether non-voting Holders would be bound by the Releases:

121.    108. "*Releasing Party*" means each of the following in their capacity as such: (i) all Holders of Unimpaired Claims or Interests who do not File a timely objection to the third party releases provided for in Article VIII.D; (ii) all Holders of Administrative Claims and Priority Tax Claims that do not hold Claims or Interests in any Class that do not File a timely objection to the third party releases provided for in Article VIII.D; (iii) all Holders of Claims or Interests that vote to accept the Plan; (iv) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and do not affirmatively opt out of the third party releases provided for in Article VIII.D by checking the box on the applicable Ballot or form indicating that they opt not to grant such releases in the Plan submitted on or before the Voting Deadline; and (v) with respect to each of the foregoing Entities in clauses (i) through (viv), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former managers, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such; *provided, however*, that the Entities identified in part (vi) shall be Releasing Parties only to the extent the corresponding Entities in parts (i)-(v) are legally able to bind such Entities in part (vi) to the releases contained in the Plan under applicable law.

Amended Plan, Art. I.A.121.

10.    When the Amended Plan and Amended Disclosure Statement were filed, the Debtors provided no updates to the Solicitation Procedures or Ballots. The Ballot that was submitted for approval to send to beneficial holders of Common Stock Interests[3] (attached to the Motion as Exhibit 2-4) at Item 2 made clear that those who did not return a Ballot would be deemed to consent to the Releases.

11.    On October 28, 2023, Debtors' counsel provided the undersigned with redlines showing proposed further revisions of the Amended Plan and Amended Disclosure Statement. On October 29, 2023, the Debtors filed a modified Amended Plan (the "Modified Plan") [D.I. 624] and supporting disclosure statement (the "Modified Disclosure Statement") [D.I. 625].

12.    On October 30, 2023, the Debtors filed *their Notice of Filing of Revised Proposed Order (i) Approving the Disclosure Statement, (ii) Approving Plan Solicitation, (iii) Approving*

---

[3]    The original Plan did not separate out Section 510(b) Claims from Common Stock Interests. The Amended Plan creates separate classes for Section 510(b) Claims, and a separate class for the "RIDE Section 510(b) Claims" – as of the date of the filing of this Supplemental Objection the Debtors have not provided updated Ballots for these new classes of Claims.

*Forms of Ballots, (iv) Approving Form, Manner, and Scope of Confirmation Notices, (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (vi) Granting Related Relief* [D.I. 628], which contained a revised form of order, as well as exhibits with modifications to the Solicitation Procedures and Ballots ("Modified Solicitation Procedures" and "Modified Ballots" as applicable). The Modified Ballots include a form of ballot for the Ride Investor Group Class (the "RIDE Ballot") at Exhibit 2-7 to the modified proposed order approving the Motion.

13. The Modified Plan now carves out Bandol Lim, in his capacity as lead plaintiff in the RIDE Securitas Action, as a "Releasing Party" by virtue of defining him as a Putative Class Action Representative." See Modified Plan, Article I.A.119. However, the Putative Class Representatives should include the entire RIDE Investor Group, as well as any successors who may be named as lead plaintiff in the RIDE Securities Action.

14. While the Releases in Article VIII.D of the Modified Plan have been revised to include language stating that Putative Class Action Representatives shall not be Releasing Parties, also included is a provision that, to the extent such a Putative Class Action Representative does not have or gain authority to bind a class, such class members (other than the representatives) will become Releasing Parties under the Plan. This raises serious questions regarding notice and due process for such potential claimants.

15. The RIDE Ballot now appears to be an "opt-in" form, where only Holders who approve the Modified Plan or reject it and opt in to the Releases are bound. Yet, the new language in the Releases as described above raises serious issues about class members who do not yet have notice of their claims against the non-debtor directors and officers whom the Debtors seek to have covered by the Releases.

16.    The Modified Plan (or next version of it) should retain the carve-out of the whole RIDE Investor Group (which would require adding Messrs. Gtazaros and Dowell as Putative Class Action Representatives) and remove the toggle provision in the Releases which would make class members Releasing Parties if they are not named lead plaintiffs.  Additionally, much of these issues will be solved by modifying the definition of Released Parties to include the following language:

> None of the non-Debtor defendants in the securities class action styled: *Lim v. Hightower, et al.*, Case No. 23 Civ. 01454, in the United States District Court for the Northern District of Ohio, shall constitute "Released Parties" under the Plan.

17.    These provisions in the Modified Plan continue to result in a plan with non-consensual Releases of non-debtors and will bind Holders who do not return a RIDE Ballot for lack of notice.  This will prejudice the Ride Investor Group and the Putative Class it represents because many Claimants have yet to be identified and the defendants in the Ride Securities Class Action are non-Debtor directors and officers of a liquidating company who are not essential to the cases after the Sale.

18.    "As a general rule, an offeree does not need to reply to an offer, and his silence and inaction will not be construed as an assent to an offer." Corp. Serv. Co. v. Kroll Assocs., Inc., No. CIV.A.99C-12-210-JRS, 2001 WL 755934, at *4 (Del. Super. Ct. June 15, 2001) (relying on Chorba v. Davlisa Enter. Inc., Pa.Super., 450 A.2d 36, 39 (1982) ("silence will not constitute acceptance of an offer in the absence of a duty to speak"); 2 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 6:49 (4th ed.1991)).

19.    Courts in this District have in fact held that they look to contract principles in determining consent:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave

the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties.

In re Emerge Energy Servs. LP, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (relying on Restatement (Second) of Contracts § 19 (Am. Law Inst. 1981); Klaassen v. Allegro Dev. Corp., 106 A.3d 1035, 1045-48 (Del. 2014).

20.    Additionally, the Court can apply its own precedent that such an arrangement, binding voting holders of claims and interests to a third party release without affirmative consent is impermissible: "Failing to return a ballot is not a sufficient manifestation of consent to a third party release…the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases….Therefore, the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." In re Washington Mut., Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011) (Walrath, J.); see also In re Zenith Electronics Corp., 241 B.R. 92 (Bankr. D. Del. 1999) (Walrath, J.) (finding that a release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the Plan).

21.    This Court in Washington Mut. stated the law regarding non-consensual third-party releases in the Third Circuit:

> Determining the fairness of a plan which includes the release of non-debtors requires the consideration of numerous factors and the conclusion is often dictated by the specific facts of the case. See, e.g., Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 212–14 (3d Cir. 2000) (finding that a non-consensual third party release of another third party was not valid under the specific facts of that case but concluding that it might be in other cases based on "fairness, necessity to the reorganization, and specific factual findings to support these conclusions"); In re Genesis Health Ventures, Inc., 266 B.R. 591, 608 (Bankr. D. Del. 2001) (finding

that clauses in debtors' proposed plan purporting to relieve senior lenders' liability on third-party claims precluded plan confirmation absent a showing of extraordinary circumstances supporting non-consensual third-party releases);

Washington Mut., 442 B.R. at 345–46. Therefore, if at all permissible, the Debtors would have to demonstrate fairness, necessity to the reorganization, and extraordinary circumstances.

22.     As recently as a week prior to the filing of this Supplemental Objection, in the case of In re AF Liquidation, Inc., et al (f/k/a AeroFarms, Inc., et al) (Case No 23-10737 (MFW)) ("AeroFarms"), the Court withheld approval of a combined disclosure statement and joint chapter 11 plan until the debtors removed provision binding non-voting holders to third-party releases.[4]

23.     As the Debtors have not made the revisions required which would allow this Amended Plan to be confirmed, there is no reason to approve the Amended Disclosure Statement and the Solicitation Procedures.

24.     The Ride Investor Group renews its reservation of rights as set forth in the Ride Investor Group Objection, and respectfully requests that the Court deny the relief requested in the Motion, and not approve the Amended Disclosure Statement, and grant the RIDE Investor Group and the Putative Class such other relief as the Cort deems appropriate and just.

---

[4]     See Certification of Counsel Regarding Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Modified Combined Disclosure Statement and Joint Chapter 11 Plan [AeroFarms D.I. 400] (redline showing removal of proposed confirmation order language binding non-voting holders to third-party releases [400-3, p. 14 of 49]; redline showing modification of proposed plan definition of "Releasing Parties" to carve-out non-voting holders from definition [400-4, p. 22 of 90]); see also Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Modified Combined Disclosure Statement and Joint Chapter 11 Plan [AeroFarms D.I. 401] (order approving the disclosure statement and plan with aforementioned modifications and removal of non-consensual third-party releases).

Dated: October 30, 2023

*/s/ Garvan McDaniel*
Garvan F. McDaniel (#4167)

**HOGAN McDANIEL**
1311 Delaware Avenue
Wilmington, DE 19806
Tel: (302) 656-7540
gfmcdaniel@dkhogan.com

*- and -*

**FISHMAN HAYGOOD LLP**
Tristan Manthey (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Tel: (504) 586-5252
Fax: (504) 586-5250
tmanthey@fishmanhaygood.com

***Bankruptcy Counsel for the Lead Plaintiff Movant RIDE Investor Group and the Putative Class***

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Tel: (212) 371-6600
Email: ipress@kmllp.com
lmolinaro@kmllp.com

***Counsel for Lead Plaintiff Movant RIDE Investor Group and Proposed Lead Counsel for the Putative Class***