**<u>EXHIBIT 4</u>**

# TABLE OF CONTENTS

Page

**ARTICLE I    INTRODUCTION** ........................................................................... 1
    **A.**   *Definitions* ................................................................... 1
    **B.**   *Exhibits* ........................................................................ 1
    **C.**   *Purpose of this Disclosure Statement* ............................ 1
    **D.**   *Important Notices and Disclaimers* ............................... 2
    **E.**   *Brief Overview of the Plan* ........................................... 4

**ARTICLE II    OVERVIEW OF THE DEBTORS** ............................................. 6
    **A.**   *The Debtors' Background and Prepetition Business Operations* .... 6
        *1.*   *SPAC Merger* ...................................................... 7
        *2.*   *Partnership with Foxconn* ................................... 7
    **B.**   *The Debtors' Corporate Structure* ................................ 9
    **C.**   *The Debtors' Capital Structure* .................................... 9
    **D.**   *The Debtors' Board and Management* ........................... 10
    **E.**   *The Debtors' Workforce and Facilities* .......................... 11
    **F.**   *Prepetition Litigation* .................................................. 12
        *1.*   *SEC Investigation and Securities Actions* ............ 12
        *2.*   *Karma Litigation* ............................................... 16
    **G.**   *Circumstances Leading to the Commencement of the Chapter 11 Cases* .... 16

**ARTICLE III OVERVIEW OF THE CHAPTER 11 CASES** ......................... 18
    **A.**   *Commencement of the Chapter 11 Cases* ...................... 18
    **B.**   *First Day and Second Day Relief* .................... ~~18~~19
        *1.*   *Operational First Day Motions and Relief Granted* .... ~~18~~19
        *2.*   *Procedural First and Second Day Motions* ........... 19
    **C.**   *The Sale Process* ........................................ ~~19~~20
    **D.**   *Potential Assumption, Assignment, and Rejection of Executory Contracts and Unexpired Leases* .......... 22
    **E.**   *Retention of Debtors' Chapter 11 Professionals* ........... 23
    **F.**   *Appointment of Derivative Claims Oversight Committee and Retention of Special Litigation Counsel* .......... ~~23~~24
    **G.**   *Appointment of UCC* ................................................. 24
    **H.**   *Appointment of the EC* ................................ ~~24~~25
    **I.**   *Schedules and Statements and Claims Bar Dates* .... ~~24~~25
    **J.**   *Exclusivity* .................................................. ~~25~~26
    **K.**   *The Foxconn Adversary Proceeding* ............................ 26
    **L.**   *Foxconn's Motion to Dismiss or Convert the Chapter 11 Cases* .... ~~26~~27
    **M.**   *The Debtors' Preliminary Injunction Proceeding* .......... 27
    **N.**   *Karma Developments and Settlement* ........................... 27
    **O.**   *Post-Petition Directors and Officers Litigation* ........... 29

i

**ARTICLE IV  THE PLAN** ........................................................................... 31

A.      *Overview of the Plan* .......................................................... 31

B.      *Unclassified Claims* .......................................................... ~~32~~33

    1.      *Unclassified Claims Summary* ........................... ~~32~~33

    2.      *Unclassified Claims* ........................................... 33

C.      *Classification and Treatment Under the Plan* ............ ~~35~~36

    1.      *Summary of Classification of Claims and Interests* ........ ~~35~~36

    2.      *Classified Claims and Interests Details* ............ 41

    3.      *Elimination of Vacant Classes* ......................... ~~49~~50

    4.      *Separate Classification of Secured Claims* ........ 50

    5.      *Voting Classes; Presumed Acceptance by Non-Voting Classes* ........ 50

    6.      *Controversy Concerning Impairment* ............... 50

D.      *Acceptance or Rejection of the Plan; Effect of Rejection By One or More Classes of Claims or Interests* ........................ 50

    1.      *Classes Entitled to Vote* .................................... 50

    2.      *Class Acceptance Requirement* ......................... ~~50~~51

    3.      *Cramdown and No Unfair Discrimination* ........ 51

E.      *Means of Implementation of the Plan* ........................ 51

    1.      *Consolidation for Distribution Purposes Only* ........ 51

    2.      *Post-Effective Date Status* ............................... ~~52~~53

    3.      *Sources of Consideration for Distributions* ...... 53

    4.      *Claims Ombudsman* .......................................... 53

    5.      *Post-Effective Date Matters* ............................ ~~55~~56

    6.      *Board of Directors and Officers* ....................... ~~56~~57

    7.      *Vesting of Assets* .............................................. ~~56~~57

    8.      *Existing Securities* ........................................... ~~56~~57

    9.      *Preservation of Net Operating Losses* ............. 57

    10.     *Preservation of Causes of Action* ..................... 58

    11.     *Preservation of Insurance* ............................... ~~59~~60

    12.     *Preservation of Evidence Related to Putative Class Actions* ........ 60

    13.     *Indemnification Obligations* ............................ 60

    14.     *Setoffs and Recoupments* ................................. ~~60~~61

    15.     *Exemption from Certain Taxes and Fees* .......... 61

    16.     *Approval of Plan Documents* ............................ 61

    17.     *Effectuating Documents; Further Transactions* ........ ~~61~~62

    18.     *Tax Matters* ..................................................... ~~61~~62

    19.     *Settlements* ...................................................... 62

    20.     *Litigation Trust* ............................................... 62

    21.     *Claims Payable by Third Parties* ..................... ~~62~~63

F.      *Provisions Regarding Distributions* ........................... 63

    1.      *Distribution Record Date* ................................. 63

    2.      *Cash Payments* ................................................. 63

    3.      *Allocation of Distributions; Postpetition Interest on Claims* ........ ~~63~~64

    4.      *Delivery of Distributions* ................................. 64

    5.      *Compliance with Tax Requirements* ................. ~~64~~65

AMERICAS 125464412

|   |   | 6. | *No Distribution in Excess of Allowed Amounts* | 65 |
|   |   | 7. | *Special Rules for Distributions to Holders of Disputed Claims* | 65 |
|   |   | 8. | *Manner of Payment Under Plan* | ~~65~~66 |
|   | G. | *Procedures for Disputed Claims and Interests* |   | 66 |
|   |   | 1. | *Allowance of Claims and Interests* | 66 |
|   |   | 2. | *Claims Administration Responsibilities* | ~~66~~67 |
|   |   | 3. | *Estimation of Claims* | 67 |
|   |   | 4. | *Adjustment to Claims Register Without Objection* | 68 |
|   |   | 5. | *Disallowance of Claims* | 68 |
|   |   | 6. | *Reimbursement or Contribution* | ~~68~~69 |
|   |   | 7. | *Amendments to Proofs of Claim* | 69 |
|   |   | 8. | *No Distributions Pending Allowance* | 69 |
|   |   | 9. | *Allowed and Disputed Claims Reserves* | 69 |
|   |   | 10. | *Distributions After Allowance* | 70 |
|   |   | 11. | *Single Satisfaction of Claims* | 70 |
|   | H. | *Settlement, Release, Injunction, and Related Provisions* |   | ~~70~~71 |
|   |   | 1. | *Compromise and Settlement of Claims, Interests, and Controversies* | ~~70~~71 |
|   |   | 2. | *Discharge of Claims and Termination of Interests* | 71 |
|   |   | 3. | *Releases by the Debtors* | ~~71~~72 |
|   |   | 4. | *Releases by Holders of Claims and Interests* | ~~73~~74 |
|   |   | 5. | *Exculpation* | ~~76~~77 |
|   |   | 6. | *Injunction* | 77 |
|   |   | 7. | *Release of Liens* | 78 |
|   | I. | *Executory Contracts* |   | 78 |
|   |   | 1. | *Rejection of Executory Contracts* | 78 |
|   |   | 2. | *Time for Filing Rejection Claims* | ~~78~~79 |
|   |   | 3. | *Reservation of Rights* | 79 |
|   | J. | *Conditions Precedent to Confirmation and the Effective Date* |   | 79 |
|   |   | 1. | *Conditions to Occurrence of the Effective Date* | 79 |
|   |   | 2. | *Waiver of Conditions to Confirmation and Effective Date* | ~~79~~80 |
|   |   | 3. | *Effect of Failure of Conditions to the Effective Date* | 80 |
|   | K. | *Effect of Confirmation* |   | ~~80~~81 |
|   |   | 1. | *Deemed Consent* | ~~80~~81 |
|   |   | 2. | *No Waiver* | ~~80~~81 |
|   |   | 3. | *Disallowed Claims and Disallowed Interests* | 81 |
|   | L. | *Retention of Jurisdiction* |   | 81 |
| *ARTICLE V* | *CERTAIN TAX CONSEQUENCES OF THE PLAN* |   |   | ~~83~~84 |
|   | A. | *Certain Tax Consequences to Holders of Interests* |   | 85 |
|   | B. | *Certain Tax Consequences to Holders of General Unsecured Claims* |   | ~~85~~86 |
|   | C. | *Certain Tax Consequences to Holders of Section 510(b) Claims* |   | ~~85~~86 |
|   | D. | *Certain Tax Consequences to the Debtors* |   | 86 |
|   |   | 1. | *Cancellation of Indebtedness Income* | 86 |
|   |   | a. | *In General* | 86 |
|   |   | b. | *Limitation of NOL Carryforwards and Other Tax Attributes* | ~~86~~87 |

AMERICAS 125464412

|   |   |   |   |
|---|---|---|---|
| i. | *General Section 382 Annual Limitation* | | ~~86~~87 |
| ii. | *Special Bankruptcy Exception* | | ~~87~~88 |

***ARTICLE VI  SOLICITATION AND VOTING PROCEDURES*** ........................ ~~88~~89

| A. | *Holders of Claims and Interests Entitled to Vote on the Plan* | | ~~88~~89 |
| B. | *Voting Record Date* | | 89 |
| C. | *Solicitation Package* | | 89 |
| D. | *Voting on the Plan* | | 90 |
| E. | *Special Notice Concerning Releases Associated with Voting* | | ~~90~~91 |

***ARTICLE VII RISK FACTORS TO CONSIDER BEFORE VOTING*** ................ 93

| A. | *Risk of Amendment, Waiver, Modification or Withdrawal of the Plan* | | 93 |
| B. | *Parties May Object to the Plan's Classification of Claims and Interests* | | ~~93~~94 |
| C. | *The Debtors May Not Be Able to Obtain Confirmation of the Plan* | | ~~93~~94 |
| D. | *The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code* | | ~~94~~95 |
| E. | *The Conditions Precedent to the Effective Date of the Plan May Not Occur* | | ~~94~~96 |
| F. | *Holders of Claims and Interests May Recover Less Than Projected* | | ~~94~~96 |
| G. | *The Allowed Amount of Claims May Differ from Current Estimates* | | ~~95~~96 |
| H. | *Valuation of the Assets Is Speculative* | | ~~95~~97 |
| I. | *Risks Related to Income Taxation* | | ~~95~~97 |
| J. | *Certain Impacts on Distributions as a Result of Treatment of Foxconn Preferred Stock Interests* | | ~~95~~97 |
| K. | *Certain Risks to Holders of Interests* | | ~~96~~97 |
| L. | *Litigation* | | ~~96~~98 |

***ARTICLE VIII          ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN*** ...................................... ~~96~~98

| A. | *Liquidation under Chapter 7 or dismissal* | | ~~96~~98 |
| B. | *Alternative Chapter 11 Plan* | | ~~98~~99 |

***ARTICLE IX  CONFIRMATION OF THE PLAN*** ......................................... ~~98~~100

| A. | *Acceptance of the Plan* | | ~~98~~100 |
| B. | *Best Interests Test* | | ~~99~~101 |
| C. | *Feasibility* | | ~~99~~101 |
| D. | *Confirmation Hearing and Plan Objection Deadline* | | ~~100~~101 |
| E. | *Payment of Statutory Fees* | | ~~103~~105 |
| F. | *Governing Law* | | ~~103~~105 |
| G. | *Notice of Entry of Confirmation Order and Relevant Dates* | | ~~103~~105 |
| H. | *Modification of the Plan and Amendments* | | ~~103~~105 |
| I. | *Revocation, Withdrawal or Non-Consummation of Plan* | | ~~103~~105 |
| J. | *Binding Effect* | | ~~104~~106 |
| K. | *Severability of Plan Provisions* | | ~~104~~106 |
| L. | *No Admissions* | | ~~104~~106 |
| M. | *Dissolution of the UCC and EC* | | ~~104~~106 |

iv

*N.*      *Time* ............................................................................................................ ~~105~~107

*O.*      *Successors and Assigns* ............................................................................ ~~105~~107

*P.*      *Conflict between Plan, Disclosure Statement and Plan Documents* .......... ~~106~~108

*Q.*      *Substantial Consummation* ...................................................................... ~~106~~108

*R.*      *Plan Exhibits* ............................................................................................ ~~106~~108

*ARTICLE X*  *CONCLUSION AND RECOMMENDATION* ................................. ~~107~~109

AMERICAS 125464412

## ARTICLE I
## INTRODUCTION[2]

This is the disclosure statement (the "**Disclosure Statement**") of Lordstown Motors Corp. ("**LMC**") and its affiliated debtors (collectively, the "**Debtors**" or the "**Company**"), in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), filed pursuant to section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**") and in connection with the *Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* (the "**Plan**"),[3] a copy of which is annexed to this Disclosure Statement as **Exhibit A**. The Plan constitutes a separate chapter 11 plan for each Debtor; *provided that* the estates of the various Debtors shall be consolidated for the purposes of effectuating distributions under the Plan.

### A. Definitions

Unless otherwise defined herein, capitalized terms used in this Disclosure Statement shall have the meanings ascribed to such terms in the Plan or as the context otherwise requires.

### B. Exhibits

The following exhibits to this Disclosure Statement are incorporated as if fully set forth herein and made part of this Disclosure Statement:

- **Exhibit A** – Plan

- **Exhibit B** – Organizational Chart

- **Exhibit C** – Liquidation Analysis

- **Exhibit D** – Foxconn Adversary Complaint

### C. Purpose of this Disclosure Statement

The purpose of this Disclosure Statement is to provide information that (i) summarizes the Plan, (ii) advises holders of Claims or Interests of their rights under the Plan, (iii) assists parties entitled to vote on the Plan in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the

---

[2]  This Disclosure Statement remains subject to ongoing revisions of the Debtors in all respects.

[3]  The Plan reflects modifications to and supersedes the *Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* dated October 29, 2023 [Docket No. 624]; which in turn amended and superseded the *First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* dated October 24, 2023 [Docket No. 605]; (the "**First Amended Plan**"), which in turn amended and superseded the *Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* dated September 1, 2023 [Docket No. 360] (the "**Initial Plan**").

1

work remotely, serving in managerial, administrative, sales, and research and development roles.[10]

Following the closing of the sale to LandX Motors Inc. described in Article III.C of this Disclosure Statement, anticipated to occur no later than October 31, 2023, the Debtors remaining employees will be working from one site in Farmington Hills, Michigan, the Plant in Lordstown, Ohio and remotely.

### F. Prepetition Litigation

As of the Petition Date, the Debtors were party to numerous civil actions, including in various state and U.S. federal courts and investigations by the SEC (collectively, the "**Prepetition Litigation**"), as described below.

### 1. SEC Investigation and Securities Actions

In February 2021, the SEC initiated an investigation (the "**SEC Investigation**") related to the SPAC Merger with DiamondPeak and LMC's reported pre-orders for vehicles, production timeline and certain other matters. The SEC Investigation remains ongoing. As of the date of this Disclosure Statement, the SEC has not Filed any Proofs of Claim against any Debtor, but the deadline for the SEC to File any such Claims (*i.e.*, the Governmental Claims Bar Date of December 26, 2023 at 5:00 p.m. (ET)) has not yet passed.

In addition, on October 3, 2023, the SEC filed a motion [Docket No. 502] (the "**Non-Dischargeability Extension Motion**"), seeking to extend the time by which the SEC must file a complaint or take any other action that may be required, if any, to determine the dischargeability of a debt pursuant to Section 1141(d)(6) of the Bankruptcy Code. On October 19, 2023, the Bankruptcy Court entered an order approving the Non-Dischargeability Extension Motion [Docket No. 589] and extending the SEC's deadline to take action with respect to the dischargeability issue to November 10, 2023, without prejudice to the SEC's right to seek further extensions or the rights of other parties in interest to oppose any such extensions. To the extent that the SEC brings an action to determine that any debt of the Debtors owed to the SEC (or other Governmental Units) is non-dischargeable and the SEC prevails in such action, obligations of the Debtors owed to the SEC would become obligations of the Post-Effective Date Debtor, which could impact recoveries to Holders of Claims and Interests pursuant to the Plan.

Following the prepetition initiation of the SEC Investigation in February 2021, a series of plaintiffs brought class action and derivative suits against LMC, certain of its current and former directors and officers ("**D&Os**") and/or employees. The class actions and derivative actions include the following:

- **Ohio Securities Class Action**. A consolidated securities fraud class action that was pending in the U.S. District Court for the Northern District of Ohio (the "**Ohio District Court**") prior to the Petition Date, captioned *In re Lordstown Motors Corp. Sec. Litig.*,

---

[10]    All employee estimates in this paragraph are as of the date of filing of this Disclosure Statement.

AMERICAS 125464412

On February 3, 2023, the D&O defendants filed an answer to the amended complaint. Discovery has commenced.  While the Debtors were not named as a defendant, defendants have asserted indemnification rights against the Debtors and, on June 9, 2023, the chancery court granted, in part, a motion to compel document discovery from Debtor LMC.  On July 21, 2023, the plaintiffs filed a motion for class certification.  On August 21, 2023, the defendants in the action filed their answering brief.  A trial date has been set for March 11, 2024.

As described in more detail below (in Article III.J), the Debtors brought an adversary proceeding to extend the automatic stay to the current and former directors and officers named in the Delaware Class Action. In the adversary proceeding, the Debtors sought a preliminary injunction to extend the automatic stay, which motion the Bankruptcy Court denied without prejudice.

- **Ohio Derivative Action**.  A derivative action that was pending in the U.S. District Court for the Northern District of Ohio prior to the Petition Date, captioned *Thai v. Burns et al.*, No. 4:21-cv-01267 (N.D. Ohio) ("**Ohio Derivative Action**").  On June 30, 2021, Derivative Plaintiff An Thai brought this shareholder derivative lawsuit on behalf of LMC, as nominal defendant, against nineteen D&O defendants[14] asserting violations of Sections 14(a), 10(b), and 20(a), and for contribution under Sections 10(b) and 21D, of the Exchange Act, as well as claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.  On October 21, 2021, the Court entered a stipulated stay of the action and scheduling order relating to defendants' anticipated motion to dismiss and/or subsequent motion to stay that is conditioned on the resolution of the motion to dismiss in the Ohio Securities Class Action. Discovery had not yet commenced, and no trial date had been set.  From and after the Petition Date, the Ohio Derivative Action was stayed by operation of the automatic stay.

---

Richardson, Steven Hash, and Judith Hannaway.  DiamondPeak Sponsor LLC, a non-debtor entity that was involved in the SPAC Merger, was also named as a defendant, but was dismissed, without prejudice, by order entered by the chancery court on June 21, 2023.  Of the D&O defendants in the Delaware Shareholder Class Action, only David Hamamoto is a Chapter 11 Director and Officer (as such term is defined in the Plan).  All other D&O defendants in the Delaware Shareholder Class Action (*i.e.*, Mark Walsh, Andrew Richardson, Steven Hash and Judith Hannaway and, collectively, the "**Additional Delaware D&O Defendants**") are Former Directors and Officers (as such term is defined in the Plan) and the Debtors represent that none of the Additional Delaware D&O Defendants shall, at any time through the Effective Date, become a director or officer of the Debtors or otherwise become a Released Party (as such term is defined in the Plan).

[14]   The D&O defendants in the Ohio Derivative Action are: Stephen S. Burns, Phil Richard Schmidt, Julio Rodriguez, Angela Strand Boydston, Shane Brown, Michael Fabian, Keith A. Feldman, Michael D. Gates, David T. Hamamoto, Judith A. Hannaway, Steven R. Hash, Mickey W. Kowitz, Darren Post, Jane Reiss, Andrew C. Richardson, Martin J. Rucidlo, Dale G. Spencer, Chuan D. "John" Vo, and Mark A. Walsh.  Of the D&O defendants in the Ohio Derivative Action, David Hamamoto, Keith Feldman, Jane Reiss, Dale Spencer, Angela Strand, and Darren Post are Chapter 11 Directors and Officers (as such term is defined in the Plan).  All other D&O defendants in the Ohio Derivative Action are Former Directors and Officers (as such term is defined in the Plan).

AMERICAS 125464412

- **District of Delaware Derivative Action**. A consolidated derivative action was pending in the U.S. District Court for the District of Delaware prior to the Petition Date under lead case captioned *In re Lordstown Motors Corp. Shareholder Derivative Litigation*, No. 21-00604-SB (D. Del.) ("**District of Delaware Derivative Action**"). The matter consists of four consolidated shareholder derivative lawsuits filed between April 28, 2021 and July 9, 2021 by certain plaintiffs[15] on behalf of LMC, as nominal defendant, against certain D&O defendants[16] asserting violations of Section 10(b), Section 14(a), Section 20(a), and contribution for violations of Sections 10(b) and 21D, of the Exchange Act, as well as breach of fiduciary duty, insider selling, and unjust enrichment derivatively for the benefit of LMC. On May 9, 2023, the Court re-issued a stay in the action pending resolution of the motion to dismiss in the Ohio Securities Class Action, discussed above, given the similarity in issues raised by the actions. As of the Petition Date, discovery had not yet commenced and no trial date had been set. From and after the Petition Date, the District of Delaware Derivative Action was stayed by operation of the automatic stay.

- **Delaware Chancery Derivative Action**. A consolidated derivative action was pending in the Delaware Court of Chancery prior to the Petition Date under lead case captioned *In re Lordstown Motors Corp. Stockholder Derivative Litigation*, C.A. No. 2021-1049-LWW (Del. Ch.) ("**Delaware Chancery Derivative Action**"). The matter consists of two consolidated shareholder derivative lawsuits filed on December 2, 2021 and February 18, 2022 by derivative plaintiffs David M. Cormier[17] and Janelle Jackson asserting derivative claims for breach of fiduciary duty and unjust enrichment against certain D&O defendants.[18] The matter is stayed pending resolution of the motion to dismiss in the Ohio Securities Class Action. As of the Petition Date, discovery had not yet commenced and no trial date had been set. From and after the Petition Date, the Delaware Chancery Derivative Action was stayed by operation of the automatic stay.

---

[15]  The derivative plaintiffs are: Daniel J. Cohen, David M. Cohen, Alicia Kelley, Claude L. Patterson, Evaristo Sarabia, and Herbert Stotler.

[16]  The D&O defendants in the Delaware Derivative Action are: Stephen S. Burns, Phil Richard Schmidt, Julio Rodriguez, Michael Fabian, David T. Hamamoto, Mark A. Walsh, Andrew C. Richardson, Steven R. Hash, Judith A. Hannaway, Keith A. Feldman, Jane Reiss, Dale G. Spencer, Michael D. Gates, Mickey Kowitz, Angela Strand Boydston, and Martin J. Rucidlo. Of the D&O defendants in the Delaware Derivative Action, David Hamamoto, Keith Feldman, Jane Reiss, Dale Spencer, Angela Strand, and Darren Post are Chapter 11 Directors and Officers (as such term is defined in the Plan). All other D&O defendants in the Delaware Derivative Action are Former Directors and Officers (as such term is defined in the Plan).

[17]  Lead plaintiff David M. Cormier has been replaced with lead plaintiff Ed Lomont in the Delaware Chancery Derivative Action.

[18]  The D&O defendants in the Delaware Chancery Derivative Action are: Keith A. Feldman, Michael D. Gates, David T. Hamamoto, Mickey Kowitz, Jane Reiss, Martin J. Rucidlo, Dale G. Spencer, Angela Strand, Shane Brown, Stephen S. Burns, Caimin Flannery, Darren Post, Julio Rodriguez, Phil Richard Schmidt, Chuan D. "John" Vo, Judith Hannaway, Steven R. Hash, Andrew C. Richardson, and Mark A. Walsh. Of the D&O defendants in the Delaware Chancery Derivative Action, David Hamamoto, Keith Feldman, Jane Reiss, Dale Spencer, Angela Strand, and Darren Post are Chapter 11 Directors and Officers (as such term is defined in the Plan). All other D&O defendants in the Delaware Chancery Derivative Action are Former Directors and Officers (as such term is defined in the Plan).

Prior to the Petition Date, the Debtors timely ~~tendered~~provided notice of claims under applicable D&O insurance policies with respect to each of the above-listed actions.  ~~However, other than in connection with the Delaware Shareholder Class Action, the Debtors' primary and excess insurers under the applicable D&O policies have taken the position that no coverage is available.  The Company has contested the insurers' denial, however~~ there can be no assurance that these efforts will be successful and that the Company will be able to access D&O insurance policies with respect to the above-listed actions.

The Debtors' D&O insurance program in effect from October 23, 2020 to October 23, 2022 (when claims were made with respect to the above-listed actions), were claims-made policies consisting of ~~a primary policy with $~~$550 million in total coverage~~,~~ under the Side ABC policies ~~with $45 million in excess coverage~~("ABC Policies"), and Side A DIC policies ("Side A DIC Policies) with an additional $25 million in excess coverage.  ~~As noted above, the Debtors' insurers have~~The excess policies under both the ABC Policies and the Side A Policies follow the form of the primary policies.  The primary insurer under the ABC Policies has taken the position that no coverage is available under such policies for the above-listed actions ~~and that certain exclusions apply~~under an exclusion called the "Retroactive Date Exclusion," and have reserved rights under other exclusions.  The primary insurer under the Side A DIC policies has issued a reservation of rights letter which, while not denying coverage, has cast doubt on the availability of coverage for at least some individuals and/or claims. The Debtors assert that coverage is available.  However, there can be no assurance that these efforts will be successful and that the Company will be able to access D&O insurance policies with respect to the above-listed actions.

The claimants in the Delaware Shareholder Class Action may have access to a policy that was in effect for DiamondPeak prior to the SPAC Merger, which SPAC Merger is discussed in Article II.A.1 of this Disclosure Statement.

As described in Article III.N of this Disclosure Statement, after the Petition Date, certain plaintiffs brough a putative class action against two of the Debtors' current directors and officers.

As provided in Article V.L of the Plan, nothing in the Plan or the Confirmation Order will alter the Debtors' or the post-effective date Debtors' duties to preserve evidence related to the Ohio Securities Class Action, the Delaware Stockholder Class Action, or the Post-Petition Securities Action (defined below).  In addition, as detailed in Article III.E of this Disclosure Statement, the Debtors have retained Winston (defined below) to investigate the claims brought on behalf of the Debtors in the above-referenced derivative actions, the findings of which investigations will be shared with the UCC and the EC.

## 2.    Karma Litigation

On October 30, 2020, Karma commenced a suit against LMC and certain of its current and former executive officers and employees in the California District Court, Case No. 20-cv-02104 (the "**Karma Action**"), generally alleging misappropriation of trade secrets and intellectual property, conspiracy, breach of the parties' non-disclosure agreement, interference with Karma's employment contracts, RICO conspiracy, and violation of computer fraud statutes, and for injunctive relief and monetary damages based on a variety of claims and theories

Governmental Claims Bar Date and the Rejection Damages Bar Date (which are set forth in Article III.I of this Disclosure Statement) have not yet passed and, accordingly, the amount of any claims of (i) Governmental Units and (ii) counterparties to rejected contracts or leases, that may be Filed against the Debtors by such bar dates remains uncertain.  Ultimate recoveries to Holders of General Unsecured Claims will depend on the Allowed amount of any such claims, which may be substantial.

In addition, as discussed in Article II.F.I of this Disclosure Statement, the SEC has sought and obtained an extension of its deadline to bring an action to determine whether certain of the Debtors obligations to Governmental Units are not dischargeable under section 1141(d)(6) of the Bankruptcy Code.  If the SEC brings and prevails in such non-dischargeability action, obligations of the Debtors owed to the SEC would become obligations of the Post-Effective Date Debtors, which could impact recoveries to Holders of Claims and Interests pursuant to the Plan.

### 2. Classified Claims and Interests Details

Each Holder of an Allowed Claim or Allowed Interest, as applicable, will receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtors and (b) the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, will receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(i)  *Class 1 – Other Priority Claims*

    (a)  *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

    (b)  *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of such Allowed Other Priority Claim, or such Allowed Other Priority Claim has been paid or otherwise satisfied, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash, in an amount equal to such Allowed Other Priority Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Other Priority Claim; and (iii) the date or dates agreed to by the Post-Effective Date Debtors and the Holder of the Allowed Priority Claim.

    (c)  *Voting*: Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

Policies, including primary, excess, and side A DIC coverage total, $75 million.

(c)    *Voting*: Class 9 is Impaired by the Plan, and Holders of RIDE Section 510(b) Claims are entitled to vote to accept or reject the Plan.

(x)    *Class 10 – Ohio Securities Class Action Claims*

(a)    *Classification*: Class 10 consists of all Ohio Securities Class Action Claims against the Debtors.

(b)    *Treatment*: The Ohio Securities Class Action Lead Plaintiff may elect to accept the treatment set forth in this Paragraph 10.b by providing the Debtors with written notice (the "**Class 10 Election**") of his intent to accept such treatment on or before the Voting Deadline.  If the Ohio Securities Class Action Lead Plaintiff makes such election in a timely manner, the Plan shall constitute a motion to certify the Ohio Settlement Class exclusively for purposes of the Plan and to receive the treatment set forth herein.  Such motion shall be heard at the Confirmation Hearing.

If the Ohio Securities Class Action Lead Plaintiff does not elect to accept the treatment set forth in this Section 10.b in a timely manner, or if the Bankruptcy Court does not certify the Ohio Settlement Class as set forth herein at the Confirmation Hearing, ,-or if there is insufficient Post-Effective Date Debtor Cash to fund the Ohio Securities Class Action Payment, the Ohio Securities Class Action Claims shall constitute Section 510(b) Claims, shall be classified in Class 8 (Section 510(b) Claims) and this Class 10 (Ohio Securities Class Action Claims) shall be deemed vacant.

If the Securities Class Action Lead Plaintiff makes a timely Class 10 Election and the Bankruptcy Court certifies the Ohio Settlement Class at the Confirmation Hearing as set forth herein and there is sufficient Post-Effective Date Debtor Cash to fund the Ohio Securities Class Action Settlement, on the Effective Date, in full and complete settlement and satisfaction of all Ohio Securities Class Action Claims against the Debtors, the Debtors shall pay the Ohio Securities Class Action Payment from Post-Effective Date Debtor Cash into an escrow established by the Ohio Securities Class Action Lead Plaintiff for the benefit of the Ohio Settlement Class.  Thereafter, the Ohio Securities Class Action Lead Plaintiff and his professionals shall seek from the Bankruptcy Court (at their expense) such orders as may be required to approve procedures (including opt-out and claim procedures) to distribute the Ohio Securities Class Action Payment to the Ohio Settlement Class members.

50

The Debtors understand that Ohio Settlement Class members may be provided with the option to opt-out of the Ohio Settlement Class after the Settlement Class has been certified.  Any Claims of putative Ohio Settlement Class members that opt-out of the Ohio Settlement Class ("**Ohio Securities Class Action Opt-Out Claims**") shall be treated as Section 510(b) Claims and shall receive the treatment provided in the Plan to Section 510(b) Claims if and when such Claims become Allowed.  Further, in the event that more than five percent (5%) of putative Ohio Settlement Class members opt-out of the Ohio Settlement Class, the election of the Ohio Securities Class Action Lead Plaintiff to elect to be treated in this Class 10 (Ohio Securities Class Action Claims) shall be revoked, the Ohio Settlement Class shall be decertified, all Ohio Securities Class Action Claims shall be treated as Section 510(b) Claims and shall receive the treatment provided in the Plan to Section 510(b) Claims if and when such Claims are Allowed, and the Ohio Securities Class Action Payment shall be returned to the Debtors, minus any reasonable amounts spent by Settlement Class to implement the treatment set forth herein.

To the extent that the Ohio Lead Plaintiff timely makes the Class 10 Election and the Bankruptcy Court certifies the Ohio Settlement Class as set forth herein, the sole source of recovery against the Debtors for Holders of Ohio Settlement Securities Class Action Claims (other than Securities Class Action Opt-Out Claims) shall be the Ohio Securities Class Action Settlement.

Nothing herein shall be deemed to certify the Ohio Settlement Class for any purpose other than to distribute the Ohio Securities Class Action Payment to Ohio Settlement Class members.  In addition, such certification shall not prejudice the rights of any defendant in the Ohio Securities Class Action (other than the Debtors) to the object to the certification of a class in the Ohio Securities Class Action and all such rights are expressly preserved.  Further, the election of the Ohio Securities Class Action Lead Plaintiff to receive the treatment set forth in Article III.B.10 of the Plan shall not affect or release any of the rights of any Person to obtain recoveries as a class member of any class certified in connection with the Delaware Shareholder Class Action, if any.

Although the Debtors believe that they would be able to fund the Ohio Securities Class Action Payment based on the projected value of proceeds available for distribution, there can be no guarantee that sufficient value will be available to fund the Ohio Securities Class Action Payment even in the event the Ohio Lead Plaintiff makes the Class 10 Election.  If the Debtors are unable to fund the Ohio

AMERICAS 125464412

Securities Class Action Payment in full, then the settlement contemplated in connection with Class 10 treatment would not occur.

For the avoidance of any doubt, if the settlement contemplated in connection with Class 10 treatment does not occur for any reason, then Allowed Holders of Section 510(b) Claims would receive the treatment prescribed by the Plan for Class 8 Section 510(b) Claims.

    (c)    *Voting*: Class 10 is unimpaired by the Plan, and Holders of Ohio Securities Class Action Claims are deemed to accept the Plan; *provided*, that the Ohio Securities Class Action Lead Plaintiff shall be entitled to accept the treatment set forth in Paragraph 10.b on or before the Voting Deadline.

### 3. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 4. Separate Classification of Secured Claims

Each Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing another Secured Claim, shall be treated as being in a separate sub-Class for purposes of receiving distributions under the Plan.

### 5. Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

### 6. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### D. Acceptance or Rejection of the Plan; Effect of Rejection By One or More Classes of Claims or Interests

### 1. Classes Entitled to Vote

For the foregoing reasons, the Debtors submit that they meet the standard for substantive consolidation for Distribution purposes only, and that such consolidation is appropriate under the Plan, which the Debtors believe is in the best interests of the Debtors' estates and the holders of Allowed Claims and Interests under the Plan.

### 5.    Post-Effective Date Status

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each of the Debtors shall continue to exist as a Post-Effective Date Debtor and as separate corporations, limited liability companies, or other form of entity, as the case may be, pursuant to applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed. Each Post-Effective Date Debtor shall retain all of its corporate, limited liability company or other entity powers under applicable non-bankruptcy law and previously applicable organizational documents provided in connection with the Plan or Plan Supplement, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

On and after the Effective Date, subject to the terms and conditions of the Plan, the Post-Effective Date Debtors shall be permitted to conduct new business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. In addition, the Post-Effective Date Debtors and the Claims Ombudsman, as applicable, shall be authorized to implement the terms of the Plan as set forth herein, including, without limitation, to maximize the value of the debtors by prosecuting causes of action and operating in the ordinary course of business.

### 6.    Sources of Consideration for Distributions

Following the Effective Date, the Post-Effective Date Debtors shall be authorized, in their sole discretion, to operate in the ordinary course of business, including monetization of the Debtors' Retained Causes of Action and other assets. The Post-Effective Date Debtors shall fund Distributions to Holders of Claims and Interests from all Assets, which include, but are not limited to, (i) Cash on hand as of the Effective Date, (ii) proceeds from the sale of the Debtors' assets, (iii) proceeds from Retained Causes of Action and (iv) insurance proceeds received by the Post-Effective Date Debtors. In addition, the Post-Effective Date Debtors shall be authorized to reserve the Post-Effective Date Amount to fund the Post-Effective Debtors. The Post-Effective Date Amount shall be used to pay the costs of administering the Post-Effective Date Debtors and may be increased consistent with the provisions set forth in Article V.E of the Plan. The Post-Effective Date Debtor Cash may be used to make Distributions (if any) to Holders of Foxconn Preferred Common Stock, Holders of Common Stock Interests and Holders of Allowed Section 510(b) Claims, or to fund one or more post-Effective Date transactions to optimize the tax efficiency of the Debtors, subject to the terms and conditions of the New Organizational Documents and the Certificate of Designation.

55

RECOVERIES ARISING FROM THE PUTATIVE CLASS ACTIONS IF SUCH HOLDERS VOTE TO ACCEPT THE PLAN OR VOTE TO REJECT AND OPT IN TO THE RELEASES PROVIDED FOR IN THE PLAN AND ARE BOUND BY THE THIRD-PARTY RELEASE PROVISIONS OF THE PLAN.

**ARTICLE VII**
**RISK FACTORS TO CONSIDER BEFORE VOTING**

### A.  Risk of Amendment, Waiver, Modification or Withdrawal of the Plan

The Debtors and the Post-Effective Date Debtors, as applicable, reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules and consistent with the terms of the Plan, to amend the terms of the Plan or waive any conditions thereto if and to the extent that such amendments or waivers are necessary or desirable to consummate the Plan.

The potential impact of any such amendment or waiver on the holders of Claims and Interests cannot presently be foreseen, but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

### B.  Parties May Object to the Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with this requirement.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that parties will not object to the proposed classification.

### C.  The Debtors May Not Be Able to Obtain Confirmation of the Plan

The Debtors may not receive the requisite acceptances to confirm the Plan.  In the event, that votes with respect to Claims in the Class entitled to vote are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek Confirmation of the Plan by the Bankruptcy Court.  However, if the requisite acceptances are not received, the Debtors may not be able to obtain Confirmation of the Plan. Even if the requisite acceptances of the Plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under section 1129 of the Bankruptcy Code has not been met.

Without limiting the generality of the foregoing, and although the Debtors believe that the allocation methodology contained in Class 8 fairly allocates value between the Holders of Section 510(b) Claims and the Holders of Common Stock Interests, the Debtors understand that the Ohio Securities Class Action Lead Plaintiff vigorously disputes the propriety and fairness of the treatment of Class 8 Section 510(b) Claims under the Plan.  In that regard:

96

- The Ohio Securities Class Action Lead Plaintiff asserts that the Plan is inconsistent with 11 U.S.C. § 510(b), which provides in pertinent part that "[f]or the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim . . . [where] such security is common stock, such claim has the same priority as common stock[;]"

- The Ohio Securities Class Action Lead Plaintiff asserts that Section 510(b) Claims are prepetition Claims against the Debtors and, therefore, the appropriate point in time for determining the *pro rata* allocation of value distributable to holders of Class 7 Common Stock Interests and Class 8 Section 510(b) Claims is as of the Petition Date;

- The Ohio Securities Class Action Lead Plaintiff asserts that, instead, the Plan utilizes an inappropriate and drastically inflated share price, improperly determined as of the Ohio Settlement Class Period, to convert Class 8 Section 510(b) Claims (denominated in dollars) into Common Stock Interests (denominated in shares), artificially and dramatically shifting the required *pro rata* allocation between Class 7 and Class 8 in favor of Class 7;

- The Ohio Securities Class Action Lead Plaintiff asserts that, instead, as an example, if the claim filed by the Ohio Securities Class Action Lead Plaintiff on behalf of the Ohio Settlement Class is allowed in the stated amount of $695,000,000, the Ohio Settlement Class would receive 183,658 Common Stock Interests.  The Ohio Securities Class Action Lead Plaintiff asserts that, instead, as compared to LMC's reported public float of 13,873,779 shares, the Debtors' proposed treatment would allocate 98.69% of any Distribution to Class 7 and just 1.31% to Class 8 despite the fact that both classes must be treated equally under the Bankruptcy Code; and

- The Ohio Securities Class Action Lead Plaintiff asserts that, in the foregoing example, if the Post-Effective Date Debtors made a distribution of $10,000,000 to Class 7 and Class 8, Class 7 would receive $9,869,351.72, while Class 8 – investors who purchased while the price of the Debtors' stock was drastically inflated and suffered damages as a result – would receive only $130,648.28.

The Debtors dispute the Ohio Securities Class Action Lead Plaintiff's arguments and believe that the Plan complies fully with section 510(b) of the Bankruptcy Code (and all other provisions of the Bankruptcy Code), including with respect to the Plan's treatment of Section 510(b) Claims.

If the Plan is not confirmed by the Bankruptcy Court, there can be no assurance that any alternative plan would be on terms as favorable to Holders of Allowed Claims as the terms of the Plan. In addition, there can be no assurance that the Debtor will be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtors' creditors.

AMERICAS 125464412

Debtors have considered to date, and thus recoveries could be materially reduced or eliminated. In addition, the timing of actual distributions to holders of Allowed Claims and Allowed Interests may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guarantee the timing of any Distributions.

## G.  The Allowed Amount of Claims May Differ from Current Estimates

There can be no assurance that the estimated Allowed Claim amounts set forth in the Plan and herein are correct, and the actual amount of Allowed Claims may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated in the Disclosure Statement. Furthermore, a number of additional claims may be Filed, including on account of (i) rejection damages for executory contracts and unexpired leases rejected pursuant to the Plan (which may be filed up until the Rejection Damages Bar Date set forth in Article III.I of this Disclosure Statement) and (ii) governmental claims (which may be filed up until the Governmental Bar Date on December 26, 2023). Such clams may be substantial. Any such claims may result in a greater amount of Allowed Claims than estimated in the Disclosure Statement.

In addition, as discussed in Article II.F.I of this Disclosure Statement, the SEC has sought and obtained an extension of its deadline to bring an action to determine whether certain of the Debtors obligations to Governmental Units are not dischargeable under section 1141(d)(6) of the Bankruptcy Code. If the SEC brings and prevails in such non-dischargeability action, obligations of the Debtors owed to the SEC would become obligations of the Post-Effective Date Debtors, which could impact recoveries to Holders of Claims and Interests pursuant to the Plan.

## H.  Valuation of the Assets Is Speculative

Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtors' creditors, including Holders of Claims and Interests in the voting classes.

## I.  Risks Related to Income Taxation

There are several income tax considerations, risks and uncertainties associated with the Plan. Interested parties should read carefully the discussions set forth in Article VII of the Disclosure Statement regarding certain United States federal income tax consequences of the transactions proposed by the Plan.

## J.  Certain Impacts on Distributions as a Result of Treatment of Foxconn Preferred Stock Interests

Foxconn Preferred Stock Interests, which are Unimpaired and deemed to Accept the Plan pursuant to Article III.B.5 of the Plan, may be found to be Impaired. In such a case, the Debtors

AMERICAS 125464412

**ARTICLE X**
**CONCLUSION AND RECOMMENDATION**

The Debtors believe the Plan is in the best interests of all stakeholders and urge all Holders of Claims and Interests in voting classes to vote to accept the Plan.

The UCC also supports the Plan and urges all Holders of General Unsecured Claims to vote to accept the Plan.

Furthermore, the EC supports the Plan and urges all Holders of Common Equity Interests to vote to accept the Plan.

Dated: October 2930, 2023
Wilmington, Delaware

Respectfully submitted,

LORDSTOWN MOTORS CORP. AND ITS
AFFILIATED DEBTORS

By: _____
        Name:
        Title: Authorized Officer

111