```
1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2
   IN RE:                        .  Chapter 11
3                                .  Case No. 23-10831 (MFW)
   LORDSTOWN MOTORS CORP.,       .
4                                .  (Jointly Administered)
                                 .
5                                .  Courtroom No.
                                 .  824 Market Street
6                 Debtors.       .  Wilmington, Delaware 19801
                                 .
7                                .  Tuesday, October 31, 2023
   . . . . . . . . . . . . . . . .  10:30 a.m.
8
                        TRANSCRIPT OF HEARING
9           BEFORE THE HONORABLE MARY F. WALRATH
            CHIEF UNITED STATES BANKRUPTCY JUDGE
10
   APPEARANCES:
11
   For the Debtors:          Morgan Patterson, Esquire
12                           WOMBLE BOND DICKINSON, LLP
                             1313 North Market Street, Suite 1200
13                           Wilmington, Delaware 19801

14                           -and-

15                           David M. Turetsky, Esquire
                             WHITE & CASE
16                           1221 Avenue of the Americas
                             New York, New York 10020

17

18 For RIDE Investor Group: Tristan Manthey, Esquire
                             FISHMAN HAYGOOD, LLP
19                           201 St. Charles Avenue, Suite 4600
                             New Orleans, Louisiana 70170
20
   Audio Operator:          Mandy Bartkowski, ECRO
21
   Transcription Company:   Reliable
22                          The Nemours Building
                            1007 N. Orange Street, Suite 110
23                          Wilmington, Delaware 19801
                            Telephone: (302)654-8080
24                          Email:  gmatthews@reliable-co.com

25 Proceedings recorded by electronic sound recording,
   transcript produced by transcription service.
```

1

(APPEARANCES CONTINUED):

2

3   For Interested Parties:   Henry Jaffe, Esquire
                              PASHMAN STEIN WALDER & HAYDEN, P.C.
4                             1007 North Orange Street
                              4th Floor, Suite 183
5                             Wilmington, Delaware 19801

6   For Interested Party:     Michael Etkin, Esquire
                              LOWENSTEIN SANDLER, LLP
7                             One Lowenstein Drive
                              Roseland, New Jersey 07068
8

9   For Official Committee    Francis Lawall, Esquire
    Of Unsecured Creditors:   TROUTMAN PEPPER HAMILTON SANDERS
10                            3000 Two Logan Square
                              18th & Arch Streets
11                            Philadelphia, Pennsylvania 19103

12  For Official Committee    Bennett Silverberg, Esquire
    Of Equity Security        Robert Stark, Esquire
13  Holders:                  BROWN RUDNICK, LLP
                              7 Times Square
14                            New York, New York 10036

15

16

17

18

19

20

21

22

23

24

25

1                               INDEX

2  MOTIONS:                                                PAGE

3   Agenda
    Items:     Disclosure Statement                        4
4
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 10:30 a.m.)

2          THE COURT:  All right.  Good morning.  This is

3  Judge Walrath.  We're here in the Lordstown Motors case

4  continued from last week.

5          I'll turn it over to counsel for the debtor to

6  tell me where they are.

7          MS. PATTERSON:  Thank you, Your Honor.  Good

8  morning.  Morgan Patterson, of Womble Bond Dickinson, on

9  behalf of the debtor, and as you noted, Your Honor, we are

10  here this morning in Lordstown on our disclosure statement

11  hearing.

12          If it's okay with Your Honor, I'll turn it over to

13  my co-counsel, Mr. Turetsky, at White & Case, to let Your

14  Honor know where we stand.

15          THE COURT:  Thank you.

16          MR. TURETSKY:  Good morning, Your Honor.  David

17  Turetsky, of White & Case, for the debtors.

18          It's good to see you again and thank you for

19  making time for us this morning.

20          I'm joined virtually, obviously, by Delaware co-

21  counsel, and also my partner, Roberto Kampfner, who will be

22  available to address any questions that Your Honor has with

23  respect to the proposed disclosure statement or the

24  solicitation procedures and what not.

25          Your Honor, thank you again for making time for

1    us.  When we were before you last week, we had just filed our

2    Amended Plan and Amended Disclosure Statement which had the

3    support of the Creditor's Committee and the Equity Committee,

4    but we also had six disclosure statement objections before us

5    and, frankly, to give Your Honor some additional time with

6    the documents and the debtors and the objecting parties, some

7    additional time to work through the issues, we asked for this

8    hearing to be continued to today and we view today as a very

9    important day because, as Your Honor knows, the debtors have

10   been working hard to try and resolve these Chapter 11 cases

11   expeditiously, hopefully by year-end, and our hope is that,

12   coming out of today's hearing, we'll be able to start

13   soliciting on the Plan.

14        I'm pleased to report to Your Honor that, based

15   upon the work that the debtors have done, along with the

16   other objecting parties, and we've been in daily contact with

17   the objecting parties, we've resolved all of the disclosure

18   statement objections with the exception of one, which I'll

19   get to, and I'm not happy about that but that's just, you

20   know, where we are.  I'd prefer it to be resolved, but

21   sometimes you can't resolve everything.

22        In terms of the resolutions, we're resolved

23   between what we filed in the form of the modified Plan on

24   Sunday night and the changes that were filed overnight.  We

25   are resolved with the U.S. Trustee, the SEC, Foxconn, the

1  Delaware class plaintiffs and the lead plaintiff for the Ohio

2  class action.

3          With respect to the latter, Your Honor may have

4  noticed that there was a supplemental objection that was

5  filed this morning which was more in the nature -- and I'll

6  characterize it, having spoken with counsel to the Ohio class

7  claimants, as a reservation of rights with respect to

8  confirmation issues.  That supplemental objection discloses

9  that the lead plaintiff and the debtors have been in

10  communications regarding the addition of language to resolve

11  disclosure statement objections.  We've included that

12  language in what was filed and I'm advised that that

13  disclosure statement objection is resolved.

14          Obviously, all objections for all parties for

15  confirmation are reserved and so I don't want to -- I want to

16  make that very clear.  These are disclosure statement

17  resolutions, not confirmation resolutions.

18          That leaves us with the lone remaining objection

19  which was filed by a group called the RIDE Investor Group.

20  The RIDE Investor Group filed a post-petition punitive class

21  action against the debtor's chief executive officer and chief

22  financial officer.  It was in the nature of a 10(b)(5) plans

23  related to their ownership of stock.

24          That group has also filed a purported class proof

25  of claim or three class proofs of claim.  I'll note that they

1  have not sought authority to file on behalf of the class, let

2  alone obtained that authority.  That's not for today, Your

3  Honor.  I'm just noting that as background.

4           We submit that the objection should be overruled,

5  and I'll get to the objection momentarily, but I'd like to

6  start with the standard for approval of a disclosure

7  statement and that standard, as set forth in Section 1125 of

8  the Bankruptcy Code, is that the disclosure statement is to

9  provide adequate information, which is information of a kind,

10  and in sufficient detail, to enable a hypothetical investor

11  of the relevant class to make an informed judgment about the

12  Plan.

13           Your Honor, this disclosure statement is robust.

14  It includes all of the various categories of information the

15  Courts have considered in terms of being relevant to a

16  hypothetical investor and I don't believe that there's any

17  real dispute about whether or not, from an adequate

18  information perspective, this disclosure passes muster and

19  it's ripe for approval under the standard set forth in 1125.

20           Notwithstanding that robust disclosure, the RIDE

21  Investor Group is pressing an objection, and they filed two

22  pleadings.  They filed an objection to the initial disclosure

23  statement and then they filed a supplemental objection

24  yesterday.

25           As regard to the initial objection, the debtors,

1   in their reply, noted the various items that had been

2   included to accommodate the RIDE objection.  That includes

3   adding significant additional disclosure regarding the claims

4   brought against the company, including RIDE litigation,

5   adding litigation clarifying the rights of all parties with

6   respect to insurance and so as not to prejudice anyone,

7   including language that was proposed by the RIDE claimants,

8   adding language describing how the debtors will preserve

9   evidence germane to punitive class actions, including the

10   RIDE class action.  And as I will get to, the debtors also

11   carve out the RIDE investor lead plaintiffs from the

12   definition of releasing parties under the Plan.

13          Nonetheless, the RIDE Investor Group filed a

14   supplemental objecting yesterday, which indicates that the

15   RIDE objectors -- RIDE Investor Group, I'm sorry, continues

16   to take issue with the releases contained in the Plan and in

17   paragraph 17 of that supplemental objection, they indicate

18   that their concern is that those releases would bind to the

19   releases punitive class members who do not return a ballot.

20          Your Honor, that objection is -- it's incorrect

21   based on an incorrect assertion.  We believe it's without

22   merit and should be overruled.

23          I'll begin with the following.  The Plan has never

24   sought to make any third party releases binding on impaired

25   creditors or shareholders who don't return a ballot, nor has

1  the Plan ever sought to impose non-consensual third-party

2  releases.

3          I'll be clear, the Plan that is on file and that

4  we are seeking to solicit includes, as releasing parties --

5  and we heard Your Honor about needing to consent to the

6  releases.  It includes, as releasing parties, only creditors

7  and shareholders who vote to accept the Plan or creditors and

8  shareholders who vote to reject the Plan could opt into the

9  releases.  It also includes certain related parties, to the

10 extent that they can be bound by the foregoing, but these are

11 entirely consensual releases.  They are consistent with Your

12 Honor's prior holdings that a party may express consent by

13 voting in favor of the Plan, or otherwise opting in, and

14 we've cited the Quorum Decision.  We've cited your Decision

15 in Washington Mutual.  The ballots all made clear that by

16 voting to accept the Plan, the parties are binding themselves

17 and releasing parties.  It's right next to the checkmark --

18 check the box for accepting the Plan.

19          In paragraph 15 of the supplemental objection, the

20 RIDE group concedes as much by noting that this is an opt-in

21 form.  So the debtors have created a true consensual regime I

22 think beyond any doubt.

23          The debtors have also gone further, as I've noted,

24 in trying to accommodate the RIDE Investor Group by carving

25 out from the definition of releasing party, the lead

1  plaintiffs, with respect to the post-petition securities

2  litigation, as well as other class representatives due to

3  class litigations.

4          Now, in the RIDE supplemental objection, the RIDE

5  plaintiffs noted that, initially, the carveout applied only

6  to a single lead plaintiff.  That was inadvertent.  We've now

7  added all RIDE purported lead plaintiffs.

8          However, because the RIDE class action has not

9  been certified and there is uncertainty about the RIDE

10  Investor Group's authority to bind purported class members,

11  the debtors have also included provisions in the third party

12  release that reserve rights on that issue and that clarified

13  that if the RIDE group's exclusion -- the RIDE lead

14  plaintiff's exclusion is not binding on class members, then

15  any class members that are releasing parties; that is any

16  class members who vote in favor of the Plan or who vote to

17  reject but otherwise opt in, they'll be deemed to release

18  their claims, including claims related to the RIDE action.

19  But that provision, unlike what is set forth in the RIDE

20  supplemental objection, only applies to class members that

21  are releasing parties.  It doesn't apply to anyone who hasn't

22  returned a ballot.  It doesn't apply to anyone who hasn't

23  consented to the release.  It's entirely voluntary.

24          Importantly, the RIDE Investor Group's arguments

25  about non-consensual releases we believe are entirely

1  misplaced.  There are no such releases in the Plan.

2         There is also an argument in the supplemental

3  objection that the debtors should remove from the release

4  defendants and officers -- directors and officers who are

5  defendants in the litigation.  Your Honor, that arguments

6  goes to the scope of the releases and it's a Plan

7  confirmation objection.  It's not a disclosure statement

8  objection.

9         Courts have virtually uniformly held that the

10 issues related to scope and propriety of releases are to be

11 determined at confirmation when there is an appropriate

12 evidentiary record, and in paragraph 35 of our reply, we cite

13 a number of cases for that proposition.

14         With that said, I'll again note these releases are

15 consensual releases, so they don't raise the same types of

16 concerns but, in any event, the proper forum is to consider

17 this is at confirmation and the rights for the RIDE Investor

18 Group are fully preserved to make whatever arguments they

19 wish to make at confirmation.

20         We, therefore, submit that the objection should be

21 overruled as premature -- as a premature confirmation

22 statement objection.  We submit that the disclosure statement

23 satisfies the requirements for approval and we would ask that

24 Your Honor enter the disclosure statement approval order.

25         Thank you, Your Honor.

1        THE COURT:  Thank you.  I'll hear from counsel for

2   the RIDE investors then.

3        MR. MANTHEY:  Good morning, Your Honor.  Tristan

4   Manthey, with Fishman & Haygood, along with my co-counsel,

5   Garvan McDaniel, who's Delaware counsel for the RIDE Investor

6   Group.

7        First, I want to thank Mr. Turetsky and his group.

8   You know, they have gone a very long way from the initial

9   disclosure statement and Plan and made significant

10  modifications that we appreciate and I thank them for that.

11       With that said, Your Honor, we don't think it's

12  all the way there yet and that's why we maintained our

13  objection.

14       Mr. Turetsky appropriately summarizes our

15  objection.  We don't believe anybody in the RIDE Investor

16  Group, if they understood what they were doing in terms of

17  the release would release these parties.  We ask that all of

18  the RIDE Investor Group -- potential members of the RIDE

19  Investor Group, after class certified, would be carved out.

20  They did not agree to that.

21       We appreciate that the ballot now has the opt-in

22  feature as to the voters who reject the Plan.  However, we

23  also think it should have an opt-in feature for voters who

24  accept the Plan.  We believe that the ballot should be

25  modified to not only provide for acceptance of the treatment

1  of the Plan, but also an opt-in feature for the release.

2  That's the first main issue with the current solicitation

3  package.

4          The second issue, Your Honor, which I'm surprised

5  on why the debtors have not been agreeable to is there is a

6  reservation that has been set forth for both Class 8 and

7  Class 10 in the Plan that provides, basically, that any

8  treatment under the Plan does not release any of their

9  recoveries as class members of the Delaware shareholder class

10  action in Class A and in the Ohio secured class action claims

11  in Class 10.

12          We ask for similar language to be inserted in

13  Class 9, and while that request was made this morning, that

14  request was not accepted.

15          THE COURT:  And what is --

16          MR. MANTHEY:  With those --

17          THE COURT:  What is the language you're asking

18  for?

19          MR. MANTHEY:  Your Honor, it basically sets forth

20  any treatment set forth in this Article 3(b)(9) shall not

21  affect or release any of the rights of any person to obtain

22  recoveries as a class member of any class certified in

23  connection with -- and they define it as the post-petition

24  securities litigation, if any.

25          So we think that language is wholly appropriate to

1  be added into the Plan at 9 and, again, we would reiterate,

2  Your Honor, that we think, again, these documents are

3  extremely voluminous and that's when -- there's going to be a

4  -- there's probably going to be a letter from the Equity

5  Committee; I'm not even sure if that's been part of the

6  solicitation package, recommending voting in favor of this

7  Plan, and people may blindly vote in favor of this Plan

8  without understanding the full ramifications of what they're

9  doing.  There are many members of the RIDE Investor Group who

10 don't know about the RIDE Investor Group -- potential members

11 of the RIDE Investor Group who don't know about the lawsuit

12 that has been filed and they may accidentally or, you know,

13 inadvertently accept this Plan based on a recommendation of

14 the Equity Committee and, by that, accidentally -- by that,

15 inadvertently releasing their claims in the RIDE security

16 litigation.

17         So we'd ask for those two changes and, with that,

18 Your Honor, we'd be satisfied with the disclosure statement,

19 again, reserving all of our rights under the Plan

20 confirmation as to the appropriateness of the releases, et

21 cetera.

22         THE COURT:  Mr. Turetsky?

23         MR. TURETSKY:  Thank you, Your Honor.  With

24 respect to the disclosure issue, we have added significant

25 additional disclosure with respect to the RIDE litigation,

1   the existence of the RIDE litigation.  That's in Article

2   4(h)(3) of the disclosure statement.  We did request -- you

3   know, we've asked throughout if there's any additional

4   disclosures the parties would like us to make, including Mr.

5   Manthey and the RIDE Group.  We asked for additional

6   disclosures.  We did not receive any.  We submit the

7   disclosure is ample.  The ballot is actually very clear.  It

8   says literally next to the -- if you accept, you are a

9   releasing party under this Plan.  On the ballot, there are at

10  least two different places that I can think of where the --

11  where it is indicated that if you accept the Plan, you are

12  deemed to be a releasing party.  You are releasing your

13  claims.

14          In terms of why individuals would choose to grant

15  the release, I'll note that, again, this is a confirmation

16  issue.  But beyond that, the released parties, who include

17  directors and officers, have certain contractual

18  indemnification rights from the debtors pre-petition.  To the

19  extent that those result in claims, that provides ample

20  reason why they -- an equity holder might want to vote in

21  favor of something providing the release, recognizing that if

22  they pursue their claims, they may result in indemnification

23  claims back against the company, which would complete

24  recovery.  Again, not a today issue.  This is a confirmation

25  issue.

1        In terms of the reservation language that was

2   included, that reservation language was included in the

3   treatment of Class 8, which are the 510(b) claims, and Class

4   10, which is the elective settlement class for 510(b) claims

5   in the event that the lead plaintiff of the Ohio action

6   elects into it.

7        It was intended to resolve a concern of the

8   Delaware class plaintiffs, that by somehow releasing those

9   actions or treating those actions, they would be releasing

10  claims against the Delaware class plaintiffs, but we've made

11  that accommodation to them.

12       This is different.  Mr. Manthey is talking about

13  RIDE -- a RIDE litigation that is exactly by the same

14  plaintiffs with respect to the same claims.  We're not pre-

15  judging the issue of whether or not treatment impacts the

16  rights of defendants in another -- in the parallel case in

17  the securities action against the CEO and the CFO.  They may.

18  They may not.  But to pre-judge that issue through Plan

19  treatment I think is not appropriate and, again, that is

20  something that can be raised, should Mr. Manthey wish to

21  raise it at confirmation, and these are clarifications,

22  should they be appropriate, that can be made in the form of a

23  confirmation order, to the extent that everyone agrees.  But

24  it's not necessary to do so now.

25       Oh, sorry.  May I -- I realized I stopped, but I

1  wanted to make one additional point on the opt-in.

2          We have cited case law for the proposition,

3  including Your Honor's Decision in <u>Quorum</u> and in <u>Washington</u>

4  <u>Mutual</u> that acceptance to a plan constitutes acceptance to

5  the releases.  We believe that's particularly appropriate

6  here where it's very clear that by accepting the Plan you are

7  accepting the releases.

8          We also cited, Judge -- I believe it was Judge

9  Berstein's Opinion in <u>Sun Edison</u> where that same proposition

10  -- these were opt-in -- these are opt-in courts saying that

11  an accepting vote counts as an opt-in.  So we would note that

12  as well.  We believe that an opt -- a further opt-in for an

13  accepting creditor is necessary.

14          THE COURT:  Any response, Mr. Manthey?

15          MR. MANTHEY:  Thank you, Your Honor.

16          I guess we're talking about clarity.  If we're

17  talking about clarity, what makes it clearer than them

18  actually opting into the release and checking a box for the

19  release?  I mean, again, we're dealing with people who are --

20  do not have the benefit of counsel and should be abundantly

21  clear that they want to provide a release to the debtor.

22          As to the language that we requested also be added

23  to Class 9, I don't see how that pre-judges anything.  It

24  specifically just says that any treatment here doesn't affect

25  any recoveries of a class member in connection with the post-

1  petition securities litigation.  I mean it's a pretty simple

2  addition and would ask that that language -- again, we'd ask

3  that the opt-in be provided and that language be added to the

4  disclosure statement and Plan.

5          THE COURT:  Mr. Turetsky, with respect to that

6  language that is in Class 8, that's just referenced.  Are the

7  Class 8 -- and that's the Delaware shareholder class action.

8  Are the defendants in that released parties under the Plan?

9          MR. TURETSKY:  I think there is --

10          THE COURT:  One.

11          MR. TURETSKY:  -- one defendant in that, maybe

12  two.  I may be -- it may -- but I think -- it's either one or

13  two, Your Honor.

14          THE COURT:  So that if a member of Class 8 votes

15  in favor of the Plan, notwithstanding that, they may still

16  obtain recoveries from that lawsuit against -- which is

17  against, among others, released parties.

18          MR. TURETSKY:  The treatment, Your Honor, itself

19  doesn't impair.  However -- and we've got the same carveout

20  for the Delaware litigants as -- the punitive litigants as we

21  do for the RIDE litigants.  What we've said is that the

22  Delaware lead plaintiffs are not releasing parties.  However,

23  there is a dispute with respect to their -- or uncertainty

24  with respect to their ability to bind punitive class members.

25  To the extent that a punitive class member is a voting party

1  in this case and releases its claims, it would release its

2  claims with respect to the Delaware litigation.  So it's

3  exactly the same as the RIDE litigation in that respect.

4          THE COURT:  So it would be releasing its right to

5  obtain a recovery?

6          MR. TURETSKY:  If the Delaware class plaintiffs --

7          THE COURT:  When it's not certified.

8          MR. TURETSKY:  Correct.  But the treatment doesn't

9  release.  The treatment with respect to their Ohio claims or

10  their 510(b) claims does not release.

11          THE COURT:  Well, I'm going to save that for a

12  confirmation issue, to the extent the treatments are

13  different.  I think the debtor can proceed with the treatment

14  that it has articulated.

15          With respect to the voting issue though, I'm going

16  to overrule the objection as well.  I think that I have held,

17  and I believe that if you vote in favor of a plan, you're

18  voting in favor of all parts of it and I don't think that the

19  Court should or even has the power to accept out parts of

20  that or should require the debtor to start listing what

21  you're accepting yourself out of when you accept the Plan.

22  This could go on infinitum, really.

23          So I think that if a party accepts the Plan, it's

24  bound by the terms of that Plan, including third party

25  releases.  The disclosure and notice given of those are, you

1  know, the usual procedures and perfectly adequate and have

2  been litigated quite a bit.  So I'm not -- especially with

3  the U.S. Trustee having settled it's objection.  I'm

4  satisfied that they're satisfied that the notice is

5  appropriate, so I'll overrule that objection as well.

6           MR. TURETSKY:  Thank you, Your Honor.

7           MR. MANTHEY:  Thank you, Your Honor.

8           THE COURT:  Anybody else?

9           MR. LAWALL:  Your Honor, if you've moved off this

10  issue, on behalf of the Committee, we just have a couple of

11  comments if that would be appropriate.

12           THE COURT:  Okay.  Mr. Lawall?

13           MR. LAWALL:  Thank you, Your Honor, and good

14  morning.  Fran Lawall and Deborah Kovsky, on behalf of the

15  Official Unsecured Creditors Committee.

16           Thank you for providing us time this morning.

17  Just a couple of points.  The Committee does support the

18  disclosure statement.

19           Your Honor, one point that may come up down the

20  road is that the Plan provides for the creation of a reserve

21  for purposes of hopefully satisfying the intent of this Plan

22  to pay unsecured creditors in full.

23           The debtors and the Committee will be working on

24  that issue to establish that reserve but if, in fact, we're

25  unable to determine the equity of appropriate reserve, that

1  would become a confirmation issue, not a today issue.  We

2  just wanted to give you a heads-up on that.

3          THE COURT:  Okay.

4          MR. LAWALL:  Second, Your Honor, the Committee

5  intends to issue a letter in support of the Plan and, Your

6  Honor, we were seeking your guidance as to whether, number

7  one, if it's okay that we send such a letter and, number two,

8  Your Honor, would you like to review the letter before it's

9  include in the debtor's solicitation package?

10          THE COURT:  It's a letter in support?  I have no

11  problem with it being included.

12          Mr. Turetsky, do you want it to be submitted under

13  certification of counsel and reviewed?

14          MR. TURETSKY:  If Your Honor has no issue, then I

15  have no issue.  We haven't received the letter yet or, if we

16  did, it was a draft.  I haven't had an opportunity to look at

17  it, but I anticipate that we would include it in the

18  solicitation package.

19          THE COURT:  Okay.  So --

20          MR. LAWALL:  Your Honor, with that -- I'm sorry.

21          THE COURT:  Go ahead.

22          MR. LAWALL:  I was going to say, with that, Your

23  Honor, the Committee has no further comments.

24          THE COURT:  Thank you.

25          MR. LAWALL:  Thank you.

1          THE COURT:  Anybody else?

2          MR. SILVERBERG:  Your Honor, it's Bennett

3    Silverberg, of Brown Rudnick, on behalf of the Equity

4    Committee.  Are you able to hear me?

5          THE COURT:  I can.

6          MR. SILVERBERG:  Thank you, Your Honor.  Your

7    Honor, we have a similar request on behalf of the Equity

8    Committee.  The Equity Committee is obviously in support of

9    the disclosure statement and the Plan as well.

10          We have a letter which we prepared reflecting our

11    support of the Plan and encouraging shareholders to vote in

12    favor of the Plan, similar to Mr. Lawall's request.  We would

13    ask that the -- our solicitation letter be included in the

14    materials transmitted to shareholders.  We provided a draft

15    of our letter to the debtors in advance of this hearing and

16    would be happy to incorporate any comments that they may

17    have.

18          THE COURT:  All right.  Mr. Turetsky, same

19    procedure?

20          MR. TURETSKY:  Yes, Your Honor.

21          THE COURT:  All right.  I need not see it then.

22          MR. SILVERBERG:  Thank you, Your Honor.

23          THE COURT:  Anybody else?  Mr. Jaffe?

24          MR. JAFFE:  Your Honor, Henry Jaffe, for the

25    Delaware class plaintiffs.

1      Your Honor, we did resolve our disclosure

2   statement objections with the debtors.  However, in doing so,

3   we resolved it based upon the solicitation package that we

4   received, and that was filed on the docket.

5      As it relates to the Committee's letter, of

6   course, that's an entirely appropriate Committee member --

7   Unsecured Creditors or CP were supposed to receive full

8   distribution and interest.  But I will say, Your Honor, with

9   respect to equity, those who vote in favor of the Plan will

10  be releasing third party claims that are included in our

11  litigation.

12     Had I known there was going to be an equity

13  letter, we would've need to have seen that, approve that, and

14  I might have insisted, Your Honor, that we be permitted to

15  submit our own letter because, Your Honor, we would be

16  recommending to those parties or potential members of our

17  class action that they not vote in favor of the Plan or they

18  abstain from voting or reject the Plan and not opt in.

19     So there's actually significant prejudice that

20  could arise if they vote in favor of the Plan, releasing some

21  of the third party Plans [sic] and that needs to be addressed

22  and, literally, this was just raised here at the hearing.

23     MR. MANTHEY:  Your Honor?  Your Honor, on behalf

24  of the RIDE Investor Group, we would join Mr. Jaffe with that

25  objection.

1          This is the first we've heard about it.  I

2   mentioned that they might have a letter but, again, we

3   haven't seen a letter and, based upon a prejudice to our

4   potential class members, we have significant objection to add

5   -- a letter being added at this late date.

6          THE COURT:  And, Mr. Etkin, do you wish to be

7   heard?

8          MR. ETIKIN:  Thank you, Your Honor.  Yeah.  I'll

9   chime in with respect to that significant concern about an

10  equity committee letter for the same reasons.

11         It could have a dramatic impact on the third party

12  releases that are outstanding in this case, the issues that

13  it would create.  So, at the very least, I think we need to

14  see that letter and be able to comment on it and I also

15  believe that Mr. Jaffe is correct, that there should be some

16  counterbalance here with respect to all of our constituency

17  in this case who don't necessarily see the -- see things the

18  same way as the Equity Committee does because we're

19  representing all of us defrauded investors.

20         If you pull back the curtain a little bit, members

21  of the Equity Committee are folks who purchased perhaps

22  immediately before or immediately after the bankruptcy

23  filing, so they don't have the same interests that we have

24  with respect to those who lose hundreds of millions of

25  dollars on this stock.

1          THE COURT:  Well, let me hear from counsel for the

2   Equity Committee.

3          MR. STARK:  Your Honor, it's Robert Stark.  I --

4   my partner, Ben Silverberg, has been delivering with the

5   arguments so far.  I'm not going to intercede but, obviously,

6   I have views and so Your Honor may hear them later, but I'll

7   otherwise cede the podium to Mr. Silverberg (indiscernible)

8   we pause that's fine.

9          THE COURT:  Mr. Silverberg?

10          MR. SILVERBERG:  Happy to yield to Mr. Stark, Your

11  Honor.

12          The Equity Committee has spent the last two months

13  negotiating this Plan on behalf of all equity holders, our

14  constituency.  We believe that this Plan reflects remarkable

15  improvement over the initially proposed Plan.

16          I think throughout the disclosure statement, there

17  has been commentary that's been added at the request of the

18  various securities plaintiffs reflecting their views on the

19  Plan, reflecting their oppositions with treatment of certain

20  classes of the securities plaintiffs' claims.  So their views

21  are incorporated into the disclosure statement already.

22          Our views reflect that of the Official Equity

23  Committee and the Official Equity Committee's views alone.

24          MR. STARK:  Your Honor, if I may add some more

25  words.  I would bet having two lawyers from the same advocacy

1  is uncommon, so let me pause, if Your Honor will allow.

2          THE COURT:  I will allow it.

3          MR. STARK:  Thank you, Your Honor.  I don't mean

4  -- look, I'm not that unsympathetic to the views that the

5  counsel has raised.

6          It -- we're an Official Committee.  Official

7  Committees negotiate Plans and they submit letters and

8  solicitation packages for their constituents.  We are

9  separately classified from their constituents, urging them,

10 based upon the work that we've done as an official

11 representative of that body, to move forward.

12         This is normal proforma.  Mr. Etkin, who's been

13 around Bankruptcy Courts his entire career, knows this.  He

14 represents Official Committees all the time.  His firm does

15 too.  Right?  This isn't strange behavior.  This is what's

16 known.

17         So the notion Mr. Jaffe raises that, oh my gosh,

18 something new and strange is happening because an Official

19 Committee who's been working with and was announced last week

20 was working with the debtors on the consensual Plan wants to

21 convey to the stockholders that were supportive of the Plan.

22 It's nothing new, nothing, you know, hurting -- no new ground

23 here.

24         The views of their constituents have been

25 reflected in the negotiated document, negotiated language in

1  the revised disclosure statement.  That language is pretty

2  clear where it comes from.  Didn't come from the debtor.  It

3  came from them.  The fact that it's in a separate letter is

4  nothing new and nothing different and it doesn't need a

5  change on the Plan at all.

6          MR. TURETSKY:  Your Honor, may I be heard?

7          THE COURT:  You may.

8          MR. TURETSKY:  I just want to make one point.

9  There is language in the disclosure statement that has

10  reflected throughout that the -- and since we've filed the

11  amended disclosure statement, that the Equity Committee and

12  the Creditors Committee each support and urge holders to vote

13  in favor of the plan.  So this is not -- this should not be a

14  surprise to anybody, and I'll leave it at that.

15          THE COURT:  Well, I am aware that the reason

16  Equity and Creditor's Committees want to send a letter with

17  the package is to highlight their position, rather than have

18  it hidden in the Plan or disclosure statement.

19          I think this is an unusual case and I think that,

20  at a minimum -- I don't want, you know, 20 letters going with

21  the package, but I think, at a minimum, Mr. Stark or Mr.

22  Silverberg, perhaps the Equity Committee can include a line

23  saying that the Class 8 -- what is it, 8, 9, and 10, that the

24  purported class action representatives believe that the

25  members in their class should vote against the Plan, or at

1   least should be aware that if they vote in favor of the Plan,

2   that they are granting third party releases.  Can you work

3   out language with Mr. Etkin and Mr. Jaffe and the other

4   parties?

5         MR. SILVERBERG:  We would, Your Honor.

6         MR. STARK:  We would be --

7         MR. SILVERBERG:  Sorry.

8         MR. STARK:  We would be pleased to do that, Your

9   Honor.  That's not a problem at all.

10        THE COURT:  Okay.  All right.  I think that is the

11  last issue, correct, Mr. Turetsky?  I see no more --

12        MR. TURETSKY:  I believe --

13        THE COURT  -- no more hands.

14        MR. TURETSKY:  I believe so.  But if Your Honor

15  has any questions, which I always know is a dangerous

16  statement to make, but, from our perspective, I think we

17  would be delighted for Your Honor to enter the disclosure

18  statement order and we'll try and shepherd the Equity

19  Committee's letter through because we would obviously like to

20  get this wrapped up so we can start soliciting.

21        THE COURT:  All right.  I have no questions.  I

22  think I raised them last week.  So, yeah, I think I will

23  approve the disclosure statement as containing adequate

24  information for the purposes of voting and we will the debtor

25  go ahead and send out the Plan and disclosure statement and

1  the other solicitation materials that are included in your

2  proposed order and -- when is confirmation again?

3          MR. TURETSKY:  That -- Ms. Patterson will

4  intercede and ask about that.

5          THE COURT:  Okay.

6          MS. PATTERSON:  Thank you.  Thank you.  For the

7  record, Your Honor, Morgan Patterson, of Womble Bond

8  Dickinson.

9          We exchanged some emails, Your Honor, with your

10 chambers a week or two ago about the availability at the

11 December 19th hearing, but we haven't confirmed that yet.  So

12 if Your Honor has that information, that would be great.  If

13 not, I can follow up with Ms. Kapp (phonetic) after the

14 hearing.

15         THE COURT:  Well, Ms.  Capp has been away for a

16 week, which --

17         MS. PATTERSON:  Okay.

18         THE COURT:  The -- so you're looking for the week

19 of what?

20         MS. PATTERSON:  We were looking for December 19th.

21 Ms. Kapp had mentioned that you had an opening on that day.

22         THE COURT:  I am free December 19th at 2:00.  How

23 does that look?

24         MS. PATTERSON:  That works for us.  That's great,

25 Your Honor.  And we'll plug in that time.  We have the date

1  and we'll plug in that time and then we'll upload the order

2  if that's okay with Your Honor.

3              THE COURT:  That's fine.

4              MS. PATTERSON:  I think that's all I had from our

5  perspective, Your Honor, as far as the hearing.

6              THE COURT:  All right.  Then we can stand

7  adjourned and thank you to everybody for working this out.

8              COUNSEL:  Thank you, Honor.

9              THE COURT:  We'll stand adjourned.

10             (Proceedings concluded at 11:08 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

<u>CERTIFICATION</u>

2            I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7 <u>/s/ Tammy L. Kelly</u>                    <u>November 1, 2023</u>

8 Tammy L. Kelly

9 Court Transcriptionist For Reliable

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25