## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br>Case No. 23-10831 (MFW)<br>Jointly Administered<br><br>**Hearing Date:  Nov. 21, 2023 at 11:30 a.m. (ET)**<br>**Objection Deadline: Nov. 14, 2023 at 4:00 p.m. (ET)** |

## LEAD PLAINTIFF'S MOTION TO APPLY
## BANKRUPTCY RULE 7023 TO CLASS CLAIMS

George Troicky ("Lead Plaintiff"), the court-appointed lead plaintiff in the securities class action captioned *In re Lordstown Motors Corp. Securities Litigation*, Case No. 4:21-cv-00616 (DAR) (the "Securities Litigation"), pending in the United States District Court for the Northern District of Ohio (the "District Court"), for himself and on behalf of the putative class that he represents in the Securities Litigation (the "Class"), hereby moves this Court (the "Motion") for entry of an order, pursuant to Rules 9014(a) and (c) and 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) directing that Bankruptcy Rule 7023 applies to the class proofs of claim filed by Lead Plaintiff on behalf of himself and the Class against each of the above-captioned debtors (the "Debtors") [Claim Nos. 1368, 1426, 1434] (collectively, the "Class Claims"); and (ii) establishing a briefing schedule for, and scheduling a hearing on, certification of the Class for all purposes in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the Debtors.  In support of this Motion, Lead Plaintiff respectfully states as follows:

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

## PRELIMINARY STATEMENT[2]

1.      Members of the Class—known creditors of the Debtors—were constitutionally entitled, as a matter of due process, to actual notice of the Bar Date.  Attempting to reach known creditors through publication or other forms of constructive notice is tantamount to giving them no notice at all.  The identities and potential claims of Class members were readily and reasonably ascertainable by the Debtors using well-established procedures commonly used by claims administrators in securities class action cases.  However, the Debtors made no effort whatsoever to provide members of the Class with the constitutionally mandated actual notice of the Bar Date.  On that basis alone, application of Bankruptcy Rule 7023 to the Class Claims is appropriate to remedy this fundamental due process failure.

2.      Application of Bankruptcy Rule 7023 is clearly necessary and appropriate here because the Debtors' efforts to provide constructive notice of the Bar Date to their *unknown* creditors were of no effect whatsoever with respect to the Class.  Constructive notice, through publication or otherwise, is constitutionally inadequate with respect to *known* creditors such as members of the Class.  The Publication Notice, even if any Class members happened to see or read it, was insufficient to give Class members, who are known actual creditors, notice of the Bar Date or the fact that they hold claims against the Debtors based upon violations of federal securities laws.  The most effective and efficient method of continuing the engagement with the Class, consistent with what occurred both pre- and post-petition, and to remedy the Debtors' failure to provide actual notice of the Bar Date to Class members, is to apply Bankruptcy Rule 7023 to the Class Claims and certify the Class for purposes of the Chapter 11 Cases pursuant to Federal Rule of Civil Procedure ("Federal Rule") 23, which is incorporated thereby.

---

[2]    Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed herein.

3.      Application of Bankruptcy Rule 7023 to the Class Claims, and certification of the Class, is also warranted under the circumstances here because the Debtors and the Non-Debtor Defendants, both before and after the Petition Date, engaged in extensive settlement discussions with Lead Plaintiff to consensually resolve the Securities Litigation.  Indeed, as recently as early October, counsel for Lead Plaintiff, the Debtors, and both official committees appointed in the Chapter 11 Cases participated in a formal mediation in an attempt to resolve the Class Claims. Therefore, the resolution of the securities claims against the Debtors on a class-wide basis was front and center as part of the Debtors' restructuring efforts.  Applying Bankruptcy Rule 7023 to the Class Claims will also allow Lead Plaintiff to address—for the benefit of all Class members—provisions of the Plan, including the proposed third party releases, that are highly prejudicial to the interests of all Class members.  Application of Bankruptcy Rule 7023 to the Class Claims is fully consistent with the expectations of the Debtors and other parties in interest and will assist in the process of confirming a Plan that is fair and equitable and takes into account the interests of all stakeholders.   Indeed, securities litigation claimants, in a case where a SEC investigation is pending, are the only constituency in the Chapter 11 Cases without a recognized representative.

4.      Through the Modified First Amended Plan and the Modified First Amended Disclosure Statement, the Debtors effectively concede that proceeding through a class representative to address treatment of the Class Claims is the most effective and efficient manner to resolve the Class Claims.  Indeed, as the Court noted during the disclosure statement hearing on October 31, the multiple securities class actions and the robust SEC investigation, along with the Debtors' solvency, makes this an unusual case.

5.      The Debtors' response to Lead Plaintiff's Disclosure Statement Objection was not to establish procedures for providing actual notice to Class members, but rather to separately classify members of the Class in the Modified First Amended Plan (*i.e.*, Class 10 Ohio Securities Class Action Claims), authorize Lead Plaintiff, on behalf of the Class, to elect certain treatment under the Modified First Amended Plan (*i.e.*, the Class 10 Election), and to treat the Modified First Amended Plan as a motion to certify the Class.  In other words, the Debtors acknowledge the benefits of class-wide treatment with Lead Plaintiff as a class representative so as to address the claims of Class members on a collective basis.  That is the exact relief that Lead Plaintiff is seeking through this Motion.

6.      Application of Bankruptcy Rule 7023 and certification of the Class will protect and preserve the rights and claims of absent Class members, while saving the estate noticing costs, delays, and the significant administrative burden of administering individual Class members' claims (although belatedly providing notice would not even be possible on the timeline of the Chapter 11 Cases).  That is the very reason the class action device was created and Bankruptcy Rule 7023 exists.

7.      Accordingly, through this Motion, Lead Plaintiff requests that this Court enter an Order:

(i)      directing that Bankruptcy Rule 7023 applies to the Class Claims; and

(ii)     establishing a briefing schedule for, and scheduling a hearing on, certification of the Class for all purposes in the Chapter 11 Cases, including but not limited to: (a) voting on and, if applicable, opting out of and/or objecting to any releases contained in, any chapter 11 plan or plans filed in the Chapter 11 Cases, (b) allowance of the Class Claims; and (c) receiving any distributions on account of the Class Claims on behalf of the entire Class, subject to allocation and distribution as may be ordered by the District Court in the Securities Litigation.

## BACKGROUND

**A.    The Securities Litigation**

8.    Beginning on or about March 18, 2021, six putative securities class action lawsuits were filed in the District Court against Debtor Lordstown Motors Corp. and Debtor Lordstown EV Corporation (together, the "Debtor Defendants"), as well as certain individual directors and officers of the Debtors (the "Non-Debtor Defendants", and together with Debtor Defendants, the "Securities Litigation Defendants").    In June 2021, the District Court consolidated the class action lawsuits into the Securities Litigation.

9.    On June 16, 2021, the District Court entered an order appointing George Troicky as Lead Plaintiff and approving Labaton Sucharow LLP as lead counsel to Lead Plaintiff.

10.    On September 10, 2021, Lead Plaintiff filed the operative *Consolidated Amended Complaint for Violations of the Federal Securities Law* (the "Class Complaint") in the Securities Litigation, on behalf of himself and the Class, alleging violations of Sections 10(b), 14(a), 20(a), and 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.

11.    The named plaintiffs in the Securities Litigation brought the Class Complaint "on behalf of themselves and all persons or entities who (a) purchased [Lordstown Motors Corp.]'s publicly traded warrants (Ticker: "RIDEW" and prior ticker: "DPHCW"), [Lordstown Motors Corp.]'s publicly traded units (Ticker: "DPHCU"), or any publicly traded option to purchase or sell [Lordstown Motor Corp.]'s Class A Common Stock, from August 3, 2020, through July 2, 2021, inclusive . . . and/or (b) held [Lordstown Motors Corp.]'s Class A Common Stock as of September 21, 2020."    *In re Lordstown Motors Corp. Sec. Litig.*, Case No. 4:21-cv-00616 (PAG) (N.D. Ohio), D.I. 61 at 1.

12.     Accordingly, the Class Complaint defined the Class as persons or entities who: (i) purchased the above-referenced Lordstown publicly trade warrants, publicly traded units, and publicly traded options (the "Warrants, Units & Options") from August 3, 2020 through July 2, 2021 (the "Class Period"); and/or (ii) held Lordstown Motors Corp.'s Class A Common Stock (the "Common Stock") as of September 21, 2020.

13.     On November 9, 2021, prior to the Petition Date (defined below), the Securities Litigation Defendants filed a motion to dismiss the Securities Litigation.  The motion was fully briefed as of March 2022, and was awaiting the District Court's scheduling of a hearing and ruling as of the Petition Date.[3]

14.     Pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), discovery was stayed in the Securities Litigation pending resolution of the motion to dismiss.  The PSLRA provides that "discovery and other proceedings" shall be stayed during the pendency of a "motion to dismiss".  15 U.S.C. § 78u-4(b)(3) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.").  Discovery that may be necessary to support a motion for class certification is therefore currently prohibited, absent relief from the PSLRA stay and/or stay relief from this Court.

**B.     Negotiations to Settle the Securities Litigation**

15.     Beginning in late 2022, Lead Plaintiff, the Debtors, the Non-Debtor Defendants, and various insurance companies for the Securities Litigation Defendants, entered into good faith and extensive negotiations concerning a potential settlement of the Securities Litigation,

---

[3]     On August 28, 2023, due to the pendency of the Chapter 11 Cases, the District Court denied the Securities Litigation Defendants' motion to dismiss, without prejudice to their filing another motion at a later date.

exchanging drafts of a term sheet outlining the material provisions of a proposed class-wide settlement that would result in the dismissal of the Securities Litigation.  The settlement negotiations progressed into Spring 2023, with the parties negotiating a draft settlement agreement that set forth the terms and conditions for resolution of the Securities Litigation.  The parties were unable to finalize the terms of the settlement agreement.  However, extensive settlement discussions continued postpetition regarding a possible settlement of the Securities Litigation and the process by which the parties would seek approval of any settlement reached in this Court.  Indeed, counsel for Lead Plaintiff provided extensive comments to the Debtors concerning a draft Bankruptcy Rule 9019 motion and draft proposed interim and final orders for this Court's approval of a class settlement.

16.     Settlement negotiations are ongoing and as recently as October 5, 2023, counsel to Lead Plaintiff, the Debtors, the Committee of Unsecured Creditors (the "Creditors' Committee"), and the Committee of Equity Security Holders (the "Equity Committee") participated in a formal mediation session in an attempt to resolve the Class Claims.  While the mediation did not result in a settlement, Lead Plaintiff believes it was a productive exercise that helped the parties potentially create a framework for continued negotiations and a class-wide resolution of the Class Claims, a result that the Debtors have envisioned since before the Chapter 11 Cases were filed.

**C.     The Chapter 11 Cases**

17.     On June 27, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases.  On July 11, 2023, the Office of the United States Trustee appointed the Creditors' Committee [D.I. 96].  On September 7, 2023, the Office of the United States Trustee appointed the Equity Committee [D.I. 375].

**D.      The Bar Date and Notice Thereof**

18.      On August 4, 2023, the Debtors filed a motion (the "Bar Date Motion") [D.I. 228]

seeking, among other relief, entry of an order setting a deadline for filing of proofs of claim for

prepetition claims against the Debtors and approving the Debtors' proposed form of *Notice of*

*Deadlines for Filing Proofs of Claims, Including Claims Arising Under Section 503(b)(9) of the*

*Bankruptcy Code, Against Debtors* (the "Bar Date Notice")[4] and form of notice to be published

in certain periodicals (the "Publication Notice").

19.      On August 24, 2023, this Court entered an *Order (A) Establishing Bar Dates and*

*Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section*

*503(b)(9) of the Bankruptcy Code, (B) Approving the Form, Manner, and Procedures of Notice*

*Thereof, and (C) Granting Related Relief* (the "Bar Date Order") [D.I. 319].

20.      Pursuant to the Bar Date Order and the Bar Date Notice, the deadline for filing

proofs of claim against the Debtors was set by this Court as October 10, 2023, at 5:00 p.m.

(Eastern Time) (the "Bar Date").  The Bar Date Order approved the form and manner of notice

of the Bar Date to creditors, including the Bar Date Notice and the Publication Notice.  Bar Date

Order at ¶ 2.

21.      The Bar Date Notice provided, *inter alia*, as relevant to Class members:

> Please take further notice that. . . each Claimant must properly and
> timely file a Proof of Claim by the applicable Bar Date *even if the*
> *Claimant is, or may be included in, or represented by, a purported*
> *class action, class suit, or similar representative action filed, or*
> *that may be filed, against the Debtors*.

Bar Date Notice at 4 (emphasis added in italics).

---

[4]      The Bar Date Notice was filed on the docket on August 28, 2023 [D.I. 335].

22.     The Bar Date Order directed the Debtors to serve notice upon "all known holders of potential claims and their counsel (if known) . . . ."  Bar Date Order at ¶ 16(a).

23.     Although the Class Complaint expressly identified the Class as those investors that purchased Warrants, Units & Options during the Class Period and/or investors that held Common Stock as of September 21, 2020, the Bar Date Order only required the Debtors to serve the Bar Date Notice on "all known **holders** of equity securities in the Debtors **as of the date of the Bar Date Order**."  Bar Date Order at ¶ 16(d) (emphasis added).

24.     There is no mention of the Securities Litigation in the Bar Date Notice or in the Publication Notice.  The Bar Date Notice provides that current "Interest Holders" need not file a proof of claim, unless such holding is based upon a claim for recission or damages (or similar claims).  However, the Bar Date Notice does not address what action a *former* Interest Holder, likely most putative Class members, must take to assert a claim for recession or damages (or similar claims) in connection with such Interest Holder's prior holdings of the Debtors' securities:

> Any person or entity holding an equity security or other ownership interest in the Debtors (an "Interest Holder") is not required to file a proof of interest on or before the applicable Bar Date on account of such equity or ownership interest; *provided, however*, that an Interest Holder (or any other person or entity) that wishes to assert claims against the Debtors, including, but not limited to, claims that arise out of or relate to the ownership or purchase of an equity security or other ownership interest, including, but not limited to, a claim for damages or rescission based on the purchase or sale of such equity security or other ownership interest, must file a Proof of Claim on or before the applicable Bar Date; *provided, further*, that an Interest Holder (or any other person or entity) that is included in, or represented by, a purported class action, class suit, or similar representative action filed, or that may be filed, against the Debtors (a "Representative Action"), and/or any Proof of Claim in respect of a Representative Action, must properly file timely an individual Proof of Claim on or before the applicable Bar Date. . . .

Bar Date Notice at 5.

25.    The Class, which is defined in the Class Complaint as persons or entities who purchased Warrants, Units & Options during the Class Period, and/or persons or entities that held Common Stock as of September 21, 2020, relates to a time period of securities ownership that is ***nearly three years prior to the date of the Bar Date Notice***.  Yet, the Bar Date Notice only references the obligations of *current* holders of the Debtors' equity interests to file a proof of claim based upon a claim for damages or recission, or similar claims.  Moreover, the provision purporting to require that creditors involved in a "Representative Action" file a proof of claim by the Bar Date is unenforceable and irrelevant as to those members of the Class that did not receive notice of the Bar Date or are unaware of the Securities Litigation.

**E.    The Class Claims**

26.    On October 10, 2023, the Lead Plaintiff timely filed the Class Claims against each of the Debtors, asserting claims based upon the detailed allegations contained in the Securities Litigation, which incorporated by reference the allegations in the Class Complaint.

**F.    The Plan, Disclosure Statement, and Solicitation Procedures**

27.    On September 1, 2023, the Debtors filed their *Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [D.I. 360] (the "Original Plan") and the accompanying *Disclosure Statement Pursuant to 11 U.S.C. § 1125 With Respect to Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [D.I. 361] (the "Original Disclosure Statement").

28.    On September 22, 2023, the Debtors filed their *Motion for Entry of an Order (i) Approving the Disclosure Statement and the Form and Manner of Notice, (ii) Approving Plan Solicitation and Voting Procedures, (iii) Approving Forms of Ballots, (iv) Approving Form,*

*Manner, and Scope of Confirmation Notices, (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (vi) Granting Related Relief* [D.I. 467] (the "<u>Solicitation Motion</u>"), through which the Debtors sought, *inter alia*, approval of procedures for soliciting votes on the Plan (the "<u>Solicitation Procedures</u>").

29.    The hearing to consider approval of the Original Disclosure Statement and Solicitation Motion was originally scheduled for October 25, 2023.  On October 6, 2023, Lead Plaintiff filed an objection to approval of the Original Disclosure Statement and Solicitation Motion [D.I. 525] (the "<u>Disclosure Statement Objection</u>").

30.    After filing two further amended versions of the Original Plan and the Original Disclosure Statement, on October 30, 2023, the Debtors filed: (i) a *Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 635] (the "<u>Modified First Amended Plan</u>"); and (ii) a *Disclosure Statement Pursuant to 11 U.S.C. § 1125 with Respect to Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 637] (the "<u>Modified First Amended Disclosure Statement</u>").

31.    The Modified First Amended Plan and the Modified First Amended Disclosure Statement are effectively an entire re-write of the Original Plan and the Original Disclosure Statement with respect to the classification and the proposed treatment of the claims of Class members.

32.    The Modified First Amended Disclosure Statement provides a summary of class actions and derivative actions involving the Debtors, and specifically provides an overview of the Securities Litigation, including reference to the fact that the Securities Litigation Defendants' motion to dismiss was fully briefed in the District Court "and was awaiting the court's

scheduling of a hearing and ruling as of the Petition Date."  Modified First Amended Disclosure Statement, Art. II.E.1.

33.     Relatedly, the Modified First Amended Disclosure Statement explains that in February 2021, the Securities and Exchange Commission initiated an investigation relating to certain corporate transactions and Lordstown Motor Corp.'s "reported pre-orders for vehicles, production timeline and certain other matters" and that the SEC's investigation remains ongoing. *Id.*

34.     The Modified First Amended Plan defines "Ohio Securities Class Action Claims" as "all Claims of the Plaintiffs and any putative class members against LMC and LEVC asserted in, arising from, or related to the Ohio Securities Class Action."  Modified First Amended Plan, Art. I.A.90

35.     The Modified First Amended Plan defines "Section 510(b) Claim" as "any Claim against a Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code, excluding any RIDE Section 510(b) Claims and the Ohio Securities Class Action Claims if they are treated under Class 10 of the Plan."   Modified First Amended Plan, Art. I.A.129. Accordingly, Lead Plaintiff and the Class, to the extent not treated under Class 10 of the Modified First Amended Plan, hold Section 510(b) Claims against the Debtors.  *See id.*

36.     Through the Modified First Amended Plan, the Debtors divide claims and interests into ten different classes: (i) Other Priority Claims,[5] (ii) Secured Claims, (iii) General Unsecured Claims, (iv) Intercompany Claims, (v) Foxconn Preferred Stock Interests, (vi) Intercompany Interests, (vii) Common Stock Interests, (viii) Section 510(b) Claims; (ix) RIDE

---

[5]     Capitalized terms not defined herein shall have the meanings set forth in the Modified First Amended Plan, the Modified First Amended Disclosure Statement, and Solicitation Procedures, as applicable.

Section 510(b) Claims, and (x) Ohio Securities Class Action Claims.  Modified First Amended

Plan, Art. III.A.

37.     The Modified First Amended Plan defines "<u>Common Stock Interests</u>" as

"Interests in Common Stock in LMC, excluding any Section 510(b) Claims, Ohio Securities

Class Action Claims and RIDE Section 510(b) Claims."  *Id.* Art. I.A.30.

38.     The Modified First Amended Plan provides that Holders of Class 10 Ohio

Securities Class Action Claims will be treated as follows:

> The Ohio Securities Class Action Lead Plaintiff may elect to
> accept the treatment set forth in this Paragraph 10.b by providing
> the Debtors with written notice (the "***Class 10 Election***") of his
> intent to accept such treatment on or before the Voting Deadline. If
> the Ohio Securities Class Action Lead Plaintiff makes such
> election in a timely manner, the Plan shall constitute a motion to
> certify the Ohio Settlement Class exclusively for purposes of the
> Plan and to receive the treatment set forth herein. Such motion
> shall be heard at the Confirmation Hearing.

> If the Ohio Securities Class Action Lead Plaintiff does not elect to
> accept the treatment set forth in this Section 10.b in a timely
> manner, or if the Bankruptcy Court does not certify the Ohio
> Settlement Class as set forth herein at the Confirmation Hearing, or
> if there is insufficient Post-Effective Date Debtor Cash to fund the
> Ohio Securities Class Action Payment, the Ohio Securities Class
> Action Claims shall constitute Section 510(b) Claims, shall be
> classified in Class 8 (Section 510(b) Claims) and this Class 10
> (Ohio Securities Class Action Claims) shall be deemed vacant.

> If the Securities Class Action Lead Plaintiff makes a timely Class
> 10 Election and the Bankruptcy Court certifies the Ohio Settlement
> Class at the Confirmation Hearing as set forth herein and there is
> sufficient Post-Effective Date Debtor Cash to fund the Ohio
> Securities Class Action Settlement, on the Effective Date, in full
> and complete settlement and satisfaction of all Ohio Securities
> Class Action Claims against the Debtors, the Debtors shall pay the
> Ohio Securities Class Action Payment from Post-Effective Date
> Debtor Cash into an escrow established by the Ohio Securities
> Class Action Lead Plaintiff for the benefit of the Ohio Settlement
> Class. Thereafter, the Ohio Securities Class Action Lead Plaintiff
> and his professionals shall seek from the Bankruptcy Court (at

their expense) such orders as may be required to approve procedures (including opt-out and claim procedures) to distribute the Ohio Securities Class Action Payment to the Ohio Settlement Class members.

The Debtors understand that Ohio Settlement Class members may be provided with the option to opt-out of the Ohio Settlement Class after the Settlement Class has been certified. Any Claims of putative Ohio Settlement Class members that opt-out of the Ohio Settlement Class ("***Ohio Securities Class Action Opt-Out Claims***") shall be treated as Section 510(b) Claims and shall receive the treatment provided in the Plan to Section 510(b) Claims if and when such Claims become Allowed. Further, in the event that more than five percent (5%) of putative Ohio Settlement Class members opt-out of the Ohio Settlement Class, the election of the Ohio Securities Class Action Lead Plaintiff to elect to be treated in this Class 10 (Ohio Securities Class Action Claims) shall be revoked, the Ohio Settlement Class shall be decertified, all Ohio Securities Class Action Claims shall be treated as Section 510(b) Claims and shall receive the treatment provided in the Plan to Section 510(b) Claims if and when such Claims are Allowed, and the Ohio Securities Class Action Payment shall be returned to the Debtors, minus any reasonable amounts spent by Settlement Class to implement the treatment set forth herein.

To the extent that the Ohio Lead Plaintiff timely makes the Class 10 Election and the Bankruptcy Court certifies the Ohio Settlement Class as set forth herein, the sole source of recovery against the Debtors for Holders of Ohio Settlement Securities Class Action Claims (other than Securities Class Action Opt-Out Claims) shall be the Ohio Securities Class Action Settlement.

Nothing herein shall be deemed to certify the Ohio Settlement Class for any purpose other than to distribute the Ohio Securities Class Action Payment to Ohio Settlement Class members. In addition such certification shall not prejudice the rights of any defendant in the Ohio Securities Class Action (other than the Debtors) to the object to the certification of a class in the Ohio Securities Class Action and all such rights are expressly preserved. Further, the election of the Ohio Securities Class Action Lead Plaintiff to receive the treatment set forth in this Article III.B.10 shall not affect or release any of the rights of any Person to obtain recoveries as a class member of any class certified in connection with the Delaware Shareholder Class Action, if any.

Modified First Amended Plan, Art. III. B.10.b.

39.     The Class Claims assert $695 million in damages against the Debtors, and such claims are not being allowed pursuant to the Modified First Amended Plan.  The Modified First Amended Plan provides that "Class 10 is unimpaired by the Plan, and Holders of Ohio Securities Class Action Claims are deemed to accept the Plan; *provided*, that the Ohio Securities Class Action Lead Plaintiff shall be entitled to accept the treatment set forth in Paragraph 10.b on or before the Voting Deadline." Modified First Amended Plan, Art. III. B.10.c.

40.     The Modified First Amended Plan provides that Holders of Class 7 Common Stock Interests will be treated as follows:

> On the Effective Date, all Allowed Common Stock Interests in the Debtors shall be retained, subject to the terms of the New Organization Documents, which may be amended pursuant to Article V.H of the Plan, among other things, so as to implement the operative provisions of the Final Trading Order upon the Effective Date as to Common Stock Interests and to make certain modifications to the size and election process as to the New Board. For the avoidance of any doubt, Holders of Allowed Common Stock Interests shall only receive Distributions from Post-Effective Date Debtor Cash.

*Id.* Art. III.B.7.b.

41.     Common Stock Interests in Class 7 are impaired, and the Holders thereof are entitled to vote to accept or reject the Modified First Amended Plan.  *Id*. Art.III.B.7.c.

### *The Third Party Release and Injunction*

42.     The Modified First Amended Plan contains an injunction (the "Injunction") that permanently enjoins "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests. . ." that are subject to any release, discharge, or exculpation pursuant to the Modified First Amended Plan.  Modified First Amended Plan Art. VIII.F.

43. Article VIII of the Modified First Amended Plan also contains a deemed release (the "Third Party Release") of a seemingly unlimited amount of non-Debtor claims against the Debtors and myriad of other non-Debtors, including current directors and officers of the Debtors. *Id.* Art. VIII.D.

44. The "Releasing Parties" deemed to grant the Third Party Release include:

> (i) all Holders of Claims or Interests that vote to accept the Plan; (ii) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and opt in to the third party releases provided for in Article VIII.D by checking the box on the applicable Ballot or form indicating that they opt in to granting such releases in the Plan submitted on or before the Voting Deadline….

*Id.* Art. I.A.123.

45. While the Modified First Amended Plan carves out Lead Plaintiff from the definition of a "Releasing Party", the Debtors, or any other entity, retain the right to take the position that all members of the Class for which the Lead Plaintiff serves as court-appointed class representative may be deemed to be "Releasing Parties" under the Plan. *Id*. Art. VIII.D. This reservation of rights is particularly important given the structure of the Modified First Amended Plan because all members of Class 10 are deemed unimpaired, are not entitled to vote, and are deemed to have accepted the Modified First Amended Plan. Therefore, the Debtors will presumably take the position that all members that hold Class 10 Ohio Securities Class Action Claims are deemed to be Releasing Parties – regardless of whether Lead Plaintiff is a Releasing Party.

46. Included as a "Released Party", against whom claims and causes of action will be released by the Third Party Release, are the Debtors and their "current and former officers,

directors, employees, attorneys, accountants, investment bankers, consultants and other professionals other than Excluded Parties…"  *See id.* Art. I.A.122.

47.    The "Excluded Parties" are defined as "Foxconn and the Former Directors and Officers."  *Id*. Art. I.A.52.

48.    The "Former Directors and Officers" are defined as "any persons that served as officers and directors of any of the Debtors prior to the Effective Date *other than* the Chapter 11 Directors and Officers.  *Id*. Art. I.A.60

49.    The "Chapter 11 Directors and Officers" are defined as "any person that served in the capacity as a director or officer of any of the Debtors at any time from the Petition Date through the Effective Date."  *Id*. Art. I.A.20.

50.    Accordingly, while former directors and officers of the Debtors are ostensibly excluded from the definition of a "Released Party", the way the definitions in the Modified First Amened Plan are structured, such former directors and officers could suddenly become Released Parties if, at any time prior to the Effective Date, and without regard to length of their tenure, they are appointed as either an officer or a director of the Debtors.

### *Approval of the Modified First Amended Disclosure Statement*

51.    On October 31, 2023, Lead Plaintiff filed his *Supplemental Limited Objection and Reservation of Rights to the Debtors' Modified Amended Disclosure Statement and Solicitation Motion* [D.I 641] (the "Supplemental Objection").  Through the Supplemental Objection, Lead Plaintiff stated that he had consulted with the Debtors to resolve certain purely disclosure-related issues and the Debtors had agreed to add such additional disclosures to the Modified First Amended Disclosure Statement.  Lead Plaintiff also stated his position that the Modified First

Amended Plan was not confirmable and that Lead Plaintiff intended to raise any and all of his objections in connection with the confirmation hearing.

52.     Certain of the additional language now included in the Modified First Amended Disclosure Statement is particularly relevant for purposes of this Motion, as follows:

## C. **The Debtors May Not Be Able to Obtain Confirmation of the Plan**

The Debtors may not receive the requisite acceptances to confirm the Plan. In the event, that votes with respect to Claims in the Class entitled to vote are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek Confirmation of the Plan by the Bankruptcy Court. However, if the requisite acceptances are not received, the Debtors may not be able to obtain Confirmation of the Plan. Even if the requisite acceptances of the Plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under section 1129 of the Bankruptcy Code has not been met.

Without limiting the generality of the foregoing, and although the Debtors believe that the allocation methodology contained in Class 8 fairly allocates value between the Holders of Section 510(b) Claims and the Holders of Common Stock Interests, the Debtors understand that the Ohio Securities Class Action Lead Plaintiff vigorously disputes the propriety and fairness of the treatment of Class 8 Section 510(b) Claims under the Plan. In that regard:

- The Ohio Securities Class Action Lead Plaintiff asserts that the Plan is inconsistent with 11 U.S.C. § 510(b), which provides in pertinent part that "[f]or the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim . . . [where] such security is common stock, such claim has the same priority as common stock[;]"

- The Ohio Securities Class Action Lead Plaintiff asserts that Section 510(b) Claims are prepetition Claims against the Debtors and, therefore, the appropriate point in time for determining the pro rata allocation of value distributable to holders of Class 7 Common Stock Interests and Class 8 Section 510(b) Claims is as of the Petition Date;

- The Ohio Securities Class Action Lead Plaintiff asserts that, instead, the Plan utilizes an inappropriate and drastically inflated share price, improperly determined as of the Ohio Settlement Class Period, to convert

Class 8 Section 510(b) Claims (denominated in dollars) into Common Stock Interests (denominated in shares), artificially and dramatically shifting the required pro rata allocation between Class 7 and Class 8 in favor of Class 7;

- The Ohio Securities Class Action Lead Plaintiff asserts that, instead, as an example, if the claim filed by the Ohio Securities Class Action Lead Plaintiff on behalf of the Ohio Settlement Class is allowed in the stated amount of $695,000,000, the Ohio Settlement Class would receive 183,658 Common Stock Interests. The Ohio Securities Class Action Lead Plaintiff asserts that, instead, as compared to LMC's reported public float of 13,873,779 shares, the Debtors' proposed treatment would allocate 98.69% of any Distribution to Class 7 and just 1.31% to Class 8 despite the fact that both classes must be treated equally under the Bankruptcy Code; and

- The Ohio Securities Class Action Lead Plaintiff asserts that, in the foregoing example, if the Post-Effective Date Debtors made a distribution of $10,000,000 to Class 7 and Class 8, Class 7 would receive $9,869,351.72, while Class 8 – investors who purchased while the price of the Debtors' stock was drastically inflated and suffered damages as a result – would receive only $130,648.28.

The Debtors dispute the Ohio Securities Class Action Lead Plaintiff's arguments and believe that the Plan complies fully with section 510(b) of the Bankruptcy Code (and all other provisions of the Bankruptcy Code), including with respect to the Plan's treatment of Section 510(b) Claims.

If the Plan is not confirmed by the Bankruptcy Court, there can be no assurance that any alternative plan would be on terms as favorable to Holders of Allowed Claims as the terms of the Plan. In addition, there can be no assurance that the Debtor will be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtors' creditors.

Modified First Amended Disclosure Statement, Art. III.C.

53.     One of the primary purposes of this Motion is to ensure that Lead Plaintiff can negotiate a class-wide resolution of these issues in the Chapter 11 Cases, a goal maintained by the Debtors as well since prior to the commencement of the Chapter 11 Cases.  Indeed, the Debtors have been engaging in such efforts with Lead Plaintiff for well over a year and the predominance of issues relating to violations by the Debtors of federal securities law and the

hundreds of millions of dollars lost by investors is obvious in the Chapter 11 Cases.  But while current equity holders have an official committee ostensibly championing their rights, Lead Plaintiff is requesting what amounts to a formalization of his status that has been tacitly acknowledged since before the Chapter 11 Cases were filed.

54.    The Lead Plaintiff further reserved his rights in the Supplemental Objection to file a motion pursuant to Bankruptcy Rule 7023 to have Federal Rule 23 apply to the Class Claims.

55.    On October 31, 2023, this Court held a hearing to consider approval of the Modified First Amended Disclosure Statement and on November 1, 2023, this Court entered an order approving, *inter alia*, the Modified First Amended Disclosure Statement [D.I. 651].

## ARGUMENT

### A.    Class Proofs of Claim are Permitted in Chapter 11 Bankruptcy Proceedings

56.    There can be no dispute that class proofs of claim are permitted in bankruptcy proceedings.  *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002).  Until the Seventh Circuit's decision in *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988), several courts held that the Bankruptcy Code did not permit class proofs of claim.  However, since that decision, class proofs of claim have generally been permitted in bankruptcy proceedings.  *See, e.g.*, *Birting Fisheries v. Lane (In re Birting Fisheries)*, 92 F.3d 939, 939–40 (9th Cir. 1996) (concurring with the *American Reserve* Court that the Bankruptcy Code "should be construed to allow class claims"); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1469 (6th Cir. 1989) (allowing class proofs of claim is the more "equitable resolution"); *The Certified Class in the Chartered Securities Litig. v. The Charter Co. (In re Charter Co.)*, 876 F.2d 866, 873 (11th Cir. 1989) ("[i]n light of Congress' inclusion of [Federal] Rule 23 in bankruptcy proceedings [and] the clear congressional intent that the Bankruptcy Code encompass every type of claim . . . we conclude that class proofs of claim are allowable in bankruptcy").

57.     Permitting class proofs of claim is the majority rule.  *See*, *e.g.*, *In re Craft*, 321 B.R. 189, 192 (Bankr. N.D. Tex. 2005) ("courts declining to permit class proofs of claim are recognized as being in the minority.").  The trend in this District has been to follow the majority. *Kaiser Grp.*, 278 B.R. at 62 (collecting cases) ("The vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding."); *see also In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS), 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016), *reconsideration denied*, 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016) (citing cases).  These courts have recognized that the class action device is wholly consistent with the fundamental goals and objectives of the bankruptcy process:

> [T]he bankruptcy statute has the goal of facilitating creditor compensation.  It would be incongruous for this bedrock policy to be thwarted by reading a procedural limitation into the [Bankruptcy] Code.  Bankruptcy also seeks to achieve equitable distribution of the estate.  Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the [Bankruptcy] Code than someone with a large easily filed claim.  Applying [Federal] Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code.

*Charter Co.*, 876 F.2d at 871.

58.     Notwithstanding the majority rule permitting class claims in bankruptcy cases, the right to proceed as a class in a bankruptcy proceeding "is not absolute."  *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007).  The decision whether to certify a class claim is "within the discretion of the bankruptcy court."  *Kaiser Grp.*, 278 B.R. at 62; *see also Pac. Sunwear*, 2016 WL 3564484, at *5 ("I will join the vast majority of courts holding that whether to permit a class action is a matter of discretion.").  Conversely, courts may decline to apply Rule 23 if doing so would "'gum up the works' of distributing the estate."  *In re MF Glob. Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014).

59.    Because the Class Claims do not threaten to delay administration of the Debtors' estates or "gum up the works", the Court should exercise its discretion to apply Bankruptcy Rule 7023 to the Class Claims.    Indeed, the only consequence of such a result would be to acknowledge the process and events that have occurred pre- and post-petition and throughout the Chapter 11 Cases, facilitate resolution of the Class Claims, and foreclose the Debtors from reversing course and attempting to prevent defrauded investors from "bringing all claims forward as contemplated by the Bankruptcy Code." *Charter Co.*, 876 F.2d at 871.

60.    Courts apply a two-step analysis in determining whether to certify a class in bankruptcy. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) (citing *Pac. Sunwear*, 2016 WL 3564484, at *5):

61.    <u>First</u>, the court must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. *Chaparral*, 571 B.R. at 646. <u>Second</u>, the court must determine whether the class certification requirements of Federal Rule 23 have been satisfied.    *Id*. (citations omitted).    Through this Motion, Lead Plaintiff requests that this Court only grant relief with respect to the first step of this analysis at this time—whether to apply Bankruptcy Rule 7023 to the Class Claims.    If this Court applies Bankruptcy Rule 7023 to the Class Claims, Lead Plaintiff requests that this Court then set a briefing schedule, and schedule a hearing, for consideration of the second step of the analysis.

**B.    Standard for Application of Bankruptcy Rule 7023 to Class Proofs of Claim**

62.    Courts considering whether to exercise their discretion to invoke Bankruptcy Rule 7023 often utilize the factors set forth in *In re Musicland Holding Corp.*:

(i)    whether the class was certified pre-petition;

(ii)    whether the members of the putative class received notice of the bar date; and

(iii)   whether class certification will adversely
affect the administration of the estate.

362 B.R. at 654–55; *Pac. Sunwear*, 2016 WL 3564484 at *5. In applying these factors, courts

have recognized that "no one factor is dispositive; a factor may take on more or less importance

in any given case." *Chaparral*, 571 B.R. at 646.

> 1. **The fact that the Class has not yet been certified does not preclude the application of Bankruptcy Rule 7023.**

63.     In considering the first *Musicland* factor, courts have exercised their discretion to

apply Bankruptcy Rule 7023 even when a putative class was not certified prepetition. *Kaiser*

*Grp.*, 278 B.R. at 62–63 (certifying class where motion for class certification was filed a year

after filing of the class proof of claim and four months after debtor's initial objection); *MF Glob.*,

512 B.R. at 763–65 (noting that where the claims of a class arose in tandem with the conduct that

led to the debtor's SIPA liquidation, "the issue of prepetition certification loses its relevance,

since there will seldom be time to file a class action complaint and certify a class before the

petition date."); *Schuman v. Connaught Grp., Ltd. (In re Connaught Grp., Ltd.)*, 491 B.R. 88,

98–100 (Bankr. S.D.N.Y. 2013) (same).

64.     Courts have denied objections to class claims based on securities litigation even

though the class had not been certified prepetition where, as here, the class proofs of claim were

filed before the applicable bar date. *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 547

(Bankr. D. Del. 2016) (denying objection to class claim and citing *Kaiser Group*, *Connaught*

*Group*, and *MF Global*); *see also In re First Interregional Equity Corp.*, 227 B.R. 358, 371

(Bankr. D.N.J. 1998) (class treatment appropriate though class was not filed or certified pre-

petition); *In re CommonPoint Mortg. Co.*, 283 B.R. 469, 482 (Bankr. W.D. Mich. 2002)

(certifying a class where class action had never been certified by a federal court under Federal

Rule 23, class representative timely filed proofs of claim and nine months later filed for class

treatment); *In re First Alliance Mortg. Co. v. First Alliance Mortg. Co.*, 269 B.R. 428, 446–48 (C.D. Cal. 2001) (bankruptcy court erred in denying application of Bankruptcy Rule 7023 although class was not previously certified and Bankruptcy Rule 7023 motion was filed after objection).

65.     Here, the Class Complaint was filed in September 2021—nearly two years prior to the Petition Date—and the Securities Litigation Defendants' motion to dismiss was fully briefed and awaiting hearing as of the Petition Date.  Due to the stay imposed by the PSLRA, all discovery and other proceedings, including proceedings to certify the Class, were stayed pending adjudication of the motion to dismiss.

66.     Notwithstanding that Lead Plaintiff was stayed from having the Class certified, the Debtors have had knowledge of the Securities Litigation, and the size and scope of the putative Class, since September 2021.  Indeed, both before and after the Petition Date, the Debtors conducted extensive settlement negotiations with Lead Plaintiff, as a representative of the Class, including advanced stages of drafting a settlement agreement, a Bankruptcy Rule 9019 motion, and proposed interim and final orders approving a class-wide settlement in this Court.  Such settlement efforts remain ongoing and have recently involved both the Creditors' Committee and the Equity Committee.

67.     Moreover, the Modified First Amended Plan provides that *only* the Lead Plaintiff has the authority to make the Class 10 Election to determine the treatment of Class 10 Ohio Securities Class Action Claims under the Modified First Amended Plan.  Modified First Amended Plan, Art III.B.10.b.  If Lead Plaintiff makes the Class 10 Election, the Modified First Amended Plan will be deemed to "constitute a motion to certify the Ohio Settlement Class exclusively for purposes of the Plan and to receive the treatment set forth herein."  *Id.*

Obviously, when the circumstances are beneficial to the Debtors, they raise no procedural or substantive objections to the Class having not been certified by the District Court prior to the commencement of the Chapter 11 Cases. Indeed, certification is contemplated by the Debtors in that context.

68.     Accordingly, the fact that the Class was not certified prior to the Petition Date, especially in the context of the Chapter 11 Cases, does not weigh against this Court applying Bankruptcy Rule 7023 to the Class Claims.

**2.     The Debtors failed to provide adequate notice of the Bar Date to members of the Class, who are known creditors entitled to actual notice.**

69.     The second *Musicland* factor, whether the members of the putative class received notice of the Bar Date, is important here and weighs heavily in favor of granting Lead Plaintiff's Motion because the Debtors failed to provide constitutionally adequate actual notice of the Bar Date to members of the Class, other than perhaps a subset of Class members that may still hold Common Stock and may have received notice in that capacity. *See, e.g.*, *Chaparral*, 571 B.R. at 646 ("The second Musicland factor weighs in favor of applying Bankruptcy Rule 7023 to the Class Claim as not all putative class members were served with notice of the Bar Date.").

70.     Constitutional due process requires that notice of any claims bar date "be fundamentally fair and reasonably calculated to apprise interested parties." *In re ATD Corp.*, 278 B.R. 758, 763 (Bankr. N.D. Ohio 2002) (citing cases). It is a fundamental principle of due process that a creditor who does not receive proper notice of the claims bar date is not bound thereby. *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953). In the face of a challenge to the receipt of a bar date notice, the burden rests with the debtor to show that it satisfied the notice requirements. *See In re Freedom Commc'ns Holdings, Inc.*, 472 B.R.

257, 261 (Bankr. D. Del. 2012) (citing *Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 57 (Bankr. S.D.N.Y.1992)).

71.     Here, Class members are known creditors entitled to receive actual notice of the Bar Date, which the Debtors failed to provide.   The Debtors cannot rely on the Publication Notice to salvage the Debtors' failure to serve the Bar Date Notice on Class members, because constructive notice is ineffective as to known creditors.

     a)     *Class members are known creditors entitled to, but did not receive, actual notice of the Bar Date.*

72.     For purposes of notice, bankruptcy law differentiates between "known" and "unknown" creditors.   *See, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). Known creditors are entitled to actual notice of the applicable claims bar date.   *Id*.   For unknown creditors, constructive notice by publication is generally sufficient.   *Id*.   A known creditor "is one whose identity is either known or 'reasonably ascertainable by the debtor.'"   *Id.* (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988)).   According to the Third Circuit, a creditor's identity is reasonably ascertainable

> if that creditor can be identified through reasonably diligent efforts . . . Reasonable diligence does not require impracticable and extended searches . . . in the name of due process . . . . A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it . . . . The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally required . . . .

*Chemetron*, 72 F.3d at 346–47. (internal quotation marks and citations omitted).

73.     By contrast, an unknown creditor "is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'"   *Id.* at 346 (quoting *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306, 317 (1950)).   Unknown creditors are only entitled to constructive

notice—such as notice by publication—because, by definition, there is no other feasible alternative. *See Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in . . . cases where it is not reasonably possible or practicable to give more adequate warning."); *City of New York*, 344 U.S. at 296 ("[W]hen the names, interests and addresses of persons are unknown, plain necessity may resort to publication.").

74.    Courts have recognized the inefficacy of constructive notice by publication as a basis for the allowance of a class claim:

> Reliance on published notice to reach a class of claimants may not be adequate. It will not always reach every class member such that the rules of due process are satisfied. . . . If a class claim is not allowed, class members without notice will have non-dischargeable claims. While allowing a class claim may not wholly eliminate that exposure, it may foreclose the option of unnoticed members of a putative class commencing their own class action post-discharge.

*Craft*, 321 B.R. at 194 (citations omitted).

75.    The Third Circuit has recognized that "'individual notice to identifiable class members *is not a discretionary consideration* to be waived in a particular case. It is, rather, an unambiguous requirement of [Federal] Rule 23 . . . . Accordingly, *each class member who can be identified through reasonable effort must be notified* . . . .'" *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 123–24 (3d Cir. 2012) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)) (emphasis added).

76.    The Third Circuit also recognized that notice by publication "had long been recognized as a poor substitute for actual notice." *Larson*, 687 F.3d at 24 (citing *Eisen*, 417 U.S. at 175). "*Eisen* stands for the proposition that individual *notice must be delivered to class members who can be reasonably identified*, and that the costs required to actually deliver notice

should not easily cause a court to permit the less satisfactory substitute of notice by publication." *Id.* (emphasis added). "[W]here names and addresses of members of the class are easily ascertainable, . . . due process would dictate that the 'best notice practicable under the circumstances . . . ' would be individual notice." *Id.* at 126.

77.    The identities of Class members were readily and reasonably ascertainable by the Debtors.  The Class Complaint, which was filed over *two years* prior to the Bar Date, expressly identified Class members as persons or entities that purchased Warrants, Units & Options during the Class Period, and/or persons and entities that held the Common Stock as of September 21, 2020.  Not only did the Debtors have actual notice of the members of the Class, but the Debtors had extensive settlement negotiations with Lead Plaintiff, as a representative of the putative Class, for months prior to and after the Petition Date.

78.    Accordingly, the Debtors were well aware of the size and scope of the Class and no protracted search was necessary for the Debtors to identify who purchased the Warrants, Units & Options during the Class Period, nor to identify the investors that held the Common Stock as of September 21, 2020.

79.    All the Debtors needed to do was follow the exact same straightforward procedures that would be used to provide actual notice to prior purchasers of publicly traded stock in any securities class action in compliance with the constitutional dictates discussed by the Supreme Court in *Eisen*.  Instead, the Debtors chose to rely on providing notice to holders of Common Stock ***as of the date of the Bar Date Notice***.  In doing so, the Debtors failed to provide members of the Class with constitutionally adequate notice of the Bar Date.

80.    Actual notice to current holders of the Common Stock did absolutely nothing to provide notice to: (i) persons and entities that purchased Warrants, Units & Options during the

Class Period; or (ii) persons or entities that held the Common Stock as of September 21, 2020, but subsequently sold or transferred such Common Stock in the intervening three years prior to the Bar Date. *Cf. Chaparral*, 571 B.R. 647 (rejecting an argument that providing notice only to then-current royalty interest owners was sufficient because court-approved settlements of similar class actions "have almost universally distributed payments to current royalty interest owners based on the understanding that former royalty interest owners either transferred their rights to payment to the current owner or current royalty owners will forward gains attributable to their predecessors to them directly.").

81.    Similarly, in *In re Pacific Sunwear of California, Inc.*, the court found that the second *Musicland* factor weighed in favor of certifying a class where, *inter alia*, "despite due process requiring actual notice to known creditors, the Debtors admittedly limited notice of the bar date to employees who worked for the company within the two years preceding the petition date." 2016 WL 3564484 at *6.

82.    The exact same reasoning applies here. Indeed, the circumstances here are even more prejudicial to absent Class members because the Bar Date Notice expressly warned that "each Claimant <u>must properly and timely file</u> a Proof of Claim by the applicable Bar Date *even if the Claimant is, or may be included in, or represented by, a purported class action, class suit, or similar representative action filed, or that may be filed, against the Debtors*."[6] Yet, the Debtors failed to conduct the required diligence in order to serve the constitutionally required actual notice of the Bar Date upon the very Class members to which this provision of the Bar Date Notice was directed.

---

[6]    Bar Date Notice at 4 (emphasis added in italics).

*b)*      *The Publication Notice was ineffective with respect to the Class.*

83.      Because the identities of Class members were reasonably ascertainable by the Debtors, Class members were entitled to actual notice of the Bar Date and constructive notice through the Publication Notice was constitutionally defective as to them.  *See, e.g.*, *Chemetron*, 72 F.3d at 346 ("Known creditors **must be provided with actual written notice** of a debtor's bankruptcy filing and bar claims date.") (emphasis added).

84.      Nevertheless, despite being well aware for years of the claims asserted in the Securities Litigation and the Class to which those claims pertain—the Modified First Amended Disclosure Statement even contains a summary of the Securities Litigation—the Debtors undertook no reasonably diligent efforts, or apparently *any* efforts, to identify members of the Class or provide them with actual written notice of the Bar Date.  Such failure is especially problematic given that at the time the Debtors were requesting this Court to establish the Bar Date, and the proposed form and manner of notice of the Bar Date to be provided to creditors, the Debtors were concurrently engaged in months long settlement negotiations with Lead Plaintiff to resolve the claims against the Debtors in the Securities Litigation.

85.      Under similar circumstances, the court in *In re Amdura Corp.*, 170 B.R. 445, 450–452 (D. Col. 1994), rejected an argument that actual notice did not need to be provided to the members of the class in securities fraud litigation who were no longer record owners because such service "would have been impracticable and expensive and they received notice by publication in the *Wall Street Journal* and seven other regional newspapers."  *Id.*  The *Amdura* court held that publication alone as to members who no longer held securities, was insufficient to satisfy due process, where representatives had taken all necessary steps to file class proof of claim in bankruptcy case, both debtor and bankruptcy court were aware of existence of individual creditors, and debtor could have obtained a list of creditors' names and addresses from representatives.  *Id.*

The *Amdura* court held that if Bankruptcy Rule 7023 was not applied, actual notice of the bar date would have to be provided to all members of the class. *Id.* Clearly, applying Bankruptcy Rule 7023 here is the better and more practical result to ensure that the rights of Class members are protected.

86.     Simply put, the Publication Notice did not, as it cannot, cure the Debtors' failure to serve the Bar Date Notice on Class members, and thus the second *Musicland* factor weighs decidedly in favor of the application of Bankruptcy Rule 7023 to the Class Claims.

87.     Nearly a month ago, through the Disclosure Statement Objection, Lead Plaintiff expressly identified the fact that the Debtors failed to provide any notice of the Bar Date (or the Original Disclosure Statement or the Original Plan) to members of Class. Rather than attempt to correct such due process violations, the Modified First Amended Plan has now separately classified Class members *but still provides no means for serving notice of the Modified First Amended Plan, Bar Date, or the Modified First Amended Disclosure Statement* on any of the Class members. Rather, the Debtors rely on Lead Plaintiff alone to make the Class 10 Election on behalf of all Class members. Through this Motion, Lead Plaintiff asks this Court to formalize a role that the Debtors have effectively acknowledged since prior to the Petition Date.

### 3.      Application of Bankruptcy Rule 7023 will not negatively impact the administration of the Debtors' estates.

88.     The third *Musicland* factor—whether class certification will adversely affect the administration of the estate—also supports applying Bankruptcy Rule 7023 to the Class Claims. By all applicable criteria, this Motion is timely brought and it will not negatively impact the administration of the Chapter 11 Cases.

89.     The Bar Date has just recently passed and the Debtors are only now beginning the Plan solicitation process. Accordingly, no Plan voting has commenced and the Modified First

Amended Disclosure Statement does not even identify anticipated recoveries to holders of Class 7 Common Stock Interests, in which recovery Class members should ratably share.  Finally, no objections have been filed to any of the Class Claims.

90.     Lead Plaintiff, on behalf of the Class, has been, and continues to be, a significant constituent in the Chapter 11 Cases—no less than the respective constituencies that the Creditors' Committee and the Equity Committee represent.  Given Lead Plaintiff's extensive involvement in the Chapter 11 Cases, his knowledge of the factual and legal bases for the Class Claims and pre- and post-petition settlement negotiations with the Debtors, Lead Plaintiff is best positioned to continue to advocate for and represent the interests of Class members with a certified class.

91.     Moreover, through the Disclosure Statement Objection, Lead Plaintiff has already asserted its objection to, *inter alia*, the Third Party Release provision contained in the Modified First Amended Plan and is prepared to prosecute such objection at the hearing to consider confirmation of the Modified First Amended Plan, as necessary.  Notably, because the Debtors have neglected to serve notice of the Bar Date and notice generally in the Chapter 11 Cases on members of the Class, it is likely that most Class members are not even aware of the Third Party Release provision and that their valuable claims against Non-Debtor Defendants may be deemed released for no consideration.  To the extent that the Third Party Release provision is approved by this Court, application of Bankruptcy Rule 7023 and Class certification would authorize Lead Plaintiff to take whatever action is necessary to protect the interests of Class members on a class-wide basis.

92.     Finally, application of Bankruptcy Rule 7023 to the Class Claims and class certification is consistent with the reasonable expectations of the Debtors.  The Debtors have

engaged with Lead Plaintiff for nearly a year to attempt to finalize a resolution of the Class Claims. The Class Claims are statutorily subordinated to general unsecured claims and therefore pose no risk to unsecured creditors who are being paid in full on account of their allowed unsecured claims and ahead of the Class Claims. The Equity Committee is well aware of the Class Claims, having recently participated in the mediation to attempt to resolve such claims, and should understand that such claims must be consensually resolved, or adjudicated, before its constituents are entitled to receive any distribution under a plan. Having a certified class will only serve to aid in that process.

93.     The Modified First Amended Plan and the Modified First Amended Disclosure Statement make it even more obvious that, absent application of a collective process under Bankruptcy Rule 7023, there can be no meaningful opportunity for the Debtors to confirm any plan and exit Chapter 11 in a timely manner. Accordingly, far from "gumming up the works", applying Bankruptcy Rule 7023 to the Class Claims will provide an effective and efficient means to allow Class members to participate in the Chapter 11 Cases and facilitate a fair resolution of all competing interests.

94.     Courts in this District have repeatedly certified class actions without regard to the timing of the certification motion. *See In re United Cos. Fin. Corp.*, 276 B.R. 368, 377 (Bankr. D. Del. 2002); *Kaiser Grp.*, 278 B.R. at 67 (certifying class after bar date where class claim was filed before the bar date). In fact, courts have certified class proofs of claim post-confirmation where the class proof of claim was filed before the applicable bar date. *See Kaiser Grp.*, 278 B.R. at 67; *Connaught Grp.*, 491 B.R. at 99; *MF Glob.*, 512 B.R. at 763.[7]

---

[7]     In *Charter Co.*, the court held that it was also appropriate for class claimants to file a class proof of claim without immediately seeking class certification, and then to seek such certification once the debtor objects to the class proof of claim. 876 F.2d at 873–75.

## CONCLUSION

95.     Lead Plaintiff respectfully submits, for the reasons set forth above, that the application of Bankruptcy Rule 7023 to the Class Claims promotes bankruptcy policies, needs, and concerns and is the most efficient and effective method by which defrauded investors, a significant constituency in the Chapter 11 Cases, can obtain an appropriate recovery from the Debtors for their losses.

## RESERVATION OF RIGHTS

96.     For the avoidance of doubt, this Motion does not, shall not, and shall not be deemed to:

- constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

- constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter**; or

- waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment on any matter, (b) the right to have final orders in non-core matters entered only after de novo review by a District Court judge, (c) the right to trial by jury in any proceedings so triable herein, in the Debtors' Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, their chapter 11 cases, any Related Proceedings, or the Securities Litigation, (d) the right to have the reference withdrawn by a United States District Court in any matter subject to mandatory or discretionary withdrawal, or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

*[ signature page follows ]*

WHEREFORE, Lead Plaintiff respectfully requests that the Court grant this Motion and grant such other and further relief as the Court deems just and appropriate.


Dated: November 6, 2023
      Wilmington, Delaware

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
Email: csimon@crosslaw.com

*- and -*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Andrew Behlmann, Esq.
Scott Cargill, Esq.
Collen M. Restel, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
crestel@lowenstein.com

*Bankruptcy Counsel for*
*Lead Plaintiff and the Class*