## Schedule B

**Settlement Term Sheet**

Lordstown Employee Contract Settlement Term Sheet

| # | General Terms |
|---|---|
| i | Employees participating in the employment agreement claim settlement shall execute an agreement (in form and substance reasonably acceptable to the Equity Committee) acknowledging the terms below and such other terms as may be reasonably acceptable to the Debtors |
| ii | Agreed upon severance claim for participating employees is allowed on plan effective date and will be treated as a General Unsecured Claim under the plan, subject to such participating employee's compliance in all material respects with these General Terms and execution (and, if applicable, non-revocation) of the release of the Debtors consistent with (xii) hereto at termination of employment |
| iii | Existing management to be responsible for SEC reporting through plan effective date, including without limitation filing the 10Q for Q3 |
| iv | Distribution with respect to 2/3 of allowed claim for participating employees is made within 30 days of plan effective date (provided that 10Q for Q3 is filed), *provided that* participating employees shall not be entitled to a greater percentage recovery than other allowed General Unsecured Claims and provided further that participating employees shall be entitled to any subsequent "holdback" distributions made by the post-effective date Debtors/Claims Ombudsman |
| v | Distribution with respect to 1/3 of allowed claim for participating employees is paid 120 days after plan effective date, *provided that* participating employees shall not be entitled to a greater percentage recovery than other allowed General Unsecured Claims and provided further that participating employees shall be entitled to any subsequent "holdback" distributions made by the post-effective date Debtors/Claims Ombudsman |
| vi | Participating employees agree to stay (and must stay) on through the plan effective date unless employment is terminated by the Debtors; for the avoidance of doubt, consulting services provided post-effective date that receive compensation hereunder will be structured as an independent contractor |
| vii | Payments of allowed participating employee severance claims would be made without regard to setoff or recoupment rights |
| viii | In the event that the Post-Effective Date Debtors default on their payment obligations with respect to the allowed severance claims, the participating employees' costs of collection (e.g., attorney's fees) will be borne by the Post-Effective Date Debtors (for the avoidance of any doubt, it shall not be a default for the post-effective date Debtors to pay participating employees the same percentage recovery as other allowed General Unsecured Claims under the plan); in the event of a breach by a participating employee, the parties agree that the Bankruptcy Court can fashion an equitable remedy including, but not limited to, disgorgement of any severance payment that was made with respect to allowed severance claims |
| ix | The allowed amounts of employee severance claims do not include (a) rights/claims for indemnification or reimbursement, and all such claims would be reserved, (b) rights to restricted stock units ("RSUs"), which shall receive the treatment of common stock interests as set forth in the plan, provided that the participating employees agree that the Debtors are not required to withhold or sell shares issued upon vesting of unvested RSU's to satisfy state or federal income taxes, or (c) rights/claims with respect to D&O insurance. |
| x | Participating employees and the Post-Effective Date Debtors will work in good faith to address and abide by any restrictions on consulting services necessary to employee's post-effective date employment |
| xi | Any agreement by an Employee to execute the 10K or any other filing after the effective date is conditioned on the Post-Effective Debtors having directors and officers insurance reasonably acceptable to Employee |
| xii | Rejection of Employment Agreements pursuant to the plan (or such other order of the Bankruptcy Court) with confidentiality provisions and release provisions of employment agreements to remain operative post-rejection (though for the avoidance of doubt, not to impact indemnification rights or claims, which are reserved for all parties and severance claims due hereunder); "standard" release of Claims against the Debtors, which shall include (without limitation) any additional severance, on terms reasonably satisfactory to the Debtors to be executed by the Debtors and the participating employee at termination of employment (but reserving all rights and claims with respect to indemnification, reimbursement, RSUs, D&O insurance and under the settlement) |
| xiii | The settlement is subject to approval by the Bankruptcy Court. For the avoidance of any doubt, in the event that the settlement is not approved by the Bankruptcy Court or the Debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, the settlement shall be null, void, and without effect, and all rights of the Debtors, their estates (and any successor thereto, including a Chapter 7 Trustee), and the participating employees shall be fully reserved. |

Lordstown Employee Contract Settlement Term Sheet

| Last | First | Job Title | Annual Salary | Debtors' Calculation of Contractual GUC Severance Amount (Excluding RSUs) | Reduction | Allowed Settlement Severance Amount | Additional Terms (Post-Effective Date Obligations) |
|---|---|---|---|---|---|---|---|
| Hightower | Edward | CEO & President | $675,000 | $1,217,500 | ($242,233) | $975,267 | Up to 80 hours of post-effective consulting, not to exceed 7 hours in any given week, absent extraordinary circumstances. All consulting requirements would fall away 6 months after the effective date. |
| Ninivaggi | Dan | Executive Chairman | 450,000 | 685,000 | (135,000) | 550,000 | Up to 80 hours of post-effective consulting, not to exceed 7 hours in any given week, absent extraordinary circumstances. All consulting requirements would fall away 6 months after the effective date. |
| Leonard | Melissa | EVP, General Counsel & Secretary | 450,000 | 685,000 | (135,000) | 550,000 | Up to 80 hours of post-effective consulting, not to exceed 7 hours in any given week, absent extraordinary circumstances. All consulting requirements would fall away 6 months after the effective date. Ms. Leonard will not provide, absent a separate agreement, consulting or cooperation services that would constitute legal advice or legal services. |
| Kroll | Adam | EVP & CFO | 450,000 | 685,000 | – | 685,000 | Agreement to oversee preparation and execution of 10K for 2023; to consult on claims reconciliation, litigation, and other matters as requested and mutually agreed. To be compensated at $450 / hr for the aforementioned services following the effective date. |
| Port | Michael | VP, Finance & Controller | 285,000 | 167,500 | – | 167,500 | Agreement to consult for the Post-Effective Date Debtors (up to 40 hours per week, or more if mutually agreed) in connection with preparation of 10K for 2023, claims reconciliation, litigation, and other matters, for a period of up to 6 months following the effective date, or longer if mutually agreed. To be compensated at a rate of $300 / hour for all post-effective date services. |
| Coniglio-Kirk | Jill | VP, People & Culture | 260,000 | 130,000 | – | 130,000 | Up to 80 hours of post-effective consulting, not to exceed 7 hours in any given week, absent extraordinary circumstances. All consulting requirements would fall away 6 months after the effective date. |
| **Total** | | | **$2,570,000** | **$3,570,000** | **($512,233)** | **$3,057,767** | |

* In addition to the proposed participants set forth above, the Debtors may add up to two additional employees who are parties to employment with the Debtors to the proposed settlement as may be agreed by the Debtors, the Equity Committee, and the Creditors' Committee. To the extent that such employees are added, the table above will be supplemented.