## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 23-10831 (MFW) |
| Lordstown Motors Corp., *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Re: D.I. 668** |

## DEBTORS' OBJECTION TO OHIO LEAD PLAINTIFF'S MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS CLAIMS

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases submit this objection (the "**Objection**") to *Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Claims* [D.I. 668] (the "**Motion**").  In support of this Objection, the Debtors submit the declaration of James Lee (the "**Lee Declaration**") and respectfully state as follows:

### PRELIMINARY STATEMENT

1.      George Troicky, the lead plaintiff in an uncertified, consolidated securities class action in the United States District Court for the Northern District of Ohio, filed the present motion asking this Court to exercise its discretion to extend Bankruptcy Rule 7023 to purported class proofs of claim.  There is no reason for the Court to grant the requested relief.

2.      As an initial matter, the Motion was filed too late.  A putative class representative seeking to file a proof of claim on behalf of a purported class must *first* receive permission from this Court to do so.  And at no time before filing those proofs of claim (or expiration of the bar

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

AMERICAS 125527683

date) did Mr. Troicky seek or obtain authorization from any individual class member or from this Court to file a proof of claim on behalf of anyone other than himself.

3.    Nonetheless, Mr. Troicky waited until November 6, 2023—four months after receiving notice of the bar date and a month after the deadline to file proofs of claim had passed— to file the Motion, asking the Court to grant retroactive relief ratifying the unauthorized proofs of claim he filed on behalf of hundreds of thousands of purported class members who have not given their consent.  He argues that applying Bankruptcy Rule 7023 to his unauthorized class proofs of claim is "appropriate" as a remedy to the Debtors' supposed failure to adequately notify the purported class of the bar date, and that the Bar Date Order is "irrelevant and unenforceable" as to those individuals.  But Mr. Troicky and his counsel were served with the Bar Date Motion and had every opportunity to object to any alleged deficiencies in the Debtors' proposed notice program. They did not do so.

4.    Even if the Motion had been timely filed, there is no reason for the Court to allow for class proofs of claims in this case.  The Motion fails to satisfy the standard applied in this Circuit to determine whether the Court should exercise its discretion to extend Bankruptcy Rule 7023 to a class proof of claim.  The growing consensus among bankruptcy courts is that class treatment is to be used "sparingly" because the policy considerations supporting class actions are absent in the bankruptcy claims administration context, where the costly barriers to traditional civil litigation and prosecution of claims are significantly reduced.  Moreover, each of the *Musicland* factors weighs against granting the Motion:  First, no class has been certified.  Second, members of the putative class—which include both "known" and "unknown" creditors—received actual and constructive notice of the bar date.  That notice was clear that any person wanting to assert a claim against the Debtors was required to file their own proof of claim and that purported class

AMERICAS 125527683

representatives were not authorized to file on behalf of a class. Third, class certification at this juncture would adversely affect the administration of the Debtors' cases. The interests of creditors and equity holders is already robustly represented by two official committees, the cases are in their late stages and only five weeks away from a scheduled confirmation hearing, and there is nothing about granting Ohio Lead Plaintiff's belated request that would enhance the efficiency of these cases.

5.      The Court should deny the Motion.

## BACKGROUND

### I.      The Claims Process

6.      On May 27, 2020, the Court entered the order appointing Kurtzman Carson Consultants LLC ("**KCC**") as the claims and noticing agent for the Chapter 11 Cases [D.I. 54]. KCC is authorized and directed to, among other things, (i) perform noticing services and receive, maintain, record, and otherwise administer the proofs of claims filed in these Chapter 11 Cases, (ii) serve as the custodian of court records and the authorized repository for all proofs of claim filed in these Chapter 11 Cases, and (iii) maintain official claim registers for each of the Debtors (collectively, the "**Claims Register**").

7.      On August 24, 2023, the Court entered the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form, Manner, and Procedures of Notice Thereof, and (C) Granting Related Relief* [D.I. 319] (the "**Bar Date Order**"). Among other things, the Bar Date Order provided that:

> Any person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust, and governmental unit, whether or not such person or entity is or may be included in, or represented by, a purported class action, class suit, or similar

representative action filed, or that may be filed, against the Debtors (collectively, "**Representative Actions**") that holds, or seeks to assert, a claim against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date, no matter how remote, contingent or unliquidated, . . . must properly file a Proof of Claim on or before the applicable Bar Date.

D.I. 319 ¶ 7.

8.      On August 28, 2023, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, Against Debtors* [D.I. 335] (the "**Bar Date Notice**").  The Bar Date Notice explicitly stated that it would apply to all parties who might be part of a class or representative action:

Any person or entity that has or seeks to assert a claim against the Debtors which arose, or is deemed to have arisen, prior to the Petition Date, **MUST FILE A PROOF OF CLAIM ON OR BEFORE THE APPLICABLE BAR DATE** in order to be treated as a creditor for purposes of voting and distribution *even if such person or entity is, or may be included in, or represented by, a purported class action, class suit, or similar representative action filed, or that may be filed, against the Debtors.*

D.I. 335 at 3 (second emphasis added).  The Bar Date Notice further states:

**CONSEQUENCES OF FAILURE TO FILE PROOF OF CLAIM BY THE APPLICABLE BAR DATE[:]**
Any Claimant that is required to file a Proof of Claim in these Chapter 11 Cases pursuant to the Bankruptcy Code, the Bankruptcy Rules, or the Bar Date Order with respect to a particular claim against the Debtors, but fails to do so properly by the applicable Bar Date, shall, with respect to such claim, not be treated as a creditor of the Debtors and will not be permitted to vote upon, or receive distributions under, any chapter 11 plan in the Chapter 11 Cases, absent further order of the Court.

*Id.* at 7.

9.      The Bar Date Order and Bar Date Notice established October 10, 2023 at 5:00 p.m. (ET) as the general bar date to file proofs of claim in the Chapter 11 Cases for all persons or entities except governmental units (the "**Bar Date**").

10.      On August 31, 2023, KCC mailed the Bar Date Notice and proof of claim forms to all known holders of potential claims, including, among others, Ohio Lead Plaintiff and other

4

named plaintiffs in the Ohio Securities Litigation and all of the Debtors' current equity holders. *See* D.I. 412 (certificate of service); *see also* Lee Decl. ¶ 4.

11.    KCC published the Publication Notice (as defined in the Bar Date Order) in *The Wall Street Journal* on August 31, 2023 and in *Automobile Today* on September 11, 2023.  *See* D.I. 591 (affidavit of publication); *see also* Lee Decl. ¶ 8.

## II.    The Ohio Securities Litigation

12.    Between March 18 and May 18, 2021, six putative securities class actions were filed against Lordstown Motors Corp. and Lordstown EV Corporation (together, "**Lordstown**" or the "**Company**"), as well as certain of the Company's current and former directors and officers (the "**D&O Defendants**"), in the United States District Court for the Northern District of Ohio (the "**Ohio District Court**"), and consolidated in lead case captioned *In re Lordstown Motors Corp. Securities Litigation*, No. 21-cv-00616 (the "**Ohio Securities Litigation**").[2]

13.    On June 17, 2021, the Ohio District Court entered an order appointing George Troicky as lead plaintiff ("**Ohio Lead Plaintiff**") in the Ohio Securities Litigation.

14.    In the operative consolidated complaint (the "**Ohio Complaint**"), Ohio Lead Plaintiff asserts violations of Section 10(b), Section 14(a), Section 20(a), and Section 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against Lordstown and the D&O Defendants.  The crux of each claim is that the defendants allegedly misrepresented the production capabilities, timeline, and customer pre-orders for Lordstown's flagship electric vehicle, the

---

[2]    The six putative class actions consolidated in the Ohio Securities Litigation are:  *Rico v. Lordstown Motors Corp., et al.*, No. 4:21-cv-616 (D. Ohio Mar. 18, 2021), *Palumbo v. Lordstown Motors Corp., et al.*, No. 4:21-cv-00633 (N.D. Ohio Mar. 19, 2021), *Zuod v. Lordstown Motors Corp., et al.*, No. 4:21-cv-00720 (N.D. Ohio Apr. 2, 2021), *Brury v. Lordstown Motors Corp., et al.*, No. 4:21-cv-00760 (N.D. Ohio Apr. 8, 2021), *Romano v. Lordstown Motors Corp., et al.*, No. 4:21-cv-00994 (N.D. Ohio May 13, 2021), and *FNY Managed Accounts LLC v. Lordstown Motors Corp., et al.*, No. 4:21-cv-01021 (N.D. Ohio May 14, 2021).

AMERICAS 125527683

Endurance, in order to drive up the Company's stock price leading up to and after its SPAC transaction in October 2020 (the "**SPAC Merger**").[3]

15.    The putative class defined in the Ohio Complaint spans both pre- and post-SPAC Merger time periods and includes "all persons or entities" that (i) purchased Lordstown publicly trade warrants, publicly traded units, and publicly traded options from August 3, 2020 through July 2, 2021 and/or (ii) held LMC common stock as of September 21, 2020.  *See* Mot. ¶ 12.

16.    Prior to the Petition Date, Lordstown and the D&O Defendants moved to dismiss the Ohio Complaint.  No hearing was scheduled on that motion and the Ohio District Court did not reach a decision on the merits.  On August 28, 2023, due to the automatic stay upon the commencement of these Chapter 11 Cases, the Ohio District Court denied the motion without prejudice to refiling once the stay is lifted.

17.    No motion for class certification has been filed in the Ohio District Court.

### III.    The Purported Class Proofs of Claim

18.    On October 10, 2023, Ohio Lead Plaintiff filed a total of six proofs of claim against each of the Debtors asserting unliquidated amounts in connection with the Ohio Securities Litigation.[4]  Of those, three are (identical) proofs of claim filed against each Debtor in his individual capacity.  *See* Claims #1379, #1380, and #1394.

19.    Rather than file individualized claims on behalf of each member of the putative class, as the Bar Date Order required, Ohio Lead Plaintiff filed the remaining three (identical)

---

[3]    The Company—then known as DiamondPeak Holdings Corp.—was incorporated in Delaware as a special purpose acquisition company (SPAC) on November 13, 2018, completed its initial public offering in March 2019, and closed the SPAC Merger with the entity then known as Lordstown EV Corporation on October 23, 2020, and became Lordstown Motors Corp. ("**LMC**").

[4]    Two of Ohio Lead Plaintiff's proofs of claim (Claim #1394 and Claim #1434) were filed against Lordstown EV Sales LLC, which is not named as a defendant in the Ohio Complaint.  Those proofs of claim provide no facts or documentation to support any claims against Lordstown EV Sales LLC, a non-operating Debtor against which there is no plausible liability for the allegations in the Ohio Securities Litigation.

proofs of claim seeking an unliquidated amount he claims is "no less than $695,000,000.00" from each Debtor "for himself and on behalf of the putative class that he represents in the [Ohio] Securities Litigation." *See* Claims #1368, #1426, and #1434 (the "**Class Proofs of Claim**").

20.      To the Debtors' knowledge, Ohio Lead Plaintiff did not seek or obtain authorization from any putative class member to act as their "authorized agent" before filing the Class Proofs of Claim on their behalf.

21.      Prior to the Bar Date, Ohio Lead Plaintiff did not seek permission from this Court to represent the purported class with respect to any claims asserted against the Debtors, and did not do so at any time before filing this Motion on November 6, 2023.

### ARGUMENT

22.      The Motion "requests that this Court only grant relief with respect to . . . whether to apply Bankruptcy Rule 7023" to the Class Proofs of Claim, and not address whether the class certification requirements of Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**") have been satisfied. *See* Mot. ¶ 61.  The Debtors therefore address this objection only to why the Court should decline to apply Bankruptcy Rule 7023.

### I.      The Motion Was Not Timely Filed

23.      While Ohio Lead Plaintiff claims that there is "no dispute" that class proofs of claim are permitted in bankruptcy (*see* Mot. ¶ 56), "[t]he question of whether class proofs of claim are permitted under the bankruptcy code is an open one in this circuit."  June 29, 2021 Hr'g Tr. 19:3–5, *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. June 30, 2021) [D.I. 3074] ("*Mallinckrodt* Class Claims Ruling"), attached hereto as **Exhibit A**.  But even if there is no categorical bar to class claims in the Third Circuit, a creditor filing a class proof of claim must abide by the same rules and follow the procedure as any other creditor, as this Court ruled in the Bar Date Order.  Ohio Lead Plaintiff did not seek or obtain authority to file a proof of claim on

7

behalf of any other creditor, either from those individual or from this Court, prior to filing the Class Proofs of Claim.  It is too late for him to do so now.

24.     Because a proof of claim is functionally a demand for payment and a legal assertion that the claimant is authorized to accept such payment, the Bankruptcy Rules specify that only the creditor or the creditor's "authorized agent" may properly file a proof of claim.  Fed. R. Bankr. P. 3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent."); *In re Lau*, 684 F. App'x 235, 238 (3d Cir. 2017) (Rule 3001(b) "allows a creditor or creditor's agent to file a proof of claim and related documents.").  At the time that Ohio Lead Plaintiff's counsel executed the Class Proofs of Claim, counsel was not an "authorized agent" for any creditor other than Ohio Lead Plaintiff.  And, as a named plaintiff in an uncertified class action, Ohio Lead Plaintiff was not an "authorized agent" for any other claimant and lacked any authority to demand payment on behalf the purported class, accept funds on their behalf, or distribute any funds to them.[5]  *See Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.)*, 817 F.2d 625, 631 (10th Cir. 1987) ("[A] class representative cannot be considered the authorized agent of all of the creditors in a putative class."), *vacated on other grounds*, 839 F.2d 1383 (10th Cir. 1987); *In re Motors Liquidation Co.*, 591 B.R. 501, 524 (Bankr. S.D.N.Y. 2018) ("If a class is not certified, a representative may only assert a claim in an individual capacity and cannot bring a claim on behalf of any absent claimants." (citations omitted)); *In re Allegheny Int'l, Inc.*, 94 B.R. 877, 879–80 (Bankr. W.D. Pa. 1988).

---

[5]     Rule 23 sets forth certain prerequisites that the "agents" of a class—a class representative and or class counsel—must be authorized by way of class certification in order to assert, dismiss, settle, or accept payment of claims on behalf of others.  *See* Fed. R. Civ. P. 23(e), (g).  *See also Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592–93 (2013) (rejecting a precertification stipulation limiting the amount in controversy for purposes of subject matter jurisdiction, because the putative representative's stipulation "d[id] not speak for those he purport[ed] to represent . . . because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified"); *see also Smith v. Bayer Corp.,* 131 S. Ct. 2368, 2379–81 (2011) (holding that absent class members, as nonparties, are not bound by a denial of class certification).

AMERICAS 125527683

25.    Because "authority to act for a class pursuant to Rule 23 does not imply any authorization to file a class proof of claim for an individual in bankruptcy proceedings," *In re W.R. Grace & Co.*, 316 F. App'x 134, 136 (3d Cir. 2009) (citing *In re Standard Metals Corp.*, 817 F.2d at 631 n.10), Ohio Lead Plaintiff was required seek this Court's permission to file a class proof of claim. *In re Mallinckrodt plc*, 639 B.R. 837, 861 (Bankr. D. Del. 2022) ("[A] party seeking to file a class proof of claim must *first* seek permission from the court to do so." (emphasis added)). Bankruptcy courts in this Circuit and elsewhere have made clear that a putative class representative seeking to file a class claim must "(1) make a motion to extend the application of Rule 23 to some contested matter, (2) satisfy the requirements of Rule 23, and (3) show that the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy." *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007).

26.    The time to do so is *before* the bar date. *See Mallinckrodt* Class Claims Ruling, attached hereto as **Exhibit A** at 20:17–19 ("[T]he proper procedure would be for claimants to first seek permission to file class proofs of claim *before* filing those claims" (emphasis added)); *In re Nw. Airlines Corp.*, No. 05-17930, 2007 WL 2815917, at *4 (Bankr. S.D.N.Y. Sept. 26, 2007) (denying putative class representative's motion for class treatment because "the time for counsel to seek class certification" was prior to the bar date); *In re Associated Cmty. Servs., Inc.*, 520 B.R. 650, 658 (Bankr. E.D. Mich. 2014) ("The time to get class certification was *before* filing the proof of claim on behalf of the putative class." (emphasis in original)).  This rule removes the "surprise element" of late-filed Rule 7023 motions which would adversely affect the administration of the bankruptcy estate. *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS), 2016 WL 3564484, at *6 (Bankr. D. Del. June 22, 2016).  Applying Bankruptcy Rule 7023 at this juncture would, in effect, require this Court to ratify Ohio Lead Plaintiff's unauthorized actions taken four months

ago without this Court's permission.[6]  Granting such retroactive relief after the Bar Date has passed would be "unwarranted, unfair, and possibly violate the due process rights of other creditors" that filed their claims in compliance with the Bar Date Order.  *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 24 (Bankr. E.D. Pa. 1995); *see also In re W.R. Grace & Co.*, 366 B.R. 302, 307 (Bankr. D. Del. 2007) ("Allowing ratification of unauthorized claims beyond the bar date would leave the door open indefinitely for claims to disrupt the reorganization process."), *aff'd*, 316 F. App'x 134, 136 (3d Cir. 2009) (holding unauthorized class claims cannot be ratified after the bar date "because ratifications are deemed ineffective in the face of an intervening deadline." (citing *Fed. Elect. Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994))).

27.      This rule—that a lead plaintiff cannot simply file first and seek permission after—is wholly consistent with the purposes and effect of bar dates generally.  The bar date is a "drop-dead date" that prevents a creditor from asserting prepetition claims unless he can demonstrate excusable neglect.  *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996).  The Bankruptcy Rules (and the Bar Date Order) provide that "any creditor who fails to [file a proof of claim by the established bar date] shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."  *See* Fed. R. Civ. P. 3003(c)(2).  The bar date is among the most important elements of the administration of a successful reorganization.  *See In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 615 (Bankr. D. Del. 2006) ("In bankruptcy, a bar date notice is meant to function as a statute of limitations and effectively

---

[6]     Bankruptcy courts have concluded, even pre-*Acevedo* (*see infra* for discussion on *Acevedo*), that they lacked the power to "ratify" unauthorized filings, and have therefore denied post-bar bate certification. *See, e.g.*, *In re Associated Cmty. Servs.*, 520 B.R. at 655 ("The court may not stand in the shoes of the creditor-principals and ratify the putative agent's act of filing a class proof of claim." (citation omitted)); *In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 69–70 (Bankr. N.D. Tex. 2000) (denying a Rule 7023 motion on the basis that the representative of an uncertified class did not satisfy Rule 3001(b) and finding that "[t]here should be no retroactivity to it—if a class proof of claim is proper, it should be from the moment of its filing; the class representative's authorized agent status under Rule 3001(b) should not be established after the fact, it should exist and persist from the instant the claim is filed.").

AMERICAS 125527683

exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan." (citations and quotation marks omitted)).  For a bar date to serve its purpose in providing finality and clarity in service of a successful reorganization, it must be "strictly observed." *In re Energy Future Holdings Corp.*, 619 B.R. 99, 108 (Bankr. D. Del. 2020); *see also In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 53 (Bankr. D. Del. 2012) ("[S]trict enforcement of the bankruptcy bar date is no more unfair than application of a statute of limitations to foreclose a tort claim." (citation omitted)).

28.    There is no reason why Ohio Lead Plaintiff, represented by sophisticated counsel, could not have filed his Motion (as required) before the Bar Date.  It is undisputed that Ohio Lead Plaintiff received the Bar Date Notice mailed to his counsel on August 31, 2023 and was fully appraised of the Bar Date and claims filing procedures—as well as the consequences for failing to adhere to them.  *See supra* ¶¶ 6–10; *see also* Mot. ¶¶ 20–24 (quoting extensively from the Bar Date Order and Bar Date Notice).  Ohio Lead Plaintiff was aware of the Debtors' Bar Date Motion filed on August 4, 2023.  *See* Mot. ¶ 18 (citing D.I. 228).  Ohio Lead Plaintiff did not object to the Bar Date Motion and did not file the present Motion at any point in the three months before the Bar Date.  Instead, he waited almost a month *after* the Bar Date had passed—and after he had already filed the unauthorized Class Proofs of Claim—to file any motion with this Court.

29.    It is true that some courts, including this Court, have certified putative classes after the applicable bar date.  *See, e.g.*, *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002) (Walrath, J.); *In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988).  These courts reasoned that certification could be granted *nunc pro tunc* and thereby effectively ratify a previously improper and unauthorized class proof of claim.  *See, e.g.*, *In re Kaiser Grp. Int'l*, 278 B.R. at 63 (agreeing with the Seventh Circuit's reasoning that putative agents "keep the class alive"

11

pending a decision on class certification and "become 'authorized'" upon certification (citing *In re Am. Reserve*, 840 F.2d at 493)); *accord In re Motors Liquidation Co.*, 591 B.R. at 524, 527 (Bankr. S.D.N.Y. 2018) (considering whether a representative of an uncertified class is authorized to file a class proof of claim, noting that a court's granting of this authorization would require *nunc pro tunc* relief, and ultimately declining to approve a proposed class settlement); *In re Musicland Holding Corp.*, 362 B.R. at 652 (finding that, "[b]y certifying the class, a court effectively ratifies the agent's authority *nunc pro tunc*" and denying a motion for class certification filed after the bar date (citing *In re Am. Reserve*, 840 F.2d at 493)).

30.     This reasoning is no longer viable following the Supreme Court's decision in *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S. Ct. 696 (2020) (per curiam), which limited the power of federal courts, including bankruptcy courts, to grant *nunc pro tunc* relief.  Bankruptcy courts post-*Acevedo*, including in the Third Circuit, have recognized that *Acevedo* does not permit a court to grant retroactive *nunc pro tunc* relief to create something that did not previously exist.  *See, e.g.*, *In re Parker*, 624 B.R. 222, 236 (Bankr. W.D. Pa. 2021) (acknowledging that *Acevedo* allows federal courts to issue *nunc pro tunc* orders only to "reflect the reality of what has already occurred"); *In re Zvoch,* 618 B.R. 734, 741 (Bankr. W.D. Pa. 2020) (denying debtor's motion to retroactively approve post-petition financing where court's local rules require *prior* approval because doing so "would not reflect reality, but create a new one where the [d]ebtor complied with all his obligations"); *In re Mille*r, 620 B.R. 637, 640 (Bankr. E.D. Cal. 2020) ("*Acevedo* effectively ends federal courts use of *nunc pro tunc* orders to the extent such orders rewrite history to retroactively make the record reflect something that never occurred in the first instance."); *In re Telles*, No. 8-20-70325, 2020 WL 2121254, at *4–5 (Bankr. E.D.N.Y. Apr.

30, 2020) (denying request to grant *nunc pro tunc* relief where intervening bankruptcy case divested state court of jurisdiction to conduct foreclosure sale).[7]

31.    Here, at the time he filed the Class Proofs of Claim, Ohio Lead Plaintiff did not have authority to file a proof of claim on behalf of anyone other than himself and did not have the Court's permission to file a class claim.  Because *nunc pro tunc* relief would alter the reality that existed at all times before the Bar Date, it is too late for Ohio Lead Plaintiff to ask this Court to ratify his unauthorized proofs of claim, and the Motion should be denied for that reason alone.

**II.    The Class Proofs of Claim Do Not Meet the Discretionary Standard for Application of Bankruptcy Rule 7023 to the Claims Allowance Process**

32.    Even if the Court considers the Motion timely filed, it should be denied. The parties agree that bankruptcy courts exercising their discretion to decide whether to allow class claims must first decide "whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process," and then the court must then determine whether the requirements of Rule 23 have been satisfied, such that a class proof of claim may properly be filed. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) ("*Chaparral I*"), *aff'd*, No. BR 16-11144 (LSS), 2019 WL 4643849 (D. Del. Sept. 24, 2019) ("*Chaparral II*"); *In re Pac. Sunwear of Cal., Inc.*, 2016 WL 3564484, at *5; *see also* Mot. ¶¶ 60-61 (citing same).

---

[7]    By contrast, bankruptcy courts have found that *Acevedo* is not implicated where the court has jurisdiction to interpret its own prior orders or effectuate the reality as it existed prior to the motion or during the pendency of that motion before the court is able to grant relief.  *See, e.g.*, *In re SS Body Armor I, Inc.*, No. 10-11255, 2021 WL 2315177, at *3 & n.31 (Bankr. D. Del. June 7, 2021) (finding *Acevedo* did not apply to prevent extending term of post-confirmation trust because a plan supplement was permitted under the confirmed plan and courts "plainly ha[ve] jurisdiction to interpret and enforce its own prior orders" (citation omitted)); *In re Mallinckrodt plc*, No. 20-12522, 2022 WL 906451, at *8 (D. Del. Mar. 28, 2022) (holding *Acevedo* does not preclude retroactive retention or compensation of professionals whose work commenced before the motion was brought); Dec. 28, 2020 Hr'g Tr. 61:11–21, *In re Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. Dec. 28, 2020) [D.I. 2306] (distinguishing *Acevedo* because the Court "has jurisdiction over the retention of professionals" and "because of the notice requirements the Court is unable to enter an order on no notice and will allow any relief to be *nunc pro tunc* to the filing of the retention application"), attached hereto as **Exhibit C**.

AMERICAS 125527683

33.     With respect to the cost-benefit analysis, courts have repeatedly emphasized that the class proof of claim device should be used "most sparingly." *In re Sacred Heart Hosp.*, 177 B.R. at 22; *see also* Mar. 3, 2016 Hr'g Tr. 7:3–4, *In re Fresh & Easy, LLC*, No. 15-12220 (BLS) (Bankr. D. Del. Mar. 3, 2016) [D.I. 676] ("*Fresh & Easy* Hr'g Tr.") ("Case law teaches that class claims should be sparingly used in bankruptcy."), attached hereto as **Exhibit B**.

34.     In contrast to earlier decisions rationalizing class treatment as a means to promote ease of administration for absent creditors with small claims,[8] there is a growing consensus among bankruptcy courts that class certification for the purpose of filing a class proof of claim is disfavored because the traditional advantages and administrative burdens of class actions either are absent or completely flipped in the bankruptcy context. *See, e.g.*, *Chaparral II*, 2019 WL 4643849, at *5; *In re Motors Liquidation*, 447 B.R. at 163 ("[T]he inherent simplicity of the bankruptcy process tends to make class action treatment *not* superior . . . because an individual claimant would need only to fill out and return a proof of claim form." (emphasis in original)); *In re Bally Total Fitness*, 402 B.R. 616, 621–22 (Bankr. S.D.N.Y. 2009) ("Though class treatment may be beneficial with other civil actions in consolidating the adjudication of common issues, this advantage disappears in the context of a bankruptcy."); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) ("[The] superiority of the class action vanishes when the other available method is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." (citation omitted)); *Fresh & Easy* Hr'g Tr. at 7:4–9 ("[M]any of the policy considerations that support class actions are absent in bankruptcy proceedings because the costly barriers to traditional civil litigation and prosecution of

---

[8]     Those decisions, including two from this Court, hold the application of class certification after the bar date is proper when a named plaintiff asserts relatively small claims on behalf of other potential creditors which might not otherwise be prosecuted. *See, e.g.*, *In re Kaiser Grp. Int'l*, 278 B.R. at 63, 67; *In re United Cos. Fin. Corp.*, 276 B.R. 368, 376–77 (Bankr. D. Del. 2002).

AMERICAS 125527683

claims are significantly reduced in bankruptcy by the claims allowance process."), attached hereto as **Exhibit B**.

35.     At the second step of the analysis, courts follow a three-factor framework (the "*Musicland* **factors**") to help guide their determination of whether Bankruptcy Rule 7023 should be extended to the claims administration process.  *Chaparral I*, 571 B.R. at 646.  Those factors are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate.  *Id.* (citing *In re Musicland Holding Corp.*, 362 B.R. at 654).  "No one factor is dispositive; a factor may take on more or less importance in any given case." *Id.*  The proponent of class treatment has the burden to establish each *Musicland* factor.  *See, e.g.*, *Mallinckrodt* Class Claims Ruling at 20:15–17 ("[T]he burden rests on the claimants to meet the requirements under *Musicland* if their claims are going to stand.").

### A.     No Class Has Been Certified in the Ohio Securities Litigation

36.     The first *Musicland* factor weighs against applying Bankruptcy Rule 7023 because the purported class at issue here has not been certified.  While this factor alone is not dispositive, courts have found that classes certified prepetition are the "best candidates" for a class claim.  *In re Sacred Heart Hosp.*, 177 B.R. at 22; *see also In re Energy Future Holdings Corp.*, 558 B.R. at 687 (affirming rejection of class proof of claim where "[t]his is not a case where there is a previously certified class from pending litigation outside the Bankruptcy Court proceedings that is coming to the Court to file a proof of claim on behalf of the class" but instead "the purpose of the class proof of claim would be to negate the bar date").

37.     The rationale for permitting class claims to be filed for a class certified prepetition is that members of a certified class have a reasonable basis to rely on the court-appointed class representative and class counsel to act on their behalf, including with respect to filing proofs of

15

claim in bankruptcy, and thus it would be unnecessary for them to file individual proofs of claim. *See In re Musicland Holding Corp.*, 362 B.R. at 656.  This reasoning is absent here.  As putative members of an uncertified class, potential claimants have no reasonable basis to rely on Ohio Lead Plaintiff to protect their interests with respect to the claims filing process.  *See id.* (explaining that putative class members "[do] not have a reasonable expectation that a class claim would be filed that would protect their rights, or that they did not have to comply with the bar date").

38.     The Motion barely addresses this factor.  Instead, Ohio Lead Plaintiff resorts to distracting commentary regarding the Debtors' knowledge of the Ohio Securities Litigation prior to the Petition Date.  *See* Mot ¶ 77.  But the fact that the Debtors were aware of that action or the alleged class is not relevant to this analysis; the focus here is whether unnamed members of the purported class were aware of the Ohio Securities Litigation or their place in it.  Absent certification, it is far less likely that putative class members would have any knowledge of potential claims against the Debtors, let alone reasonably expect Ohio Lead Plaintiff to represent their interests with respect to such claims.  *In re Musicland Holding Corp.*, 362 B.R. at 656.

39.     Nor do Ohio Lead Plaintiff's out-of-context allusions to the Debtors' contemplated treatment of "classes" of claims under the Plan weigh in favor of applying Bankruptcy Rule 7023. *See* Mot ¶ 36.  All bankruptcy plans divide creditors and interest holders into different classes for plan purposes.  That has nothing to do with purported class proofs of claim and certainly does not make this the rare case where application of Rule 23 is appropriate.

**B.     Putative Class Members Received Adequate Notice of the Bar Date**

40.     The second *Musicland* factor weighs in favor of applying Bankruptcy Rule 7023 where "not all putative class members were served with notice of the Bar Date." *Chaparral I*, 571 B.R. at 646.  This is not the case here.  Consistent with the Bar Date Order, the Debtors provided putative class members with actual or constructive notice of the Bar Date and claims filing

16

procedures.  In such circumstances, class treatment is appropriately denied.  *See, e.g.*, *In re Sacred Heart Hosp.*, 177 B.R. at 22 ("[I]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable.").

41.     Due process requires that all "known" creditors of a debtor receive actual notice of the bar date.  The Third Circuit has defined a "known" creditor as one whose identity is either known or "reasonably ascertainable" by the debtor—i.e., one that "can be identified through 'reasonably diligent efforts.'"  *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) *("Chemetron I")*.  The Third Circuit has held that this inquiry "focuses on the debtor's own books and records.  Efforts beyond a careful examination of these documents are generally not required." *Id.* at 47.  The Debtors provided actual notice to all potential members of the putative class they could identify in their books and records by mailing a notice package via first class mail to their counsel of record on August 31, 2023.  *See* D.I. 412; *see also* Lee Decl. ¶ 4.  This includes Ohio Lead Plaintiff and other named plaintiffs in the Ohio Securities Litigation, as well as approximately 110,000 current holders Lordstown equity securities. Lee Decl. ¶¶ 4–5.  This massive undertaking by the Debtors more than satisfies due process.

42.     Putative class members that are not reasonably ascertainable from the Debtors' own books and records, such as former holders of Lordstown stock, warrants, units, or options, are the textbook definition of "unknown" creditors to whom the Debtors are not required to provide actual notice to satisfy their due process burden.  *See Chemetron I*, 72 F.3d at 346; *see also Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652, 660 (E.D. Va. 2010) (unnamed class members are unknown creditors where class is broad and would have required the debtors to serve all employees or spend resources determining which employees would be covered

by the class).  With respect to these "unknown" creditors, the Debtors need only have provided constructive notice, which the Debtors satisfied by publishing notice of the Bar Date and claims filing procedures in *The Wall Street Journal* and *Automobile Today*.  *See* D.I. 344; Lee Decl. ¶ 8.

43.    Looking to notice requirements outside the context of claims administration, Ohio Lead Plaintiff argues that the Debtors were required to provide actual notice to all potential class members because the putative class is defined in the Ohio Complaint.  *See* Mot. ¶ 77.  Ohio Lead Plaintiff's position that individual notice is required for all "identifiable class members" relies on case law applying Rule 23's requirements for noticing members of a certified class.[9]  Courts have rejected similar attempts to "apply the subjective notice standards under class action law in evaluating the adequacy of a bar date notice in a bankruptcy case" as inappropriate.  *See, e.g.*, *In re Chemtura Corp.*, No. 09-11233, 2016 WL 11651714, at *14 (Bankr. S.D.N.Y. Nov. 23, 2016).  In the bankruptcy context, whether or not a plaintiff has proposed a definition for a putative class has no bearing on whether potential claimants are known or unknown creditors for purposes of providing notice of the bar date.  *See In re New Century TRS Holdings, Inc.*, No. 07-10416, 2014 WL 842637, at *5–6 (Bankr. D. Del. Mar. 4, 2014) (rejecting claimant's argument that debtors should have known that all borrowers were known claimants based on allegations in pending litigation by a subset of borrowers, and holding that publication notice satisfies due process requirements for such unknown creditors).

44.    If actual notice were required here, the time and expense of identifying and serving all potential class members that could not be ascertained through the type of reasonably diligent search required by the Third Circuit in bankruptcy cases would be incredibly burdensome.  The

---

[9]    *See* Mot. ¶¶ 75–76 (citing *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 123–24 (3d Cir. 2012); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

process of going beyond the Debtors' own books and records and seeking information from third parties, such as securities brokers and other nominees with instructions to search their records for former equity holders of which they may be aware that fall within Ohio Lead Plaintiff's proposed class definition would be prohibitively expensive and time consuming. *See* Lee Decl. ¶¶ 6–7. Indeed, this would have taken months, cost the estate more than half a million dollars, and provided no guarantee that actual notice would even be served prior to the Bar Date. *Id.* ¶ 7.[10]  This is exactly why the Third Circuit requires only "reasonable diligence" focused on the Debtors' own books and records. *See Chemetron I*, 72 F.3d at 346 ("Reasonable diligence does not require 'impracticable and extended searches . . . in the name of due process.'" (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950))).  The law in this circuit is clear that a debtor's duty to identify all "known" creditors does not extend beyond a reasonably diligent review of its own books and records, which Ohio Lead Plaintiff does not dispute. *See* Mot. ¶¶ 77–86.

45.     Even if it were not cost prohibitive and unrealistic to identify every stock purchaser and former equity holder fitting one or more of the class criteria during the relevant time periods, the Debtors would have no way to ascertain, from any available records, which of those individuals or entities may have claims against the estates. *See, e.g.*, *In re New Century TRS Holdings, Inc.*, 450 B.R. at 512 (holding that the availability of a borrower's name and address in the debtors' loan files may reflect that the borrower was a *customer* of the debtors but, without more, does not

---

[10]     Ohio Lead Plaintiff argues that the Debtors should have employed the "well-established procedures commonly used by claims administrators in securities class action cases" to identify all potential class members. Mot. ¶ 1. But that process—which is consistent with that described in paragraphs 6–7 of the Lee Declaration—is far from what due process requires in the bankruptcy context. *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-cv-982, 2023 WL 2184496, at *3 (E.D.N.Y. Feb. 16, 2023) (describing procedure used by claims administrator to identify members of securities class who are not ascertainable from the company's own books and records). Moreover, the class notice procedures Ohio Lead Plaintiff advocates are only employed upon certification of the class, including for the purpose of settlement. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 327 (3d Cir. 1998) (discussing class notice under Rules 23(c)(2) and 23(e)).  Prior to class certification, potential members of a putative securities class action are entitled to publication notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

mean that the borrower was a *creditor* of the debtors); *Hebell v. NVR, Inc.*, No. No. 97 C 4000, 1997 WL 417363, at *2 (N.D. Ill. July 21, 1997) (holding that homeowner-mortgagors were not known creditors, even though their identities were "reasonably ascertainable" from the debtors' loan service records, when those records did not indicate that the mortgagors were potential class members).

46.    Ohio Lead Plaintiff criticizes the Debtors' notice program by alleging that members of the putative class may not themselves have known that they have potential claims against the Debtors.  Mot. ¶ 24–25.  But that allegation supports the reasonableness of the Debtors noticing efforts; creditors who do not themselves know that they have claims are "unknown creditors" and the Debtors cannot be faulted for not knowing who such unknown creditors are, let alone not having provided actual notice to them.  *See e.g.*, *In re Nortel Networks, Inc.*, 531 B.R. 53, 64 (Bankr. D. Del. 2015) (finding potential claimants were "unknown creditors" where "the [claimants] themselves did not 'know' or consider themselves to be creditors of the . . . Debtors"); *In re Tronox Inc.*, 626 B.R. 688, 721 (Bankr. S.D.N.Y. 2021) (finding that claimants who were not aware that they held claims against the debtor are unknown creditors to which due process requires the debtor to provide only constructive notice).  Having satisfied due process by providing constructive notice to such "unknown" creditors, the Debtors were not obligated to spend substantial and unnecessary estate resources to provide actual notice, which ultimately would prejudice other creditors.

47.    Ohio Lead Plaintiff further criticizes the Bar Date Notice and the Publication Notice on the ground that "[t]here is no mention of the [Ohio] Securities Litigation" in either one.  *See* Mot. ¶ 24.  The fact that putative class members may be unaware of that action or the nature of the claims alleged also does not entitle them to personalized notice of those claims.  *See, e.g.*,

*SuperMedia LLC v. Yellow Pages Photos, Inc. (In re SuperMedia LLC)*, 540 B.R. 85, 92–94 (Bankr. D. Del. 2015) (noting that a debtor's bar date notice does not need to inform potential claimants of the nature of their claims, but is adequate if it provides general information regarding the existence of the bankruptcy case and consequences of not filing a proof of claim); *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 158 (5th Cir. 2014) ("[N]either the Bankruptcy Code nor Rules require bar date notices to apprise creditors of potential claims."); *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 WL 2208014, at *8 (Bankr. E.D. Va. May 28, 2010) ("Neither due process nor the Bankruptcy Rules require the Debtors to specifically inform parties of the existence or nature of their potential claims.  When it comes to sufficient notice of the Bar Date to satisfy due process, the Debtors need only inform potential claimants of the 'time allowed for filing claims,' not what claims those claimants might be able to assert." (citing Fed. R. Bankr. P. 2002(f))), *aff'd*, 439 B.R. 652 (E.D. Va. 2010).

48.     If Ohio Lead Plaintiff found the contents of the notice to be insufficient, he failed to raise any objection before the Court entered the Bar Date Order approving the final language.  And, even if it were appropriate to deviate from the Bar Date Order, Ohio Lead Plaintiff's suggestion that notice was inadequate because it failed to specify particular actions or claims against the Debtors has no legal or practical justification.  The purpose of the notice requirement is to advise individuals of the Chapter 11 Cases and the claims filing deadlines "so that they can take steps to safeguard their interests," but "not necessarily to advise them of the nature of those interests."  *See In re Penn Cent. Transp. Co.*, 771 F.2d 762, 768 (3d Cir. 1985) (citations omitted).[11]

---

[11]   Case law cited in the 7023 Motion, while distinguishable on other grounds, is consistent with this principle.  *See, e.g.*, *In re Amdura Corp.*, 170 B.R. 445, 452–53 (D. Colo. 1994) (finding bar date notice met due process standards despite not mentioning the pending class action because it the debtor was not required to apprise claimants of the nature of their claims). *Amdura* does not, however, support Ohio Lead Plaintiff's argument that publication notice is insufficient to notify unknown members of a putative class because that case involved the adequacy of publication notice to former shareholders in a certified class action that the court determined were "known" creditors. *See* Mot. ¶ 85.  The court in *Amdura* then remanded for the bankruptcy court to decide whether to apply

21

The court in *Chemtura* rejected a similar argument, holding that bar date notice need not provide claimants with any "understanding of her or his injury or claim"; instead, notice is sufficient where, as here, it includes "the Bankruptcy Code's definition of 'claim' and alerted unknown creditors that '[a]cts or omissions that occurred before [the petition date] may give rise to Claims that are subject to the Bar Date.'"  *See In re Chemtura Corp.*, 2016 WL 11651714, at *14–15.

49.    The putative class members, who consist of both known and unknown creditors, received notice of the Chapter 11 Cases and the Bar Date in compliance with due process.  *See, e.g.*, *In re Nw. Airlines Corp.*, 2007 WL 2815917, at *4.  This factor thus weighs against applying Bankruptcy Rule 7023.

### C.    Class Certification Will Adversely Affect the Administration of the Estate

50.    Lastly, in deciding whether to exercise its discretion to permit the filing of a class proof of claim, courts routinely recognize that class certification litigation adversely affects the administration of the estate by adding complexity to the bankruptcy process, diverting valuable resources from managing and effectuating the reorganization, and causing disruption and delay in the distribution to creditors.  *See Fresh & Easy* Hr'g Tr. at 9:8–10:19 (disallowing class proof of claim where granting class certification "would adversely impact the administration of the case by adding unnecessary layers of procedural and factual complexity," "disrupt the progress of the case by inevitably delaying potential distributions to Creditors," and be a "substantial" cost to the estate as "[d]ebtor would have to both defend against the class action, and frankly likely pay for class claimants counsel fees") attached hereto as **Exhibit B**; *In re Motors Liquidation Co.*, 447 B.R. at

---

Bankruptcy Rule 7023 to allow a class claim or not.  *See In re Sacred Heart Hosp.*, 177 B.R. at 21–23 (distinguishing *Amdura* and holding that in cases where a class has not been certified prepetition in a nonbankruptcy forum, the bankruptcy court must "rigorously examine" whether the class representative can meet the requirements of Rule 23).

AMERICAS 125527683

163, 165 (disallowing class proof of claim after finding that "entertaining these claims on a class action basis would significantly complicate the [d]ebtors' chapter 11 case, making this huge case even more difficult to manage—with the likelihood, if not certainty, that consideration of these claims on a class basis would materially delay the distributions to the [d]ebtors' thousands of other creditors" and "materially increase[e] the administrative costs of this already very expensive case.").

51.     These concerns are all present here.  The Chapter 11 Cases already have the Creditors' Committee and the Equity Committee representing the interests of the creditors and interest holders.  Certifying a class including countless unknown claimants for the claims process would only add more complexity and expense to administration of the Chapter 11 Cases.  Having waited until well past the Bar Date to bring the Motion, proceeding with Ohio Lead Plaintiff's claims on a class action basis now could materially delay plan confirmation and distributions to the Debtors' other creditors.  If Ohio Lead Plaintiff is permitted to postpone the effect of the Bar Date, delaying finality of the claims pool and the calculation of creditors' distributions, "the institutional means of ensuring sound administration of the bankruptcy estate would be undermined." *First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991); *see also In re Tronox Inc.*, 626 B.R. at 702 ("As a practical matter, a bankruptcy case cannot be administered unless a deadline is set for the filing of creditor claim . . . creditors' shares of distributions cannot be calculated without knowing the universe of claims that are entitled to participate in those distributions . . . [and] all creditors would have to wait (and no distributions could be calculated or made) until it was no longer possible that any additional creditor claims could be filed."); *In re Sacred Heart Hosp.*, 177 B.R. at 23 (denying post-bar date motion for class treatment and explaining that a late-filed motion "is clearly disruptive to the formulation of a plan

AMERICAS 125527683

to frustrate a debtor's logical assumptions regarding the amounts of total claims" because "the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors").

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should enter an order denying the Motion and striking the Class Proofs of Claim.

*[Remainder of this page intentionally left blank]*

Dated: November 14, 2023

Respectfully submitted,


/s/ *Morgan L. Patterson*
**WOMBLE BOND DICKINSON (US) LLP**
Donald J. Detweiler (DE Bar No. 3087)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
don.detweiler@wbd-us.com
morgan.patterson@wbd-us.com

*Proposed Co-Counsel to Debtors and
Debtors-in-Possession*

–and–

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Co-Counsel to Debtors and
Debtors-in-Possession*