# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | Case No. 20-12522 (JTD) |
| MALLINCKRODT PLC, *et al.*, | . | |
| | . | (Jointly Administered) |
| | . | |
| | . | |
| | . | 824 North Market Street |
| Debtors. | . | Wilmington, Delaware 19801 |
| | . | |
| | . | Tuesday, June 29, 2021 |
| . . . . . . . . . . . . . . . | . | 3:01 p.m. |

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Michael Merchant, Esquire
RICHARDS LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801

- and -

Andrew Sorkin, Esquire
Anupama Yerramalli, Esquire
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020

Audio Operator: Jason Spencer

Transcription Service: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
Telephone: (302) 654-8080
E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

process was less than ideal, Your Honor, but the committee took seriously the debtors' repeated concerns regarding the importance of expeditiously closing this sale.

As the debtors noted, a number of the contacted parties showed interest in VTS-270 and one company submitted a non-binding term sheet with improved terms for sure. We had -- as a committee had strong hopes that this potential bidder would have submitted a bid by June 22nd, but a bid didn't surface, Your Honor. And the company's request for four additional weeks of diligence without a request that a bid would ever be forthcoming was simply unpalatable to the UCC and its professionals, who clearly learned through this process that, A, NPC is a devastating disease; that in accordance with the opinion of a large group of physicians led by Dr. Liz Berry-Kravis, NPC patients and their families believe that this drug helps; and our belief that the greatest likelihood of NPC patients will have uninterrupted access to this drug will be through the existing enhanced-access program that the buyers will continue to fund and VTS ultimately receiving FDA approval by this buyer.

Your Honor, two other points, and I'll go over them very quickly.

On the issue of the auction, the debtors' reply would lead this Court to believe that an auction was a foregone conclusion if another qualified bidder had emerged.

Prior to filing the objection, the committee secured -- scoured the sale motion and the APA, and there was simply no indication that the debtor intended to hold an auction if competing bids surfaced. To be sure, Your Honor, no bidding procedures were ever filed and the sale motion and APA vaguely described what would happen next if a qualified bidder ultimately did surface. The committee was pleased that the debtor listened to its concerns, hired a court reporter, scheduled a Zoom auction in the event a bid surfaced.

Finally, Your Honor, the buyer. The committee was concerned about the buyer's ability to bring VTS-270 to market given the contingent value in this deal is dependent on the buyer achieving FDA approval and, as I just noted, a group of NPC patients who are dependent on this drug through Expanded Access Programs. From a review of publicly available information, Your Honor, the buyer by all accounts was a startup without a prior track record of bringing rare diseases through the FDA approval process.

After the committee's objection was filed, however, its advisers conducted additional diligence regarding the buyer, including a conference with the buyer's full leadership team. We learned that Mandos, through its parent Public Benefit Corporation Baird (ph), has amassed a leadership team with significant experience backed by

adequate capital and a well-known private equity firm. The buyer has investigated and planned for the future of this drug in a reasonable manner, maximizing the likelihood of uninterrupted patient access to the drug through the Expanded Access Program, and hopefully by bringing this drug to market, realizing the immense contingent value in the APA.

So, in closing, Your Honor, the committee has come a long way since the debtor initially filed its sale motion on May 19th. The committee is not pressing its objection today and is asking the Court to enter the sale order.

If Your Honor has any questions, I'll be happy to respond; if not, I will turn the podium back to the debtors.

THE COURT: Thank you, Mr. Birney. No questions.

Does anyone else wish to be heard?

(No verbal response)

THE COURT: All right. Well, I'm satisfied based on the record presented that the sale is a proper exercise of the debtors' business judgment, that the sale is proposed in good faith and that it is necessary to have the sale go forward as quickly as possible. So I will enter the order. And I also approve the assumption and assignment of the related contracts as appropriate as well. So I will enter the order.

Is there anything else, Ms. Yerramalli?

MS. YERRAMALLI: No, that's it, Your Honor. I

believe the UCC has a motion to seal, which was related to their objection, that's also on the agenda.

MR. BIRNEY: Your Honor, Patrick Birney, Robinson & Cole, on behalf of the UCC. There were no objections filed to the motion to seal and just so the record is clear, ultimately, after conferring with the debtors, we filed an un-redacted motion, but a redacted declaration. So, because the declaration is redacted, we don't believe the motion is moot and we ask that the order be entered.

THE COURT: All right. Does anyone wish to be heard on the sealing motion?

(No verbal response)

THE COURT: All right. I will enter that order as well. Thank you, Mr. Birney. All right.

MS. YERRAMALLI: Thank you, Your Honor, and thank you for the flexibility of the Court for allowing for this hearing today so that we could have the sale approved expeditiously.

THE COURT: Certainly. All right, anything else for today other than the ruling on the estimation -- or I previously had an estimation motion, this is on filing of the class proofs of claim -- any other things on the agenda, Mr. Merchant?

MR. MERCHANT: Nothing else on the agenda, Your Honor.

THE COURT: All right. So we'll get right to the ruling on the class proofs of claim.

The question of whether class proofs of claim are permitted under the bankruptcy code is an open one in this circuit. While the Third Circuit expressed in a non-precedential ruling that, quote, "Authority to act for a class under Rule 23 does not imply any authorization to file a class proof of claim for an individual in a bankruptcy proceeding," close quote, there's no binding authority either way. See W.R. Grace & Company, 316 F.App'x 134 (3d Cir. 2009).

The judges in this court who have addressed the question of class proofs of claim have generally applied what are referred to as the Musicland factors in determining whether or not to use their discretion in allowing class proofs of claim. And the Musicland factors come out of a decision by the Southern District of New York, In re Musicland, 362 B.R. 644, 654-55.

Those factors are; one, whether the class was certified prior to the filing of the bankruptcy; two, whether the members of the putative class received notice of the bar date; and, three, whether class certification will adversely affect the administration of the estate.

I do not need to reach a determination of whether the code permits the filing of class proofs of claim because,

even if I determined that it did, I conclude that the Musicland factors would still apply and, under those factors, class proofs of claim are not warranted in this case.

Before addressing the Musicland factors, I must first address the ad hoc group's argument that the class proofs of claim they filed are subject to prima facie validity and, therefore, the burden of proof is on the debtors to show class treatment is unwarranted. The claimants' argument is without merit.

As many courts have concluded, the burden of establishing class certification is on the party seeking to assert class claims. See, for example, In re First Interregional Equity Corp., 227 B.R. 358 at 366, (Bankr. D.N.J. 1998)

Therefore, the burden rests on the claimants to meet the requirements under Musicland if their claims are going to stand. As debtor points out, the proper procedure would be for claimants to first seek permission to file class proofs of claim before filing those claims. And I will note that I did see the ad hoc committee -- the ad hoc group, rather, filed a motion to -- for permission to file class proofs of claim after the hearing that we had last week.

There is some dispute over whether the debtors agreed to a procedure whereby the ad hoc group of claimants would file their class claims first and then have a

determination made as to their validity. I do not deem to determine which party is correct because either way the burden still rests on the ad hoc group to establish that class claims are appropriate.

The City of Marietta, which filed a separate class proof of claim, argues that the debtors waived their right to contest its filing of a class proof of claim, citing an email exchange between counsel. First, if Marietta thought this email exchange was a substantive waiver of the debtors' rights, they should have had it memorialized in a stipulation and filed it with the Court.

Nevertheless, the email was clearly intended to be a waiver of the debtors' right to argue delay in the filing of a motion under Rule 7023 as a basis to deny such a motion; that the debtors have not done. There's no indication in the email that debtors were waiving the right to challenge the propriety of class proofs of claim; therefore, there was no waiver of the right to challenge the filing of the class claims by Marietta.

I'll now turn to the Musicland factors. The first factor to consider is whether a class was certified prepetition; it is undisputed that it was not.

The ad hoc group makes two arguments why, even though no class was certified, this factor should not weigh against them. First, they assert that putative class members

reasonably relied upon the putative class members filing proofs of claim on their behalf. The ad hoc group presented no evidence to support this assertion.

Although two parties claiming to have claims against the debtors testified, Mr. Kenisch (ph) on behalf of the Steelworkers Local 286 and Ms. Spencer on behalf of Dakota County, Nebraska, neither of them testified that they did not file proofs of claim because they thought they were parties to an uncertified class action. Rather, both witnesses testified that they filed their own timely proofs of claim after being informed of the deadline to file those claims by someone other than the debtor. I will discuss this in more detail later in my ruling. Therefore, the ad hoc group's argument is unsubstantiated.

Second, the ad hoc group argues that debtors' counsel interfered with their ability to seek class certification prepetition. The ad hoc group argument is based on a representation from its counsel that they were just days away from filing their motion seeking class certification when the debtors filed for bankruptcy and that it was the debtors who delayed the time for the filing of motions for class certification with the court in Illinois. This argument is specious.

First, the record from the Illinois court reflects that it was the court's decision to delay the time for filing

for class certification unprompted by the debtors; second, even if the deadline for filing a motion was delayed, there was no reason why the ad hoc group could not have filed before the last day to make a filing; and, finally, I can hardly conclude from this argument that the debtors' counsel timed the filing of a massive bankruptcy case with multiple different creditor constituencies solely to avoid certification of a class in anticipation of objecting to the filing of class claims in these cases. This argument, therefore, is also unavailing.

The City of Marietta cites to several cases where courts permitted class proofs of claim even though no class was certified prepetition. I find these cases either distinguishable or unpersuasive in light of the facts and circumstances of this case. Similarly, Marietta's argument that it did not have sufficient time to seek class certification is of no consequence. As the debtors point out, this is precisely why class claims would not be appropriate because there was no time for any putative class member to develop a reliance on the putative class to act on its behalf.

Therefore, I conclude that the first Musicland factor favors denial of allowing the filing of class proofs of claim.

The second Musicland factor is whether the

putative class members received notice of the bar date.

The Third Circuit in Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995), set out the standard for providing notice to creditors in order to ensure claims are discharged by confirmation of a plan of reorganization. Due process requires notice that is reasonably calculated to reach all interested parties and conveys the required information sufficient to file a claim.

Bankruptcy law divides claimants into two types, known and unknown. Known creditors must be provided with actual written notice; for unknown creditors, notification by publication will generally suffice. A known creditor is one whose identity is known or reasonably ascertainable by the debtor. A debtor must use reasonable diligent efforts to ascertain known creditors. Reasonable diligence, however, does not require impracticable or extended searches in the name of due process. A debtor does not have the duty to search out each conceivable or possible creditor and urge that creditor to file a claim against the debtor.

The evidence presented at the hearing shows that the debtors did engage in reasonably diligent efforts to identify both individual patients, although most would have made only small copayments under their insurance policies or no payment at all, if they had no insurance, as well as third party payers such as insurance companies and self-funded

plans.

Ms. Brenton (ph), debtors' Director of Patient Services and Reimbursement, described the efforts to locate known creditors through three separate sources of information available to the debtors, including debtors' Connected Care database, which would include 95 percent of patients; the CuraScript shipment data and rebate data, which would contain some, but not all third party payers.

This is the case because the debtor does not deal directly with third party payers. Instead, debtors sell Acthar to CuraScript and McKesson, which distributes to the Department of Defense; they have no other direct sales. CuraScript then sells to hospitals and specialty pharmacies, who then seek reimbursement from third party payers such as insurance companies or self-funded health plans.

Debtors reviewed information from their system through December 2019 based on information provided in discovery to Rockford in connection with the litigation in Illinois; it then refreshed the data through December of 2020. As a result of the search of its records, Ms. Brenton testified that the debtors initially sent actual notice to 66,000 individual patients and 4300 third party payers.

Ms. Brenton also testified that the debtors refreshed their data again recently and discovered that they had inadvertently failed to send Prime Clerk, the noticing

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams June 30, 2021

Tracey Williams, CET-914

Certified Court Transcriptionist

For Reliable