**<u>EXHIBIT C</u>**

1

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

3
.    Chapter 11
IN RE:                            .
.    Case No. 20-11218 (MFW)

4
THE HERTZ CORPORATION, *et al.,*    .

5
.    Courtroom No. 3
.    824 North Market Street

6
.    Wilmington, Delaware 19801
.

7
Debtors.    .    December 28, 2020
. . . . . . . . . . . . . . . . . . .    3:00 P.M.

8

9

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

10

11

APPEARANCES (via Zoom):

12
For the Debtors:        Brett Haywood, Esquire
RICHARDS, LAYTON & FINGER, P.A.

13
920 N. King Street
Wilmington, Delaware 19801

14
- and -

15

16
Ron Gorsich, Esquire
WHITE & CASE
555 South Flower Street

17
Los Angeles, California 90071

18
- and -

19
Jason Zakia, Esquire
111 South Wacker Drive

20
Chicago, Illinois 60606

21
Audio Operator:        Mandy Bartkowski

22
Transcription Company:    Reliable
1007 N. Orange Street

23
Wilmington, Delaware 19801
(302)654-8080

24
Email: gmatthews@reliable-co.com

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1  we would file the fee application well in advance of Moelis

2  earning any fee and until we have the SAPA in place we are

3  not certain that a sale is going to go through.  It simply

4  would have been inexcusable to risk harm to the estate before

5  we knew a sale was going to happen and before any

6  compensation would have been earned in any event.

7          Moreover, as the court has seen, Moelis's

8  compensation agreement would have revealed far too much about

9  the target price for the sale and could not be revealed early

10 in the process.  Any supplemental application filed before

11 the SAPA is in place would reveal too much, even if filed

12 under seal.

13         Thank you, Your Honor.  Unless you have any

14 questions, we will rest.

15         THE COURT:  No, thank you.

16         Anybody else?

17         MS. RICHENDERFER:  Your Honor, if I may.

18         THE COURT:  Yes.

19         MS. RICHENDERFER:  Linda Richenderfer on behalf of

20 the U.S. Trustee.  I just wanted to respond to a couple of

21 points there.

22         Regarding the idea of there being an expansion,

23 Mr. Gorsich mentioned.  Your Honor, many of the professionals

24 that the debtors have retained in this case have such

25 provisions in their forms of order and in their engagements.

1  And there have been several times where FTI has come back to

2  the court and expanded the scope of its retention.

3  (Indiscernible), as I just eluded to or referenced to the

4  court.

5         The U.S. Trustee hasn't objected to those.  We're

6  not objecting because there was a provision that said they

7  could expand the scope and somebody went and did so.  We're

8  objecting to the fact that when parties find it necessary to

9  do so the assumption is that they are going to comply with

10  the bankruptcy code, bankruptcy law, bankruptcy rules and

11  that we're going to see a timely motion to cover the expanded

12  services and the expanded fee.  That is the problem here.  We

13  didn't see that motion.

14         We're not saying nothing can ever be done *nunc pro*

15  *tunc.*  I don't think I have objected -- I know I haven't'

16  objected to anything else in this case seeking *nunc pro tunc*

17  relief for the professionals that have been retained, but

18  when its four months that is an entirely different scenario.

19         I think, to borrow something Mr. Gorsich said, we

20  have to look at the totality of the circumstances here and

21  the manner in which these facts unfolded, and the four months

22  that went by before we saw, and before the court was asked to

23  approve this expanded retention for this particular

24  professional.

25         Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.

2          Well let me make my ruling on this.  I am going to

3  overrule the United States Trustees objection for a couple of

4  reasons.  First, this is not a case of retaining a

5  professional without any court approval of that professional

6  in the case.  Moelis already has been retained in this case

7  on a finding by this court that they are competent and

8  disinterested.

9          With that said I will note that at this point

10  there is no evidence that they are disinterested -- that they

11  are not disinterested, but apparently the U.S. Trustee has

12  some additional issues and questions given that the stalking

13  horse bidder is related to Apollo and there was disclosure

14  that Moelis had some connection with Apollo.

15          But I need not deny the retention application at

16  this point on that point because to the extent it is

17  disclosed or does appear that they are disinterested I am

18  sure the United States Trustee will bring that to my

19  attention.  And since they are not being paid anything for

20  their work at this time until a sale occurs there is plenty

21  of time for the United States Trustee to explore that.

22  Again, on the record before me Moelis is disinterested and

23  can be retained for this work.

24          With respect to the issue of whether or not the

25  original retention covered this exact work I think it is

1  clear both from the language in the original retention

2  engagement letter and the testimony presented by both the

3  debtor and by Moelis in the form of their declarations, it

4  was clear that a sale of less than the majority or all of the

5  debtor was not contemplated as part of the original

6  engagement letter.  And the Donlen assets be not a

7  significant or certainly not the majority or all of the value

8  of the debtor fits outside of that original retention.

9        The original retention engagement letter,

10 application, and this court's order all contemplated the

11 right of the debtor and Moelis to seek to expand the services

12 for which Moelis was retained, and as the U.S. Trustee noted,

13 other professional's retentions add similar terms and other

14 professionals have extended their services contingent upon

15 the filing of a supplemental retention application and

16 approval of the court.  So, the filing of the supplemental

17 retention application was not barred by the original

18 retention and certainly this anticipated the filing.

19        I also find that *nunc pro tunc* approval of the

20 retention for this specific part of the engagement, that is

21 work on the sale of the Donlen assets can be granted because

22 it does meet the extraordinary circumstances of the Arkansas

23 case.  This is not simply a case where the professional

24 forgot to get retained, where a professional relied on others

25 to file the application and they delayed or forgot to file

1 the retention application.

2          This was done purposely and the court finds that

3 it was a reasonable exercise of the debtor's business

4 judgement in doing so in order to protect and maximize the

5 value of the Donlen business.  I accept the testimony and the

6 direct testimony, the live testimony, as well as the

7 declarations that support that given the adverse effect that

8 the debtors bankruptcy has had on the Donlen business.  I

9 disagree with the U.S. Trustees characterization of that. I

10 think it was direct evidence of that fact and I accept it. I

11 find it convincing.

12          Further, there is no prejudice to anybody.  No fee

13 for this engagement will be earned until a sale process is

14 successfully concluded and the sale order entered.  And,

15 again, I think it was reasonable for the debtor not to file a

16 retention application until the debtor had some reasonable

17 expectation or assurance that the exploration of a sale of

18 the Donlen business would be fruitful.  It would have been,

19 in my opinion, perhaps a breach of the debtor's fiduciary

20 duty to have filed something suggesting that there might be a

21 sale only to have it not come to fruition.  That would have

22 caused a further erosion of the business of Donlen as a value

23 of that business.

24          So, I accept the debtors' decision to wait until

25 there was some assurance that a sale might proceed

1  successfully before filing any application to retain Moelis.

2  Again, I think this is not the circumstance where Moelis is a

3  stranger to this case.  They have already been retained in

4  the case.  They have already been found to be competent to

5  serve as the debtor's investment banker.  They have already

6  been found to be disinterested.  So, I think that on the

7  record made there is strong support for granting the request

8  of the debtor.

9         Let me point out, I think <u>Acevedo</u> is clearly

10  distinguishable not only in this case, but in many bankruptcy

11  cases.  There are many instances in bankruptcy where not only

12  Rule 6003, but many instances where because of the notice

13  requirements the court is unable to enter an order on no

14  notice and will allow any relief to be *nunc pro tunc* to the

15  filing of the retention application.

16         It is not creating jurisdiction in this court.

17  This court has jurisdiction over the retention of

18  professionals.  And, again, I think the circumstances of when

19  the debtor decided to actually file the retention application

20  met the requirements of the Third Circuit extraordinary

21  circumstances in <u>Arkansas</u>.

22         So, I will overrule the objection and will grant

23  the application, again, subject to any issue that may come up

24  in the event that the U.S. Trustee believes that Moelis is

25  not disinterested on this point.

1          I also want to thank the committee for having done

2 their job in reviewing the retention application.  I suspect

3 it was on all aspects, not simply on whether the fee itself

4 was appropriate.

5          So I will look for a form of order, Mr. Zakia or

6 Mr. Gorsich.  Have you uploaded an order on that retention

7 application?

8          MR. HAYWOOD:  Your Honor, for the record this is

9 Brett Haywood of Richards Layton.

10          We have uploaded that order on that retention.

11 And if I may ask, Your Honor, I believe the committee wishes

12 to raise something with you if you wouldn't mind spending a

13 few other minutes with us.

14          THE COURT:  Sure.

15          MS. HOOVER:  Good afternoon, Your Honor. This is

16 Jennifer Hoover of Benesch for the record.  Can you hear me?

17          THE COURT:  I can.

18          MS. HOOVER:  Thank you.

19          Briefly, Your Honor, the committee would like to

20 address the court on some discreet matters regarding upcoming

21 scheduling and Hertz.  We have discussed this briefly with

22 both debtor's counsel as well as Ms. Richenderfer.  If you

23 would allow the committee to proceed briefly Jonathan Wagner

24 of Kramer Levin would like to address the court. I would note

25 his *pro hac vice* was filed this morning and was entered this

1  afternoon during the course of the hearing.

2          THE COURT:  All right.

3          MR. WAGNER:  Your Honor, this is Jonathan Wagner.

4  Can you hear me?

5          THE COURT:  I can.

6          MR. WAGNER:  Okay.  Thank you for considering this

7  matter.  Given the holidays and the holiday schedule the

8  committee thought it was prudent to raise with Your Honor

9  today an issue concerning the scheduling of the bifurcation

10 motion that was filed late on December 23rd for a hearing on

11 January 13th.  For reasons I don't need to get into now the

12 January 13th hearing will not work. It is not conducive to a

13 fair and efficient hearing of this important matter.

14          We have raised this issue with counsel to the

15 debtors and other interested parties and we have all agreed

16 that rather than address the scheduling issue today we would

17 try in short order to work out a schedule.  But given the

18 time exigencies, and the holiday, and holiday schedules for

19 the rest of the week what we would like to do is if we can't

20 work out a schedule, let's say, by early tomorrow we would

21 like to get a date now at Your Honor's earliest conveyance

22 either later tomorrow or perhaps on Wednesday so that we can

23 address the scheduling issue.

24          I am hopeful that we will be able to work out the

25 scheduling, but just in case I think it would be prudent to

1  get a date with Your Honor either late tomorrow or on

2  Wednesday.  You should always take lawyers time predictions

3  with a grain of salt, but I don't think it would take more

4  than fifteen minutes of Your Honor's time in the event we

5  can't reach an agreement.

6            THE COURT:  Let me check with Ms. Capp.

7        (Pause in record)

8            THE COURT:  Well why don't I do this; I can hear

9  you tomorrow at four o'clock.  Does that work for the

10  parties?

11            MR. WAGNER:  That works for the committee, Your

12  Honor.

13            MR. ZAKIA:  Your Honor, this is Jason Zakia for

14  the debtors.  Yes, that's fine.

15            As counsel just mentioned they did raise with us

16  their issues concerning scheduling.  We are going to work

17  with them over night and hopefully we will be able to resolve

18  everybody's concerns.  I can't promise at this point we will

19  get to an agreement, but we will try our best.  If not, we

20  will see the court tomorrow at four o'clock.

21            THE COURT:  All right.  Do we want to do it by

22  Zoom or do you just want to do a CourtCall conference,

23  teleconference.

24            MR. WAGNER:  From the point of view of the

25  committee a CourtCall conference is fine.

1    MR. ZAKIA:  Debtors would agree with that, Your

2 Honor.

3    THE COURT:  All right.  We will do it by CourtCall

4 then.

5    MR. WAGNER:  Thank you, Your Honor.

6    THE COURT:  All right. I hope you work it out.

7    MR. WAGNER:  Thank you.

8    THE COURT:  We stand adjourned.  We're done today?

9    MR. ZAKIA:  That's right, Your Honor. Thank you

10 for your time.

11    THE COURT:  Thank you.

12    (A Chorus of "Thank you, Your Honor")

13    (Proceedings conclude at 4:36 p.m.)

14

15

16

17                        CERTIFICATE

18

19    I certify that the foregoing is a correct transcript

20 from the electronic sound recording of the proceedings in the

21 above-entitled matter.

22
   /s/Mary Zajaczkowski              December 29, 2020
23 Mary Zajaczkowski, CET**D-531

24

25