**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: Nov. 21, 2023 at 11:30 a.m. (ET)**<br>**RE: Docket No. 668** |

**OBJECTION OF THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS TO THE LEAD PLAINTIFF'S
MOTION TO APPLY BANKRUPTCY RULE 7023 TO CLASS CLAIMS**

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................3

ARGUMENT ..............................................................................................................8

    I.   The 7023 Motion Should Be Denied Because It Was Filed After The Bar Date. ...............8

    II.  None Of The *Musicland* Factors Weigh In Favor of Granting The 7023 Motion. ............10

        A.  No Class Was Certified Pre-Petition..........................................................................11

        B.  The Debtors Noticed The Bar Date To All Putative Class Members. .........................12

        C.  Class Certification Will Adversely Affect Administration Of The Estate. .................15

CONCLUSION..........................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Amdura Corp.,
  170 B.R. 445 (D. Colo. 1994) ................................................................................14

In re Associated Cmty. Servs., Inc.,
  520 B.R. 650 (Bankr. E.D. Mich. 2014) ..................................................................9

Bailey v. Jamesway Corp. (In re Jamesway Corp.),
  No. 95 B 44821(JLG), 1997 WL 327105 (Bankr. S.D.N.Y. 1997) .......................11

In re Bally Total Fitness of Greater New York, Inc.,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009) ..................................................................2, 8

In re Chaparral Energy, Inc.,
  571 B.R. 642 (Bankr. D. Del. 2017) .............................................................. *passim*

In re Chaparral Energy, Inc.,
  No. 17-701(MN), 2019 WL 4643849 (D. Del. Sept. 24, 2019) ....................1, 8, 14

Chemetron Corp. v. Jones,
  72 F.3d 341 (3d Cir. 1995) ..............................................................................13, 15

In re Comput. Learning Ctrs., Inc.,
  344 B.R. 79 (Bankr. E.D. Va. 2006) ................................................................16, 18

In re Craft,
  321 B.R. 189 (Bankr. N.D. Tex. 2005) ............................................................16, 18

In re Dynegy,
  770 F.3d 1064 (2d Cir. 2014) ...................................................................................9

In re Ephedra Prods. Liab. Litig.,
  329 B.R. 1 (S.D.N.Y. 2005) .........................................................................1, 8, 16

In re Fresh & Easy, LLC,
  No. 15-12220 (BLS) (Bankr. D. Del. Mar. 3, 2016) .........................................1, 3

In re Kaiser Grp. Int'l, Inc.,
  278 B.R. 58 (Bankr. D. Del. 2002) ..........................................................................9

In re Mallinckrodt PLC,
  639 B.R. 837 (Bankr. D. Del. 2022) ........................................................................9

In re MF Global, Inc.,
  512 B.R. 757 (Bankr. S.D.N.Y. 2014) ...............................................................1, 10

In re Motors Liquidation Co.,
    591 B.R. 501 (Bankr. S.D.N.Y. 2018) .....................................................................8

In re Motors Liquidation Co.,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ...............................................................1, 10

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950) ....................................................................................13, 14

In re Musicland Holding Corp.,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ......................................................... *passim*

In re New Century TRS Holdings, Inc.,
    No. 07-10416(BLS), 2014 WL 842637 (Bankr. D. Del. Mar. 4, 2014) .................14

In re Nw. Airlines Corp.,
    No. 05-17930, 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007).....................9

In re Pac. Sunwear of California, Inc.,
    No. 16-10882(LSS), 2016 WL 3564484 (Bankr. D. Del. June 22, 2016) .............10

In re Parker,
    624 B.R. 222 (Bankr. W.D. Pa. 2021) ....................................................................9

Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,
    140 S. Ct. 696 (2020) .............................................................................................9

In re Sacred Heart Hosp. of Norristown,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ............................................................ *passim*

Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.),
    817 F.2d 625 (10th Cir. 1987) ...............................................................................8

In re W.R. Grace & Co.,
    366 B.R. 302 (Bankr. D. Del. 2007) ......................................................................9

In re Woodward & Lothrop Holdings, Inc.,
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ...............................................2, 15, 16, 18

In re Zvoch,
    618 B.R. 734 (Bankr. W.D. Pa. 2020) .................................................................10

**Statutes**

11 U.S. Code § 1102 .....................................................................................................4

**Other Authorities**

Fed. R. Bankr. P. 3001(b) .........................................................................................8, 9

Fed. R. Bankr. P. 7023 ............................................................................................... *passim*

Fed. R. Bankr. P. 9014 ...................................................................................................9

Fed. R. Bankr. P. 9014(c) .............................................................................................15

Fed. R. Civ. P. 23 ..............................................................................................3, 9, 15, 16

The Official Committee of Equity Security Holders (the "Equity Committee") of Lordstown Motors Corp. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this objection (the "Objection") to the *Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Claims* [Docket No. 668] (the "7023 Motion"), and respectfully requests that this Court deny the relief requested in the 7023 Motion. In support of this Objection, the Equity Committee states as follows:

## PRELIMINARY STATEMENT

1.  Class proofs of claim are discouraged in bankruptcy, for very good reason: the bankruptcy process provides the same (or greater) procedural advantages as a class action. Creditors in a bankruptcy do not need to hire a lawyer, they can rely on a simple form to submit their claim, and claims are deemed allowed unless objected to. In other words, most creditors can participate in distribution by merely submitting an electronic form. Everyone receives notice, either actual (where creditors are known) or constructive (where they are unknown to the Debtors). Welding class action procedures on top of what is already a collective action process is duplicative, and adds expense and delay. Our jurisprudence does not like this. As Judge Rakoff put it, "[B]ankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and . . . class certification may be less desirable in bankruptcy than in ordinary civil litigation." In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005). This view has been widely adopted by courts in this jurisdiction and others. See, e.g., In re Chaparral Energy, Inc., No. 17-701(MN), 2019 WL 4643849, at *5 (D. Del. Sept. 24, 2019) ("Chaparral II"); Mar. 3, 2016 Hr'g Tr. 7:3–4, In re Fresh & Easy, LLC, No. 15-12220 (BLS) (Bankr. D. Del. Mar. 3, 2016) [D.I. 676] (attached hereto as **Exhibit A**); In re MF Global Inc., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); In re Motors Liquidation Co., 447 B.R. 150, 163 (Bankr. S.D.N.Y. 2011); In re

Bally Total Fitness, Inc., 402 B.R. 616, 619-20 (Bankr. S.D.N.Y. 2009); In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997); In re Sacred Heart Hosp., 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).

2.     Bankruptcy courts occasionally apply class action procedures, but generally limits them to circumstances where, for example, a class has been certified prior to the bar date, where a debtor fails to appropriately notify class claimants, and where litigation over class certification will not adversely affect the administration of the estate.  That is not where we are.  The purported securities claims are at an immature stage of litigation.  While the complaint was filed two and a half years ago, the case is still procedurally at ground zero: no class representative has been designated, and because the motion to dismiss was held to be moot as a result of the bankruptcy filing, no class was certified and no discovery has ever been conducted.  The claim is in a very fragile position.  Moreover, the Debtors have provided more than adequate notice of the bankruptcy case and the bar date to its known and unknown creditors.

3.     The 7023 Motion should fail as a matter of law, but there is another pragmatic reason why the Court should not authorize a class proof of claim.  The Debtors filed for bankruptcy more than six months ago.  When they filed, they had more than $130 million cash in hand, hard and soft assets, and inchoate litigation claims.  Over the intervening six months, the cash has dissipated dramatically, hard and soft assets were sold for relatively small amounts, and litigation did not yield incremental value.  Bankruptcy work is now almost complete and the case is moving rapidly – after all this expense and work – to a confirmation hearing.  The so-called Lead Plaintiff has done nothing, over the past six months, to help advance the case or his putative class claim. Now, at the end of the process, after passage of the claims bar date, a confirmation hearing days away, and the case poised to end, his lawyers seek authority to file a class claim, simultaneously

threatening to hold up case resolution, unless the $1 million settlement offer contained in the Plan is not increased to another number.  The parties have attended a one-day mediation and conducted settlement conversations and one in-person meeting over this "hold up" demand, but it does not now look capable of settlement.  Respectfully, the 7023 Motion is so weak under applicable legal standards, the underlying putative class action is at such an immature stage, the case is now at its end and the Lead Plaintiff did nothing over the course of this case to earn recognition at this late stage, that the relief requested should be summarily denied.

4.    Here, Judge Shannon's ruling and reasoning in the <u>Fresh & Easy</u> case warrants close review.  There (as here), there was no class certified pre-petition, the debtors appropriately noticed the bar date, the bar date had passed, and the debtors were in the process of finalizing the administration of their estate.  For those reasons, Judge Shannon denied the certification motions: "Case law teaches that class claims should be sparingly used in bankruptcy.  And many of the policy considerations that support class actions are absent in bankruptcy proceedings because the costly barriers to traditional civil litigation and prosecution of claims are significantly reduced in bankruptcy by the claims allowance process."  For the same reasons, the 7023 Motion should be denied.

## FACTUAL BACKGROUND

5.    In March 2021, six putative securities class action lawsuits were filed in the United States District Court for the Northern District of Ohio (the "<u>Ohio District Court</u>") against two of the Debtors and certain non-Debtor defendants.  In June, 2021, the Ohio District Court consolidated these into a single securities class action, captioned <u>In re Lordstown Motors Corp. Securities Litigation</u>, Case No. 4:21-cv-0616(DAR) (the "<u>Securities Litigation</u>"), and appointed Mr. George Troicky as Lead Plaintiff.

6.      On September 10, 2021, Lead Plaintiff filed an amended complaint in the Securities Litigation "on behalf of themselves and all persons or entities who (a) purchased [Lordstown Motor Corp.]'s publicly traded warrants (Ticker: "RIDEW" and prior ticker: "DPHCW"), [Lordstown Motor Corp.]'s publicly traded units (Ticker "DPHCU"), or any publicly traded option to purchase or sell [Lordstown Motor Corp.]'s Class A Common Stock, from August 3, 2020, through July 2, 2021, inclusive . . . and/or (b) held [Lordstown Motor Corp.]'s Class A Common Stock as of September 21, 2020."  7023 Motion at ¶ 11.

7.      Defendants filed a motion to dismiss on November 9, 2021, which the Ohio District Court denied on August 28, 2023 due to the pendency of these Chapter 11 cases, without prejudice to the Defendants' re-filing the motion to dismiss.  Class certification had not been granted in the Securities Litigation, and Lead Plaintiff did not seek relief from the stay in order to seek class certification or continue the Securities Litigation.  Indeed, Lead Plaintiff's first step toward class certification is the 7023 Motion, filed *two years and eight months* after commencement of the Securities Litigation.

8.      The Debtors filed their bankruptcy cases on June 27, 2023 (the "Petition Date"). On July 11, 2023, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors, and on September 7, 2023, appointed the Equity Committee pursuant to Section 1102 of the Bankruptcy Code.

9.      The Debtors filed their motion for a bar date on August 4, 2023 [Docket No. 228] and on August 24, 2023, the Court entered the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form, Manner, and Procedures of Notice Thereof, and (C)*

*Granting Related Relief* [Docket No. 319] (the "<u>Bar Date Order</u>").  Lead Plaintiff did not object to the Debtors' bar date motion or to entry of the Bar Date Order.

10.     The Bar Date Order required the Debtors to provide notice of the bar date and a copy of the proof of claim form, by first class mail, to, among others:

- All ***known*** holders of potential claims and their counsel (if known), including all persons and entities listed in the Schedules at the addresses set forth therein as potentially holding claims;

- All parties that have filed proofs of claim in the Chapter 11 Cases as of the date of the Bar Date Order;

- All ***known*** holders of equity securities in the Debtors as of the date of the Bar Date Order; and

- All ***known*** parties to litigation with the Debtors as of the date of the Bar Date Order.

Bar Date Order at ¶ 16 (emphasis added).  Moreover, "service of the Bar Date Notice and Proof of Claim Form in the manner set forth in this Order is and shall be deemed to be good and sufficient notice of the Bar Dates to ***known*** Claimants." <u>Id.</u> at ¶ 17 (emphasis added).  The Bar Date Order further required the Debtors, no later than 21 days prior to the general bar date, to publish notice of the bar date "once in (i) the Wall Street Journal or similar nationally circulated news publication and (ii) local newspaper, trade journal, or similar publication, if any, as the Debtors deem appropriate in their discretion.  The Publication Notice is hereby approved in all respects and shall be deemed good, adequate, and sufficient notice of the General Bar Date and the Governmental Bar Date by publication." <u>Id.</u> at ¶ 19.

11.     On August 28, 2023, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, Against Debtors* [Docket No. 335], establishing the General Bar Date as October 10, 2023.  The Debtors published the Publication Notice as specified in the Bar Date Order in the <u>Wall Street Journal</u> on August 31, 2023 and in <u>Automotive News</u> on September 11, 2023.  <u>See</u> *Affidavit of Publication of*

*Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, Against Debtors in the Wall Street Journal and Automotive News* [Docket No. 591].

12.     The Bar Date Order specifically states that "[f]or the avoidance of doubt, unless otherwise subject to one of the exceptions set forth above, each Claimant shall be required to file a Proof of Claim by the applicable Bar Date, even if such Claimant may be included in, or represented by, a Representative Claim filed against the Debtors with respect to such Claimant's claim." Bar Date Order at ¶ 14 (Bar Date Order defines Representative Claim as a proof of claim filed in respect of a Representative Action, including "a purported class action, class suit, or similar representative action." Id. at ¶ 7).

13.     On October 5, 2023, Lead Plaintiff, the Debtors, and the Equity Committee engaged in formal mediation regarding claims related to the Securities Litigation (the "Securities Litigation Claims"). That mediation was unproductive. Counsel to the Equity Committee has since invited discussion with counsel to the Lead Plaintiff in order to attempt to negotiate a resolution, to no avail.

14.     On October 10, 2023, the Lead Plaintiff timely filed proofs of claim no. 1368 against Lordstown EV Corporation, no. 1426 against Lordstown Motors Corp., and no. 1434 against Lordstown EV Sales LLC (which entity was not named as a defendant in the Securities Litigation) on behalf of himself and the putative class of plaintiffs in the Securities Litigation, each in an unliquidated amount no less than $695,000,000.00 (together, the "Class Proofs of Claim"). Lead Plaintiff claims to have suffered only $864,201.53 in individual damages. See Securities Litigation Docket No. 21). Lead Plaintiff did not seek authorization from this Court or from the Ohio District Court prior to filing the Class Proofs of Claim.

15.     On October 24, 2023, the Debtors filed the *First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [Docket No. 605] (as amended and/or modified, the "<u>Plan</u>"), in which they proposed, as a settlement, the following treatment for claims related to the Securities Litigation.  On or before the voting deadline, the Lead Plaintiff may elect to accept classification of the Class Proofs of Claim in Class 10 of the Plan (the "<u>Class 10 Election</u>"), whereby the Plan would by deemed a motion to certify the class at the Confirmation Hearing.  If certified, and if the Debtors have sufficient Post-Effective Date Debtor Cash (as defined in the Plan), the Debtors will fund an escrow account with $1 million for the benefit of class members who do not opt out of the settlement, in full and final satisfaction of their Securities Litigation Claims.  If (i) the Lead Plaintiff does not make the Class 10 Election; (ii) the Court does not certify the class; and/or (iii) there is insufficient Post-Effective Date Debtor Cash, Securities Litigation Claims shall be treated as Class 8 claims and receive a number of shares of common stock pursuant to a formula set forth in the Plan, or, at the Debtors' discretion, cash in an amount equal to the number of shares to which the claimant is entitled multiplied by the volume weighted average share price of the common stock during the thirty days following the effective date. Furthermore, the claims of any class members who opt out of the settlement shall be treated as Class 8 claims, provided that if more than 5% of the putative class members opt out of the settlement, the class shall be decertified, the settlement revoked, and all Securities Litigation Claims shall be treated as Class 8 claims. This provision remains in the current version of the Plan.

16.     On November 1, 2023, the Court entered the Order approving the Disclosure Statement [Docket No. 651], and solicitation commenced on or around November 8, 2023.

**ARGUMENT**

17.     "There is no absolute right to file a class proof of claim under the Bankruptcy Code." In re Bally Total Fitness, Inc., 402 B.R. at 619.  Rather, whether to permit a class proof of claim is a matter of discretion.  In re Chaparral Energy, Inc., 571 B.R. 642, 646 (Bankr. D. Del. 2017) ("Chaparral I"), aff'd, No. 17-701(MN), 2019 WL 4643849 (D. Del. Sept. 24, 2019) ("Chaparral II").  "[B]ecause bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action, . . . class certification may be less desirable in bankruptcy than in ordinary civil litigation. . . . This is because, in many cases, the bankruptcy case itself may provide the same or greater procedural advantages as a class action." Chaparral II, 2019 WL 4643849, at *5; citing In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005); In re Musicland Holding Corp., 362 B.R. 644, 651 n.8 (Bankr. S.D.N.Y. 2007). And, because class certification adds significant expense and delay to the bankruptcy process, the contexts in which class proofs of claim may be utilized "should be chosen most sparingly."  In re Sacred Heart Hosp., 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).

> **I.      The 7023 Motion Should Be Denied Because It Was Filed After The Bar Date.**

18.     Under Bankruptcy Rule 3001(b), only a creditor or a creditor's "authorized agent" may file a proof of claim.  Fed. R. Bankr. P. 3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent.").  Lead Plaintiff is not, and was not at the time he filed the Class Proofs of Claim, an "authorized agent" for any other creditor.  See Sheftelman v. Standard Metals Corp. (In re Standard Metals Corp.), 817 F.2d 625, 631 (10th Cir. 1987) ("[A] class representative cannot be considered the authorized agent of all of the creditors in a putative class."), vacated on other grounds, 839 F.2d 1383 (10th Cir. 1987); In re Motors Liquidation Co., 591 B.R. 501, 537 (Bankr. S.D.N.Y. 2018) (holding that proofs of claim "cannot be asserted on

behalf of absent individuals without certification of the class under Rule 23."). <u>In re W.R. Grace & Co.</u>, 366 B.R. 302, 307 (Bankr. D. Del. 2007) (holding that the time to seek permission to file a class proof of claim is before the bar date because to do otherwise "would leave the door open indefinitely for claims to disrupt the reorganization process.")

19.    Lead Plaintiff may not act on behalf of the putative class until he obtains representative status under Rule 7023.  <u>See In re Dynegy</u>, 770 F.3d 1064, 1070 (2d Cir. 2014); <u>In re Mallinckrodt PLC</u>, 639 B.R. 837, 861 (Bankr. D. Del. 2022) ("[A] party seeking to file a class proof of claim must first seek permission from the court to do so."); <u>In re Associated Cmty. Servs., Inc.</u>, 520 B.R. 650, 658 (Bankr. E.D. Mich. 2014) ("The time to get class certification was *before* filing the proof of claim on behalf of the putative class.");  <u>In re Nw. Airlines Corp.</u>, No. 05-17930, 2007 WL 2815917, at *4 (Bankr. S.D.N.Y. Sept. 26, 2007) (denying putative class representative's motion for class treatment because "the time for counsel to seek class certification" was prior to the bar date).

20.    Certain courts, including this Court, have ruled that where a putative class representative filed a claim before the bar date, class certification that occurs later incorporates the claims of all class members into the proof of claim that was timely filed.  <u>See In re Musicland Holding Corp.</u>, 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007) (finding that, "[b]y certifying the class, a court effectively ratifies the agent's authority *nunc pro tunc*" and denying a motion for class certification filed after the bar date); <u>In re Kaiser Grp. Int'l, Inc.</u>, 278 B.R. 58, 63 (Bankr. D. Del. 2002).  However, this decision was rendered before the Supreme Court's ruling in <u>Roman Cath. Archdiocese v. Acevedo Feliciano</u>, 140 S. Ct. 696 (2020) (per curiam), which limited the power of federal courts, including bankruptcy courts, to grant *nunc pro tunc* relief.  Courts may do so only to "reflect the reality of what has already occurred," <u>see In re Parker</u>, 624 B.R. 222, 236

(Bankr. W.D. Pa. 2021), and not to "create a new [reality] where [the party seeking relief] complied with all his obligations." In re Zvoch, 618 B.R. 734, 736 (Bankr. W.D. Pa. 2020) (denying debtor's motion to retroactively approve post-petition financing where court's local rules required prior approval).

21.     Had Lead Plaintiff filed the 7023 Motion prior to the bar date, and had the Court granted the motion, he would have been an "authorized agent" under Bankruptcy Rule 3001(b). But he did not, and he was not. Permitting retroactive relief now would "create a new reality" where Lead Plaintiff complied with the obligations of Bankruptcy Rule 3001(b), and would be precisely the type of *nunc pro tunc* relief forbidden by Acevedo. The 7023 Motion should be denied on this basis.

## II.     None Of The *Musicland* Factors Weigh In Favor of Granting The 7023 Motion.

22.     There are two steps to the analysis of whether to permit a class proof of claim. First, the court must decide that applying Bankruptcy Rule 7023, through Bankruptcy Rule 9014, is beneficial to the administration of the estate. Second, the court must determine that the requirements of Federal Rule 23 have been satisfied. See, e.g., Chaparral I, 571 B.R. at 646; In re Pac. Sunwear, Inc., No. 16-10882(LSS), 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016); In re MF Global, Inc., 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); In re Motors Liquidation Co., 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011). Lead Plaintiff has only asked the Court to conduct the first step of the analysis, and has asked that the Court set a schedule so that the parties may submit briefs as to the second step.

23.     Courts apply a three-factor framework to determine whether Rule 7023 should be extended to the claims administration process. "Those factors are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date;

and (3) whether class certification will adversely affect the administration of the estate." <u>Chaparral</u> <u>I</u>, 571 B.R. at 646; <u>see also</u> <u>In re Musicland</u>, 362 B.R. at 654-55 (holding that "putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment."). All three of the <u>Musicland</u> factors weigh against applying Bankruptcy Rule 7023 to the Securities Litigation Claims.

### A.    <u>No Class Was Certified Pre-Petition.</u>

24.    Where no class is certified pre-petition, "no putative class member should or could have had a reasonable expectation that they did not have to comply with the bar date" and denial of a certification motion in respect to a class proof of claim is appropriate. <u>In re Musicland</u>, 362 B.R. at 656; <u>see also</u> <u>Bailey v. Jamesway Corp. (In re Jamesway Corp.)</u>, No. 95 B 44821(JLG), 1997 WL 327105, at *10 (Bankr. S.D.N.Y. 1997).

25.    No class has been certified in the Securities Class Action, and that lawsuit never reached the class certification stage. This factor therefore weighs in favor of denying the 7023 Motion.

26.    Lead Plaintiff argues that this factor does not weigh against them because the Plan includes, as a settlement of the Securities Class Claims, language providing that *if* the Lead Plaintiff makes the Class 10 Election, the Plan will constitute a motion to certify the Ohio Settlement Class for purposes of the Plan. 7023 Motion at ¶ 67; Plan at III.B.10.b (noting that "[n]othing herein shall be deemed to certify the Ohio Settlement Class for any purpose other than to distribute the Ohio Securities Class Action Payment to Ohio Settlement Class members."). This puts the cart before the horse: Lead Plaintiff has *not* made the Class 10 Election, and if he had done so, the instant motion would be unnecessary. Therefore, the fact that Lead Plaintiff has filed

11

the 7023 Motion thus implies that he will not make the Class 10 Election, rendering the settlement proposal in the Plan moot.

**B.      The Debtors Noticed The Bar Date To All Putative Class Members.**

27.     Where putative class members have received "actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable." Sacred Heart Hosp., 177 B.R. at 22.

28.     The Bar Date Notice provided putative class members with actual and constructive knowledge of the bankruptcy and the bar date.  Pursuant to the Bar Date Order, the Debtors provided actual notice via prepaid first-class mail to all known holders of potential claims and all known parties to litigation (among others), including Lead Plaintiff, through his counsel of record. See Docket No. 412, Ex. D at 45.

29.     While certain putative class claimants likely received actual notice of the bar date and the bankruptcy (such as, for example, former shareholders who repurchased shares in the company), there may be putative class claimants who did not, because they are not identifiable in the Debtors' books and records.  Lead Plaintiff claims that members of the class are known creditors of the Debtors because the Class Complaint "expressly identified Class members as persons or entities that purchased Warrants, Units & Options during the Class Period, and/or persons and entities that held the Common Stock as of September 21, 2020."  This does not follow. The Debtors are a publicly traded company, and its investor list is kept by the Depository Trust Company ("DTC").  Even if it were possible for the Debtors to identify and serve all putative class members, this process would take months and cost more than $500,000.  See *Declaration of James Lee in Support of Debtors' Objection to the Ohio Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Claims*, filed contemporaneously herewith, at ¶¶ 5-7.

30.     Such former shareholders are, by definition, unknown creditors, to whom the Debtors provided sufficient constructive notice.  "An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'"  Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995), quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 317 (1950).  A known creditor, on the other hand, "is one whose identity is either known or 'reasonably ascertainable by the debtor.'"  Id., quoting Tulsa Prof. Collection Servs., Inc. v. Pope, 485 U.S. 478, 490 (1988).   "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts' [which do] not require 'impracticable and extended searches . . . in the name of due process.'"  Id., quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4 (1983) and Mullane, 339 U.S. at 317.  In the Third Circuit, "the requisite search instead focuses on the debtor's own books and records.  Efforts beyond a careful examination of these documents are generally not required."  Chemetron Corp., 72 F.3d at 347.

31.     The Debtors' efforts to identify potential creditors were reasonably diligent. They not only searched their own books and records, but engaged their claims agent, KCC, to (i) obtain a report from DTC in order to identify the banks and brokerage firms that hold equity securities on behalf of beneficial holders; (ii) solicit the identities of all registered holders of common stock from American Stock Transfer and Trust Company as transfer agent; and (iii) mail the Bar Date Notice and proof of claim forms to all such holders.  See Lee Decl. at ¶ 5.  Members of the putative class who were not previously known to the Debtors were not reasonably ascertainable, because the Debtors' diligence did not uncover their identities, and the Debtors were not required to exhaust all possible avenues to determine all potential members of the putative class.  See Chemetron Corp., 72 F.3d at 346-47 ("Reasonable diligence does not require 'impracticable and extended

searches . . . in the name of due process.'" (quoting <u>Mullane</u>, 339 U.S. at 317)); <u>In re New Century</u> <u>TRS Holdings, Inc.</u>, No. 07-10416(BLS), 2014 WL 842637, at *5-6 (Bankr. D. Del. Mar. 4, 2014) (rejecting claimant's arguments that debtors should have known of her fraud claim due to pending litigation by others alleging fraudulent lending practices to all borrowers, and holding that publication notice was sufficient as to claimant).

32.     <u>Chaparral</u> is distinguishable.  In that case, certain owners of royalty interests under oil and gas leases commenced a putative class action against the debtors five years prior to the petition date.  Despite this, the debtors self-imposed a three-year lookback period to determine which creditors they would serve with the bar date notice.  While the debtors acknowledged that they had the putative class members' information at hand in their books and records, they argued "that to conduct an examination of those documents would be overly burdensome."  <u>Chaparral II</u>, 2019 WL 4643849, at *7 n.10.  The court found that because the putative class claimants were known creditors and the three-year lookback period was insufficient to capture all potential class claimants, the second <u>Musicland</u> factor weighed in favor of applying Rule 7023.  <u>Chaparral I</u>, 571 B.R. at 647 and n.15.  Here, the putative class is made up of former shareholders, who are not identified in the Debtors' own books and records, rather than contract counterparties, who are.

33.     <u>In re Amdura Corp.</u>, 170 B.R. 445 (D. Colo. 1994), is also distinguishable.  There, the class had already been certified and the class representatives had already received authorization from the judge overseeing the class action to pursue the class claim in the bankruptcy proceeding. Because the class had already been certified, "Amdura and the bankruptcy court were aware of the existence of the individual creditors" and "Amdura could have obtained a list of these creditors' names and addresses from Appellants, their representatives."  <u>Id.</u> at 451 (also noting that "[c]onstructive notice would suffice only as to any remaining members of the group whose identity

and whereabouts could not be so easily ascertained."). Here, by contrast, no class was certified pre-petition, nor was any motion to certify pending. There is no reason to believe that Lead Plaintiff has a list of all names and addresses of putative class members, nor has he alleged that he does. And, as described above, the Debtors provided actual notice to those putative class members of whom it was aware and that it could identify in its books and records, and those that KCC identified through its investigation.

34.     The Debtors satisfied their obligation to provide constructive notice to unknown creditors by publishing the Publication Notice as specified in the Bar Date Order (see Docket No. 319 at ¶ 19) in the Wall Street Journal on August 31, 2023 and in Automotive News on September 11, 2023. See *Affidavit of Publication of Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, Against Debtors in the Wall Street Journal and Automotive News* [Docket No. 591]; see also Chemetron Corp., 72 F.3d at 345-46 ("If claimants were 'unknown' creditors, however, then notice by publication was sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief.").

### C.      **Class Certification Will Adversely Affect Administration Of The Estate.**

35.     Courts may decline to apply Rule 7023 if doing so would "gum up the works" of administering the estate. See In re Woodward & Lothrop Holdings, Inc., 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997). In applying the third Musicland factor, whether a Rule 7023 motion will adversely affect the administration of the estate, courts focus on two considerations: whether movants sat on their rights before bringing their motion for certification, and whether a plan has been proposed, negotiated, solicited, or confirmed.

36.     In Ephedra Products, for example, claimants first brought their motion only after solicitation on the plan had begun.  The court held that this fact alone "presents sufficient grounds to expunge the class claims" and that "since class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as other matters that must be resolved before distributing the estate.  329 B.R. at 5.  For this reason, and because "counsel for the class claimants bear primary responsibly for the 'gumming up' by not affirmatively moving under Rule 9014(c) for class certification" earlier in the case, the court declined to exercise its discretion to apply Rule 7023.  See also In re Comput. Learning Ctrs., Inc., 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party."); In re Craft, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005) (putative class members waited too long to invoke Rule 23 when allowing class claim would delay plan process and claim objection process); Woodward & Lothrop, 205 B.R. at 370 ("As the case moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate"); Sacred Heart Hosp., 177 B.R. at 23 (noting that "[t]he most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors" and denying the motion because it would "effect very substantial and apparently unwarranted disruption to the administration of the Debtor's bankruptcy case, in which there is presently a plan before us for imminent confirmation").  Id. at 24. Furthermore, while parties may bifurcate the question of whether Bankruptcy Rule 7023 should apply from whether claimants have satisfied Federal Rule

23, doing so allows courts to impute delay to the party seeking bifurcation.  See Chaparral I, 571 B.R. at 649.

37.     Lead Plaintiff argues that his 7023 Motion will not negatively affect the administration of the estate because "absent application of a collective process under Bankruptcy Rule 7023, there can be no meaningful opportunity for the Debtors to confirm any plan and exit Chapter 11 in a timely manner."  7023 Motion at ¶ 93.  This is clearly not the case.  The Court can (and should) decline to apply Rule 7023 and direct that the class proofs of claim be amended to reflect damages suffered by the individual claimants who filed them.  Lead Plaintiff would raise his objections at confirmation, which include an objection to the Third Party Release provision, by which he claims, incorrectly, "it is likely that most [putative] Class members are not even aware of the Third Party Release provision and that their valuable claims against Non-Debtor Defendants may be deemed released for no consideration."  Id. at ¶ 91; but see Plan at § I.A.123 (defining "Releasing Party" as "(i) all Holders of Claims or Interests that vote to accept the Plan; (ii) all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan *and opt in* to the third party releases . . . .") (emphasis added).

38.     The only plausible interpretation of Lead Plaintiff's argument is that he intends both prongs of his bifurcated motion (*i.e.*, the present motion to apply Rule 7023, and class certification itself, for which Lead Plaintiff has not even proposed a briefing schedule) to be decided prior to confirmation, which is set for December 19, 2023.  Thus, if the Court is inclined to exercise its discretion to apply Rule 7023 to the Class Proofs of Claim (it should not), it should require Lead Plaintiff to prove, once and for all, that the putative class should be certified before the date currently scheduled for the confirmation hearing.  Indeed, Lead Plaintiff claims that he and the Debtors "have had knowledge of the Securities Litigation, and the size and scope of the putative

Class, since September 2021." 7023 Motion at ¶ 66. To the extent that Lead Plaintiff now claims to need more time to put on his class certification case, the Court should view this as "gumming up the works." Any delay of the confirmation hearing would adversely affect the administration of the estate by forcing the estate to incur additional expense. This is grounds to deny the 7023 Motion, particularly when Lead Plaintiff could have (and should have) brought his motion much earlier in the case. See Comput. Learning Ctrs., 344 B.R. at 89; Craft, 321 B.R. at 199; Woodward & Lothrop, 205 B.R. at 370; Sacred Heart Hosp., 177 B.R. at 23.

## CONCLUSION

For the reasons stated herein, the Equity Committee respectfully requests that the Court sustain the Objection, deny the 7023 Motion, and grant such other and further relief as it deems just and proper.

*Remainder of page intentionally left blank*

Dated: November 14, 2023
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Michael S. Winograd (admitted *pro hac vice*)
7 Times Square
New York, NY  10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
E-mail: rstark@brownrudnick.com
E-mail: bsilverberg@brownrudnick.com
E-mail: mwinograd@brownrudnick.com

-and-

Sharon I. Dwoskin (admitted *pro hac vice*)
Matthew A. Sawyer (admitted *pro hac vice*)
One Financial Center
Boston, MA  02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
E-mail: sdwoskin@brownrudnick.com
E-mail: msawyer@brownrudnick.com

*Counsel to the Official Committee
of Equity Security Holders*

65184717 v3-WorkSiteUS-039963/0001
16411787/1/142570-0002