IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Lordstown Motors Corp., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Requested Objection Deadline:**<br>**December 5, 2023 at 4:00 p.m. (ET)**<br><br>**Requested Hearing Date:**<br>**December 11, 2023 at 2:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO REPURCHASE ENDURANCE TRUCKS FROM CUSTOMERS, AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned chapter 11 cases file this motion (the "**Motion**") pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District (the "**Local Rules**"), for entry of an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), authorizing, but not directing, the Debtors to repurchase the Endurance Trucks from their customers and granting related relief. In support of this Motion, the Debtors state as follows:

**Relief Requested**

1.　By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors seek entry of an order authorizing, but not directing, the

---

[1]　The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

Debtors to repurchase up to approximately 35 Endurance electric trucks that were previously sold to customers for an aggregate repurchase amount of up to $1,085,000, half of which Foxconn EV System LLC (or its applicable affiliate, together "**Foxconn**") has agreed to pay or reimburse, such that the total cost to the Debtors to complete the repurchase contemplated by this Motion will be up to $542,500.[2]

## Jurisdiction, Venue, and Authority

2. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A. General Background

5. On June 27, 2023 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").

---

[2] Nothing herein is or shall be deemed to be an admission of any fact or basis of liability as against the Debtors or Foxconn and all of the Debtors' and Foxconn's rights claims and defenses are hereby expressly reserved. In the event that this Motion is denied, the parties' rights shall remain as they were immediately prior to the filing of this Motion.

The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 11, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Creditors' Committee**") for these Chapter 11 Cases. On September 7, 2023, the U.S. Trustee appointed the official committee of equity security holders (the "**Equity Committee**" and collectively with the Creditors' Committee, the "**Committees**") for these Chapter 11 Cases. No trustee or examiner has been appointed in these Chapter 11 Cases.

6. Additional factual background regarding the Debtors, including their business operations and the events leading to the filing of these Chapter 11 Cases, is set forth in the *Declaration of Adam Kroll in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "**First Day Declaration**"), which is fully incorporated here by reference.

### B. Production of the Endurance Trucks

7. The Debtors developed, manufactured and sold electric vehicles ("**EVs**") primarily to commercial fleet customers. Prior to winding down their manufacture and sale of EVs, LMC was one of the only original equipment manufacturers ("**OEMs**") in North America focused solely on light-duty electric vehicles for commercial fleet customers. The Debtors' flagship vehicle was the "Endurance," a full-size, all-electric pickup truck.

8. On November 7, 2019, the Debtors purchased General Motors' 6.2 million square foot automobile manufacturing facility (the "**Plant**") in Lordstown, Ohio. In September 2021, the Debtors began a commercial relationship with an affiliate of Hon Hai Precision Industry Co., Ltd., Foxconn EV System LLC. As part of their prepetition relationship, the Debtors and Foxconn

entered into a manufacturing supply agreement (the "**CMA**"), dated May 11, 2022, by which certain Endurance vehicles were produced. In connection with this Motion, and subject to the Court granting the relief herein, Foxconn has agreed that it will fund (or reimburse the Debtors for) 50% of the total cost of the vehicles actually repurchased by Lordstown (up to a cap of $31,000 per vehicle), without regard to any setoff, recoupment, or other rights that Foxconn or the Debtors may have.[3]

9.  Pursuant to the terms of the CMA, a total of 80 Endurance vehicles were produced, of which 37 Endurance vehicles were sold to customers. Two government fleets account for 34 of the 37 vehicles. The balance of the Endurance vehicles not sold to customers were sold to LandX Motors Inc. ("**LandX**") pursuant to the Asset Purchase Agreement (the "**Asset Purchase Agreement**") by and among the Debtors, LAS Capital LLC (together with its assignor, LandX, the "**Purchaser**"),[4] and the principal of the Purchaser, as guarantor (the "**Guarantor**"), dated September 29, 2023. As part of this transaction, the Purchaser assumed all liabilities relating to the purchased vehicles pursuant to Section 2.3(a) of the Asset Purchase Agreement.[5]

10. During these Chapter 11 Cases, the Debtors ceased production of the Endurance trucks.

---

[3] Pursuant to the Debtors and Foxconn's cost sharing arrangement, Foxconn will also share in 50% of any net proceeds from the resale, if any, of decommissioned vehicles or vehicle parts following the repurchase contemplated by this Motion. All of the Debtors' and Foxconn's rights of setoff, recoupment, indemnification, contribution and subrogation are hereby expressly reserved and are not affected by the relief herein.

[4] The Purchaser assigned its rights under the Asset Purchase Agreement to its Affiliate (as defined in the Asset Purchase Agreement), LandX Motors Inc., a Delaware corporation (the "**Assignee**"). References herein to Purchaser shall also refer to the Assignee.

[5] In addition, the Company had sold one vehicle to an affiliate of the Purchaser prior to entry into the Asset Purchase Agreement. The Purchaser assumed all liabilities related to such vehicle pursuant to Section 2.3(a) and 2.4 of the Asset Purchase Agreement, in addition to those sold pursuant to the Asset Purchase Agreement.

### C. The Debtors' Warranty Programs

11. As part of the sale of vehicles and consistent with industry practice, the Debtors offered certain programs that provide warranties to customers for the vehicles that the Debtors have sold (the "**Warranty Programs**"), including Warranty Programs that cover claims arising from the failure of the vehicles to meet certain specifications.[6] These Warranty Programs typically cover the aftermarket service, support, repair, and replacement of defective parts of the vehicles during the warranty period.

12. Additionally, in connection with the Warranty Programs, the Debtors have contracted with third-party providers to provide warranty work and services for the Debtors' vehicles where permitted by law. In this regard, the Debtors may incur certain liabilities to the third-party providers in connection with repairs performed under the Warranty Programs. The Debtors may also, where permitted by law, perform the work directly or provide support to the third-party providers conducting the service.

13. On the Petition Date, in order to preserve their business in connection with the sales process, the Debtors filed a motion to, among other things, maintain and honor their Warranty Programs. [Docket No. 13]. On July 25, 2023, the Court granted the motion on a final basis. [Docket No. 186].

---

[6] Specifically, subject to certain conditions, exclusions, and disclaimers, the Debtors' Warranty Programs cover (a) the repairs, adjustments, or replacement of parts necessary to correct defects in the materials or workmanship of the vehicle and any parts manufactured or supplied by the Debtors, arising during the earlier of three years or the first 36,000 miles after purchase; (b) repair or replacement necessary to correct defects in the lithium-ion battery or hub motor manufactured or supplied by the Debtors for the earlier of eight years or 100,000 miles after purchase, subject to certain conditions, exclusions, and disclaimers; (c) repair or replacement of any original body panel that develops perforation ("rustthrough") from corrosion for a period of sixty months; and (d) paint correction (one time) for chemical spotting during the earlier of the first twelve months or 12,000 miles after purchase.

**D.     Regulatory Requirements**

14.     The Debtors operate in an industry that is subject to extensive governmental regulation in respect of vehicle safety and testing as well as environmental impacts (the "**Regulatory Obligations**"). Among other things, the Debtors' vehicles are subject to, and must comply with, numerous regulations established by the National Highway Traffic and Safety Administration ("**NHTSA**"), including applicable U.S. federal motor vehicle safety standards ("**FMVSS**"). As an OEM, the Debtors must self-certify that their vehicles meet all applicable FMVSS requirements and, when applicable, the NHTSA bumper standards before a vehicle can be manufactured for sale, offered for sale, introduced into interstate commerce, imported into, or sold in the United States. The Debtors believe the Endurance has met all applicable FMVSS requirements.

15.     Nevertheless, if a safety defect is discovered, the manufacturer must notify NHTSA, as well as vehicle or equipment owners, dealers, and distributors. The manufacturer is then required to remedy the problem at no charge to the owner. Manufacturers often voluntarily initiate recalls, but recalls can be initiated by others who are influenced by NHTSA investigations or ordered by NHTSA and enforceable via the courts. Thus, how and when a recall will occur is unpredictable. Indeed, recalls are common in the automotive industry. During the brief time period that the Company was selling vehicles, it was required to report and address three recalls, two of these were driven by supplier quality errors and were not discovered until well after the vehicles were built and delivered. The risk of recall is even higher with vehicles utilizing new and innovative technology, like electric vehicles.

16.     In addition to FMVSS, the Debtors must comply with other NHTSA requirements and other federal laws and regulations administered by NHTSA, including, for example, early

warning reporting requirements, Corporate Average Fuel Economy reporting and owner's manual requirements. Violations of these governmental regulations and standards and applicable laws may result in substantial civil and criminal fines, penalties and/or requirements to conduct or pay for corrective work.

### E. Sale of Certain of the Debtors Assets

17. During these Chapter 11 Cases, the Debtors conducted a robust process to market and sell certain of their assets. On September 29, 2023, the Debtors selected LAS Capital LLC (together with, its assignee LandX) as the successful bidder with respect to the sale process and entered into the Asset Purchase Agreement. Under the Asset Purchase Agreement, the Purchaser agreed to acquire specified assets of the Debtors related to the design, production and sale of electric light duty vehicles focused on the commercial fleet market. The purchased assets included assets critical to complying with the Debtors' Regulatory Obligations. The Purchaser also agreed to assume certain specified liabilities under the Asset Purchase Agreement. Such assumed liabilities did not include liabilities related to the Endurance trucks already sold to customers.

18. On October 18, 2023, the Court held a hearing on the sale of the Debtor's assets to the Purchaser and approved the sale. On the same day, the Court entered an order approving the sale of certain of the Debtors assets to the Purchaser [Docket No. 586] (the "**Sale Order**"). The sale to the Purchaser pursuant to the Sale Order and the Asset Purchase Agreement closed on October 27, 2023. After the closing of the asset sale, the Debtors significantly reduced their personnel, including by terminating many of the personnel required to comply with the Debtors' Regulatory Obligations.

19. As a result of the sale, the loss of key personnel and the expected confirmation of a plan of reorganization which the Debtors seek to occur by year end, the Debtors will have no

means to fulfill their warranty, recall, and other obligations to their customers and/or NHTSA after the effective date of the plan. Accordingly, future costs of service and repair will be borne by the Debtors' customers, the Debtors are unlikely to be able to comply with any regulatory obligations that may materialize (if any), and the Debtors could face certain negative regulatory consequences and significant claims as a result. While the Debtors have obtained a short-term extension of their existing product liability insurance policy, of which Foxconn has agreed to equally bear the cost, the Debtors have been informed that a longer-term extension or renewal would be either be not possible or prohibitively expensive.

20. The Debtors, in their reasonable business judgment, believe that it is in the best interest of their estates, stakeholders, and customers to offer to repurchase up to 35 Endurance vehicles currently owned by their customers to limit or eliminate potential future warranty and regulatory liabilities.[7] The proposed repurchase price and decommissioning cost of $31,000 per vehicle represents less than fifty percent of the original sales price per vehicle. In addition, as stated above, Foxconn has agreed to bear one-half of the repurchase cost up to an aggregate of $542,500. In connection with the requested relief to repurchase the vehicles and except as otherwise agreed by the Debtors, customers who agree to the repurchase would waive all warranty obligations and other claims against the Debtors and Foxconn, effective upon the date of the applicable repurchase. Limiting the Debtors' liability to such amount provides certainty and eliminates the risk that the Debtors' contingent warranty and regulatory liabilities could be materially higher. Accordingly, the Debtors seek authority to repurchase the Endurance trucks as set forth herein. The Creditors' Committee supports the relief requested in the Motion with the

---

[7] Although the Debtors have not finalized any agreements with customers as of the date of this Motion, the Debtors have engaged in discussions with customers who have indicated that they are interested in pursuing a repurchase by the Debtors at the indicated price, subject to finalizing the terms of the repurchases.

understanding that half of the cost of the repurchase will be borne by Foxconn as contemplated herein and in the Proposed Order. The Debtors have been in consultation with the Equity Committee regarding the Motion and understand that the Equity Committee reserves its rights with respect to the relief requested herein.

**Basis for Relief**

21.     Section 105(a) of the Bankruptcy Code confers upon the Court broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings") (citing *U.S. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990)); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad.") (citation omitted). The proposed repurchase of the vehicles currently held by customers is appropriate insofar as it promotes the Debtors' ability to minimize potential liabilities and maximize value for the benefit of their creditors and stakeholders.

22.     Section 363(b)(1) of the Bankruptcy Code empowers a court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Cont'l Air Lines, Inc. (Cont'l)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that, "for the

debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business" and that courts should consider, among other things, "the proportionate value of the asset to the estate as a whole" when reviewing a proposed transaction).

23. Courts also emphasize that the business judgment standard is not an onerous standard; rather it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). Courts require only that the debtors "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003).

24. Here, the standard set forth in section 363 of the Bankruptcy Code is readily met and is in the best interests of the estate and all of its stakeholders. The Debtors will be unable to comply with their warranty, recall, and other regulatory obligations after the Effective Date of the Plan. This may give rise to claims against the estate and, even now, could constitute unliquidated and undefined contingent liabilities of the Debtors. Such obligations could be material and could impact the administration of their estates, especially if such liabilities must be reserved for or estimated in the future. Authorizing the Debtors to buy back the existing Endurance vehicles will allow the Debtors to limit their exposure to such claims and will provide the certainty required to efficiently administer their estates. In the Debtors' view, the estimated cost of $1,085,000 (half of which Foxconn has agreed to pay or reimburse) to repurchase all Endurance trucks held by customers is reasonable under the circumstances.

25. Finally, the Debtors' customers appear willing to participate in a buyback program. Customers have indicated that they are interested in pursuing a repurchase by the Debtors at the indicated price, subject to finalizing the terms of the repurchases.  Moreover, Foxconn has agreed to that it will  pay for (or reimburse Lordstown for) 50% of the total cost of the vehicles actually repurchased by Lordstown (up to $31,000 per vehicle), without regard to any setoff, recoupment, or other rights that Foxconn or the Debtors may have.  Accordingly, the cost of the proposed repurchase to the Debtors estates will be up to $542,500.

26. The Debtors respectfully request that the Court approved the Motion and enter the Proposed Order.

## Reservation of Rights

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended or should be construed as, or deemed to constitute, an agreement or admission as to the amount, priority, character, or validity of any claim against the Debtors on any grounds (whether under bankruptcy law or otherwise), a commitment or requirement to pay any claim, a waiver or impairment of the Debtors' or any other party in interest's rights to dispute any claim on any grounds, or an admission as to the amount, priority, enforceability, perfection, or validity of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  The Debtors expressly reserve their rights to contest any claims under applicable bankruptcy and non-bankruptcy law.

## Waiver of Bankruptcy Rule 6004(h)

28. The Debtors also request that, to the extent applicable, the Court waive the stays imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief sought herein is necessary for the Debtors to protect the interest of their estates and stakeholders. Accordingly, the Debtors respectfully submit that ample cause exists to justify the request that the order authorizing repurchase of the Endurance trucks be effective immediately upon entry, thereby waiving the 14-day stays imposed by Bankruptcy Rule 6004(h).

### Notice

29. Notice of this Motion will be provided to the following parties: (a) the U.S. Trustee; (b) counsel to Foxconn; (c) counsel to the Creditors' Committee; (d) counsel to the Equity Committee; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; (h) the state attorneys general for states in which the Debtors conduct business; (i) any parties that have asserted liens against the Debtors' assets; (j) counsel to LAS Capital LLC; (k) all parties entitled to notice pursuant to Local Bankruptcy Rule 2002-1(b). Based on the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

### Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Morgan L. Patterson*
**WOMBLE BOND DICKINSON (US) LLP**
Donald J. Detweiler (Bar No. 3087)
Morgan L. Patterson (Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
don.detweiler@wbd-us.com
morgan.patterson@wbd-us.com

*Co-Counsel to the Debtors and Debtors in Possession*

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

Roberto Kampfner (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
RJ Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rkampfner@whitecase.com
doah.kim@whitecase.com
rj.szuba@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*