# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - o

|  |  |
|---|---|
| In re: | Chapter 11 |
| LORDSTOWN MOTORS CORP., *et al.*, | Case No. 23-10831 (MFW)<br>(Jointly administered) |
| Debtors.[1] | Re: D.I. 657<br>**Hearing Date: Jan. 10, 2024, at 3:00 p.m.**<br>**Obj. Deadline: Dec. 7, 2023, at 4:00 p.m.**<br>**(extended for UST to Dec. 29, 2023)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - o

## OBJECTION OF THE UNITED STATES TRUSTEE TO CONFIRMATION OF THE DEBTORS' PLAN

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* [D.I. 657] (the "Plan"), and in support of his objection respectfully states:

## PRELIMINARY STATEMENT

1.     The Plan would give the Debtors a discharge, despite the elements of Section 1141(d)(3) appearing to be satisfied.  For this reason, the Plan cannot be confirmed under Section 1129(a)(1) of the Bankruptcy Code.

## JURISDICTION & STANDING

2.     Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

---

[1] Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").  One of the U.S. Trustee's duties is to supervise the administration of chapter 11 cases by, whenever he considers it appropriate, "monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements[.]"  28 U.S.C. § 586(a)(3)(B).

4.      The U.S. Trustee has standing to be heard on the Plan pursuant to 11 U.S.C. § 307.

## **ARGUMENT**

5.      The Court should deny confirmation because the Plan does not comply with Section 1141(d)(3) and, by extension, does not satisfy Section 1129(a)(1).

6.      Section 1129(a)(1) of the Bankruptcy Code provides that the Court shall confirm a plan only if the plan "complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1).

7.      Section 1141(d)(3) of the Bankruptcy Code provides:

The confirmation of a plan does not discharge a debtor if—

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

2

11 U.S.C. § 1141.

8.      Article VIII.B of the Plan would give the Debtors a discharge. ("The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring; *provided that*, notwithstanding anything in the foregoing, Interests treated pursuant to the Plan shall receive such treatment as specified in the Plan.").

9.      Article VIII.F of the Plan would establish a discharge injunction.

10.      However, the Debtors have not established that they are eligible for a discharge under Section 1141(d)(3).

11.      First, the Plan provides for the liquidation of all or substantially all of the Debtors' property. After the main asset sale in this case (to LandX) closed, the Debtors had "a limited amount of tangible assets remaining in its Lordstown, Ohio, and Farmington Hills, Michigan facilities." D.I. 650 ¶ 7. The Debtors are now selling their remnant assets. *See* D.I. 737, 814 & 826. Under the Plan, general unsecured creditors will receive cash. *See* Plan § III.B.3.b ("each Holder of an Allowed General Unsecured Claim against a Debtor shall receive its *Pro Rata* share of the Debtors' Cash"). Common equity holders will retain their shares and, on account of them, will also receive cash. *See id.* § III.B.7.b (holders of common stock "shall only receive Distributions from Post-Effective Date Debtor Cash."[2]). The Plan further provides: "The Post-Effective Date Debtors shall fund Distributions to Holders of Claims and Interests from all Assets, which include, but are not limited to, (i) Cash on hand as of the Effective Date, (ii) proceeds from the sale of the Debtors' assets, (iii) proceeds from Retained Causes of Action and (iv) insurance proceeds received by the Post-Effective Date Debtors." *Id.* § V.C. Under the Plan,

---

[2] The Plan defines "Post-Effective Date Debtor Cash" to mean "the amount of Cash remaining after paying or reserving for the treatment under the Plan of Allowed Administrative Claims, Allowed Other Priority Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and the Post-Effective Date Debtor Amount." Plan § I.A.105.

the Debtors will turn their remaining assets into cash and distribute the net proceeds.

12.     Second, the Debtors will not engage in business after consummation of the

Plan.  "Business" means a "commercial enterprise carried on for profit; a particular occupation or

employment habitually engaged in for livelihood or gain."  BLACK'S LAW DICTIONARY (8th ed.

2004) at 211.  Some courts have held that Section 1141(d)(3)(B) does not require a post-effective

date debtor to continue engaging in its pre-petition business.  *See In re Lucido*, --- B.R. ---- , 2023

WL 5962839 at *5 (Bankr. N.D. Cal. Sept. 13, 2023) (Section 1141(d)(3)(B) "is stated in the

present tense, is forward-looking, and simply requires that the debtor 'engage in business' post-

consummation.  The court declines to insert a business continuity requirement into the statute

where none exists."); *cf. In re Flintkote Co.*, 486 B.R. 99, 132 (Bankr. D. Del. 2012) (stating in

dicta that there is "no requirement under § 1141(d) that a debtor continue the same business

activities as it engaged in pre-petition . . . nor any language qualifying what level of business

activity is sufficient.").  But that view is not uniform.  *See In re Grausz*, 63 Fed.Appx. 647, 650

(4th Cir. 2003) ("It seems clear to us that § 1141(a)(3)(B) does not refer to basic employment by

an individual debtor but to the *continuation* of a *pre-petition* business[.]") *and In re South Canaan

Cellular Investments, Inc.*, 427 B.R. 44, 84-85 (Bankr. E.D. Pa. 2010) (debtors ineligible for

discharge where, among other things, debtors would not be engaging in their prepetition business

of acting as general and limited partners of non-debtor telecommunications company).  "[E]ven a

temporary continuation of business after a plan's confirmation is sufficient to discharge a Chapter

11 debtor's debt." *Matter of Highland Capital Management, L.P.*, 48 F.4th 419, 433 (5th Cir.

2022).  An entity does not engage in business when its assets are liquidated and the entity is

dissolved.  *See Um v. Spokane Rock I, LLC*, 904 F.3d 815, 819 (9th Cir. 2018).

13.     Here, the Debtors will not engage in business because the Debtors have no

revenue-producing operations.  The Debtors' 10-Q for the quarter ending September 30, 2023

states: "As a result of closing the transactions contemplated by the LandX Asset Purchase

Agreement, the Company has no remaining revenue-producing operations, and its primary

operations consist of expenses associated with completing the Chapter 11 Cases."  Lordstown

Motors Corp. Form 10-Q (filed Nov. 14, 2023) (the "9/30/23 10-Q")[3] at 43.  If incurring expenses

to finish the administration of a chapter 11 case counted as being in business, then Section

1141(d)(3)(B) would almost never be satisfied.

14.     The Plan says "the Post-Effective Date Debtors shall be authorized, in their

sole discretion, to operate in the ordinary course of business, including monetization of the

Debtors' Retained Causes of Action and other assets."  Plan § V.C.  But the Debtors' post-

effective date activities will not be in their "ordinary course of business" because they fail the

"vertical dimension" test.  Under the vertical dimension test, "the touchstone of ordinariness is the

interested parties' reasonable expectations of what transactions the debtor in possession is likely

to enter in the course of its business.  The primary focus thus is on the debtor's pre-petition

business practices and conduct, although a court must also consider the changing circumstances

inherent in the hypothetical creditor's expectations."  *In re Roth American, Inc.*, 975 F.2d 949,

952-53 (3d Cir. 1992) (cleaned up).

15.     Here, the Debtors are a carmaker.  They "were founded for the purpose of

developing, manufacturing and selling electric vehicles ("**EVs**") primarily to commercial fleet

customers." *Declaration of Adam Kroll in Support of Debtors' Chapter 11 Petitions and First

Day Motions* [D.I. 15] ¶ 10.  "The Debtors' mission is to accelerate electric vehicle adoption and

---

[3] https://www.sec.gov/ix?doc=/Archives/edgar/data/1759546/000155837023019031/ride-
20230930x10q.htm#MANAGEMENTSDISCUSSIONANDANALYSISOFFINANC at p. 43 (last visited
Dec. 15, 2023).

be a catalyst in the transition of commercial fleets to all-electric vehicles for a more sustainable future." *Id.* ¶ 1.  The Debtors cannot complete that mission under the Plan.  The Debtors sold their manufacturing plant to Foxconn prepetition.  *See id.* ¶ 27.  The Debtors stopped producing trucks during these cases.  *See* D.I. 731 ¶ 10.  In total, the Debtors sold 37 trucks to customers. *See id.* ¶ 9.  The Debtors are now trying to *buy those trucks back* from customers because "the Debtors will have no means to fulfill their warranty, recall, and other obligations to their customers and/or NHTSA after the effective date of the plan." *Id.* ¶ 19.  Surely trade creditors had no expectation that the Debtors would buy their trucks back off of the market and would exist solely to pursue litigation and monetize tax attributes when they supplied brake pads, fabricated sheet metal, tooling, and the like to the Debtors.  Indeed, in their 9/30/23 10-Q, the Debtors conceded that "the nature of our current business activities is materially different than those prior to the filing the Chapter 11 Cases on June 27, 2023" and that the Debtors "do not know what the post-effective date operations will include[.]"  9/30/23 10-Q at 15 & 56.

16.     The Debtors have no operations and no revenue.  The Debtors have reduced their employee headcount from 243 to 16.  *See* D.I. 843 & 844.  Under the Plan, the Debtors' main activities will be pursuing litigation claims and trying to monetize tax attributes.  *See*, *e.g.*, Disclosure Statement §§ IV.D.9 & IV.D.10.  Fundamentally, those things are asset monetization, not conducting a business.  Section 1141(d)(3)(B) is satisfied.

17.     Third, the Debtors, as corporations, would not be eligible for a discharge if they were chapter 7 debtors pursuant to Section 727(a)(1), which provides that the Court shall grant a debtor a discharge unless the debtor is not an individual.  *See*, *e.g.*, *In re Flintkote Co.*, 486 B.R. at 129 n.80 ("Section 1141(d)(3)(C) is always satisfied for corporate debtors, as they cannot receive discharges in chapter 7.").

18.    For the foregoing reasons, the Debtors are not eligible for a discharge under Section 1141(d)(3).  However, articles VIII.B and VIII.F would give the Debtors a discharge.  As a result, the Plan does not satisfy with Section 1129(a)(1) and cannot be confirmed.

### <u>CONCLUSION</u>

19.    The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny confirmation of the Plan unless the confirmation order provides that, notwithstanding anything in the Plan to the contrary, the Debtors shall not receive a discharge, and there shall be no discharge injunction, and grant such other relief as the Court deems appropriate and just.

Dated: December 29, 2023
Wilmington, DE

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov