## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NANOSTRING TECHNOLOGIES, *et al.*, [1] | Case No. 24-10160 (CTG) |
| Debtors. | (Jointly Administered) |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' NOTICE OF DEPOSITION TO THE DEBTORS PURSUANT TO FED. R. CIV. P. 30 (B)(6) AND FED. R. BANKR. P. 7030 IN CONNECTION WITH THE DIP MOTION

**PLEASE TAKE NOTICE THAT**, pursuant to Federal Rules of Civil Procedure 26 and 30, made applicable by Rules 7026, 7030, and 9014 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (the "Debtors"), by and through its proposed undersigned counsel, shall take the deposition upon oral examination of the Debtors concerning the DIP Motion (as defined below) by one or more corporate witnesses designated by the Debtors to testify on their behalf with respect to the Examination Topics set forth in **Schedule A** attached hereto.

The deposition shall take place on March 5, 2024 at 10:00 a.m. Eastern Time at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 or in such other manner as may be agreed to by the parties, before a person authorized to administer oaths. The deposition will be recorded by stenographic means and may also be recorded by audio or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

audiovisual means and shall continue day-to-day until completed.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Debtors are required to designate one or more knowledgeable persons to testify on their behalf with respect to the matters set forth in **Schedule A** attached hereto.  The Committee reserves the right to take additional depositions of Debtors and any affiliated entities and to seek additional discovery from Debtors and any other parties regarding the above-captioned cases or any other matters.

Dated: February 24, 2024

**TROUTMAN PREPPER HAMILTON SANDERS LLP**

*/s/ Evelyn J. Meltzer*
David M. Fournier, Esq.
Evelyn J. Meltzer, Esq.
Tori L. Remington, Esq.
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: david.fournier@troutman.com
        evelyn.meltzer@troutman.com
        tori.remington@troutman.com
-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Philip C. Dublin, Esq. (*pro hac vice* pending)
Meredith A. Lahaie, Esq. (*pro hac vice* pending)
Marty L. Brimmage, Jr. (*pro hac vice* pending)
One Bryant Park
Bank of America Tower
New York, NY  10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: pdublin@akingump.com
        mlahaie@akingump.com
        mbrimmage@akingump.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Nanostring Technologies, Inc., et al.*

**<u>SCHEDULE A</u>**

**<u>DEFINITIONS</u>**[2]

The following definitions of terms apply to the Examination.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      The term "***Affiliate***" or "***Affiliates***" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

2.      The terms "***all***," "***any***," and "***each***" shall each be construed as encompassing any and all of these terms.

3.      The connectives "***and***" and "***or***" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a topic all responses that might otherwise be construed to be outside of its scope.

4.      The term "***Assets***" shall mean both real assets and intangible assets, including real property (whether owned or leased), facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, cash equivalents, and prescriptions, including the assets identified as subject to the DIP Liens.

5.      The term "***Approved Sale***" shall have the meaning ascribed to the term "Approved Sale" in paragraph 30 of the DIP Motion.

6.      The term "***Board***" means any board of directors, managers, or comparable supervisory body, or any group, committee, or subcommittee with the responsibility of, among other things, governing any entity or overseeing the activities and operations of any Debtor entity.

---

[2] For the avoidance of doubt, the Committee does not agree to any definition of any term in the DIP Motion, DIP Credit Agreement, or any other filing in the Chapter 11 Cases to the extent that such a definition purports to acknowledge the grant of perfected liens on any of the Debtors' Assets.

7.      The term "*Braidwell*" shall mean Braidwell Partners Transaction Master Fund LP and/or its Affiliates.

8.      The term "*Cash Collateral*" shall have the meaning ascribed to the term "Cash Collateral" under 11 U.S.C. § 363.

9.      The term "*Cesarz Declaration*" means the *Declaration of John Cesarz in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 25], filed on February 5, 2024.

10.      The term "*Chapter 11 Cases*" means the jointly administered chapter 11 cases pending before the United States Bankruptcy Court, District of Delaware, captioned *In re: NanoString Technologies*, et al., Case No. 24-10160 (CTG).

11.      The term "*Closing Date*" shall have the meaning ascribed to "Closing Date" in the DIP Credit Agreement.

12.      The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, social media messages (*e.g.*, Facebook), WhatsApp chat messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video

tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

13.    The term "***concerning***" shall mean relating to (however remotely), regarding, referring to, describing, evidencing, or constituting.

14.    "***Debtors***" shall mean, collectively or individually, NanoString Technologies, Inc., NanoString Technologies International, Inc., NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH, including any predecessors-in-interest, successors-in-interest, and any Professionals, representatives, employees, agents, accountants, or any other persons or entities acting on its behalf or in concert with any of the Debtors.

15.    The term "***Deerfield***" shall mean Deerfield Partners, L.P. and/or its Affiliates.

16.    The term "***Delconte Declaration***" means the *Declaration of Jesse Delconte in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 47], filed on February 6, 2024.

17.    The term "***DIP Agent***" means Wilmington Trust, National Association, in its capacity as administrative agent under the DIP Credit Agreement, together with its respective successors, assigns or any replacement agent appointment pursuant to the terms of the DIP Credit Agreement.

18.    The term "***DIP Budget***" shall mean the 13-week cash flow forecast attached as Exhibit 1 attached to the *Notice of Filing of DIP Budget* [Docket No. 45], filed on February 6, 2024, and all subsequent or amended versions of that cash flow forecast.

19.     The term "*DIP Credit Agreement*" shall mean that certain Credit Agreement and Guaranty dated as of February 8, 2024 attached as Exhibit 1 to the *Notice of Filing of Execution Version of DIP Credit Agreement* [Docket No. 80], filed on February 8, 2024, and any subsequent amendments or modifications thereto.

20.     The term "*DIP Facility*" means the senior secured superpriority postpetition credit facility in a principal amount of up to $142.5 million to be provided by the DIP Lenders.

21.     The term "*DIP Lenders*" shall mean Braidwell and Deerfield and/or their respective Affiliates.

22.     The term "*DIP Liens*" shall mean liens and security interests in any Assets and/or properties of any of the Debtors and their respective bankruptcy estates on account of the DIP Facility.

23.     The term "*DIP Loans*" shall mean the loans to be provided under the DIP Facility.

24.     The term "*DIP Motion*" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 24], filed on February 5, 2024, and any subsequent amendments or modifications thereto.

25.     The "*DIP Roll-Up*" shall mean that certain $95,000,000 term loan facility resulting from the roll-up and exchange of certain of Prepetition Notes in the aggregate principal amount of $25,000,000 on the Closing Date and an additional aggregate principal amount of $70,000,000 on the Final Order Date.

26.     The term "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

27.     The term "*European CosMx Litigation*" shall mean the litigation referenced in the First Day Declaration.

28.     The term "*Exchange Agreement*" shall mean that certain Exchange Agreement, dated November 6, 2023, whereby the Prepetition 2026 Secured Noteholders exchanged their Prepetition 2025 Notes for the Prepetition 2026 Secured Notes, and any subsequent amendments or modifications thereto.

29.     The term "*Final Order Date*" shall have the meaning ascribed to "Final Order Date" in the DIP Credit Agreement.

30.     The term "*First Day Declaration*" shall mean the *Declaration of R. Bradley Gray in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 26], executed and filed on February 5, 2024.

31.     The term "*GeoMx Litigation*" shall mean the litigation referenced in the First Day Declaration.

32.     The term "*including*" shall mean including, but not limited to.

33.     The term "*2026 Indenture*" shall have the meaning ascribed to the term "2026 Indenture" in the DIP Motion.

8

34.     The term "*Person*" shall mean any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

35.     The term "*Prepetition 2026 Secured Noteholders*" shall have the meaning ascribed to the term "Prepetition 2026 Secured Noteholders" in the DIP Motion.

36.     The term "*Prepetition 2025 Notes*" shall have the meaning ascribed to the term "Prepetition 2025 Notes" in the DIP Motion.

37.     The term "*Prepetition 2026 Secured Notes*" shall have the meaning ascribed to the term "Prepetition 2026 Secured Notes" in the DIP Motion.

38.     The term "*Prepetition Notes*" shall have the meaning ascribed to "Prepetition Notes" in the DIP Credit Agreement.

39.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants, advisors, and testifying or non-testifying experts.

40.     The term "*U.S. CosMx Litigation*" shall mean the litigation referenced in the First Day Declaration.

41.     The terms "*You*" and "*Your*" shall mean and refer to all Debtors in the Chapter 11 Cases and all Affiliates of any of the Debtors.

42.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

43.     Any references to a Person shall be deemed to include such Person's agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

44.     Any references to a corporation, partnership, proprietorship, association, organization or any other business or legal entity shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other Person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

45.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## EXAMINATION TOPICS

1.     The DIP Facility, including the negotiations concerning the DIP Facility and the decision to enter into the DIP Facility.

2.     Market comparables considered in respect of the DIP Facility and the terms of the DIP Facility, including any analyses of the fairness and/or reasonableness of the terms of the DIP Facility according to market standards.

3.     Potential alternative financings, including the Debtors' decision to enter into the DIP Facility as opposed to an alternative debtor in possession facility.

4.     Discussions, negotiations, and agreements with the Prepetition 2026 Secured Noteholders regarding the Debtors' use of Cash Collateral.

5.     The "agreed adequate protection package to be provided to the Prepetition 2026 Secured Noteholders" referenced in paragraph 46 of the DIP Motion.

6.     The Debtors' agreement with the DIP Lenders that the proceeds of an Approved Sale will be applied in a particular order, as referenced in paragraph 31 of the DIP Motion, including negotiations surrounding the same.

7.     The anticipated uses and purposes of the proceeds of the DIP Facility.

8.     The "significant concessions" made by the Prepetition 2026 Secured Noteholders as referenced in paragraph 16 of the Cesarz Declaration.

9.     Marketing and proposals for any debtor-in-possession financing, including concerning the DIP Facility and/or any alternatives to the DIP Facility.

10.     Indications of interest for debtor in possession financing received by the Debtors.

11.     Discussions with potential lenders for potential debtor-in-possession financing.

12.     Any alternatives to the DIP Facility considered by the Debtors, including the "actionable alternatives" considered by the Debtors, as referenced in paragraph 12 of the Delconte Declaration.

13.     The "senior secured debtor-in-possession financing facility" referenced in paragraph 4 of the DIP Motion.

14.     The "priming dispute" and "contested cash collateral hearing" that the Debtors believe would have ensued if the Debtors pursued a senior secured debtor-in-possession financing facility, as referenced in paragraph 4 of the DIP Motion.

15.     The DIP Roll-Up, including the ratio of the DIP Roll-Up (including how it increased or decreased over the course of negotiations), negotiations with the DIP Lenders related to the DIP Roll-Up, and/or any conditions to the DIP Facility on account of the inclusion of the DIP Roll-Up.

16.     Market comparables considered in respect of the DIP Roll-Up.

17.     The fees, costs, and interest rates associated with the DIP Facility, including their reasonableness and any market comparables considered.

18.     The Board's consideration of and decisions related to the DIP Facility fees, costs, and interest rates.

19.     Assets subject to the DIP Liens and the value of such Assets.

20.     The value of previously unencumbered Assets that would be encumbered under the DIP Liens.

21.     Avoidance actions and intercompany claims that may be subject to DIP Liens.

22.     The grant of a lien in favor of the DIP Lenders and/or DIP Agent on proceeds of avoidance actions.

23.     The effect of the DIP Liens and/or DIP Facility on creditor recoveries in the Chapter 11 Cases, including on unsecured creditor recoveries.

24.     Professional fees paid or to be paid on account of the DIP Credit Agreement.

25.     The "Required Milestones" referenced in the DIP Credit Agreement, including the appropriateness of such "Required Milestones."

26.     The Exchange Agreement (including the transactions entered into in connection with the Exchange Agreement) and the 2026 Indenture, including the negotiations, the Debtors' decision making, and the liens and guarantees required as part of the Exchange Agreement and/or 2026 Indenture.

11

27.    Any potential alternatives to the transactions contemplated by the Exchange Agreement that the Debtors considered.

28.    Prepetition 2025 Notes.

29.    Prepetition 2026 Secured Notes.

30.    Any valuation analysis or solvency analysis conducted in connection the 2026 Indenture and/or with respect to the transactions entered in connection with the Exchange Agreement.

31.    The Debtors' timing for filing for bankruptcy.

32.    The Debtors' encumbered cash assets and unencumbered cash assets, including the commingling of any encumbered and unencumbered cash assets.

33.    The Debtors' need for liquidity, including the Debtors' need for debtor-in-possession financing.

34.    Budgets, liquidity needs, and forecasts for the Debtors for calendar years 2023 onwards, including regarding the DIP Budget and any other budgets or forecasts concerning or relating to the Chapter 11 Cases.

35.    The value, potential damages analysis, and/or analysis of the likelihood of success of the GeoMx Litigation, the U.S. CosMx Litigation, and/or the European CosMx Litigation, including information or Documents shared with Deerfield and/or Braidwell.

36.    Documents, written discovery, and/or expert reports served or produced in the GeoMx Litigation, the U.S. CosMx Litigation, and/or the European CosMx Litigation concerning damages for any alleged infringement.

37.    The Board's consideration of and decisions related to (a) the DIP Facility, (b) marketing efforts surrounding the DIP Facility, (c) any alternative debtor-in-possession facility, (e) the DIP Roll-Up, (f) the DIP Liens, (g) the DIP Credit Agreement, (h) the Exchange Agreement, (i) the Prepetition 2026 Secured Notes, and (j) the DIP Budget and any other budgets or forecasts concerning or relating to the Chapter 11 Cases.

*[Remainder of page left intentionally blank]*