**EXHIBIT A**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    Case No. 11-12799(MFW)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    SOLYNDRA LLC, ET AL,

8

9          Debtors.

10

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                          United States Bankruptcy Court

14                          824 North Market Street

15                          Wilmington, Delaware

16

17                          October 22, 2012

18                          10:02 AM

19

20

21    B E F O R E :

22    HON. MARY F. WALRATH

23    U.S. BANKRUPTCY JUDGE

24

25    ECR OPERATOR:  BRANDON MCCARTHY

1    HEARING re Debtor's Amended Joint Chapter 11 Plan (Filed

2    September 7, 2012; Docket No. 1059)

3

4    HEARING re Memorandum in Support of Confirmation of Debtors'

5    Amended Joint Chapter 11 Plan and Omnibus Reply to

6    Objections to the Plan (Filed October 15, 2012; docket No.

7    1140)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sheila Orms

1    testified quite clearly that that's exactly the intention,

2    and that those efforts are already underway, and there's no

3    controverting evidence.

4              THE COURT:  Thank you.  All right.  Let's take a

5    short break and I'll issue a ruling.

6    (Recessed at 11:22 a.m.; reconvened at 11:32 a.m.)

7              THE CLERK:  All rise.

8              THE COURT:  Well, let me address the or remaining

9    objections to the debtor's plan.  But first, let me address

10   the IRS claim that the primary purpose of the plan is the

11   avoidance of taxes.  And I think that objection must be

12   overruled.

13             It is clear in this case that the bankruptcy and

14   the plan of reorganization deal with many other things other

15   than the value of the NOLs, or the preservation of the NOLs.

16   The bankruptcy and the plan of reorganization dealt with the

17   settlement of the creditor's committee's claims against the

18   tranch A lenders, settlement of the WARN Act claims again

19   who claimed they had a claim against Argonaut and Madrone

20   and not simply the debtor.

21             It provides a distribution to creditors now, the

22   preservation of claims through a litigation trust.  For the

23   benefit of creditors, it is much more than simply the

24   preservation of the NOLs.

25             The IRS argues that there would be no reason for

1    Madrone and Argonaut to agree to pay what they are into the

2    plan for the satisfaction of unsecured claims if the NOLs

3    were not there.  I'm not sure that's true, because in fact

4    since they were being sued or threatened to be sued by the

5    WARN Act claimants for a judgment and by the unsecured

6    creditors to recharacterize their tranch A claim, there were

7    many reasons to agree to enter into those settlements, and

8    not simply to preserve the NOLs.

9         I have read the various e-mails.  It is clear that

10   Madrone and Argonaut were aware of the NOLs.  It was clear

11   they were aware that if the plan were restructured in a

12   certain way the NOLs could be preserved.  But that does not

13   mean that the entire purpose of this plan and even

14   structuring the plan to preserve the NOLs means that the

15   primary purpose of the plan is to avoid taxes.

16        Again, it has to be the primary, most important

17   purpose of the plan for tax avoidance, and I just do not see

18   that in this circumstance.

19        As in WaMu though, the plan does not eliminate any

20   rights the IRS may have to assert that the NOLs cannot be

21   utilized under the Internal Revenue Code, at the time that

22   the reorganized debtor seeks to use them.  Quite frankly, I

23   view the plan and the confirmation order as neither

24   enhancing nor affecting any of the rights of any of the

25   parties to the NOL.

1           So I'll overrule the IRS objection on that point.

2           With respect to the U.S. Trustee's argument that

3    the discharge of holdings is inappropriate under 1141(d).  I

4    will overrule that also.  There are three factors that must

5    be met, all three.  It is clear that the third factor is met

6    here.  The reorganized debtor holdings is not eligible for a

7    discharge under 727 because it is not an individual debtor.

8    But I think that the first two factors are not met.

9           The plan does not provide for liquidation of all

10   or substantially all of the assets of holding.  It does

11   provide, and one of the principal assets of holding is the

12   anti-trust litigation.  It provides for the prosecution of

13   that and use of the proceeds of that to pay creditors.  I

14   don't view that as a liquidation.  In addition, it preserves

15   the corporation for the purpose that the corporation was

16   formed, and that is to be a holding company to invest in

17   subsidiaries and that is the business of a holding company.

18          The fact that its one current business is being

19   liquidated, the LLC, does not mean that it does not intend

20   to operate a business in the future, or that it is

21   liquidating all of its businesses.  It is clear that

22   Argonaut and Madrone do intend to invest in holdings.  I

23   don't think it's necessary that that investment be included

24   in the plan of reorganization.

25          I have heard ample testimony of their intent to do

1    that, and their ability, in fact, that is their business to

2    invest funds on behalf of their client or clients.  In

3    addition, the fact that they have sought to preserve the

4    NOLs makes it likely that they will invest in holdings.

5           But if -- let me give an example.  If, in fact,

6    they were denied a discharge, the unsecured creditors of

7    holdings would get no more than they are getting now, which

8    is a part of the recovery of the anti-trust action.  And it

9    is significant to me that the general unsecured creditors,

10   in fact, all of the interested parties in holdings have

11   voted in favor of the plan, which includes the discharge of

12   holdings.  And it is likely again that A&M will invest, so

13   long as holdings gets a discharge.  If holdings did not have

14   a discharge, it is unlikely that anybody would invest into

15   it.

16          So I think that I'm satisfied the evidence is

17   sufficient to conclude that the debtor will engage in

18   business after confirmation, and that the plan is not

19   providing for the liquidation of all of the assets.

20          With respect to the remaining objection, which is

21   the Department of Energy's objection.  First, with respect

22   to its asserted super priority administrative claim that was

23   granted to it under the DIP financing, in order to assert

24   that the plan is not confirmable because it does not treat

25   that claim, I think it is incumbent upon the DOE to

1    establish that it does, in fact, have such a claim.  I don't

2    think it is as simplistic as the debtors suggest, which is

3    that what was the amount of their claims on day one, and

4    what is it now, and the debtor's answer is zero.  I think I

5    do have to evaluate what the assets were sold for on a gross

6    basis, and deduct properly only the costs of liquidating

7    those assets.

8           The DIP did provide for the payment of the

9    professional fees though, and they are ahead of the super

10   priority claim or any super priority claim that the

11   Department of Energy would be entitled to, the carve out

12   portion.  So I have to determine what the revenues or

13   proceeds of the sale were, and what were the properly

14   deducted direct costs of sale.  And I disagree with the

15   Department of Energy that that is only the broker fees

16   previously approved.  I think it is evident from this case

17   that those assets could not be sold as a turnkey.  The

18   evidence is clear.  They could not be sold in many instances

19   without dismantling and decontaminating those.  And

20   therefore, I think those costs are properly deducted from

21   the proceeds.  They could not be sold unless the rent was

22   paid, and the equipment was left in place, in order to

23   inspect and have an auction of many of those assets.

24           So the rent is properly deducted.  All of these

25   are necessary costs of sale.  Quite frankly I did not see

1    anything in the MOR which are simply 506(c) claims that had

2    no relationship to the sale of these assets.  And therefore,

3    I do think that the result is that quite frankly there was

4    no collateral left for the DOE claim, and therefore, no

5    diminution in value.  While on day one, everybody thought

6    that we would have a turnkey sale that would result in

7    sufficient funds to pay the tranch A and the DIP, the

8    reality it was not.

9         And I agree with Judge Gerber, the true test of

10   the fair market value of assets is what somebody's willing

11   to pay for, and we found that.  And the net asset value is

12   insufficient to pay the tranch A and the DIP claims, both of

13   which come ahead of the Department of Energy, and therefore,

14   I find that the Department of Energy has no secured claim,

15   and similarly no super priority claim that must be treated

16   in this plan.

17        With respect to the exit facilities, I don't find

18   that they're impermissible under the plan.  The tranch 1,

19   which is being used to refinance the DIP and to pay the

20   carve out and to pay the necessary costs of closing the sale

21   of Fab 2, all of those items come ahead of any DOE claim,

22   and therefore that is appropriate.

23        With respect to the tranch 2, that is being

24   granted only on unencumbered assets, and it is to pay the

25   expenses of the residual trust, which expenses have to be

1    paid in order for the DOE, as well as any other creditor, to

2    realize any value on the asset that is being contributed to

3    the trust, which is the anti-trust litigation.

4          So I think those are appropriate as well.  And I

5    would be happy to approve them under 364, but I'm not being

6    asked to approve them under 364.  But at any rate, that

7    inclusion in the plan does not violate any specific

8    provision of the Bankruptcy Code, and therefore, it will be

9    approved.

10         So those being the only objections to the debtor's

11   plan and based on the evidence testimony and the report of

12   plan voting, I will confirm the debtor's plan.

13         MS. GRASSGREEN:  Thank you very much, Your Honor.

14   We do have a form of confirmation order, and as I noted at

15   the outset of the case, there were some changes made with

16   respect to comments from the Environmental Protection

17   Agency, and the purchaser of asset Seagate.  And some of

18   them were changes for clarifications in the plan, so if -- I

19   do have a blackline of the confirmation order from the one

20   that was filed, and if I could approach.

21         THE COURT:  You may.  Thank you.

22         Do you want to --

23         MS. GRASSGREEN:  Your Honor, we have circulated

24   this to the key parties in interest, but if you'd like I

25   could just highlight the changes.