IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| Lordstown Motors Corp., *et al.*,[1] | Case No. 23-10831 (MFW) |
| Debtors. | (Jointly Administered) |
| | Re:  D.I. 1014, 1034 |

**DECLARATION OF DANIEL A. NINIVAGGI IN SUPPORT OF
CONFIRMATION OF THIRD MODIFIED FIRST AMENDED JOINT CHAPTER 11
PLAN OF LORDSTOWN MOTORS CORP. AND ITS AFFILIATED DEBTORS**

I, Daniel A. Ninivaggi, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I have served as the Executive Chairman of Lordstown Motors Corp. ("**LMC**" and together with its subsidiaries, the "**Debtors**" or the "**Company**") since May 2022.  I submit this declaration in support of the Debtors' good faith in proposing the *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Debtor Affiliates* [Docket No. 1014] (the "**Plan**").

**I.     Background of Declarant**

2. Prior to joining LMC, I served in executive positions with various companies, including as President and Chief Executive Officer of Icahn Enterprises L.P., a diversified holding company.  I have experience in several senior leadership positions in the automotive and transportation industries, including at Lear Corporation and Federal-Mogul Holdings Corporation. I have extensive experience as a public company director, including at Garrett Motion Inc., Icahn

---

[1]    The Debtors in these chapter 11 cases (these "**Chapter 11 Cases**"), along with the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

Enterprises GP (the general partner of Icahn Enterprises L.P.), Motorola Mobility, CIT Group, Navistar International, Hertz Global Holdings and CVR Energy. I have an MBA from the University of Chicago Graduate School of Business, a JD from Stanford Law School, and a BA from Columbia University.

3.  I submit this declaration in connection with the *Debtors' Memorandum of Law in Support of Confirmation of Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Debtor Affiliates* (the "**Confirmation Brief**").[2]

4.  I am duly authorized to make this declaration on behalf of the Debtors. Except as otherwise noted, I have personal knowledge of the matters set forth herein. I am over the age of 18. If called to testify, I would testify to the matters set forth in this declaration.

## II. Background to These Chapter 11 Cases

5.  The Debtors filed the Chapter 11 Cases to maximize value by, among other things, consolidating the resolution of claims in a single forum, selling certain assets in an efficient and value maximizing manner, pursuing their substantial claims against Foxconn, preserving their other claims and assets, and ultimately developing and confirming a plan that would maximize recoveries to Holders of Allowed Claims and Interests through a chapter 11 plan.

## III. The Plan Has Been Proposed in Good Faith

6.  On June 27, 2023 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases, and immediately began executing their strategy to maximize value. To this end, the Debtors embarked on a dual track process to (i) pursue one or more sales of assets and (ii) achieve a consensual plan. As to the first aim, the Debtors' sale of certain assets to LandX Motors Corp. (as

---

[2]  Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Confirmation Brief or the Plan.

2

assignee of LAS Capital, LLC) closed on October 27, 2023, following Court approval of the sale on October 18, 2023. The Debtors' efforts with respect to the second aim have culminated in the extensively negotiated Plan currently before the Bankruptcy Court.

7. Commencing on the Petition Date, the Debtors moved to develop a plan designed to fairly and equitably maximize the value provided to Holders of Claims and Interests in accordance with their respective priority under the Bankruptcy Code. The U.S. Trustee appointed the official committee of unsecured creditors (the "**UCC**") on July 11, 2023. The Debtors immediately thereafter engaged the UCC in extensive, good faith, arms' length negotiations, incorporating the UCC's input on a potential plan of reorganization. These efforts resulted in the Debtors' filing of an initial chapter 11 plan on September 1, 2023.

8. On September 7, 2023, the U.S. Trustee appointed the official committee of equity security holders (the "**EC**," and, collectively with the UCC, the "**Committees**") for these Chapter 11 Cases. As with the UCC, the Debtors and their professionals immediately opened discussions with the EC regarding the Plan in an effort to reach consensus among the Debtors' and the two key constituencies—general unsecured creditors and equity security holders—through arms' length negotiations.

9. These negotiations resulted in the Debtors filing of the *First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Debtor Affiliates* [Docket No. 605] (the "**First Amended Plan**") and accompanying disclosure statement [Docket No. 606] on October 24, 2023. Both the EC and UCC supported the First Amended Plan, as disclosed in the accompanying disclosure statement.

10. As the Debtors sought Bankruptcy Court approval of their disclosure statement, they continued to work with both Committees and other key parties in interest in the Chapter 11

Cases to resolve both disclosure statement and potential plan objections. Among other things, the Debtors engaged in significant negotiations with the U.S. Trustee, Foxconn, the SEC, the Ohio Securities Litigation Lead Plaintiff, the Delaware Plaintiffs, and the plaintiffs in the Post-Petition Securities Action (as defined in the Plan, the "**RIDE Plaintiffs**"). These efforts resulted in a largely consensual disclosure statement hearing, paving the way for approval of the disclosure statement on November 1, 2023, and solicitation of the Plan.

11. After approval of the Disclosure Statement, the Debtors continued to engage with both Committees and other parties in interest to resolve potential confirmation objections. Among other things, the Debtors, working closely with the UCC and EC, engaged in extensive negotiations with the Ohio Securities Litigation Lead Plaintiff and the SEC to reach a settlement that would resolve both of their various claims. The Debtors continued the confirmation hearing, originally scheduled for December 19, 2023, to January 10, 2024 to continue these negotiations. The negotiations ultimately also included Foxconn, which agreed to a limited backstop of certain litigation recoveries to the Ohio Securities Litigation Lead Plaintiff under certain circumstances and subject to the terms set forth in the Plan. These negotiations ultimately culminated in a settlement with the Ohio Securities Litigation Lead Plaintiff and with the SEC, which has agreed to withdraw its claims against the Debtors under certain conditions which I believe will be satisfied on the Effective Date of the Plan (based in part on the inclusion in the Plan of the Ohio Securities Litigation Settlement).

12. A settlement in principle was reached in early January. The settlement with the Ohio Securities Litigation Lead Plaintiff is tied to the SEC's approval of an *Offer of Settlement* (the "**Offer**") by the Debtors to the SEC through that certain *Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities*

*Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order* ("**OIP**"). The Debtors were informed that such approval would not occur until mid-February. Accordingly, the Debtors again continued the confirmation hearing—this time to February 22, 2024.

13. The Ohio Securities Litigation Settlement is embodied in the *Second Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Debtor Affiliates* [D.I. 941] filed on January 31, 2024. The Ohio Securities Litigation Settlement provides for the satisfaction in full of the class proof of claim filed by the Ohio Securities Lead Plaintiff on behalf of the Ohio Settlement Class by providing up to $10 million of consideration to the members of the Ohio Settlement Class. Such consideration is comprised of (i) a $3 million cash payment on the Effective Date, and (ii) up to $7 million in net litigation proceeds from the Debtors' retained causes of action. As noted above, the Debtors also negotiated a backstop of the net litigation proceeds from Foxconn (the "**Foxconn Backstop**") under certain circumstances of up to $5 million. The terms of the backstop are set forth in the Plan.

14. The Ohio Securities Litigation Settlement (and each of its terms, including all releases), were negotiated at arms' length and were agreed to by the Debtors in good faith.

15. The provisions in the Plan incorporating the Ohio Securities Litigation Settlement, including the Foxconn Backstop, were crucial to securing approval of the Offer and the anticipated withdrawal of the SEC's claim against the Debtors that was filed in the face amount of $45 million. The withdrawal of the SEC's claim, which removes an asserted $45 million claim against the Debtors, is a material benefit to all parties in interest and was the result of good faith negotiations.

16. In early February, 2024, it became clear that the SEC would not be able to obtain final internal approval of the Offer through the OIP until February 29, 2024 (after the date then set for the confirmation hearing). Accordingly, the Debtors rescheduled the confirmation hearing to

March 5, 2024.  In the interim, the Debtors continued to discuss any remaining concerns of parties in interest.  These continued discussions and negotiations resulted in the Plan that is now before the Bankruptcy Court for confirmation, which the Debtors filed on February 28, 2024.

17. The Debtors seek to confirm the Plan.  They do so for the legitimate and honest purpose of maximizing the value of their estates and effectuating their successful Chapter 11 Cases.  As set forth above, the Plan is the result of an extensive and transparent consultation and negotiation process, involving the Debtors' key constituents.  The result is consistent with the objectives the Debtors set out to achieve by filing these Chapter 11 Cases: resolving claims, returning maximum recoveries to stakeholders, and preserving the Debtors' causes of action to further maximize recoveries for the benefit of the Debtors' stakeholders.  In addition, the Plan seeks to preserve the Debtors' substantial tax attributes (which include approximately $993.2 million in federal and $880.3 million in state and local net operating losses as of December 31, 2023) and preserves the Post-Effective Date Debtors' ability to conduct business, including prosecuting retained causes of action, engaging in such business as the New Board may determine and pursuing transactions that may maximize the value of the Post-Effective Date Debtors' tax attributes and other assets.   The Plan has been negotiated to achieve these goals.  The Plan is also consistent with the legitimate bankruptcy purpose of restructuring the financial affairs of a debtor.

18. Without limiting the foregoing, Article VIII.C of the Plan (the "**Debtor Release**") was the product of arm's-length negotiations throughout the course of the plan process, including between the Debtors, the UCC, the EC, the U.S. Trustee, and other stakeholders.  The Debtor Release is limited in scope to matters relating to the Debtors and their efforts in the Chapter 11 Cases.  The Third-Party Releases were consensually given by the Releasing Parties, which include Holders of Claims or Interests that have voted to accept the Plan, and Holders of Claims or Interests

that have not voted to accept the Plan but have opted into the Third-Party Releases. The Debtors believe that, without the Third Party Releases, they would not have been able to attain the positive outcome reflected in the Plan. The Debtors, in their business judgment, determined that the Debtor Release was necessary to achieve consensus on the Plan and was therefore critical to the Debtors' success in the Chapter 11 Cases. Each of the Released Parties has played a role in and contributed to the success of the Debtors' Chapter 11 Cases. The Plan represents a global resolution of prepetition claims and, the Debtors believe, will likely result in full payment to all of the Debtors' creditors, while keeping equity interests in place in the Post-Effective Date Debtors. Given the Released Parties' contributions to, and the success of, the Debtors' Chapter 11 Cases, the Debtors believe that the Debtor Release is appropriate under the circumstances.

19. Moreover, the Debtors do not believe that any material claims or causes of action of the types released under the Plan exist against any of the Released Parties. Indeed, during the course of the Chapter 11 Cases, the Debtors retained Winston & Strawn LLP ("**Winston**") and appointed an independent Derivative Claims Oversight Committee of the Board to evaluate potential derivative claims, including against current and former directors and officers, and that the inclusion of any person as a released party under the Plan was subject to the recommendations of the Derivative Claims Oversight Committee. Winston conducted a detailed investigation into potential causes of actions and claims against the current and former directors and officers. It submitted its findings and recommendation to the Derivative Claims Oversight Committee, which findings and recommendations the Committee adopted. Thereafter, the full board of LMC adopted the findings and recommendations adopted by the Derivative Claims Oversight Committee. Thus, the Debtors do not believe that there are any credible causes of action against the directors and officers receiving releases under the Plan (*i.e.*, the Chapter 11 Directors and Officers). The Debtors

AMERICAS 107408783

have also shared Winston's conclusions with each of the Committees, and I understand that each of the Committees supports the Plan.

20. The Plan also contains third party releases (the "**Third Party Releases**") in <u>Article VIII.D</u> of the Plan. The Third Party Releases were negotiated at arms' length between the Debtors, the UCC, the EC, the U.S. Trustee, and other stakeholders. I believe that they are a critical and integral part of the Plan. I also understand that the Third Party Releases are not binding on any party that abstained from voting on the plan or voted to reject the plan and did not elect to opt into the releases.

21. The Debtors believe that the exculpation contained in <u>Article VIII.E</u> of the Plan is necessary to protect parties who have made substantial contributions to the Debtors' Chapter 11 Cases from collateral attacks related to their good faith acts or omissions in effecting the Debtors' successful restructuring during the course of the Chapter 11 Cases.

22. It remains critical that the Debtors confirm the Plan promptly and exit from the Chapter 11 Cases as soon as possible, given the continued administrative expense of remaining in the Chapter 11 Cases. Any delays in emergence may negatively impact the Debtors' ability to return maximum recoveries to stakeholders as contemplated by the Plan. The Debtors thus consider that confirmation of the Plan is in the best interests of the Debtors and the estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 1, 2024

                                                      /s/ Daniel A. Ninivaggi
                                                       Daniel A. Ninivaggi
                                                       Executive Chairman
                                                       Lordstown Motors Corp.

AMERICAS 107408783