IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>LORDSTOWN MOTORS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered) |

**DECLARATION OF WILLIAM GALLAGHER IN SUPPORT OF
CONFIRMATION OF THIRD MODIFIED FIRST AMENDED JOINT CHAPTER
11 PLAN OF LORDSTOWN MOTORS CORP. AND ITS AFFILIATED DEBTORS**

I, William Gallagher, declare under penalty of perjury:

1. I am over the age of eighteen (18) and am competent to execute this declaration.

2. Unless otherwise stated, all facts set forth herein are based upon my personal knowledge, or I have determined such facts from my due diligence.

3. This Declaration is made in support of confirmation of the *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [Docket No. 1014] (as may be further amended or modified, the "Plan")[2] and in connection with the *Debtors' Memorandum of Law in Support of Confirmation of Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors*.

4. I have been selected to serve as Chief Executive Officer of the Post-Effective Date Debtors, as set forth in the initial Plan Supplement filed on December 1, 2023 [Docket No. 766] (the "Plan Supplement").

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

5. I am a Managing Director at M3 Advisory Partners, LP ("M3"), whose offices are located at 1700 Broadway, 19th Floor, New York, New York 10019. I have over 35 years of experience in finance, investment banking, and financial restructuring. At M3, I manage the company's SPAC business. Prior to joining M3, I was Chief Executive Officer at WMIH Corp. ("WMIH"), a public acquisition corporation which was the successor to Washington Mutual, Inc. I was recruited to WMIH to oversee its acquisition strategy and manage its day-to-day affairs. My responsibilities included reviewing, vetting, and analyzing a large number of potential target companies from a variety of different sectors and industry groups. Prior to WMIH, I was CEO and Chief Risk Officer at Capmark Financial Group. I was retained by Capmark to manage its financial restructuring following the global economic crisis and was responsible for the management of the company's day-to-day affairs, the restructuring of both the company and its assets (including its $12 billion commercial loan portfolio), its bankruptcy process, and its winding down and distribution of assets to creditors and other stakeholders.

6. The Debtors' assets are not being liquidated under the Plan, and the Debtors are not being wound down or dissolved. Upon the Effective Date, the Post-Effective Date Debtors will exit bankruptcy as a public company, with their equity remaining in place, and with several bundles of assets, including: tens of millions of dollars in cash, substantial causes of action, and valuable tax attributes. These causes of action include (i) claims against Foxconn for breach of contract, fraud, and tortious interference related to their pre-petition business dealings with the Debtors (as set forth in the Debtors' Complaint in Adversary Proceeding No. 23-50414); (ii) potential claims against certain of the Debtors' former directors and officers related to, among other things, DiamondPeak's de-SPAC acquisition of legacy Lordstown Motors Company; and (iii) other potential causes of action belonging to the Debtors.

7. It is my understanding that claims related to the de-SPAC have already been the subject of shareholder litigation in Delaware and Ohio and have prompted the involvement of the SEC. As set forth in the Plan, the SEC and the Debtors have resolved certain SEC claims relating to the de-SPAC pursuant to the Offer and OIP (as those terms are defined in the Plan). Other claims are currently in the process of being litigated, including the Debtors' claims against Foxconn. Still others have not been settled or litigated and are preserved, and remain actionable by the Post-Effective Date Debtors, including the Debtors' potential claims against Former Directors and Officers (including those related to the de-SPAC), and other potential claims belonging to the Debtors. In all, these claims and causes of action may therefore prove to be far more valuable than the equipment, machinery, and other related assets sold during the Chapter 11 cases (which generated approximately $10.2 million in proceeds). Indeed, even the Post-Effective Date Debtors' cash on hand at emergence is significantly higher than the proceeds generated from the asset sale.

8. The Post-Effective Date Debtors intend to conduct business and do not intend to liquidate following the Effective Date. The business of the Post-Effective Date Debtors will be to deploy their assets in order to generate value for their shareholders, in at least two key ways. First, the Post-Effective Date Debtors will pursue their causes of action as determined by the New Board. In my experience, carrying out litigation can be a significant part of a company's business (and, for some companies, such as so-called "patent trolls" nearly the entirety of their business). Second, I expect that the Post-Effective Date Debtors, as directed by the New Board, may seek new business opportunities to maximize value, which may include identifying potential business acquisition or merger opportunities (including opportunities where the Debtors' tax attributes and/or public filing status may provide significant value), and may deploy the cash and proceeds

of causes of action as determined by the New Board to pursue one or more such opportunities or otherwise maximize value. In other words, the business of the Post-Effective Date Debtors is not simply to pay cash to creditors and equity holders, but to (i) investigate and prosecute causes of action and (ii) identify, evaluate, and pursue any commercial transaction(s) that the New Board determines will be accretive to equity holders. The Post-Effective Date Debtors will require support in the prosecution of their claims and causes of action; reconciliation and defense of claims filed against the Debtors; and evaluation of potential business opportunities, which will likely require engaging consultants, independent contractors, and/or professional services firms.

9. The Post-Effective Date Debtors' business is similar to the business of WMIH. After the effective date of Washington Mutual, Inc.'s Chapter 11 plan, WMIH (the successor company to Washington Mutual, Inc.) was primarily engaged in seeking acquisition opportunities across a broad array of industries. Here, the New Board, in addition to myself, is comprised of individuals with sophisticated backgrounds in identifying investment opportunities, as set forth in the Debtors' Plan Supplement.

10. If the Debtors do not receive a discharge of their pre-petition obligations, the ability of the Post-Effective Date Debtors to identify, evaluate, pursue, and ultimately consummate one or more acquisition or merger transactions may be diminished. Obtaining a discharge would provide certainty for potential transaction counterparties that the go-forward business will not be subjected to pre-petition claims. Without the certainty provided by a discharge, potential counterparties would typically be less willing to move forward with a transaction, or may price any uncertainty into a business combination, impeding the Post-Effective Date Debtors' ability to consummate a transaction that would maximize value for equity holders. Therefore, I believe that obtaining a discharge will be important to the Post-Effective Date Debtors' ability to maximize

the value of the business.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: March 1, 2024
       New York, New York

                                          */s/ William Gallagher*_____
                                          William Gallagher

16587950/1/142570-0002