IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re:<br><br>LORDSTOWN MOTORS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered) |

**JOINDER OF THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS TO DEBTORS'
MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION
OF THE THIRD MODIFIED FIRST AMENDED JOINT CHAPTER 11
PLAN OF LORDSTOWN MOTORS CORP. AND ITS AFFILIATED DEBTORS**

The Official Committee of Equity Security Holders (the "**Equity Committee**") appointed in the above-captioned Chapter 11 cases of Lordstown Motors Corp. and its affiliated debtors (collectively, the "**Debtors**"), hereby submits this joinder (this "**Joinder**") to the *Debtors' Memorandum of Law in Support of Confirmation of the Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [Docket No. 1034] (the "**Confirmation Brief**") and adopts all arguments and evidence referenced therein, including the *Declaration of William Gallagher in Support of Confirmation of the Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors* [Docket No. 1038] (the "**Gallagher Declaration**"). In support of this Joinder, the Equity Committee states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Lordstown Motors Corp. (3239); Lordstown EV Corporation (2250); and Lordstown EV Sales LLC (9101). The Debtors' service address is 27000 Hills Tech Ct., Farmington Hills, MI 48331.

16587948/1

**PRELIMINARY STATEMENT**

1.      This confirmation hearing is the culmination of months of effort on the part of all parties to litigate, argue, and ultimately reach agreement on the terms of a Plan[2] that resolves many complex bankruptcy issues, and sets forth an agreed-upon path toward resolving others.  These Chapter 11 cases could have had a very litigious confirmation process.  Yet, the Plan has the support of all of the Debtors' principal stakeholders (including both official committees), Foxconn, the Ohio Securities Litigation Lead Plaintiff, and the SEC.  This is how Chapter 11 cases should conclude, and the Equity Committee is pleased and grateful to have reached this result.

2.      The consensus on the terms of the Plan reflects not only the value being provided to all stakeholders (Allowed General Unsecured Claims will be paid in full in cash), but also a heavily negotiated process for resolving the claims of the Ohio Settlement Class Members, the SEC, and the DiamondPeak Directors, among others.  This resolution was not easy to achieve, and required the good-faith, hard-fought, and diligent efforts of parties across the capital structure, litigation counterparties, and government entities.  For the reasons set forth in the Confirmation Brief, herein, and in the various declarations offered in support of the Plan (including the Gallagher Declaration), the Equity Committee respectfully requests that the Court overrule the Objections and enter the Proposed Confirmation Order confirming the Plan.

**JOINDER[3]**

3.      The Equity Committee submits this Joinder in support of confirmation of the Plan and to address arguments raised by the United States Trustee (the "**U.S. Trustee**") in its objection to confirmation [Docket No. 878] (the "**UST Objection**").

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Brief.
[3]    The factual background for this Joinder is set forth in the Confirmation Brief and in the Gallagher Declaration.

4.      The U.S. Trustee argues that the Plan should not be confirmed under section 1129(a)(1) of the Bankruptcy Code because it provides a discharge for the Debtors without satisfying the requirements of section 1141(d)(3).  The U.S. Trustee's objection should be overruled because the U.S. Trustee has not established that the conditions in section 1141(d)(3)(A) and (B) are not met.  See In re Global Water Techs., Inc., 311 B.R. 896, 902 (Bankr. D. Colo. 2004) (noting that it is the objector's burden to establish that the plan violates section 1141(d)(3)).

5.      Section 1141(d)(3) provides that Chapter 11 debtors are discharged upon confirmation of a plan unless <u>all</u> of the following circumstances are true: "(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title."  11 U.S.C. § 1141(d)(3).  The Equity Committee does not contest that the Debtors would be denied a discharge under section 727(a)(1).  However, neither of the conditions described in sections 1141(d)(3)(A) or (B) are satisfied, and therefore the Debtors are entitled to a discharge under section 1141(d)(1)(A).

**I.    The Plan Does Not Provide For The Liquidation
       Of All Or Substantially All Of The Property Of The Estate.**

6.      Nothing in the Plan provides for the liquidation of any of the Debtors' assets or property.  The analysis can end there, and the U.S. Trustee's objection overruled on that basis alone.  In support of its contention, the U.S. Trustee points to several asset sales that occurred during the pendency of these Chapter 11 cases, and concludes that "[t]he Debtors are now selling their remnant assets."  UST Obj. at ¶ 11.  The "remnant assets" to which the U.S. Trustee refers were sold in December 2023, and are not therefore being liquidated pursuant to this Plan.  See Docket No. 875.

7.  But even if it were the Plan, rather than two sales that closed months ago, that provided for the liquidation of these remnant assets, neither those sales (of certain computer assets for $28,500 and a van for $3,000), nor the sale of certain assets in October 2023 to LandX for $10 million, constitutes a liquidation of "all or substantially all of the property of the estate." The most valuable assets of the estate are (i) tens of millions of dollars in cash, which the company intends to use to fund one or more business combinations; (ii) certain Retained Causes of Action (including, among others, Causes of Action against Foxconn, claims against former directors and officers related to the de-SPAC transaction, and other potential claims belonging to the Debtors); and (iii) estimated net operating losses and other tax attributes of approximately $1 billion. See Gallagher Decl. at ¶¶ 6-7; Plan at §§ III.B.7, V.G; Plan Supplement, Ex. C (Schedule of Retained Causes of Action); Disclosure Statement, at § II.C (disclosing the amount of the Debtors' tax attributes), Ex. D (the Debtors' complaint against Foxconn filed in the adversary proceeding captioned Lordstown Motors Corp. v. Foxconn Ventures Pte. Ltd., Adv. Proc. No. 23-50414 (MFW) (Bankr. D. Del.)). These assets are being retained by the Post-Effective Date Debtors pursuant to the Plan.

8.  In evaluating whether a party opposing a discharge has established that a plan provides for the liquidation of substantially all of a debtor's assets, courts do not simply consider "tangible assets." See UST Obj. at ¶ 11. Where, as here, a reorganized debtor retains tax attributes (including NOLs) and/or litigation claims, courts have found that section 1141(d)(3)(A) is not satisfied, and the debtor is entitled to a discharge, even if the debtor has liquidated all or substantially all of its tangible assets. See, e.g., In re Solyndra, LLC, Case No. 11-12799 (MFW) (Oct. 24, 2012, Hr'g Tr. at 67:9-17) (granting the debtor a discharge over the U.S. Trustee's objection, because the debtor's retention and pursuit of substantial litigation was not a liquidation);

In re Rath Packing Co., 55 B.R. 528, 537-38 (Bankr. N.D. Iowa 1985) (holding that where a debtor intends to use tax attributes to increase the value of its stock, the section 1141(d)(3)(A) exception is not met); cf. In re Global Water Techs., 311 B.R. at 900 (noting that the sale of certain litigation claims, which the debtor had previously intended to pursue, constituted the liquidation of substantially all of the debtor's assets).

9. Just as in Rath and Solyndra, the Post-Effective Date Debtors are retaining valuable (though intangible) assets that may be worth far more than the nominal assets sold during the pendency of the Chapter 11 cases. These assets will not immediately be reduced to cash and used to fund distributions, as the U.S. Trustee contends, but rather may be used to fund one or more investments or transactions that the New Board may deem to be value-accretive to shareholders. Gallagher Decl. at ¶ 8. Therefore, the Plan is not liquidating all or substantially all of the Debtors' assets, and the U.S. Trustee's objection should be overruled.

## II. The Post-Effective Date Debtors Will Engage In Business.

10. Even if the Court were to find that the Plan provides for the liquidation of all or substantially all of the Debtors' assets (it does not), the Debtors would still be entitled to a discharge because the Post-Effective Date Debtors will be engaging in business as set forth in the Plan and as described in the Gallagher Declaration. This business is to deploy the Debtors' cash and its intangible assets in two ways: first, to investigate and prosecute their causes of action, as determined by the New Board; and second, to identify, evaluate, and pursue one or more potential business combinations or acquisitions (including opportunities where the Debtors' tax attributes and public filing status may provide incremental value). Rather than simply distributing the Debtors' cash to creditors and shareholders, as the U.S. Trustee alleges, the Post-Effective Date Debtors will be engaging in business in order to increase value for their shareholders. This is in

line with Solyndra, where the U.S. Trustee objected to the discharge of a debtor holding company, arguing that section 1141(d)(3) applied. There, as here, the post-emergence company was vested with assets including tax attributes and causes of action, and the evidence showed that the company intended to pursue a potential business combination after plan consummation. Oct. 24, 2012, Hr'g Tr. at 23:16-19. The Court determined that, under such circumstances, the debtor "will engage in business after confirmation" and overruled the objection. Id. at 68:16-18. Similarly, in Rath Packing, the court found that a debtor would be "engaging in business" for the purposes of section 1141(d)(3)(B) where the debtor formed a subsidiary to borrow money in order to fund potential investment opportunities that could increase value for shareholders. 55 B.R. at 537-38.

11.  In the UST Objection, the U.S. Trustee seeks to impose two requirements in order for the Debtors to receive a discharge: first, that the Debtors engage in the **same** business after the Effective Date as they did pre-petition[4], and second, that the Post-Effective Date Debtors' post-confirmation business activities must be in the "ordinary course" of the Debtors' prepetition business in order to receive a discharge. See UST Obj. at ¶¶ 14-15. These requirements do not exist in the text of section 1141, and courts may not and do not graft additional requirements to override the plain meaning of statutes. See, e.g., United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989) ("The task of resolving the dispute over the meaning of [the statute] begins where all such inquiries must begin: with the language of the statute itself"); In re Flintkote Co., 486 B.R. 99, 132 (Bankr. D. Del. 2012) ("[T]here is no requirement under § 1141(d) that a debtor continue the same business lines and activities as it engaged in pre-petition…. There is no qualification under the statute that the business must be a pre-petition

---

[4] See UST Obj. at ¶ 15 ("The Debtors' mission is to accelerate electric vehicle adoption and be a catalyst in the transition of commercial fleets to all-electric vehicles for a more sustainable future. The Debtors cannot complete that mission under the Plan") (quoting Docket No. 15 at ¶ 10) (internal citations and quotation marks omitted).

business, nor any language qualifying what level of business activity is sufficient."); In re Global Water Techs., 311 B.R. at 901 (holding, in response to arguments by the SEC and the U.S. Trustee that the reorganized debtor would not be engaging in the same business as the pre-petition debtor and was therefore not entitled to discharge, that "Congress chose to express its policy determination in the specific language of the statute. This Court is not free to graft additional requirements to the statute in this individual case for fear that the Debtor may not engage in its business post-confirmation…. [A]ny adjustment to the statute must be made by Congress and not this Court.").

12. The U.S. Trustee cites two cases in support of a "business continuity" requirement, neither of which is controlling or convincing. See UST Obj. at ¶ 12. In In re Grausz, the Fourth Circuit held that an individual Chapter 11 debtor was not "engaging in business" post-confirmation when his pre-petition business had been liquidated pursuant to the plan and he "worked a consultant for a business *unrelated* to" his pre-petition businesses. 63 F. App'x 647, 650 (4th Cir. 2003) (italics original). In re South Canaan Cellular Invs., Inc. applied Grausz to corporate debtors whose business was acting as general and limited partners of a non-debtor telecommunications company, SCCC. 427 B.R. 44 (Bankr. E.D. Pa. 2010). The debtors proposed a plan under which the debtors' partnership interests (which the court noted were "substantially all of their assets") or SCCC itself, were likely to be sold. The court held that if the partnership interests were sold, the debtors would not be engaging in business. South Canaan, 427 B.R. at 84-85. Evaluating Grausz and South Canaan, the court in In re Flintkote noted that neither controlled, and neither was persuasive in the context of a debtor that is not liquidating under a plan, but reorganizing and deploying its assets to "pursue other ventures." 486 B.R. at 132. Similarly, even if Grausz or South Canaan controlled, which they do not, neither would apply here: unlike those cases, where

7

substantially all of the debtors' assets were being liquidated and the corporate structures necessary to carry on a business post-confirmation were gone, the Post-Effective Date Debtors are preserving corporate structures and deploying assets in pursuit of a potential business combination, as set forth in the Gallagher Declaration.

### III. Denying The Discharge Would Undermine The Company's Go-Forward Business Purpose And Would Not Benefit Any Party.

13. As described herein and in the Gallagher Declaration, the Post-Effective Date Debtors intend to be a public company that will engage in business transactions to generate capital for stakeholders. The discharge under section 1141(d)(1)(A) furthers "the policy of Chapter 11[, which] is to permit successful rehabilitation of debtors." Nat'l Labor Rel. Bd. v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984). The Post-Effective Date Debtors will use the discharge to facilitate their go-forward business: as they go into the market to evaluate and pursue potential business combinations, any hangover of pre-petition claims may significantly hamper these efforts. Put differently, the discharge is of real significance to the potential for successful rehabilitation.

14. Meanwhile, denying the discharge does nothing to help any party in interest in these Chapter 11 cases. Creditors are being paid in full, pursuant to the Plan. And, once the Plan is confirmed, the Post-Effective Date Debtors have a duty to carry out the terms of the Plan (including payment in full of creditors) pursuant to section 1142(a). There is nothing that denying a discharge would do for creditors that such creditors could not accomplish using the mechanism set forth in section 1142(b), whereby the Court may direct the Post-Effective Date Debtors to perform any act necessary for the consummation of the Plan.

15. The U.S. Trustee is the only party to have objected to the discharge. Presumably, this is because every economic party in interest is getting what they need: general unsecured creditors are being paid in full; the SEC's claim has been resolved through the OIP and the Offer;

8

and holders of Ohio Securities Litigation Claims are receiving their share of a heavily negotiated settlement between the Debtors, the Ohio Securities Litigation Lead Plaintiff, the Equity Committee, Foxconn, and the SEC. Denying a discharge in this circumstance would allow any dissatisfied party to come out of the woodwork and undo all of the work that has been done in this case to achieve a hard-fought solution that is (as the Debtors establish in the Confirmation Brief) fair and equitable and in the best interests of all of the Debtors' stakeholders. This result is neither mandated under section 1141(d)(3) nor in line with the successful rehabilitation of the Debtors.

16. For the foregoing reasons, the Debtors are eligible for a discharge under section 1141(d)(1) of the Bankruptcy Code, and the UST Objection should be overruled.

WHEREFORE, for the foregoing reasons, the Equity Committee respectfully requests that the Court overrule the objection of the U.S. Trustee and confirm the Plan which provides for the discharge of the Debtors.

*[Remainder Of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: March 1, 2024<br>Wilmington, Delaware | **MORRIS JAMES LLP**<br><br>*/s/ Eric J. Monzo*<br>Eric J. Monzo (DE Bar No. 5214)<br>Brya M. Keilson (DE Bar No. 4643)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>E-mail: emonzo@morrisjames.com<br>E-mail: bkeilson@morrisjames.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>Robert J. Stark (admitted *pro hac vice*)<br>Bennett S. Silverberg (admitted *pro hac vice*)<br>Michael S. Winograd (admitted *pro hac vice*)<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br>E-mail: rstark@brownrudnick.com<br>E-mail: bsilverberg@brownrudnick.com<br>E-mail: mwinograd@brownrudnick.com<br><br>-and-<br><br>Sharon I. Dwoskin (admitted *pro hac vice*)<br>Matthew A. Sawyer (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>Telephone: (617) 856-8200<br>Facsimile: (617) 856-8201<br>E-mail: sdwoskin@brownrudnick.com<br>E-mail: msawyer@brownrudnick.com<br><br>*Counsel to the Official Committee*<br>*of Equity Security Holders* |