**EXHIBIT H-1**

# LMC LITIGATION TRUST

**LMC LITIGATION TRUST AGREEMENT**

**Dated as of  __, 2024**

*Pursuant to the Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated Debtors Dated February [  ], 2024*

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ..................................................................2

    1.1        Creation and Name ...........................................................................2

    1.2        Purposes.............................................................................................2

    1.3        Transfer of Assets .............................................................................3

    1.4        Trust Acceptance of Assets. ............................................................3

    1.5        Jurisdiction .......................................................................................4

ARTICLE II POWERS AND TRUST ADMINISTRATION ...............................4

    2.1        Powers. ..............................................................................................4

    2.2        General Administration. ...................................................................6

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS .....................8

    3.1        Accounts. ...........................................................................................8

    3.2        Investment Guidelines. ....................................................................9

    3.3        Payment of Operating Expenses......................................................9

    3.4        Distributions. ..................................................................................10

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE ........................................10

    4.1        Number ...........................................................................................10

    4.2        Term of Service. .............................................................................10

    4.3        Compensation and Expenses of the Trustee..................................11

    4.4        Standard of Care; Exculpation. .....................................................12

    4.5        Protective Provisions......................................................................13

    4.6        Indemnification. .............................................................................15

    4.7        No Bond ..........................................................................................16

    4.8        Delaware Trustee............................................................................16

ARTICLE V TRUST OVERSIGHT COMMITTEE...........................................22

    5.1        Members .........................................................................................22

    5.2        Duties...............................................................................................22

i

5.3       Term of Office.................................................................................................23

5.4       Appointment of Successors. ...........................................................................23

5.5       Compensation and Expenses of the TOC ........................................................24

5.6       No Bond .........................................................................................................24

5.7       Procedures for Obtaining Consent of the TOC ...............................................24

ARTICLE VI GENERAL PROVISIONS .........................................................................26

6.1       Irrevocability .................................................................................................26

6.2       Term; Termination. ........................................................................................26

6.3       Amendments...................................................................................................27

6.4       Severability....................................................................................................27

6.5       Notices............................................................................................................27

6.6       Successors and Assigns ..................................................................................28

6.7       Limitation on Interests for Securities Laws Purposes .....................................29

6.8       Exemption from Registration ..........................................................................29

6.9       Entire Agreement; No Waiver ........................................................................29

6.10      Headings.........................................................................................................30

6.11      Governing Law...............................................................................................30

6.12      Dispute Resolution .........................................................................................31

6.13      Effectiveness ..................................................................................................32

6.14      Counterpart Signatures ...................................................................................33

6.15      Waiver of Jury Trial .......................................................................................33

EXHIBIT 1 CERTIFICATE OF TRUST OF LMC LITIGATION TRUST .....................Ex. 1-1

EXHIBIT 2 LIST OF CLAIMS AND CAUSES OF ACTION............................Ex. 2-1

EXHIBIT 3 INVESTMENT GUIDELINES .........................................................Ex. 3-1

# LMC LITIGATION TRUST AGREEMENT

This LMC Litigation Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the *Third Modified First Amended Joint Plan of Reorganization of Lordstown Motors Corp. and its Affiliated Debtors* [Docket No. ] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 23-10831 (MFW) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by Lordstown Motors Corp. (the "**Settlor**"), [    ] (the "**Delaware Trustee**"), the Trustee identified on the signature pages hereof (the "**Trustee**"), and the members of the Trust Oversight Committee identified on the signature pages hereof (the "**TOC**" and, together with the Delaware Trustee and the Trustee, the "**Parties**").

## RECITALS

**WHEREAS,** the Plan contemplates the creation of a Litigation Trust (the "**Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS,** pursuant to the Plan, the Trust is established to collect assets and make distributions to Lordstown Motors Corp. (the "**Post-Effective Date Debtor**") in accordance with the Plan, the Confirmation Order and this Trust Agreement;[2]

**WHEREAS,** the Trustee shall administer the Trust in accordance with the terms of the Plan, the Confirmation Order and this Trust Agreement (the "**Governing Documents**"); and

---

[1]    All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

[2]    To the extent the Post-Effective Date Debtor has obligations with respect to directing proceeds received from the Trust, those obligations should be set forth in the Plan and Confirmation Order; only the Post-Effective Date Debtor shall be a beneficial owner of this Trust.

**WHEREAS,** the Trust is intended to qualify a "grantor trust" and the Settlor is intended to qualify as the "grantor" under the provisions of Sections 671 *et seq.* of the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**").

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1    **Creation and Name.**  There is hereby created a trust known as the "LMC Litigation Trust." The Trustee of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include the Trustee acting on behalf of the Trust. It is the intention of the Parties that the Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and that this Trust Agreement constitutes the governing instrument of the Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 1**.  The Trustee is hereby authorized and directed to execute and file with the Delaware Secretary of State such certificates as may from time to time be required under the Act and any other Delaware law.

1.2    **Purposes**.  The purposes of the Trust are to

(a)    receive claims and causes of action described on **Exhibit 2** to this Trust Agreement (the "**Causes of Action**")[3] pursuant to the terms of the Plan and the Confirmation Order;

(b)    hold, manage, protect and monetize the Causes of Action, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**")

---

[3] Schedule to be updated by the EC and Debtors prior to the Effective Date.

in accordance with the terms of the Governing Documents for the benefit of the Beneficial Owner (as defined herein);

(c)    engage in any lawful activity that is appropriate and in furtherance of the purposes of the Trust to the extent consistent with the Governing Documents; and

(d)    make or cause to be made distributions of Trust Assets in accordance with and subject to the terms of the Governing Documents.

1.3    **Transfer of Assets.**  Pursuant to, and in accordance with Article VI of the Plan, the Trust has received the assignment of the Causes of Action. Except as otherwise provided in the Governing Documents, the Causes of Action and any other assets to be transferred to the Trust under the Plan will be transferred to the Trust free and clear of any liens or other claims by the Debtors, the Post-Effective Date Debtors, any creditor, or other entity.

1.4    **Trust Acceptance of Assets.**

(a)    In furtherance of the purposes of the Trust, the Trust hereby expressly accepts the transfer to the Trust of the Causes of Action as, and subject to the terms, contemplated in the Plan.

(b)    In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(c)    To the extent required by the Act, the beneficial owner (within the meaning of the Act) of the Trust (the "**Beneficial Owner**") shall be deemed to be the Post-Effective Date Debtor; provided that Post-Effective Date Debtor shall be subject to the terms of the Governing Documents with respect to its obligations on or after the Effective Date.

1.5     **Jurisdiction**. The Bankruptcy Court shall have continuing jurisdiction over the Trust provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Trust.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

2.1     **Powers.**

(a)     The Trustee is and shall act as a fiduciary to the Trust in accordance with the provisions of the Governing Documents. The Trustee shall, at all times, administer the Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in this Trust Agreement and the Plan, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited below or by the Plan, the Trustee shall have the power to:

(i)     receive the Causes of Action and exercise all rights with respect thereto, including without limitation by reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Causes of Action;

4

(ii) seek the examination of, and examining, any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(iii) invest monies held from time to time by the Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iv) make or arrange to make payment of expenses and other obligations of the Trust as set forth in the Governing Documents;

(v) establish such funds, reserves, and accounts within the Trust, as the Trustee deems useful in carrying out the purposes of the Trust;

(vi) make or cause to be made distributions to the Beneficial Owner pursuant to the terms of this Trust Agreement and the Plan;

(vii) appoint such officers and retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(viii) compensate the Trustee, the Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(ix)     record all expenses incurred by the Trust on the books and records of the Trust;

(x)     enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement or the Plan;

(xi)     in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xii)     obtain the consent of the TOC with respect to the matters set forth in Section 2.2(d) below; and

(xiii)     exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)     The Trustee shall not have the power to guarantee any debt of other persons.

(e)     The Trustee shall endeavor to make timely distributions and not unduly prolong the duration of the Trust.

2.2     **General Administration.**

(a)     The Trustee shall act in accordance with the Governing Documents. In the event of a conflict between the terms or provisions of the Plan or this Trust Agreement, the terms

6

of the Plan shall have first priority, followed by the Trust Agreement. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)    The Trustee shall (i) timely file such income tax and other returns and statements required to be filed and shall cause to be paid timely all taxes required to be paid by the Trust, if any, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a grantor trust. The Trustee may request an expedited determination of taxes under Bankruptcy Code section 505(b) for all tax returns filed by or on behalf of the Trust for all taxable periods through the dissolution thereof.

(c)    The Trustee shall timely account to the Bankruptcy Court as follows:

(i)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants. The Trustee shall provide a copy of such Annual Report to the TOC when such report is filed with the Bankruptcy Court.

(d)    The Trustee shall be required to obtain the consent of the TOC, pursuant to the consent process set forth in Section 5.7 below:

(i)      to settle any Cause of Action where the face amount of the asserted Claim or Vested Cause of Action exceeds $1,000,000;

(ii)     to commence and/or participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding that exceeds $1,000,000;

(iii)    to modify the compensation of the Trustee;

(iv)     to acquire an interest in and/or merge with and/or contract with another settlement trust; or

(v)      to effectuate any material amendment of this Trust Agreement, which shall be in accordance with Section 6.3; provided that no such amendment shall be in contravention of the Plan.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    **Accounts.**

(a)      The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)      The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time.

(c)      The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficial Owner and the payment of Trust operating expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust

Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

3.2     **Investment Guidelines.**

(a)     The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 3** (the "**Investment Guidelines**").

(b)     In the event the Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Governing Documents. This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule, and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)     Cash proceeds received by the Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Trust as set forth in Section 1.2 above.

(d)     All income of the Trust shall be distributed or held for future distribution to the Post-Effective Date Debtor, consistent with Section 677 of the Internal Revenue Code.

3.3     **Payment of Operating Expenses**

All operating expenses of the Trust shall be paid by the Trust except that the Post-Effective Date Debtor shall fund the operating expenses of the Trust on a monthly basis for the duration of the Trust. The Trust may periodically provide to the Post-Effective Date Debtor invoices or other documentation with respect to such operating expenses of the Trust to be paid and the Post-Effective Date Debtor shall timely pay such expenses or shall timely remit to the Trust such amounts as are necessary to enable the Trust to timely pay such expenses. None of the Trustee,

9

Delaware Trustee, the TOC, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Trust.

    3.4    **Distributions.**

    The Trustee will make or cause to be made distributions to the Beneficial Owner in accordance with the Governing Documents.

**ARTICLE IV**

**TRUSTEE; DELAWARE TRUSTEE**

    4.1    **Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.9, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.  For the avoidance of doubt, any reference herein to the term Trustee does not refer to the Delaware Trustee.

    4.2    **Term of Service.**

    (a)    The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Trust pursuant to Section 6.2 below.

    (b)    The Trustee may resign at any time upon written notice to the TOC with such notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

    (c)    The Trustee may be removed by the unanimous consent of the TOC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing,

10

intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, or a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder. For the avoidance of doubt, any removal of a Trustee by the TOC pursuant to this Section 4.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)     In the event of any vacancy in the office of the Trustee, including the death, resignation, or removal of the Trustee, such vacancy shall be filled by the unanimous consent of the TOC, subject to the approval of the Bankruptcy Court. In the event the TOC cannot agree on a successor Trustee, the provisions of Section 6.12 below shall apply.

(e)     Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

4.3     **Compensation and Expenses of the Trustee.**

(a)     The Trustee shall receive compensation on an hourly basis for his or her services as Trustee on matters related to the operation of the Trust.  The hourly rate shall be the Trustee's usual and customary rate then in effect, currently $1,205 per hour. The compensation

11

payable to the Trustee hereunder shall be reviewed every year by the TOC and may be appropriately adjusted for changes in the cost of living. The Trust will reimburse the Trustee for fees and expenses incurred prior to the Effective Date in connection with this Trust Agreement and effectuating a timely, orderly, and efficient transition of duties and obligations to the Trustee as of the Effective Date, (such amount not to exceed $15,000), which shall be paid promptly after the Effective Date.

(b)     The Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

(c)     The Trust shall include in the Annual Report a description of the amounts paid under this Section 4.3.

4.4     **Standard of Care; Exculpation.**

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TOC and its members, and (iv) the officers, employees, consultants, advisors, and agents of each of the Trust, the Trustee, the Delaware Trustee, and the TOC.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their willful misconduct, bad faith, gross negligence, or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses,

damages, claims, costs, and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(c)    To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficial Owner, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)    The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee at his or her discretion.

4.5    **Protective Provisions.**

(a)    Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)    In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the

communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)    No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith, gross negligence or fraud as determined by a Final Order. Notwithstanding the foregoing, the parties (a) acknowledge that the initial Trustee has been appointed as a representative of M3 Advisory Partners, LP and (b) agree that such initial Trustee shall have no personal liability under any circumstances and, instead, any liability that otherwise would be owing by such initial Trustee hereunder shall be the obligation of M3 Advisory Partners, LP.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)    In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by

14

them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification.**

(a)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Trust, and for any other liabilities, losses, damages, claims, costs, and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence, or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs, and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)    The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(d)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

4.7    **No Bond.**  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.8    **Delaware Trustee.**

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible to serve as the Delaware Trustee in accordance with the provisions of this Section 4.9, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.9(c)

16

below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties (including fiduciary duties) and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Beneficial Owner, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee. The Delaware Trustee undertakes to perform such duties and only such duties as are specifically and expressly set forth in this Trust Agreement. These duties shall be deemed purely ministerial in nature, and the Delaware Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Trust Agreement against the Delaware Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty

17

and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, bad faith, gross negligence or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.9(d) below. The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.9(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such thirty (30) day

period, the Delaware Trustee, at the expense of the Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with Section 3810 of the Act.

(e)    Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion, or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder and will have

and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)    The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Trust and the Delaware Trustee, which compensation shall be paid by the Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)    The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written

instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall have no liability for any action taken, or errors in judgment made, in good faith by it or any of its officers, employees or agents, unless it shall have been negligent in ascertaining the pertinent facts.  Nothing in this Trust Agreement shall require the Delaware Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder.  In no event shall the Delaware Trustee be responsible or liable for special, indirect, punitive, incidental or consequential losses or damages of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of any such loss or damage and regardless of the form of action.

(i)     The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties not only as to due execution, validity, and effectiveness, but also as to the truth and accuracy of any information contained therein.

(j)     The Corporate Transparency Act (31 U.S.C § 5336) and its implementing regulations (collectively, the "CTA"), may require the Trust to file reports with the Financial Crimes Enforcement Network ("FinCEN") from time to time. It shall be the Trustee's duty and not the Delaware Trustee's duty to cause the Trust to make such filings, as applicable, and to cause the Trust to comply with its obligations under the CTA, if any. The parties hereto acknowledge that the Delaware Trustee acts solely as a directed trustee at the direction of the Trustee hereunder

and that the Trustee is and shall deemed to be the party with the power and authority to exercise substantial control over the Trust.

(k)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority, acts of God, earthquakes, fires, floods, wars, terrorism, civil or military disturbances, sabotage, epidemics, riots, interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service, accidents, labor disputes, acts of civil or military authority or governmental actions, or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

## ARTICLE V

## TRUST OVERSIGHT COMMITTEE

5.1     **Members.**  The TOC shall consist of not more than five (5) members.[4]  For the avoidance of doubt, the members of the TOC are expected to be members of the New Board.  To the extent that a member of the TOC elects to resign from the TOC in accordance with Section 5.3(b) below or is removed pursuant to Section 5.3(c) below, a successor shall be appointed pursuant to Section 5.4(a).

5.2     **Duties.**  The members of the TOC shall serve in a fiduciary capacity and shall have no fiduciary obligations or duties to any party other than the Beneficial Owner. The Trustee must obtain the consent of the TOC on matters identified in Section 2.2(d) above. Except for the duties and obligations expressed in the Governing Documents, there shall be no other duties (including

---

[4]     The initial members of the TOC shall be: Alexander Matina, Andrew L. Sole, Michael Wartell, Neil Weiner, and Alexandre Zygnier.

fiduciary duties) or obligations, express or implied, at law or in equity, of the TOC. To the extent that, at law or in equity, the TOC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or the Beneficial Owner of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the TOC expressly set forth in the Governing Documents.

5.3    **Term of Office.**

(a)    Each member of the TOC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, or (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)    A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)    A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal may be made by the recommendation of the remaining members of the TOC with the approval of the Trustee.

5.4    **Appointment of Successors.**

(a)    If a member of the TOC dies, resigns pursuant to Section 5.3(b) above, or is removed pursuant to Section 5.3(c) above, the vacancy shall be filled with an individual selected by the remaining TOC members with the approval of the Trustee, provided however, that if the

remaining TOC members and the Trustee cannot agree on the successor the matter shall be resolved pursuant to Section 6.12 below.

(b)      Each successor TOC member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) above, (iii) his or her removal pursuant to Section 5.3(c) above, or (iv) the termination of the Trust pursuant to Section 6.2 below.

(c)      No successor TOC member shall be liable personally for any act or omission of his or her predecessor TOC member. No successor TOC member shall have any duty to investigate the acts or omissions of his or her predecessor TOC member.

5.5      **Compensation and Expenses of the TOC.**  The members of the TOC shall not receive compensation from the Trust for their services as TOC members, but shall be reimbursed for all reasonable out-of-pocket costs or expenses incurred in connection with the performance of such member's duties hereunder. A description of the amounts paid under this Section 5.5 shall be included in the Annual Report.

5.6      **No Bond.**  The members of the TOC shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.7      **Procedures for Obtaining Consent of the TOC**

(a)      Where the Trustee is required to obtain the consent of the TOC pursuant to Section 2.2(d) above, the Trustee shall provide the TOC with a written notice (e-mail is sufficient) stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the TOC as much relevant information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the TOC with reasonable access to the professionals or experts

24

retained by the Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(b)    The TOC must consider in good faith and in a timely fashion any request for its consent by the Trustee and must in any event advise the Trustee in writing (e-mail is sufficient) of its consent or objection to the proposed action within five (5) business days of receiving the original request for consent from the Trustee. The TOC may not withhold its consent unreasonably. If the TOC decides to withhold consent, it must explain in detail its objections to the proposed action. If the TOC does not advise the Trustee in writing of its consent or objections to the proposed action within five (5) days of receiving notice regarding such request, then consent of the TOC to the proposed action shall be deemed to have been affirmatively granted.

(c)    If, after following the procedures specified in this Section 5.7, the TOC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TOC shall resolve their dispute pursuant to Section 6.12. The TOC shall bear the burden of proving that it reasonably withheld its consent. If the TOC meets that burden, the Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the TOC's reasonable objection.

(d)    Action by the TOC shall require the affirmative vote of the majority of the TOC members then in office.

**ARTICLE VI**

**GENERAL PROVISIONS**

6.1    **Irrevocability**.  To the fullest extent permitted by applicable law, the Trust is irrevocable.

6.2    **Term; Termination.**

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 6.2.

(b)    The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution upon the satisfaction of the purposes of the Trust, wherein (i) all reasonably expected assets have been collected, (ii) all distributions have been made, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining obligations and operating expenses in a manner consistent with the Governing Documents, and (iv) a final accounting has been filed with the Bankruptcy Court (the "**Dissolution Date**").

(c)    On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Trust by the Trustee and payment of all of the Trust's liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Trust shall be distributed or disbursed in accordance with Section 3.4.

(d)    Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Trust to be filed in accordance with the Act (without the need for the Delaware Trustee's consent or signature). Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the

26

filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

6.3 **Amendments**. Any amendment to or modification of this Trust Agreement may be made in writing and only pursuant to an order of the Bankruptcy Court; provided, however, the Trustee may amend this Trust Agreement with the unanimous consent of the TOC from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing: (i) no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order, other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; (ii) neither this Trust Agreement nor any Exhibit to this Trust Agreement shall be modified or amended in any way that could jeopardize, impair, or modify the Trust's grantor trust status; and (iii) any amendment or modification of this Trust Agreement, or Exhibit hereto, affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

6.4 **Severability**. Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

6.5 **Notices.**

(a)     Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Trust:

> M3 Capital Partners
> Attention: Robert Winning
> 1700 Broadway, 19th Floor
> New York, NY 10019
> rwinning@m3-partners.com

With a copy (which shall not constitute notice) to:

> [                    ]

To the Delaware Trustee;

> [                    ]

With a copy (which shall not constitute notice) to:

> [                    ]

To the TOC:

> [                    ]

(b)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

6.6     **Successors and Assigns**. The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the TOC, the Delaware Trustee, the Trustee, and their respective successors and assigns, except that neither the Trust, the TOC, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.9(d),

and in the case of the Trustee in accordance with Section 4.2(d) above, and in the case of the TOC members in accordance with Section 5.4(a) above.

6.7    **Limitation on Interests for Securities Laws Purposes**. Rights of the Beneficial Owner, and any interests therein: (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

6.8    **Exemption from Registration**. The Parties hereto intend that the interests of the Beneficial Owner under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interest constitutes a "security," the Parties hereto intend that the exemption provisions of Bankruptcy Code Section 1145 will be satisfied and the offer and sale under the Plan of the beneficial interest in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

6.9    **Entire Agreement; No Waiver**. The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise

thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

6.10    **Headings.** The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

6.11    **Governing Law**. The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustee, the Delaware Trustee, the TOC, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of

fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, or the TOC, set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Trust.

6.12 **Dispute Resolution**.

(a) Unless otherwise expressly provided for herein or in Article VIII of the Plan, the dispute resolution procedures of this Section 6.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 6.12 shall not apply to the Delaware Trustee or in any dispute with respect to Claims.

(b) **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c) **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be

limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 6.12(d).

(d)    **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.5 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Trust. Each counterparty shall respond to the motion within the time period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

6.13    **Effectiveness**. This Trust Agreement shall become effective on the Effective Date.

32

6.14     **Counterpart Signatures**. This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

6.15     **Waiver of Jury Trial**.  Each Party hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement to the extent any such proceeding is subject to the jurisdiction of the Bankruptcy Court; provided, however, the foregoing waiver shall not apply to the extent any such proceeding is not subject to the jurisdiction of the Bankruptcy Court in accordance with the terms of this Trust Agreement.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day of _____, 2024.

**SETTLOR**

_____

**TRUSTEE**

_____

**DELAWARE TRUSTEE**

**[]**

By:_____

**TRUST OVERSIGHT COMMITTEE**

**EXHIBIT 1**

**CERTIFICATE OF TRUST OF THE LMC LITIGATION TRUST**

Exhibit 1 – Page 1 of 3

## CERTIFICATE OF TRUST OF THE LMC LITIGATION TRUST

This Certificate of Trust of the LMC Litigation Trust (the "*Trust*") is being duly executed and filed on behalf of the Trust by the undersigned trustees to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. Section 3801 *et seq.*) (the "*Act*").

Name. The name of the trust formed hereby is: **LMC Litigation Trust**

Registered Office; Registered Agent. The name and address of the trustee of the Trust with a principal place of business in the State of Delaware is:

[Wilmington Trust, National Association
1100 North Market Street
Wilmington, Delaware 19890-1605
Attention: Corporate Trust Administration]

Effective Date. This Certificate of Trust shall be effective upon filing.

Exhibit 1 – Page 2 of 3

IN WITNESS WHEREOF, the undersigned have duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:

DELAWARE TRUSTEE:

[not in its individual capacity, but solely as
Delaware Trustee]

By: _____

By: _____

Exhibit 1 – Page 3 of 3

**EXHIBIT 2**

**LIST OF CAUSES OF ACTION**

[To come]

Exhibit 2 – Page 1 of 1

**EXHIBIT 3**

**INVESTMENT GUIDELINES**

**In General**. Only the following investments will be permitted:

      (i)      Demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured;

      (ii)      U.S. Treasury bills, bonds, and notes, including, but not limited to, long-term U.S. Treasury bills, bonds, notes, and other Government Securities as defined under Section 2(a)(16) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(16), including, but not limited to, Fannie Mae, Freddie Mac, Federal Home Loan Bank, and Federal Farm Credit;

      (iii)      Repurchase agreements for U.S. Treasury bills, bonds, and notes;

      (iv)      AA or AAA corporate bonds (with the rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's, or Fitch)); or

      (v)      Open-ended mutual funds owning only assets described in subparts (i) through (iv) of this subsection.

      The value of bonds of any single company and its affiliates owned by the Trust directly rather than through a mutual fund shall not exceed 10% of the investment portfolio at time of purchase; this restriction does not apply to any of the following: Repurchase Agreements; Money Market Funds; U.S. Treasuries; and U.S. Government Agencies.

      Any such investments shall be made consistently with the Uniform Prudent Investor Act. The determination of the rating of any investments shall be made by the Trust's financial advisor on the date of acquisition of any such investment or on the date of re-investment. The Trust's financial advisor shall reconfirm that all investments of Trust Assets still meet the original rating requirement on a quarterly basis. If the Trust's financial advisors determine that any particular investment no longer meets the rating requirement, there shall be a substitution of that investment with an investment that meets the ratings requirement as promptly as practicable, but in no event later than the next reporting period. Previously purchased securities downgraded below AA may be held for a reasonable and prudent period of time if the Trust's financial advisor believes it is in the interest of the Trust to do so.

      The borrowing of funds or securities for the purpose of leveraging, shorting, or other investments is prohibited. Investment in non-U.S. dollar denominated bonds is prohibited. The standing default investment instruction for all cash in any account or subaccount that holds any Trust Assets in cash shall be invested in the BlackRock Fed Fund (CUSIP 09248U809).

      See example fund-level requirements table on following page.

Exhibit 3– Page 1 of 2

# Fund Level Requirements

1. OTC Derivatives Counterparty Exposure – Not allowed
2. Non-U.S. dollar denominated bonds – Not allowed

| TYPE OF INVESTMENT | ELIGIBLE | PROHIBITED | COMMENTS |
|---|:---:|:---:|---|
| U.S. Treasury Securities | X | | |
| U.S. Agency Securities | X | | |
| Mortgage-Related Securities | | x | |
| Asset-Backed Securities | | x | |
| Corporate Securities (public) | X | | |
| Municipal bonds | x | | |
| | | | |
| **DERIVATIVES:** | | No investment, including futures, options and other derivatives, may be purchased if its return is directly or indirectly determined by an investment prohibited elsewhere in these guidelines. | |
| Futures | | x | |
| Options | | x | |
| Currency Forwards | | x | |
| Currency Futures | | x | |
| Currency Options | | x | |
| Currency Swaps | | x | |
| Interest Rate Swaps | | x | |
| Total Return Swaps | | x | |
| Structured Notes | | X | |
| Collateralized Debt Obligations | | x | |
| Credit Default Swaps | | X | |
| Mortgage-Related Derivatives | | X | |
| | | | |
| **FOREIGN / NON-U.S. DOLLAR:** | | | |
| Foreign CDs | | X | |
| Foreign U.S. Dollar Denominated Securities | | X | |
| Non-U.S. Dollar Denominated Bonds | | X | |
| Supranational U.S. Dollar Denominated Securities | | X | |
| | | | |
| **COMMINGLED VEHICLES (except STIF):** | | | |
| Collective Funds | | X | |
| Commingled Trust Funds (open ended mutual funds only) | | X | |
| Common Trust Funds | | X | |
| Registered Investment Companies | | X | |
| | | | |
| **MONEY MARKET SECURITIES:** | | | |
| Qualified STIF | | x | |
| Interest Bearing Bank Obligations Insured by a  Federal or State Agency | X | | |
| Commercial Paper | | x | |
| Master Note Agreements and Demand Notes | | x | |
| Repurchase Agreements | | x | |
| | | | |
| **OTHER:** | | | |
| Bank Loans | | x | |
| Convertibles (e.g., Lyons) | | x | |
| Municipal Bonds | X | | |
| Preferred Stock | | x | |
| Private Placements (excluding 144A) | X | | |
| Rule 144A Issues | X | | |
| Zero Coupon Bonds | X | | |
| Commodities | | X | |
| Catastrophe Bonds | | X | |

Exhibit 3– Page 2 of 2