<u>**Exhibit K-3**</u>[5]

**Ohio Settlement Notice – Longform Notice**

---

[5] The longform Ohio Settlement Notice was drafted by Ohio Class Counsel for their distribution to the Ohio Litigation Settlement Class Members.  It does not reflect the views of any other party (including the Debtors, the Post-Effective Date Debtors, the UCC, or the EC) on the matters or construal of facts contained therein.   By including the longform notice in this Plan Supplement and seeking approval of the same in connection with confirmation of the Plan, such other parties make no admission or concession and reserve all rights.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Lordstown Motors Corp., *et al.*,<br><br>                      Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br>(Jointly Administered)<br><br>**Related D.I.: 668, 696 & 699** |

**NOTICE OF CERTIFICATION OF SETTLEMENT CLASS, PROPOSED**
**SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**If you purchased the publicly traded securities of Lordstown Motors Corp. ("LMC")**
**during the period from August 3, 2020 through July 2, 2021, and/or held LMC's publicly**
**traded Class A Common Stock on September 21, 2020, and were damaged thereby, you**
**may be entitled to a payment from a settlement.[1]**

*A U.S. Bankruptcy Court authorized this Notice.  This is <u>not</u> a solicitation from a lawyer.*

- After extensive arm's-length negotiations, Class Representative George Troicky, on behalf of himself and all members of the Ohio Settlement Class, and LMC and its subsidiaries (together, the "**Debtors**"), have reached a proposed settlement of all claims against certain of the Debtors and David Hamamoto ("**Settling Defendants**")[2] asserted in the class action, *In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-00616 (N.D. Ohio) ("**Ohio Securities Litigation**"), which were also asserted against certain of the Debtors in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**" or "**Bankruptcy Cases**"). Other directors and officers of the Debtors who were serving in such roles as of December 12, 2023 but who are not defendants in the Ohio Securities Litigation (such directors and officers, together with the Settling Defendants, the "**Released Parties**") are also released in connection with the Settlement.

---

[1] "**LMC Securities**" means LMC's publicly traded Class A Common Stock (ticker: "**RIDE**" and prior ticker: "**DPHC**"), LMC's publicly traded warrants (ticker: "**RIDEW**" and prior ticker: "**DPHCW**"), LMC's publicly traded units (ticker: "**DPHCU**"), and any exchange-traded option to purchase or sell LMC's publicly traded Class A Common Stock.

[2] The Settling Defendants are Lordstown Motors Corp. F/K/A DiamondPeak Holding Corp., Lordstown EV Corporation F/K/A Lordstown Motors Corp. ("**LEVC**," and, collectively with LMC, the "**Company**"), and David Hamamoto.  The Settling Defendants and Class Representative George Troicky are, collectively, the "**Settling Parties**."

- On March __, 2024, the U.S. Bankruptcy Court for District of Delaware ("**Bankruptcy Court**" or "**Court**"), entered an order confirming the Debtors' *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as the same may be modified in accordance with its terms, the "**Plan**"), preliminarily approving the proposed settlement (the "**Ohio Securities Litigation Settlement**" or "**Settlement**"), and certifying the "**Ohio Settlement Class**" pursuant to Federal Rule 23, made applicable by Bankruptcy Rule 7023, for settlement purposes only.[3]

- If the Settlement is approved on a final basis, the Settlement will also resolve class claims in the Ohio Securities Litigation alleging that the Settling Defendants violated Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934.  The Ohio Securities Litigation will continue to proceed with respect to all other defendants.  The Settlement also does not impact the consolidated stockholders class action pending in the Delaware Court of Chancery called *In re Lordstown Motors Corp. Stockholders Litig.*, C.A. No. 2021-1066-LWW (Del. Ch.) (the "**Delaware Shareholder Class Action**"), or the putative securities class action filed against the Debtors' current Chief Executive Officer (Edward Hightower), Chief Financial Officer (Adam Kroll), and Executive Chairman (Daniel Ninivaggi) in the United States District Court for the Northern District of Ohio, called *Bandol Lim et al. v. Edward Hightower et al.*, No.: 4:23-cv-01454-BYP (N.D. Ohio) (the "**Post-Petition Securities Action**").

- The Settlement will be implemented in accordance with the provisions of the Plan, which provide for the creation of the Ohio Securities Litigation Settlement Fund in the amount of at least $3 million, and subsequent additional funding of up to $7 million, plus earned interest, if any, for the benefit of the Ohio Settlement Class after the deduction of Court-approved attorneys' fees and expenses, notice and administration expenses, and taxes.

- This Notice describes important rights you may have if you are a member of the Ohio Settlement Class (defined below) and what steps you must take if you wish to receive a payment as a result of the Settlement, wish to object, or wish to seek to be excluded from the Ohio Settlement Class.

**IF YOU ARE IN THE OHIO SETTLEMENT CLASS, YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER YOU ACT OR DO NOT ACT.**
**PLEASE READ THIS NOTICE CAREFULLY.**

| Your Legal Rights and Options | |
|---|---|
| **SUBMIT AN OHIO CLAIM** | The <u>only</u> way to get a payment from the Settlement.  *See* |

---

[3] The primary terms of the Settlement are in the Plan and the March ___, 2024 order confirming the Plan (the "**Confirmation Order**"), which can be viewed at www.strategicclaims.net/lordstown/.  All capitalized terms not defined in this Notice have the same meanings as in the Plan and the Confirmation Order, or the Ohio Settlement Plan of Allocation governing the calculation of class members' claims submitted in connection with the Settlement (the "**Ohio Settlement Plan of Allocation**" or "**Plan of Allocation**"), which is reported in paragraphs __ to ___ below.

| | |
|---|---|
| **FORM ON OR BEFORE _____, 2024** | Question __ for details. This is different from any claim you may have submitted in the Chapter 11 Cases. |
| **EXCLUDE YOURSELF FROM THE OHIO SETTLEMENT CLASS ON OR BEFORE _____, 2024** | Get no payment from the Settlement.  This is the only option that potentially may allow you to ever bring or be part of any other lawsuit against the Settling Defendants and the other Released Parties (defined above) concerning the Released Claims (defined below).  ***With respect to the Debtors, your ability to bring claims against them may be limited by the Plan and whether you timely filed an individual claim in the Chapter 11 Cases, regardless of whether you request exclusion from the Ohio Settlement Class.*** *See* Question ___ for details. |
| **OBJECT ON OR BEFORE _____, 2024** | Write to the Bankruptcy Court about why you do not like the Settlement, the Ohio Settlement Plan of Allocation, or Ohio Class Counsel's motion for an award of attorneys' fees and expenses. If you object, you will still be in the Ohio Settlement Class and you can still file an Ohio Claim Form.  *See* Question ___ for details. |
| **PARTICIPATE IN A HEARING ON _____, 2024 AND FILE A NOTICE OF INTENTION TO APPEAR BY _____, 2024** | Ask to speak to the Bankruptcy Court at the Ohio Securities Litigation Final Approval Hearing about the Settlement.  *See* Question __ for details. |
| **DO NOTHING** | Get no payment as part of the Settlement.  Give up rights and still be bound by the terms of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained below.

- The Bankruptcy Court still has to decide whether to approve the proposed Settlement on a final basis.  Payments will be made to members of the Ohio Settlement Class who timely submit valid Ohio Claim Forms if the Bankruptcy Court approves the Settlement and any appeals are resolved favorably.

## SUMMARY OF THIS NOTICE

### Statement of the Ohio Settlement Class's Recovery

1.    Class Representative has entered into the proposed Settlement in exchange for a payment of $3 million (the "**Ohio Securities Litigation Payment**") to be paid into the Ohio Securities Litigation Escrow Account on the Effective Date of the Plan, with subsequent additional

funding by the Post-Effective Date Debtors or the Litigation Trustee, as applicable, into the Ohio Securities Litigation Escrow Account, of up to an additional $7 million.  Based on Class Representative's consulting damages expert's estimate of the number of LMC Securities eligible to participate in the Settlement, and assuming that all class members eligible to participate do so, it is estimated that the average gross recovery, before deduction of any Court-approved attorneys' fees, litigation expenses, award to Class Representative pursuant to the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"), taxes, and notice and administration expenses, would be approximately $0.014 per allegedly damaged share if the Settlement payment totals $3 million and $0.045 per allegedly damaged share if the Settlement payments ultimately total $10 million.[4] If the Bankruptcy Court approves Ohio Class Counsel Fee and Expense Application (discussed below), the average recovery would be approximately $0.003 per allegedly damaged share if the Settlement payment totals $3 million and $0.024 per allegedly damaged share if the Settlement payments ultimately total $10 million.  **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.**  A Settlement Class Member's actual recovery will depend on, for example: (i) the number and value of claims submitted; (ii) the amount of the Net Ohio Securities Litigation Settlement Fund; (iii) when and how many shares of LMC Securities the Settlement Class Member purchased during the Ohio Settlement Class Period; and (iv) whether and when the Settlement Class Member sold their shares. *See* the Ohio Settlement Plan of Allocation beginning on page [__] for information on the calculation of your Recognized Claim.

---

[4]    An allegedly damaged share might have been traded, and potentially damaged, more than once during the Ohio Settlement Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

**Statement of Potential Outcome if the Ohio Settlement Class's Released Claims**
**Continued to Be Litigated Against the Debtors**

2.     The Settling Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Class Representative and the Settlement Class were to prevail on each claim.  The issues that the Settling Parties disagree about include, for example: (i) whether the Settling Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such statements or omissions were made with the requisite level of intent or recklessness; (iii) the amounts by which the prices of LMC Securities were allegedly artificially inflated, if at all; (iv) the extent to which factors unrelated to the alleged fraud, such as general market, economic, and industry conditions, influenced the trading prices of LMC Securities; and (v) whether a class should be certified for litigation purposes.

3.     Settling Defendants have denied, and continue to deny, any and all allegations of wrongdoing or fault, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Class Representative and the Ohio Settlement Class have suffered any loss attributable to defendants' actions or omissions.

**Statement of Attorneys' Fees and Expenses to Be Sought**

4.     Ohio Class Counsel, Labaton Keller Sucharow LLP, will apply to the Bankruptcy Court, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees from the Ohio Securities Litigation Settlement Fund in an amount not to exceed 33% of the Settlement Fund, plus accrued interest at the same rate earned by the Settlement Fund, if any.   Ohio Class Counsel will also apply for payment of litigation expenses incurred in prosecuting the claims to date in an amount not to exceed $1,500,000, plus accrued interest at the same rate earned by the Settlement Fund, which may include an application pursuant to the PSLRA for the reasonable costs and expenses

(including lost wages) of Class Representative directly related to his representation of the Settlement Class.  If the Bankruptcy Court approves Ohio Class Counsel's Fee and Expense Application in full, the average amount of fees and expenses is estimated to be approximately $0.011 per allegedly damaged share if the Settlement payment totals $3 million and $0.021 per allegedly damaged share if the Settlement payments ultimately total $10 million.  A copy of the Ohio Fee and Expense Application will be posted on www.strategicclaims.net/lordstown/ after it has been filed with the Bankruptcy Court.

**Reasons for the Settlement**

5.      For Class Representative, the principal reason for entering into the Settlement is the guaranteed cash benefit to the Ohio Settlement Class.  This benefit must be compared to: (i) the low likelihood of being able to recover more from LMC and LEVC given the Chapter 11 Cases and funds available for distribution, even if the class's claims were allowed; (ii) whether the Bankruptcy Court would certify a class over the objections of the Debtors and other parties in interest; (iii) the risk that the courts may grant some or all of the anticipated dispositive motions to be filed by the Settling Defendants before a trial of the claims; (iv) the uncertainty of being able to prove the allegations against the Settling Defendants; (v) the uncertainty of a greater recovery after a trial and appeals; and (vi) the difficulties and delays inherent in such litigation.

6.      For the Settling Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Ohio Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burdens, expense, uncertainty, and risk of further litigation.

**Identification of Representatives**

7.      Class Representative and the Ohio Settlement Class are represented by Ohio Class Counsel: Jake Bissell-Linsk, Esq., Labaton Keller Sucharow LLP, 140 Broadway, New York, NY 10005, www.labaton.com, settlementquestions@labaton.com, (888) 219-6877.

8.      Further information regarding the Settlement and this Notice may be obtained by contacting the Ohio Settlement Claims Administrator: *Lordstown Bankruptcy Settlement,* c/o Strategic Claims Services, _____, _____, ___@___ , (___) ___ - _____. www.strategicclaims.net/lordstown/.

**Please Do Not Call the Bankruptcy Court, LMC or the Debtors' Claims and Noticing Agent with Questions About the Settlement.**

**BASIC INFORMATION**

| 1.  Why did I get this Notice? |
| --- |

9.      The Bankruptcy Court authorized that this Notice be provided to you because you or someone in your family may have purchased or otherwise acquired LMC Securities during the period from August 3, 2020 through July 2, 2021, inclusive (the "**Ohio Settlement Class Period**") or held LMC's publicly traded Class A Common Stock on September 21, 2020.  **Receipt of this Notice does not mean that you are a member of the Ohio Settlement Class or that you will be entitled to receive a payment from the Settlement.  The Settling Parties do not have access to your individual investment information.  If you wish to be eligible for a payment, you are required to submit the Ohio Claim Form.  *See* Question ___ below.**

10.      The Bankruptcy Court directed that this Notice be provided to Ohio Settlement Class Members because they have a right to know about the proposed Settlement, and about all of their options, before the Court decides whether to approve the Settlement.

11.      The Court in charge of the Settlement is the United States Bankruptcy Court for the District of Delaware, and the Settlement is part of the Debtors' bankruptcy proceedings known

as *In re Lordstown Motors Corp. et al*., Case No. 23-10831 (MFW).  These proceedings are assigned to the Honorable Mary F. Walrath.

| **2.  How do I know if I am part of the Ohio Settlement Class?** |
| --- |

12.    On March __, 2024, the Bankruptcy Court entered an order confirming the Debtors' Plan and preliminarily approving the proposed Settlement and certifying the Ohio Settlement Class pursuant to Federal Rule 23, made applicable by Bankruptcy Rule 7023, for the purposes of the proposed Settlement only.  Everyone who fits the following description is a member of the Ohio Settlement Class and subject to the Settlement, unless they are excluded by definition (*see* Question ___ below) or take steps to exclude themselves from the Ohio Settlement Class (*see* Question __ below):

> **all persons and entities that (i) purchased or otherwise acquired LMC's publicly traded Class A Common Stock (ticker: "RIDE" and prior ticker: "DPHC"), LMC's publicly traded warrants (ticker: "RIDEW" and prior ticker: "DPHCW"), LMC's publicly traded units (ticker: "DPHCU"), or any exchange-traded option to purchase or sell LMC's publicly traded Class A Common Stock during the period from August 3, 2020 through July 2, 2021, inclusive (the Class Period), and were damaged thereby; and/or (ii) held LMC's publicly traded Class A Common Stock (ticker: "RIDE" and prior ticker: "DPHC") on September 21, 2020, and were damaged thereby.**

13.    If one of your mutual funds purchased LMC Securities that does not make you a member of the Ohio Settlement Class, although your mutual fund may be.  You are a member of the Ohio Settlement Class only if you purchased or acquired LMC Securities during the Class Period or held LMC publicly traded Class A common stock on September 21, 2020, and were

damaged thereby.  Check your investment records or contact your broker to see if you have any eligible purchases or acquisitions.  **The Settling Parties do not independently have access to your trading information.**

| **3.  Are there exceptions to being included?** |
| --- |

14.　　Yes.  There are some individuals and entities who are excluded from the Ohio Settlement Class by definition.  Excluded from the Ohio Settlement Class are: (i) any defendants in the Ohio Securities Litigation and the immediate family of any defendant who is an individual, (ii) any current or former officers and/or directors of the Debtors and their immediate family; (iii) any person who is or was a control person, officer or director of LMC or LEVC; (iv) any company, firm, trust, corporation, or other entity in which any defendant in the Ohio Securities Litigation has or had a controlling interest; (v) affiliates of LMC or LEVC, including their employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity in (i)-(iv), in their capacities as such.

15.　　Also excluded from the Ohio Settlement Class is anyone who timely and validly seeks exclusion from the Ohio Settlement Class in accordance with the procedures described in Question ＿＿ below.  *However, please be advised that with respect to the Debtors, your ability to independently bring claims against them may be limited by the Plan and whether you timely filed an individual claim in the Chapter 11 Cases, if you request exclusion from the Ohio Settlement Class.*

| **4.  Why is this a class action?** |
| --- |

16.　　In a class action, one or more persons or entities (in this case, Class Representative), sue on behalf of people and entities who have similar claims.  Together, these

people and entities are a "class," and each is a "class member."  A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small economically to litigate.  One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt-out," from the class.  In this case, the Bankruptcy Court has designated George Troicky as the class representative and has appointed Labaton Keller Sucharow LLP to serve as class counsel.

**5.  What is the Ohio Securities Litigation about and what has happened so far?**

17.    Beginning on March 18, 2021, six putative securities class action lawsuits were filed against LMC, LEVC, and certain of the Company's directors and officers in the U.S. District Court for the Northern District of Ohio (the "**Ohio District Court**"), alleging violations of Section 10(b), Section 14(a), Section 20(a), and Section 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.

18.    On September 10, 2021, after the Ohio District Court consolidated the actions into one action called, *In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-00616 (DAR) (the Ohio Securities Litigation) and appointed George Troicky as Lead Plaintiff, Mr. Troicky filed a consolidated amended class action complaint.  The complaint alleges that the defendants, including the Settling Defendants, made materially false and misleading statements relating to the production capabilities, timeline, and the extent of customer pre-orders for the Debtors' flagship vehicle, the Endurance, in order to, among other reasons, raise funding and persuade DiamondPeak Holding Corp. shareholders to approve a merger between LMC and DiamondPeak (the "**Merger**"). According to the complaint, these alleged misstatements artificially inflated the prices of Debtors' publicly traded securities, and the subsequent alleged revelation of the truth caused the securities'

prices to drop.   The complaint also alleges that, had they known the truth, DiamondPeak shareholders would have exercised their redemption rights prior to the Merger.

19.     On November 9, 2021, the Settling Defendants and other defendants in the Ohio Securities Litigation filed a motion to dismiss the complaint. Pursuant to the Private Securities Litigation Reform Act of 1995, discovery was stayed pending resolution of the motion to dismiss. The motion has been fully briefed since March 3, 2022 and was awaiting the scheduling of a hearing and ruling when the Chapter 11 Cases were filed.  On June 28, 2023, the Debtors and other defendants filed a suggestion of bankruptcy in the Ohio Securities Litigation.  Accordingly, the Ohio District Court stayed the case and denied the motion to dismiss without prejudice to defendants filing a renewed motion at a later time.

**Overview of Relevant Events in Chapter 11 Cases**

20.     On June 27, 2023, the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

21.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of the Chapter 11 Cases, is set forth in detail in the *Declaration of Adam Kroll in Support of the Debtors' Chapter 11 Petitions and First Day Motions*, filed June 27, 2023, [Dkt. No. 15].[5]

22.     On October 10, 2023, Class Representative filed six proofs of claim: one proof of claim against each of the three Debtors on behalf of himself, individually, each in an unliquidated

_____

[5] All filings in the Chapter 11 Cases can be found, free of charge, on the Debtors' claims and noticing agent's website at www.kccllc.net/lordstown/document/list/5892.

amount [Claim Nos. 1379, 1380, and 1394], and one proof of claim against each of the three Debtors on behalf of the Ohio Settlement Class, as lead plaintiff in the Ohio Securities Litigation [Claim Nos. 1368, 1426, and 1434] (the "**Class Claims**," and together with the Individual Claims, the "**Claims**").

23.     On November 6, 2023, Class Representative filed, on behalf of himself and the Ohio Settlement Class, Lead Plaintiff's Motion To Apply Bankruptcy Rule 7023 To Class Claims [Dkt. No. 668] (the "**7023 Motion**"), seeking entry of an order (i) directing that Bankruptcy Rule 7023 applies to the Class Claims, and (ii) establishing a briefing schedule for, and scheduling a hearing on, certification of the Ohio Settlement Class for all purposes in the Chapter 11 Cases, which the Debtors opposed.

24.     On February 5, 2024, the Bankruptcy Court entered an Order approving the Stipulation Between Debtors, Ohio Securities Litigation Lead Plaintiff, Official Committee of Unsecured Creditors, and Official Committee of Equity Security Holders Regarding Ohio Securities Litigation Lead Plaintiff's Motion To Apply Bankruptcy Rule 7023 To Class Claims and Proofs of Claim Numbers 1368, 1379, 1380, 1394, 1426, and 1434 (the "**Stipulation**"), which was entered into after vigorous, arm's-length negotiations to settle and resolve the 7023 Motion, the 7023 Objections, and the Claims.  The Order, for settlement purposes only, certified the Ohio Settlement Class and designated George Troicky as Class Representative and Labaton Keller Sucharow LLP as Ohio Class Counsel.

25.     On February 28, 2024, the Debtors filed their Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors (the Plan) [Dkt. No. 1014]. After a hearing held on _____, 2024, the Bankruptcy Court entered the Order (I) Confirming Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and its Affiliated

Debtors and (II) Granting Related Relief. In addition to confirming the Plan, among other things, the Confirmation Order preliminarily approved the proposed Settlement, approved the forms and methods of notice, and scheduled the Ohio Securities Litigation Final Approval Hearing to determine whether the Bankruptcy Court should: (i) approve the proposed Settlement on a final basis as fair, reasonable, and adequate; (ii) approve the proposed Plan of Allocation for distribution of the Net Settlement Fund; and (iii) approve Ohio Class Counsel's motion for payment of attorneys' fees and expenses from the Settlement Fund.

26.    The Plan became effective on March ____, 2024.

**Settlement Negotiations**

27.    The Settling Parties began exploring the possibility of a negotiated resolution of the claims in the Ohio Securities Litigation in mid-2022. They agreed to engage in mediation and subsequently retained David Murphy, an experienced mediator well-versed in securities class actions, to act as mediator. Following the exchange of mediation statements, the first mediation session occurred on September 9, 2022. The session ended without any agreement being reached. Thereafter, the parties continued discussions with and without the mediator to further explore the possibility of a settlement.

28.    The parties subsequently met for three additional in-person or telephonic mediation sessions, and the parties participated in over two dozen additional calls negotiating possible resolutions. Through these mediation sessions and calls, several of which were attended by Lordstown's current senior leadership, Ohio Class Counsel developed a thorough understanding of the defendants' potential defenses, the strengths and weaknesses of their claims, and the additional issues resulting from the filing of the Chapter 11 Cases.

29.     The discussions were well-informed by Ohio Class Counsel's wide-ranging investigation of the allegedly fraudulent misrepresentations and omissions.  The investigation included, among other things: (a) the review and analysis of public filings with the U.S. Securities and Exchange Commission ("**SEC**"); (b) the review and analysis of press releases, analyst reports, news articles, and other publications; (c) a review of interviews with and other public statements by defendants; (d) interviews with former employees of the Company, as well as customers, business partners, and affiliates; (e) consultation with experts in the automotive industry; (f) the review of court filings in other matters concerning the Company and its current or former affiliates; (g) the review of information obtained through freedom of information requests, such as police reports; and (h) consultations with an expert on damages and loss causation and experienced bankruptcy counsel.  In addition, Ohio Class Counsel reviewed documents produced by defendants in connection with mediation efforts, including documents the Company had previously produced in response to "books and records" requests to other parties pursuant to Delaware law, and documents concerning the Company's financial condition and future plans.  Ohio Class Counsel was further informed by: (i) the preparation of a detailed amended class action complaint; (iv) litigation of motions to unseal relevant documents filed in the Delaware Shareholder Class Action; and (iii) opposing defendants' comprehensive motion to dismiss the amended complaint.

30.     The Debtors and Class Representative continued their arm's-length discussions into the fall of 2023, ultimately reaching an agreement in principle consistent with the terms of the proposed Settlement.

**6.  What are the reasons for the Settlement?**

31.     No court has finally decided in favor Class Representative or the Settling Defendants.  Instead, the Settling Parties agreed to settle.

32.     Class Representative and Ohio Class Counsel believe that the claims asserted against the Settling Defendants are strong, however in agreeing to the Settlement, they considered a variety of factors and were informed by a wide-ranging investigation; the advice of experts in the fields of the automotive industry, as well as economics and damages; and more than a year and a half of rigorous settlement discussions.  Key considerations included: (i) the guaranteed cash benefit to the Ohio Settlement Class, compared to the low likelihood of being able to recover more from LMC and LEVC given the Chapter 11 Cases and the Company's liquidation value; (ii) the value of information the Debtors and Mr. Hamamoto may be able to provide in connection with the ongoing Ohio Securities Litigation; (iii) that the courts may grant some or all of the anticipated dispositive motions to be filed by the Settling Defendants before a trial of the claims; (iv) the uncertainty of being able to prove the allegations against the Settling Defendants; and (v) the difficulties and delays inherent in such litigation.  In light of the Settlement and the guaranteed cash recovery to the Ohio Settlement Class, Class Representative and Ohio Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Ohio Settlement Class.

33.     Settling Defendants have denied and continue to deny each and every one of the claims alleged in the Ohio Securities Litigation and the Chapter 11 Cases, and specifically deny any wrongdoing and that they have committed any act or omission giving rise to any liability or violation of law. Settling Defendants deny that any member of the Ohio Settlement Class has suffered damages; that the prices of LMC Securities were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that members of the Ohio Settlement Class were harmed by the conduct alleged. Nonetheless, Settling Defendants have concluded that continuation of the claims would be protracted and costly, and have taken into account the

uncertainty and risks inherent in any litigation, especially a complex securities class action, and the intervening Chapter 11 Cases.

## THE SETTLEMENT BENEFITS

**7.  What does the Settlement provide to the Ohio Settlement Class?**

34.     In exchange for the releases and dismissals contemplated by the Plan and the Settlement (*see* Question ___ below), the Settling Defendants have agreed to, among other things, a payment of at minimum $3 million, and subsequent additional funding of up to $7 million, which, along with any interest earned, will be distributed after the deduction of Court-awarded attorneys' fees and expenses, taxes, and notice and administration expenses (the Net Ohio Securities Litigation Settlement Fund), to Ohio Settlement Class Members who submit valid and timely Ohio Claim Forms and are found to be eligible to receive a distribution from the fund.

35.     More specifically, the Debtors' Plan, as confirmed by the Bankruptcy Court on March ___, 2024, provides:

(a)     The Debtors shall pay the $3 million Ohio Securities Litigation Payment into the Ohio Securities Litigation Escrow Account on the Effective Date of the Plan;

(b)     The Post-Effective Date Debtors or the Litigation Trustee, as applicable, shall pay the Ohio Securities Litigation Supplemental Amount, when and as received, into the Ohio Securities Litigation Escrow Account.  The Ohio Securities Litigation Supplemental Amount means a payment of an amount equal to the lesser of (i) twenty-five percent (25%) of all Net Litigation Proceeds (which would be paid by the Litigation Trustee) and (ii) $7 million (which would be paid by the Post-Effective Date Debtors).

(c)     The Net Litigation Proceeds relate to future litigation matters retained by the Post-Effective Date Debtors and the Litigation Trustee concerning, among other things, claims and defenses related to "Foxconn," including those alleged in the adversary proceeding called

*Lordstown Motors Corp. et al. v. Foxconn Ventures Pte. Ltd. et al*., Adv. Proc. No. 23-50414 (MFW) (Bankr. D. Del.);[6] claims against certain creditors, vendors, and customers; claims relating to insurance contracts and insurance policies; and claims against certain of the Company's former directors and officers. The value of the Net Litigation Proceeds will be net of the costs of such litigation, including reasonable attorneys' fees.

(d)    The Plan provides that the Ohio Securities Litigation Supplemental Amount, equal to up to $7 million, can be paid from two potential sources. First, if the Post-Effective Date Debtors and/or the Litigation Trustee is successful in pursing and collecting judgments or settlements from third parties, then 25% of all litigation proceeds received (after deducting the fees and costs of litigation) will be contributed to the Ohio Securities Litigation Settlement Fund, up to $7 million. Second, if the Post-Effective Date Debtors and/or the Litigation Trustee litigation proceeds are insufficient to provide for payments of up to $7 million to the Ohio Securities Litigation Settlement Fund, then Foxconn has agreed to contribute up to $5 million to the Ohio Securities Litigation Settlement Fund from distributions that Foxconn would have otherwise received from the Post-Effective Date Debtors.

36.    The Settlement also provides that after the Effective Date of the Plan, the Post-Effective Date Debtors or Litigation Trustee, as applicable, will provide to Class Representative, for use in the continued prosecution of the Ohio Securities Litigation, all documents that were previously produced by the Debtors in response to any request for documents by (a) the SEC; (b) any party in the Delaware Shareholder Class Action, (c) any party to the case *In re Lordstown*

---

[6] The dispute between the Debtors and Foxconn relates to, among other things, affirmative claims by the Debtors against Foxconn, and Foxconn's claims against the Debtors based upon Foxconn's holdings of preferred stock interests of the Debtors. Distributions made by the Debtors, if any, to Foxconn will depend on the outcome of the Foxconn litigation.

*Motors Corp. S'holder Derivative Litig*., No. 1:21-CV-00604-SB (D. Del.).  If providing these documents requires the Debtors, the Post-Effective Date Debtors, or Litigation Trustee (as applicable) to incur any costs with litigation support vendors, such costs shall be paid from the Ohio Securities Litigation Settlement Fund.  Mr. Hamamoto has also agreed to make himself available to Ohio Class Counsel for interviews in order to provide Class Representative with information concerning any matter relevant to the Ohio Securities Litigation.

| **8.  How can I receive a payment?** |
| --- |

37.     To qualify for a payment from the Net Ohio Securities Litigation Settlement Fund, you must submit a timely and valid Ohio Claim Form.  (This is different from any claim you may have submitted in the Chapter 11 Cases.)  A Claim Form may be obtained from the Ohio Settlement Claims Administrator's website: www.strategicclaims.net/lordstown/, or you can submit one online at www.strategicclaims.net/lordstown/.  You can also request that a Claim Form be mailed to you by calling the Ohio Settlement Claims Administrator toll-free at (866) 274-4004 or emailing them at ____. (**Please do not contact the Debtors' Claims and Noticing Agent**.)

38.     Please read the instructions contained in the Ohio Claim Form carefully, fill out the form, include all the documents the form requests, sign it, and mail or submit it electronically to the Ohio Settlement Claims Administrator so that it is **postmarked or received no later than _____, 2024.**

### PLAN OF ALLOCATION OF THE NET OHIO SECURITIES LITIGATION SETTLEMENT FUND

| **9.  How will my claim be calculated?** |
| --- |

39.     The Ohio Settlement Plan of Allocation set forth below is the plan for distributing the proceeds of the Ohio Securities Litigation Settlement among eligible Ohio Settlement Class Members that is being proposed by the Class Representative to the Bankruptcy Court for approval.

The Bankruptcy Court may approve this Plan of Allocation or modify it without additional individual notice to the Ohio Settlement Class. Any order modifying the Plan of Allocation will be posted on the Ohio Settlement Claims Administrator's website at: www.strategicclaims.net/lordstown/ and at www.labaton.com.

40.    The amounts paid in exchange for the Ohio Securities Litigation Settlement, plus any interest earned thereon, is the "Ohio Securities Litigation Settlement Fund." The terms "Net Ohio Securities Litigation Settlement Fund" and "Net Settlement Fund" refer to the Ohio Securities Litigation Settlement Fund after the deduction of Bankruptcy Court approved attorneys' fees and expenses, notice and administration costs, taxes, and any other fees or expenses approved by the Court.

41.    LMC's (i) publicly traded Class A Common Stock (ticker: "RIDE" and prior ticker: "DPHC"), (ii) publicly traded warrants (ticker: "RIDEW" and prior ticker: "DPHCW"), (iii) publicly traded units (ticker: "DPHCU"), and (iv) exchange-traded options to purchase or sell LMC's publicly traded Class A Common Stock (together, LMC Securities)[7] are the only securities eligible for a recovery under the Plan of Allocation.[8] The Net Settlement Fund will be distributed to members of the Ohio Settlement Class who timely submit valid Ohio Claim Forms that result in a Recognized Claim, as set forth below ("**Authorized Claimants**").

---

[7] LMC common stock traded under the symbol "DPHC" through October 22, 2020 and experienced a symbol change to "RIDE" on October 23, 2020. LMC warrants traded under the symbol "DPHCW" through October 22, 2020 and experienced a symbol change to "RIDEW" on October 23, 2020. LMC units traded under the symbol "DPHCU" until the units were delisted on October 23, 2020.

[8] LMC common stock experienced a 1 for 15 reverse stock split on May 23, 2023. For purposes of this Plan of Allocation (and because the claims at issue relate to purchases and sales before the split), all prices and inflation per share of LMC Securities found in this plan are listed in split-***unadjusted*** terms – that is, at the prices that were in effect ***prior*** to the reverse stock split on May 23, 2023. Where Claim Form documentation contains post-split figures, the Claims Administrator will adjust the shares and prices to their pre-split equivalents.

42.     To design this Plan of Allocation, Ohio Class Counsel has conferred with its consulting damages expert.  The Plan of Allocation, however, is not a damages analysis.  Because the Net Settlement Fund is less than the total losses alleged to have been suffered by the Ohio Settlement Class, the formulas described below for calculating recognized losses are not intended to estimate the amounts that will actually be paid to Authorized Claimants or intended to serve as factual or legal determinations of actual losses suffered.  Rather, the Recognized Loss Amounts will be used to calculate each Claimant's *pro rata* recovery from the Net Settlement Fund, as follows:  Authorized Claimants will receive a recovery equal to the sum of their Recognized Loss Amounts  (their "**Recognized Claim**"), divided by (b) the aggregate sum total of all Recognized Claims, multiplied by (c) the amount of the Net Ohio Securities Litigation Settlement Fund available at the time of distribution.[9]

43.     The Debtors, Post-Effective Date Debtors, and their respective counsel will have no responsibility or liability for the investment of the Ohio Securities Litigation Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any Ohio Claim.  Plaintiffs, Plaintiffs' Counsel, and anyone acting on their behalf, likewise, will have no liability for their reasonable efforts to execute, administer, and distribute the Ohio Securities Litigation Settlement Fund.

---

[9] As explained above, the Settlement will be funded by an initial payment of $3 million.  The amount available for distribution will be increased as additional funds are recovered over time.  Additional funds that are received after a distribution is made will be paid to Authorized Claimants who have negotiated their prior settlement payment and who would receive at least $10.00.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

44.    Recognized Loss Amounts will be calculated as set forth below for each relevant transaction in LMC Securities that is listed in a Claimant's Ohio Claim Form and for which adequate documentation is provided.

45.    For purposes of determining Recognized Loss Amounts, purchases, acquisitions, and sales of the respective LMC Securities will first be matched on a First In/First Out ("**FIFO**") basis.  With respect to LMC common stock, LMC warrants, LMC units, and LMC call options, purchases/acquisitions and sales from August 3, 2020 through July 2, 2021, both dates inclusive, (the Ohio Settlement Class Period) will be matched first against any holdings prior to the opening of trading on August 3, 2020 and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made on or after August 3, 2020.

46.    For LMC put options, purchases made on or after August 3, 2020 will be matched first to close positions open prior to the opening of trading on August 3, 2020, and then against put options sold (written) on or after August 3, 2020, in chronological order.

47.    LMC units were delisted on October 23, 2020 and separated into their component parts.  For purposes of FIFO matching and calculating Recognized Loss Amounts, any LMC common stock acquired on October 23, 2020 in connection with the LMC units delisting will be considered a purchase of LMC common stock on October 23, 2020, unless documentation submitted by the Claimant demonstrates a different acquisition date.  If documentation for these transactions does not contain a purchase price for the common stock acquisition, the price of $18.21, the common stock closing price on October 23, 2020, will be applied.  However, LMC common stock acquired in connection with the LMC units delisting that is associated with LMC units purchased prior to August 3, 2020 is not eligible for a recovery.  In addition, all outstanding LMC warrants were redeemed for LMC common stock on January 15, 2021.  For purposes of

FIFO matching and calculating Recognized Loss Amounts, any LMC common stock acquired on January 15, 2021 in connection with the LMC warrants conversion will be considered a purchase of LMC common stock on January 15, 2021 at a price of $11.50, unless documentation submitted by the Claimant demonstrate a different acquisition date.  However, LMC common stock acquired in connection with the LMC warrant conversion that is associated with LMC warrants purchased prior to August 3, 2020 is not eligible for a recovery.

48.     On October 23, 2020, the Company issued and sold an aggregate of 50 million shares of LMC common stock in connection with the closing of a business combination ("**PIPE Transaction**").  Purchases pursuant to this PIPE Transaction will have a Recognized Loss Amount of zero, notwithstanding any other calculation herein.

49.     In the Ohio Securities Litigation, Plaintiffs alleged that certain of the Debtors, and the current defendants in the litigation, issued false statements and omitted material facts from August 3, 2020, through and including July 2, 2021 prior to 11:28 AM ET, that artificially inflated the prices of LMC common stock, LMC warrants, LMC units, and LMC call options, and artificially deflated the price of LMC put options.  It is alleged that corrective information was released to the market on March 12, 2021 (prior to market open), March 17, 2021 (after market close), May 24, 2021 (after market close), June 8, 2021 (at 2:24 PM ET), June 14, 2021 (prior to market open), and July 2, 2021 (at 11:28 AM ET).  Thus, pursuant to the calculations below, a Claimant may have a Recognized Loss Amount premised on (i) LMC Securities (other than put options) purchased or otherwise acquired from August 3, 2020, through and including July 2, 2021 prior to 11:28 AM ET, and held through at least one of the alleged corrective disclosure dates listed above, or (ii) with respect to put options, options sold (written) from August 3, 2020, through and

including July 2, 2021 prior to 11:28 AM ET and not closed through at least one of the alleged corrective disclosure dates.

50.     Additionally, it has been alleged that as a direct result of certain of the Debtors', and the current defendants', negligent preparation, review, and dissemination of false and/or misleading Proxy Statements, certain members of the Ohio Settlement Class were deprived of their right to be presented with accurate proxy materials when they were asked to vote on the merger between LMC and DiamondPeak.  As a result, a Recognized Loss Amount may also arise from shares of LMC common stock that were held on September 21, 2020.  To the extent a share of LMC common stock was held on September 21, 2020, the purchase price of that share used in calculations herein shall be the greater of (a) the actual purchase price of that share if purchased between August 3, 2020 and September 21, 2020, or (b) $10.15 (the price at which the shares could have been redeemed pursuant to investor's redemption rights provided in connection with the Merger).  Additionally, the purchase date for any such share that was held prior to August 3, 2020 and was still held on September 21, 2020 shall be deemed to be August 3, 2020 and the purchase price shall be $10.15.

51.     To the extent that the calculation of a Recognized Loss Amount results in a negative number, that number will be set to zero.

**LMC Publicly Traded Common Stock[10]**

52.    **For each share of LMC common stock purchased or acquired from August 3, 2020 through and including July 2, 2021 prior to 11:28 AM ET,[11] the Recognized Loss Amount for each such share shall be the amount derived through the following calculation:**

A. If the share was sold prior to March 12, 2021, the Recognized Loss Amount for each such share shall be zero.

B. If the share was sold from March 12, 2021 through July 2, 2021 prior to 11:28 AM ET, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1**[12] below, _minus_ the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or

2. the price paid to purchase/acquire each such share, _minus_ the price received upon selling such share.

C. If the share was sold from July 2, 2021 at or after 11:28 AM ET through September 29, 2021, the Recognized Loss Amount for each such share shall be ***the least of***:

---

[10] This includes common stock acquired through conversion of LMC units and LMC warrants. As mentioned above, any LMC common stock shares acquired on October 23, 2020 in connection with the LMC units delisting shall be considered a purchase of LMC common stock on October 23, 2020, and any LMC common stock acquired on January 15, 2021 in connection with the LMC warrants conversion shall be considered a purchase of LMC common stock on January 15, 2021. However, such common stock acquired through these conversions/redemptions that are associated with LMC units or LMC warrants purchased prior to August 3, 2020 are not eligible for a recovery and have a Recognized Loss Amount of zero.

[11] For purposes of this Plan of Allocation, in the absence of contrary documentation, the Claims Administrator will assume that any shares purchased/acquired or sold on July 2, 2021 at any price less than $9.70 per share occurred after the allegedly corrective information was released to the market at or after 11:28 AM ET, and that any shares purchased/acquired or sold on July 2, 2021 at any price equal to or greater than $9.70 per share occurred before the release of the allegedly corrective information at 11:28 AM ET.

[12] For purposes of this Plan of Allocation, in the absence of contrary documentation, the Claims Administrator will assume that any shares purchased/acquired or sold on June 8, 2021 at any price less than $13.50 per share occurred after the allegedly corrective information was released to the market at or after 2:24 PM ET, and that any shares purchased/acquired or sold on June 8, 2021 at any price equal to or greater than $13.50 per share occurred before the release of the allegedly corrective information at 2:24 PM ET.

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2. the price paid to purchase/acquire each such share, <u>minus</u> the average closing price from July 2, 2021 up to the date of sale as set forth in **Table 2** below; or

3. the price paid to purchase/acquire each such share, <u>minus</u> the price received upon selling such share.

D.  If the share was held as of the close of trading on September 29, 2021, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2. the price paid to purchase/acquire each such share <u>minus</u> $6.86.[13]

**<u>LMC Publicly Traded Units</u>**

53.     LMC publicly traded units were delisted on October 23, 2020 and ceased to trade. For each LMC publicly traded unit purchased or acquired from August 3, 2020 through and including October 23, 2020 and sold prior to October 23, 2020, the Recognized Loss Amount for each such unit shall be zero.

54.     For each LMC publicly traded unit purchased or acquired from August 3, 2020 through and including October 23, 2020 and held through October 23, 2020 and directly associated with the acquisition of LMC publicly traded common stock, please follow the formulas above for LMC publicly traded common stock.

---

[13] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of LMC common stock during the "90-day look-back period," July 2, 2021 through September 29, 2021. The mean (average) closing price for LMC common stock during this 90-day look-back period was $6.86.

Case 23-10831-MFW    Doc 1042-16    Filed 03/01/24    Page 27 of 48


**LMC Publicly Traded Warrants**

55.      All outstanding LMC warrants were redeemed for LMC common stock on January 15, 2021.  For each LMC publicly traded warrant purchased or acquired from August 3, 2020 through and including January 15, 2021 and not redeemed for LMC publicly traded common stock on January 15, 2021, the Recognized Loss Amount for each such warrant shall be zero.

56.      For each LMC publicly traded warrant purchased or acquired from August 3, 2020 through and including January 15, 2021 and redeemed for LMC publicly traded common stock on January 15, 2021, please follow the formulas above for LMC publicly traded common stock.

**LMC Exchange-Traded Options**

57.      Exchange-traded options are traded in units called "contracts," which entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the underlying security, which in this case is LMC common stock.  Throughout this Plan of Allocation, all price quotations of exchange-traded options are per share of the underlying security (i.e., 1/100 of a contract) and references to "shares" within this discussion of options, refer to 1/100 of a contract.

58.      Each option contract specifies a strike price and an expiration date.  Contracts with the same strike price and expiration date are referred to as a "series."  Under the Plan of Allocation, the dollar artificial inflation per share (*i.e.*, 1/100 of a contract) for each series of LMC call options and the dollar artificial deflation per share (*i.e.*, 1/100 of a contract) for each series of LMC put options has been calculated by Class Representative's consulting damages expert.

59.     **Table 3** sets forth the dollar artificial inflation per share in LMC call options during the Ohio Settlement Class Period. [14]   **Table 4** sets forth the dollar artificial deflation per share in LMC put options during the Ohio Settlement Class Period.   **Table 3** and **Table 4** list only series of LMC options that had open interest on at least one of the alleged corrective disclosure dates[15] – because any option closed or expiring prior to the market reaction to any alleged corrective disclosure has a Recognized Loss Amount of zero.

60.     **For each exchange-traded LMC call option purchased or acquired from August 3, 2020 through and including July 2, 2021 prior to 11:28 AM ET and:**

A. Closed (through sale, exercise, or expiration) prior to March 12, 2021, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through sale, exercise, or expiration) from March 12, 2021 through July 2, 2021 prior to 11:28 AM ET, the Recognized Loss Amount for each such share shall be ***the least of***:

    1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** below _minus_ the dollar artificial inflation applicable to each such share on the date of close as set forth in **Table 3** below; or

    2. the price paid to purchase/acquire each such share _minus_ the price received upon selling such share, if closed by sale; or

    3. the price paid to purchase/acquire each such share _minus_ the greater of a) the closing price of LMC common stock on the date of exercise or expiration _minus_ the strike price of the option, or b) zero, if closed through exercise or expiration.

C. Open as of July 2, 2021 at or after 11:28 AM ET, the Recognized Loss Amount for each such share shall be ***the lesser of***:

---

[14] Due to their size, **Table 3** and **Table 4** will be posted at: www.strategicclaims.net/lordstown/ and www.labaton.com.

[15] For purposes of this Plan of Allocation, in the absence of contrary documentation, the Claims Administrator will assume that transactions on June 8, 2021 occurred prior to the release of the allegedly corrective information to the market and that transactions on July 2, 2021 occurred after the allegedly corrective information was released to the market.

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** below; or

2. the actual purchase/acquisition price of each such share *minus* the closing price on July 2, 2021 (i.e., the "Holding Price") as set forth in **Table 3** below.

61.    **For each exchange-traded LMC put option sold (written) from August 3, 2020 through and including July 2, 2021 prior to 11:28 AM ET, and:**

A. Closed (through purchase, exercise, or expiration) prior to March 12, 2021, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through purchase, exercise, or expiration) from March 12, 2021 through July 1, 2021, the Recognized Loss Amount for each such share shall be ***the least of***:

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** below *minus* the dollar artificial deflation applicable to each such share on the date of close as set forth in **Table 4** below; or

2. the purchase price *minus* the sale price if closed by purchase; or

3. the greater of a) the strike price of the option *minus* the closing price of LMC common stock on the date of exercise or expiration, or b) zero, *minus* the sale price if closed through exercise or expiration.

C. Open as of July 2, 2021 at or after 11:28 AM ET, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** below; or

2. the closing price on July, 2, 2021 (i.e., the "Holding Price") as set forth in **Table 4** below *minus* the sale (writing) price.

62.    **Reductions and Maximum Recovery for Options:**    Each Claimant's Recognized Loss Amount calculated for LMC options above shall be reduced by 50% and the aggregate sum total of all Authorized Claimants' Recognized Loss Amounts calculated for LMC options shall be reduced so that it does not exceed 15% of the aggregate sum total of all Recognized

Claims.[16]

## TABLE 1

### LMC Common Stock
### Artificial Inflation for Purposes of Calculating Purchase and Sale Inflation

| Transaction Date | Artificial Inflation Per Share |
|---|---|
| August 3, 2020 - March 11, 2021 | $10.28 |
| March 12, 2021 - March 17, 2021 | $7.35 |
| March 18, 2021 - May 24, 2021 | $6.31 |
| May 25, 2021 - June 8, 2021 (prior to 2:24 PM ET) | $5.68 |
| June 8, 2021 (at or after 2:24 PM ET) - June 13, 2021 | $2.51 |
| June 14, 2021 - July 2, 2021 (prior to 11:28 AM ET) | $0.65 |

## TABLE 2

### LMC Common Stock
### Closing Price and Average Closing Price
### July 2, 2021 – September 29, 2021

| Date | Closing Price | Average Closing Price From July 2, 2021 and Date Shown | Date | Closing Price | Average Closing Price From July 2, 2021 and Date Shown |
|---|---|---|---|---|---|
| 7/2/2021 | $9.23 | $9.23 | 8/17/2021 | $5.49 | $7.24 |
| 7/6/2021 | $9.31 | $9.27 | 8/18/2021 | $5.27 | $7.18 |
| 7/7/2021 | $8.56 | $9.03 | 8/19/2021 | $4.77 | $7.11 |
| 7/8/2021 | $8.89 | $9.00 | 8/20/2021 | $5.23 | $7.05 |
| 7/9/2021 | $8.94 | $8.99 | 8/23/2021 | $5.52 | $7.01 |
| 7/12/2021 | $8.86 | $8.97 | 8/24/2021 | $5.75 | $6.98 |
| 7/13/2021 | $8.75 | $8.93 | 8/25/2021 | $5.51 | $6.94 |
| 7/14/2021 | $8.08 | $8.83 | 8/26/2021 | $6.49 | $6.93 |
| 7/15/2021 | $8.89 | $8.83 | 8/27/2021 | $6.48 | $6.92 |
| 7/16/2021 | $8.54 | $8.81 | 8/30/2021 | $6.47 | $6.90 |
| 7/19/2021 | $8.31 | $8.76 | 8/31/2021 | $6.58 | $6.90 |

---

[16] Based on the analysis of Class Representative's consulting damages expert, unadjusted options damages do not exceed 15% of the combined stock and options damages. In addition, there is greater litigation risk associated with options. Therefore, the discount and limitation on option recoveries is intended to provide a reasonable estimation of the fair recovery for these claims, consistent with an analysis of the strength of those claims relative to others.

| 7/20/2021 | $8.59 | $8.75 | | 9/1/2021 | $6.50 | $6.89 |
|---|---|---|---|---|---|---|
| 7/21/2021 | $8.52 | $8.73 | | 9/2/2021 | $6.54 | $6.88 |
| 7/22/2021 | $8.19 | $8.69 | | 9/3/2021 | $6.25 | $6.87 |
| 7/23/2021 | $7.48 | $8.61 | | 9/7/2021 | $6.40 | $6.86 |
| 7/26/2021 | $7.29 | $8.53 | | 9/8/2021 | $6.17 | $6.84 |
| 7/27/2021 | $6.59 | $8.41 | | 9/9/2021 | $6.32 | $6.83 |
| 7/28/2021 | $6.56 | $8.31 | | 9/10/2021 | $6.18 | $6.82 |
| 7/29/2021 | $6.20 | $8.20 | | 9/13/2021 | $6.45 | $6.81 |
| 7/30/2021 | $6.24 | $8.10 | | 9/14/2021 | $6.40 | $6.80 |
| 8/2/2021 | $6.37 | $8.02 | | 9/15/2021 | $6.84 | $6.80 |
| 8/3/2021 | $5.94 | $7.92 | | 9/16/2021 | $6.73 | $6.80 |
| 8/4/2021 | $5.92 | $7.84 | | 9/17/2021 | $7.06 | $6.81 |
| 8/5/2021 | $5.99 | $7.76 | | 9/20/2021 | $6.53 | $6.80 |
| 8/6/2021 | $5.93 | $7.69 | | 9/21/2021 | $6.87 | $6.80 |
| 8/9/2021 | $5.97 | $7.62 | | 9/22/2021 | $6.84 | $6.80 |
| 8/10/2021 | $5.83 | $7.55 | | 9/23/2021 | $7.43 | $6.81 |
| 8/11/2021 | $5.58 | $7.48 | | 9/24/2021 | $7.57 | $6.83 |
| 8/12/2021 | $5.74 | $7.42 | | 9/27/2021 | $7.78 | $6.84 |
| 8/13/2021 | $5.37 | $7.36 | | 9/28/2021 | $7.19 | $6.85 |
| 8/16/2021 | $5.45 | $7.29 | | 9/29/2021 | $7.36 | $6.86 |

**ADDITIONAL PROVISIONS**

63.     With respect to LMC common stock purchased or sold through the exercise of an option, the purchase/sale date of the LMC common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

64.     Purchases, acquisitions and sales of LMC Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" or "sale" date. The receipt or grant by gift, inheritance or operation of law of LMC Securities during the Ohio Settlement Class Period shall not be deemed a purchase, acquisition, or sale of such LMC Securities for the calculation of an Authorized Claimant's Recognized Loss Amounts, nor shall the receipt or grant of such LMC Securities be deemed an assignment of any claim relating to the purchase/acquisition/sale of such LMC Securities unless (i) the donor or decedent purchased, acquired, or sold such shares of LMC Securities during the Ohio Settlement Class Period; (ii) no Ohio Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by

anyone else with respect to such LMC Securities; and (iii) it is specifically so provided in the instrument of gift or assignment.

65.     In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero.  The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero.  In the event that a Claimant has an opening short position in LMC common stock at the start of the Ohio Settlement Class Period, the earliest Class Period purchases or acquisitions shall be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchases or acquisition that covers such short sales will not be entitled to recovery.  In the event that a claimant newly establishes a short position during the Ohio Settlement Class Period, the earliest subsequent Class Period purchase or acquisition shall be matched against such short position on a FIFO basis and will not be entitled to a recovery.

66.     If a Claimant has "written" LMC call options, thereby having a short position in the call options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the call option.  The date on which the call option was written is deemed to be the date of sale of the call option.  In accordance with the Plan of Allocation, the earliest Ohio Settlement Class Period purchases or acquisitions shall be matched against such short positions in accordance with the FIFO matching described above and any portion of such purchases or acquisitions that cover such short positions will not be entitled to recovery.

67.     If a Claimant has purchased or acquired LMC put options, thereby having a long position in the put options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the put option.  The date on which the put option was sold, exercised, or expired is deemed to be the date of sale of the put option.  In accordance with the Plan of

Allocation, the earliest sales or dispositions of like put options during the Ohio Settlement Class Period shall be matched against such long positions in accordance with the FIFO matching described above and any portion of the sales that cover such long positions shall not be entitled to a recovery.

68.    If the Net Settlement Fund exceeds the sum total of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the Net Settlement Fund shall be distributed pro rata to all Authorized Claimants entitled to receive payment.

69.    Ohio Settlement Class Members who do not submit acceptable Ohio Claim Forms will not share in the distribution of the Net Settlement Fund, however they will nevertheless be bound by the Ohio Securities Litigation Settlement, the Final Approval Order and all orders relating to the Ohio Securities Litigation Settlement unless they have timely and validly sought exclusion from the Ohio Settlement Class.

70.    The Net Settlement Fund will be allocated among Authorized Claimants whose payments are $10.00 or greater.  If the payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.  As explained above, the Settlement will be funded by an initial payment of $3 million. The amount available for distribution will be increased as additional funds are recovered over time. Additional funds that are received after a distribution is made will be paid to Authorized Claimants who have negotiated their prior settlement payment and who would receive at least $10.00.

71.    Distributions will be made to Authorized Claimants after all Ohio Claim Forms have been processed and after the Bankruptcy Court has approved the Ohio Securities Litigation Settlement on a final basis and this Plan of Allocation.  If any funds remain in the Net Settlement

Fund after an initial distribution by reason of un-cashed payments or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund at least six months after the initial distribution of such funds may be re-distributed to Authorized Claimants who have cashed their initial distributions in an economical manner, after payment of taxes and any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution. After all payments contemplated by the Settlement have been made, and all anticipated proceeds distributed, any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any taxes and unpaid costs or fees incurred in administering the Net Settlement Fund, shall be contributed to Consumer Federation of America, or such other non-sectarian, not-for-profit organization(s) serving the public interest, designated by Ohio Class Counsel and approved by the Bankruptcy Court.

72.     Payment pursuant to the Plan of Allocation or such other plan as may be approved by the Bankruptcy Court shall be conclusive against all Claimants.  No person shall have any claim against Plaintiffs, Plaintiffs' Counsel, their damages expert, the Ohio Settlement Claims Administrator, or other agent designated by Plaintiffs' Counsel, arising from determinations or distributions to Claimants made substantially in accordance with the Plan of Allocation approved by the Bankruptcy Court, or further orders of the Bankruptcy Court.  The Debtors, Post-Effective Date Debtors, and their respective counsel shall have no responsibility for, or liability whatsoever with respect to, the investment or distribution of the Ohio Securities Litigation Settlement Fund or the Net Settlement Fund; the Plan of Allocation; the determination, administration, calculation, or payment of any Ohio Claim; the non-performance of the Claims Administrator; the payment or

withholding of taxes owed by the Ohio Securities Litigation Settlement Fund or any losses incurred in connection therewith.

| **10.  What am I giving up to receive a payment and by staying in the Ohio Settlement Class?** |
|---|

73.     If you are a member of the Ohio Settlement Class, once the Settlement is approved on a final basis by a final non-appealable order, you will be bound by all the terms of the Settlement and you will have released your individual right to pursue claims against the Debtors in the Chapter 11 Cases and class claims against the Settling Defendants in the Ohio Securities Litigation, and will have released any related claims against the Released Persons pursuant to the Plan. All of the Bankruptcy Court's orders about the Settlement, whether favorable or unfavorable, will apply to you and legally bind you, as will the Confirmation Order and Plan.  The main defined terms of the release provisions are stated below.  The definitions of all terms can be found in the Plan and the Confirmation Order, which are available at www.strategicclaims.net/lordstown/.

74.     More specifically, as part of the consideration provided by the Ohio Settlement Class Members in connection with the Settlement, the Ohio Settlement Class Members will constitute Releasing Parties and will be bound by the provisions in Article VIII of the Plan, including the discharge in Article VIII.B, the releases in Article VIII.D and the injunctive provisions in Article VIII.F.  For the avoidance of any doubt, nothing in the Settlement, the Plan or the Confirmation Order will impact the claims and causes of action in the Ohio Securities Litigation against any current or future defendant in the action that is not one of the Debtors or Ohio Released Directors and Officers.

75.     The Plan states, in relevant part:

"**Released Party**" means each of the following in their capacity as such: (i) the Debtors; (ii) the Post-Effective Date Debtors; (iii) each of the Debtors' Estates; (iv) the UCC, (v) each of the UCC Members, solely in its capacity as a UCC Member; (vi) the EC; (vii) each of the EC

Members, solely in its capacity as an EC Member; and (viii) with respect to each of the foregoing Entities in clauses (i) through (vii), their respective current and former officers, directors, employees, attorneys, accountants, investment bankers, consultants and other professionals other than Excluded Parties, each in its capacity as such; provided that, notwithstanding anything in the foregoing, any Person or Entity that is an Excluded Party shall not be a Released Party; provided further that, notwithstanding anything in the foregoing, any Person or Entity that is entitled to vote on the Plan but does not vote to accept the Plan or otherwise opt in to the releases shall not be a Released Party; provided further that, no defendant in the Ohio Securities Litigation shall be a "Released Party" for purposes of any release provided by any Ohio Settlement Class Members, in their capacities as such, other than the Debtors, the Post-Effective Date Debtors and each of the Ohio Released Directors and Officers.[17]

"**Releasing Party**" means, in relevant part, each of the following in their capacity as such: . . . (ii) each of the Ohio Settlement Class Members, including the Ohio Securities Litigation Lead Plaintiff. . . and (iv) with respect to each of the foregoing Entities in clauses (i), (ii) and (iii), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such; provided, however, that the Entities identified in part (iv) shall be Releasing Parties only to the extent the corresponding Entities in parts (i), (ii) and (iii) are legally able to bind such Entities in part (iv) to the releases contained in the Plan under applicable law; provided, further, that, subject to the terms of Article VIII.D, the Non-Releasing Putative Class Action Representatives shall not be deemed to be Releasing Parties; provided further that, Foxconn shall not be deemed to be Releasing Parties.

76. Article VIII.B of the Plan states, in relevant part:

**Discharge of Claims and Termination of Interests** - Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date . . . . The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests

---

[17] "**Ohio Released Directors and Officers**" means the Chapter 11 Directors and Officers serving on December 12, 2023. For the avoidance of doubt, none of the defendants already named in the Ohio Securities Litigation, other than David Hamamoto, shall be deemed to be Ohio Released Directors and Officers.

subject to the Effective Date occurring; provided that, notwithstanding anything in the foregoing, Interests treated pursuant to the Plan shall receive such treatment as specified in the Plan.

77.   Article VIII.D of the Plan states, in relevant part:

**Releases by Holders of Claims and Interests** - As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Post-Effective Date Debtor, and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition) . . . . Without limiting the generality of the foregoing, and subject to the paragraph directly below, pursuant to the Releases set forth in this <u>Article VIII.D</u>, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any Claims related to or asserted in the Putative Class Actions (which actions include, for the avoidance of any doubt, the Ohio Securities Litigation, the Delaware Shareholder Class Action, and the Post-Petition Securities Action) . . . .

Notwithstanding anything to the contrary in the preceding paragraph, the releases provided therein by the Ohio Securities Settlement Class Members, including the Ohio Securities Litigation Lead Plaintiff, in their capacities as such, shall be limited to any and all Claims obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever that the Ohio Securities Class Members have asserted or could have asserted against any Released Party relating to, arising from or connected with the Ohio Securities Litigation. Further, notwithstanding anything to the contrary in the preceding paragraph, the Non-Releasing Putative Class Action Representatives shall not be deemed to constitute Releasing Parties; *provided that,* except as set forth in Class 10 and in the Ohio Securities Litigation Stipulation, the Debtors do not concede that the certification of a class is appropriate in any of the Putative Class Actions and the exclusion of the Non-Releasing Putative Class Action Representatives from the releases set forth herein shall not constitute an admission by any Person or Entity, including the Debtors, that a class is appropriate in any of the Putative Class Actions; *provided further that*, the Debtors do not concede that the exclusion of the Non-Releasing Putative Class Action Representatives from the releases set forth herein in any way binds the other members of any putative class or in any way affects the decision of any such putative class members to be a Releasing Party and grant the releases set forth herein. Except as set forth in the treatment of Class 10 Claims hereunder and in the Ohio Securities Litigation Stipulation, all of the rights of the Debtors, the Non-Releasing Putative Class Action Representatives, the Ohio Securities Litigation Lead Plaintiff and any other party in connection with the potential certification of any putative class are expressly reserved in all respects. Further, all of the rights of the Debtors, the Non-Releasing Putative Class Action Representatives and any other party in connection with the granting of releases are expressly reserved in all respects. If the exclusion of the Non-Releasing Putative Class Action Representatives from the releases set forth

herein does not bind other class members (as is the Debtors' contention), each such class member that is a Releasing Party under the terms of the Plan shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any Claims related to or asserted in the applicable Putative Class Actions (which actions include, for the avoidance of any doubt, the Delaware Shareholder Class Action, and the Post-Petition Securities Action) . . . . Additionally, notwithstanding anything to the contrary in this Plan or the Confirmation Order, nothing herein or therein does, shall, or may be construed to release, the Debtors or bar the assertion of claims against them as nominal defendants in the Post-Petition Securities Action for purposes of preserving and enforcing rights to coverage under and recovery of the proceeds of the D&O Liability Insurance Policies.

78.     "**Effective Date**" means, with respect to the Plan, the date that is the first Business Day on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article X have been satisfied or waived (in accordance with Article X); and (iii) the Plan is declared effective by the Debtors. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

79.     The Settlement will be final when the Final Ohio Securities Action Approval Order has been entered by the Bankruptcy Court and it has become a final non-appealable order.

## EXCLUDING YOURSELF FROM THE OHIO SETTLEMENT CLASS

80.     If you are a member of the Ohio Settlement Class and want the potential to keep any right you may have to sue or continue to sue the Settling Defendants and the other Released Parties on your own concerning the Released Claims (if any), then you must take steps to remove yourself from the Ohio Settlement Class and you may need to take other actions in the Chapter 11 Cases. This is called excluding yourself or "opting out." (Opting out at this time will not impact your participation in the ongoing litigation of the Ohio Securities Litigation.) **PLEASE BE ADVISED:** If you decide to exclude yourself from the Ohio Settlement Class, there is a risk that any lawsuit or claim you may file to pursue any Released Claims against any of the Released Parties, including the Settling Defendants, may be dismissed, including because the claims are barred by the Plan and the Confirmation Order. ***With respect to the Debtors, your ability to bring***

*individual claims against them may also be limited by whether you timely filed an individual claim in the Chapter 11 Cases, if you request exclusion from the Ohio Settlement Class (see more below). **<u>Please speak with your own attorney promptly</u>.***

---

**11.  How do I exclude myself from the Ohio Settlement Class? How can I continue to assert Released Claims against the Debtors?**

---

81.    To exclude yourself from the Ohio Settlement Class, you must mail a signed letter stating that you request to be excluded from the Ohio Settlement Class in *In re: Lordstown Motors Corp., et al.* Chapter 11, No. 23-10831 (D. Del.).  You cannot exclude yourself by telephone or email.  Each request for exclusion must also: (i) state the name, address, email, and telephone number of the person or entity requesting exclusion; (ii) state the date(s), price(s), and number(s) of LMC Securities purchased/acquired during the Ohio Settlement Class Period and held on September 21, 2020; and (iii) be signed by the person or entity requesting exclusion.  Requests must be submitted with documentary proof of membership in the Ohio Settlement Class. (This information is needed to determine whether you are a member of the Ohio Settlement Class.)  A request for exclusion must be mailed so that it is **received no later than _____, 2024** at:

*Lordstown Bankruptcy Settlement*
c/o Strategic Claims Services
P.O. Box _____
_____

82.    Your request for exclusion will not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Bankruptcy Court.

83.    **IN ADDITION**: Any person or entity that timely and validly requests exclusion from the Ohio Settlement Class according to the procedures above (each an "**Ohio Opt-Out**"), but did not file an individual proof of claim against the Debtors in the Chapter 11 Cases by the

applicable Bar Date, **must file a motion in the Chapter 11 Cases, within 30 calendar days after submitting such Ohio Opt-Out's exclusion request to the Ohio Settlement Claims Administrator, seeking an order of the Bankruptcy Court permitting such Ohio Opt-Out to file a late proof of claim.**  The Post-Effective Date Debtors and all other parties in interest have reserved their rights to oppose such a motion and, to the extent a class member is permitted to file a late proof of claim, to object to such claim (an "**Ohio Securities Litigation Opt-Out Claim**" or "**Ohio Opt-Out Claim**") on substantive grounds.  If such a motion is not timely filed or the motion is denied, the Ohio Opt-Out shall be deemed forever barred by the Plan and the Confirmation Order from asserting any Released Claim against the Debtors.

84.     Pursuant to the Settlement, the Plan, and the Confirmation Order, any Ohio Securities Litigation Opt-Out Claims will not be included within the Ohio Securities Litigation Claim, will be separately classified and treated as Section 510(b) Claims held directly by the Holders of such Ohio Securities Litigation Opt-Out Claims, and shall receive the treatment provided in the Plan to Section 510(b) Claims if and when such Ohio Securities Litigation Opt-Out Claims become Allowed in the Chapter 11 Cases.

85.     If you ask to be excluded, do not submit an Ohio Claim Form to the Claims Administrator because you cannot receive any payment from the Settlement.  Also, you cannot object to the Settlement because you will no longer be an Ohio Settlement Class Member.

| **12.** | **If I do not exclude myself, can I sue the Settling Defendants and the other Released Parties for the same reasons later?** |
|---|---|

86.     No.  If you are a member of the Ohio Settlement Class, unless you properly exclude yourself, you will give up any rights to sue the Settling Defendants and the other Released Parties for any and all Released Claims.  If you have a pending lawsuit against any of the Released Parties, **speak to your lawyer in that case immediately**.  Remember, the exclusion deadline is

_____, **2024.**

## THE LAWYERS REPRESENTING YOU

| **13.  Do I have a lawyer in this case?** |
| --- |

87.      Labaton Keller Sucharow LLP ("**Labaton**") has been designated as Ohio Class Counsel in the Chapter 11 Cases and represents all Ohio Settlement Class Members.  Labaton was assisted in the Chapter 11 Cases by Lowenstein Sandler LLP.  In addition, Labaton has been assisted by Hagens Berman Sobal Shapiro LLP, The Schall Law Firm, The Rosen Law Firm, P.A., Entwistle & Cappucci LLP (together with Labaton and Lowenstein Sandler, "**Plaintiffs' Counsel**").  The Bankruptcy Court will determine the amount of attorneys' fees and expenses payable to Plaintiffs' Counsel, which will be paid from the Ohio Securities Litigation Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| **14.  How will the lawyers be paid?** |
| --- |

88.      Plaintiffs' Counsel have been pursuing the claims and rights of members of the Ohio Settlement Class on a contingent basis and have not been paid for any of their work to date. Ohio Class Counsel, on behalf of itself and the other Plaintiffs' Counsel, will ask the Bankruptcy Court to approve an attorneys' fee award of no more than 33% of the Ohio Securities Litigation Settlement Fund, which will include any accrued interest.  Ohio Class Counsel will also seek payment of litigation expenses incurred by Plaintiffs' Counsel to date in the prosecution of the claims of no more than $1,500,000, plus accrued interest, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Class Representative directly related to his representation of the Ohio Settlement Class.

89.      As explained above, any attorneys' fees and expenses awarded by the Bankruptcy Court will be paid from the Settlement Fund.  The fee percentage awarded by the Court will be

applied to the amount in the Settlement Fund as payments are received.  If there are not enough funds to allow full payment of the awarded expenses and an initial distribution of the Net Settlement Fund to Authorized Claimants, Plaintiffs' Counsel will defer payment of a portion of the expenses until additional payments into the Settlement Fund are received.

## OBJECTING TO THE SETTLEMENT, OHIO SETTLEMENT PLAN OF ALLOCATION, AND/OR OHIO FEE AND EXPENSE APPLICATION

**15.  How do I tell the Bankruptcy Court that I do not like something about the proposed Settlement?**

90.     If you are a member of the Ohio Settlement Class, you can object to the Settlement, the Ohio Settlement Plan of Allocation, and/or the Ohio Fee and Expense Application.  You may write to the Bankruptcy Court about why you think the Court should not approve any or all of the Settlement terms or related relief.  If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

91.     To object, you must send a signed letter stating that you object to the proposed Settlement, the Ohio Settlement Plan of Allocation, and/or the Ohio Fee and Expense Application in *In re: Lordstown Motors Corp., et al.* Chapter 11, No. 23-10831 (D. Del.).  The objection must also state: (i) the name, address, telephone number, and email address of the objector and must be signed by the objector; (ii) that the objector is objecting to the proposed Ohio Securities Litigation Settlement, Ohio Settlement Plan of Allocation, and/or the Ohio Fee and Expense Application; (iii) the objection(s) and the specific reasons for each objection, including whether it applies only to the objector, to a specific subset of the Ohio Settlement Class, or to the entire Ohio Settlement Class, and any legal and evidentiary support, and witnesses, the objector wishes to bring to the Bankruptcy Court's attention; and (iv) include documents sufficient to prove the objector's standing to object. Objecting Ohio Settlement Class Members must establish that they are members of the Ohio Settlement Class by providing documentation of their transactions in eligible

LMC Securities in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Ohio Settlement Claims Administrator and/or Ohio Class Counsel.  Objectors who are represented by counsel must also provide the name, address and telephone number of all counsel, if any, who represent them.

92.     Your objection must be mailed or delivered to the following so that it is **received no later than _____, 2024:**

| **<u>Bankruptcy Court</u>** | **<u>Ohio Class Counsel</u>** | **Debtors' Counsel <u>Representative</u>** |
|---|---|---|
| **Clerk of the Court** U.S. Bankruptcy Court District of Delaware Hon. Mary F. Walrath 824 N. Market Street 5th Floor Wilmington, DE 19801 | **Labaton Keller Sucharow LLP** Jake Bissell-Linsk, Esq. 140 Broadway 34th Floor New York, NY 10005 | **White & Case LLP** Roberto Kampfner, Esq. 555 South Flower Street Suite 2700 Los Angeles, CA 90071 |

93.     You do not need to attend the Ohio Securities Litigation Final Approval Hearing to have your written objection considered by the Bankruptcy Court.  However, any Ohio Settlement Class Member who has complied with the procedures described in this Question __ and below in Question __ may participate at the Final Approval Hearing and be heard, to the extent allowed by the Court.  An objector may participate individually or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Final Approval Hearing.

94.     Unless otherwise ordered by the Bankruptcy Court, any Ohio Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed Ohio Securities Litigation Settlement, Ohio Settlement Plan of Allocation, and/or the Ohio Fee and

Expense Application, and shall be bound by the Final Approval Order to be entered and the releases to be given.

| 16.  What is the difference between objecting and seeking exclusion? |
| --- |

95.    Objecting is telling the Bankruptcy Court that you do not like something about the proposed Settlement.  You can still recover money from the Settlement.  You can object *only* if you stay in the Ohio Settlement Class.  Excluding yourself is telling the Bankruptcy Court that you do not want to be part of the Ohio Settlement Class.  If you exclude yourself from the Ohio Settlement Class, you have no basis to object.

### THE OHIO SECURITIES LITIGATION FINAL APPROVAL HEARING

| 17.  When and where will the Bankruptcy Court decide whether to approve the Settlement? |
| --- |

96.    The Bankruptcy Court will hold the Ohio Securities Litigation Final Approval Hearing on _____, 2024 at ____ _.m. (prevailing Eastern Time), via Zoom unless otherwise directed by the Bankruptcy Court, in Courtroom 4, 824 N. Market Street, 5th Floor, Wilmington, DE 19801.

97.    At this hearing, the Honorable Mary F. Walrath will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Ohio Settlement Plan of Allocation is fair, reasonable, and should be approved; and (iii) whether the Ohio Fee and Expense Application should be approved.  The Bankruptcy Court will take into consideration any written objections submitted by members of the Ohio Settlement Class in accordance with the instructions in Question __ above.  We do not know how long it will take the Bankruptcy Court to make these decisions.

98.    The Bankruptcy Court may change the date and time of the Final Approval Hearing without an individual notice being sent to Ohio Settlement Class Members.  If you want

to attend the hearing, you should check with Ohio Class Counsel beforehand to be sure that the date and/or time has not changed, or periodically check the Claims Administrator's website at www.strategicclaims.net/lordstown/ to see if the hearing stays as scheduled or is changed.

| **18.  Do I have to come to the Final Approval Hearing?** |
|---|

99.    No.  Ohio Class Counsel will answer any questions the Bankruptcy Court may have.  But, you are welcome to participate at your own expense.  If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it.  You may have your own lawyer participate (at your own expense), but it is not required.  If you do hire your own lawyer, he or she must file and serve a notice of appearance in the manner described in the answer to Question ___ below **no later than _____, 2024**.

| **19.  May I speak at the Final Approval Hearing?** |
|---|

100.    You may ask the Bankruptcy Court for permission to speak at the Final Approval Hearing.  To do so, you must, **no later than _____ __, 2024,** submit a statement that you, or your attorney, intend to appear at the Ohio Securities Litigation Final Approval Hearing in *In re: Lordstown Motors Corp., et al.* Chapter 11, No. 23-10831 (D. Del.). If you intend to present evidence at the Final Approval Hearing, you must also include in your objections (prepared and submitted according to the answer to Question ___ above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the hearing.  You may not speak at the Final Approval Hearing if you exclude yourself from the Ohio Settlement Class or if you have not provided written notice of your intention to speak at the Final Approval Hearing in accordance with the procedures described in this Question __ and Question __ above.

**IF YOU DO NOTHING**

| 20.  What happens if I do nothing at all? |
| --- |

101.     If you do nothing and you are a member of the Ohio Settlement Class, you will receive no money from the Settlement and you will be precluded from starting a lawsuit or pursuing claims, continuing with a lawsuit or claims, or being part of any other lawsuit or claims against the Settling Defendants and the other Released Parties concerning the Released Claims. To share in the Net Ohio Securities Litigation Settlement Fund, you must submit an Ohio Claim Form (*see* Question ___ above).  To start, continue, or be a part of any other lawsuit or claims against the Settling Defendants and the other Released Parties concerning the Released Claims, you must exclude yourself from the Ohio Settlement Class (*see* Question ___ above).

**GETTING MORE INFORMATION**

| 21.  Are there more details about the Settlement? |
| --- |

102.     This Notice summarizes the proposed Settlement.  More details are contained in the Debtors' Plan and the Confirmation Order.  You may review all documents filed in the Chapter 11 cases, free of charge, on the Debtors' claims and noticing agent's website at https://www.kccllc.net/lordstown.

103.     Documents filed in the Ohio Securities Litigation, *In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-00616 (N.D. Ohio), with the Ohio District Court may be reviewed during business hours at the Office of the Clerk of the United States District Court, Northern District of Ohio, Carl B. Stokes U.S. Court House, 801 West Superior Avenue, Cleveland, Ohio 44113. (Please check the Ohio District Court's website, www.ohnd.uscourts.gov, for information about court closures before visiting.) Subscribers to PACER, a fee-based service, can also view the papers filed publicly with the Ohio District Court through its on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

104.     You can also get a copy of the Plan, the Confirmation Order, other documents related to the Settlement, as well as additional information about the Ohio Securities Litigation, by visiting the webpage dedicated to the Settlement, www.strategicclaims.net/lordstown/, or the website of Ohio Class Counsel, www.labaton.com.  You may also call the Ohio Settlement Claims Administrator toll free at (866) 274-4004 or write to them at *Lordstown Bankruptcy* Settlement, c/o Strategic Claims Services, P.O. Box 230, Media, PA 19063.

**Please Do Not Call the Bankruptcy Court, LMC or the Debtors' Claims and Noticing Agent with Questions About the Settlement.**

**<u>SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES</u>**

105.     If you purchased or otherwise acquired LMC's publicly traded Class A Common Stock (ticker: RIDE and prior ticker: DPHC), LMC's publicly traded warrants (ticker: RIDEW and prior ticker: DPHCW), and/or LMC's publicly traded units (ticker: DPHCU), during the period from August 3, 2020 through July 2, 2021, and/or held LMC's publicly traded Class A Common Stock on September 21, 2020, for the beneficial interest of a person or entity other than yourself, the Bankruptcy Court has directed that such nominees: **SHALL WITHIN SEVEN (7) CALENDAR DAYS** of receipt of an Ohio Settlement notice, **EITHER**: **(a)** provide the Ohio Settlement Claims Administrator the name, last known address, and email (to the extent available) of each person or entity for whom or which you purchased such LMC Securities during the Class Period or held them on September 21, 2020; or **(b) WITHIN SEVEN (7) CALENDAR DAYS** of receipt of an Ohio Settlement notice from the Ohio Settlement Claims Administrator **(i)** request from the Ohio Settlement Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and **WITHIN SEVEN (7) CALENDAR DAYS** of receipt, forward them to all such beneficial owners or **(ii)** email a copy of the Postcard Notice with a link to www.strategicclaims.net to all such beneficial owners.  Nominees who elect to mail or email a

Postcard Notice to their beneficial owners shall also send a statement to the Ohio Settlement Claims Administrator confirming that the dissemination was completed and shall retain their records for use in connection with any further notices that may be provided in the Bankruptcy Cases or the Ohio Securities Litigation.

106.    Upon full and timely compliance with these directions, such nominees may seek reimbursement of their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners of up to: $0.02 per name record provided; $0.02 per email sent by the nominee; and $0.02, plus postage at the Ohio Settlement Claims Administrator's rate for bulk mailings, per Postcard mailed by the nominee, by providing the Ohio Settlement Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with these provisions shall be paid solely from the Ohio Securities Litigation Settlement Fund, and any unresolved disputes regarding reimbursement of such expenses shall be subject to review by the Bankruptcy Court.

107.    All communications concerning the foregoing should be addressed to the Ohio Settlement Claims Administrator:

*Lordstown Bankruptcy Settlement*
c/o Strategic Claims Services
P.O. Box 230
Media, PA 19063
(866) 274-4004
info@strategicclaims.net
www.strategicclaims.net/lordstown/


Dated: _____, 2024                          BY ORDER OF THE U.S. BANKRUPTCY
                                              COURT - DISTRICT OF DELAWARE