**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Nu Ride Inc., *et al*.,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Objection Deadline: May 21, 2024**<br>**Hearing Date: June 11, 2024 at 10:30 a.m. (ET)** |

# OHIO CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES IN CONNECTION WITH THE OHIO SECURITIES LITIGATION SETTLEMENT

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 2

ARGUMENT ..... 4

I. OHIO CLASS COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT ..... 4

II. THE BANKRUPTCY COURT SHOULD AWARD A FEE BASED ON A REASONABLE PERCENTAGE OF THE COMMON FUND ..... 5

III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND COMPARABLE TO OTHER AWARDS UNDER THE PERCENTAGE-OF-RECOVERY METHOD ..... 6

IV. FACTORS CONSIDERED BY COURTS WITHIN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ..... 9

A. The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request ..... 9

B. The Absence of Objections to Date Supports Approval of the Fee Request ..... 12

C. The Skill and Efficiency of the Attorneys Involved Support the Fee Request ..... 12

D. The Complexity and Duration of the Litigation Support Approval of the Fee Request ..... 14

E. The Risk of Non-Payment Supports Approval of the Fee Request ..... 16

F. The Time and Effort Devoted by Ohio Class Counsel Support Approval of the Fee Request ..... 18

G. The Requested Fee of 30% of the Settlement Amount Is Within the Range of Fees Typically Awarded in Cases of this Nature ..... 20

H. The Value of Benefits Accruing to Class Members Attributable to the Efforts of Class Counsel as Opposed to the Efforts of Other Groups ..... 20

I. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Non-Class Contingent Fee Arrangement Supports Approval of the Fee Request ..... 21

V. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE LODESTAR CROSS-CHECK ..... 21

VI. OHIO CLASS COUNSEL'S REQUEST FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ..................................................... 23

VII. CLASS REPRESENTATIVE'S REQUEST FOR PSLRA REIMBURSEMENT.............. 25

CONCLUSION ........................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna Inc. Sec. Litig.*,
No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................8

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ....................17

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ....................17

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ....................23

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) .................... *passim*

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ....................18

*In re BankAtlantic Bancorp, Inc.*,
No. 07-cv-61542-UU, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2010),
*aff'd*, 688 F. 3d 713 (11th Cir. 2012) ....................17, 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ....................5

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) ....................17

*Blum v. Stenson*,
465 U.S. 886 (1984) ....................21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....................4

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ....................6

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ....................4, 6

*In re Cigna Corp. Sec. Litig.*,
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ....................21

*In re DaimlerChrysler AG*,
No. 00-003 (JJF), 2004 WL 7351531 (D. Del. Jan. 28, 2004) ....................6, 13

*Dartell v. Tibet Pharms, Inc.*,
No. 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017)....................14

*In re Datatec Sys., Inc. Sec. Litig*.,
No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007)....................14

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009)....................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................7

*In re Genta Sec. Litig.*,
No. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)....................14

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)....................5, 9, 20

*Hall v. AT&T Mobility LLC*,
No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ....................12, 13, 23

*Hensley v Eckerhart*,
461 U.S. 424 (1983)....................9, 10

*Hicks v. Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)....................25

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).................... *passim*

*Kanefsky v. Honeywell Int'l Inc.*,
18-cv-15536, 2022 WL 1320827 (D.N.J. May 3, 2022)....................9, 21, 23, 25

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009)....................17

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987)....................17

*In re Linerboard Antitrust Litig.*,
MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................11

*In re Lordstown Motors Corp. S'holder Derivative Litig*.,
No. 1:21-CV-00604-SB (D. Del.)....................10

*McDermid v. Inovio Pharms., Inc.*,
No. CV 20-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ....................22

*In re Merck & Co., Vytorin ERISA Litig.*,
No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ....................17

*Milliron v. T-Mobile USA, Inc.*,
No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) *aff'd*, 423 F. App'x.
131 (D.N.J. 2011)....................8

*Missouri v. Jenkins*,
491 U.S. 274 (1989)....................19

*O'Hern v. Vida Longevity Fund, LP*,
No. 21-402-SRF, 2023 WL 3204044 (D. Del. May 2, 2023) ....................6, 14, 16

*In re Ocean Power Techs., Inc. Sec. Litig.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ....................7, 21

*P. Van Hove BVBA v. Universal Travel Grp*.,
No. 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017)....................7

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) ....................4, 5

*In re Prudential*, *Ins. Co. Am. Sales Practice Litig. Action*
148 F.3d 283 (3d Cir. 1998)....................20, 22

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023)....................19

*In re Rent-Way Sec. Litig*.,
305 F. Supp. 2d 491 (W.D. Pa. 2003)....................19

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................22

*In re Rite Aid Corp. Sec. Litig*.,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................22, 23

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)....................6, 21, 22

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................17

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ....................25

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .....23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) .....17, 22

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. 08 Civ. 397, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) .....26

*Schuler v. Meds. Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) .....4, 8

*Sullivan v. DB Invs. Inc.*,
667 F.3d 273 (3d Cir. 2011) .....5

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) .....17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd*.,
551 U.S. 308 (2007) .....5

*In re Valeant Pharms. Int'l, Inc. Sec. Litig*.,
3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) .....6, 13, 14, 17

*In re ViroPharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .....10

*In re Warfarin Sodium Antitrust Litig*.,
212 F.R.D. 231 (D. Del. 2002), *aff'd by*, 391 F. 3d 516 (3d Cir. 2004) .....6

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .....16

*Whiteley v. Zynerba Pharms., Inc*.,
No. 19-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) .....19, 20

*Yedlowski v. Roka Bioscience*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .....7, 8

**Docketed Cases**

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin. Inc., et al*.,
No. 2:12-cv-05275-MCA-LDW (D.N.J. Sept. 29, 2016) .....8

*In re Changyou.com Ltd. Sec. Litig*.,
1:21-cv-07858-GHW (S.D.N.Y. Jan. 28, 2023) .....23

*DeVito v. Liquid Holdings Grp., Inc*.,
No. 15-6969 (KM) (JBC) (D.N.J. Jan. 10, 2020) .....7, 8

*In re Envision Healthcare Corp.*,
No. 1:18-cv-01068-RGA-SRF (D. Del. Feb. 16, 2021)....8

*In re Heckman Corp. Sec. Litig.*,
No. 1:10-cv-00378-LPS-MPT (D. Del. June 26, 2014)....8

*In re Horsehead Holding Corp. Sec. Litig.*,
No. 16-292-LPS-CJB (D. Del. June 4, 2021)....7

*Local 731 I.B. of T. Excavators and Pavers Pension Tr. Fund, et al. v. David C. Swanson, et al.*,
No. 1:09-cv-00799-MMB (D. Del. Feb. 17, 2012)....8

*In re MBNA Corp. Sec. Litig.*,
No. 1:05-cv-00272-GMS (D. Del. Oct. 16, 2009)....8

*In re Mindbody Inc. Sec. Litig.*,
No. 1:19-cv-08331-VEC (S.D.N.Y. Oct. 27, 2022)....23

*In re Novo Nordisk Sec. Litig.*,
Master File No. 3:17-cv-209 (D.N.J. July 13, 2022)....25

*In re Veritas Software Corp. Sec. Litig.*,
No. 1:04-cv-00831-SLR (D. Del. Aug. 5, 2008)....8, 25, 26

**Statutes**

15 U.S.C. § 78u-4(a)(4)....25

15 U.S.C. §78u-4(a)(6)....6

**Other Authorities**

*Bankruptcy Rule 7023*....1

Fed. R. of Civ. P 23(h)....1

Labaton Keller Sucharow LLP ("**Labaton**," "**Ohio Class Counsel**," or "**Class Counsel**")[1] respectfully submits this memorandum of law in support of its motion seeking, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure made applicable hereto by Bankruptcy Rule 7023, for settlement purposes only: (i) an award of attorneys' fees in the amount of 30% of the Ohio Securities Litigation Settlement Fund,[2] on behalf of itself and other Plaintiffs' counsel;[3] (ii) the payment of litigation expenses in the amount of $1,288,866.60; and (iii) the costs and expenses incurred by Class Representative in connection with his representation of the Ohio Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 (the "**PSLRA**"), in the amount of $15,000.

---

[1] The primary terms of the Ohio Securities Litigation Settlement are in the: (i) *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as the same may be modified in accordance with its terms, the "**Plan**"); (ii) the *Stipulation Between Debtors, Ohio Securities Litigation Lead Plaintiff, Official Committee of Unsecured Creditors, and Official Committee of Equity Security Holders Regarding Ohio Securities Litigation Lead Plaintiff's Motion To Apply Bankruptcy Rule 7023 To Class Claims and Proofs of Claim Numbers 1368, 1379, 1380, 1394, 1426, and 1434* (the "**7023 Stipulation**"), which was so ordered by the U.S. Bankruptcy Court for District of Delaware ("**Bankruptcy Court**" or "**Court**") on February 5, 2024; and (3) the Court's March 6, 2024 order confirming the Plan (the "**Confirmation Order**"). All capitalized terms not defined in this memorandum have the same meanings as in the Plan, the 7023 Stipulation, or the Confirmation Order.

[2] Ohio Class Counsel is seeking approval of a percentage of the Ohio Securities Litigation Settlement Fund as its fee under the "common fund" doctrine, as explained herein. If the 30% fee is approved and only the lower $3 million settlement amount is recovered, then the total fee will be $900,000. If the upper $10 million limit is recovered, then the total fee will be $3 million.

[3] In addition to Ohio Class Counsel, Plaintiffs' counsel Hagens Berman Sobol Shapiro LLP, The Schall Law Firm, The Rosen Law Firm, P.A., and Entwistle & Cappucci LLP have contributed to the prosecution of the claims. Class Counsel was also ably assisted in these Chapter 11 proceedings by Lowenstein Sandler LLP, its bankruptcy expert and counsel, which has been compensated by Class Counsel on an ongoing basis and for which Ohio Class Counsel is seeking reimbursement as a litigation expense.

## PRELIMINARY STATEMENT

If the Ohio Securities Litigation Settlement is approved on a final basis, the Settlement will resolve class claims against the Settling Defendants alleging that they violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The Ohio Securities Litigation will continue to proceed with respect to all other defendants. In exchange for the releases and dismissals contemplated by the Plan and the Settlement, the Settling Defendants have agreed to, among other things, provide for a payment of at minimum $3 million, and subsequent additional funding of up to $7 million, which, along with any interest earned, will be distributed after the deduction of court-awarded attorneys' fees and expenses, taxes, and notice and administration expenses to Ohio Settlement Class Members who submit valid and timely Ohio Claim Forms.

Class Representative and Class Counsel respectfully submit that the Settlement represents very favorable result for the Ohio Settlement Class in light of, among other things, the significant risks of continuing to pursue class certification and the contested claims against the Post-Effective Date Debtors in these proceedings and the guaranteed cash benefit to the Settlement Class, compared to the inherent difficulties in being able to recover anything from LMC and LEVC given the Chapter 11 Cases and the funds that would be available for distribution to class members. In fact, it is Class Counsel's understanding that any recovery on a class wide basis for claims under the federal securities laws is a rare occurrence in Chapter 11 cases.

In order to achieve this significant recovery, Ohio Class Counsel vigorously pursued the claims against the Settling Defendants, and others, for the past almost three years, including an expansive investigation into the claims at issue; the preparation of a detailed amended class action complaint; litigation of motions to unseal relevant documents filed in the Delaware Shareholder Class Action; opposing defendants' comprehensive motion to dismiss the amended complaint; consulting with experts; and intense and unusually complex settlement negotiations over almost

two years that eventually included not only the Debtors, but also the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, Foxconn, and the U.S. Securities and Exchange Commission ("**SEC**")—all on a fully contingent basis.

Ohio Class Counsel has not received any compensation for its successful efforts and respectfully requests that it be awarded an attorneys' fee equal to 30% of the Ohio Securities Litigation Settlement Fund, which will include any accrued interest; that it be paid litigation expenses in the amount of $1,288,866.60 from the Settlement Fund; and that Class Representative be reimbursed in the amount of $15,000, pursuant to the PSLRA, also from the Settlement Fund. This 30% fee request is consistent with fees awarded in comparable class action settlements within the Third Circuit. The requested fee has been approved by Class Representative. *See* Ex. 1 at ¶ 5.[4]

While the deadline set by the Court for Ohio Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requests have been received. *See* Declaration of Paul Mulholland Concerning: (A) Mailing of the Postcard

---

[4] All exhibits referenced herein are annexed to the Declaration of Jake Bissell-Linsk in Support of (I) Class Representative's Motion for Approval of the Ohio Securities Litigation Settlement on a Final Basis and Plan of Allocation and (II) Ohio Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated May 7, 2024 ("**Bissell-Linsk Declaration**"), filed herewith. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit and the second alphabetical reference is to the exhibit designation within the exhibit.

The Bissell-Linsk Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Declaration for, *inter alia*, a detailed description of the allegations and claims of the Ohio Settlement Class, the procedural history of the Ohio Securities Litigation and the claims of the Ohio Settlement Class, the risks faced by the Ohio Settlement Class in pursuing litigation, the efforts that led to a settlement, and a description of the services provided by Ohio Class Counsel. Citations to "¶" in this motion refer to paragraphs of the Bissell-Linsk Declaration.

Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date (the "**Initial Mailing Decl.**"), attached as Exhibit 2 to the Bissell-Linsk Declaration, at ¶ 17; Bissell-Linsk Decl. ¶ 106.

For the reasons set forth herein and in the Bissell-Linsk Declaration, Ohio Class Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the circumstances before this Court, and that the expenses requested are reasonable in amount and should be approved.

## ARGUMENT

### I. OHIO CLASS COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197, 205 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[5]

Courts within the Third Circuit have consistently adhered to these teachings. *See, e.g.*, *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29,

---

[5] All internal quotations and citations are omitted unless otherwise noted.

2013); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"). Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the Ohio Securities Litigation, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement' of the securities laws and are a necessary supplement to [SEC] action").

Any fee awarded here would be paid from the Ohio Securities Litigation Settlement Fund created through Plaintiffs' counsel's efforts.

## II. THE BANKRUPTCY COURT SHOULD AWARD A FEE BASED ON A REASONABLE PERCENTAGE OF THE COMMON FUND

Ohio Class Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained for the Ohio Settlement Class. In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving the creation of common fund. *See Sullivan v. DB Invs. Inc.,* 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d

160, 164 (3d Cir. 2006). The Third Circuit has "several times reaffirmed that the application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001). *See also O'Hern v. Vida Longevity Fund, LP*, No. 21-402-SRF, 2023 WL 3204044, at *8 (D. Del. May 2, 2023) ("In common fund cases such as this one, it is typical for Class Counsel to request a percentage of the recovery."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002), *aff'd by*, 391 F. 3d 516 (3d Cir. 2004) ("In determining the fee award in a common fund class action, the Third Circuit follows the percentage-of-the recovery method."). The method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re DaimlerChrysler AG*, No. 00-003 (JJF), 2004 WL 7351531, at *15 (D. Del. Jan. 28, 2004) ("the percentage of recovery method is generally favored in cases involving a common fund"); *In re Valeant Pharms. Int'l, Inc. Sec. Litig*., 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *11 (D.N.J. June 15, 2020) (noting that the percentage-of-recovery method is "generally favored in common fund cases").

Additionally, the PSLRA, which governs the Ohio Securities Litigation, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. PSLRA, 15 U.S.C. §78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Cendant*, 404 F.3d at 188 n.7; *Rite Aid*, 396 F.3d at 300.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND COMPARABLE TO OTHER AWARDS UNDER THE PERCENTAGE-OF-RECOVERY METHOD

The requested fee of 30% of the Settlement Fund would be reasonable under the

percentage-of- recovery method. While there is no general rule or benchmark within the Third Circuit, courts have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."). Additionally, "[f]or smaller securities fraud class actions, 'courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."' *Yedlowski v. Roka Bioscience*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016). A recent analysis by NERA Economic Consulting of securities class action settlements (outside of the bankruptcy context) found that from 2014-2023, the median attorneys' fee award for settlements of between $5 million and $10 million was 32.1%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA 2024), Ex. 7 at 29.

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in the Third Circuit supports the reasonableness of the requested fee. *See, e.g., In re Horsehead Holding Corp. Sec. Litig*., No. 16-292-LPS-CJB, slip op. at 6 (D. Del. June 4, 2021) (awarding 33 1/3% of $14.75 million settlement) (Ex. 6)[6]; *P. Van Hove BVBA v. Universal Travel Grp*., No. 11-2164, 2017 WL 2734714, at *13 (D.N.J. June 26, 2017) (awarding one-third of $4.5 million settlement); *In re Ocean Power Techs., Inc. Sec. Litig.,* No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) (approving 30% of settlement of $3 million in cash and 380 shares of common stock); *DeVito v. Liquid Holdings Grp., Inc.*, No. 15-6969 (KM) (JBC), slip op. at 2 (D.N.J. Jan. 10, 2020) (Ex. 6) (awarding fee of one-third of $4.0625 million

---

[6] All unreported decisions are submitted herewith in a compendium attached to the Bissell-Linsk Declaration as Ex. 6.

settlement); *Schuler*, 2016 WL 3457218, at *9-10 (awarding 33% of $4.25 million settlement); *Roka Bioscience*, 2016 WL 661336, at *19 (awarding 30% of $3.275 settlement); *In re Heckmann Corp. Sec. Litig*., No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2014) (awarding 33 1/3% of $13.5 million settlement) (Ex. 6); *In re Envision Healthcare Corp*., No. 1:18-cv-01068-RGA-SRF, slip op. at 1 (D. Del. Feb. 16, 2021) (awarding 33 1/3% of $17.4 million settlement); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 2 (D. Del. Aug. 5, 2008) *aff'd*, 396 F. App'x. 815 (3d Cir. 2010) (awarding 30% of $21.5 million settlement) (Ex. 6); *Local 731 I.B. of T. Excavators and Pavers Pension Tr. Fund, et al. v. David C. Swanson, et al*., No. 1:09-cv-00799-MMB (D. Del. Feb. 17, 2012) (awarding 30% of $25 million settlement) (Ex. 6); *In re MBNA Corp. Sec. Litig*., No. 1:05-cv-00272-GMS, slip op. at 6 (D. Del. Oct. 16, 2009) (awarding 30% of $25 million settlement) (Ex. 6); *In re Heckman Corp. Sec. Litig*., No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2014) (awarding 33.3% of $27 million settlement) (Ex. 6); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) *aff'd*, 423 F. App'x. 131 (D.N.J. 2011) (awarding 33% of $13.5 million settlement).

Awards of 30% are also common in courts within the Third Circuit in cases with larger settlement amounts. *See, e.g., City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin. Inc., et al*., No. 2:12-cv-05275-MCA-LDW, slip op. at 1 (D.N.J. Sept. 29, 2016) (awarding 30% of $33 million settlement) (Ex. 6); *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *14 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million settlement net of expenses); *Ikon*, 194 F.R.D. at 192-97 (awarding 30% of $111 million settlement net of expenses).

Accordingly, the requested fee is comparable to fees awarded in similar cases and would be a reasonable award.

## IV. FACTORS CONSIDERED BY COURTS WITHIN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Third Circuit has provided the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1. "Several of these factors overlap considerably with those already considered by the Court in approving the Settlement." *Kanefsky v. Honeywell Int'l Inc.*, 18-cv-15536, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022). The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;" (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained;" and (3) any "innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40). The fee award factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301).

An analysis of the relevant factors further confirms that the fee requested here is fair and reasonable under the circumstances before the Court and should be approved.

### A. The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical

factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Ohio Class Counsel, on behalf of Class Representative and with the assistance of other Plaintiffs' counsel, have reached a very favorable Settlement in terms of the monetary recovery, the structure of the Settlement to maximize value to the Ohio Settlement Class, and the non-monetary terms. The Settlement provides for a payment of a minimum of $3 million, which has been paid, and subsequent additional funding of up to $7 million that can be paid from two potential sources. First, if the Post-Effective Date Debtors and/or the Litigation Trustee is successful in pursuing and collecting judgments or settlements from third parties, then 25% of all litigation proceeds received (after deducting the fees and costs of litigation) will be contributed to the Ohio Securities Litigation Settlement Fund, up to $7 million. Second, if the Post-Effective Date Debtors and/or the Litigation Trustee litigation proceeds are insufficient to provide for payments of up to $7 million to the Settlement Fund, then Foxconn has agreed to a "back stop" to contribute up to $5 million to the Settlement Fund from distributions that Foxconn would have otherwise received from the Post-Effective Date Debtors. ¶ 75. The Settlement also preserves the class's claims against all current non-debtor defendants other than David Hamamoto.

In addition, the Settlement provides that after the Effective Date of the Plan, the Post-Effective Date Debtors or Litigation Trustee, as applicable, will provide to Class Representative, for use in the continued prosecution of the Ohio Securities Litigation, all documents that were previously produced by the Debtors in response to any request for documents by (a) the SEC, (b) any party in the Delaware Shareholder Class Action, and (c) any party to the case *In re Lordstown Motors Corp. S'holder Derivative Litig.*, No. 1:21-CV-00604-SB (D. Del.). Mr. Hamamoto has also agreed to make himself available to Ohio Class Counsel for interviews in order to provide

Class Representative with information concerning any matter relevant to the Ohio Securities Litigation. ¶ 76.

Class Representative and Ohio Class Counsel are hopeful that, ultimately, the monetary value of the Settlement will reach the $10 million level. This recovery would be in line with the value of securities class action settlements nationwide (outside of a bankruptcy context) for the period from 2018 through 2022, when the overall median settlement value was $11.7 million, although the median in 2023 was higher at $15 million. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2023 Review and Analysis (Cornerstone Research 2024), Ex. 3, at 1.

The Settlement will also benefit a large number of investors. To date, the Ohio Settlement Claims Administrator has disseminated more than 450,000 Postcard Notices to potential Ohio Settlement Class Members and their nominees. *See* Ex. 2, Initial Mailing Decl. at ¶ 10. Accordingly, while the deadline for submission of Ohio Claim Forms is not until July 20, 2024, it is clear that a large number of Ohio Settlement Class Members can be expected to benefit from the Settlement. *See, e.g., In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), order amended by, MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

It is respectfully submitted that the Settlement provides a very favorable innovative recovery standing on its own, but also in light of, among other things, the significant risks of continuing to pursue class certification and the contested claims against the Post-Effective Date Debtors in the ongoing Chapter 11 Cases and the guaranteed cash benefit to the Settlement Class, compared to the inherent difficulties in being able to recover anything from LMC and LEVC given

the Chapter 11 Cases and the funds that would be available for distribution to class members. In fact, it is Class Counsel's understanding that any recovery on a class wide basis for claims under the federal securities laws is a rare occurrence in Chapter 11 cases. ¶ 7.

### B. The Absence of Objections to Date Supports Approval of the Fee Request

The notices to the Ohio Settlement Class provided a summary of the terms of the Settlement and stated that Ohio Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus accrued interest. *See* Ex. 2 - A & B. The notices also advised Ohio Settlement Class Members that they could object to the Settlement, Plan of Allocation, or fee and expense request and gave the deadline for doing so. *See* Ex. 2 - A & B. While the May 21, 2024 deadline set by the Court for Ohio Settlement Class Members to object has not yet passed, to date, no objections have been received.[7]

### C. The Skill and Efficiency of the Attorneys Involved Support the Fee Request

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

It required considerable skill, tenacity, and creativity to achieve the Ohio Securities Litigation Settlement, in the face of considerable headwinds. Ohio Class Counsel was required to contend with, among other things, the legal and factual issues raised by the class's claims against the Settling Defendants, the vigorous defense mounted by the Settling Defendants both in these

---

[7] As provided in the Confirmation Order, Ohio Class Counsel will file reply papers no later than June 4, 2024, addressing any objections that may be received.

proceedings and the Ohio Securities Litigation, the initial resistance of the Official Committees and the Debtors, and the numerous obstacles presented by Debtors' challenging financial condition and the filing of the Chapter 11 Cases. *See generally* Bissell-Linsk Decl.

With respect to "the experience and expertise" of counsel, since the passage of the PSLRA, Class Counsel Labaton has been approved to serve as lead counsel in numerous notable securities class actions throughout the United States, and has taken three post-PSLRA securities class actions to trial. Here, Labaton attorneys have devoted considerable time and effort to this case, thereby bringing to bear many years of collective experience. *See, e.g., In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and reaching settlements of $1 billion); *In re HealthSouth Corp. Sec. Litig.*, No. 03-1500 (N.D. Ala.) (representing the State of Michigan Retirement System, New Mexico State Investment Council, and the New Mexico Educational Retirement Board and securing settlements of more than $600 million); *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 08-397 (D.N.J.) (representing Massachusetts Pension Reserves Investment Management Board and reaching a settlement of $473 million). *See* Ex. 4 - D (firm resume); *see also Valeant Pharms.,* 2020 WL 3166456, at *8 (noting the skill of counsel, as further demonstrated by the biographies of the firms).

"The quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 WL 4053547, at *19; *see also In re DaimlerChrysler AG*, 2004 WL 7351531, at *17 (time and expense devoted to the litigation by plaintiffs counsel is a "reflection of the work required to answer the spirited defense by the formidable law firms representing the [] Defendants"). The Debtors have been represented by White & Case LLP and Baker & Hostetler LLP in the Chapter 11 Cases and the Ohio Securities Litigation. However, reaching the Settlement

required the involvement of numerous constituencies that were adverse to the Ohio Securities Class, such as the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, and Foxconn, each of which were represented by very able counsel. The ability of Ohio Class Counsel to obtain a favorable outcome for the Ohio Settlement Class in the face of this formidable legal opposition further confirms the quality of Ohio Class Counsel's representation.

### D. The Complexity and Duration of the Litigation Support Approval of the Fee Request

Securities litigation is regularly acknowledged to be particularly complex and arduous, requiring extensive fact and expert testimony on multiple difficult issues. *See, e.g., Vida Longevity Fund*, 2023 WL 3204044, at *9 (awarding attorneys' fees and noting that "securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on a variety of issues"); *Dartell v. Tibet Pharms, Inc.,* No. 14-3620, 2017 WL 2815073, at *10 (D.N.J. June 29, 2017) (approving counsel's fee request of one-third of the settlement amount and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts"); *Valeant Pharms.*, 2020 WL 3166456, at *15 (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-cv-525, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would be lengthy and costly to the parties.").

As discussed in the Bissell-Linsk Declaration, the Ohio Settlement Class has alleged violations of the Securities and Exchange Act of 1934 ("**Exchange Act**"), raising a panoply of challenging legal and factual issues that required diligent and sophisticated analysis. Continued litigation would have included contested class certification proceedings, dispositive motions, the completion of fact and expert discovery, likely summary judgment, and trial. It is unknown how Class Representative's claims against the Settling Defendants would have been impacted by a summary judgment challenge, as well as whether Class Representative would have been able to convince the Court to accept its theories over the Post-Effective Date Debtors' competing narrative. ¶¶ 48-59.

In continued litigation within the Chapter 11 Cases, among other things, it is likely that the Post-Effective Date Debtors would have attempted to present evidence that they did not act with scienter, but believed their representations concerning pre-orders were reasonable, and they believed their statements concerning Lordstown's production capabilities. They also would have likely challenged the materiality of the allegedly false statements concerning the pre-orders, by arguing investors did not place great weight in these sorts of representations. ¶ 51.

Proving loss causation and damages in a securities class action is a very complex, expert driven, challenging endeavor in any case. Here, it is likely the Post-Effective Date Debtors would have pursued defenses arguing that the Class Claims involved facts and circumstances that required material reductions to damages arising from the "disaggregation" of the price impact of multiple irrelevant revelations or if certain of the allegedly false statements were found to be in actionable. For example, if the alleged misstatements concerning allegedly misleading pre-orders were found to be actionable, but alleged misstatements concerning Lordstown's production capabilities were not, the resulting artificial inflation and class-wide damages could have declined

dramatically. The Post-Effective Date Debtors were also likely to pursue defenses concerning the volatility of LMC Securities' trading prices and to argue that this volatility negatively affected recoverable damages. ¶¶ 53-55.

"The uncertainty of the recovery, the general difficulty in prevailing in securities cases, and the legal obstacles of establishing scienter, damages, and loss causation support an award of fees." *See Vida Longevity Fund*, 2023 WL 3204044, at * 9; *see also AT&T*, 455 F.3d at 170 (re-emphasizing that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request").

Moreover, even if the Court returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process to both the district court and beyond. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

Considering the magnitude, expense, and complexity of the Class Claims – especially when compared against the result achieved by the Settlement – Ohio Class Counsel's fee request is reasonable.

**E. The Risk of Non-Payment Supports Approval of the Fee Request**

Ohio Class Counsel have undertaken the Ohio Settlement Class's claims on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses. Indeed, such a result almost came to fruition with respect to the Debtors, given the filing of the Chapter 11 Cases. Courts have consistently recognized that the risk of non-

payment is an important factor favoring an award of attorneys' fees. *See*, *e.g.*, *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-4372, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009)(same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same); *see also Valeant Pharms.*, 2020 WL 3166456, at *13 (noting that the risk of nonpayment weighed in favor of the requested fee, where, among other things, the "recovery was uncertain due to the difficulty of prevailing in securities cases generally").

The risk of no recovery in complex cases of this type is real, particularly in the context of Chapter 11 proceedings. Ohio Class Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in expenses and received ***nothing*** for their efforts.[8] Indeed, even judgments initially

[8] For illustrative examples, *see*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re BankAtlantic Bancorp, Inc.,* No. 07-cv-61542-UU, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2010) (in case tried by Labaton, after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter

affirmed on appeal by an appellate panel are no assurance of a recovery. *See*, *e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This strongly favors approval of the requested fee.

### F. The Time and Effort Devoted by Ohio Class Counsel Support Approval of the Fee Request

As discussed above, in the Bissell-Linsk Declaration, and the fee and expense declaration submitted by Labaton, Ohio Class Counsel has devoted 2,947 hours to the prosecution of the Ohio Settlement Class's claims, and the resolution with the Settling Defendants. *See* Ex. 4 - A & B.[9] The time and effort expended by Ohio Class Counsel in prosecuting the claims and achieving the Settlement fully support the requested fee. As set forth in greater detail in the Bissell-Links Declaration, Ohio Class Counsel:

- Conducted a wide ranging investigation that included, among other things: (i) reviewing and analyzing (a) public filings with the SEC, (b) press releases, analyst reports, news articles, and other publications, and (c) interviews with, and other public statements by, defendants; (ii) interviews with former employees of the Company, as well as customers, business partners, and affiliates; (iii) consultations with experts in the automotive industry; (iv) analyzing court filings in other matters concerning Lordstown and its current or former affiliates; (v) analyzing information obtained through freedom of information requests, such as police reports; and (vi) consulting with an expert on damages and loss causation and experienced bankruptcy counsel;
- Prepared and filed a detailed amended class action complaint;

---

of law on loss causation grounds), *aff'd*, 688 F. 3d 713 (11th Cir. 2012) (trial court erred, but defendants entitled to judgment as matter of law on lack of loss causation).

[9] Additional time has been incurred by Plaintiffs' counsel, but is not being submitted in connection with the Ohio Securities Litigation Settlement.

- Opposed defendants' comprehensive motion to dismiss the amended complaint;
- Moved to unseal relevant documents filed in the Delaware Shareholder Class Action;
- Reviewed documents produced by defendants in connection with mediation efforts, including documents Lordstown had previously produced in response to "books and records" requests to other parties pursuant to Delaware law, and documents concerning Lordstown's financial condition and future plans;
- Engaged in extensive and intense settlement discussions over the span of almost two years, involving at least four in-person or telephonic mediation sessions and over two dozen additional calls and meetings negotiating possible resolutions. The negotiations eventually included not only the Settling Defendants, but also the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, Foxconn, and the SEC.

Moreover, additional time will be spent by Ohio Class Counsel in connection with administering the Settlement claim process and maximizing the amount contributed to the Ohio Securities Litigation Settlement Fund, however fees will not be sought for this work.

Ohio Class Counsel has expended 2,947 hours through April 30, 2024, resulting in a "lodestar" amount of $2,173,729.50 at Ohio Class Counsel's current hourly rates.[10] *See* Ex. 4-A. With respect to counsel's rates, which range from $750 to $1,325 for partners, $700 to $925 for of counsels, and $475 to $550 for associates and other attorneys, Ohio Class Counsel submits that the rates are comparable to or less than those used by peer law firms litigating matters of similar magnitude. *See, e.g., In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *27 (E.D. Pa. Mar. 15, 2023) (finding that class counsel hourly rates ranging from $115 to $1,325 "fall well within the range of rates charged by other attorneys in this market."); *Whiteley v. Zynerba Pharms., Inc.*, No. 19-4959, 2021 WL 4206696, at *14 (E.D. Pa. Sept. 16, 2021) (finding that

[10] Current hourly rates were used, as permitted by the United States Supreme Court and the other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

hourly rates ranging from $110 to $1,100 were "well within the range of what is reasonable and appropriate in this market"). Exhibit 5 to the Bissell-Linsk Declaration is a table of hourly rates for defense firms compiled by Ohio Class Counsel from fee applications submitted by such firms nationwide in bankruptcy proceedings in 2023. The analysis shows that across all types of attorneys, counsel's rates are consistent with, or lower than, the firms surveyed. The Court is also respectfully referred to the fee applications filed in these Chapter 11 Cases for comparator hourly rates. *See, e.g.*, Dkt Nos. 1172, 1182, 1183.

Ohio Class Counsel respectfully submits that this *Gunter* factor weighs in favor of the requested attorneys' fee.

### G. The Requested Fee of 30% of the Settlement Amount Is Within the Range of Fees Typically Awarded in Cases of this Nature

As discussed above in Section III, the requested fee of 30% of the Settlement Fund is within the range of fees awarded in comparable cases, when considered as a percentage of the fund basis. Accordingly, this factor supports approval of the requested fee.

### H. The Value of Benefits Accruing to Class Members Attributable to the Efforts of Class Counsel as Opposed to the Efforts of Other Groups

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See In re Prudential*, *Ins. Co. Am. Sales Practice Litig. Action* 148 F.3d 283, 338 (3d Cir. 1998). Here, although the SEC initiated an investigation of Lordstown's actions in connection with the events underlying the Ohio Securities Litigation, and filed an Order Instituting Case-and-Desist Proceedings and Imposing a Cease and Desist Order on February 29, 2024, the SEC's investigation and proceedings have not, to date, resulted in any helpful testimony, admissions, or findings of fact providing a "roadmap" for the prosecution of the Settlement Class's claims. The SEC did, however, participate in some of the Settlement negotiations and were supportive during that

process. Accordingly, the SEC's investigation and February 29, 2024 Cease and Desist Order do not detract from the reasonableness of the requested fee award. *See, e.g.*, *AT&T*, 455 F.3d at 173; *Honeywell*, 2022 WL 1320827, at *11; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007).

### I. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Non-Class Contingent Fee Arrangement Supports Approval of the Fee Request

The Third Circuit has suggested that a requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. If this had been an individual action, the customary contingent fee would likely range from 30 to 40 percent of the recovery. *See, e.g.*, *Ocean Power*, 2016 WL 6778218, at *29; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 903 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Ohio Class Counsel's requested fee of 30% of the Settlement Amount is fully consistent with private standards.

## V. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE LODESTAR CROSS-CHECK

The Third Circuit recommends that courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable. *See, e.g., AT&T*, 455 F.3d at 164. However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *Id.*; *see also Rite Aid*, 396 F.3d at 305 (holding "it was proper for the District Court to apply the percentage-of-

recovery method, with an abridged lodestar analysis serving as a cross-check").[11] "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306-07; *see also Prudential*, 148 F.3d at 342 (same); *McDermid v. Inovio Pharms., Inc.*, No. CV 20-01402, 2023 WL 227355, at *12 (E.D. Pa. Jan. 18, 2023) (same).

Here, Ohio Counsel devoted a total of 2,947 hours to the prosecution and resolution of the claims through April 30, 2024. Ex. 4 - A. Ohio Counsel's Counsel's lodestar – which is derived by multiplying the hours spent by the firm's current hourly rates for attorneys, paralegals, and other professional support staff – is $2,173,729.50. *Id*. Accordingly, the requested 30% fee, which equates to between $900,000 and $3,000,000, would represent a "multiplier" ranging from a fractional 0.4 (40%) multiplier on counsel's lodestar, meaning the fee would equate to only 40% of counsel's time, to a modest multiplier of 1.38 (138%) on counsel's lodestar. ¶ 84. This reasonable "multiplier" is additional evidence that the requested attorneys' fee is reasonable.

Lodestar multipliers of one to four are often awarded in common fund cases. *In re Prudential Inc.*, 148 F.3d at 341; *see also AT&T*, 455 F.3d at 172 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] was neither legally nor factually complex"); *Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *8 (awarding 1.6 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) and *In re Rite Aid Corp. Sec. Litig*., 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding multiplier of between 4.5 and 8.5 on 2001 settlement and multiplier of 6.96 on the 2005

[11] Under a full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding 4.3 multiplier).

Accordingly, the lodestar cross-check firmly supports the reasonableness of the 30% fee request.

## VI. OHIO CLASS COUNSEL'S REQUEST FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Ohio Class Counsel also requests payment of $1,288,866.60 in expenses incurred in connection with the prosecution and settlement of the claims against the Settling Defendants. This is less than the maximum that was reported in the notices. Ohio Class Counsel's individual firm fee declaration attests to the amount and accuracy of its expenses. *See* Ex. 4 - C. To date, there has been no objection to the request for expenses.

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (expenses for experts or consultants, computer research, and travel "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund"); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants."); *In re Mindbody Inc. Sec. Litig.*, No. 1:19-cv-08331-VEC (S.D.N.Y. Oct. 27, 2022) (Ex.6) (awarding litigation expenses that included professional fees paid to counsel for confidential witnesses); *In re Changyou.com Ltd. Sec. Litig.*, 1:21-cv-07858-GHW (S.D.N.Y. Jan. 28, 2023) (Ex. 6) (awarding litigation expenses that included professional fees paid to counsel with expertise in Cayman Law).

Of the total amount of expenses, $178,089.30 (approximately 14% of total expenses) was expended on experts in the fields of damages, loss causation, financial valuation, and the automotive industry. These experts were key for the analysis and development of the claims, as well as mediation efforts. ¶ 99.

In anticipation of a potential Chapter 11 filing, Class Counsel sought to protect the Ohio Settlement Class's interests by retaining experienced bankruptcy counsel, Lowenstein Sandler. Lowenstein has particular significant experience in connection with the intersection of bankruptcy and investor litigation and has provided invaluable expertise and assistance to Class Representative and Class Counsel in connection with navigating the Chapter 11 Cases on behalf of the Ohio Settlement Class. Class Counsel also retained counsel for one of the confidential witnesses cited in the Complaint. Class Counsel has incurred $956,395.83 for the payment of the fees and expenses of Lowenstein and witness counsel (approximately 74% of total expenses). ¶ 98.

Ohio Class Counsel also incurred substantial expenses in connection with the numerous formal mediation sessions and ongoing discussions under the auspices of the Mediator, which totaled $114,862.50 (or approximately 9% of total expenses). ¶ 100.

The other expenses for which Class Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation and routinely paid by clients in non-contingent litigation. These expenses include, among others, travel costs at coach rates, late night transportation and working meals, legal and factual research, duplicating costs, and court fees. Ex. 4 – C.

The notices informed potential Ohio Settlement Class Members that Ohio Class Counsel would apply for payment of litigation expenses in an amount not to exceed $1,500,000. The

amount of litigation expenses requested, $1,288,866.60, is below the amount listed in the notices and, to date, there has been no objection to the request for expenses.

## VII. CLASS REPRESENTATIVE'S REQUEST FOR PSLRA REIMBURSEMENT

The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). Here, Class Representative seeks $15,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with the time he has dedicated, to date, to representing the Ohio Settlement Class. His involvement in the litigation is detailed in his declaration. *See* Ex. 1.

Many cases have approved reasonable payments to compensate class representatives for the time, effort, and expenses they devoted to representing a class. *See, e.g., In re Novo Nordisk Sec. Litig.*, Master File No. 3:17-cv-209, at *4 (D.N.J. July 13, 2022) (awarding a total of $40,019.05 to five lead plaintiffs) (Ex. 6); *Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (awarding $10,000 for each of the two named class representatives for their time and effort in the action); *In re Royal Dutch/Shell Transp. Sec. Litig.,* No. 04-374 (JAP), 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 1 (Ex. 6) (awarding each lead

plaintiff $15,000); *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08 Civ. 397, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) (awarding $102,447.26 to four class representatives).

Ohio Class Counsel and Class Representative respectfully submit that the amount sought here is reasonable based on Class Representative's active involvement on behalf of the Ohio Settlement Class.

## CONCLUSION

For all the foregoing reasons, Ohio Class Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Ohio Securities Litigation Settlement Fund, $1,288,866.60 in litigation expenses incurred by Ohio Class Counsel to date, and $15,000 to reimburse Class Representative, pursuant to the PSLRA.

DATED: May 7, 2024

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

\- and -

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Andrew Behlmann, Esq.
Scott Cargill, Esq.
Collen M. Restel, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
crestel@lowenstein.com

*Bankruptcy Counsel for Class Representative and the Ohio Settlement Class*

- and -

**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas, Esq.
David J. Schwartz, Esq.
Jake Bissell-Linsk, Esq.
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

*Class Counsel for Class Representative and the Ohio Settlement Class*