**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Nu Ride Inc., *et al*.,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 23-10831 (MFW)<br><br>(Jointly Administered)<br><br>**Objection Deadline: May 21, 2024**<br>**Hearing Date: June 11, 2024 at 10:30 a.m. (ET)** |

**CLASS REPRESENTATIVE'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR APPROVAL OF (I) OHIO SECURITIES
LITIGATION SETTLEMENT ON A FINAL BASIS AND (II) THE PROPOSED PLAN
OF ALLOCATION FOR SETTLEMENT PROCEEDS**

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 5

I. THE SETTLEMENT WARRANTS APPROVAL ON A FINAL BASIS ..... 5

A. Standards Governing Approval of Class Settlements ..... 5

B. Class Representative and Ohio Class Counsel Have Adequately Represented the Ohio Settlement Class ..... 6

C. The Settlement Is the Result of Extensive Good Faith Arm's-Length Negotiations ..... 8

D. The Relief Provided by the Proposed Settlement Is Adequate ..... 9

1. The Settlement Provides Significant and Certain Benefits to the Ohio Settlement Class ..... 9

a. Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement ..... 10

b. Risks of Continued Litigation ..... 11

2. The Effective Process for Distributing Relief to the Ohio Settlement Class ..... 13

3. The Requested Attorneys' Fees and Expenses Are Reasonable ..... 15

E. Application of the Remaining Third Circuit Factors ..... 15

II. THE COURT SHOULD APPROVE THE OHIO SETTLEMENT PLAN OF ALLOCATION ..... 17

III. NOTICE SATISFIED RULE 23 AND DUE PROCESS ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
No. 01-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x. 151 (3d Cir. 2014) ... 7, 9

*In re AT & T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ... 6

*Bell Atl. Corp. v. Bolger*,
2 F. 3d 1304 (3d Cir. 1993) ... 18

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001) ... 8, 9

*In re Datatec Sys. Inc.*,
04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ... 17

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ... 12

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ... 5

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ... 19

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ... 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ... 16

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ... *passim*

*In re Livent Corp. Sec. Litig.*,
Case No. 190501229 (Pa. Com. Pl. 2021) ... 15

*In re Lordstown Motors Corp. S'holder Derivative Litig.*,
No. 1:21-CV-00604-SB (D. Del.) ... 3

*O'Hern v. Vida Longevity Fund, LP*,
No. 21-402-SRF, 2023 WL 3204044 (D. Del. May 2, 2023) ... 7, 8, 9, 16

*In re Ocean Power Techs., Inc. Sec. Litig.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ....................................12, 18

*In re PAR Pharm. Sec. Litig.*,
No. 06–3226, 2013 WL 3930091 (D.N.J. July 29, 2013)................................................11, 17

*Schuler v. Meds. Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) .....................................................................16

*In re SciPlay Corp. Sec. Litig.*,
Index No. 655984/2019 (Sup Ct, NY Cnty.) ....................................................................15

*Smith v. Merck & Co.*,
No. CIV.A. 13-2970 (MAS) (LHG), 2019 WL 3281609
(D.N.J. July 19, 2019).........................................................................................................9

*Sullivan v. DB Invs. Inc.*,
667 F.3d 273 (3d Cir. 2011)................................................................................................17

*Talone v. Am Osteopathic Ass'n.*,
No. 1:16-cv-04644, 2018 WL 6318371 (D.N.J. Dec. 3, 2018) .......................................10, 11

*In re The Allstate Corp. Sec. Litig.*,
Case No. 16-cv-10510 (N.D. Ill. 2023) ..............................................................................15

*Utah Ret. Sys. v. Healthcare Servs. Grp.*,
No. 19-1227, 2022 WL118104 (E.D. Pa. Jan. 12, 2022)..................................................6, 7, 9

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)...............................................................................................8

*In re Veritas Software Corp. Sec. Litig.*,
396 F. App'x. 815 (3d Cir. 2010) .........................................................................................19

*Vinh Du v. Blackford*,
No. 17-CV-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018) .................................................6

*In re ViroPharma Inc. Sec. Litig.*,
No. CIV.A. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...................................12, 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)....................................................................................................5

*In re Wilmington Tr. Sec. Litig.*,
No. 10-cv-0990, 2018 WL 6046452 (D. Del. Nov. 19, 2018)................................................12

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985).....................................................................................................19

**Rules**

Fed. R. Civ. P. 23 ........ *passim*

Fed. R. Civ. P. 23(c)(2)(B) ........ 18, 19

Fed. R. Civ. P.23(e)(2) ........ 5, 6, 9, 16

Fed. R. Civ. P. 23(e)(2)(A) ........ 6, 8

Fed. R. Civ. P. 23(e)(2)(B) ........ 8

Fed. R. Civ. P. 23(e)(2)(C) ........ 9, 13

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........ 6

Fed. R. Civ. P. 23(e)(3) ........ 6

**Other Authority**

Bankruptcy Code § 510(b) ........ 10, 16

Bankruptcy Rule 7023 ........ 1, 4, 6, 9

George Troicky ("**Ohio Securities Litigation Lead Plaintiff**" or "**Class Representative**"), on behalf of himself and all members of the Ohio Settlement Class, respectfully submits this memorandum of law in support of his motion for: (i) approval of the settlement (the "**Ohio Securities Litigation Settlement**" or "**Settlement**") on a final basis, pursuant to Federal Rule of Civil Procedure 23 ("**Rule 23**"), made applicable hereto, for settlement purposes only, by Bankruptcy Rule 7023; and (ii) approval of the proposed plan for distribution (the "**Ohio Settlement Plan of Allocation**" or "**Plan of Allocation**") of the proceeds of the Settlement (the "**Net Ohio Securities Litigation Settlement Fund**" or "**Net Settlement Fund**").[1]

**PRELIMINARY STATEMENT**

On March 6, 2024, this Court ("**Bankruptcy Court**" or "**Court**"), entered an order confirming the Debtors' *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as the same may be modified in accordance with its terms), which, among other things, preliminarily approved the Settlement, approved the forms of notice to the Ohio Settlement Class, and scheduled a final hearing for June 11, 2024. For all the reasons set forth herein, and in the accompanying Declaration of Jake Bissell-Linsk, dated May 7, 2024,[2] it is respectfully submitted that the Ohio

---

[1] The primary terms of the Settlement are in the: (i) *Third Modified First Amended Joint Chapter 11 Plan of Lordstown Motors Corp. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as the same may be modified in accordance with its terms, the "**Plan**"); (ii) the *Stipulation Between Debtors, Ohio Securities Litigation Lead Plaintiff, Official Committee of Unsecured Creditors, and Official Committee of Equity Security Holders Regarding Ohio Securities Litigation Lead Plaintiff's Motion To Apply Bankruptcy Rule 7023 To Class Claims and Proofs of Claim Numbers 1368, 1379, 1380, 1394, 1426, and 1434* (the "**7023 Stipulation**"), which was so ordered by the U.S. Bankruptcy Court for District of Delaware ("**Bankruptcy Court**" or "**Court**") on February 5, 2024; and (3) the Court's March 6, 2024 order confirming the Plan (the "**Confirmation Order**"). All capitalized terms not defined herein have the same meanings as in the Plan, the 7023 Stipulation, the Confirmation Order, or the proposed Plan of Allocation, which is reported in paragraphs 39 to 72 of the long-form notice of the Settlement (the "**Notice**").

[2] The Declaration of Jake Bissell-Linsk in Support of (I) Class Representative's Motion for Approval of the Ohio Securities Litigation Settlement on a Final Basis and Plan of Allocation and

Securities Litigation Settlement is a very favorable result for the Ohio Settlement Class and should be approved on a final basis as fair, reasonable, and adequate to the Ohio Settlement Class, pursuant to Rule 23.

As an overview, in exchange for the releases and dismissals contemplated by the Plan and the Settlement, the Post-Effective Date Debtors have deposited $3 million into the Ohio Securities Litigation Settlement Fund. The Settlement provides for subsequent additional funding of up to $7 million, which, along with any interest earned, will be distributed after the deduction of Court-awarded attorneys' fees and expenses, taxes, and notice and administration expenses (the Net Ohio Securities Litigation Settlement Fund), to Ohio Settlement Class Members who submit valid and timely Ohio Claim Forms and are found to be eligible to receive a distribution from the fund.

The Plan provides that the Ohio Securities Litigation Supplemental Amount, equal to up to $7 million, can be paid from two potential sources. First, if the Post-Effective Date Debtors and/or the Litigation Trustee is successful in pursuing and collecting judgments or settlements from third parties, then 25% of all litigation proceeds received (after deducting the fees and costs of litigation) will be contributed to the Ohio Securities Litigation Settlement Fund, up to $7 million. Second, if the Post-Effective Date Debtors and/or the Litigation Trustee litigation proceeds are insufficient to provide for payments of up to $7 million to the Ohio Securities

---

(II) Ohio Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated May 7, 2024 ("**Bissell-Linsk Declaration**") is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Bissell-Linsk Declaration for, *inter alia*, a detailed description of the allegations and claims of the Ohio Settlement Class, the procedural history of the Ohio Securities Litigation and the claims of the Ohio Settlement Class, the risks faced by the Ohio Settlement Class in pursuing litigation, the efforts that led to a settlement, and a description of the services provided by Ohio Class Counsel. Citations to "¶" in this motion refer to paragraphs of the Bissell-Linsk Declaration.

All exhibits are annexed to the Bissell-Linsk Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Bissell-Linsk Declaration and the second reference is to the exhibit designation within the exhibit itself.

Litigation Settlement Fund, then Foxconn has agreed to a "back stop" to contribute up to $5 million to the Ohio Securities Litigation Settlement Fund from distributions that Foxconn would have otherwise received from the Post-Effective Date Debtors. ¶ 75. The Settlement also preserves the class's claims against all current non-debtor defendants other than David Hamamoto.

Notably, the Settlement also provides that after the Effective Date of the Plan, the Post-Effective Date Debtors or Litigation Trustee, as applicable, will provide to Class Representative, for use in the continued prosecution of the Ohio Securities Litigation, all documents that were previously produced by the Debtors in response to any request for documents by (a) the U.S. Securities and Exchange Commission ("**SEC**"); (b) any party in the Delaware Shareholder Class Action, (c) any party to the case *In re Lordstown Motors Corp. S'holder Derivative Litig*., No. 1:21-CV-00604-SB (D. Del.). If providing these documents requires the Debtors, the Post-Effective Date Debtors, or Litigation Trustee (as applicable) to incur any costs with litigation support vendors, such costs shall be paid from the Ohio Securities Litigation Settlement Fund. Mr. Hamamoto has also agreed to make himself available to Ohio Class Counsel for interviews in order to provide Class Representative with information concerning any matter relevant to the Ohio Securities Litigation. ¶ 76.

As detailed in the Declaration of Jake Bissell-Linsk and summarized below, the Settlement: (i) is the culmination of almost three years of highly contentious and vigorous litigation efforts, including a wide-ranging investigation concerning the allegedly fraudulent misrepresentations and omissions made by defendants, preparation of an amended class action complaint, litigating motions to unseal relevant documents filed in the Delaware Action, moving to lift the mandatory discovery stay in cases, researching and drafting an opposition to Defendants' comprehensive motion to dismiss the amended complaint, and litigation in these Chapter 11 Cases; (ii) is the product of hard-fought settlement negotiations with numerous constituencies that spanned the

course of almost two years, under the guidance of an experienced mediator and within the context of the Debtors' rapidly shifting financial environment; and (iii) represents a meaningful and guaranteed recovery for the Ohio Settlement Class under conditions that rarely yield ***anything*** for allegedly defrauded shareholders.

As a result of their efforts, Class Representative and Ohio Class Counsel had a well-developed understanding of the strengths and weaknesses of the class's claims. While Class Representative believes the Ohio Settlement Class's claims against the Settling Defendants are strong, he recognizes there were substantial risks to, among other things, class certification of the Class Claim through a contested Rule 7023 motion, continued litigation, and trial in these Chapter 11 Cases, as discussed below and in the Bissell-Linsk Declaration. Furthermore, Class Representative, through Ohio Class Counsel, considered the guaranteed cash benefit to the Settlement Class, compared to the inherent difficulties in being able to recover anything from LMC and LEVC given the Chapter 11 Cases and the funds that would be available for distribution to class members. The Settlement avoids these risks (and others), as well as further delay and expense of continued litigation– while providing a certain benefit to the Ohio Settlement Class. Class Representative, who was actively involved throughout the litigation and settlement discussions, diligently represented the Ohio Settlement Class, and approves of the Settlement. *See* Declaration of George Troicky, Ex. 1.

In addition, the Ohio Settlement Plan of Allocation, which was developed by Ohio Class Counsel with the assistance of Class Representative's consulting damages expert, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

Given the foregoing considerations and the factors addressed below, Class Representative respectfully submits that: (i) the Settlement meets the standard for final approval under Rule 23

and Third Circuit caselaw construing Rule 23, as it is a fair, reasonable and adequate result for the Ohio Settlement Class; and (ii) the Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Ohio Settlement Class Members who submit valid Claim Forms.

## ARGUMENT

## I. THE SETTLEMENT WARRANTS APPROVAL ON A FINAL BASIS

### A. Standards Governing Approval of Class Settlements

It is well established that the settlement of class claims is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (the "strong presumption in favor of voluntary settlement agreements" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3)[3]; and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

In addition, courts within the Third Circuit have considered the following "*Girsh* Factors," which largely overlap with Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re AT & T Corp. Sec. Litig*., 455 F.3d 160, 164- 65 (3d Cir. 2006). Indeed, the Rule 23 factors "are in many respects a codification of various factors set forth in *Girsh*." *Vinh Du v. Blackford*, No. 17-CV-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018); *Utah Ret. Sys. v. Healthcare Servs. Grp*., No. 19-1227, 2022 WL118104, at *7 (E.D. Pa. Jan. 12, 2022) (same).

The Ohio Securities Litigation Settlement readily satisfies Rule 23(e)(2) and the relevant *Girsh* factors. Accordingly, the Settlement should be approved on a final basis.

### B. Class Representative and Ohio Class Counsel Have Adequately Represented the Ohio Settlement Class

In determining whether to approve a class settlement, courts consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P.

[3] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, the Settlement is being implemented through the Plan, the Confirmation Order, and the *Stipulation Between Debtors, Ohio Securities Litigation Lead Plaintiff, Official Committee of Unsecured Creditors, and Official Committee of Equity Security Holders Regarding Ohio Securities Litigation Lead Plaintiff's Motion To Apply Bankruptcy Rule 7023 To Class Claims and Proofs of Claim Numbers 1368, 1379, 1380, 1394*, *1426, and 1434* (the "**7023 Stipulation**"), which was so ordered by the Court on February 5, 2024.

23(e)(2)(A). "In making this determination, the focus at this point is on counsel's actual performance." *Utah Ret. Sys*., 2022 WL 118104, at *8 (citing advisory committee note to the 2018 amendment).

Ohio Class Counsel, which is highly experienced in prosecuting and trying complex class actions, had a clear view of the strengths and risks of the claims against the Settling Defendants and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Alves v. Main,* No. 01-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("courts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x. 151 (3d Cir. 2014). Over the course of the litigation, Ohio Class Counsel has developed a deep understanding of the facts of the case and the merits of the claims. *See generally* Bissell-Linsk Declaration Decl. Ohio Class Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4 - D), and has been able to successfully conduct the litigation against skilled opposing counsel.[4] *See O'Hern v. Vida Longevity Fund*, LP, No. 21-402-SRF, 2023 WL 3204044, at *5 (D. Del. May 2, 2023) (finding adequacy of class counsel in representing the interest of the class where it the record established that counsel has extensive experience in litigating complex securities class actions and thoroughly investigated the claims, defenses, and events underlying the action). Moreover, Ohio Class Counsel retained the services of Lowenstein Sandler LLP, a firm highly experienced in representing class action plaintiffs in a Chapter 11 context. Accordingly, the Ohio Settlement Class has been, and remains, well represented.

---

[4] Debtors have primarily been represented by White & Case LLP and Baker & Hostetler LLP in the Chapter 11 Cases and the Ohio Securities Litigation. However, reaching the Settlement required the involvement of numerous constituencies that were adverse to the Ohio Securities Class, such as the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, and Foxconn, each of which were represented by very able counsel.

Additionally, Class Representative has been an active and informed participant. Among other things, Class Representative regularly communicated with counsel, gathered and reviewed his trading in LMC Securities, completed certifications and declarations in support of case filings, and received and reviewed material court filings. He was consulted over the course of the lengthy settlement discussions and, ultimately, gave counsel settlement authority, and evaluated and approved the Settlement. *See* Ex. 1.

Class Representative and Ohio Class Counsel have carefully considered the benefits of the Settlement and believe it to be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A).

### C. The Settlement Is the Result of Extensive Good Faith Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Over the span of a year, the Settling Parties participated in a total of four separate mediation sessions either in person or telephonically, before David Murphy, an experienced mediator well-versed in securities class actions and the interplay with issues in bankruptcy, followed by over two dozen additional calls and meetings negotiating possible resolutions, before the Settlement was reached. The negotiations were intensive and periodically included not only the Debtors, but also the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, Foxconn, and the SEC. ¶¶ 32-35. *See Vida Longevity Fund*, 2023 WL 3204044, at *5 (noting the arm's length negotiation of the settlement with the assistance of a neutral mediator supported final approval of the settlement).

It is appropriate for this Court to give "substantial weight to the recommendations of experienced attorneys" who engaged in arm's-length negotiations. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness"); *see also In re Cendant Corp. Sec. Litig.*, 109 F.

Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation), *aff'd*, 264 F.3d 201 (3d Cir. 2001).

Furthermore, "the participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Smith v. Merck & Co.*, No. CIV.A. 13-2970 (MAS) (LHG), 2019 WL 3281609, at *4 (D.N.J. July 19, 2019); *see also Alves*, 2012 WL 6043272, at *22.

### D. The Relief Provided by the Proposed Settlement Is Adequate

#### 1. The Settlement Provides Significant and Certain Benefits to the Ohio Settlement Class

The Settlement also satisfies Rule 23(e)(2)(C). In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C) overlaps considerably with many of the factors articulated by the Third Circuit in *Girsh*. *See Vida Longevity Fund*, 2023 WL 3204044, at *6 ("The third factor under Rule 23 (e)(2) regarding the adequacy of the relief provided for the class is related to many of the *Girsh* factors."); *see also Utah Ret. Sys.*, 2022 WL 118104, at *8 ("This factor is related to the first *Girsh* factor which considers the complexity, expenses, and likely duration of the litigation, and the fourth and fifth *Girsh* factors, which consider the risks of establishing liability and damage.").

The $3 million to $10 million monetary settlement, including a "back stop" by Foxconn plus the additional documents and information to be provided by the Settling Defendants, is a very favorable result for the Ohio Settlement Class given the substantial risks and obstacles to a greater recovery if the claims were to continue to be litigated—through the contested Rule 7023 class certification motion, dispositive motions, challenges to experts, trial, likely post-trial motions and appeals, all while the Post-Effective Date Debtors' assets available to the class would be at risk of

depletion. Moreover, the Class Claims were subject to statutory subordination under § 510(b) of the Bankruptcy Code. It should also be noted that the Settlement and the Plan preserve the claims of the class against all current non-debtor defendants, other than David Hamamoto, in the Ohio Securities Litigation.

Class Representative and Class Counsel are hopeful that, ultimately, the Settlement will reach the $10 million level. Standing on its own, this recovery would be in line with the value of securities class action settlements nationwide (outside of a bankruptcy context) for the period from 2018 through 2022, when the overall median settlement value was $11.7 million, although the median in 2023 was higher at $15 million. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2023 Review and Analysis (Cornerstone Research 2024), Ex. 3 at 1. Given that more than 450,000 notices have been disseminated to date, thousands of Class Members stand to benefit and receive guaranteed compensation, avoiding the very substantial risk of no recovery in the absence of a settlement. *See* Declaration of Paul Mulholland Concerning (A) Dissemination of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date ("**Initial Mailing Decl**."), Ex. 2 at ¶¶ 2-11.

The Settlement is particularly noteworthy given Ohio Class Counsel's understanding that any recovery on a class wide basis for claims under the federal securities laws is a rare occurrence in Chapter 11 cases, as well as the documents and additional information to be provided to Class Representative and Ohio Class Counsel pursuant to the Settlement.

**a. Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement**

Settlement is favored where, as here, continuing to litigate would require "extensive pretrial motions addressing complex factual and legal questions" and then "a complicated, lengthy trial." *Talone v. Am Osteopathic Ass'n.*, No. 1:16-cv-04644, 2018 WL 6318371, at *14 (D.N.J.

Dec. 3, 2018). Indeed, courts regularly acknowledge that "securities class actions are "notably complex, lengthy, and expensive cases to litigate." *In re PAR Pharm. Sec. Litig*., No. 06–3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).

The claims against the Settling Defendants were no exception. As detailed in the Bissell-Linsk Declaration, had the case not settled, Class Representative would have had to prevail at many future stages in the litigation. The Debtors, the Official Committees, and now the Post-Effective Date Debtors, would have continued to press their defenses to his claims of liability and damages, all within the arena of the Chapter 11 Cases rather than the Ohio District Court. Even if Class Representative and the class prevailed at these stages, appeals would have undoubtedly followed. At each of these stages, there would be significant attendant risks and no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Moreover, the trial of the Class Representative's claims would not be before a jury, and it would inevitably be long and complex. Even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process before a district court and higher courts, before any recovery could be achieved. Notably, the litigation in the Chapter 11 Cases would likely proceed in advance of, and separately from, the Ohio Securities Litigation in the District Court, where a motion to dismiss remains pending. Any negative findings by the Bankruptcy Court could have jeopardized the class's ability to recover against the other non-debtor defendants in the Ohio Securities Litigation.

**b. Risks of Continued Litigation**

In assessing a settlement, a court should consider the risks of establishing liability and damages, as well as the risks of maintaining the class action[5] through trial. *Girsh*, 521 F.2d at 157. "These factors 'balance the likelihood of success and the potential damages award if the case were

[5] The risks of maintaining class certification through trial is one of the *Girsh* factors. Pursuant to the 7023 Stipulation, the Court certified the Ohio Settlement Class for settlement purposes only.

taken to trial against the benefits of immediate settlement.'" *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018).

Here, the core allegations against the Settling Defendants are that they made materially false and misleading statements relating to the production capabilities, timeline, and the extent of customer pre-orders for the Endurance, Debtors' flagship vehicle, in order to, among other reasons, raise funding and persuade DiamondPeak Holding Corp. shareholders to approve the Merger. Class Representative alleges that the misstatements, among other things, artificially inflated the prices of Debtors' publicly traded securities, and that the subsequent alleged revelation of the truth caused the securities' prices to drop. ¶ 16-17.

In continued litigation, the Post-Effective Date Debtors and the Official Committees would continue to press their defenses to Class Representative and the class's claims of liability and damages, within the arena of the Chapter 11 Cases and its barriers to achieving a greater recovery than those offered in the Settlement. For example, it is likely that the Post-Effective Date Debtors would have attempted to present evidence that they did not act with scienter, but believed that their representations concerning pre-orders were reasonable, and that they believed their statements concerning Lordstown's production capabilities. They also would have likely challenged the materiality of the allegedly false statements concerning the pre-orders, by arguing investors did not place great weight in these sorts of representations. ¶¶ 51-55.

Proving loss causation and damages in a securities class action is a very complex, expert driven, challenging endeavor in any case. The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), and subsequent cases interpreting it, have made proving loss causation even more difficult and uncertain than in the past. *See In re Ocean Power Techs., Inc. Sec. Litig.,* No. 3:14-CV-3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff"); *see also In re ViroPharma Inc. Sec.*

*Litig*., No. CIV.A. 12-2714, 2016 WL 312108, at *12 (E.D. Pa. Jan. 25, 2016) ("proof [of loss causation] would necessitate a battle of the experts. Class Representatives would be permitted to present expert testimony on their theory of loss causation, and Defendants would be permitted to submit a rebuttal expert report arguing that the omissions had no impact on the value of ViroPharma Securities") (citation omitted).

Here, it is likely the Post-Effective Date Debtors would have pursued defenses arguing that the Class Claims involved facts and circumstances that required material reductions to damages arising from the "disaggregation" of the price impact of multiple irrelevant revelations or if certain of the allegedly false statements were found to be in actionable. For example, if the alleged misstatements concerning allegedly misleading pre-orders were found to be actionable, but alleged misstatements concerning Lordstown's production capabilities were not, the resulting artificial inflation and class-wide damages could have declined dramatically. The Post-Effective Date Debtors were also likely to pursue defenses concerning the volatility of LMC Securities' trading prices and to argue that this volatility negatively affected recoverable damages. ¶¶ 54-55.

In contrast, the Settlement avoids the potential impact of each of these challenges and other risks and achieves a very favorable and certain result as to the Settling Defendants.

### 2. The Effective Process for Distributing Relief to the Ohio Settlement Class

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Strategic Claims Services. The Ohio Settlement Claims Administrator is employing a well-tested protocol for the processing of claims in a securities class action.

Specifically, an Ohio Settlement Class Member will submit, either by mail or online using the Settlement webpage, the Court-approved Ohio Claim Form. Based on the trade information provided by claimants, the Ohio Settlement Claims Administrator will determine each claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Ohio Settlement Plan of Allocation, and ultimately determine each eligible Class Member's *pro rata* portion of the Net Ohio Securities Litigation Settlement Fund. *See* ¶¶ 60-63. Class Representative's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *See* Confirmation Order at ¶51. Any claim disputes that cannot be resolved will be presented to the Bankruptcy Court. *Id*.

After the Order approving the Settlement on a final basis becomes final and non-appealable, and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Ohio Settlement Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. ¶¶ 65-66.

Thereafter, Class Representative recommends that any *de minimis* balance that remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, be donated to Consumer Federation of America ("**CFA**"), or such other non-sectarian, not-for-profit organization(s) serving the public interest, designated by Ohio Class Counsel and approved by the Bankruptcy Court. ¶¶ 67-68; Ex. 2 - B at ¶ 71. CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests. *See generally* www.consumerfed.org. With respect to financial fraud, CFA has an Investor Protection program

that works nationwide to promote consumer-oriented policies that safeguard investors through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. CFA has been approved as a *cy pres* beneficiary in many securities cases nationwide, including *In re Broadcom Corp. Sec. Litig*., No. 01-CV-00275-MLR (C.D. Cal.), *In re SciPlay Corp. Sec. Litig*., Index No. 655984/2019 (Sup Ct. N.Y. Cnty.), *In re Livent Corp. Sec. Litig*., Case No. 190501229 (Pa. Com. Pl. 2021), and *In re The Allstate Corp. Sec. Litig.*, Case No. 16-cv-10510 (N.D. Ill. 2023).

**3. The Requested Attorneys' Fees and Expenses Are Reasonable**

As discussed in the accompanying Fee Memorandum, the requested attorneys' fees award of 30% of the Ohio Securities Litigation Settlement Fund and expenses, to be paid as ordered by the Court, are reasonable in light of the efforts of Ohio Class Counsel and the challenges and obstacles overcome by counsel. Approval of the attorneys' fees and expense request is entirely separate from approval of the Settlement, and is not part of any agreement with Settling Defendants.

**E. Application of the Remaining Third Circuit Factors**

Additional factors that courts consider within the Third Circuit when assessing a proposed settlement are "the reaction of the class to the settlement", "the stage of the proceedings and the amount of discovery completed", "the ability of defendants to withstand a greater judgment." *Girsh*, 521 F.2d at 157. Each are satisfied by the circumstances present here.

The objection deadline is May 21, 2024. To date, there have been no objections to the Settlement. Class Representative will address any objections received in his reply submission to be filed on June 4, 2024.

Regarding the stage of proceedings and the amount of discovery, as described in detail in the Bissell-Linsk Declaration, the Settlement was reached after an extensive investigation of the

alleged conduct at issue, which included, among other things, interviews with former employees of Lordstown and consultations with financial and automotive industry experts; briefing on the defendants' motion to dismiss (pending at the time of Settlement); filing proofs of claim in the Chapter 11 Cases; filing a contested 7023 Motion; reviewing documents produced in connection with mediation efforts, including documents the Debtors had previously produced in response to "books and records" requests to other parties pursuant to Delaware law, and documents concerning the Debtors' financial condition and future plans. Accordingly, the stage at which the case settled and the amount of informal discovery obtained provided Class Representative with an "adequate appreciation of the merits of the case". *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995); *see also Vida Longevity Fund*, 2023 WL 3204044, at *5 (finding informal discovery at the time of settlement along with interviews with relevant knowledge was sufficient to allow class counsel to assess strengths and weakness of the case); *Schuler v. Meds. Co*., 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (finding class counsel had ample information to evaluate the prospects for the litigation and assess the fairness of the settlement despite the fact that no formal discovery was taken).

*Girsh* factor seven, the ability of the defendants to withstand a greater judgment, decisively supports final approval of the Settlement. Given the Chapter 11 Cases, the likelihood that the Ohio Settlement Class would have been able to recover more from LMC and LEVC in the absence of the Settlement was remote, especially given that the Class Claims were subject to statutory subordination under § 510(b) of the Bankruptcy Code.

In sum, all of the factors to be considered under Rule 23(e)(2) and under *Girsh* strongly support approving the Ohio Securities Litigation Settlement on a final basis, as fair, reasonable, and adequate.

## II. THE COURT SHOULD APPROVE THE OHIO SETTLEMENT PLAN OF ALLOCATION

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re PAR Pharm.,* 2013 WL 3930091, at *3. To meet this standard, a plan of allocation recommended by experienced and competent counsel "need only have a reasonable and rational basis." *Id*. at *8. Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).

The proposed Plan of Allocation was set forth in full in the long-form Notice provided to the Ohio Settlement Class, and crafted with the assistance of Class Counsel's consulting damages expert. *See* Ex. 2 - B at ¶¶ 39-72. As explained above, the Plan of Allocation provides for the distribution of the Net Ohio Securities Litigation Settlement Fund based upon each Settlement Class Member's "Recognized Claim," as calculated by the formulas in the Plan of Allocation, which depend on the timing of a claimant's trading, the purchase and sale prices, and the type of LMC Security purchased. Class Counsel formulated the Plan of Allocation to be consistent with the securities laws and to reflect alleged corrective disclosures on March 12, 2021, March 17, 2021, May 24, 2021, June 8, 2021, June 14, 2021, and July 2, 2021. *See In re Datatec Sys. Inc.*, 04-cv-525, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (approving plan because it was "rational and consistent with [Counsel's] theory of the case"). Simply put, Ohio Settlement Class Members who submit valid Ohio Claim Forms and who purchased LMC Securities during the Ohio Settlement Class Period and/or held LMC's publicly traded Class A common stock on September 21, 2020, will be eligible to receive a payment from the Net Settlement Fund. Each eligible claimant whose payments are $10.00 or greater will receive a *pro rata* distribution based on the value of their Recognized Claim in comparison to the value of all other Recognized Claims.

*See In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *3 (D.N.J. Nov. 15, 2016) (approving a settlement agreement where the settlement fund would be distributed on a *pro rata* basis).[6]

In sum, Class Representative and Ohio Class Counsel submit that the Plan of Allocation fairly and rationally allocates the proceeds of the Settlement among Ohio Settlement Class Members with losses due to the conduct alleged in the Ohio Securities Litigation and, thus, should be approved. To date, no objections to the Plan of Allocation have been received.

## III. NOTICE SATISFIED RULE 23 AND DUE PROCESS

Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them" in connection with proceedings. *Bell Atl. Corp. v. Bolger*, 2 F. 3d 1304, 1318 (3d Cir. 1993). The Court, through the Confirmation Order, approved the program for disseminating notice of the Settlement to potential members of the Ohio Settlement Class, which included all the information required by Rule 23 and the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"). *See* Confirmation Order at ¶¶43-44, 47-50. Pursuant to the Confirmation Order, and in compliance with Rule 23, Class Representative has provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As detailed in the accompanying declaration of the Ohio Settlement Claims Administrator, to date, more than 450,000 copies of the Postcard Notice have been mailed or emailed to potential Ohio Settlement Class Members, brokers, and their nominees. *See* Ex. 2 at ¶¶ 2-11. In addition,

[6] *See also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *see also Ocean Power*, 2016 WL 6778218, at *23 ("*pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery"') (quoting *Sullivan*, 667 F.3d at 328).

the Summary Notice was published in *The Wall Street Journal* and transmitted over the PR Newswire on April 4, 2024. *Id*. at ¶ 12. The Claims Administrator has also established a webpage for the Ohio Securities Litigation Settlement, www.Strategicclaims.net/lordstown, to provide potential Ohio Settlement Class Members with information concerning the litigation, the Ohio Securities Litigation Settlement, relevant aspects of the Chapter 11 Cases, and access to downloadable copies of the long-form Notice, Ohio Claim Form, the Plan, the Confirmation Order, other case-related documents, and an online portal for submitting claims. *Id*. at ¶ 14.

Notice programs such as this have been approved in a multitude of class action settlements. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x. 815, 816 (3d Cir. 2010) (describing notice combining mail to known class members and publication in *Investor's Business Daily* and over newswire); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.") (citation omitted). Accordingly, the Ohio Settlement Class has been provided with "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

## CONCLUSION

For all the foregoing reasons, Class Representative respectfully requests that this Court approve the Ohio Securities Litigation Settlement on a final basis and approve the proposed Ohio Settlement Plan of Allocation. Proposed orders will be submitted with Class Representative's reply papers, after the deadlines for objecting and seeking exclusion from the Ohio Settlement Class have passed.

DATED: May 7, 2024

**CROSS & SIMON, LLC**

/s/ Christopher P. Simon
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and -

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Andrew Behlmann, Esq.
Scott Cargill, Esq.
Collen M. Restel, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
crestel@lowenstein.com

*Bankruptcy Counsel for Class Representative and the Ohio Settlement Class*

- and -

**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas, Esq.
David J. Schwartz, Esq.
Jake Bissell-Linsk, Esq.
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

*Class Counsel for Class Representative and the Ohio Settlement Class*